**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:19-cv-02281-K |
| Plaintiff, | **Plaintiff's Sur-Reply to Defendant's Motion to Dismiss** |
| v. | |
| MATCH GROUP, INC., a corporation, | |
| Defendant. | |

Plaintiff the Federal Trade Commission ("FTC") respectfully submits this sur-reply to the motion to dismiss ("Motion") filed by Defendant Match Group, Inc. ("Match") (Dkt. 20):

**Summary**

The FTC submits this sur-reply for two reasons. First, on the same day that the FTC filed its Opposition (Dkt. 27), the Fifth Circuit issued an opinion, *SEC v Team Resources, Inc.*, No. 18-10931, 2019 U.S. App. LEXIS 33106 (5th Cir. Nov. 5, 2019), that contradicts arguments Match raised in its Motion and Reply (Dkt. 30). Second, Match's Reply raised a new argument regarding the pleading standard for Section 13(b) that we address below.

**I.  Argument**

  **A. *The Fifth Circuit's November 5 Decision Reaffirmed Long-Standing Precedent That Supports Awarding Monetary Relief under Section 13(b)***

The Fifth Circuit's decision in *Team Resources* involved an SEC enforcement action where the agency sought disgorgement in equity. In its holding, the Fifth Circuit reaffirmed the scope of equitable relief that it recognized more than 40 years ago in *SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1978), which authorized disgorgement as a form of injunctive relief where district

1

courts rule on SEC enforcement actions in equity. The *Team Resources* holding and the logic underlying it cut against arguments Match raised in its Motion and Reply in three ways:

First, *Team Resources* further forecloses Match's contention that equitable monetary relief must be expressly authorized by statute. *See, e.g.,* Rep. at 7, 10-11. In *Team Resources*, the defendants argued that a recent Supreme Court case which held disgorgement in certain SEC actions to be penalties subject to a five-year statute of limitations, *Kokesh v. SEC*, 137 S.Ct. 1635 (2017), to have also implicitly forbidden imposing disgorgement in any SEC action, including where the court was providing equitable relief. 2019 U.S. App. LEXIS 33106, at *4. Rejecting this argument, the *Team Resources* court reaffirmed its long-standing holding in *Blatt*, which held disgorgement—a form of relief the *Blatt* court described as "restitution," 583 F.2d at 1335—available in SEC enforcement actions where the underlying statute does not expressly authorize equitable monetary relief. 2019 U.S. App. LEXIS 33106, at *10.

By reaffirming "the principle that district courts may order disgorgement in SEC enforcement proceedings [as] well established in our circuit," *id.*, the Fifth Circuit's decision joins the case law our Opposition covers in undermining Match's argument that "recent Supreme Court and Fifth Circuit jurisprudence [] counsels against courts finding implied remedies." Rep. at 10; *see also* Mot. at 15. In contrast, the decision further confirms the position the FTC took in its Opposition: that Fifth Circuit courts providing equitable relief are empowered to provide equitable monetary relief. *See* Opp. at 12-15. Thus just as the Fifth Circuit "decline[d] to tie the hands of the district court" in *FTC v. Southwest Sunsites*, 665 F.2d 711, 719 (5th Cir. 1982), this Court should similarly decline to tie its own hands by rendering restitution unavailable here.

Second, the *Team Resources* court's core logic in upholding *Blatt* forecloses Match's arguments that *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), and its progeny were

"effectively overruled" by subsequent Supreme Court precedent, Mot. at 16 n.14, or are otherwise part of an "*ancien regime*" that this Court should disregard. Rep. at 10 (internal quotations omitted).[1] In *Team Resources*, the defendant raised a similar claim: that *Blatt* was effectively overruled by *Kokesh* and that the court should therefore hold disgorgement unavailable in SEC enforcement actions. 2019 U.S. App. LEXIS 33106, at *4. Rejecting that argument, the Fifth Circuit held that Supreme Court decisions must expressly overrule lower court decisions—that "Supreme Court decisions do not overturn inferior-court decisions with a wink and a nudge. Even if a Supreme Court decision bears on an issue, 'the . . . decision must be more than merely illuminating' and must 'unequivocally direct[]' the overruling of the prior decision." *Id.* at *9-10 (quoting *Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001)).[2] This logic reinforces that *Porter* and *Sunsites*—cases that no Supreme Court decision has overruled—control the scope of equitable authority available under Section 13(b) of the FTC Act. Thus just as the *Team Resources* court was "not convinced that *Kokesh* quietly revolutionized SEC enforcement proceedings," 2019 U.S. App. LEXIS 33106, at *9, this Court should decline to hold that the Supreme Court "effectively overruled" *Porter* while curiously

