IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>MATCH GROUP, INC., a corporation,<br><br>  Defendant. | Case No. 3:19-cv-02281-K<br><br>**Plaintiff's Reply to Defendant's Opposition to Motion for Leave to File Sur-Reply** |

**Introduction**

Match's Opposition (Dkt. 35) to our Motion for Leave to File Sur-Reply (Dkt. 32) raises several flawed points, with four meriting more than a footnote.[1] First, Match looks to inapposite case law to argue that *SEC v. Team Resources, Inc.*, 942 F.3d 272 (5th Cir. 2019), does not merit a sur-reply, when in fact the case law Match provides shows why *Team Resources* is precisely the kind of case that merits further briefing. Second, Match argues that *Team Resources* has no bearing on the issues at stake when in fact it bears on three key issues that the parties raised. Third, Match wrongly argues that the FTC used *Team Resources* as a stalking horse to raise new arguments. Finally, Match denies that its reply raised a new argument when in fact it clearly shifted from a definitional point in its original motion (that "about to violate" should not mean "likely to recur") to a procedural one in its reply (that courts conflate the 13(b) pleading standard with the one for final relief). The Court should thus admit the Sur-Reply to permit briefing on *Team Resources* and to allow the FTC to address Match's new argument.

---

[1] Match contends that the FTC's Motion is a "transparent[] attempt impermissibly at getting in the 'last word'" Opp. (Dkt. 35) at 1, 3, but the Motion requested that Match be provided the final word "in a filing of similar length." Mot. (Dkt. 32) at 3. Because its Opposition improperly argued the merits of these issues, however, the FTC submits that Match has had its say on them.

### 1. *Match's Reliance on* Alcan *is Misplaced*

Match first argues that although *Team Resources* is intervening case law, its issuance is not an "exceptional circumstance" meriting a sur-reply. Opp. (Dkt. 35) at 2.[2] In support, Match relies on *Alcan Aluminum Corp. v. BASF Corp.*, 133 F. Supp. 2d 482 (N.D. Tex. 2001), to argue that *Team Resources* is not significant or relevant enough to warrant further briefing. *See* Opp. (Dkt. 35) at 2. The differences between the sur-reply at issue in *Alcan* and the one at issue in this case, however, show why this Court would benefit from the briefing on *Team Resources*. In *Alcan*, the defendant moved for leave to file a sur-reply that covered three intervening cases at the summary judgment stage. 133 F. Supp. 2d at 490. While the *Alcan* court denied the motion, the case fails to weigh in Match's favor due to two factors not present here, and the court's reasoning in weighing each factor supports this Court's granting our Motion:

First, the *Alcan* court only denied the motion as moot, and only did so because the court had already independently identified the cases at issue, with the court's decision on the merits discussing two of them. *Id.* at 490-91. This circumstance is not likely to be true here since the FTC briefed the Court within weeks of the Fifth Circuit issuing *Team Resources*. In contrast, the *Alcan* court did not require additional briefing because, unlike here, the summary judgment motion before it had been subject to years of briefing. *See Id.* at 490 (noting nearly two years of motions relating to summary judgment). While *Alcan*'s years of motions practice gave that court ample time to find and evaluate the cases in question, the motion to dismiss before this Court is likely to be disposed of in relatively short order, and *Team Resources* is only weeks old— unpublished at the time we filed the Motion and only recently finding a place in the Federal

---

[2] Match's Opposition ignores the other case law update provided in the Sur-Reply: the denial of an interlocutory appeal Match cited in its reply. *See* Sur-Reply (Dkt. 32-1) at 6 n.3; *see also iStream Fin. Servs. et al. v. FTC*, 19-90013 (11th Cir. Nov. 20, 2019) (unpublished).

Reporter. Thus, the FTC submits that briefing the case in a sur-reply would help the Court decide Match's motion to dismiss and that the Court should therefore admit the Sur-Reply to that end.

