# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | § | |
| and, STATE OF OHIO ex rel. | § | |
| ATTORNEY GENERAL DAVE | § | |
| YOST, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | EP-19-CV-196-KC |
| | § | |
| EDUCARE CENTRE SERVICES, | § | |
| INC., et al., | § | |
| | § | |
|    Defendants. | § | |

## ORDER

On this day, the Court considered Defendants Mohammad Souheil, Prolink Vision,

S.R.L., 9896988 Canada, Inc., and Sam Madi's ("Educare Defendants") Joint Opposition to

Plaintiffs' Application for Preliminary Injunction, ECF No. 94, and Defendants Globex Telecom,

Inc. and 9506276 Canada, Inc.'s ("Globex Defendants") Opposition to Plaintiffs' Application for

a Preliminary Injunction and Motion to Dissolve the Ex Parte Temporary Restraining Order,

ECF No. 115. For the reasons set forth below, the Court finds that entry of injunctive relief is

appropriate in this case because (1) Plaintiffs are statutorily authorized to seek equitable

remedies and (2) the Globex Defendants are not entitled to immunity under the common carrier

exemption. *See* Preliminary Injunction Order as to Educare Defendants 4 ¶ J, ECF No. 124

("The Court will issue a separate order addressing the issues raised by Defendants related to the

Court's authority to enter this Preliminary Injunction."); Preliminary Injunction Order as to

Globex Defendants 4 ¶ J, ECF No. 125 (same). Therefore, the Globex Defendants' Motion to

Dissolve is **DENIED**, and all Defendants are **ORDERED** to comply with the Preliminary

1

Injunctions and other remedies ordered in this case.

## I. BACKGROUND

On July 19, 2019, the Court issued a Temporary Restraining Order ("Educare TRO") granting Plaintiffs injunctive relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), based on alleged violations of the FTC Act, 15 U.S.C. § 5(a), the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.07 (West 2017), and the Ohio Telephone Solicitation Sales Act, Ohio Rev. Code Ann. § 4719.01 et seq. (West 2018). Educare TRO, ECF No. 8. The Educare TRO enjoined the Educare Defendants from making misrepresentations to consumers, violating the TSR, and selling or otherwise releasing consumer data, and ordered an asset freeze, foreign asset repatriation, and appointment of a temporary receiver. *Id.* Plaintiffs and the Educare Defendants jointly agreed to extend the Educare TRO and continue the corresponding preliminary injunction hearing through December 16, 2019. ECF Nos. 43, 64.

On December 3, 2019, Plaintiffs filed their First Amended Complaint, ECF No. 81, and the Court issued a TRO against the Globex Defendants ("Globex TRO"), ECF No. 84. The Globex TRO granted Plaintiffs injunctive relief pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), based on the Globex Defendants' alleged liability for "assisting and facilitating" the Educare Defendants' aforementioned alleged violations pursuant to the "substantial assistance" provision of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.3(b). *Id.* The Globex TRO enjoined the Globex Defendants from violating the TSR and ordered the same ancillary remedies as ordered against the Educare Defendants. *See id.*

2

On December 9, 2019, the Educare Defendants filed a Motion for Partial Summary

Judgment ("Educare Response"), ECF No. 93, laying out their opposition to injunctive relief in

this case, and their Joint Opposition to Plaintiffs' Application for Preliminary Injunction, ECF

No. 94, which fully incorporated the same arguments.  On December 12, 2019, the Globex

Defendants filed their Opposition to Plaintiffs' Application for a Preliminary Injunction and

Motion to Dissolve the Ex Parte Temporary Restraining Order ("Globex Response"), ECF No.

115.

On December 13, 2019, Plaintiffs filed a Supplemental Brief in Support of Preliminary

Injunction as to the Educare Defendants ("Plaintiffs' Educare Reply"), ECF No. 119, and a

Supplemental Brief in Support of Preliminary Injunction as to the Globex Defendants

("Plaintiffs' Globex Reply"), ECF No. 118.

On December 16, 2019, the Court held a preliminary injunction hearing as to both the

Educare Defendants and the Globex Defendants.  ECF Nos. 129, 130.  At the preliminary

injunction hearing, the Court ruled from the bench on threshold issues, denying the Globex

Defendants' motion to dissolve the temporary restraining order and finding injunctive relief

available as to all parties.  *See* ECF No. 130 at 8:50.  The Court indicated at that time that a

written Order on those issues would be forthcoming.  *See id.* at 1:51:30.  On December 17, 2019,

the Court granted Plaintiffs' motions for preliminary injunctions.  This written Order is that order

referred to at the preliminary injunction hearing.  *See* Preliminary Injunction Order as to Educare

Defendants 4 ¶ J; Preliminary Injunction Order as to Globex Defendants 4 ¶ J.

