## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

FEDERAL TRADE COMMISSION,

                    Plaintiff,

    vs.

MATCH GROUP, INC., a corporation,

                    Defendant.

Case No.  3:19-cv-02281-K

## REPLY TO OBJECTION TO FTC'S PURPORTED "NOTICES"

While Match does not wish unnecessarily to congest this Court's docket with further filings related to its pending Motion to Dismiss, it respectfully submits this short response to the Federal Trade Commission's ("FTC") latest "reply" filing.

The FTC has, in fact, repeatedly made substantive arguments in its purported Notices. *See* Dkt. 38; Dkt. 39.  The FTC has serially filed unauthorized sur-replies, and Match refrained from responding until Monday.  However, Match's position is that none of the FTC's briefing after its Response has been appropriate, and the briefing should be closed.[1]

More importantly, contrary to its representation to the Court that the FTC's recent briefs to the United States Supreme Court "do not 'admit[]' or 'state[]' anything about Fifth Circuit law; instead they merely do not list Fifth Circuit law in string cites," and that the briefs have "nothing to do with the FTC's position on Fifth Circuit law," the FTC, in actuality, repeatedly stated an exact number of circuit courts—seven—that "have held that Section 13(b) authorizes a district court to award the FTC monetary remedies" and did <u>not</u> include the Fifth Circuit in those seven.

---

[1] *Alcan Aluminum Corp. v. BASF Corp*., 133 F. Supp. 2d 482, 491 (N.D. Tex. 2001) (The only time new authority justifies a sur-reply is when it makes "drastic changes in the law likely to change the court's determination *and* that the court is likely to miss in its research, or might find only with difficulty and significant effort").

This is directly contrary to the position taken in this case, which is that existing Fifth Circuit law controls the issue (it does not).

Attached hereto as Exhibits 1, 2, and 3 are copies of the FTC's filings referenced in Match's Objection to FTC's Purported "Notices." (Dkt. 40).  In those filings, the FTC wrote:

- "The question of whether Section 13(b) authorizes a district court to award the FTC monetary relief such as restitution has divided the courts of appeals.  <u>In addition to the Ninth Circuit, seven other courts of appeals have held that Section 13(b) authorizes a district court to award the FTC monetary remedies.</u>  *See FTC v. Direct Mktg. Concepts, Inc*., 624 F.3d 1, 15 (1st Cir. 2010); *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 365 (2d Cir. 2011); *FTC v. Ross*, 743 F.3d 886, 890-892 (4th Cir.), cert. denied, 574 U.S. 819 (2014); *FTC v. Security Rare Coin & Bullion Corp*., 931 F.2d 1312, 1314-1315 (8th Cir. 1991); *FTC v. Freecom Commc'ns, Inc*., 401 F.3d 1192, 1202 n.6 (10th Cir. 2005); *FTC v. United States Oil & Gas Corp*., 748 F.2d 1431, 1432-1434 (11th Cir. 1984) (per curiam)."

  o  FTC Resp. to Pet. for Writ. of Cert. at 6, *AMG Cap. Mgmt. v. FTC* (No. 19-508 filed Dec. 23, 2019) (emphasis added); FTC Resp. to Pet for Writ of Cert. at 6–7, *Publishers Bus. Servs. Inc. v. FTC* (No. 19-507 filed Dec. 13, 2019) (emphasis added).

- "The court of appeals acknowledged that it was creating a circuit split when it held 'that section 13(b)'s permanent-injunction provision does not authorize monetary relief.'  <u>Every other court of appeals that has decided that issue has held the opposite.  Specifically, the First, Second, Fourth, Eighth, Ninth, Tenth, and Eleventh Circuits</u> have all held that Section 13(b) authorizes district courts to enter injunctions that include monetary relief."

  o  FTC Pet. for Writ of Cert. at 11, *FTC v. Credit Bureau Ctr., LLC* (No. 19-825 filed Dec. 19, 2019) (emphasis added) (citations and paragraph break omitted).

- "Until the split is resolved, the FTC Act will mean one thing in the Seventh Circuit <u>and something different in seven other circuits</u>."

  o  *Id.* at 25 (emphasis added); *see also id*. at 3 & n.2 (citing cases).

Date:  March 4, 2020                    By: */s/ Angela C. Zambrano*
                                            Angela C. Zambrano
                                            State Bar No. 24003157
                                            angela.zambrano@sidley.com
                                            David Sillers
                                            State Bar No. 24072341
                                            dsillers@sidley.com
                                            SIDLEY AUSTIN LLP
                                            2021 McKinney Ave, Suite 2000
                                            Dallas, TX 75201
                                            Telephone:  214.981.3300
                                            Fax:  214.981.3400

                                            Chad S. Hummel *(admitted Pro Hac)*
                                            chummel@sidley.com
                                            SIDLEY AUSTIN LLP
                                            1999 Avenue of the Stars, 17th Floor
                                            Los Angeles, CA 90067
                                            Telephone:  310.595.9500
                                            Fax:  310.595.9501

                                            *Attorneys for Match Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

On March 4, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas.  I hereby certify that I have served the document on all counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ David Sillers*
David Sillers

# EXHIBIT 1

No. 19-508

# In the Supreme Court of the United States

———————

AMG CAPITAL MANAGEMENT, LLC, ET AL.,
PETITIONERS

*v.*

FEDERAL TRADE COMMISSION

———————

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

———————

**BRIEF FOR THE RESPONDENT**

———————

NOEL J. FRANCISCO
  *Solicitor General
    Counsel of Record
  Department of Justice
  Washington, D.C. 20530-0001
  SupremeCtBriefs@usdoj.gov
  (202) 514-2217*

## QUESTION PRESENTED

Whether Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. 53(b), empowers a district court to award equitable monetary relief in a civil enforcement action brought by the Federal Trade Commission.

(I)

## TABLE OF CONTENTS

Page

Opinions below .......................................................................... 1
Jurisdiction ................................................................................ 1
Statement .................................................................................. 2
Discussion ................................................................................. 4
Conclusion ................................................................................ 7

## TABLE OF AUTHORITIES

Cases:

*FTC* v. *Amy Travel Serv., Inc.*, 875 F.2d 564
   (7th Cir.), cert. denied, 493 U.S. 954 (1989) ...................... 6
*FTC* v. *Bronson Partners, LLC*, 654 F.3d 359
   (2d Cir. 2011) ...................................................................... 6
*FTC* v. *Commerce Planet, Inc.*, 815 F.3d 593
   (9th Cir. 2016), cert. denied, 137 S. Ct. 624 (2017) .... 3, 4, 5
*FTC* v. *Credit Bureau Ctr., LLC*, 937 F.3d 764
   (7th Cir. 2019) ..................................................................... 6
*FTC* v. *Direct Mktg. Concepts, Inc.*, 624 F.3d 1
   (1st Cir. 2010) ..................................................................... 6
*FTC* v. *Freecom Commc'ns, Inc.*, 401 F.3d 1192
   (10th Cir. 2005) ................................................................... 6
*FTC* v. *H. N. Singer, Inc.*, 668 F.2d 1107
   (9th Cir. 1982) ..................................................................... 4
*FTC* v. *Ross*, 743 F.3d 886 (4th Cir.), cert. denied,
   574 U.S. 819 (2014) ............................................................. 6
*FTC* v. *Security Rare Coin & Bullion Corp.*,
   931 F.2d 1312 (8th Cir. 1991) ............................................. 6
*FTC* v. *United States Oil & Gas Corp.*,
   748 F.2d 1431 (11th Cir. 1984) ........................................... 6
*Kokesh* v. *SEC*, 137 S. Ct. 1635 (2017) ................................. 3
*Mitchell* v. *Robert DeMario Jewelry, Inc.*,
   361 U.S. 288 (1960) ............................................................. 5

(III)

IV

Case—Continued:                                              Page

*Porter* v. *Warner Holding Co.*, 328 U.S. 395 (1946)............. 5

Statutes:

Federal Trade Commission Act,
15 U.S.C. 41 *et seq.*.............................................................. 2
15 U.S.C. 45(a)(1)............................................................. 4
15 U.S.C. 45(b)................................................................. 4
15 U.S.C. 53(b) (§ 13(b)).................................... 2, 3, 4, 5, 6

# In the Supreme Court of the United States

———

No. 19-508

AMG CAPITAL MANAGEMENT, LLC, ET AL.,
PETITIONERS

*v.*

FEDERAL TRADE COMMISSION

———

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

———

**BRIEF FOR THE RESPONDENT**

———

## OPINIONS BELOW

The opinion of the court of appeals (Pet. App. 1a-40a) is reported at 910 F.3d 417.  The order of the district court (Pet. App. 41a-73a) is reported at 29 F. Supp. 3d 1338.  The amended order of the district court (Pet. App. 74a-116a) is unreported.

## JURISDICTION

The judgment of the court of appeals was entered on December 3, 2018.  A petition for rehearing was denied on June 20, 2019 (Pet. App. 118a-119a).  On September 3, 2019, Justice Kagan extended the time within which to file a petition for a writ of certiorari to and including October 18, 2019, and the petition was filed on that date. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

(1)

2

## STATEMENT

1. Petitioners engaged in a large-scale deceptive-lending scheme involving short-term, high-interest pay-day loans to consumers. Pet. App. 4a-5a. The loan documents contained "large prominent print" informing the borrower that he would incur only a single finance charge. *Id.* at 61a. But terms that were "scattered throughout the fine print * * * create[d] a process under which" the loan would automatically be renewed, and "multiple finance charges w[ould] be automatically incurred," unless the borrower took "affirmative action" to opt out. *Id.* at 61a; see *id.* at 68a. For example, the loan documents "g[ave] the impression that a $300.00 loan * * * w[ould] only cost borrowers $90.00, when in fact, unless borrowers read the fine print and t[ook] the necessary steps to opt out of the renewal plan, such a loan w[ould] incur $675.00 in fees." *Id.* at 61a. Between 2008 and 2012, petitioners made more than 5 million loans, obtaining approximately $1.27 billion in unjust renewal finance charges. *Id.* at 4a-5a, 15a.

