IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation,<br><br>    Defendant. | Case No.  3:19-cv-02281-K |

**MATCH GROUP, INC.'S MOTION FOR STAY PENDING SUPREME COURT
<u>DECISION IN FTC V. CREDIT BUREAU AND BRIEF IN SUPPORT</u>**

**TABLE OF CONTENTS**

I. SUMMARY OF ARGUMENT ........................................................................................1

II. RELEVANT FACTUAL AND PROCEDURAL HISTORY.........................................3

III. ARGUMENTS AND AUTHORITIES...........................................................................4

    A. A Stay Would Be Efficient For the Court and the Parties..........................................6

    B. Match Will Be Prejudiced If the Requested Stay Is Not Granted..............................8

    C. The FTC Will Not Be Prejudiced by a Stay ................................................................9

IV. CONCLUSION AND REQUESTED RELIEF ...........................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AMG Capital Management, LLC v. FTC*,
   No. 19-508 (cert. granted July 9, 2020) ................................................................................1

*In re Apple iPhone 3G & 3GS MMS Mktg. & Sales Practices Litig.*,
   864 F. Supp. 2d 451 (E.D. La. 2012) ...................................................................................9

*Blunt v. Prospect Mortg., LLC*,
   3:13-CV-1595-P, 2013 WL 12129263 (N.D. Tex. Nov. 20, 2013) .......................................4

*Coker v. Select Energy Servs., LLC*,
   161 F. Supp. 3d 492 (S.D. Tex. 2015) ..........................................................................4, 8, 9

*In re Cyberonics Inc. Sec. Litig.*,
   523 F. Supp. 2d 547 (S.D. Tex. 2007), *aff'd sub nom. Catogas v. Cyberonics,
   Inc.*, 292 F. App'x 311 (5th Cir. 2008) .................................................................................5

*In re Cyberonics Inc. Sec. Litig.*,
   No. 4:05-cv-02121 (S.D. Tex. Apr. 19, 2007), ECF No. 91 .................................................5

*FTC v. AMG Capital Mgmt., LLC*,
   910 F.3d 417 (9th Cir. 2018), *cert. granted*, No. 19-508, 2020 WL 3865250
   (U.S. July 9, 2020) ................................................................................................................1

*FTC v. Bronson Partners, LLC*,
   654 F.3d 359 (2d Cir. 2011) ..................................................................................................7

*FTC v. Credit Bureau Center, LLC*,
   No. 19-825 (cert. granted July 9, 2020) ........................................................................ *passim*

*FTC v. Direct Mktg. Concepts, Inc.*,
   624 F.3d 1 (1st Cir. 2010) .....................................................................................................7

*FTC v. Freecom Commc'ns, Inc.*,
   401 F.3d 1192 (10th Cir. 2005) .............................................................................................7

*FTC v. Lending Club Corp.*,
   No. 18-CV-02454-JSC, 2020 WL 4898136 (N.D. Cal. Aug. 20, 2020) .......................4, 6, 9

*FTC v. Ross*,
   743 F.3d 886 (4th Cir.), *cert. denied*, 574 U.S. 819 (2014) ..................................................7

*FTC v. Security Rare Coin & Bullion Corp.*,
   931 F.2d 1312 (8th Cir. 1991) ..................................................................................7

*FTC v. Shire ViroPharma, Inc.*,
   917 F.3d 147 (3d Cir. 2019)......................................................................................3

*FTC v. United States Oil & Gas Corp.*,
   748 F.2d 1431 (11th Cir. 1984) (per curiam)............................................................7

*Halley v. Deutsche Bank Nat'l Tr. Co.*,
   No. CV-H-15-1174, 2016 WL 3855872 (S.D. Tex. July 15, 2016) .........................5

*Halley v. Deutsche Bank Nat'l Tr. Co.*,
   No. 4:15-cv-01174 (S.D. Tex. Dec. 23, 2015), ECF No. 25 .....................................5

*Inclusive Cmtys. Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*,
   No. 3:08-CV-0546-D, 2014 WL 2815683 (N.D. Tex. June 23, 2014)......................8

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936).........................................................................................4, 5, 6

*Perrill v. Equifax Info. Servs., L.L.C.*,
   No. 1:14-cv-00612-SS (W.D. Tex. Aug. 4, 2015), ECF No. 105..............................5

