IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>MATCH GROUP, INC., a corporation,<br><br>    Defendant. | **Case No.** 3:19-cv-02281-K<br><br>**Opposition to Defendant's Motion for Stay Pending Supreme Court Decision** |

In its Motion to Stay Pending Supreme Court Decision ("Motion"), Dkt. 51, Defendant Match Group, Inc. ("Match") moves the Court to stay this case prior to any discovery due to a grant of certiorari on a non-dispositive issue. The Fifth Circuit disfavors stays that are either pre-discovery or due to a grant of certiorari, and this Court should hew to that position for three reasons. First, a stay will substantially harm Plaintiff Federal Trade Commission ("FTC") because we have not had the opportunity to engage in discovery and the stay Match seeks will likely end nearly two years after this case was filed, risking destruction or unavailability of critical evidence. Second, Match has failed to establish a "clear case of hardship or inequity" absent a stay, as required by *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Instead, it has made conclusory, perfunctory representations about burden that are untethered to the realities of this case. Third, granting the stay would not serve judicial economy here because the Court will have to adjudicate the FTC's claims under Sections 13(b) and 19 regardless of whether the Supreme Court endorses the consensus view that Section 13(b) authorizes monetary relief. For these reasons, the Court should deny Match's request for a pre-discovery stay while the Supreme Court considers a non-dispositive issue that would not affect the scope of this litigation.

1

**Legal Standard**

Match is correct that "[t]he power to stay a case 'is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort,'" Dkt. 51 at 4 (quoting *Landis*, 299 U.S. at 254), and that courts following *Landis* should consider "(1) potential prejudice to the non-moving party if the stay is granted, (2) hardship to the moving party if the stay is denied, and (3) judicial efficiency." *See id*. (citations omitted). Match fails to explain, however, that these three factors are not equal in weight or scope, with the possible prejudice to the non-movant bearing the most weight. *See Landis*, 299 U.S. at 255 ("[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage on some one else."). As the Fifth Circuit has emphasized, parties moving for a stay face a "heavy burden" and must "show why a stay should be granted absent statutory authorization . . . Where a discretionary stay is proposed, something close to *genuine necessity* should be the mother of its invocation." *Coastal (Bermuda), Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985) (citation omitted) (emphasis added).[1] Thus, "[a] stay can be justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved and if the order granting a stay can be framed to contain reasonable limits on its duration." *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) (citing *Landis* and *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir. 1983)).[2]

---

[1] *See also Landis*, 299 U.S. at 255; *Ali v. Quarterman*, 607 F.3d 1046, 1049 (5th Cir. 2010) (a "district court should consider the potential harm to [the non-moving party] of a stay and weigh that with the considerations supporting a stay").

[2] Indeed, the three Fifth Circuit cases discussing *Landis* in depth vacated stays due to the high bar courts must clear. *See Ali*, 607 F.3d 1046 (vacating stay); *Wedgeworth*, 706 F.2d 541 (5th Cir. 1983) (same); *Hines v. D'Artois*, 531

**Argument**

As discussed below, neither the *Landis* factors nor Fifth Circuit law support a stay because this case will proceed regardless of the outcome of the Supreme Court litigation. The FTC has brought claims for injunctive and monetary relief under both Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, but the Supreme Court's grant of certiorari involves only the narrow issue of monetary relief under Section 13(b). Therefore, a pre-discovery stay risks substantially harming the FTC's ability to try its case, which will proceed regardless, but does not affect Match's obligations or this Court's need to hear this matter.

**A. Staying This Action Would Substantially Harm the FTC's Case**

The FTC's case-in-chief faces substantial harm if the Court grants Match's Motion due to the delay that would result and the effect of that delay on discovery. The Fifth Circuit disfavors stays that arise out of Supreme Court grants of certiorari or that affect cases where discovery has not commenced. Both of these circumstances are present here, and the effect a stay may have here bears out why the Fifth Circuit disfavors such stays.

Regarding Supreme Court certiorari, this Circuit has noted the "longstanding precedent and practice of this Court [under which] stays will not be granted for purposes of seeking relief from the Supreme Court on an issue to which Fifth Circuit law is settled against the appellant, even when the Supreme Court has already granted certiorari on the same issue in another case." *Skinner v. Switzer*, 364 F. App'x 113, 114 (5th Cir. 2010) (citing *Kelly v. Quarterman*, 296 F. App'x 381, 382 (5th Cir. 2008)). Courts should thus only "grant stays pending appeal or certiorari where further proceedings could irreparably injure the very interests at stake on

---

F.2d 726 (5th Cir. 1976) (same). In *Hines*, for example, the Fifth Circuit vacated a stay after noting that a delay of at least 18 months in an employment discrimination lawsuit would lead the court "against the background of *Landis* ... to scrutinize the reasons for it very closely." 531 F.2d at 733.

