IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                      Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation,<br><br>                      Defendant. | Case No. 3:19-cv-02281-K |

**MATCH GROUP, INC.'S REPLY IN SUPPORT OF MOTION FOR STAY
PENDING SUPREME COURT DECISION IN *FTC V. CREDIT BUREAU*
AND BRIEF IN SUPPORT**

Defendant Match Group, Inc. ("Match") respectfully submits this Reply in Support of Motion for Stay Pending Supreme Court Decision in *FTC v. Credit Bureau* and Brief in Support (ECF No. 51) (the "Motion" or "Motion to Stay"), which responds to Plaintiff FTC's Opposition to Defendant's Motion for Stay Pending Supreme Court Decision (ECF No. 52) (the "Opposition").

### I.    PRELIMINARY STATEMENT

The FTC's Opposition brief presents no legitimate reason to deny Match's Motion to Stay this case pending the Supreme Court's decision in *Credit Bureau*[1]—a case that the FTC has conceded will decide a controlling legal issue in this case. Instead, the FTC relies on incorrect legal arguments and false factual premises to urge the denial of Match's Motion. For example, the FTC argues that the case should proceed now because it has had no opportunity to obtain discovery from Match and that it is somehow now in urgent need of such discovery. That argument

---

[1] Capitalized terms not defined in this Reply have the meanings given to them in the Motion.

1

conveniently ignores the hundreds of thousands of documents produced and the multiple interrogatories answered by Match during the FTC's pre-filing investigation and is, candidly, belied by the FTC's failure to attempt to serve any discovery since the Complaint was filed over a year ago.  Moreover, the FTC's argument that the case must proceed now based on the assertion that Match only ceased the challenged conduct on the "eve" of filing is knowingly false.  The FTC is well aware that Match stopped the advertising "staging" practices at the heart of this case (which Match will prove did not violate the FTC Act in any event) in May 2018—well over a year before filing.[2]

More importantly, the FTC's Opposition is based on the assertion of an incorrect and more stringent legal standard for this Motion to Stay than has ever been adopted by courts in this Circuit.  The FTC does not cite a single case within this Circuit in which a court has declined to stay proceedings pending a Supreme Court decision on a controlling legal issue.  In fact, the FTC's in-circuit cases do not even relate to a request for a stay pending a Supreme Court decision at all.  In actuality, courts in the Fifth Circuit routinely grant stays pending a Supreme Court decision on a controlling legal issue such as here.  It is well within this Court's discretion to avoid wasting the parties' and Court's time and resources by staying this case for several months until receiving certainty from the Supreme Court.

Nothing in the Opposition changes the fact that (1) the FTC will not be prejudiced by a stay, because the Court already effectively stayed this case pending a ruling on the Motion to Dismiss, and the conduct challenged under Section 13(b) in Counts I–IV has long ceased, contrary

---

[2]  Each of the practices challenged in Counts I–IV were in fact discontinued months before the lawsuit was filed (and well before the dates the FTC erroneously states in the Complaint).  For example, the initial March 2017 CID from the FTC did not even raise the "staging" practice challenged in Count II, and when the FTC sent a letter asking about staging for the first time on March 28, 2018, Match (although disagreeing with the FTC's allegations) ceased that practice in less than six weeks.  Match changed the challenged aspects of its charge-back policy in March 2019 and ceased offering its six-month guarantee program in April 2019.  There is no evidence or plausible allegation in the Complaint whatsoever that Match was "about to" resume these practices at the time of filing.

2

to the FTC's misrepresentations; (2) without a stay, Match would suffer significant hardship and inequity because Match would have to expend time and money on discovery that could, in a few months, be completely irrelevant; and (3) a stay would promote judicial efficiency because the decision in *Credit Bureau* will decide the law surrounding a core dispute, will streamline this litigation, and could greatly reduce the magnitude of the dispute.

## II.     ARGUMENTS AND AUTHORITIES

### A.     The FTC Will Still Not Be Prejudiced by a Stay

The FTC asserts that the Fifth Circuit "disfavors stays that arise out of Supreme Court grants of certiorari or that affect cases where discovery has not commenced." (Opp. at 3.) This assertion is not supported by a single analogous case, is contrary to the case law cited throughout Match's Motion, and ignores the critical fact that the law in the Fifth Circuit regarding the FTC's ability to obtain monetary relief under Section 13(b) is unsettled.

