## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

FEDERAL TRADE COMMISSION,

     Plaintiff,

     v.

MATCH GROUP, INC., a corporation,

     Defendant.

Case No. 3:19-cv-02281-K

**The Parties' Joint 26(f) Report**

Pursuant to Rule 26 and the Court's Order, Doc. 89, Plaintiff Federal Trade Commission and Defendant Match, Group, Inc., conferred on March 30, 2022, via Zoom and respectfully submit the following joint scheduling report. Where the parties were unable to agree on a joint position, the parties submit their positions separately below.

    **1.  Brief statement of claims and defenses**

**FTC's Claims:** The Commission has alleged that Defendant violated Section 5 of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45, and the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. §§ 8401-05.

Specifically, Count III alleges Defendant has violated the FTC Act by promising subscribers a free six-month subscription if they did not "meet someone special" but failing to disclose adequately many material limitations on this guarantee. To qualify for the Match Guarantee, Match required that users must (a) establish a public profile picture within seven days of purchase and keep the profile picture visible for the entire six-month period; (b) message five

1

unique users every month; and (c) use Defendant's "Progress Page" to redeem the Guarantee at during the final week of the initial six-month subscription period.

Count IV concerns Match's unfair practices relating to chargeback disputes consumers filed with their financial institutions. Because of Defendant's many deceptive marketing practices, consumers often disputed Match.com's charges. When a Match.com user disputed a charge from Match and lost that dispute (that is, Match was allowed to keep the payment), Match's policy has been to deny that user access to their account—even though the user had paid for account access. The FTC alleges in Count IV that this conduct is unfair and violated the FTC Act.

Lastly, Count V alleges that Match has violated ROSCA by failing to provide a simple cancellation mechanism.[1] As Defendant's own employees and executives admit in internal correspondence, Match.com's cancellation process was "convoluted and confusing" and "Members often think they've cancelled when they have not and end up with unwanted renewals." In fact, "thought I already cancelled" was often a leading reason for canceling Match's services, on par with "met someone." As a result, Match.com received thousands of customer complaints concerning this problem.

The FTC seeks injunctive relief on the remaining three counts (Counts III-V) as authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). In addition, the FTC seeks monetary relief for Count V, pursuant to Section 19(b) of the FTC Act, 15 U.S.C. § 57b(b). The requested monetary relief will help redress the thousands of consumers harmed by Match's failure to provide a simple cancellation mechanism. The FTC also seeks civil penalties, pursuant to Section

---

[1] Counts I and II of the Commission's Complaint were dismissed and accordingly are not addressed herein. *See* Doc. 86.

5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), for Defendant's knowing violations of ROSCA.

**Match's Defenses:** On March 24, 2022, the Court issued a Memorandum Opinion and Order in which it significantly narrowed the FTC's then-five-Count Complaint.  *See* Dkt. 86.  The Court dismissed with prejudice Counts I and II of the FTC's Complaint, holding that Match is immune from liability under Section 230 of the Communications Decency Act.  The Court also dismissed with prejudice the FTC's claims for equitable monetary relief under Section 13(b) of the FTC Act. The only remaining claims are Counts III and IV (FTC Act), but without monetary relief, and Count V (ROSCA).  Each remaining claim fails for numerous reasons, including, but not limited to, those summarized below.

First, the FTC named the wrong entity in the Complaint.  *See* Dkt. 1.  Match repeatedly told the FTC (at least since its May 15, 2017 Interrogatory Responses to the FTC's CID) that none of the activities challenged by the Complaint were performed by Match Group, Inc., because Match Group, Inc. does not own or operate Match.com and is simply a holding company of Match Group, LLC, which is the entity that actually owns and operates Match.com.  Shortly after the Complaint was served, counsel for Match emailed the FTC to again inform it that Match Group, Inc. was incorrectly named as a defendant in the lawsuit and should be voluntarily dismissed.  *See* Dkt. 21 at 35.  Counsel for the FTC acknowledged the email but declined to voluntarily dismiss the Complaint against Match Group, Inc.  *See id.* at 37.

Second, Count III, for which the FTC can now seek only injunctive relief, is moot because the alleged guarantee practice is long-ceased, as even the FTC alleged and admitted in its Complaint filed almost three years ago.  Dkt. 1 ¶ 3.  Even assuming Count III is not moot, Count III still fails because Match Group, LLC complied with all applicable laws and acted reasonably

3

and in good faith, as all material terms of the guarantee were clearly and conspicuously disclosed. Moreover, any alleged failure to clearly and conspicuously disclose some requirements was not material because most consumers who did not qualify for the guarantee failed to satisfy the requirements that were unquestionably clearly and conspicuously disclosed.  Finally, the FTC's requested relief is contrary to the public interest because, even when the practice did exist, the guarantee at issue in Count III benefited many consumers.  Additionally, the FTC's requested injunction is overbroad and not specifically tailored to the violations alleged in the Complaint.

