**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MATCH GROUP, INC., a corporation,<br><br>Defendant. | Case No. 3:19-cv-02281-K<br><br>**Plaintiff's Reply to Defendant's Opposition to Motion to Amend its Complaint and Add Defendant** |

**I.   INTRODUCTION**

As discussed in the Federal Trade Commission ("FTC")'s Motion to Amend its Complaint, Federal Rule of Civil Procedure 15 and Fifth Circuit precedent provide a strong presumption in favor of granting timely amendments. Shortly after this Court entered its Scheduling Order, the FTC moved to amend within the deadline. The proposed amendment ("Proposed Amendment") to the Complaint is simple: it would merely add Defendant Match Group, Inc.'s ("MGI") wholly owned subsidiary Match Group, LLC ("MGL"), which MGI concedes has operated match.com.

As part of its ongoing efforts to avoid litigation on the merits, MGI objects to the FTC's Motion to Amend. MGI's position is remarkable not only because it objects to a timely amendment, but also because MGI does not even attempt to argue that the Proposed Amendment would prejudice it in any way. Nor could it. The amendment would not add to MGI's litigation burden,[1] hinder its defenses, or delay resolution.

---

[1] MGI's opposition frequently cites the potential burdens to Match Group, LLC in defending this case, suggesting that MGI sees its burden as one and the same with its wholly owned subsidiary. This is understandable considering that MGI and Match Group, LLC appear to have jointly

1

Instead, MGI mischaracterizes the record and raises irrelevant arguments. Specifically, it alleges that the FTC is acting with dilatory motive even though the amendment would not result in any delay. MGI also argues that the FTC's Proposed Amendment, filed within the time provided by the Scheduling Order, is too late in time because of the passage of more than two years since the filing of this case. MGI boldly makes this argument *without even mentioning that MGI itself sought to stay this case (See Doc. 51)*, which the Court granted. Finally, MGI tries to resurrect legal arguments that this Court has recently rejected to argue that naming MGL would be futile. None of these arguments justify departing from the presumption that a timely filed motion to amend should be granted absent a showing of prejudice.

## II. ARGUMENT

There is a strong presumption in favor of granting timely amendments. Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Accordingly, the Fifth Circuit has held that "district courts must entertain a presumption in favor of granting parties leave to amend," and that "unless there is a substantial reason, such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial." *See Deuling v. Devon Energy Corp.*, 623 Fed. Appx. 127, 128-129 (5th Cir. 2015) (quoting *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 376 (5th Cir. 2000); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765, 770 (5th Cir. 1999)).

MGI has not provided any reason to depart from this presumption. As explained within, MGI has not and cannot show prejudice from the proposed amendment. Moreover, MGI has not

---

operated, and are both responsible for, match.com, but MGI cannot cite burdens to a separate entity as a basis for why MGI is prejudiced by the amendment.

established that the FTC has acted with dilatory motive or an intent to delay. Finally, MGI's legally incorrect and unsupported arguments fail to establish that amendment would be "futile."

### A.  MGI Cannot Show Prejudice from the Proposed Amendment.

The Proposed Amendment would not prejudice MGI. It would not impair the company's ability to defend itself because the amendment would not change the nature of the suit. *See Dozier v. Rowan Drilling Co.*, 397 F. Supp.2d 837, 855 (S.D. Tex. 2005) (permitting amendment of complaint when amendment does not change the nature of the suit). Moreover, MGI has ample time to defend against the amended complaint: discovery has only recently opened, and trial is over a year away. Therefore, the Proposed Amendment will not limit MGI's ability to present its case at trial.

In addition, the Proposed Amendment will not increase MGI's discovery obligations. The FTC does not seek to add any claims and instead intends to seek discovery on the same topics outlined in the joint 26(f) report, which would be collected from the same entities and individuals.[2] And because the Proposed Amendment would not add new claims, MGI will not face any material added burden to responding to the FTC's amendment or to preparing for trial.[3]

### B.  The FTC Has Not Moved to Amend with a Dilatory Motive.

MGI argues that the FTC's timely Motion to Amend somehow "evidences" a dilatory motive. But as is clear from the Motion to Amend, the FTC *is not seeking to delay anything*. The FTC moved within the time allotted by the Scheduling Order, and the Proposed Amendment will

---

[2] The FTC can and will take discovery of the operation of match.com and the relationship between MGI and MGL regardless of whether MGL is a defendant, and the Proposed Amendment does not change the entities that hold information relevant to that inquiry. *See* Doc. 99.

