**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                    Plaintiff,<br><br>        vs.<br><br>MATCH GROUP, INC., a corporation, and<br>MATCH GROUP, LLC, formerly known as<br>MATCH.COM, LLC, a limited liability<br>company,<br><br>                    Defendants. | Case No. 3:19-cv-02281-K |

**MATCH GROUP, INC.'S MOTION TO COMPEL DISCOVERY RESPONSES AND**
**PRODUCTION OF DOCUMENTS FROM FEDERAL TRADE COMMISSION**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................................ 1

II. BACKGROUND .......................................................................................... 5

III. LEGAL ARGUMENT ................................................................................ 6

  A. **The FTC Refuses to Provide Discovery Regarding Its Cancelation Claim.** ................ 6

    1. The FTC Refuses to Tell MGI What It Claims Is Wrong with the Match.com Online Cancelation Flow. ....................................................................................... 7

    2. The FTC Refuses to Tell MGI What Features It Considers or What Standard It Uses in Evaluating Cancelation Flows. ........................................................................ 11

    3. The FTC Refuses to Provide Information About Its Alleged Damages Claim. ........... 13

    4. The FTC Will Not Even Acknowledge that Other (Publicly Available) Cancelation Mechanisms Exist on Match.com. ..................................................................... 15

  B. **The FTC Refuses to Engage in Discovery Regarding Match.com's Permanent Discontinuance of the Practices Challenged in Counts III and IV.** ................................... 16

    1. The FTC Refuses to Admit that the Challenged Practices Were Discontinued in 2019. 17

    2. The FTC Refuses to Disclose Any Basis for Its Belief that MGI Is Violating or About to Violate the FTC Act. ................................................................................. 19

  C. **The FTC Refuses to Identify Its Basis for Alleging that MGI Owns, Operates, and Controls Match.com.** ......................................................................................... 22

  D. **The FTC's Discovery Responses Contain Additional Deficiencies.** ......................... 24

    1. The Court Should Overrule the FTC's "Premature" Objection. ............................. 24

    2. The Court Should Order the FTC to Verify Its Interrogatory Responses. ................... 25

IV. CONCLUSION .......................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DeLeon v. City of Dallas*,
No. 3:02-CV-1097, 2005 WL 8158033 (N.D. Tex. Mar. 30, 2005).......................................25

*FTC v. Sw. Sunsites, Inc.*,
665 F.2d 711 (5th Cir. 1982) ...........................................................................................4, 17

*Heller v. City of Dallas*,
303 F.R.D. 466 (N.D. Tex. 2014) ........................................................................................10

*Jorge v. Atl. Hous. Found., Inc.*,
No. 3:20-CV-2782-N, 2022 WL 1082345 (N.D. Tex. Apr. 11, 2022) ...................................20

*Longoria v. Cnty. of Dallas*,
No. 3:14-cv-3111-L, 2016 WL 6893625 (N.D. Tex. Nov. 22, 2016).....................9, 15, 16, 18

*Lopez v. Don Herring Ltd.*,
327 F.R.D. 567 (N.D. Tex. 2018) .........................................................................7, 18, 23, 25

*McLeod, Alexander, Powel, & Apffel, P.C. v. Quarles*,
894 F.2d 1482 (5th Cir. 1990) ..............................................................................................21

*Merrill v. Waffle House, Inc.*,
227 F.R.D. 467 (N.D. Tex. 2005) (Lynn, C.J.).......................................................................6

*Nieman v. Hale*,
No. 3:12-CV-2433-L-BN, 2013 WL 6814789 (N.D. Tex. Dec. 26, 2013) .................7, 11, 23

*Peterson v. Bell Helicopter Textron, Inc.*,
806 F.3d 335 (5th Cir. 2015) ................................................................................................11

*Randstad General Partner (US), LLC v. Beacon Hill Staffing Group, LLC*,
2021 WL 4319673 (N.D. Tex. Sept. 23, 2021).........................................................................8

*SEC v. Cuban*,
No. 3:08-c-2050-D, 2013 WL 1091233 (N.D. Tex. Mar. 15, 2013) ................................10, 21

*Skelton v. U.S. Postal Serv.*,
678 F.2d 35 (5th Cir. 1982) .............................................................................................10, 21

*Squires v. Toyota Motor Corp.*,
No. 4:18-cv-00138, 2021 WL 1930721 (E.D. Tex. May 13, 2021) ......................................8, 9

*United States v. 58.16 Acres of Land*,
    66 F.R.D. 570 (N.D. Ill. 1975)...................................................................................25

*VeroBlue Farms USA Inc. v. Wulf*,
    No. 3:19-CV-764-X, 2021 WL 5176839 (N.D. Tex. Nov. 8, 2021) ................................20, 23

**Statutes**

15 U.S.C. § 53(b) .......................................................................................................17

Fed. R. Civ. P. 26(b)(1).................................................................................................6

Fed. R. Civ. P. 33(a)(1) ................................................................................................8

Fed. R. Civ. P.33(b)(3)...............................................................................................25

Fed. R. Civ. P. 36(a)(4)....................................................................................13, 17, 19

Pursuant to Federal Rule of Civil Procedure (the "Rules") 37, Defendant Match Group, Inc. ("MGI") hereby files its Motion to Compel Discovery Responses and the Production of Documents from Plaintiff Federal Trade Commission ("FTC") (the "Motion").

## I.   **PRELIMINARY STATEMENT**

There are only three primary issues remaining in this case after the Court's Order on MGI's Rule 12(b)(6) Motion to Dismiss, Dkt. 86:

1. Does Match.com offer a "simple" method to cancel recurring consumer subscriptions, as required by the Restore Online Shoppers' Confidence Act ("ROSCA") (Count V)?

2. If not, have consumers been harmed such that monetary relief is appropriate, and in what amount (Count V)?

3. Is Match.com about to reinstitute the guarantee and chargeback practices challenged in the Complaint, which it permanently discontinued years ago (Counts III and IV)?

MGI served targeted discovery on the FTC designed to elicit what evidence it has on these narrow issues. In response, the FTC stonewalled—refusing to describe what is not "simple" about Match.com's Online Cancelation Flow or how it could be changed to bring it into ROSCA compliance; refusing to describe the standards by which the FTC determines whether cancelation flows are simple; refusing to acknowledge Match.com's multiple alternative cancelation methods; refusing to describe how it would calculate any monetary harm or ascertain how consumers were harmed; and refusing to provide any evidence supporting their contentions (despite multiple written assurances made by MGI to the FTC and filings made in this action that Match.com has "permanently discontinued" the challenged guarantee and chargeback practices) that Match.com com is about to resume them. The FTC even refused to verify its interrogatory responses. This discovery conduct must not be condoned, and the FTC must be ordered to respond fully.

