IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>MATCH GROUP, INC., a corporation, and<br><br>MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>    Defendants. | Case No. 3:19-cv-02281-K<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES FROM DEFENDANT MATCH GROUP, INC.** |

**FTC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND
INTERROGATORY RESPONSES**

1

## Table of Contents

I. Introduction ................................................................................................................... 4

II. Relevant Background .................................................................................................. 5

III. Legal Standard ............................................................................................................ 6

IV. Argument .................................................................................................................... 7

    A. MGI cannot refuse to search for documents simply because it claims the conduct has permanently discontinued. ............................................................................................. 8

    B. MGI's claimed willingness to enter an unspecified "stipulation" does not relieve its discovery obligations. ..................................................................................................... 10

    C. MGI is not relieved of its discovery obligations simply because it responded to the FTC's Civil Investigative Demand ("CID") five years ago. ........................................... 10

    D. MGI must produce documents in its possession, custody, and control, even if they are technically held by a subsidiary. .................................................................................... 12

V. Conclusion ................................................................................................................ 14

**Cases**

*Bank of New York v. Meridien Biao Bank Tanz.*, 171 F.R.D. 135 (S.D.N.Y. Mar. 21, 1997)...... 12

*Booth v. City of Dallas*, 312 F.R.D. 427 (N.D. Tex. 2015) ............................................................ 6

*Diamond Consortium, Inc. v. Manookian*, 4:19-cv-00373, 2017 WL 3301527 (E.D. Tex. Aug. 3, 2017)................................................................................................................................... 12

*errill v. Waffle House, Inc.*, 227 F.R.D. 467 (N.D. Tex. 2005) ....................................................... 5

*FTC v. Neora LLC*, 552 F. Supp. 3d 628 (N.D. Tex. 2021) (Lynn, CJ.)........................................ 8

*Hutcheson v. Dallas Cty.*, No. 3:17-cv-2021, 2019 U.S. Dist. LEXIS 74151 (N.D. Tex. May 2, 2019)..................................................................................................................................... 5

*Lopez v. Don Herring Ltd.*, 327 F.R.D. 567 (N.D. Tex. Aug. 1, 2018).......................................... 8

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990) ................. 6

*Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250 (N.D. Tex. 2017)................................ 6

*SEC v. Sargent*, 229 F.3d 68 (1st Cir. 2000)................................................................................ 10

*SEC v. Softpoint, Inc.*, 958 F. Supp. 846 (S.D.N.Y. 1997) ........................................................... 10

*Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, 2011 WL 3418396 (S.D. Tex. '2011) ...... 12

*Steele Software Sys. Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561 (D. Md. 2006) ........... 12

*Third Pentacle, LLC v. Interactive Life Forms, LLC*, No. 3:10-cv-00238, 2012 WL 27473 (S.D. Ohio Jan. 5, 2012) ................................................................................................................. 8

*United My Funds, LLC v. Perera*, 4:19-cv-00373, 2020 U.S. Dist. LEXIS 42711 (E.D. Tex. Mar. 12, 2020)................................................................................................................................ 12

*United States v. Witmer*, No. 1:93-cv-1410, 1993 U.S. Dist. LEXIS 14347 (M.D. Pa. Oct. 8, 1993)................................................................................................................................... 10

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004) ............................................. 6

**Statutes**

15 U.S.C. § 53(b) .......................................................................................................................... 10

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................. 5, 6

I.  **Introduction**

The Federal Trade Commission's ("FTC") seeks relief from this Court because Match Group, Inc. ("MGI") is withholding documents—including all documents concerning two of the FTC's three counts—and refusing to respond to several interrogatories in their entirety. MGI claims to be excused from its discovery obligations because it responded to an FTC administrative subpoena nearly five years ago and because it believes it will prevail on two of the FTC's counts. These audacious positions are contrary to the Federal Rule of Civil Procedure and common sense. Worse, they risk seriously prejudicing the FTC's ability to pursue its claims. Accordingly, the FTC moves for an order compelling MGI to drop its objections and provide documents and responses immediately.

