# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. 3:19-cv-02281-K |
| MATCH GROUP, INC., a corporation, | |
| Defendant. | |

**DEFENDANT MATCH GROUP, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules"), Defendant Match Group, Inc. ("Match"), by and through its undersigned counsel, objects and responds to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") First Request for Production of Documents (each a "Request" and, collectively, the "Requests") as follows:

## I.   GENERAL OBJECTIONS

1.   <u>ESI Protocol</u>.   Match objects to each and every Request pending the parties' negotiation of an agreed upon ESI Protocol outlining proper discovery production protocols for this case.   Match will work with Plaintiff to develop an ESI Protocol prior to the production of any documents or information.

2.   <u>Lack of Confidentiality or Protective Order</u>.   Match objects to each and every Request to the extent that the Request seeks confidential, trade secret, and proprietary information, without the protection of an enforceable protective order.   Match will not produce any documents or provide any information in response to the Requests until it can ensure the protection of its confidential information and trade secrets.   Match will confer with Plaintiff in an effort to reach

an agreement regarding the terms of a protective order.  If an agreement cannot be reached, Match will move for a protective order.  Any responses to these Requests that are provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

3.      Irrelevant.  Match objects to each and every Request to the extent that it purports to seek information that is irrelevant to Plaintiff's claims or Match's defenses and is not proportional to the needs of the case.  In particular, Match objects to each and every Request to the extent that it seeks information about the FTC's claims that were dismissed with prejudice in the Court's March 24, 2022 Order on Match's Motion to Dismiss (the "Dismissed Claims").[1] Match further objects to each and every Request to the extent that it seeks documents or information from an entity not yet named in the operative Complaint, including, but not limited to, Match Group, LLC, or about a website or dating app not relevant to the live Complaint, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

4.      Undue Burden.  Match objects to each and every Request to the extent that it seeks to impose obligations beyond what is required under the Rules or is unduly burdensome. Accordingly, Match objects to each and every Request where the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

5.      Overbroad. Match objects to each and every Request to the extent that it seeks information that is beyond the scope of Plaintiff's claims in the Complaint, including, but not limited to, documents and information related to Plaintiff's Dismissed Claims, and documents and

---

[1] ECF No. 86 (dismissing Counts I & II of FTC's complaint, filed on September 25, 2019 at ECF No. 1 (the "Complaint"), due to Match's affirmative defense of CDA § 230 immunity).

MATCH'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS 2

EXH. 1

information related to entities and/or dating sites that are not party to, or otherwise related to, this litigation, such as OKCupid, Plenty of Fish, and Tinder.  Match further objects to each and every Request to the extent that it seeks documents and information that are not within Match's possession, custody, or control, including by seeking documents and information from and related to entities that are not named as parties to this litigation.

6.     Privilege.  Match objects to each and every Request to the extent it seeks documents that are or information that is subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all communications with, or work product of, any outside attorney) (collectively, "Privileged Information").  Any inadvertent disclosure of Privileged Information by Match shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

7.     Vagueness and Ambiguity.  Match objects to each and every Request to the extent that such Request is so vague, ambiguous, or confusing as not to be susceptible to a reasoned interpretation or response.  In the absence of clear instructions or definitions associated with terms that are too vague, ambiguous, or confusing, Match will give the terms used in the Request a reasonable interpretation.

8.     Accessibility.  Match objects to each and every Request to the extent that it seeks information that is not reasonably accessible in the ordinary course of business.

9.     Cumulative Requests and Availability of Information Elsewhere.  Match objects to each and every Request that is cumulative, duplicative of, or to which documents or information already are in the possession, custody, or control of Plaintiff, or have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive.  In particular, Match objects to each and every Request insofar as it seeks

documents or information already obtained by Plaintiff during the FTC's prior investigation in connection with the Civil Investigative Demand served on Match in 2017 (the "2017 CID"). In connection with the 2017 CID, Match produced over 225,000 documents that spanned a date range of 2013 to 2018. Such prior productions and the massive volume of documents produced therein should be sufficient to provide the FTC with the information it requires.

10. <u>Lack of Possession, Custody, or Control</u>. Match objects to each Request to the extent it does not appear to be addressed to Match and seeks documents that are necessarily outside Match's possession, custody, or control.

11. <u>Legal Conclusions</u>. Match objects to each and every Request to the extent that it requires Match to draw legal conclusions.

12. <u>Reservation of Right to Supplement</u>. Given the stage of the litigation, Match has not completed its investigation of the facts or law relating to this action, and discovery in this matter is ongoing. Accordingly, consistent with the Rules, these responses and objections are made without prejudice to, and are not a waiver of, Match's right to amend, correct, or supplement these responses, and are subject to Match's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist. Match provides these responses in good faith after a reasonable inquiry and based on information that it knows or can readily obtain.

13. <u>No Waiver</u>. By responding to these Requests, Match does not concede the relevancy of a Request nor the relevancy or admissibility of any information provided in response thereto. The fact that information is provided in response to a particular Request does not mean that it is probative of any particular issue in this case. Match expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of

this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, privilege, confidentiality, hearsay, or admissibility as evidence for any other purpose. Moreover, the right to object on any ground to the use of the responses or information provided, in any aspect of this or any other court action, arbitration, or judicial or administrative proceeding or investigation, is reserved.

## II.   SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.      Match specifically objects to the Requests' Instructions and Definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. In responding to these Requests, Match will follow the requirements set forth in the Rules.

2.      Match specifically objects to the definitions of "Match," the "Company," and "You" because they are vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines these terms as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." This definition necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Match objects to Plaintiff's definitions of "Match," the "Company," and "You" as defined to "include any descriptor used by Match in its business practice," again encompassing other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. In responding to these Requests, Match will construe the terms "Match," the "Company," and "You" to refer only to Match Group, Inc.

3.      Match specifically objects to the definitions of "and" and "or" and because they are ambiguous and confusing.  Match will interpret these terms to have their plain, ordinary, and common sense meaning.  Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  In responding to these Requests, Match will comply with the Rules.

4.      Match specifically objects to the definition of "any" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common- sense meaning.  Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.  In responding to these Requests, Match will comply with the Rules.

5.      Match specifically objects to the definitions of "Customer" and "Customers" as overbroad, unduly burdensome, and oppressive, insofar as they purport to cover individual(s) "who have maintained an account on *any website* owned or operated by" Match, including "OKCupid, Plenty of Fish, and Tinder," which encompasses websites and entities that are not party to, or otherwise related to, the present litigation.  Match further objects that the definitions of "Customer" and "Customers" are thus not tailored to the allegations in the complaint, not proportional to the needs of the case, and exceedingly burdensome.  In responding to these Requests, Match will

construe the terms definitions of "Customer" and "Customers" to refer only to Customer(s) of Match.com.

6.     Match objects to the definition of "Document" as overly broad and unduly burdensome.  Match further objects to this definition to the extent it refers to items outside of Match's possession, custody, or control, particularly through its use of the phrases "regardless of origin or location" and "however and by whomever prepared, produced, disseminated, or made." Match further objects to this definition to the extent it refers to items in Plaintiff's possession, custody, or control, or to items that have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive.  Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those required by the Rules.  In responding to these Requests, Match will interpret the word "Document" to have its plain, ordinary, and common sense meaning and will comply with the Rules.

7.     Match specifically objects to the definition of "each" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common sense meaning.  Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.  In responding to these Requests, Match will comply with the Rules.

8.     Match specifically objects to the definitions of "Identity" and "the identity of" and because they are ambiguous and confusing.  Match will interpret these terms to have their plain, ordinary, and common sense meaning.  Match further objects to these definitions to the extent they

purport to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.  In responding to these Requests, Match will comply with the Rules.

9.      Match specifically objects to the definition of "Match Group, LLC" as vague, ambiguous, confusing, and overbroad.

10.     Match objects to the definition of "OKCupid" because it is overbroad, ambiguous, and confusing.  Match further objects to the definition of "OKCupid" as irrelevant, since OKCupid is not referenced in the Complaint, and thus any Request relying on the definition of "OKCupid" is not proportional to the needs of the case and is unduly burdensome.

11.     Match objects to the definition of "Plenty of Fish" because it is overbroad, ambiguous, and confusing.  Match further objects to the definition of "Plenty of Fish" as irrelevant, since Plenty of Fish is not referenced in the Complaint, and thus any Request relying on the definition of "Plenty of Fish" is not proportional to the needs of the case and is unduly burdensome.

12.     Match specifically objects to the definitions of "referring to" and "relating to" because they are ambiguous and confusing.  Match will interpret these terms to have their plain, ordinary, and common sense meaning.  Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.  In responding to these Requests, Match will comply with the Rules.

13.     Match specifically objects to the definition of "Subscriber" as overbroad, unduly burdensome, and oppressive, insofar as it purports to cover a "Subscriber" to "any website owned or operated by" Match, which would necessarily encompass websites and entities that are not party to, or otherwise related to, the present litigation.  Match further objects that the definition of "Subscriber" is thus not tailored to the allegations in the Complaint and not proportional to the needs of the case.  In responding to these Requests, Match will construe the term "Subscriber" to refer only to Subscribers to Match.com.

14.     Match objects to the definition of "Tinder" because it is overbroad, ambiguous, and confusing.  Match further objects to the definition of "Tinder" as irrelevant, since Tinder is not referenced in the Complaint, and thus any Request relying on the definition of "Tinder" is not proportional to the needs of the case and is unduly burdensome.

15.     The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Requests.

## III.     SPECIFIC OBJECTIONS AND RESPONSES TO THE REQUESTS

**REQUEST NO. 1:**   The Company's certificate of incorporation, bylaws, rules, regulations, procedures, and any amendments to them.

**RESPONSE:**   Match objects to this Request because "rules," "regulations," and "procedures" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of

"the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate formation documents are not relevant to any of Plaintiff's claims, live or dismissed.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.

**REQUEST NO. 2:**  All minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board.

**RESPONSE:**  Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC  this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever

need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects to this Request because "attachments" and "materials" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities or dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, by requesting "*[a]ll* minutes" and "materials" regardless of subject matter.

Subject to and without waiving the foregoing specific and general objections, Match will conduct a reasonable search for minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board that reference or are reasonably related to Match.com's cancelation flow. Match will produce, following the entry of an enforceable

MATCH'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS 11

EXH. 1

protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 3:**  All materially different versions of the Company's organizational charts and personnel directories.

**RESPONSE:**  Match objects to this Request because "organizational charts" and "personnel directories" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's "organizational charts" and "personnel directories" are not relevant to Plaintiff's claims in the Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession,

custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 4.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 3 in connection with the 2017 CID, in response to CID Document Request No. 2.  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 4:**  Documents sufficient to show all relationships that have existed between Match Group, Inc. and any other corporate entity, including Match Group, Inc.'s subsidiaries, entities with an ownership interest the Company, and any other entity You claim has operated match.com.

**RESPONSE:**  Match objects to this Request because "relationships" is vague and undefined, and also to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as "all relationships that have existed between Match Group, Inc. and any other corporate entity" are not relevant to Plaintiff's claims in the Complaint.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 3.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it will conduct a reasonable search for documents sufficient to show any relationships that have existed between Match Group, Inc. and the entity or entities that operate Match.com, including Match Group, LLC.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 5:**  Documents sufficient to show all corporate officers of:

    a.  Match Group, Inc.;

    b.  Any corporate subsidiary of Match Group, Inc.;

    c.  Any corporation that has had an ownership interest in Match Group, Inc.;

    d.  Any other entity You claim has operated match.com;

    e.  Any other entity You contend has operated Tinder;

    f.  Any other entity You contend has operated OKCupid;

    g.  Any other entity You contend has operated Plenty of Fish.

**RESPONSE:**   Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder).  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Match further objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 3, 4, 6, and 7.  Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 5 in connection with the 2017 CID, in response to CID Document Request No. 2.

**REQUEST NO. 6:**  Documents sufficient to identify all current and former employees of Match Group, Inc. whose responsibilities include or relate to:

     a.   advertising or marketing;

b.   customer service;

c.   corporate governance or operations;

d.   general management;

e.   research and development;

f.   legal compliance;

g.   accounting or finance;

h.   cancellation of subscriptions;

i.    the Match Guarantee; and

j.   policies and practices related to chargebacks.

**RESPONSE:**  Match objects to this Request because "corporate governance or operations" and "general management" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information, particularly in light of Plaintiff's request for documents related to "legal compliance." Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct

at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.  Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 6 in connection with the 2017 CID, in response to CID Document Request No. 1.

**REQUEST NO. 7:**  Documents sufficient to identify all current and former Match executives.

**RESPONSE:**  Match objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "Match" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "Match," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, by seeking documents regarding "all current and former Match executives" regardless of their relevance to the claims in the Complaint.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.

Match further objects to this Request to the extent that it is duplicative of other Requests, including

Request Nos. 3, 5, and 6.  Finally, subject to and without waiving the foregoing specific and general

objections, Match responds that it has already produced documents responsive to Request No. 7

in connection with the 2017 CID, in response to CID Document Request No. 2.

**REQUEST NO. 8:**  Documents sufficient to show all transfers of money between Match Group,
Inc., and any corporate subsidiary or owner or any other entity You claim has operated match.com,
OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:**  Match objects to this Request because "transfers of money" is vague and undefined.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional

to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match

Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures,

operations under assumed names, and affiliates, and all directors, officers, employees, agents,

consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of

"You" necessarily and inappropriately includes other entities that are not relevant to the claims or

allegations in the Complaint.  Furthermore, Plaintiff's definition of "You," which is defined to

"include any descriptor used by Match in its business practice," encompasses other entities and

dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of

Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional

to the needs of the case because it purports to seek information beyond the scope of Plaintiff's

claims in the Complaint, as Plaintiff seeks documents and information about entities and dating

sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and

Tinder).  Match further objects to this Request because it is overbroad and unduly burdensome by

seeking documents and information about financial transactions that are irrelevant to Plaintiff's

claims, even if limited only to Match Group, Inc. and Match.com.  Moreover, Match objects that

this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters

beyond the scope of the present litigation, and that this Request is an abuse of the discovery

process.  Match further objects to the extent that the requested documents already are in Plaintiff's

possession, custody, or control, or to the extent that the requested documents are not in Match's

possession, custody, or control.

**REQUEST NO. 9:**  All Documents You contend tend to show that Match Group, Inc., is not liable
for the violations alleged in the Complaint filed in this case, including documents supporting the
claim that another entity has operated match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional

to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match

Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures,

operations under assumed names, and affiliates, and all directors, officers, employees, agents,

consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of

"You" necessarily and inappropriately includes other entities that are not relevant to the claims or

allegations in the Complaint.  Furthermore, Plaintiff's definition of "You," which is defined to

"include any descriptor used by Match in its business practice," encompasses other entities and

dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of

Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional

to the needs of the case because it purports to seek information beyond the scope of Plaintiff's

claims in the Complaint, as Plaintiff seeks documents and information about entities and dating

sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and

Tinder).  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Match further objects to this Request as overbroad, unduly burdensome, and oppressive, because it is not proportionate to the needs to the case and because it requires Match to marshal all of its evidence before trial.  Match further objects to this Request to the extent it is duplicative of other Requests, potentially including each and every other Request.  Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 9 in connection with the 2017 CID, in response to each and every CID Document Request and Interrogatory.

