**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>               Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br>               Defendants. | Case No. 3:19-cv-02281-K |

**JOINT SUBMISSION ON DEFENDANT MATCH GROUP, INC.'S MOTION TO COMPEL DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS FROM PLAINTIFF FEDERAL TRADE COMMISSION**

Pursuant to the Court's August 30, 2022, Order, Defendant Match Group, Inc. ("MGI") and Plaintiff Federal Trade Commission (the "FTC," and together with MGI, the "Parties") file this Joint Submission on MGI's Motion to Compel Discovery Responses and the Production of Documents from the FTC. On September 12, 2022, the Parties held a face-to-face conference which lasted from approximately 1:00 p.m. CT to 3:40 p.m. CT. Angela C. Zambrano, Chad S. Hummel, Chelsea A. Priest, and Tayler G. Bragg attended on behalf of MGI, and Reid Tepfer, M. Hasan Ajaz, John R. O'Gorman, and Erica R. Hilliard attended on behalf of the FTC. Following the conference, the Parties remain unable to resolve the disputes set forth below.

1

I. **Disputed Issue #1: Discovery Regarding the FTC's Claim that Match.com Does Not Offer a "Simple" Means to Cancel Subscriptions in Purported Violation of ROSCA.**

A. Interrogatory No. 2

| Discovery Request | Objections & Response (if any) |
|---|---|
| **INTERROGATORY No. 2:** Identify and Describe all features of Match.com's Online Cancelation Flow that You contend make the Online Cancelation Flow not "simple," as that term is used in ROSCA, 15 U.S.C. § 8403, Including a description of what changes You contend would be necessary to make the Online Cancelation Flow simple. | The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory as it is overbroad, vague, unduly burdensome, and premature.

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

The FTC also objects to the Interrogatory as ambiguous to the extent it implies that each feature of a cancelation mechanism needs to not be "simple" to violate ROSCA. The FTC objects to the request as the word "feature" is vague and undefined. The FTC also objects to the Interrogatory to the extent that it seeks a description of changes needed to make the cancelation flow simple – this part of the Interrogatory is both a discrete request separate from the first part of the Interrogatory and is instead an impermissible attempt to join two interrogatories into one. To avoid any confusion, the FTC will answer this discrete request as Interrogatory No. 8.

Subject to and without waiving the foregoing objections, Match's own executives have described its cancelation method as confusing, burdensome, cumbersome, hard to find, tedious, convoluted and that they knew consumers were getting billed after they had thought they canceled their subscriptions. *See* Compl. ¶ 53-59; see also MATCHFTC312903, MATCHFTC313402, MATCHFTC320168, MATCHFTC336923, MATCHFTC369268, MATCHFTC371904, MATCHFTC405364, MATCHFTC406132, MATCHFTC417535, MATCHFTC417536, MATCHFTC429717, MATCHFTC464887, |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | MATCHFTC467915, MATCHFTC473469, MATCHFTC477153, MATCHFTC485041, MATCHFTC485296, MATCHFTC491446, MATCHFTC494559, MATCHFTC495267, MATCHFTC499728, MATCHFTC519412, MATCHFTC528098, MATCHFTC529047, MATCHFTC543542, MATCHFTC543666, MATCHFTC545351, MATCHFTC568900, MATCHFTC571491, MATCHFTC579050, MATCHFTC601397, MATCHFTC601548, MATCHFTC604757, MATCHFTC604834, MATCHFTC646192, MATCHFTC667211, MATCHFTC669157, MATCHFTC669602, MATCHFTC728586 (internal correspondence demonstrating knowledge of problems with cancellation flow and of consumer complaints related to the flawed process).<br><br>Match's own internal documents identified the problems with its cancelation process, including that the cancellation flow was hard to find on the Match.com website, took too many clicks to complete, was difficult to understand, left consumers mistakenly believing that they had completed the cancellation process by presenting seemingly optional questions that were not in fact optional, had a password wall that blocked members from cancelling, and had been that way for at least 10 years. *Id.* Match's cancelation flow also had misleading text in the middle of the cancelation flow that states "Before you go" above a survey – misleading consumers into thinking the cancelation is complete and the survey is optional, when in fact consumers needed to continue past the survey to actually cancel. MATCHFTC604757. Match has had a flawed password reset mechanism that also prevented consumers from simply canceling their account if they had forgotten their password. MATCHFTC465940, MATCHFTC752185. Consumers have complained consistently about Match's misleading cancelation process to the company, and it was aware of and agreed that the process was misleading, but it decided not to fix the cancelation process, instead keeping it as a profit center. MATCHFTC312903, MATCHFTC313402, MATCHFTC320168, MATCHFTC336923, MATCHFTC369268, MATCHFTC519412. To the extent |

| Discovery Request | Objections & Response (if any) |
|---|---|
|  | Match produces responsive documents and answers in discovery, the FTC may supplement this answer. |

1. **MGI's Position: The FTC Should Be Compelled to Disclose Precisely Why the Match.com Online Cancelation Flow Is Not "Simple."**

In the five years since the FTC began its investigation of Match.com, it has never disclosed the reasons why Match.com's Online Cancelation Flow[1] is purportedly not simple or what changes would fix any problems. This Interrogatory No. 2 seeks that precise information in a straightforward manner by asking the FTC to identify the "features" of the flow that allegedly render it violative of ROSCA. Despite extensive conferences with counsel for the FTC, it still refuses fully to comply. What is clear from the response and from the conference of counsel is that the FTC is being deliberately evasive. Its objections are meritless and should be stricken, and it should be ordered to identify the offending features with specificity.

First, the FTC claims that this is a "Blockbuster Interrogatory" to which it did not need to respond. *Id.* Not so. MGI did not ask the FTC to identify "every conceivable detail and fact which may relate to a case." *Nieman v. Hale*, No. 3:12-CV-2433-L-BN, 2013 WL 6814789, at *11 (N.D. Tex. Dec. 26, 2013); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 577–78 (N.D. Tex. 2018) (characterizing a "blockbuster interrogatory" as an "all-encompassing or broad and undirected request[]" where the serving party does "not want to miss anything—and so will ask for, effectively, everything"). Rather, it asked the FTC to identify and describe ***the specific features*** of Match.com's Online Cancelation Flow that the FTC contends make the Online Cancelation Flow not "simple." J. App. at 060 (emphasis added). In order to prevail at trial on this claim, the FTC

---

[1] "Online Cancelation Flow" means the Match.com automated online cancelation process, as distinct from the other cancelation mechanisms that Match.com offers, including email, chat, and telephone.

will have to do precisely this, and MGI should not be forced to guess at what the FTC's trial positions will be.

Moreover, the FTC's supplemental response to Interrogatory No. 2 does not identify features but rather makes conclusory statements such as that the Match.com Online Cancelation Flow was "hard to find," "difficult to understand," or took "too many clicks." These responses are plainly insufficient and actually beg the key questions: what makes the Flow hard to find; what is difficult to understand; or how many "clicks" is "too many." Although the FTC identifies documents that purportedly support its response, simply appending bulk citations to a deficient response does not cure the deficiencies. For example, how "Match's own executives have described its cancelation method" and that "Match's own internal documents identified the problems with its cancelation process" are irrelevant to what *the FTC* contends is "not simple" about Match.com's Online Cancelation Flow.

Lastly, the FTC's response to "Interrogatory No. 8"[2] that "it is simply not feasible for the FTC to provide a description of every possible Online Cancelation Flow MGI could offer that is simple," J. App. at 070, mischaracterizes Interrogatory No. 2, which merely asks the FTC to describe the changes that the FTC contends would be necessary to make the Online Cancelation Flow simple. Incredibly, the FTC first objected that the changes the FTC thinks would be necessary to bring Match.com into compliance with ROSCA are "irrelevant." Hardly. The FTC is specifically seeking injunctive relief in this case. Am. Compl. ¶ 89. The characteristics of what the FTC would consider a "simple" cancelation mechanism (and therefore what type of changes would

---

[2] To be clear, MGI did not serve an "Interrogatory No. 8." The FTC inappropriately separated Interrogatory No. 2 into two separate interrogatories and created an "Interrogatory No. 8." What features make the Online Cancelation Flow not "simple" and what changes would be necessary to make the flow simple are logically and factually subsumed within and necessarily related to one another, so Interrogatory No. 2 is not compound and the FTC should not have split its response in two. *See Randstad General Partner (US), LLC v. Beacon Hill Staffing Group, LLC*, 2021 WL 4319673, at *15 (N.D. Tex. Sept. 23, 2021).

be necessary to comply with the injunction that the FTC is seeking) are centrally relevant. *See id.*; J. App. at 060–62. In its supplemental responses, the FTC asserts that "an adequately disclosed one-click cancellation process would be simple," but its answer remains deficient because it is not a good faith response and again evades MGI's request to explain to MGI what it claims is wrong with the Match.com Online Cancelation Flow. For example, the FTC refuses to explain what it means by "adequately disclosed." More than five years after its investigation began, it is far past time for the FTC to articulate its positions.

## 2.      FTC's Position

Defendant has requested that the FTC identify both the flaws in Match.com's cancellation flow (i.e., the facts that render it not "simple") *and* explain how it can be fixed (i.e., ("changes You contend would be necessary"). The FTC has completed its response as to the "flaws." As to the "fix," the FTC is not obligated to provide such an explanation, and has already explained its position in response to MGI's similarly worded Interrogatory No. 8.

MGI's claim that the FTC has never identified specifically why Match.com's cancellation flow is not simple is patently false. In truth, the FTC's response identified the specific ways that Match.com's cancellation process was not simple. Specifically, Match.com's cancellation flow had numerous issues, including that it (1) was hard to find on the website; (2) took too many clicks to complete; (3) had prompts that were difficult to understand; (4) left consumers mistakenly believing that they had completed the cancellation process by presenting seemingly optional survey questions that were not in fact optional; (5) required that consumers log in to their account to cancel but had a flawed password reset mechanism. The FTC supported these facts by pointing to specific documents by Bates number. The FTC has appropriately identified these flaws in Match.com's online cancellation mechanism, which are the basis for its allegation in Count V.

The FTC, however, is not obligated to provide advice to MGI concerning how to fix these flaws. ROSCA does not require the FTC do provide a rigid, prescriptive standard for how companies must allow cancellations. It merely requires that those cancellations be simple. 15 U.S.C. § 8403. Therefore, MGI's liability on Count V turns not on the FTC's opinion about how, hypothetically, Match.com should allow subscribers to cancel, but on whether the actual cancellation method was simple, which it was not.

Moreover, there are unlimited hypothetical "simple" cancellation mechanisms that Match.com could employ, and the FTC has no obligation or ability to identify them all for MGI. Requests seeking an analysis of law or policy that are not connected to the particular facts of this case are improper. *See Disability Rights Council v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 1, 3 (D.D.C. 2006) ("WMATA is asking plaintiffs to state their understanding of federal law. That is not a question of fact, but purely a legal matter"). Tellingly, MGI does not, and cannot, identify any way in which information about the FTC's ideas for its cancellation flow would be helpful for its claims or defense.

B.      Requests for Admission Nos. 40–43

| Discovery Request | Objections & Response (if any) |
| --- | --- |
| **REQUEST FOR ADMISSION NO. 40:** Admit that the Online Cancelation Flow can be completed within 30 seconds. | Plaintiff objects to the request as vague because it is ambiguous what type of person the requests refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, whether the user is reading the texts or prompts in the Online Cancellation Flow, and other factors relevant to the speed of completing the cancelation flow. Plaintiff also objects to the Request as irrelevant because the fastest possible completion speed of a cancelation process it not relevant to any claim or defense in this case. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control. |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | Plaintiff is unable to admit or deny this request because of the ambiguities described above. |
| **REQUEST FOR ADMISSION NO. 41:** Admit that the Online Cancelation Flow can be completed within 60 seconds. | Plaintiff objects to the request as vague because it is ambiguous what type of person the requests refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, whether the user is reading the texts or prompts in the Online Cancellation Flow, and other factors relevant to the speed of completing the cancelation flow. Plaintiff objects to the Request as irrelevant because the fastest possible completion speed of a cancelation process it not relevant to any claim or defense in this case. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control. Plaintiff is unable to admit or deny this request because of the ambiguities described above. |
| **REQUEST FOR ADMISSION NO. 42:** Admit that the Online Cancelation Flow can be completed within 90 seconds. | Plaintiff objects to the request as vague because it is ambiguous what type of person the requests refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, whether the user is reading the texts or prompts in the Online Cancellation Flow, and other factors relevant to the speed of completing the cancelation flow. Plaintiff objects to the Request as irrelevant because the fastest possible completion speed of a cancelation process it not relevant to any claim or defense in this case. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control. Plaintiff is unable to admit or deny this request because of the ambiguities described above. |
| **REQUEST FOR ADMISSION NO. 43:** Admit that the Online Cancelation Flow can be completed within 120 seconds. | Plaintiff objects to the request as vague because it is ambiguous what type of person the requests refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, whether the user is reading the texts or prompts in the Online Cancellation Flow, and other factors relevant to the speed of completing the cancelation flow. Plaintiff objects to the Request as irrelevant because the fastest possible completion speed of a cancelation process it |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | not relevant to any claim or defense in this case. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control. Plaintiff is unable to admit or deny this request because of the ambiguities described above. |

### 1.   MGI's Position: The FTC Should Be Compelled to Tell MGI What It Claims Is Wrong with the Match.com Online Cancelation Flow.

The FTC's responses to Requests for Admission about Match.com's Online Cancelation Flow are also inadequate. In its responses to Requests for Admission Nos. 40–43, which seek admissions that Match.com's Online Cancelation Flow can be completed within a certain amount of time, the FTC objected to each Request as "vague because it is ambiguous what type of person the requests [sic] refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, whether the user is reading the texts or prompts in the Online Cancelation Flow, and other factors relevant to the speed of completing the cancelation flow." J. App. at 090–92. But the Requests do not seek admissions that the Online Cancelation Flow can *always* be completed within a certain number of seconds—they rather seek admissions that the Online Cancelation Flow *can* be completed within a certain number of seconds.[3] The suggestion that MGI needed to specifically state that users read the "texts or prompts" presented while completing the Online Cancelation Flow again exemplifies the FTC's obstructionist approach to discovery. The FTC refuses to apply a reasoned interpretation to straightforward requests to avoid answering.

