**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>          Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>          Defendants. | Case No. 3:19-cv-02281-K |

**JOINT APPENDIX IN SUPPORT OF JOINT SUBMISSION ON DEFENDANT MATCH
GROUP, INC.'S MOTION TO COMPEL DISCOVERY RESPONSES AND
PRODUCTION OF DOCUMENTS FROM PLAINTIFF FTC**

Defendant Match Group, Inc. ("MGI") and Plaintiff Federal Trade Commission ("FTC")

submit this Joint Appendix in support of the Joint Submission on MGI's Motion to Compel

Discovery Responses and Production of Documents from FTC.

| Ex. | Description | App. Page(s) |
|---|---|---|
| 1 | Plaintiff Federal Trade Commission's Responses and Objections to Defendant Match Group, Inc.'s First Set of Interrogatories | APP 001-014 |
| 2 | Plaintiff Federal Trade Commission's Responses and Objections to Defendant Match Group, Inc.'s First Requests for Admission | APP 015-034 |
| 3 | Plaintiff Federal Trade Commission's Responses and Objections to Defendant Match Group, Inc.'s First Requests for Production | APP 035-051 |
| 4 | Plaintiff Federal Trade Commission's First Amended Responses and Objections to Defendant Match Group, Inc.'s First Set of Interrogatories | APP 052-072 |
| 5 | Plaintiff Federal Trade Commission's First Amended Responses and Objections to Defendant Match Group, Inc.'s First Requests for Admission | APP 073-095 |
| 6 | Plaintiff Federal Trade Commission's First Amended Responses and Objections to Defendant Match Group, Inc.'s First Requests for Production | APP 096-115 |
| 7 | Letter from Angela Zambrano, Partner, Sidley Austin, to Reid Tepfer, Federal Trade Commission (August 18, 2022) | APP 116-128 |

| Ex. | Description | App. Page(s) |
|---|---|---|
| 8 | Defendant Match Group, Inc.'s Responses and Objections to Plaintiff Federal Trade Commission's First Set of Interrogatories and Amarnath Thombre's Verification of Match Group, Inc.'s Responses to Plaintiff Federal Trade Commission's First Set of Interrogatories | APP 129-159 |
| 9 | Letter from Reid Tepfer, Federal Trade Commission, to Chad Hummel, Partner, Sidley Austin LLP and Angela Zambrano, Partner, Sidley Austin LLP (August 25, 2022) | APP 160-164 |
| 10 | Excerpt of Match Group Inc.'s Responses to the FTC's CID Interrogatories 13 and 15 | APP 165-198 |
| 11 | Defendant Match Group, Inc.'s Responses and Objections to Plaintiff Federal Trade Commission's First Set of Requests for Production | APP 199-255 |
| 12 | Plaintiff Federal Trade Commission's First Set of Requests for Admission to Defendant Match Group, LLC | APP 256-280 |

Dated:  September 13, 2022

/s/ Angela C. Zambrano
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and Match Group, LLC*

Respectfully submitted,

/s/ Reid Tepfer
M. Hasan Aijaz
Reid Tepfer
Erica Rollins Hilliard
Sarah Zuckerman (admitted *pro hac vice*)
John R. O'Gorman (admitted *pro hac vice*)
Virginia Bar No. 80073 (Aijaz)
Texas Bar No. 24079444 (Tepfer)
Mississippi Bar No. 104244 (Hilliard)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9386 (Aijaz)
T: (214) 979-9395 (Tepfer)
T: (214) 979-9379 (Hilliard)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
F: (214) 953-3079
maijaz@ftc.gov;
rtepfer@ftc.gov;
ehilliard@ftc.gov
szuckerman@ftc.gov;
jogorman@ftc.gov

*Attorneys for the FTC*

# EXHIBIT  1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:19-cv-02281-K |
| Plaintiff, | **PLAINTIFF'S RESPONSES TO** |
| v. | **DEFENDANT'S FIRST SET OF** |
| MATCH GROUP, INC., | **INTERROGATORIES** |
| Defendant. | |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and subject to the general and specific objections set forth below, Plaintiff, the Federal Trade Commission ("FTC") responds to Defendant Match Group Inc. ("Match" or "MGI")'s First Set of Interrogatories.

## I.    GENERAL OBJECTIONS

1. **Compound Interrogatories.** Plaintiff objects to interrogatories that contain discrete requests and therefore constitute compound interrogatories. Including subparts, no more than twenty-five interrogatories may be given without a leave of court. Fed. R. Civ. P. 33(a). "'[W]here the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within it.'" *FTC v. Think All Pub LLC*, No. 4:07-CV-011, 2008 WL 687455, *1 (E.D. Tex. 2008).

2. **Blockbuster Interrogatories.** Plaintiff objects to Match's impermissible "blockbuster interrogatories" seeking *all* facts without regard for materiality, proportionality, time, and expense. A party cannot "indiscriminately hurl[] interrogatories at every conceivable detail and fact which may relate to a case." *Nieman v. Hale*, No. 3:12-CV-2433-L-BN,

1

2013 WL 6814789, at *11 (N.D. Tex. Dec. 26, 2013) (quoting *Grynberg v. Total S.A., Inc.*, No. 3–cv–1280, 2006 WL 1186836, at *5–*7 (D. Colo. May 3, 2006)). Blockbuster interrogatories "ask not merely for material or principal facts. They seek 'each and every fact' supporting the allegations of plaintiff, no matter how insignificant or minor." *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997).

3. **Lack of Waiver; Right to Modify.** The following responses are made without waiving any objections raised by the FTC in this proceeding or any objections the FTC may have with respect to the subsequent use of these answers. The FTC specifically reserves: (a) the right to challenge authenticity or admissibility of documents referred to in the interrogatory responses; (b) the right to object on any and all proper grounds, at any time to other discovery procedures involving or relating to the subject matter of interrogatories answered herein; and (c) the right, at any time, upon proper showing, to revise, correct or clarify the following responses.

4. **Right to Supplement.** The FTC reserves the right to supplement and will supplement these responses as required under Fed. R. Civ. P. 26(e) if additional responsive information becomes available.

5. **Attorney Client Privilege, Deliberative Process Privilege, and Attorney Work Product Doctrine.** Plaintiff generally objects to Match's requests to Plaintiff insofar as these seek, directly or indirectly, information subject to the attorney client privilege, deliberative process privilege or work product doctrine.

6. **Scope of Discovery.** Plaintiff objects to Match's Interrogatories to the extent that the instructions and definitions attempt to impose upon the Plaintiff obligations greater than those required by the Federal Rules of Civil Procedure.

## II.    OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1:** Identify and Describe the basis for Your belief that Match Group, Inc. "is about to violate" the FTC Act, Including a statement of all facts and evidence that You believe give rise to a fair inference of a reasonable expectation of continued violations absent restraint.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory as it is overbroad, vague, unduly burdensome, and not proportional to the needs of the case. Additionally, the FTC objects to this request to the extent that it seeks information that is more readily available to Match. Moreover, this Interrogatory is vague, so the FTC is construing this to refer to a "reasonable expectation" of continued FTC Act violations on Match's dating platforms. The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Subject to and without waiving the foregoing objections, the FTC responds that it has already disclosed to Match the basis for Plaintiff's belief that a reasonable expectation exists that Match would violate the law absent restraint, allegations this Court found sufficient to reject Match's contrary motion to dismiss arguments. *See* Dkts 1, 20, 27, and 86. Specifically, in deciding whether to issue an injunction courts in the Fifth Circuit look at factors, including: the egregiousness of the defendant's actions; the isolated or recurrent nature of the infraction; the degree of scienter involved; the sincerity of the defendant's assurances against future violations; the defendant's recognition of the wrongful nature of his conduct; and whether the defendant's

3

occupation presents opportunities for future violations. *See* Dkt. 27 at 6 (citations omitted). Each of these factors support the issuance of an injunction here. Match engaged in egregious, recurring conduct with the scienter of knowing it was earning money at its customer's expense, as described in paragraphs ¶¶ 3, 23, 29-37, 50, 57-59, 64 of the complaint.

Match has yet to offer sincere assurances against future violations; it only suspended its activities while under federal investigation for its unlawful conduct, Match has never acknowledged that any of its practices were deficient in any manner, and Match has not committed to not engaging in the challenged practices in the future. Match's ability to engage in this conduct on this platform and the dozens of other platforms it owns and controls, would allow it to easily resume and expand any of the practices challenged in the complaint. *See* Compl. ¶¶ 10-15, 64; *see also* Dkt. 27 at 6-7. Match knew that its problems were longstanding, affected all five counts described in the complaint, and failed to correct its wrongdoing. Match employees noted long-standing problems with the guarantee, including its flawed tracker, that it had a poor redemption flow, and that even eligible consumers missed redeeming the guarantee. The numbers perfectly illustrate the egregiousness of Match's practices, of more than 2.5 million subscriptions sold that were subject to the guarantee, not even 2 percent of subscribers redeemed the guarantee whereas close to half were billed for at least one additional subscription period. Similarly, Match egregiously kept its consumers money while removing paid-for services of those consumers who initiated a chargeback that Match successfully challenged. Match's chargeback behavior is "likely to recur," in part, because it has never stopped—Match continues to engage in similar practices across its other dating websites, including PlentyOfFish, Tinder, and OkCupid.

4

Last, Match's ROSCA practices are as egregious as the rest. Match's own records characterize the online cancelation process as confusing, misleading, in need of repair, hard to find, and tedious. Match designed a misleading cancelation process that, for at least ten years, allowed consumers to think they had canceled their subscriptions when, in fact, they had just been duped by the cancelation process. During this time, Match failed to fix this misleading process. The FTC also refers Match to the FTC's responses to Interrogatories 2 through 7.

Match's established practice of knowingly engaging in egregious business practices, coupled with its failure to even acknowledge its wrongdoing let alone bind itself to not returning to those practices in the future, all support an injunction in this matter.

**INTERROGATORY NO. 2:** Identify and Describe all features of Match.com's Online Cancelation Flow that You contend make the Online Cancelation Flow not "simple," as that term is used in ROSCA, 15 U.S.C. § 8403, Including a description of what changes You contend would be necessary to make the Online Cancelation Flow simple.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory as it is overbroad, vague, unduly burdensome, and premature.

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

The FTC also objects to the Interrogatory as ambiguous to the extent it implies that each feature of a cancelation mechanism needs to not be "simple" to violate ROSCA. The FTC objects to the request as the word "feature" is vague and undefined. The FTC also objects to the

5

Interrogatory to the extent that it seeks a description of changes needed to make the cancelation flow simple – this part of the Interrogatory is both a discrete request separate from the first part of the Interrogatory and is instead an impermissible attempt to join two interrogatories into one, and is also irrelevant as the FTC does not need to show what a simple mechanism would look like to establish that Match's flow was not simple.

Subject to and without waiving the foregoing objections, Match's own executives have described its cancelation method as confusing, burdensome, cumbersome, hard to find, tedious, convoluted and that they knew consumers were getting billed after they had thought they canceled their subscriptions. *See* Compl. ¶ 53-59. Match's own internal documents flagged the problems with its cancelation process, including that it was hard to find, took many clicks, was difficult to understand, and had been that way for at least 10 years. *Id.* Match's cancelation flow also had misleading text in the middle of the cancelation flow that states "Before you go" above a survey – misleading consumers into thinking the cancelation is complete and the survey is optional, when in fact consumers needed to continue past the survey to actually cancel. Match has had a flawed password reset mechanism that also prevented consumers from simply canceling their account if they had forgotten their password. Consumers have complained consistently about Match's misleading cancelation process to the company, and it was aware of and agreed that the process was misleading, but it decided not to fix the cancelation process, instead keeping it as a profit center. To the extent Match produces responsive documents and answers in discovery, the FTC may supplement this answer.

**INTERROGATORY NO. 3:** Identify and Describe the harm to consumers that You contend resulted from the alleged lack of a simple online cancelation method, Including how the damages caused by that harm were calculated, the number of users that You believe were unable to cancel

APP 007

their subscription as a result of the alleged lack of a simple cancelation method, and the amount of harm/damages per user.

**ANSWER:**

The FTC objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Subject to and without waiving the foregoing objections, the FTC responds that consumers were harmed by, among other things, being billed for unwanted recurring subscriptions, costs imposed on consumers by time spent rectifying failed cancelation attempts, and by failing to receive refunds when being billed after they thought they had already canceled. The number of consumers harmed by Match's ROSCA violation is approximately 64,000, with each harmed by an average amount of $136. The number of harmed consumers, the types of harm, and amount of harm per user will be further revised as the case proceeds and as the FTC obtains additional discovery.

**INTERROGATORY NO. 4:** State whether You contend that the Match.com methods of cancelation other than the Online Cancelation Flow (Including online chat, telephone, mail, and fax) are not simple, and explain why You contend each method is simple or not simple, Including a description of all facts supporting Your contentions.

**ANSWER:**

The FTC alleges in Count V that "Defendants have failed to provide simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account."  This contention is not limited to any particular method of cancelation, but to the service as a whole.  To the extent that this Interrogatory

requests further information, FTC objects on the grounds that it is overbroad, vague, unduly burdensome, and not proportional to the needs of the case. The FTC also objects to the Request to the extent it implies that every method of cancelation must not be simple in order for a company to violate ROSCA. The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Notwithstanding the foregoing, the FTC responds that Match's failure to inform users about these methods make them hard to find and not simple, as evidenced by how few subscribers used these methods. For example, of all online cancelations in 2017 and 2018, less than two-tenths of one percent used Match's chat feature. Moreover, the availability of Match's chat and voice cancellation are highly dependent on the availability and wait times to contact a customer service representative, which Match controls. When Match reduced the hours of operation for voice and chat customer service it increased the difficulty of canceling using those methods and tracked a dramatic reduction in cancellations.

To the extent Match produces responsive documents and answers in discovery, the FTC may supplement this answer.

**INTERROGATORY NO. 5:** Identify and Describe the features that You contend make a cancelation method simple (or not), Including (but not limited to) all factors You consider in that analysis and the weight that You give each of those factors.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The Interrogatory is also irrelevant because it asks

8

about cancelation methods that are not at issue in this case and is therefore not reasonably calculated to lead to the discovery of relevant evidence. The FTC also objects to this Interrogatory because it is duplicative of Interrogatories 2 and 4.

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Notwithstanding the foregoing, the FTC refers to its answers for Interrogatories 2 and 4.

**INTERROGATORY NO. 6:** Identify and Describe in what way(s) You contend that Match.com's Online Cancelation Flow is not as simple as subscribing to Match.com via the Match.com website, Including by comparing the two processes.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory as it is overbroad, vague, unduly burdensome, and not proportional to the needs of the case.

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Subject to and without waiving the foregoing objections, the FTC responds that Match's internal documents characterize its cancelation as burdensome, cumbersome, hard to find, tedious, convoluted and that they knew consumers were getting billed after they had thought they

9

canceled their subscriptions. *See* Compl. ¶ 53-59. There is not similar evidence that Match's sign-up process is burdensome, cumbersome, hard to find, tedious or that consumers believed they had signed up for a subscription service when they had not. Match's own internal documents flagged the problems with its cancelation process, including that it was hard to find and was difficult to understand, but there is no similar evidence that consumers had difficulty understanding, finding, or completing the sign-up process. Moreover, Match presents an offer to consumers that would abandon the cancelation process if selected, but it does not present an offer to consumers to abandon the subscription process. Match's signup process has no misleading text that suggests the signup process is complete, whereas Match's cancelation process has misleading text in the middle of the cancelation flow that states "Before you go" above a survey – misleading consumers into thinking the cancelation is complete and the survey is optional, when in fact the survey is not optional.

**INTERROGATORY NO. 7:** Identify and Describe the basis for Your allegation that Match Group, Inc. owns, operates, and controls Match.com, as stated in Your Complaint, Including a statement of all facts and evidence that You believe support this allegation. If You have no basis or evidence, You should so state.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory to the extent it seeks information that is in Match's possession and readily available to Match.

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

10

Notwithstanding the foregoing, Match's responses to the FTC's CID described various policies of Match, which Match defined as Match Group Inc., in operating Match.com. For example, Match stated that: Match.com was the primary top-level URL contributing to Match's business operations; Match maintained several URLs that directed users to Match.com; and Match had policies and practices relating to Test profiles and free trials. Match has also stated in a filing with the Ninth Circuit that it operates match.com, and email records show Match's senior executives and CEO directing day-to-day activities and business practices and receiving reports about those activities and practices.

The FTC may supplement this answer to the extent it obtains additional responsive documents from Match or Match Group, LLC.

Date: August 8, 2022

*/s/ M. HASAN AIJAZ*
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted pro hac vice)
JOHN R. O'GORMAN (admitted pro hac vice)
ERICA ROLLINS HILLIARD
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 2421292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov;
ehilliard@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

APP 013

**CERTIFICATE OF SERVICE**

I, M. HASAN AIJAZ, certify that, on August 8, 2022, I served the foregoing Plaintiff's Responses to Defendant's First set of Interrogatories by email on the following counsel of record at the email address listed below:

Angela C. Zambrano
angela.zambrano@sidley.com
David Sillers
dsillers@sidley.com
Chad Hummel
chummel@sidley.com
Sidley Austin LLP

*Attorneys for Defendant Match Group, Inc.*

By: /s/ M. HASAN AIJAZ

# EXHIBIT  2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.

MATCH GROUP, INC.,

     Defendant.

Case No. 3:19-cv-02281-K

**PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSIONS**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, and subject to the general and specific objections set forth below, Plaintiff, the Federal Trade Commission ("FTC") responds to Defendant Match Group Inc. ("Match" or "MGI")'s First Set of Requests for Admissions.

## I.   GENERAL OBJECTIONS

1. **Lack of Waiver; Right to Modify.** The following responses are made without waiving any objections raised by the FTC in this proceeding or any objections the FTC may have with respect to the subsequent use of these answers. The FTC specifically reserves the right, at any time, upon proper showing, to revise, correct or clarify the following responses.

2. **Right to Supplement.** The FTC reserves the right to supplement and will supplement these responses as required under Fed. R. Civ. P. 26(e) if additional responsive information becomes available.

3. **Attorney Client Privilege, Deliberative Process Privilege, and Attorney Work Product Doctrine.** Plaintiff generally objects to Match's Requests to Plaintiff insofar as

1

these seek, directly or indirectly, information subject to the attorney client privilege,

deliberative process privilege or work product doctrine.

4. **Scope of Discovery.** Plaintiff objects to Match's Requests to the extent that the

instructions and definitions attempt to impose upon the Plaintiff obligations greater than

those required by the Federal Rules of Civil Procedure.

## II.    OBJECTIONS AND RESPONSES

**REQUEST FOR ADMISSION NO. 1:**
Admit that the Match.com Guarantee challenged in Your Complaint ceased by at least mid-
2019.

**ANSWER**
Plaintiff objects to this request because the terms "Match.com Guarantee," "ceased," and "mid-
2019" are vague and ambiguous. The request is not clear as to what version of the Match.com
Guarantee it is referring to, to the extent the Guarantee changed during the period relevant to the
complaint. "Ceased" is ambiguous as it does not indicate whether the conduct was stopped
voluntarily, or whether the conduct restarted. Plaintiff objects to this request as it implies that the
Match.com Guarantee was ceased voluntarily, rather than in response to the FTC's investigation
and in anticipation of a possible FTC enforcement action. Plaintiff also objects to this request
because the requested information is already in Match's possession, custody, or control, and
Match is in a better position to answer this question. Plaintiff is aware that Match has claimed
through unsworn unsubstantiated statements by its attorneys that it discontinued challenged
practices in March and April 2019, after it was under FTC investigation for its challenged
practices, but Plaintiff cannot independently verify that information.

**REQUEST FOR ADMISSION NO. 2:**
Admit that the Match.com Guarantee challenged in Your Complaint was permanently
discontinued in April 2019, as articulated in Exhibit A.

**ANSWER**
Plaintiff objects to this request because the terms "Match.com Guarantee," "permanently
discontinued," and "mid-2019" are vague and ambiguous. The request is not clear as to what
version of the Match.com Guarantee it is referring to, to the extent the Guarantee changed during
the period relevant to the complaint. "Permanently discontinued" is ambiguous as it does not
indicate whether the conduct was stopped voluntarily or whether the conduct may restart.
Plaintiff objects to this request as it implies that the Match.com Guarantee was voluntarily
discontinued, rather than in response to the FTC's investigation and in anticipation of a possible
FTC enforcement action. Plaintiff also objects to this request because the requested information
is already in Match's possession, custody, or control, and Match is in a better position to answer
this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated
statements by its attorneys that it discontinued challenged practices in March and April 2019,

after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information.

**REQUEST FOR ADMISSION NO. 3:**
Admit that the Match.com Guarantee challenged in Your Complaint has not been offered since April 2019.

**ANSWER**
Plaintiff objects to this request because the terms "Match.com Guarantee," is vague and ambiguous. The request is not clear as to what version of the Match.com Guarantee it is referring to, to the extent the Guarantee changed during the period relevant to the complaint. Plaintiff objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information.

**REQUEST FOR ADMISSION NO. 4:**
Admit that the Match.com chargeback policy challenged in Your Complaint ceased by at least mid-2019.

**ANSWER**
Plaintiff objects to this request because the terms "ceased," and "mid-2019" are vague and ambiguous. "Ceased" is ambiguous as it does not indicate whether the conduct was stopped voluntarily or whether the conduct restarted. Plaintiff objects to this request as it implies that the Match.com chargeback policy was ceased voluntarily, rather than in response to a possible FTC enforcement action. Plaintiff also objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information.

**REQUEST FOR ADMISSION NO. 5:**
Admit that the Match.com chargeback policy challenged in Your Complaint was permanently discontinued in March 2019, as articulated in Exhibit A.

**ANSWER**
Plaintiff objects to this request because the terms "permanently discontinued," is vague and ambiguous. "Permanently discontinued" is ambiguous as it does not indicate whether the conduct was stopped voluntarily or whether it may restart. Plaintiff objects to this request as it implies that the Match.com chargeback policy was voluntarily discontinued, rather than in response to the FTC's investigation and in anticipation of a possible FTC enforcement action. Plaintiff also objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that

it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information.

**REQUEST FOR ADMISSION NO. 6:**
Admit that the Match.com chargeback policy challenged in Your Complaint has not been in effect since March 2019.

**ANSWER**
Plaintiff objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information.

**REQUEST FOR ADMISSION NO. 7:**
Admit that, as of the deadline for your response to this Request, Your investigation has failed to reveal any evidence of plans by Match.com to reinstate the Match.com Guarantee.

**ANSWER**
Plaintiff objects because "plans" is vague and ambiguous as to whether it refers to specific actions that it intends to take, general objectives it wants to take, or a likelihood that it may take certain actions in the future. Plaintiff objects because the requested information is not relevant to any claim or defense in this matter and is not reasonably calculated to lead to discoverable evidence. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence. Having "plans" to restart illegal conduct is not the standard for injunctive relief, rather the relevant inquiry is likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies. As this Court found when denying Match's motion to dismiss, the FTC's complaint met the applicable standards to show a likelihood of recurrence. *See* Dkt. 86 (citing to standards related to likelihood of recurrence and reasonable expectation of continued violations absent restraint). As of today, before Plaintiff has had an opportunity to take any discovery on this issue, Plaintiff does not have any evidence regarding Match's "plans" – defined as specific actions it intends to take – regarding its guarantee program. Plaintiff anticipates uncovering such evidence in discovery.

**REQUEST FOR ADMISSION NO. 8:**
Admit that, as of the deadline for your response to this Request, Your investigation has failed to reveal any evidence of plans by Match.com to reinstate the Match.com chargeback policy challenged in Your Complaint.

**ANSWER**
Plaintiff objects because "plans" is vague and ambiguous as to whether it refers to specific actions that it intends to take, general objectives it wants to take, or a likelihood that it may take

certain actions in the future. Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence. Having "plans" to restart illegal conduct is not the standard for injunctive relief, rather the relevant inquiry is likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies. As this Court found when denying Match's motion to dismiss, the FTC's complaint met the applicable standards to show a likelihood of recurrence. *See* Dkt. 86 (citing to standards related to likelihood of recurrence and reasonable expectation of continued violations absent restraint). As of today, before Plaintiff has had an opportunity to take any discovery on this issue, Plaintiff does not have any evidence regarding Match's "plans" – defined as specific actions it intends to take – regarding its chargeback policy. Plaintiff anticipates uncovering such evidence in discovery.

**REQUEST FOR ADMISSION NO. 9:**
Admit that You were informed by letter dated August 6, 2019, that Match.com would not reinstate the Match.com Guarantee challenged in Your Complaint.

**ANSWER**
Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies that Match made a commitment in a letter sent on August 6, 2019, that it would not reinstitute the challenged Guarantee. Plaintiff admits that after Match received a draft complaint, knew of the impending enforcement action, and just one month before this action was filed, Match's counsel sent a letter to Zachary A. Keller, then counsel for the FTC, stating that Match had "no plans or intentions ever to reinstitute" various practices, but Match did not make a commitment to never reinstitute those practices—the letter only described its "plans or intentions" at the time of the letter and failed to include any commitments about future actions.

**REQUEST FOR ADMISSION NO. 10:**
Admit that You were informed by letter dated May 20, 2022, that Match.com would not reinstate the Match.com Guarantee challenged in Your Complaint.

**ANSWER**
Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies that Match made a commitment in a letter sent on May 20, 2022, that it would not reinstitute the challenged Guarantee. Plaintiff admits that Match's counsel sent a letter to Reid Tepfer stating that Match had no "plans or intentions" to reinstitute various practices, but Match did not make a

commitment to never reinstitute those practices—the letter only described its "plans and intentions" at the time of the letter and failed to include any commitments about future actions.

**REQUEST FOR ADMISSION NO. 11:**
Admit that You were informed by letter dated August 6, 2019, that Match.com would not reinstate the Match.com chargeback policy at issue in Your Complaint.

**ANSWER**
Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies that Match made a commitment in a letter sent on August 6, 2019, that it would not reinstitute the challenged Guarantee. Plaintiff admits that after Match received a draft complaint, knew of the impending enforcement action, and just one month before this action was filed, Match's counsel sent a letter to Zachary A. Keller, then counsel for the FTC, stating that Match had "no plans or intentions ever to reinstitute" various practices, but Match did not make a commitment to never reinstitute those practices—the letter only described its "plans or intentions" at the time of the letter and failed to include any commitments about future actions.

**REQUEST FOR ADMISSION NO. 12:**
Admit that You were informed by letter dated May 20, 2022, that Match.com would not reinstate the Match.com chargeback policy at issue in Your Complaint.

**ANSWER**
Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies that Match made a commitment in a letter sent on May 20, 2022, that it would not reinstitute the challenged Guarantee. Plaintiff admits that Match's counsel sent a letter to Reid Tepfer stating that Match had no "plans or intentions" to reinstitute various practices, but Match did not make a commitment to never reinstitute those practices—the letter only described its "plans and intentions" at the time of the letter and failed to include any commitments about future actions.

**REQUEST FOR ADMISSION NO. 13:**
Admit that users are able to cancel their Match.com subscription via online chat.

**ANSWER**
Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the

APP 021

cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that in response to Match cutting customer service hours for its chat cancelation mechanism, the number of subscribers who were able to use that cancelation mechanism dropped. Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff and whether some users are unable to cancel via online chat.

**REQUEST FOR ADMISSION NO. 14:**
Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via online chat.

**ANSWER**
Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that in response to Match cutting customer service hours for its chat cancelation mechanism, the number of subscribers who were able to use that cancelation mechanism dropped. Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures occurred during all times relevant to Count V of the FTC's complaint.

**REQUEST FOR ADMISSION NO. 15:**
Admit that canceling a Match.com subscription via online chat is simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple."  Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 16:**
Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via online chat has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

APP 022

**REQUEST FOR ADMISSION NO. 17:**
Admit that users are able to cancel their Match.com subscription via telephone.

**ANSWER**
Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that in response to Match cutting customer service hours for its phone cancelation mechanism, the number of subscribers who were able to use that cancelation mechanism dropped. Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff and whether some users are unable to cancel via telephone.

**REQUEST FOR ADMISSION NO. 18:**
Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via telephone.

**ANSWER**
Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that in response to Match cutting customer service hours for its phone cancelation mechanism, the number of subscribers who were able to use that cancelation mechanism dropped. Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users were able to cancel their subscription at all times relevant to Count V of the FTC's complaint via telephone than Plaintiff.

**REQUEST FOR ADMISSION NO. 19:**
Admit that canceling a Match.com subscription via telephone is simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 20:**
Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via telephone has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 21:**
Admit that users are able to cancel their Match.com subscription via mail.

**ANSWER**
Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff.

**REQUEST FOR ADMISSION NO. 22:**
Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via mail.

**ANSWER**
Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users were able to cancel their subscription at all times relevant to Count V of the FTC's complaint than Plaintiff.

APP 024

**REQUEST FOR ADMISSION NO. 23:**
Admit that canceling a Match.com subscription via mail is simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 24:**
Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via mail has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 25:**
Admit that users are able to cancel their Match.com subscription via fax.

**ANSWER**
Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription.

**REQUEST FOR ADMISSION NO. 26:**
Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via fax.

**ANSWER**
Plaintiff objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently

10

present on its platform. Match is in a better position to answer whether Match.com users were able to cancel their subscription at all times relevant to Count V of the FTC's complaint than Plaintiff.

**REQUEST FOR ADMISSION NO. 27:**
Admit that canceling a Match.com subscription via fax is simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 28:**
Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via fax has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 29:**
Admit that users are able to cancel their Match.com subscription via e-mail.

**ANSWER**
Plaintiff objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff.

**REQUEST FOR ADMISSION NO. 30:**
Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via e-mail.

**ANSWER**
Plaintiff objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users were able to cancel their subscription at all times relevant to Count V of the FTC's complaint than Plaintiff.

**REQUEST FOR ADMISSION NO. 31:**
Admit that canceling a Match.com subscription via e-mail is simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 32:**
Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via e-mail has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 33:**
Admit that a cancelation method can be simple even if it includes a save offer (meaning an offer to continue a subscription at a discount).

**ANSWER**
Plaintiff objects to the Request because "save offer" is vague and ambiguous and the hypothetical as a whole is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe how it includes a save offer, how the offer is presented, how the offer is accepted or declined, or what happens to the cancelation method based on the acceptance or denial of the offer. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.

Notwithstanding the foregoing objections, Plaintiff denies that Match's cancellation method is simple.

**REQUEST FOR ADMISSION NO. 34**
Admit that a cancelation method can be simple if it includes a save offer (meaning an offer to continue a subscription at a discount) but the subscriber is not required to answer the question.

**ANSWER**
Plaintiff objects to the Request because the "save offer" is vague and ambiguous and the hypothetical as a whole is vague. The Request does not describe the entirety of the hypothetical

12

cancelation method nor does it describe how it includes a save offer, how the offer is presented, how the offer is accepted or declined, or what happens to the cancelation method based on the acceptance or denial of the offer. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.

Notwithstanding the foregoing objections, Plaintiff denies that Match's cancellation method is simple.

**REQUEST FOR ADMISSION NO. 35:**
Admit that a cancelation method can be simple even if it asks a subscriber why they are canceling.

**ANSWER**
Plaintiff objects to the Request because the hypothetical is vague. The Request does not describe the entirety of the hypothetical cancelation method, nor does it describe where the question is located in the cancelation method, how it is presented, or what happens to the cancelation method based on the subscriber's answer or non-answer. Plaintiff further objects because the request seeks privileged information and calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.

Notwithstanding the foregoing objections, Plaintiff denies that Match's cancellation method is simple.

**REQUEST FOR ADMISSION NO. 36:**
Admit that a cancelation method can be simple if it asks a subscriber why they are canceling but the subscriber is not required to answer the question.

**ANSWER**
Plaintiff objects to the Request because the hypothetical is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe where the question is located in the cancelation method, how it is presented, what a subscriber needs to do to avoid answering the question, or what happens to the cancelation method based on the subscriber's answer or non-answer. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.

Notwithstanding the foregoing objections, Plaintiff denies that Match's cancellation method is simple.

APP 028

**REQUEST FOR ADMISSION NO. 37:**
Admit that a cancelation method can be simple even if it asks a subscriber whether they would recommend the service.

**ANSWER**
Plaintiff objects to the Request because the hypothetical is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe where the question is located in the cancelation method, how it is presented, or what happens to the cancelation method based on the subscriber's answer or non-answer. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.

Notwithstanding the foregoing objections, Plaintiff denies that Match's cancellation method is simple.

**REQUEST FOR ADMISSION NO. 38:**
Admit that a cancelation method can be simple if it asks a subscriber whether they would recommend the service but the subscriber is not required to answer the question.

**ANSWER**
Plaintiff objects to the Request because the hypothetical is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe where the question is located in the cancelation method, how it is presented, what a subscriber needs to do to avoid answering the question, or what happens to the cancelation method based on the subscriber's answer or non-answer. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.

Notwithstanding the foregoing objections, Plaintiff denies that Match's cancellation method is simple.

**REQUEST FOR ADMISSION NO. 39:**
Admit that You never explained what could be done to improve the Online Cancelation Flow at issue in Your Complaint.

**ANSWER**
Plaintiff objects to the Request as irrelevant because the Plaintiff has no obligation to provide the legal advice implied in the Request.

Subject to and without waiving the foregoing objections, Plaintiff denies. The FTC's complaint details specific failures of Match's cancelation flow, all of which could be modified or removed to improve the cancelation flow. *See* Complaint at ¶¶ 54-57.

**REQUEST FOR ADMISSION NO. 40:**

Admit that the Online Cancelation Flow can be completed within 30 seconds.

**ANSWER**

Plaintiff objects to the request as vague because it is ambiguous what type of person the requests refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, and other factors relevant to the speed of completing the cancelation flow. Plaintiff also objects to the Request as irrelevant because the fastest possible completion speed of a cancelation process it not relevant to any claim or defense in this case. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the Online Cancelation Flow can be completed within 60 seconds.

**ANSWER**

Plaintiff objects to the request as vague because it is ambiguous what type of person the requests refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, and other factors relevant to the speed of completing the cancelation flow. Plaintiff objects to the Request as irrelevant because the fastest possible completion speed of a cancelation process it not relevant to any claim or defense in this case. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control.

**REQUEST FOR ADMISSION NO. 42:**

Admit that the Online Cancelation Flow can be completed within 90 seconds.

**ANSWER**

Plaintiff objects to the request as vague because it is ambiguous what type of person the requests refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, and other factors relevant to the speed of completing the cancelation flow. Plaintiff objects to the Request as irrelevant because the fastest possible completion speed of a cancelation process it not relevant to any claim or defense in this case. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control.

**REQUEST FOR ADMISSION NO. 43:**

Admit that the Online Cancelation Flow can be completed within 120 seconds.

**ANSWER**

Plaintiff objects to the request as vague because it is ambiguous what type of person the requests refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, and other factors relevant to the speed of completing the cancelation flow. Plaintiff objects to the Request as irrelevant because the fastest possible completion speed of a cancelation process it not relevant to any claim or defense in this

15

case. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control.

**REQUEST FOR ADMISSION NO. 44:**
Admit that You did not review the Online Cancelation Flow in any form other than the screenshots of the Online Cancelation Flow included in Your Complaint before You sued Match Group, Inc.

**ANSWER**
Plaintiff objects to this Request as it seeks privileged information, the form of the Online Cancelation Flow is vague, ambiguous, unintelligible, and because it is duplicative. Plaintiff also objects because the requested information is not relevant to any claim or defense in this matter and is not reasonably calculated to lead to discoverable evidence.

**REQUEST FOR ADMISSION NO. 45:**
Admit that You reviewed only the screenshots included in the Complaint of the Online Cancelation Flow, as opposed to any other form of the Online Cancelation Flow, before You sued Match Group, Inc.

**ANSWER**
Plaintiff objects to this Request as it seeks privileged information, form of the Online Cancelation Flow is vague, ambiguous, unintelligible, and because it is duplicative. Plaintiff also objects because the requested information is not relevant to any claim or defense in this matter and is not reasonably calculated to lead to discoverable evidence.

**REQUEST FOR ADMISSION NO. 46:**
Admit that, on average, 86% of Match.com's free trial members successfully canceled their subscription before being billed.

**ANSWER**
Plaintiff objects to this Request because the information sought is already in Match's possession, custody, or control, and Plaintiff's only access to that data comes from Match's summary representations. Moreover, Plaintiff objects to Match's request because free trial users were frequently fraudulent users that used Match's platform to monetize fraud.

Subject to and without waiving the foregoing objections, Plaintiff admits that Match has represented that 86% of its free trial members successfully canceled their subscription before being billed.

**REQUEST FOR ADMISSION NO. 47:**
Admit that, on average, a large percentage of Match.com's free trial members successfully canceled their subscription before being billed.

16

**ANSWER**
Plaintiff objects to this Request as "a large percentage" is vague and ambiguous. Plaintiff also objects to the Request because the information sought is already in Match's possession, custody, or control.

**REQUEST FOR ADMISSION NO. 48:**
Admit that, on average, 89% of Match.com's subscribers successfully canceled their subscription within 24 hours of initiating cancelation.

**ANSWER**
Plaintiff objects to this Request as "initiating cancelation" is vague and ambiguous. Plaintiff also objects to the Request because the information sought is already in Match's possession, custody, or control.

Subject to and without waiving the foregoing objections, Plaintiff admits that Match has represented that on average, 89% of Match.com's subscribers successfully canceled their subscription within 24 hours of initiating cancelation.