---

[1] Match appears to pivot from arguing in its Motion that *Porter* was quietly overruled by the Supreme Court, *see* Mot. at 16 n.14, to now arguing in its Reply that this Court should simply ignore *Porter* and, by implication, *Sunsites* as well. *See* Rep. at 10 (arguing that "the Court does not need to rely on *Porter*" to find that "Section 13(b) does not impliedly authorize monetary relief" and can merely look to new case law instead). In both our Opposition and here, the FTC is arguing precisely the opposite: that the Court should—in fact, is bound to—rely on *Porter* and *Sunsites* to conclude that 13(b) authorizes monetary relief.

[2] This holding is also consistent with the Fifth Circuit case that Match cited as supporting the need to expressly provide for monetary remedies, *Stokes v. SW Airlines*, 887 F.3d 199 (5th Cir. 2018). *See* Rep. at 10. In fact, *Stokes* had nothing to do with available forms of relief or an implied overturning of longstanding precedent. Instead, it only involved the ability of private parties to seek relief at all, and the court invalidated its precedent after finding precisely the "unequivocal[] abrogat[ion]" that the *Team Resources* court required. *See id.* at 204.

continuing to cite it in cases involving equitable relief, *see, e.g.*, *Kansas v. Nebraska,* 574 U.S. 445, 456 (2015). The Court should therefore reject Match's arguments to that effect.

Finally, the *Team Resources* court undercuts Match's argument that this Court should, or that the Fifth Circuit would, unsettle precedent by following the Seventh Circuit's decision in *FTC v. Credit Bureau Center*, 937 F.3d 764 (7th Cir. 2019). *See* Mot. at 16-17. In *Team Resources*, the Fifth Circuit court expressly declined to revisit its past holdings in light of a Ninth Circuit opinion that that the Supreme Court accepted for review, *see SEC v. Liu*, 754 F. App'x 505 (9th Cir. 2018) (unpublished), *cert. granted sub nom. Liu v. SEC*, S. Ct., 2019 U.S. LEXIS 6599 (U.S. Nov. 1, 2019) (No. 18-1501). 2019 U.S. App. LEXIS 33106, at *2. In so doing, the court reaffirmed that it "'will continue to follow binding precedent'" regardless of whether legal questions remain uncertain in other circuits or at the Supreme Court. *Id*. Thus although the FTC is currently considering whether to seek Supreme Court review of the Seventh Circuit's decision, *see* Opp. at 17 n.11, the circuit split does not weigh in favor of, as Match would have it, unsettling established Fifth Circuit law.

### B. *The New Argument in Match's Reply Does Not Help Its Cause*

In its original Motion, Match argued that "likelihood of recurrence" was simply the wrong standard for authorizing Section 13(b) relief, and that instead the Court should apply the more stringent standard set forth by the Third Circuit in *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019). *See, e.g.,* Mot. at 12 (arguing for "specific facts" alleging Match will "imminently resum[e] the challenged practices"). Perhaps because this argument ran into the inconvenient fact that the Fifth Circuit has consistently applied the "likelihood of recurrence" standard in FTC and SEC actions for decades, *see* Opp. at 5-9, Match's Reply pivots to a new tack. Now, Match argues that the Opposition "conflate[s] the standards for (1) bringing an action

under Section 13(b) ('about to violate' the law) with (2) obtaining injunctive relief from a federal court ('likely to resume' unlawful conduct)," and further alleges that Fifth Circuit law has nothing to say on the matter. Rep. at 1, 5. As Match would have it, "[n]one of the cases the FTC cites," including *Sunsites* and *Cornerstone Wealth,* "examined the threshold issue of whether the defendant is 'about to violate' the FTCA and therefore could be subject to a Section 13(b) claim." Rep. at 5. Although this position would allow Match to avoid inconvenient Fifth Circuit law, it also leaves Match arguing that Fifth Circuit courts have been unwittingly providing federal agencies relief for decades without bothering to determine whether the agencies met the statutory threshold to bring the actions in the first place. The argument fails for two reasons:

    First, a simple read of *Sunsites* and *Cornerstone Wealth* shows that Match's gloss on them is simply not true. Both the Fifth Circuit in *Sunsites* and the district court in *Cornerstone Wealth* conduct the analysis Match asserts they did not, determining whether a wrongdoer is or is about to violate the law by engaging in a likelihood of recurrence analysis. In *Sunsites*, the Fifth Circuit responded to the appellees' "argu[ment] that there was no showing of any continuing or future violations of the Act" by looking to whether the practices at issue "giv[e] rise to a 'fair inference of a reasonable expectation of continued violations' absent restraint." *Sunsites*, 665 F.2d at 723 (quoting *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100-01 (2d Cir. 1972)). Similarly, in *Cornerstone Wealth*, the district court specifically examined the "violating, or [is] about to violate" standard in Section 13 by incorporating *Blatt's* standard of "'whether defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future.'" 549 F. Supp. 2d at 816 (quoting *Blatt*, 583 F.2d at 1334). Both cases show that "likelihood of recurrence" is the standard Fifth Circuit courts have applied, and this Court should decline to follow Match in shutting its eyes and wishing it were not so.

Second, Match's position is inconsistent not only with controlling Fifth Circuit law in the 13(b) context but also in other regulatory contexts as well. For example, the Fifth Circuit has applied the "likelihood to recur" standard to SEC enforcement actions involving a statute using the same authorizing language as Section 13(b). In *SEC v. First Financial Group*, the Fifth Circuit interpreted an SEC enforcement statute applying to "any person [who] is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this title," 15 U.S.C. § 77t(b), as requiring the SEC to show "that there is a reasonable likelihood that the defendant is engaged or about to engage in practices that violate the federal securities laws."  645 F.2d 429, 434 (5th Cir. 1981); *see also Sunsites*, 665 F.2d at 717-18 (describing the statute at issue in *First Financial* as "virtually identical" to Section 13(b)). As a result, Match's position would upend not only decades of Fifth Circuit law in the FTC context but also in other regulatory contexts as well.

In sum, the Court should give short shrift to Match's new *Shire* argument.[3] Moreover, even if the Court were to embrace this new standard, Match's victory would ring hollow because the Complaint meets it. *See* Opp. at 10-12. Thus while the FTC submits that the Court should decline to follow Match into uncharted territory, it also believes the Court should ultimately find that in this case all roads lead to the same place: the Court denying Match's request for dismissal.

**II.     Conclusion**

For these reasons, the FTC respectfully requests the Court to deny Match's Motion.

---

[3] The FTC submits a final case law update: although Match noted that the *Hornbeam* court's validation of the "reason to believe" standard was subject to an appeal, *see* Rep. at 6 n.7, the Eleventh Circuit denied that appeal—an appeal the district court had certified *sua sponte*—the day after Match filed its Reply. *See FTC v. Hornbeam Special Situations, LLC*, 391 F. Supp. 3d 1218 (N.D. Ga. 2019), *appeal denied sub nom. iStream Fin. Servs. et al. v. FTC*, 19-90013 (11th Cir. Nov. 20, 2019) (unpublished).

                                  Respectfully submitted,

DATED: November 26, 2019

                                  /s/ Zachary A. Keller
                                  ZACHARY A. KELLER
                                  M. HASAN AIJAZ
                                  MATTHEW WILSHIRE
                                  Texas Bar No. 24087838 (Keller)
                                  Virginia Bar No. 80073 (Aijaz)
                                  California Bar No. 224328 (Wilshire)
                                  Federal Trade Commission
                                  1999 Bryan St. Ste. 2150
                                  Dallas, Texas 75201
                                  T: (214) 979-9382 (Keller)
                                  T: (214) 979-9386 (Aijaz)
                                  T: (214) 979-9362 (Wilshire)
                                  F: (214) 953-3079
                                  Email: zkeller@ftc.gov; maijaz@ftc.gov;
                                  mwilshire@ftc.gov
                                  Attorneys for Plaintiff
                                  FEDERAL TRADE COMMISSION

**CERTIFICATE OF SERVICE**

On November 26, 2019, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Zachary A. Keller
Zachary A. Keller