Second, the issue at stake in the *Alcan* sur-reply—admissibility of expert testimony—did not strike at the heart of the merits of that case like the issues at stake in *Team Resources* do here. In *Alcan*, not even the expert testimony itself, much less case law updates concerning the admissibility of testimony, was deemed relevant to the summary judgment outcome.[3] Things could not be more different here. *Team Resources* bears on three central issues: the availability of equitable monetary relief, the status of Fifth Circuit precedent in light of subsequent Supreme Court case law, and the role Supreme Court certiorari should play in courts' determinations. *See* Mot. (Dkt. 32) at 2. Indeed, one of Match's three core arguments concerns the availability of monetary relief, *see, e.g.,* Mot. (Dkt. 20) at 14-17, and Match argues that Supreme Court precedent invalidated prior Fifth Circuit and Supreme Court case law. *See id.* at 16 n.14. In addition, our response to Match's near-total reliance upon an out-of-circuit "depart[ure] from the consensus view of our sister circuits" on this issue included noting that the FTC is reviewing whether to seeking certiorari. *See* Opp. (Dkt. 27) at 1, 17 n.11. Thus in contrast to *Alcan*'s case law updates, which were ultimately irrelevant to the court's determination, *Team Resources* bears on issues that may prove critical to the Court's disposal of one of Match's core arguments.

### 2. Team Resources *Addresses Issues that are Central to Match's Motion*

Match next argues that *Team Resources* is irrelevant and should not be admitted. *See* Opp. (Dkt. 35) at 2-3. In support, Match raises two arguments. First, Match argues *Team Resources* has nothing to do with equitable relief in FTC actions. Second, Match argues that

---

[3] The *Alcan* court expressly declined to make a final determination on the expert testimony at issue at the summary judgment phase, conducting "only a preliminary review" of the testimony and holding that it "need[] not, however, and therefore does not reach the issue of whether the experts' final conclusion may be considered for purposes of summary judgment." *Id.* at 493-94.

even if it did, *Team Resources* is merely a procedural decision that has nothing to do with the merits of the issue. Both arguments fail:

Match first argues that the Sur-Reply operates "on the false premise that [*Team Resources*] affects whether implied monetary relief is available under the FTCA." Opp. (Dkt. 35) at 3. As discussed in the Sur-Reply, however, *Team Resources* bears on exactly that issue: it upheld long-standing Fifth Circuit precedent authorizing equitable restitution in actions brought by federal agencies where an underlying statute does not expressly authorize it. *See* Sur-Reply (Dkt. 32-1) at 2. Indeed, the *Team Resources* court expressly endorsed that "a 'trial court act[s] properly within its equitable powers in ordering [a defendant] to disgorge the profits that he obtained by fraud.'" *Team Resources*, 942 F.3d at 277 (quoting *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)).[4] Thus, the plain language of *Team Resources* belies Match's claim.

Match then argues that even if *Team Resources* does bear on these issues, the case is merely "a purely procedural decision that makes no pronouncements about the scope of implied equitable relief under statutory schemes." Opp. (Dkt. 35) at 3. The problem with this second tack is that the Fifth Circuit's re-affirming its long-standing authorization of monetary relief for courts in equity refutes Match's position that such rulings have been displaced by intervening case law—a point that both parties addressed in our respective motions. *See* Mot. (Dkt. 20) at 15-17 (arguing that Supreme Court cases have unsettled the authorization of monetary relief for courts sitting in equity); Opp. (Dkt. 27) at 17-18, 21-23 (responding). These "procedural" issues are critical to Match's motion and thus make *Team Resources* worthy of the Court's attention.

---

[4] To Match's attempt to re-litigate whether "the Supreme Court [or] the Fifth Circuit has <u>ever</u> held that implied equitable monetary relief is available under Section 13(b)," Opp. (Dkt. 35) at 3-4, the FTC notes that our opposition covers that issue thoroughly. *See* Opp. (Dkt. 27) at 13-23.

### *3. The FTC Is Not Using* Team Resources *to Advance New Arguments*

Match next argues that our opposition to its motion to dismiss "made no argument—through analogy or otherwise—relating to SEC disgorgement," Opp. (Dkt. 35) at 2, and that therefore the Sur-Reply raises a new argument. As even a cursory review of our opposition brief's table of authorities reveals, however, the opposition discusses three SEC cases alongside cases from a variety of other regulatory contexts. Each of the SEC cases show the importance of the *Team Resources* holding,[5] and the opposition's coverage of Fifth Circuit and Supreme Court case law shows that analogizing federal agencies enforcing similarly worded statutes is a hallmark of how Fifth Circuit courts interpret Section 13(b). *See, e.g.,* Opp. (Dkt. 27) at 5 (court applying pleading standard from *Blatt* to 13(b)); 13-14 (court applying *Porter* to 13(b)). Indeed, our opposition's only instance of leaving the Fifth Circuit entirely to cover another agency, when discussing the Third Circuit declining to hold that later Supreme Court law unsettled *Porter*, *see* Opp. (Dkt. 27) at 23, would have benefited from our covering *Team Resources* instead.