## II.   DISCUSSION

Both the Educare Defendants and the Globex Defendants argue that injunctive relief in

this case is improperly issued.  First, the Educare Defendants and the Globex Defendants argue

that equitable remedies are unavailable to the FTC under § 13(b) of the FTC Act because any allegedly unlawful conduct was not ongoing when the action was filed.  Educare Resp. 7–11; Globex Resp. 7–14.  Second, the Globex Defendants argue further that, as "VoIP" (voice over Internet Protocol) providers, they are subject to the "common carrier" exemption to the FTC's jurisdiction and therefore excepted from liability under the TSR.  Globex Resp. 14–16.  The Court addresses each in turn.

### A.   § 13(b) authority as to the Educare Defendants and the Globex Defendants

Plaintiffs allege that the Educare Defendants and the Globex Defendants are in violation of § 5 of the FTC Act, 15 U.S.C. § 45(a), and the TSR, 16 C.F.R. § 310.  Section 5 of the FTC Act prohibits "[u]nfair methods of competition."  15 U.S.C. § 45(a).  That section authorizes the FTC to seek its own administrative remedies, *id.* § 45(b), which is the agency's traditional enforcement mechanism.  *See Gibson v. FTC*, 682 F.2d 554, 560 (5th Cir. 1982); *Colonial Stores, Inc. v. FTC*, 450 F.2d 733, 739–40 (5th Cir. 1971).  Section 13(b) of the FTC Act, codified as 15 U.S.C. § 53(b), was added to the FTC Act to "improve the Commission's consumer protection powers" by enabling the FTC to seek preliminary relief from federal courts.  *See FTC v. Sw. Sunsites, Inc.*, 665 F.2d 711, 719–20 (5th Cir. 1982) (concluding from legislative history that the purpose of § 13(b)'s addition "was to add significant new weapons to the Commission's enforcement arsenal in order to make more meaningful and complete consumer relief possible," such that the Act now "clearly makes the district court a vital enforcement arm of the statute").

Section 13(b), in relevant part, provides:

> Whenever the Commission *has reason to believe*—
>     (1) that any person, partnership, or corporation *is violating, or is about to violate,* any provision of law enforced by the Federal Trade Commission, and

4

> > (2) that the enjoining thereof pending the issuance of a complaint by the
> > Commission and until such complaint is dismissed by the Commission or set
> > aside by the court on review, or until the order of the Commission made thereon
> > has become final, would be in the interest of the public--
>
> the Commission . . . may bring suit in a district court of the United States to enjoin any
> such act or practice. Upon a proper showing that, weighing the equities and considering
> the Commission's likelihood of ultimate success, such action would be in the public
> interest, and after notice to the defendant, a temporary restraining order or a preliminary
> injunction may be granted without bond . . . [and] in proper cases the Commission may
> seek, and after proper proof, the court may issue, a permanent injunction.

15 U.S.C. § 53(b) (emphasis added).

The Educare Defendants and the Globex Defendants argue that the phrase "is violating,
or is about to violate" in § 13(b)(1) requires the FTC to have knowledge of ongoing or imminent
unlawful conduct in order for the FTC to seek, and for a court to order, equitable remedies.
Educare Resp. 7; Globex Resp. 7.  Defendants contend that the conduct alleged in Plaintiffs'
complaints ceased prior to Plaintiffs' filing of this action, and therefore § 13(b) relief is
unavailable.  Educare Resp. 9–11; Globex Resp. 8–10.  Thus, they conclude that the injunctive
relief ordered in this case—asset freezes, receiverships, temporary restraining orders, and now,
preliminary injunctions—is improper and must be dissolved, leaving Plaintiffs to pursue relief
under § 5's administrative pathway instead.  Educare Resp. 8, 11; Globex Resp. 11–14.