2. In 2012, the Federal Trade Commission (FTC) brought this civil enforcement action in federal district court, charging petitioners with violating the Federal Trade Commission Act (FTC Act), 15 U.S.C. 41 *et seq.*, and other consumer-protection laws. Pet. App. 5a-6a. The district court awarded the FTC summary judgment on liability. *Id.* at 41a-73a. As relevant here, the court ordered petitioner Scott Tucker to provide restitution for $1.27 billion in consumer losses. *Id.* at 74a-116a.

3. The court of appeals affirmed. Pet. App. 1a-40a. As relevant here, the court rejected petitioners' contention that the FTC lacked the authority to obtain monetary relief in a civil enforcement action. *Id.* at 15a-17a. The court invoked Section 13(b) of the FTC Act, which

3

states that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction," 15 U.S.C. 53(b).  The court explained that it had "repeatedly held that § 13 'empowers district courts to grant any ancillary relief necessary to accomplish complete justice, including restitution.'" Pet. App. 15a (quoting *FTC* v. *Commerce Planet, Inc.*, 815 F.3d 593, 598 (9th Cir. 2016), cert. denied, 137 S. Ct. 624 (2017)).  The court also rejected petitioners' request to revisit those precedents in light of this Court's holding in *Kokesh* v. *SEC*, 137 S. Ct. 1635 (2017), that disgorgement of money obtained in violation of federal securities laws qualified as a penalty for purposes of federal statutes of limitations.   The court of appeals noted the *Kokesh* Court's statement that "[n]othing in [its] opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement." Pet. App. 16a (quoting *Kokesh*, 137 S. Ct. at 1642 n.3).

Judge O'Scannlain, joined by Judge Bea, specially concurred to urge the court of appeals to rehear the case en banc and to hold that Section 13(b) does not authorize monetary relief. Pet. App. 23a-37a.  In Judge O'Scannlain's view, Section 13(b)'s authorization to issue an "injunction" "anticipates that a court may award relief to prevent an *ongoing* or *imminent* harm—but not to deprive a defendant of 'unjust gains from *past* violations.'" *Id.* at 24a (citation omitted).  Judge Bea also specially concurred, expressing the view that the lawfulness of petitioners' practices raised an "inherently factual" issue that was ill-suited for resolution at summary judgment. *Id.* at 38a; see *id.* at 38a-40a.

The court of appeals denied rehearing en banc with no judge requesting a vote. See Pet. App. 118a-119a.

4

## DISCUSSION

The question whether Section 13(b) of the FTC Act authorizes district courts to award equitable monetary relief has divided the courts of appeals and would ordinarily warrant this Court's review.  The Court recently granted the petition for a writ of certiorari in *Liu* v. *SEC*, cert. granted, No. 18-1501 (Nov. 1, 2019), however, to decide whether district courts may award disgorgement to the Securities and Exchange Commission (SEC) under analogous provisions of the securities laws.  In light of the overlap between this case and *Liu*, the Court should hold this petition pending the disposition of *Liu*.

1.  The FTC Act prohibits "[u]nfair methods of competition" and "unfair or deceptive acts or practices" in or affecting commerce.  15 U.S.C. 45(a)(1).  The statute empowers the FTC to enforce that prohibition through administrative proceedings in which the agency may order violators to cease and desist from unlawful practices.  See 15 U.S.C. 45(b).  In addition, Section 13(b), which Congress added to the FTC Act in 1973, authorizes the FTC to enforce that prohibition through civil actions in federal district court.  See 15 U.S.C. 53(b).  As relevant here, Section 13(b) states that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction."  15 U.S.C. 53(b).

Like almost every other court to consider the issue, the Ninth Circuit has held that a district court's authority under Section 13(b) to award a permanent injunction includes the authority to award restitution and other forms of monetary relief.  See, *e.g.*, *FTC* v. *Commerce Planet, Inc.*, 815 F.3d 593, 598 (9th Cir. 2016), cert. denied, 137 S. Ct. 624 (2017); *FTC* v. *H. N. Singer, Inc.*,

5

668 F.2d 1107, 1112 (9th Cir. 1982).  In reaching that conclusion, the Ninth Circuit has primarily relied on this Court's decisions in *Porter* v. *Warner Holding Co.*, 328 U.S. 395 (1946), and *Mitchell* v. *Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960).  In those cases, the Court stated that a legislative grant of authority to "enjoin[]" statutory violations presumptively encompasses the power to order a violator "to disgorge profits  *  *  * acquired in violation" of the relevant statutory provisions.  *Porter*, 328 U.S. at 398-399.  The Court also stated that, "[w]hen Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief."  *Mitchell*, 361 U.S. at 291-292.  The Ninth Circuit has concluded that, because Congress enacted Section 13(b) against the backdrop of those decisions, the equitable power "to enjoin future violations" conferred by Section 13(b) "carries with it the inherent power to deprive defendants of their unjust gains from past violations."  *Commerce Planet*, 815 F.3d at 599.

In contrast, Judge O'Scannlain concluded in his special concurrence below that Section 13(b) does not authorize a district court to award restitution.  See Pet. App. 23a-37a.  Judge O'Scannlain stated that "'injunction' means only 'injunction'" and does not include monetary relief such as restitution.  *Id.* at 24a.  He also concluded that his interpretation "makes good sense in the context of the 'overall statutory scheme,'" reasoning that, "[w]hile § 13(b) empowers the Commission to stop *imminent* or *ongoing* violations, an entirely different provision of the FTC Act allows the Commission to collect monetary judgments for *past* misconduct."  *Id.* at 26a (citation omitted).  Finally, Judge O'Scannlain

6

stated that, under this Court's decision in *Kokesh* v. *SEC*, 137 S. Ct. 1635 (2017), "restitution under § 13(b) would appear to be a penalty—not a form of equitable relief." Pet. App. at 30a.

2. The question whether Section 13(b) authorizes a district court to award the FTC monetary relief such as restitution has divided the courts of appeals. In addition to the Ninth Circuit, seven other courts of appeals have held that Section 13(b) authorizes a district court to award the FTC monetary remedies. See *FTC* v. *Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 15 (1st Cir. 2010); *FTC* v. *Bronson Partners, LLC*, 654 F.3d 359, 365 (2d Cir. 2011); *FTC* v. *Ross*, 743 F.3d 886, 890-892 (4th Cir.), cert. denied, 574 U.S. 819 (2014); *FTC* v. *Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314-1315 (8th Cir. 1991); *FTC* v. *Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005); *FTC* v. *United States Oil & Gas Corp.*, 748 F.2d 1431, 1432-1434 (11th Cir. 1984) (per curiam).

The Seventh Circuit previously reached the same conclusion. See *FTC* v. *Amy Travel Serv., Inc.*, 875 F.2d 564, cert. denied, 493 U.S. 954 (1989). Recently, however, that court overruled its prior circuit precedent and concluded that Section 13(b) does not authorize an award of restitution. See *FTC* v. *Credit Bureau Ctr., LLC*, 937 F.3d 764, 767 (7th Cir. 2019). The Seventh Circuit recognized that its decision "creates a circuit split." *Id.* at 767 n.1.

3. This Court recently granted the petition for a writ of certiorari in *Liu* to decide whether analogous provisions of the securities laws authorize an award of disgorgement to the SEC. The relevant statutory schemes are not identical, and the FTC's and the SEC's authority to seek monetary relief will not necessarily rise and

7

fall together.  Nevertheless, the question presented in this case and the question presented in *Liu* overlap. For example, the petitioners in this case state (Pet. 32) that "[t]he importance of the question presented * * * extends beyond the [FTC] and the FTC Act"; that "[o]ther federal agencies rely on their statutory authority to obtain injunctive relief to pursue * * * restitution, disgorgement, and other forms of monetary relief"; and that this case could "shed light on the propriety of a number of other federal agencies' enforcement regimes."  Conversely, the petitioners in *Liu* have argued that "[t]he issue [t]here [wa]s significant * * * not only to the statutory limits of the SEC's enforcement powers, but also to the appropriate limits on the power of other agencies," including "the FTC."  Pet. at 19-20, *Liu*, *supra* (No. 18-1501).  The Court therefore should hold this petition pending the disposition of *Liu*.

## CONCLUSION

The petition for a writ of certiorari should be held pending the disposition of *Liu* v. *SEC*, cert. granted, No. 18-1501 (Nov. 1, 2019), and then disposed of as appropriate in light of that decision.

Respectfully submitted.

NOEL J. FRANCISCO
*Solicitor General*

DECEMBER 2019

# EXHIBIT 2

No. 19-507

# In the Supreme Court of the United States

---

PUBLISHERS BUSINESS SERVICES, INC., ET AL.,
PETITIONERS

*v.*

FEDERAL TRADE COMMISSION

---

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

---

**BRIEF FOR THE RESPONDENT IN OPPOSITION**

---

NOEL J. FRANCISCO
  *Solicitor General*
    *Counsel of Record*
  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *SupremeCtBriefs@usdoj.gov*
  *(202) 514-2217*

## QUESTION PRESENTED

Whether Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. 53(b), empowers a district court to award equitable monetary relief in a civil enforcement action brought by the Federal Trade Commission.