*Perrill v. Equifax Info. Servs., L.L.C.*,
   No. 1:14-cv-00612-SS (W.D. Tex. July 16, 2015), ECF No. 101 ............................5

*Publishers Bus. Servs. Inc. v. FTC*,
   No. 19-507 (U.S. Dec. 13, 2019) ..............................................................................7

*Rezko v. XBiotech Inc.*,
   No. A-17-CA-00734-SS, 2017 WL 4544683 (W.D. Tex. Oct. 6, 2017)...................8

**Statutes**

FTC Act Section 5 ................................................................................................................9

FTC Act Section 5(b)........................................................................................................3, 7

FTC Act Section 13(b)............................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................3

Defendant Match Group, Inc. ("Match") hereby respectfully moves to stay all proceedings in this case pending the Supreme Court's decision in *FTC v. Credit Bureau Center, LLC*, No. 19-825 (cert. granted July 9, 2020).[1] In that case, the Supreme Court will decide a threshold legal issue that is central to this dispute: whether Section 13(b) of the FTC Act, by expressly authorizing the FTC to seek, and a court to issue, only an "injunction," also allows the FTC to seek equitable monetary relief directly in federal court.[2] The Parties vigorously dispute the law, which will be definitively resolved by the Supreme Court next term. It makes eminent sense to avoid wasting the time and resources of the Parties and the Court until the Supreme Court rules.[3]

## I.  SUMMARY OF ARGUMENT

The FTC's case against Match invokes Section 13(b) of the FTC Act to seek equitable monetary relief from Match for conduct that the FTC admits has long ceased. Match's Motion to Dismiss (ECF No. 20) asserts that Section 13(b)'s unambiguous language does not authorize that remedy, as the Seventh Circuit recognized in *Credit Bureau*.[4] On July 9, 2019, the Supreme Court granted the FTC's Petition for a Writ of Certiorari in *Credit Bureau*, in which the FTC sought

---

[1] The Supreme Court consolidated *Credit Bureau* with *AMG Capital Management, LLC v. FTC*, No. 19-508 (cert. granted July 9, 2020) ("*AMG Capital*"), so any reference to *Credit Bureau* in this Motion for Stay Pending Supreme Court Decision in *FTC v. Credit Bureau* and Brief in Support (the "Motion") refers to both cases.

[2] The Court's Order issued August 31, 2020, granted Match leave to file this Motion. (ECF No. 48.)

[3] Match has filed an Appendix in Support of this Motion ("Appendix"). The exhibits to the Appendix are referenced as ("Def. App. Ex.").

[4] In *AMG Capital*, the author of the opinion also wrote a specially concurring opinion, in which one of the other two judges joined, "to call attention to our circuit's unfortunate interpretation of the [FTC] Act" as permitting monetary relief under Section 13(b) and to "respectfully suggest that such interpretation is no longer tenable." *FTC v. AMG Capital Mgmt., LLC*, 910 F.3d 417, 429 (9th Cir. 2018) (O'Scannlain J, specially concurring, joined by Bea J), *cert. granted*, No. 19-508, 2020 WL 3865250 (U.S. July 9, 2020). The concurrence noted that "the text and structure of the statute unambiguously foreclose such monetary relief." *Id.*

1

review of the exact holding that Match seeks this Court to adopt.  *See* Order Granting Petition for Certiorari, *FTC v. Credit Bureau Ctr., LLC* (No. 19-825), 2020 WL 3865251 (U.S. July 9, 2020).

As the FTC has admitted, resolution of the issue presented in *Credit Bureau* is "integral" to each and every case that the FTC brings under Section 13(b):  "The FTC brings dozens of cases each year seeking injunctions that return funds to consumers under Section 13(b).  As of mid-2019, 55 such cases were pending in district courts.  ***The question presented here is integral to all of them***."  *See* Petition for Writ of Certiorari, *FTC v. Credit Bureau Ctr., LLC*, No. 19-825 (Dec. 19, 2019) at 13 (emphasis added and footnote omitted).  Accordingly, because the FTC has brought this case under Section 13(b), the centrality of this issue is irrefutable.