3

appeal." *Cole v. Carson*, 957 F.3d 484 (5th Cir. 2020). As discussed below, no such harm exists here: Match has failed to demonstrate any material injury to its interests, much less irreparable injury, and the Supreme Court granted certiorari on only a portion of the relief sought here.

Pre-discovery stays are similarly disfavored. Fifth Circuit courts have found "[m]ost troubling [] the very real potential that valuable information regarding important issues in the case may be lost forever should this stay be maintained as to discovery. Consequently, the continued imposition of the stay imposes the 'greater and the less remediable burden.'" *In re Beebe*, No. 95-20244, 1995 U.S. App. LEXIS 41303, at *14-15 (5th Cir. May 15, 1995) (quoting *Itel Corp. v. M/S Victoria U (Ex Pishtaz Iran)*, 710 F.2d 199, 203 (5th Cir. 1983)). Indeed, a court in this district has noted that "[w]hile discovery may be stayed pending the outcome of a motion to dismiss . . . such a stay is the exception rather than the rule. As one court observed, [h]ad the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Glazer's Wholesale Drug Co. v. Klein Foods, Inc.*, No. 3-08-CV-0774-L, 2008 U.S. Dist. LEXIS 56564, at *2 (N.D. Tex. July 23, 2008) (citations and quotations omitted).[3]

The harm that would result from a stay in this case demonstrates the logic behind these Fifth Circuit standards. The FTC filed its complaint in this action on September 25, 2019, *see* Dkt. 1, nearly a year before the filing date of this Opposition. Since that time, the FTC has not had the opportunity to begin any discovery—all while Match has undergone changes in

---

[3] *See also, e.g., Clark v. Camber Corp.*, No. SA-14-CV-470-DAE, 2014 U.S. Dist. LEXIS 191427, at *5 (W.D. Tex. Aug. 26, 2014) ("Defendant has not demonstrated that going forward with discovery prior to the resolution of the pending motion would be oppressive, unduly burdensome, or expensive.").

personnel and structure that have included spinning itself off from its parent company,[4] replacing its CEO and other executive leadership,[5] and engaging in a major technological overhaul of its online platforms.[6] With the case already stayed since April except for the pending motion to dismiss, the FTC has been unable to mount its case as facts become stale, memories fade, and witnesses become unavailable. Granting Match's stay request would push the risk of damaging the FTC's litigation position from a possibility to a near certainty: rendering the FTC unable to negotiate a discovery schedule until late 2021 would likely leave us conducting our first deposition more than two years after filing the complaint.[7] The FTC's Section 13(b) and 19 claims will proceed regardless of whether 13(b) authorizes monetary relief, and the FTC will need to engage in discovery to resolve those claims. Therefore, the time lost from Match's requested stay would impede the FTC's ability to mount its case without lessening the litigation burden for anyone.

### B. Match Failed to Establish Any Substantial Burden to the Case Proceeding

In contrast with the serious harm the FTC faces if the stay is granted, Match does not face any substantial burden from proceeding with the case and fails to explain the stay's "genuine necessity" as required by the Fifth Circuit. *See Coastal (Bermuda), Ltd. v. E.W. Saybolt & Co.*, 761 F.2d at 203 n.6. Instead, Match's Motion presents a perfunctory, single-sentence statement

---

[4] Match Group, *IAC and Match Group Complete Full Separation*, July 1, 2020, https://ir.mtch.com/news-and-events/press-releases/press-release-details/2020/IAC-and-Match-Group-Complete-Full-Separation/default.aspx (attached as Exhibit 1).

[5] Match Group, *Match Group Names Sharmistha Dubey Chief Executive Officer*, Jan. 28, 2020, https://www.prnewswire.com/news-releases/match-group-names-sharmistha-dubey-chief-executive-officer-300994817.html (attached as Exhibit 2).

[6] Match Group, *Match Group Invests In Noonlight To Integrate First-of-its-Kind Safety Technology*, Jan. 23, 2020, https://www.prnewswire.com/news-releases/match-group-invests-in-noonlight-to-integrate-first-of-its-kind-safety-technology-across-portfolio-beginning-with-tinder-300992052.html (attached as Exhibit 3).