The FTC's main case, *Skinner v. Switzer*, is a criminal case in which a defendant sought a stay of execution pending appeal to the Supreme Court of an issue settled by the Fifth Circuit. (*See* Opp. at 3 (citing *Skinner v. Switzer*, 364 F. App'x 113, 114 (5th Cir. 2010) (emphasis added).) Not only is the stay request and procedural posture here completely different from those presented in *Skinner*, but as Match explained in its Motion, the Fifth Circuit has not ruled on the issue being decided by the Supreme Court in *Credit Bureau*: whether Section 13(b) authorizes a district court to award the FTC equitable monetary relief. The FTC's recent briefs to the Supreme Court repeatedly admit that there is no controlling precedent on this issue (*see* Mot. at 6–7 (citing briefing)), and the FTC in its Opposition does not argue otherwise (*see generally* Opp.).

The FTC also incorrectly asserts that Match must prove "irreparable injury" to warrant a stay. (*See* Opp. at 3–4.) The FTC not only fails to note that the language it quotes is *dicta* within a dissent of a *per curiam* opinion, but also changes the meaning of the relevant sentence from,

3

"We grant stays pending appeal or certiorari where further proceedings could irreparably injure the very interests at stake on appeal," to, "Courts should thus *only* 'grant stays pending appeal or certiorari where further proceedings could irreparably injure the very interests at stake on appeal.'" (*See* Opp. at 3–4 (emphasis added) (citing *Cole v. Carson*, 957 F.3d 484, 486 (5th Cir. 2020) (Ho, J. (dissenting)).) To put it mildly, the FTC does not accurately state the law in this Circuit.

Likewise, the FTC's argument that "[p]re-discovery stays are similarly disfavored" (Opp. at 4) is inaccurate. Throughout its Opposition, the FTC repeatedly confuses the procedural posture and relevant standard by citing irrelevant cases that analyze whether to stay discovery pending a court's decision on a motion to dismiss or transfer, ***unrelated to any pending Supreme Court decision***. (*See* Opp. at 4 (citing *Clark v. Camber Corp.*, No. SA-14-CV-470-DAE, 2014 WL 12580451, at *1 (W.D. Tex. Aug. 26, 2014) (deciding motion to stay discovery pending court's resolution of pending motion); *Glazer's Wholesale Drug Co. v. Klein Foods, Inc.*, No. 3-08-CV-774-L, 2008 WL 2930482, at *1 (N.D. Tex. July 23, 2008) (same).) This is not the relevant standard here, where a Supreme Court decision is pending and should be issued in the next year. Thus, the FTC's cases are inapposite. Courts in the Fifth Circuit routinely stay proceedings pending Supreme Court rulings on a central issue of law. (*See* Mot. at 4–5, 8–10 (citing cases).)[3] In fact, a court within the Fifth Circuit just yesterday stayed a case pending a Supreme Court decision because the decision has "significant potential to narrow and refine the issues" and "promises to benefit the parties and the [c]ourt in a multitude of ways" by "prevent[ing] a waste of judicial and party resources in the event that [the decision] clearly dictates that the plaintiffs'

---

[3] The FTC cites another case for the proposition that potential lost information is troubling, but the Fifth Circuit in that case held that the district court ***did not*** abuse its discretion when it originally ordered the stay of one case until after the trial of an older, companion case, but found that the district court erred in maintaining the stay two and one-half years later, when the court in the companion case still had not ruled on several dispositive motions. (*See* Opp. at 4 (citing *In re Beebe*, 56 F.3d 1384, 1995 WL 337666, at *3 (5th Cir. May 15, 1995)).) Beyond a general assertion that information *may* be lost, the FTC makes no cogent argument about any information that will actually be lost due to continuing this stay.

4

remaining claims are without merit," (2) "[limiting] and [streamlining] discovery in the event that the plaintiffs' claims *do* have merit," and (3) "[reducing] the risk of an incorrect decision by sharpening the legal issues at play." *Creasy v. Charter Commc'ns, Inc.*, No. 20-1199, 2020 WL 5761117, at *8 (E.D. La. Sept. 28, 2020).