Third, Count IV, for which the FTC can now seek only injunctive relief, is moot because the alleged billing practice is long-ceased, as even the FTC alleged and admitted in its Complaint filed almost three years ago.  Dkt. 1 ¶ 3.  Even assuming Count IV is not moot, Count IV still fails because Match Group, LLC complied with all applicable laws and acted reasonably and in good faith, as Match Group, LLC did not unfairly deny consumers access to their accounts.  Match Group, LLC's clearly-disclosed policy was not intended to harm or retaliate against a consumer who initiated a billing dispute, but was intended to comply with a user's clear indication that he or she no longer wished to remain on the Match.com platform.  Moreover, the FTC's requested relief is contrary to the public interest because, even when the practice did exist, the chargeback policy in Count IV was a reasonable policy designed to benefit consumers; was easily avoidable by consumers in that they could choose not to initiate a wrongful chargeback request; and, as a matter of public policy, the FTC should not seek to protect consumers who have submitted baseless chargeback requests.  Additionally, the FTC's requested injunction is overbroad and not specifically tailored to the violations alleged in the Complaint.

Fourth, Count V fails because the online cancelation method is not complicated or out of the ordinary.  The actual data shows that subscribers have no difficulty canceling via the online

4

cancelation flow, which can be completed in less than one minute.  On average, 89% of Match.com subscribers who initiate an online cancelation request successfully canceled their subscription within the same day.  The FTC seems to rely on a different set of data and claims that "thousands of consumers have been harmed" by the "failure to provide a simple cancelation mechanism."  In the FTC's investigation (explained in detail with regard to Topic 8), Match provided samples of consumer interactions that were coded in its customer service database as "Thought They Had Canceled."  However, this sample includes a broad category of consumers including (a) some who had canceled but it was after the auto-renew date; (b) some who "thought" they had canceled but had never started the process at all; and (c) others who claimed to have tried to cancel through some means other than online.  None of the complaints identify a specific way in which Match's cancelation process confused subscribers into wrongly believing that they had completed the cancelation process.  The FTC gives these complaints far more weight than they deserve at the expense of actual facts.  The FTC's ROSCA argument largely is premised on the subjective description of the cancelation process by a few low-level employees among the hundreds of thousands of pages of documents produced.  In short, any task that can be completed in less than one minute and that close to 90% of consumers complete within the same day can hardly be characterized as not "simple."

Moreover, even assuming that the online cancelation method is not simple (although it is), Match Group, LLC offers several other cancelation methods in full compliance with ROSCA, including simple methods to cancel by phone, fax, email, internet chat, or standard mail.  At all times, Match Group, LLC complied with all applicable laws and acted reasonably and in good faith.  In addition, any monetary relief would be subject to mitigation to the extent that consumers received refunds.  Moreover, the FTC's requested relief is contrary to the public interest because

Match Group, LLC's online cancelation method is intended to benefit consumers.  Additionally, the FTC's requested injunction is overbroad and not specifically tailored to the violations alleged in the Complaint.

**2.   Proposed time limit to file motions for leave to join other parties**

**FTC's proposal:** October 21, 2022. The FTC believes that this deadline is appropriate to allow the Commission to investigate Match's claim that its operation of match.com through a subsidiary shields it from responsibility for the violations alleged in the complaint, a claim Match did not until the eve of litigation and well after Match had ceased producing documents in response to the Commission's Civil Investigative Demand. Whether Defendant Match Group, Inc., can evade liability by operating behind Match Group, LLC, depends on many factors, including when, if ever, Match Group, LLC, took over operation of the website; whether Match Group, Inc., participated in the alleged violations; and whether the two entities had common ownership, governance, employees, and comingled finances such that they constitute a common enterprise or alter egos. These are fact intensive inquiries that will require substantial discovery, including depositions of key employees. Furthermore, discovery may reveal other corporate entities that bear responsibility for the alleged violations. Additionally, FTC counsel is required to obtain a majority vote of the Commission for amendments to the Complaint, a process which can take some time. The proposed date would be consistent with Rule 15's advisement that leave to amend should be freely given "when justice so requires." *See* FED. R. CIV. P. 15(a)(2).

**Match's proposal:** Match proposes <u>April 29, 2022</u>.  Agreement could not be reached because the Parties disagree as to whether the FTC has had sufficient time to decide whether to join other parties, particularly given that the FTC conducted a lengthy investigation and obtained significant amounts of discovery even before filing the Complaint.