[3] To the extent that MGI argues that refiling the Complaint with Counts I and II somehow prejudices it, that is incorrect, as discussed in Section II.C.1, *infra*.

not alter the other deadlines in that order. Moreover, for reasons explained above, the Proposed Amendment would not provide any tactical advantage to the FTC over MGI.

Unable to articulate evidence of dilatory motive, MGI attempts to improperly reframe the issue into a factual dispute over what it told the FTC prior to filing. Its argument is not only irrelevant but also misleading for several reasons.

First, MGI harps on the passage of time since this case was filed *without even mentioning* that MGI sought – and the Court stayed – this case for two years to await and assess the Supreme Court's ruling in *AMG Services v. FTC*. *See* Doc. 43. The Court did not reopen this matter until it resolved the Motion to Dismiss mere weeks ago. *See* Docs. 86 and 90.

Second, taking the stay into account, the FTC moved as soon as practicable after MGI's eleventh-hour assertion, on the eve of filing, that MGL solely operated match.com. MGI asserts that it took this position before the FTC voted to approve the complaint, but this is not true, and MGI has not shown as much to the Court. FTC staff consulted with MGI regularly throughout the years-long investigatory process. At no point did MGI attempt to pin the blame on MGL. *See* Ex. A at App. 1-3 (Declaration of M. Hasan Aijaz). After the FTC sent MGI a draft of the complaint, MGI submitted white papers that made numerous arguments against liability, but never argued that MGI was not legally responsible for match.com's violations.[4] *See Id*. Only after the Commission voted, referred the matter to DOJ[5], and was one week away from filing suit

---

[4] MGI incorrectly characterizes a December 16, 2018 White Paper as stating that MGL operated match.com. But the only reference to Match Group, LLC in that White Paper is in a caption of a case cited for a different proposition. Instead, the White Paper simply argues that the scope of the order should be limited to the match.com brand, one of many brands operated under the "Match Group" umbrella.

[5] When the Commission seeks civil penalties, as it does in this case, the FTC Act provides that it must give notice to the Attorney General and provide 45 days for the Department of Justice to file the matter before commencing the action on its own behalf. 15 U.S.C. § 56(a)(1).

did MGI assert in a letter that MGL was solely responsible for operating match.com—a position MGI's interrogatory responses contradict.

MGI can only point to a single claim it made from the years long FTC investigation to allege that it told the FTC that MGL operated match.com alone. *See* Def. App. Ex. A, at App. 001-002.[6] MGI's assertion is another mischaracterization of the record, and directly contradicts what it has told the public and another federal court. After telling this Court that it does not operate match.com, MGI told a federal appellate court the opposite:

> Match Group, Inc. ("Match") is a Dallas, Texas-based online dating service which operates dating web sites in over 50 countries. Originally founded in 1993, Match operates www.match.com and mobile apps.

*See* Ex. B at App. 4-25 (Brief for Match Group, Inc. as Amicus Curiae, *Epic Games, Inc.*, vs. *Apple Inc.*, Nos.21-16506 & 21-16695 (9th Cir.) (Nov. 29, 2021).

Similarly, just a few months before the FTC filed the complaint, Match issued a press release stating that "Match Group (NASDAQ: MTCH)[7] is a leading provider of dating products available in over 40 languages to our users all over the world through **applications and websites we own and operate**." *See* Ex. C at App. 26-28 (Press Release, Match Group, Inc., Match Group Announces Pricing of Upsized Senior Notes Offering (Feb. 8, 2019)) (emphasis added).

---

[6] The FTC disagrees with MGI's characterization of its interrogatory response, which it supports with a single-page excerpt. The FTC is unable to provide additional detail or cite to other responses in that document because the deadline for its reply did not provide enough time to give MGI the required 10 days' notice to object before confidential information they submitted to the FTC pursuant to compulsory process is made public. 16 CFR § 4.10. The FTC could submit that information under seal if the Court requests, but believes that doing so is unnecessary because even on the incomplete record it provided, MGI has failed to rebut the presumption in favor of granting the Proposed Amendment.