The tactics at issue in this Motion are even more egregious in light of the lengthy history of the FTC's investigation and pursuit of these claims. The FTC began investigating Match.com

more than five years ago, during which it thoroughly probed all aspects of Match.com's operations. The FTC served on MGI a Civil Investigative Demand ("CID") containing seventeen multipart interrogatories and eleven multipart document requests, later supplemented with an additional fifteen multipart questions. MGI provided lengthy, detailed narrative responses and produced more than 225,000 documents, in addition to attending numerous meetings with FTC Staff and submitting multiple white papers for the Staff's consideration.

Following the CID, Match.com committed to permanently discontinuing its 6-month guarantee program and its practice of not reinstating accounts that had been suspended during an unsuccessful chargeback dispute (unless the user requested reinstatement)—practices that MGI believes never violated the FTC Act in any event. Match.com also offered to make changes to the Match.com Online Cancelation Flow to comply with the FTC's interpretation of ROSCA's requirements. Yet to this day, the FTC has never described exactly how it contends the Online Cancelation Flow is deficient, or what changes are supposedly required. And, despite the fact that Match.com has permanently ceased the conduct that the FTC complained about and made repeated requests to the FTC for clarification as to how Match.com could alter the Match.com Online Cancelation Flow to satisfy the FTC, the FTC insisted on suing. After this Court dismissed a majority of the FTC's claims, the FTC served additional discovery on MGI, and MGI has now produced over 23,000 additional documents to the FTC, more interrogatory responses, and responses to over fifty requests for admission. Between the CID and this suit, MGI has provided nearly 250,000 documents and approximately 150 pages of narrative and interrogatory responses.

Despite having the benefit of this extensive discovery—and its obligation to have a good-faith basis to file suit—the FTC refuses to disclose even the most basic details of its claims or admit the most basic facts to narrow the contested issues. After a detailed letter and an extensive

meet and confer, it is clear that the FTC believes that it can pick and choose which rules to follow. Thus, the Court will have to order the FTC to comply with the Federal Rules. While the FTC may or may not have authority to harass a company for years on end during a CID without specifying the basis for the FTC's claims or charging the subject with any violations, the same is not true in litigation. Having decided to instigate an action in federal court, MGI is now entitled to discover information regarding the FTC's claims against it so that it can defend itself from the FTC's longstanding, specious allegations. In short, the time has come for the FTC to "put up or shut up."

*First*, MGI served a number of discovery requests seeking evidence supporting the FTC's allegation that Match.com's Online Cancelation Flow[1] is not "simple." For years, the FTC has alleged that Match.com's Online Cancelation Flow somehow violates ROSCA because it is not "simple." For just as long—including, most recently, in its discovery responses—the FTC has refused to explain to MGI *how* the Online Cancelation Flow is not simple, or what would need to be changed to make it "simple." Worse, the FTC also refuses to tell MGI what features it considers in evaluating whether a cancelation mechanism is "simple," or to produce documents reflecting surveys, research, tests, or evaluations about cancelation mechanisms, so MGI does not even know what standard Match.com is being measured against. In fact, the FTC's discovery responses are so obstructionist that the FTC refuses to admit that publicly available alternative cancelation mechanisms exist on Match.com, even though the FTC knows those mechanisms exist due to the CID discovery, and the FTC could confirm with a simple visit to Match.com's website.

*Second*, MGI served discovery seeking any evidence that supports the FTC's assertion that Match.com is about to violate the FTC Act based on the "permanently discontinued" guarantee and chargeback practices. As the Court knows, the FTC must prove a "fair inference of a

---

[1] "Online Cancelation Flow" means the Match.com automated online cancelation process, as distinct from the other cancelation mechanisms that Match.com offers, including email, chat, and telephone.

reasonable expectation of continued violations absent restraint." *FTC v. Sw. Sunsites, Inc.*, 665 F.2d 711, 723 (5th Cir. 1982) (internal citation and quotation marks omitted). However, Match.com discontinued the guarantee and chargeback practices months before the FTC filed this lawsuit, and has repeatedly committed to the FTC that it will not reinstate those practices. E.g., App. Ex. 1-E ; App. Ex. 1-F; Dkt. 20 at 2–3, 8 (MGI's Motion to Dismiss). Thus, MGI served discovery requests seeking admissions from the FTC that Match.com's conduct had been discontinued in 2019, and an explanation of the FTC's allegations—notwithstanding the discontinuance and MGI's repeated assurances that the practices would not be reinstated—that MGI (or even Match.com) is still "about to violate" the FTC Act. The FTC responded to this straightforward discovery with objections, evasive narratives rather than simple admissions, and blatantly incorrect denials based on a tortured reading of MGI's prior representations and the language of the requests. The FTC even refused to admit that the challenged conduct had been discontinued, although the FTC acknowledges in its Amended Complaint that the conduct has ceased, and evidence of such discontinuation is publicly available on Match.com. The FTC's approach of ignoring public facts to blindly charge forward on frivolous claims cannot continue.

*Third*, MGI sought discovery into the FTC's allegation that MGI owns, operates, and controls Match.com. This is relevant because MGI is an improper defendant. MGI has repeatedly told the FTC that Match Group, LLC ("MGL")—not MGI—owns, operates, and controls Match.com. The FTC only recently added MGL to the case, but it still stubbornly maintains its claims against MGI and asserts that it believes that MGI "owns, operates, and controls" Match.com. Am. Compl. ¶ 12. MGI asked the FTC to describe the facts and evidence supporting that inaccurate belief. Instead of doing so, the FTC objected and pointed to unidentified records that purport to show MGI somehow controlling Match.com. This is not sufficient

*Finally*, the FTC's responses contain a number of other deficiencies applicable to most (if not all) of the responses, including a baseless objection that MGI's discovery requests are "premature" and the FTC's refusal to verify its interrogatory responses. To the extent that the FTC is withholding documents or information based on such objections, the Court should overrule these objections and compel responses and a verification compliant with the Federal Rules.

## II.    BACKGROUND

On June 24, 2022, MGI served its first set of discovery requests in this matter. On August 8, 2022, the FTC served its objections and responses to those requests, which are attached to the appendix hereto as Exhibit 1-A (interrogatory responses), Exhibit 1-B (request for admission responses), and Exhibit 1-C (request for production responses). MGI then sent a letter to the FTC identifying deficiencies in the FTC's responses, and the parties met and conferred via telephone.