The FTC has made several good-faith efforts to resolve this dispute without Court involvement.[1] The FTC served MGI with delinquency and deficiency letters and discussed its concerns on two meet-and-confer calls.[2] Despite these efforts, MGI has failed to address its deficiencies, making clear that it will not produce additional documents or information.[3]

MGI's stonewalling risks prejudicing the FTC's case. Discovery closes in four months, and the FTC needs documents relevant to all counts to conduct complete depositions of Match personnel. Indeed, MGI has dragged its feet all through the discovery process, apparently intent on stalling shortly after seeking an expedited schedule. The discovery at issue has been pending since service on June 3, and the FTC has received responses to few requests, with MGI refusing discovery on entire counts. The FTC will soon move for an extension of the discovery deadlines

---

[1] *See* Cert. of Conf., *infra*.

[2] *See id.*

[3] *See, e.g.*, Exh. 5.

**FTC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND
INTERROGATORY RESPONSES**

in the Scheduling Order, but unless and until that motion is granted, MGI's ongoing noncompliance risks preventing the Commission from obtaining full discovery in this case.

MGI's actions do not pass muster under the Federal Rules and should not be condoned. Given MGI's intransigence, further conferencing is unlikely to be productive and would only serve MGI's goal of delay. Accordingly, the FTC respectfully requests that the Court put a stop to MGI's abuse of the discovery process by issuing an order compelling MGI to respond appropriately within seven days.[4]

## II.     Relevant Background

On June 3, 2022, the FTC served MGI with Interrogatories and Requests for Production of Documents. These requests targeted fundamental issues in this case. After the FTC granted MGI a two-week extension, MGI provided the FTC written responses on July 19, 2022. The responses indicated that MGI would not produce documents or respond to many of the FTC's document requests and interrogatories, as summarized in the chart below:

| MGI's Objection | Discovery Requests | Did MGI produce documents or answer concerning these discovery requests? |
|---|---|---|
| Counts III and IV "moot" | Exh. 1 at Responses #2, 6, 14, 15, 17, 19, 25, 26, 28, 31, 34, and 36; Exh. 2 at Responses #1-2, 4-7. | Not as to Counts III and IV. |
| Willing to "stipulat[e]" | Exh. 1 at Responses #2, 6, 14, 15, 17, 19, 25, 26, 28, 31, 34, and 36; Exh. 2 at Responses #1-2, 4-7. | Not as to Counts III and IV. |
| 2017 CID production was "sufficient" | Exh. 1, General Objection #9 and Responses # 5-7, 9, 14-15, 17, and 19. | No. |

---

[4] The FTC notes for the Court that the parties have been ordered to discuss MGI's Motion to Compel at an upcoming face-to-face meeting and to submit a joint report concerning that dispute by 5 p.m. on September 13. *See* Doc. 136.

**FTC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES**

| Will only respond concerning Match.com and not its other dating sites | Exh. 1 at Specific Objection to Instructions and Definitions #2, 5, 10, 11, 13, and 14, and Responses #1-14, 16-18, 20-35; Exh. 2 at Specific Objection to Instructions and Definitions #2, 5, 10, 11, 13, and 14, and Responses #2, 4, 7-9. | Not as to any MGI dating site other than Match.com. |

The FTC tried several times to get MGI to reconsider its refusal to respond or produce. On August 19, 2022, the FTC served MGI with a letter outlining MGI's deficiencies.[5] Next, the FTC met and conferred with MGI's counsel to discuss discovery disputes on August 24, 2022. The following day, the FTC sent MGI a letter in further effort to resolve the discovery disputes.[6] Finally, the FTC again met and conferred with opposing counsel, on August 29, to request that they address their deficiencies. But instead of amending, MGI sent a letter on September 1, 2022, reasserting the objections at issue.[7]

### III.   Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery broadly, stating that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"[8] The Federal Rules "define[] what is relevant very broadly."[9] "Information within this scope of discovery need not be admissible in evidence to be

---

[5] *See* Exh. 3.

[6] *See* Exh. 4.

[7] *See* Exh. 5.

[8] FED. R. CIV. P. 26(b)(1).