**REQUEST NO. 10:**  All Documents You contend tend to show that Match Group LLC operates or has operated Match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and

dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 4 and 11.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 10 in connection with the 2017 CID, in response to CID Interrogatory No. 1. Notwithstanding its prior production, Match will conduct a reasonable search for documents sufficient to show the operation of Match.com. Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 11:** All Documents You contend tend to show that Match Group Inc. does not or has not operated Match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request because the phrase "does not or has not operated" requires Match to prove a negative, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match

Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 4 and 10.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 11 in connection with the 2017 CID, in response to CID Interrogatory No. 1. Notwithstanding its prior production, Match will conduct a reasonable search for documents sufficient to show the operation of Match.com.

EXH. 1

Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 12:**  Documents sufficient to show the Company's quarterly and annual gross and net revenue, including profit and loss statements and accounting documents for Match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:**  Match objects to this Request because "accounting documents" is vague, undefined, and overbroad, and to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Match further objects to this Request insofar as it seeks information that Plaintiff can obtain elsewhere and/or is publicly available.

**REQUEST NO. 13:**  Documents showing the Company's projections of its gross and net revenue, including Documents provided to prospective investors.

**RESPONSE:**  Match objects to this Request because "projections" and "prospective investors" are vague and undefined, and to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures,

operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as "the Company's projections of its gross and net revenue, including Documents provided to prospective investors," are not relevant to Plaintiff's claims in the Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.

**REQUEST NO. 14:**  Documents sufficient to show quarterly and annual revenue from:

    a.  Subscriptions to Match.com;

    b.  Subscriptions to OKCupid;

    c.  Subscriptions to Plenty of Fish;

    d.  Subscriptions to Tinder;

    e.  Subscriptions to Match.com that included or was subject to a Match Guarantee;

    f.  Payments from accounts on Match.com that had been automatically renewed; and

    g.  Payments from Subscribers who had clicked on the "retention offer" or "Cancel Subscription" hyperlinks described in Paragraph 55 of the Complaint filed in this case.

**RESPONSE:**  Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder).  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already

produced information responsive to Request No. 14 in connection with the 2017 CID, in response to CID Interrogatory No. 3.

**REQUEST NO. 15:**  Each unique version of all Ads related to a Match Guarantee.

**RESPONSE:**  Match objects to this Request as vague and undefined because it is unclear what the FTC means by "unique."  Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC  this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.   Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 15 in connection with the 2017 CID, in response to CID Request No. 3(b)(i).

**REQUEST NO. 16:**  Each unique version of all Ads related to cancellation of a Match.com, OKCupid, Plenty of Fish, or Tinder subscription, including Ads related to the ease or availability of cancellation.

**RESPONSE:**  Match objects to this Request as vague and undefined because it is unclear what the FTC means by "unique."   Match also objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder).   Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.   Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.   Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 15. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 16 in connection with the 2017 CID, in response to CID Request No. 3(c)(i).  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 17:**  Documents sufficient to show each unique disclosure You contend disclosed policies concerning terminating subscriptions in response to a Customer Chargeback.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information.

Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.  Finally, Match responds that it has already produced documents responsive to Request No. 17 in connection with the 2017 CID, in response to CID Request No. 9(e).

**REQUEST NO. 18:**  Representative copies of all visual content shown to Customers during the process of purchasing or signing up for a paid subscription.

**RESPONSE:**  Match objects to this Request because "[r]epresentative copies of all visual content" is vague, confusing, and overbroad.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that

Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 19.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 18 in connection with

the 2017 CID, in response to CID Request Nos. 3(a)(i), 3(a)(iii), 3(b)(i), 3(b)(iii), 3(c)(i), and 3(c)(iii).  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 19**:   Representative copies of all visual content that Match has shown to Customers concerning the Match Guarantee, including concerning:

    a.   Advertisements relating to Subscriptions subject to the Match Guarantee;

    b.   Customer "progress" with regard to the Match Guarantee; and

    c.   Redeeming a Match Guarantee or receiving a Guarantee Extension.

**RESPONSE:**   Match objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing, because "progress" is vague and undefined.  Match specifically objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee."  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into

the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.  Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 19 in connection with the 2017 CID, in response to CID Request Nos. 3(b)(i), 3(b)(iii), and 9(b).

**REQUEST NO. 20:**  Representative copies of all visual content that Customers have had to view to cancel their subscriptions.

**RESPONSE:**  Match objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

EXH. 1

Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 19.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 20 in connection with the 2017 CID, in response to CID Request No. 9(d).  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 21:**  Representative copies of all visual content that the Company has shown to Customers concerning the available means of cancelling their subscriptions.

**RESPONSE:**  Match objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company"

necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 20.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 21 in connection with the 2017 CID, in response to CID Request No. 9(d).  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 22:**  All documents related to any change or contemplated change to any means of subscription cancellation available to Customers.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Additionally, Match objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as any "change" that may have been contemplated but never implemented is not relevant to the allegations in Plaintiff's Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession,

custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 17.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 22 in connection with the 2017 CID, in response to CID Request Nos. 8(e) and 9(d).  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 23:**  All documents related to account takeovers.

**RESPONSE:**  Match objects to this Request because "account takeovers" is vague and undefined, and to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, because by failing to specify any limiting principle on "account takeovers," this Request necessarily captures documents and information that fall outside the scope of what is relevant to that allegations in Plaintiff's Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.

**REQUEST NO. 24:**  All documents related to software flaws that prevented Customers from:

    a.  logging into their accounts;

    b.  using their accounts; or

    c.  canceling their accounts.

**RESPONSE:**  Match objects to this Request because "software flaws" is vague, undefined, and overbroad, and to the extent Plaintiff seeks Privileged Information.  Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match objects to this Request because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as not every "software flaw" related to account functionality is relevant to the allegations in Plaintiff's Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.

       Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and

EXH. 1

Tinder.  Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Additionally, Match objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 19, 20, 21, 22, 23, and 25.

**REQUEST NO. 25**:  All communications relating to:

    a.  Match Guarantees;

    b.  Cancellation of paid subscriptions by Customers;

    c.  Customer Chargebacks;

    d.  Denial of Customers' access to accounts in response to chargebacks;

    e.  The marketing or advertising of Tinder Gold or Tinder Boost; and

    f.  The marketing or advertising of Incognito Mode, OKCupid Premium, or Profile Boosts on OKCupid.

**RESPONSE:**  Match objects to this Request because "[a]ll communications" is overbroad and unduly burdensome, and to the extent Plaintiff seeks Privileged Information.  Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would

never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as neither "[t]he marketing or advertising of Tinder Gold or Tinder Boost" nor "[t]he marketing or advertising of Incognito Mode, OkCupid Premium, or Profile Boosts on OkCupid" are relevant to Plaintiff's claims in the Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 17, 19, 20, 21, 22, 23, 24, 27, 28 and 31.

**REQUEST NO. 26:**  All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Match Guarantees; chargeback policies; Ads relating to subscription renewal or cancellation; or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups.

**RESPONSE:**  Match specifically objects to this Request because "tests," "A/B testing," "click-through data," "surveys," "usability tests," and "focus groups" are vague and undefined.  Match further objects to this Request to the extent Plaintiff seeks Privileged Information.  Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC  this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer"

as "any individual or individuals who have maintained an account on any website owned or operated by the Company," and "Match" or "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because by seeking information under such a broad category as "how consumers or Customers view, read, react to, understand, or have been influenced," this Request is not tailored to the allegations in Plaintiff's Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 26 in connection with the 2017 CID, in response to CID Request Nos. 3(a)(iv), 3(b)(iv), 3(c)(iv), and 4.  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to subscription renewal and cancelation for Match.com only.  Match will

produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 27:**  All Documents, including internal and third-party studies or audits, relating to Customers' efforts to cancel their subscriptions to Match.com, Tinder, or OKCupid.

**RESPONSE:**  Match objects to this Request because "efforts" is vague and undefined, and to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company," and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and

Tinder).  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 19, 20, 21, 22, 24, 25, 26, and 28.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents that are in Match's possession, custody, or control identified through such search, if any are located.

**REQUEST NO. 28**:  All Documents relating to the policies and practices of the Company, Match.com, Tinder, or OKCupid regarding the following:

    a.  Match Guarantees;

    b.  account cancellation;

    c.  Availability of customer support services;

    d.  availability of refunds;

    e.  Customer Chargebacks;

    f.  Customer access to accounts; and

    g.  compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

**RESPONSE:**  Match objects to this Request because "availability" is vague and undefined.  Match further objects to this Request to the extent Plaintiff seeks Privileged Information, specifically

because the term "relating to" as used in this Request necessarily captures Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 19, 20, 21, 22, 24, 25, 26, and 27.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 28 in connection with the 2017 CID, in response to CID Request No. 8.  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to subparts (b)-(d) and (g) for Match.com and ROSCA compliance only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 29**:  All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

**RESPONSE**:  Match objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged Information, and because the Request overall appears calculated to specifically seek Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's

claims in the Complaint, because not every document related to every prior investigation of Match's compliance with consumer protection laws is relevant to the allegations in Plaintiff's Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 27, 28, 32, and 34.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that will conduct a reasonable search for reasonably available responsive documents with respect to Match.com's compliance with ROSCA only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 30:**  All Documents relating to Customer complaints.

**RESPONSE:**  Match objects to this Request because "complaints" is vague and undefined, and to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's

definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, since by seeking "all Documents" related to the inherently broad category of "Customer complaints," this Request necessarily captures a whole host of documents, communications, and other information that are not relevant to the claims in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 30 in connection with the 2017 CID, in response to CID Request No. 10. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents relating to Customer complaints regarding the Match.com online cancelation flow, as alleged in the Complaint. Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 31:** All communications with Customers relating to the Match Guarantee or the Company's chargeback or cancellation policies or practices.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of

"Match Guarantee" or maintained a "Chargeback" policy.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC  this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company," and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 25, 28, and 30.  Any response to this Request that is

provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 31 in connection with the 2017 CID, in response to CID Request No. 10.  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com's cancelation policies or practices only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 32:**  All documents relating to any lawsuit alleging that the operators of Match.com, Tinder, Plenty of Fish, or OKCupid have engaged in fraud or violated any federal, state, or foreign consumer protection laws.

**RESPONSE:**  Match objects to this Request because "the operators of" is vague and undefined, and to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged Information.  Match further objects to this Request as irrelevant, overbroad, oppressive, and inappropriate to the extent Plaintiff seeks discovery about "fraud" or consumer protection violations of any kind, as the Court dismissed with prejudice Plaintiff's claims related to alleged fraud (Counts I & II) in its Memorandum Opinion & Order on Match's Motion to Dismiss.  ECF No. 86.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder).  Match further objects to this Request as irrelevant, overbroad, and unduly burdensome,

to the extent that its use of the undefined term "the operators of" assumes that Match Group, Inc. is "the operator[] of" Match.com, Tinder, Plenty of Fish, or OKCupid.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Match likewise objects to this Request to the extent the requested documents are publicly available.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 34.

**REQUEST NO. 33:**  All versions of customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training materials.

**RESPONSE:**  Match objects to this Request because "prepared responses," "customer support manuals," and "employee manuals" are vague and undefined, and to the extent Plaintiff seeks Privileged Information.  To the extent Plaintiff meant "Customer," as opposed to "customer," Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because by failing to specify any subject matter limitation on any of the materials referenced therein, this Request necessarily captures documents and information that fall outside the scope of what is relevant to Plaintiff's claims.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 25, 28, and 30.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 33 in connection with the 2017 CID, in response to CID Request No. 8.  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents that address or relate to Match.com account cancelation only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 34:**  All Documents referring to or relating to:

    a.  The Federal Trade Commission;

    b.  The FTC Act;

    c.  The Restore Online Shoppers' Confidence Act;

    d.  Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP";

    e.  The Department of Justice; and

f.  The lawfulness or unlawfulness of any practices related to Match Guarantees, Customer chargebacks, or the cancellation of subscriptions.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the terms "referring to" and "relating to" as used in this Request necessarily capture Privileged Information.  Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC  this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as this Request necessarily encompasses entities not party to, or otherwise related to, the present litigation.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the

extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 29 and 32.

**REQUEST NO. 35:**  All Documents that support, contradict, refute, or rebut any affirmative defense You have asserted in Your Answer.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "You" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as oppressive, overbroad, and not proportional to the needs of the case because it requires Match to marshal all of its evidence before trial. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

**REQUEST NO. 36:**  All Documents You referred to in the course of responding to any Request for Admission, Request for Production, or Interrogatory served by the Federal Trade Commission in this case.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the terms "referring to" and "relating to" as used in this Request necessarily capture Privileged Information.  Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC  this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match  could  never  and  would  never,  and  Match.com  would  never,  engage  in  the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as oppressive, overbroad, and not proportional to  the  needs  of  the  case,  because  it  purports  to  require  Match  to  re-produce  each  and  every document it has previously produced to the FTC.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match

further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

Subject to and without waiving the foregoing specific and general objections, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com account cancelation only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 37:**  All Documents considered or relied upon by any witness you disclose under Fed. R. Civ. P. 26(a)(2).

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information. Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because it does not specify any subject matter limitations.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Match objects to this Request as oppressive, overbroad, and not proportional to the needs of the case because it requires Match to marshal all of its evidence before trial.  Match further objects to this Request to the extent it seeks to require production or disclosure of expert-related documents prior to the time specified in the Court's scheduling order.  Finally,

Match objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

Dated:  July 19, 2022                                     Respectfully submitted,

                                                         */s/  Angela C. Zambrano*
                                                         Angela C. Zambrano
                                                         State Bar No. 24003157
                                                         angela.zambrano@sidley.com
                                                         David Sillers
                                                         State Bar No. 24072341
                                                         dsillers@sidley.com
                                                         SIDLEY AUSTIN LLP
                                                         2021 McKinney Ave, Suite 2000
                                                         Dallas, TX 75201
                                                         Telephone: 214.981.3300
                                                         Fax: 214.981.3400

                                                         Chad S. Hummel (admitted *pro hac vice*)
                                                         chummel@sidley.com
                                                         SIDLEY AUSTIN LLP
                                                         1999 Avenue of the Stars, 17th Floor
                                                         Los Angeles, CA 90067
                                                         Telephone: 310.595.9500
                                                         Fax: 310.595.9501

                                                         *Attorneys for Match Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and forgoing document was served on all counsel of record via e-mail as outlined below on July 19, 2022.