---

[3] To the extent there was any vagueness or ambiguity, the FTC is obligated to answer the Requests for Admission "utiliz[ing] the ordinary definition of the phrases." *Squires v. Toyota Motor Corp.*, No. 4:18-cv-00138, 2021 WL 1930721, at *5 (E.D. Tex. May 13, 2021) (Mazzant, J.).

In any event, contrary to the FTC's baseless assertion and citation to a 41-year-old case, the FTC cannot refuse to answer Requests for Admission Nos. 40–43 on the basis that it lacks requisite knowledge to do so because any lack of knowledge is the direct result of the FTC's failure to conduct basic due diligence. The absence of due diligence is particularly striking given the FTC's Civil Investigative Demand ("CID") began over five years ago. During the conference on September 12, the FTC conceded, as it had to, that the time it takes a user to complete the Online Cancelation Flow is relevant to the central issue of "simplicity," but further conceded that it has no evidence of how long it takes consumers to complete that flow. The FTC has not done the "testing" or survey work required to know how quickly the Online Cancelation Flow can be completed. But Rule 36 requires that a party make a "reasonable inquiry" before claiming that it lacks knowledge or information sufficient to admit or deny. Fed. R. Civ. P. 36(a)(4). The FTC apparently made no such inquiry.

Furthermore, the FTC is wrong that Requests for Admission Nos. 40–43 do not "relate to the experiences of actual users" and are thereby irrelevant as purely hypothetical—they are grounded in both "the experiences of actual users" of Match.com and factors the FTC has admitted are relevant to whether ROSCA or the FTC Act have been violated. The authority the FTC cites below in support of its "hypothetical" argument is either irrelevant or readily distinguishable. For example, in *Abbott v. United States*, the plaintiffs provided a hypothetical fact pattern and asked the government to make admissions related to it, but the court held that "plaintiffs have not posed proper questions requiring *application of law to the facts peculiar to this case to clarify the government's legal theories*." 177 F.R.D. 92, 93 (N.D.N.Y. 1997) (emphasis added). MGI's requests are directly connected to the facts at hand related to time required to complete the Match.com Online Cancelation Flow, and thus present no such hypothetical. *See id.*

10

The FTC's citation to *Morley* is even farther afield. There, the court wrote that "[b]ecause requests to admit involving legal questions must be connected to the facts of the case, courts do not permit 'hypothetical' questions within requests for admission," but Requests for Admission Nos. 40–43 seek purely factual admissions regarding the time it takes to complete the Match.com Online Cancelation Flow—not a legal conclusion. *Morley v. Square, Inc.*, No. 4:10-cv-2243, 2016 WL 123118, *3 (E.D. Mo. Jan. 11, 2016); "); *see also Buchanan v. Chicago Transit Auth.*, No. 16-cv-4577, 2016 WL 7116591, *5 (N.D. Ill. Dec. 7, 2016) (citing *Morley* for propositions regarding "hypothetical" requests for admission). Accordingly, the authority the FTC cites is disconnected from the reality of MGI's Requests, which are both squarely related to the facts of the instant litigation and require no legal conclusions.

Finally, the FTC also inappropriately objected that these Requests are "irrelevant because the fastest possible completion speed of a cancelation process it [sic] not relevant to any claim or defense in this case." J. App. at 090–92. In addition to being wrong for the reasons described above, that objection is contradicted by the FTC's repeated allegations that the Online Cancelation Flow is "confusing and cumbersome," Compl. ¶ 55, and the FTC's enforcement policy that puts speed of cancelation at issue by indicating that a cancelation mechanism should not "impose unreasonable delays on consumers' cancellation efforts." Enforcement Policy Statement Regarding Negative Option Marketing, 86 Fed. Reg. 60822 (Nov. 4, 2021). The FTC also conceded during the conference on September 12 that time to complete cancelation is relevant in some situations. The FTC may wish to argue that the short time it takes to complete *Match.com*'s Online Cancelation Flow does not make the Flow "simple," but that is a merits argument; in the meantime, MGI is entitled to this discovery.

11

2.      **FTC's Position**[4]

With these requests, Defendant calls for several admissions regarding the fastest times in which a consumer could cancel his or her subscription, which are irrelevant, vague, ambiguous, and beyond the FTC's ability to admit or deny in the absence of sufficient information. Despite MGI's assertions, these requests are irrelevant to the issues in this case—the fastest possible time for a hypothetical user to complete the cancellation flow does not bear on any claim or defense in this case, which relate to the experiences of actual users. *See Abbott v. United States*, 177 F.R.D. 92, 93 (N.D.N.Y. 1997) (holding requests improper because they "posed improper hypothetical factual scenarios unrelated to the facts [] to ascertain answers to pure questions of law"); *Buchanan v. Chicago Transit Auth.*, No. 16-cv-4577, 2016 U.S. Dist. LEXIS 168983, *14 (N.D. Ill. Dec. 7, 2016) (internal quotations and citations omitted) ("Since requests to admit must be connected to the facts of the case, courts do not permit 'hypothetical' questions within requests for admission."); *Morley v. Square, Inc.*, No. 4:10-cv-2243, 2016 U.S. Dist. LEXIS 318, *11 (E.D. Mo. Jan. 11, 2016) (holding same).

MGI has suggested that the FTC's objection is at odds with its claims that the cancellation process is "confusing and cumbersome" and FTC guidance, which Defendant asserts are related to speed and delays in the process. However, the FTC does not assert that the time it takes an *actual Match user* to cancel his or her subscription is irrelevant. Rather, the FTC objects to the

---

[4] The FTC notes that there may be instances throughout this document where the FTC responds to or references arguments that MGI has changed or withdrawn. FTC counsel apologizes to the Court for this issue. This issue is the result of Defendant MGI presenting the FTC with a substantially revised joint statement document at 3:26 pm on the filing date. This left the FTC with insufficient time to review MGI's revised positions, let alone respond properly to them.

statements posed by MGI, which focus on the *fastest possible* time to complete. The fastest theoretical time is irrelevant to the experience of consumers in the real world.

The requests are also vague as they do not identify *who* can complete this process in the proposed timeframes—a consumer who has already completed the flow once, or one of the Defendants' employees, will almost certainly complete it faster than someone approaching it for the first time. Further, the request is ambiguous as to what type of device a consumer is using, whether the user is actually reading the texts or prompts in the Online Cancellation Flow or simply clicking through, and other factors relevant to the speed of completing the cancelation flow.

Most importantly, irrespective of the irrelevance and vagueness of the request, the FTC is unable to admit or deny this request because it lacks sufficient information. Despite its investigation, the FTC is unable to identify the fastest possible times in which a user can complete Match.com's cancellation process. *See Brown v. Arlen Mgmt. Corp.*, 663 F.2d 575 (5th Cir. 1981) ("Defendants are free to assert a lack of knowledge . . . if, after a reasonable inquiry, they do not have adequate information to admit or deny the information found in the requests."). The FTC has no data concerning this at this time. To the extent any such data currently exists, it would be in MGI's possession.

## II.  Disputed Issue #2:  Discovery into the Standard by Which Simplicity of Cancelation Means Is Evaluated.

### A.  Requests for Admission Nos. 33–38

| Discovery Request | Objections & Response (if any) |
|---|---|
| **REQUEST FOR ADMISSION NO. 33:** Admit that a cancelation method can be simple even if it includes a save offer (meaning an offer to | Plaintiff objects to the Request because "save offer" is vague and ambiguous and the hypothetical as a whole is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe how it includes a save offer, how the offer is presented, how the offer is accepted or declined, or what happens to the |

| Discovery Request | Objections & Response (if any) |
|---|---|
| continue a subscription at a discount). | cancelation method based on the acceptance or denial of the offer. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.<br><br>Plaintiff is unable to admit or deny this Request because of the reasons described above. To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies. |
| **REQUEST FOR ADMISSION NO. 34:**  Admit that a cancelation method can be simple if it includes a save offer (meaning an offer to continue a subscription at a discount) but the subscriber is not required to answer the question. | Plaintiff objects to the Request because the "save offer" is vague and ambiguous and the hypothetical as a whole is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe how it includes a save offer, how the offer is presented, how the offer is accepted or declined, or what happens to the cancelation method based on the acceptance or denial of the offer. Similarly, the phrase "not required to answer the question" is vague and ambiguous because, for example, subscribers may not realize the "save offer" is not required. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.<br><br>Plaintiff is unable to admit or deny this Request because of the reasons described above. To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies. |
| **REQUEST FOR ADMISSION NO. 35:**  Admit that a cancelation method can be simple even if it asks a subscriber why they are canceling. | Plaintiff objects to the Request because the hypothetical is vague. The Request does not describe the entirety of the hypothetical cancelation method, nor does it describe where the question is located in the cancelation method, how it is presented, or what happens to the cancelation method based on the subscriber's answer or non-answer. Plaintiff further objects because the request seeks |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | privileged information and calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.<br><br>Plaintiff is unable to admit or deny this Request because of the reasons described above. To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies. |
| **REQUEST FOR ADMISSION NO. 36:** Admit that a cancelation method can be simple if it asks a subscriber why they are canceling but the subscriber is not required to answer the question. | Plaintiff objects to the Request because the hypothetical is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe where the question is located in the cancelation method, how it is presented, what a subscriber needs to do to avoid answering the question, or what happens to the cancelation method based on the subscriber's answer or non-answer. Similarly, the phrase "not required to answer the question" is vague and ambiguous because, for example, subscribers may not realize answering the question is not required. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.<br><br>Plaintiff is unable to admit or deny this Request because of the reasons described above. To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies. |
| **REQUEST FOR ADMISSION NO. 37:** Admit that a cancelation method can be simple even if it asks a subscriber whether they would recommend the service. | Plaintiff objects to the Request because the hypothetical is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe where the question is located in the cancelation method, how it is presented, or what happens to the cancelation method based on the subscriber's answer or non-answer. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.<br><br>Plaintiff is unable to admit or deny this Request because of the reasons described above. To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies. |
| **REQUEST FOR ADMISSION NO. 38:** Admit that a cancelation method can be simple if it asks a subscriber whether they would recommend the service but the subscriber is not required to answer the question. | Plaintiff objects to the Request because the hypothetical is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe where the question is located in the cancelation method, how it is presented, what a subscriber needs to do to avoid answering the question, or what happens to the cancelation method based on the subscriber's answer or non-answer. Similarly, the phrase "not required to answer the question" is vague and ambiguous because, for example, subscribers may not realize answering the question is not required. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.<br><br>Plaintiff is unable to admit or deny this Request because of the reasons described above. To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies. |

### 1. MGI's Position: The FTC Should Be Compelled to Tell MGI What Features It Considers or What Standard It Uses in Evaluating Cancelation Flows.

The FTC has refused to disclose with any specificity the standards it uses to evaluate whether a subscription cancelation method is simple. Instead it merely points to the public guidance it has recently provided – and nothing else:

> "ROSCA requires negative option sellers to provide a simple, reasonable means for consumers to cancel their contracts. To meet this standard, negative option sellers

should provide cancellation mechanisms that are at least as easy to use as the method the consumer used to initiate the negative option feature."

Enforcement Policy Statement Regarding Negative Option Marketing, 86 Fed. Reg. 60822 (Nov. 4, 2021). There are no other public pronouncements by the FTC on this issue. And there is no case law to guide the Court as to how it should evaluate liability here. The FTC should not be allowed to allege that Match.com's cancelation flow is not simple but then refuse to articulate the standard it has used to make that assertion.

For those reasons, the FTC's responses to Requests for Admission Nos. 33–38 are problematic. J. App. at 088–90. MGI sought admissions about certain cancelation features, and whether the FTC believes that those features make a cancelation mechanism not "simple." For example, Request for Admission No. 33 asks the FTC to "Admit that a cancelation method can be simple even if it includes a save offer (meaning an offer to continue a subscription at a discount)." *Id.* at 088. MGI hoped to understand which (if any) of these features made a cancelation mechanism not "simple," according to the FTC.

Instead, the FTC claimed that Requests for Admission Nos. 33–38 were "hypothetical" and responded only that "[t]o the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies." *Id.* at 088–90. But none of these Requests seek admissions about whether *Match.com*'s cancelation methods are simple. Instead, the Requests seek to understand what factors or features the FTC considers in deciding whether *any* cancellation method is "simple." By dodging the Requests, the FTC's answers do not "fairly respond to the substance of the matter." Fed. R. Civ. P. 36(a)(4).[5]

---

[5] The most stunning aspect of the FTC's objection that MGI's Requests for Admission Nos. 33–38 pose improper "hypotheticals" is that the FTC served nearly identical "hypothetical" requests on Match Group, LLC ("MGL"). J. App. at 277 (seeking admission from MGL that "[a] cancellation mechanism is not simple if consumers do not know

Moreover, the authority the FTC cites to defend its position that it need not answer "hypothetical" Requests for Admission is readily distinguishable. Even aside from the fact that *Abbott v. U.S.* is both 25–years–old and from another jurisdiction, that case involved "requests for admissions that require[d] an application of law to hypothetical facts." 77 F.R.D. 92, 93 (N.D.N.Y. 1997). The same cannot be said of MGI's requests because, as the FTC acknowledges in response to other discovery requests, Match.com's Online Cancelation Flow *does* include save offers and survey questions—the very features asked about in these Requests for Admission. J. App. at 060–62 (FTC's response to Interrogatory No. 2). In stark contrast to these Requests, in *Abbott*, the defendant presented the plaintiff with a lengthy factual hypothetical and requested admissions based on that scenario. *Abbott*, 77 F.R.D. at 93. Such requests were formulated as follows:

> **Payor does not know payor might be liable to him for damages.** Assume the following facts: Trespasser falls into a concealed hole on land in State X belonging to Landowner. Trespasser is unaware that Landowner owed any duty of care to Trespasser, and Trespasser assumes that he has no cause of action against Landowner. Landowner is aware that some courts in State X have held landowners liable to trespassers for injuries resulting from concealed hazardous conditions on the land. In order to avoid the risk of liability, Landowner offers a payment to Trespasser in exchange for a release of personal injury claims. Trespasser accepts the offer, considering the repayment to be an act of generosity by Landowner.
> Admit that the payment is excludable under I.R.C. § 104(a)(2) even though Trespasser was unaware of his potential legal rights against Landowner at the time he signed the release and received payment.