**REQUEST FOR ADMISSION NO. 49:**
Admit that, on average, a large percentage of Match.com's subscribers successfully canceled their subscription within 24 hours of initiating cancelation.

**ANSWER**
Plaintiff objects to this Request as "a large percentage" and "initiating cancelation" are vague and ambiguous. Plaintiff also objects to the Request because the information sought is already in Match's possession, custody, or control.

**REQUEST FOR ADMISSION NO. 50:**
Admit that, of the percentage of Match.com subscribers that do not successfully cancel their subscription within 24 hours of initiating cancelation, some percentage of Match.com subscribers take advantage of a save offer (meaning an offer to continue a subscription at a discount).

**ANSWER**
Plaintiff objects to this Request as "some percentage" is vague, ambiguous, and unintelligible, and "initiating cancelation" is vague and ambiguous. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control.

Subject to and without waiving the foregoing objections, Plaintiff admits that Match has represented that of the percentage of Match.com subscribers that do not successfully cancel their subscription within 24 hours of initiating cancelation, some percentage of Match.com subscribers take advantage of a save offer (meaning an offer to continue a subscription at a discount).

Date: August 8, 2022          */s/ M. HASAN AIJAZ*
                              REID TEPFER

M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted pro hac vice)
JOHN R. O'GORMAN (admitted pro hac vice)
ERICA ROLLINS HILLIARD
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 2421292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov;
ehilliard@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

18

## CERTIFICATE OF SERVICE

I, M. HASAN AIJAZ, certify that, on August 8, 2022, I served the foregoing Plaintiff's Responses to Defendant's First set of Interrogatories by email on the following counsel of record at the email address listed below:

Angela C. Zambrano
angela.zambrano@sidley.com
David Sillers
dsillers@sidley.com
Chad Hummel
chummel@sidley.com
Sidley Austin LLP

*Attorneys for Defendant*
*Match Group, Inc.*

By: /s/ M. HASAN AIJAZ

# EXHIBIT 3

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>MATCH GROUP, INC.,<br><br>    Defendant. | Case No. 3:19-cv-02281-K<br><br>**PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST REQUESTS FOR PRODUCTION** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and subject to the general and specific objections set forth below, Plaintiff, the Federal Trade Commission ("FTC") responds to Defendant Match Group Inc. ("Match" or "MGI")'s First Set of Requests for Production ("RFPs" or "Requests").

## I.    GENERAL OBJECTIONS

1. **Lack of Waiver; Right to Modify.** The following responses are made without waiving any objections raised by the FTC in this proceeding or any objections the FTC may have with respect to the subsequent use of these answers. The FTC specifically reserves: (a) the right to challenge authenticity or admissibility of documents referred to in the responses; (b) the right to object on any and all proper grounds, at any time to other discovery procedures involving or relating to the subject matter of RFPs answered herein; and (c) the right, at any time, upon proper showing, to revise, correct or clarify the following responses.

APP 036

2. **Right to Supplement.** The FTC reserves the right to supplement and will supplement these responses as required under FED. R. CIV. P. 26(e) if additional responsive information becomes available.

3. **Attorney Client Privilege, Deliberative Process Privilege, and Attorney Work Product Doctrine.** Plaintiff generally objects to Match's RFPs insofar as these seek, directly or indirectly, information subject to the attorney client privilege, deliberative process privilege or work product doctrine.

4. **Scope of Discovery.** Plaintiff objects to Match's RFPs to the extent that the instructions and definitions attempt to impose upon the Plaintiff obligations greater than those required by the Federal Rules of Civil Procedure.

5. **Non-Waiver by Production.** Without waiving any stated objections, Plaintiff intends to make available all responsive, relevant, and non-privileged documents within Plaintiff's custody, control, or possession.

6. **Impermissible Contention Requests for Production Based on Use in Court.** Plaintiff objects to Match's RFPs based on whether the document supports a contention or based on how the document may be used in court ("Contention Request for Production"). Such a request is beyond the scope of Rule 34. Rule 34 does not authorize requests based on contentions or how the document can be used in court because to detail how a document can be used in court violates the work product doctrine. *See, e.g.*, *Myers v. Goldco, Inc.*, Case No. 4:08cv8-RH/WCS, 2008 U.S. Dist. LEXIS 37089, *14 (N.D. Fla. May 6, 2008) (disallowing Rule 34 request for "all documents which you intend to introduce at the trial of this case or which may be used to refresh the recollections of witnesses" because documents "that a party 'intends to use at trial' are protected by the work product

privilege"). Rule 34 requires document requests to "describe with reasonable particularity each item or category of items to be inspected." FED. R. CIV. P. 34. A Contention Request for Production fails to do so. S*ee Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 193, 202 (N.D. W. Va. 2000) (stating that a document request is not reasonably particular if it merely requests documents "related to a claim or defense" in the litigation); *see also Reagan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 & n. 6 (10th Cir. 2008) (a request for "all documents that relate" is overly broad and fails to identify documents as required by Rule 34).

7. **Fishing Expedition Requests for Production.** Plaintiff objects to Match's RFPs that seek "all documents relating to" a specific topic, item, or matter. Not only is such a request beyond the scope of Rule 34, it violates the work product doctrine and deliberative process privilege, and is an impermissible fishing expedition. *Lopez v. Chertoff*, Case No. CV 07-1566-LEW, 2009 U.S. Dist. LEXIS 50419, **5-8 (E.D. Cal. June 2, 2009) (stating that "one of the purposes of Rule 34 is to prevent fishing expeditions, and thus Plaintiff has some responsibility to narrow his request" and denying request for documents "relating to" claims as facially overbroad). A request for "all documents" that support a contention is a not only an impermissible fishing expedition but an attempt to "drain the pond and collect the fish from the bottom." *Amcast Indus.v. Detrex Corp.*, 138 F.R.D. 115, 121 (N.D. Ind. 1991) (citation omitted).

8. **Expert Employed Only for Trial Preparation**. Plaintiff objects to Match's discovery requests to Plaintiff insofar as these requests seek information and documentation from a non-testifying expert and the requested information and documentation are neither:

3

a.  Facts or data considered by the Plaintiff's testify expert in forming her opinions, nor

b.  Exhibits that will be used to summarize or support her opinions, and has failed to show exceptional circumstances under which it is impracticable for the Defendants to obtain facts or opinions on the same subject by other means. FED. R. CIV. P. 26(B)(4)(D).

9.  **Trial Preparation: Materials.** Plaintiff generally objects to Match's discovery requests to Plaintiff insofar as these requests seek discovery of documents and tangible things that are/were prepared in anticipation of litigation or for trial by or for Plaintiff or its representative, and Match has not shown:

a.  That the request is otherwise discoverable under Rule 26(b)(1), and

b.  That they have substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. FED. R. CIV. P. 26(b)(3)(A)(i) & (ii).

## II.   OBJECTIONS AND RESPONSES

**RFP NO. 1:** All Documents Relating to any and all investigations by the FTC of Match or Match.com, Including but not limited to all Documents that tend to support or undermine the FTC's contention that (1) Match has violated, is violating, or is about to violate Section 5 of the FTC Act or ROSCA or (2) the FTC's contention that there is a fair inference that Match would continue to violate the law absent restraint.

**ANSWER:**

The FTC objects to this request on the grounds it is vague, overbroad, unduly burdensome, and not proportional to the needs of the case. The FTC also objects to this request to the extent it seeks communications or other documents protected by FED. R. CIV. P. 26(b)(3)(A) and (B).

4

The FTC further objects to this request insofar as it seeks irrelevant documents, including those unrelated to this matter. Such documents with no bearing on any claim or defense in this matter are not reasonably calculated to lead to the discovery of relevant evidence. The request as a whole is overbroad, unduly burdensome, and is an impermissible Fishing Expedition. The FTC objects that this request is overbroad, unduly burdensome, and constitutes an impermissible Fishing Expedition when limited to the investigation that resulted in this case. Seeking "All Documents Relating" to that investigation would seek documents wholly unrelated to any claim or defense in the case, is not calculated to lead to discoverable information, and is instead an indiscriminate abuse of the discovery process that imposes an impermissible burden on the producing party, seeks privileged information, and is therefore impermissible. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine. The FTC also objects because the request seeks documents that are already in Match's possession.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC will identify documents we have uncovered so far that support or call into question whether Match's violations are likely to recur absent restraint and produce responsive non-privileged documents if any are located.

In addition, the FTC refers Match to documents in its possession, custody, or control, including the chargeback and cancellation polies and practices relevant to Tinder, OKCupid, and PlentyofFish, including internal correspondence and publicly available policies.

**RFP NO. 2:** All Documents You believe give rise to a fair inference of a reasonable expectation of continued FTC Act violations absent restraint.

**ANSWER:**

The FTC objects to this request on the grounds that it is vague. The FTC further objects to this request as not reasonably calculated to lead to the discovery of relevant evidence. This request is overbroad, unduly burdensome, not proportional to the needs of the case, and a Fishing Expedition. This request is also duplicative of Request 1. The FTC also objects to this request as being irrelevant to the extent it is not duplicative of Request 1. The FTC also objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine.

Notwithstanding the foregoing objections, the FTC refers to its answer to Request 1.

**RFP NO. 3:** All Documents which the FTC contends supports [sic] an argument that any of the discontinued practices at issue in the Complaint are likely to be reinstituted by Match or on Match.com.

**ANSWER:**

The FTC objects to this request as duplicative of Requests 1 and 2. This Request therefore is unduly burdensome. The FTC also objects to this request is irrelevant to the extent it is not duplicative of Requests 1 and 2. The FTC further objects to this document request as premature. Discovery has just begun in this matter, and the Commission is gathering evidence in support of its claims. Moreover, the Court's scheduling order provides dates on which the parties will exchange lists of exhibits they may use at trial. By responding now, the Commission does not waive its rights to identify other potential documents at the time provided in the scheduling order. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine.

6

Notwithstanding the foregoing objections, the FTC refers to its response to Requests 1 and 2.

**RFP NO. 4:** All Documents—Including regulations, opinions, notices, or guidance—in which the FTC has described what does or does not constitute a "simple" cancelation method under ROSCA.

**ANSWER:**

The FTC objects to this request on the grounds it is overbroad, unduly burdensome, not proportionate to the needs of the case, and irrelevant to the extent that it seeks anything beyond official interpretations. The FTC also objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine. To the extent it seeks official interpretations, such interpretations are publicly available.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC will search for documents relevant to this matter as required and produce responsive non-privileged documents if any are located.

**RFP NO. 5:** All surveys, copy tests, research, analyses, studies, or other tests conducted by or done for the FTC regarding cancelation methods.

**ANSWER:**

The FTC also objects to this request as it is overbroad, is not proportional to the needs of the case, and seeks irrelevant documents, including those unrelated to this matter and concerning unrelated cancelation methods. This request is therefore not reasonably calculated to lead to the discovery of relevant evidence. Surveys, copy tests, research, analyses, studies, or other tests of different cancelation mechanisms are not relevant to whether Match failed to provide simple mechanisms to cancel its own recurring subscriptions. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative

process privilege, or work product doctrine. The FTC also objects to this request to the extent that it seeks trial preparation materials. The FTC also objects on the grounds that it is premature. Discovery has just begun in this matter, and the Commission is gathering evidence in support of its claims. Moreover, the Court's scheduling order provides dates on which the parties will exchange lists of exhibits they may use at trial. By responding now, the Commission does not waive its rights to identify other potential documents at the time provided in the scheduling order.

**RFP NO. 6:** All Documents regarding evaluations the FTC has performed of subscription service cancelation processes.

**ANSWER:**

The FTC objects to this Request on the grounds it is vague, overbroad, and not proportional to the needs of the case.  The FTC also objects to this request as it is overbroad and seeks irrelevant documents, including those unrelated to this matter and concerning unrelated cancelation methods. This request is therefore not reasonably calculated to lead to the discovery of relevant evidence. Further, as in its response to Request 5, the FTC objects to this request to the extent that it seeks documents protected by attorney client privilege, work product doctrine, or trial preparation materials. The FTC also objects to the request seeking documents "regarding" the subject matter of the request as that language seeks documents covered by attorney client and deliberative process privilege and work product doctrine and is therefore intended to abuse the discovery process. The FTC also objects on the grounds that this request is duplicative of Request 5.

**RFP NO. 7:** All Documents Related to the calculation of monetary damages sought by the FTC, Including Documents Related to the nature and extent of any alleged injury to consumers.

**ANSWER:**

The FTC objects to this request as it is vague. The FTC also objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine. The FTC also objects to the request seeking documents "regarding" the subject matter of the request as that language seeks documents covered by attorney client and deliberative process privilege and work product doctrine and is therefore intended to abuse the discovery process. The requested documents, related to billing, refunds, and other Match subscription and billing information, are in Match's possession, custody or control.

**RFP NO. 8:** All Documents Related to any other instance in which the FTC has sought monetary damages for violation of ROSCA, Including Documents indicating how the FTC calculated monetary damages.

**ANSWER:**

The FTC objects to this request on the grounds it is vague, overbroad, unduly burdensome, and not proportional to the needs of the case.  FTC also objects to this request as irrelevant, as calculations of monetary damages in other cases have no connection to any damages caused by Match to its subscribers. This request therefore impermissibly seeks documents with no bearing on any claim or defense in this matter and is not reasonably calculated to lead to the discovery of relevant evidence.   The FTC also objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine.

The FTC will search for documents as required and produce responsive non-privileged documents if any are located.

APP 044

**RFP NO. 9:** All Documents Related to the calculation of civil penalties sought by the FTC.

**ANSWER:**

The FTC objects to this request on the grounds it is vague, overbroad, unduly burdensome, and not proportional to the needs of the case. FTC also objects to this request as irrelevant, as calculations of civil penalties in other cases has no connection to the appropriate amount of civil penalties appropriate for Match's conduct. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC will search for documents as required and produce responsive non-privileged documents if any are located.

**RFP NO. 10:** Documents sufficient to identify other lawsuits in which You have been involved that relate to a cancelation method being not "simple," as that term is used in ROSCA, 15 U.S.C. § 8403.

**ANSWER:**

The FTC objects to the request on the grounds that it is irrelevant as the cancelation methods challenged in other cases does not bear on Match's failure to provide a simple cancelation mechanism. Additionally, any responsive information is as readily available to Match as it is to the FTC. Moreover, this request appears to be an improper interrogatory presented in the form of a document request. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine.

10

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC will search for documents as required and produce responsive non-privileged documents if any are located.

**RFP NO. 11:** All Documents cited to, referenced in, or relied upon in preparing Your responses to the Interrogatories.

**ANSWER:**

The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine. Notwithstanding the foregoing, the FTC will search for documents as required and produce responsive non-privileged documents if any are located.

**RFP NO. 12:** All Documents provided to the FTC by any third party that Relate to Count V of Your Complaint, Including Documents provided by Match.com users and former users.

**ANSWER:**

The FTC also objects to this request as it is vague, overbroad, and not proportional to the needs of the case. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine. Notwithstanding the foregoing objections, the FTC responds as follows. The FTC will search for documents as required and produce responsive non-privileged documents if any are located.

**APP 046**

**RFP NO. 13:** Any Communications or Documents Related to Communication with any third party that Relate to Count V of Your Complaint, Including Communication with Match.com users and former users.

**ANSWER:**

The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine. The FTC also objects to this request to the extent that it is duplicative of Request 12.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC will search for documents as required and produce responsive non-privileged documents if any are located.

**RFP NO. 14:** All screenshots, which Relate to Count V of Your Complaint, of Match.com, websites on which Match.com advertised, and/or the "websites of other online platforms" referenced in Your Initial Disclosures.

**ANSWER:**

The FTC objects to this request as it is vague and ambiguous as to what screenshots are being requested. The FTC also objects to this request as it is overbroad, and not proportional to the needs of the case in seeking "All screenshots" of Match.com, websites it advertised on, and the websites of Match group's other platforms whether or not such screenshots relate to any claim or defense in this matter. The FTC also objects because the documents sought are as readily or more readily available to Match as they are to the FTC. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC will search for documents as required and produce responsive non-privileged documents if any are located.

**APP 047**

**RFP NO. 15:** Any videos, which Relate to Count V of Your Complaint, of Match.com or websites on which Match.com advertised.

**ANSWER:**

The FTC objects to this request as it is vague and ambiguous as to what videos are being requested. The FTC also objects to this request as it is overbroad, and not proportional to the needs of the case in seeking "Any videos" of Match.com, websites it advertised on, and the websites of Match group's other platforms whether or not such screenshots relate to any claim or defense in this matter. The FTC also objects because the documents sought are as readily or more readily available to Match as they are to the FTC. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC will search for documents as required and produce responsive non-privileged documents if any are located.

**RFP NO. 16:** All surveys, copy tests, research, analyses, studies, or other tests conducted by or done for the FTC Related to any investigation of Count V of Your Complaint.

**ANSWER:**

The FTC objects to this request to the extent it calls for materials protected by attorney client or deliberative process privilege or by the work product doctrine. The FTC does not currently have non-privileged materials responsive to this request.

**RFP NO. 17:** All Documents Relating to any complaints or other negative statements regarding Count V of Your Complaint.

**ANSWER:**

The FTC objects to this request as "complaints or other negative statements regarding Count V" is vague and unintelligble. The FTC also objects that this request is overbroad, unduly

**APP 048**

burdensome, seeks irrelevant documents, not proportional to the needs of the case, and

constitutes an impermissible Fishing Expedition.

The FTC objects to this request to the extent it seeks documents protected from

disclosure by the attorney client and deliberative process privilege, or work product doctrine.

The FTC further objects to this request as it fails "to describe with reasonable particularity each

item or category of items to be inspected," as required under FED. R. CIV. P. 34(b)(1)(A).

**RFP NO. 18:** All Documents cited to, referenced in, or relied upon in preparing Count V of
Your Complaint.

**ANSWER:**

The FTC objects to this request on the grounds that it amounts to an intrusion into the

FTC's deliberative process and attorney work product.  This Request is overbroad, not

reasonably calculated to lead to discoverable evidence, and not proportional to the needs of the

case.

**RFP NO. 19:** All Documents You may use at trial that Relate to Count V of Your Complaint.

**ANSWER:**

The FTC objects to this request on the grounds it seeks trial preparation materials. The

FTC also objects that this request is an impermissible Fishing Expedition, and violates the work

product doctrine by seeking documents that reflects Plaintiff's mental impressions in support of

the claim. The FTC further objects to the request on the grounds that such documents, to the

extent that they exist, are likely already in Match's possession.  The FTC further objects to this

document request as premature. Discovery has just begun in this matter, and the Commission is

gathering evidence in support of its claims. Moreover, the Court's scheduling order provides

dates on which the parties will exchange lists of exhibits they may use at trial. By responding

now, the Commission does not waive its rights to identify other potential documents at the time

14

provided in the scheduling order. The FTC objects to this request to the extent it seeks

documents protected from disclosure by the attorney client and deliberative process privilege, or

work product doctrine.


Date: August 8, 2022                                       */s/ M. HASAN AIJAZ*
                                                            REID TEPFER
                                                            M. HASAN AIJAZ
                                                            SARAH ZUCKERMAN (admitted pro hac vice)
                                                            JOHN R. O'GORMAN (admitted pro hac vice)
                                                            ERICA ROLLINS HILLIARD
                                                            Texas Bar No. 24079444 (Tepfer)
                                                            Virginia Bar No. 80073 (Aijaz)
                                                            New York Bar No. 5603832 (Zuckerman)
                                                            Texas Bar No. 2421292 (O'Gorman)
                                                            Mississippi Bar No. 104244 (Hilliard)
                                                            Federal Trade Commission
                                                            1999 Bryan Street, Suite 2150
                                                            Dallas, Texas 75201
                                                            T: (214) 979-9395 (Tepfer)
                                                            T: (214) 979-9386 (Aijaz)
                                                            T: (214) 979-9376 (Zuckerman)
                                                            T: (214) 979-9382 (O'Gorman)
                                                            T: (214) 979-9379 (Hilliard)
                                                            Email: rtepfer@ftc.gov;
                                                            maijaz@ftc.gov;
                                                            szuckerman@ftc.gov;
                                                            jogorman@ftc.gov;
                                                            ehilliard@ftc.gov
                                                            Attorneys for Plaintiff
                                                            FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

I, M. HASAN AIJAZ, certify that, on August 8, 2022, I served the foregoing Plaintiff's Responses to Defendant's First Requests for Production by email on the following counsel of record at the email address listed below:

Angela C. Zambrano
angela.zambrano@sidley.com
David Sillers
dsillers@sidley.com
Chad Hummel
chummel@sidley.com
Sidley Austin LLP

*Attorneys for Defendant*
*Match Group, Inc.*

By: /s/ M. HASAN AIJAZ

# EXHIBIT  4

APP 052

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>     Plaintiff,<br><br>v.<br><br>MATCH GROUP, INC.,<br><br>     Defendant. | Case No. 3:19-cv-02281-K<br><br>**PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and subject to the general and specific objections set forth below, Plaintiff, the Federal Trade Commission ("FTC") responds to Defendant Match Group Inc. ("Match" or "MGI")'s First Set of Interrogatories.

## I.    GENERAL OBJECTIONS

1. **Compound Interrogatories.** Plaintiff objects to interrogatories that contain discrete requests and therefore constitute compound interrogatories. Including subparts, no more than twenty-five interrogatories may be given without a leave of court. Fed. R. Civ. P. 33(a). "'[W]here the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within it.'" *FTC v. Think All Pub LLC*, No. 4:07-CV-011, 2008 WL 687455, *1 (E.D. Tex. 2008).

2. **Blockbuster Interrogatories.** Plaintiff objects to Match's impermissible "blockbuster interrogatories" seeking *all* facts without regard for materiality, proportionality, time, and expense. A party cannot "indiscriminately hurl[] interrogatories at every conceivable detail and fact which may relate to a case." *Nieman v. Hale*, No. 3:12-CV-2433-L-BN,

1

2013 WL 6814789, at *11 (N.D. Tex. Dec. 26, 2013) (quoting *Grynberg v. Total S.A., Inc.*, No. 3–cv–1280, 2006 WL 1186836, at *5–*7 (D. Colo. May 3, 2006)). Blockbuster interrogatories "ask not merely for material or principal facts. They seek 'each and every fact' supporting the allegations of plaintiff, no matter how insignificant or minor." *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997).

3. **Lack of Waiver; Right to Modify.** The following responses are made without waiving any objections raised by the FTC in this proceeding or any objections the FTC may have with respect to the subsequent use of these answers. The FTC specifically reserves: (a) the right to challenge authenticity or admissibility of documents referred to in the interrogatory responses; (b) the right to object on any and all proper grounds, at any time to other discovery procedures involving or relating to the subject matter of interrogatories answered herein; and (c) the right, at any time, upon proper showing, to revise, correct or clarify the following responses.

4. **Right to Supplement.** The FTC reserves the right to supplement and will supplement these responses as required under Fed. R. Civ. P. 26(e) if additional responsive information becomes available.

5. **Attorney Client Privilege, Deliberative Process Privilege, and Attorney Work Product Doctrine.** Plaintiff generally objects to Match's requests to Plaintiff insofar as these seek, directly or indirectly, information subject to the attorney client privilege, deliberative process privilege or work product doctrine.

6. **Scope of Discovery.** Plaintiff objects to Match's Interrogatories to the extent that the instructions and definitions attempt to impose upon the Plaintiff obligations greater than those required by the Federal Rules of Civil Procedure.

## II.   OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1:** Identify and Describe the basis for Your belief that Match Group, Inc. "is about to violate" the FTC Act, Including a statement of all facts and evidence that You believe give rise to a fair inference of a reasonable expectation of continued violations absent restraint.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory as it is overbroad, vague, unduly burdensome, and not proportional to the needs of the case. Additionally, the FTC objects to this request to the extent that it seeks information that is more readily available to Match. Moreover, this Interrogatory is vague as it conflates the pleading standard the FTC must meet to bring in an action in federal court—"is violating or is about to violate"—with the standard courts use to determine whether the FTC can obtain a permanent injunction. The Court has already ruled in the FTC's favor on the precise question of whether the FTC met the pleading standard in this action, whether MGI "is violating, or is about to violate." Dkt. 86. The FTC is therefore construing this interrogatory to refer to the basis for the FTC's belief that a permanent injunction is appropriate in this case because there is a reasonable expectation of continued violations by Match of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Section 4 of ROSCA, 15 U.S.C. § 8403, absent restraint. The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. In fact, the FTC has requested that Defendant MGI produce documents on this topic and others in discovery, but to date Defendant has refused to produce them, hampering Plaintiff's ability to answer this Interrogatory. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Subject to and without waiving the foregoing objections, the FTC responds that it has already disclosed to Match the basis for Plaintiff's belief that a reasonable expectation exists that Match would violate the law absent restraint, allegations this Court found sufficient to reject Match's contrary motion to dismiss arguments. *See* Dkts 1, 20, 27, and 86. First, there is no evidence that Match's cancellation practices, which the FTC alleges violates ROSCA, have changed since the beginning of the FTC's investigation of Match and thus Match has been, is currently, and will continue, to violate the law unless placed under order. Second, to the extent Match has discontinued other practices, even if Match were not currently violating the law, which it is, past conduct can indicate "that there is a reasonable likelihood of further violations." *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978).

Specifically, in deciding whether to issue an injunction courts in the Fifth Circuit look at a number of factors, including: the egregiousness of the defendant's actions; the isolated or recurrent nature of the infraction; the degree of scienter involved; the sincerity of the defendant's assurances against future violations; the defendant's recognition of the wrongful nature of his conduct; and whether the defendant's occupation presents opportunities for future violations. *See* Dkt. 27 at 6 (citations omitted). Each of these factors support the issuance of an injunction here. Match engaged in egregious, recurring conduct with the scienter of knowing it was earning money at its customer's expense, as described in paragraphs ¶¶ 3, 23, 29-37, 50, 57-59, 64 of the complaint.

Match has yet to offer sincere assurances against future violations; it only suspended its activities while under federal investigation for its unlawful conduct and has not admitted that any of its practices were deficient in any manner. Moreover, Match has not taken any action to bind itself against engaging in the challenged practices in the future. Match's ability to engage in this

4

conduct on this platform and the dozens of other platforms it owns and controls, would allow it to easily resume and expand any of the practices challenged in the complaint. *See* Compl. ¶¶ 10-15, 64; *see also* Dkt. 27 at 6-7.

Match knew that its problems were longstanding, affected all five counts described in the complaint, and failed to correct its wrongdoing. Match employees noted long-standing problems with the guarantee, including that the tracker was flawed, that it had a poor redemption flow, and that even eligible consumers missed redeeming the guarantee. *See* MATCHFTC344243, MATCHFTC415890, MATCHFTC452091, MATCHFTC467915, MATCHFTC469164, MATCHFTC521299, MATCHFTC568737, MATCHFTC644115, MATCHFTC647443 (internal correspondence describing problems with the guarantee). The numbers perfectly illustrate the egregiousness of Match's practices, of more than 2.5 million subscriptions sold that were subject to the guarantee, not even 2 percent of subscribers redeemed the guarantee whereas close to half were billed for at least one additional subscription period. *See* Match's May 30, 2017, letter to the FTC. Because Match only stopped this practice when under federal investigation without admitting wrongdoing, despite knowing the long-standing and widespread harm caused by its practices, Match is likely to engage in the same or similar wrongdoing, including the institution of a similar guarantee, unless under order. Likewise, Match egregiously kept its consumers' money while removing paid-for services of those consumers who initiated a chargeback that Match successfully challenged. *See* Match's MATCHFTC429717, MATCHFTC313570, MATCHFTC312357. Match's chargeback behavior is "likely to recur," in part, because it has never stopped—Match appears to continue to engage in similar practices across its other dating websites, including PlentyOfFish, Tinder, and OkCupid. *See* F01-MG-0028770- F01-MG-0028773 (terms of use of MGI's dating platforms).

5

Last, Match's ROSCA practices are as egregious as the rest. Match's own records characterize the online cancelation process as confusing, misleading, in need of repair, hard to find, and tedious. *See* MATCHFTC669602, MATCHFTC669157, MATCHFTC667211, MATCHFTC646192, MATCHFTC604834, MATCHFTC604757, MATCHFTC601548, MATCHFTC601397, MATCHFTC579050, MATCHFTC568900, MATCHFTC467915, MATCHFTC545351, MATCHFTC543666, MATCHFTC543542, MATCHFTC529047, MATCHFTC528098, MATCHFTC519412, MATCHFTC499728, MATCHFTC495267, MATCHFTC494559, MATCHFTC491446, MATCHFTC485296, MATCHFTC485041, MATCHFTC477153, MATCHFTC473469, MATCHFTC464887, MATCHFTC571491, MATCHFTC429717, MATCHFTC417536, MATCHFTC417535, MATCHFTC406132, MATCHFTC405364, MATCHFTC371904, MATCHFTC369268, MATCHFTC336923, MATCHFTC320168, MATCHFTC313402, MATCHFTC312903, MATCHFTC306318 (internal correspondence and documents identifying problems with cancellation flow ). Match designed and refused to fix a misleading cancelation process that, for at least ten years, allowed consumers to think they had canceled their subscriptions when, in fact, they had just been duped by the cancelation process.  The evidence cited above shows that is Match currently violating the law, has done so knowingly, and will continue to do so absent restraint. The FTC also refers Match to the FTC's responses to Interrogatories 2 through 7.

Match's longstanding practice of knowingly engaging in egregious business practices, coupled with its failure to even acknowledge its wrongdoing, support an injunction in this matter.

Finally, Plaintiff notes that some of the illegal conduct that MGI has represented has ceased may in fact be ongoing on Match.com or MGI's other dating sites. Specifically, Match.com's current chargeback policies may still violate the law as alleged in Count IV. Its

6

publicly available terms and conditions currently state: "If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, Match may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a Match subscription. In the event that your chargeback or other payment reversal is overturned, please contact Customer Care." See Match.com's Terms of Use Agreement (Sept. 1, 2022), https://www.match.com/registration/membagr.aspx. In other words, consumers do not have their account access reinstated automatically—they must contact customer care, something a customer would not know without combing through Match.com's lengthy terms of use document. Even then, these terms do not make clear what, if anything, customer care would do to resolve the issue. Moreover, MGI's other dating sites provide include similar terms buried in their terms of use documents, although these sites are silent as to whether consumers even have the option to get their account reinstated through customer service. *See, e.g.*, Tinder's Terms of Use, https://policies.tinder.com/terms/us/en ("If you initiate a chargeback or otherwise reverse a payment made with your Payment Method, Tinder may terminate your account immediately in its sole discretion."); OkCupid's Terms and Conditions, https://help.okcupid.com/hc/en-us/articles/6640690915469-Terms-Conditions ("If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, OkCupid may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a OkCupid subscription."); Plenty of Fish Terms of Use Agreement, https://www.pof.com/terms (same); Hinge Terms of Use Agreement ("If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, Hinge may terminate your account immediately in its sole discretion"). In sum, any changes appear to not have remedied MGI's law violations, and MGI's other dating sites likewise may have illegal chargeback policies. At a bare

7

minimum, these policies, which are central to Count IV, and the ambiguity concerning how MGI's dating sites are implementing them provide the FTC a good-faith basis to seek further information in discovery.

MGI has repeatedly relied on its representations that it has ceased and does not plan on resuming the conduct challenged in Counts III and IV, but such claims are not credible. First, despite knowing for years that these practices caused consumer harm, MGI only represented that it stopped engaging in those practices while under federal investigation and in the face of impending litigation, and it has repeated its claims to delay producing relevant documents and information in discovery. These claims also have no binding effect and do not prevent MGI from engaging in conduct that it has never acknowledged was wrong. Moreover, and as described above specifically with respect to MGI's chargeback practices, publicly available evidence calls into question whether MGI has ceased its practice at Match.com, let alone other websites.

**INTERROGATORY NO. 2:** Identify and Describe all features of Match.com's Online Cancelation Flow that You contend make the Online Cancelation Flow not "simple," as that term is used in ROSCA, 15 U.S.C. § 8403, Including a description of what changes You contend would be necessary to make the Online Cancelation Flow simple.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above.  The FTC also objects to this Interrogatory as it is overbroad, vague, unduly burdensome, and premature.

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

The FTC also objects to the Interrogatory as ambiguous to the extent it implies that each feature of a cancelation mechanism needs to not be "simple" to violate ROSCA.  The FTC objects to the request as the word "feature" is vague and undefined. The FTC also objects to the Interrogatory to the extent that it seeks a description of changes needed to make the cancelation flow simple – this part of the Interrogatory is both a discrete request separate from the first part of the Interrogatory and is instead an impermissible attempt to join two interrogatories into one. To avoid any confusion, the FTC will answer this discrete request as Interrogatory No. 8.

Subject to and without waiving the foregoing objections, Match's own executives have described its cancelation method as confusing, burdensome, cumbersome, hard to find, tedious, convoluted and that they knew consumers were getting billed after they had thought they canceled their subscriptions. *See* Compl. ¶ 53-59; *see also* MATCHFTC312903, MATCHFTC313402,  MATCHFTC320168,  MATCHFTC336923,  MATCHFTC369268, MATCHFTC371904,  MATCHFTC405364,  MATCHFTC406132,  MATCHFTC417535, MATCHFTC417536,  MATCHFTC429717,  MATCHFTC464887,  MATCHFTC467915, MATCHFTC473469,  MATCHFTC477153,  MATCHFTC485041,  MATCHFTC485296, MATCHFTC491446,  MATCHFTC494559,  MATCHFTC495267,  MATCHFTC499728, MATCHFTC519412,  MATCHFTC528098,  MATCHFTC529047,  MATCHFTC543542, MATCHFTC543666,  MATCHFTC545351,  MATCHFTC568900,  MATCHFTC571491, MATCHFTC579050,  MATCHFTC601397,  MATCHFTC601548,  MATCHFTC604757, MATCHFTC604834,  MATCHFTC646192,  MATCHFTC667211,  MATCHFTC669157, MATCHFTC669602, MATCHFTC728586 (internal correspondence demonstrating knowledge of problems with cancellation flow and of consumer complaints related to the flawed process). Match's own internal documents identified the problems with its cancelation process, including

9

that the cancellation flow was hard to find on the Match.com website, took too many clicks to complete, was difficult to understand, left consumers mistakenly believing that they had completed the cancellation process by presenting seemingly optional questions that were not in fact optional, had a password wall that blocked members from cancelling, and had been that way for at least 10 years. *Id.* Match's cancelation flow also had misleading text in the middle of the cancelation flow that states "Before you go" above a survey – misleading consumers into thinking the cancelation is complete and the survey is optional, when in fact consumers needed to continue past the survey to actually cancel. MATCHFTC604757. Match has had a flawed password reset mechanism that also prevented consumers from simply canceling their account if they had forgotten their password. MATCHFTC465940, MATCHFTC752185. Consumers have complained consistently about Match's misleading cancelation process to the company, and it was aware of and agreed that the process was misleading, but it decided not to fix the cancelation process, instead keeping it as a profit center. MATCHFTC312903, MATCHFTC313402, MATCHFTC320168, MATCHFTC336923, MATCHFTC369268, MATCHFTC519412. To the extent Match produces responsive documents and answers in discovery, the FTC may supplement this answer.

**INTERROGATORY NO. 3:** Identify and Describe the harm to consumers that You contend resulted from the alleged lack of a simple online cancelation method, Including how the damages caused by that harm were calculated, the number of users that You believe were unable to cancel their subscription as a result of the alleged lack of a simple cancelation method, and the amount of harm/damages per user.

**ANSWER:**

The FTC objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's

10

scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

As you acknowledged in our August 24 conference on MGI's Motion to Compel, the FTC is not currently in a position to provide specific calculations because, among other things, it lacks the updated data regarding Count V requested in its June 3, 2022 First Set of Requests for Production of Documents.

Match's failure to provide simple cancelation mechanisms caused consumers to be unable to cancel their subscription or led them to incorrectly believe they had cancelled their subscription when they in fact had not. This harmed consumers by causing unwanted and unauthorized charges. Match's failure to provide simple mechanisms also caused damages to consumers who had to contact Match to cancel their subscription or seek a refund because their cancellation attempt was unsuccessful. The harm related to such contact and seeking a refund is the value of these consumers' lost time.

The number of users who were unable to cancel their subscription as a result of Match's failure to provide simple cancelation mechanisms will be determined by, among other things, documents and records in Match's possession that the FTC has requested through discovery, including website usage records, billing records, and complaint data.[1] Similarly, the amount of harm and damages per user will be calculated using, among other things, data and records in

---

[1] The FTC's contention is that all consumers who were unable to cancel their subscription were harmed, not merely consumers who complained to Match.

APP 063

Match's possession that the FTC has requested in its discovery, including website usage records, billing records, and complaint data.[2]

The relevant time period for this calculation begins with the earliest period permitted by the statute up to and including the present day. 15 U.S.C § 57b.

**INTERROGATORY NO. 4:** State whether You contend that the Match.com methods of cancelation other than the Online Cancelation Flow (Including online chat, telephone, mail, and fax) are not simple, and explain why You contend each method is simple or not simple, Including a description of all facts supporting Your contentions.

**ANSWER:**

The FTC alleges in Count V that "Defendants have failed to provide simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account." This contention is not limited to any particular method of cancelation, but to the service as a whole. To the extent that this Interrogatory requests further information, FTC objects on the grounds that it is overbroad, vague, unduly burdensome, and not proportional to the needs of the case. The FTC also objects to the Request to the extent it implies that every method of cancelation must not be simple in order for a company to violate ROSCA. The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

---

[2] The estimates of the number of consumers harmed and per consumer harm in the FTC's initial response to this interrogatory was based on incomplete data and was intended to estimate for mediation or settlement purposes the amount of harm at issue.