### *4. Match's New Argument Merits the Brief Response the Sur-Reply Provides*

After arguing against a sur-reply briefing *Team Resources*, Match then claims that the new argument in its reply brief merely recapitulates an earlier point from its original motion to dismiss. *See* Opp. (Dkt. 35) at 4.[6] But the language that Match quotes in its Opposition belies

---

[5] First, the opposition discussed *SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1978), which a court in this district applied to Section 13(b)'s "is or is about to violate" pleading standard. *See* Opp. (Dkt. 27) at 6-7. Second, the opposition discussed *SEC v. First Fin. Grp. of Texas*, 645 F.2d 429 (5th Cir. 1981), *see* Opp. (Dkt. 27) at 9, which involved a statute the Fifth Circuit held "virtually identical" to 13(b). *Sunsites*, 665 F.2d at 717-18. Third, the opposition noted *SEC v. Manor Nursing Centers, Inc.*, 482 F.2d 1082 (2d Cir. 1972), another case whose standards the Fifth Circuit court applied to the 13(b) context in *Sunsites*, 665 F.2d at 723. *See* Opp. (Dkt. 27) at 6.

[6] Match also points to our opposition to its motion to dismiss as purportedly "us[ing] exactly the strategy predicted by Match in its opening brief," Opp. (Dkt. 35) at 5, but Match predicting our arguments is consistent with the well-settled nature of the issues at stake here. The FTC's arguments were predictable because, unlike those Match raises, they are supported by the

5

that claim. As Match notes, its original motion to dismiss argues that the FTC "conflate[s] *the plain language of*" Section 13(b)'s "is about to violate" phrase with "likelihood of recurrence." Opp. (Dkt. 35) at 4 (emphasis added). In contrast, Match's reply brief argues that the FTC "conflate[s] *the standards for* (1) bringing an action under Section 13(b) . . . with (2) obtaining injunctive relief." Rep. (Dkt. 30) at 1 (emphasis added). This second argument points to a theoretical two-step Match thinks courts should engage in, first evaluating "is about to violate" as a threshold matter and then "likelihood of recurrence" to find whether to issue an injunction.

These are two different lines of argument. In its original motion to dismiss, Match is saying that the FTC, apparently along with all Fifth Circuit courts, is making a definitional error, having "is about to violate" mean "likelihood to recur," when "is about to violate" should actually mean something else—for example, Match's preferred "ongoing or imminent" standard. *See* Mot. (Dkt. 20) at 28. In contrast, Match is making a procedural point in its reply brief—that there should be two steps to the court's analysis: first, the Court should determine whether "is about to violate" is met, then the Court should determine whether "likelihood to recur" is met for the purposes of an injunction. The FTC's Sur-Reply responds only to that second procedural argument, *see* Sur-Reply (Dkt. 32-1) at 4-6, having disposed of Match's prior semantic one in our opposition to its original motion. *See generally* Opp. (Dkt. 27) at 4-12. Thus, the Court should admit the Sur-Reply for the purposes of responding to that second argument, both to allow the FTC the opportunity to respond and to ensure that the Court is fully briefed.

## Conclusion

For the foregoing reasons, the FTC respectfully requests the Court to grant its Motion for Leave to File Sur-Reply and to admit the Sur-Reply attached to its Motion as filed.

---

overwhelming weight of case law that Match likely encountered as it researched the issues in this case.

                                                Respectfully submitted,

DATED: December 10, 2019        /s/ Zachary A. Keller_____
                                                ZACHARY A. KELLER, Texas Bar No. 24087838
                                                M. HASAN AIJAZ, Virginia Bar No. 80073
                                                MATTHEW WILSHIRE, California Bar No. 224328
                                                1999 Bryan St. Ste. 2150 Dallas, Texas 75201
                                                T: (214) 979-9382 (Keller); (214) 979-9386 (Aijaz);
                                                    (214) 979-9362 (Wilshire)
                                                F:  (214) 953-3079
                                                E: zkeller@ftc.gov; maijaz@ftc.gov; mwilshire@ftc.gov
                                                Attorneys for Federal Trade Commission

## CERTIFICATE OF SERVICE

     On December 10, 2019, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                                                                                          /s/ Zachary A. Keller
                                                                                                           Zachary A. Keller