The Educare and Globex Defendants both rely on a recent decision of the United States
Court of Appeals for the Third Circuit, *FTC v. Shire Vivropharma, Inc.* (*Shire*), 917 F.3d 147 (3d
Cir. 2019), as support for their reading of the threshold requirement in § 13(b)(1).  *See* Educare
Resp. 7–11; Globex Resp. 7–14.  In *Shire*, the Third Circuit concluded that the plain language of
§ 13(b) requires that the FTC "have reason to believe" that it is seeking to enjoin "existing or
impending conduct," not "long-past conduct without some evidence that the defendant 'is'
committing or 'is about to' commit another violation."  917 F.3d at 156.  According to the *Shire*
court, "[t]he provision was not designed to address hypothetical conduct or the mere suspicion

5

that such conduct may yet occur. . . . Nor was it meant to duplicate Section 5, which already prohibits past conduct." *Id.* While the court declined to give a more specific definition of the phrase "is about to violate"—stating that "the plain language of Section 13(b) answers the question for us"—it found that "something more than a past violation and a likelihood of recurrence" is necessary. *Id.* at 156–58. Thus, the *Shire* court held that injunctive relief was unavailable because the FTC failed to show that the defendant's violations of law were ongoing or "about to" occur. *Id.* at 160.

As explained below, this Court finds *Shire* unpersuasive in this case for two reasons: first, there is binding Fifth Circuit authority which takes a different approach from the *Shire* court to this issue; and second, even if the Court were to adopt the *Shire* court's reasoning, the facts of this case are distinguishable and counsel a different outcome.

### 1. The Fifth Circuit's application of § 13(b)

In *FTC v. Southwest Sunsites, Inc. (Sunsites)*, the Fifth Circuit first analyzed the threshold availability of injunctive relief under § 13(b). 665 F.2d at 714 & n.1, 723–24. The *Sunsites* court focused on the FTC's appeal from a district court order which had granted a § 13(b) injunction but had denied the availability of certain forms of ancillary relief under § 13(b). *See id.* at 716–23. Along with this challenge, the court also had occasion to consider the appellees' argument on cross-appeal that the district court's injunction was unauthorized by § 13(b). *Id.* at 723. Appellees argued that the unlawful conduct at issue had ended and "there was no showing of any continuing or future violations of the Act." *Id.*

The Fifth Circuit rejected the appellee's argument. *Id.* The *Sunsites* court held that the district court "acted well within its discretion" in issuing an injunction under § 13(b) because "the evidence developed to date suggests a large-scale systematic scheme tainted by fraudulent

and deceptive practices, giving rise to a 'fair inference of a reasonable expectation of continued violations' absent restraint." *Id.* (quoting *SEC v. Manor Nursing Center, Inc.*, 458 F.2d 1082, 1100-01 (2d Cir. 1972)). Thus, the Fifth Circuit read the phrases "reason to believe" and "about to violate" in § 13(b) as covering situations where defendants claim that violations have ceased, but the FTC acts on evidence that supports a reasonable inference that violative conduct will continue absent injunctive restraint.[1] *See id.*

Courts in the Fifth Circuit, and elsewhere, have adhered to this approach in analyzing the availability of equitable relief under 13(b). *See United States v. Cornerstone Wealth Corp.*, 549 F. Supp. 2d 811, 816 (N.D. Tex. 2008) (finding injunctive relief available under § 13(b) based on past violations due to reasonable likelihood of future violations, and collecting similar cases); *FTC v. Inv. Devs., Inc.*, CIV. A. No. 89-642, 1989 WL 62564, at *5 (E.D. La. June 8, 1989) (citing *Sunsites* on the availability of injunctive remedies, and stating that relief is available under § 13(b) "when there is a cognizable danger of recurrent violation"); *FTC v. Hughes*, 710 F. Supp. 1524, 1531 (N.D. Tex. 1989) (finding that relief is authorized by § 13(b) because "[t]here is a cognizable danger of recurrent violation in this case, as indicated by [the defendant's] past unlawful conduct"); *see also FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087–88 (9th Cir. 1985) (adopting the rule that, while "past wrongs" alone are insufficient, § 13(b) may authorize injunctive relief when wrongs are "ongoing or likely to recur").