(I)

## TABLE OF CONTENTS

Page

Opinions below ............................................................... 1
Jurisdiction ................................................................... 1
Statement ..................................................................... 2
Discussion .................................................................... 4
Conclusion ................................................................... 8

## TABLE OF AUTHORITIES

Cases:

*FTC* v. *AMG Capital Mgmt., LLC*, 910 F.3d 417
   (9th Cir. 2018), petition for cert. pending,
   No. 17-508 (filed Oct. 18, 2019) ........................... 6
*FTC* v. *Amy Travel Serv., Inc.*, 875 F.2d 564
   (7th Cir.), cert. denied, 493 U.S. 954 (1989) ...................... 7
*FTC* v. *Bronson Partners, LLC*, 654 F.3d 359
   (2d Cir. 2011) ................................................... 6
*FTC* v. *Commerce Planet, Inc.*, 815 F.3d 593
   (9th Cir. 2016), cert. denied, 137 S. Ct. 624 (2017) .... 3, 5, 6
*FTC* v. *Credit Bureau Ctr., LLC*, 937 F.3d 764
   (7th Cir. 2019).................................................. 7
*FTC* v. *Direct Mktg. Concepts, Inc.*, 624 F.3d 1
   (1st Cir. 2010) ................................................. 6
*FTC* v. *Freecom Commc'ns, Inc.*, 401 F.3d 1192
   (10th Cir. 2005).................................................. 7
*FTC* v. *H. N. Singer, Inc.*, 668 F.2d 1107
   (9th Cir. 1982)................................................... 5
*FTC* v. *Ross*, 743 F.3d 886 (4th Cir.), cert. denied,
   574 U.S. 819 (2014)............................................. 6
*FTC* v. *Security Rare Coin & Bullion Corp.*,
   931 F.2d 1312 (8th Cir. 1991) ............................... 7
*FTC* v. *United States Oil & Gas Corp.*,
   748 F.2d 1431 (11th Cir. 1984) ............................ 7

(III)

IV

Cases—Continued:                                                    Page

*Kokesh* v. *SEC*, 137 S. Ct. 1635 (2017) ............................... 4, 6

*Mitchell* v. *Robert DeMario Jewelry, Inc.*,
   361 U.S. 288 (1960).................................................................. 5

*Porter* v. *Warner Holding Co.*, 328 U.S. 395 (1946)............. 5

Statutes:

   Federal Trade Commission Act,
    15 U.S.C. 41 *et seq.*................................................................ 2
      15 U.S.C. 45(a)(1)........................................................ 5
      15 U.S.C. 45(b)............................................................. 5
      15 U.S.C. 53(b) (§ 13(b))....................................... 3, 4, 5, 6

# In the Supreme Court of the United States

————

No. 19-507

PUBLISHERS BUSINESS SERVICES, INC., ET AL.,
PETITIONERS

*v.*

FEDERAL TRADE COMMISSION

————

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

————

**BRIEF FOR THE RESPONDENT IN OPPOSITION**

————

**OPINIONS BELOW**

The opinion of the court of appeals (Pet. App. 1a-7a) is not published in the Federal Reporter but is reprinted at 748 Fed. Appx. 735. The order of the district court granting the Commission's motion for judgment (Pet. App. 45a-62a) is not published in the Federal Supplement but is available at 2017 WL 451953.

**JURISDICTION**

The judgment of the court of appeals was entered on August 31, 2018. A petition for rehearing was denied on June 19, 2019 (Pet. App. 63a). On September 5, 2019, Justice Kagan extended the time within which to file a petition for a writ of certiorari to and including October 18, 2019, and the petition was filed on that date. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

(1)

2

**STATEMENT**

1. From 2004 to 2008, petitioners operated a deceptive telemarketing scheme.  Pet. App. 1a.  Petitioners would call consumers "and tell them that they would get a 'surprise' if they participated in a survey."  *Id.* at 46a.  "The surprise was that [petitioners] were selling the consumer magazine subscriptions."  *Ibid.*  "[F]ast-talking sales representatives" would use "confusing and misleading" scripts to give the consumer the impression that he "was receiving free magazines," when in fact "the consumer was agreeing to pay hundreds of dollars in magazine subscription fees."  *Ibid.*  When consumers refused to pay, petitioners "engaged in misleading and abusive collections practices," including "falsely tell[ing] consumers their accounts could not be canceled" and making "harassing and threatening phone calls."  *Id.* at 46a-47a.  Petitioners obtained nearly $24 million through their scheme.  *Id.* at 60a.

2. In 2008, the Federal Trade Commission (FTC) brought this civil enforcement action in federal district court, charging petitioners with violating the Federal Trade Commission Act (FTC Act), 15 U.S.C. 41 *et seq.*, and other consumer-protection laws.  Pet. App. 1a-2a, 45a.  The district court awarded the FTC summary judgment on liability.  *Id.* at 47a.

The district court initially ordered petitioners to pay $191,219 in equitable monetary relief.  Pet. App. 2a, 47a.  The FTC appealed, arguing that the court had applied the wrong legal standard in calculating the monetary award.  *Id.* at 47a-48a.  Petitioners did not cross-appeal, and they did not argue before the district court or the court of appeals that the district court lacked authority to award monetary relief.  *Id.* at 50a.  To the contrary, petitioners stated that "it was well within the District

3

Court's discretion to choose a monetary remedy rooted in the facts of this case." 11-17270 C.A. Doc. 22, at 35 (Apr. 13, 2012); see *id.* at 29. The court of appeals, agreeing with the FTC's contention that the district court had miscalculated the monetary award, vacated the judgment and remanded the case to the district court for a recalculation. Pet. App. 47a-48a.

3. On remand, the district court awarded the Commission approximately $23.8 million in equitable monetary relief. Pet. App. 60a. For the first time, petitioners contested the court's authority to award monetary relief. The court held that petitioners' argument was "foreclosed by controlling authority" from the Ninth Circuit holding that "[d]istrict courts have the authority under Section 13(b) of the FTC Act to 'grant any ancillary relief necessary to accomplish complete justice, including restitution.'" *Id.* at 50a (quoting *FTC* v. *Commerce Planet, Inc.*, 815 F.3d 593, 598 (9th Cir. 2016), cert. denied, 137 S. Ct. 624 (2017)). The court further held, in the alternative, that petitioners had "waived this argument" by failing to "appeal [the] prior order entering a monetary award against them" and by failing to "raise the issue in their briefs opposing the FTC's appeal before the Ninth Circuit." *Ibid.*

4. The court of appeals affirmed. Pet. App. 1a-7a. As relevant here, the court rejected petitioners' contention that the FTC lacked the authority to obtain monetary relief in a civil enforcement action. *Id.* at 2a-3a. The court invoked Section 13(b) of the FTC Act, which provides that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction," 15 U.S.C. 53(b).

4

The court of appeals explained that it had "repeatedly held that Section 13(b) of the FTC Act grants district courts the power to impose equitable remedies, including restitution and disgorgement of unjust gains." Pet. App. 3a. The court rejected petitioners' request to revisit those precedents in light of this Court's holding in *Kokesh* v. *SEC*, 137 S. Ct. 1635 (2017), that disgorgement of money obtained in violation of federal securities laws qualified as a penalty for purposes of federal statutes of limitations. In that regard, the court of appeals noted the *Kokesh* Court's statement that "nothing in [its] opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement." Pet. App. 3a (quoting *Kokesh*, 137 S. Ct. at 1642 n.3) (brackets omitted).

## DISCUSSION

The question whether Section 13(b) of the FTC Act authorizes district courts to award equitable monetary relief has divided the courts of appeals and would ordinarily warrant this Court's review. In this case, however, petitioners have failed to preserve the contention that district courts lack such authority. In addition, the Court recently granted the petition for a writ of certiorari in *Liu* v. *SEC*, cert. granted, No. 18-1501 (Nov. 1, 2019), to decide whether district courts may award disgorgement to the Securities and Exchange Commission (SEC) under analogous provisions of the securities laws. In light of petitioners' failure to preserve their argument, the Court should deny the petition. In the alternative, in light of the overlap between this case and *Liu*, the Court should hold this petition pending the disposition of *Liu*.

1. The FTC Act prohibits "[u]nfair methods of competition" and "unfair or deceptive acts or practices" in

5

or affecting commerce. 15 U.S.C. 45(a)(1). The statute empowers the FTC to enforce that prohibition through administrative proceedings in which the agency may order violators to cease and desist from unlawful practices. See 15 U.S.C. 45(b). In addition, Section 13(b), which Congress added to the FTC Act in 1973, authorizes the FTC to enforce that prohibition through civil actions in federal district court. See 15 U.S.C. 53(b). As relevant here, Section 13(b) states that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." *Ibid.*

Like almost every other court to consider the issue, the Ninth Circuit has held that a district court's authority under Section 13(b) to award a permanent injunction includes the authority to award restitution and other forms of monetary relief. See, *e.g.*, *FTC* v. *Commerce Planet, Inc.*, 815 F.3d 593, 598 (9th Cir. 2016), cert. denied, 137 S. Ct. 624 (2017); *FTC* v. *H. N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982). In reaching that conclusion, the Ninth Circuit has primarily relied on this Court's decisions in *Porter* v. *Warner Holding Co.*, 328 U.S. 395 (1946), and *Mitchell* v. *Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960). In those cases, the Court stated that a legislative grant of authority to "enjoin[]" statutory violations presumptively encompasses the power to order a violator "to disgorge profits * * * acquired in violation" of the relevant statutory provisions. *Porter*, 328 U.S. at 398-399. The Court also stated that, "[w]hen Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief." *Mitchell*, 361 U.S. at 291-292. The Ninth Circuit has concluded that, because Congress enacted

6

Section 13(b) against the backdrop of those decisions, the equitable power "to enjoin future violations" conferred by Section 13(b) "carries with it the inherent power to deprive defendants of their unjust gains from past violations." *Commerce Planet*, 815 F.3d at 599.

In contrast, Judge O'Scannlain concluded in a special concurrence in a companion case to this one that Section 13(b) does not authorize a district court to award restitution. See *FTC* v. *AMG Capital Mgmt., LLC*, 910 F.3d 417, 429-437 (9th Cir. 2018), petition for cert. pending, No. 19-508 (filed Oct. 18, 2019). Judge O'Scannlain stated that "'injunction' means only 'injunction'" and does not include monetary relief such as restitution. *Id.* at 430. He also concluded that his interpretation "makes good sense in the context of the 'overall statutory scheme,'" reasoning that, "[w]hile § 13(b) empowers the Commission to stop *imminent* or *ongoing* violations, an entirely different provision of the FTC Act allows the Commission to collect monetary judgments for *past* misconduct." *Id.* at 431 (citation omitted). Finally, Judge O'Scannlain stated that, under this Court's decision in *Kokesh* v. *SEC*, 137 S. Ct. 1635 (2017), "restitution under § 13(b) would appear to be a penalty—not a form of equitable relief." *AMG Capital*, 910 F.3d at 433.