Under these circumstances, the requested stay clearly meets all the factors of the test for when a Court should exercise its discretion to stay a pending case.  First, a stay would promote judicial efficiency because the Supreme Court decision in *Credit Bureau* will decide the law surrounding a core dispute in this case, will streamline this litigation, and could potentially greatly reduce the magnitude of the dispute.  For this reason, courts in the Fifth Circuit routinely grant stays when the Supreme Court has before it a central issue in the dispute.  Second, without a stay, Match would suffer significant hardship and inequity because Match would be potentially forced to spend millions of dollars on fees in the discovery process, at minimum, all under a cloud of uncertainty about the statutory authority that the FTC asserts.  Third, the FTC would not be prejudiced—and there is no risk of any further consumer harm (assuming there was any to begin with)—by a stay, because the Court already, *sua sponte*, stayed this case pending a ruling on the Motion to Dismiss (ECF No. 43), and the FTC admits in its Complaint that the conduct that the FTC challenges under Section 13(b) in Counts I–IV has ceased.  (*See* Compl. ¶ 3.)

In other words, the FTC loses nothing if a stay is granted. Without one, significant time and money will be wasted. For these reasons, Match respectfully requests that this Court stay all proceedings pending the Supreme Court's decision in *Credit Bureau*.

## II. RELEVANT FACTUAL AND PROCEDURAL HISTORY

On September 25, 2019, the FTC filed a five-count Complaint against Match. The FTC brought four counts (Counts I–IV) against Match pursuant to Section 13(b). The other count asserts a violation of ROSCA (Count V). The FTC admits that, in 2018 and 2019, Match discontinued the conduct upon which Counts I–IV are based. (*See* Compl. ¶ 3.)[5] On October 17, 2019, Match filed the Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 20.) Match argues, in substantial part, that Section 13(b) does not authorize equitable monetary relief, based on the unambiguous language and structure of the FTC Act, which the Seventh Circuit's decision in *Credit Bureau* extensively analyzed and held that Section 13(b) authorizes only injunctions and not other forms of equitable relief. (ECF No. 20 at 14–17.)[6] If the FTC wished to seek monetary relief for the conduct at issue in this case, it was free to do so, by pursuing relief in an administrative hearing pursuant to Section 5(b) of the FTC Act, *and then* seeking consumer redress in federal court under Section 19, but that is not the procedural route that the FTC selected in this case. (*Id.* at 4.) On April 22, 2020, after several attempts by the FTC

---

[5] Only the multiple, simple methods through which Match customers may cancel their subscriptions have not changed. The FTC's claim regarding cancellation was not brought pursuant to Section 13(b) but pursuant to ROSCA. As explained throughout this Motion, the Court should grant a stay of all proceedings because the Supreme Court's decision in *Credit Bureau* could drastically alter the scope and nature of this case.

[6] Match's Motion to Dismiss is based on other independent and potentially dispositive grounds, including that (a) the FTC cannot sue in federal court under Section 13(b) absent plausible factual allegations that the defendant is "violating" or is "about to violate" the FTC Act, as recognized in *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 158 (3d Cir. 2019); and (b) even if the FTC's claims were properly in federal court, which they are not, Counts I and II are barred by the Communications Decency Act. (ECF No. 20 at 2–5.) However, because the decision in *Credit Bureau* is integral to this dispute, the Court should stay all proceedings in this case for the reasons stated in this Motion.

to add sur-replies and "notices of new authority," the Court, *sua sponte*, stayed this case pending a ruling on the Motion to Dismiss and required leave for any additional filings. (ECF No. 43.)

On July 9, 2019, the Supreme Court granted the FTC's Petition for a Writ of Certiorari in *Credit Bureau*, in which the FTC sought review of the Seventh Circuit's holding that the FTC does not have the statutory authority to seek equitable monetary relief under Section 13(b). *See* Order Granting Petition for Certiorari, *FTC v. Credit Bureau Ctr., LLC* (No. 19-825), 2020 WL 3865251 (U.S. July 9, 2020). On July 17, Match filed the Motion for Leave to File Notice of Recently Decided Authority and for Stay of All Proceedings Pending Supreme Court Review in *FTC v. Credit Bureau* and Brief in Support (ECF No. 46) (the "Motion for Leave"), which the Court granted on August 31, and ordered any motion to stay be filed within 7 days (ECF No. 48).