[7] Moreover, Match's arguments about voluntary cessation on the eve of litigation are beside the point: Match's long-running schemes—continued through more than a year of FTC investigation—show that it must be under order for any assurance of its good conduct to carry weight.

of harm it would incur: that it "could be forced to unnecessarily expend substantial resources defending against theories that may be deemed not legally viable." Dkt. 51 at 8. This position has two problems:

First, Match's one-sentence claim of undue hardship is insufficient to establish harm. Courts have noted that "stereotyped and conclusory statement that [a moving party] desires to avoid engaging in potentially unnecessarily burdensome and expensive discovery does not establish good cause to stay discovery." *Boone Funeral Home, Inc. v. Lakeview Gardens, Inc.*, No. 4:16cv180-DMB-RP, 2017 U.S. Dist. LEXIS 227232, at *3 (N.D. Miss. Feb. 21, 2017).[8] Match's claim here is similarly conclusory and without merit: it has presented no evidence that it faces unduly burdensome discovery. And in contrast to cases where discovery would not result in any new material facts[9] or involved harassing or otherwise inappropriate requests,[10] Match has not shown that discovery in this action would be prejudicial, wasteful, or otherwise harassing. Indeed, the monetary harm consumers incurred due to Match's conduct will affect the appropriate monetary relief and civil penalties for the conduct we challenge under Section 19,[11]

---

[8] *See also, e.g., In re Beebe*, 1995 U.S. App. LEXIS 41303, at *11-12 ("the only hardship that Respondents claim is that if the stay is lifted before *Cogan* is decided they *could* incur unnecessary litigation expenses. In particular, they argue, it would be a waste of Respondents' resources to respond to Petitioners' discovery requests regarding issues or matters that the district court *may* later deem to have no merit in *Cogan*. (Of course, every defendant in a lawsuit faces this 'inequity.') . . . we nonetheless cannot conclude that a careful weighing of the equities still warrants maintaining—in its entirety—the comprehensive stay ordered by the district court almost two and one-half years ago. We find particularly compelling Petitioners' concerns regarding the need to complete discovery.")

[9] *See, e.g., Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 436 (5th Cir. 1990) (affirming stay pending summary judgment where the non-movant "asserted no facts they hoped to adduce, no genuine issues of material fact they hoped to create, no showing they hoped to rebut").

[10] *See, e.g., Von Drake v. NBC*, No. 3-04-CV-0652-R, 2004 U.S. Dist. LEXIS 25090 (N.D. Tex. May 20, 2004) (granting stay where "many of the interrogatories and document requests served on defendants are overly broad and harassing").

[11] 15 U.S.C. § 45(m)(1)(C) sets forth five factors for evaluating appropriate civil penalties: degree of culpability, history of prior conduct, ability to pay, effect on ability to continue doing business, and such other matters as justice may require. The damage Match has caused consumers through its conduct we challenge under Section 13(b) is relevant, at the very least, to the final factor: Match's deceptive and unfair conduct led consumers to subscribe to its

so full discovery regarding consumer injury in this action is necessary regardless of whether monetary relief is available under 13(b). In these circumstances, a stay would have no cognizable effect on the scope of discovery Match later faces, instead only complicating it through delay that would provide the opportunity for evidence to become unavailable.

Second, Match's claim that it may expend resources "defending against theories that may be deemed to be not legally viable less than a year later" does not reflect the facts here in two respects. First, Match cannot complain of having to bail hay when the hay is already in the barn: the issue under review at the Supreme Court is solely a legal question that Match has already "defend[ed] against" in its motion to dismiss and reply brief for that motion, *see* Dkts. 20 at 14-17; 30 at 9-11. Second, Match will have to litigate the same factual issues concerning its liability for Section 13(b) and 19 violations regardless of whether the statute is found to authorize monetary relief or not. In contrast to the cases Match cites where courts have granted stays, the issue on review here is not dispositive of any issue[12] and is not jurisdictional in nature.[13] These considerations show that Match will not expend additional resources "defending against theories" based on the outcome of the Supreme Court's review. Match has already made its legal arguments, and the factual questions here will remain unchanged.

### C. Staying This Action Presents No Benefit to Judicial Economy

Third, this case does not present any judicial economies that weigh in favor of granting Match's stay. As explained above, litigation will be necessary to resolve the FTC's Section 13(b)

---

platform, which is what then led to the harm caused by its failure to provide those consumers a simple method of canceling their subscriptions that we challenge under Section 19.