The FTC then argues that it will be prejudiced by a stay because, since the FTC filed its Complaint, it "has not had the opportunity to begin any discovery." (Opp. at 4–5.) This is a highly misleading argument at best. The FTC already conducted a years-long investigation where it obtained hundreds of thousands of documents from Match, along with other discovery, including interrogatory responses. Moreover, if the FTC believed there was an imminent need for additional documents or discovery that it did not already receive from its extensive pre-Complaint discovery, it would have already attempted to serve discovery requests on Match before the Court effectively stayed the case pending a ruling on the Motion to Dismiss, or moved this Court to lift the filing prohibition so that it could do so. While Match reserves the right to contest the appropriateness of any requests, the FTC's failure even to attempt to serve discovery requests previously demonstrates that this argument is merely one of convenience raised in an attempt to defeat Match's Motion.

Lastly, the Court should disregard the FTC's footnote in its Opposition, which asserts that "Match's long-running schemes . . . show that it must be under order for any assurance of its good conduct to carry weight." (Opp. at 5 n.7.) To dispel this assertion, the Court need only look to the Complaint in which the FTC affirmatively alleges that the conduct challenged in Counts I–IV under Section 13(b) has ceased. (Compl. ¶ 3.) If the FTC truly believed that Match "must be under order" to confirm the actual cessation of the practices, then the FTC would have moved to put Match "under order," through a temporary restraining order or preliminary injunction. The

5

FTC has not because it knows that Match ceased the conduct at issue long before the Complaint was filed and is not "violating" or "about to violate" the FTC Act, similar to what happened in *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 158 (3d Cir. 2019). Additionally, the FTC's arguments about how Match's cessation of certain practices cannot be trusted are belied by its allegations about the purported prejudice of a stay. The FTC notes that "Match has undergone changes in personnel and structure . . . and engag[ed] in a major technological overhaul of its online platforms," and that as a result "facts become stale, memories fade, and witnesses become unavailable." (Opp. at 4–5.) But if Match were "violating" or "about to violate" the FTC Act, as the FTC would like to have the Court believe, then there would be no concern about changes in personnel or structure, facts becoming stale, or memories fading. Thus, any argument that the FTC will be harmed by a stay is undermined by the FTC's own allegations.[4]

### B. Match Will Be Harmed Absent a Stay

The FTC repeatedly misstates the applicable law. The FTC contends that Match is "required" to prove "genuine necessity" for a stay. (*See* Opp. at 5.) The FTC makes this argument by citing *dicta* from a footnote in a thirty-five-year-old case about a stay in admiralty pending the outcome of an arbitration, when that court actually only mentioned that "something close to genuine necessity should be the mother of [a discretionary stay's] invocation." (*See* Opp. at 5 (citing *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985)).) Notably, no other case the FTC cites either acknowledges or applies that "requirement." (*See*

---

[4] The Court should likewise reject the perverse incentives that would flow from the FTC's flawed argument that "holding discovery in abeyance only risks later disputes regarding the availability of evidence—an eventuality already hinted at through Match's tactical use of the pre-complaint negotiating period between the parties to suspend its wrongful conduct and now repeatedly claim that the challenged conduct has 'long ceased.'" (Opp. at 8.) Here, the FTC perversely attempts to smear Match for voluntarily changing its practices after the FTC raised concerns.

6

*generally* Opp.)[5]  In another attempt to argue that Match has not met its burden, the FTC cites inapposite cases that analyze whether to stay discovery pending a court's decision on a motion in that case, unrelated to any pending Supreme Court decision.  (*See* Opp. at 6–7 (*Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 436 (5th Cir. 1990) (holding court did not abuse discretion in staying discovery until summary judgment motions were resolved); *Boone Funeral Home, Inc. v. Lakeview Gardens, Inc.*, No. 4:17-CV-180-DMB-RP, 2017 WL 11309548, at *1 (N.D. Miss. Feb. 21, 2017) (deciding motion to stay discovery pending court's resolution of pending motion); *Von Drake v. Nat'l Broad. Co.*, No. 3-04-CV-652-R, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004) (same)).)  Accordingly, the FTC's argument that Match has not met its burden because it has not shown that discovery would be "prejudicial, wasteful, or otherwise harassing" (Opp. at 6) is based upon an inapplicable standard and should be disregarded.