More specifically, the FTC has represented that Match did not claim "until the eve of litigation and well after Match had ceased producing documents in response to the Commission's Civil Investigative Demand" that the FTC named the wrong entity in the Complaint. But that is demonstrably false, as noted with regard to Topic 1. Match stated, in its first production to the FTC, in its May 15, 2017 Interrogatory Responses to the FTC's CID that Match.com, LLC (which is merely the former name of Match Group, LLC) is the general operating company that operates Match.com. Delaware Secretary of State records show that Match.com, LLC filed a certificate of amendment on September 12, 2017 changing its name from Match.com, LLC to Match Group, LLC.

Time and time again, Match Group, Inc. has reminded the FTC, including in negotiating the potential Consent Order, that Match Group, Inc. is a separate holding company entity, and Match Group, Inc. identified the entity that actually owns and operates Match.com. Additionally, in its December 16, 2018 White Paper, Match Group, Inc. noted its "serious concerns with the scope of the [FTC's] proposed Consent Order," which named Match Group, Inc., stating that "[b]ecause the CID and the Draft Complaint allegations are clearly limited to Match.com's business, the Consent Order should be limited to the Match.com business as well."

The FTC has had almost three years since the Complaint was filed (and almost five years since learning that Match Group, Inc. does not operate Match.com) to decide whether to move for leave to join other parties, and the FTC still has not done so. Match also objects to the FTC's continued misrepresentation that Match Group, Inc. "operat[es]" Match.com or that Match Group, Inc. is attempting to "evade liability." Moreover, the FTC's claim that it now needs time "to investigate Match's claim that its operations of [M]atch.com through a subsidiary shields it from responsibility for the violations alleged in the [C]omplaint" is disingenuous; in the first

interrogatory of the CID, the FTC asked about the ownership and operation of Match.com, so the FTC could have investigated further Match's response that "Match.com, LLC [which is Match Group, LLC's predecessor] is the general operating company that operates Match.com" five years ago or before it filed the Complaint almost three years ago.

### 3.  Proposed time limit to amend pleadings

**FTC's proposal:** October 21, 2022. For the reasons discussed above, it may be necessary for the Commission to add allegations regarding Defendant's relationship with Match Group, LLC, and other corporate entities. The FTC, therefore, proposes the same date for amendments to add parties and to add allegations and claims.

**Match's proposal:** Match proposes <u>April 29, 2022</u>.  Agreement could not be reached because the Parties disagree as to whether the FTC has had sufficient time to decide whether to amend its pleadings, particularly given that the FTC has known since May 15, 2017 that Match Group, Inc. did not operate Match.com, and the FTC conducted a lengthy investigation and obtained significant amounts of discovery even before filing the Complaint.  Match believes that the FTC has had ample time to decide what allegations to bring because the FTC began its massive, years-long investigation over five years ago and filed the Complaint almost three years ago.  A detailed explanation of the investigation is included with regard to Topic 8.

### 4.  Proposed time limit for motions, including dispositive motions

**FTC's proposal:** May 5, 2023. This would be 120 days prior to the FTC's proposed trial date, discussed below.

The FTC objects to Defendant's proposal to deviate from the local rules by allowing Defendant to file multiple summary judgment motions. *See* L.R. 56.2(b) ("Unless otherwise directed by the presiding judge, or permitted by law, a party may file no more than one motion for

summary judgment."). Match's proposal is little more than a transparent effort to make its arguments to the Court before the FTC has had adequate time to conduct discovery and test Match's purported defenses. Given the large number of consumers alleged to have been harmed by Match's deceptive practices, it is in the interest of justice that these issues not be hastily decided.

**Match's proposal:** Match proposes <u>December 30, 2022</u> for the deadline to file traditional dispositive motions, which is over 120 days before Match's proposed trial date, as stated with regard to Topic 10.  Agreement could not be reached primarily because the Parties fundamentally disagree about the necessary length of the fact discovery period, as explained in further detail with regard to Topic 8.  Additionally, as discussed in further detail with regard to Topic 15, Match respectfully requests that, under Local Rule 56.2(b), the Court permit the Parties to file more than one motion for summary judgment and thus allow early dispositive motions by <u>July 11, 2022</u>. Match believes that early dispositive motions could permit early resolution of some or all of the claims without proceeding through discovery, as more fully explained with regard to Topic 15. Moreover, the FTC's claim that "it is in the interest of justice that the issues not be hastily decided," is contradicted by its previous representations to the Court encouraging swift decisions, including in its recent Motion to Lift Stay.  Dkt. 83 at 5 ("Given the time that has elapsed since the Commission filed this action, witnesses' memories may soon begin to fade, and evidence could be lost should the stay continue indefinitely.").   Permitting early dispositive motions would not be "hastily decid[ing]" issues but would  simply give the parties the opportunity to streamline or even eliminate the need for additional discovery (beyond the discovery obtained from the CID) if the Court resolves disputed *legal* issues that do not require additional factual development.  For example, a ruling on the legal dispute about the plain meaning of ROSCA language, as described

in Topic 15, would guide the parties as to what, if any, discovery would be needed as to Count V, and likely would greatly reduce the time needed to prepare for trial.