[7] Only Match Group, Inc., not Match Group, LLC has been a public company, so this reference to Match Group unambiguously refers to Match Group, Inc.

MGI's recitation of match.com's Terms of Use ("TOU") reinforces its self-contradictory stance on who operates match.com. It points to the TOU on its website to argue the FTC should have known MGL was the operator. But that has no relevance to the FTC's motivation in seeking amendment and does not establish that the Commission's motivation is dilatory. Moreover, MGL's operation of the website does not mean MGI did not also operate the website. Indeed, the FTC anticipates proving that MGI and MGL both operated match.com and are responsible for it.

Even if MGI had established some hypothetical dilatory motive, mere delay is not grounds for denial of a motion to amend absent prejudice to MGI. As the Fifth Circuit has explained, "delay alone is an insufficient basis for denial of leave to amend" and "[t]he touchstone for denial of leave to amend under Rule15(a) is prejudice." *Deuling*, 623 Fed. Appx. at 130 (citations omitted). "Delay is undue and prejudicial if it hinders the opposing party's ability to respond to the Proposed Amendment or to prepare for trial." *Id.* at 130. That concern is not present here because MGI has pointed to no delay of any sort, nor would there be such delay, and both MGI and MGL have had ample notice of this lawsuit.

**C. MGI's Arguments about the Merits of the Complaint are Legally Incorrect.**

MGI argues that the Court should deny the FTC's Motion to Amend because MGI disagrees that MGL is liable. Putting aside that this is an attempt to litigate the merits of a complaint before it is filed, MGI's arguments are fatally flawed because the Court has already rejected them.

   *1. The Inclusion of Counts I and II is Consistent with this Court's Prior Ruling.*

MGI argues that the Court's dismissal of Counts I and II is sufficient grounds to deny the FTC's Motion because the Proposed Amendment includes those counts. However, the Court just rejected MGI's request to strike those Counts from the Complaint. The FTC's Motion reflects

6

that ruling. In addition, including Counts I and II would preserve the Commission's ability to appeal the dismissal of those counts at the conclusion of this litigation.

Additionally, inclusion of Counts I and II would not impose any substantial burden. Because this Court has dismissed the counts with prejudice, adding a new defendant does not reinstitute those counts. *See Hicks v. Dep't of Pub. Safety & Corr.*, No. CV 19-108-SDD-RLB, 2022 WL 969613, at *3 (M.D. La. Mar. 30, 2022) (denying as moot defendant's motion to dismiss claims in a motion to amend when those claims had previously been dismissed). In any event, the FTC would not oppose an MGL motion to hold that the Court's dismiss of those counts is effective as to MGL.[8]

*Oren-Bousquet v. LaSalle Bank*, cited by MGI as supporting denial of the FTC's Motion, actually rejected MGI's position that dismissed counts must be purged from complaints. Specifically, that court found removal of the counts to be "unnecessary" because "all parties should be aware of which counts were dismissed." 2008 WL 11410042, at *2.[9]

> 2. *The Proposed Amendment Sufficiently Alleges that MGL's Violations are Likely to Recur.*

Second, MGI rehashes an argument that this Court rejected just a few weeks ago: that MGL cannot be sued because it stopped its conduct after the FTC began its investigation. *See* Doc. 20 at 9-14 (Defendant's rejected argument that relied on *FTC v. Shire ViroPharma, Inc.*,

---

[8] The FTC would reserve its right to appeal the dismissal of Counts I and II as to both MGI and MGL.

[9] The other case MGI relies on is inapposite. In *Hunter*, the court rejected plaintiff's request to add a second defendant when *all* of the plaintiff's claims were barred. *Hunter v. Schopmeyer*, No. 3:18-CV-1589-D(BH), 2020 WL 908541, at *3 (N.D. Tex. Jan. 31, 2020), *report and recommendation adopted*, No. 3:18-CV-1589-D, 2020 WL 905333 (N.D. Tex. Feb. 25, 2020), *appeal dismissed*, 850 F. Appx 311 (5th Cir. 2021). Here, the Court has already rejected MGI's request to dismiss Counts III, IV, and V so adding MGL as a Defendant is appropriate as to those counts.