The next day, the FTC sent a letter purporting to "propose a fair and reasonable resolution" to the deficiencies identified in MGI's letter, App. Ex. 1-K at App. 124, but which in reality did no such thing. The FTC agreed to supplement some (but not all) of the discovery requests in MGI's letter, but it insisted that MGI wait two weeks without detailing how it would supplement. Additionally, the FTC's letter made clear that the promised supplements would still be deficient. For example, the FTC stated it was "not withholding any non-privileged non-work product documents that are responsive and relevant to these requests except where explicitly stated in [the FTC's] responses." App. Ex. 1-K at App. 125. The FTC did not explain what it considered "relevant," nor did its letter acknowledge that many of MGI's criticisms involved the FTC "explicitly stat[ing]" that it was limiting its production of responsive documents, as described in more detail below. The FTC said it would amend some (but not all) of the deficient interrogatory responses, mostly by adding Bates numbers. App. Ex. 1-K at App. 125. Again, the FTC ignored the other serious deficiencies that MGI identified, which will not be fixed by only adding Bates

numbers. Additionally, the FTC continued to refuse to comply with Rule 33's requirement that interrogatories be answered "under oath," apparently based on the belief that the FTC is not bound by the rules that apply to everyone else. App. Ex. 1-K at App. 125. Finally, the FTC said it would "amend where appropriate" some (but not all) responses to requests for admission, but only to "provide additional explanation concerning [the FTC's] inability to respond," or to continue its refusal to actually engage with the substance of the requests. App. Ex. 1-K at App. 126.

Given the significant and numerous deficiencies in the FTC's responses and the fact discovery cutoff quickly approaching, this Motion is necessary.

### III.   LEGAL ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "[T]he party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470–71 (N.D. Tex. 2005) (Lynn, C.J.). The FTC cannot meet its burden. Its ambush tactics—refusing to provide discovery about the basis for its claims, making it impossible for MGI to figure out what it is defending against—are inappropriate. The FTC's responses (where provided at all) are insufficient and/or improper, and MGI's Motion should be granted in its entirety.

#### A.   The FTC Refuses to Provide Discovery Regarding Its Cancelation Claim.

In the five years since the FTC began its investigation of Match.com, it astonishingly has never explained what it thinks is wrong with Match.com's Online Cancelation Flow or what changes would fix the problem. Now that MGI finally has the chance to seek discovery from the FTC, it seized the opportunity to force the FTC to explain its allegations (in contrast to years of

one-sided discovery during the CID). But no matter the form of discovery or how the question was asked, the FTC still refuses to articulate what the FTC thinks is wrong with Match.com's Online Cancelation Flow. Now that the FTC is a civil litigant in federal district court, it must play by the Federal Rules. The Court should compel complete and accurate responses to MGI's requests.

    1.    <u>The FTC Refuses to Tell MGI What It Claims Is Wrong with the Match.com Online Cancelation Flow.</u>

MGI asked the FTC to describe the alleged flaws in the Online Cancelation Flow, and explain what needed to be done to fix it. App. Ex. 1-A at App. 010 (Interrogatory No. 2). The FTC refused to answer. First, the FTC claimed that this was a "Blockbuster Interrogatory" to which it did not need to respond. *Id.* Not so. MGI did not ask the FTC to identify "every conceivable detail and fact which may relate to a case." *Nieman v. Hale*, No. 3:12-CV-2433-L-BN, 2013 WL 6814789, at *11 (N.D. Tex. Dec. 26, 2013); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 577–78 (N.D. Tex. 2018) (characterizing a "blockbuster interrogatory" as an "all-encompassing or broad and undirected request[]" where the serving party does "not want to miss anything—and so will ask for, effectively, everything"). Rather, it asked the FTC to identify the specific features of Match.com's Online Cancelation Flow that the FTC contends make the Online Cancelation Flow not "simple." App. Ex. 1-A at App. 010. It is not too much to ask—five years into the FTC's investigation—what the FTC believes is "wrong" with Match.com's Online Cancelation Flow. Incredibly, the FTC also objected that the changes the FTC thinks would be necessary to bring Match.com into compliance with ROSCA are "irrelevant." Hardly. The FTC is seeking injunctive relief in this case. Am. Compl. ¶ 89. The characteristics of what the FTC would consider a "simple" cancelation mechanism (and therefore what type of changes would be necessary to comply with

the injunction that the FTC is seeking) are undeniably relevant.[2] *See id.*; App. Ex. 1-A at App. 010. MGI contends that Match.com's Online Cancelation Flow is and always has been compliant with ROSCA. It is time for the FTC to explain what about that flow makes it not "simple."

The FTC's responses to Requests for Admission about Match.com's Online Cancelation Flow are also inadequate. In its responses to Requests for Admission Nos. 40–43, which seek admissions that Match.com's Online Cancelation Flow can be completed within a certain amount of time, the FTC objected to each Request as "vague because it is ambiguous what type of person the requests [sic] refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, and other factors relevant to the speed of completing the cancelation flow." *See* App. Ex. 1-B at App. 034–035. But the Requests do not seek admissions that the Online Cancelation Flow can *always* be completed within a certain number of seconds—they rather seek admissions that the Online Cancelation Flow *can* be completed within a certain number of seconds.[3] The FTC also inappropriately objected that these Requests are "irrelevant because the fastest possible completion speed of a cancelation process it [sic] not relevant to any claim or defense in this case." *See* App. Ex. 1-B at App. 034–035. That objection is contradicted by the FTC's repeated allegations that the Online Cancelation Flow is "confusing and cumbersome," Compl. ¶ 55, and the FTC's enforcement policy that puts speed of cancelation at issue by indicating that a cancelation mechanism should not "impose unreasonable

---

[2] The FTC also objected that the interrogatory is compound because it asks what features make the Online Cancelation Flow not "simple" and what changes would be necessary to make the flow simple. The FTC is incorrect. Those two items are logically and factually subsumed within and necessarily related to one another, so the interrogatory is not compound. *See Randstad General Partner (US), LLC v. Beacon Hill Staffing Group, LLC*, 2021 WL 4319673, at *15 (N.D. Tex. Sept. 23, 2021). But even if it were compound (it is not), the FTC would still be obligated to answer all parts of the interrogatory because MGI is nowhere near the 25 interrogatory limit. *See* Fed. R. Civ. P. 33(a)(1).
[3] To the extent there was any vagueness or ambiguity, the FTC is obligated to answer the Requests for Admission "utiliz[ing] the ordinary definition of the phrases." *Squires v. Toyota Motor Corp.*, No. 4:18-cv-00138, 2021 WL 1930721, at *5 (E.D. Tex. May 13, 2021) (Mazzant, J.).

delays on consumers' cancellation efforts." Enforcement Policy Statement Regarding Negative Option Marketing, 86 Fed. Reg. 60822 (Nov. 4, 2021).