[9] *Hutcheson v. Dallas Cty.*, No. 3:17-cv-2021, 2019 U.S. Dist. LEXIS 74151, *9 (N.D. Tex. May 2, 2019) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470-71 (N.D. Tex. 2005)).

discoverable."[10] "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value."[11] The party resisting discovery has the burden to justify its objections.[12] That party must do so with specificity, showing for each discovery request how it is not relevant or why it is otherwise objectionable.[13]

IV. Argument

MGI refuses to produce documents or interrogatory responses concerning Counts III and IV, two of the three counts remaining in the case. It does so on three dubious grounds. First, MGI contends the counts are moot, an argument previously rejected by this Court. Second, MGI refuses to produce documents or answer interrogatories regarding these counts because it states it is willing to agree to an undefined "stipulation" restraining Match.com's business practices—while simultaneously representing that it does not own, control, or operate that platform.[14] Finally, MGI contends that its production from nearly five years ago should suffice,[15] despite centering its defenses around actions MGI has taken since 2019. In addition, MGI refuses to

---

[10] FED. R. CIV. P. 26(b)(1); *accord Booth v. City of Dallas*, 312 F.R.D. 427, 433 (N.D. Tex. 2015).

[11] *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017).

[12] *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

[13] *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

[14] *Compare* Exh. 1 at Responses #2, 6, 14, 15, 17, 19, 25, 26, 28, 31, 34, and 36; Exh. 2 at Responses #1-2, 4-7 (objecting to answering or producing based on a willingness to "stipulate") *with* Exh. 2 at Response 9 ("Match Group, Inc. does not own or operate Match.com.").

[15] *See* Exh. 1, General Objection #9 ("Such prior productions and the massive volume of documents produced therein should be sufficient to provide the FTC with the information it requires."); *see also* Exh. 1 at Responses # 5-7, 9, 14-15, 17, and 19 (stating that MGI already produced responsive documents when responding to the FTC's 2017 CID and failing to state that it will conduct a reasonable search for other responsive documents).

produce documents concerning its other dating platforms, even though it cannot seriously claim that those documents are not in its custody or control.

MGI's objections are baseless, unsupported, and counter to the Federal Rules. They do not justify MGI's withholding of documents or refusal to answer Interrogatories.

### A. MGI cannot refuse to search for documents simply because it claims the conduct has permanently discontinued.

Citing no authority whatsoever, MGI refuses to respond to numerous document requests and interrogatories because "the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated."[16] MGI, however, cannot unilaterally decide what is "moot" or what "need[s] to be litigated." That authority belongs to the Court, which has twice rejected MGI's argument that these claims should be dismissed, and litigation over the need for an injunction is exactly what is happening.

First, in its order on MGI's Motion to Dismiss, the Court held that the FTC had "allege[d] plausible facts that Match 'is violating' or 'is about to violate' the law as required under Section 13(b)" in response to MGI's Motion to Dismiss.[17] The Court cited authority "listing non-exclusive factors the court should consider in whether to issue a §13(b) permanent injunction based on past violations of the law."[18]

---

[16] *See, e.g.*, Exh. 1 at Responses #2, 6, 14, 15, 17, 19, 25, 26, 28, 31, 34, and 36; Exh. 2 at Responses #1-2, 4-7.

[17] Doc. 86 at 11. The Court further noted that "the FTC need only allege practices 'giving rise to a "fair inference of a reasonable expectation of continued violations" absent restrain'" and that "simply because the Complaint contains allegations of past violations does not mean that the FTC has not sufficiently alleged that similar violations are likely to reoccur."

[18] *See id.*

**FTC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES**

8

Next, MGI recycled this argument in its Opposition to the FTC's Motion to Amend its Complaint and Add Defendant.[19] Once more, the Court rejected MGI's argument.[20] The Court's rulings were unambiguous on this point: Counts III and IV are live counts, and they have been adequately pled. As such, they are subject to discovery, period.