Reid Abram Tepfer
rtepfer@ftc.gov
M Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov

*/s/  Angela C. Zambrano*
Angela C. Zambrano

MATCH'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS 56

EXH. 1

# EXHIBIT 2

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. 3:19-cv-02281-K |
| MATCH GROUP, INC., a corporation, | |
| Defendant. | |

**DEFENDANT MATCH GROUP, INC'S RESPONSES AND OBJECTIONS TO
PLAINTIFF FEDERAL TRADE COMMISSION'S
FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Rules") Defendant Match Group, Inc. ("Match"), by and through its undersigned counsel, objects and responds to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") First Set of Interrogatories (each an "Interrogatory" and, collectively, the "Interrogatories") as follows:

**I.      GENERAL OBJECTIONS**

1.      <u>Irrelevant</u>.  Match objects to each and every Interrogatory to the extent that it purports to seek information that is irrelevant to Plaintiff's claims and is not reasonably calculated to lead to the discovery of admissible evidence.  In particular, Match objects to each and every Interrogatory to the extent that it seeks information relevant to the claims that were dismissed in the Court's March 24, 2022 Order on Match's Motion to Dismiss (the "Dismissed Claims").[1] Match further objects to each and every Interrogatory to the extent that it seeks documents or

---

[1] ECF No. 86 (dismissing Counts I & II of FTC's complaint, filed on September 25, 2019, at ECF No. 1 (the "Complaint"), due to Match's affirmative defense of CDA § 230 immunity).

information from an entity or dating site not yet named in the present litigation in any operative pleading, including but not limited to Match Group, LLC, OKCupid, Plenty of Fish, and Tinder. These responses are being provided solely by Match Group, Inc. based on information within its possession, custody and control.

2.      <u>Undue Burden</u>.  Match objects to each and every Interrogatory to the extent that it seeks to impose obligations beyond what is required under the Rules or Local Rules or is unduly burdensome.  Accordingly, Match objects to each and every Interrogatory where the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

3.      <u>Overbroad</u>.  Match objects to each and every Interrogatory to the extent that it seeks information that is beyond the scope of Plaintiff's claims, including, but not limited to, documents and information related to Plaintiff's Dismissed Claims, and documents and information related to entities or dating sites that are not yet party to, or otherwise related to, this litigation, such as Match Group, LLC, OKCupid, Plenty of Fish, and Tinder.  Match further objects to each and every Interrogatory to the extent that it seeks documents and information that are not within Match's possession, custody, or control, including by seeking documents and information from and related to entities that are not named as parties to this litigation.

4.      <u>Privilege</u>.  Match objects to each and every Interrogatory to the extent it seeks documents or information that is subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all communications with, or work product of, any outside attorney) (collectively, "Privileged

Information").  Any inadvertent disclosure of Privileged Information by Match shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

5.    <u>Vagueness and Ambiguity</u>.  Match objects to each and every Interrogatory to the extent that such Interrogatory is so vague, ambiguous, or confusing as not to be susceptible to a reasoned interpretation or response.  In the absence of clear instructions or definitions associated with terms that are too vague, ambiguous, or confusing, Match will give the terms used in the Interrogatory a reasonable interpretation.

6.    <u>Confidentiality</u>.  Match objects to each and every Interrogatory to the extent that it seeks the production of confidential or commercially sensitive information.  Match will confer with Plaintiff in an effort to reach an agreement regarding the terms of a protective order.  If an agreement cannot be reached, Match will move for a protective order.  Any responses to these Interrogatories that are provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

7.    <u>Accessibility</u>.  Match objects to each and every Interrogatory to the extent that it seeks information that is not reasonably accessible in the ordinary course of business.

8.    <u>Cumulative Interrogatories and Availability of Information Elsewhere</u>.  Match objects to each and every Interrogatory that is cumulative, duplicative of, or to which documents or information already are in the possession, custody, or control of Plaintiff, or have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive.  In particular, Match objects to each and every Interrogatory insofar as it seeks documents or information already obtained by Plaintiff during the FTC's prior investigation in connection with the Civil Investigative Demand served on Match in 2017 (the "2017 CID").

9.      <u>Lack of Possession, Custody, or Control</u>.  Match objects to each Interrogatory to the extent it does not appear to be addressed to Match and seeks information that is necessarily outside Match's knowledge.

10.     <u>Legal Conclusions</u>.  Match objects to each and every Interrogatory to the extent that it requires Match to draw legal conclusions.

11.     <u>Reservation of Right to Supplement</u>.  Given the stage of the litigation, Match has not completed its investigation of the facts or law relating to this action, and discovery in this matter is ongoing.  Accordingly, consistent with the Rules, these responses and objections are made without prejudice to, and are not a waiver of, Match's right to amend, correct, or supplement these responses, and are subject to Match's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist.  Match provides these responses in good faith after reasonable inquiry and based on information that it knows or can readily obtain.

12.     <u>No Waiver</u>.  By responding to these Interrogatories, Match does not concede the relevancy of an Interrogatory, nor the relevancy or admissibility of any information provided in response thereto.  The fact that information is provided in response to a particular Interrogatory does not mean that it is probative of any particular issue in this case.  Match expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, privilege, confidentiality, hearsay, or admissibility as evidence for any other purpose.  Moreover, the right to object on any ground to the use of the responses or information provided, in any aspect of this or any other court action, arbitration, or judicial or administrative proceeding or investigation, is reserved.

13.     <u>Multiple Subparts</u>.  Match objects to each and every Interrogatory to the extent it purports to include more than one single discrete question, and to the Definitions and Instructions to the extent they imbed in any Interrogatory a series of subpart questions, as these Interrogatories violate the Rules that limit each party to 25 single questions, including subparts.

## II.     SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.     Match specifically objects to the Interrogatories' Instructions and Definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules and the Local Rules.  In responding to these Interrogatories, Match will follow the requirements set forth in the Rules and the Local Rules.

2.     Match specifically objects to the definitions of "Match," the "Company," and "You" because they are vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines these term as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing."  This definition necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Match objects to Plaintiff's definitions of "Match," the "Company," and "You" as defined to "include any descriptor used by Match in its business practice," again encompassing other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  In responding to these Interrogatories, Match will construe the terms "Match," the "Company," and "You" to refer only to Match Group, Inc.

3.    Match specifically objects to the definitions of "and" and "or" and because they are ambiguous and confusing. Match will interpret these terms to have their plain, ordinary, and common sense meaning. Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case and exceedingly burdensome. In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

4.    Match specifically objects to the definition of "any" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common sense meaning. Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

5.    Match specifically objects to the definitions of "Customer" and "Customers" as overbroad, unduly burdensome, and oppressive, insofar as they purport to cover individual(s) "who have maintained an account on *any website* owned or operated by the Company, including OKCupid, Plenty of Fish, and Tinder," which Match does not actually own or operate, and which encompasses websites and entities that are not party to, or otherwise related to, the present litigation. Match further objects that the definitions of "Customer" and "Customers" are thus not tailored to the allegations in the complaint, not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence. In responding to these

Interrogatories, Match will construe the terms "Customer" and "Customers" to refer only to Customer(s) of Match.com.

6.      Match objects to the definition of "Document" as overly broad and unduly burdensome.  Match further objects to this definition to the extent it refers to items outside of Match's possession, custody, or control, particularly through its use of the phrases "regardless of origin or location" and "however and by whomever prepared, produced, disseminated, or made." Match further objects to this definition to the extent it refers to items in Plaintiff's possession, custody, or control, or to items that have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive.  Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those required by the Rules.  In responding to these Interrogatories, Match will interpret the word "Document" to have its plain, ordinary, and common sense meaning and will comply with the Rules.

7.      Match specifically objects to the definition of "each" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common sense meaning.  Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.  In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

8.      Match specifically objects to the definitions of "Identity" and "the identity of" and because they are ambiguous and confusing.  Match will interpret these terms to have their plain, ordinary, and common sense meaning.  Match further objects to these definitions to the extent they

purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

9.      Match specifically objects to the definition of "Match Group, LLC" as vague, ambiguous, confusing, and overbroad.

10.     Match objects to the definition of "OKCupid," because it is overbroad, ambiguous, and confusing. Match further objects to the definition of "OKCupid" as irrelevant, since OKCupid is not referenced in the operative Complaint, and thus any Interrogatory relying on the definition of "OKCupid" is not proportional to the needs of the case and is unduly burdensome.

11.     Match objects to the definition of "Plenty of Fish," because it is overbroad, ambiguous, and confusing. Match further objects to the definition of "Plenty of Fish" as irrelevant, since Plenty of Fish is not even referenced in the Complaint, and thus any Interrogatory relying on the definition of "Plenty of Fish" is not proportional to the needs of the case and is unduly burdensome.

12.     Match specifically objects to the definitions of "referring to" and "relating to" and because they are ambiguous and confusing. Match will interpret these terms to have their plain, ordinary, and common sense meaning. Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor

proportional to the needs of the case.  In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

13.     Match specifically objects to the definition of "Subscriber" as overbroad, unduly burdensome, and oppressive, insofar as it purports to cover a "Subscriber" to "any website owned or operated by" Match, which would necessarily encompass websites and entities that are not party to, or otherwise related to, the present litigation.  Match further objects that the definition of "Subscriber" is thus not tailored to the allegations in the complaint and not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence.  In responding to these Interrogatories, Match will construe the term "Subscriber" to refer only to Subscribers to Match.com.

14.     Match objects to the definition of "Tinder," because it is overbroad, ambiguous, and confusing.  Match further objects to the definition of "Tinder" as irrelevant, since Tinder is not even referenced in the Complaint, and thus any Interrogatory relying on the definition of "Tinder" is not proportional to the needs of the case and is unduly burdensome.

15.     The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Interrogatories.

## III.     SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify, including by job title, place of employment, and dates of service, all persons that Match consulted with while preparing its response to the 2017 CID, Plaintiff's First Set of Interrogatories, Plaintiff's First Requests for Production, Plaintiff's First Request for Admission, or any other submission or presentation the Company sent to the FTC. For each such person, state the 2017 CID request, discovery request, interrogatory, or other submission or presentation for which the person answered or otherwise assisted in answering.

**RESPONSE:**  Match objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match

further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy.  Match.com has permanently discontinued the "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects to this Interrogatory because, by asking for the identity of all persons that Match "consulted with" in responding to the FTC's CID or discovery requests, it seeks documents or information that is subject to the attorney-client privilege and work-product doctrine. The FTC is not entitled to know the identity of every individual with whom Match's attorneys consulted.

**INTERROGATORY NO. 2:**  Describe any criteria Match uses or has used to determine whether to grant a Customer's request for a refund relating to PTR Ads, fraud or alleged fraud, Match Guarantees, consumer's belief that they had already canceled their subscription, or his or her claimed lack of knowledge about recurring charges.

**RESPONSE:**  Match objects to this Interrogatory because "PTR Ads" is vague and undefined, and to the extent this Interrogatory seeks Privileged Information.  Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or

defenses and is not proportional to the needs of the case.  Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." Match.com has permanently discontinued the "Match Guarantee" and related practices, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects to this Interrogatory as irrelevant, overly broad, unduly burdensome, and disproportionate to the needs of the case, in that it seeks information that is beyond the scope of Plaintiff's Complaint, because Count I and II relating to PTR Ads and fraud or alleged fraud were dismissed with prejudice by the Court on March 24, 2022.  *See* ECF No. 86 ("The Court [] grants Defendant Match Group, Inc.'s Motion to Dismiss Counts I and II because Match is entitled to immunity under 47 U.S.C. § 230 of the Communications Decency Act, thus those claims are barred and dismissed with prejudice.").  Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single

questions, including subparts.  Match further objects to this Interrogatory to the extent it purports

to impose a burden beyond what is required by the Rules and Local Rules.

Subject to and without waiving the foregoing objections, Match responds as follows: Match

Group, Inc. does not use any criteria to determine whether to grant a Match.com Customer's

request for a refund relating to a consumer's belief that they had already canceled their

subscription, or his or her claimed lack of knowledge about recurring charges because Match

Group, Inc. does not own or operate Match.com.  Match expressly reserves the right to supplement

or amend this response, as discovery and document production is ongoing.

**INTERROGATORY NO. 3:** Identify and describe in complete detail the full basis for each
affirmative defense You have asserted in Your Answer, including but not limited to every fact and
document that supports, contradicts, refutes, or rebuts that particular affirmative defense, and every
witness who may have information or testimony relevant to that particular defense.

**RESPONSE:**  Match objects to this Interrogatory because "relevant" is vague and undefined and

to the extent this Interrogatory seeks Privileged Information.  Match further objects to this

Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or

defenses and is not proportional to the needs of the case.  Match further objects to this Interrogatory

insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or

maintained a Chargeback policy.  Match.com has permanently discontinued the "Match

Guarantee" and related practices, as well as all practices related to "Chargebacks," and Match has

repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation

in a form acceptable to the Court that Match could never and would never, and Match.com would

never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this

discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or

is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that

addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also

dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities or dating sites that are not relevant to the claims or allegations in the Complaint.  Match also objects to this Interrogatory as premature and to the extent it seeks to require Match to marshal all of its evidence before trial.  Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.  Match also objects to this Interrogatory to the extent it seeks to require Match to provide information that is not in its possession, custody, or control, or that is already in Plaintiff's possession, custody, or control.

Subject to and without waiving the foregoing objections, Match responds as follows:

First Affirmative Defense (Failure to State a Claim):  Match asserts FTC's Complaint fails to state a claim, including because the Complaint names the wrong entity.  Since March 2017, when the FTC served Match Group, Inc. with the Civil Investigative Demand ("CID"), Match has repeatedly informed the FTC that Match Group, Inc. is in fact a separate holding company, and Match Group, LLC (formerly named Match.com, LLC) actually owns and operates Match.com. For example, Match stated in its May 15, 2017 Interrogatory Responses to the FTC's CID that

Match.com, LLC is the general operating company that operates Match.com.  Delaware Secretary of State records show that Match.com, LLC filed a certificate of amendment on September 12, 2017, changing its name from Match.com, LLC to Match Group, LLC.  Match continued to raise these concerns in a December 16, 2018 White Paper and in negotiating a potential Consent Order with the FTC.  Additionally, shortly after the Complaint was served, counsel for Match emailed the FTC to again inform it that Match Group, Inc. was incorrectly named as a defendant in the lawsuit and should be voluntarily dismissed.  *See* Dkt. 21 at 35.  Counsel for the FTC acknowledged the email but declined to voluntarily dismiss the Complaint against Match Group, Inc. *See id.* at 37.

The Complaint fails to state a claim for the additional reason that the Guarantee and Chargeback policy at issue in the Complaint were discontinued prior to the FTC filing suit, and there are no plans to resume those practices, as the FTC is aware from multiple communications. Thus, both Match Group, Inc. and Match.com are not violating, nor are they about to violate, the FTC Act.