*Id.* MGI makes no such request of the FTC here, rather asking the FTC to admit or deny whether certain aspects of a cancelation flow—aspects at issue in the Match.com Online Cancelation Flow—are "simple." *Thomason v. Metropolitan Life Insurance Company*, which merely stands for the proposition that "parties may request admissions regarding factual matters and matters involving the application of law to facts, but not purely legal matters," is similarly inapposite. 2015

about it"). The FTC cannot simultaneously object to such requests and demand answers from a different defendant in this very case to the same.

WL 1914557, at *2 (N.D. Tex. Apr. 27, 2015).[6] Here, Requests for Admission Nos. 33–38 comply with the proposition in *Thomason* because they seek admissions regarding the application of law to facts, not purely legal matters.

### 2.    FTC's Position

In its Requests for Admission Nos. 33-38, MGI calls for several admissions relating to whether the FTC would consider various hypothetical cancellation mechanisms "simple." Each hypothetical is vaguely described, mentioning only one poorly described feature of the cancellation mechanism and demanding that the FTC provide its legal conclusion with no further context. More importantly, these requests are *explicitly* not connected to the facts of the case: as MGI has stated, "none of these Requests seek admissions about whether *Match.com's* cancellation methods are simple." *See supra*, MGI's Response II.A.1. Instead, MGI improperly calls for the FTC to make statements that amount to abstract judgments of law rather than admissions connected to the facts at issue in this litigation. Such pure questions of law are inappropriate, particularly when disconnected from the facts. *See Abbott v. U.S.*, 177 F.R.D. 92, 93 (N.D.N.Y. Dec. 15, 1997) ("[P]laintiffs have posed improper hypothetical factual scenarios unrelated to the facts here to

---

[6] In *Thomason*, the request at issue sought an admission on a purely legal matter and even cited the statutes about which the request was based: "MetLife does not dispute that a transfer from a plan qualified under section 401(a) of the Internal Revenue Code to a traditional individual retirement account [hereinafter "IRA"] by direct rollover constitutes a direct trustee-to-trustee transfer. (*See* 26 U.S.C. § 401(a)(31); 26 U.S.C. § 402(e) (6).)." 2015 WL 1914557, at *2.

ascertain answers to pure questions of law. This they cannot do."); *Thomason v. Metropolitan Life Ins. Co.*, 2015 WL 1914557 at *2.

   B.      .Requests for Production Nos. 5–6

| Discovery Request | Objections & Response (if any) |
|---|---|
| **REQUEST FOR PRODUCTION No. 5:** All surveys, copy tests, research, analyses, studies, or other tests conducted by or done for the FTC regarding cancelation methods. | The FTC also objects to this request as it is overbroad, is not proportional to the needs of the case, and seeks irrelevant documents, including those unrelated to this matter and concerning unrelated cancelation methods. This request is therefore not reasonably calculated to lead to the discovery of relevant evidence. Surveys, copy tests, research, analyses, studies, or other tests of different cancelation mechanisms are not relevant to whether Match failed to provide simple mechanisms to cancel its own recurring subscriptions. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine. The FTC also objects to this request to the extent that it seeks trial preparation materials. The FTC also objects on the grounds that it is premature. Discovery has just begun in this matter, and the Commission is gathering evidence in support of its claims. Moreover, the Court's scheduling order provides dates on which the parties will exchange lists of exhibits they may use at trial. By responding now, the Commission does not waive its rights to identify other potential documents at the time provided in the scheduling order.

The FTC has conducted a reasonable search of documents possibly relevant to cancellation methods on the Defendants' dating platforms and has not identified any responsive documents. |
| **REQUEST FOR PRODUCTION No. 6:** All Documents regarding evaluations the FTC has performed of subscription service cancelation processes. | The FTC objects to this Request on the grounds it is vague, overbroad, and not proportional to the needs of the case, as the request would include documents concerning the evaluation of subscription services unrelated to Defendants' websites or the allegations in this case. The FTC also objects to this request as it is overbroad and seeks irrelevant documents, including those unrelated to this matter and concerning unrelated cancelation methods. This request is therefore not reasonably calculated to lead to the discovery of relevant evidence. Further, as in its response to Request 5, the FTC objects to this request to the |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | extent that it seeks documents protected by attorney-client privilege, work-product doctrine, or trial preparation materials. The FTC also objects to the request seeking documents "regarding" the subject matter of the request as that language seeks documents covered by attorney-client and deliberative-process privilege and work-product doctrine and is therefore intended to abuse the discovery process. The FTC also objects on the grounds that this request is duplicative of Request 5.<br><br>The FTC has conducted a reasonable search of documents regarding evaluations of subscription service cancellation methods on the Defendants' dating platforms and has not identified any responsive documents. |

1.    **MGI's Position: The FTC Should Be Compelled to Tell MGI What Features It Considers or What Standard It Uses in Evaluating Cancelation Flows.**

The FTC's obstruction continued in response to Requests for Production. In Requests for Production Nos. 5 and 6, MGI seeks "surveys, copy tests, research, analysis, studies, or other tests conducted by or done for the FTC regarding cancelation methods," and "Documents regarding evaluations the FTC has performed of subscription service cancelation processes," respectively. J. App. at 104–05. The FTC objected that these documents are "irrelevant." *Id.*[7] But these requests go directly to whether Match.com's Online Cancelation Flow is "simple."

If the FTC has documents reflecting surveys, tests, research, analysis, studies, or any other type of evaluation of cancelation methods, those documents are highly relevant. For example, if the FTC conducted research showing that surveying users about why they are canceling did not affect cancelation rates, MGI is entitled to that information so it can argue that including such a

---

[7] The FTC also objected that the Requests for Production are "overbroad" and "not proportional to the needs of the case," and to Request for Production No. 6 specifically as also "vague," but did not explain why. J. App. at 104–05. All of those objections seem to be premised on the FTC's inappropriate relevance objection.

survey in the Match.com Online Cancelation Flow does not make that mechanism not "simple." Or if the FTC evaluated another subscription service's cancelation mechanisms and concluded that those mechanisms do not violate ROSCA, MGI is entitled to that information so it can compare the Match.com mechanisms with other mechanisms that the FTC deemed to be in compliance.

The FTC agreed to search for documents only "*possibly relevant*" to this case or "Defendants' dating platforms," but those limitations are inappropriate. J. App. 104–05 (emphasis added). The FTC apparently unilaterally decided which documents were "possibly relevant," as distinct from documents that are responsive, and limited its search to only "Defendants' dating platforms," not any cancelation methods or subscription services, as requested.

The FTC improperly hides behind the "deliberative process privilege" as relieving it of its obligation to produce documents related to factual matters. Under the standards enunciated by the cases the FTC cites,[8] MGI's Requests for Production Nos. 5 and 6 plainly do not seek "documents generated during an agency's deliberations about a policy" or any of the FTC's deliberations or decisions, and rather request "purely factual" information and documents. And contrary to the FTC's suggestion and citation to *Swanston v. City of Plano*, MGI does not seek facts that are privileged by virtue of being "intertwined within analysis or evaluation" related to a deliberative process. *Cf.* No. 4:19-CV-00412, 2020 WL 4732214, *2 (E.D. Tex. Aug. 14, 2020) (denying City of Plano's motion for protective order on the basis of deliberative process privilege). This is because the deliberative process privilege applies only to "oral or written communications *during*

---

[8] *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S.Ct. 777, 783 (2021) ("This case concerns the deliberative process privilege, which *protects from disclosure documents generated during an agency's deliberations about a policy*, as opposed to documents that embody or explain a policy that the agency adopts." (emphasis added)); *In re Apco Liquidating Trust (McMillan v. United States)*, 420 B.R. 648, 651 (Bankr. M.D. La. 2009) ("The privilege protects governmental agencies' internal communications that are deliberative in nature *but not those that are 'purely factual.'*" (emphasis added)); *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (affirming grant of summary judgment to FDA against party seeking to enforce FOIA request regarding documents about FDA's administrative drug approval process).

*a deliberative process*." *Id.* (emphasis added). MGI seeks no fact or document related to any kind of deliberative aspect of the FTC's work that could possibly be covered by the deliberative process privilege, and accordingly this privilege does not apply.

Moreover, the FTC admitted at the September 12 conference that it had not even *attempted* to search for responsive documents unrelated to Match.com specifically, so it cannot possibly know whether any (much less all) responsive document are protected by any privilege (particularly the deliberative process privilege, which requires analysis of whether facts and legal assessments are intertwined). That is unlikely to be the case. For example, the factual results of a survey are unlikely to be "intertwined" with legal analysis. And communications exchanged with another subscription service about the adequacy of a cancelation flow cannot be privileged once shared outside of the FTC. The FTC is obligated to search for and produce such documents, and not limit its search for documents to only items the FTC believes supports its case against MGI.

### 2.     FTC's Position

In its Requests for Production Nos. 5 and 6, Defendant calls broadly for agency documents relating to cancelation flows, including "if the FTC evaluated another subscription service's cancelation mechanisms." These other companies and their products are not at issue in this litigation; this request is therefore irrelevant. Further, this Request appears to seek predecisional, deliberative materials informing agency policy, including internal legal analysis of cancellation mechanisms generally, which are protected by deliberative process privilege. *See U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. ___, 141 S. Ct. 777, 785 (2021) (noting that the purpose of the privilege is to "[t]o encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure"); *McMillan v. United States*, 420 B.R. 648, 651 (M.D. La. 2009) (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150

(1975) ("The deliberative process privilege protects from discovery government documents that are both pre-decisional, that is, generated before an agency policy is adopted, and deliberative, meaning that they contain opinions, recommendations, proposals and other subjective matters."); *Swanston v. City of Plano*, No. 4:19-cv-412, 2020 U.S. Dist. LEXIS 146508, 2020 WL 4732214, at *2 (E.D. Tex. Aug. 14, 2020) (noting that even facts are privileged if "intertwined within analysis or evaluation" and observing that the "purpose of the privilege is to protect the decision-making process from the inhibiting effect that disclosure of predecisional advisory opinions and recommendations might have on the frank discussion of legal or policy matters in writing"); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141 (D.C. Cir. 2006) (finding government materials protected where "generated before the adoption of an agency policy" and "reflect[ing] the give-and-take of the consultative process").

Notwithstanding the foregoing objections, the FTC has conducted a reasonable search of documents possibly relevant to cancellation methods on the Defendants' dating platforms and is not withholding documents.

## III.   Disputed Issue #3: Discovery into the FTC's Claim for Monetary Relief

### A.   Interrogatory No. 3

| Discovery Request | Original Objections & Response (if any) | Amended Objections & Response (if any) |
|---|---|---|
| **INTERROGATORY No. 3:** Identify and Describe the harm to consumers that You contend resulted from the alleged lack of a simple online cancelation method, Including how the damages caused by that harm were | The FTC objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's | The FTC objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this |

| Discovery Request | Original Objections & Response (if any) | Amended Objections & Response (if any) |
|---|---|---|
| calculated, the number of users that You believe were unable to cancel their subscription as a result of the alleged lack of a simple cancelation method, and the amount of harm/damages per user. | scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.<br><br>Subject to and without waiving the foregoing objections, the FTC responds that consumers were harmed by, among other things, being billed for unwanted recurring subscriptions, costs imposed on consumers by time spent rectifying failed cancelation attempts, and by failing to receive refunds when being billed after they thought they had already canceled. The number of consumers harmed by Match's ROSCA violation is approximately 64,000, with each harmed by an average amount of $136. The number of harmed consumers, the types of harm, and amount of harm per user will be further revised as the case proceeds and as the FTC obtains additional discovery. | response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.<br><br>As you acknowledged in our August 24 conference on MGI's Motion to Compel, the FTC is not currently in a position to provide specific calculations because, among other things, it lacks the updated data regarding Count V requested in its June 3, 2022 First Set of Requests for Production of Documents.<br><br>Match's failure to provide simple cancelation mechanisms caused consumers to be unable to cancel their subscription or led them to incorrectly believe they had cancelled their subscription when they in fact had not. This harmed consumers by causing unwanted and unauthorized charges. Match's failure to provide simple mechanisms also caused damages to consumers who had to contact Match to cancel their subscription or seek a refund because their cancellation attempt was unsuccessful. The harm related to such contact and seeking a refund is the value of these consumers' lost time.<br><br>The number of users who were unable to cancel their subscription as a result of Match's failure to provide simple cancelation mechanisms will be determined by, among other things, documents and records in |

| Discovery Request | Original Objections & Response (if any) | Amended Objections & Response (if any) |
|---|---|---|
| | | Match's possession that the FTC has requested through discovery, including website usage records, billing records, and complaint data.[1] Similarly, the amount of harm and damages per user will be calculated using, among other things, data and records in Match's possession that the FTC has requested in its discovery, including website usage records, billing records, and complaint data.[2]<br><br>[1] The FTC's contention is that all consumers who were unable to cancel their subscription were harmed, not merely consumers who complained to Match.<br><br>[2] The estimates of the number of consumers harmed and per consumer harm in the FTC's initial response to this interrogatory was based on incomplete data and was intended to estimate for mediation or settlement purposes the amount of harm at issue. |

     1.      **MGI's Position: The FTC Should Be Compelled to Provide Information About Its Alleged Damages Claim.**

The FTC refuses to explain to MGI what monetary relief the FTC is seeking for the alleged ROSCA violation for allegedly not having a "simple" cancelation mechanism (whatever that violation is). In Interrogatory No. 3, MGI asked the FTC to identify and describe the harm to consumers that the FTC claims has resulted from the alleged ROSCA violation, including a description of how the amount is or would be calculated. The FTC originally responded that the

number of consumers harmed "is approximately 64,000, with each harmed by an average amount of $136." J. App. at 008. But the FTC did not explain *how* the 64,000 consumers were harmed, *how* the FTC identified those consumers, or *how* it derived an average harm of $136 per consumer.