Notwithstanding the foregoing, the FTC responds that Match failed to adequately inform users about these alternative cancellation methods, which made them hard to find or utilize and not simple. This is evidenced by the lack of prominent advertising or disclosure of these alternative cancellation methods on Match.com's website and by how few subscribers used these methods. For example, of all online cancelations in 2017 and 2018, less than two-tenths of one percent used Match's chat feature. *See* MGI White Paper, January 11, 2019 and attachments; MATCHFTC485152. Moreover, the availability of Match's chat and voice cancellation are highly dependent on the availability and wait times to contact a customer service representative, which Match controls. When Match reduced the hours of operation for voice and chat customer service it increased the difficulty of canceling using those methods and tracked a dramatic reduction in cancellations. MATCHFTC568900. The FTC has specifically requested information concerning how rarely these alternative cancellation methods have been used and to date Defendants have yet to produce them.

To the extent Match produces responsive documents and answers in discovery or the FTC uncovers additional relevant facts, the FTC may supplement this answer.

**INTERROGATORY NO. 5:** Identify and Describe the features that You contend make a cancelation method simple (or not), Including (but not limited to) all factors You consider in that analysis and the weight that You give each of those factors.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The Interrogatory is also irrelevant because it asks about cancelation methods that are not at issue in this case and is therefore not reasonably calculated to lead to the discovery of relevant evidence. The FTC also objects to this Interrogatory because it is duplicative of Interrogatories 2 and 4.

13

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Notwithstanding the foregoing, the FTC refers to its November 4, 2021 Enforcement Policy Statement Regarding Negative Option Marketing. *See* 86 Fed. Reg. 60822. In addition, the FTC refers to its answers for Interrogatories 1, 2 and 4, and documents the FTC produced with document identifiers, F01-MG-0028678 through F01-MG-0028696, which are complaints alleging that the respective defendants failed to have simple cancellation mechanisms. To the extent Defendant seeks to understand why its own cancellation mechanism is not simple, the FTC refers to Interrogatory Response 2 and the documents cited therein. The FTC reserves the right to amend or supplement this answer, in particular once Defendant produces any requested discovery it is currently withholding.

**INTERROGATORY NO. 6:** Identify and Describe in what way(s) You contend that Match.com's Online Cancelation Flow is not as simple as subscribing to Match.com via the Match.com website, Including by comparing the two processes.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory as it is overbroad, vague, unduly burdensome, and not proportional to the needs of the case.

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this

14

response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Subject to and without waiving the foregoing objections, the FTC responds that Match's internal documents characterize its cancelation as burdensome, cumbersome, hard to find, tedious, convoluted and that they knew consumers were getting billed after they had thought they canceled their subscriptions. *See* MATCHFTC669602, MATCHFTC669157, MATCHFTC667211, MATCHFTC646192, MATCHFTC604834, MATCHFTC604757, MATCHFTC601548, MATCHFTC601397, MATCHFTC579050, MATCHFTC568900, MATCHFTC467915, MATCHFTC545351, MATCHFTC543666, MATCHFTC543542, MATCHFTC529047, MATCHFTC528098, MATCHFTC519412, MATCHFTC499728, MATCHFTC495267, MATCHFTC494559, MATCHFTC491446, MATCHFTC485296, MATCHFTC485041, MATCHFTC477153, MATCHFTC473469, MATCHFTC464887, MATCHFTC571491, MATCHFTC429717, MATCHFTC417536, MATCHFTC417535, MATCHFTC406132, MATCHFTC405364, MATCHFTC371904, MATCHFTC369268, MATCHFTC336923, MATCHFTC320168, MATCHFTC313402, MATCHFTC312903, MATCHFTC306318 (internal correspondence showing knowledge of consumer complaints and issues with cancellation process).. There is not similar evidence that Match's sign-up process is burdensome, cumbersome, hard to find, tedious or that consumers believed they had signed up for a subscription service when they had not. Match's own internal documents flagged the problems with its cancelation process, including that it was hard to find and was difficult to understand, but there is no similar evidence that consumers had difficulty understanding, finding, or completing the sign-up process. *See e.g.*, MATCHFTC473469, MATCHFTC491446, MATCHFTC669157, MATCHFTC669602 (internal correspondence document issues with

cancellation process). Moreover, Match presents an offer to consumers that would abandon the cancelation process if selected, but it does not present an offer to consumers to abandon the subscription process. Match's signup process has no misleading text that suggests the signup process is complete, whereas Match's cancelation process has misleading text in the middle of the cancelation flow that states "Before you go" above a survey – misleading consumers into thinking the cancelation is complete and the survey is optional, when in fact the survey is not optional and must be completed for the cancellation to be effective.

**INTERROGATORY NO. 7:** Identify and Describe the basis for Your allegation that Match Group, Inc. owns, operates, and controls Match.com, as stated in Your Complaint, Including a statement of all facts and evidence that You believe support this allegation. If You have no basis or evidence, You should so state.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory to the extent it seeks information that is in Match's possession and readily available to Match.

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Notwithstanding the foregoing, Match's responses to the FTC's CID described various policies of Match, which Match defined as Match Group Inc., in operating Match.com. For example, Match stated that: Match.com was the primary top-level URL contributing to Match's business operations; Match maintained several URLs that directed users to Match.com; and Match had policies and practices relating to Test profiles and free trials. Match has also stated in

a filing with the Ninth Circuit that it operates match.com, and email records show Match's senior executives and CEO directing day-to-day activities and business practices and receiving reports about those activities and practices. *See Epic Games, Inc. v. Apple, Inc.*, Nos. 21-16506 & 21-16695, Doc. 8-1 (9th Cir. Nov. 29, 2021) ("**Match Group, Inc. ('Match')** is a Dallas, Texas-based online dating service which operates dating web sites in over 50 countries. Originally founded in 1993, **Match operates www.match.com** and mobile apps.") (emphasis added); *see also* MATCHFTC_Sample0000985, MATCHFTC_Sample0001021, MATCHFTC311263, MATCHFTC312700, MATCHFTC313402, MATCHFTC320168, MATCHFTC327460, MATCHFTC327972, MATCHFTC363737, MATCHFTC369127, MATCHFTC369348, MATCHFTC374137, MATCHFTC3800042, MATCHFTC380007, MATCHFTC403971, MATCHFTC404348, MATCHFTC404416, MATCHFTC405364, MATCHFTC405557, MATCHFTC406132, MATCHFTC408480, MATCHFTC409673, MATCHFTC415715, MATCHFTC426352, MATCHFTC427699, MATCHFTC428352, MATCHFTC429944, MATCHFTC431584, MATCHFTC439155, MATCHFTC445763, MATCHFTC465940, MATCHFTC474080, MATCHFTC485374, MATCHFTC485530, MATCHFTC497411, MATCHFTC519878, MATCHFTC519918, MATCHFTC521397, MATCHFTC525771, MATCHFTC543726, MATCHFTC549410, MATCHFTC559522, MATCHFTC560758, MATCHFTC581504, MATCHFTC593415, MATCHFTC600883, MATCHFTC601662, MATCHFTC604735, MATCHFTC605578, MATCHFTC610845, MATCHFTC624330, MATCHFTC624809, MATCHFTC634792 (email records of MGI executives involved in and directing business operations).

**INTERROGATORY NO. 8:** Provide a description of what changes You contend would be necessary to make the Online Cancelation Flow simple.

**ANSWER:**

The FTC responds that this interrogatory seeks irrelevant information as the FTC does not need to show what a simple mechanism would look like to establish that Match's flow was not simple. Moreover, because there are any number of Online Cancelation Flows that MGI could offer that would be simple, it is simply not feasible for the FTC to provide a description of every possible Online Cancelation Flow MGI could offer that is simple. The FTC contends that an adequately disclosed one-click cancellation process would be simple. The FTC has also provided guidance that cancellation mechanism for negative option plans should be "at least as easy to use as the method the consumer used to initiate the negative option feature." *See* 86 Fed. Reg. 60822.

Furthermore, the changes to the Online Cancelation Flow that the FTC would find acceptable in a settlement is subject to the attorney client privilege and deliberative process privilege and the work product doctrine and is not the proper subject of an interrogatory. Last, the FTC has already described, repeatedly and in detail, specific problems with Online Cancelation Flow, problems that MGI has been aware of and could remedy. *See* Answers to Nos. 1, 2, 5, and 7.The FTC may supplement this answer to the extent it obtains additional responsive documents from Match or Match Group, LLC.

Date: September 7, 2022                          */s/ M. HASAN AIJAZ*
                                                REID TEPFER
                                                M. HASAN AIJAZ
                                                SARAH ZUCKERMAN (admitted pro hac vice)
                                                JOHN R. O'GORMAN (admitted pro hac vice)
                                                ERICA ROLLINS HILLIARD
                                                Texas Bar No. 24079444 (Tepfer)
                                                Virginia Bar No. 80073 (Aijaz)
                                                New York Bar No. 5603832 (Zuckerman)
                                                Texas Bar No. 2421292 (O'Gorman)
                                                Mississippi Bar No. 104244 (Hilliard)
                                                Federal Trade Commission
                                                1999 Bryan Street, Suite 2150

Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov;
ehilliard@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**CERTIFICATE OF SERVICE**

I, M. HASAN AIJAZ, certify that, on September 7, 2022, I served the foregoing

Plaintiff's Responses to Defendant's First set of Interrogatories by email on the following

counsel of record at the email address listed below:

Angela C. Zambrano
angela.zambrano@sidley.com
Chad Hummel
chummel@sidley.com
Sidley Austin LLP

*Attorneys for Defendant Match Group, Inc.*

By: /s/ M. HASAN AIJAZ

# EXHIBIT  5

APP 073

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:19-cv-02281-K |
| Plaintiff, | **PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSIONS** |
| v. | |
| MATCH GROUP, INC., | |
| Defendant. | |

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, and subject to the general and specific objections set forth below, Plaintiff, the Federal Trade Commission ("FTC") responds to Defendant Match Group Inc. ("Match" or "MGI")'s First Set of Requests for Admissions.

### I.    GENERAL OBJECTIONS

1.  **Lack of Waiver; Right to Modify.** The following responses are made without waiving any objections raised by the FTC in this proceeding or any objections the FTC may have with respect to the subsequent use of these answers. The FTC specifically reserves the right, at any time, upon proper showing, to revise, correct or clarify the following responses.

2.  **Right to Supplement.** The FTC reserves the right to supplement and will supplement these responses as required under Fed. R. Civ. P. 26(e) if additional responsive information becomes available.

3.  **Attorney Client Privilege, Deliberative Process Privilege, and Attorney Work Product Doctrine.** Plaintiff generally objects to Match's Requests to Plaintiff insofar as

APP 074

these seek, directly or indirectly, information subject to the attorney client privilege,

deliberative process privilege or work product doctrine.

4. **Scope of Discovery.** Plaintiff objects to Match's Requests to the extent that the

instructions and definitions attempt to impose upon the Plaintiff obligations greater than

those required by the Federal Rules of Civil Procedure.

## II.    OBJECTIONS AND RESPONSES

**REQUEST FOR ADMISSION NO. 1:**
Admit that the Match.com Guarantee challenged in Your Complaint ceased by at least mid-2019.

**ANSWER**
Plaintiff objects to this request because the terms "Match.com Guarantee," "ceased," and "mid-2019" are vague and ambiguous. The request is not clear as to what version of the Match.com Guarantee it is referring to, to the extent the Guarantee changed during the period relevant to the complaint. "Ceased" is ambiguous, as it does not indicate whether the conduct was stopped voluntarily, whether the suspension was temporary or permanent, or whether the conduct restarted. Plaintiff objects to this request as it implies that the Match.com Guarantee was ceased voluntarily, rather than in response to the FTC's investigation and in anticipation of a possible FTC enforcement action. Plaintiff also objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information. Plaintiff is also aware that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the "guarantee practice at issue in Count III" was permanently discontinued in April 2019. But again, Plaintiff cannot independently assess the truth or falsity of that claim until Defendants produce the documents and information on that topic that the FTC has requested through discovery and which Defendants have failed to produce.

Subject to and without waiving the foregoing objections, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 2:**
Admit that the Match.com Guarantee challenged in Your Complaint was permanently discontinued in April 2019, as articulated in Exhibit A.

**ANSWER**
Plaintiff objects to this request because the terms "Match.com Guarantee," "permanently discontinued," and "mid-2019" are vague and ambiguous. The request is not clear as to what version of the Match.com Guarantee it is referring to, to the extent the Guarantee changed during

the period relevant to the complaint. "Permanently discontinued" is ambiguous as it does not indicate whether the conduct was stopped voluntarily or whether the conduct may restart. Plaintiff objects to this request as it implies that the Match.com Guarantee was voluntarily discontinued, rather than in response to the FTC's investigation and in anticipation of a possible FTC enforcement action. There is evidence, as described in Plaintiff's complaint and discovery responses, that Match's conduct is likely to recur because it knowingly deceived its consumers for years through the means described in the complaint, profited off that deception, and only claimed to have abandoned its unlawful practices when placed under investigation.

Plaintiff also objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information. Plaintiff is also aware that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the "guarantee practice at issue in Count III" was permanently discontinued in April 2019.  But again, Plaintiff cannot independently assess the truth or falsity of that claim until Defendants produce the documents and information on that topic that the FTC has requested through discovery and which Defendants have failed to produce. MGI has repeatedly relied on its representations that it does not plan on resuming the conduct challenged in Count III, but such claims are not credible. Despite knowing for years that these practices caused consumer harm, MGI only represented that it stopped engaging in those practices while under investigation and in the face of impending litigation, and it has repeated its claims to delay producing relevant documents and information in discovery. Further, these claims have no binding effect and do not prevent MGI from engaging in the conduct at issue.

Subject to and without waiving the foregoing objections, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 3:**
Admit that the Match.com Guarantee challenged in Your Complaint has not been offered since April 2019.

**ANSWER**
Plaintiff objects to this request because the terms "Match.com Guarantee," is vague and ambiguous. The request is not clear as to what version of the Match.com Guarantee it is referring to, to the extent the Guarantee changed during the period relevant to the complaint. Plaintiff objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information. Plaintiff is also aware that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the "guarantee practice at issue in Count III" was permanently discontinued in April 2019. But again, Plaintiff cannot independently assess the truth or falsity of that claim until Defendants produce the documents and information on that topic that the FTC has requested through discovery and which Defendants have failed to produce.

**REQUEST FOR ADMISSION NO. 4:**
Admit that the Match.com chargeback policy challenged in Your Complaint ceased by at least mid-2019.

**ANSWER**
Plaintiff objects to this request because the terms "ceased," and "mid-2019" are vague and ambiguous. "Ceased" is ambiguous as it does not indicate whether the conduct was stopped voluntarily or whether the conduct restarted. Plaintiff objects to this request as it implies that the Match.com chargeback policy was ceased voluntarily, rather than in response to a possible FTC enforcement action. Plaintiff also objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information. Plaintiff is also aware that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the Match.com's "chargeback practice" was permanently discontinued in March 2019. But again, Plaintiff cannot independently assess the truth or falsity of that claim until Defendants produce the documents and information on that topic that the FTC has requested through discovery and which Defendants have failed to produce.

Moreover, the language of Match.com's current policy as stated in its terms and conditions appears to be only cosmetically different than its previous policy. These terms provide: "If you initiate a chargeback or otherwise reverse a payment made with your Payment Method, Match may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a Match subscription. In the event that your chargeback or other payment reversal is overturned, please contact Customer Care." *See* Match.com Terms and Conditions, https://www.match.com/registration/membagr.aspx.

Subject to and without waiving the foregoing objections, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 5:**
Admit that the Match.com chargeback policy challenged in Your Complaint was permanently discontinued in March 2019, as articulated in Exhibit A.

**ANSWER**
Plaintiff objects to this request because the terms "permanently discontinued," is vague and ambiguous. "Permanently discontinued" is ambiguous as it does not indicate whether the conduct was stopped voluntarily or whether it may restart. Plaintiff objects to this request as it implies that the Match.com chargeback policy was voluntarily discontinued, rather than in response to the FTC's investigation and in anticipation of a possible FTC enforcement action. There is evidence, as described in Plaintiff's complaint and discovery responses, that Match's conduct is likely to recur because it knowingly deceived its consumers for years through the means described in the complaint, profited off that deception, and only claimed to have abandoned its unlawful practices when placed under investigation.

Plaintiff also objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information. Plaintiff is also aware that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the Match.com's "chargeback practice" was permanently discontinued in March 2019, but Plaintiff cannot independently verify that information. But again, Plaintiff cannot independently assess the truth or falsity of that claim until Defendants produce the documents and information on that topic that the FTC has requested through discovery and which Defendants have failed to produce. MGI has repeatedly relied on its representations that it does not plan on resuming the conduct challenged in Count IV, but such claims are not credible. Despite knowing for years that these practices caused consumer harm, MGI only represented that it stopped engaging in those practices while under investigation and in the face of impending litigation, and it has repeated its claims to delay producing relevant documents and information in discovery. Further, these claims have no binding effect and do not prevent MGI from engaging in the conduct at issue.

Moreover, the language of Match.com's current policy as stated in its terms and conditions appears to be only cosmetically different than its previous policy. These terms provide: "If you initiate a chargeback or otherwise reverse a payment made with your Payment Method, Match may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a Match subscription. In the event that your chargeback or other payment reversal is overturned, please contact Customer Care." *See* Match.com Terms and Conditions, https://www.match.com/registration/membagr.aspx..

Subject to and without waiving the foregoing objections, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 6:**
Admit that the Match.com chargeback policy challenged in Your Complaint has not been in effect since March 2019.

**ANSWER**
Plaintiff objects to this request because the requested information is already in Match's possession, custody, or control, and Match is in a better position to answer this question. Plaintiff is aware that Match has claimed through unsworn unsubstantiated statements by its attorneys that it discontinued challenged practices in March and April 2019, after it was under FTC investigation for its challenged practices, but Plaintiff cannot independently verify that information. Plaintiff is also aware that Match has claimed through its Responses and Objections to the FTC's First Set of Interrogatories that the Match.com's "chargeback practice" was permanently discontinued in March 2019, but Plaintiff cannot independently verify that information. But again, Plaintiff cannot independently assess the truth or falsity of that claim until Defendants produce the documents and information on that topic that the FTC has requested through discovery and which Defendants have failed to produce.

5

Moreover, the language of Match.com's current policy as stated in its terms and conditions appears to be only cosmetically different than its previous policy. These terms provide: "If you initiate a chargeback or otherwise reverse a payment made with your Payment Method, Match may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a Match subscription. In the event that your chargeback or other payment reversal is overturned, please contact Customer Care." *See* Match.com Terms and Conditions, https://www.match.com/registration/membagr.aspx.

Subject to and without waiving the foregoing objections, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 7:**
Admit that, as of the deadline for your response to this Request, Your investigation has failed to reveal any evidence of plans by Match.com to reinstate the Match.com Guarantee.

**ANSWER**
Plaintiff objects because "plans" is vague and ambiguous as to whether it refers to specific actions that it intends to take, general objectives it wants to take, or a likelihood that it may take certain actions in the future. Plaintiff objects because the requested information is not relevant to any claim or defense in this matter and is not reasonably calculated to lead to discoverable evidence. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence. Having "plans" to restart illegal conduct is not the standard for injunctive relief, rather the relevant inquiry is likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies. As this Court found when denying Match's motion to dismiss, the FTC's complaint met the applicable standards to show a likelihood of recurrence. *See* Dkt. 86 (citing to standards related to likelihood of recurrence and reasonable expectation of continued violations absent restraint). As of today, before Plaintiff has had an opportunity to take any discovery on this issue, Plaintiff does not have any evidence regarding Match's "plans" – defined to mean specific actions MGI intends to take as outlined in internal or nonpublic documents – regarding its guarantee program. Plaintiff has evidence, as described in its complaint and discovery responses, that Match's conduct is likely to recur because it knowingly deceived its consumers for years through the means described in the complaint, profited off that deception, and only claimed to have abandoned its unlawful practices when placed under investigation.

**REQUEST FOR ADMISSION NO. 8:**
Admit that, as of the deadline for your response to this Request, Your investigation has failed to reveal any evidence of plans by Match.com to reinstate the Match.com chargeback policy challenged in Your Complaint.

**ANSWER**
Plaintiff objects because "plans" is vague and ambiguous as to whether it refers to specific actions that it intends to take, general objectives it wants to take, or a likelihood that it may take certain actions in the future. Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with

Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence. Having "plans" to restart illegal conduct is not the standard for injunctive relief, rather the relevant inquiry is likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies. As this Court found when denying Match's motion to dismiss, the FTC's complaint met the applicable standards to show a likelihood of recurrence. *See* Dkt. 86 (citing to standards related to likelihood of recurrence and reasonable expectation of continued violations absent restraint). As of today, before Plaintiff has had an opportunity to take any discovery on this issue, Plaintiff does not have any evidence regarding Match's "plans" – defined as specific actions it intends to take – regarding its chargeback policy. Plaintiff anticipates uncovering such evidence in discovery. Plaintiff has evidence, as described in its complaint and discovery responses, that Match's conduct is likely to recur because it knowingly deceived its consumers for years through the means described in the complaint, profited off that deception, and only claimed to have abandoned its unlawful practices when placed under investigation.

**REQUEST FOR ADMISSION NO. 9:**
Admit that You were informed by letter dated August 6, 2019, that Match.com would not reinstate the Match.com Guarantee challenged in Your Complaint.

**ANSWER**
Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies that Match made a commitment in a letter sent on August 6, 2019, that it would not reinstitute the challenged Guarantee. Plaintiff admits that after Match received a draft complaint, knew of the impending enforcement action, and just one month before this action was filed, Match's counsel sent a letter to Zachary A. Keller, then counsel for the FTC, stating that Match had "no plans or intentions ever to reinstitute" various practices, but Match did not make a commitment to never reinstitute those practices—the letter only described its "plans or intentions" at the time of the letter and failed to include any commitments about future actions. Moreover, the claims in the letter are not credible as they were offered on the eve of litigation and appeared to be in support of a legal strategy to evade liability for deceiving consumers.

**REQUEST FOR ADMISSION NO. 10:**
Admit that You were informed by letter dated May 20, 2022, that Match.com would not reinstate the Match.com Guarantee challenged in Your Complaint.

**ANSWER**
Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies that Match made a commitment in a letter sent on May 20, 2022, that it would not reinstitute the challenged Guarantee. Plaintiff admits that Match's counsel sent a letter to Reid Tepfer stating that Match had no "plans or intentions" to reinstitute various practices, but Match did not make a commitment to never reinstitute those practices—the letter only described its "plans and intentions" at the time of the letter and failed to include any commitments about future actions. Moreover, the claims in the letter are not credible as they were offered during litigation and appeared to be in support of a legal strategy to avoid liability for deceiving consumers.

**REQUEST FOR ADMISSION NO. 11:**
Admit that You were informed by letter dated August 6, 2019, that Match.com would not reinstate the Match.com chargeback policy at issue in Your Complaint.

**ANSWER**
Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies that Match made a commitment in a letter sent on August 6, 2019, that it would not reinstitute the challenged Guarantee. Plaintiff admits that after Match received a draft complaint, knew of the impending enforcement action, and just one month before this action was filed, Match's counsel sent a letter to Zachary A. Keller, then counsel for the FTC, stating that Match had "no plans or intentions ever to reinstitute" various practices, but Match did not make a commitment to never reinstitute those practices—the letter only described its "plans or intentions" at the time of the letter and failed to include any commitments about future actions. Moreover, the claims in the letter are not credible as they were offered on the eve of litigation and appeared to be in support of a legal strategy to evade liability for deceiving consumers.

**REQUEST FOR ADMISSION NO. 12:**
Admit that You were informed by letter dated May 20, 2022, that Match.com would not reinstate the Match.com chargeback policy at issue in Your Complaint.

**ANSWER**
Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies that Match made a commitment in a letter sent on May 20, 2022, that it would not reinstitute the challenged Guarantee. Plaintiff admits that Match's counsel sent a letter to Reid Tepfer stating that Match had no "plans or intentions" to reinstitute various practices, but Match did not make a commitment to never reinstitute those practices—the letter only described its "plans and intentions" at the time of the letter and failed to include any commitments about future actions. Moreover, the claims in the letter are not credible as they were offered during litigation and appeared to be in support of a legal strategy to avoid liability for deceiving consumers.

**REQUEST FOR ADMISSION NO. 13:**
Admit that users are able to cancel their Match.com subscription via online chat.

**ANSWER**
Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff has requested that data through discovery, and MGI has to date failed to produce it. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers. MGI has represented to the FTC that Match.com offers an online chat cancellation method, but because the ambiguities described above, Plaintiff cannot admit this request.

Subject to and without waiving the foregoing objections, Plaintiff responds that in response to Match cutting customer service hours for its chat cancelation mechanism, the number of subscribers who were able to use that cancelation mechanism dropped. Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff and whether some users are unable to cancel via online chat.

**REQUEST FOR ADMISSION NO. 14:**
Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via online chat.

**ANSWER**
Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that in response to Match cutting customer service hours for its chat cancelation mechanism, the number of subscribers who were able to use that cancelation mechanism dropped. Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures occurred during all times relevant to Count V of the FTC's complaint. MGI has represented to the FTC that Match.com offers an online chat cancellation method, but Plaintiff does not have the knowledge needed to admit or deny whether such a method was available at all times relevant to Count V of its complaint.

**REQUEST FOR ADMISSION NO. 15:**
Admit that canceling a Match.com subscription via online chat is simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple."  Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 16:**
Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via online chat has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 17:**
Admit that users are able to cancel their Match.com subscription via telephone.

**ANSWER**
Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers. MGI has represented to the FTC that Match.com offers a telephonic cancellation method, but because the ambiguities described above, Plaintiff cannot admit this request.

Subject to and without waiving the foregoing objections, Plaintiff responds that in response to Match cutting customer service hours for its phone cancelation mechanism, the number of subscribers who were able to use that cancelation mechanism dropped. Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff and whether some users are unable to cancel via telephone.

**REQUEST FOR ADMISSION NO. 18:**
Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via telephone.

**ANSWER**
Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the

APP 083

cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that in response to Match cutting customer service hours for its phone cancelation mechanism, the number of subscribers who were able to use that cancelation mechanism dropped. Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users were able to cancel their subscription at all times relevant to Count V of the FTC's complaint via telephone than Plaintiff. MGI has represented to the FTC that Match.com offers a telephonic cancellation method, but Plaintiff does not have the knowledge needed to admit or deny whether such a method was available at all times relevant to Count V of its complaint.

**REQUEST FOR ADMISSION NO. 19:**
Admit that canceling a Match.com subscription via telephone is simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 20:**
Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via telephone has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 21:**
Admit that users are able to cancel their Match.com subscription via mail.

**ANSWER**
Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers. MGI has represented to the FTC that Match.com offers a cancellation method via mail, but because the ambiguities described above, Plaintiff cannot admit this request.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff.

**REQUEST FOR ADMISSION NO. 22:**
Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via mail.

**ANSWER**
Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users were able to cancel their subscription at all times relevant to Count V of the FTC's complaint than Plaintiff. MGI has represented to the FTC that Match.com offers a cancellation method via mail, but Plaintiff does not have the knowledge needed to admit or deny whether such a method was available at all times relevant to Count V of its complaint.

**REQUEST FOR ADMISSION NO. 23:**
Admit that canceling a Match.com subscription via mail is simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 24:**
Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via mail has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 25:**
Admit that users are able to cancel their Match.com subscription via fax.

**ANSWER**
Plaintiff objects to the Request because the information sought is in Match's possession, custody, or control, and Plaintiff does not have access to that data. Plaintiff also objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers. MGI has represented to the

12

FTC that Match.com offers a cancellation method via fax, but because the ambiguities described above, Plaintiff cannot admit this request.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription.

**REQUEST FOR ADMISSION NO. 26:**
Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via fax.

**ANSWER**
Plaintiff objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users were able to cancel their subscription at all times relevant to Count V of the FTC's complaint than Plaintiff. MGI has represented to the FTC that Match.com offers a cancellation method via fax, but Plaintiff does not have the knowledge needed to admit or deny whether such a method was available at all times relevant to Count V of its complaint.

**REQUEST FOR ADMISSION NO. 27:**
Admit that canceling a Match.com subscription via fax is simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 28:**
Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via fax has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 29:**
Admit that users are able to cancel their Match.com subscription via e-mail.

**ANSWER**

Plaintiff objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers. MGI has represented to the FTC that Match.com offers a cancellation method via fax, but because the ambiguities described above, Plaintiff cannot admit this request.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff.

**REQUEST FOR ADMISSION NO. 30:**

Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via e-mail.

**ANSWER**

Plaintiff objects because "users" is vague and ambiguous as to whether the intended reference is to some users or all users. Plaintiff also objects to the request as it is not clear whether it is referring to the existence of the cancelation mechanism—whether or not users know of it or are able to use it—or the knowledge and/or effective use of that mechanism by Match.com subscribers.

Subject to and without waiving the foregoing objections, Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users were able to cancel their subscription at all times relevant to Count V of the FTC's complaint than Plaintiff. MGI has represented to the FTC that Match.com offers a cancellation method via e-mail, but Plaintiff does not have the knowledge needed to admit or deny whether such a method was available at all times relevant to Count V of its complaint.

**REQUEST FOR ADMISSION NO. 31:**

Admit that canceling a Match.com subscription via e-mail is simple.

**ANSWER**

Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 32:**

Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via e-mail has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 33:**
Admit that a cancelation method can be simple even if it includes a save offer (meaning an offer to continue a subscription at a discount).

**ANSWER**
Plaintiff objects to the Request because "save offer" is vague and ambiguous and the hypothetical as a whole is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe how it includes a save offer, how the offer is presented, how the offer is accepted or declined, or what happens to the cancelation method based on the acceptance or denial of the offer. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.

Plaintiff is unable to admit or deny this Request because of the reasons described above. To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies..

**REQUEST FOR ADMISSION NO. 34**
Admit that a cancelation method can be simple if it includes a save offer (meaning an offer to continue a subscription at a discount) but the subscriber is not required to answer the question.

**ANSWER**
Plaintiff objects to the Request because the "save offer" is vague and ambiguous and the hypothetical as a whole is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe how it includes a save offer, how the offer is presented, how the offer is accepted or declined, or what happens to the cancelation method based on the acceptance or denial of the offer. Similarly, the phrase "not required to answer the question" is vague and ambiguous because, for example, subscribers may not realize the "save offer" is not required. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.

Plaintiff is unable to admit or deny this Request because of the reasons described above. To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 35:**
Admit that a cancelation method can be simple even if it asks a subscriber why they are canceling.

**ANSWER**
Plaintiff objects to the Request because the hypothetical is vague. The Request does not describe the entirety of the hypothetical cancelation method, nor does it describe where the question is located in the cancelation method, how it is presented, or what happens to the cancelation method based on the subscriber's answer or non-answer. Plaintiff further objects because the request seeks privileged information and calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.

Plaintiff is unable to admit or deny this Request because of the reasons described above. To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 36:**
Admit that a cancelation method can be simple if it asks a subscriber why they are canceling but the subscriber is not required to answer the question.

**ANSWER**
Plaintiff objects to the Request because the hypothetical is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe where the question is located in the cancelation method, how it is presented, what a subscriber needs to do to avoid answering the question, or what happens to the cancelation method based on the subscriber's answer or non-answer. Similarly, the phrase "not required to answer the question" is vague and ambiguous because, for example, subscribers may not realize answering the question is not required. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.

Plaintiff is unable to admit or deny this Request because of the reasons described above. To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 37:**
Admit that a cancelation method can be simple even if it asks a subscriber whether they would recommend the service.

**ANSWER**
Plaintiff objects to the Request because the hypothetical is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe where the question is located in the cancelation method, how it is presented, or what happens to the cancelation method based on the subscriber's answer or non-answer. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the

cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.

Plaintiff is unable to admit or deny this Request because of the reasons described above. To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 38:**
Admit that a cancelation method can be simple if it asks a subscriber whether they would recommend the service but the subscriber is not required to answer the question.

**ANSWER**
Plaintiff objects to the Request because the hypothetical is vague. The Request does not describe the entirety of the hypothetical cancelation method nor does it describe where the question is located in the cancelation method, how it is presented, what a subscriber needs to do to avoid answering the question, or what happens to the cancelation method based on the subscriber's answer or non-answer. Similarly, the phrase "not required to answer the question" is vague and ambiguous because, for example, subscribers may not realize answering the question is not required. Plaintiff further objects because the request calls for a legal conclusion. Plaintiff further objects to the request as irrelevant because whether a cancelation mechanism is simple is not determined by looking at one feature of the cancelation method in isolation and ignoring the difficulty of the remaining portion of the cancelation method.

Plaintiff is unable to admit or deny this Request because of the reasons described above. To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 39:**
Admit that You never explained what could be done to improve the Online Cancelation Flow at issue in Your Complaint.

**ANSWER**
Plaintiff objects to the Request as irrelevant because the Plaintiff has no obligation to provide the legal advice implied in the Request.

Subject to and without waiving the foregoing objections, Plaintiff denies. The FTC's complaint and discovery responses detail specific failures of Match's cancelation flow, all of which could be modified or removed to improve the cancelation flow. *See* Complaint at ¶¶ 54-57.

**REQUEST FOR ADMISSION NO. 40:**
Admit that the Online Cancelation Flow can be completed within 30 seconds.

**ANSWER**
Plaintiff objects to the request as vague because it is ambiguous what type of person the requests refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, whether the user is reading the texts or prompts in

the Online Cancellation Flow, and other factors relevant to the speed of completing the cancelation flow. Plaintiff also objects to the Request as irrelevant because the fastest possible completion speed of a cancelation process it not relevant to any claim or defense in this case. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control. Plaintiff is unable to admit or deny this request because of the ambiguities described above.

**REQUEST FOR ADMISSION NO. 41:**
Admit that the Online Cancelation Flow can be completed within 60 seconds.

**ANSWER**
Plaintiff objects to the request as vague because it is ambiguous what type of person the requests refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, whether the user is reading the texts or prompts in the Online Cancellation Flow, and other factors relevant to the speed of completing the cancelation flow. Plaintiff objects to the Request as irrelevant because the fastest possible completion speed of a cancelation process it not relevant to any claim or defense in this case. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control. Plaintiff is unable to admit or deny this request because of the ambiguities described above.

**REQUEST FOR ADMISSION NO. 42:**
Admit that the Online Cancelation Flow can be completed within 90 seconds.

**ANSWER**
Plaintiff objects to the request as vague because it is ambiguous what type of person the requests refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, whether the user is reading the texts or prompts in the Online Cancellation Flow, and other factors relevant to the speed of completing the cancelation flow. Plaintiff objects to the Request as irrelevant because the fastest possible completion speed of a cancelation process it not relevant to any claim or defense in this case. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control. Plaintiff is unable to admit or deny this request because of the ambiguities described above.

**REQUEST FOR ADMISSION NO. 43:**
Admit that the Online Cancelation Flow can be completed within 120 seconds.

**ANSWER**
Plaintiff objects to the request as vague because it is ambiguous what type of person the requests refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, whether the user is reading the texts or prompts in the Online Cancellation Flow, and other factors relevant to the speed of completing the cancelation flow. Plaintiff objects to the Request as irrelevant because the fastest possible completion speed of a cancelation process it not relevant to any claim or defense in this case. Plaintiff also objects to the Request because the information sought is in Match's possession,

custody, or control. Plaintiff is unable to admit or deny this request because of the ambiguities described above.

**REQUEST FOR ADMISSION NO. 44:**
Admit that You did not review the Online Cancelation Flow in any form other than the screenshots of the Online Cancelation Flow included in Your Complaint before You sued Match Group, Inc.

**ANSWER**
Plaintiff objects to this Request as it seeks privileged information, the form of the Online Cancelation Flow is vague, ambiguous, unintelligible, and because it is duplicative. Plaintiff also objects because the requested information is not relevant to any claim or defense in this matter and is not reasonably calculated to lead to discoverable evidence.

**REQUEST FOR ADMISSION NO. 45:**
Admit that You reviewed only the screenshots included in the Complaint of the Online Cancelation Flow, as opposed to any other form of the Online Cancelation Flow, before You sued Match Group, Inc.

**ANSWER**
Plaintiff objects to this Request as it seeks privileged information, form of the Online Cancelation Flow is vague, ambiguous, unintelligible, and because it is duplicative. Plaintiff also objects because the requested information is not relevant to any claim or defense in this matter and is not reasonably calculated to lead to discoverable evidence.

**REQUEST FOR ADMISSION NO. 46:**
Admit that, on average, 86% of Match.com's free trial members successfully canceled their subscription before being billed.

**ANSWER**
Plaintiff objects to this Request because the information sought is already in Match's possession, custody, or control, and Plaintiff's only access to that data comes from Match's summary representations. Moreover, Plaintiff objects to Match's request because free trial users were frequently fraudulent users that used Match's platform to monetize fraud.

Subject to and without waiving the foregoing objections, Plaintiff is unable to admit or deny this statement, as Plaintiff is not in possession of the data this request refers. Plaintiff admits that Match has represented that 86% of its free trial members successfully canceled their subscription before being billed. However, Plaintiff is unable to independently verify the truth or falsity of this claim.

**REQUEST FOR ADMISSION NO. 47:**
Admit that, on average, a large percentage of Match.com's free trial members successfully canceled their subscription before being billed.