---

[1] The Court notes that it is bound by the Fifth Circuit's holdings, though not by its dictum. *See Perez v. Abbott*, 253 F. Supp. 3d 864, 977 (W.D. Tex. 2017). "A statement is not dictum if it is necessary to the result or constitutes an explication of the governing rules of law." *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004). In contrast, "[a] statement is dictum if it could have been deleted without seriously impairing the analytical foundations of the holding." *Id.* ("[B]eing peripheral, [dictum] may not have received the full and careful consideration of the court that uttered it.") (internal quotation marks omitted). Here, the *Sunsites* court's application of § 13(b)—finding the district court was authorized to issue § 13(b) relief based on a fair inference of a reasonable expectation of continued violations—was necessary to the holding that the district court properly issued the injunction. *See* 665 F.2d at 723. Indeed, if this analysis were removed from the opinion, the Fifth Circuit could not have found the injunction proper. *See id.* Moreover, this is not dicta because it explains the governing law; that is, the conditions necessary for issuing a § 13(b) injunction. *See Bray*, 372 F.3d at 721. Therefore, the *Sunsites* court's § 13(b) standard is not dictum, but is a holding that binds this Court. *See id.*

Here, Plaintiffs sufficiently establish that the FTC has reason to believe that Defendants' alleged violations are ongoing or likely to continue in the future absent restraint.  Just as in *Sunsites*, Plaintiffs allege and produce evidence showing a wide-spread and organized fraudulent scheme based on deceptive business practices.  *See* 665 F.2d at 723.  When the appellees in *Sunsites* claimed the violations at issue had concluded, as Defendants claim in this case, the *Sunsites* court pointed out that "sales on-site are continuing" and "the appellees' business operations are still in place."  *Id.*  Likewise, here, Plaintiffs had evidence indicating the scheme could continue at the time the case was filed.

For example, Plaintiffs show the scheme's allegedly unlawful payment processing was continuing in the months and weeks leading up to the original complaint's filing, and even into the days after.  *See* Pl.'s Educare Reply 2–3.  Further, corporate Defendants Educare and Prolink remained active corporations when Plaintiffs filed suit.  *Id.*  Educare and corporate Defendant 9896988 Canada maintained active bank accounts, and Plaintiffs possessed evidence that illegal proceeds continued to be processed and transferred among many of the Defendants.  *Id.*  And, the alleged ringleader of the scheme, Mohammad Souheil, remained in control of the Globex Defendants at the time the original complaint was filed.[2]  *See* Pl.'s Globex Reply 4, 6–7.  Thus, as in *Sunsites*, these facts support Plaintiffs' reasonable expectation that violations would continue absent restraint, despite Defendants' claimed cessation.  *See* 665 F.2d at 723.

Just as in *Sunsites*, Plaintiffs had evidence of a large-scale fraudulent scheme with intact infrastructure at the initiation of the litigation.  *See id.*  Therefore, applying the Fifth Circuit's

---

[2] Souheil resigned this position between the filing of the original complaint and the naming of the Globex Defendants in the Amended Complaint.  Plaintiffs argue, however, that the resignation was "largely inconsequential."  Pl.'s Globex Reply 6–7.  They allege that Souheil maintained control because the Globex Defendants are majority-owned by the Souheil Family Trust, of which Souheil is beneficiary.  *Id.*  They also allege that Souheil's family members remained in control of the company after his resignation.  *Id.*

interpretation of § 13(b)'s threshold requirement, in this case the FTC's request for entry of a

TRO and Preliminary Injunction, and the Court's entry of such, are proper.  *See id.*

### 2.      Other factors indicating a likelihood of continued violations

Aside from analyzing the facts at issue, the *Sunsites* court did not provide extensive

guidance to district courts on applying § 13(b)'s threshold requirement.  *See id.*  Following

*Sunsites*, when applying § 13(b), district courts have analyzed whether the surrounding

circumstances—in addition to the past violations alleged—create a reasonable expectation that

violations will continue.  *See, e.g.*, *Cornerstone Wealth Corp.*, 549 F. Supp. 2d at 816; *Hughes*,

710 F. Supp. at 1531; *see also FTC v. Adept Mgmt., Inc.*, 1:16–cv–00720–CL, 2019 WL

1746581, at *3 (D. Ore. Apr. 18, 2019) (citing *Sunsites* in analyzing circumstances).