2. The question whether Section 13(b) authorizes a district court to award the FTC monetary relief such as restitution has divided the courts of appeals. In addition to the Ninth Circuit, seven other courts of appeals have held that Section 13(b) authorizes a district court to award the FTC monetary remedies. See *FTC* v. *Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 15 (1st Cir. 2010); *FTC* v. *Bronson Partners, LLC*, 654 F.3d 359, 365 (2d Cir. 2011); *FTC* v. *Ross*, 743 F.3d 886, 890-892

7

(4th Cir.), cert. denied, 574 U.S. 819 (2014); *FTC* v. *Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314-1315 (8th Cir. 1991); *FTC* v. *Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005); *FTC* v. *United States Oil & Gas Corp.*, 748 F.2d 1431, 1432-1434 (11th Cir. 1984) (per curiam).

The Seventh Circuit previously reached the same conclusion. See *FTC* v. *Amy Travel Serv., Inc.*, 875 F.2d 564, cert. denied, 493 U.S. 954 (1989). Recently, however, that court overruled its prior circuit precedent and concluded that Section 13(b) does not authorize an award of restitution. See *FTC* v. *Credit Bureau Ctr., LLC*, 937 F.3d 764, 767 (7th Cir. 2019). The Seventh Circuit recognized that its decision "creates a circuit split." *Id.* at 767 n.1.

3. Petitioners have forfeited their current argument that the district court lacked authority to grant the FTC monetary relief. Pet. App. 50a. As the district court explained, petitioners did not cross-appeal the court's initial monetary award, and they did not argue on the FTC's appeal that the court lacked the authority to award monetary relief. *Ibid.* The Ninth Circuit has "repeatedly held that [it] 'need not  *  *  *  consider a new contention that could have been but was not raised on the prior appeal,'" and "that even parties who were satisfied with the district court's judgment must file a cross-appeal to preserve issues for review in subsequent appeals following a remand." *Id.* at 6a (citation omitted).

In addition, this Court recently granted the petition for a writ of certiorari in *Liu* to decide whether analogous provisions of the securities laws authorize an award of disgorgement to the SEC. The relevant statutory schemes are not identical, and the FTC's and the

8

SEC's authority to seek monetary relief will not necessarily rise and fall together.  Nevertheless, the question presented in this case and the question presented in *Liu* overlap.  For example, the petitioners in this case describe (Pet. 3) "disgorgement in  * * *  SEC enforcement actions" as "analogous" to the award of monetary relief here.  Conversely, the petitioners in *Liu* have argued that "[t]he issue [t]here [wa]s significant * * * not only to the statutory limits of the SEC's enforcement powers, but also to the appropriate limits on the power of other agencies," including "the FTC."  Pet. at 19-20, *Liu, supra* (No. 18-1501).

In light of petitioners' failure to preserve the issue on which they seek review, this Court should deny the petition.  In the alternative, in light of the overlap between this case and *Liu*, the Court should hold this petition pending the disposition of *Liu*.

### CONCLUSION

The petition for a writ of certiorari should be denied.  In the alternative, the petition should be held pending the disposition of *Liu* v. *SEC*, cert. granted, No. 18-1501 (Nov. 1, 2019), and then disposed of as appropriate in light of that decision.

Respectfully submitted.

NOEL J. FRANCISCO
*Solicitor General*

DECEMBER 2019

EXHIBIT 3

No. 19-

Iɴ ᴛʜᴇ

# Supreme Court of the United States

————

Fᴇᴅᴇʀᴀʟ Tʀᴀᴅᴇ Cᴏᴍᴍɪssɪᴏɴ,
Pᴇᴛɪᴛɪᴏɴᴇʀ

*v.*

Cʀᴇᴅɪᴛ Bᴜʀᴇᴀᴜ Cᴇɴᴛᴇʀ, LLC ᴀɴᴅ Mɪᴄʜᴀᴇʟ Bʀᴏᴡɴ

————

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT*

————

**PETITION FOR A WRIT OF CERTIORARI
ᴀɴᴅ APPENDIX**

————

Aʟᴅᴇɴ F. Aʙʙᴏᴛᴛ*
  *General Counsel*
Jᴏᴇʟ Mᴀʀᴄᴜs
  *Deputy General Counsel
  for Litigation*
Mɪᴄʜᴀᴇʟ Bᴇʀɢᴍᴀɴ
Tʜᴇᴏᴅᴏʀᴇ (Jᴀᴄᴋ) Mᴇᴛᴢʟᴇʀ
Mᴀᴛᴛʜᴇᴡ M. Hᴏꜰꜰᴍᴀɴ
  *Attorneys*
Fᴇᴅᴇʀᴀʟ Tʀᴀᴅᴇ Cᴏᴍᴍɪssɪᴏɴ
600 Pennsylvania Ave. NW
Washington, D.C. 20580
(202) 326-2505
aabbott@ftc.gov

*\* Counsel of Record*

## QUESTION PRESENTED

Under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. 53(b), the Commission may sue those who violate the laws under its purview in federal district court. The statute authorizes district courts in such cases to issue "a permanent injunction." Seven courts of appeals have held that district courts exercising that authority may enter an injunction that requires defendants to return to the victims of their wrongdoing funds obtained through their illegal activity. One has held the opposite.

The question presented is:

Whether Section 13(b) authorizes district courts to enter an injunction that orders the return of unlawfully obtained funds.

(I)

II

**PARTIES TO THE PROCEEDING BELOW**

The caption contains the name of all the parties in the court of appeals.

III

## TABLE OF CONTENTS

Page

Opinions Below ...................................................................2

Jurisdiction .........................................................................2

Statutes Involved................................................................2

Statement ...........................................................................2

Reasons For Granting The Petition .................................10

   I.   This Case Presents A Square Circuit Split
      On An Important And Recurring Issue. ...............11

  II.  The Court Of Appeals' Decision Is Incorrect.......13

 III. The Question Presented Merits Plenary
      Review And This Case Is The Ideal Vehicle
      To Resolve It. ..........................................................22

Conclusion ........................................................................26

### APPENDIX TABLE OF CONTENTS

Court of Appeals Opinion
    (Aug. 21, 2019)..............................................................1a

District Court Opinion
    (June 26, 2018) ...........................................................65a

District Court Judgment
    (June 26, 2018) .........................................................101a

District Court Final Judgment and Order
    (June 26, 2018) .........................................................103a

Relevant Statutory Provisions .....................................135a

IV

## TABLE OF AUTHORITIES

Page

**Cases:**

*California* v. *American Stores Co.*,
  495 U.S. 271 (1990) .................................................. 15, 16

*FTC* v. *Amy Travel Serv., Inc.*,
  875 F.2d 564 (7th Cir. 1989) ...................................... 3, 17

*FTC* v. *Bronson Partners, LLC*,
  654 F.3d 359 (2d Cir. 2011) ........................................ 4, 11

*FTC* v. *Direct Mktg. Concepts, Inc.*,
  624 F.3d 1 (1st Cir. 2010) ............................................ 4, 11

*FTC* v. *Freecom Commc'ns, Inc.*,
  401 F.3d 1192 (10th Cir. 2005) ................................... 4, 12

*FTC* v. *H.N. Singer, Inc.*,
  668 F.2d 1107 (9th Cir. 1982) ............................... 3, 12, 17

*FTC* v. *Penn State Hershey Med. Ctr.*,
  838 F.3d 327 (3d Cir. 2016 ............................................... 3

*FTC* v. *Ross*, 743 F.3d 886 (4th Cir. 2014) .................... 4, 12

*FTC* v. *Sec. Rare Coin & Bullion Corp.*,
  931 F.2d 1312 (8th Cir. 1991) ............................... 3, 12, 17

*FTC* v. *U.S. Oil & Gas Corp.*,
  748 F.2d 1431 (11th Cir. 1984) ............................ 3, 12, 17

*Kansas* v. *Nebraska*,
  135 S. Ct. 1042 (2015) ............................................ 19, 20

*Kokesh* v. *SEC*, 137 S. Ct. 1635 (2017) ................... 11, 23, 24

*Lorillard* v. *Pons*, 434 U.S. 575 (1978) .............................. 16

*Meghrig* v. *KFC Western, Inc.*,
  516 U.S. 479 (1996) ........................................... 8, 18, 19

*Miller* v. *French*, 530 U.S. 327 (2000) ............................. 20

*Mitchell* v. *Robert DeMario Jewelry, Inc.*,
  361 U.S. 288 (1960) ..................................... 4, 5, 8, 15, 21

v

*NLRB* v. *Bell Aerospace Co.*,
    416 U.S. 267 (1974) ...................................................... 20

*North Haven Bd. of Educ.* v. *Bell*,
    456 U.S. 512 (1982) ...................................................... 17

*Osborn* v. *Bank of the United States*,
    22 U.S. 738 (1824) ........................................................ 14

*Porter* v. *Warner Holding Co.*,
    328 U.S. 395 (1946) ....................................4, 5, 10, 15, 20

*SEC* v. *Chenery Corp.*,
    332 U.S. 194 (1947) ...................................................... 20

*SEC* v. *Fischbach Corp.*,
    133 F.3d 170 (2d Cir. 1997) ........................................ 24

*SEC* v. *Manor Nursing*,
    458 F.2d 1082 (1972) ................................................... 16

*SEC* v. *Texas Gulf Sulphur*,
    446 F.2d 1301 (1971) ................................................... 16

*Texas Dept. of Housing & Community
    Affairs* v. *Inclusive Communities Project, Inc.*,
    135 S. Ct. 2507 (2015) ................................................. 17

*United States* v. *Lane Labs-USA, Inc.*,
    427 F.3d 219 (3d Cir. 2005) .................................... 19, 20

*United States* v. *Oakland Cannabis Buyers'
    Co-Op.*, 532 U.S. 483 (2001) ...................................... 20

*United States* v. *Rx Depot, Inc.*,
    438 F.3d 1052 (10th Cir. 2006) ................................... 20