### III.   ARGUMENTS AND AUTHORITIES

The power to stay a case "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts in this Circuit generally consider three factors in determining whether to grant a stay: "(1) potential prejudice to the non-moving party if the stay is granted, (2) the potential hardship to the moving party if the stay is denied, and (3) judicial efficiency." *Blunt v. Prospect Mortg., LLC*, No. 3:13-CV-1595-P, 2013 WL 12129263, at *1 (N.D. Tex. Nov. 20, 2013); *see Coker v. Select Energy Servs., LLC*, 161 F. Supp. 3d 492, 495 (S.D. Tex. 2015) (applying substantially same factors in deciding whether to stay pending Supreme Court decision); *see also FTC v. Lending Club Corp.*, No. 18-CV-02454-

JSC, 2020 WL 4898136, at *1, *4 (N.D. Cal. Aug. 20, 2020) (granting stay pending Supreme Court decision in *Credit Bureau* because "all the *Landis* factors support the issuance of a stay").[7]

Courts routinely stay cases when the Supreme Court has accepted certiorari on a controlling legal issue in the case. *See, e.g.*, *Halley v. Deutsche Bank Nat'l Tr. Co.*, No. 4:15-cv-01174 (S.D. Tex. Dec. 23, 2015), ECF No. 25 (staying case pending Supreme Court decision in *Amerigold Logistics, LLC v. ConAgra Foods, Inc.*), Def. App. Ex. 1, at App. 001–002;[8] *Perrill v. Equifax Info. Servs., L.L.C.*, No. 1:14-cv-00612-SS (W.D. Tex. Aug. 4, 2015), ECF No. 105 (staying case pending Supreme Court disposition *of Spokeo, Inc. v. Robins*), Def. App. Ex. 2, at App. 003–005;[9] *In re Cyberonics Inc. Sec. Litig.*, No. 4:05-cv-02121 (S.D. Tex. Apr. 19, 2007), ECF No. 91 (staying case pending Supreme Court decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*), Def. App. Ex. 4, at App. 016–017.[10]

As analyzed below, these factors weigh heavily in favor of granting a stay of all proceedings in this case pending the Supreme Court's decision in *Credit Bureau*.

---

[7] In the FTC's Opposition to Match's Motion for Leave to file this Motion, the FTC cited a different and incorrect standard for addressing a motion to stay in this context. (*See* ECF No. 47 at 2.) As shown above, courts in this Circuit and others follow the standard that Match sets forth in this Motion. To the extent the FTC re-urges the adoption of an incorrect standard, Match will address that in a reply brief.

[8] *See Halley v. Deutsche Bank Nat'l Tr. Co.*, No. CV-H-15-1174, 2016 WL 3855872, at *1 (S.D. Tex. July 15, 2016) (noting court had previously "stayed and administratively closed the case pending the Supreme Court's decision in a case that potentially implicated this Court's subject matter jurisdiction").

[9] *See Perrill v. Equifax Info. Servs., L.L.C.*, No. 1:14-cv-00612-SS (W.D. Tex. July 16, 2015), ECF No. 101 (moving to stay case pending Supreme Court disposition *of Spokeo, Inc. v. Robins*, which could be dispositive of issues before court), Def. App. Ex. 3, at App. 006–015.

[10] *In re Cyberonics Inc. Sec. Litig.*, 523 F. Supp. 2d 547, 549, 555 (S.D. Tex. 2007), *aff'd sub nom. Catogas v. Cyberonics, Inc.*, 292 F. App'x 311 (5th Cir. 2008) (noting court had previously "stayed the case pending the United States Supreme Court's disposition of *Tellabs*" and then dismissing plaintiffs' claims with prejudice based on Supreme Court's clarification in *Tellabs*).

### A. A Stay Would Be Efficient For the Court and the Parties.

A stay would strongly promote the efficient resolution of this case. A central legal issue—whether the FTC can legitimately seek equitable monetary relief under Section 13(b)—is currently under review by the Supreme Court. A decision on that issue will substantially simplify the issues in the case and could potentially resolve it outright. *See Lending Club Corp.*, 2020 WL 4898136, at *4 ("Where a Supreme Court decision is squarely on point, the orderly course of justice [under *Landis*] likewise weighs in favor of a stay. . . . Because the ability of the FTC to recover any monetary relief under Section 13(b) at all is squarely on point to this case, granting a stay would conserve judicial resources and promote the orderly course of justice.") (emphasis in original) (internal quotation marks omitted). In fact, at least one other federal court has already granted a similar stay pending a decision in *Credit Bureau*. *See id.* ("[The] motion to stay all proceedings in this case until the Supreme Court issues its decision in *AMG Capital* and *Credit Bureau* is GRANTED.").