[12] *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, No. 3:08-CV-0546-D, 2014 U.S. Dist. LEXIS 84683, at *7 (N.D. Tex. Jun. 23, 2014) (granting stay where the Supreme Court's decision would determine whether the action could be brought at all under the relevant statute).

[13] *See Rezko v. XBiotech, Inc.*, No. 1:13-CV-389, 2017 U.S. Dist. LEXIS 167959, at *3 (W.D. Tex. Oct. 6, 2017).

claims regardless of whether monetary relief is available, and the FTC's Section 19 allegations—including the equitable monetary relief and civil penalties we seek—are entirely unaffected by the scope of Section 13(b). Moreover, the Fifth Circuit has held that staying discovery "does not conserve significant judicial resources; typically, it is the parties, not the district court, who are the active participants in that pre-trial stage of the litigation process . . . even if the instant litigation continued unabated from this day forward, it will probably be a long time before these parties have their day in court." *In re Beebe*, 1995 U.S. App. LEXIS 41303 at *13-14. While stays of discovery may be warranted where the issue "might preclude the need for the discovery altogether," *Landry v. Air Line Pilots Ass'n International AFL-CIO*, 901 F.2d 404, 435 (5th Cir. 1990), those considerations are not present where, like here, the issues raised in the stay leave other open claims. *See, e.g., Ford Motor Co. v. United States Auto Club, Motoring Div., Inc.*, No. 3-07-CV-2182-L, 2008 U.S. Dist. LEXIS 34240, at *3 (N.D. Tex. Apr. 24, 2008). Indeed, holding discovery in abeyance only risks later disputes regarding the availability of evidence—an eventuality already hinted at through Match's tactical use of the pre-complaint negotiating period between the parties to suspend its wrongful conduct and now repeatedly claim that the challenged conduct has "long ceased." *See, e.g.,* Dkt. 20 at 8; 30 at 4; 51 at 1.

Given the significant harm the FTC faces, the circumstances here contrast starkly with the lone case Match cites in which a court has granted a stay due to the grant of certiorari at issue in Match's Motion, *FTC v. Lending Club Corporation*, No. 18-cv-02454-JSC, 2020 WL 4898136 (N.D. Cal. Aug. 20, 2020). In *Lending Club*, three conditions determined the court's decision that are not present here: discovery has already closed, only 13(b) claims were at issue, and proceeding to the upcoming trial would have risked imposing a monetary judgment within a few months that risked having to be relitigated in light of new precedent. *See id.* at *1-2. The

8

contrasting circumstances here—where discovery has not yet commenced, where the Court will have to adjudicate all aspects of this case regardless of whether monetary relief is available under 13(b), and where no trial or other use of judicial resources is imminent—should be decisive in this Court's joining the five other courts[14] that have denied stay requests similar to the one Match brings. The Court should therefore decline to take the extraordinary step of staying this case.

## Conclusion

For the reasons set forth above, the FTC requests the Court deny Defendant's Motion.

Respectfully submitted,

DATED: September 15, 2020

/s/ Zachary A. Keller
ZACHARY A. KELLER
M. HASAN AIJAZ
MATTHEW WILSHIRE
Texas Bar No. 24087838 (Keller)
Virginia Bar No. 80073 (Aijaz)
California Bar No. 224328 (Wilshire)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9382 (Keller)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9362 (Wilshire)
F: (214) 953-3079
Email: zkeller@ftc.gov; maijaz@ftc.gov; mwilshire@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

---

[14] *See FTC v. Cardiff*, No. ED CV 18-2104-DMG (PLAx), 2020 U.S. Dist. LEXIS 164529 (C.D. Cal. Sept. 9, 2020); *FTC v. Hornbeam Special Situations, LLC, et al.*, No. 1:17-cv-03094-WMR, 2020 WL 5492991 (N.D. Ga. Sept. 10, 2020); *In re Sanctuary Belize Litigation*, No. PJM 18-3309, 2020 WL 5095531 (D. Mary. Aug. 28, 2020); *FTC v. Simple Health Plans, LLC, et al.*, No. 0:18-cv-62593-DPG, ECF No. 314 (S.D. Fl. Aug. 3, 2020) (paperless order denying stay of case due to Supreme Court grant of certiorari) (attached as Exhibit 4); *FTC v. Kutzner et al.*, No. 8:16-cv-00999-DOC-AFM, ECF No. 487 (C.D. Cal. July 28, 2020) (same as *Simple Health*) (attached as Exhibit 5).

## CERTIFICATE OF SERVICE

On September 15, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Zachary A. Keller
Zachary A. Keller