The FTC then seeks to dismiss Match's showing of harm in the Motion by describing it as "a perfunctory, single-sentence statement of harm."  (*See* Opp. at 5–6.)  In actuality, Match explained ***throughout*** its Motion how it would suffer significant hardship and inequity without a stay because it would engage in significant litigation under a cloud of uncertainty about the statutory authority at the center of the FTC's case.  As the FTC well knows, litigation of this type is extremely expensive and time-consuming for all involved.  If a stay is not granted, and discovery, motion practice, and trial are allowed to go forward, significant time, energy, and money would be wasted on all sides if the Supreme Court in *Credit Bureau* affirms that the FTC lacks authority to pursue monetary claims in the manner and forum that the FTC has selected here

---

[5] The FTC cites additional cases seeking to impose a stricter standard, but still fails to cite a case in this Circuit where a court decided whether to stay a case pending a Supreme Court decision.  (*See* Opp. at 2–3 (citing *Ali v. Quarterman*, 607 F.3d 1046, 1047 (5th Cir. 2010); *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716–17 (5th Cir. 1985); *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 542–43 (5th Cir. 1983); *Hines v. D'Artois*, 531 F.2d 726, 728 (5th Cir. 1976)).)

(as seems likely). Permitting this action to proceed under the current cloud of uncertainty would only unnecessarily complicate this litigation. (*See, e.g.*, Mot. at 2–3, 7–8.)

Lastly, the FTC's argument that Match "cannot complain of having to bail [sic] hay when the hay is already in the barn" (Opp. at 7) suggests that a decision in *Credit Bureau* will not affect this litigation because Match already filed its Motion to Dismiss. The FTC also implies that Match somehow waived its ability to ask for an efficient procedure for discovery and motion practice, because it filed a Motion to Dismiss when due, but before the Supreme Court granted *certiorari* on a controlling legal issue. But the work is hardly done simply because Match filed a Motion to Dismiss, and the FTC's argument that "Match will have to litigate the same factual issues concerning its liability for Section 13(b) and 19 violations regardless of whether the statute is found to authorize monetary relief" (Opp. at 7) is false. Match will not participate in discovery of claims that are not legally viable, and the FTC cites no case supporting the proposition that it could successfully propound such discovery. The FTC's related suggestion that the Supreme Court's decision "would not affect the scope of this litigation" (Opp. at 1) is contrary to reality and to the FTC's representation to the Supreme Court that the issue presented in *Credit Bureau* is "integral" to all cases that the FTC brings under Section 13(b). *See* Petition for Writ of Certiorari, *FTC v. Credit Bureau Ctr., LLC*, No. 19-825 (Dec. 19, 2019) at 13 (emphasis added and footnote omitted) ("The FTC brings dozens of cases each year seeking injunctions that return funds to consumers under Section 13(b). As of mid-2019, 55 such cases were pending in district courts. ***The question presented here is integral to all of them***."). Indeed, a Supreme Court decision affirming *Credit Bureau* would significantly narrow the issues because four of the five counts in the Complaint are based on the FTC's purported ability to seek monetary relief through Section 13(b), which is exactly what the Supreme Court will soon adjudicate.

## C. A Stay Will Promote Judicial Economy

The FTC's argument that a stay would present no benefit to judicial economy (Opp. at 7–9) ignores, *inter alia*, the pending Motion to Dismiss, which has as one of its main bases the decision in *Credit Bureau*. As Match explained in its Motion, the Supreme Court decision in *Credit Bureau* is a central issue, which will substantially simplify the issues in the case and potentially resolve it outright.[6] *See FTC v. Lending Club Corp.*, No. 18-CV-2454-JSC, 2020 WL 4898136, at *4 (N.D. Cal. Aug. 20, 2020) ("Where a Supreme Court decision is squarely on point, the orderly course of justice [under *Landis*] likewise weighs in favor of a stay. . . . Because the ability of the FTC to recover any monetary relief under Section 13(b) at all is squarely on point to this case, granting a stay would conserve judicial resources and promote the orderly course of justice." (internal quotation marks omitted)).