### 5.   Proposed time limit for initial designation of experts

**FTC's proposal:** March 10, 2023. This date would roughly coincide with the FTC's proposed date for the end of fact discovery.

**Match's proposal:** Match proposes <u>November 4, 2022</u>.  The FTC represented to Match that it could not reach an agreement with Match on any deadlines because of its concern about the fact discovery period.  As described in detail with regard to Topic 8, the FTC has already conducted a years-long investigation in which the FTC obtained a significant amount of discovery from Match (including hundreds of thousands of documents and answers to a large number of interrogatories and other written questions).

### 6.   Proposed time limit for responsive designations of experts

**FTC's proposal:** April 25, 2023.

**Match's proposal:** Match proposes <u>December 2, 2022</u>.  The FTC represented to Match that it could not reach an agreement with Match on any deadlines because of its concern about the fact discovery period.

### 7.   Proposed time limit for objections to experts

**FTC's proposal:** August 4, 2023.

**Match's proposal:** Match proposes <u>January 20, 2023</u>.  The FTC represented to Match that it could not reach an agreement with Match on any deadlines because of its concern about the fact discovery period.

**8. Proposed plan and schedule for discovery; subjects of discovery; time limit for fact and expert discovery; statement concerning whether discovery should be in phases**

**FTC's proposal:**

Discovery plan:
- Close of discovery: March 6, 2023
- Disclosures pursuant to Fed. R. Civ. P. 26(a)(3)(A)-(B): March 6, 2023
- Objections to the use of depositions pursuant to Rule 32(a): March 20, 2023
- Deadline for filing pretrial material with Court: July 10, 2023

The FTC's proposed discovery schedule is in line with typical discovery periods for complex civil litigation and other scheduling orders entered by this Court. As discussed below, the FTC intends to take discovery on a wide range of topics relevant to its claims. In particular, because civil penalties are available for violations of ROSCA, the FTC intends to explore what key employees and executives at Match understood about the violations and resulting consumer harm from them. This will require many depositions, as well as interrogatories and document requests.

The abbreviated discovery period proposed by Defendant is unjustified and insufficient to address the FTC's legitimate discovery needs. As the FTC advised Defendant, the FTC has a right to discovery like any other litigant, and this is not altered by the FTC's limited pre-suit Civil Investigative Demand (CID). The FTC's investigation had a limited purpose: to determine whether there was reason to believe Match violated the law. *See* 15 U.S.C. § 53(b); *cf. United States v. Witmer*, No. 1:93-cv-1410, 1993 U.S. Dist. LEXIS 14347, *211 (M.D. Pa. Oct. 8, 1993) (discussing a pre-litigation civil investigative demand issued by the federal government and noting that "[t]he purpose of the CID is to 'enable the Government to determine whether enough evidence exists to warrant the expense of filing [a civil] suit, as well as to prevent the potential Defendant from being dragged into court unnecessarily'"). Moreover, the FTC made many accommodations to Match in response to its claims of burdens, including voluntarily allowing Match to produce a

limited number of documents from specific custodians. The FTC also took no oral testimony during this investigation. The FTC made these accommodations to Defendant without prejudice to its ability to seek additional evidence in litigation.

As outlined below, the FTC requires documentary and oral discovery on a host of topics. Some of these topics concern issues uncovered only after the Commission's CID was issued. Others merely intend to seek additional documents created in the five years since the Commission issued its CID or from custodians the FTC did not seek production from during its investigation. Finally, some request information relevant only to this litigation, including Defendant's affirmative defenses and the propriety of civil penalties.