7

917 F.3d 147, 158 (3d Cir. 2019)).[10] As the Court correctly held, whether MGI is liable under Section 13(b) of the FTC Act depends on whether its conduct is likely to recur absent an injunction. At the pleading stage, as the Court noted, "to plead that a defendant is violating, or is about to violate under § 13(b), the FTC need only allege practices giving rise to a fair inference of a reasonable expectation of continued violations absent restrain." Doc. 86 at 11 (quoting *FTC v. SW. Sunsites, Inc.*, 665 F.2d 711, 723 (5th Circ. 1982) and citing *FTC v. Neora LLC*, 552 F. Supp. 3d 628, 6 (N.D. Tex. 2021) (Lynn, CJ.). Identical allegations in the Proposed Amendment against MGL give rise to an equally reasonable expectation of continued violations here.

As the Court noted, the *Cornerstone Wealth* factors are used to assess whether a complaint meets the likelihood of recurrence standard. Doc. 86 at 12 (citing *United States v. Cornerstone Wealth Corp., Inc.*, 549 F. Supp. 2d 811, 816-17 (N.D. Tex. 2008) (Fitzwater, CJ.). Those factors are:

- The egregiousness of the defendant's actions
- The isolated or recurrent nature of the infraction
- The degree of scienter involved
- The sincerity of the defendant's assurances against future violations
- The defendant's recognition of the wrongful nature of his conduct, and
- Whether the defendant's occupation presents opportunities for future violations.

These factors all weigh as heavily against MGL as they weigh against MGI. The FTC anticipates that discovery will show that both MGI and MGL are likely to resume their violations

---

[10] MGI simply ignores that the activity described in Count V has continued unabated. It contests the legal significance of its activities, e.g., whether they constitute a violation of law, but it does not contest that its cancellation practices have not changed.

absent injunctive relief because, thanks to their close relationship and shared personnel, both are responsible for the same egregious conduct, had the same notice of consumer harm, and have the same motive and opportunity to engage in similar violations in the future. Indeed, a preliminary investigation suggests that the companies continue to engage in similar misconduct through other dating platforms they control. *See* Exs. D-F at App. 38, 60, 80. [11] (noting that MGI will cancel accounts of users who utilize their chargeback rights). The policies of those websites have demonstrated that MGL may operate those websites. Ex. D, G at App. 30, 101.

### III. CONCLUSION

From the start of this litigation, Defendant has sought to evade litigating the claims brought by the FTC on the merits. To that end, MGI is pointing the finger at MGL while also attempting to shield MGL from suit. MGI's Opposition is a continuation of that tactic. MGI and MGL clearly wish to avoid litigating facts that establish violations under the FTC Act and ROSCA, but those wishes alone do not rebut the presumption in favor of granting the FTC's Motion to Amend. Both MGL and MGI are appropriate defendants and liable for the violations alleged in the Complaint. MGI and MGL have shared ownership, shared operations, and both operate under the common "Match" brand advertising. Allowing the FTC to amend its Complaint to hold

---

[11] Because Defendant disavowed running match.com (and other brands) only after it ceased document production, the FTC will be seeking discovery on what entities operated Defendant's platforms, including match.com, Tinder, OkCupid, and Plenty of Fish.

both companies accountable is therefore consistent with Rule 15's provision that leave to amend be freely given when "justice so requires."

Respectfully submitted,

DATED: May 24, 2022

*/s/ Sarah Zuckerman*
REID TEPFER
M. HASAN AIJAZ
MATTHEW WILSHIRE
SARAH ZUCKERMAN (admitted *pro hac vice*)
JOHN R. O'GORMAN (admitted *pro hac vice*)
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
California Bar No. 224328 (Wilshire)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9362 (Wilshire)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
F: (214) 953-3079
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
mwilshire@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**CERTIFICATE OF SERVICE**

On May 24, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

<i><u>/s/ Sarah Zuckerman</u></i>