The FTC also refused to respond to Requests for Admission Nos. 47 and 49, which asked the FTC to admit that a large percentage of Match.com's free trial members and subscribers were able to successfully cancel their subscriptions. App. Ex. 1-B at App. 035–036. The FTC refused to answer these Requests for Admission, claiming that the information is already in MGI's possession, custody, or control. But the purpose of Requests for Admission is "to narrow the issues to be resolved at trial by identifying and eliminating those matters on which the parties agree." *Longoria v. Cnty. of Dallas*, No. 3:14-cv-3111-L, 2016 WL 6893625, at *5 (N.D. Tex. Nov. 22, 2016) (Horan, M.J.). Thus, a party cannot refuse to answer a request for admission simply because the information is available from another source. *See id.* The FTC then objected that the Requests are vague and ambiguous, but even if that were true (it is not), the FTC must answer "utiliz[ing] the ordinary definition of the phrases." *Squires v. Toyota Motor Corp.*, No. 4:18-cv-00138, 2021 WL 1930721, at *5 (E.D. Tex. May 13, 2021) (Mazzant, J.) (ordering party to respond to requests for admission using the phrases "area" and "maximum amount"). The FTC made no attempt to do so, and instead entirely refused to answer. The Court should order the FTC to answer now.

Finally, the FTC also refused to produce documents responsive to Request for Production No. 17, which seeks "[a]ll Documents Relating to any complaints or other negative statements regarding Count V of Your Complaint." In other words, MGI seeks all documents that reflect complaints or negative statements regarding Match.com's Online Cancelation Flow, which is at issue in Count V. Despite the centrality of this issue to the FTC's case (and MGI's defenses thereto), the FTC objected that this Request for Production is (1) "vague and unintelligible"; (2) "overbroad, unduly burdensome"; (3) "seeks irrelevant documents, not proportional to the needs

of the case"; (4) "constitutes an impermissible Fishing Expedition"; (5) "seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine"; and (6) "fails 'to describe with reasonable particularity each item or category of items to be inspected.'" None of these objections has any merit. The FTC fails to explain how the request is so "vague and unintelligible" that it is incapable of a reasonable interpretation, justifying a complete lack of response (it is not). *See Heller v. City of Dallas*, 303 F.R.D. 466, 492 (N.D. Tex. 2014). And although the FTC in its August 25 Letter agreed to "produce additional complaints in response" to Request for Production No. 17, this amended response will nonetheless be insufficient because it does not also include negative statements, as sought by the Request.[4] Thus, the FTC should be compelled to produce such documents in addition to keeping its promise to "produce additional complaints in response" to Request for Production No. 17.

Similarly, Requests for Production Nos. 18 and 19 seek documents "cited to, referenced in, or relied upon in preparing Count V of Your Complaint" or that the FTC "may use at trial that Relate to Count V of Your Complaint." MGI is entitled to discovery into what documentation exists to support the FTC's allegations. The FTC responded with an avalanche of boilerplate objections, claiming that the requests are overboard, irrelevant, not proportional, and an impermissible "Fishing Expedition." None of the objections has merit and each should thus be overruled. These requests are narrowly tailored to those documents that the FTC used in preparing Count V of its Complaint or may use at trial to prove Count V. Nor do the requests for factual information—the production of documents used or that will be used against MGI—intrude on any

---

[4] As for the FTC's privilege objections throughout its responses, the deliberative process privilege does not protect factual information obtained during an investigation. *Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 1982) (explaining the deliberative process privilege "protects predecisional materials reflecting deliberative or policy-making processes, but not materials that are purely factual." (quotation marks omitted)); *see also SEC v. Cuban*, No. 3:08-c-2050-D, 2013 WL 1091233, at *9 (N.D. Tex. Mar. 15, 2013) (explaining the privilege does not extend to facts such as who conducted investigations and identity of witnesses, the actions taken by an agency during an investigation, and communications between an agency and witnesses).

privilege. The FTC cannot seriously contend that it may keep secret from MGI the very documents the FTC has used or may use against MGI. That is the very definition of trial by ambush, which the discovery rules are designed to prevent. *See Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015) (explaining that "the aims of the Federal Civil Rules" are "to eliminate trial by ambush and afford full and fair litigation of disputed issues").

At bottom, no matter how or what MGI asked, the FTC still refuses to explain why it contends that Match.com's Online Cancelation Flow is problematic, and therefore why the FTC is imposing the burdens of litigation on MGI when it cannot even tell MGI what the problem is.

2.   The FTC Refuses to Tell MGI What Features It Considers or What Standard It Uses in Evaluating Cancelation Flows.

The FTC also refuses to give MGI any information about the standard that it applies to decide whether any cancelation mechanism is not "simple." The FTC's "I will know it when I see it" approach to ROSCA violations is inappropriate, particularly when the FTC will not even tell MGI what it is looking for. The FTC's objections should be overruled (to the extent that the FTC is withholding based on those objections), and the FTC should be compelled to respond.

In Interrogatory No. 5, MGI asked the FTC to identify the factors that the FTC considers to decide whether a cancelation mechanism is simple. That information is critical, particularly given the FTC's refusal to describe what is allegedly wrong with Match.com's Online Cancelation Flow. Yet the FTC refused to answer. First, the FTC claimed that this is a "Blockbuster Interrogatory," but MGI did not ask for "all facts" supporting the FTC's contentions, *cf. Nieman*, 2013 WL 6814789, at *11; it simply asked what factors the FTC considers so MGI can understand what the Match.com Online Cancelation Flow is being measured against. Absent such articulation, MGI has serious constitutional concerns, as even the FTC apparently cannot describe the standard. Next, the FTC objected that Interrogatory No. 5 is "irrelevant because it asks about cancelation

methods that are not at issue in this case," *i.e.*, other companies' cancelation methods. But the standard for what constitutes a "simple" cancelation mechanism should be the same regardless of the company, making such information relevant.[5] *See* App. Ex. 1-A at App. 013–014. Finally, the FTC objected that the request is premature because it asks for information that will be obtained from MGI's documents. This objection is absurd. The FTC does not need *any* discovery from MGI to describe the factors *it* considers to decide whether a cancelation mechanism is simple.[6] The FTC needs to identify and describe those factors *now*, not after it fishes through MGI's documents to "find" a problem (and announce a self-serving standard after the fact).

The FTC's responses to Requests for Admission Nos. 33–38 are similarly problematic. App. Ex. 1-B at App. 031–033. MGI sought admissions about certain cancelation features, and whether the FTC believes that those features make a cancelation mechanism not "simple." For example, Request for Admission No. 33 asks the FTC to "Admit that a cancelation method can be simple even if it includes a save offer (meaning an offer to continue a subscription at a discount)." *Id.* at App. 031. MGI hoped to understand which (if any) of these features made a cancelation mechanism not "simple," according to the FTC. Rather than answering, however, the FTC claimed that Requests for Admission Nos. 33–38 were "hypothetical," and responded only that "Plaintiff denies that *Match's* cancellation method is simple." *Id.* at App. 031–033 (emphasis added). But none of these Requests seek admissions about whether *Match.com*'s cancelation methods are simple. Instead, the Requests seek to understand what factors or features the FTC considers in

---

[5] The FTC then ironically (and incorrectly) objected to this Interrogatory as duplicative of Interrogatory Nos. 2 and 4, which ask about Match.com's cancelation mechanism. The interrogatory is not duplicative because it asks about the *FTC's own* standards, not *Match.com-specific* allegations.