In claiming that these counts are moot, MGI objects that "[t]he FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur"—as if to suggest that the FTC must first prove its allegations to MGI's satisfaction before the FTC is entitled to discovery on those counts. Such an objection is absurd and plainly contrary to the law.[21] Moreover, as this Court has noted, "'simply because the Complaint contains allegations of past violations does not mean that the FTC has not sufficiently alleged that similar violations are likely to reoccur.'"[22] Lastly, even had MGI's argument not already been rejected twice, the FTC would be entitled to discovery to determine whether these practices have truly ceased, as MGI claims. And in fact, external evidence suggests that some of the alleged illegal conduct may still be ongoing on

---

[19] *See* Doc. 109 at 6.

[20] *See generally* Doc. 115.

[21] *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. Aug. 1, 2018) (citations omitted) ("[A] party cannot refuse to engage in—and is not excused from being subjected to—discovery simply because the discovery is relevant to a claim on which the resisting party believes that he will or should prevail."); *see also Third Pentacle, LLC v. Interactive Life Forms, LLC*, No. 3:10-cv-00238, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012) (noting that even if a party "presently holds a strong belief in the merits of [the party's] litigation positions, [the party's] strong belief — whether ultimately justified or not —provides no basis for avoiding [the party's] discovery obligations created by the Federal Rules of Civil Procedure").

[22] Doc. 86 at 11 (quoting *FTC v. Neora LLC*, 552 F. Supp. 3d 628, *7 (N.D. Tex. 2021) (Lynn, CJ.)).

**FTC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND
INTERROGATORY RESPONSES**

Match.com and MGI's other dating sites.[23] Put simply, the FTC is entitled to discovery on contested facts; it need not merely take MGI's attorneys' word for it.

### B. MGI's claimed willingness to enter an unspecified "stipulation" does not relieve its discovery obligations.

MGI has also objected to responding to numerous requests because it claims that MGI is "prepared to enter a binding stipulation in a form acceptable to the Court[.]"[24] But MGI is not relieved of its discovery obligations simply because it claims to be willing to enter into some undefined "stipulation" or settlement.[25] The FTC is entitled to discovery to prove both that MGI violated the law as alleged in Counts III and IV and that the requested relief—a broad injunction prohibiting MGI from engaging in similar misconduct on Match.com and its other dating sites—is appropriate and necessary. Despite MGI's purported willingness to enter into some kind of stipulation, whatever that might be, MGI is required to fulfill its discovery obligations.

### C. MGI is not relieved of its discovery obligations simply because it responded to the FTC's Civil Investigative Demand ("CID") five years ago.

---

[23] Specifically, Match.com's current chargeback policies may still violate the law as alleged in Count IV. Its publicly available terms and conditions currently state: "If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, Match may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a Match subscription. In the event that your chargeback or other payment reversal is overturned, please contact Customer Care." *See* Match.com's Terms of Use Agreement (Sept. 1, 2022), https://www.match.com/registration/membagr.aspx. In other words, consumers do not have their account access reinstated automatically—they must contact customer care, something a customer would not know without combing through Match.com's lengthy terms of use document. Even then, these terms do not make clear what, if anything, customer care would do to resolve the issue or whether they would reinstate account access. MGI's other dating sites include similar terms also buried in their terms of use.

[24] *See* Exh. 1 at Responses #2, 6, 14, 15, 17, 19, 25, 26, 28, 31, 34, and 36; Exh. 2 at Responses #1–7.

[25] Moreover, the FTC notes that MGI's representation that it would agree to a stipulation regarding the conduct alleged in Counts III and IV is inconsistent with MGI's prior claims, made in these discovery responses and in filings before the Court, that "Match Group, Inc. does not own or operate Match.com." *See, e.g.*, Exh. 2 at Response 9; *see also* Doc. 133 at 21 ("MGI does not own, operate, or control Match.com[.]").

In response to numerous document requests, MGI objects to searching for and producing responsive documents because the FTC served MGI with a CID in 2017—without citing any authority to support its refusal.[26] However, the FTC has a right to discovery like any other litigant, and this right is not altered by the FTC's targeted pre-suit CID.[27] That is especially so here, where the alleged illegal conduct continued well after MGI was served with and responded to the CID.