Second Affirmative Defense (Compliance with Applicable Law):   The Complaint's Count V fails as Match did not violate Section 4 of ROSCA, 15 U.S.C. § 8403.  As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint.  Rather, at all times with respect to Count V, Match.com complied with all applicable laws and acted reasonably and in good faith.  As a preliminary matter, even assuming that the online cancelation flow at issue in Count V is not simple (although it is), the plain language of ROSCA requires only "simple mechanisms" for cancelation, and ROSCA does not provide that every cancelation method must be simple.  Count V fails because Match.com offers several other cancelation methods in full compliance with ROSCA, including simple

methods to cancel by phone, fax, email, internet chat, or standard mail, and the FTC challenges only the online cancelation method.  Thus, even if the FTC were correct (which it is not) that the online cancelation flow is not simple, the existence of other unchallenged methods of cancelation defeats the FTC's claim.

Count V also fails because the Match.com online cancelation flow is not complicated or in any material way different from numerous other online subscription cancelation mechanisms.  It is essentially industry standard.  Consumers in fact readily canceled using the Match.com online cancelation flow, as reflected by data proving that subscribers have no difficulty canceling via the online cancelation flow, which can be completed in less than one minute.  Based on data reviewed during the FTC's pre-suit investigation, on average, 89% of Match.com subscribers who initiated an online cancelation request successfully canceled their subscription within the same day.

Third Affirmative Defense (Good Faith Belief and Conduct):  As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint.  Match.com's subscription cancelation flow was designed and implemented to be simple and readily accessible to users.

Fourth Affirmative Defense (Requested Relief Contrary to Public Policy):  As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint.  The FTC's requested relief with respect to Count V is contrary to the public interest because Match.com's online cancelation flow is intended to benefit consumers by protecting their privacy (by requiring them to insert their passwords prior to accessing private account information, such as billing), offering them discounted rates, and allowing Match.com to understand how to better serve them.

Fifth Affirmative Defense (Alleged Failure to Clearly and Conspicuously Disclose Not Material):  As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint.  Any alleged failure by Match.com to clearly and conspicuously disclose some requirements of the guarantee practice was not material because most consumers who did not qualify for the guarantee failed to satisfy the requirements that were unquestionably adequately disclosed (i.e., the requirements in the numbered and bullet-pointed list in the Program Rules).  So even had other requirements been *more* clearly and conspicuously disclosed (or waived), most users would not have been eligible for a guarantee regardless.

Sixth Affirmative Defense (Mootness):  As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint.  As to Count III, Match asserts the FTC's claim for injunctive relief is moot under applicable law.  The FTC admits in its Complaint that this guarantee practice at issue in Count III ceased in mid-2019 (but it was actually permanently discontinued in April 2019).  Match asserts Count IV is also moot, because, as the FTC admits in its Complaint, Match.com's chargeback practice ceased in mid-2019 (but it was actually permanently discontinued in March 2019).  Count IV's claim for injunctive relief is therefore also moot.  There is nothing to enjoin because the challenged practices have been discontinued.

Seventh Affirmative Defense (Overbroad Injunction):  As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint.  The FTC's requested injunction with respect to Count III and the "guarantee" practice is overbroad and not specifically tailored to the violations alleged in the Complaint.  The FTC's requested injunction with respect to Count IV and the chargeback policy

is overbroad and not specifically tailored to the violations alleged in the Complaint.  Finally, the FTC's requested injunction is overbroad and not specifically tailored to the violations alleged in the Complaint.  In particular, the FTC's requested injunction is overbroad not only because the Complaint fails to allege all necessary facts, but also because the FTC attempts to apply such injunction to Match Group, Inc., which does not own or operate Match.com, and to brands other than Match.com that are not implicated by the Complaint.

Eighth Affirmative Defense (Mitigation):  As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint.  With respect to Count V, the FTC has not offered any reliable methodology for quantifying alleged consumer harm, and any restitution amount would be subject to mitigation to the extent that consumers received refunds or utilized the services on the renewed subscription.

Ninth Affirmative Defense (Reservation of Other Affirmative Defenses):  Match lacks sufficient information regarding the facts and evidence alleged and is therefore unable to ascertain at this time any additional affirmative defenses which Match may have.  Therefore, Match expressly reserves the right to amend its Answer to assert such other affirmative defenses as may become apparent subsequent to the filing of its Answer, whether in discovery, at trial, or otherwise.

Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

**INTERROGATORY NO. 4:** Identify any tests, reports, A/B testing, Customer surveys, usability tests, focus groups, or other user experience studies, whether formal or informal, You have conducted related to:

    a.      Match Guarantees;

    b.      Chargebacks; and

    c.      means of subscription renewal or cancellation.

Your response to this Interrogatory should include descriptions of the types of usability studies, beta studies, and surveys that the response covers. In addition, please provide Your response in machine-readable format, for example, in a .csv or spreadsheet file format.

**RESPONSE:**   Match objects to this Interrogatory because "tests," "reports," "A/B testing," "surveys," "usability tests," "focus groups," "user experience studies," "formal," and "informal" are vague and undefined, and to the extent this Interrogatory seeks Privileged Information.  Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a Chargeback policy.  Match.com has permanently discontinued the "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions,

joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities or dating sites that are not relevant to the claims or allegations in the Complaint.  Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts.  Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.

Subject to and without waiving the foregoing objections, Match responds with respect to subpart (c) as follows: pursuant to Federal Rule of Civil Procedure 33(d), Match directs the FTC to any documents that will be produced in response to the FTC's RFP No. 26.  Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

**INTERROGATORY NO. 5:**

On a monthly basis, state:

      a.     the number of Match.com subscriptions subject to the Guarantee sold;

      b.     the number of Guarantee Extensions that Match provided Customers;

      c.     the number of Customer inquiries regarding the automatic renewal of subscriptions subject to the Match Guarantee;

      d.     the number of refund requests Customers submitted to Match relating to Match Guarantees and the dollar amount of these requested refunds; and

      e.     the number of refunds Match granted relating to Match Guarantees and the amount of money refunded relating to Match Guarantees.

**RESPONSE:**  Match objects to this Interrogatory because "subscriptions" and "inquires" are vague and undefined and to the extent this Interrogatory seeks Privileged Information.  Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to

either party's claims or defenses and is not proportional to the needs of the case.  Match further

objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of

"Match Guarantee" or maintained a Chargeback policy.  Match.com has permanently discontinued

the "Match Guarantee" and related practices, and Match has repeatedly told the FTC this orally

and in writing.   Match is prepared to enter a binding stipulation in a form acceptable to the Court

that Match could never and would never, and Match.com would never, engage in the conduct

challenged in Counts III and IV in the Complaint, to which this discovery solely relates.  The FTC

has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the

question of whether any injunctive relief should be issued that addresses this alleged conduct is

moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim

by the FTC for monetary relief based on the conduct at issue in this Interrogatory.  For these

reasons, discovery into the questions of what occurred or whether the alleged conduct related to

the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to

harass.

Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant,

not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match"

as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated

divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers,

employees, agents, consultants, and other persons working for or on behalf of the foregoing."

Plaintiff's definition of "Match" necessarily and inappropriately includes other entities or dating

sites that are not relevant to the claims or allegations in the Complaint.  Additionally, Match objects

to this Interrogatory as it includes more than one single discrete question, and incorporates

definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit

each party to 25 single questions, including subparts.  Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.

**INTERROGATORY NO. 6:**   State all limitations on Customers' rights to redeem a Match Guarantee or receive a Guarantee Extension and all actions consumers had to complete to redeem a Match Guarantee or receive a Guarantee Extension. For each such limitation or action Identify:

>    a.    the date such limitation was implemented and/or eliminated;

>    b.    all advertisements, notices, disclosures, or other notifications where Match disclosed the need to complete that action; and

>    c.    The number of consumers whose request for a Guarantee Extension were denied due to that limitation or for failing to complete that particular action.

**RESPONSE:**   Match objects to this Interrogatory because "rights to redeem," "that limitation," and "that particular action" are vague and undefined and to the extent this Interrogatory seeks Privileged Information.  Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." Match.com has permanently discontinued the "Match Guarantee" and related practices, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery solely relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related

to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.

**INTERROGATORY NO. 7:**  Describe all of Match's policies relating to Customer Chargebacks, including regarding:

     a.    the circumstances in which Match will dispute a Customer Chargeback;

     b.    denying Customer account access due to a Chargeback request;

     c.    deleting or reinstating accounts of consumers who unsuccessfully attempt a Chargeback and when such deletions or reinstatements are effective; and

     d.    the effective dates of the policies.

**RESPONSE:**  Match objects to the extent this Interrogatory seeks Privileged Information.  Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever had any policy relating to a Chargeback—or offered any kind of "Match Guarantee" or maintained a Chargeback policy.  Match.com has permanently discontinued "Chargebacks" and related practices, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery solely relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should

be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.  Match also objects to this Interrogatory to the extent it seeks to require Match to provide information that is not in its possession, custody, or control, or that is already in Plaintiff's possession, custody, or control.

**INTERROGATORY NO. 8:**  On a monthly basis, state:

a.    the number of Customer communications Match received regarding account cancellation or cancellation processes;

b.    the number of refund requests made by Customers who claimed they believed they already canceled their subscriptions or who attempted to cancel;

c.    the dollar value of the refund requests made by Customers who claimed they believed they already canceled their subscriptions or who attempted to cancel;

d.    the number of refunds Match provided to Customers who claimed they believed they already canceled their subscriptions or who attempted to cancel;

e.    the dollar value of the refunds provided to Customers who claimed they believed they already canceled their subscriptions or who attempted to cancel;

f.    the amount charged to Customers who had requested a refund on the basis that they believed they had cancelled and had this request denied by Match; and

g.    the amount charged to Customers who had requested a refund on the basis that they were unaware of Match's recurring charge and had this request denied by Match.

**RESPONSE:**     Match objects to this Interrogatory because "communications," "account cancellation or cancellation processes," "attempted," "believed," and "claimed," are vague and undefined and to the extent this Interrogatory seeks Privileged Information.  Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "Match" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "Match," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts.  Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.  Match also objects to this Interrogatory to the extent it seeks to require Match to provide information that is not in its possession, custody, or control, or that is already in Plaintiff's possession, custody, or control.  By responding to this Interrogatory, Match does not concede the relevancy of this Interrogatory nor the relevancy or admissibility of any information provided in response thereto.  The fact that information is provided in response to this Interrogatory does not mean that it is probative of any particular issue in this case.

Subject to and without waiving the foregoing objections, Match responds as follows: Match Group, Inc. has not received any Customer communications or refund requests because Match Group, Inc. does not own or operate Match.com (or any other dating site).

Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

**INTERROGATORY NO. 9:** Describe each method through which consumers could cancel their subscriptions. For each such method, describe in detail:

a. how Match informed or disclosed to consumers the availability of each method;

b. each step that consumers would have to take in order to successfully cancel;

c. each representation that Match would make to consumers at each step in the cancellation process; and

d. by month, how many Customers attempted to cancel via that particular method;

e. by month, how many Customers successfully canceled via that particular method.

**RESPONSE:** Match objects to this Interrogatory because "attempted" is vague and undefined and to the extent this Interrogatory seeks Privileged Information. Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." Plaintiff's definition of "Match" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "Match," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Additionally, Match objects to this Interrogatory as it includes more than one single discrete

question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts.  Match also objects to this Interrogatory as premature and to the extent it seeks to require Match to marshal all of its evidence before trial.  Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.  Match also objects to this Interrogatory to the extent it seeks to require Match to provide information that is not in its possession, custody, or control, or that is already in Plaintiff's possession, custody, or control.  By responding to this Interrogatory, Match does not concede the relevancy of this Interrogatory nor the relevancy or admissibility of any information provided in response thereto.  The fact that information is provided in response to this Interrogatory does not mean that it is probative of any particular issue in this case.

Subject to and without waiving the foregoing objections, Match responds as follows: Match Group, Inc. does not inform, disclose to, or make representations to Match.com subscribers, because Match Group, Inc. does not own or operate Match.com (or any other dating site). Therefore, Match Group, Inc. does not have the cancelation data requested by this Interrogatory.

Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

Dated:  July 19, 2022                                  Respectfully submitted,

                                                       /s/  Angela C. Zambrano
                                                       Angela C. Zambrano
                                                       State Bar No. 24003157
                                                       angela.zambrano@sidley.com
                                                       David Sillers
                                                       State Bar No. 24072341
                                                       dsillers@sidley.com
                                                       SIDLEY AUSTIN LLP
                                                       2021 McKinney Ave, Suite 2000
                                                       Dallas, TX 75201

Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and forgoing document was served on all counsel of record via e-mail as outlined below on July 19, 2022.

Reid Abram Tepfer
rtepfer@ftc.gov
M Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov

*/s/  Angela C. Zambrano*
Angela C. Zambrano

DocuSign Envelope ID: AE951EE1-D7E3-4074-A0C8-F323B57CB9EF

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. 3:19-cv-02281-K |
| MATCH GROUP, INC., | |
| Defendant. | |

**AMARNATH THOMBRE'S VERIFICATION OF MATCH GROUP, INC.'S
RESPONSES TO PLAINTIFF FEDERAL TRADE COMMISSION'S
FIRST SET OF INTERROGATORIES**

I, Amarnath Thombre, state that I am an employee of Match Group, LLC and a CEO-appointed officer of Match Group, Inc.  I serve as the Chief Executive Officer of Match Group Americas and provide this verification of Match Group, Inc.'s ("Match") Responses to Plaintiff Federal Trade Commission's First Set of Interrogatories (the "Responses").  I further state that the Responses have been prepared by counsel for Match in consultation with me and others with knowledge of the matters involved; that the facts are based upon the business records of Match, with which I have general familiarity; and that, to the best of my knowledge and belief, all of the facts stated therein are true and correct in all material respects with the understanding that Match is continuing to research its Responses and reserves the right to supplement its Responses as authorized by the Federal Rules of Civil Procedure and any other applicable law.

I verify under penalty of perjury that the foregoing is true and correct in all material respects.

Dated:  July 19, 2022                    Respectfully submitted,

DocuSigned by:

*Amarnath Thombre*

13E40C0FBC6A4D6...

Amarnath Thombre

# EXHIBIT 3

August 19, 2022

**<u>By E-Mail</u>**

Angela C. Zambrano
Sidley Austin LLP
2021 McKinney Ave, Suite 2000
Dallas, Texas 75201
Angela.zambrano@sidley.com

Chad S. Hummel
Sidley Austin LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
chummel@sidley.com

Re:     ***FTC v. Match Group, Inc. and Match Group, LLC***, Case No. 3:19-cv-02281-K (N.D. Tex.)

Dear Ms. Zambrano:

  I am writing to address a number of serious deficiencies in Defendant Match Group Inc. ("MGI" or "Defendant")'s responses to the FTC's first discovery requests, served on June 3, 2022. Before doing so, I note that last Friday, August 12, 2022, and yesterday, August 18, 2022, MGI made a partial production of documents in response to the FTC's First Request for Production. While our review of this incomplete production is ongoing, I am contacting you now concerning the many deficiencies already identified, as outlined below, to ensure a timely resolution to these issues. Should we identify additional deficiencies during our review, I will bring those issues to your attention.