In its amended response to Interrogatory No. 3, the FTC removed the previous estimates (64,000 consumers harmed at a rate of $136 each) and explained in the conference that they are not relevant and based on an old methodology—and now refuses to identify *any* methodology regarding the harm to consumers that it contends resulted from the alleged lack of a simple online cancelation method. J. App. at 062–64. Undeniably, the FTC possesses documents, data, and (at minimum) a description of the method used to arrive at its original response—and it indeed admits as much, explaining that "The FTC's prior harm estimates relied on incomplete data produced by MGI in response to the FTC's 2017 Civil Investigative Demand and intended only as a preliminary estimate for purposes of mediation or settlement." Whether or not such data is purportedly "incomplete," MGI is entitled to know which documents and methods the FTC used in arriving at these monetary relief estimates. Although the FTC claims that these documents and methods are now "outdated," MGI is entitled to know what the FTC relied on previously. Either the documents and methods are the same, in which case, they remain relevant, or the documents and methods are different, in which case the FTC's change in position (and possibly inconsistency) is relevant. Either way, the FTC must provide this information. Instead, the FTC's removal of those estimates—replaced with vague descriptions that provide no meaningful detail[9]—reflects its obstructionist view of discovery. To be clear, MGI fully intends to produce—and has produced—documents relevant to calculation of claimed monetary relief, but the FTC is not entitled to

---

[9] For example, the FTC obscures its response by claiming that the relevant time period is the "earliest period permitted by the statute," rather than stating an actual date so that MGI can know if the parties disagree about "the earliest period permitted by the statute."

withhold its response describing the *method* of calculation before it has every piece of data it claims to need to input into that method.

### 2.    FTC's Position

In its Amended Response to Interrogatory 3, the FTC provides MGI exactly what it requests to the extent possible at this stage of the litigation. The FTC describes its intended methodology for calculating consumer injury and damages and the documents and information it will need to provide precise figures. To provide precise figures, however, MGI must produce updated and additional data, as MGI acknowledged during the parties' meet and confer. The FTC's prior harm estimates relied on incomplete data produced by MGI in response to the FTC's 2017 Civil Investigative Demand and intended only as a preliminary estimate for purposes of mediation or settlement. The harm caused by MGI's illegal cancellation mechanism have continued since that time. The FTC requested this data in its June 3, 2022 First Set of Requests for Production of Documents and has yet to receive it. Once MGI properly produces the necessary data, the FTC will amend its response to provide specific figures calculated using the methodology the FTC provided.

### B.    Request for Production No. 7

| Discovery Request | Objections & Response (if any) |
|---|---|
| **REQUEST FOR PRODUCTION No. 7:** All Documents Related to the calculation of monetary damages sought by the FTC, Including Documents Related to the nature and extent of any alleged injury to consumers. | The FTC objects to this request as it is vague as to what is meant by "Related to the nature and extent." The FTC also objects to the request seeking documents "Related" to the subject matter of the request as that language seeks documents covered by attorney-client and deliberative-process privilege and work-product doctrine and is therefore intended to abuse the discovery process. Notwithstanding these objections, the FTC responds by stating that requested documents, related to billing, refunds, and other Match subscription and billing information, are in Match's |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | possession, custody or control, and the FTC has requested Match produce them. |

   1.   **MGI's Position: The FTC Should Be Compelled to Provide Information About Its Claim for Monetary Relief.**

The FTC's Response to Request for Production No. 7, seeking documents related to the FTC's requested monetary relief, is similarly egregious and obstructive. The FTC refused to produce such documents, claiming that they are "in Match's possession." J. App. at 106. That position is inconsistent with the FTC's original response to Interrogatory No. 3, where the FTC somehow arrived at 64,000 consumers and an average harm of $136 per consumer. *See* J. App. at 008. The FTC is clearly referring to documents of some sort for those numbers, but it refuses to produce or otherwise identify them. Moreover, it is unlikely that the FTC does not have a single document related to its monetary relief claim that is not in MGI's possession. The FTC's response to Interrogatory No. 3 again proves the point. The FTC claimed that part of the harm to consumers included "costs imposed on consumers by time spent rectifying failed cancelation attempts." J. App. at 008. MGI is unaware of any documents about "costs imposed on consumers by time spent rectifying failed cancelation attempts." The Court should compel the FTC to produce or otherwise identify the documents it is relying on.

For the reasons stated above in connection with MGI's position as to Interrogatory No. 3, the FTC must indicate which documents it used in generating the figures provided in its original response to Interrogatory No. 3, which would be responsive to Request for Production No. 7 as well. Furthermore, the FTC's suggestion that such materials are protected by the attorney-client privilege and citation to *United States v. Frederick* are absurd in light of the fact that the FTC *already disclosed the figures* that allegedly "reflect[] the lawyer's professional assessment of what

29

to ask the jury for." 182 F.3d 496, 501 (7th Cir. 1999). As a result, any such privilege has been waived.

### 2.   FTC's Position

MGI's Request for Production No. 7 seeks materials related to damages but is vague as to what is meant by "related to the nature and extent" of the alleged injury. Regardless, the FTC is unable to produce materials underlying the calculation of "the monetary damages sought" in this case, as the damages the FTC will ultimately seek will be based on data in MGI's possession and which MGI has yet to produce to the FTC. The FTC requested updated data in its June 3, 2022 First Set of Requests for Production of Documents, but MGI has not yet provided this information.

Prior injury calculations, which are now outdated, were likewise determined using documents that MGI produced to the FTC. Further, any materials related to this outdated damages calculation which are not in MGI's possession reflect FTC counsel's professional assessments and are protected by attorney client and deliberative process privilege and work product doctrine. *See United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999) ("Suppose a lawyer prepared an estimate of his client's damages; the estimate would be numerical, but insofar as it reflected the lawyer's professional assessment of what to ask the jury for it would be attorney work product.").

## IV.   Disputed Issue #4: Discovery into the FTC's Acknowledgement that Other (Publicly Available) Cancelation Mechanisms Exist on Match.com

### A.   Requests for Admission Nos. 13–14, 17–18, 21–22, 25–26, and 29–30

| Discovery Request | Objections & Response (if any) |
|---|---|
| **REQUEST FOR ADMISSION NO. 13:** Admit that users are able to cancel their Match.com subscription via online chat. | Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff has requested that data through discovery, and MGI has to date failed to produce it. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers. MGI has represented to the FTC that Match.com offers an online chat cancellation method, but because the ambiguities described above, Plaintiff cannot admit this request.<br><br>Subject to and without waiving the foregoing objections, Plaintiff responds that in response to Match cutting customer service hours for its chat cancelation mechanism, the number of subscribers who were able to use that cancelation mechanism dropped. Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff and whether some users are unable to cancel via online chat. |
| **REQUEST FOR ADMISSION NO. 14:**  Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via online chat. | Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.<br><br>Subject to and without waiving the foregoing objections, Plaintiff responds that in response to Match cutting customer service hours for its chat cancelation mechanism, the number of subscribers who were able to use that cancelation mechanism dropped. Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures occurred during all times relevant to Count V of the FTC's complaint. MGI has represented to the FTC that Match.com offers an online chat cancellation method, but |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | Plaintiff does not have the knowledge needed to admit or deny whether such a method was available at all times relevant to Count V of its complaint. |
| **REQUEST FOR ADMISSION NO. 17:** Admit that users are able to cancel their Match.com subscription via telephone. | Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers. MGI has represented to the FTC that Match.com offers a telephonic cancellation method, but because the ambiguities described above, Plaintiff cannot admit this request. <br><br> Subject to and without waiving the foregoing objections, Plaintiff responds that in response to Match cutting customer service hours for its phone cancelation mechanism, the number of subscribers who were able to use that cancelation mechanism dropped. Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff and whether some users are unable to cancel via telephone. |
| **REQUEST FOR ADMISSION NO. 18:** Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via telephone. | Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers. |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | Subject to and without waiving the foregoing objections, Plaintiff responds that in response to Match cutting customer service hours for its phone cancelation mechanism, the number of subscribers who were able to use that cancelation mechanism dropped. Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users were able to cancel their subscription at all times relevant to Count V of the FTC's complaint via telephone than Plaintiff. MGI has represented to the FTC that Match.com offers a telephonic cancellation method, but Plaintiff does not have the knowledge needed to admit or deny whether such a method was available at all times relevant to Count V of its complaint. |
| **REQUEST FOR ADMISSION NO. 21:**  Admit that users are able to cancel their Match.com subscription via mail. | Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers. MGI has represented to the FTC that Match.com offers a cancellation method via mail, but because the ambiguities described above, Plaintiff cannot admit this request.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff. |
| **REQUEST FOR ADMISSION NO. 22:**  Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their | Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it |

| Discovery Request | Objections & Response (if any) |
|---|---|
| Match.com subscription via mail. | or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.<br><br>Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users were able to cancel their subscription at all times relevant to Count V of the FTC's complaint than Plaintiff. MGI has represented to the FTC that Match.com offers a cancellation method via mail, but Plaintiff does not have the knowledge needed to admit or deny whether such a method was available at all times relevant to Count V of its complaint. |
| **REQUEST FOR ADMISSION NO. 25:** Admit that users are able to cancel their Match.com subscription via fax. | Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers. MGI has represented to the FTC that Match.com offers a cancellation method via fax, but because the ambiguities described above, Plaintiff cannot admit this request.<br><br>Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription. |
| **REQUEST FOR ADMISSION NO. 26:** Admit that, at all times relevant to | Plaintiff objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear |

| Discovery Request | Objections & Response (if any) |
|---|---|
| Count V in Your Complaint, users were able to cancel their Match.com subscription via fax. | whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.<br><br>Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users were able to cancel their subscription at all times relevant to Count V of the FTC's complaint than Plaintiff. MGI has represented to the FTC that Match.com offers a cancellation method via fax, but Plaintiff does not have the knowledge needed to admit or deny whether such a method was available at all times relevant to Count V of its complaint. |
| **REQUEST FOR ADMISSION NO. 29:**  Admit that users are able to cancel their Match.com subscription via e-mail. | Plaintiff objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers. MGI has represented to the FTC that Match.com offers a cancellation method via fax, but because the ambiguities described above, Plaintiff cannot admit this request.<br><br>Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff. |
| **REQUEST FOR ADMISSION NO. 30:** Admit that, at all times relevant to Count V in Your Complaint, | Plaintiff objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation |

| Discovery Request | Objections & Response (if any) |
|---|---|
| users were able to cancel their Match.com subscription via e-mail. | mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.<br><br>Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users were able to cancel their subscription at all times relevant to Count V of the FTC's complaint than Plaintiff. MGI has represented to the FTC that Match.com offers a cancellation method via e-mail, but Plaintiff does not have the knowledge needed to admit or deny whether such a method was available at all times relevant to Count V of its complaint. |

1.  **MGI's Position: The FTC Should Be Compelled to Acknowledge that Other (Publicly Available) Cancelation Mechanisms Exist on Match.com**

The FTC's responses to Requests for Admission Nos. 13–14, 17–18, 21–22, 25–26, and 29–30 are indicative of the FTC's obstruction. *See* J. App. at 082–87. The FTC will not even admit that other cancelation mechanisms *exist*. As described in MGI's Motion to Dismiss, MGI contends that the availability of other, simple cancelation mechanisms defeats the FTC's ROSCA claim, regardless of whether the Online Cancelation Flow is "simple." Dkt. 20 at 27. Thus, MGI served Requests for Admission asking the FTC to admit that these other cancelation mechanisms (such as email, chat, phone, mail, and fax) exist, and have existed at all relevant times. *See* J. App. at 082–87. These should have been simple requests, with simple responses, as the availability of these alternative cancelation mechanisms is public—the FTC need only visit Match.com's website[10]—

---

[10] *See, e.g.*, *Contact Us*, MATCH.COM, https://help.match.com/hc/en-us/articles/6140024199195-Contact-Us (last visited Aug. 29, 2022) (providing instructions for how to contact the Match Customer Care team, including via chat

and MGI provided discovery during the CID proving the existence of such mechanisms, including interrogatory responses and documents with examples of cancelations through those other avenues. J. App. at 175–76. Thus, these should have been easy admissions "to narrow the issues to be resolved at trial by identifying and eliminating those matters on which the parties agree." *Longoria*, 2016 WL 6893625, at *5.

Instead, the FTC gave evasive and improper non-answers. For example, instead of admitting that users are able to cancel Match.com subscriptions via email, the FTC responded, "Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff." J. App. at 087. The FTC's responses to Requests for Admission asking about other cancelation mechanisms were similar. *See* J. App. at 082–87. This response is inadequate in multiple ways. First, the FTC fails to admit, deny, or state why it cannot truthfully admit or deny the question asked—whether users are or were "able to cancel their Match.com subscription via" various methods. The requests ask nothing about "frequency" or malfunctions (nor does the FTC identify what "unavailability or malfunction" it is referring to that would affect, for example, email cancelations), which are irrelevant to the straightforward Request whether a user *can* cancel a subscription via email, chat, telephone, or any other mechanism. Second, the FTC's claim that MGI is "in a better position to answer whether" a cancelation mechanism is available is not a proper objection. *See Longoria*, 2016 WL 6893625, at *7. The purpose of a request for admission is to narrow the disputed issues, but that is impossible if the

---

and email); *Submit a Request*, MATCH.COM, https://help.match.com/hc/en-us/requests/new (last visited Aug. 29, 2022) (depicting Match.com's email function, where customers can select "Cancel/Billing Inquiries").

FTC refuses to answer Requests which it believes MGI can answer, particularly requests as basic as whether other cancelation mechanisms *exist*.

Instead, the FTC states that "MGI has represented to the FTC that Match.com offers a cancellation method via [online chat, telephone, mail, fax, and e-mail], but because the ambiguities described above, Plaintiff cannot admit this request"—with no explanation of *why* those representations are inadequate, particularly given the public nature of those other cancelation mechanisms. *See* J. App. at 082–87.[11] Indeed, regardless of *any* discovery the FTC could obtain from MGI, the existence of these cancelation mechanisms is publicly available, and the FTC can independently verify their existence via Match.com. Thus, the FTC's responses do not fairly engage with the substance of the requests, such that the FTC will not admit facts that are obviously true. The Court should compel the FTC to fairly respond to the requests.