**ANSWER**
Plaintiff objects to this Request as "a large percentage" is vague and ambiguous. Plaintiff also objects to the Request because the information sought is already in Match's possession, custody, or control. Subject to these objections, the FTC can neither admit nor deny because it does not have sufficient information to know the success rate of free trial users attempting to cancel their subscription.

**REQUEST FOR ADMISSION NO. 48:**
Admit that, on average, 89% of Match.com's subscribers successfully canceled their subscription within 24 hours of initiating cancelation.

**ANSWER**
Plaintiff objects to this Request as "initiating cancelation" is vague and ambiguous. Plaintiff also objects to the Request because the information sought is already in Match's possession, custody, or control. Plaintiff admits that Match has represented that on average, 89% of Match.com's subscribers successfully canceled their subscription within 24 hours of initiating cancelation.

Subject to and without waiving the foregoing, the FTC can neither admit nor deny because it does not have sufficient information to know the success rate within 24 hours of Match.com users attempting to cancel their subscription.

**REQUEST FOR ADMISSION NO. 49:**
Admit that, on average, a large percentage of Match.com's subscribers successfully canceled their subscription within 24 hours of initiating cancelation.

**ANSWER**
Plaintiff objects to this Request as "a large percentage" and "initiating cancelation" are vague and ambiguous. Plaintiff also objects to the Request because the information sought is already in Match's possession, custody, or control. Subject to and without waiving the foregoing objections, the FTC can neither admit nor deny because it does not have sufficient information to know the success rate within 24 hours of Match.com users attempting to cancel their subscription.

**REQUEST FOR ADMISSION NO. 50:**
Admit that, of the percentage of Match.com subscribers that do not successfully cancel their subscription within 24 hours of initiating cancelation, some percentage of Match.com subscribers take advantage of a save offer (meaning an offer to continue a subscription at a discount).

**ANSWER**
Plaintiff objects to this Request as "some percentage" is vague, ambiguous, and unintelligible, and "initiating cancelation" is vague and ambiguous. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control. Plaintiff admits that Match has represented that of the percentage of Match.com subscribers that do not successfully cancel their subscription within 24 hours of initiating cancelation, some percentage of Match.com subscribers take advantage of a save offer (meaning an offer to continue a subscription at a discount).

Subject to and without waiving the foregoing, the FTC can neither admit nor deny because it does not have sufficient information to know what percentage, if any, of Match.com users who attempt to cancel accept Match.com's save offer.


Date: September 7, 2022

*/s/ M. HASAN AIJAZ*
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted pro hac vice)
JOHN R. O'GORMAN (admitted pro hac vice)
ERICA ROLLINS HILLIARD
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 2421292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov;
ehilliard@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

APP 094

**CERTIFICATE OF SERVICE**

I, M. HASAN AIJAZ, certify that, on September 7, 2022, I served the foregoing

Plaintiff's Responses to Defendant's First set of Interrogatories by email on the following

counsel of record at the email address listed below:

Angela C. Zambrano
angela.zambrano@sidley.com
Chad Hummel
chummel@sidley.com
Sidley Austin LLP

*Attorneys for Defendant*
*Match Group, Inc.*

By: /s/ M. HASAN AIJAZ

# EXHIBIT 6

APP 096

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>      Plaintiff,<br><br>v.<br><br>MATCH GROUP, INC.,<br><br>      Defendant. | Case No. 3:19-cv-02281-K<br><br>**PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST REQUESTS FOR PRODUCTION** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and subject to the general and specific objections set forth below, Plaintiff, the Federal Trade Commission ("FTC") responds to Defendant Match Group Inc. ("Match" or "MGI")'s First Set of Requests for Production ("RFPs" or "Requests").

## I.  GENERAL OBJECTIONS

1. **Lack of Waiver; Right to Modify.** The following responses are made without waiving any objections raised by the FTC in this proceeding or any objections the FTC may have with respect to the subsequent use of these answers. The FTC specifically reserves: (a) the right to challenge authenticity or admissibility of documents referred to in the responses; (b) the right to object on any and all proper grounds, at any time to other discovery procedures involving or relating to the subject matter of RFPs answered herein; and (c) the right, at any time, upon proper showing, to revise, correct or clarify the following responses.

APP 097

2. **Right to Supplement.** The FTC reserves the right to supplement and will supplement these responses as required under FED. R. CIV. P. 26(e) if additional responsive information becomes available.

3. **Attorney-Client Privilege, Deliberative-Process Privilege, and Attorney Work-Product Doctrine.** Plaintiff generally objects to Match's RFPs insofar as these seek, directly or indirectly, information subject to the attorney-client privilege, deliberative-process privilege or work-product doctrine.

4. **Scope of Discovery.** Plaintiff objects to Match's RFPs to the extent that the instructions and definitions attempt to impose upon the Plaintiff obligations greater than those required by the Federal Rules of Civil Procedure.

5. **Non-Waiver by Production.** Without waiving any stated objections, Plaintiff intends to make available all responsive, relevant, and non-privileged documents within Plaintiff's custody, control, or possession.

6. **Impermissible Contention Requests for Production Based on Use in Court.** Plaintiff objects to Match's RFPs based on whether the document supports a contention or based on how the document may be used in court ("Contention Request for Production"). Such a request is beyond the scope of Rule 34. Rule 34 does not authorize requests based on contentions or how the document can be used in court because to detail how a document can be used in court violates the work-product doctrine. *See, e.g.*, *Myers v. Goldco, Inc.*, Case No. 4:08cv8-RH/WCS, 2008 U.S. Dist. LEXIS 37089, *14 (N.D. Fla. May 6, 2008) (disallowing Rule 34 request for "all documents which you intend to introduce at the trial of this case or which may be used to refresh the recollections of witnesses" because documents "that a party 'intends to use at trial' are protected by the work-product

2

privilege"). Rule 34 requires document requests to "describe with reasonable particularity each item or category of items to be inspected." FED. R. CIV. P. 34. A Contention Request for Production fails to do so. S*ee Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 193, 202 (N.D. W. Va. 2000) (stating that a document request is not reasonably particular if it merely requests documents "related to a claim or defense" in the litigation); *see also Reagan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 & n. 6 (10th Cir. 2008) (a request for "all documents that relate" is overly broad and fails to identify documents as required by Rule 34).

7. **Fishing Expedition Requests for Production.** Plaintiff objects to Match's RFPs that seek "all documents relating to" a specific topic, item, or matter. Not only is such a request beyond the scope of Rule 34, it violates the work-product doctrine and deliberative-process privilege, and is an impermissible fishing expedition. *Lopez v. Chertoff*, Case No. CV 07-1566-LEW, 2009 U.S. Dist. LEXIS 50419, **5-8 (E.D. Cal. June 2, 2009) (stating that "one of the purposes of Rule 34 is to prevent fishing expeditions, and thus Plaintiff has some responsibility to narrow his request" and denying request for documents "relating to" claims as facially overbroad). A request for "all documents" that support a contention is a not only an impermissible fishing expedition but an attempt to "drain the pond and collect the fish from the bottom." *Amcast Indus.v. Detrex Corp.*, 138 F.R.D. 115, 121 (N.D. Ind. 1991) (citation omitted).

8. **Expert Employed Only for Trial Preparation**. Plaintiff objects to Match's discovery requests to Plaintiff insofar as these requests seek information and documentation from a non-testifying expert and the requested information and documentation are neither:

3

    a.  Facts or data considered by the Plaintiff's testify expert in forming her opinions, nor

    b.  Exhibits that will be used to summarize or support her opinions, and has failed to show exceptional circumstances under which it is impracticable for the Defendants to obtain facts or opinions on the same subject by other means. FED. R. CIV. P. 26(B)(4)(D).

9. **Trial Preparation: Materials.** Plaintiff generally objects to Match's discovery requests to Plaintiff insofar as these requests seek discovery of documents and tangible things that are/were prepared in anticipation of litigation or for trial by or for Plaintiff or its representative, and Match has not shown:

    a.  That the request is otherwise discoverable under Rule 26(b)(1), and

    b.  That they have substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. FED. R. CIV. P. 26(b)(3)(A)(i) & (ii).

## II.    OBJECTIONS AND RESPONSES

**RFP NO. 1:** All Documents Relating to any and all investigations by the FTC of Match or Match.com, Including but not limited to all Documents that tend to support or undermine the FTC's contention that (1) Match has violated, is violating, or is about to violate Section 5 of the FTC Act or ROSCA or (2) the FTC's contention that there is a fair inference that Match would continue to violate the law absent restraint.

**ANSWER:**

The FTC objects to this request on the grounds it is vague, overbroad, unduly burdensome, and not proportional to the needs of the case. The FTC also objects to this request to the extent it seeks communications or other documents protected by FED. R. CIV. P. 26(b)(3)(A) and (B).

The FTC further objects to this request insofar as it seeks irrelevant documents, including those unrelated to this matter. Such documents with no bearing on any claim or defense in this matter are not reasonably calculated to lead to the discovery of relevant evidence. The request as a whole is overbroad, unduly burdensome, and is an impermissible Fishing Expedition. The FTC objects that this request is overbroad, unduly burdensome, and constitutes an impermissible Fishing Expedition when limited to the investigation that resulted in this case. Seeking "All Documents Relating" to that investigation would seek documents wholly unrelated to any claim or defense in the case, is not calculated to lead to discoverable information, and is instead an indiscriminate abuse of the discovery process that imposes an impermissible burden on the producing party, seeks privileged information, and is therefore impermissible. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine. The FTC also objects because the request seeks documents that are already in Match's possession.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC has conducted a reasonable search of documents relevant to this case that support or call into question whether Match's violations are likely to recur absent restraint and on August 19 produced responsive documents not protected from disclosure by the work-product doctrine or attorney-client and deliberative-process privilege.

In addition, the FTC refers Match to documents in its possession, custody, or control, including the chargeback and cancellation polies and practices relevant to Tinder, OKCupid, and PlentyofFish, including internal correspondence and publicly available policies. The FTC also refers Match the White Papers and attachments it sent to the FTC and to documents it has produced to the FTC, with the following document identifiers:

MATCHFTC306318, MATCHFTC312357, MATCHFTC312903, MATCHFTC312903,
MATCHFTC313402, MATCHFTC313402, MATCHFTC313570, MATCHFTC320168,
MATCHFTC320168, MATCHFTC336923, MATCHFTC336923, MATCHFTC344243,
MATCHFTC369268, MATCHFTC369268, MATCHFTC371904, MATCHFTC371904,
MATCHFTC405364, MATCHFTC405364, MATCHFTC406132, MATCHFTC406132,
MATCHFTC415890, MATCHFTC417535, MATCHFTC417535, MATCHFTC417536,
MATCHFTC417536, MATCHFTC429717, MATCHFTC429717, MATCHFTC429717,
MATCHFTC452091, MATCHFTC464887, MATCHFTC464887, MATCHFTC465940,
MATCHFTC467915, MATCHFTC467915, MATCHFTC467915, MATCHFTC469164,
MATCHFTC473469, MATCHFTC473469, MATCHFTC473469, MATCHFTC477153,
MATCHFTC477153, MATCHFTC485041, MATCHFTC485041, MATCHFTC485152,
MATCHFTC485296, MATCHFTC485296, MATCHFTC491446, MATCHFTC491446,
MATCHFTC494559, MATCHFTC494559, MATCHFTC495267, MATCHFTC495267,
MATCHFTC499728, MATCHFTC499728, MATCHFTC519412, MATCHFTC519412,
MATCHFTC521299, MATCHFTC528098, MATCHFTC528098, MATCHFTC529047,
MATCHFTC529047, MATCHFTC543542, MATCHFTC543542, MATCHFTC543666,
MATCHFTC543666, MATCHFTC545351, MATCHFTC545351, MATCHFTC568737,
MATCHFTC568900, MATCHFTC568900, MATCHFTC568900, MATCHFTC571491,
MATCHFTC571491, MATCHFTC579050, MATCHFTC579050, MATCHFTC601397,
MATCHFTC601397, MATCHFTC601548, MATCHFTC601548, MATCHFTC604757,
MATCHFTC604757, MATCHFTC604757, MATCHFTC604834, MATCHFTC604834,
MATCHFTC644115, MATCHFTC646192, MATCHFTC646192, MATCHFTC647443,
MATCHFTC667211, MATCHFTC667211, MATCHFTC669157, MATCHFTC669157,
MATCHFTC669602, MATCHFTC669602, MATCHFTC669602, MATCHFTC728586,
MATCHFTC752185.

**RFP NO. 2:** All Documents You believe give rise to a fair inference of a reasonable expectation of continued FTC Act violations absent restraint.

**ANSWER:**

The FTC objects to this request on the grounds that it is vague. The FTC further objects to this request as not reasonably calculated to lead to the discovery of relevant evidence. This request is overbroad, unduly burdensome, not proportional to the needs of the case, and a Fishing Expedition. This request is also duplicative of Request 1. The FTC also objects to this request as being irrelevant to the extent it is not duplicative of Request 1. The FTC also objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine.

Notwithstanding the foregoing objections, the FTC refers MGI to the response to Requests 1 and 3. In addition, the FTC has conducted a reasonable search of relevant documents and on August 19 produced responsive documents not protected from disclosure by the work-product doctrine or attorney-client and deliberative-process privilege and is not withholding documents based on its other objections.

**RFP NO. 3:** All Documents which the FTC contends supports [sic] an argument that any of the discontinued practices at issue in the Complaint are likely to be reinstituted by Match or on Match.com.

**ANSWER:**

The FTC objects to this request as duplicative of Requests 1 and 2. This Request therefore is unduly burdensome. The FTC also objects to this request is irrelevant to the extent it is not duplicative of Requests 1 and 2. The FTC further objects to this document request as premature. Discovery has just begun in this matter, and the Commission is gathering evidence in support of its claims. Moreover, the Court's scheduling order provides dates on which the parties will exchange lists of exhibits they may use at trial. By responding now, the Commission does not waive its rights to identify other potential documents at the time provided in the scheduling order. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine.

Notwithstanding the foregoing objections, the FTC refers MGI to the response to Requests 1 and 2. In addition, the FTC has conducted a reasonable search of relevant documents and on August 19 produced responsive documents not protected from disclosure by the work-product doctrine or attorney-client and deliberative-process privilege and is not withholding documents based on its other objections.

7

**RFP NO. 4:** All Documents—Including regulations, opinions, notices, or guidance—in which the FTC has described what does or does not constitute a "simple" cancelation method under ROSCA.

**ANSWER:**

The FTC objects to this request on the grounds it is overbroad, unduly burdensome, not proportionate to the needs of the case, and irrelevant to the extent that it seeks anything beyond official interpretations. The FTC also objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine. To the extent it seeks official interpretations, such interpretations are publicly available.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC has conducted a reasonable search of documents relevant to this case and on August 19 produced responsive documents not protected from disclosure by the work-product doctrine or attorney-client and deliberative-process privilege.

**RFP NO. 5:** All surveys, copy tests, research, analyses, studies, or other tests conducted by or done for the FTC regarding cancelation methods.

**ANSWER:**

The FTC also objects to this request as it is overbroad, is not proportional to the needs of the case, and seeks irrelevant documents, including those unrelated to this matter and concerning unrelated cancelation methods. This request is therefore not reasonably calculated to lead to the discovery of relevant evidence. Surveys, copy tests, research, analyses, studies, or other tests of different cancelation mechanisms are not relevant to whether Match failed to provide simple mechanisms to cancel its own recurring subscriptions. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine. The FTC also objects to this request to the extent

8

that it seeks trial preparation materials. The FTC also objects on the grounds that it is premature. Discovery has just begun in this matter, and the Commission is gathering evidence in support of its claims. Moreover, the Court's scheduling order provides dates on which the parties will exchange lists of exhibits they may use at trial. By responding now, the Commission does not waive its rights to identify other potential documents at the time provided in the scheduling order.

The FTC has conducted a reasonable search of documents possibly relevant to cancellation methods on the Defendants' dating platforms and has not identified any responsive documents.

**RFP NO. 6:** All Documents regarding evaluations the FTC has performed of subscription service cancelation processes.

**ANSWER:**

The FTC objects to this Request on the grounds it is vague, overbroad, and not proportional to the needs of the case, as the request would include documents concerning the evaluation of subscription services unrelated to Defendants' websites or the allegations in this case.  The FTC also objects to this request as it is overbroad and seeks irrelevant documents, including those unrelated to this matter and concerning unrelated cancelation methods. This request is therefore not reasonably calculated to lead to the discovery of relevant evidence. Further, as in its response to Request 5, the FTC objects to this request to the extent that it seeks documents protected by attorney-client privilege, work-product doctrine, or trial preparation materials. The FTC also objects to the request seeking documents "regarding" the subject matter of the request as that language seeks documents covered by attorney-client and deliberative-process privilege and work-product doctrine and is therefore intended to abuse the discovery process. The FTC also objects on the grounds that this request is duplicative of Request 5.

The FTC has conducted a reasonable search of documents regarding evaluations of subscription service cancellation methods on the Defendants' dating platforms and has not identified any responsive documents.

**RFP NO. 7:** All Documents Related to the calculation of monetary damages sought by the FTC, Including Documents Related to the nature and extent of any alleged injury to consumers.

**ANSWER:**

The FTC objects to this request as it is vague as to what is meant by "Related to the nature and extent." The FTC also objects to the request seeking documents "Related" to the subject matter of the request as that language seeks documents covered by attorney-client and deliberative-process privilege and work-product doctrine and is therefore intended to abuse the discovery process. Notwithstanding these objections, the FTC responds by stating that requested documents, related to billing, refunds, and other Match subscription and billing information, are in Match's possession, custody or control, and the FTC has requested Match produce them.

**RFP NO. 8:** All Documents Related to any other instance in which the FTC has sought monetary damages for violation of ROSCA, Including Documents indicating how the FTC calculated monetary damages.

**ANSWER:**

The FTC objects to this request on the grounds it is vague, overbroad, unduly burdensome, and not proportional to the needs of the case, as it requests "All Documents Related" to every instance in which the FTC has pursued monetary damages for violations of ROSCA.  FTC also objects to this request as irrelevant, as the calculations of monetary damages in other cases have no connection to any damages caused by Match to its subscribers. Moreover, the FTC has not sought "damages" under ROSCA in prior cases; the FTC instead has sought restitution. This request therefore impermissibly seeks documents with no bearing on any claim or defense in this matter and is not reasonably calculated to lead to the discovery of relevant

evidence.   The FTC also objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine.

The FTC has conducted a reasonable search of documents and has not identified any responsive documents.

**RFP NO. 9:** All Documents Related to the calculation of civil penalties sought by the FTC.

**ANSWER:**

The FTC objects to this request on the grounds it is vague, overbroad, unduly burdensome, and not proportional to the needs of the case.  FTC also objects to this request as irrelevant to the extent that it seeks documents related to the calculation of civil penalties in cases other than this one, as calculations of civil penalties in other cases have no connection to the appropriate amount of civil penalties to be assessed against Defendants in this case. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC has conducted a reasonable search of documents relating to the amount of civil penalties the FTC may seek in this action and has not identified any responsive documents that are not protected by the work-product doctrine or attorney-client or deliberate process privilege.

**RFP NO. 10:** Documents sufficient to identify other lawsuits in which You have been involved that relate to a cancelation method being not "simple," as that term is used in ROSCA, 15 U.S.C. § 8403.

**ANSWER:**

The FTC objects to the request on the grounds that it is irrelevant, as the cancelation methods challenged in other cases does not bear on Match's failure to provide a simple cancelation mechanism.  Additionally, any responsive information is as readily available to

11

Match as it is to the FTC.  Moreover, the FTC objects on the basis that this request appears to be an improper interrogatory presented in the form of a document request. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC has conducted a reasonable search of documents and on August 19 produced responsive documents.

**RFP NO. 11:** All Documents cited to, referenced in, or relied upon in preparing Your responses to the Interrogatories.

**ANSWER:**

The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine. Notwithstanding the foregoing, The FTC has conducted a reasonable search of documents and on August 19 produced responsive documents not protected from disclosure by the work-product doctrine or attorney-client and deliberative-process privilege, and in its First Amended Interrogatory Responses, the FTC has also provided the document identifiers for responsive documents in MGI's possession.

**RFP NO. 12:** All Documents provided to the FTC by any third party that Relate to Count V of Your Complaint, Including Documents provided by Match.com users and former users.

**ANSWER:**

The FTC also objects to this request as it is vague, overbroad, and not proportional to the needs of the case. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine. Notwithstanding the foregoing objections, the FTC responds as follows. The FTC has conducted a reasonable search of documents and on August 25 produced responsive documents.

12

**RFP NO. 13:** Any Communications or Documents Related to Communication with any third party that Relate to Count V of Your Complaint, Including Communication with Match.com users and former users.

**ANSWER:**

The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine. The FTC also objects to this request to the extent that it is duplicative of Request 12.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC has conducted a reasonable search of documents and on August 25 produced responsive documents not protected from disclosure by the work-product doctrine or attorney-client and deliberative-process privilege.

**RFP NO. 14:** All screenshots, which Relate to Count V of Your Complaint, of Match.com, websites on which Match.com advertised, and/or the "websites of other online platforms" referenced in Your Initial Disclosures.

**ANSWER:**

The FTC objects to this request as it is vague and ambiguous as to what screenshots are being requested. The FTC also objects to this request as it is overbroad, and not proportional to the needs of the case in seeking "All screenshots" of Match.com, websites it advertised on, and the websites of Match group's other platforms whether or not such screenshots relate to any claim or defense in this matter. The FTC also objects because the documents sought are as readily or more readily available to Match as they are to the FTC. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC has conducted a reasonable search of documents and on August 19 produced responsive documents

not protected from disclosure by the work-product doctrine or attorney-client and deliberative-process privilege.

**RFP NO. 15:** Any videos, which Relate to Count V of Your Complaint, of Match.com or websites on which Match.com advertised.

**ANSWER:**

The FTC objects to this request as it is vague and ambiguous as to what videos are being requested. The FTC also objects to this request as it is overbroad, and not proportional to the needs of the case in seeking "Any videos" of Match.com, websites it advertised on, and the websites of Match group's other platforms whether or not such screenshots relate to any claim or defense in this matter. The FTC also objects because the documents sought are as readily or more readily available to Match as they are to the FTC. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine.

Notwithstanding the foregoing objections, the FTC responds as follows. The FTC has conducted a reasonable search of documents and has not identified any responsive documents apart from videos MGI produced to the FTC.

**RFP NO. 16:** All surveys, copy tests, research, analyses, studies, or other tests conducted by or done for the FTC Related to any investigation of Count V of Your Complaint.

**ANSWER:**

The FTC objects to this request to the extent it calls for materials protected by attorney-client or deliberative-process privilege or by the work-product doctrine. The FTC does not currently have non-privileged materials responsive to this request.

**RFP NO. 17:** All Documents Relating to any complaints or other negative statements regarding Count V of Your Complaint.

**ANSWER:**

14

The FTC objects to this request as "complaints or other negative statements regarding Count V" is vague and unintelligible. The FTC also objects that this request is overbroad, unduly burdensome, seeks irrelevant documents, not proportional to the needs of the case, and constitutes an impermissible Fishing Expedition.

The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine. The FTC further objects to this request as it fails "to describe with reasonable particularity each item or category of items to be inspected," as required under FED. R. CIV. P. 34(b)(1)(A).

Notwithstanding the foregoing, the FTC will construe this request per the revision set forth in Sidley's August 18, 2022 letter, which stated that this request was intended to: "Seek[] documents relating to complaints about the online cancellation process that the FTC accuses of violating ROSCA." The FTC is therefore construing this request to seek:  All Documents Relating to any complaints about the online cancellation process that the FTC accuses of violating ROSCA. The FTC has produced documents responsive to the request on August 19 and August 25. Those documents are labeled with the following document identifiers: F01-MG-0000001-F01-MG-0005032, F01-MG-0028502, and F01-MG-0028524 - F01-MG-0028666.

**RFP NO. 18:** All Documents cited to, referenced in, or relied upon in preparing Count V of Your Complaint.

**ANSWER:**

The FTC objects to this request on the grounds that it amounts to an intrusion into the FTC's deliberative-process and attorney work-product.  This Request is overbroad, not reasonably calculated to lead to discoverable evidence, and not proportional to the needs of the case.

15

Notwithstanding the foregoing, the FTC has conducted a reasonable search and identified

responsive documents labeled with the following document identifiers:

MATCHFTC_Sample0000985, MATCHFTC_Sample0001021, MATCHFTC306318,
MATCHFTC311263, MATCHFTC312357, MATCHFTC312700, MATCHFTC312903,
MATCHFTC312903, MATCHFTC313402, MATCHFTC313402, MATCHFTC313570,
MATCHFTC320168, MATCHFTC320168, MATCHFTC327460, MATCHFTC327972,
MATCHFTC336923, MATCHFTC336923, MATCHFTC344243, MATCHFTC363737,
MATCHFTC369127, MATCHFTC369268, MATCHFTC369268, MATCHFTC369348,
MATCHFTC371904, MATCHFTC371904, MATCHFTC374137, MATCHFTC3800042,
MATCHFTC380007, MATCHFTC403971, MATCHFTC404348, MATCHFTC404416,
MATCHFTC405364, MATCHFTC405364, MATCHFTC405557, MATCHFTC406132,
MATCHFTC406132, MATCHFTC408480, MATCHFTC409673, MATCHFTC415715,
MATCHFTC415890, MATCHFTC417535, MATCHFTC417535, MATCHFTC417536,
MATCHFTC417536, MATCHFTC426352, MATCHFTC427699, MATCHFTC428352,
MATCHFTC429717, MATCHFTC429717, MATCHFTC429717, MATCHFTC429944,
MATCHFTC431584, MATCHFTC439155, MATCHFTC445763, MATCHFTC452091,
MATCHFTC464887, MATCHFTC464887, MATCHFTC465940, MATCHFTC465940,
MATCHFTC467915, MATCHFTC467915, MATCHFTC467915, MATCHFTC469164,
MATCHFTC473469, MATCHFTC473469, MATCHFTC473469, MATCHFTC474080,
MATCHFTC477153, MATCHFTC477153, MATCHFTC485041, MATCHFTC485041,
MATCHFTC485152, MATCHFTC485296, MATCHFTC485296, MATCHFTC485374,
MATCHFTC485530, MATCHFTC491446, MATCHFTC491446, MATCHFTC494559,
MATCHFTC494559, MATCHFTC495267, MATCHFTC495267, MATCHFTC497411,
MATCHFTC499728, MATCHFTC499728, MATCHFTC519412, MATCHFTC519412,
MATCHFTC519878, MATCHFTC519918, MATCHFTC521299, MATCHFTC521397,
MATCHFTC525771, MATCHFTC528098, MATCHFTC528098, MATCHFTC529047,
MATCHFTC529047, MATCHFTC543542, MATCHFTC543542, MATCHFTC543666,
MATCHFTC543666, MATCHFTC543726, MATCHFTC545351, MATCHFTC545351,
MATCHFTC549410, MATCHFTC559522, MATCHFTC560758, MATCHFTC568737,
MATCHFTC568900, MATCHFTC568900, MATCHFTC568900, MATCHFTC571491,
MATCHFTC571491, MATCHFTC579050, MATCHFTC579050, MATCHFTC581504,
MATCHFTC593415, MATCHFTC600883, MATCHFTC601397, MATCHFTC601397,
MATCHFTC601548, MATCHFTC601548, MATCHFTC601662, MATCHFTC604735,
MATCHFTC604757, MATCHFTC604757, MATCHFTC604757, MATCHFTC604834,
MATCHFTC604834, MATCHFTC605578, MATCHFTC610845, MATCHFTC624330,
MATCHFTC624809, MATCHFTC634792, MATCHFTC644115, MATCHFTC646192,
MATCHFTC646192, MATCHFTC647443, MATCHFTC667211, MATCHFTC667211,
MATCHFTC669157, MATCHFTC669157, MATCHFTC669602, MATCHFTC669602,
MATCHFTC669602.

**RFP NO. 19:** All Documents You may use at trial that Relate to Count V of Your Complaint.

**ANSWER:**

The FTC objects to this request on the grounds it seeks trial preparation materials. The FTC also objects that this request is an impermissible Fishing Expedition, and violates the work-product doctrine by seeking documents that reflects Plaintiff's mental impressions in support of the claim. The FTC further objects to the request on the grounds that such documents, to the extent that they exist, are likely already in Match's possession. The FTC further objects to this document request as premature. Discovery has just begun in this matter, and the Commission is gathering evidence in support of its claims. Moreover, the Court's scheduling order provides dates on which the parties will exchange lists of exhibits they may use at trial. By responding now, the Commission does not waive its rights to identify other potential documents at the time provided in the scheduling order. The FTC objects to this request to the extent it seeks documents protected from disclosure by the attorney-client and deliberative-process privilege, or work-product doctrine.

Date: September 7, 2022

*/s/ M. HASAN AIJAZ*
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted pro hac vice)
JOHN R. O'GORMAN (admitted pro hac vice)
ERICA ROLLINS HILLIARD
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 2421292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)

T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov;
ehilliard@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**CERTIFICATE OF SERVICE**

I, M. HASAN AIJAZ, certify that, on September 7, 2022, I served the foregoing

Plaintiff's Responses to Defendant's First Requests for Production by email on the following

counsel of record at the email address listed below:

Angela C. Zambrano
angela.zambrano@sidley.com
Chad Hummel
chummel@sidley.com
Sidley Austin LLP

*Attorneys for Defendant*
*Match Group, Inc.*

By: /s/ M. HASAN AIJAZ

# EXHIBIT 7



SIDLEY AUSTIN LLP
2021 MCKINNEY AVENUE
SUITE 2000
DALLAS, TX 75201
+1 214 981 3300
+1 214 981 3400 FAX

+1 214 981 3405
ANGELA.ZAMBRANO@SIDLEY.COM

AMERICA  •  ASIA PACIFIC  •  EUROPE

August 18, 2022

**Via E-mail rtepfer@ftc.gov**

Reid A. Tepfer
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201

Re:   *FTC v. Match Group, Inc. et al.*, Case No. 3:19-cv-02281-K (N.D. Tex.)

Counsel:

This letter, sent on behalf of Defendant Match Group, Inc. details the severe deficiencies in the FTC's Responses to the First Set of Interrogatories (the "Interrogatory Responses"), First Set of Requests for Admission (the "Admission Responses"), and First Requests for Production (the "Production Responses") (collectively, the "Discovery Responses"), which the FTC served on August 8, 2022. As detailed below, the Discovery Responses violate the Federal Rules of Civil Procedure (the "Rules") and clear discovery precedents in this District.[1] Absent an immediate agreement to supplement, withdraw unfounded objections, and amend the Discovery Responses to meet the specific requests, as detailed below, Match Group, Inc. will seek judicial relief. We will be fully prepared to discuss the issues set forth below during our scheduled call next Wednesday, August 24.

### *Interrogatory Responses*

Initially, the FTC failed to verify its Interrogatory Responses, which violates Rule 33. *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."). Courts in the Northern District of Texas, including Judge Kinkeade, routinely enforce the requirement that parties verify interrogatory answers. *See DeLeon v. City of Dallas*, No. 3:02-CV-1097, 2005 WL 8158033, at *1 (N.D. Tex. Mar. 30, 2005) (Kinkeade, J.) (ordering plaintiff to provide "a sworn verification with his interrogatory responses"). Accordingly, Match Group, Inc. requests that the FTC immediately verify its Interrogatory Responses to comply with Rule 33.

Further, the FTC incorrectly objects to each and every interrogatory as "premature." There is no legal basis for the FTC to object to discovery here as "premature." Given the large volume and substance of discovery that the FTC has already obtained from Match Group, Inc. and other

---

[1] Match Group, Inc. reserves all rights to challenge any other aspects of the Discovery Responses that are not expressly challenged in this letter.

Sidley Austin (TX) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

publicly available sources during the years of pre-filing investigation, the FTC has sufficient information to respond to Match Group, Inc.'s interrogatories. If the FTC presently has no basis for its allegation that, for example, Match Group, Inc. "is about to violate" the FTC Act, then it must so state. Additionally, several of the interrogatories ask about the FTC's contentions regarding publicly available processes (e.g., Interrogatory No. 2 asking which features of Match.com's Online Cancelation Flow the FTC contends makes the flow not "simple"), so the FTC has no excuse for refusing fully and completely to answer such interrogatories now. It is not "premature" to ask about the FTC's contentions on which it filed a lawsuit. "Discovery by interrogatory requires candor in responding.... The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616-17 (5th Cir. 1977). The FTC must correct its Interrogatory Responses to provide full and complete answers. If it fails to do so, Match Group, Inc. will move to compel and preclude the FTC from relying on any such evidence or argument in the case. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Many of the Interrogatory Responses are also inadequate because, in response to requests that the FTC identify **"facts" and "evidence,"** the FTC points to allegations in its Complaint or its response to Match Group, Inc.'s Motion to Dismiss. *E.g.*, Resp. to Interrog. No. 1. In other instances, the FTC doesn't point to anything specific at all. *E.g.*, Resp. to Interrog. No. 7 (referencing "email records" purportedly "show[ing] Match's senior executives and CEO directing day-to-day activities and business practices and receiving reports about those activities and practices," but not identifying any specific document). The FTC has received interrogatory responses and hundreds of thousands of documents, and, presumably, it used those documents when drafting its Complaint and making its allegations. Despite the volume of information available to the FTC—both from CID production and information publicly available on Match.com—the FTC does not cite *a single document* or piece of evidence in any of its Interrogatory Responses. It is far past time for the FTC to identify what *evidence* it has, not just allegations in a Complaint or attorney argument in response to a Motion to Dismiss. If the FTC has no such evidence, it must say so.

There are also numerous specific deficiencies in the Interrogatory Responses:

The Response to Interrogatory No. 2, which asks the FTC to describe all features of Match.com's Online Cancelation Flow that the FTC contends make the flow not "simple," and what changes would be required to make the flow "simple," is deficient. First, the FTC's objection that this is a "Blockbuster Interrogatory" is incorrect. Interrogatory No. 2 does not ask the FTC to identify "every conceivable detail and fact which may relate to a case," *Nieman v. Hale*, No. 3:12-CV-2433-L-BN, 2013 WL 6814789, at *11 (N.D. Tex. Dec. 26, 2013); rather, it asks the FTC to identify the **specific features** of Match.com's Online Cancelation Flow that the FTC contends

# SIDLEY

Page 3

makes the Online Cancelation Flow not "simple" (and therefore, according to the FTC, violative of ROSCA). It is incumbent upon the FTC now to identify exactly what about Match.com's cancelation process is allegedly improper. Worse, the FTC objects that Match Group, Inc.'s request that the FTC describe the changes that the FTC contends would be necessary to make the Online Cancelation Flow simple is "irrelevant." Hardly. The FTC seeks injunctive relief in this case with respect to the cancelation flow. The characteristics of what the FTC would contend is a "simple" cancelation flow are undeniably relevant to the FTC's claims that the Match.com Online Cancelation Flow is not simple. Match Group, Inc. is entitled to know what changes the FTC thinks would be necessary to bring Match.com into compliance. Regulation by the federal government should not be based on "hide the ball" or a shell game. Nor is the FTC's objection that the interrogatory is compound because it contains a "discrete request" a justification for the FTC's refusal to answer. A subpart is a discrete request only if it is "not logically or factually subsumed within and necessarily related to the primary question." *Randstad General Partner (US), LLC v. Beacon Hill Staffing Group, LLC*, 2021 WL 4319673, at *15 (N.D. Tex. Sept. 23, 2021). A request that the FTC identify which features of Match.com's Online Cancelation Flow make the flow not "simple" and therefore what changes would be necessary to make the flow "simple" are logically and factually subsumed within and necessarily related to one another.[2] It is, of course, Match Group, Inc.'s contention in this case that the Match.com Online Cancelation Flow is and always has been compliant with ROSCA. If the FTC cannot identify why that is not the case, and cannot point to any changes that the FTC believes would bring it into compliance, the FTC should dismiss the case.

The Response to Interrogatory No. 3 is inadequate. Match Group, Inc. asked the FTC to identify and describe the harm to consumers that has flowed from the alleged non-compliant conduct, including a description of how the damages were calculated, the number of users allegedly unable to cancel their subscriptions, and the amount of harm or damages per user. The FTC responded that the number of consumers harmed "is approximately 64,000, with each harmed by an average amount of $136." But this is not close to a complete answer to the interrogatory, because the FTC does not explain **how** the 64,000 consumers were harmed, how the FTC identified those consumers, or how an average harm of $136 per consumer was derived. The FTC must supplement its response to explain "how the [monetary harm]" is derived.

The Response to Interrogatory No. 5 is inadequate. Match Group, Inc. asked the FTC to identify and describe the factors that the FTC considers in deciding whether a cancelation method is or is not simple. This information is critical—particularly in light of the FTC's refusal to describe exactly what is allegedly wrong with Match.com's Online Cancelation Flow or what changes would be necessary to bring it into compliance. Yet the FTC effectively refused to answer. First, the FTC claimed that it was a "Blockbuster Interrogatory," but the interrogatory does not ask for

---

[2] Even if that were not true and the FTC were correct that Interrogatory No. 2 contains multiple discrete subparts (it is not), the FTC would still be obligated to answer all parts of Interrogatory No. 2, as Match Group, Inc. is nowhere near the 25 interrogatory limit. *See* Fed. R. Civ. P. 33(a)(1).