Plaintiffs argue the Court should apply the factors used by the district court in *United*

*States v. Cornerstone Wealth Corp.*, 549 F. Supp. 2d 811 (N.D. Tex. 2008) to analyze whether

the evidence here further supports a reasonable expectation of continuing violations.  Pl.'s

Educare Reply 4–7; Pl.'s Globex Reply 3–7.  The *Cornerstone Wealth* court listed these non-

exclusive factors for that analysis: "[The] egregiousness of the defendant's actions, the isolated

or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the

defendant's assurances against future violations, the defendant's recognition of the wrongful

nature of his conduct, and the likelihood that the defendant's occupation will present

opportunities for future violations."  549 F. Supp. 2d at 816 (internal quotation marks omitted).[3]

Other district courts have used the same factors in conducting this analysis.  *See, e.g.*, *FTC v.*

*OMICS Grp. Inc.*, 374 F. Supp. 3d 994, 1014 (D. Nev. 2019); *Adept Mgmt., Inc.*, 2019 WL

---

[3] The *Cornerstone Wealth* court incorporated these factors from *SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1978).  *Cornerstone Wealth*, 549 F. Supp. 2d at 816.  In that case, in the SEC enforcement context, the Fifth Circuit instructed that "trial court[s] should consider several factors in deciding whether to issue an injunction in light of past violations."  *Blatt*, 583 F.2d at 1334 & n.29.

1746581, at \*3; *FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 1013, 1017 (N.D. Ill. 2000);

*FTC v. Minuteman Press*, 53 F. Supp. 2d 248, 260–61 (E.D.N.Y. 1998).

The Court applies the factors it finds persuasive here.  First, the alleged conduct was egregious, recurrent in nature, and required high degrees of scienter.  The Educare and Globex Defendants allegedly carried out a systematic scheme that generated $11.5 million in consumer harm.  Pl.'s Educare Reply 5; Pl.'s Globex Reply 3.  With components in Canada, the Dominican Republic, and the United States, the alleged scheme repeatedly defrauded consumers, illegally processed payments, and transferred the proceeds across individuals and entities.  Pl.'s Educare Reply 5–6; Globex Reply 3–4.  Scienter is apparent from the reliance on deceptive methods, failure to honor business guarantees, and use of shell companies and unlawful money processing methods to evade bank account closures.  Pl.'s Educare Reply 5–6; Globex Reply 4.

Finally, at the time of the action's initiation, the Globex Defendants and individuals among the Educare Defendants remained in positions that presented opportunities for continued violations.  *See Cornerstone Wealth*, 549 F. Supp. 2d at 816.  Mohammad Souheil allegedly continues to play a role in controlling the Globex Defendants, which sent millions of dollars to Canadian entities or accounts affiliated with Souheil,  Pl.'s Globex Reply 3–4, such as Defendant 9896988 Canada, Inc., of which Souheil is owner and president.  Sam Madi, who, like Souheil, has a background in telecommunications, also allegedly remains "associated with Globex."  Pl.'s Educare Reply 6.  Charles Kharouf, departing from his past telemarketing work, is now the president of a payday lending company also affiliated with Globex and operating out of the same building, along with 9896988 Canada, Inc.  *Id.*  And, the Globex Defendants, at the time the Amended Complaint was filed, continued to offer VoIP services.  Pl.'s Globex Reply 4.  Plaintiffs claim that, at that time, Globex's two largest clients were also connected to cases

involving violations of the FTC Act. *Id.* at 4–5 (alleging that Globex "has a history of assisting and facilitating unlawful telemarketing schemes").

Ultimately, though finding Plaintiffs' showing sufficient for § 13(b) relief under *Sunsites* alone, the Court agrees with Plaintiffs that these factors further support such a finding in this case. *See Cornerstone Wealth Corp.*, 549 F. Supp. 2d at 816. Altogether, then, Plaintiffs' allegations and evidence support that, at the time of filing, the FTC had reason to believe that the alleged conduct was ongoing or reasonably expected to continue in the future absent restraint. *See id.*; *Sunsites*, 665 F.2d at 723. Accordingly, the Court may properly order injunctive relief in this case.

### 3. *Shire* is distinguishable from the facts of this case

Furthermore, while finding that *Sunsites* controls this Court's application of § 13(b), the Court notes that Plaintiffs' case is sufficient even under the Third Circuit's reading of § 13(b) in *Shire*.

In *Shire*, the FTC alleged that the pharmaceutical manufacturer defendant had submitted unlawful sham petitions to the FDA. 917 F.3d at 151–53. Five years after the alleged conduct concluded, the FTC sought to obtain injunctive relief against the defendant under § 13(b). *Id.* at 152, 160. The Third Circuit held that the alleged misconduct was too far in the past to support the FTC's belief that the defendant was presently violating, or about to violate, the law. *Id.* at 159–60. Against this factual background, the court reasoned that something more than a past violation and some likelihood of recurrence is necessary under § 13(b) to show that a defendant is "about to" violate the law. *Id.* at 159. The *Shire* court also emphasized the factual confines of its ruling, however: "Whatever the outer reach of 'about to violate' may be, the facts in this case do not approach it. We therefore leave for another day the exact confines of Section 13(b)'s

11

'about to violate' language." *Id.* at 160 (emphasizing, also, the "paucity of allegations in the complaint").