VI

## Statutes, Court Rules, Legislative Materials:

Federal Trade Commission Act

    15 U.S.C. 45(a) ............................................................ 2

    15 U.S.C. 45(b) ..................................................... 2, 20

    15 U.S.C. 45(*l*) ............................................. 7, 12, 21

    15 U.S.C. 53(b) ..................................................... 3, 20

    15 U.S.C. 56 ................................................................ 1

    15 U.S.C. 57a ........................................................... 20

    15 U.S.C. 57b ............................................................. 8

    15 U.S.C. 57b(a) ...................................................... 13

    15 U.S.C. 57b(e) ................................................ 8, 9, 21

28 U.S.C. 2462 ............................................................. 23

29 U.S.C. 217 ................................................................. 5

42 U.S.C. 6972(a) ........................................................ 18

7th Cir. R. 40(e) ........................................................... 7

Pub. L. No. 103-312, § 10 (1994) ......................... 17

Pub. L. 109-455, § 3 (2006) .................................... 17

S. Rep. No. 93-151 (1973) ........................................ 3

S. Rep. No. 103-130 (1993) .................................... 17

## Other Authorities:

Black's Law Dictionary (10th ed. 2014) ............................ 14

FTC, Semiannual Federal Court Litigation Status
    Report (June 30, 2019) ................................................. 13

1 Dan B. Dobbs, *Law of Remedies* (2d ed. 1993)

    § 1.1 ..................................................................... 15

    § 2.9 ..................................................................... 15

1 Howard C. Joyce, *A Treatise on the Law
Relating to Injunctions* (1909)

    § 2 ....................................................................... 15

    § 2a ..................................................................... 15

VII

2 Joseph Story, *Commentaries on Equity
    Jurisprudence: As Administered in
    England and America* (1836)
    § 861...............................................................................14
    § 862 .............................................................................14

In the

# Supreme Court of the United States

————————

Federal Trade Commission,
Petitioner

*v.*

Credit Bureau Center, LLC and Michael Brown

————————

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT*

————————

**PETITION FOR A WRIT OF CERTIORARI**

The Federal Trade Commission, pursuant to the authority of 15 U.S.C. 56(a)(3)(A), respectfully petitions for a writ of certiorari to review a judgment of the United States Court of Appeals for the Seventh Circuit.[1]

————————

---

[1] The Commission rarely exercises its authority to represent itself before this Court, having done so only four times previously since Congress granted that authority 44 years ago. The Commission takes this step now not only because the decision of the court of appeals is at odds with the holdings of seven other circuits and this Court's precedents, but also because of the extraordinary importance of the issue presented. The decision of the court of appeals threatens the FTC's ability to carry out its mission by eliminating one of its most important and effective enforcement tools.

(1)

2

### OPINIONS BELOW

The opinion of the court of appeals (App., *infra*, 1a-63a) is reported at 937 F.3d 764. The opinion of the district court (App., *infra*, 65a-99a) is reported at 325 F. Supp. 3d 852.

### JURISDICTION

The judgment of the court of appeals, accompanied by a denial of rehearing, was entered on August 21, 2019. On November 8, 2019, Justice Kavanaugh extended the time within which to file a petition for a writ of certiorari to and including December 19, 2019. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

### STATUTES INVOLVED

Pertinent provisions of the Federal Trade Commission Act, 15 U.S.C. 41 *et seq.*, are reproduced in the appendix to the petition (App., *infra*, 135a-143a).

### STATEMENT

This case presents a square conflict among the circuits, explicitly acknowledged by the court below, on a recurring issue of law essential to effective enforcement of the Federal Trade Commission Act.

1. Section 5 of the Federal Trade Commission Act prohibits "unfair methods of competition" and "unfair or deceptive acts or practices" in or affecting commerce, and "empower[s] and direct[s]" the Federal Trade Commission to "prevent" such conduct. 15 U.S.C. 45(a). Before 1973, the Commission generally could enforce these prohibitions only through administrative proceedings, in which the Commission's sole remedy was an order to cease and desist from the unlawful practices. 15 U.S.C. 45(b).

In 1973, Congress added Section 13(b) to the FTC Act, giving the Commission new authority to enforce Section 5 directly in federal district courts. Section 13(b) authorizes

3

two distinct types of lawsuits. The bulk of the statute is devoted to actions for "a temporary restraining order or a preliminary injunction" in aid of an administrative proceeding. 15 U.S.C. 53(b). For example, when the Commission reviews the legality of a merger, Section 13(b) authorizes it to seek a preliminary injunction blocking the merger pending the completion of administrative proceedings. See, *e.g.*, *FTC* v. *Penn State Hershey Med. Ctr.*, 838 F.3d 327, 353-354 (3d Cir. 2016).

Section 13(b) also provides that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction" directly in federal district court. 15 U.S.C. 53(b). This proviso authorizes the Commission to file standalone enforcement actions without also undertaking an administrative proceeding. Congress added Section 13(b) to give the Commission the ability "to merely seek a permanent injunction in those situations in which it does not desire to further expand upon the prohibitions of the Federal Trade Commission Act through the issuance of a cease-and-desist order," and it expected that by allowing such actions "Commission resources will be better utilized, and cases can be disposed of more efficiently." S. Rep. No. 93-151, at 31 (1973).

2. Until the decision in this case, the courts of appeals (including the Seventh Circuit) had uniformly held for more than 35 years that a district court's authority to grant a permanent injunction under Section 13(b) includes the authority to require wrongdoers to return money that they illegally obtained.[2] Those decisions follow from this Court's

_____

[2] See *FTC* v. *H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982); *FTC* v. *U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432, 1434 (11th Cir. 1984); *FTC* v. *Amy Travel Serv., Inc.*, 875 F.2d 564, 571-572 (7th Cir. 1989); *FTC* v. *Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314-1315 (8th Cir.

4

decisions in *Porter* v. *Warner Holding Co.*, 328 U.S. 395 (1946), and *Mitchell* v. *Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960), holding that a district court exercising authority to enjoin violations of a regulatory statute may order violators to return their unlawful gains absent a clear congressional directive to the contrary.

*Porter* addressed a federal rent control statute that authorized the government to sue for a "permanent or temporary injunction, restraining order, or other order" to enforce the statute. 328 U.S. at 397. The Court held that the district court's remedial authority under the statute was not limited to prohibiting future violations; it also included the authority to order the refund of unlawfully collected rents. *Ibid.*

The Court explained that by authorizing an injunction, the statute invoked the district court's equitable jurisdiction, which made "all the inherent equitable powers of the District Court . . . available for the proper and complete exercise of that jurisdiction." *Id.* at 398. Those powers "assume an even broader and more flexible character" where the statute protects the public interest, and may be limited only by "a clear and valid legislative command," expressed "in so many words, or by a necessary and inescapable inference." *Ibid.*

Applying those principles, the Court found it "readily apparent" that the district court could enter an injunction that required the return of illegally collected rents. *Ibid.* "Nothing is more clearly a part of the subject matter of a suit for an injunction than the recovery of that which has

---

1991); *FTC* v. *Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005); *FTC* v. *Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 15 (1st Cir. 2010); *FTC* v. *Bronson Partners, LLC*, 654 F.3d 359, 365 (2d Cir. 2011); *FTC* v. *Ross*, 743 F.3d 886, 890-892 (4th Cir. 2014).

5

been illegally acquired and which has given rise to the necessity for injunctive relief." *Id.* at 399.

In *Mitchell*, the Court applied the same principles to uphold a monetary judgment entered under a provision of the Fair Labor Standards Act that empowered district courts to "restrain" violations. See 29 U.S.C. 217. The Court explained that "[w]hen Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purposes." *Mitchell*, 361 U.S. at 291-292. The Court found it insignificant that the labor statute did not include the additional phrase "other order," as the rent-control statute in *Porter* did. That clause was not necessary to the monetary judgment, but simply provided "confirmation" of the district court's authority to order the payment of wages lost as a result of the violation. *Id.* at 296.

3. The Commission depends heavily on Section 13(b) in carrying out its mandate to protect consumers and competition. It brings dozens of cases every year seeking a permanent injunction and the return of illegally obtained funds. As a result of Section 13(b) cases, the Commission has returned billions of dollars to consumers who have fallen victim to a wide variety of illegal scams. In some cases, courts order defendants to return money directly to consumers. Other times, the court orders money to be paid to the Commission itself, which then attempts to distribute recovered funds to injured consumers. Agency records show that from 2016 to 2019, the Commission returned approximately $977 million directly to consumers in Sec-

6

tion 13(b) cases. Billions more were returned to consumers directly from defendants.[3]

4. This case arises out of a scam perpetrated by respondents Michael Brown and his company, Credit Bureau Center, LLC. Respondents offered consumers a "free" credit report, but those who accepted were unwittingly enrolled in a credit-monitoring service for $30 per month. Respondents drove consumers to their websites through an affiliate that posted bogus ads for rental apartments on Craigslist. The ads and subsequent emails falsely offered desirable properties at attractive prices and instructed applicants to obtain a credit report from respondents. Duped consumers submitted more than 500 complaints to the FTC, other law enforcement agencies, and the Better Business Bureau, and suffered over $6 million in losses.

The Commission sued under Section 13(b), seeking to halt continuing violations and return the unlawful gains to consumers. The district court awarded summary judgment to the Commission. It entered a permanent injunction barring future violations of the FTC Act and requiring respondents to repay $5.2 million, the net amount they took from consumers after deducting amounts recovered from settling codefendants. App., *infra*, 103a-134a.

The district court directed that those sums be used to compensate injured consumers as "restitution." App., *infra*, 88a-89a. The judgment specifies that the money "may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for

---

[3] When it is not possible to identify victims, or distribution costs would exceed the available funds, the FTC remits money to the Treasury. In the 2016-2019 period, that happened with about $15 million, a small fraction of the funds recovered under Section 13(b).

7

the administration of any redress fund." *Id.* at 127a. If "direct redress to consumers is wholly or partially impracticable or money remains after redress is completed," the Commission may seek court approval to apply any remaining money to "other equitable relief" reasonably related to Brown's unlawful practices. *Ibid.* Only if funds remain after that may they "be deposited to the U.S. Treasury." *Ibid.*

5.a. On appeal, the Seventh Circuit affirmed the finding of liability but reversed the monetary judgment. The court overruled its longstanding precedent to hold that Section 13(b) does not authorize monetary relief. The court acted pursuant to a circuit rule permitting a panel to overrule circuit precedent or create a circuit split so long as a majority of the active judges does not vote for rehearing en banc. See 7th Cir. R. 40(e). The court acknowledged that its decision created a split with the seven other courts of appeals that have held that Section 13(b) authorizes monetary relief. App., *infra*, 3a n.1, 39a.