Furthermore, a stay pending the Supreme Court decision will ensure that the Court will comply with precedent in this area (and avoid any otherwise-unnecessary ancillary motions or appeals). There should be no legitimate disagreement that the Fifth Circuit has not definitively ruled on whether Section 13(b) authorizes a district court to award the FTC equitable monetary relief.[11] **Indeed, the FTC's recent briefs to the Supreme Court admit that the Fifth Circuit has not definitively ruled on this issue**:

- "The question whether Section 13(b) authorizes a district court to award the FTC monetary relief such as restitution has divided the courts of appeals. <u>In addition to the Ninth Circuit, seven other courts of appeals have held that Section 13(b) authorizes a district court to</u>

---

[11] In the context of Match's Motion to Dismiss before this Court, the FTC took the position that the Fifth Circuit had ruled in favor of equitable monetary relief (*see* ECF No. 27 at 12), which was fundamentally incompatible with the position that the FTC took before the United States Supreme Court only months later. The FTC has not since corrected its misstatements to this Court.

    award the FTC monetary remedies. *See FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 15 (1st Cir. 2010); *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 365 (2d Cir. 2011); *FTC v. Ross*, 743 F.3d 886, 890-892 (4th Cir.), *cert. denied*, 574 U.S. 819 (2014); *FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314-1315 (8th Cir. 1991); *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005); *FTC v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1432-1434 (11th Cir. 1984) (per curiam)."[12]

- "The court of appeals acknowledged that it was creating a circuit split when it held 'that section 13(b)'s permanent-injunction provision does not authorize monetary relief.' <u>Every other court of appeals that has decided that issue has held the opposite. Specifically, the First, Second, Fourth, Eighth, Ninth, Tenth, and Eleventh Circuits</u> have all held that Section 13(b) authorizes district courts to enter injunctions that include monetary relief."[13]

- "Until the split is resolved, the FTC Act will mean one thing in the Seventh Circuit and something different in seven other circuits."[14]

The Fifth Circuit is conspicuously absent from the FTC's own description—because the law in this Circuit is unsettled, exactly how Match has described it in this case.[15]

In addition, the Supreme Court's decision in *Credit Bureau* will streamline numerous practical aspects of this case, including discovery and motion practice. The practical reality of litigation of this importance is that it is extremely expensive and time-consuming for all involved. While that time and expense is well-spent when the law is settled, it would be wasted here on monetary claims if the Supreme Court holds that the FTC lacks authority to pursue them in the manner and forum that the FTC has selected here.[16] Permitting this action to proceed under the

---

[12] FTC Resp. to Pet. for Writ of Cert. at 6, *AMG Cap. Mgmt. v. FTC*, No. 19-508 (U.S. Dec. 13, 2019) (emphasis added); FTC Resp. to Pet for Writ of Cert. at 6–7, *Publishers Bus. Servs. Inc. v. FTC*, No. 19-507, (U.S. Dec. 13, 2019) (emphasis added).

[13] FTC Pet. for Writ of Cert. at 11, *FTC v. Credit Bureau Ctr., LLC*, No. 19-825 (U.S. Dec. 19, 2019) (emphasis added) (citations and paragraph break omitted).

[14] *Id.* at 25 (emphasis added); *see also id.* at 3 & n.2 (citing cases).

[15] There is similarly no mention of the Fifth Circuit having decided this issue in the FTC's reply brief before the Supreme Court. *See* FTC Reply Br. to Pet. for Writ of Cert. at 4–5 *FTC v. Credit Bureau Ctr., LLC*, No. 19-825 (U.S. Apr. 28, 2020).

[16] If the FTC wished to seek monetary relief for the conduct at issue in this case, it was free to do so, by pursuing relief in an administrative hearing pursuant to Section 5(b) of the FTC Act, *and then* seeking consumer redress in

current cloud of uncertainty would only unnecessarily complicate this litigation. *See Coker*, 161 F. Supp. 3d at 495 (granting stay pending Supreme Court decision when discovery and substantial expenses could be needlessly incurred if the Supreme Court ruling mooted plaintiff's claims).