Moreover, the FTC's argument that staying discovery under entirely different circumstances does not conserve judicial resources should be disregarded. (*See* Opp. at 8.) The FTC again heavily relies on cases where a party moved to stay discovery pending that court's decision on a motion in that case, unrelated to any Supreme Court decision. (*See* Opp. at 8 (citing *Landry*, 901 F.2d at 436 (holding court did not abuse discretion in staying discovery until summary judgment motions were resolved); *Ford Motor Co. v. U.S. Auto Club, Motoring Div., Inc.*, No. 3-07-CV-2182-L, 2008 WL 2038887, at *1 (N.D. Tex. Apr. 24, 2008) (deciding motion to stay discovery pending court's resolution of pending motion)).)

Finally, while the FTC emphasizes that discovery was complete in *Lending Club*, the FTC fails to acknowledge the hundreds of thousands of documents that Match has produced in the

---

[6] Moreover, while some claims may remain if the Supreme Court affirms the decision in *Credit Bureau*, the biggest hurdle for settlement is the FTC's belief about its entitlement to monetary relief under Section 13(b), so clarification on that issue could bring the parties much closer together.

9

years-long investigation. (*See* Opp. at 8–9.) The *Lending Club* case shares more similarities than differences with this case and is further support for Match's Motion. *See* 2020 WL 4898136, at *1–2. Indeed, the court granted the stay when (1) the FTC would not be prejudiced because the *Credit Bureau* decision was not a speculative event, and the defendant had ceased virtually all of the conduct at issue in the case, as is the case here; (2) moving forward would needlessly burden the defendant to put on a defense only to possibly have the entire enterprise mooted by the FTC's inability to seek any monetary relief under Section 13(b), as is the case here; and (3) a stay would simplify the issues before the court because the Supreme Court decision is squarely on point, as is the case here. *See id.* at *2–4.[7]

### III.     CONCLUSION AND REQUESTED RELIEF

For these reasons, Match respectfully requests that the Court stay all proceedings pending a decision by the Supreme Court in *Credit Bureau*.

Dated:  September 29, 2020

Respectfully submitted,

*/s/  Angela C. Zambrano*
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
David Sillers
State Bar No. 24072341
dsillers@sidley.com
SIDLEY AUSTIN LLP

---

[7] By contrast, the decisions cited by the FTC denying stays pending *Credit Bureau* are dissimilar to the facts and circumstances here. (Opp. at 9 n.14.) For example, in one case, the merits of the pending motions had "nothing to do with the monetary remedy," unlike here where Match argues that Section 13(b) does not authorize equitable monetary relief. *FTC v. Cardiff*, No. EDCV182104 DMG PLAX, 2020 WL 5417125, at *4 (C.D. Cal. Sept. 9, 2020). Other cases applied a different standard from the one relevant in the Fifth Circuit, such as requiring irreparable injury absent a stay, *FTC v. Simple Health Plans, LLC, et al.*, No. 0:18-cv-62593-DPG, ECF No. 314 (S.D. Fl. Aug. 3, 2020); were in circuits with controlling law, *FTC v. Hornbeam Special Situations, LLC*, No. 1:17-CV-3094-WMR, 2020 WL 5492991, at *2–3 (N.D. Ga. Sept. 10, 2020) (following Eleventh Circuit guidance denying stays pending *certiorari* grants and also weighing factors to emphasize current controlling law); or did not issue an opinion or explanation, *FTC v. Kutzner et al.*, No. 8:16-cv-00999-DOC-AFM, ECF No. 487 (C.D. Cal. July 28, 2020); *In re Sanctuary Belize Litig.*, No. CV JPM 18-3309, 2020 WL 5095531, at *69 n.61 (D. Md. Aug. 28, 2020).

>2021 McKinney Ave, Suite 2000
>Dallas, TX 75201
>Telephone:  214.981.3300
>Fax:  214.981.3400
>
>Chad S. Hummel (admitted *pro hac vice*)
>chummel@sidley.com
>SIDLEY AUSTIN LLP
>1999 Avenue of the Stars, 17th Floor
>Los Angeles, CA 90067
>Telephone:  310.595.9500
>Fax:  310.595.9501
>
>*Attorneys for Match Group, Inc.*

## **CERTIFICATE OF SERVICE**

On September 29, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

>                               */s/ David Sillers*
>                               David Sillers