Potential subjects of discovery:
- Ownership, control, and management of Match.com;
- Match Group Inc.'s role in operating Match.com;
- Any affirmative defenses raised by Defendant in its Answer;
- Match Group Inc.'s relationship with any entity alleged to have operated Match.com;
- The company's revenue from the practices alleged in the business practices section of the complaint and Counts III-V;
- Match Group Inc.'s revenue from subscriptions to its platforms, including Match.com, Tinder, OKCupid, and Plenty of Fish;
- Representations and alleged disclosures relating to (1) the Match Guarantee; (2) Match Group Inc.'s practices relating to chargebacks from subscribers of defendant's platforms, including Match.com, Tinder, OKCupid, and Plenty of Fish; (3) the cancellation policies and methods of cancellation for defendant's platforms, including Match.com, Tinder, OKCupid, and Plenty of Fish; and (4) the presence of fraud on Match.com, Tinder, OKCupid, and Plenty of Fish.
- Defendant's studies, audits, or other analyses, or those conducted at Defendant's request, concerning the sign up process for subscriptions to Defendant's platforms, including Match.com, Tinder, OKCupid, and Plenty of Fish.
- Match's policies and procedures relating to (1) the Match Guarantee; (2) Match Group Inc.'s practices relating to chargebacks from subscribers of defendant's platforms, including Match.com, Tinder, OKCupid, and Plenty of Fish; (3) the cancellation policies and methods of cancellation for defendant's platforms, including Match.com, Tinder, OKCupid, and Plenty of Fish; and (4) the presence of fraud on Match.com, Tinder, OKCupid, and Plenty of Fish.
- Match and its executives knowledge concerning deceptive practices relating to (1) the Match Guarantee; (2) Match Group Inc.'s practices concerning chargebacks from subscribers of defendants platforms, including Match.com, Tinder, OKCupid, and

Plenty of Fish; (3) the cancellation policies and methods of cancellation for defendant's platforms, including Match.com, Tinder, OKCupid, and Plenty of Fish; and (4) the presence of fraud on Match.com, Tinder, OKCupid, and Plenty of Fish.

- Consumer communications, complaints, or lawsuits relating to (1) the Match Guarantee; (2) Match Group Inc.'s practices concerning chargebacks from subscribers of defendant's platforms, including Match.com, Tinder, OKCupid, and Plenty of Fish; (3) the cancellation policies and methods of cancellation for defendant's platforms, including Match.com, Tinder, OKCupid, and Plenty of Fish; and (4) the presence of fraud on Match.com, Tinder, OKCupid, and Plenty of Fish.

As a final basis for the requested fact-discovery deadline, the FTC's lead counsel will be on paternity leave for a significant portion of the limited time period that Defendant has proposed for fact discovery, as defense counsel has been advised.

The FTC does not believe that phased discovery is appropriate in this matter.

**Match's proposal:** Match's positions on fact and expert discovery are detailed below:

Fact Discovery:  Match proposes October 28, 2022 as the deadline for the close of fact discovery.  Match believes that an even shorter fact discovery period would be appropriate but has proposed this date in an effort to reach a compromise with the FTC.  However, agreement has still not been reached because Match believes that the 11-month discovery period that the FTC has proposed is extraordinarily lengthy in light of the Court's Order dismissing with prejudice so many aspects of the FTC's Complaint, along with the FTC's years-long investigation in which the FTC obtained a significant amount of discovery from Match (including hundreds of thousands of documents and answers to a large number of interrogatories and other written questions).

More specifically, the FTC's massive investigation began over five years ago when the FTC served a Civil Investigative Demand (the "CID") on Match on March 17, 2017.  Although the FTC is now attempting to minimize the scope of its CID by referring to it as a "limited pre-suit" CID, the FTC's stated scope of the CID was "[t]o determine whether unnamed persons,

13

partnerships or corporations have been or are engaged in the deceptive or unfair use of e-mail, metatags, computer code or programs, or deceptive or unfair practices involving Internet-related goods or services, in violation of Sections 5 or 12 of the Federal Trade Commission Act, 15 U.S.C. 45, 52, as amended," and also "to determine whether Commission action to obtain equitable monetary relief for injury to consumers or others would be in the public interest."

The CID contained 17 multi-part interrogatories and 11 multi-part document requests.  In responding to the document requests, the final set of search terms proposed by the FTC yielded over 900,000 documents.  Match agreed to apply a technology assisted review (TAR) to those 900,000 documents, and Match then reviewed over 400,000 documents and produced over 225,000 documents.  The produced documents were from nine different custodians and spanned a five-year period (*i.e.*, the date sent range was September 2012 to October 2017).  Then, on April 27, 2018, the FTC served on Match an extensive number of supplemental written questions, with 15 multi-part requests and at least one of those requests containing nine enumerated subparts. Match does not dispute that the FTC is entitled to *some* discovery, but the scope of the additional discovery required must take into account the massive scope of the FTC's existing discovery.