[6] Even if it did need such information, the FTC obtained hundreds of pages of interrogatory responses and hundreds of thousands of documents from MGI during the CID, in addition to information publicly available on Match.com.

deciding whether *any* cancellation method is "simple." By dodging the Requests, the FTC's answers do not "fairly respond to the substance of the matter." Fed. R. Civ. P. 36(a)(4).

The FTC's obstruction continued in response to Requests for Production. In Requests for Production Nos. 5 and 6, MGI seeks "surveys, copy tests, research, analysis, studies, or other tests conducted by or done for the FTC regarding cancelation methods," and "Documents regarding evaluations the FTC has performed of subscription service cancelation processes," respectively. App. Ex. 1-C at App. 046–047. The FTC objected that these documents are "irrelevant." *Id.*[7] But these requests go directly to whether Match.com's Online Cancelation Flow is "simple."

If the FTC has documents reflecting surveys, tests, research, analysis, studies, or any other type of evaluation of cancelation methods, those documents are highly relevant. For example, if the FTC conducted research showing that surveying users about why they are canceling did not affect cancelation rates, MGI is entitled to that information so it can argue that including such a survey in the Match.com Online Cancelation Flow does not make that mechanism not "simple." Or if the FTC evaluated another subscription service's cancelation mechanisms and concluded that those mechanisms do not violate ROSCA, MGI is entitled to that information so it can compare the Match.com mechanisms with other mechanisms that the FTC deemed to be in compliance.

3.    The FTC Refuses to Provide Information About Its Alleged Damages Claim.

The FTC also refuses to explain to MGI what damages the FTC is seeking for the alleged ROSCA violation for not having a "simple" cancelation mechanism (whatever that violation is). In Interrogatory No. 3, MGI asked the FTC to identify and describe the harm to consumers that the FTC claims has resulted from the alleged ROSCA violation, including a description of how

---

[7] The FTC also objected that the Requests for Production are "overbroad" and "not proportional to the needs of the case," and to Request for Production No. 6 specifically as also "vague," but did not explain why. App. Ex. 1-C at App. 046–047. All of those objections seem to be premised on the FTC's inappropriate relevance objection.

the damages were calculated. The FTC responded that the number of consumers harmed "is approximately 64,000, with each harmed by an average amount of $136." But the FTC did not explain ***how*** the 64,000 consumers were harmed, ***how*** the FTC identified those consumers, or ***how*** it derived an average harm of $136 per consumer. While the FTC eventually agreed to amend its response, it would not commit to explaining how it arrived at the numbers it included in its first response—stating only that it would "describe with greater specificity the methodology" it intends to use—and insisted that it needed two weeks to complete what should be a simple supplement. *See* App. Ex. 1-K at App. 125. That is insufficient.

The FTC's Response to Request for Production No. 7, seeking documents related to the FTC's requested monetary relief, is even more egregious and obstructive. The FTC refused to produce such documents, claiming that they are "in Match's possession." App. Ex. 1-C at App. 048. That position is inconsistent with the FTC's response to Interrogatory No. 3, where the FTC somehow came up with 64,000 consumers and an average harm of $136 per consumer. *See* App. Ex. 1-A at App. 045–051. The FTC is clearly referring to documents of some sort for those numbers, but it refuses to produce or otherwise identify them. Moreover, it is unlikely that the FTC does not have a single document related to its damages claim that is not in MGI's possession. The FTC's response to Interrogatory No. 3 again proves the point. The FTC claimed that part of the harm to consumers included "costs imposed on consumers by time spent rectifying failed cancelation attempts." *See id.* at App. 045–046. MGI is unaware of any documents about "costs imposed on consumers by time spent rectifying failed cancelation attempts." The Court should compel the FTC to produce or otherwise identify the documents it is relying on.

4.     The FTC Will Not Even Acknowledge that Other (Publicly Available) Cancelation Mechanisms Exist on Match.com.

Finally, the FTC's responses to Requests for Admission Nos. 13–14, 17–18, 21–22, 25–26, and 29–30 are indicative of the FTC's obstruction. *See* App. Ex. 1-C at App. 045–051. The FTC will not even admit that other cancelation mechanisms *exist*. As described in MGI's Motion to Dismiss, MGI contends that the availability of other, simple cancelation mechanisms defeats the FTC's ROSCA claim, regardless of whether the Online Cancelation Flow is "simple." Dkt. 20 at 27. Thus, MGI served Requests for Admission asking the FTC to admit that these other cancelation mechanisms (such as email, chat, phone, mail, and fax) exist, and have existed at all relevant times. *See* App. Ex. 1-C at App. 045–051. These should have been simple requests, with simple responses, as the availability of these alternative cancelation mechanisms is public—the FTC need only visit Match.com's website[8]—and MGI provided discovery during the CID proving the existence of such mechanisms, including interrogatory responses and documents with examples of cancelations through those other avenues. App. Ex. 1-I at App. 108–116. Thus, these should have been easy admissions "to narrow the issues to be resolved at trial by identifying and eliminating those matters on which the parties agree." *Longoria*, 2016 WL 6893625, at *5.

Instead, the FTC gave evasive and improper answers. For example, instead of admitting that users are able to cancel Match.com subscriptions via email, the FTC responded, "Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their

---

[8] *See, e.g.*, *Contact Us*, MATCH.COM, https://help.match.com/hc/en-us/articles/6140024199195-Contact-Us (last visited Aug. 29, 2022) (providing instructions for how to contact the Match Customer Care team, including via chat and email); *Submit a Request*, MATCH.COM, https://help.match.com/hc/en-us/requests/new (last visited Aug. 29, 2022) (depicting Match.com's email function, where customers can select "Cancel/Billing Inquiries").

subscription than Plaintiff." App. Ex. 1-C at App. 050. The FTC's responses to Requests for Admission asking about other cancelation mechanisms were similar. *See* App. Ex. 1-C at App. 045–051. This response is inadequate in multiple ways. First, the FTC fails to admit, deny, or state why it cannot truthfully admit or deny the question asked—whether users are or were "able to cancel their Match.com subscription via" various methods. The requests ask nothing about "frequency" or malfunctions (nor does the FTC identify what "unavailability or malfunction" it is referring to that would affect, for example, email cancelations), which are irrelevant to the straightforward Request whether a user *can* cancel a subscription via email, chat, telephone, or any other mechanism. Second, the FTC's claim that MGI is "in a better position to answer whether" a cancelation mechanism is available is not a proper objection. *See Longoria*, 2016 WL 6893625, at *7. The purpose of a request for admission is to narrow the disputed issues, but that is impossible if the FTC refuses to answer Requests which it believes MGI can answer, particularly requests as basic as whether other cancelation mechanisms *exist*.