Moreover, the CID responses are hardly a substitute for full discovery. The FTC's investigation had a limited purpose: to determine whether there was reason to believe Match violated the law.[28] Therefore, the FTC made many voluntary accommodations to MGI at that time in response to MGI's claims of burdens, including by limiting document custodians and permitting interrogatory responses instead of the production of documents. MGI should not be allowed to now use these accommodations against the FTC by preventing it from engaging in full discovery to prove its case.

The FTC has not requested that MGI reproduce any document that MGI produced in response to the 2017 CID. If a document that MGI has previously produced is responsive to a

---

[26] *See* Exh. 1, General Objection #9 and Responses # 5-7, 9, 14-15, 17, and 19.

[27] *See SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("Here, even though the Commission had already conducted a pre-filing investigation and had access to the evidence from the criminal trial of Sargent and Scharn, 'there is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case.'"); *see also SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 857 (S.D.N.Y. 1997) (Sotomayor, J.) (distinguishing between "administrative inquiries" and "discovery").

[28] *See* 15 U.S.C. § 53(b); *cf. United States v. Witmer*, No. 1:93-cv-1410, 1993 U.S. Dist. LEXIS 14347, *211 (M.D. Pa. Oct. 8, 1993) (discussing a pre-litigation civil investigative demand issued by the federal government and noting that "[t]he purpose of the CID is to 'enable the Government to determine whether enough evidence exists to warrant the expense of filing [a civil] suit, as well as to prevent the potential Defendant from being dragged into court unnecessarily'").

request, the FTC merely requests that MGI identify it by Bates number,[29] as prescribed by the ESI Order in this case.[30]

### D. MGI must produce documents in its possession, custody, and control, even if they are technically held by a subsidiary.

MGI has objected to responding to document requests and interrogatories concerning a few of MGI's dozens of dating sites: Tinder, OKCupid, and Plenty of Fish.[31] These requests are relevant to whether MGI continues, on its other dating sites, to engage in some of the alleged illegal conduct. Such ongoing conduct is in turn relevant to both whether MGI's alleged conduct is likely to recur and the need for broad injunctive relief. Moreover, these requests were sent after the FTC discovered public-facing evidence that MGI may be continuing some of the alleged illegal conduct on its other dating websites.[32]

Contrary to MGI's assertions, there is no requirement that these entities be named defendants in this action or otherwise mentioned in the Amended Complaint. Rather, the FTC

---

[29] *See* Exh. 6 ("If any document requested herein was previously produced to the FTC, identify it by bates number.").

[30] *See* Doc. 134 at 4.

[31] *See, e.g.*, Exh. 1 at Specific Objection to Instructions and Definitions #2, 5, 10, 11, 13, and 14, and Responses #1-14, 16-18, 20-35; Exh. 2 at Specific Objection to Instructions and Definitions #2, 5, 10, 11, 13, and 14, and Responses #2, 4, 7-9; *see also* Exh. 5 at App. 108.

[32] *See, e.g.*, Tinder's Terms of Use, https://policies.tinder.com/terms/us/en ("If you initiate a chargeback or otherwise reverse a payment made with your Payment Method, Tinder may terminate your account immediately in its sole discretion.); OkCupid's Terms and Conditions, https://help.okcupid.com/hc/en-us/articles/6640690915469-Terms-Conditions ("If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, OkCupid may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a OkCupid subscription."); and Plenty of Fish Terms of Use Agreement, https://www.pof.com/terms (same). These policies provide that customer may lose account access by seeking a chargeback, and they do not provide for a means of having account access reinstated should the customer have its chargeback reversed.

need only establish that MGI has the ability to produce these documents.[33] In making this determination, courts look to "the nature of the relationship between a corporate party and its affiliate to determine whether the information sought from a corporate party's affiliate is in the party's custody and control."[34]

These documents are properly requested from MGI because it is the parent company of the entities that own and control these platforms.[35] Indeed, in response to the FTC's 2017 CID, MGI produced thousands of documents that were ostensibly in the possession, custody, or

---

[33] *See United My Funds, LLC v. Perera*, 4:19-cv-00373, 2020 U.S. Dist. LEXIS 42711, *24 (E.D. Tex. Mar. 12, 2020) (citations and quotations omitted) ("Typically, what must be shown to establish control over documents in the possession of a non-party is that there is a relationship, either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession.")