  On July 19, 2022, Defendant served the FTC with its responses and objections to the FTC's First Set of Interrogatories, First Set of Requests for Admission, and First Set of Requests for Production of Documents. Defendant has asserted invalid objections and failed to respond adequately to the FTC's First Set of Interrogatories, the FTC's First Set of Requests for Admission, and the FTC's First Set of Requests for Production of Documents. In fact, MGI has asserted invalid objections in response to all of the FTC's Interrogatories, 137 out of 143 of the FTC's Requests for Admission, and all of the FTC's Requests for Production. In numerous instances, MGI relied upon these improper objections to refuse to respond substantively to the FTC's discovery requests in blatant violation of the Federal Rules. These actions are improper and contrary to the Federal Rules and well-settled law. More importantly, the Court's time and resources will be wasted should MGI force the FTC to seek to compel discovery under Rule 37. To avoid this, the FTC demands that MGI cease its dilatory tactics

and instead exercise good faith diligence in satisfying its discovery obligations immediately. I have identified below in detail the issues requiring your immediate attention.

## I.      MGI's Invalid Boilerplate Objections

As a preliminary matter, throughout all of MGI's discovery responses, MGI asserted invalid boilerplate and general objections. As you are aware, as the party resisting discovery, MGI has the burden to justify their objections to the production of discovery. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). MGI must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). General or boilerplate objections are invalid, and the party resisting discovery must show how the requested discovery is overly broad or unduly burdensome by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller v. City of Dallas*, 303 F.R.D. at 490 (N.D. Tex. 2014).

Additionally, Federal Rule of Civil Procedure 36(a)(4) provides in pertinent part, "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Indeed, "[b]road-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection." *Brady*, 238 F.R.D. at 437. In addition, denials to requests for admission should not be made vague and evasive by the addition of qualifying language. *See XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, 2014 U.S. Dist. LEXIS 9598, 2014 WL 295053, at *4-5 (E.D. La. Jan. 27, 2014) ("These partial denials 'as written' render the responses vague and evasive. Bollinger must provide new responses that either flatly deny the portion of the request that it does not admit, or that state in detail why it cannot truthfully admit or deny the remainder, or must in good faith qualify its denials of the rest. . . . It must provide a response that complies with Rule 36(a)(4)."). "Rule 36 requires that denials be stated with specificity and 'fairly respond to the substance of the matter[.]'" *Adams Offshore, Ltd. v. OSA Int'l, LLC*, 2011 U.S. Dist. LEXIS 113538, 2011 WL 4625371, at *11 n.11 (S.D. Tex. Sept. 30, 2011) (citing FED. R. CIV. P. 36(a)(4)).

### A.  MGI's Invalid General Objections

First, MGI objects to each and every Request "to the extent that it seeks information relevant to the claims that were dismissed in the Court's March 24, 2022 Order on Match's Motion to Dismiss (the "Dismissed Claims").[1] This objection is overbroad and improper, as the FTC's requests are limited to discoverable information relevant to its remaining counts. As you are aware, the Federal Rules of Civil Procedure 26(b) sets the scope of discovery broadly. FED. R. CIV. P. 26(b)(1) ("Parties

---

[1] *See, e.g.*, MGI's Responses to FTC's First Set of Interrogatories, General Objection No. 1; MGI's Responses to FTC's First Set of Requests for Production of Documents, General Objection No. 3.

may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). Accordingly, we demand that these improper objections be removed in amended responses.

Second, Defendant generally objects to "each and every Request insofar as it seeks documents or information already obtained by Plaintiff during the FTC's prior investigation in connection with the Civil Investigative Demand served on Match in 2017 (the '2017 CID')."[2] The FTC has not requested that MGI reproduce documents it has already provided to the FTC, however. In fact, in the FTC's First Set of Interrogatories, the FTC clearly instructed MGI to identify by Bates number and production date, any document produced in connection with the 2017 CID—instead of producing. Accordingly, the FTC demands that MGI remove this improper objection and produce the previously requested log of responsive documents that have already been providing, identifying those documents by Bates number and production date.

Third, MGI objects to "each and every Request to the extent that the Request seeks confidential, trade secret, and proprietary information,"[3] yet fails even to attempt to satisfy its burden to establish that "the information sought is a trade secret or other confidential information and then demonstrate that its disclosure would cause an identifiable, significant harm." *Stone Connection, Inc. v. Simpson*, No. 4:07-cv-431, 2008 WL 1927033, at *1 (E.D. Tex. Apr. 28, 2008) (citing *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, No. 06-894-JJB-DLD, 2008 WL 566833, at *2 (M.D. La. Feb. 29, 2008)); *see also* Charles Alan Wright & Arthur R. Miller, 8 FEDERAL PRACTICE AND PROCEDURE § 2043 (1970) ("Besides showing that the information qualifies for protection, the moving party must also show good cause for restricting dissemination on the ground that it would be harmed by its disclosure."). The FTC accordingly demands that MGI either satisfy its burden or produce all documents or information improperly withheld on the basis of this objection.

### B.  MGI's Improper Objections to Definitions

MGI asserts throughout their discovery responses that certain terms are vague and undefined but fails to explain how these terms are unclear under their ordinary meaning.[4] The most striking example of this is Defendant's objection to "the definition of "Match Group, LLC" as vague, ambiguous, confusing, and overbroad."[5] Again, boilerplate objections such as this one are invalid.

As another example, in MGI's response to Interrogatory No. 3, MGI asserts an invalid objection on the basis that the term "relevant" is vague and undefined, despite using the term

---

[2] *See, e.g.*, MGI's Responses to FTC's First Set of Requests for Admission, General Objection No. 2; MGI's Responses to FTC's First Set of Requests for Production of Documents, General Objection No. 9.

[3] *See, e.g.*, MGI's Responses to FTC's First Set of Requests for Production of Documents, General Objection No. 2.

[4] *See, e.g.*, MGI's Responses to FTC's First Set of Interrogatories, Responses to Interrogatories Nos. 2, 3, 4, 5, 6, and 9; MGI's Responses to FTC's First Set of Requests for Admission, Responses to Requests No. 111; MGI's Responses to FTC's First Set of Requests for Production of Documents, Responses to Requests Nos. 1, 3, 4, 6, 8, 13, 15, 16, 19, 23, 26, 27, 28, 30, 32, and 33.

[5] *See, e.g.*, MGI's Responses to FTC's First Set of Interrogatories, Specific Objection No. 9; MGI's Responses to FTC's First Set of Requests for Production of Documents, Specific Objection No. 9.

"relevant" numerous times in its own discovery requests.[6] Further, MGI now claims that terms such as "PTR Ads"[7] or "subscriptions"[8] are vague and undefined. Absent substantiation, such claims are nothing more than improper boilerplate objections and must be removed, and MGI must respond adequately to these requests pursuant to the Federal Rules.

### C.   MGI's Refusal to Produce Information and Documents Within Its Possession, Custody or Control

Defendant has improperly limited its search for responsive information to that concerning MGI or Match.com.[9] To be clear, the FTC's discovery requests were addressed to MGI—not the other entities identified. Moreover, the Federal Rules provide that the FTC is entitled to request and receive relevant discovery relating to these entities if it is within MGI's "possession, custody, or control." FED. R. CIV. P. 34(a)(1). The requested information is unquestionably relevant. MGI has made the scope of the injunctive relief and its control of other platforms a central issue in this litigation. The FTC is accordingly entitled to seek discovery to determine whether MGI is engaging in these same law violations on the other platforms it controls.

Further, MGI plainly has custody or control of the requested information. Defendant has control over its wholly owned subsidiaries and can reasonably access or obtain the requested relevant information. In fact, MGI has previously done exactly that: in 2017, the FTC issued MGI a Civil

---

[6] See, e.g., MGI's Responses to FTC's First Set of Interrogatories, Response to Interrogatory No. 3; MGI's First Requests for Admissions to FTC, Requests for Admissions Nos. 14, 16, 18, 20, 22, 24, 26, 28, 30, 32.

[7] In MGI's response to Interrogatory No. 2, MGI objects on the grounds that "PTR Ads" is vague and undefined yet proceeds to use these same terms in its response: in the next paragraph MGI states that "…Counts I and II relating to PTR Ads… were dismissed."

[8] See, e.g., MGI's Responses to FTC's First Set of Interrogatories, Response to Interrogatory No. 5.

[9] See, e.g., MGI's Responses to FTC's First Set of Interrogatories, Specific Objection No. 2 and MGI's Responses to FTC's First Set of Requests for Production of Documents, Specific Objection No. 2 (Match will construe the terms "Match," the "Company," and "You" to refer only to Match Group, Inc.); MGI's Responses to FTC's First Set of Interrogatories, General Objection No. 1 (objecting generally to "each and every Interrogatory to the extent that it seeks documents or information from an entity or dating site not yet named in the present litigation in any operative pleading, including but not limited to Match Group, LLC, OKCupid, Plenty of Fish, and Tinder"); MGI's Responses to FTC's First Set of Interrogatories, General Objection No. 3 (objecting to "each and every Interrogatory to the extent that it seeks information that is beyond the scope of Plaintiff's claims, including, but not limited to, documents and information related to Plaintiff's Dismissed Claims, and documents and information related to entities or dating sites that are not yet party to, or otherwise related to, this litigation, such as Match Group, LLC, OKCupid, Plenty of Fish, and Tinder. Match further objects to each and every Interrogatory to the extent that it seeks documents and information that are not within Match's possession, custody, or control, including by seeking documents and information from and related to entities that are not named as parties to this litigation."); MGI's Responses to FTC's First Set of Requests for Production of Documents, Responses to Requests Nos. 3, 4, 10, 11, 16, 18, 20–22, 26, 27–31 and 33 (objecting to the definitions of "Match," the "Company," "You," and "Customer" because these definitions concern "other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder"").

Investigation Demand requesting information concerning Match.com. MGI produced thousands of relevant documents and responded substantively to interrogatories concerning Match.com despite MGI's current contention that such documents are outside of its possession, custody, or control.[10] MGI has provided no explanation for why it is now taking a contradictory stance in litigation that it does not have possession, custody, or control of information concerning another platform Match Group, LLC controls, Tinder, or other dating platforms it controls.

### D.  MGI's Blanket Claims of Privilege

In several instances throughout its discovery responses, MGI objects to discovery requests "to the extent that it seeks information protected by the attorney-client privilege, the work-product doctrine, the right to privacy, trade secret protection, or other privileges recognized in law or equity."[11] A blanket claim of privilege is insufficient to establish the existence of a privilege and to meet MGI's burden to demonstrate "identifiable, significant harm" would result from disclosure. *Stone Connection,* 2008 WL 1927033, at *1. The FTC demands that that these improper objections be withdrawn and proper responses be submitted. Should MGI fail to meet its burden to establish that these privileges apply, it risks waiving these privileges.

### E.  MGI's Improper Assertion that Defendant's Willingness to Enter into an Unspecified Stipulation Relieves MGI of its Discovery Obligations

In response to many of the FTC's discovery requests, MGI responds, in part, with an entirely inappropriate and unpersuasive assertion that the discovery requests are not relevant or proportional to the needs of the case because of MGI's alleged readiness to enter into a binding stipulation and that "Match could never and would never, and Match.com would never, engage in the conduct challenged in . . . the Complaint, to which this discovery relates."[12] Despite MGI's and Match.com's purported interest in entering into some kind of settlement or injunction, whatever that might be, MGI is required to fulfill its discovery obligations. Moreover, Match has not—and could not—point to any caselaw supporting the notion that the willingness to settle on some unspecified terms relieves a party of their

---

[10] The FTC further notes that, to the extent that MGI is now contending that it does not have possession, custody, or control of documents relating to Match.com, this representation is inconsistent with MGI's earlier representations to another federal court that it operates Match.com. *See* Brief for Match Group, Inc. as Amicus Curiae, *Epic Games, Inc., vs. Apple Inc.*, Nos.21-16506 & 21-16695 (9th Cir.) (Nov. 29, 2021) ("Match Group, Inc. ("Match") is a Dallas, Texas-based online dating service which operates dating web sites in over 50 countries. Originally founded in 1993, Match operates www.match.com and mobile apps.").

[11] *See, e.g.*, MGI's Responses to FTC's First Set of Interrogatories, General Objection No. 4; MGI's Responses to FTC's First Set of Requests for Production of Documents, General Objection No. 6; MGI's Responses to FTC's First Set of Requests for Admission, General Objection No. 5.

[12] *See* MGI's Responses to FTC's First Set of Interrogatories, Responses to Interrogatories Nos. 1–7; MGI's Responses to FTC's First Set of Requests for Production of Documents, Responses to Requests Nos. 2, 6, 14, 15, 17, 19, 25, 26, 28, 31, 34, and 36; MGI's Responses to FTC's First Set of Requests for Admission, Responses to Requests Nos. 41–46, 53–77, and 80–125.

EXH. 3

discovery obligations. Accordingly, the FTC demands that this improper objection be removed from MGI's responses and that any documents or information withheld on this basis be produced.[13]

### F.  MGI's Improper Assertion that Injunctive Relief is Moot

MGI has refused to produce documents on the basis that conduct has permanently ceased and the issue is moot.[14] In fact, the purpose of discovery is to assess exactly that claim and whether it is true—MGI's unilateral and self-serving claim is insufficient to establish this fact. Further, the requested documents and information is relevant as it relates to the practices described in the FTC's complaint. Further, the MGI's chargeback behavior is "likely to recur," in part, because it has never stopped—MGI continues to engage in similar practices across its other dating websites, including Plenty of Fish, Tinder, and OkCupid. Moreover, as the Court found in its Order concerning Match's Motion to Dismiss, even ceased practices can be the basis for an injunction in the Fifth Circuit.

### G.  MGI's Invalid Objections on Vagueness, Ambiguity, Confusion, Relevancy, Proportionality, Undue Burden, Fishing Expedition

MGI asserts a slew of invalid boilerplate objections throughout its discovery responses claiming that the FTC's discovery requests are vague, ambiguous, confusing,[15] irrelevant, not proportional to the needs of the case, unduly burdensome,[16] and/or a fishing expedition.[17] However, MGI fails to specify, provide support, or engage in an analysis to support any of its claims. "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490. As such, MGI's claims are nothing more than improper boilerplate objections and must be removed, and any information or documents withheld on the basis of such objections must be produced.

---

[13] With respect to MGI's assertions that "Match… and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates," this contradicts MGI's claim that it does not have control over its wholly owned subsidiaries, including Match Group, LLC and the website Match.com. We demand that MGI elaborate how it intends to fulfill its promise to bind Match.com into an injunction, when, as Defendant's repeatedly assert, MGI does not own or operate MGLLC or the dating platform Match.com.

[14] *See, e.g.*, MGI's Responses to FTC's First Set of Interrogatories, Responses to Interrogatories Nos. 1–7; MGI's Responses to FTC's First Set of Requests for Production of Documents, Responses to Requests Nos. 2, 6, 14, 15, 17, 19, 25, 26, 28, 31, 34, and 36; MGI's Responses to FTC's First Set of Requests for Admission, Responses to Requests Nos. 41–46, 53–77, and 80–125.