Finally, the FTC again applies nonsensical, strained interpretations to words with plain meanings to justify its improper nonresponse to Requests for Admission Nos. 13–14, 17–18, 21–22, 25–26, and 29–30, claiming that MGI's use of the word "able" renders these Requests unanswerable. A reasoned interpretation of the phrase "able to cancel" requires the FTC to answer whether such cancel mechanisms were in existence or available to users. The FTC's citation to *Glazer's* and fabricated reason as to why it cannot admit or deny MGI's Requests do not satisfy its discovery obligations. *See Glazer's Wholesale Drug Co. v. Klein Foods, Inc.*, No. 3-08-CV-0774-L, 2009 WL 400784, at *1–2 (N.D. Tex. Feb. 17, 2009) (compelling plaintiff to submit amended responses when plaintiff would have been able to answer Requests for Admission upon reviewing additional documents). The FTC's objection to "users" is also strained, as the term is

---

[11] In its response to Request for Admission No. 29, the FTC responds that "MGI has represented to the FTC that Match.com offers a cancellation method via *fax*," but the Request asks about cancelation via *email*. The FTC's response Request for Admission No. 29 is additionally deficient for this reason.

not ambiguous. In any event, the FTC is required to "fairly respond to the substance of the matter[s]," Fed. R. Civ. P. 36(a)(4), and answer the Requests for Admission "utiliz[ing] the ordinary definition of the phrases." *Squires*, 2021 WL 1930721, at *5.

### 2.      FTC's Position

MGI mischaracterizes its request for admission, claiming that it wants the FTC to admit something that it did not ask for. Match argues that it is seeking an admission that certain cancellation methods exist, but these requests go beyond mere existence. Instead, they ask for an admission that consumers could, as a practical matter, use those cancellation methods. Whether consumers could do so, however, depends on whether defendants informed consumers of those methods. As discussed below, the FTC does not have sufficient information at this stage to admit or deny such facts. Moreover, whether consumers could and did use these various cancellation mechanisms over the entire period relevant period would be evidenced by documents and information that MGI possesses and has not provided to Plaintiff. Plaintiff has therefore met its obligation to "either admit or deny the matters stated in the requests, or state in detail why plaintiffs cannot truthfully admit or deny such matters." *Glazer's Wholesale Drug Co. v. Klein Foods, Inc.*, No. 3-08-CV-0774-L, 2009 WL 400784, at *2 (N.D. Tex. Feb. 17, 2009).

These 10 requests are paired in five groups, with each pair relating to a particular cancellation mechanism and asking (1) whether "users are able to cancel" their Match.com subscription through that mechanism; and (2) whether users, at all times relevant to Count V in the FTC's complaint, were able to cancel their Match.com subscription through that mechanism. In response to the first inquiry, the FTC noted that the phrasing is susceptible to multiple interpretations, rendering it vague and ambiguous. Specifically, it is not clear whether Match intends "users" to refer to some users, or all of its users. "Able to cancel" is ambiguous because a

user cannot use a cancellation mechanism they are unaware of, and the FTC does not have the possession, custody or control of the information showing whether users are informed of or aware of every cancellation mechanism Match purports to offer. Moreover, the FTC does not know whether Match's cancellation mechanisms were fully functional such that users were "able to cancel" using those mechanisms. These are not theoretical concerns: email evidence suggests that Match.com's online cancellation mechanism in many instances did not function properly. Match.com's online cancellation flow required that users enter their password; however, their password reset flow in many instances did not work properly. Further, many customers complained that even after completing Match.com's online cancellation flow properly, their cancellation was ineffective.

The second inquiry is vague and ambiguous for the reasons described above: it is not clear whether it refers to some or all users, and whether it is referring to the availability, awareness, and functionality of the various mechanisms. In addition to those issues, the request also spans the entire relevant period of the complaint, adding another layer of knowledge that the FTC does not have. Nevertheless, the FTC has admitted that MGI has represented that it offers the various cancellation methods. But the FTC of course does not have to accept MGI's representations as fact.

Unsatisfied, Match points to two URLs that generally describe how to contact Match in an effort to claim that the answers to its requests are publicly available. *See* Motion at 15. At most, this points to the fact that the pages exist, something the FTC has never disputed. However, the existence of these webpages does not mean that the cancellation mechanisms function properly, or that users were aware of and able to use them, much less that all users were aware of and able to use them for the entirety of the relevant period. There is no indication of how MGI made users

aware of these URLs or how users otherwise would know about them. Further, the first URL does not even mention cancelation—it is simply a page that that tells users how to send an email and chat with Match customer service. The second URL points to a web form that appears to allow users to submit requests to Match with a general reference to cancellation, but there is no indication of what happens upon the request submission, much less whether the request is submitted via e-mail or another transmission mechanism. Notably, this is the only evidence MGI provides showing the existence of these feature. Even if these two URLs could be relied upon to conclude that these mechanisms "exist" (regardless of whether they are functional or known to any customer), that does not establish whether they have existed "at all relevant times." Moreover, Match's claim that the FTC has not stated why it cannot admit or deny the requests is incorrect. As described above, the FTC has laid out precisely why it does not have the knowledge to admit or deny the requests. The FTC has more than met its obligations. *See Klein Foods*, 2009 WL 400784, at *2.

## V.   Disputed Issue #5: Discovery into the FTC's Acknowledgement that the Challenged Practices in Counts III–IV Were Permanently Discontinued in 2019.

### A.   Requests for Admission Nos. 1–6

| Discovery Request | Objections & Response (if any) |
|---|---|
| **REQUEST FOR ADMISSION NO. 1:** Admit that the Match.com Guarantee challenged in Your Complaint ceased by at least mid- 2019. | Plaintiff objects to this request because the terms "Match.com Guarantee," "ceased," and "mid-2019" are vague and ambiguous. The request is not clear as to what version of the Match.com Guarantee it is referring to, to the extent the Guarantee changed during the period relevant to the complaint. "Ceased" is ambiguous, as it does not indicate whether the conduct was stopped voluntarily, whether the suspension was temporary or permanent, or whether the conduct restarted. Plaintiff objects to this request as it implies that the Match.com Guarantee was ceased voluntarily, rather than in response to the FTC's investigation and in anticipation of a possible FTC enforcement action. Plaintiff also objects to this request because the requested information is already in Match's |

41

| Discovery Request | Objections & Response (if any) |
|---|---|
|  | possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information. Plaintiff is also aware that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the "guarantee practice at issue in Count III" was permanently discontinued in April 2019. But again, Plaintiff cannot independently assess the truth or falsity of that claim until Defendants produce the documents and information on that topic that the FTC has requested through discovery and which Defendants have failed to produce.<br><br>Subject to and without waiving the foregoing objections, Plaintiff denies. |
| **REQUEST FOR ADMISSION NO. 2:** Admit that the Match.com Guarantee challenged in Your Complaint was permanently discontinued in April 2019, as articulated in Exhibit A. | Plaintiff objects to this request because the terms "Match.com Guarantee," "permanently discontinued," and "mid-2019" are vague and ambiguous. The request is not clear as to what version of the Match.com Guarantee it is referring to, to the extent the Guarantee changed during the period relevant to the complaint. "Permanently discontinued" is ambiguous as it does not indicate whether the conduct was stopped voluntarily or whether the conduct may restart. Plaintiff objects to this request as it implies that the Match.com Guarantee was voluntarily discontinued, rather than in response to the FTC's investigation and in anticipation of a possible FTC enforcement action. There is evidence, as described in Plaintiff's complaint and discovery responses, that Match's conduct is likely to recur because it knowingly deceived its consumers for years through the means described in the complaint, profited off that deception, and only claimed to have abandoned its unlawful practices when placed under investigation.<br><br>Plaintiff also objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information. Plaintiff is also aware that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the "guarantee practice at issue in Count III" was permanently discontinued in April 2019. But again, Plaintiff cannot independently assess the truth or falsity of that claim until Defendants produce the documents and information on that topic that the FTC has requested through discovery and which Defendants have failed to produce. MGI has repeatedly relied on its representations that it does not plan on resuming the conduct challenged in Count III, but such claims are not credible. Despite knowing for years that these practices caused consumer harm, MGI only represented that it stopped engaging in those practices while under investigation and in the face of impending litigation, and it has repeated its claims to delay producing relevant documents and information in discovery. Further, these claims have no binding effect and do not prevent MGI from engaging in the conduct at issue.<br><br>Subject to and without waiving the foregoing objections, Plaintiff denies. |
| **REQUEST FOR ADMISSION NO. 3:** Admit that the Match.com Guarantee challenged in Your Complaint has not been offered since April 2019. | Plaintiff objects to this request because the terms "Match.com Guarantee," is vague and ambiguous. The request is not clear as to what version of the Match.com Guarantee it is referring to, to the extent the Guarantee changed during the period relevant to the complaint. Plaintiff objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information. Plaintiff is also aware that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the "guarantee practice at issue in |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | Count III" was permanently discontinued in April 2019. But again, Plaintiff cannot independently assess the truth or falsity of that claim until Defendants produce the documents and information on that topic that the FTC has requested through discovery and which Defendants have failed to produce. |
| **REQUEST FOR ADMISSION NO. 4:** Admit that the Match.com chargeback policy challenged in Your Complaint ceased by at least mid-2019. | Plaintiff objects to this request because the terms "ceased," and "mid-2019" are vague and ambiguous. "Ceased" is ambiguous as it does not indicate whether the conduct was stopped voluntarily or whether the conduct restarted. Plaintiff objects to this request as it implies that the Match.com chargeback policy was ceased voluntarily, rather than in response to a possible FTC enforcement action. Plaintiff also objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information. Plaintiff is also aware that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the Match.com's "chargeback practice" was permanently discontinued in March 2019. But again, Plaintiff cannot independently assess the truth or falsity of that claim until Defendants produce the documents and information on that topic that the FTC has requested through discovery and which Defendants have failed to produce.

Moreover, the language of Match.com's current policy as stated in its terms and conditions appears to be only cosmetically different than its previous policy. These terms provide: "If you initiate a chargeback or otherwise reverse a payment made with your Payment Method, Match may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a Match subscription. In the event that your chargeback or other payment reversal is overturned, please contact Customer Care." See Match.com Terms and Conditions, https://www.match.com/registration/membagr.aspx. |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | Subject to and without waiving the foregoing objections, Plaintiff denies. |
| **REQUEST FOR ADMISSION NO. 5:** Admit that the Match.com chargeback policy challenged in Your Complaint was permanently discontinued in March 2019, as articulated in Exhibit A. | Plaintiff objects to this request because the terms "permanently discontinued," is vague and ambiguous. "Permanently discontinued" is ambiguous as it does not indicate whether the conduct was stopped voluntarily or whether it may restart. Plaintiff objects to this request as it implies that the Match.com chargeback policy was voluntarily discontinued, rather than in response to the FTC's investigation and in anticipation of a possible FTC enforcement action. There is evidence, as described in Plaintiff's complaint and discovery responses, that Match's conduct is likely to recur because it knowingly deceived its consumers for years through the means described in the complaint, profited off that deception, and only claimed to have abandoned its unlawful practices when placed under investigation. |
| | Plaintiff also objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information. Plaintiff is also aware that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the Match.com's "chargeback practice" was permanently discontinued in March 2019, but Plaintiff cannot independently verify that information. But again, Plaintiff cannot independently assess the truth or falsity of that claim until Defendants produce the documents and information on that topic that the FTC has requested through discovery and which Defendants have failed to produce. MGI has repeatedly relied on its representations that it does not plan on resuming the conduct challenged in Count IV, but such claims are not credible. Despite knowing for years that these practices caused consumer harm, MGI only represented that it stopped engaging in those practices while under investigation and in the face of impending |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | litigation, and it has repeated its claims to delay producing relevant documents and information in discovery. Further, these claims have no binding effect and do not prevent MGI from engaging in the conduct at issue.<br><br>Moreover, the language of Match.com's current policy as stated in its terms and conditions appears to be only cosmetically different than its previous policy. These terms provide: "If you initiate a chargeback or otherwise reverse a payment made with your Payment Method, Match may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a Match subscription. In the event that your chargeback or other payment reversal is overturned, please contact Customer Care." See Match.com Terms and Conditions, https://www.match.com/registration/membagr.aspx..<br><br>Subject to and without waiving the foregoing objections, Plaintiff denies. |
| **REQUEST FOR ADMISSION NO. 6:** Admit that the Match.com chargeback policy challenged in Your Complaint has not been in effect since March 2019. | Plaintiff objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information. Plaintiff is also aware that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the Match.com's "chargeback practice" was permanently discontinued in March 2019, but Plaintiff cannot independently verify that information. But again, Plaintiff cannot independently assess the truth or falsity of that claim until Defendants produce the documents and information on that topic that the FTC has requested through discovery and which Defendants have failed to produce.<br><br>Moreover, the language of Match.com's current policy as stated in its terms and conditions appears to be only cosmetically different than its previous policy. These terms provide: "If you initiate a chargeback or otherwise reverse a payment made with your Payment Method, Match may |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a Match subscription. In the event that your chargeback or other payment reversal is overturned, please contact Customer Care." See Match.com Terms and Conditions, https://www.match.com/registration/membagr.aspx.

Subject to and without waiving the foregoing objections, Plaintiff denies. |

1. **MGI's Position: The FTC Should Be Compelled to Admit that the Challenged Practices in Counts III–IV Were Permanently Discontinued in 2019.**

The FTC's discovery obstruction does not end with cancelation-related discovery requests. MGI also served narrowly tailored discovery requests about Counts III and IV, related to Match.com's permanently discontinued guarantee and chargeback practices. The FTC can pursue claims against MGI only if there is a "fair inference of a reasonable expectation of continued violations absent restraint," *Sw. Sunsites, Inc.*, 665 F.2d at 723, such that MGI "is violating, or is about to violate" the FTC Act, *see* 15 U.S.C. § 53(b). MGI does not own, operate, or control Match.com, so it has never, and could never, violate the FTC Act through conduct on Match.com. Even putting that aside, however, Match Group, LLC and Match.com are not "violating, or . . . about to violate" the FTC Act because (among other reasons) the challenged practices were discontinued in 2019 (as the FTC expressly averred in its Complaint) and will not be reinstituted. MGI sought discovery from the FTC to understand the basis for its allegations to the contrary. Yet, without fail, the FTC obstructed those discovery requests.