# SIDLEY

Page 4

all facts supporting the FTC's contentions; it simply asks what factors the FTC considers in its analysis of whether or not a cancelation flow is "simple." It is plainly an interrogatory that asks the FTC to articulate what standard the Match.com cancelation process is being measured against. Absent such articulation, Match Group, Inc. has serious constitutional concerns about any enforcement action of this type pursuant to ROSCA. Next, the FTC claims that the interrogatory is "irrelevant because it asks about cancelation methods that are not at issue in this case." Yet the standard for what constitutes a "simple" cancelation mechanism—which is essentially what this interrogatory requests—should be the same regardless of the website. Match Group, Inc. is entitled to know what factors the FTC considers in assessing simplicity of website cancelation processes generally, not just on Match.com. The FTC then claims that the interrogatory is duplicative of Interrogatories 2 and 4. Not so. Interrogatory No. 5 asks about the ***standard*** by which the FTC evaluates whether or not a cancelation method is simple. Finally, the FTC objects that the interrogatory is premature because it asks for information that will be obtained during discovery from documents in Match Group, Inc.'s possession, but the interrogatory doesn't ask *anything* about Match.com's cancelation process specifically. Candidly, this final objection is absurd. The FTC should be able to answer what factors it considers when deciding whether a cancelation mechanism is simple without *any* insight into Match.com's specific cancelation mechanisms (and in any event, the FTC has access to Match.com's cancelation mechanisms, both through the public website and the CID). For these reasons, the FTC's Interrogatory Response referring back to its answer to Interrogatories 2 and 4 is not a sufficient response to Interrogatory No. 5, as those seek entirely different information.

## *Admission Responses*

The Admission Responses in response to numerous Requests for Admission are wholly deficient and improper.

**Admission Responses 1–6**. The Admission Responses 1–6 are not sufficient. First, the FTC must admit, deny, or state in detail why it cannot truthfully admit or deny Requests for Admission 40–43. *See* Fed. R. Civ. P. 36(a)(4) ("If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."). Instead of doing so, the FTC response to Requests for Admission 1–6 with an evasive narrative. Moreover, that narrative is inaccurate, because the FTC falsely repeats that Match Group, Inc. "has claimed through unsworn and unsubstantiated statements by its attorneys" that the challenged guarantee and chargeback practices at issue were discontinued in March and April 2019. Contrary to the Admission Responses, Match Group, Inc. served the FTC with Amarnath Thombre's Verification of Match Group, Inc.'s Responses to the FTC's First Set of Interrogatories. And such responses provided, in part, that the guarantee practice "was actually permanently discontinued in April 2019" and that the chargeback practice "was actually permanently discontinued in March 2019." Furthermore, the FTC's claim that it "cannot independently verify th[e] information" about permanent discontinuance is patently inaccurate and unjustifiable. The Match.com Guarantee,

# SIDLEY

Page 5

when it was available, was publicly offered on Match.com's website, and the chargeback policy was clearly disclosed in Match.com's Terms of Use, so the FTC is able to independently verify this information simply by visiting Match.com. Furthermore, the Admission Responses 1–6 are inconsistent with its own Complaint and Amended Complaint, which both acknowledge that the guarantee and chargeback practices were discontinued. Compl. ¶ 38 (noting that guarantee was in effect "[u]ntil mid-2019"); *id.* ¶ 61 (noting that chargeback policy was in effect "[u]ntil mid-2019"); Am. Compl. ¶ 39 (noting that guarantee was in effect "[u]ntil mid-2019"); *id.* ¶ 62 (noting that chargeback policy was in effect "[u]ntil mid-2019"). Accordingly, the Admission Responses 1–6 are false and deficient and not made in good faith.

"If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof." Fed. R. Civ. P. 37(c)(2). Courts in this District have also interpreted Rule 37(c)(2) to permit "sanctions against a party for improperly denying a request for admission that is later proven to be true." *See, e.g.*, *Longoria v. Cnty. of Dallas*, No. 3:14-cv-3111-L, 2016 WL 6893625, at *6 (N.D. Tex. Nov. 22, 2016) (citing *Vantage Trailers, Inc. v. Beall Corp.*, No. Civ. A. H-06-3008, 2008 WL 4093691, at *2 (S.D. Tex. Aug. 28, 2008)). If the FTC fails to correct its Admission Responses, Match Group, Inc. will pursue all appropriate remedies, including dispositive sanctions if necessary.

**Admission Responses 7–8**. The Admission Responses 7 and 8 are also inadequate and evasive. Those Requests specifically asked the FTC to admit that "*as of the deadline for [the FTC's] response*," it had no evidence that Match.com plans to reinstate either the Guarantee or the chargeback policy challenged in the FTC's Complaint (emphasis added). The FTC apparently has not identified any such evidence, and in fact states in its response that it "does not have any evidence regarding Match's 'plans,'" yet the FTC failed to simply "admit" as required by the Rules. The FTC claims that it "anticipates uncovering such evidence in discovery," but that Admission Response ignores that Match Group, Inc. asked specifically about the FTC's evidence "as of the deadline for [its] response." While the Court did deny Match's Motion to Dismiss on this issue, holding that the Complaint met the threshold for *pleading*, the FTC must now actually present evidence to support the allegations. Because the FTC has no evidence, it must admit, but it improperly failed to do so. Match Group, Inc. has similar issues with Admission Responses Nos. 9–12. It is simply not plausible for the FTC to submit in formal discovery responses that Match Group, Inc.'s prior statement to the effect that there are no plans or intentions ever to reinstitute the guaranty or charge back practices is somehow ineffectual because there is no "commitment." Of course, such responses do not actually meet the substance of the Requests for Admission and are therefore defective.

**Admission Responses 13–14, 17–18, 21–22, 25–26, and 29–30**. The Admission Responses 13–14, 17–18, 21–22, 25–26, and 29–30 are also inadequate and evasive.

# SIDLEY

Page 6

Specifically, Requests for Admission 13–14, 17–18, 21–22, 25–26, and 29–30 seek admissions about users' ability to cancel their Match.com subscriptions via various mechanisms:

- **13**: Admit that users are able to cancel their Match.com subscription via online chat.
- **14**: Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via online chat.
- **17**: Admit that users are able to cancel their Match.com subscription via telephone.
- **18**: Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via telephone.
- **21**: Admit that users are able to cancel their Match.com subscription via mail.
- **22**: Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via mail.
- **25**: Admit that users are able to cancel their Match.com subscription via fax.
- **26**: Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via fax.
- **29**: Admit that users are able to cancel their Match.com subscription via e-mail.
- **30**: Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via e-mail.

Instead of admitting, specifically denying, or stating why it cannot truthfully admit or deny, as required by Rule 36(a)(4), the FTC provides non-responsive information in an effort to avoid responding to the straightforward request. For example, instead of admitting that users are able to cancel Match.com subscriptions via email, Admission Response 29 provides, "Plaintiff responds that Match has possession, custody, or control of the information about the frequency its users faced unavailability or malfunction of its cancelation methods and whether such failures are currently present on its platform. Match is in a better position to answer whether Match.com users are able to cancel their subscription than Plaintiff." The FTC does not identify what "unavailability or malfunction" it is referring to that would affect email cancelations. Nor is such information necessary to address the straightforward question of whether a user is *able* to cancel a subscription via email (or any other method Match.com offers and about which the Requests for Admission ask). The Admission Response is particularly inappropriate given that the FTC *knows* that users are able to cancel their Match.com subscription via email and other methods, because Match Group, Inc. told the FTC as much in response to interrogatories during the CID (June 13, 2017 Resp. to Interrog. 15, at 27), and even produced samples of a variety of cancelation communications to the FTC several years ago. *See, e.g.*, MATCHFTC672164 (examples of chat cancelations). The Admission Responses 13–14, 17–18, 21–22, 25–26, and 30 are equally absurd, inappropriate, and deficient for these same reasons.

Furthermore, it is improper for the FTC to refuse to respond to a Request for Admission simply because Match Group, Inc. also has access to relevant information. *Longoria v. Cnty. of Dallas*, No. 3:14-cv-3111-L, 2016 WL 6893625, at *7 (N.D. Tex. Nov. 22, 2016) ("A party served

# SIDLEY

Page 7

with Rule 36 requests cannot deny them or refuse to answer simply because the same information may be available to the requesting party by other means."). The FTC's refusals to answer violate the central purpose of Rule 36 to "allow[] parties to narrow the issues to be resolved at trial by identifying and eliminating those matters on which the parties agree." *Id.* at *5 (citing *Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1121 (5th Cir. 1991)). The FTC's refusal to admit these straightforward requests drives up costs for no reason.

**Admission Responses 33–38**. The FTC's Responses to Request for Admission Nos. 33–38 are also not sufficient because the FTC's denials do not "fairly respond to the substance of the matter," which violates Rule 36(a)(4). Fed. R. Civ. P. 36(a)(4) ("A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.").

Requests for Admission 33–38 seek various admissions about *a* cancelation method:

- **33**:  Admit that a cancelation method can be simple even if it includes a save offer (meaning an offer to continue a subscription at a discount).
- **34**:  Admit that a cancelation method can be simple if it includes a save offer (meaning an offer to continue a subscription at a discount) but the subscriber is not required to answer the question.
- **35**:  Admit that a cancelation method can be simple even if it asks a subscriber why they are canceling.
- **36**:  Admit that a cancelation method can be simple if it asks a subscriber why they are canceling but the subscriber is not required to answer the question.
- **37**:  Admit that a cancelation method can be simple even if it asks a subscriber whether they would recommend the service.
- **38**:  Admit that a cancelation method can be simple if it asks a subscriber whether they would recommend the service but the subscriber is not required to answer the question.

The FTC referred to each of these Requests as a "hypothetical" and responded that "Plaintiff denies that Match's cancellation method is simple." But none of these Requests sought admissions about whether any of the many Match.com cancelation methods are simple. Instead, the Requests seek the FTC's position on how and when it deems a cancelation method to be simple. The FTC's "denial[s] [did not] fairly respond to the substance of the matter" and therefore are improper. Fed. R. Civ. P. 36(a)(4).

**Admission Responses 40–43**. Requests for Admission 40–43 seek admissions that the Online Cancelation Flow (defined in the Requests as the "Match.com online cancelation process, which You put at issue in Count V of Your Complaint") can be completed within 30, 60, 90, and 120 seconds, respectively. The FTC objects to these Requests and refuses to respond, again failing to admit, deny, or state in detail why it cannot truthfully admit or deny, as it is required to do by

# SIDLEY

Page 8

the Rules. *See* Fed. R. Civ. P. 36(a)(4). But the FTC's objections are unfounded and the FTC must admit, deny, or state in detail why it cannot truthfully admit or deny Requests for Admission 40–43. *See* Fed. R. Civ. P. 36(a)(4) ("If a matter is not admitted, the answer must specifically deny it or ***state in detail why*** the answering party cannot truthfully admit or deny it." (emphasis added)). For example, the FTC objects to each Request as "vague because it is ambiguous what type of person the requests [sic] refers to with regard to, for example, familiarity with the platform, whether they have canceled previously, what type of device they are using, and other factors relevant to the speed of competing the cancelation flow." That repeated objection is improper because the Requests do not seek admissions that the Online Cancelation Flow can *always* be completed within a certain number of seconds. Rather, the Requests simply seek admissions that the Online Cancelation Flow *can* be completed within a certain number of seconds.

The FTC also inappropriately objects that these Requests are "irrelevant because the fastest possible completion speed of a cancelation process it [sic] not relevant to any claim or defense in this case." The FTC's objection, however, is contradicted by the FTC's repeated allegations in the live Complaint that the Online Cancelation Flow is "confusing and cumbersome." Compl. ¶ 55. Additionally, the FTC's own enforcement policy puts speed of cancelation at issue, as that policy indicates that a simple cancelation mechanism should not "impose unreasonable delays on consumers' cancellation efforts." Enforcement Policy Statement Regarding Negative Option Marketing, 86 Fed. Reg. 60822 (Nov. 4, 2021).

These objections are particularly inappropriate because the FTC has never explained why it believes that Match.com's multiple cancellation methods are *not* simple and even now, in litigation, it has objected to Match Group, Inc.'s efforts to discern the FTC's rationale and asserts that whether a cancellation method is "simple" is a legal conclusion. *See* Resp. to Req. for Admis. Nos. 15, 16, 19, 20, 23, 24, 27, 28, 31, 32. In short, the FTC's refusals leave Match Group, Inc. without any information about what the FTC thinks is wrong with the Match.com Online Cancelation Flow (or other cancelation mechanisms) and what could be done to resolve the alleged problem.

**Admission Responses 47 and 49**. Requests for Admission 47 and 49 ask the FTC to admit that a large percentage of Match.com's free trial members and subscribers were able to successfully cancel their subscriptions. The FTC refused to answer these Requests, claiming that the information is already in Match Group, Inc.'s possession, custody, and control. As noted above, an objection on the basis that the information is already within Match Group, Inc.'s possession is improper. *See supra*. The FTC also claimed that the Requests are vague and ambiguous, but even if that were true (it is not), the FTC is obligated to answer the Requests "utiliz[ing] the ordinary definition of the phrases." *Squires v. Toyota Motor Corp.*, No. 4:18-cv-00138, 2021 WL 1930721, at *5 (E.D. Tex. May 13, 2021) (Mazzant, J.) (ordering party to respond to requests for admission using the phrases "area" and "maximum amount"). It cannot entirely refuse to answer. The FTC must supplement its answer to include an actual response.

# SIDLEY

Page 9

### *Production Responses*

Many of the Production Responses are also deficient, based on both general and specific objections. First, the FTC objects to the production requests because they are "contention requests," citing caselaw outside this District. *See* Pl.'s Objs. and Resps. to Defs.' First Reqs. Produc. at 2–3. However, that is not a proper basis for refusing to produce documents in this District. Instead, courts within the Fifth Circuit, including the Northern District of Texas, routinely require parties to respond to contention discovery requests. *See, e.g.*, *Fractus, S.A. v. ZTE Corp.*, 2019 WL 5697205, at *3 (N.D. Tex. Nov. 4, 2019) (holding a party could not object to a contention discovery request stating, "[w]hether or not these contentions must later be proven by fact or expert evidence has no bearing on what the actual contentions are and a party's obligation to assert those contentions"); *In re Katrina Canal Breaches Consol. Litig.*, 2007 WL 1959191, at *3 (E.D. La. June 27, 2007) (requiring a response to a contention request included in a party's first set of interrogatories); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 597 (N.D. Tex. 2018) (ordering party to produce documents responsive to requests for production asking for documents that "demonstrate or confirm [a party's] contention" as to certain issues). Moreover, given the substantial amount of discovery that the FTC received from Match Group, Inc. during the CID, the FTC should possess evidence to support its contentions in response to the requests, if any such evidence exists. The FTC cannot hide that lack of evidence behind a baseless objection.

The FTC's specific responses are also deficient. In response to Request No. 1, which seeks documents relating to "investigations by the FTC of Match or Match.com," the FTC objects on the grounds that the request is vague, overbroad, unduly burdensome, and not proportional to the needs of the case. The FTC goes so far as to argue that the request "constitutes an impermissible Fishing Expedition when limited to the investigation that resulted in this case." It is unclear how a request seeking documents regarding the investigation performed by the FTC *that resulted in this case* could be vague, overbroad, or unduly burdensome or be a "fishing expedition." Furthermore, the FTC's unilateral decision to limit its production to only those documents that "support or call into question whether Match's violations are likely to recur absent restraint" is improper, as Match Group, Inc. is entitled to discovery into the *entirety* of the FTC's investigation, not just those parts that the FTC wants to highlight. Please produce responsive documents to the entirety of the request, or explain whether the FTC is withholding documents based on its objections.

The FTC also asserts the deliberative process privilege in response to Request No. 1 (in addition to other requests). The FTC cannot rely on the "deliberative process privilege" to withhold factual information obtained during the course of its investigation. *See Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 1982) (explaining the deliberative process privilege "protects predecisional materials reflecting deliberative or policy-making processes, but not materials that are purely factual." (quotation marks omitted)); *see also SEC v. Cuban*, 2013 WL 1091233, at *9 (N.D. Tex. Mar. 15, 2013) (explaining the privilege does not extend to facts such as who conducted

# SIDLEY

Page 10

investigations and identity of witnesses, the actions taken by an agency during an investigation, and communications between an agency and witnesses). To the extent that the FTC is in possession of documents or information reflecting facts relevant to this matter and that are responsive to Match Group, Inc.'s requests, they must be produced.

The FTC's response to Request No. 2 is also deficient. Request No. 2 seeks "Documents You believe give rise to a fair inference of a reasonable expectation of continued FTC Act violations absent restraint." This Request is particularly important because, as explained above, Match Group, Inc. has repeatedly informed the FTC (including under oath) that the practices that the FTC complains about were permanently discontinued. If the FTC has no documents suggesting otherwise, it should so state. Because the FTC's response to Request No. 2 simply refers back to Request No. 1, it is deficient for the same reasons.

The FTC's objections that Requests for Production 5 and 6 seek irrelevant documents also lacks merit. Request for Production 5 seeks "surveys, copy tests, research, analysis, studies, or other tests conducted by or done for the FTC regarding cancelation methods," and Request for Production 6 seeks "Documents regarding evaluations the FTC has performed of subscription service cancelation processes." These requests go directly to a key issue in this case – whether Match.com's Online Cancelation Flow is simple. Courts in this District permit "discovery of any matter relevant to the subject matter involved in the action," and "a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (Ramirez, M.J.); *see also Fractus, S.A. v. ZTE Corp.*, No. 3:18-CV-2838-K, 2019 WL 2103698 (N.D. Tex. May 14, 2019) (Kinkeade, J.) ("The party resisting discovery must show specifically how each request is not relevant or is otherwise objectionable.").

Requests for Production 5 and 6 seek documents directly related to the FTC's allegations against Match Group, Inc. in Count V. The FTC alleges in Count V that the Match.com Online Cancelation Flow violates ROSCA because it is not "simple," but the FTC has never explained to Match Group, Inc. how the Match.com Online Cancelation Flow or other cancelation mechanisms offered are not simple or need to be changed. If the FTC possesses surveys, tests, research, studies, or other assessments about cancelation methods, that information is highly relevant to allow the parties (and the Court) to assess what features make a cancelation method simple (or not) and how Match.com's cancelation mechanisms compare. If the FTC is not in possession of any responsive documents, it should so state.

The FTC's response to Request No. 7 is likewise deficient. Match Group, Inc. seeks documents related to the calculation of monetary damages sought by the FTC. The FTC refused to produce such documents, and also claimed that the requested documents are "in Match's possession." But this response is inconsistent with the FTC's response to Interrogatory No. 3, where the FTC claimed that the alleged ROSCA violation harmed approximately 64,000 consumers, each by an average amount of $136. The FTC is clearly referring to some sort of

# SIDLEY

Page 11

document or repository of information for those numbers, but it refuses to produce or otherwise identify those documents for Match Group, Inc. That is improper. Moreover, the FTC's interrogatory response states that part of the damages include "costs imposed on consumers by time spent rectifying failed cancelation attempts." Match Group, Inc. is unaware of having in its possession any documents about "costs imposed on consumers by time spent rectifying failed cancelation attempts." The FTC must produce whatever documents the FTC is relying on for those alleged damages.

The FTC's response to Request No. 17 is also deficient. This Request seeks "[a]ll Documents Relating to any complaints or other negative statements regarding Count V of Your Complaint." In other words, Match Group, Inc. seeks all documents that reflect complaints or negative statements regarding Match.com's Online Cancelation Flow. The FTC objects that this Request is (1) "vague and unintelligible;" (2) "overbroad, unduly burdensome;" (3) "seeks irrelevant documents, not proportional to the needs of the case;" (4) "constitutes an impermissible Fishing Expedition;" (5) "seeks documents protected from disclosure by the attorney client and deliberative process privilege, or work product doctrine;" and (6) "fails 'to describe with reasonable particularity each item or category of items to be inspected.'" None of these objections has any merit. Seeking documents relating to complaints about the online cancellation process that the FTC accuses of violating ROSCA is not unduly burdensome or a fishing expedition—it is directly relevant to the claim at issue. Nor is it unclear what documents Match Group, Inc. seeks. Such documents must be promptly produced.

Finally, Request Nos. 18 and 19 seek documents "cited to, referenced in, or relied upon in preparing Count V of Your Complaint" or that the FTC "may use at trial that Relate to Count V of Your Complaint." As described above, these Requests go to the heart of the FTC's allegations regarding Match.com's Online Cancelation Flow, and Match Group, Inc. is entitled to discovery into what documentation exists to support the FTC's allegations in the Complaint. In response to Request No. 18, the FTC objected on the grounds that "it amounts to an intrusion into the FTC's deliberative process and attorney work product" and "is overbroad, not reasonably calculated to lead to discoverable evidence, and not proportional to the needs of the case." But seeking factual information relating to the FTC's allegations does not intrude into the FTC's deliberative process (*see* caselaw cited above), and the request is narrowly tailored to Count V of the Complaint, not disproportional to the needs of the case. In addition to these objections, the FTC asserts the following objections to Request No. 19: (1) trial preparation materials; (2) impermissible Fishing Expedition; (3) violates the work product doctrine by seeking documents that reflects Plaintiff's mental impressions in support of the claim; (4) such documents, to the extent that they exist, are likely already in Match's possession; and (5) the request is premature. None of the objections has merit. The request is not premature – it seeks documents that the FTC *may use* at trial. To the extent that the FTC discovers additional responsive information during the course of this case, it may supplement if it is otherwise in compliance with the Rules. Seeking documents now that the FTC may use is not a Fishing Expedition – it is directly relevant to Count V. Finally, the request

# SIDLEY

Page 12

does not violate the work product doctrine or any other privilege. The FTC cannot seriously contend that it may keep secret from Match Group, Inc. the very documents that the FTC may use against Match Group, Inc. at trial. That is the very definition of trial by ambush, which the discovery rules are designed to prevent. *See Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015) (explaining that "the aims of the Federal Civil Rules" are "to eliminate trial by ambush and afford full and fair litigation of disputed issues").

* * *

We ask that the FTC correct its responses and produce responsive documents within five business days. We will be fully prepared to discuss the issues set forth below during our scheduled call next Wednesday, August 24.

Sincerely,

*/s/ Angela C. Zambrano*

Angela C. Zambrano

cc:      Counsel of Record

# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. 3:19-cv-02281-K |
| MATCH GROUP, INC., a corporation, | |
| Defendant. | |

**DEFENDANT MATCH GROUP, INC'S RESPONSES AND OBJECTIONS TO PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Rules") Defendant Match Group, Inc. ("Match"), by and through its undersigned counsel, objects and responds to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") First Set of Interrogatories (each an "Interrogatory" and, collectively, the "Interrogatories") as follows:

**I.     GENERAL OBJECTIONS**

1.     <u>Irrelevant</u>.  Match objects to each and every Interrogatory to the extent that it purports to seek information that is irrelevant to Plaintiff's claims and is not reasonably calculated to lead to the discovery of admissible evidence.  In particular, Match objects to each and every Interrogatory to the extent that it seeks information relevant to the claims that were dismissed in the Court's March 24, 2022 Order on Match's Motion to Dismiss (the "Dismissed Claims").[1] Match further objects to each and every Interrogatory to the extent that it seeks documents or

---

[1] ECF No. 86 (dismissing Counts I & II of FTC's complaint, filed on September 25, 2019, at ECF No. 1 (the "Complaint"), due to Match's affirmative defense of CDA § 230 immunity).

information from an entity or dating site not yet named in the present litigation in any operative pleading, including but not limited to Match Group, LLC, OKCupid, Plenty of Fish, and Tinder. These responses are being provided solely by Match Group, Inc. based on information within its possession, custody and control.

2.    Undue Burden.  Match objects to each and every Interrogatory to the extent that it seeks to impose obligations beyond what is required under the Rules or Local Rules or is unduly burdensome.  Accordingly, Match objects to each and every Interrogatory where the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

3.    Overbroad.  Match objects to each and every Interrogatory to the extent that it seeks information that is beyond the scope of Plaintiff's claims, including, but not limited to, documents and information related to Plaintiff's Dismissed Claims, and documents and information related to entities or dating sites that are not yet party to, or otherwise related to, this litigation, such as Match Group, LLC, OKCupid, Plenty of Fish, and Tinder.  Match further objects to each and every Interrogatory to the extent that it seeks documents and information that are not within Match's possession, custody, or control, including by seeking documents and information from and related to entities that are not named as parties to this litigation.

4.    Privilege.  Match objects to each and every Interrogatory to the extent it seeks documents or information that is subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all communications with, or work product of, any outside attorney) (collectively, "Privileged

Information").  Any inadvertent disclosure of Privileged Information by Match shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

5.    <u>Vagueness and Ambiguity</u>.  Match objects to each and every Interrogatory to the extent that such Interrogatory is so vague, ambiguous, or confusing as not to be susceptible to a reasoned interpretation or response.  In the absence of clear instructions or definitions associated with terms that are too vague, ambiguous, or confusing, Match will give the terms used in the Interrogatory a reasonable interpretation.

6.    <u>Confidentiality</u>.  Match objects to each and every Interrogatory to the extent that it seeks the production of confidential or commercially sensitive information.  Match will confer with Plaintiff in an effort to reach an agreement regarding the terms of a protective order.  If an agreement cannot be reached, Match will move for a protective order.  Any responses to these Interrogatories that are provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

7.    <u>Accessibility</u>.  Match objects to each and every Interrogatory to the extent that it seeks information that is not reasonably accessible in the ordinary course of business.

8.    <u>Cumulative Interrogatories and Availability of Information Elsewhere</u>.  Match objects to each and every Interrogatory that is cumulative, duplicative of, or to which documents or information already are in the possession, custody, or control of Plaintiff, or have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive.  In particular, Match objects to each and every Interrogatory insofar as it seeks documents or information already obtained by Plaintiff during the FTC's prior investigation in connection with the Civil Investigative Demand served on Match in 2017 (the "2017 CID").

9.      <u>Lack of Possession, Custody, or Control</u>.  Match objects to each Interrogatory to the extent it does not appear to be addressed to Match and seeks information that is necessarily outside Match's knowledge.

10.      <u>Legal Conclusions</u>.  Match objects to each and every Interrogatory to the extent that it requires Match to draw legal conclusions.

11.      <u>Reservation of Right to Supplement</u>.  Given the stage of the litigation, Match has not completed its investigation of the facts or law relating to this action, and discovery in this matter is ongoing.  Accordingly, consistent with the Rules, these responses and objections are made without prejudice to, and are not a waiver of, Match's right to amend, correct, or supplement these responses, and are subject to Match's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist.  Match provides these responses in good faith after reasonable inquiry and based on information that it knows or can readily obtain.

12.      <u>No Waiver</u>.  By responding to these Interrogatories, Match does not concede the relevancy of an Interrogatory, nor the relevancy or admissibility of any information provided in response thereto.  The fact that information is provided in response to a particular Interrogatory does not mean that it is probative of any particular issue in this case.  Match expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, privilege, confidentiality, hearsay, or admissibility as evidence for any other purpose.  Moreover, the right to object on any ground to the use of the responses or information provided, in any aspect of this or any other court action, arbitration, or judicial or administrative proceeding or investigation, is reserved.

13.     <u>Multiple Subparts</u>.  Match objects to each and every Interrogatory to the extent it purports to include more than one single discrete question, and to the Definitions and Instructions to the extent they imbed in any Interrogatory a series of subpart questions, as these Interrogatories violate the Rules that limit each party to 25 single questions, including subparts.

## II.     SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.     Match specifically objects to the Interrogatories' Instructions and Definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules and the Local Rules.  In responding to these Interrogatories, Match will follow the requirements set forth in the Rules and the Local Rules.

2.     Match specifically objects to the definitions of "Match," the "Company," and "You" because they are vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines these term as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing."  This definition necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Match objects to Plaintiff's definitions of "Match," the "Company," and "You" as defined to "include any descriptor used by Match in its business practice," again encompassing other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  In responding to these Interrogatories, Match will construe the terms "Match," the "Company," and "You" to refer only to Match Group, Inc.

3.      Match specifically objects to the definitions of "and" and "or" and because they are ambiguous and confusing.  Match will interpret these terms to have their plain, ordinary, and common sense meaning.  Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case and exceedingly burdensome.  In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

4.      Match specifically objects to the definition of "any" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common sense meaning.  Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.  In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

5.      Match specifically objects to the definitions of "Customer" and "Customers" as overbroad, unduly burdensome, and oppressive, insofar as they purport to cover individual(s) "who have maintained an account on *any website* owned or operated by the Company, including OKCupid, Plenty of Fish, and Tinder," which Match does not actually own or operate, and which encompasses websites and entities that are not party to, or otherwise related to, the present litigation.  Match further objects that the definitions of "Customer" and "Customers" are thus not tailored to the allegations in the complaint, not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence.  In responding to these

Interrogatories, Match will construe the terms "Customer" and "Customers" to refer only to Customer(s) of Match.com.

6.      Match objects to the definition of "Document" as overly broad and unduly burdensome.  Match further objects to this definition to the extent it refers to items outside of Match's possession, custody, or control, particularly through its use of the phrases "regardless of origin or location" and "however and by whomever prepared, produced, disseminated, or made." Match further objects to this definition to the extent it refers to items in Plaintiff's possession, custody, or control, or to items that have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive.  Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those required by the Rules.  In responding to these Interrogatories, Match will interpret the word "Document" to have its plain, ordinary, and common sense meaning and will comply with the Rules.

7.      Match specifically objects to the definition of "each" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common sense meaning.  Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.  In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

8.      Match specifically objects to the definitions of "Identity" and "the identity of" and because they are ambiguous and confusing.  Match will interpret these terms to have their plain, ordinary, and common sense meaning.  Match further objects to these definitions to the extent they

purport to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.  In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

9.      Match specifically objects to the definition of "Match Group, LLC" as vague, ambiguous, confusing, and overbroad.

10.      Match objects to the definition of "OKCupid," because it is overbroad, ambiguous, and confusing.  Match further objects to the definition of "OKCupid" as irrelevant, since OKCupid is not referenced in the operative Complaint, and thus any Interrogatory relying on the definition of "OKCupid" is not proportional to the needs of the case and is unduly burdensome.

11.      Match objects to the definition of "Plenty of Fish," because it is overbroad, ambiguous, and confusing.  Match further objects to the definition of "Plenty of Fish" as irrelevant, since Plenty of Fish is not even referenced in the Complaint, and thus any Interrogatory relying on the definition of "Plenty of Fish" is not proportional to the needs of the case and is unduly burdensome.

12.      Match specifically objects to the definitions of "referring to" and "relating to" and because they are ambiguous and confusing.  Match will interpret these terms to have their plain, ordinary, and common sense meaning.  Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor

proportional to the needs of the case.  In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

13.     Match specifically objects to the definition of "Subscriber" as overbroad, unduly burdensome, and oppressive, insofar as it purports to cover a "Subscriber" to "any website owned or operated by" Match, which would necessarily encompass websites and entities that are not party to, or otherwise related to, the present litigation.  Match further objects that the definition of "Subscriber" is thus not tailored to the allegations in the complaint and not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence.  In responding to these Interrogatories, Match will construe the term "Subscriber" to refer only to Subscribers to Match.com.

14.     Match objects to the definition of "Tinder," because it is overbroad, ambiguous, and confusing.  Match further objects to the definition of "Tinder" as irrelevant, since Tinder is not even referenced in the Complaint, and thus any Interrogatory relying on the definition of "Tinder" is not proportional to the needs of the case and is unduly burdensome.

15.     The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Interrogatories.

## III.     SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify, including by job title, place of employment, and dates of service, all persons that Match consulted with while preparing its response to the 2017 CID, Plaintiff's First Set of Interrogatories, Plaintiff's First Requests for Production, Plaintiff's First Request for Admission, or any other submission or presentation the Company sent to the FTC. For each such person, state the 2017 CID request, discovery request, interrogatory, or other submission or presentation for which the person answered or otherwise assisted in answering.

**RESPONSE:**  Match objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match

further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy.  Match.com has permanently discontinued the "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects to this Interrogatory because, by asking for the identity of all persons that Match "consulted with" in responding to the FTC's CID or discovery requests, it seeks documents or information that is subject to the attorney-client privilege and work-product doctrine.  The FTC is not entitled to know the identity of every individual with whom Match's attorneys consulted.

**INTERROGATORY NO. 2:**  Describe any criteria Match uses or has used to determine whether to grant a Customer's request for a refund relating to PTR Ads, fraud or alleged fraud, Match Guarantees, consumer's belief that they had already canceled their subscription, or his or her claimed lack of knowledge about recurring charges.

**RESPONSE:**  Match objects to this Interrogatory because "PTR Ads" is vague and undefined, and to the extent this Interrogatory seeks Privileged Information.  Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or

defenses and is not proportional to the needs of the case. Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." Match.com has permanently discontinued the "Match Guarantee" and related practices, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects to this Interrogatory as irrelevant, overly broad, unduly burdensome, and disproportionate to the needs of the case, in that it seeks information that is beyond the scope of Plaintiff's Complaint, because Count I and II relating to PTR Ads and fraud or alleged fraud were dismissed with prejudice by the Court on March 24, 2022. *See* ECF No. 86 ("The Court [] grants Defendant Match Group, Inc.'s Motion to Dismiss Counts I and II because Match is entitled to immunity under 47 U.S.C. § 230 of the Communications Decency Act, thus those claims are barred and dismissed with prejudice."). Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single

questions, including subparts.  Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.

Subject to and without waiving the foregoing objections, Match responds as follows: Match Group, Inc. does not use any criteria to determine whether to grant a Match.com Customer's request for a refund relating to a consumer's belief that they had already canceled their subscription, or his or her claimed lack of knowledge about recurring charges because Match Group, Inc. does not own or operate Match.com.  Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

**INTERROGATORY NO. 3:** Identify and describe in complete detail the full basis for each affirmative defense You have asserted in Your Answer, including but not limited to every fact and document that supports, contradicts, refutes, or rebuts that particular affirmative defense, and every witness who may have information or testimony relevant to that particular defense.

**RESPONSE:**  Match objects to this Interrogatory because "relevant" is vague and undefined and to the extent this Interrogatory seeks Privileged Information.  Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a Chargeback policy.  Match.com has permanently discontinued the "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also

dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities or dating sites that are not relevant to the claims or allegations in the Complaint. Match also objects to this Interrogatory as premature and to the extent it seeks to require Match to marshal all of its evidence before trial. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules. Match also objects to this Interrogatory to the extent it seeks to require Match to provide information that is not in its possession, custody, or control, or that is already in Plaintiff's possession, custody, or control.

Subject to and without waiving the foregoing objections, Match responds as follows:

First Affirmative Defense (Failure to State a Claim): Match asserts FTC's Complaint fails to state a claim, including because the Complaint names the wrong entity. Since March 2017, when the FTC served Match Group, Inc. with the Civil Investigative Demand ("CID"), Match has repeatedly informed the FTC that Match Group, Inc. is in fact a separate holding company, and Match Group, LLC (formerly named Match.com, LLC) actually owns and operates Match.com. For example, Match stated in its May 15, 2017 Interrogatory Responses to the FTC's CID that

Match.com, LLC is the general operating company that operates Match.com.  Delaware Secretary of State records show that Match.com, LLC filed a certificate of amendment on September 12, 2017, changing its name from Match.com, LLC to Match Group, LLC.  Match continued to raise these concerns in a December 16, 2018 White Paper and in negotiating a potential Consent Order with the FTC.  Additionally, shortly after the Complaint was served, counsel for Match emailed the FTC to again inform it that Match Group, Inc. was incorrectly named as a defendant in the lawsuit and should be voluntarily dismissed.  *See* Dkt. 21 at 35.  Counsel for the FTC acknowledged the email but declined to voluntarily dismiss the Complaint against Match Group, Inc. *See id.* at 37.

The Complaint fails to state a claim for the additional reason that the Guarantee and Chargeback policy at issue in the Complaint were discontinued prior to the FTC filing suit, and there are no plans to resume those practices, as the FTC is aware from multiple communications.  Thus, both Match Group, Inc. and Match.com are not violating, nor are they about to violate, the FTC Act.

Second Affirmative Defense (Compliance with Applicable Law):  The Complaint's Count V fails as Match did not violate Section 4 of ROSCA, 15 U.S.C. § 8403.  As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint.  Rather, at all times with respect to Count V, Match.com complied with all applicable laws and acted reasonably and in good faith.  As a preliminary matter, even assuming that the online cancelation flow at issue in Count V is not simple (although it is), the plain language of ROSCA requires only "simple mechanisms" for cancelation, and ROSCA does not provide that every cancelation method must be simple.  Count V fails because Match.com offers several other cancelation methods in full compliance with ROSCA, including simple

methods to cancel by phone, fax, email, internet chat, or standard mail, and the FTC challenges only the online cancelation method. Thus, even if the FTC were correct (which it is not) that the online cancelation flow is not simple, the existence of other unchallenged methods of cancelation defeats the FTC's claim.

Count V also fails because the Match.com online cancelation flow is not complicated or in any material way different from numerous other online subscription cancelation mechanisms. It is essentially industry standard. Consumers in fact readily canceled using the Match.com online cancelation flow, as reflected by data proving that subscribers have no difficulty canceling via the online cancelation flow, which can be completed in less than one minute. Based on data reviewed during the FTC's pre-suit investigation, on average, 89% of Match.com subscribers who initiated an online cancelation request successfully canceled their subscription within the same day.

Third Affirmative Defense (Good Faith Belief and Conduct): As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint. Match.com's subscription cancelation flow was designed and implemented to be simple and readily accessible to users.