The facts of this case are readily distinguishable. The defendant in *Shire* no longer owned the product at issue in its past violation, such that it was impossible for it to continue the same scheme. *Id.* Here, by contrast, the scheme's corporate entities remained active, some with open bank accounts or ongoing relationships with the individual Defendants. Where the conduct in *Shire* had ceased five years prior to the FTC seeking the injunctive relief, here Defendants claim only that operations were entirely stopped six months prior to the lawsuit's initiation.

Even more significantly, in *Shire*, whether violations had actually ceased was not a disputed fact. *Id.* ("The FTC does not contest that Shire is not currently violating the law."). Here, however, the FTC argues it had reason to believe violations were ongoing despite Defendants' claims to the contrary. While various Defendants stated that business operations ceased prior to the suit's initiation, these statements—even fully credited—do not establish conclusively that no violations of law were occurring at the time. *See* Pl.'s Educare Reply 2–3, n.2, n.3 (summarizing Plaintiffs' documentary evidence of ongoing violations and disputing the veracity and reliability of Defendants' contrary statements). It is Plaintiffs' position in the original and first amended complaints, and also at the preliminary injunction hearing, that—in *addition* to their reasonable expectation that the scheme would continue in the future—violations were still ongoing. *See id.* at 3. Plaintiffs point to money transfers from the scheme's "rogue payment processor," Madera, to Educare's bank account in the months, weeks, and days before filing. *Id.* Subsequently, Sam Madi sent those illegally processed proceeds to Souheil or 9896988 Canada, Inc. during the same time period. *Id.*

Thus, not only are the circumstances and time period distinct from those in *Shire*, but the

FTC's position is as well.  Under *Shire*, when the FTC "chooses to use Section 13(b), it must plead that a violation of the law 'is' occurring or 'is about to' occur."  917 F.3d at 159.  The FTC did so in this case.

Therefore, Plaintiffs sufficiently show they had reason to believe that violations were ongoing and reasonably expected to continue at the time the lawsuit was initiated.  This showing makes equitable relief proper under both *Sunsites* and *Shire*.  *See Sunsites*, 965 F.2d at 723; *Shire*, 917 F.3d at 159–60.  Accordingly, the Court may properly enter the requested injunctive relief in this case.

### B.      The common carrier exception as to the Globex Defendants

Next, the Globex Defendants argue they are immune from liability under the TSR because, as a VoIP provider, they should be granted "common carrier" status.  Globex Resp. 14–16.

Section 5(a)(2) of the FTC Act exempts common carriers from the FTC's jurisdiction.  15 U.S.C. § 45(a)(2).  The same is true of the TSR.  *See* 60 Fed. Reg. 43842, 43843 (1995) (stating that the Rule does not cover activity beyond the jurisdiction of the FTC Act).  Instead, regulation of common carriers generally falls under the Federal Communications Commission's jurisdiction.  *See generally FTC v. AT&T Mobility LLC*, 883 F.3d 848, 853–56 (9th Cir. 2018).  For purposes of the exemption, determining whether a given provider is a "common carrier" is an activity-based analysis, as opposed to a status-based one.  *Id.* at 850 (explaining that a purported common carrier can only claim immunity "to the extent that a common carrier is engaging in common-carrier services").  In other words, "courts must examine the actual conduct of an entity to determine if it is a common carrier for purposes of the FTC Act exemption."  *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 60 (2d Cir. 2006).

Looking to the activity of service providers, then, the FCC's regulatory framework sorts communications services into two categories: "telecommunications services" and "information services." *See* 47 U.S.C. § 153(46); 47 U.S.C. § 153(20). Telecommunications service means "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used." 47 U.S.C. 153(53). Information services means providing "capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications." 47 U.S.C. § 153(20). Information services are distinguished from telecommunications services, in part, by their inclusion of "protocol conversion"—the "ability to communicate between networks that employ different data-transmission formats"— whereas telecommunications services only transmit without alteration. *See PAETEC Comm'ns, Inc. v. CommPartners, LLC*, No. 08–0397 (JR), 2010 WL 1767193, at *2 (D.D.C. Feb. 18, 2010) (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 975–77 (2005)). Telecommunications services are subject to the FCC's jurisdiction, whereas information services are not, and the categories are mutually exclusive. *See Brand X Internet Servs.*, 545 U.S. at 975–76; *Nat'l Ass'n of Reg. Util. Comm'rs v. FCC*, 851 F.3d 1324, 1325 (D.C. Cir. 2017).