Examining Section 13(b)'s authorization to enter "a permanent injunction," the court thought it "obvious" that "[r]estitution isn't an injunction." App., *infra*, 12a. The court described an injunction as a "forward-facing" remedy and restitution as "a remedy for past actions." *Id.* at 14a. It contrasted the language of Section 13(b) with two other provisions of the FTC Act, Sections 5(*l*) and 19, which it characterized as "backward-facing methods to obtain monetary relief for past injury." *Id.* at 17a.

Section 5(*l*) authorizes the Commission to seek civil penalties against parties that violate an administrative cease-and-desist order and permits courts in such cases to award "mandatory injunctions and such other and further equitable relief as they deem appropriate." 15 U.S.C. 45(*l*).

8

Section 19 authorizes courts to order relief "necessary to redress injury" against persons who (1) violate a Commission rule; or (2) have been ordered to cease and desist from illegal practices in an administrative proceeding. 15 U.S.C. 57b. Although Section 19 specifies that its remedies are "in addition to, and not in lieu of, any other remedy or right of action" available to the Commission, 15 U.S.C. 57b(e), the court did not believe that the savings clause prevented it from relying on Section 19's remedies to find that monetary relief is unavailable under Section 13(b). In the court's view, such relief would "effectively nullif[y]" Section 19, and it thus declined to read the savings clause to authorize what it described as "that self-defeating effect." App., *infra*, 19a.

The court next considered the holdings in *Porter* and *Mitchell* that Congress authorizes monetary remedies when it empowers district courts in enforcement lawsuits to issue an "injunction" or to "restrain" violations. App., *infra*, 20a-23a, 29a-33a. It concluded that those decisions were no longer binding because they had been undermined by this Court's later decision in *Meghrig* v. *KFC Western, Inc.*, 516 U.S. 479 (1996). *Meghrig* held that the citizen-suit provisions of the Resource Conservation and Recovery Act (RCRA) did not allow a private party to recover costs incurred to clean up previously contaminated land. The court read *Meghrig* as having adopted a "more limited understanding of judicially implied remedies" than the one espoused in *Porter* and *Mitchell*. App., *infra*, 31a. In particular, whereas *Mitchell* instructed courts to "provide complete relief in light of the statutory purposes," 361 U.S. at 292, after *Meghrig*, the court of appeals believed that "an exploration of statutory purpose is no longer the Supreme Court's polestar in cases raising interpretive questions

9

about the scope of statutory remedies." App., *infra*, 32a. The court viewed this case as "materially indistinguishable" from *Meghrig*. *Id.* at 38a.

b. Chief Judge Wood, joined by Judges Rovner and Hamilton, dissented from the denial of rehearing en banc. App., *infra*, 41a-63a. They disagreed with the panel's conclusion that Congress's use of the term "injunction" necessarily excludes an order of restitution. Rather, they opined, injunctions "come in all shapes and sizes" and may require a party to undertake affirmative acts, including "an order requiring the enjoined party to return ill-gotten gains, or to pay money into a court escrow account, or otherwise to turn over property." *Id.* at 42a, 43a.

The dissent argued that the multiple enforcement mechanisms provided in the FTC Act do not preclude reading Section 13(b) to authorize monetary relief. Rather, agencies have "broad discretion in their choice of which of several authorized procedural tools they wish to use as they carry out their mission." App., *infra*, 45a. The dissent found that Section 19's savings clause (15 U.S.C. 57b(e)) "says it all: the non-exhaustive examples of relief Congress chose to mention in one section do not limit what a court may or may not include pursuant to another section—for instance, a 13(b) injunction." App., *infra*, 62a. Similarly, the "other and further equitable relief" clause in Section 5(*l*) simply "clarifies that courts have a wide range of equitable relief available to them" to enforce a cease-and-desist order in addition to the limited mandatory injunction. *Ibid.*

The dissent disagreed with the panel's analysis of *Meghrig*. App., *infra*, 52a-55a. It noted that *Meghrig* involved private plaintiffs suing under a very different statutory scheme, and that even in that context *Meghrig* "did not purport categorically to exclude from injunctive relief an

10

order to make payments." *Id.* at 54a. The dissent concluded that "[t]he majority's interpretation upends what the agency and Congress have understood to be the status quo for thirty years, and in so doing grants a needless measure of impunity to brazen scammers like the defendant in this case." *Id.* at 62-63a.

## REASONS FOR GRANTING THE PETITION

The court of appeals' decision creates a square circuit split on an important and recurring question: whether, in a suit brought under Section 13(b), a district court may order a defendant to both cease its illegal practices and return the money it gained as a result of those practices. The resolution of that question is critically important to the Commission's ability to carry out its consumer protection and antitrust enforcement missions. The court of appeals' decision neuters Section 13(b) within the Seventh Circuit and makes the remedies available to the Commission depend on the happenstance of geography.

The court of appeals' analysis of Section 13(b) is incorrect. The court's cramped view that injunctions are strictly limited to prohibitions on future misconduct contradicts historical understanding of that remedy. Courts and commentators have understood since the founding era that injunctions may serve reparative purposes and may include an order requiring the defendant to yield up wrongfully acquired property. That principle informs the controlling decisions in *Porter* and *Mitchell* that a statute permitting an injunction invokes "all the inherent equitable powers of the District Court," including the power to award monetary relief. *Porter*, 328 U.S. at 398. *Porter* and *Mitchell* were the law of the land when Congress added Section 13(b) to the FTC Act, and they remain good law after *Me-*

11

*ghrig*, which involved private litigation under a statute very different from Section 13(b).

The Court should grant this petition notwithstanding the grant of certiorari in *Liu* v. *SEC*, No. 18-1501, which involves whether disgorgement under the securities laws is an equitable remedy in light of this Court's decision in *Kokesh* v. *SEC*, 137 S. Ct. 1635 (2017), that such orders are penal in nature. The answer to that question will not resolve whether Section 13(b) authorizes district courts entering a permanent injunction against illegal conduct to order that money taken by that conduct be returned to consumers. The question here is distinct from the question in *Liu*, will not be resolved in that case, and warrants independent review.

## I.   THIS CASE PRESENTS A SQUARE CIRCUIT SPLIT ON AN IMPORTANT AND RECURRING ISSUE.

The decision of the court of appeals has unsettled the longstanding and uniform judicial interpretation that Section 13(b) authorizes district courts to enter injunctions requiring the return of illegally obtained funds. The court of appeals acknowledged that it was creating a circuit split when it held "that section 13(b)'s permanent-injunction provision does not authorize monetary relief." App., *infra*, 40a. Every other court of appeals that has decided that issue has held the opposite.

Specifically, the First, Second, Fourth, Eighth, Ninth, Tenth, and Eleventh Circuits have all held that Section 13(b) authorizes district courts to enter injunctions that include monetary relief. See *FTC* v. *Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 15 (1st Cir. 2010); *FTC* v. *Bronson Partners, LLC*, 654 F.3d 359, 367 (2d Cir. 2011) ("In sum, Section 13(b) of the FTC Act permits courts to award not only injunctive relief but also ancillary relief, including mone-

12

tary relief."); *FTC* v. *Ross*, 743 F.3d 886, 890-892 (4th Cir. 2014) ("[B]ecause there is no affirmative and clear legislative restriction on the equitable powers of the district court, ordering monetary consumer redress is an appropriate 'equitable adjunct' to the district court's injunctive power."); *FTC* v. *Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314-1315 (8th Cir. 1991); *FTC* v. *H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982); *FTC* v. *Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005) ("[Section] 13(b)'s grant of authority to provide injunctive relief carries with it the full range of equitable remedies, including the power to grant consumer redress."); *FTC* v. *U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432, 1434 (11th Cir. 1984). Unlike the decision below, those courts have continually applied this Court's decisions in *Porter* and *Mitchell* to uphold that authority.

The issue is critically important: the ability to seek an injunction that requires the defendant to return illegally obtained funds to consumers is essential to the effective enforcement of the FTC Act and other laws enforced by the Commission. Stripping district courts of that authority would reduce Section 13(b) to a stop sign and would effectively reward fraudsters for their illegal conduct.

Contrary to the court of appeals' view, neither Section 5(*l*) nor Section 19 of the FTC Act is an adequate alternative to requiring the return of unlawful gains under Section 13(b). Section 5(*l*) allows civil penalties, but only against parties who have already been ordered by the Commission to cease and desist in an administrative enforcement proceeding and who then violate that order. See 15 U.S.C. 45(*l*). It does not allow courts to order the return of gains from the original misconduct that led to the cease-and-desist order. Section 19 is also of limited utility. Although it

13

authorizes district courts to redress harm to consumers from violations of FTC rules, 15 U.S.C. 57b(a)(1), many cases do not involve rule violations. Section 19 also allows district courts to redress consumer harm in certain cases against defendants who have gone through the administrative process and been ordered to cease and desist from unfair or deceptive acts or practices. 15 U.S.C. 57b(a)(2). That remedy would be illusory in most of the cases that the Commission brings under Section 13(b) because defendants would dissipate their ill-gotten gains long before the Commission ever got to court. In suits under Section 13(b), the district court may freeze assets at the outset of litigation, but Section 19 does not provide similar protection.

The issue is also recurring. The FTC brings dozens of cases each year seeking injunctions that return funds to consumers under Section 13(b). As of mid-2019, 55 such cases were pending in district courts.[4] The question presented here is integral to all of them. Three pending appellate cases raise the same issue, as do two currently pending petitions seeking certiorari in this Court. See *FTC* v. *Hoyal & Assocs.*, No. 19-35668 (9th Cir.); *FTC* v. *Abbvie, Inc.*, No. 18-2621 (3d Cir.); *FTC* v. *Dorfman*, No. 19-11932 (11th Cir.); cert. petitions in *Publishers Bus. Serv., Inc.* v. *FTC*, No. 19-507 & *AMG Capital Mgmt., LLC* v. *FTC*, No. 19-508.