Thus, awaiting the Supreme Court's decision in *Credit Bureau* will determine the scope of relief available to the FTC, will ensure that this Court's Orders comply with binding precedent, and will eliminate the unnecessary expense and uncertainty.

### B. Match Will Be Prejudiced If the Requested Stay Is Not Granted.

The second factor examines potential prejudice to the movant if a stay is not granted, and again, squarely favors Match. Without a stay, Match would be prejudiced because it could be forced to unnecessarily expend substantial resources defending against theories that may be deemed to be not legally viable less than a year later. This rationale has weighed heavily on several courts that have granted stays pending decisions from the Supreme Court. *See, e.g.*, *Rezko v. XBiotech Inc.*, No. A-17-CA-00734-SS, 2017 WL 4544683, at *1 (W.D. Tex. Oct. 6, 2017) (explaining that staying proceedings would conserve time and resources that could otherwise be undone by pending Supreme Court decision); *Inclusive Cmtys. Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*, No. 3:08-CV-0546-D, 2014 WL 2815683, at *2 (N.D. Tex. June 23, 2014) (explaining that if Supreme Court decided plaintiff's claims could not be brought, "this court and the parties should not expend the resources necessary to litigate a claim that is not legally viable"). This factor is squarely in Match's favor.

---

federal court under Section 19, but that is not the procedural route that the FTC selected in this case. (*See* ECF No. 20 at 4.)

C.     **The FTC Will Not Be Prejudiced by a Stay.**

The third factor examines the prejudice to the non-movant, of which there is none. The case is already stayed, and the FTC admits that the conduct that the FTC challenges in Counts I–IV under Section 13(b) is not currently occurring because Match has voluntarily ceased it. (*See* Compl. ¶ 3.) Indeed, for Counts I–IV, the Complaint describes four categories of allegedly either deceptive or unfair conduct under Section 5 of the FTC Act and in fact pleads the approximate dates by which the practices were terminated, in 2018 or 2019. (*See* ECF No. 20 at 7–9 (fully explaining that complaint specifically pleads that conduct at issue in Counts I–IV has ceased).)[17] Accordingly, there is no risk that consumers will be harmed by the conduct alleged in the Complaint while a stay is in place.

Moreover, the Supreme Court's decision in *Credit Bureau* will almost certainly be decided in its next term, which is less than a year away. Many other courts have stayed cases under similar circumstances, including another FTC case pending a decision in *Credit Bureau*. *See Lending Club Corp.*, 2020 WL 4898136, at *2 ("The FTC's argument that the length of the stay is prejudicial is further belied by the event that necessitates it: the Supreme Court's decision in *AMG Capital* and *Credit Bureau* is not a 'speculative future event involving multiple contingencies[;]' certiorari has been granted, and 'the only event that the [parties] and the Court are waiting for is the decision itself.'"); *see also Coker*, 161 F. Supp. 3d at 495 (granting stay when Supreme Court would resolve *Campbell-Ewald Co. v. Gomez* in its next term); *In re Apple iPhone 3G & 3GS MMS Mktg. & Sales Practices Litig.*, 864 F. Supp. 2d 451, 454–55 (E.D. La. 2012) (noting court

---

[17]  Although not relevant to this Motion, the challenged conduct actually ceased months earlier than the dates that the FTC alleges. In any event, the FTC has judicially admitted that the conduct has ceased.

9

had stayed proceedings in November 2010 "pending the Supreme Court's resolution of *AT&T Mobility LLC v. Concepcion*," which was decided in April 2011).

## IV.   CONCLUSION AND REQUESTED RELIEF

A stay will simplify the centrally-disputed legal issues for the Parties and the Court and avoid significant waste. For these reasons, Match respectfully requests that the Court grant this Motion and stay all proceedings pending a decision by the Supreme Court in *Credit Bureau*, and any other relief to which it is justly entitled.

Dated: September 8, 2020

Respectfully submitted,

*/s/ Angela C. Zambrano*
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
David Sillers
State Bar No. 24072341
dsillers@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc.*

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 15, 2020, I conferred with Zachary A. Keller, counsel for the FTC, and Mr. Keller indicated that the FTC opposes the relief requested.

*/s/  Chad S. Hummel*
Chad S. Hummel

## CERTIFICATE OF SERVICE

On September 8, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas.  I hereby certify that I have served the document on all counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/  David Sillers*
David Sillers