Additionally, Match also believes that discovery should be strictly limited to the FTC's few surviving counts and only to areas that the FTC has not already obtained discovery through its investigation.  For example, Match vehemently opposes the FTC's proposed discovery on non-Match.com entities, including Tinder, OKCupid, and Plenty of Fish, because those entities are not relevant to the FTC's claims in the Complaint, which relate only to the FTC's accusations against Match.com, and such discovery would not be proportional to the needs of the case.  Additionally, Match strongly opposes the FTC's proposed discovery on "the presence of fraud" because the Court already dismissed with prejudice Counts I and II that related to the FTC's fraud allegations,

14

as Match is immune under Section 230 of the Communications Decency Act.  *See, e.g.*, Dkt. 86 at 34-35 ("Furthermore, Match is entitled to immunity under § 230(c)(2) on both Counts I and II for any actions related to its fraud review process of user accounts.").  Any discovery on the "presence of fraud" would be in direct contravention of the Court's Order, would not be relevant to the FTC's few remaining claims in the Complaint, and would not be proportional to the needs of the case. Additionally, the vast majority of the topics on which the FTC seeks discovery were already covered during the CID, and there is no reason to re-tread old ground on which the FTC has already obtained discovery.

Match, on the other hand, has not had any opportunity to seek discovery from the FTC. Thus, Match intends to seek discovery from the FTC regarding various topics including, but not limited to, the following:

- The results of any and all research, surveys, or tests conducted by the FTC concerning the Match.com guarantee, billing, and cancelation practices that the FTC contends have been unfair or deceptive.
- The FTC's claim for monetary relief under Section 19(b), as set forth in the FTC's Initial Disclosures and Paragraph 90(c) of the Complaint, including but not limited to, any computation of such monetary relief sought by the FTC and any conclusions regarding the nature and extent of any alleged injury to consumers that the FTC contends was caused by the Match.com online cancelation method.
- The FTC's claim for monetary civil penalties, as set forth in the in the FTC's Initial Disclosures and Paragraph 90(b) of the Complaint, including but not limited to, any computation of monetary civil penalties sought by the FTC and any conclusions regarding the nature and extent of any alleged injury to consumers that the FTC contends was caused by the Match.com online cancelation method.
- The methods used and results of any and all investigations by the FTC into the reasons for or validity of alleged consumer complaints about the Match.com guarantee, billing, and cancelation practices that the FTC contends have been unfair or deceptive.
- Any and all evidence that the FTC contends supports its argument that Match is likely to reinstitute any of the practices at issue.
- Any and all evidence that the FTC contends supports its argument that Match.com does not offer a simple cancelation method.
- Any and all evaluations that the FTC had performed of other subscription service cancelation processes.
- All consumer complaints about the Match.com cancelation processes.

15

While Match is sympathetic to the fact that one attorney from the FTC will be on paternity leave, Match understands that he will be on leave starting in early or mid-May, significantly before Match's proposed fact discovery deadline on October 28, 2022.  Additionally, Match respectfully submits that the FTC has *four* attorneys of record in this case who are present on calls and copied on emails with counsel for Match, and Match expects that both sides would be adequately represented during the period of his leave.

Expert Discovery: In light of Match's proposals for the initial designation of experts on November 4, 2022 (as explained with regard to Topic 5) and responsive designation of experts on December 2, 2022 (as explained with regard to Topic 6), Match proposes December 16, 2022 for the close of expert discovery.  The FTC represented to Match that it could not reach an agreement with Match on any deadlines because of its concern about the fact discovery period.

9. **Proposed changes to the limitations imposed by the Federal Rules of Civil Procedure or by local rule or other proposed limitations**

**FTC's proposal:** The FTC proposes that the deposition limit be increased for this case from 10 to at least 15. The additional depositions are appropriate in this matter given that the FTC must assess both the knowledge of corporate executives (for establishing the propriety of civil penalties and broad injunctive relief) and the activities of lower-level employees who are carrying out the practices described in the FTC's Complaint.

**Match's proposal:** Match does not believe that any changes should be made to the limitations on discovery imposed under the Federal Rules of Civil Procedure or by local rule, or that other limitations should be imposed.  Given that the FTC has only three remaining counts (two of which have ceased for many years now) and the benefit of its prior investigation, Match opposes the

FTC's request for 15 depositions, instead of the 10 that are presumed appropriate by Federal Rule of Civil Procedure 30(a)(2).

### 10. Proposed trial date, estimated length, and jury demand

**FTC's proposal:** September 4, 2023. The FTC estimates that trial will take around eight days. The FTC does not demand a jury.

**Match's proposal:** Match proposes <u>May 1, 2023</u> for the trial date.  Agreement could not be reached on a trial date primarily due to the Parties' disagreement regarding a reasonable length of the fact discovery period, as outlined with respect to Topic 8.  Match estimates that three to four days would be needed for trial and has not demanded a jury trial.

### 11. Proposed date for further settlement negotiations

**FTC's proposal:** The parties have agreed to mediation via Zoom before the Hon. Hal Ray on May 11, 2022. In addition, the FTC remains committed to an open dialogue concerning settlement and will continue to discuss settlement options as the case proceeds.