When confronted with these inadequacies, the FTC promised only to "state that MGI has represented to the FTC that Match.com has other cancellation mechanisms, although these representations are inadequate for the FTC to admit these RFAs" (with no explanation of *why* those representations are inadequate, particularly given the public nature of those other cancellation mechanisms). App. Ex. 1-K at App. 126. Thus, the FTC's supplemental responses will *still* not fairly engage with the substance of the request, such that the FTC *still* will not admit facts that are obviously true. The Court should compel the FTC to fairly respond to the requests.

## B.   The FTC Refuses to Engage in Discovery Regarding Match.com's Permanent Discontinuance of the Practices Challenged in Counts III and IV.

The FTC's discovery obstruction does not end with cancelation-related discovery requests. MGI also served narrowly tailored discovery requests about Counts III and IV, related to

Match.com's long-discontinued guarantee and chargeback practices. The FTC can pursue claims against MGI only if there is a "fair inference of a reasonable expectation of continued violations absent restraint," *Sw. Sunsites, Inc.*, 665 F.2d at 723, such that MGI "is violating, or is about to violate" the FTC Act, *see* 15 U.S.C. § 53(b). MGI does not own, operate, or control Match.com, so it has never, and could never, violate the FTC Act through conduct on Match.com. Even putting that aside, however, MGL and Match.com are not "violating, or . . . about to violate" the FTC Act because (among other reasons) the challenged practices were discontinued in 2019 and will not be reinstituted. MGI sought discovery from the FTC to understand the basis for its allegations to the contrary. Yet, without fail, the FTC obstructed those discovery requests.

1.      The FTC Refuses to Admit that the Challenged Practices Were Discontinued in 2019.

The FTC's responses to Requests for Admission Nos. 1–6 are a perfect example of that obstruction. The Requests seek uncontroversial admissions that the guarantee and chargeback policies were discontinued in April 2019 and March 2019, respectively. *See* App. Ex. 1-B at App. 021–023. It should have been easy for the FTC to admit, given that the FTC's *own Complaint* alleges that those practices were discontinued in 2019. Am. Compl. ¶ 39 (noting that guarantee was in effect "[u]ntil mid-2019"); *id.* ¶ 62 (noting that chargeback policy was in effect "[u]ntil mid-2019"). Incredibly, however, the FTC responded not with simple admissions—as it should have—but instead with an avalanche of baseless objections that it did not understand the terms "Match.com Guarantee," "ceased," "permanently discontinued," and "mid-2019." *See* App. Ex. 1-B at App. 021–023. The FTC then asserted that MGI "has claimed through unsworn and unsubstantiated statements by its attorneys" that the practices were discontinued in 2019, but that the FTC "cannot independently verify that information." This is absurd. These responses do not in any way "fairly respond to the substance of the matter," as required by Fed. R. Civ. P. 36(a)(4), as they refuse to admit to the discontinuance. The FTC also objected that "the requested information

is already in [MGI's] possession, custody, or control, and [MGI] is in a better position to answer this question," App. Ex. 1-B at App. 021–023, which is not a proper response to a request for admission. *Longoria*, 2016 WL 6893625, at *5.

Even aside from the objections, the FTC's responses are blatantly inaccurate. For example, although the FTC claims that MGI has claimed discontinuance only "through unsworn and unsubstantiated statements by its attorneys," MGI served interrogatory responses verified by an MGI officer stating, in relevant part, that the guarantee practice "was actually permanently discontinued in April 2019" and that the chargeback practice "was actually permanently discontinued in March 2019." *See* App. Ex. 1-G at App. 090; App. Ex. 1-H. Furthermore, the FTC's claim that it "cannot independently verify" that the challenged practices were discontinued is ridiculous. *See, e.g.*, App. Ex. 1-B at App. 021–023. The Match.com guarantee was publicly offered on Match.com's website, and the chargeback policy was clearly disclosed in Match.com's Terms of Use. Thus, to "verify" that these challenged practices have been discontinued, the FTC need only visit Match.com. Instead, the FTC went to great lengths—reversing course from its own Amended Complaint allegations, and sticking its head in the sand to ignore publicly available information—to avoid admitting that Match.com discontinued the challenged practices, even though it is the undeniable truth. *See Lopez*, 327 F.R.D. at 581 (describing the "candor" required "in responding to" "[d]iscovery by interrogatory"). When confronted, the FTC promised only to "amend where appropriate" to "provide additional explanation concerning [its] inability to respond." App. Ex. 1-K at App. 126. But there is no excuse for the FTC's refusal to respond straightforwardly.

The FTC's Responses to Requests for Admission Nos. 7 and 8 are also inadequate and evasive. Those Requests specifically asked the FTC to admit that "***as of the deadline for [the***

*FTC's] response*," it had no evidence that Match.com plans to reinstate either the guarantee or the chargeback policy. *See* App. Ex. 1-B at App. 023–024 (emphasis added). The FTC apparently has not identified any such evidence, as it stated in its response that it "does not have any evidence regarding Match's 'plans.'" *See id.*[9] Rather than admitting the Requests, however, the FTC continued that it "anticipates uncovering such evidence in discovery." *Id.* That is not what the Request asked, so the FTC's response is evasive and improper. *See* Fed. R. Civ. P. 36(a)(4) (requiring a party to "fairly respond to the substance of the matter"). Because the FTC has no evidence as of the deadline for its response, it must admit Requests for Admission Nos. 7 and 8, but it refused to do so. Thus, the FTC's responses to Requests for Admission Nos. 1–8 are false and deficient.

> 2.  The FTC Refuses to Disclose Any Basis for Its Belief that MGI Is Violating or About to Violate the FTC Act.

MGI's discovery requests about the basis for the FTC's belief that MGI is violating or about the violate the FTC Act are particularly important, given that the FTC refuses to admit that the challenged practices were discontinued and there are no plans to reinstitute them. Yet the FTC likewise stonewalled these discovery requests.