[34] *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, 2011 WL 3418396, at *2 (S.D. Tex. '2011). "Among the factors used by courts to determine whether one corporation may be deemed under control of another corporation are: (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement of the nonparty corporation in the transaction, and (e) involvement of the non-party corporation in the litigation." *Id. See also Diamond Consortium, Inc. v. Manookian*, 4:19-cv-00373, 2017 WL 3301527, at *9 (E.D. Tex. Aug. 3, 2017) (citing *Steele Software Sys. Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006)) (citations omitted) ("Courts have ordered corporate parties to produce documents in the possession of corporate relatives—such as parent, sibling, or subsidiary corporations") ; *Bank of New York v. Meridien Biao Bank Tanz.*, 171 F.R.D. 135, 146 (S.D.N.Y. Mar. 21, 1997) ("Under Rule 34 . . . 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.").

[35] *See* Match Group, Inc.'s February 24, 2022 Form 10-K, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/891103/000089110322000020/mtch-20211231.htm ("Match Group, Inc., through its portfolio companies, is a leading provider of digital technologies designed to help people make meaningful connections. Our global portfolio of brands includes Tinder®, Match®, Hinge®, Meetic®, OkCupid®, Pairs™, PlentyOfFish®, OurTime®, Azar®, Hakuna™ Live, and more[.]").

control of Match Group LLC's predecessor, Match.com LLC.[36] Moreover, MGI does not appear to even contest that it *could* produce these documents—it simply believes it should not have to.[37]

## V.     Conclusion

MGI's refusal to respond to discovery suggests that the responsive documents and information are highly relevant and damaging to the Defendants. If the FTC cannot obtain those documents and information within the next few weeks, it risks substantial prejudice to its litigation position.

To prevent that outcome, the FTC respectfully requests the Court grant the FTC's Motion to compel MGI to withdraw its improper responses and produce responsive documents and answer its interrogatories. Such an order is critical to prevent MGI's delay tactics from succeeding in prejudicing the FTC's case. Based on MGI's conduct, the FTC believes that further conferencing on this topic would be exceedingly unlikely to resolve the dispute. Accordingly, a proposed order compelling MGI's production within seven days of entry of the order is enclosed for the Court's consideration.

Respectfully submitted,

Dated: September 6, 2022

/s/ Reid Tepfer
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted *pro hac vice*)

---

[36] As noted, MGI has taken the position in this litigation that it does not own, control, or operate Match.com. *See, e.g.*, Doc. 133 at 21. MGI claims that its wholly owned subsidiary, Match Group LLC, does instead. *See, e.g.*, Doc. 99 at 3. Yet MGI acknowledges that it produced thousands of documents concerning Match.com's operation in 2017. *See, e.g., id.* at 10. Accordingly, either MGI's position is a misrepresentation or it has the ability to demand production of documents by its subsidiaries.

[37] As MGI admitted in a lettering following the parties' conference, "MGI has not engaged in any specific analysis of which (if any) responsive documents would be outside of MGI's possession, custody, or control." Exh. 5 at 5.

JOHN R. O'GORMAN (admitted *pro hac vice*)
ERICA R. HILLIARD
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T. (214) 979-9379 (Hilliard)
F: (214) 953-3079
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov
ehilliard@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**FTC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND
INTERROGATORY RESPONSES**

## CERTIFICATE OF CONFERENCE

I certify that this motion was filed following a conference between counsel for the parties by Zoom call on August 24, 2022, and by telephonic conference on August 29, 2022. FTC counsel further sent defense counsel letters addressing the topics of this motion on August 19, 2022, and August 25, 2022.

/s/REID TEPFER
REID TEPFER

## CERTIFICATE OF SERVICE

On September 6, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ REID TEPFER*
REID TEPFER