[15] *See, e.g.*, MGI's Responses to FTC's First Set of Interrogatories, General Objection No. 5; MGI's Responses to FTC's First Set of Requests for Production of Documents, General Objection No. 7; MGI's Responses to FTC's First Set of Requests for Admission, Responses to Requests Nos. 1–39 and 126-143.

[16] *See, e.g.*, MGI's Responses to FTC's First Set of Interrogatories, General Objections Nos. 1–3; MGI's Responses to FTC's First Set of Requests for Production of Documents, General Objections Nos. 3–5; MGI's Responses to FTC's First Set of Requests for Admission, General Objection No. 3.

[17] *See* MGI's Responses to FTC's First Set of Requests for Production of Documents, Responses to Requests Nos. 1, 3, 8, 9, 10, 11, 13, 14, 16, 18, 21–27, 30, and 32–37; MGI's Responses to FTC's First Set of Requests for Admission, Responses to Requests Nos. 1–29.

## II.    MGI's Failure to Timely Produce Documents

Lastly, MGI has failed to produce relevant requested documents in a timely manner. *See* FED. R. CIV. P. 34(B)(2)(b) (stating that the production of responsive documents "be completed no later than the time for inspection specified in the request or another reasonable time specified in the response"). Here, MGI requested an expedited discovery plan, then proceeded to request multiple extensions of their deadline to respond to the FTC's discovery requests and has largely stonewalled the FTC's attempt to receive relevant and critical information and documents.

The FTC agreed to MGI's requested discovery extension in which MGI agreed to produce responsive documents by July 31, 2022. However, contrary to its commitment to produce, and even though MGI obtained an agreed-upon extension only by agreeing to produce documents by July 31, 2022, MGI ignored its obligations and failed to produce documents in a timely manner. In fact, MGI waited until after its production deadline to schedule the August 3rd meeting to discuss the FTC's revisions to MGI's proposed protective order. On August 10, 2022, the FTC sent MGI a letter addressing MGI's unjustified delay in complying with its discovery obligations. In continued efforts to avoid unjustified delay caused by MGI's failure to produce or negotiate, the FTC adopted MGI's ESI Order with proposed revisions that reflected our discussion during our August 3rd meeting. MGI finally produced documents on August 12, 2022, almost two weeks after the extended deadline.

At this time, MGI has yet to identify what documents it has yet to produce pursuant to the FTC's discovery requests and when this production will be completed. Accordingly, the FTC hereby demands that the MGI immediately produce all remaining responsive documents and identify any requests for which documents or information are being withheld pursuant to any objection or privilege. Further, the FTC demands that future discovery obligations be responded to within the timeframe outlined in the Federal Rules.

### Conclusion

MGI has not and cannot substantiate the invalid objections outlined above. Accordingly, the FTC demands that Defendant withdraw these meritless objections and provide full and complete responses, as required by the Federal Rules. The FTC further demands that MGI produce any responsive documents or information currently withheld due to the above outlined improper objections. Lastly, the FTC demands that MGI amend its responses to specify whether any documents are withheld based on any objection or privilege.

We demand that all deficiencies outlined in this letter be cured within five days. We intend to discuss with you the deficiencies outlined in this letter at the call set to take place on August 24, 2022. In the event that MGI refuses to provide adequately revised discovery responses by the above deadline,

the FTC will have no choice but to file a motion to compel, and our discussion on those topics at our August 24, 2022 call and this letter shall serve as the meet and confer for that motion.

Sincerely,

*/s/ Sarah Zuckerman*
Reid Tepfer
M. Hasan Aijaz
Sarah Zuckerman
John R. O'Gorman
Erica Rollins Hilliard
Federal Trade Commission
Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201

EXH. 3

# EXHIBIT 4

United States of America
FEDERAL TRADE COMMISSION
Southwest Region

Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201

August 25, 2022

**By E-Mail only**

Chad S. Hummel
Sidley Austin LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
chummel@sidley.com

Angela C. Zambrano
Sidley Austin LLP
2021 McKinney Ave, Suite 2000
Dallas, Texas 75201
Angela.zambrano@sidley.com

Re:   *FTC v. Match Group, Inc. and Match Group, LLC*, Case No. 3:19-cv-02281-K (N.D. Tex.)

Dear Mr. Hummel:

I am writing in an effort to resolve the discovery dispute between the parties as identified in Match Group, Inc.'s ("MGI") letter of August 18 ("MGI's Letter"), the FTC's letter of August 19 ("FTC's Letter"), and as discussed during our meet-and-confer call on August 24. Below, I first propose a fair and reasonable resolution to the purported deficiencies identified in MGI's Letter, which should obviate the need to involve the Court on those issues. I then discuss Match's ongoing refusal to address its discovery deficiencies. Finally, I address your assertion that a second conference call is required for the FTC to satisfy its meet and confer obligation before filing a motion to compel.

### A.  The FTC's Proposed Resolution of the Purported Discovery Deficiencies Identified by MGI

The FTC has satisfied its discovery obligations under the Federal Rules, and MGI's claims about purported deficiencies are without merit. Despite this, the FTC is willing to supplement its responses to satisfy your concerns. As I stated yesterday, the FTC is committed to amending its responses within two weeks of our meet and confer and will provide them no later than September 7, 2022. Below, I detail the FTC's plans for supplementing its responses to MGI's Requests for Production ("RFPs"), Interrogatories, and Request for Admission.

EXH. 4

*RFPs*

Although the FTC has properly objected to many of the RFPs, the FTC has conducted a diligent search for responsive documents and is not withholding any non-privileged non-work product documents that are responsive and relevant to these requests except where explicitly stated in our responses. The FTC produced all such documents that were nonconfidential last Friday, Aug. 19 and has produced today all confidential documents subject to the stipulated protective order in this case. In addition, the FTC will be producing additional documents relating to Request 17. As drafted, this request was unintelligible because it asked for complaints about Count V, not the practices described in the Count V. The FTC can produce additional complaints in response to the new question propounded in your August 18 letter under the guise of clarifying Request 17.

*Interrogatories*

The FTC will amend its interrogatory responses to add additional details and cites to specific documents, by Bates number, as described below:

- Regarding Interrogatories 1 and 7: These interrogatories seek facts and evidence supporting the FTC's contentions. Contrary to your assertion that "the FTC doesn't point to anything specific at all," the FTC's responses identified facts, drawing on specific language found in documents MGI produced in response to the FTC's 2017 Civil Investigative Demand. However, we will be amending these interrogatory responses to cite by Bates number to the specific documents referenced.

- Regarding Interrogatory 2: Contrary to your assertions, the FTC has responded to this interrogatory by identifying specific facts that render Match.com's cancellation process not simple under the Restore Online Shoppers' Confidence Act. However, the FTC will amend by identifying, by Bates number, specific documents supporting the facts identified in this interrogatory response.

- Regarding Interrogatory 3: As you admitted on our August 24 discussion, MGI must submit revised data for the FTC to provide current figures relating to the consumer injury caused by MGI's practices. However, as we discussed, the FTC will amend to describe with greater specificity the methodology the FTC intends to use in its calculation of consumer harm.

- Regarding Interrogatory 5: This interrogatory calls for documents supporting the FTC's contention that Match.com's cancellation process was not simple. While we provided an explanation of our contentions regarding Match.com's cancellation process, we will point to publicly available guidance and the specific documents produced by MGI we refer to in our responses that show how the process was not simple.

As I stated in our call, the FTC reserves the right to amend and supplement its responses to MGI's interrogatories. As the FTC has advised MGI, these contention interrogatories are premature because, among other things, MGI served them before it had responded to the FTC's discovery requests. Moreover, the interrogatories relate to documents that the FTC has requested through discovery and which Match continues to improperly withhold.

EXH. 4

Finally, regarding your concerns regarding the FTC's method of verifying its interrogatory responses, the FTC's responses in this case were submitted consistent with its ordinary practices and are consistent with its obligations under the federal rules. *See Johns v. United States*, No.Civ.A. 96-1058, 1997 WL 732423, at *2 (E.D. La. Nov. 21, 1997) (holding that Assistant United States Attorney answers to interrogatories meet requirements of Rule 33(a) because AUSA is permissible agent). You indicated that the FTC has provided its responses with a verification in addition to a digital signature in your past personal experiences with the agency, notably in the *DirecTV* litigation, but we were unable to identify examples of the FTC using the methods you reference in that litigation.

*Requests for Admission*

The FTC will review and amend where appropriate its responses to MGI's Requests for Admission to Requests 1 through 6 to and provide additional explanation concerning our inability to respond. Additionally, as discussed, in response to Requests 13–14, 17–18, 21–22, 25–26, and 29–30, we are prepared to state that MGI has represented to the FTC that Match.com has other cancellation mechanisms, although these representations are inadequate for the FTC to admit these RFAs.

## B.  MGI's Deficient Discovery Responses

We reiterate our demand that MGI remedy the many deficiencies outlined in the FTC's Letter. Among the most egregious is its refusal to search for and produce responsive documents relevant to Counts III and IV because it contends those counts are somehow moot and because it is willing to enter into some kind of unspecified stipulation. MGI cannot in good faith contend that its belief about the merits of this litigation relieve MGI of its discovery obligations, and it has pointed to no caselaw suggesting otherwise. Further, while MGI has contended that many of the FTC's RFPs relate only to Counts I and II, which have been dismissed, it failed to identify any such requests. In fact, the FTC's discovery requests relate to issues that are still live in this case.

MGI's continual delay and refusal to produce relevant documents appear to be calculated to deny the FTC a meaningful opportunity to conduct discovery on all of its counts. If MGI will not commit to curing its discovery deficiencies, we will have no choice but to seek relief from the Court, including an extension of the discovery deadlines to account for MGI's dilatory conduct.

## C.  The FTC Has Satisfied its Meet and Confer Obligations

As you know, the FTC has gone to great lengths to resolve our discovery disputes without court involvement. The FTC sent you a letter last week outlining in detail MGI's deficiencies. Moreover, though not required by the local rules, we afforded you an opportunity to discuss those issues on our August 24 conference call. You scheduled a 90-minute conference call before the exchange of deficiency letters with no statement concerning what was to be discussed or any limitation of topics. Your attempts to unilaterally limit the discussion topics after the fact was improper and a transparent effort to delay the resolution of this dispute.

During our August 24 call, you requested a second call to discuss the issues outlined in the FTC's Letter. However, you further stated unequivocally that MGI would not produce additional documents regardless of the FTC's concerns. Given this representation, we believe that further discussion would be of limited value and only serve to delay. Nevertheless, we are willing to discuss these issues with you further. On the call, you stated that you were unavailable to discuss these issues except at Midnight CT this Friday; 8 a.m. CT this Saturday; and 5:30 p.m. next Monday. These times are unacceptable and do not represent a good-faith effort to schedule a call to address our concerns. We

3

are offering a broad availability of time to discuss these issues during normal business hours. Specifically, we would be available to discuss at a mutually agreeable time this Friday or next Monday. If you wish to discuss on these dates, please let us know times that you are available as soon as possible so that we can schedule this call.

Sincerely,

*/s/   Reid Tepfer*
Reid Tepfer
M. Hasan Aijaz
Sarah Zuckerman
John R. O'Gorman
Erica Rollins Hilliard
Jason C. Moon
Federal Trade Commission
Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201

4

EXH. 4

# EXHIBIT 5



SIDLEY AUSTIN LLP
2021 MCKINNEY AVENUE
SUITE 2000
DALLAS, TX 75201
+1 214 981 3300
+1 214 981 3400 FAX

+1 214 981 3405
ANGELA.ZAMBRANO@SIDLEY.COM

AMERICA  •  ASIA PACIFIC  •  EUROPE

September 1, 2022

**Via Email**

M. Hasan Aijaz
Federal Trade Commission
1999 Bryan St Ste 2150
Dallas, TX 75201

Re:    *FTC v. Match Group, Inc. et al.*, Case No. 3:19-cv-02281-K (N.D. Tex.)

Counsel:

I write on behalf of Match Group, Inc. ("MGI") to memorialize our understanding of the discussions on our August 29, 2022 call (the "August 29 Call") with the FTC about the FTC's August 19, 2022 letter to MGI (the "August 19 Letter"). As we communicated during the August 29 Call, we think it would be beneficial to confer further on an individual discovery request basis, rather than on an objection basis.

## A.    MGI's Objection about Information Relevant to Dismissed Claims

The FTC complained in the August 19 Letter and on the August 29 Call about MGI's general objection to discovery requests to the extent that the requests seek information relevant to Counts I and II, which the Court dismissed with prejudice in its March 24, 2022 Opinion and Order, Dkt. 86. The FTC asserted that such objection is overbroad and improper because the FTC's requests are limited to discoverable information relevant to its remaining counts.

At the outset, MGI explained that the FTC's claim that its requests are limited to discoverable information relevant to its remaining counts is simply not true. As an example, after making that representation in its August 19 Letter, the FTC complains in a subsequent section of the August 19 Letter about MGI's objection to the term "PTR Ads" as vague and undefined. As the FTC knows, anything PTR-related is unquestionably related to Counts I and II, which the Court dismissed with prejudice. That example alone demonstrates how the FTC's discovery requests are not limited to its remaining counts.

On the August 29 Call, MGI explained its position that any documents relevant *only* to Counts I and II, which have been dismissed with prejudice, are wholly improper. MGI also represented to the FTC that it is not withholding documents merely because they are related to Counts I and II, if such documents are otherwise responsive to the requests for which MGI agreed

Sidley Austin (TX) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

EXH. 5

# SIDLEY

Page 2

to produce documents.  Although MGI does not believe that doing so is necessary in light of our conversation and this letter, MGI will amend its responses to make this position clear.

**B.      MGI's Objection about Documents or Information Already Produced to the FTC During the CID**

The FTC then discussed its concern in the August 19 Letter and on the August 29 Call about MGI's general objection to requests insofar as they seek documents or information already obtained during the CID.  MGI repeatedly explained that the parties' ESI Order—filed on August 15, 2022 (well after MGI served its discovery responses on July 19, 2022) and issued by the Court mere hours before the August 29 Call—provides, "The parties need not re-produce in discovery documents that were already produced to the FTC in response to the FTC's CID.  Instead, the parties will refer to the bates number of the relevant documents."  Dkt. 132 at 4.  MGI assured the FTC that it fully intends to comply with the ESI Order, as agreed by the parties and ordered by the Court, which MGI believes moots the FTC's concern.  Following MGI's attempted reassurance to the FTC, the FTC curtly responded, "Nope, let's move on."  Despite the FTC's apparent disinterest in resolving this issue, MGI will amend its responses to make this position clear now that the parties agreed to an ESI Order, which has been entered by the Court.

**C.      MGI's Objection to the Production of Confidential, Trade Secret, and Proprietary Information Without a Protective Order**

The FTC asserted in the August 19 Letter that MGI's objection to discovery requests "to the extent that [such request] seeks confidential, trade secret, and proprietary information" is improper because MGI has not attempted to satisfy its burden to establish that the information sought is a trade secret or other confidential information.