The FTC's responses to Requests for Admission Nos. 1–6 are a perfect example of that obstruction. The Requests seek uncontroversial admissions that the guarantee and chargeback policies were discontinued in April 2019 and March 2019, respectively. *See* J. App. at 075–079. It

should have been easy for the FTC to admit, given that the FTC's *own Complaint* alleges that those practices were discontinued in 2019. Am. Compl. ¶ 39 (noting that guarantee was in effect "[u]ntil mid-2019"); *id.* ¶ 62 (noting that chargeback policy was in effect "[u]ntil mid-2019"). Incredibly, however, the FTC responded not with simple admissions—as it should have—but instead with an avalanche of baseless objections that it did not understand the terms "Match.com Guarantee," "ceased," "permanently discontinued," and "mid-2019," followed by denials that are provably incorrect. *See* J. App. at 075–76. The FTC also claims that Match.com's current terms of use contain a chargeback policy that is only "cosmetically different than its previous policy," contradicting its own complaint where the FTC alleges that the chargeback policy at issue was in effect "[u]ntil mid-2019." *See* J. App. at 077–79; Am. Compl. ¶ 62.

The FTC then asserted that MGI "has claimed through unsworn and unsubstantiated statements by its attorneys" that the practices were discontinued in 2019, but that the FTC "cannot independently verify that information." This is absurd. These responses do not in any way "fairly respond to the substance of the matter," as required by Fed. R. Civ. P. 36(a)(4), as they refuse to admit to the discontinuance. The FTC also objected that "the requested information is already in [MGI's] possession, custody, or control, and [MGI] is in a better position to answer this question," J. App. at 075–079, which is not a proper response to a request for admission. *Longoria*, 2016 WL 6893625, at *5. The FTC acknowledges "that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the" practices permanently ceased, but it again insists that it "cannot independently assess the truth or falsity of that claim."

Even aside from the objections, the FTC's responses are blatantly inaccurate. For example, although the FTC claims that MGI has claimed discontinuance only "through unsworn and unsubstantiated statements by its attorneys," MGI served interrogatory responses verified by an

MGI officer stating, in relevant part, that the guarantee practice "was actually permanently discontinued in April 2019" and that the chargeback practice "was actually permanently discontinued in March 2019." *See* J. App. at 145. The FTC's reliance on *FTC v. Agora Financial LLC* is misplaced, because MGI has provided verified interrogatory responses—under penalty of perjury—that the guarantee and chargeback practices have permanently ceased. 447 F. Supp. 3d 350, 369–70 (D. Md. 2020). The defendants in *Agora* merely "assert[ed]" that their conduct had ceased and had no legally binding representation to support it—unlike MGI.

Furthermore, the FTC's claim that it "cannot independently verify" that the challenged practices were discontinued is ridiculous. *See, e.g.*, J. App. at 075–078. The Match.com guarantee was publicly offered on Match.com's website, and the chargeback policy was clearly disclosed in Match.com's public Terms of Use. Thus, to "verify" that these challenged practices have been discontinued, the FTC need only visit Match.com. Instead, the FTC went to great lengths—reversing course from its own Amended Complaint allegations, and sticking its head in the sand to ignore publicly available information—to avoid admitting that Match.com discontinued the challenged practices, even though it is the undeniable truth. *See Lopez*, 327 F.R.D. at 581 (describing the "candor" required "in responding to" "[d]iscovery by interrogatory"). When confronted, the FTC promised only to "amend where appropriate" to "provide additional explanation concerning [its] inability to respond." J. App. at 163. But there is no excuse for the FTC's refusal to respond straightforwardly.

Contrary to the FTC's suggestion and citation to *Lakehead*, MGI does not merely "disagree" with the FTC's "refusal to admit certain matters," nor does MGI assert that the FTC's denials are simply "unsupported by the evidence." *Lakehead Pipe Line Co. v. Am. Home Assur. Co.*, 177 F.R.D. 454 (D. Minn. 1997). The FTC's denials are *proven false* by the evidence, and the

49

FTC's refusal to admit these Requests egregiously contravenes the purpose of Requests for Admission "to narrow the issues to be resolved at trial." *Longoria*, 2016 WL 6893625, at *5.[12]

Finally, the FTC's response to Request for Admission No. 3 is inconsistent with its responses to Requests for Admission Nos. 1 and 2. In the latter, the FTC provided an answer, but in Request for Admission No. 3, it did not. The FTC should be compelled to answer Request for Admission No. 3 for all of the reasons stated above, including that its failure to answer is inconsistent with its answers to Requests for Admission Nos. 1 and 2.[13]

### 2. FTC's Position

The FTC has provided clear and unambiguous denials to MGI's RFAs 1-2 and 4-8, as required by Fed. R. Civ. P. 36. The FTC further explained thoroughly why it could neither admit nor deny RFA 3. Disappointed with those responses, MGI now asks the Court to compel the FTC to provide a response to its liking. This request is improper, and the Court should deny it.

In response to an RFA, a party may make specific objections, admit or deny the matter requested, make a qualified admission or partial denial explaining the basis for any qualification, or assert that it lacks knowledge sufficient to admit or deny the request following a reasonable inquiry.  Fed. R. Civ. P. 36(a)(4). A requesting party may only move to determine the sufficiency of an answer or objection. Fed. R. Civ. P. 36(a)(6). Courts addressing such motions do not compel a different answer to an RFA simply because the requesting party "is unsatisfied with [the responding party's] denials."  *Berd v. De Bastos*, No. 1:16-CV-339, 2019 WL 1244694, at *5

---

[12] The FTC cites two additional cases— *In re Carney*, 258 F.3d 415, 418 (5th Cir. 2001) and *Warnecke v. Scott*, 79 F. App'x 5, 6 (5th Cir. 2003)—that both address how Request for Admission responses may be used at the summary judgment stage. Such cases are irrelevant here because MGI makes no argument regarding how it will or will not use any discovery at summary judgment.

[13] The FTC added a citation to *Berd v. De Bastos*, No. 1:16-CV-339, 2019 WL 1244694, at *5 (D.N.D. Mar. 18, 2019) minutes before filing deadline and not before the September 12 conference. Thus, MGI has not had a fair chance to respond to it.

(D.N.D. Mar. 18, 2019).  A disagreement with an answering party's refusal to admit certain matters and an argument – such as MGI's contention – that the record supports a party's claimed RFA is generally not a basis to require the answering party to provide a different answer.  *Lakehead Pipe Line Co. v. Am. Home Assur. Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997) ("Rule 36(a) does not authorize a Court to prospectively render determinations concerning the accuracy of a denial to a Request for Admission, or to order that the subject matter of the request be admitted because the opposing party's unequivocal denial is asserted to be unsupported by the evidence.").  Moreover, requests for admissions are properly used for facts or facts as applied to law, not pure legal conclusions such as those proposed by MGI in RFAs 1-8. *See In re Carney*, 258 F.3d 415, 418 (5th Cir. 2001); *Warnecke v. Scott*, 79 F. App'x 5, 6 (5th Cir. 2003).  Here, MGI attempts to use undefined terms, unsupported interrogatory responses, and self-serving assertions of its counsel to limit the FTC to legal conclusions that are unsupported by the FTC's investigation to date.

In response to RFA's 1-8, the FTC has provided expansive answers that satisfy above and beyond Rule 36(a)(4)'s requirements.  The FTC made specific objections complete with detailed explanations supporting the FTC's lack of sufficient knowledge to admit or deny the RFAs as written.

MGI attempts to improperly use undefined terms and self-serving assertions in RFAs 1-8 to seek legal conclusions about whether a permanent injunction in necessary.  These legal conclusions are reserved for determination by this Court.  Similar attempts have been denied by district courts.  In *FTC v. Agora Fin., LLC*, the district court was faced with a crafty defendant that attempted to skate liability by claiming that it voluntarily ceased operating the challenged practices in its subscription services.  447 F. Supp. 3d 350, 369-70 (D. Md. 2020).  The Court rejected that self-serving representation because the defendants – like MGI – had the ability to

re-start their promotions at any time.  *Id.*  Similarly, the FTC maintains that MGI's self-serving assertions are insufficient to commit to undefined terms such as "ceased" and "permanently discontinued," given that consumers continue to maintain subscriptions to MGI platforms, that MGI continues to withhold responsive documents, and that MGI's current chargeback policy may represent a present and continuous violation of the law.  Thus, the FTC maintains that its answers to RFA's 1- 8 are complete as required by the federal rules.

Lastly, contrary to MGI's assertion that this conduct has "permanently ceased," there is good reason to believe that MGI will restart these practices when the spotlight of this lawsuit is off, if indeed they ever suspended the practices in the first place. MGI only represented that it ceased these practices after an FTC investigation and on the eve of this lawsuit, despite having notice of the injury these practices caused for years. Of course, MGI's claims of having "permanent ceased" these practices have no binding effect. Notably, MGI has never even claimed to have ceased its illegal cancellation practices. Lastly, despite MGI's assertions to the contrary, evidence suggests that MGI's unfair chargeback practices may be ongoing on Match.com and MGI's other dating sites.[14]

---

[14] Match.com's publicly available terms and conditions currently state: "If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, Match may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a Match subscription. In the event that your chargeback or other payment reversal is overturned, please contact Customer Care." *See* Match.com's Terms of Use Agreement (Sept. 1, 2022), https://www.match.com/registration/membagr.aspx. In other words, consumers do not have their account access reinstated automatically—they must contact customer care, something a customer would not know without combing through Match.com's lengthy terms of use document. Even then, these terms do not make clear what, if anything, customer care would do to resolve the issue or whether they would reinstate account access. MGI's other dating sites include similar terms also buried in their terms of use. Several of MGI's other dating websites contain similar terms. *See, e.g.*, Tinder's Terms of Use, https://policies.tinder.com/terms/us/en ("If you initiate a chargeback or otherwise reverse a payment made with your Payment Method, Tinder may terminate your account immediately in its sole discretion.); OkCupid's Terms and Conditions, https://help.okcupid.com/hc/en-us/articles/6640690915469-Terms-Conditions ("If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, OkCupid may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a OkCupid subscription."); and Plenty of Fish Terms of Use Agreement, https://www.pof.com/terms (same). These policies provide that customer may lose account access by

B.    Requests for Admission Nos. 7–8

| Discovery Request | Objections & Response (if any) |
|---|---|
| **REQUEST FOR ADMISSION NO. 7:**  Admit that, as of the deadline for your response to this Request, Your investigation has failed to reveal any evidence of plans by Match.com to reinstate the Match.com Guarantee. | Plaintiff objects because "plans" is vague and ambiguous as to whether it refers to specific actions that it intends to take, general objectives it wants to take, or a likelihood that it may take certain actions in the future. Plaintiff objects because the requested information is not relevant to any claim or defense in this matter and is not reasonably calculated to lead to discoverable evidence. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence. Having "plans" to restart illegal conduct is not the standard for injunctive relief, rather the relevant inquiry is likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies. As this Court found when denying Match's motion to dismiss, the FTC's complaint met the applicable standards to show a likelihood of recurrence. *See* Dkt. 86 (citing to standards related to likelihood of recurrence and reasonable expectation of continued violations absent restraint). As of today, before Plaintiff has had an opportunity to take any discovery on this issue, Plaintiff does not have any evidence regarding Match's "plans" – defined to mean specific actions MGI intends to take as outlined in internal or nonpublic documents – regarding its guarantee program. Plaintiff has evidence, as described in its complaint and discovery responses, that Match's conduct is likely to recur because it knowingly deceived its consumers for years through the means described in the complaint, profited off that deception, and only claimed to have abandoned its unlawful practices when placed under investigation. |
| **REQUEST FOR ADMISSION NO. 8:**  Admit that, as of the deadline for your response to this Request, Your | Plaintiff objects because "plans" is vague and ambiguous as to whether it refers to specific actions that it intends to take, general objectives it wants to take, or a likelihood that it may take certain actions in the future. Plaintiff objects to |

seeking a chargeback, and they do not provide for a means of having account access reinstated should the customer have its chargeback reversed.

| Discovery Request | Objections & Response (if any) |
|---|---|
| investigation has failed to reveal any evidence of plans by Match.com to reinstate the Match.com chargeback policy challenged in Your Complaint. | this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence. Having "plans" to restart illegal conduct is not the standard for injunctive relief, rather the relevant inquiry is likelihood of recurrence.<br><br>Subject to and without waiving the foregoing objections, Plaintiff denies. As this Court found when denying Match's motion to dismiss, the FTC's complaint met the applicable standards to show a likelihood of recurrence. See Dkt. 86 (citing to standards related to likelihood of recurrence and reasonable expectation of continued violations absent restraint). As of today, before Plaintiff has had an opportunity to take any discovery on this issue, Plaintiff does not have any evidence regarding Match's "plans" – defined as specific actions it intends to take – regarding its chargeback policy. Plaintiff anticipates uncovering such evidence in discovery. Plaintiff has evidence, as described in its complaint and discovery responses, that Match's conduct is likely to recur because it knowingly deceived its consumers for years through the means described in the complaint, profited off that deception, and only claimed to have abandoned its unlawful practices when placed under investigation. |

1.    **MGI's Position: The FTC Should Be Compelled to Admit that the Challenged Practices in Counts III–IV Were Permanently Discontinued in 2019.**

The FTC's Responses to Requests for Admission Nos. 7 and 8 are also inadequate and evasive. Those Requests specifically asked the FTC to admit that "***as of the deadline for [the FTC's] response***," it had no evidence that Match.com plans to reinstate either the guarantee or the chargeback policy. *See* J. App. at 079. The FTC apparently has not identified any such evidence, as it stated in its response that it "does not have any evidence regarding Match's 'plans.'" *See id.*

at 079–80.[15] Rather than admitting the Requests, however, the FTC continued that it "anticipates uncovering such evidence in discovery," and complained that it has not "had an opportunity to take any discovery on this issue." *Id.* But the Request did not ask whether the FTC believed it would uncover evidence in the future, or for the reason that the FTC thinks it does not currently have evidence of any plans (and therefore must admit). *See* Fed. R. Civ. P. 36(a)(4) (requiring a party to "fairly respond to the substance of the matter"). Because the FTC has no evidence as of the deadline for its response, it must admit Requests for Admission Nos. 7 and 8.