Fourth Affirmative Defense (Requested Relief Contrary to Public Policy): As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint. The FTC's requested relief with respect to Count V is contrary to the public interest because Match.com's online cancelation flow is intended to benefit consumers by protecting their privacy (by requiring them to insert their passwords prior to accessing private account information, such as billing), offering them discounted rates, and allowing Match.com to understand how to better serve them.

Fifth Affirmative Defense (Alleged Failure to Clearly and Conspicuously Disclose Not Material):  As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint.  Any alleged failure by Match.com to clearly and conspicuously disclose some requirements of the guarantee practice was not material because most consumers who did not qualify for the guarantee failed to satisfy the requirements that were unquestionably adequately disclosed (i.e., the requirements in the numbered and bullet-pointed list in the Program Rules).  So even had other requirements been *more* clearly and conspicuously disclosed (or waived), most users would not have been eligible for a guarantee regardless.

Sixth Affirmative Defense (Mootness):  As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint.  As to Count III, Match asserts the FTC's claim for injunctive relief is moot under applicable law.  The FTC admits in its Complaint that this guarantee practice at issue in Count III ceased in mid-2019 (but it was actually permanently discontinued in April 2019).  Match asserts Count IV is also moot, because, as the FTC admits in its Complaint, Match.com's chargeback practice ceased in mid-2019 (but it was actually permanently discontinued in March 2019).  Count IV's claim for injunctive relief is therefore also moot.  There is nothing to enjoin because the challenged practices have been discontinued.

Seventh Affirmative Defense (Overbroad Injunction):  As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint.  The FTC's requested injunction with respect to Count III and the "guarantee" practice is overbroad and not specifically tailored to the violations alleged in the Complaint.  The FTC's requested injunction with respect to Count IV and the chargeback policy

is overbroad and not specifically tailored to the violations alleged in the Complaint.  Finally, the FTC's requested injunction is overbroad and not specifically tailored to the violations alleged in the Complaint.  In particular, the FTC's requested injunction is overbroad not only because the Complaint fails to allege all necessary facts, but also because the FTC attempts to apply such injunction to Match Group, Inc., which does not own or operate Match.com, and to brands other than Match.com that are not implicated by the Complaint.

Eighth Affirmative Defense (Mitigation):  As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint.  With respect to Count V, the FTC has not offered any reliable methodology for quantifying alleged consumer harm, and any restitution amount would be subject to mitigation to the extent that consumers received refunds or utilized the services on the renewed subscription.

Ninth Affirmative Defense (Reservation of Other Affirmative Defenses):  Match lacks sufficient information regarding the facts and evidence alleged and is therefore unable to ascertain at this time any additional affirmative defenses which Match may have.  Therefore, Match expressly reserves the right to amend its Answer to assert such other affirmative defenses as may become apparent subsequent to the filing of its Answer, whether in discovery, at trial, or otherwise.

Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

**INTERROGATORY NO. 4:** Identify any tests, reports, A/B testing, Customer surveys, usability tests, focus groups, or other user experience studies, whether formal or informal, You have conducted related to:

    a.       Match Guarantees;

    b.       Chargebacks; and

    c.       means of subscription renewal or cancellation.

Your response to this Interrogatory should include descriptions of the types of usability studies, beta studies, and surveys that the response covers. In addition, please provide Your response in machine-readable format, for example, in a .csv or spreadsheet file format.

**<u>RESPONSE:</u>**   Match objects to this Interrogatory because "tests," "reports," "A/B testing," "surveys," "usability tests," "focus groups," "user experience studies," "formal," and "informal" are vague and undefined, and to the extent this Interrogatory seeks Privileged Information.  Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a Chargeback policy.  Match.com has permanently discontinued the "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions,

joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities or dating sites that are not relevant to the claims or allegations in the Complaint.  Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts.  Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.

Subject to and without waiving the foregoing objections, Match responds with respect to subpart (c) as follows: pursuant to Federal Rule of Civil Procedure 33(d), Match directs the FTC to any documents that will be produced in response to the FTC's RFP No. 26.  Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

**INTERROGATORY NO. 5:**

On a monthly basis, state:

     a.     the number of Match.com subscriptions subject to the Guarantee sold;

     b.     the number of Guarantee Extensions that Match provided Customers;

     c.     the number of Customer inquiries regarding the automatic renewal of subscriptions subject to the Match Guarantee;

     d.     the number of refund requests Customers submitted to Match relating to Match Guarantees and the dollar amount of these requested refunds; and

     e.     the number of refunds Match granted relating to Match Guarantees and the amount of money refunded relating to Match Guarantees.

**RESPONSE:**  Match objects to this Interrogatory because "subscriptions" and "inquires" are vague and undefined and to the extent this Interrogatory seeks Privileged Information.  Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to

either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a Chargeback policy. Match.com has permanently discontinued the "Match Guarantee" and related practices, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery solely relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." Plaintiff's definition of "Match" necessarily and inappropriately includes other entities or dating sites that are not relevant to the claims or allegations in the Complaint. Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit

each party to 25 single questions, including subparts.  Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.

**INTERROGATORY NO. 6:**   State all limitations on Customers' rights to redeem a Match Guarantee or receive a Guarantee Extension and all actions consumers had to complete to redeem a Match Guarantee or receive a Guarantee Extension. For each such limitation or action Identify:

   a.   the date such limitation was implemented and/or eliminated;

   b.   all advertisements, notices, disclosures, or other notifications where Match disclosed the need to complete that action; and

   c.   The number of consumers whose request for a Guarantee Extension were denied due to that limitation or for failing to complete that particular action.

**RESPONSE:**   Match objects to this Interrogatory because "rights to redeem," "that limitation," and "that particular action" are vague and undefined and to the extent this Interrogatory seeks Privileged Information.  Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." Match.com has permanently discontinued the "Match Guarantee" and related practices, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery solely relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related

to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.

**INTERROGATORY NO. 7:** Describe all of Match's policies relating to Customer Chargebacks, including regarding:

    a.    the circumstances in which Match will dispute a Customer Chargeback;

    b.    denying Customer account access due to a Chargeback request;

    c.    deleting or reinstating accounts of consumers who unsuccessfully attempt a Chargeback and when such deletions or reinstatements are effective; and

    d.    the effective dates of the policies.

**RESPONSE:** Match objects to the extent this Interrogatory seeks Privileged Information. Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever had any policy relating to a Chargeback—or offered any kind of "Match Guarantee" or maintained a Chargeback policy. Match.com has permanently discontinued "Chargebacks" and related practices, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery solely relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should

be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules. Match also objects to this Interrogatory to the extent it seeks to require Match to provide information that is not in its possession, custody, or control, or that is already in Plaintiff's possession, custody, or control.

**INTERROGATORY NO. 8:** On a monthly basis, state:

  a.  the number of Customer communications Match received regarding account cancellation or cancellation processes;

  b.  the number of refund requests made by Customers who claimed they believed they already canceled their subscriptions or who attempted to cancel;

  c.  the dollar value of the refund requests made by Customers who claimed they believed they already canceled their subscriptions or who attempted to cancel;

  d.  the number of refunds Match provided to Customers who claimed they believed they already canceled their subscriptions or who attempted to cancel;

  e.  the dollar value of the refunds provided to Customers who claimed they believed they already canceled their subscriptions or who attempted to cancel;

  f.  the amount charged to Customers who had requested a refund on the basis that they believed they had cancelled and had this request denied by Match; and

  g.  the amount charged to Customers who had requested a refund on the basis that they were unaware of Match's recurring charge and had this request denied by Match.

**RESPONSE:**   Match objects to this Interrogatory because "communications," "account cancellation or cancellation processes," "attempted," "believed," and "claimed," are vague and undefined and to the extent this Interrogatory seeks Privileged Information.  Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "Match" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "Match," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts.  Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.  Match also objects to this Interrogatory to the extent it seeks to require Match to provide information that is not in its possession, custody, or control, or that is already in Plaintiff's possession, custody, or control.  By responding to this Interrogatory, Match does not concede the relevancy of this Interrogatory nor the relevancy or admissibility of any information provided in response thereto.  The fact that information is provided in response to this Interrogatory does not mean that it is probative of any particular issue in this case.

Subject to and without waiving the foregoing objections, Match responds as follows: Match Group, Inc. has not received any Customer communications or refund requests because Match Group, Inc. does not own or operate Match.com (or any other dating site).

Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

**INTERROGATORY NO. 9:** Describe each method through which consumers could cancel their subscriptions. For each such method, describe in detail:

    a.    how Match informed or disclosed to consumers the availability of each method;

    b.    each step that consumers would have to take in order to successfully cancel;

    c.    each representation that Match would make to consumers at each step in the cancellation process; and

    d.    by month, how many Customers attempted to cancel via that particular method;

    e.    by month, how many Customers successfully canceled via that particular method.

**RESPONSE:** Match objects to this Interrogatory because "attempted" is vague and undefined and to the extent this Interrogatory seeks Privileged Information. Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." Plaintiff's definition of "Match" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "Match," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Additionally, Match objects to this Interrogatory as it includes more than one single discrete

question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts.  Match also objects to this Interrogatory as premature and to the extent it seeks to require Match to marshal all of its evidence before trial.  Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.  Match also objects to this Interrogatory to the extent it seeks to require Match to provide information that is not in its possession, custody, or control, or that is already in Plaintiff's possession, custody, or control.  By responding to this Interrogatory, Match does not concede the relevancy of this Interrogatory nor the relevancy or admissibility of any information provided in response thereto.  The fact that information is provided in response to this Interrogatory does not mean that it is probative of any particular issue in this case.

Subject to and without waiving the foregoing objections, Match responds as follows: Match Group, Inc. does not inform, disclose to, or make representations to Match.com subscribers, because Match Group, Inc. does not own or operate Match.com (or any other dating site).  Therefore, Match Group, Inc. does not have the cancelation data requested by this Interrogatory.

Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

Dated:  July 19, 2022                    Respectfully submitted,

                                         */s/  Angela C. Zambrano*
                                         Angela C. Zambrano
                                         State Bar No. 24003157
                                         angela.zambrano@sidley.com
                                         David Sillers
                                         State Bar No. 24072341
                                         dsillers@sidley.com
                                         SIDLEY AUSTIN LLP
                                         2021 McKinney Ave, Suite 2000
                                         Dallas, TX 75201

Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and forgoing document was served on all counsel of record via e-mail as outlined below on July 19, 2022.

Reid Abram Tepfer
rtepfer@ftc.gov
M Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov

/s/  *Angela C. Zambrano*
Angela C. Zambrano

DocuSign Envelope ID: AE951EE1-D7E3-4074-A0C8-F323B57CB9EF

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. 3:19-cv-02281-K |
| MATCH GROUP, INC., | |
| Defendant. | |

## AMARNATH THOMBRE'S VERIFICATION OF MATCH GROUP, INC.'S RESPONSES TO PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF INTERROGATORIES

I, Amarnath Thombre, state that I am an employee of Match Group, LLC and a CEO-appointed officer of Match Group, Inc.  I serve as the Chief Executive Officer of Match Group Americas and provide this verification of Match Group, Inc.'s ("Match") Responses to Plaintiff Federal Trade Commission's First Set of Interrogatories (the "Responses").  I further state that the Responses have been prepared by counsel for Match in consultation with me and others with knowledge of the matters involved; that the facts are based upon the business records of Match, with which I have general familiarity; and that, to the best of my knowledge and belief, all of the facts stated therein are true and correct in all material respects with the understanding that Match is continuing to research its Responses and reserves the right to supplement its Responses as authorized by the Federal Rules of Civil Procedure and any other applicable law.

I verify under penalty of perjury that the foregoing is true and correct in all material respects.

Dated:  July 19, 2022

Respectfully submitted,

DocuSigned by:

*Amarnath Thombre*

13E40C0FBC6A4D6...

Amarnath Thombre

# EXHIBIT 9



United States of America
FEDERAL TRADE COMMISSION
Southwest Region

Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201

August 25, 2022

**By E-Mail only**

Chad S. Hummel
Sidley Austin LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
chummel@sidley.com

Angela C. Zambrano
Sidley Austin LLP
2021 McKinney Ave, Suite 2000
Dallas, Texas 75201
Angela.zambrano@sidley.com

Re:   *FTC v. Match Group, Inc. and Match Group, LLC*, Case No. 3:19-cv-02281-K (N.D. Tex.)

Dear Mr. Hummel:

I am writing in an effort to resolve the discovery dispute between the parties as identified in Match Group, Inc.'s ("MGI") letter of August 18 ("MGI's Letter"), the FTC's letter of August 19 ("FTC's Letter"), and as discussed during our meet-and-confer call on August 24. Below, I first propose a fair and reasonable resolution to the purported deficiencies identified in MGI's Letter, which should obviate the need to involve the Court on those issues. I then discuss Match's ongoing refusal to address its discovery deficiencies. Finally, I address your assertion that a second conference call is required for the FTC to satisfy its meet and confer obligation before filing a motion to compel.

### A. The FTC's Proposed Resolution of the Purported Discovery Deficiencies Identified by MGI

The FTC has satisfied its discovery obligations under the Federal Rules, and MGI's claims about purported deficiencies are without merit. Despite this, the FTC is willing to supplement its responses to satisfy your concerns. As I stated yesterday, the FTC is committed to amending its responses within two weeks of our meet and confer and will provide them no later than September 7, 2022. Below, I detail the FTC's plans for supplementing its responses to MGI's Requests for Production ("RFPs"), Interrogatories, and Request for Admission.

**APP 161**

*RFPs*

Although the FTC has properly objected to many of the RFPs, the FTC has conducted a diligent search for responsive documents and is not withholding any non-privileged non-work product documents that are responsive and relevant to these requests except where explicitly stated in our responses. The FTC produced all such documents that were nonconfidential last Friday, Aug. 19 and has produced today all confidential documents subject to the stipulated protective order in this case. In addition, the FTC will be producing additional documents relating to Request 17. As drafted, this request was unintelligible because it asked for complaints about Count V, not the practices described in the Count V. The FTC can produce additional complaints in response to the new question propounded in your August 18 letter under the guise of clarifying Request 17.

*Interrogatories*

The FTC will amend its interrogatory responses to add additional details and cites to specific documents, by Bates number, as described below:

- Regarding Interrogatories 1 and 7: These interrogatories seek facts and evidence supporting the FTC's contentions. Contrary to your assertion that "the FTC doesn't point to anything specific at all," the FTC's responses identified facts, drawing on specific language found in documents MGI produced in response to the FTC's 2017 Civil Investigative Demand. However, we will be amending these interrogatory responses to cite by Bates number to the specific documents referenced.

- Regarding Interrogatory 2: Contrary to your assertions, the FTC has responded to this interrogatory by identifying specific facts that render Match.com's cancellation process not simple under the Restore Online Shoppers' Confidence Act. However, the FTC will amend by identifying, by Bates number, specific documents supporting the facts identified in this interrogatory response.

- Regarding Interrogatory 3: As you admitted on our August 24 discussion, MGI must submit revised data for the FTC to provide current figures relating to the consumer injury caused by MGI's practices. However, as we discussed, the FTC will amend to describe with greater specificity the methodology the FTC intends to use in its calculation of consumer harm.

- Regarding Interrogatory 5: This interrogatory calls for documents supporting the FTC's contention that Match.com's cancellation process was not simple. While we provided an explanation of our contentions regarding Match.com's cancellation process, we will point to publicly available guidance and the specific documents produced by MGI we refer to in our responses that show how the process was not simple.

As I stated in our call, the FTC reserves the right to amend and supplement its responses to MGI's interrogatories. As the FTC has advised MGI, these contention interrogatories are premature because, among other things, MGI served them before it had responded to the FTC's discovery requests. Moreover, the interrogatories relate to documents that the FTC has requested through discovery and which Match continues to improperly withhold.

Finally, regarding your concerns regarding the FTC's method of verifying its interrogatory responses, the FTC's responses in this case were submitted consistent with its ordinary practices and are consistent with its obligations under the federal rules. *See Johns v. United States*, No.Civ.A. 96-1058, 1997 WL 732423, at *2 (E.D. La. Nov. 21, 1997) (holding that Assistant United States Attorney answers to interrogatories meet requirements of Rule 33(a) because AUSA is permissible agent). You indicated that the FTC has provided its responses with a verification in addition to a digital signature in your past personal experiences with the agency, notably in the *DirecTV* litigation, but we were unable to identify examples of the FTC using the methods you reference in that litigation.

*Requests for Admission*

The FTC will review and amend where appropriate its responses to MGI's Requests for Admission to Requests 1 through 6 to and provide additional explanation concerning our inability to respond. Additionally, as discussed, in response to Requests 13–14, 17–18, 21–22, 25–26, and 29–30, we are prepared to state that MGI has represented to the FTC that Match.com has other cancellation mechanisms, although these representations are inadequate for the FTC to admit these RFAs.

## B.  MGI's Deficient Discovery Responses

We reiterate our demand that MGI remedy the many deficiencies outlined in the FTC's Letter. Among the most egregious is its refusal to search for and produce responsive documents relevant to Counts III and IV because it contends those counts are somehow moot and because it is willing to enter into some kind of unspecified stipulation. MGI cannot in good faith contend that its belief about the merits of this litigation relieve MGI of its discovery obligations, and it has pointed to no caselaw suggesting otherwise. Further, while MGI has contended that many of the FTC's RFPs relate only to Counts I and II, which have been dismissed, it failed to identify any such requests. In fact, the FTC's discovery requests relate to issues that are still live in this case.

MGI's continual delay and refusal to produce relevant documents appear to be calculated to deny the FTC a meaningful opportunity to conduct discovery on all of its counts. If MGI will not commit to curing its discovery deficiencies, we will have no choice but to seek relief from the Court, including an extension of the discovery deadlines to account for MGI's dilatory conduct.

## C.  The FTC Has Satisfied its Meet and Confer Obligations

As you know, the FTC has gone to great lengths to resolve our discovery disputes without court involvement. The FTC sent you a letter last week outlining in detail MGI's deficiencies. Moreover, though not required by the local rules, we afforded you an opportunity to discuss those issues on our August 24 conference call. You scheduled a 90-minute conference call before the exchange of deficiency letters with no statement concerning what was to be discussed or any limitation of topics. Your attempts to unilaterally limit the discussion topics after the fact was improper and a transparent effort to delay the resolution of this dispute.

During our August 24 call, you requested a second call to discuss the issues outlined in the FTC's Letter. However, you further stated unequivocally that MGI would not produce additional documents regardless of the FTC's concerns. Given this representation, we believe that further discussion would be of limited value and only serve to delay. Nevertheless, we are willing to discuss these issues with you further. On the call, you stated that you were unavailable to discuss these issues except at Midnight CT this Friday; 8 a.m. CT this Saturday; and 5:30 p.m. next Monday. These times are unacceptable and do not represent a good-faith effort to schedule a call to address our concerns. We

3

are offering a broad availability of time to discuss these issues during normal business hours. Specifically, we would be available to discuss at a mutually agreeable time this Friday or next Monday. If you wish to discuss on these dates, please let us know times that you are available as soon as possible so that we can schedule this call.

Sincerely,

*/s/   Reid Tepfer*
Reid Tepfer
M. Hasan Aijaz
Sarah Zuckerman
John R. O'Gorman
Erica Rollins Hilliard
Jason C. Moon
Federal Trade Commission
Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201

4

# EXHIBIT 10

Zachary A. Keller                                                          *FOIA CONFIDENTIAL*
June 13, 2017

# INTERROGATORY RESPONSES

The following contains Match's responses to Interrogatories 13 and 15.  The language of the Interrogatories as listed below is reproduced from the CID, along with any additional limitations included in the May 3, 2017 FTC letter to Match ("Limitation Letter").

## Interrogatory #13

Describe the results of All internal research, report, data evaluation, third-party consultation, in-house presentation, or any other form of investigation Relating to:

    a.  Test Profiles;
    b.  How the Company uses Test Profiles;
    c.  Demographic information Relating to whom Test Profiles should contact; and
    d.  How to monetize the use of Test Profiles (for example, by attracting non-paying Customers to become paying Customers).

## Response to Interrogatory #13

The following Response is based on Match's definition of Test Profiles as described in the Response to Interrogatory 14 in Match's May 15, 2017 letter.  We acknowledge that Staff may be taking a broader view of the definition of Test Profiles which would include communications initiated by Match to one Customer regarding actions taken by another Customer who, at the time of Match's communication, is no longer an active Customer. As discussed during our meet and confer call on June 2, 2017, we are in the process of determining whether any records or other information pertaining to such communications exist, as Match does not knowingly initiate any such communications. We look forward to discussing this further with you following the completion of our inquiry and if necessary, will supplement this Response based on the outcome of those discussions.

Subject to the foregoing, our Response to Interrogatory # 13 is as follows:

As explained in Match's previous response to Interrogatory 14, Test Profiles are created solely for the purpose of testing the functionality and features of the Match.com platform.  It is also Match's policy and practice to not use any consumer-generated content in Test Profiles and that Test Profiles be kept "hidden" (*i.e.* cannot be found through a search on Match) when not actively testing.  Match strictly prohibits its employees from using Test Profiles to contact any Customers, regardless of the Customer's demographic group, and Match has no indication that any employee has used a Test Profile for such purposes.  Match does not use Test Profiles to attract non-paying Customers to become paying Customers, nor does Match make any other attempt to monetize the use of Test Profiles.  Please see the Response to Interrogatory 14 in Match's May 15, 2017 Production for an in-depth description of Match's current policies and procedures relating to Test Profiles.

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

## Interrogatory #15

Describe the company's notifications and other disclosures to Customers Relating to the following:

   a. Free trial offers;
   b. Guarantees, including;
        i. Notifications prior to the Company charging a Customer's account for a successive subscription when that Customer has attempted to comply with the Guarantees;
        ii. Notifications Relating to Customers' compliance status; and
        iii. Notifications Relating to upcoming compliance criteria.
   c. Renewal of service packages not related to free trial offers or Guarantees;
   d. Account cancellation;
   e. The consequences of bringing a Chargeback against the Company; and
   f. Use of Test Profiles, including:
        i. Disclosures made within the Test Profile itself;
        ii. Disclosures contained in communications made by the Test Profile; and
        iii. Any other form of disclosure or signal whereby Customers can distinguish Test Profiles from Customer profiles.

*Additional Limitation*: Match to describe only the Company's current disclosures.

## Response to Interrogatory #15 (current disclosures)

Match's previous response to Interrogatory 14 contains in-depth descriptions of Match's current policies and practices relating to free trial offers, guarantees, renewal of service packages not related to free trial offers or guarantees, account cancellation, consequences of chargebacks, and the use of Test Profiles. Summaries of Match's current notifications and other disclosures for the same are described below.

### a.   Disclosures Regarding Free Trial Offers

Match offers both three-day and seven-day free trial subscriptions, which allow members to try the service before determining whether they wish to continue using Match's paid features. To activate a free trial, members must have already created a Match.com account by registering with a valid email address and providing basic profile information, including gender, date of birth, and zip code. As demonstrated below, all material terms and conditions of these free trial offers are disclosed in full compliance with the Restore Online Shoppers' Confidence Act ("ROSCA") and all other applicable laws. Specifically, prior to activating a free trial, members are informed of (i) the length of the free trial, (ii) the fact that the free trial will automatically convert to the paid subscription selected if the consumer does not cancel before the expiration of the free trial period, (iii) when the free trial expires, and (iv) the amount the consumer will be charged if he or she does not cancel. These disclosures are presented to consumers multiple times before Match obtains consumers' billing information. After these multiple disclosures (which are then repeated to consumers after enrollment), Match obtains consumers' express informed consent to

2

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

enroll in the free trial.  Additionally, Match provides more than one easy method of cancelling enrollment in the free trial.

> *1. Disclosure of Material Terms and Conditions Before Payment Information is Obtained*

Most members who sign up for a free trial will first encounter a promotional page for Match's three or seven day free trials.  (See Figures 1 and 2 below).  The promo pages contain a text box that contains the terms of the free trial, with the following headings in all capital letters: "HOW TO REDEEM," "ELIGIBILITY," "BILLING UPON EXPIRATION," "HOW TO CANCEL THE TRIAL SUBSCRIPTION," and "TERMS OF MEMBERSHIP AND PRIVACY."  Under the first heading, the terms clearly state that "If you do not cancel your subscription before the end of the Trial Subscription period, you will be billed for the subscription package to Match.com that you selected during the Trial Subscription registration process." (See Figure 1 below).  Under the heading clearly and conspicuously labeled "BILLING UPON EXPIRATION," the terms *again* state that "Upon the completion of your Trial Subscription period, you will be automatically billed for a Match.com subscription for the term and rate you selected when you signed up for your Trial Subscription unless you cancel your subscription (see "How To Cancel" below). Thereafter, until you terminate your subscription, your subscription will be automatically renewed at the conclusion of each subscription term at the same subscription rate you initially selected."

The full terms of the promo page text box for the three and seven day free trials may be found at **Bates Nos. MATCHFTC000030-MATCHFTC000031 and MATCHFTC000307** respectively. In addition to these prominently displayed free trial terms, the promotional pages contain a link to the Match.com Terms of Use, which is available at **Bates Nos. MATCHFTC000227-MATCHFTC000231**.

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017



**Figure 1:** Excerpt from 7-day Free Trial promo page (See **Bates No. MATCHFTC000302**)

4

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017



**Figure 2:** Excerpt from 3-day Free Trial Promo page (See **Bates No. MATCHFTC000293**)

Members who are interested in a free trial subscription then must select the Match subscription package in which they would like to enroll, should they wish to continue their use of Match.com beyond the length of the free trial.

Members are presented with the following information at the time of selection: the then-current Match rate card, which discloses the features of the available subscription packages, including a detailed list of the features available under each plan; disclosure of the pricing for each plan; and prominent notice that their subscriptions will automatically renew beyond the free trial period (which is the first of multiple notices of this fact during the sign up process). Specifically, at the top right of the rate card, and below a bold title reading "Billing-Continuous Service," Match clearly and conspicuously discloses that "All subscriptions automatically renew until cancelled." (See Figure 3 below).  Immediately below that disclosure is a hyperlink consisting of the words "Learn More" highlighted in bolded, blue text that leads to "Billing – Continuous Service" details. (See Figure 4 below).

5

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017



**Figure 3:** Excerpt of free trial rate card.  (See **Bates No. MATCHFTC000294**)

6

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

## match

# Billing – Continuous Service

All amounts are billed in U.S. dollars at the beginning of each billing period and will appear on your card or account statement as "www.Match.com". You also authorize Match.com to charge you for any sales or similar taxes that may be imposed on your subscription payments. To change or cancel your subscription at any time, click the "Account" link on the upper-right corner of the website and follow the directions. You can also change or cancel your subscription by contacting our Customer Care team as directed on the website. If you cancel or change your subscription, we require a reasonable amount of time to process the action. If you cancel, you'll enjoy subscription benefits until the end of your then-current subscription commitment; then your subscription benefits will expire. However, you will not be eligible for a prorated refund of any portion of the subscription fees paid for the then-current subscription commitment. Please print a copy of this page and the subscription page for your records.

**Figure 4:** "Learn More" rate card hyperlink provides clear information on Match's continuous service billing feature, which allows subscribers to auto-renew their subscriptions.  The auto-renewal disclosure also details how subscribers can change or cancel their subscriptions; provides notice to consumers that, if they cancel, they will enjoy their subscription benefits until the end of their subscription term; and plainly discloses Match's refund policy as it relates to account cancelations. (See **Bates No. MATCHFTC000239**)

In addition, unlike many of the free trial offers that have been the subject of FTC enforcement action, the monthly price for each of the plans is prominently presented on the rate card. Thus, consumers viewing the free trial offer see the following all within visual proximity to each other: the number of days that the free trial is in effect, an express disclosure that the subscription service automatically continues unless canceled, and the monthly price that is in effect after the free trial period. We respectfully submit that based on this rate card alone, it is clear to the consumer that the free trial is for a very limited period, that the subscription automatically continues unless canceled, and the exact amount that the consumer will pay monthly after the free trial period ends. The prominence of this disclosure is evidenced by the extraordinarily high rate of cancellation (i.e. 86%) during the free trial period.

7

Zachary A. Keller                                                              *FOIA CONFIDENTIAL*
June 13, 2017

To activate their subscriptions, members must also provide a method of payment and valid billing information for the subscription service selected. During the subscription selection process, before members provide their billing information and as demonstrated below, Match clearly discloses to members immediately below the statement in blue font reading "Enter your information below to Get 3 Days Free!" and immediately above the credit card entry form, the amount that their credit card will be billed if they do not cancel within the free trial period at the top of the payment information page. The disclosure states:  "You will be billed $119.94 if you do not cancel within the trial period."



**Figure 5:** Excerpt from Payment Info page. (See **Bates No. MATCHFTC000296**)

The billing page contains a second notice in a clearly and conspicuously disclosed box on the upper-right portion of the billing page. The box is shaded grey to draw attention to the notice contained therein, and is titled in all capital letters: "REVIEW YOUR SUBSCRIPTION." The notice plainly states the number of days that the consumers will receive free, and clearly provides notice of the amount they will be billed after the free trial period. For example, see in Figure 5: "You will be billed $119.94 for a 6-month subscription after your 72 free hours."

### 2. Express Informed Consent

Immediately below the payment information fields and above the "Subscribe Now" button, Match *again* notifies members that they will be charged if they do not cancel before the end of the free trial period and provides the method for cancellation. The disclosure states: "Unless you cancel via the Account Setting page before your free trial ends, your subscription will

8

APP 173

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

automatically renew with the price and package you selected. By pressing the "Subscribe Now" button, you authorize us to charge your card after the free trial period and upon each renewal." (See Figure 5, above).

Immediately following this disclosure, Match also provides a hyperlink labeled "Learn More" highlighted in bolded, blue text. Members can click on this hyperlink to read more detailed information on Match's continuous billing / auto-renewal policy. (See Figures 4 and 5, above). Immediately below that is a hyperlink to the Match Terms of Use, which is also highlighted in bolded, blue text.

The "Subscribe Now" button unambiguously communicates to consumers that they are providing express consent to be enrolled in the free trial. Further, the consumer's consent is unquestionably *informed* because Match has clearly and conspicuously communicated to the consumer, immediately above the "Subscribe Now" button, and multiple other times on this page and on the preceding page of the enrollment flow, the terms and conditions of the free trial offer.

Members who successfully sign up for a free trial are taken to a confirmation page. The confirmation page clearly states the transaction date and the date through which the free trial subscription is valid, for avoidance of doubt.

The confirmation page once again notifies the consumer (now, a "subscriber") that their credit card will be charged a specified amount at the end of the subscriber's 3- or 7-day free trial period. The confirmation page discloses that the credit card will be charged that same amount at the beginning of each renewal period until the subscriber cancels the subscription, directs the subscriber to more information available in the Match.com Terms of Use, and provides a hyperlink to the Match.com Account Setting subpage, where subscribers may easily cancel their subscription.

9

Zachary A. Keller                                              *FOIA CONFIDENTIAL*
June 13, 2017



**Figure 6:** Free Trial confirmation page.  (See **Bates No. MATCHFTC000297**)

Subscribers are provided this same information by email. (*See* **Bates No. MATCHFTC000084-MATCHFTC000086**).

### 3. Easy Method of Cancellation

Free trial subscribers may cancel their free trial subscriptions at any time before the end of the free trial period, without incurring any costs. Match provides subscribers with several, easy-to-use mechanisms for cancelation: subscribers can cancel their accounts by contacting Match customer service directly by phone, email, chat, or writing to Match's physical address.

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

Subscribers can also cancel their accounts online by visiting "Account Settings" on Match.com, clicking on "Change/Cancel Membership," and following the instructions provided.  This easy to follow cancellation process is outlined in more detail below. For further information concerning account cancellations, we refer you to Match' response to Interrogatory 15(d). As you review, the customer cancellation flow below, it is important to note that for the years 2013 through 2017, approximately 86 percent of Customers who accepted the free trial offer canceled their subscription during the free trial term and were not automatically renewed to a paid subscription. This is compelling evidence that consumers fully understand the terms and conditions of the free trial offer, including the obligation to cancel prior to the expiration of the free trial period to avoid charges, and that the cancellation mechanism is simple and easy to use.  (See May 30 Responses to Interrogatory 7, at 4)

Match discloses to consumers the easy-to-use mechanisms for cancelling their accounts multiple times, at each step throughout the registration process.

11

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017



**Figure 7:** Match 7-Day Free Trial Promo with red outline added for reference. (See **Bates No. MATCHFTC000302**)

HOW TO CANCEL THE TRIAL SUBSCRIPTION. In order to avoid a subscription charge following completion of your Trial Subscription, you must cancel your Trial Subscription prior to its conclusion (that is, before the end of the trial 72-hour period) by logging into www.match.com, selecting Account Settings, clicking on "Change/Cancel Membership" and following the instructions. If you cancel your Trial Subscription, your access to the Basic Features will be terminated immediately.

**Figure 8:** Excerpt from Match 3-Day Free Trial Terms of Use. (See **Bates No. MATCHFTC000030**)

12

Zachary A. Keller                                              *FOIA CONFIDENTIAL*
June 13, 2017

On the promo pages for Match's three-day and seven-day free trials—before consumers even log in—Match discloses the free trial Terms of Use, which describe the easy-to-use methods of cancellation. (See Figures 7 and 8 above).

On the subscription selection page—before consumers select any plan or provide any billing information—consumers have access to the "Billing – Continuous Service" screen which clearly states: "To change or cancel your subscription at any time, click the "Account" link on the upper-right corner of the website and follow the directions.  You can also change or cancel your subscription by contacting our Customer Care team as directed on the website." (See Figure 9).



**Figure 9:** Relevant excerpts from Figures 1 and 2.  (See **Bates Nos. MATCHFTC000239 & MATCHFTC000294**, respectively)

13

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

Match informs consumers of the cancellation mechanisms again on the billing page with a disclosure above the "Subscribe Now" button.  The disclosure states again that consumers can "cancel via the Account Settings page before your free trial ends[.]" (See Figure 10 below).  Also above the "Subscribe Now" button is a hyperlink with the words "Learn More" in bolded, blue text that again leads to the "Billing – Continuous Service" screen that describes the cancellation methods in greater detail.  (See Figure 10 below).



**Figure 10:** Excerpt from Payment Info page with red highlight.

Immediately to the left of the "Subscribe Now" button is a hyperlink to Match's Terms of Use in bolded, blue text.  (See Figure 10).  The Terms of Use also disclose the easy-to-use cancellation methods to consumers: "You may change or cancel your membership at any time, for any reason, by following the instructions on the "change/ cancel membership" or similar page on your "Account Settings" page.  You may change or cancel your subscription at any time online by following the instructions on the "Subscription" page on your "Account Settings" page.  You may also cancel your membership by sending the Company written notice of cancellation to Match.com, P.O. Box 25472, Dallas, Texas 75225 or by email notice of cancellation to Customer Care." (See Figure 11).  The words "Customer Care" are a hyperlink that leads consumers to the Customer Care page.

14

Zachary A. Keller                                        *FOIA CONFIDENTIAL*
June 13, 2017

4. **Term and Termination.**

   a. This Agreement will remain in full force and effect while you use the Service and/or are a Member.

   b. You may change or cancel your membership at any time, for any reason, by following the instructions on the "change/ cancel membership" or similar page on your "Account Settings" page. You may change or cancel your subscription at any time online by following the instructions on the "Subscription" page on your "Account Settings" page. You may also cancel your membership by sending the Company written notice of cancellation to Match.com, P.O. Box 25472, Dallas, Texas 75225 or by email notice of cancellation to Customer Care. If you cancel your membership via the Website, we may ask you to provide a reason for your cancellation. If you cancel your subscription, the Company requires a reasonable amount of time to process the action. If you cancel a subscription, you will enjoy subscription benefits until the end of your then-current subscription commitment, following which your subscription benefits will expire. However, in no event will you be eligible for a refund of any portion of the subscription fees paid for the then-current subscription commitment. If you paid for your subscription using a multi-payment option, you must make all payments even if you cancel your subscription prior to the end of your then existing subscription commitment period.

**Figure 11**: Excerpt of Match Terms of Use Agreement.  (See **Bates No. MATCHFTC000227**)

The confirmation page once again discloses to the consumer (now, a "subscriber") the easy-to-use methods of cancellation. The confirmation page clearly discloses: "To cancel, you may visit your Account Settings at any time."  The words "Account Settings" are a hyperlink in bolded, blue text that lead consumers to the Account Settings page for easy cancellation.  (See Figure 6). The confirmation page also directs the subscriber to more information available in the Match.com Terms of Use, which again list the multiple easy-to-use methods of cancellation. (See Figures 6 and 11). Subscribers are provided this same information by email. (See **Bates No. MATCHFTC000084-MATCHFTC000086).**

In addition to the numerous disclosures throughout the registration process, consumers may also find information on how to cancel a free trial by visiting the Match Frequently Asked Questions page, and either clicking "Canceling a Free Trial" under "Most Popular Questions" or searching for terms related to account Cancellation. (See Figure 12).  The FAQ page clearly states how consumers can cancel their accounts and provides a hyperlink in bolded, blue text that leads to the Change/Cancel Membership Page.

## Canceling a Free Trial

If you currently have a free trial and you want to make sure you're not charged at the end of the trial period, you'll need to resign your subscription. To do this, please visit the Change/Cancel Membership page under your Account Settings (the gear icon).

For your security, you'll need to re-enter your password as part of this process. Then follow the directions to resign your trial subscription. This process includes several steps, so make sure you fully complete the process before exiting the site.