The Globex Defendants argue that, because they provide VoIP services, they are a common carrier under the activity-based analysis. Globex Resp. 15. They assert that VoIP providers are "telecommunications carriers" under the Communications Act. *Id.* Because telecommunications carriers are "common carriers" under the FCC's regulatory scheme, the Globex Defendants conclude that they are subject to the common carrier exemption to the FTC's jurisdiction. *Id.* (citing 47 U.S.C. § 153(51)). However, the Globex Defendants' asserted, but

14

unsupported, premise—that VoIP providers are "telecommunications carriers"—is a disputed

issue here, and a long-contested one more broadly. *See PAETEC Comm'ns, Inc.*, 2010 WL

1767193, at *3 (observing, in holding that VoIP provider was providing information—not

telecommunication—services, that "[t]he telecommunications industry has been raging for years

with debate about these arguments") (internal quotation omitted).

The FCC  has abstained from taking a categorical classification position regarding VoIP

services, *see Charter Advanced Servs. (MN), LLC v. Lange*, 903 F.3d 715, 719 n.3 (8th Cir.

2018), and it does not appear that the Fifth Circuit has reached the issue.  The Globex

Defendants point to a single Southern District of Texas case where the court found the defendant,

a VoIP services provider, was exempt from liability due to common carrier status under the

Telephone Consumer Protection Act ("TCPA").  Globex Resp. 14–16 (citing *Clark v. Avatar

Techs. Phl, Inc.*, No. CIV.A. H-13-2777, 2014 WL 309079, at *3 (S.D. Tex. Jan. 28, 2014)).

This Court does not find that opinion persuasive.  First, *Clark* did not involve the FTCA,

rather the TCPA.  2014 WL 309079, at *3.  More significantly, the *Clark* court did not provide

any reasoning to support its finding that the call provider at issue was a common carrier.  *See id.*

It did not consider the legal distinction between telecommunications and information services,

nor did it consider the surrounding regulatory issues and case law.  *See id.*

In contrast, the Eighth Circuit and several district courts have concluded, in thorough

opinions, that VoIP services comparable to those of the Globex Defendants are best classified as

"information services."  *See Lange*, 903 F.3d at 719–20; *PAETEC Comm'ns, Inc.*, 2010 WL

1767193, at *3; *Sw. Bell Tel., L.P. v. Mo. Pub. Serv. Comm'n*, 461 F. Supp. 2d 1055, 1079–83

(E.D. Mo. 2006); *Vonage Holdings Corp. v. N.Y. State Pub. Serv. Comm'n*, No. 04 CIV. 4306

(DFE), 2004 WL 3398572, at *1 (S.D.N.Y. July 16, 2004); *Vonage Holdings Corp. v. Minn.*

15

*Pub. Utils. Comm'n*, 290 F. Supp. 2d 993, 999 (D. Minn. 2003).  Those cases hold that the VoIP providers at issue offered information services because protocol conversion—a defining attribute of information services under *Brand X Internet Services*, 545 U.S. at 975–77—is a necessary feature of their VoIP services.  *See, e.g.*, *Lange*, 903 F.3d at 720 ("Spectrum Voice's service is an information service because it makes available information via telecommunications by providing the capability to transform that information through net protocol conversion.") (internal quotations and alteration omitted); *Sw. Bell Tel., L.P.*, 461 F. Supp. 2d at 1081 ("Net-protocol conversion is a determinative indicator of whether a service is an enhanced or information service."); *Minn. Pub. Utils. Comm'n*, 290 F. Supp. 2d at 999 ("[C]alls in the VoIP format must be transformed . . . before a [traditional] user can receive the call.  For calls originating from a [traditional] user, the process . . . is reversed. The Court concludes that Vonage's activities fit within the definition of information services.").