## II.  THE COURT OF APPEALS' DECISION IS INCORRECT.

1. The court of appeals' decision rests on the proposition that "injunction" plainly refers only to forward-looking relief and necessarily excludes an order to return money

---

[4] See generally FTC, Semiannual Federal Court Litigation Status Report, June 30, 2019, https://www.ftc.gov/system/files/attachments/quarterly-litigation-status-report/semiannual_litigation_report_6-30-19.pdf.

14

improperly obtained in the past. It is "obvious," the court held, that "[r]estitution isn't an injunction." App., *infra*, 12a. That narrow reading of "injunction" was error.

Contrary to the court of appeals' reading, it has long been understood that an injunction can provide for restitution or other forms of monetary relief to undo harm caused by the defendant's conduct. The leading legal dictionary defines "injunction" as "[a] court order commanding or preventing an action" and notes that the term encompasses a "reparative injunction" which "requir[es] the defendant to restore the plaintiff to the position that the plaintiff occupied before the defendant committed a wrong." *Black's Law Dictionary* 904-905 (10th ed. 2014). Indeed, the understanding that injunctions may both prohibit future misconduct and remedy past harm by requiring the restoration of wrongfully obtained property dates at least to the earliest days of the Republic. Justice Story, for example, explained that although injunctions are "generally preventative and protective, rather than restorative," they are "by no means confined to the former," and "may contain a direction to the party defendant to yield up . . . lands or other property, constituting the subject-matter of the decree, in favor of the other party." 2 Joseph Story, *Commentaries on Equity Jurisprudence, as Administered in England and America* §§ 861-862, at 154-155 (1836). Applying that principle in *Osborn* v. *Bank of the United States*, 22 U.S. 738 (1824), the Court affirmed an injunction that forbade enforcement of a state tax law against the Bank and directed the state to return money improperly seized from the Bank under that law. *Id*. at 870-871.

An early-20th-century commentator similarly explained that injunctions may "in some cases be used to reinstate the rights of persons to property of which they have been

15

deprived," and that "a preventative and a mandatory injunction" can be "made to co-operate so that by a single exercise of equitable power an injury is both restrained and repaired." 1 Howard C. Joyce, *A Treatise on the Law Relating to Injunctions* §§ 2, at 5; 2a, at 7 (1909). In the modern era, the leading scholar on remedies, Professor Dobbs, agrees that an injunction "may attempt to prevent harm, or to compel some form of reparation for harm already done," and that "some injunctive orders both repair and prevent harm." 1 Dan B. Dobbs, *Law of Remedies* §§ 1.1, at 7; 2.9, at 225 (2d ed. 1993). Professor Dobbs specifically notes that an injunction may compel restitution. *Id.* § 1.1, at 7.

*Porter* and *Mitchell* rest on the same principles. As the Court explained, "[n]othing is more clearly a part of the subject matter of a suit for an injunction than the recovery of that which has been illegally acquired and which has given rise to the necessity for injunctive relief." *Porter*, 395 U.S. at 399. It therefore requires an affirmative expression of Congress "in so many words, or by a necessary and inescapable inference," to exclude that authority when Congress has authorized an injunction. *Id.* at 398; *Mitchell*, 361 U.S. at 291. As further discussed below, those principles were well established when Congress granted district courts the authority to enter "a permanent injunction" in Section 13(b), but Congress did not place any limit on the grant of authority. The court of appeals, on the other hand, disregarded the established understanding by reading "injunction" to exclude monetary remedies.

This Court has continued to recognize the broad nature of injunctions in cases decided after *Porter* and *Mitchell*. In *California* v. *American Stores Co.*, 495 U.S. 271 (1990), for example, the Court held that an order requiring divestiture

16

of unlawfully acquired assets is a form of "injunctive relief" under the Clayton Act. The Court explained that "[o]n its face," a statute authorizing "injunctive relief" was broad enough to encompass an order requiring a company to divest itself of illegally acquired assets. *Id.* at 281. The statute stated "no restrictions or exceptions to the forms of injunctive relief" that could be awarded, but instead expressed "Congress' intention that traditional principles of equity govern the grant of injunctive relief." *Ibid.* The "plain text" of the statute therefore authorized divestiture. *Id.* at 282. As the dissent in this case correctly observed, "[a]n order of divestiture is almost identical to an order requiring equitable restitution: both require the wrongdoer to turn over property that was unlawfully obtained." App., *infra*, 44a. The court of appeals' decision, by contrast, cannot be squared with *American Stores*.

2. When Congress passes a law, it is presumed to understand how courts have interpreted existing laws using the same or similar language. See *Lorillard* v. *Pons*, 434 U.S. 575, 580-581 (1978). By the time Congress adopted Section 13(b) in 1973, this Court's decisions in *Porter* and *Mitchell* were settled law. In addition, the Second Circuit had recently held that the authority to enter a "permanent or temporary injunction" in the securities laws authorized district courts to order the return of ill-gotten gains. See *SEC* v. *Texas Gulf Sulphur*, 446 F.2d 1301, 1307-1308 (1971); *SEC* v. *Manor Nursing*, 458 F.2d 1082, 1103-1105 (1972). Congress would have understood that a statute empowering district courts to enter "a permanent injunction" in Section 13(b) would be interpreted the same way.

Further, when Congress amends a statute but chooses not to alter an existing statutory interpretation "then presumably the legislative intent has been correctly dis-

17

cerned." *North Haven Bd. of Educ.* v. *Bell*, 456 U.S. 512, 535 (1982). In 1994, Congress undertook a thorough review of the FTC Act in connection with a reauthorization of the Commission. By then, multiple courts of appeals had recognized that Section 13(b) authorizes orders to return ill-gotten gains to consumers.[5] Congress amended Section 13(b) to expand its venue provisions and authorize nation-wide service of process, but did not alter the permanent injunction clause. See Pub. L. No. 103-312, § 10 (1994). That is "convincing support for the conclusion that Congress accepted and ratified the unanimous holdings of the Courts of Appeals." *Texas Dept. of Housing & Community Affairs* v. *Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2520 (2015). Indeed, the relevant Senate Report notes that Section 13(b) "authorizes the FTC to file suit to enjoin any violation of the FTC [Act]" and "obtain consumer redress," and explained that the expansion of venue and service of process provisions were intended to "assist the FTC in its overall efforts." S. Rep. No. 103-130, at 15-16 (1993).

By 2006, when still more courts of appeals had recognized that Section 13(b)'s authority encompasses monetary relief, Congress amended Section 5 to give the FTC authority over aspects of foreign commerce and stated in the statute that the new authority would include "[a]ll remedies available to the Commission . . . including restitution to domestic or foreign victims." Pub. L. 109-455, § 3 (2006) (codified at 15 U.S.C. 45(a)(4)). By then, courts had ordered such relief under Section 13(b) hundreds of times, as Congress would have been well aware.

---

[5] See *H.N. Singer*, 668 F.2d at 1112-1113; *U.S. Oil & Gas*, 748 F.2d at 1432, 1434; *Amy Travel Serv.*, 875 F.2d at 571-72; *Sec. Rare Coin*, 931 F.2d at 1314-15.

18

In the decision below, however, the court of appeals summarily rejected those strong indications of legislative intent, thereby overriding the principles of statutory interpretation the Court has repeatedly set out. App., *infra*, 19a-20a. That was error.

3. The court of appeals further erred in its conclusion that this Court's decision in *Meghrig* undermined *Porter* and *Mitchell* and that an order returning ill-gotten gains to consumers under Section 13(b) is "materially indistinguishable" from the relief sought in *Meghrig*. App., *infra*, 32a-33a, 38a.

*Meghrig* involved a lawsuit filed by a private landowner against a prior owner to recover the costs of environmental cleanup under a provision of RCRA that permits such a suit where contamination presents "an imminent and substantial endangerment to health or the environment." 42 U.S.C. 6972(a)(1)(B). In such cases, the statute authorizes courts to "restrain" persons who contributed to pollution or order them to "take such other action as may be necessary." *Meghrig*, 516 U.S. at 484 (quoting 42 U.S.C. 6972(a)). When the case was filed, the landowner had already cleaned up the land, and the environmental contamination therefore presented no danger. The Court held that on those facts the statute "does not contemplate the award of past cleanup costs," and that once the land had been remediated, the statute "quite clearly excludes waste that no longer presents such a danger." *Id.* at 485-486, 488.

*Meghrig* does not undermine *Porter* and *Mitchell* or control this case for several reasons. First, unlike statutes that authorize permanent injunctions without qualification (like Section 13(b) and those at issue in *Porter* and *Mitchell*), RCRA limits a court's remedial authority to cases of imminent and substantial danger. The lawsuit in *Meghrig*

19

failed that statutory condition for suit because the land had already been decontaminated; the plaintiff sought "a remedy that compensates for past cleanup efforts." *Id.* at 486. No similar situation existed in *Porter* and *Mitchell* or in this case, where the illegal scheme was ongoing at the time of suit. Indeed, *Meghrig* expressly declined to address whether "a private party could seek to obtain an injunction requiring another party to pay cleanup costs which arise after a RCRA citizen suit has been properly commenced." *Id.* at 488. As the dissent in this case correctly noted, *Meghrig* "did not purport categorically to exclude from injunctive relief an order to make payments." App., *infra*, 54a.

Second, *Meghrig* involved a private plaintiff, not (as in *Porter* and *Mitchell*, and here) a government enforcement action. As the Third Circuit noted in rejecting the claim that *Meghrig* limits remedies in government enforcement cases, the money sought by the plaintiff "resembles traditional damages far more than . . . restitution." *United States* v. *Lane Labs-USA, Inc.*, 427 F.3d 219, 231 (3d Cir. 2005).

Third, RCRA's citizen-suit injunctive provision is integrally tied into "the extensive remedial scheme" that might have been disrupted by allowing monetary relief for already-remediated land. *Id.* at 231-232. That was not the case in *Porter* or *Mitchell*.

Finally, nothing in *Meghrig* purports to undermine the principles established in *Porter*. Although the Court did not accept a government argument that relied partly on *Porter*, see *Meghrig*, 516 U.S. at 487, it did not suggest that it was overruling or limiting the earlier decision. And since *Meghrig* was decided, the Court has relied upon *Porter* without qualification multiple times. In particular, in *Kansas* v. *Nebraska*, 135 S. Ct. 1042 (2015), the Court relied on *Porter*

20

in support of its authority to impose a monetary remedy under its equitable authority to apportion interstate water rights. *Id.* at 1052-1053, 1057. The Court noted that "[w]hen federal law is at issue and 'the public interest is involved,' a federal court's 'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'" *Id.* at 1053 (quoting *Porter*, 328 U.S. at 398); see also *United States* v. *Oakland Cannabis Buyers' Co-Op.*, 532 U.S. 483, 496-497 (2001); *Miller* v. *French*, 530 U.S. 327, 340 (2000).

In light of these factors, other courts of appeals have correctly held that "*Meghrig* did not overrule or limit *Porter* and *Mitchell.*" *United States* v. *Rx Depot, Inc.*, 438 F.3d 1052, 1057 n.3 (10th Cir. 2006); *accord Lane Labs*, 427 F.3d at 232 (finding no "indication, either in *Meghrig* or since, that the Court has abandoned the holdings of *Porter* and *Mitchell*"). In this case, the court of appeals erred by relying on *Meghrig* rather than the directly controlling authorities of *Porter* and *Mitchell.*

4. The court of appeals further erred in its conclusion that the remedies created by two other enforcement provisions of the FTC Act mean that injunctions under Section 13(b) cannot order defendants to return money they took from consumers. App., *infra*, 15a-16a.

The FTC Act gives the Commission multiple ways to enforce the laws under its authority: by rulemaking, through the administrative cease-and-desist process, and through direct enforcement actions in federal court. See 15 U.S.C. 57a (rulemaking); 45(b) (administrative enforcement); 53(b) (direct action). The choice between those enforcement mechanisms lies "in the informed discretion of the administrative agency." *SEC* v. *Chenery Corp.*, 332 U.S. 194, 203 (1947); see also *NLRB* v. *Bell Aerospace Co.*, 416

21

U.S. 267, 294 (1974). The court of appeals misapplied that principle by effectively ruling that when Congress allows a type of relief under one statutory enforcement mechanism, it necessarily withholds such relief from other mechanisms.

Section 5(*l*) of the Act, 15 U.S.C. 45(*l*), serves the sole purpose of supplementing the Commission's administrative enforcement authority. It allows the Commission to sue for relief only against violators of a cease-and-desist order entered through the administrative process and provides remedies tailored for such violations, including civil penalties, "mandatory injunctions," and "other and further equitable relief." *Ibid*. The court of appeals erred in holding that without similar clauses Section 13(b) cannot support an order returning money to consumers. App., *infra*, 15a-16a. That is the very approach this Court rejected in *Mitchell* when it held that a statute authorizing an injunction need not also provide for "other order[s]" to justify monetary relief. 361 U.S. at 296.

The court of appeals was likewise wrong to hold that the monetary relief authorized by Section 19 limits the scope of Section 13(b). Congress stated expressly that the "[r]emedies provided" in Section 19 "are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law. Nothing in [Section 19] shall be construed to affect any authority of the Commission under any other provision of law." 15 U.S.C. 57b(e). Given that savings clause, Section 19 cannot properly be read to limit the remedies available under Section 13(b).

Nor does reading Section 13(b) to authorize monetary remedies render the procedural requirements to obtain monetary relief under Section 19 (as described by the court of appeals, App., *infra*, 16a-17a) "largely pointless." App., *infra*, 17a. To the contrary, the two sections support the

22

Commission's prerogative to choose among the enforcement tools Congress has provided by balancing power between the courts and the Commission depending on which route the agency takes. When the Commission opts for direct action under Section 13(b) to end illegal practices and return money to consumers, it cedes to the court the determination whether there has been a violation. By contrast, if the Commission chooses to proceed under Section 19, it retains plenary authority to determine that a particular practice should be prohibited (through rulemaking) or that particular conduct is illegal (through the administrative process), but in exchange for having to satisfy the procedural requirements of Section 19 before seeking judicial redress. The court of appeals' decision upends that balanced remedial scheme by crippling Section 13(b) and requiring the Commission to obtain consumer redress only via Section 19. That was error.

### III. THE QUESTION PRESENTED MERITS PLENARY REVIEW AND THIS CASE IS THE IDEAL VEHICLE TO RESOLVE IT.

The question presented here is also presented by the petitions in No. 19-508, *AMG Capital Management* v. *FTC*, and No. 19-507, *Publishers Business Services* v. *FTC*. In his response to the *AMG* petition, the Solicitor General acknowledges that the circuit split would "ordinarily warrant this Court's review," but recommends that the Court hold that petition based on a perceived "overlap" between the issue here and the question presented in No. 18-1501, *Liu* v. *SEC* (petition granted Nov. 1, 2019).[6] The Court should not hold this petition but grant it and hold *AMG*

---

[6] The Solicitor General's brief in opposition in No. 19-507, *Publishers Business Services, Inc.* v. *FTC*, recommends that the petition be denied or in the alternative held for *Liu*.

23

pending resolution of this case. The question presented here is ripe for review, distinct from *Liu*, and unlikely to be answered by the Court's disposition of that case. At the same time, the circuit split has a continuing adverse effect on the Commission's ability to protect consumers, and this case presents an ideal vehicle to resolve it.

1. The question presented in *Liu* is: "Whether the Securities and Exchange Commission may seek and obtain disgorgement from a court as 'equitable relief' for a securities law violation even though this Court has determined that such disgorgement is a penalty." That question follows from the Court's recent decision that "SEC disgorgement constitutes a penalty" within the meaning of the 5-year statute of limitations for civil penalties, 28 U.S.C. 2462. *Kokesh* v. *SEC*, 137 S. Ct. 1635, 1638 (2017). Whether SEC disgorgement is properly considered an "equitable" remedy in light *Kokesh* will not resolve the question here, namely, whether the authority in Section 13(b) of the FTC Act to enter a "permanent injunction" authorizes an order to return to consumers money illegally taken from them.

Indeed, the petitioners' merits brief in *Liu* demonstrates that the issues presented there will not determine the outcome here. The brief's argument focuses on (1) the SEC's statutory authority to obtain "disgorgement"; (2) the Court's decision in *Kokesh* that SEC disgorgement is penal; (3) whether penal remedies are within the traditional scope of equity; and (4) the effect of holding in Liu's favor. *Liu* Pet. Br. 15-19 & 35-40, 19-26, 26-33, 40-43. To make the case that SEC disgorgement orders are penal and not "equitable," the brief takes pains to distinguish disgorgement orders that *do not* return money to victims from orders that provide restitution to injured parties. *Id.* at 6, 25, 30-31, 34 & n.16.

24

Unlike the SEC disgorgement orders at issue in *Liu*, neither this Court nor any other has held that orders including monetary relief under the FTC Act are punitive. Indeed, the judgments in *Liu* and this case starkly illustrate the differences between SEC disgorgement and the relief awarded under Section 13(b). The court in *Liu* ordered $26.7 million in disgorgement and did not require that the SEC use the money to compensate injured investors.[7] *Liu* Pet. App. 62a. Here, by contrast, the judgment directs that the monetary relief be used for "consumer redress and any attendant expenses for the administration of any redress fund."[8] Such compensatory orders are typical in Section 13(b) cases; as discussed above, virtually all of the money the FTC recovers is repaid to injured consumers.

Thus, no matter how the Court resolves its holding in *Kokesh* that SEC disgorgement is a penalty with the contention that relief under the securities laws must be "equitable," the decision in *Liu* will not answer whether Section 13(b) authorizes district courts to order monetary relief for compensatory purposes.

2. That question has been definitively answered in eight circuits, with only the decision below diverging from the others.[9] It is ripe for review now. The issue has been thor-

---

[7] That approach appears typical of SEC disgorgement cases. In *Kokesh*, this Court observed that "in many cases, SEC disgorgement is not compensatory" and that courts have required disgorgement "regardless of whether the disgorged funds will be paid to such investors as restitution." 137 S. Ct. at 1644 (quoting *SEC* v. *Fischbach Corp.*, 133 F.3d 170, 176 (2d Cir. 1997)).

[8] The order provides for disgorgement to the Treasury only as a last resort. App., *infra*, 127a.

[9] The question is pending in one court with no binding precedent on the issue, see *FTC* v. *Abbvie Inc.*, No. 18-2621 (3d Cir.).

25

oughly examined in multiple decisions in the courts of appeals for more than 30 years and is unlikely to benefit from further percolation. Because it will not be answered in *Liu*, holding this petition would serve no purpose other than delay while a serious impediment to Commission enforcement persists.

Until the split is resolved, the FTC Act will mean one thing in the Seventh Circuit and something different in seven other circuits. In the Seventh Circuit, unlike the others, Section 13(b) will be useless to return money taken from consumers by scam artists like respondents. The circuit split will also cause unnecessary and time-consuming litigation over forum: defendants have already sought to force enforcement cases against them into courts in the Seventh Circuit. The upshot is Commission resources spent on procedural fencing rather than enforcement action. Given the consequences to Commission enforcement and to the consumers it seeks to protect, the Court should not delay resolution of the issue, but should grant the petition in this case.

If—following *Liu*—the Court were simply to remand this case (and *AMG*), the split and its consequences to consumers would likely persist for years with little prospect of righting itself.

3. This case is an ideal vehicle to resolve the circuit split. The issue was squarely presented and dispositive in the court of appeals and there are no procedural or other impediments to its resolution in this Court. The same is not true in the other pending petitions. In *Publishers Business Services*, the petitioners waived the issue by failing to raise it properly below. See Brief in Opp'n, No. 19-507, at 4. Although the petition in *AMG* would otherwise present an appropriate vehicle, the Solicitor General's view that the

26

case be held pending *Liu* makes this case the most suitable candidate for review. The best course would be to grant the Commission's petition and hold *AMG* pending its resolution.

### CONCLUSION

The petition should be granted.

Respectfully submitted,

ALDEN F. ABBOTT
   *General Counsel*
JOEL MARCUS
   *Deputy General Counsel*
      *for Litigation*
MICHAEL BERGMAN
THEODORE (JACK) METZLER
MATTHEW M. HOFFMAN
   *Attorneys*
FEDERAL TRADE COMMISSION

DECEMBER 2019