**Match's proposal:** Aside from the mediation that has been ordered to occur (as discussed with regard to Topic 14), if the Parties do not reach a settlement in May 2022, Match believes that the Parties could benefit from further settlement negotiations after early dispositive motions are decided, if the Court allows early dispositive motions.

### 12. Objections or proposed modifications to Fed. R. Civ. P. 26(a)(1) initial disclosures requirement

**FTC's proposal:** The FTC has no objections or proposed modifications to Rule 26(a)(1). However, the FTC anticipates that a protective order may be necessary to safeguard the personally identifiable information of injured consumers in this matter. The FTC intends to attempt to

17

negotiate a proposed stipulated protective order addressing this issue with Defendant. If no agreement can be reached, the FTC will timely file a motion for a protective order.

**Match's proposal:**  At the Scheduling Conference, the Parties did not assert any objections to Rule 26(a)(1), or otherwise propose modifications to the timing, form, or requirements for disclosure under Rule 26(a).  The Parties exchanged initial disclosures on April 15, 2022.  Match agrees with the FTC that a protective order should be entered (as discussed with regard to Topic 17) but disagrees that any consumers have been injured.

### 13. Whether the parties consent to trial before the Magistrate Judge

There is no agreement to consent to trial before the Magistrate Judge.

### 14. Potential mediation or arbitration

**Joint proposal:** On April 7, 2022, pursuant to the Court's Order, the Parties submitted a Joint Designation of Mediator in which the Parties informed the Court that they agreed to mediation before Magistrate Judge Hal R. Ray Jr.  Dkt. 93.  The Court then referred the case to Judge Ray for a settlement conference.  Dkt. 94.  Judge Ray held a status conference on April 13, 2022, Dkt. 95, and set the settlement conference for May 11, 2022.

### 15. Other proposals regarding scheduling and discovery

**FTC's proposal:** The FTC has no further proposals concerning scheduling or discovery. But as stated in Topic 4 above, the FTC objects to Defendant's request that it be permitted deviate from the Local Rules by filing multiple summary judgment motions, including a motion before the FTC has had the opportunity to conduct adequate discovery these defenses. *See* L.R. 56.2(b).

Below, Defendant identifies two arguments it wishes to present in an expedited summary judgment: (1) Defendant's argument that Match Group, Inc. is an improper defendant and (2) Defendant's argument that other cancellation methods, including offline cancellation methods,

absolve Match of liability for an intentionally confusing and difficult online cancellation mechanism. As discussed below, neither argument can be properly addressed in the expedited timeframe Match has proposed. Accordingly, the Court should reject Defendant's request to deviate from the rules.

Defendant's first argument, concerning whether Match Group Inc. is the proper defendant, is a fact-intensive inquiry. To adequately oppose such a motion, the FTC must examine Match Group, Inc. executives' involvement in various facets of operating Match.com, which would require additional document production and witness depositions. Although Defendant claims the FTC has already had the opportunity to examine this defense, in fact the FTC has little information about the entity Match claims is the proper defendant. In fact, Defendant itself admits that the entity that Defendant claims is the proper Defendant, Match Group LLC, did not even exist at the time that it issued its responses to the FTC's Civil Investigative Demand. *See* Match's Position, Topic 2 ("Match stated in its May 15, 2017 Interrogatory Responses to the FTC's CID that Match.com, LLC (*which is Match Group, LLC's predecessor*) is the general operating company that operates Match.com.") (emphasis added). Moreover, while Defendant makes the brazen claim that it has always represented to the FTC that Match Group, Inc. had no role in Match.com's business, this claim is belied by Defendant's own CID interrogatory responses.[2] While Defendant appears to now claim these statements were incomplete or inaccurate, the FTC should be permitted full traditional discovery on this issue to reach the truth of the matter, including by questioning witnesses about the representations or misrepresentations that Defendant made to the FTC during

---

[2] In fact, in its CID Interrogatory responses, Defendant specifically defined "Match" as Match Group, Inc. and repeatedly discussed its role in operating Match.com: "Match and Match's business practices"; "The primary top-level that contributes to Match's business operations is Match.com"; "Match also maintains several URLs that redirect users to Match.com"; "Match['s] policy and practice that multiple Test profiles be used"; "Match's current policies and practices relating to free trial."

its investigation. A July 11, 2022 deadline would constrain the FTC's ability to test this defense and require that the FTC rush to take the testimony of executives before having had time to review documents and prepare adequately to examine witnesses on the many other topics at issue in this proceeding.

Defendant's second argument, concerning ROSCA, likewise does not merit this Court allowing Match an additional early summary judgment motion. Match cites no authority for its baseless argument that ROSCA requires only a single simple cancellation method, including offline methods. This interpretation of the statute contradicts both the plain language of the statute and the clear congressional intent. First, ROSCA explicitly requires that when a seller is engaging in "negative option marketing on the Internet" it must "provide[] simple *mechanisms* for a consumer to stop recurring charges." *See* 15 U.S.C. § 8403(3) (emphasis added). Defendant glosses over that "mechanisms" is plural, making plain that Congress did not envision that this requirement would be satisfied by a single mechanism. A straightforward reading of the text makes clear that a deceptively designed online cancellation mechanism would violate the "simple mechanisms" provision. Second, ROSCA was passed, in part, to address "aggressive, misleading sales tactics [used] to charge millions of American consumers for membership clubs the consumers did not want." *See id.* § 8401. Congress could not have intended to allow those deceptive marketers to avoid liability merely by, for example, having a fax line that is rarely advertised to consumers or utilized by consumers, as Match suggests. *See* Match's Position, Topic 1 (claiming that Match has complied with ROSCA by offering other cancellation methods including "phone, fax, email, internet chat, or standard mail."). As such, the FTC should be allowed full discovery concerning Defendant's online cancellation process, its design, complaints concerning this process, and Match Group, Inc. executives' involvement in these business practices.

**Match's proposal:** As previewed with regard to Topic 4, Match respectfully requests that, under Local Rule 56.2(b), the Court permit the Parties to file more than one motion for summary judgment and thus allow early dispositive motions by <u>July 11, 2022</u>.  Match believes that early dispositive motions could permit early resolution of some or all of the claims without proceeding through discovery.  Early summary judgment is appropriate to address at least two different issues.  First, the FTC named the wrong entity in the Complaint, and the FTC has been aware since Match's first response to its CID, back in May 2017.  While the FTC claims now that it could not possibly have known about the correct legal entity because Match.com, LLC was merely Match Group, LLC's former name and the FTC continues to represent that it needs more time for discovery because this is a "fact-intensive inquiry," Match should not be punished because the FTC is insisting on pursuing the wrong entity.  Again, in the first interrogatory of the CID, the FTC asked about the ownership and operation of Match.com, so the FTC could have investigated five years ago or before it filed the Complaint almost three years ago Match's response that "Match.com, LLC [which is Match Group, LLC's former name] is the general operating company that operates Match.com."  Match has repeatedly explained its concerns to the FTC, and the FTC has repeatedly ignored such concerns.  Additionally, to the extent that the FTC is suggesting that it would need discovery on an alter ego theory, that claim is not only not pleaded but also not supportable.

Second, Count V alleging a ROSCA violation can be resolved early because the plain language of ROSCA requires only "simple mechanisms" for cancelation; ROSCA does not provide that every cancelation method must be simple.  Match offers multiple methods of cancelation, and the FTC has alleged that only the online version is not simple.  Thus, even if the FTC were correct (although it is not) that the online cancelation flow is not simple, the existence of other unchallenged methods of cancelation defeats the FTC's claim.  The FTC's opposition to

an early motion for summary judgment by arguing that the plain language of ROSCA means something different only proves that the parties have a fundamental legal dispute about the statute's meaning.  That legal dispute can be resolved early, without the unnecessary expenditure of time and resources to conduct "full discovery" regarding the online cancelation flow, as the FTC requests.

Resolving these two issues early will narrow the scope of, or even eliminate entirely, the Parties' dispute before engaging in significant amounts of additional discovery, including the overly burdensome and irrelevant discovery topics that the FTC has proposed with regard to Topic 8 and the additional depositions beyond the presumptive limit that the FTC has claimed in Topic 9 that it needs.

**16. Whether a conference with the Court is desired and reason for the request**

The Parties do not believe that a conference with the Court is needed at this time.

**17. Other matters relevant to the status and disposition of the case**

The Parties hope to agree to and file a motion for protective order and order regarding ESI (*i.e.*, electronically stored information).

Respectfully submitted,

DATED:  April 19, 2022

*/s/ Reid Tepfer*
REID TEPFER
M. HASAN AIJAZ
MATTHEW WILSHIRE
SARAH ZUCKERMAN (admitted *pro hac vice*)
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
California Bar No. 224328 (Wilshire)
New York Bar No. 5603832 (Zuckerman)
Federal Trade Commission
1999 Bryan St. Ste. 2150

Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9362 (Wilshire)
T: (214) 979-9376 (Zuckerman)
F: (214) 953-3079
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
mwilshire@ftc.gov;
szuckerman@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION


*/s/ Angela C. Zambrano* _____
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
David Sillers
State Bar No. 24072341
dsillers@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc.*