In Interrogatory No. 1, MGI asked the FTC to identify and describe the basis for its belief that MGI is "about to violate" the FTC Act, including by identifying the facts and evidence supporting that belief. Instead of identifying any facts or evidence, the FTC pointed to the *allegations* in its Complaint, or lawyer argument in its response to MGI's Motion to Dismiss. However, a discovery response—particularly one that asks for "facts and evidence"—requires more than allegations in a complaint. Plaintiffs cannot provide "responses to discovery [solely]

---

[9] It is not accurate that the FTC "does not have any evidence" regarding MGI's "plans"; MGI's verified interrogatory responses state that the challenged policies were permanently discontinued years ago. *See* App. Exs. G & H.

based on information and belief without identifying the basis of the information or belief, or verifying under oath an inability to answer completely." *See Jorge v. Atl. Hous. Found., Inc.*, No. 3:20-CV-2782-N, 2022 WL 1082345, at *4 (N.D. TApp. Ex. 1-Apr. 11, 2022) (Horan, M.J.) (quoting *Redus v. Univ. of Incarnate Word*, No. SA-14-CA-509-DAE, 2014 WL 12815471, at *11 (W.D. Tex. Oct. 17, 2014)). The FTC did not identify a *single specific* document in the entirety of its responses. The FTC also objected that the Interrogatory "seeks information that is in [MGI's] possession" and/or seeks information that is "readily available to [MGI]." *See* App. Ex. 1-A at App. 008. However, "a party cannot properly object to an interrogatory on the basis that it seeks information that is within . . . the requesting party's possession." *VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-CV-764-X, 2021 WL 5176839, at *27 (N.D. Tex. Nov. 8, 2021). In any event, MGI asked the FTC to "Identify and Describe the basis" of its beliefs and allegations, but the FTC has never identified the basis for its beliefs, so that information is not in MGI's possession.

In its August 25 Letter, the FTC agreed to address only one of the many deficiencies in its response to Interrogatory 1 by amending to include Bates numbers. App. Ex. 1-K at App. 125. But the response will remain insufficient because it does not explain the FTC's belief that there is "a fair inference of a reasonable expectation of continued violations absent restraint." App. Ex. 1-A at App. 008. Furthermore, the response, like the responses to Requests for Admissions 1–6, wrongly states that MGI "has not committed to not engaging in the challenged [guarantee and chargeback] practices in the future," which is (and has long been) false. *E.g.*, App. Ex. E; App. Ex. F. Accordingly, the Court should compel the FTC to remedy *all* deficiencies in its response.

The FTC similarly refused to appropriately respond to MGI's Requests for Production on this topic. Requests for Production Nos. 1–3 seek information relating to the FTC's allegations that MGI is violating or is about to violate Section 5 of the FTC Act. This is the applicable standard,

per the Court's Order on MGI's Motion to Dismiss. Dkt. 86 at 8, 11. In response, the FTC asserted a variety of frivolous objections and agreed to produce only those documents that "support or call into question whether Match's violations are likely to recur absent restraint" for all three Requests.

Specifically, in response to Request for Production No. 1, which seeks documents relating to "investigations by the FTC of Match or Match.com," the FTC objected that the request is vague, overbroad, unduly burdensome, and not proportional to the needs of the case. The FTC goes so far as to argue that the request "constitutes an impermissible Fishing Expedition when limited to the investigation that resulted in this case." App. Ex. 1-B at App. 024. It is unclear how a request limited to seeking documents regarding the investigation performed by the FTC *that resulted in this case* could be vague, overbroad, unduly burdensome, or a "fishing expedition." Such bare objections are improper. *See McLeod, Alexander, Powel, & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (holding a boilerplate allegation that a request is "overly broad, burdensome, oppressive and irrelevant" was "not adequate to voice a successful objection" (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 991–92 (3d Cir. 1982))). Moreover, the FTC cannot refuse to produce the *facts* developed through its investigation by hiding behind the deliberative process privilege. *See Skelton*, 678 F.2d at 38; *see also Cuban*, 2013 WL 1091233, at *9. The FTC's unilateral decision to limit its production to documents that "support or call into question whether Match's violations are likely to recur absent restraint" is improper. *See* App. Ex. 1-B at App. 024. But MGI is entitled to discovery into the *entirety* of the FTC's investigation—whether the evidence supports the FTC's theories or not—not just those parts that the FTC wants to highlight.

The FTC's response to Request for Production No. 2 is also deficient. That Request seeks "Documents You believe give rise to a fair inference of a reasonable expectation of continued FTC Act violations absent restraint." App. Ex. 1-C at App. 045. This Request is particularly important

because MGI has repeatedly informed the FTC (including under oath) that the challenged practices were permanently discontinued. Yet the FTC objected that this request is vague (even though it tracks the language used in this Court's Order on the Motion to Dismiss, Dkt. 86 at 11), and that the request is "overbroad, unduly burdensome, not proportional to the needs of the case, and a Fishing Expedition," App. Ex. 1-C at App. 045, even though it goes to the heart of the parties' dispute regarding whether MGI is violating or about to violate the FTC Act. The FTC's objections should be overruled, to the extent the FTC is withholding documents or information based on those objections. And if the FTC has no documents suggesting otherwise, it should so state.

Lastly, the FTC improperly responded to Request for Production No. 3, which seeks "[a]ll Documents which the FTC contends supports an argument that any of the discontinued practices at issue in the Complaint are likely to be reinstituted by Match or on Match.com." The FTC objected that this Request is "premature" because "discovery has just begun in this matter." The Request is not premature, however, as MGI produced over 200,000 documents to the FTC during the CID investigation. The FTC's response to Request for Production No. 3 simply refers back to Requests for Production Nos. 1 and 2, and is thus deficient for the same reasons detailed above.

## C.    The FTC Refuses to Identify Its Basis for Alleging that MGI Owns, Operates, and Controls Match.com.

Another disputed issue in this litigation is whether MGI is the proper defendant. MGI has told the FTC for years that it is not the proper defendant, because it is merely a holding company that does not own, operate, or control Match.com, the website on which the challenged conduct occurred. *See* Dkt. 109 at 3–4. Nevertheless, the FTC insisted on suing MGI, going so far as to allege that MGI "owns, operates, and controls" Match.com.[10] Am. Compl. ¶ 12. In Interrogatory

---

[10] Naming MGI as the defendant appears to be a ploy by the FTC to attempt to drastically expand the scope of discovery to include *all* dating platforms in which MGI has any interest, even though the FTC's CID and allegations in its Complaint were limited to Match.com. As MGI feared, the FTC's discovery requests to MGI are extraordinarily

No. 7, MGI asked the FTC to identify and describe the basis for that allegation, including by identifying supportive facts and evidence. The FTC responded (again) with objections. App. Ex. 1-A at App. 015–016. The FTC first objected that this is a "Blockbuster Interrogatory," but again, MGI did not ask for *all evidence* about all allegations; it asked only for the facts and evidence to support the FTC's specific allegations about MGI's ownership, operation, and control of Match.com. *Nieman*, 2013 WL 6814789, at *11; *Lopez*, 327 F.R.D. at 577–78.

Next, the FTC objected that the responsive information "is in [MGI's] possession and readily available to [MGI]." App. Ex. 1-A at App. 015. However, "a party cannot properly object to an interrogatory on the basis that it seeks information that is within . . . the requesting party's possession." *VeroBlue*, 2021 WL 5176839, at *27. Moreover, MGI does not know the basis for the FTC's allegations, which is why it served the Interrogatory. Finally, the FTC objected that the Interrogatory is "premature," but as discussed above, the FTC has received plenty of discovery from MGI already. This objection—like the other "prematurity" objections the FTC makes— reveals that the FTC apparently had no basis for making its allegations, and is now on a massive fishing expedition hoping to find something it was not able to find in the years-long CID. The FTC must disclose now the facts and evidence that it has, or admit that it has none.

After the boilerplate objections, the FTC generically pointed to "responses to the FTC's CID describ[ing] various policies," but did not explain how those responses show MGI's ownership, operation, or control of Match.com. App. Ex. 1-A at App. 016. The FTC also pointed to unidentified "email records" purportedly "show[ing] Match's senior executives and CEO directing day-to-day activities and business practices and receiving reports about those activities and practices," *id.*, but the FTC does not identify the records, the executives, the activities, the

---

expansive and expressly seek information about non-Match.com sites, such as documents sufficient to show subscription revenues for OKCupid, Plenty of Fish, and Tinder. App. Ex. 2 at App. 151 (FTC RFP No. 14).

business practices, or the reports. Finally, it cites one amici brief that incorrectly describes MGI—meanwhile ignoring the myriad of documents it has already obtained from MGI that show the true structure and relationship. This cursory paragraph without any specific citations is not an adequate response to an Interrogatory seeking the "facts and evidence" on which the FTC based its allegation that MGI owns, operates, and controls Match.com. Although the FTC in its August 25 Letter agreed to "cite by Bates number to the specific documents referenced" in its response to Interrogatory 7, this response will remain insufficient because merely adding Bates numbers without explaining how the FTC contends those documents show ownership, operation, or control is not enough. *See* App. Ex. 1-K at App. 125. The Court should order the FTC to supplement.

**D.     The FTC's Discovery Responses Contain Additional Deficiencies.**

In addition to the specific deficiencies described above, the FTC discovery responses contain other deficiencies applicable across a number of requests.

1.     <u>The Court Should Overrule the FTC's "Premature" Objection.</u>

In response to *every single interrogatory*, the FTC objected that the Interrogatory was premature. *E.g.*, App. Ex. 1-A at App. 008 ("The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order."). The FTC did so even though discovery has been open in this case for months, and the FTC received substantial amounts of discovery from MGI during the years-long CID, including numerous interrogatory responses and hundreds of thousands of documents. With the incredible volumes of material already at its disposal, the FTC unquestionably has sufficient information to respond to the Interrogatories[11]—but apparently the FTC will provide only self-serving answers

---

[11] This "premature" objection is arguably improper for any plaintiff—a plaintiff is required to have *some basis* for allegations prior to filing suit—but especially for one that already has extensive discovery through the CID process.

unless the Court orders otherwise. *See, e.g.*, *Lopez*, 327 F.R.D. at 579 ("Discovery by interrogatory requires candor in responding."). As a result, the FTC's "prematurity" objection should be overruled, to the extent the FTC is withholding documents or information.[12]

> 2. <u>The Court Should Order the FTC to Verify Its Interrogatory Responses.</u>

Federal Rule of Civil Procedure 33(b)(3) requires that interrogatories "be answered separately and fully in writing under oath." However, the FTC did not verify its responses or otherwise answer the interrogatories "under oath." Courts routinely enforce the "under oath" requirement. *See DeLeon v. City of Dallas*, No. 3:02-CV-1097, 2005 WL 8158033, at *1 (N.D. Tex. Mar. 30, 2005) (Kinkeade, J.) (ordering plaintiff to provide "a sworn verification with his interrogatory responses"). Nevertheless, the FTC apparently believes it does not have to follow the rules and claimed that an attorney's signature *without an oath* is "consistent with [the FTC's] ordinary practices and . . . with its obligations under the federal rules." App. Ex. 1-K at App. 126. But the FTC is wrong. Rule 33 requires that interrogatories be answered "under oath" and makes no exception for the government. *See United States v. 58.16 Acres of Land*, 66 F.R.D. 570, 572 (N.D. Ill. 1975) (ordering the government to verify responses). The Court should disabuse the FTC of the notion that it is exempt from the rules that apply to everyone else.

> ## IV.   <u>CONCLUSION</u>

For the reasons set forth herein, MGI respectfully requests that the Court grant its Motion to Compel, overrule the FTC's objections to the extent the FTC is withholding documents or information based on those objections, compel the FTC to amend its discovery responses, and require the FTC to produce documents, as discussed above.

---

[12] The FTC apparently had no qualms about making use of the CID discovery in drafting its Complaint—which is replete with references to documents produced by MGI during the CID—or generally referencing those documents when responding to discovery requests supportive of the FTC's theories. *See, e.g.*, App. Ex. 1-A at App. 008–010 (citing Complaint). Yet when answering would not advance the FTC's (false) narrative of MGI's violations, the FTC claims prematurity.

Dated: August 29, 2022                    Respectfully submitted,

                                          */s/ Angela C. Zambrano*
                                          Angela C. Zambrano
                                          State Bar No. 24003157
                                          angela.zambrano@sidley.com
                                          Chelsea A. Priest
                                          State Bar No. 24102375
                                          cpriest@sidley.com
                                          Tayler G. Bragg
                                          State Bar No. 24109943
                                          tbragg@sidley.com
                                          SIDLEY AUSTIN LLP
                                          2021 McKinney Ave, Suite 2000
                                          Dallas, TX 75201
                                          Telephone: 214.981.3300
                                          Fax: 214.981.3400


                                          Chad S. Hummel (admitted *pro hac vice*)
                                          chummel@sidley.com
                                          SIDLEY AUSTIN LLP
                                          1999 Avenue of the Stars, 17th Floor
                                          Los Angeles, CA 90067
                                          Telephone: 310.595.9500
                                          Fax: 310.595.9501

                                          *Attorneys for Match Group, Inc. and Match
                                          Group, LLC*


### CERTIFICATE OF CONFERENCE

On August 18, 2022, MGI sent a letter to the FTC detailing numerous deficiencies in its

discovery responses, which are also presented in this Motion. On August 24, 2022, MGI and the

FTC met and conferred via telephone for over 90 minutes to discuss the issues raised in MGI's

August 18 letter. During this telephone call and in a subsequent letter to MGI sent on August 25,

2022, the FTC (1) refused to withdraw any objections, (2) stated that it would amend a small number of the discovery responses MGI identified as problematic, and would only do so in limited ways, and (3) refused to provide MGI with amended responses until two weeks from the meet and confer. Given the fact that discovery will close on January 6, 2023, and MGI's discovery requests seek basic information about the FTC's claims, MGI was unwilling to wait for any further gamesmanship. MGI therefore files this Motion.

*/s/ Angela C. Zambrano*
Angela C. Zambrano

<u>**CERTIFICATE OF SERVICE**</u>

On August 29, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Angela C. Zambrano*
Angela C. Zambrano