However, the FTC's complaint in the August 19 Letter is misleading.  MGI actually objected to the extent a request sought such information, without the protection of an enforceable protective order.  MGI made clear that it would "not produce any documents or provide any information in response" until it could "ensure the protection of its confidential information and trade secrets."  As the FTC is aware, MGI served its discovery responses before the parties had agreed to a Protective Order.  MGI made its first production of non-confidential documents on August 12, 2022, while the parties were negotiating the terms of a Protective Order.  Then, after the parties reached agreement and filed the Protective Order with the Court on August 15, 2022, Dkt. 127, MGI made its second production of confidential documents on August 18, 2022.  The Court then entered the Protective Order on August 29, 2022, Dkt. 131.  To confirm, MGI is not withholding documents or information on the basis that they are confidential, trade secret, or proprietary, as there is now a Protective Order.  MGI will amend its responses to make that clear now that a Protective Order has been entered.

# SIDLEY

Page 3

On the August 29 Call, the FTC did not actually address the general objection to confidentiality that it included in the August 19 Letter. Rather, the FTC veered from the August 19 Letter to complain that MGI had allegedly over-designated documents in its production by "mass designating" documents as confidential.[1] MGI explained that the parties had agreed on a different process in the Protective Order to meet and confer on documents that a party believes is improperly designated, and that the FTC needs to follow that process. Additionally, and for the avoidance of doubt, MGI explained that it would not withdraw its general objection in the August 19 Letter.

### D.    MGI's Objections to Certain Terms as Vague and Undefined

The FTC complained in the August 19 Letter and on the August 29 Call that MGI objected to certain terms as vague and undefined, including "Match Group, LLC," "Relevant," "PTR Ads," and "subscriptions." In response, MGI emphasized that, while MGI objected to certain words or phrases as vague and undefined to make clear that MGI was uncertain as to the scope of the FTC's request, in each instance, MGI used its best understanding of each vague and undefined term in answering the discovery request. In no instance did MGI refuse to respond to a discovery request on this basis alone, which is consistent with how parties are supposed to approach discovery requests that use vague or ambiguous words. *See, e.g.*, *Squires v. Toyota Motor Corp.*, No. 4:18-cv-00138, 2021 WL 1930721, at *5 (E.D. Tex. May 13, 2021) (explaining party obligated to respond to requests using ordinary definitions of phrases).

- As to "Match Group, LLC," MGI explained that it does not understand why the FTC finds MGI's objection to the definition of Match Group, LLC so problematic. That term is used in only one discovery request (Request for Production No. 10), and MGI agreed to "conduct a reasonable search for documents sufficient to show the operation of Match.com" as to that Request for Production. Moreover, MGI explained that the FTC's definition *is* confusing because it includes "assumed names, prior names, and predecessor entities, including Match.com, LLC," and MGI is not sure what the FTC means by "assumed names, prior names, or predecessor entities" (other than Match.com, LLC). MGI asked the FTC to sharpen those terms, and the FTC flatly refused.

- As to "Relevant," MGI explained that it does not understand why the FTC is so troubled by MGI's objection to the word "relevant" as vague and undefined in Interrogatory No. 3, when MGI still provided (subject to its objections) a substantive response almost five pages long to that Interrogatory. Nevertheless, MGI explained that the term "relevant" may mean something different to MGI and the FTC because it is a subjective word. MGI also explained that it is not intentionally withholding responsive information based on its

---

[1] To be clear, MGI did not "mass designate" documents. As the FTC is aware, MGI has also produced non-confidential documents.

# SIDLEY

Page 4

vagueness objection.  Rather, it used its best understanding of "relevant" in providing its detailed narrative response.

- As to "PTR Ads," the FTC did not address MGI's objection to this term as vague and undefined on the August 29 Call.  As with the other definition-related objections the FTC raised, it is MGI's position that the FTC is wasting the parties' time and energy complaining about this objection.  The FTC defined "Ad" but not "PTR" or "PTR Ad."  But in any event, discovery into any PTR-related issues would relate only to Counts I or II, which the Court has dismissed with prejudice.  MGI simply is not going to engage in discovery on Counts I and II that have been dismissed with prejudice.

- As to "Subscriptions," the FTC did not address MGI's objection to this term as vague and undefined on the August 29 Call.  But MGI stands on its objection that "subscription" is vague and undefined—there are various types and lengths of subscriptions, and the FTC did not specify.  But even if the term were not vague and undefined, MGI would still stand on its other objections to that Interrogatory (No. 5) about the Guarantee and Chargeback policies, including  that MGI never offered any kind of "Match Guarantee" or maintained a Chargeback policy and that Match.com has permanently ceased such practices in any event.

Additionally, MGI noted on the August 29 Call that, although MGI objected to certain terms within the FTC's discovery requests as vague, the FTC objected to *entire* discovery requests served by MGI as vague, without any explanation as to why such requests are vague.  *See, e.g.*, Pl.'s Resp. to Def.'s First Set of Interr. at 9 ("**The FTC also objects to this Interrogatory** [No. 6] **as it is** overbroad, **vague**, unduly burdensome, and not proportional to the needs of the case.").  The FTC would not engage in any such comparative discussion, and responded that it was "not going into that" and to "move on."  The FTC also refused to respond when MGI asked whether the FTC thought a different standard applied to the FTC.  Such inappropriate behavior is consistent with the FTC's behavior throughout this litigation and discovery,[2] in which the FTC acts as if it subject to a different standard than MGI, although we are both civil litigants in federal district court.

---

[2] As another example of the FTC's pattern of inappropriate behavior and apparent belief that it is subject to a different set of discovery rules than MGI, the FTC entirely refused to answer various discovery requests that it claimed were vague and ambiguous, which is unquestionably improper.  *See, e.g.*, *Squires*, 2021 WL 1930721, at *5 (explaining party obligated to respond to requests using ordinary definitions of phrases); Pl.'s Resp. to Def.'s First Set of Requ. for Adms. at 16-17 (objecting that terms were vague and ambiguous and refusing to answer RFAs 47-49).  This is in stark contrast to MGI, which used its best understanding of each vague and undefined term in answering the discovery requests and which did not refuse to respond to a discovery request on that basis alone.  *See supra*.

# SIDLEY

Page 5

### E. MGI's Search for Responsive Information Limited to MGI or Match.com

The FTC asserted in the August 19 Letter and on the August 29 Call that MGI improperly limited its search for responsive information to that concerning MGI or Match.com. When MGI asked the FTC to explain how discovery into any other dating platform would be relevant when there is not a single allegation in the live Complaint about a dating platform other than Match.com, the FTC vaguely referred to its discovery responses that referenced other dating platforms and refused to point to any specific documents or interrogatory responses. MGI notes that the FTC's position on the call is inconsistent with its August 19 Letter, which stated that the FTC needs discovery "to determine *whether* MGI is engaging in these same law violations on the other platforms." Ltr. at 4 (emphasis added). But discovery does not warrant a fishing expedition into all of MGI's operations that have no involvement with the allegations in the FTC's live Complaint (which solely relate to Match.com). Furthermore, as MGI has made it abundantly clear to the FTC, MGI is not engaging in any of the complained of acts on any site. It is a holding company. Just as Match.com is owned and operated by MGL, other dating sites are owned and operated by separate entities as well.

Discovery into any other dating platform is simply not relevant when the FTC has challenged only Match.com practices. Moreover, any motions requesting leave to join parties or to amend pleadings were due May 13, 2022. *See* Scheduling Order, Dkt. 100 ¶ 5.

On the August 29 Call, the FTC claimed that these other platforms are a "central issue" in the case *because* MGI argues that they are not relevant. That argument flips discovery on its head; the FTC must show some basis for its allegations before going on a fishing expedition. Thus, MGI confirmed that it stands on its objections to limit its search for responsive information to that concerning MGI or Match.com.[3]

### F. MGI's Privilege Objections

The FTC complained in the August 19 Letter that MGI objected to certain discovery requests "*to the extent* that [a request] seeks information protected by the attorney-client privilege, the work-product doctrine, the right to privacy, trade secret protection, or other privileges recognized in law or equity." The FTC demanded that such objections be withdrawn and suggested that, should MGI fail to meet its burden to establish that these privileges apply, MGI risks waiving these privileges.

---

[3] Because documents about other companies or dating platforms are not relevant, MGI has not engaged in any specific analysis of which (if any) responsive documents would be outside of MGI's possession, custody, or control. However, the fact that the FTC is requesting documents related to dating platforms that MGI does not control suggests that responsive documents that might exist may be outside of MGI's possession, custody, or control. Thus, MGI stands by its objection.

# SIDLEY

Page 6

The FTC did not discuss this topic on the August 29 Call. However, to be clear, the FTC's complaint that MGI will not produce privileged documents or information, to the extent they exist, is nonsensical. The 2-page opinion that the FTC cites also does not stand for such proposition or even relate to the alleged deficiency. In *Stone Connection, Inc. v. Simpson*, No. 4:07-CV-431, 2008 WL 1927033, at *1 (E.D. Tex. Apr. 28, 2008), the parties disputed whether the plaintiff had met its burden for the court to issue a protective order regarding trade secrets and/or confidential and proprietary information. Further reflecting the absurdity of this purported deficiency, the FTC's own Responses to MGI's First Requests for Production similarly object to the "RFPs insofar as these seek, directly indirectly, information subject to the attorney client privilege, deliberate process privilege or work production doctrine." Pl.'s Resp. to Def.'s First Requ. for Prod. at 2.

MGI will not withdraw its privilege objections, nor is it somehow waiving privilege by refusing to withdraw its privilege objections. The FTC's assertions to the contrary are nothing short of absurd, and MGI assumes that is why the FTC failed to address this topic on the August 29 Call.

## G.     MGI's Objections Regarding Permanently Discontinued Practices and Its Willingness to Enter into a Binding Stipulation

The FTC complained in the August 19 Letter and on the August 29 Call about MGI's objection to discovery requests on the basis that the conduct at issue in Counts III and IV of the Complaint has permanently ceased and that these issues are moot because of MGI's readiness to enter into a binding stipulation. As MGI has repeatedly indicated to the Court in briefing, to the FTC in multiple letters, and to the FTC via discovery responses including sworn interrogatories, "[MGI] could never and would never, and Match.com would never, engage in the conduct challenged in . . . the Complaint, to which this discovery relates." *See* Dkt. 134 at 74-75 (Letter), 77 (Letter), 108-09 (Verification).

At the outset, MGI explained that it would *welcome* discovery from the FTC about whether the conduct had ceased. In fact, had the FTC served an interrogatory asking MGI to, for example, describe any plans to reinstate the Guarantee or Chargeback practices, MGI would have answered them—under oath—by explaining to the FTC (yet again) that those practices have been *permanently* discontinued, and that neither MGI, nor Match Group, LLC, nor Match.com will engage in those practices in the future on Match.com.[4] In other words, the FTC would have received exactly the "evidence" of permanent discontinuance that it claims does not exist. But the FTC failed to ask that question (or any other discovery request narrowly tailored to the discontinuance question), which would have resolved this issue once and for all. Rather, the FTC's discovery requests were admittedly much broader. The FTC claimed that these broad discovery requests were justified because no binding or enforceable stipulation currently exists, and MGI's

---

[4] To be clear, as MGI has told the FTC multiple times, MGI is incapable of engaging in the challenged practices because it does not control Match.com (or any other dating site).

# SIDLEY

Page 7

claims of discontinuance are unsupported "assertions," not evidence. However, as MGI explained above and on the call, MGI *welcomes* discovery into whether the discontinued practices are currently being used or if there are any plans to reinstate them (there are not). But those are not the discovery requests that the FTC served. Instead, the FTC demands mountains of unnecessary and burdensome discovery going back almost *ten years* (to January 1, 2013), just so it can *attempt* to prove (though it cannot) that it is entitled to an injunction that MGI *is already offering*. This is the very definition of overly broad and unduly burdensome. As MGI said on the call, the FTC just won't take "yes" for an answer.

### H.      MGI's Objections on Vagueness, Ambiguity, Confusion, Relevancy, Proportionality, Undue Burden, and Fishing Expedition

The FTC generally alleged in the August 19 Letter and on the August 29 Call that MGI had asserted throughout its discovery responses invalid boilerplate objections on vagueness, ambiguity, confusion, relevancy, proportionality, undue burden, or fishing expedition. As MGI explained on the August 29 Call, it is not withholding documents based on these objections unless MGI's response to a specific request explicitly says so by limiting the agreement to produce in some way. For example, in response to the FTC's Request for Production No. 11, which seeks, "All Documents You contend tend to show that Match Group[,] Inc. does not or has not operated Match.com, OKCupid, Plenty of Fish, and Tinder," MGI objected and then responded that it would "conduct a reasonable search for documents sufficient to show the operation of Match.com." Def. MGI's Resp. and Obj. to Pl. FTC's First Set of Requ. for Prod. of Docs. at 21-22.

However, it was difficult to understand the FTC's position given that it did not want to discuss the objections on a request-by-request basis. If the FTC believes that MGI improperly objected and withheld documents or information on any such basis, MGI respectfully requests that the FTC explain such deficiencies specifically, in relation to a particular discovery request. As is, MGI is unable to respond to the FTC's unidentified, unsubstantiated, and unsupported complaints.

### I.      MGI's Production of Documents

The FTC complained in the August 19 Letter about MGI's purported failure to timely produce documents, despite MGI's production of over 23,000 documents in this litigation alone, after producing hundreds of thousands of documents during the CID. The FTC did not discuss this topic during the August 29 Call, and MGI has explained on multiple previous occasions why the FTC's assertions are inaccurate. MGI assumes that the FTC no longer has any concerns about this topic and repeats its prior request that the FTC stop misrepresenting the record on this issue.

* * *

As you are aware, we did not discuss any particular discovery request on the August 29 Call. As we communicated to you during and after the August 29 Call, we think it would be

# SIDLEY

Page 8

beneficial to confer further on an individual discovery request basis, rather than on an objection basis.  We look forward to your prompt response.

Sincerely,

*/s/  Angela C. Zambrano*
Angela C. Zambrano
Partner

cc:     Chad S. Hummel
        Chelsea A. Priest
        Tayler G. Bragg

EXH. 5

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>MATCH GROUP, INC., a corporation,<br><br><br>    Defendant. | Case No. 3:19-cv-02281-K<br><br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff the Federal Trade Commission ("FTC"), by its undersigned attorneys, submits to Defendant Match Group, Inc. ("Match") the following First Request for Production of Documents (the "Request").

## INSTRUCTIONS

A.      These instructions and definitions should be construed to require Request responses based upon your actual or constructive knowledge, information available to you, as well as that of your attorneys, accountants, consultants, employees, independent contractors representatives, agents, and other acting on your behalf. This Request must be responded to by the party to whom they are directed within thirty (30) days of the date of service, as defined by Rule 6 of the Federal Rules of Civil Procedure. For any specific document or range of documents You reference in response to this Request that has been or will be produced to the FTC, identify such document(s) by the associated Bates number or other identifying information in Your response. In construing this Request, the present tense includes the past and future tenses, the singular includes the plural, and the plural includes the singular.

B.      This Request covers Documents and information in Your possession or under

Your actual or constructive custody or control, including Documents and information in the

possession, custody, or control of Your attorneys, accountants, directors, officers, employees,

service providers, and other agents and consultants, whether or not such Documents or

information were received from or disseminated to any person or entity

C.      If, in responding to this Request, You encounter any ambiguities, Your response

shall set forth the matter deemed ambiguous and the construction used in responding.

D.      This Request is continuing in nature, up to and during trial. If, after You serve

Your response, You become aware of additional or corrective information or material responsive

to this Request, You must supplement Your Request response and promptly produce the

responsive material or information to Plaintiff in accordance with Federal Rule of Civil

Procedure 26(e).

E.      The relevant time period for this Request shall be from January 1, 2013, to the

completion of this action, unless otherwise specified. If the response to any Request is different

for different periods within the applicable time period, provide a complete response for each time

period and designate the specific time period for which the response is applicable.

F.      If you are withholding a document or information, provide the basis for

withholding, including:

1.      If you are withholding the document or information under claim of privilege

or the work product doctrine, provide the information set forth in Fed. R. Civ.

P. 26(b)(5), including the type of document, the general subject matter of the

document, including, where appropriate, the author, addressee, custodian, and

any other recipient of the document, and where not apparent, the relationship

of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information claimed to be protected, will enable the FTC to assess the applicability of the privilege or protection claimed by you;

2. If you are withholding the document or information for any reason other than a claim of privilege or the work product doctrine, provide the reason for withholding the document.

G.      If a responsive document or information contains non-privileged material as well as material you contend is privileged, you must disclose the non-privileged material to the fullest extent possible without disclosing the privileged material. You must clearly indicate the portions of the document or information to which privilege is claimed. If you redact or alter a document, identify the reason for the redaction or alteration. Any redactions must be clearly visible on the redacted document.

H.      Personally Identifiable Information ("PII") or Sensitive Health Information ("SHI"): If You believe that Your response would require You to disclose PII or SHI, please contact Plaintiff's counsel Reid Tepfer before providing Your response to discuss whether there are steps You can take to minimize the amount of PII or SHI You include in Your response, and how to securely transmit such information to the FTC. Plaintiff's counsel may instruct You to encrypt any electronic copies of such material with encryption software such as PKZip and provide the encryption key in a separate communication.

PII includes an individual's Social Security number, an individual's name, address, or phone number in combination with one or more of the following: date of birth, Social Security

number, driver's license number or state identification number (or a foreign country equivalent), passport number, financial account number, credit card number, or debit card number.

SHI includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

I.      In producing documents consisting of electronically stored data in machine-readable form in response to any Request, provide such data in a machine-readable form that does not require specialized or proprietary hardware or software.

J.      Unless otherwise requested, in lieu of producing original hard-copy documents, you may produce photocopies, provided that you shall retain the original documents and produce them to the FTC upon request. Further, copies of original documents may be submitted in lieu of originals only if they are true, correct, and complete copies of the original documents, and their submission constitutes a waiver of any claim as to the authenticity of the copy should it be necessary to introduce such copy into evidence in any legal proceeding. Provide color copies of any document originally produced in color or containing type, writing, or other marks in any color other than black.

K.      If any document requested herein was formerly in your possession, custody, or control and has been lost, destroyed, or otherwise disposed of, you shall submit in lieu of any such document a written statement describing in detail:  (a) the nature of the document and its contents; (b) the identity of the person(s) who prepared or authored the document and, if applicable, the identity of the person(s) to whom the document was sent or shown; (c) the date on which the document was prepared or transmitted; and (d) the date the document was lost or

destroyed and, if destroyed, the events of and reason(s) for such destruction and the identity, employer(s), current address, and position(s) of the person(s) requesting and/or performing the destruction.

      L.      If any document requested herein was previously produced to the FTC, identify it by bates number.

      M.      Each response shall be organized and labeled to correspondent to the numbered Request to which it is responsive.

      N.      If You cannot answer all or part of any Request in full after exercising due diligence to secure the full information to do so, state and answer to the extent possible, specifying Your inability to answer the remainder, stating the information or knowledge You have concerning the unanswered portion, and detailing what You did in attempting to secure the unknown information.

      O.      The Commission often makes its files available to other civil and criminal federal, state, local, or foreign law enforcement agencies. The FTC may make information supplied by you available to such agencies where appropriate pursuant to the FTC Act and 16 C.F.R. §§ 4.11(c) and (j). Information you provide may be shared with other federal, state, or foreign civil or criminal agencies.

## DEFINITIONS

      Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this Request, the following terms are to be interpreted in accordance with these definitions:

A.     "**Match**" or the "**Company**" or "**You**" means Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing. The term shall include any descriptor used by Match in its business practices.

B.     **2017 CID**" means the Civil Investigative Demand the FTC issued to Match Group, Inc. in March 2017

C.     "**Advertisement**" or "**Advertising**" or "**Ad**" means any written or verbal statement, illustration, or depiction that promotes the sale of a good or service or is designed to increase consumer interest in a brand, good, or service. Advertising media include, but are not limited to, packaging and labeling; promotional materials; print; television; radio; and internet, social media, email, and other digital content.

D.     "**and**," as well as "**or**," shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any specification in this Request all information that otherwise might be construed to be outside the scope of the specification.

E.     "**any**" shall be construed to include "all," and "**all**" shall be construed to include the word "any."

F.     "**Chargeback**" means a transaction that is returned as a financial liability to an acquirer by a card issuer, usually because of a disputed transaction. The acquirer may then return or "charge back" the transaction to the merchant.

G.     "**Customer**" or "**Customers**" means any individual or individuals who have maintained an account on any website owned or operated by the Company, including

Match.com, OKCupid, Plenty of Fish, and Tinder, regardless of whether such individual or individuals paid for those accounts or not.

      H.     "**Document**" means the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, taped, recorded, filmed, punched, computer-stored, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including any advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book, or label. "Document" shall also include Electronically Stored Information.

      I.     "**each**" shall be construed to include "every," and "**every**" shall be construed to include "each."

      J.     "**Guarantee Extension**" means any free or additional subscriptions, services, or access to Match.com provided to a Customer under the terms of any guarantee.

      K.     "**Identify**" or "**the identity of**" shall be construed, (a) when used in connection with identification of a natural Person, to require identification of the person's name, contact phone number(s), email address, and zip code, (b) when used in connection with businesses or other organization, to require identification of name, address, telephone number, email address, and identities of natural Persons who are officers, directors or managers of the business or organization, and contact Persons, where applicable; and (c) with respect to any document produced in connection with the 2017 CID or in response to discovery requests in this lawsuit, to require that You state the Bates number and production date associated with such document.

L.     "**Match Group, LLC**" means Match Group, LLC and includes operations under assumed names, prior names, and predecessor entities, including Match.com, LLC.

M.     "**Match Guarantee**" means any Company offer to provide free subscription services to Match.com for Customers who fulfill certain criteria during their subscription period.

N.     "**Match.com**" means the dating platform available at www.match.com.

O.     "**OKCupid**" means the dating platform marketed using the brand name "OKCupid" available at www.okcupid.com and on the Apple App Store or Google Play App Store.

P.     "**Person**" or "**Persons**" shall mean all natural persons, corporations, partnerships, or other business associations and all other legal entities, including all members, officers, predecessors, assigns, divisions, affiliates and subsidiaries.

Q.     "**Plenty of Fish**" means the dating platform marketed using the brand name "Plenty of Fish" available at www.pof.com or on the Apple App Store or Google Play app store.

R.     "**referring to**" or "**related to**" means discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recording, transcribing, recommending, concerning, or pertaining to, in whole or in part.

S.     "**Subscriber**" means any user who has had either a paid account or a "free trial" account on any website owned or operated by the Company.

T.     "**Tinder**" means the dating platform marketed using the brand name "Tinder" available at www.tinder.com or on the Apple App Store or Google Play app store.

EXH. 6

**REQUEST FOR PRODUCTION OF DOCUMENTS**

1. The Company's certificate of incorporation, bylaws, rules, regulations, procedures, and any amendments to them.

2. All minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board.

3. All materially different versions of the Company's organizational charts and personnel directories.

4. Documents sufficient to show all relationships that have existed between Match Group, Inc. and any other corporate entity, including Match Group, Inc.'s subsidiaries, entities with an ownership interest the Company, and any other entity You claim has operated match.com.

5. Documents sufficient to show all corporate officers of:

   a. Match Group, Inc.;

   b. Any corporate subsidiary of Match Group, Inc.;

   c. Any corporation that has had an ownership interest in Match Group, Inc.;

   d. Any other entity You claim has operated match.com;

   e. Any other entity You contend has operated Tinder;

   f. Any other entity You contend has operated OKCupid;

   g. Any other entity You contend has operated Plenty of Fish.

6. Documents sufficient to identify all current and former employees of Match Group, Inc. whose responsibilities include or relate to:

   a. advertising or marketing;

   b. customer service;

EXH. 6

    c.   corporate governance or operations;

    d.   general management;

    e.   research and development;

    f.   legal compliance;

    g.   accounting or finance;

    h.   cancellation of subscriptions;

    i.   the Match Guarantee; and

    j.   policies and practices related to chargebacks.

7. Documents sufficient to identify all current and former Match executives.

8. Documents sufficient to show all transfers of money between Match Group, Inc., and any corporate subsidiary or owner or any other entity You claim has operated match.com, OKCupid, Plenty of Fish, and Tinder.

9. All Documents You contend tend to show that Match Group, Inc., is not liable for the violations alleged in the Complaint filed in this case, including documents supporting the claim that another entity has operated match.com, OKCupid, Plenty of Fish, and Tinder.

10. All Documents You contend tend to show that Match Group LLC operates or has operated Match.com, OKCupid, Plenty of Fish, and Tinder.

11. All Documents You contend tend to show that Match Group Inc. does not or has not operated Match.com, OKCupid, Plenty of Fish, and Tinder.

12. Documents sufficient to show the Company's quarterly and annual gross and net revenue, including profit and loss statements and accounting documents for Match.com, OKCupid, Plenty of Fish, and Tinder.

EXH. 6

13. Documents showing the Company's projections of its gross and net revenue, including Documents provided to prospective investors.

14. Documents sufficient to show quarterly and annual revenue from:

    a.  Subscriptions to Match.com;

    b.  Subscriptions to OKCupid;

    c.  Subscriptions to Plenty of Fish;

    d.  Subscriptions to Tinder;

    e.  Subscriptions to Match.com that included or was subject to a Match Guarantee;

    f.  Payments from accounts on Match.com that had been automatically renewed; and

    g.  Payments from Subscribers who had clicked on the "retention offer" or "Cancel Subscription" hyperlinks described in Paragraph 55 of the Complaint filed in this case.

15. Each unique version of all Ads related to a Match Guarantee.

16. Each unique version of all Ads related to cancellation of a Match.com, OkCupid, Plenty of Fish, or Tinder subscription, including Ads related to the ease or availability of cancellation.

17. Documents sufficient to show each unique disclosure You contend disclosed policies concerning terminating subscriptions in response to a Customer Chargeback.

18. Representative copies of all visual content shown to Customers during the process of purchasing or signing up for a paid subscription.

EXH. 6

19. Representative copies of all visual content that Match has shown to Customers concerning the Match Guarantee, including concerning:

    a. Advertisements relating to Subscriptions subject to the Match Guarantee;

    b. Customer "progress" with regard to the Match Guarantee; and

    c. Redeeming a Match Guarantee or receiving a Guarantee Extension.

20. Representative copies of all visual content that Customers have had to view to cancel their subscriptions.

21. Representative copies of all visual content that the Company has shown to Customers concerning the available means of cancelling their subscriptions.

22. All documents related to any change or contemplated change to any means of subscription cancellation available to Customers.

23. All documents related to account takeovers.

24. All documents related to software flaws that prevented Customers from:

    a. logging into their accounts;

    b. using their accounts; or

    c. canceling their accounts.

25. All communications relating to:

    a. Match Guarantees;

    b. Cancellation of paid subscriptions by Customers;

    c. Customer Chargebacks;

    d. Denial of Customers' access to accounts in response to chargebacks;

    e. The marketing or advertising of Tinder Gold or Tinder Boost; and

EXH. 6

      f.   The marketing or advertising of Incognito Mode, OKCupid Premium, or Profile Boosts on OKCupid.

26. All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Match Guarantees; chargeback policies; Ads relating to subscription renewal or cancellation; or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups.

27. All Documents, including internal and third-party studies or audits, relating to Customers' efforts to cancel their subscriptions to Match.com, Tinder, or OKCupid.

28. All Documents relating to the policies and practices of the Company, Match.com, Tinder, or OKCupid regarding the following:

      a.   Match Guarantees;

      b.   account cancellation;

      c.   Availability of customer support services;

      d.   availability of refunds;

      e.   Customer Chargebacks;

      f.   Customer access to accounts; and

      g.   compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

29. All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

30. All Documents relating to Customer complaints.

31. All communications with Customers relating to the Match Guarantee or the
Company's chargeback or cancellation policies or practices.

32. All documents relating to any lawsuit alleging that the operators of Match.com,
Tinder, Plenty of Fish, or OKCupid have engaged in fraud or violated any federal,
state, or foreign consumer protection laws.

33. All versions of customer service telephone scripts, chat scripts or prepared responses,
customer support manuals, employee manuals, and other training materials.

34. All Documents referring to or relating to:

    a.  The Federal Trade Commission;

    b.  The FTC Act;

    c.  The Restore Online Shoppers' Confidence Act;

    d.  Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP";

    e.  The Department of Justice; and

    f.  The lawfulness or unlawfulness of any practices related to Match Guarantees,
Customer chargebacks, or the cancellation of subscriptions.

35. All Documents that support, contradict, refute, or rebut any affirmative defense You
have asserted in Your Answer.

36. All Documents You referred to in the course of responding to any Request for
Admission, Request for Production, or Interrogatory served by the Federal Trade
Commission in this case.

37. All Documents considered or relied upon by any witness you disclose under Fed. R.
Civ. P. 26(a)(2).

EXH. 6

Dated: June 3, 2022

/s/ M. Hasan Aijaz

REID A. TEPFER
M. HASAN AIJAZ
MATTHEW WILSHIRE
SARAH ZUCKERMAN
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
California Bar No. 224328 (Wilshire)
New York Bar No. 5603832 (Zuckerman)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9362 (Wilshire)
T: (214) 979-9376 (Zuckerman)
Email: rtepfer@ftc.gov; maijaz@ftc.gov;
mwilshire@ftc.gov; szuckerman@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

EXH. 6

**CERTIFICATE OF SERVICE**

I, M. Hasan Aijaz, certify that on June 3, 2022, I caused the foregoing Plaintiff's First

Request for Production of Documents to be served on counsel of record by email.


By: /s/ M. Hasan Aijaz