## 2. FTC's Position

The FTC has directly and fully responded to both RFA 7 and 8.  First, the FTC objected that these requests are vague as to what MGI means by "plans." It is unclear whether MGI intends this request to be limited to internal documents that state an intention to reinstate a purportedly suspended policy or whether the FTC can point to other facts establishing a "plan" to reinstate a policy—for example, evidence that their chargeback policy may never have been suspended in the first place.[16] Moreover, this Court has held that the FTC can establish a likelihood of recurrence by pointing to MGI's past actions. *See* Doc. 86 at 11 (noting that "the FTC need only allege practices 'giving rise to a "fair inference of a reasonable expectation of continued violations" absent restrain'" and that "simply because the Complaint contains allegations of past violations does not mean that the FTC has not sufficiently alleged that similar violations are likely to reoccur") Accordingly, the Court may find that MGI's conduct is likely to recur based on the fact that MGI only suspended its policy (if indeed it did) on the eve of litigation and has continued it

---

[15] It is not accurate that the FTC "does not have any evidence" regarding MGI's "plans"; MGI's verified interrogatory responses state that the challenged policies were permanently discontinued years ago. *See* J. App. at 145.

[16]

on its other dating sites. It may likewise consider the egregiousness of the illegal conduct or that the violations were made with knowledge.

Moreover, to the extent that MGI intends this request to be limited to internal documents describing an intention to reinstate, the FTC explained that MGI has withheld documents concerning these counts. Given that MGI claims that the purported suspension took place in 2019 and that MGI has not produced documents on these subjects since 2017, the FTC of course would not have any such internal documents. Such an admission, however, is irrelevant to this case.

The vagueness of the requests is underscored by MGI's own characterization of the requests as admissions regarding permanent discontinuance. The very fact that MGI titles this section "Admit that the Challenged Practices in Counts III-IV Were Permanently Discontinued in 2019" confirms the validity of the FTC's vagueness objections. Without ever using the terms "ceased" and "permanently discontinued" in RFAs 7 and 8, MGI extrapolates – without citing to any supporting authority  –  that an affirmative response to RFA 7 and/or 8 compels the legal conclusion that MGI has permanently discontinued the challenged practices absolving the need for a permanent injunction. As discussed, Match.com's current chargeback policy may still violate the law, and MGI may be engaging in similar law violations on its other dating sites. *See* FTC Response at V.A.2. The FTC maintains that given that consumers continue to maintain subscriptions to MGI platforms, that MGI continues to withhold responsive documents, and that MGI's current chargeback policy may represent a present and continuous violation of the law the FTC has provided complete answers to RFA's 7 and 8 and maintains the right to supplement its responses, if necessary, after the appropriate discovery is produced.

## VI.   Disputed Issue #6: Discovery into the Basis for the FTC's Belief that MGI Is Violating or About to Violate the FTC Act

### A.   Interrogatory No. 1

| Discovery Request | Objections & Response (if any) |
|---|---|
| **INTERROGATORY No. 1:** Identify and Describe the basis for Your belief that Match Group, Inc. "is about to violate" the FTC Act, Including a statement of all facts and evidence that You believe give rise to a fair inference of a reasonable expectation of continued violations absent restraint. | The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory as it is overbroad, vague, unduly burdensome, and not proportional to the needs of the case. Additionally, the FTC objects to this request to the extent that it seeks information that is more readily available to Match. Moreover, this Interrogatory is vague as it conflates the pleading standard the FTC must meet to bring in an action in federal court—"is violating or is about to violate"—with the standard courts use to determine whether the FTC can obtain a permanent injunction. The Court has already ruled in the FTC's favor on the precise question of whether the FTC met the pleading standard in this action, whether MGI "is violating, or is about to violate." Dkt. 86. The FTC is therefore construing this interrogatory to refer to the basis for the FTC's belief that a permanent injunction is appropriate in this case because there is a reasonable expectation of continued violations by Match of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Section 4 of ROSCA, 15 U.S.C. § 8403, absent restraint. The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. In fact, the FTC has requested that Defendant MGI produce documents on this topic and others in discovery, but to date Defendant has refused to produce them, hampering Plaintiff's ability to answer this Interrogatory. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Subject to and without waiving the foregoing objections, the FTC responds that it has already disclosed to Match the basis for Plaintiff's belief that a reasonable expectation exists that Match would violate the law absent restraint, allegations this Court found sufficient to reject Match's contrary motion to dismiss arguments. *See* Dkts 1, 20, 27, |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | and 86. First, there is no evidence that Match's cancellation practices, which the FTC alleges violates ROSCA, have changed since the beginning of the FTC's investigation of Match and thus Match has been, is currently, and will continue, to violate the law unless placed under order. Second, to the extent Match has discontinued other practices, even if Match were not currently violating the law, which it is, past conduct can indicate "that there is a reasonable likelihood of further violations." SEC v. Blatt, 583 F.2d 1325, 1334 (5th Cir. 1978).<br><br>Specifically, in deciding whether to issue an injunction courts in the Fifth Circuit look at a number of factors, including: the egregiousness of the defendant's actions; the isolated or recurrent nature of the infraction; the degree of scienter involved; the sincerity of the defendant's assurances against future violations; the defendant's recognition of the wrongful nature of his conduct; and whether the defendant's occupation presents opportunities for future violations. *See* Dkt. 27 at 6 (citations omitted). Each of these factors support the issuance of an injunction here. Match engaged in egregious, recurring conduct with the scienter of knowing it was earning money at its customer's expense, as described in paragraphs ¶¶ 3, 23, 29-37, 50, 57-59, 64 of the complaint.<br><br>Match has yet to offer sincere assurances against future violations; it only suspended its activities while under federal investigation for its unlawful conduct and has not admitted that any of its practices were deficient in any manner. Moreover, Match has not taken any action to bind itself against engaging in the challenged practices in the future. Match's ability to engage in this conduct on this platform and the dozens of other platforms it owns and controls, would allow it to easily resume and expand any of the practices challenged in the complaint. *See* Compl. ¶¶ 10-15, 64; *see also* Dkt. 27 at 6-7.<br><br>Match knew that its problems were longstanding, affected all five counts described in the complaint, and failed to correct its wrongdoing. Match employees noted long-standing problems with the guarantee, including that the tracker was flawed, that it had a poor redemption flow, and that even eligible consumers missed redeeming the |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | guarantee. *See* MATCHFTC344243, MATCHFTC415890, MATCHFTC452091, MATCHFTC467915, MATCHFTC469164, MATCHFTC521299, MATCHFTC568737, MATCHFTC644115, MATCHFTC647443 (internal correspondence describing problems with the guarantee). The numbers perfectly illustrate the egregiousness of Match's practices, of more than 2.5 million subscriptions sold that were subject to the guarantee, not even 2 percent of subscribers redeemed the guarantee whereas close to half were billed for at least one additional subscription period. See Match's May 30, 2017, letter to the FTC. Because Match only stopped this practice when under federal investigation without admitting wrongdoing, despite knowing the long-standing and widespread harm caused by its practices, Match is likely to engage in the same or similar wrongdoing, including the institution of a similar guarantee, unless under order. Likewise, Match egregiously kept its consumers' money while removing paid-for services of those consumers who initiated a chargeback that Match successfully challenged. *See* Match's MATCHFTC429717, MATCHFTC313570, MATCHFTC312357. Match's chargeback behavior is "likely to recur," in part, because it has never stopped— Match appears to continue to engage in similar practices across its other dating websites, including PlentyOfFish, Tinder, and OkCupid. *See* F01-MG-0028770- F01-MG-0028773 (terms of use of MGI's dating platforms). <br><br>Last, Match's ROSCA practices are as egregious as the rest. Match's own records characterize the online cancelation process as confusing, misleading, in need of repair, hard to find, and tedious. *See* MATCHFTC669602, MATCHFTC669157, MATCHFTC667211, MATCHFTC646192, MATCHFTC604834, MATCHFTC604757, MATCHFTC601548, MATCHFTC601397, MATCHFTC579050, MATCHFTC568900, MATCHFTC467915, MATCHFTC545351, MATCHFTC543666, MATCHFTC543542, MATCHFTC529047, MATCHFTC528098, MATCHFTC519412, MATCHFTC499728, MATCHFTC495267, MATCHFTC494559, MATCHFTC491446, MATCHFTC485296, MATCHFTC485041, MATCHFTC477153, MATCHFTC473469, |

| Discovery Request | Objections & Response (if any) |
| --- | --- |
| | MATCHFTC464887, MATCHFTC571491, MATCHFTC429717, MATCHFTC417536, MATCHFTC417535, MATCHFTC406132, MATCHFTC405364, MATCHFTC371904, MATCHFTC369268, MATCHFTC336923, MATCHFTC320168, MATCHFTC313402, MATCHFTC312903, MATCHFTC306318 (internal correspondence and documents identifying problems with cancellation flow ). Match designed and refused to fix a misleading cancelation process that, for at least ten years, allowed consumers to think they had canceled their subscriptions when, in fact, they had just been duped by the cancelation process. The evidence cited above shows that is Match currently violating the law, has done so knowingly, and will continue to do so absent restraint. The FTC also refers Match to the FTC's responses to Interrogatories 2 through 7.<br><br>Match's longstanding practice of knowingly engaging in egregious business practices, coupled with its failure to even acknowledge its wrongdoing, support an injunction in this matter.<br><br>Finally, Plaintiff notes that some of the illegal conduct that MGI has represented has ceased may in fact be ongoing on Match.com or MGI's other dating sites. Specifically, Match.com's current chargeback policies may still violate the law as alleged in Count IV. Its publicly available terms and conditions currently state: "If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, Match may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a Match subscription. In the event that your chargeback or other payment reversal is overturned, please contact Customer Care." See Match.com's Terms of Use Agreement (Sept. 1, 2022), https://www.match.com/registration/membagr.aspx. In other words, consumers do not have their account access reinstated automatically—they must contact customer care, something a customer would not know without combing through Match.com's lengthy terms of use document. Even then, these terms do not make clear what, if anything, customer care would do to resolve the issue. Moreover, MGI's other dating sites provide include similar terms |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | buried in their terms of use documents, although these sites are silent as to whether consumers even have the option to get their account reinstated through customer service. See, e.g., Tinder's Terms of Use, https://policies.tinder.com/terms/us/en ("If you initiate a chargeback or otherwise reverse a payment made with your Payment Method, Tinder may terminate your account immediately in its sole discretion."); OkCupid's Terms and Conditions, https://help.okcupid.com/hc/en-us/articles/6640690915469-Terms-Conditions ("If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, OkCupid may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a OkCupid subscription."); Plenty of Fish Terms of Use Agreement, https://www.pof.com/terms (same); Hinge Terms of Use Agreement ("If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, Hinge may terminate your account immediately in its sole discretion"). In sum, any changes appear to not have remedied MGI's law violations, and MGI's other dating sites likewise may have illegal chargeback policies. At a bare minimum, these policies, which are central to Count IV, and the ambiguity concerning how MGI's dating sites are implementing them provide the FTC a good-faith basis to seek further information in discovery.<br><br>MGI has repeatedly relied on its representations that it has ceased and does not plan on resuming the conduct challenged in Counts III and IV, but such claims are not credible. First, despite knowing for years that these practices caused consumer harm, MGI only represented that it stopped engaging in those practices while under federal investigation and in the face of impending litigation, and it has repeated its claims to delay producing relevant documents and information in discovery. These claims also have no binding effect and do not prevent MGI from engaging in conduct that it has never acknowledged was wrong. Moreover, and as described above specifically with respect to MGI's chargeback practices, publicly available evidence calls into question whether MGI has ceased its practice at Match.com, let alone other websites. |

1.      **MGI's Position: The FTC Should Be Compelled to Disclose the Basis for Its Belief that MGI Is Violating or About to Violate the FTC Act.**

MGI's discovery requests about the basis for the FTC's belief that MGI is violating or about to violate the FTC Act are particularly important, given that the FTC refuses to admit that the challenged practices were discontinued and there are no plans to reinstitute them. Yet the FTC likewise stonewalled these discovery requests.

In Interrogatory No. 1, MGI asked the FTC to identify and describe the basis for its belief that MGI is "about to violate" the FTC Act, including by identifying the facts and evidence supporting that belief. The FTC objected that the Interrogatory "seeks information that is in [MGI's] possession" and/or seeks information that is "readily available to [MGI]." *See* J. App. at 055. However, "a party cannot properly object to an interrogatory on the basis that it seeks information that is within . . . the requesting party's possession." *VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-CV-764-X, 2021 WL 5176839, at *27 (N.D. Tex. Nov. 8, 2021). In any event, MGI asked the FTC to "Identify and Describe the basis" of its beliefs and allegations, but the FTC has never identified the basis for its beliefs, so that information is not in MGI's possession.

Instead, the FTC provides only tautological assertions such as that "there is no evidence that Match's cancellation practices, which the FTC alleges violates ROSCA, have changed since the beginning of the FTC's investigation of Match.com and thus Match.com has been, is currently, and will continue, to violate the law unless placed under order." J. App. at 056. In other words, the FTC asserts that because Match.com has not changed its cancelation practices since the FTC began investigating MGI, and the FTC says they violate the law, MGI is therefore violating the law. Yet, again, the FTC fails to articulate *how* Match.com's cancelation practices violate the law.

In its August 25 Letter, the FTC agreed to address only one of the many deficiencies in its response to Interrogatory 1 by amending to include Bates numbers. J. App. at 162. But the response

62

with these added Bates numbers remains insufficient because it does not explain the FTC's belief that there is "a fair inference of a reasonable expectation of continued violations absent restraint." J. App. at 055–60. Merely citing documents that show ways that Match.com would improve Match.com's Online Cancelation Flow is simply not equivalent to explaining how or why Match.com's Online Cancelation Flow allegedly violates ROSCA. Furthermore, the response, like the responses to Requests for Admissions 1–6, wrongly states that MGI "has not taken any action to bind itself against engaging in the challenged [guarantee and chargeback] practices in the future," which is (and has long been) false. *E.g.*, J. App. at 056. Furthermore, the evidence the FTC cites directly contradicts the allegations in its *own complaint* that acknowledge that the guarantee and chargeback practices ceased years ago. Am. Compl. ¶ 39 (noting that guarantee was in effect "[u]ntil mid-2019"); *id.* ¶ 62 (noting that chargeback policy was in effect "[u]ntil mid-2019"). The fact that the Court ruled that the FTC satisfied a *pleading* standard does not mean that the FTC has satisfied its *discovery* obligations, as pleadings require only allegations, while MGI's interrogatories request *facts*. *See Jorge v. Atl. Hous. Found., Inc.*, No. 3:20-CV-2782-N, 2022 WL 1082345, at *4 (N.D. Tex. Apr. 11, 2022) (Horan, M.J.) (distinguishing "the *Twombly-Iqbal* pleading standard [which] allows for pleadings based on information and belief" from discovery obligations requiring "identif[ication of] the basis of the information or belief" (quoting *Redus v. Univ. of Incarnate Word*, No. SA-14-CA-509-DAE, 2014 WL 12815471, at * 11 (W.D. Tex. Oct. 17, 2014))).

Likewise, with respect to the guarantee, documents reflecting employee statements about improving the guarantee do not demonstrate support for the FTC's belief that such conduct is likely to resume. Nor is the fact that Match.com discontinued the guarantee after the FTC served its CID

demonstrative of a belief that it will resume. Accordingly, the Court should compel the FTC to remedy *all* deficiencies in its response so that MGI can understand the FTC's position.

### 2. FTC's Position

MGI makes two primary arguments related to the FTC's response to Interrogatory 1. First, MGI alleges that the FTC did not identify facts or evidence and should have identified specific documents in its response. However, the FTC described specific evidence in support of its claim and supplemented its response, as MGI was advised we would, four days before MGI filed its motion. MGI's claim is therefore both factually wrong and wastes the parties' and the Court's time in addressing issues that have already been resolved.

The Court has already ruled in the FTC's favor on the precise question of whether the FTC met the pleading standard in this action, whether MGI "is violating, or is about to violate." *See* Doc. 86. Regardless, the FTC  responded to this request with detailed information, including identifying documents in MGI's possession or control, showing a reasonable expectation that Match would violate the law absent restraint, the appliable standard related to a permanent injunction.  Despite receiving only a paltry amount of discovery from MGI, the FTC's response is detailed and thorough, and shows why the Court has sufficient basis to restrain the Defendants.

Defendant makes a confused argument that just because the FTC "satisfied a pleading standard does not mean that the FTC has satisfied its discovery obligations." As the FTC noted in its discovery response, it referred to a pleading standard only because Defendant's discovery request "conflates the pleading standard the FTC must meet to bring in an action in federal court" and therefore the FTC construed the interrogatory to refer to whether a reasonable expectation of continued violations absent restraint. Had Defendant provided more than 60 minutes to allow Plaintiff to respond to its substantially altered points and authorities, the FTC would be in a

position to better respond. *See J. App'x* (Microsoft Word redline and email showing revisions to points and authorities Defendant sent 3:25pm CT with demand that the FTC respond by 4:25pm).

Last, MGI argues that the FTC should not have objected to "to the extent that [the request] seeks information that is more readily available to Match." *See* Motion at 20. However, the FTC is not withholding documents or information on that basis. The FTC has also supplemented its response to identify the specific documents. As such, MGI's dispute is moot.

## VII.    Disputed Issue #7: Discovery into the Basis for the FTC's Allegation that MGI Owns, Operates, and Controls Match.com

A.    Interrogatory No. 7

| Discovery Request | Objections & Response (if any) |
|---|---|
| **INTERROGATORY NO. 7:** Identify and Describe the basis for Your allegation that Match Group, Inc. owns, operates, and controls Match.com, as stated in Your Complaint, Including a statement of all facts and evidence that You believe support this allegation.  If You have no basis or evidence, You should so state. | The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory to the extent it seeks information that is in Match's possession and readily available to Match.

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Notwithstanding the foregoing, Match's responses to the FTC's CID described various policies of Match, which Match defined as Match Group Inc., in operating Match.com. For example, Match stated that: Match.com was the primary top-level URL contributing to Match's business operations; Match maintained several URLs that directed users to Match.com; and Match had policies and practices relating to Test profiles and free trials. Match has also stated in a filing with the Ninth Circuit that it operates match.com, and email records show Match's senior executives and CEO directing day-to-day activities and business practices and receiving reports about those activities and practices. *See Epic Games, Inc. v. Apple,* |

| Discovery Request | Objections & Response (if any) |
|---|---|
| | Inc., Nos. 21-16506 & 21-16695, Doc. 8-1 (9th Cir. Nov. 29, 2021) ("Match Group, Inc. ('Match') is a Dallas, Texas-based online dating service which operates dating web sites in over 50 countries. Originally founded in 1993, Match operates www.match.com and mobile apps.") (emphasis added); *see also* MATCHFTC_Sample0000985, MATCHFTC_Sample0001021, MATCHFTC311263, MATCHFTC312700, MATCHFTC313402, MATCHFTC320168, MATCHFTC327460, MATCHFTC327972, MATCHFTC363737, MATCHFTC369127, MATCHFTC369348, MATCHFTC374137, MATCHFTC3800042, MATCHFTC380007, MATCHFTC403971, MATCHFTC404348, MATCHFTC404416, MATCHFTC405364, MATCHFTC405557, MATCHFTC406132, MATCHFTC408480, MATCHFTC409673, MATCHFTC415715, MATCHFTC426352, MATCHFTC427699, MATCHFTC428352, MATCHFTC429944, MATCHFTC431584, MATCHFTC439155, MATCHFTC445763, MATCHFTC465940, MATCHFTC474080, MATCHFTC485374, MATCHFTC485530, MATCHFTC497411, MATCHFTC519878, MATCHFTC519918, MATCHFTC521397, MATCHFTC525771, MATCHFTC543726, MATCHFTC549410, MATCHFTC559522, MATCHFTC560758, MATCHFTC581504, MATCHFTC593415, MATCHFTC600883, MATCHFTC601662, MATCHFTC604735, MATCHFTC605578, MATCHFTC610845, MATCHFTC624330, MATCHFTC624809, MATCHFTC634792 (email records of MGI executives involved in and directing business operations). |

     1.     **MGI's Position: The FTC Should Be Compelled to Identify Its Basis for Alleging that MGI Owns, Operates, and Controls Match.com.**

Another disputed issue in this litigation is whether MGI is the proper defendant. MGI has told the FTC for years that it is not the proper defendant, because it is merely a holding company that does not own, operate, or control Match.com, the website on which the challenged conduct

occurred. *See* Dkt. 109 at 3–4. Nevertheless, the FTC insisted on suing MGI, going so far as to allege that MGI "owns, operates, and controls" Match.com.[17] Am. Compl. ¶ 12. In Interrogatory No. 7, MGI asked the FTC to identify and describe the basis for that allegation, including by identifying supportive facts and evidence. The FTC responded (again) with objections and bulk citations to documents. J. App. at 068–69. The FTC first objected that this is a "Blockbuster Interrogatory," but again, MGI did not ask for *all evidence* about all allegations; it asked only for the facts and evidence to support the FTC's specific allegations about MGI's ownership, operation, and control of Match.com. *Nieman*, 2013 WL 6814789, at *11; *Lopez*, 327 F.R.D. at 577–78.

Next, the FTC objected that the responsive information "is in [MGI's] possession and readily available to [MGI]." J. App. at 068. However, "a party cannot properly object to an interrogatory on the basis that it seeks information that is within . . . the requesting party's possession." *VeroBlue*, 2021 WL 5176839, at *27. Moreover, MGI does not know the basis for the FTC's allegations, which is why it served the Interrogatory. Finally, the FTC objected that the Interrogatory is "premature," but as discussed above, the FTC has received plenty of discovery from MGI already. This objection reveals that the FTC apparently had no basis for making its allegations, and is now on a massive fishing expedition hoping to find something it was not able to find in the years-long CID. The FTC must disclose now the facts and evidence that it has, or admit that it has none.

After the boilerplate objections, the FTC generically pointed to "responses to the FTC's CID describ[ing] various policies," but did not explain how those responses show MGI's

---

[17] Naming MGI as the defendant appears to be a ploy by the FTC to attempt to drastically expand the scope of discovery to include *all* dating platforms in which MGI has any interest, even though the FTC's CID and allegations in its Complaint were limited to Match.com. As MGI feared, the FTC's discovery requests to MGI are extraordinarily expansive and expressly seek information about non-Match.com sites, such as documents sufficient to show subscription revenues for OKCupid, Plenty of Fish, and Tinder. *E.g.*, J. App. at 217.

ownership, operation, or control of Match.com. J. App. at 068. The FTC also pointed to "email records" purportedly "show[ing] Match's senior executives and CEO directing day-to-day activities and business practices and receiving reports about those activities and practices," *id.* at 069, but again the FTC does not articulate how these records, the executives, the activities, the business practices, or the reports purportedly show that MGI controls Match.com. Finally, it cites one amici brief that incorrectly describes MGI—meanwhile ignoring the myriad of documents it has already obtained from MGI that show the true structure and relationship. This cursory paragraph is not an adequate response to an Interrogatory seeking the "facts and evidence" on which the FTC based its allegation that MGI owns, operates, and controls Match.com. The FTC's amended response remains insufficient because merely adding Bates numbers without explaining how the FTC contends those documents show ownership, operation, or control is not enough. *See* J. App. at 068–069. The FTC's generic description of the documents it cites is not sufficient. The Court should order the FTC to supplement.

### 2.    FTC's Position

The FTC has adequately responded to Interrogatory 7 by identifying and describing, with a statement of facts, citations to documents, and explanation of those documents, our basis for the allegation that MGI owns, operates, and controls match.com. MGI has failed to show any deficiency in this response and is instead engaging in tactics wasteful of the parties' and the Court's time.

In MGI's August 18 letter to the FTC, it claimed that the FTC's original response to this interrogatory was deficient because it did not identify specific documents in its response. Although the FTC had identified specific documents, including Match's representation to a federal appellate court that it owns Match.com and facts drawn from MGI-produced documents, on August 25, the

FTC informed MGI that it would provide Bates number to specific documents by September 7. The FTC fulfilled its promise. Unsatisfied, MGI now complains that the FTC did not pull forth from the identified documents "the records, the executives, the activities, the business practices, or the reports." However, MGI's interrogatory only asked for the "facts and evidence" that support our allegation, which the FTC has unquestionably provided.

Even if MGI had made such a request in its interrogatory, it would have been, and is, an improper demand to ask the FTC to do MGI's homework. The Federal Rules of Civil Procedure specifically provide that where "the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records" and where "the burden of deriving or ascertaining the answer will be substantially the same for either party," the responding party may specify "the records to be reviewed." Fed. R. Civ. P. 33(d).

MGI makes a number of incorrect claims in its argument. For example, it says the FTC generically pointed to MGI's CID responses but did not explain how those responses show how MGI owns, operates, or controls Match.com. Contrary, the FTC explicitly described how those policies, which MGI identified as its own policies, showed that MGI operated Match.com. As described in the response, MGI's policies governed business operations including test profiles and free trials. In addition, MGI identified the Match.com URL as contributing to its business operations, not that of its subsidiary. MGI's description of the FTC's response as a "cursory paragraph without any specific citations" is simply false.

The FTC has provided documents MGI with specific documents and explained how those documents support its allegation that MGI owns, operates, and controls Match.com. Match has no reason or authority to demand more.

[signature page to follow]

69

Dated:  September 13, 2022                    Respectfully submitted,


/s/  Angela C. Zambrano                       /s/  Reid Tepfer
Angela C. Zambrano                            M. Hasan Aijaz
State Bar No. 24003157                        Reid Tepfer
angela.zambrano@sidley.com                    Erica Rollins Hilliard
Chelsea A. Priest                             Sarah Zuckerman (admitted *pro hac vice*)
State Bar No. 24102375                        John R. O'Gorman (admitted *pro hac vice*)
cpriest@sidley.com                            Virginia Bar No. 80073 (Aijaz)
Tayler G. Bragg                               Texas Bar No. 24079444 (Tepfer)
State Bar No. 24109943                        Mississippi Bar No. 104244 (Hilliard)
tbragg@sidley.com                             New York Bar No. 5603832 (Zuckerman)
SIDLEY AUSTIN LLP                             Texas Bar No. 24121292 (O'Gorman)
2021 McKinney Ave, Suite 2000                 Federal Trade Commission
Dallas, TX 75201                              1999 Bryan St. Ste. 2150
Telephone: 214.981.3300                       Dallas, Texas 75201
Fax: 214.981.3400                             T: (214) 979-9386 (Aijaz)
                                              T: (214) 979-9395 (Tepfer)
Chad S. Hummel (admitted *pro hac vice*)      T: (214) 979-9379 (Hilliard)
chummel@sidley.com                            T: (214) 979-9376 (Zuckerman)
SIDLEY AUSTIN LLP                             T: (214) 979-9382 (O'Gorman)
1999 Avenue of the Stars, 17th Floor          F: (214) 953-3079
Los Angeles, CA 90067                         maijaz@ftc.gov;
Telephone: 310.595.9500                       rtepfer@ftc.gov;
Fax: 310.595.9501                             ehilliard@ftc.gov
                                              szuckerman@ftc.gov;
*Attorneys for Match Group, Inc. and*         jogorman@ftc.gov
*Match Group, LLC*
                                              *Attorneys for the FTC*