Keep in mind that resigning a free trial will immediately end your subscription benefits. If you want to turn your free trial back on after you've resigned it, you can do so at the same Change/Cancel Membership page linked above, as long as your trial period hasn't ended yet. Please note that you'll also be turning the auto-renewal back on, so you will be charged at the end of the trial period.

**Was this answer helpful?**



**Figure 12:** Canceling a Free Trial FAQ page. (See **Bates No. MATCHFTC000304**)

15

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

**b.   Disclosures Regarding Guarantees**

Match has posted a clear, concise, and user-friendly statement of its Guarantee Rules and makes
those Rules available to the public at http://www.match.com/guarantee/rules.aspx (see **Bates No.
MATCHFTC000090**). A hyperlink to the Guarantee rules page is available at the bottom of the
main page and each subsequent page as subscribers navigate through the Match services in
bolded, green text.  (See Figure 13).



**Figure 13:** Excerpt of Match.com page (See, *e.g.*, **Bates No. MATCHFTC000080**).

Additionally, consumers can access the Guarantee Rules page at any of the purchase screens by
hovering over the Match Guarantee logo and clicking the "Learn More" hyperlink. (See Figure
14)



**Figure 14:** Excerpt of Match purchase screen. (See **Bates No. MATCHFTC000089**)

16

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

At the top of the Guarantee Rules page, Match provides subscribers with a brief summary of the Rules, clearly stating that subscribers must sign up for a Guarantee-eligible subscription and take certain actions to be eligible for the Guarantee. (See Figure 15).



**Figure 15:** Match.com Guarantee Rules summary. (See **Bates No. MATCHFTC000089)**

The high-level summary of the Guarantee Rules is then followed by a detailed description of the Rules. (See Figure 16). In the detailed description, Match clearly lays out each of the Guarantee's requirements and terms. Match further calls attention to the primary actions that each subscriber must take to become eligible for the Guarantee by using a bolded font.

17

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

**I Met Someone GUARANTEE (formerly "Make Love Happen Guarantee") Program Rules**

We know you'll meet tons of great people during your 6-month subscription with us. But, if you don't find someone special during that time, we'll give you an ADDITIONAL 6 months to continue your search. Check out the rules below, then get out there and start connecting today!

- Under the I Met Someone GUARANTEE Program, (the "Guarantee Program" or the "Program") if you don't find someone special during a qualifying six-month paid subscription to the Match.com service, we'll give you an additional six-month subscription (the "Guarantee Extension") to the Match.com service at no additional expense. See Match.com Terms of Use for details regarding the Match.com service and use of the Match.com website.

- The Guarantee Program is available for a limited time only, and open to anyone not currently participating in the Program. Additionally, to be eligible for the Program and the Guarantee Extension, you must:

- (1) Comply at all times with the Match.com Terms of Use. By using the Match.com website and participating in the Program, you agree to be bound by the Match.com Terms of Use.

- (2) Pay in full the applicable rate for a **six-month subscription** to the Match.com service (the "Guarantee Program Subscription"). The Guarantee Program Subscription consists of five consecutive 30-day periods followed by a final period of 33 days, all of which are referred to as a "Month" in these Program rules. If you are enjoying the benefits of a free trial of the Match.com service, your Guarantee Program Subscription will not begin until your free trial period ends.

- (3) Use your Guarantee Program Subscription to **create a profile with a primary photo**. Your profile and primary photo must be approved by Match.com within the first seven days of your Guarantee Program Subscription in order for you to be eligible for the Guarantee Program. Details on approval of profile and primary photo available at FAQ and How It Works.

- (4) **Keep your profile with primary photo visible at all times** during your Guarantee Program Subscription.

- (5) **Communicate** during your Guarantee Program Subscription with other Match.com subscribers with whom you have not previously communicated during your Guarantee Program Subscription ("Unique Match.com Subscribers").

- (6) Send a "**Qualifying Email**" to a minimum of five other **Unique Match.com Subscribers each Month during your Guarantee Program Subscription.** A "Qualifying Email" may be either one you send to a Unique Match.com Subscriber who has not yet emailed you or an email response you send to a Unique Match.com Subscriber who has emailed you. A "Qualifying Email" must be an email sent through the Match.com service and does not include any other method of communicating (such as Match.com winks, MatchPhone™, Match.com Instant Messaging or emails sent outside of the Match.com system).

**Figure 16:** Match.com Guarantee Rules detail. (See **Bates Nos. MATCHFTC000089-MATCHFTC00090)**

If subscribers have any questions about the Guarantee Rules, they can visit Match's FAQs on the Guarantee (available at http://match.com/help/faq) or contact customer service by phone, email, or chat.[1]

---

[1] Under the terms of the Guarantee, Match reserves the right to modify its Terms of Use and the Guarantee program at any time.  The changes become effective upon posting on the Match.com website.  Continued use of Match.com and initial or continued participation in the Guarantee program after such posting constitutes acceptance of the changes.  Match also reserves the right to modify, suspend, or cancel the Guarantee program at any time and without any notice.  Although Match reserves these rights, the terms of the Guarantee have not changed during the time period relevant to the CID (January 1, 2013 through the present).

Zachary A. Keller                                              *FOIA CONFIDENTIAL*
June 13, 2017

Results for: "guarantee"

> Match Guarantee for In-App Purchases          > Guarantee - Why there are requirements

> Guarantee - How it works                      > Private Mode – Current Subscription with Guarantee

> Guarantee - Redeeming your free time          > Private Mode - Explained

> Guarantee - Tracking your progress

[Return to FAQ Home]

**Figure 17:** Search results for "guarantee" on Match FAQ. (See **Bates No. MATCHFTC000308**).

To assist subscribers in tracking their progress toward the Guarantee, Match has designed a webpage specifically dedicated to displaying subscribers' status toward meeting the Guarantee requirements: the "Progress Page." Subscribers may track their Guarantee progress at all times during their six-month Guarantee-eligible subscription by visiting their account's "Progress Page" (see **Bates No. MATCHFTC000091**).

19

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017



**Figure 18:** Match Guarantee Progress Page (See **Bates No. MATCHFTC000091**)

Match has designed the Guarantee to be easily redeemable directly on the Match platform
through the Progress Page. During the last seven days of the Guarantee-eligible subscription
period, when subscribers visit the Progress Page, they are prompted to indicate whether or not
they have met someone. If they have not met someone, subscribers can directly affirm that fact
on the Progress Page.  If they have taken all of the Guarantee-required actions and have affirmed
that they have not met someone during the Guarantee-eligible subscription period, Match will

APP 185

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

automatically provide the subscriber with complimentary access to Match.com for the following six-month period subscription.

Subscribers may also contact Match customer service directly during the last seven days of the Guarantee-eligible subscription period to redeem the Guarantee.

### c.  Renewal of Service Packages

Consumers may sign up for paid subscriptions online through the Match website or through the Match mobile applications. Through both options, prior to registration consumers are presented with the then-current rate card, which displays the subscription options. (See **Bates Nos. MATCHFTC000052 and MATCHFTC000053**).  The rate card shows both "Basic" and "Bundle" plans; they differ in that the Basic plans do not include certain features available through the Bundle plans such as email read notifications, first impressions, and a highlighted profile. The rate card displays subscriptions by length of subscription term: 12 months, 6 months, 3 months, or 1 month (basic plan only). For each subscription term, the rate card prominently displays the price per month and the percentage savings a consumer can receive if they select a multiple-month bundle instead of the full monthly price of the shortest term package with analogous features.

> *1.  Disclosure of Material Terms and Conditions Before Billing Information is Obtained*

At the top right of the rate card page, in bold text and before Match obtains the consumers' billing information, Match notifies consumers that its subscriptions will automatically renew until cancelled.  Specifically, under the heading "Billing-Continuous Service" Match clearly and conspicuously states "All subscriptions automatically review until cancelled."  The blue "Learn More" link takes consumers to the same Billing-Continuous Service hyperlink. (See Figure 19).

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017



**Figure 19:** Current rate card showing basic and bundle plans. (See **Bates No. MATCHFTC000052**)

Once a subscription package is selected, consumers are taken to the billing page, where they can enter payment information. (See **Bates No. MATCHFTC000054**.)

22

Zachary A. Keller                                              *FOIA CONFIDENTIAL*
June 13, 2017



**Figure 20:** Excerpt of billing page. (See **Bates No. MATCHFTC000054**)

To the top right of the billing fields, again before Match obtains the consumer's billing information, Match calculates the total amount due, based on the subscription package selected. For example, if, on the rate card page, a consumer selects a six-month package at $19.99 per month, on the billing page, Match calculates the total six-month cost: $119.94. Immediately below the calculation, Match repeats the length of the subscription selected and the amount at which the subscription will renew until the consumer cancels. For example, for the six-month $19.99-per-month package, the billing page states: "*Your 6-month subscription will renew at $119.94 until you cancel.*" (See **Bates No. MATCHFTC000054**).

## 2. *Express Informed Consent*

Immediately below the billing information fields and above the "Subscribe Now" button, Match again notifies consumers of the fact that the subscriptions will automatically renew until cancelled, stating: "*Your subscription will automatically renew for the same price and package length until you cancel via your Account Settings page. By pressing the 'Subscribe Now' button, you authorize us to charge your card now and upon each renewal.*" Immediately thereafter, Match provides a hyperlink labeled "Learn More" highlighted in blue text, which hyperlinks to the complete set of terms related to the automatic renewal policy (see **Bates No. MATCHFTC000054**).

23

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

As with the free trial offer, the "Subscribe Now" button unambiguously communicates to consumers that they are providing express consent to be enrolled in the automatic renewal plan. Further, the consumer's consent is unquestionably ***informed*** because Match has clearly and conspicuously communicated to the consumer, immediately above the "Subscribe Now" button and multiple other times on this page and on the prior page of the enrollment flow, the terms and conditions of the automatic renewal offer.

### 3. *Easy Method of Cancellation*

As described in more detail below, in Match's response to Interrogatory 15(d) regarding Account Cancellation, subscribers can cancel enrollment in an automatically renewing subscription by following the instructions on the "change / cancel" membership" page within "Account Settings."  Subscribers may also cancel by calling or emailing Match customer service or sending written notice of cancellation to Match's physical address. These methods of cancellation are disclosed to the consumer multiple times, at each step of the registration process.

First, the subscription selection page provides consumers access to the "Billing – Continuous Service" with the "Learn More" hyperlink under the bolded "Billing – Continuous Service" text box.  That page states: "To change or cancel your subscription at any time, click the "Account" link on the upper-right corner of the website and follow the directions.  You can also change or cancel your subscription by contacting our Customer Care team as directed on the website." (See Figure 21).

24

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017



**Figure 21:** Excerpts from Figures 4 and 19 with red highlights.

Second, Match informs consumers of the cancellation mechanisms again on the billing page with a disclosure above the "Subscribe Now" button.  The disclosure states again that the consumers' subscriptions will automatically renew and that consumers can "cancel via your Account Settings page [.]" (See Figure 22 below).  Also above the "Subscribe Now" button is a hyperlink with the words "Learn More" in bolded, blue text that again leads to the "Billing – Continuous Service" screen that describes the cancellation methods in detail.  (See Figure 22 below).

25

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017



**Figure 22:** Excerpt of billing page with red squares for emphasis. (See **Bates No. MATCHFTC000054**)

Immediately to the left of the "Subscribe Now" button is a hyperlink to Match's Terms of Use in bolded, blue text.  (See Figure 22).  The Terms of Use also disclose the easy-to-use cancellation methods to the consumers: "You may change or cancel your membership at any time, for any reason, by following the instructions on the "change/ cancel membership" or similar page on your "Account Settings" page.  You may change or cancel your subscription at any time online by following the instructions on the "Subscription" page on your "Account Settings" page.  You may also cancel your membership by sending the Company written notice of cancellation to Match.com, P.O. Box 25472, Dallas, Texas 75225 or by email notice of cancellation to Customer Care." (See Figure 23).  The words "Customer Care" are a hyperlink that lead consumers to the Customer Care page.

4.   **Term and Termination.**

a.   This Agreement will remain in full force and effect while you use the Service and/or are a Member.

b.   You may change or cancel your membership at any time, for any reason, by following the instructions on the "change/ cancel membership" or similar page on your "Account Settings" page. You may change or cancel your subscription at any time online by following the instructions on the "Subscription" page on your "Account Settings" page. You may also cancel your membership by sending the Company written notice of cancellation to Match.com, P.O. Box 25472, Dallas, Texas 75225 or by email notice of cancellation to Customer Care. If you cancel your membership via the Website, we may ask you to provide a reason for your cancellation. If you cancel your subscription, the Company requires a reasonable amount of time to process the action. If you cancel a subscription, you will enjoy subscription benefits until the end of your then-current subscription commitment, following which your subscription benefits will expire. However, in no event will you be eligible for a refund of any portion of the subscription fees paid for the then-current subscription commitment. If you paid for your subscription using a multi-payment option, you must make all payments even if you cancel your subscription prior to the end of your then existing subscription commitment period.

**Figure 23**: Excerpt of Match Terms of Use Agreement.  (See **Bates No. MATCHFTC000227**)

The confirmation page once again discloses to the consumer (now, a "subscriber") the easy-to-use methods of cancellation. The confirmation page clearly discloses: "To cancel, you may visit your Account Settings at any time."  The words "Account Settings" are a hyperlink in bolded,

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

blue text that lead consumers to the Account Settings page for easy cancellation.  (See
**MATCHFTC000084**).  The confirmation page also directs the subscriber to more information
available in the Match.com Terms of Use, which again list the multiple easy-to-use methods of
cancellation. (See Figures 6 and 23). Subscribers are provided this same information by email.
(See **Bates No. MATCHFTC000084-MATCHFTC000086).**

### d.   Account Cancellation

In support of its continuous efforts to provide a positive subscriber experience, Match offers
several convenient and flexible means by which subscribers may cancel their subscriptions.
Subscribers may unilaterally cancel their Match subscriptions by visiting the "Account Settings"
page on the Match website. Subscribers may also cancel their subscriptions by contacting
customer service by voice, email, or online chat, or by writing to Match.com's physical address.

Match subscribers may cancel their subscriptions at any time. Match confirms all cancellations
via email. In addition, subscribers who cancel online are also taken to a confirmation of
cancellation screen, once the cancellation has been processed.

*1. Online Cancellation*

To unilaterally cancel an account online, subscribers first visit "Account Settings" and then click
on "Change/Cancel Membership" or the "Subscriptions" subpage. (See Figure 24 below). To
confirm the subscriber's identity and choice, subscribers are prompted to insert their username
and password before making changes to or cancelling an account. Subscribers are then taken
through a brief online flow, ending at the subscription cancellation confirmation page. (See
**Bates No. MATCHFTC000299**).

27

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

Clicking Account Settings opens the following page:



Clicking Subscription Status opens:



**Figure 24:** Excerpts of the Account Settings and Subscription Status pages. (See **Bates No. MATCHFTC000298**)

28

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017



**Change/Cancel Membership**

The information you are about to view is private. To continue, please enter your password.

Password  ●●●●●●●●

Forgot My Password

Back to MyMatch.com    Continue Cancellation

Choose one of the options below to continue.

Subscription Status

Check or change your subscription info here. Update your credit card and billing info. Or, just see how much time you have left on your subscription.

Cancel Free Trial

Cancel your Free Trial with Match.com here. You can still look as much as you'd like but your access to the basic subscription features will end immediately, including:

- Sending & receiving email
- Seeing who's viewed you
- Mobile email access

Back to MyMatch.com

**Figure 25:** Accessing online cancellation feature. (See **Bates No. MATCHFTC000299**)

29

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*

June 13, 2017

## Your subscription has been cancelled.

Your confirmation number is **Member2017120172013570**.

You do not have to do anything further to complete your subscription cancellation.

The last day of your subscription will be 2/20/2016. Use your last 30 days to contact any new members on Match.com. You never know when you're going to find the one!

You will receive an email confirming your cancellation and containing pertinent information soon.

Reactivate my subscription   Hide profile / deactivate my account

**Figure 26:** Confirmation of cancellation. (See **Bates No. MATCHFTC000292**)

The subscription cancellation confirmation page provides the subscriber with a cancellation confirmation number. It also states the last day of the subscriber's subscription, for the alleviation of doubt. After the cancellation has been processed, Match generates an automated email, also confirming the cancellation and containing pertinent information. (See **Bates No. MATCHFTC000291**).

As described above in Match's responses to Interrogatories 15(a) regarding free trials and 15(c) regarding renewal of services packages, Match discloses its easy-to-use cancellation methods multiple times throughout the registration process.  (See pages 2-15 and 21-27 respectively). Match provides disclosures of how to cancel an account on the first page of the registration process, on the billing page before the consumer subscribes, and again once the consumer has subscribed.  Additionally, the various easy-to-use methods of cancellation are described in detail in Match's Terms of Use Agreement, which is available via hyperlinks on the registration pages, as well as the Main Page and subsequent pages as consumers navigate through Match.com. In addition to the numerous disclosures throughout the Match.com pages, subscribers may also find information on how to cancel an account by visiting the Match Frequently Asked Questions page, and either clicking "Canceling a Membership" under "Most Popular Questions" or searching for terms related to account Cancellation.

30

Zachary A. Keller
June 13, 2017                                                        *FOIA CONFIDENTIAL*

### Canceling a Membership

#### Canceling

If you don't have a paid subscription or have turned off your auto-renewal, you can cancel your membership by visiting the Change/Cancel Membership page in your Account Settings (the gear icon). If you cancel your membership, we immediately hide your profile and photos from other members. Should you wish to rejoin the Match community, all you have to do is sign in and reactivate your account.

#### Deleting

If, for example, you've found a great match and want to make sure your profile information is taken down from our site completely, you can accomplish this by following the directions above to cancel your account. Your information is stored in our database for historical and legal purposes only.

**Was this answer helpful?**



**Figure 27:** Match FAQ "Canceling a Membership." (See **Bates No. MATCHFTC000303**)

Finally, due to Match's popularity, consumers can easily find out how to change or cancel their subscriptions with a quick Google search using terms as simple as "match cancel." (See Figure 28 below).

31

Zachary A. Keller                                              *FOIA CONFIDENTIAL*
June 13, 2017



**Figure 28:** Google search for "match cancel"

<u>**e.**</u>   <u>**Chargebacks**</u>

Paragraph 12(a) of the current Match.com Terms of Use Agreement clearly states to the
Customer: "If you initiate a chargeback or otherwise reverse a payment made with your Payment

32

Zachary A. Keller                                                    *FOIA CONFIDENTIAL*
June 13, 2017

Method, the Company may in its discretion terminate your account immediately.  If the Company successfully disputes the reversal, and the reversed funds are returned, you are not entitled to a refund or to have your account or subscription reinstated." (See **Bates No. MATCHFTC000227-MATCHFTC000231**).

Note that, for Match iOS app subscribers, the chargeback and refund policy is governed by the Apple App store terms and conditions and the above-described chargeback policy does not apply. The Apple App store terms and conditions are available at https://www.apple.com/legal/internet-services/itunes/us/terms.html ("Apple Media Service Terms and Conditions").

### f.  Test Profiles

Match makes use of Test Profiles in the course of its business operations. As described in Section 15 of Match's Terms of Use Agreement, Match discloses to consumers that, from time to time Match "may create test dating profiles for the purpose of testing the functionality of our Service and website processes to improve service quality for our Members."  Thus, Match discloses to consumers that it may use Test Profiles for the stated purposes.

These are unequivocally the only purposes for which Match authorizes the creation or maintenance of Test Profiles on the Match.com platform. As such, Match does not, and need not, make any additional disclosures to consumers regarding Test Profiles other than as stated above.

# EXHIBIT 11

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                    Plaintiff,<br><br>    vs.<br><br>MATCH GROUP, INC., a corporation,<br><br>                    Defendant. | Case No. 3:19-cv-02281-K |

**DEFENDANT MATCH GROUP, INC.'S RESPONSES AND OBJECTIONS TO**
**PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF REQUESTS FOR**
**PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules"), Defendant Match Group, Inc. ("Match"), by and through its undersigned counsel, objects and responds to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") First Request for Production of Documents (each a "Request" and, collectively, the "Requests") as follows:

**I.      GENERAL OBJECTIONS**

1.      <u>ESI Protocol</u>.  Match objects to each and every Request pending the parties' negotiation of an agreed upon ESI Protocol outlining proper discovery production protocols for this case.  Match will work with Plaintiff to develop an ESI Protocol prior to the production of any documents or information.

2.      <u>Lack of Confidentiality or Protective Order</u>.  Match objects to each and every Request to the extent that the Request seeks confidential, trade secret, and proprietary information, without the protection of an enforceable protective order.  Match will not produce any documents or provide any information in response to the Requests until it can ensure the protection of its confidential information and trade secrets.  Match will confer with Plaintiff in an effort to reach

an agreement regarding the terms of a protective order.  If an agreement cannot be reached, Match will move for a protective order.  Any responses to these Requests that are provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

3.  Irrelevant.  Match objects to each and every Request to the extent that it purports to seek information that is irrelevant to Plaintiff's claims or Match's defenses and is not proportional to the needs of the case.  In particular, Match objects to each and every Request to the extent that it seeks information about the FTC's claims that were dismissed with prejudice in the Court's March 24, 2022 Order on Match's Motion to Dismiss (the "Dismissed Claims").[1] Match further objects to each and every Request to the extent that it seeks documents or information from an entity not yet named in the operative Complaint, including, but not limited to, Match Group, LLC, or about a website or dating app not relevant to the live Complaint, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

4.  Undue Burden.  Match objects to each and every Request to the extent that it seeks to impose obligations beyond what is required under the Rules or is unduly burdensome. Accordingly, Match objects to each and every Request where the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

5.  Overbroad. Match objects to each and every Request to the extent that it seeks information that is beyond the scope of Plaintiff's claims in the Complaint, including, but not limited to, documents and information related to Plaintiff's Dismissed Claims, and documents and

---

[1] ECF No. 86 (dismissing Counts I & II of FTC's complaint, filed on September 25, 2019 at ECF No. 1 (the "Complaint"), due to Match's affirmative defense of CDA § 230 immunity).

MATCH'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS 2

information related to entities and/or dating sites that are not party to, or otherwise related to, this litigation, such as OKCupid, Plenty of Fish, and Tinder.  Match further objects to each and every Request to the extent that it seeks documents and information that are not within Match's possession, custody, or control, including by seeking documents and information from and related to entities that are not named as parties to this litigation.

6.    Privilege.  Match objects to each and every Request to the extent it seeks documents that are or information that is subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all communications with, or work product of, any outside attorney) (collectively, "Privileged Information").  Any inadvertent disclosure of Privileged Information by Match shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

7.    Vagueness and Ambiguity.  Match objects to each and every Request to the extent that such Request is so vague, ambiguous, or confusing as not to be susceptible to a reasoned interpretation or response.  In the absence of clear instructions or definitions associated with terms that are too vague, ambiguous, or confusing, Match will give the terms used in the Request a reasonable interpretation.

8.    Accessibility.  Match objects to each and every Request to the extent that it seeks information that is not reasonably accessible in the ordinary course of business.

9.    Cumulative Requests and Availability of Information Elsewhere.  Match objects to each and every Request that is cumulative, duplicative of, or to which documents or information already are in the possession, custody, or control of Plaintiff, or have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive.  In particular, Match objects to each and every Request insofar as it seeks

documents or information already obtained by Plaintiff during the FTC's prior investigation in connection with the Civil Investigative Demand served on Match in 2017 (the "2017 CID").  In connection with the 2017 CID, Match produced over 225,000 documents that spanned a date range of 2013 to 2018.  Such prior productions and the massive volume of documents produced therein should be sufficient to provide the FTC with the information it requires.

10.    <u>Lack of Possession, Custody, or Control</u>.  Match objects to each Request to the extent it does not appear to be addressed to Match and seeks documents that are necessarily outside Match's possession, custody, or control.

11.    <u>Legal Conclusions</u>.  Match objects to each and every Request to the extent that it requires Match to draw legal conclusions.

12.    <u>Reservation of Right to Supplement</u>.  Given the stage of the litigation, Match has not completed its investigation of the facts or law relating to this action, and discovery in this matter is ongoing.  Accordingly, consistent with the Rules, these responses and objections are made without prejudice to, and are not a waiver of, Match's right to amend, correct, or supplement these responses, and are subject to Match's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist.  Match provides these responses in good faith after a reasonable inquiry and based on information that it knows or can readily obtain.

13.    <u>No Waiver</u>.  By responding to these Requests, Match does not concede the relevancy of a Request nor the relevancy or admissibility of any information provided in response thereto.  The fact that information is provided in response to a particular Request does not mean that it is probative of any particular issue in this case.  Match expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of

this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, privilege, confidentiality, hearsay, or admissibility as evidence for any other purpose.  Moreover, the right to object on any ground to the use of the responses or information provided, in any aspect of this or any other court action, arbitration, or judicial or administrative proceeding or investigation, is reserved.

## II.   SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.      Match specifically objects to the Requests' Instructions and Definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules.  In responding to these Requests, Match will follow the requirements set forth in the Rules.

2.      Match specifically objects to the definitions of "Match," the "Company," and "You" because they are vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines these terms as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  This definition necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Match objects to Plaintiff's definitions of "Match," the "Company," and "You" as defined to "include any descriptor used by Match in its business practice," again encompassing other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  In responding to these Requests, Match will construe the terms "Match," the "Company," and "You" to refer only to Match Group, Inc.

3.     Match specifically objects to the definitions of "and" and "or" and because they are ambiguous and confusing.  Match will interpret these terms to have their plain, ordinary, and common sense meaning.  Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  In responding to these Requests, Match will comply with the Rules.

4.     Match specifically objects to the definition of "any" as ambiguous and confusing.  Match will interpret this term to have its plain, ordinary, and common- sense meaning.  Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.  In responding to these Requests, Match will comply with the Rules.

5.     Match specifically objects to the definitions of "Customer" and "Customers" as overbroad, unduly burdensome, and oppressive, insofar as they purport to cover individual(s) "who have maintained an account on *any website* owned or operated by" Match, including "OKCupid, Plenty of Fish, and Tinder," which encompasses websites and entities that are not party to, or otherwise related to, the present litigation.  Match further objects that the definitions of "Customer" and "Customers" are thus not tailored to the allegations in the complaint, not proportional to the needs of the case, and exceedingly burdensome.  In responding to these Requests, Match will

construe the terms definitions of "Customer" and "Customers" to refer only to Customer(s) of Match.com.

6.      Match objects to the definition of "Document" as overly broad and unduly burdensome.  Match further objects to this definition to the extent it refers to items outside of Match's possession, custody, or control, particularly through its use of the phrases "regardless of origin or location" and "however and by whomever prepared, produced, disseminated, or made." Match further objects to this definition to the extent it refers to items in Plaintiff's possession, custody, or control, or to items that have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive.  Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those required by the Rules.  In responding to these Requests, Match will interpret the word "Document" to have its plain, ordinary, and common sense meaning and will comply with the Rules.

7.      Match specifically objects to the definition of "each" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common sense meaning.  Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.  In responding to these Requests, Match will comply with the Rules.

8.      Match specifically objects to the definitions of "Identity" and "the identity of" and because they are ambiguous and confusing.  Match will interpret these terms to have their plain, ordinary, and common sense meaning.  Match further objects to these definitions to the extent they

purport to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.  In responding to these Requests, Match will comply with the Rules.

9.      Match specifically objects to the definition of "Match Group, LLC" as vague, ambiguous, confusing, and overbroad.

10.     Match objects to the definition of "OKCupid" because it is overbroad, ambiguous, and confusing.  Match further objects to the definition of "OKCupid" as irrelevant, since OKCupid is not referenced in the Complaint, and thus any Request relying on the definition of "OKCupid" is not proportional to the needs of the case and is unduly burdensome.

11.     Match objects to the definition of "Plenty of Fish" because it is overbroad, ambiguous, and confusing.  Match further objects to the definition of "Plenty of Fish" as irrelevant, since Plenty of Fish is not referenced in the Complaint, and thus any Request relying on the definition of "Plenty of Fish" is not proportional to the needs of the case and is unduly burdensome.

12.     Match specifically objects to the definitions of "referring to" and "relating to" because they are ambiguous and confusing.  Match will interpret these terms to have their plain, ordinary, and common sense meaning.  Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules.  Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.  In responding to these Requests, Match will comply with the Rules.

13.     Match specifically objects to the definition of "Subscriber" as overbroad, unduly burdensome, and oppressive, insofar as it purports to cover a "Subscriber" to "any website owned or operated by" Match, which would necessarily encompass websites and entities that are not party to, or otherwise related to, the present litigation.  Match further objects that the definition of "Subscriber" is thus not tailored to the allegations in the Complaint and not proportional to the needs of the case.  In responding to these Requests, Match will construe the term "Subscriber" to refer only to Subscribers to Match.com.

14.     Match objects to the definition of "Tinder" because it is overbroad, ambiguous, and confusing.  Match further objects to the definition of "Tinder" as irrelevant, since Tinder is not referenced in the Complaint, and thus any Request relying on the definition of "Tinder" is not proportional to the needs of the case and is unduly burdensome.

15.     The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Requests.

## III.     SPECIFIC OBJECTIONS AND RESPONSES TO THE REQUESTS

**REQUEST NO. 1:**   The Company's certificate of incorporation, bylaws, rules, regulations, procedures, and any amendments to them.

**RESPONSE:**   Match objects to this Request because "rules," "regulations," and "procedures" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of

"the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate formation documents are not relevant to any of Plaintiff's claims, live or dismissed.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.

**REQUEST NO. 2:**  All minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board.

**RESPONSE:**  Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC  this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever

need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects to this Request because "attachments" and "materials" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities or dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, by requesting "*[a]ll* minutes" and "materials" regardless of subject matter.

Subject to and without waiving the foregoing specific and general objections, Match will conduct a reasonable search for minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board that reference or are reasonably related to Match.com's cancelation flow. Match will produce, following the entry of an enforceable

protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 3:**  All materially different versions of the Company's organizational charts and personnel directories.

**RESPONSE:**  Match objects to this Request because "organizational charts" and "personnel directories" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's "organizational charts" and "personnel directories" are not relevant to Plaintiff's claims in the Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession,

custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 4.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 3 in connection with the 2017 CID, in response to CID Document Request No. 2.  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 4:**  Documents sufficient to show all relationships that have existed between Match Group, Inc. and any other corporate entity, including Match Group, Inc.'s subsidiaries, entities with an ownership interest the Company, and any other entity You claim has operated match.com.

**RESPONSE:**  Match objects to this Request because "relationships" is vague and undefined, and also to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as "all relationships that have existed between Match Group, Inc. and any other corporate entity" are not relevant to Plaintiff's claims in the Complaint.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 3.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it will conduct a reasonable search for documents sufficient to show any relationships that have existed between Match Group, Inc. and the entity or entities that operate Match.com, including Match Group, LLC.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 5:**  Documents sufficient to show all corporate officers of:

    a.  Match Group, Inc.;

    b.  Any corporate subsidiary of Match Group, Inc.;

    c.  Any corporation that has had an ownership interest in Match Group, Inc.;

    d.  Any other entity You claim has operated match.com;

    e.  Any other entity You contend has operated Tinder;

    f.  Any other entity You contend has operated OKCupid;

    g.  Any other entity You contend has operated Plenty of Fish.

**RESPONSE:**  Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder).  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Match further objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 3, 4, 6, and 7.  Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 5 in connection with the 2017 CID, in response to CID Document Request No. 2.

**REQUEST NO. 6:**  Documents sufficient to identify all current and former employees of Match Group, Inc. whose responsibilities include or relate to:

   a.   advertising or marketing;

b.  customer service;

c.  corporate governance or operations;

d.  general management;

e.  research and development;

f.  legal compliance;

g.  accounting or finance;

h.  cancellation of subscriptions;

i.   the Match Guarantee; and

j.  policies and practices related to chargebacks.

**RESPONSE:**  Match objects to this Request because "corporate governance or operations" and "general management" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information, particularly in light of Plaintiff's request for documents related to "legal compliance." Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct

at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.  Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 6 in connection with the 2017 CID, in response to CID Document Request No. 1.

**REQUEST NO. 7:**  Documents sufficient to identify all current and former Match executives.

**RESPONSE:**  Match objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "Match" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "Match," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, by seeking documents regarding "all current and former Match executives" regardless of their relevance to the claims in the Complaint.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.

Match further objects to this Request to the extent that it is duplicative of other Requests, including Request Nos. 3, 5, and 6. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 7 in connection with the 2017 CID, in response to CID Document Request No. 2.

**REQUEST NO. 8:** Documents sufficient to show all transfers of money between Match Group, Inc., and any corporate subsidiary or owner or any other entity You claim has operated match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request because "transfers of money" is vague and undefined. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Match further objects to this Request because it is overbroad and unduly burdensome by seeking documents and information about financial transactions that are irrelevant to Plaintiff's

claims, even if limited only to Match Group, Inc. and Match.com.  Moreover, Match objects that

this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters

beyond the scope of the present litigation, and that this Request is an abuse of the discovery

process.  Match further objects to the extent that the requested documents already are in Plaintiff's

possession, custody, or control, or to the extent that the requested documents are not in Match's

possession, custody, or control.

**REQUEST NO. 9:**  All Documents You contend tend to show that Match Group, Inc., is not liable
for the violations alleged in the Complaint filed in this case, including documents supporting the
claim that another entity has operated match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional

to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match

Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures,

operations under assumed names, and affiliates, and all directors, officers, employees, agents,

consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of

"You" necessarily and inappropriately includes other entities that are not relevant to the claims or

allegations in the Complaint.  Furthermore, Plaintiff's definition of "You," which is defined to

"include any descriptor used by Match in its business practice," encompasses other entities and

dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of

Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional

to the needs of the case because it purports to seek information beyond the scope of Plaintiff's

claims in the Complaint, as Plaintiff seeks documents and information about entities and dating

sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and

Tinder).  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Match further objects to this Request as overbroad, unduly burdensome, and oppressive, because it is not proportionate to the needs to the case and because it requires Match to marshal all of its evidence before trial. Match further objects to this Request to the extent it is duplicative of other Requests, potentially including each and every other Request.  Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 9 in connection with the 2017 CID, in response to each and every CID Document Request and Interrogatory.

**REQUEST NO. 10:**  All Documents You contend tend to show that Match Group LLC operates or has operated Match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and

dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 4 and 11.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 10 in connection with the 2017 CID, in response to CID Interrogatory No. 1. Notwithstanding its prior production, Match will conduct a reasonable search for documents sufficient to show the operation of Match.com. Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 11:** All Documents You contend tend to show that Match Group Inc. does not or has not operated Match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request because the phrase "does not or has not operated" requires Match to prove a negative, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match

Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder).  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 4 and 10.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 11 in connection with the 2017 CID, in response to CID Interrogatory No. 1.  Notwithstanding its prior production, Match will conduct a reasonable search for documents sufficient to show the operation of Match.com.

Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 12:**  Documents sufficient to show the Company's quarterly and annual gross and net revenue, including profit and loss statements and accounting documents for Match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:**   Match objects to this Request because "accounting documents" is vague, undefined, and overbroad, and to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Match further objects to this Request insofar as it seeks information that Plaintiff can obtain elsewhere and/or is publicly available.

**REQUEST NO. 13:**  Documents showing the Company's projections of its gross and net revenue, including Documents provided to prospective investors.

**RESPONSE:**  Match objects to this Request because "projections" and "prospective investors" are vague and undefined, and to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures,

operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as "the Company's projections of its gross and net revenue, including Documents provided to prospective investors," are not relevant to Plaintiff's claims in the Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.

**REQUEST NO. 14:**  Documents sufficient to show quarterly and annual revenue from:

  a.  Subscriptions to Match.com;

  b.  Subscriptions to OKCupid;

  c.  Subscriptions to Plenty of Fish;

  d.  Subscriptions to Tinder;

  e.  Subscriptions to Match.com that included or was subject to a Match Guarantee;

  f.  Payments from accounts on Match.com that had been automatically renewed; and

  g.  Payments from Subscribers who had clicked on the "retention offer" or "Cancel Subscription" hyperlinks described in Paragraph 55 of the Complaint filed in this case.

**RESPONSE:**   Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder).  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already

produced information responsive to Request No. 14 in connection with the 2017 CID, in response to CID Interrogatory No. 3.

**REQUEST NO. 15:**  Each unique version of all Ads related to a Match Guarantee.

**RESPONSE:**  Match objects to this Request as vague and undefined because it is unclear what the FTC means by "unique."  Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC  this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.   Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 15 in connection with the 2017 CID, in response to CID Request No. 3(b)(i).

**REQUEST NO. 16:**  Each unique version of all Ads related to cancellation of a Match.com, OKCupid, Plenty of Fish, or Tinder subscription, including Ads related to the ease or availability of cancellation.

**RESPONSE:**  Match objects to this Request as vague and undefined because it is unclear what the FTC means by "unique."   Match also objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder).  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 15. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 16 in connection with the 2017 CID, in response to CID Request No. 3(c)(i).  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 17:**  Documents sufficient to show each unique disclosure You contend disclosed policies concerning terminating subscriptions in response to a Customer Chargeback.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information.

Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.  Finally, Match responds that it has already produced documents responsive to Request No. 17 in connection with the 2017 CID, in response to CID Request No. 9(e).

**REQUEST NO. 18:**  Representative copies of all visual content shown to Customers during the process of purchasing or signing up for a paid subscription.

**RESPONSE:**  Match objects to this Request because "[r]epresentative copies of all visual content" is vague, confusing, and overbroad.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that

Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 19.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 18 in connection with

the 2017 CID, in response to CID Request Nos. 3(a)(i), 3(a)(iii), 3(b)(i), 3(b)(iii), 3(c)(i), and 3(c)(iii).  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 19:**  Representative copies of all visual content that Match has shown to Customers concerning the Match Guarantee, including concerning:

    a.  Advertisements relating to Subscriptions subject to the Match Guarantee;

    b.  Customer "progress" with regard to the Match Guarantee; and

    c.  Redeeming a Match Guarantee or receiving a Guarantee Extension.

**RESPONSE:**  Match objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing, because "progress" is vague and undefined.  Match specifically objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee."  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into

the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 19 in connection with the 2017 CID, in response to CID Request Nos. 3(b)(i), 3(b)(iii), and 9(b).

**REQUEST NO. 20:** Representative copies of all visual content that Customers have had to view to cancel their subscriptions.

**RESPONSE:** Match objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 19.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 20 in connection with the 2017 CID, in response to CID Request No. 9(d).  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 21:**  Representative copies of all visual content that the Company has shown to Customers concerning the available means of cancelling their subscriptions.

**RESPONSE:**  Match objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company"

necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 20.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 21 in connection with the 2017 CID, in response to CID Request No. 9(d).  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 22:**  All documents related to any change or contemplated change to any means of subscription cancellation available to Customers.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Additionally, Match objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as any "change" that may have been contemplated but never implemented is not relevant to the allegations in Plaintiff's Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession,

custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 17.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 22 in connection with the 2017 CID, in response to CID Request Nos. 8(e) and 9(d).  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 23:**  All documents related to account takeovers.

**RESPONSE:**  Match objects to this Request because "account takeovers" is vague and undefined, and to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, because by failing to specify any limiting principle on "account takeovers," this Request necessarily captures documents and information that fall outside the scope of what is relevant to that allegations in Plaintiff's Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.

**REQUEST NO. 24:**  All documents related to software flaws that prevented Customers from:

    a.  logging into their accounts;

    b.  using their accounts; or

    c.  canceling their accounts.

**RESPONSE:**  Match objects to this Request because "software flaws" is vague, undefined, and overbroad, and to the extent Plaintiff seeks Privileged Information.  Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match objects to this Request because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as not every "software flaw" related to account functionality is relevant to the allegations in Plaintiff's Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and

Tinder.  Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Additionally, Match objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 19, 20, 21, 22, 23, and 25.

**REQUEST NO. 25**:  All communications relating to:

    a.  Match Guarantees;

    b.  Cancellation of paid subscriptions by Customers;

    c.  Customer Chargebacks;

    d.  Denial of Customers' access to accounts in response to chargebacks;

    e.  The marketing or advertising of Tinder Gold or Tinder Boost; and

    f.  The marketing or advertising of Incognito Mode, OKCupid Premium, or Profile Boosts on OKCupid.

**RESPONSE**:  Match objects to this Request because "[a]ll communications" is overbroad and unduly burdensome, and to the extent Plaintiff seeks Privileged Information.  Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would

never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as neither "[t]he marketing or advertising of Tinder Gold or Tinder Boost" nor "[t]he marketing or advertising of Incognito Mode, OkCupid Premium, or Profile Boosts on OkCupid" are relevant to Plaintiff's claims in the Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 17, 19, 20, 21, 22, 23, 24, 27, 28 and 31.

**REQUEST NO. 26:**  All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Match Guarantees; chargeback policies; Ads relating to subscription renewal or cancellation; or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups.

**RESPONSE:**  Match specifically objects to this Request because "tests," "A/B testing," "click-through data," "surveys," "usability tests," and "focus groups" are vague and undefined.  Match further objects to this Request to the extent Plaintiff seeks Privileged Information.  Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer"

as "any individual or individuals who have maintained an account on any website owned or operated by the Company," and "Match" or "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because by seeking information under such a broad category as "how consumers or Customers view, read, react to, understand, or have been influenced," this Request is not tailored to the allegations in Plaintiff's Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 26 in connection with the 2017 CID, in response to CID Request Nos. 3(a)(iv), 3(b)(iv), 3(c)(iv), and 4.  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to subscription renewal and cancelation for Match.com only.  Match will

produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 27:**  All Documents, including internal and third-party studies or audits, relating to Customers' efforts to cancel their subscriptions to Match.com, Tinder, or OKCupid.

**RESPONSE:**  Match objects to this Request because "efforts" is vague and undefined, and to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company," and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint.  Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and

Tinder).  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 19, 20, 21, 22, 24, 25, 26, and 28.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents that are in Match's possession, custody, or control identified through such search, if any are located.

**REQUEST NO. 28**:  All Documents relating to the policies and practices of the Company, Match.com, Tinder, or OKCupid regarding the following:

   a.  Match Guarantees;

   b.  account cancellation;

   c.  Availability of customer support services;

   d.  availability of refunds;

   e.  Customer Chargebacks;

   f.  Customer access to accounts; and

   g.  compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

**RESPONSE:**  Match objects to this Request because "availability" is vague and undefined.  Match further objects to this Request to the extent Plaintiff seeks Privileged Information, specifically

because the term "relating to" as used in this Request necessarily captures Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 19, 20, 21, 22, 24, 25, 26, and 27.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 28 in connection with the 2017 CID, in response to CID Request No. 8.  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to subparts (b)-(d) and (g) for Match.com and ROSCA compliance only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 29:**  All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged Information, and because the Request overall appears calculated to specifically seek Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's

claims in the Complaint, because not every document related to every prior investigation of Match's compliance with consumer protection laws is relevant to the allegations in Plaintiff's Complaint.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 27, 28, 32, and 34.  Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that will conduct a reasonable search for reasonably available responsive documents with respect to Match.com's compliance with ROSCA only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 30:**  All Documents relating to Customer complaints.

**RESPONSE:**  Match objects to this Request because "complaints" is vague and undefined, and to the extent Plaintiff seeks Privileged Information.  Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's

definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, since by seeking "all Documents" related to the inherently broad category of "Customer complaints," this Request necessarily captures a whole host of documents, communications, and other information that are not relevant to the claims in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 30 in connection with the 2017 CID, in response to CID Request No. 10. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents relating to Customer complaints regarding the Match.com online cancelation flow, as alleged in the Complaint. Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 31:** All communications with Customers relating to the Match Guarantee or the Company's chargeback or cancellation policies or practices.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of

"Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company," and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 25, 28, and 30. Any response to this Request that is

provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 31 in connection with the 2017 CID, in response to CID Request No. 10.  Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com's cancelation policies or practices only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 32:**  All documents relating to any lawsuit alleging that the operators of Match.com, Tinder, Plenty of Fish, or OKCupid have engaged in fraud or violated any federal, state, or foreign consumer protection laws.

**RESPONSE:**  Match objects to this Request because "the operators of" is vague and undefined, and to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged Information.  Match further objects to this Request as irrelevant, overbroad, oppressive, and inappropriate to the extent Plaintiff seeks discovery about "fraud" or consumer protection violations of any kind, as the Court dismissed with prejudice Plaintiff's claims related to alleged fraud (Counts I & II) in its Memorandum Opinion & Order on Match's Motion to Dismiss.  ECF No. 86.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder).  Match further objects to this Request as irrelevant, overbroad, and unduly burdensome,

to the extent that its use of the undefined term "the operators of" assumes that Match Group, Inc. is "the operator[] of" Match.com, Tinder, Plenty of Fish, or OKCupid.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Match likewise objects to this Request to the extent the requested documents are publicly available.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 34.

**REQUEST NO. 33:**  All versions of customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training materials.

**RESPONSE:**  Match objects to this Request because "prepared responses," "customer support manuals," and "employee manuals" are vague and undefined, and to the extent Plaintiff seeks Privileged Information.  To the extent Plaintiff meant "Customer," as opposed to "customer," Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because by failing to specify any subject matter limitation on any of the materials referenced therein, this Request necessarily captures documents and information that fall outside the scope of what is relevant to Plaintiff's claims. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 25, 28, and 30. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 33 in connection with the 2017 CID, in response to CID Request No. 8. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents that address or relate to Match.com account cancelation only. Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 34:**  All Documents referring to or relating to:

   a.   The Federal Trade Commission;

   b.   The FTC Act;

   c.   The Restore Online Shoppers' Confidence Act;

   d.   Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP";

   e.   The Department of Justice; and

f.   The lawfulness or unlawfulness of any practices related to Match Guarantees, Customer chargebacks, or the cancellation of subscriptions.

**RESPONSE:**   Match objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the terms "referring to" and "relating to" as used in this Request necessarily capture Privileged Information.  Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC  this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match  could  never  and  would  never,  and  Match.com  would  never,  engage  in  the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as this Request necessarily encompasses entities not party to, or otherwise related to, the present litigation.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the

extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 29 and 32.

**REQUEST NO. 35:**  All Documents that support, contradict, refute, or rebut any affirmative defense You have asserted in Your Answer.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing."  Plaintiff's definition of "You" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as oppressive, overbroad, and not proportional to the needs of the case because it requires Match to marshal all of its evidence before trial. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

**REQUEST NO. 36:**  All Documents You referred to in the course of responding to any Request for Admission, Request for Production, or Interrogatory served by the Federal Trade Commission in this case.

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the terms "referring to" and "relating to" as used in this Request necessarily capture Privileged Information.  Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.  The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC  this orally and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates.  The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur.  Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated.  The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.  For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as oppressive, overbroad, and not proportional to the needs of the case, because it purports to require Match to re-produce each and every document it has previously produced to the FTC.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match

further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Finally, Match objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

Subject to and without waiving the foregoing specific and general objections, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com account cancelation only.  Match will produce, following the entry of an enforceable protective order, non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 37:**  All Documents considered or relied upon by any witness you disclose under Fed. R. Civ. P. 26(a)(2).

**RESPONSE:**  Match objects to this Request to the extent Plaintiff seeks Privileged Information. Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because it does not specify any subject matter limitations.  Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.  Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.  Match objects to this Request as oppressive, overbroad, and not proportional to the needs of the case because it requires Match to marshal all of its evidence before trial.  Match further objects to this Request to the extent it seeks to require production or disclosure of expert-related documents prior to the time specified in the Court's scheduling order.  Finally,

Match objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

Dated:  July 19, 2022

Respectfully submitted,

*/s/  Angela C. Zambrano*
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
David Sillers
State Bar No. 24072341
dsillers@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and forgoing document

was served on all counsel of record via e-mail as outlined below on July 19, 2022.

Reid Abram Tepfer
rtepfer@ftc.gov
M Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov

*/s/  Angela C. Zambrano*
Angela C. Zambrano

# EXHIBIT 12

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

FEDERAL TRADE COMMISSION,

     Plaintiff,

     v.

MATCH GROUP, INC., a corporation, and

MATCH GROUP, LLC, formerly known as
MATCH.COM, LLC, a limited liability company,

     Defendants.

Case No. 3:19-cv-02281-K

**PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC**

Pursuant to Federal Rule of Civil Procedure 36, Plaintiff, the Federal Trade Commission ("FTC"), by its undersigned attorneys, requests that Match Group, LLC ("Defendant") respond in writing to the FTC's First Set of Requests for Admission (the "Discovery Request").

## INSTRUCTIONS

A. These instructions and definitions should be construed to require Discovery Request responses based upon Your actual or constructive knowledge and information available to You, as well as that of Your attorneys, accountants, consultants, employees, independent contractors, representatives, agents, and others acting on Your behalf. These Requests must be responded to by the party to whom they are directed within thirty (30) days of the date of service, as service is defined by Rule 6 of the Federal Rules of Civil Procedure. For any specific document or range of documents You reference in response to this Discovery Request that has been or will be produced to the FTC, identify such document(s) by the associated Bates number or other identifying information in Your response to the Discovery Request. In construing the

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

Discovery Request, the present tense includes the past and future tenses, the singular includes the plural, and the plural includes the singular.

      B.     If you object to a portion or an aspect of any Request, state the grounds of Your objection with specificity and answer the remainder of the Request as required by Federal Rule of Civil Procedure 36(a)(4)–(5). If You object to any Request on the grounds that responding is unduly burdensome, describe in detail the burden or expense.

      C.     If, in responding to these Requests, You encounter any ambiguities when construing a Request, question, instruction, or definition, Your response shall set forth the matter deemed ambiguous and the construction used in answering the Request.

      D.     These Requests are continuing in nature pursuant, up to and during trial. If, after You serve Your response, You become aware of additional or corrective information responsive to this Request, You must supplement Your Request response and promptly produce the responsive material or information to Plaintiff in accordance with Federal Rule of Civil Procedure 26(e).

      E.     Unless otherwise specified, the applicable period for the Requests is from January 1, 2013, to the completion of this action. If the response to any Request is different for different periods within the applicable time period, provide a complete response for each time period and designate the specific time period for which the response is applicable.

      F.     Each response shall be clearly and precisely identified as to the numbered Request to which it is responsive.

      G.     If You cannot answer an Admission in full after exercising due diligence to secure the full information to do so, answer to the extent possible, specifying Your inability to answer, stating the information or knowledge You have concerning the unanswered portion, and detailing what You did in attempting to secure the unknown information.

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

APP 258

The Commission often makes its files available to other civil and criminal federal, state, local, or foreign law enforcement agencies. The FTC may make information supplied by you available to such agencies where appropriate pursuant to the FTC Act and 16 C.F.R. §§ 4.11(c) and (j). Information you provide may be shared with other federal, state, or foreign civil or criminal agencies.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1. "**Match Group LLC**" or the "**Company**" or "**You**" shall mean Match Group, LLC and includes operations under assumed names, prior names, and predecessor entities, including Match.com, LLC.

2. "**Match Group Inc**" means Match Group, Inc, a Delaware corporation and party to this litigation**.**

3. "**2017 CID**" shall mean the civil investigative demand the Commission issued to Match Group Inc. in March 2017.

4. "**Advertisement**" or "**Advertising**" or "**Ad**" means any written or verbal statement, illustration, or depiction that promotes the sale of a good or service or is designed to increase consumer interest in a brand, good, or service. Advertising media include, but are not limited to, packaging and labeling, promotional materials, print, television, radio, and internet, social media, and other digital content.

5. "**and**," as well as "**or**," shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any specification in this Request all

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

information that otherwise might be construed to be outside the scope of the specification.

6. "**any**" shall be construed to include "all," and "**all**" shall be construed to include the word "any."

7.  "**Chargeback**" means a transaction that is returned as a financial liability to an acquirer by a card issuer, usually because of a disputed transaction. The acquirer may then return or "charge back" the transaction to the merchant.

8. "**Customer**" or "**Customers**" means any individual or individuals that have maintained an account on any website owned or operated by the Company, including Match.com, regardless of whether such individual or individuals paid for those accounts or not.

9. "**Fraud**" means in violation of Match.com's Terms of Use. "Fraud" further shall include any conduct or practice that Match employees have internally referred to as "fraud" or "fraudulent" and shall also include any conduct or practice that Match referred to using the terms "fraud" or "fraudulent" in its written responses to the 2017 CID.

10. "**Fraudulent User**" means any Customer whom the operators of Match.com or its employees determine at any time to be violating Match.com's Terms of Use. "Fraudulent User" further shall include any Customer or category of Customers that Match employees have internally referred to as "Fraudulent User(s)" or "Fraudulent Profile(s)" and shall also include any Customers or category of Customers that Match referred to using the term "Fraudulent User(s)" or "Fraudulent Profile(s)" in its written response to the 2017 CID.

11. "**Free Trial User**" means any Match.com user who has accepted a free-trial offer from Match.com and is still within the free-trial period. "Free Trial User" further shall

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC

FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

include any Customer or category of Customers that Match employees have internally referred to as "Free Trial User(s)" and shall also include any Customers or category of Customers Match referred to using the term "Free Trial User(s)" in its written response to the 2017 CID.

12. "**Guarantee Extension**" means any free or additional subscriptions, services, or access to Match.com provided to a Customer under the terms of any Guarantee. "Guarantee Extension" shall further include the meaning as used on the Match.com website.

13. "**Guarantee Program Progress Page**" means any webpage on Match.com where Customers who have purchased a Match.com subscription subject to any Match Guarantee may check their progress towards satisfying the terms and conditions of any such Match Guarantee. "Guarantee Program Progress Page" shall further include the meaning as used on the Match.com website.

14. "**Hack**" or "**hacked**" means any instance where a consumer's account has been accessed, edited, or operated by a third party without that consumer's authorization.

15. "**Identify**" or "**the identity of**" shall be construed to require identification of (a) natural persons by name, address, telephone number, and email address; and (b) businesses or other organizations by name, address, telephone number, email address, and identities of natural persons who are officers, directors or managers of the business or organization, and contact persons, where applicable.

16. "**Match Guarantee**" means any Company offer to provide free subscriptions to Match.com for Customers who fulfill certain criteria during their subscription period.

17. "**Match.com**" means the dating platform available at www.match.com.

18. "**Nonsubscriber**" means any user who has a free Match.com user account, regardless of whether such user subsequently converted to a Subscriber.

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

19. "**referring to**" or "**related to**" means discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recording, transcribing, recommending, concerning, or pertaining to, in whole or in part.

20. "**Subscriber**" means any Match.com user who has either a paid Match.com account or a "free trial" Match.com account.

21. "**Terms of Use**" means the agreement entitled "Terms of Use" displayed to users of Match.com, including any version or revision of the agreement displayed from January 1, 2013 to the present.

## REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff requests that you admit for purposes of this pending action the truth of the matters requested. If you do not admit to a request, You must either specifically deny it or state in detail why you cannot admit or deny it, as required by Rule 36.

*Admit that:*

1. Match Group LLC is a Delaware limited liability company.

2. Match Group LLC maintains a principal place of business at 8750 North Central Expressway, Suite 1400, Dallas, Texas 75231.

3. Match Group LLC transacts business in the Northern District of Texas and throughout the United States.

4. Match Group LLC has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

5. Match Group LLC participated in the operation of Match.com between 2013 and 2018.

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

6.   Executive officers employed by Match Group Inc. have also served as employees of Match Group LLC since 2013.

7.   Match Group, Inc. employees have directed Match.com's operations.

8.   Match Group Inc. has had authority to control Match.com, LLC since 2013.

9.   Match Group Inc. has directed the activities of Match Group LLC related to the operations of Match.com since 2013.

10.   Match Group Inc. was the sole possessor of voting equity in Match.com LLC between 2013 and 2018.

11.   Match Group Inc. currently controls Match Group LLC.

12.   Match Group Inc. had control over Match Group LLC between 2013 and 2018.

13.   You did not have authority to control Match.com between 2013 and 2018.

14.   Match Group Inc. was the custodian of all records produced pursuant to the 2017 CID.

15.   Persons employed by Match Group Inc. were the custodians of all records produced pursuant to the 2017 CID.

16.   Between 2013 and 2018, Match Group LLC employees exchanged email correspondences with the following individuals:

   a.   Sydney Lam

   b.   Brett Richards

   c.   Poosenjeet Bhattacharya

   d.   Adrian Ong

   e.   Pradeep Shetty

   f.   Michelle Watson

   g.   Shonda Pero

   h.   Kris Auderer

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

i.   Melissa Clinchy

j.   Krystal Roloff

k.   Curt Anderson

l.   Marshall Dye

m.  Laurie Braddock

n.   Brittany Perez

o.   Girdar Tandriv

p.   Alexis Ferraro

q.   Margaret Ochoa

r.   Jeff Rosenzweig

s.   Beth Wilson

t.   Sam Yagan

u.   Florian Hottier

v.   Sushil Sharma

w.  Jim Talbott

x.   Jiten Vakharia

y.   Bryan Jewell

z.   Matthew Bartoe

aa. Ian Purves

bb. Sharmistha Dubey

cc. David Penton

dd. Amarnath Thombre

ee. Andrew Hemmings

ff.  Matt Knight

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH
GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

gg. Tony Bowari

hh. Jeff McLure

ii. Jennifer Hinkie

jj. Mandy Ginsberg

kk. Ivan Yong

ll. Bret Williams

17. None of the following individuals were paid a salary by Match Group LLC between 2013 and 2018:

a. Sydney Lam

b. Brett Richards

c. Poosenjeet Bhattacharya

d. Adrian Ong

e. Pradeep Shetty

f. Michelle Watson

g. Shonda Pero

h. Kris Auderer

i. Melissa Clinchy

j. Krystal Roloff

k. Curt Anderson

l. Marshall Dye

m. Laurie Braddock

n. Brittany Perez

o. Girdar Tandriv

p. Alexis Ferraro

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC

FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

q.  Margaret Ochoa

r.  Jeff Rosenzweig

s.  Beth Wilson

t.  Sam Yagan

u.  Florian Hottier

v.  Sushil Sharma

w.  Jim Talbott

x.  Jiten Vakharia

y.  Bryan Jewell

z.  Matthew Bartoe

aa. Ian Purves

bb. Sharmistha Dubey

cc. David Penton

dd. Amarnath Thombre

ee. Andrew Hemmings

ff.  Matt Knight

gg. Tony Bowari

hh. Jeff McLure

ii.  Jennifer Hinkie

jj.  Mandy Ginsberg

kk. Ivan Yong

ll.  Bret Williams

18.   Customers can maintain an account on Match.com with or without a paid subscription.

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH
GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

19. Subscribers have access to and can view email messages or communications sent to them by other Subscribers.

20. Nonsubscribers cannot view email messages sent to them on Match.com without purchasing a subscription to Match.com.

21. Match Group LLC permits Nonsubscribers to maintain free accounts on the Match.com platform.

22. Some Match Group Inc. and Match Group LLC employees have referred internally to Nonsubscribers as "Regs."

23. Some Match Group Inc. and Match Group LLC employees have referred internally to Subscribers on the platform as "Subs."

24. Match Group Inc. and Match Group LLC employees and management have referred to Nonsubscribers, Subscribers, and Free Trial Users who used Match.com in a month collectively as "MAU" or "Monthly Active Users."

25. Consumers could purchase Match.com subscriptions of 1-, 3-, 6-, or 12-month durations.

26. Match.com's membership subscriptions automatically renewed.

27. Between 2013 and 2018, Match.com offered a one-month subscription priced at $35 for the initial term.

28. Between 2013 and 2018, Match.com offered a three-month subscription priced at $71.97 for the initial term.

29. Between 2013 and 2018, Match.com offered a six-month subscription priced at $119.94 for the initial term.

30. Between 2013 and 2018, Match.com offered a twelve-month subscription priced at $215.88 for the initial term.

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

31. Match Group LLC marketed a "Match Guarantee" that applied to Subscribers who purchased a six-month subscription to Match.com.

32. Customers who purchased a six-month subscription to Match.com were eligible for six additional months of Match.com service for free following their initial six months of paid service pursuant to the Match Guarantee if the Customer satisfied certain requirements.

33. Match Group LLC marketed a "Match Guarantee" that guaranteed Subscribers six months of Match.com service for free following their initial six months of paid service if the Customer did not "meet someone special" during that first six months.

34. Match.com's terms and conditions used the term "Guarantee Extension" to refer to the free six months of Match.com service that Subscribers received if they qualified for the "Match Guarantee."

35. Match.com previously marketed its "Match Guarantee" as the "I Met Someone Guarantee."

36. Match.com previously marketed its "Match Guarantee" as the "Match.com Guarantee."

37. Several Match Group Inc. and Match Group LLC employees have used the acronym "6MG" to refer to Match's "Match Guarantee."

38. Under the terms and conditions of the "Match Guarantee," Subscribers had to satisfy several requirements during their six months of paid service to be eligible for a Guarantee Extension.

39. The terms and conditions of the "Match Guarantee" required Subscribers who had purchased a six-month subscription, among other requirements, to create a truthful public profile with a primary photo to qualify for the "Match Guarantee."

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

40.   Match Group LLC required that Subscribers who had purchased a six-month subscription, among other requirements, submit his or her profile photo on Match.com for approval within the first seven days of their subscription to qualify for the "Match Guarantee."

41.   The terms and conditions of the "Match Guarantee" required that Subscribers who had purchased a six-month subscription, among other requirements, keep their profile picture visible throughout the six-month subscription to qualify for the "Match Guarantee."

42.   Match Group LLC required that Subscribers who had purchased a six-month subscription, among other requirements, keep their profile picture visible throughout the six-month subscription to qualify for the "Match Guarantee."

43.   The terms and conditions of the "Match Guarantee" required that Subscribers who had purchased a six-month subscription, among other requirements, initiate or respond to communications with at least five unique Match.com members each month to qualify for the "Match Guarantee."

44.   To be a "Qualifying Email" towards the Match Guarantee requirement of emailing five unique Match.com members each month, Match required that the email be to a paid Subscriber, as opposed to a free user of Match.com.

45.   Subscribers who had purchased a six-month subscription were required, among other requirements, to comply with the guarantee-program rules to qualify for the "Match Guarantee."

46.   Match Group LLC required that Subscribers who had purchased a six-month subscription, among other requirements, comply with Match.com's terms of use to qualify for the "Match Guarantee."

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC

FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

47. Under the terms of the "Match Guarantee," Subscribers who qualified for a Guarantee Extension had to "accept" the Guarantee Extension in order to receive the additional six months of free service on Match.com.

48. Match Group LLC required that Subscribers who qualified for a Guarantee Extension "accept" the Guarantee Extension to receive the additional six months of free service on Match.com.

49. Under the terms of the "Match Guarantee," Subscribers who qualified for a Guarantee Extension had to "accept" the Guarantee Extension during the last seven days of their six-month subscription.

50. Match Group LLC required that Subscribers who qualified for a Guarantee Extension had to "accept" the Guarantee Extension during the last seven days of their six-month subscription.

51. Under the terms of the "Match Guarantee," Subscribers who qualified for a Guarantee Extension had to "accept" the Guarantee Extension by affirming on the Guarantee Program Progress Page that the Customer had not "met someone special" during their Guarantee Program Subscription to receive the additional six months of free service on Match.com.

52. Match Group LLC required that Subscribers who qualified for a Guarantee Extension had to "accept" the Guarantee Extension by affirming on the Guarantee Program Progress Page that the Customer had not "met someone special" during their Guarantee Program Subscription to receive the additional six months of free service on Match.com.

53. If a Subscribers who qualified for a Guarantee Extension failed to "accept" the Guarantee Extension during the last seven days of their six-month subscription, the

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

Subscriber would be able to receive a Guarantee Extension only by contacting Match.com's customer care support team.

54. If a Subscriber who qualified for a Guarantee Extension failed to "accept" the Guarantee Extension during the last seven days of their six-month subscription, the Subscriber would have thirty days to receive a Guarantee Extension by contacting Match.com's customer care support team.

55. If a Subscriber who otherwise qualified for a Guarantee Extension waited more than 30 days past the end of their initial six-month Match.com membership to contact Match.com customer care requesting to receive a Guarantee Extension, the Subscriber would be ineligible to receive a Guarantee Extension under Match.com's terms and conditions.

56. Match Group LLC advertised subscriptions to Match.com of varying durations using the term "bundle plans."

57. Match Group LLC advertised Match.com "bundle plans" of durations of 12 months, 6 months, and 3 months.

58. Match.com had a rectangular icon describing Match.com's subscription plans that included the words "match GUARANTEE" in the description of the six-month bundle plan.

59. When consumers hovered their cursor over the words "match GUARANTEE" included in the description of six-month bundle plan on Match.com, a text box would appear stating: "The Match.com guarantee[.] If you haven't found someone special within 6 months, we'll give you an extra 6 months FREE. Learn more[.]"

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

60.    When consumers hovered their cursor over the words "match GUARANTEE" in the description of the six-month bundle plan on Match.com, a text box appeared that included a hyperlink with the words "Learn more[.]"

61.    The "Learn more" hyperlink relating to the "Match Guarantee" redirected users to a "Program Rules" webpage on Match.com concerning the "Match Guarantee."

62.    The "Learn more" hyperlink in the text box that appeared when consumers hovered their cursor over the "match GUARANTEE" language included in the description of the six-month bundle plan on Match.com redirected individuals who clicked on that link to a page with additional terms and conditions relating to Match Group LLC's "Guarantee."

63.    The "Learn More" hyperlink on the Match.com subscription page redirected consumers to a "Program Rules" webpage when clicked on.

64.    The "Program Rules" page on Match.com concerning the Match Guarantee stated that, to qualify for the Match Guarantee, consumers had to sign up for a six-month subscription, create a truthful public profile with a primary photo, keep their profile picture visible, initiate or respond to communications with at least five unique Match.com members each month, and comply with the guarantee program rules.

65.    The Match Guarantee's "Program Rules" webpage on Match.com provided six bolded, individually numbered eligibility requirements for the Match Guarantee.

66.    The "Program Rules" page concerning the Match Guarantee included a requirement that users maintain a public profile photo that has been approved by Match.com to qualify for a Guarantee Extension.

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

67. The "Program Rules" page concerning the Match Guarantee included a requirement that users contact five unique Match.com subscribers each month to qualify for a Guarantee Extension.

68. The "Program Rules" webpage concerning the Match Guarantee contained unnumbered paragraphs after the numbered list of rules.

69. The unnumbered paragraphs in the "Program Rules" webpage concerning the Match Guarantee contained at least one additional requirement related to consumers' ability to qualify for a Guarantee Extension.

70. After the numbered list of requirements, the "Program Rules" page referenced a "progress page" where Subscribers could track their compliance with the requirements to qualify for a Guarantee Extension.

71. Within the unnumbered paragraphs on the "Program Rules" webpage was a requirement that Subscribers seeking to receive a Guarantee Extension "accept" the free six months during the final week of the initial six-month term.

72. Match Group LLC's policy for any Subscriber whose accounts had been Hacked or otherwise taken over was that such Subscriber became ineligible for the Guarantee Extension unless the Subscriber contacted Match.com customer care and requested that the Match Guarantee be re-enabled.

73. In 2013, Match Group LLC's policy for any Subscriber whose accounts had been Hacked or otherwise taken over was that such Subscriber became ineligible for the Guarantee unless the Subscriber contacted Match.com's customer care and requested that the Guarantee be re-enabled.

74. Between 2013 and 2016, the operators of Match.com sold 2,488,234 Match.com subscriptions that were potentially eligible for a Guarantee Extension.

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

75. Between 2013 and 2016, 988,737 of the Match.com subscriptions that were potentially eligible for a Guarantee Extension were automatically renewed for an additional subscription term at the end of the subscription's initial six-month period.

76. Between 2013 and 2016, 179,785 of the Match.com subscriptions that were potentially eligible for the Guarantee Extension automatically renewed for an additional subscription term at the end of the subscription's second six-month period.

77. Between 2013 and 2016, the operators of Match.com granted 32,438 Guarantee Extensions to Subscribers pursuant to the Match Guarantee.

78. Hundreds of Subscribers contacted Match.com concerning the Match Guarantee.

79. Thousands of Subscribers contacted Match.com concerning the Match Guarantee.

80. Hundreds of Subscribers contacted Match.com stating that they were eligible for a Guarantee Extension but had been denied a Guarantee Extension.

81. Thousands of Subscribers contacted Match Group LLC stating they were eligible for a Guarantee Extension but had been denied a Guarantee Extension.

82. Match Group LLC was contacted by hundreds of Subscribers who stated they were unaware of at least one of the requirements of the Match Guarantee.

83. Match Group LLC was contacted by thousands of Subscribers who stated they were unaware of some or all of the requirements of the Match Guarantee.

84. Match Group LLC ceased offering the Match Guarantee over 12 months after receiving the 2017 CID.

85. Between 59 and 61 percent of Customer Chargebacks relating to Match.com occurred within one month of a disputed charge from that Customer.

86. Between 81 and 83 percent of Customer Chargebacks relating to Match.com occurred within two months of a disputed charge from that Customer.

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC

FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

87.  Match Group LLC contested most Chargeback disputes instituted by Match.com Customers.

88.  Match.com's policy was to dispute all Chargebacks instituted by Customers that were unrelated to fraud.

89.  Match.com's Terms of Use stated that if Match Group LLC "successfully disputes the reversal, and the reversed funds are returned, you are not entitled to a refund or to have your account or subscription reinstated."

90.  Match Group LLC in the majority of cases terminated or denied access to a Subscriber's account when that Subscriber instituted a Chargeback relating to his or her account.

91.  It was Match Group LLC's policy to block access to features of a Subscriber's account if the Subscriber instituted a Chargeback relating to his or her account.

92.  In many instances, Match Group LLC did not reinstate the accounts of Subscribers who disputed a charge relating to their account if the users lost their dispute.

93.  It was Match Group LLC's policy not to reinstate the accounts of Subscribers who disputed a charge relating to such account after the users lost their dispute.

94.  It was Match Group LLC's policy that Subscribers had violated Match.com's Terms of Use if they disputed a charge by requesting a Chargeback and subsequently lost that dispute.

95.  In many instances, Match Group LLC did not reinstate the accounts of a Subscriber who disputed a charge relating to his or her account after that user lost the dispute absent a request from that consumer.

96.  Less than 1% of Subscribers who lost their Chargeback disputes were subsequently provided access to their Match.com account by Match Group LLC.

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC

FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

97.  As of September 2013, Match Group LLC was disputing approximately 70% of Chargebacks that Match Group LLC deemed unrelated to fraud.

98.  It was Match.com's policy that the accounts of Subscribers who had requested a Chargeback with their financial institution would remain inaccessible or "blocked" while that Chargeback dispute was under review by their financial institution.

99.  Regardless of whether a Subscriber who instituted a Chargeback dispute won or lost that dispute, that user would not have access to their Match.com account while their Chargeback request was under review by their financial institution.

100.  Most Subscribers who initiated a Chargeback dispute against Match.com had had their refund request to Match.com denied before seeking a Chargeback.

101.  As of April 13, 2017, most Subscribers who initiated a Chargeback dispute against Match.com had had their refund request to Match.com denied before seeking a Chargeback.

102.  Match Group LLC classified the majority of Chargebacks as not being related to fraud.

103.  As of May 3, 2016, Match Group LLC had determined that approximately half of Match.com's Chargebacks were related to autorenewal.

104.  Before Subscribers were charged for a recurring subscription renewal, Match Group LLC did not send an email to Subscribers stating that they were about to be charged for that specific renewal.

105.  Employees at Match Group LLC reviewed the design of the cancellation flow for Subscribers at Match.com.

106.  In 2013, Match Group, Inc.'s Product Director reviewed the design of the cancellation flow for Subscribers at Match.com.

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

20

**APP 276**

107.  In 2016, the head of Match.com's customer service department reviewed the design of the cancellation flow for Subscribers at Match.com.

108.

109.  A cancellation mechanism that consumers cannot access is not simple.

110.  A cancellation mechanism is not simple if consumers do not know about it.

111.  For a cancellation mechanism to be simple, consumers must be provided notice of it.

112.  To cancel their subscription, Subscribers had to select "Change/Cancel Membership" on the "Account Settings" menu on the "Account" page of Match.com.

113.  Before Subscribers were able to cancel their Match.com subscription, Subscribers were required to enter their account password.

114.  Match Group LLC found that most Subscribers who entered the cancellation flow dropped out at the step that required that the Subscriber enter his or her Match.com password.

115.  Match Group LLC found that 63 percent of consumer complaints to Match.com in April 2013 concerning Customers' attempts to cancel their Match.com service were categorized by Match employees as "billed after cancel."

116.  A cancellation mechanism is not simple if consumers believe that they have cancelled their subscription when in fact they have not done so.

117.  As of May 2017, online cancellation issues were the most common reason that people or consumers complained to the Better Business Bureau concerning Match.com.

118.  Online cancellation issues were the most common reason that consumers complained to the Better Business Bureau concerning Match.com.

119.  Match Group LLC's records reflect that most Subscribers who enter the cancellation flow do not make it past the requirement to enter their password.

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

120.  As of October 25, 2013, Match Group LLC's records reflected that more than 80% of Subscribers who enter the cancellation flow dropped out of the process on the page requiring that the Subscriber enter his or her account password.

121.  An internal Match Group LLC report in 2013 found that 27.7% of cancelling consumers indicated that their reason for cancelling was "thought I already canceled."

122.   Between January 2013 and May 2018, 108,837 consumers complained to Match Group LLC indicating they had been charged after believing themselves to have already cancelled.

123.  Between January 2013 and May 2018, 41,164 consumers were refused refunds by Match Group LLC after complaining of having been charged after believing themselves to have already cancelled.

124.  In May 2017, Match Group LLC employees discussed a possible issue with the Match.com website wherein some Subscribers who attempted to cancel their subscription would see a webpage confirming the cancellation and receive an email confirming the cancellation despite their subscription not being cancelled.

125.  In 2013, Match Group LLC reduced the hours of availability for its customer service phone line from seven days a week to five.

126.  In 2013, Match Group LLC reduced the hours of availability for its customer service phone line from seven days a week to five in part to reduce the number of subscription cancellations it processed.

127.  In 2013, when Match Group LLC reduced the hours of availability for its customer service phone line from seven days a week to five it refunded less money to consumers.

Dated: August 29, 2022

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

APP 278

/s/ *REID TEPFER*
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted pro hac vice)
JOHN R. O'GORMAN (admitted pro hac vice)
ERICA ROLLINS HILLIARD
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 2421292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov;
ehilliard@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT MATCH
GROUP, LLC
FTC v. Match Group, Inc., et al., Case No. 3:19-cv-02281-K

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I certify that on August 29, 2022, I caused the foregoing document to be served on counsel of record by email.

By: /s/ *REID TEPFER*

PLAINTIFF'S FIRST REQUEST FOR ADMISSSIONS TO MATCH GROUP LLC
Case No. 3:19-cv-02281-K

APP 280