In the absence of categorical guidance from the FCC, the Court finds the reasoning of these cases persuasive, that VoIP services like those of the Globex Defendants are information services.  However, the Court is mindful that whether or not the Globex Defendants' VoIP services are telecommunications services—affording common carrier status—is a fact-dependent inquiry.  *See CenturyTel of Chatham, LLC v. Sprint Comm'ns Co.*, 861 F.3d 566, 579 & n.2 (5th Cir. 2017) (Higginson, J., concurring in part and dissenting in part) ("Every other case or administrative decision . . . focused on the specifics of the VoIP service at issue to determine whether it was an information service or a telecommunication."); *Heydinger*, 2016 WL 3661136, at *2 (describing the issue as "fact-driven and dependent on numerous factors").

Indeed, classifications of services that involve VoIP technology have previously diverged because of technical specifics.  *See, e.g.*, *Fed.-State Joint Bd. on Universal Serv.*, 13 F.C.C. Rcd.

16

11501, 1998 WL 166178, at *28 (¶¶ 86–90) (F.C.C. 1998) (distinguishing between computer-to-computer VoIP services and phone-to-phone VoIP services when analyzing the telecommunication versus information service distinction); *compare Petition for Declaratory Ruling That AT&T's Phone-to-Phone IP Telephony Servs. are Exempt from Access Charges (IP in the Middle)*, 19 F.C.C. Rcd. 7457, 7465 (¶¶ 10–14) (F.C.C. 2004) (finding that AT&T's "IP in the middle" service, using VoIP technology to transmit circuit-switched calls to IP format and then back again, though without net protocol conversion, is *not* an information service), *with Petition for Declaratory Ruling (Pulver)*, 19 F.C.C. Rcd. 3307, 3314 (¶¶ 11–14) (F.C.C. 2004) (finding that an entirely VoIP-based internet calling application is an information service and not a telecommunications service).  Thus, the Fifth Circuit previously rejected a categorical rule—as to the distinct issue of access charges—that proposed classifying VoIP services as information services based on the use of net protocol conversion alone:

> Sprint contends . . . that, when there is a "net protocol conversion" from Internet-protocol format (like VoIP) into another format (like traditional format), the service is an "information service." . . . [But,] telephone calls originating in VoIP format can qualify as telecommunications services even if they terminate in a different format. Therefore, the net-protocol-conversion rule proposed by Sprint fails.

*See CenturyTel of Chatham, LLC*, 861 F.3d at 574–76.

Ultimately, here, the Globex Defendants have provided no arguments or details regarding technical features of their service, or otherwise, to support their claimed classification as a telecommunications service.  *See* Globex Resp. 14–16.  Therefore, the Globex Defendants have failed to distinguish their service from the facially comparable VoIP services held to be information services in the preponderance of cases and relevant FCC decisions.  *See Lange*, 903 F.3d at 719–20; *PAETEC Comm'ns, Inc.*, 2010 WL 1767193, at *3; *Sw. Bell Tel., L.P.*, 461 F. Supp. 2d at 1079–83; *N.Y. State Pub. Serv. Comm'n*, 2004 WL 3398572, at *1; *Minn. Pub. Utils.*

*Comm'n*, 290 F. Supp. 2d at 999; *Pulver*, 19 F.C.C. Rcd. at 3314 (¶¶ 11–14). And given that the FCC has declined to extend common carrier status to VoIP providers despite several opportunities to do so, *see Charter Advanced Servs. (MN), LLC*, 903 F.3d at 719 n.3, the Court declines, on this record, to make such a determination in their stead. *See Free Conferencing Corp. v. Comcast Corp.*, CV 15-4076 FMO (PJWx), 2016 WL 7637664, at *4 (C.D. Cal. May 31, 2016) (noting that the FCC has opted not to extend VoIP providers common carrier status, and declining to do so because "it would likely disrupt the detailed and comprehensive regulatory scheme that has, and continues to be, established and implemented by the FCC").

For these reasons, the Court finds the Globex Defendants are not immune from liability under the TSR pursuant to the common carrier exemption.

## III.   CONCLUSION

For the foregoing reasons, the Court finds Plaintiffs are statutorily authorized to seek injunctive relief and other equitable remedies in this case as to the Educare Defendants and the Globex Defendants. Furthermore, the Court finds that the Globex Defendants do not have immunity pursuant to the common carrier exemption. As a result, the Court's entry of injunctive relief in this case is proper. Accordingly, the Globex Defendants' Motion to Dissolve, ECF No. 115, is **DENIED**, and all Defendants are hereby **ORDERED** to comply with the terms of the Court's Preliminary Injunctions.

**SO ORDERED**.

**SIGNED this 14th day of January, 2020.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE