**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>               Plaintiff,<br><br>   vs.<br><br>MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>               Defendants. | Case No. 3:19-cv-02281-K |

**JOINT SUBMISSION ON PLAINTIFF FEDERAL TRADE COMMISSION'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES FROM DEFENDANT MATCH GROUP, INC.**

Pursuant to the Court's September 7, 2022 Order, Plaintiff Federal Trade Commission (the "FTC") and Defendant Match Group, Inc. ("MGI", and together with the FTC, the "Parties") file this Joint Submission on FTC's Motion to Compel Discovery Responses and the Production of Documents from MGI. On September 19, 2022, the Parties held a face-to-face conference, which lasted for a little more than one hour. For the FTC, Reid Tepfer, Hasan Aijaz, Erica Hilliard, and Jack O'Gorman attended the conference. For MGI, Chad Hummel, Angela Zambrano, Chelsea Priest, and Tayler Bragg attended. Following the conference, the Parties remain unable to resolve the disputes discussed below.

I.    **Disputed Issue #1: Whether MGI may refuse to engage in discovery simply because it contends that the conduct has permanently discontinued.[1]**

   A.    **RELEVANT DISCOVERY REQUESTS**

This dispute pertains to MGI's responses and objections to the FTC's First Request for Production Nos. 2, 6, 14, 15, 17, 19, 25, 26, 28, 31, 34, and 36 and the FTC's First Interrogatories 1–2 and 4–7. *See* J. App. at 141–43, 146–48, 156–57, 159–62, 169–62, 174–75, 178–79, 182–86; J. App. at 010–13, 018–24.

   B.    **ARGUMENTS**

      1.    **FTC's Position: MGI Cannot Refuse to Search for Documents Simply Because It Claims the Conduct Has Permanently Discontinued.[2]**

Contrary to the Federal Rules, MGI refuses to respond to these document requests and interrogatories because "the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated."[3] MGI, however, cannot unilaterally decide what is "moot" or what "need[s] to be litigated." That authority belongs to the Court, which has twice rejected MGI's argument that these claims should be dismissed, and litigation over the need for an injunction is exactly what is happening.

First, in its order on MGI's Motion to Dismiss, the Court held that the FTC had "allege[d] plausible facts that Match 'is violating' or 'is about to violate' the law as required under Section

---

[1] The "disputed issue" headings throughout this document are the FTC's characterization of the issues. MGI requested that the "disputed issue" headings throughout this submission be drafted to neutrally present the issues, to be fair to both parties, as this is a joint submission. However, the FTC refused MGI's request and insisted on maintaining its one-sided headings.

[2] The FTC disputes MGI's characterization of the "is" or "is about to violate" standard referenced in n. 16.

[3] *See, e.g.*, J. App. at 011, 012, 013, 019, 021–23, 141, 147, 156, 158, 168, 162, 169, 171, 175, 178, 183, and 185.

13(b)" in response to MGI's Motion to Dismiss.[4] The Court cited authority "listing non-exclusive factors the court should consider in whether to issue a §13(b) permanent injunction based on past violations of the law."[5]

Next, MGI recycled this argument in its Opposition to the FTC's Motion to Amend its Complaint and Add Defendant.[6] Once more, the Court rejected it.[7] The Court's rulings were unambiguous on this point: Counts III and IV are live counts, and they have been adequately pled. As such, they are subject to discovery, period.

In claiming that these counts are moot, MGI objects that "[t]he FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur"—suggesting that the FTC must first prove its allegations to MGI's satisfaction before the FTC is entitled to discovery on those counts. Such an objection is absurd and plainly contrary to the law.[8] Moreover, as this Court has noted, "'simply because the Complaint contains allegations of past violations does not mean that the FTC has not sufficiently alleged that similar violations are likely to reoccur."[9] Lastly, even

---

[4] Doc. 86 at 11. The Court further noted that "the FTC need only allege practices 'giving rise to a "fair inference of a reasonable expectation of continued violations" absent restrain'" and that "simply because the Complaint contains allegations of past violations does not mean that the FTC has not sufficiently alleged that similar violations are likely to reoccur."

[5] *See id.*

[6] *See* Doc. 109 at 6.

[7] *See generally* Doc. 115.

[8] *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. Aug. 1, 2018) (citations omitted) ("[A] party cannot refuse to engage in—and is not excused from being subjected to—discovery simply because the discovery is relevant to a claim on which the resisting party believes that he will or should prevail."); *see also Third Pentacle, LLC v. Interactive Life Forms, LLC*, No. 3:10-cv-00238, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012) (noting that even if a party "presently holds a strong belief in the merits of [the party's] litigation positions, [the party's] strong belief — whether ultimately justified or not —provides no basis for avoiding [the party's] discovery obligations created by the Federal Rules of Civil Procedure").

[9] Doc. 86 at 11 (quoting *FTC v. Neora LLC*, 552 F. Supp. 3d 628, *7 (N.D. Tex. 2021) (Lynn, CJ.)).

had MGI's argument not already been rejected twice, the FTC would be entitled to discovery to determine whether these practices have truly ceased, as MGI claims. And in fact, contrary to MGI's claims, external evidence suggests that some of the alleged illegal conduct may still be ongoing on Match.com and MGI's other dating sites.[10] MGI has yet to address—or even acknowledge the existence of—this evidence on its own website contradicting its position. Put simply, the FTC is entitled to discovery on contested facts; it need not merely take MGI's attorneys' word for it.

The Court further should not credit MGI's claim that MGI "can and will produce documents sufficient to show that the conduct at issue in Counts III and IV has permanently ceased as a factual matter, such as by providing documents reflecting its current relevant policies." *See* MGI's Response, *infra*. Such documents would clearly be responsive to the FTC's current discovery requests, and MGI has failed to provide these documents—or any other document concerning these counts. For example, Interrogatory 7 requests that MGI "Describe all of Match's policies relating to Customer Chargebacks[.]" MGI cannot credibly claim such information would not be covered by the FTC's request. It is clear, then, that absent a Court order, MGI will refuse to produce documents on these topics, no matter how the FTC phrases its discovery requests.

---

[10] Specifically, Match.com's current chargeback policies may still violate the law as alleged in Count IV. Its publicly available terms and conditions currently state: "If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, Match may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a Match subscription. In the event that your chargeback or other payment reversal is overturned, please contact Customer Care." *See* Match.com's Terms of Use Agreement (Sept. 1, 2022), https://www.match.com/registration/membagr.aspx. In other words, consumers do not have their account access reinstated automatically—they must contact customer care, something a customer would not know without combing through Match.com's lengthy terms of use document. Even then, these terms do not make clear what, if anything, customer care would do to resolve the issue or whether they would reinstate account access. MGI's other dating sites include similar terms also buried in their terms of use.

Lastly, the FTC contends that, to the extent MGI believes it should be excused from its discovery obligations due to its response to a 2017 Civil Investigative Demand, a five-year-old CID response is hardly a substitute for full discovery in litigation. The FTC has a right to discovery like any other litigant, and this right is not altered by the FTC's targeted pre-suit CID.[11] That is especially so here, where the alleged illegal conduct continued well after MGI was served with and responded to the CID. The FTC's investigation had a limited purpose: to determine whether there was *reason to believe* MGI violated the law—not to affirmatively prove that MGI violated the law, as required to prevail in litigation.[12] Therefore, the FTC made many voluntary accommodations to MGI at that time in response to MGI's claims of burdens, including by limiting document custodians and permitting interrogatory responses instead of the production of documents. MGI should not be allowed to now use these accommodations against the FTC by preventing it from engaging in full discovery to prove its case.

> **2.  MGI's Position: The FTC's Discovery Requests on Counts III and IV Are Overly Broad, Unduly Burdensome, and Not Proportional to the Needs of the Case Given MGI's Repeated Representations that the Practices Have Permanently Ceased, including MGI's Stipulation Regarding Permanently Discontinued Practices on Match.com.**

Were the FTC to prevail on Counts III and IV of the Amended Complaint, which MGI sharply disputes, at most the FTC would be entitled to injunctive relief. The Court's ruling on the

---

[11] *See SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("Here, even though the Commission had already conducted a pre-filing investigation and had access to the evidence from the criminal trial of Sargent and Scharn, 'there is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case.'"); *see also SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 857 (S.D.N.Y. 1997) (Sotomayor, J.) (distinguishing between "administrative inquiries" and "discovery").

[12] *See* 15 U.S.C. § 53(b); *cf. United States v. Witmer*, No. 1:93-cv-1410, 1993 U.S. Dist. LEXIS 14347, *211 (M.D. Pa. Oct. 8, 1993) (discussing a pre-litigation civil investigative demand issued by the federal government and noting that "[t]he purpose of the CID is to 'enable the Government to determine whether enough evidence exists to warrant the expense of filing [a civil] suit, as well as to prevent the potential Defendant from being dragged into court unnecessarily'").

Motion to Dismiss eliminated any claim for monetary relief. *See* Dkt. 86 at 13; *see also* Dkt. 62 at 2 (FTC admitting that it is seeking only injunctive relief for Counts III and IV). However, Counts III and IV concern two practices (Match.com's "Guarantee" and "Chargeback" practices) that were *permanently discontinued* by Match.com in April and March 2019, respectively. Dkt. 116, Am. Compl. ¶ 3 (in which the FTC judicially admits that the Chargeback and Guarantee practices were discontinued); Dkt. 86 (dismissing with prejudice any claim by the FTC for monetary relief). What is more, MGI has filed in this Court a sworn Stipulation Regarding Permanently Discontinued Practices on Match.com that provides *broader relief* than the FTC could obtain if it succeeded at trial by promising to never reinstate the challenged practices.[13] J. App. at 218-24 (MGI and MGL's Notice of Verified Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146). The FTC conceded during the September 19 meeting that the only purpose of such broad discovery related to Counts III and IV would be to attempt to obtain evidence to support the FTC's request for injunctive relief. But as discussed above, the injunctive-relief issue never needs to be litigated because MGI already permanently ceased those practices. *See id.* In fact, even before serving the Stipulation, MGI repeatedly indicated to the Court in briefing, to the FTC in multiple letters, and to the FTC via discovery responses including sworn interrogatories, that "[MGI] could never and would never, and Match.com would never, engage in the conduct challenged in . . . the Complaint, to which this discovery relates." J. App. at 030-31 (Verification of MGI's First Amended Responses to FTC's First Set of Interrogatories); 002-028 (MGI's First Amended Responses and Objections to FTC's First Set of Interrogatories); 226-27 (August 6, 2019 Letter from Linda A. Goldstein, Baker & Hostetler LLP, to Zachary A. Keller,

---

[13] For example, the Stipulation promises to never reinstitute the Guarantee offer *at all*, whereas the most the FTC could obtain after trial is an injunction requiring that the terms of any Guarantee be disclosed in a different manner.

FTC); 229 (May 20, 2022 Letter from Chad Hummel, Sidley Austin LLP, to Reid Tepfer, FTC). There is simply no injunctive relief to award. **But the FTC simply will not take "yes" for an answer**.

Despite all this, the FTC served extraordinarily broad and burdensome discovery requests, reaching back almost 10 years (to January 1, 2013), seeking information about these long (and permanently) discontinued practices—claiming that the FTC needs this information so that it can obtain an injunction prohibiting MGI from reinstituting practices that Match.com has already repeatedly committed to not reinstitute.[14] On these facts, the FTC's broad discovery requests are the definition of irrelevant, overly broad, and unduly burdensome. Put simply, there is zero doubt that the practices alleged in Counts III and IV of the Amended Complaint have been permanently discontinued. There is no evidence to the contrary.

In fact, when MGI served discovery on the FTC asking it to "Identify and Describe the basis for Your belief that Match Group, Inc. 'is about to violate' the FTC Act," the most that the FTC could point to was twelve documents from 2013-2017. J. App. at 233-35 (FTC First Am. Resp. to Def.'s First Set of Interr.).[15] With respect to chargebacks, the FTC identified three documents discussing the *existence* of chargebacks and chargeback policies, all from 2016 or 2017. *See* J. App. at 235 (FTC First Am. Resp. to Def. MGI's First Set of Interr. at 5 (citing MATCHFTC429717, MATCHFTC313570, MATCHFTC312357). With respect to the Guarantee, the FTC identified only nine documents—one from 2017, the remainder from 2013—discussing alleged customer confusion about the Guarantee. *See* J. App. at 235 (FTC First Am. Resp. to Def.

---

[14] MGI does not own or operate Match.com, so it could not reinstitute these practices even if it wanted to do so.

[15] Moreover, while the FTC may have survived a Motion to Dismiss on Counts III and IV, the FTC does not have evidence to support its allegations, and the FTC should not be permitted to go on a fishing expedition in an attempt to find such evidence (which does not exist).

MGI's First Set of Interr. at 5 (citing MATCHFTC344243, MATCHFTC415890, MATCHFTC452091, MATCHFTC467915, MATCHFTC469164, MATCHFTC521299, MATCHFTC568737, MATCHFTC644115, MATCHFTC647443).[16] *None* discuss reinstituting either the challenged chargeback policy or the Guarantee. Thus, the FTC's "evidence" actually provides further support that the practices at issue have been long discontinued and will not be reinstituted. This paltry record cannot justify the FTC's fishing expedition into 10 years of discovery about permanently discontinued policies. The FTC's requested discovery regarding the practices challenged in Counts III and IV is no longer relevant.[17]

Even assuming the discovery were relevant (it is not), the broad discovery the FTC demands regarding Counts III and IV would not be proportional to the needs of the case. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) ("[A] district court must limit otherwise permissible discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'"). Proportionality is measured by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

---

[16] The FTC does not appear to dispute MGI's characterization of the documents that the FTC cited in its First Amended Responses to MGI's First Set of Interrogatories. MGI will provide the documents to the Court if it would like to review them.

[17] The cases cited by the FTC are inapposite because they are fact-intensive and did not involve sworn stipulations effectively equivalent to the injunction that the opposing party could receive if successful at trial. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. Aug. 1, 2018) (discussing circumstances where party attempts to withhold discovery relevant to claim on which it believes it will prevail, not claim in which party provided stipulation); *FTC v. Neora LLC*, 552 F. Supp. 3d 628, 638 (N.D. Tex. 2021) (involving defendant who alleged practice was discontinued but not a claim in which party provided stipulation).

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, there is no "benefit" to the proposed discovery because Match.com has permanently discontinued the conduct, and has even offered *more relief* than the FTC could obtain after trial. By contrast, the burden and expense of requiring MGI to wade through thousands upon thousands of documents to find responsive documents or information about the permanently discontinued practices is extraordinarily high, particularly in relation to the lack of benefit.

Furthermore, MGI has not refused to engage in discovery based on the FTC's CID, and MGI is not withholding documents or information based on MGI's responses and production in the CID—which is why MGI has produced documents related to the FTC's surviving cancelation claim at issue in Count V, even though the FTC also received discovery on that topic during the CID. That fact distinguishes this case from those on which the FTC relies, because such cases merely permit an entity to engage in discovery even though it had conducted a pre-filing investigation[18] or address a party withholding documents in a CID.[19] But MGI's production of over 200,000 documents—including documents from 26 unique custodians—and hundreds of pages of written responses during the CID is relevant to whether the FTC's exceptionally broad discovery into Counts III and IV is proportional to the needs of the case.[20] In short, the immense

---

[18] *See SEC v. Sargent*, 229 F.3d 68, 74 (1st Cir. 2000) (merely permitting agency to engage in discovery in litigation, despite its pre-filing investigation); *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 857 (S.D.N.Y. 1997) (same).

[19] *See United States v. Witmer*, No. 1:93-cv-1410, 1993 WL 409913, at *211 (M.D. Pa. Oct. 8, 1993) (addressing party withholding documents in CID).

[20] To call hundreds of thousands of documents, from 26 unique custodians, in addition to hundreds of pages of interrogatory and written question responses "limited" and an "accommodation," as the FTC does, is laughable.

amounts of discovery that the FTC obtained via the CID should be taken into account in deciding whether even more discovery is warranted (it is not).

Moreover, MGI can and will produce documents sufficient to show that the conduct at issue in Counts III and IV has permanently ceased as a factual matter, such as by providing documents reflecting its current relevant policies. Contrary to the FTC's claims that the Court "should not credit" MGI's efforts to compromise, the FTC did not ask narrow discovery about *current* practices and policies (because it knows it will not like the answer), and instead asked exceedingly broad discovery going back nearly ten years to 2013. Additionally, the FTC asked much of this discovery of the wrong entity; for example, in Interrogatory No. 7, the FTC asked about "Match's policies related to Customer Chargebacks." But as MGI noted in response, the interrogatory wrongly implies that MGI has a "policy related to Customer Chargebacks." J. App. at 023. It does not, because it has no involvement with chargebacks; it is only a holding company. So it had nothing to disclose. Perhaps recognizing that it asked the question of the wrong entity, the FTC recently served a similar interrogatory on Match Group, LLC ("MGL")—the entity that owns, operates, and controls Match.com—which MGL plans to answer as to its current chargeback policy. What is more, MGI's counsel explained the current chargeback policy to the FTC during the parties' September 19 conference. The FTC simply did not want to listen. The FTC's demand for exceedingly burdensome document review and interrogatory responses about practices that were permanently discontinued years ago and for which the FTC has already been offered all of the relief it could obtain after trial is completely unjustifiable and absurd (and raises the real possibility that FTC has some other motive for insisting on this highly burdensome and irrelevant discovery).

10

Lastly, the FTC's assertions that external evidence suggests that some of the alleged illegal conduct may still be ongoing on Match.com is contrary to the FTC's allegations in the Amended Complaint, which allege that the chargeback practice in Count IV was in existence until "mid-2019." Dkt. 116, Am. Compl. ¶ 3 ("Fifth, until mid-2019, when consumers disputed charges relating to any of these practices and lose the dispute, Defendants denied consumers access to paid-for services."). The FTC's claim is also contrary to the Stipulation, Dkt. 146, which makes clear that Match.com does not delete or terminate accounts due to a chargeback in which Match.com prevails, as MGI also explained to the FTC at the September 19 meeting. If there were any doubt left, as noted above, MGI will produce documents sufficient to show the discontinuance of the policies challenged in Counts III and IV, including its current chargeback policies. But that does not warrant a fishing expedition of 10 years of discovery into a permanently discontinued practice. For these reasons, the Court should sustain MGI's objections to the FTC's discovery requests.[21]

### 3.     FTC's Position: MGI's "stipulation" denying the FTC's allegations does not relieve its discovery obligations.

MGI has also objected to responding to numerous requests because it claims that MGI is "prepared to enter a binding stipulation in a form acceptable to the Court[.]"[22] But MGI is not relieved of its discovery obligations simply because it denies the FTC's allegations via a "stipulation,"[23] As noted above in Response I.B.1, which the FTC incorporates here by reference,

---

[21] Contrary to the FTC's assertions, the Court has not addressed—and certainly has not already rejected—these discovery issues. Just because the FTC's claims (barely) survived a Motion to Dismiss does not entitle the FTC to seek whatever discovery it wants, including 10 years' worth of discovery into permanently discontinued practices. The Court must still apply Rule 26's relevance and proportionality factors.

[22] *See* J. App. at 011–13, 019, 021–23, 141, 147, 156, 158, 159, 162, 169, 171, 174, 178, 182, and 182.

[23] Moreover, the FTC notes that MGI's representation that it would agree to a stipulation regarding the conduct alleged in Counts III and IV is inconsistent with MGI's prior claims, made in these

the FTC is entitled to discovery to prove both that MGI violated the law as alleged in Counts III and IV and that the requested relief (i.e., an injunction prohibiting MGI from engaging in similar misconduct on Match.com and its other dating sites) is appropriate and necessary. While MGI may deny the FTC's allegations—whether it characterizes its denial as an Answer, "Stipulation," or otherwise—MGI is required to fulfill its discovery obligations. The FTC need not take MGI's denials as true, and it need not prove its case to MGI's satisfaction before MGI is obligated to provide discovery. This authority belongs to the Court, and the Court determined that discovery on these counts must proceed when it denied MGI's Motion to Dismiss these counts. Moreover, in addition to being unsupported by authority and contrary to the Federal Rules, MGI's position would lead to an absurd result. If MGI's position were upheld, any defendant could prevent discovery in a case where the plaintiff seeks injunctive relief—simply submit a stipulation denying the conduct is ongoing or will recur, and the case ends without an enforceable order.

In response, MGI asserts that its fact stipulation establishes that "the FTC simply will not take 'yes' for an answer." *See* MGI Response B.2. It is unclear, however, what MGI believes it is saying "yes" to. Through this stipulation, MGI merely denies the FTC's allegation that the conduct is likely to recur. It is in essence no different from the Answer MGI filed in this case, which likewise denied the FTC's allegations, and it deserves no additional weight. Contrary to MGI's claims of agreement, the parties disagree about (1) whether MGI violated the law;[24] (2) whether the conduct is likely to recur (if in fact it has been suspended); (3) whether enforceable injunctive

_____

discovery responses and in filings before the Court, that "Match Group, Inc. does not own or operate Match.com." *See, e.g.*, J. App. at 027; *see also* Doc. 133 at 21 ("MGI does not own, operate, or control Match.com[.]").

[24] MGI's counsel represented at the face-to-face meeting that Defendants will not contest liability as to Counts III and IV should the Court later conclude that the alleged conduct is likely to recur. However, this position is not reflected in MGI's fact stipulation or any other filing.

relief is appropriate; and (4) if so, the scope of this injunctive relief. MGI has not said "yes" to the FTC on these disputed issues, which these discovery requests concerns. Therefore, MGI should be ordered to respond to these requests.

Contrary to MGI's claim, MGI's fact stipulation does not represent broader relief than the FTC could receive at trial. First, MGI's stipulation is unenforceable. MGI claims that this stipulation represents a "binding and sincere commitment" to not engage further in illegal conduct. However, should MGI later renege on these vague assurances, the FTC and the Court would be left without recourse. Tellingly, as Match well knows, the FTC remains willing to enter an enforceable injunction to resolve Counts III and IV. Second, the FTC seeks injunctive relief that will ensure that Defendants do not violate the law in similar but marginally different ways from the misconduct alleged in the complaint, as the "stipulation" would.[25] MGI's stipulation, even if enforceable, is much narrower in scope than the relief that the FTC is entitled to under the law. For example, the FTC seeks to prevent Defendants from engaging in this type of misconduct regardless of the platform. This is critical given that Defendants own and operate dozens of similar dating websites. Defendants' stipulation, however, is limited in scope to Match.com.

---

[25] *See FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 395 (1965) (citations and quotation marks omitted) ("The Commission is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past. Having been caught violating the Act, respondents must expect some fencing in."); *Kraft, Inc. v. FTC*, 970 F.2d 311, 326 (7th Cir. 1992) (describing factors used to assess appropriateness of "fencing-in" relief) (citations omitted). In *Colgate-Palmolive*, the Supreme Court affirmed an order that covered "any product" based on defendant's misrepresentation regarding one product line. *See Colgate-Palmolive Co.*, 380 U.S. at 394.

4. **MGI's Position: The FTC's Discovery Requests on Counts III and IV Are Overly Broad, Unduly Burdensome, and Not Proportional to the Needs of the Case Given MGI's Repeated Representations that the Practices Have Permanently Ceased, including MGI's Stipulation Regarding Permanently Discontinued Practices on Match.com.[26]**

MGI incorporates in full its detailed response to the previous section, which raises virtually the same issue, *see supra* Section I.B.2, and its detailed response to the next section, to address the FTC's assertions that an injunction including dating sites other than Match.com would be proper, *see supra* Section II.B.2. In short, even if the FTC could prevail at trial on Counts III and IV of the Amended Complaint (it will not), the FTC would be entitled only to injunctive relief, as the Court eliminated any claim for monetary relief. But Counts III and IV concern allegations only about Match.com and practices that were *permanently discontinued* by Match.com in April and March 2019, respectively. Moreover, MGI filed in this Court the Notice of Verified Stipulation Regarding Permanently Discontinued Practices on Match.com. J. App. at 218-24.[27]

Moreover, the Stipulation, contrary to the FTC's claims, is far more than a denial of the FTC's allegations. First, the FTC does not even allege in its Amended Complaint that the challenged conduct in Counts III and IV is ongoing; rather, it admitted that the conduct was discontinued in 2019. Dkt. 116, Am. Compl. ¶ 3. MGI *agrees* with that allegation; it does not deny it. Second, the Stipulation states that Match.com is not currently engaging in the challenged conduct. Third—and critically—the Stipulation commits Match.com to *never again* engage in the challenged conduct. It is not simply a denial (especially given that it is verified under oath by an MGI and MGL executive). What is more, the Stipulation provides the FTC *broader relief* than it

---

[26] MGI will not comment on any settlement discussions with the FTC.

[27] To be clear, MGI denies that it is liable for any of the practices at issue in the Amended Complaint. MGI never said that it would not contest liability as to Counts III and IV. Rather, MGI said that it would not try a liability case because MGI is entitled to summary judgment on those Counts because the practices were permanently discontinued years ago. *Contra* note 23.

could obtain if the FTC succeeded at trial, by promising to never reinstate the challenged practices at all.[28] *See id.* Thus, there is simply no injunctive relief to award. The FTC cites no case to support the proposition that the FTC could burden a *parent* company with discovery into (or injunctive relief related to) *subsidiaries'* products.[29] Thus, the FTC's requested discovery regarding the practices challenged in Counts III and IV is not relevant or proportional to the needs of the case.

The FTC refuses to count as a "win" for it or for consumers that the practices the FTC put at issue in Counts III and IV of the Amended Complaint have been permanently discontinued and will never be reinstated. Instead, the FTC is demanding exceptionally broad discovery—with no limit based on the fact it can get no monetary relief, no limit based on the fact that the practices have been permanently discontinued, and no limit based on the fact that the practices will never be reinstated. For these reasons, the Court should sustain MGI's objections to the FTC's discovery requests.[30]

## II.    Disputed Issue #2: Whether MGI must produce documents relating to its other dating websites.

### A.    RELEVANT DISCOVERY REQUESTS

This dispute pertains to MGI's responses and objections to the FTC's First Requests for Production at Specific Objection to Instructions and Definitions Nos. 2, 5, 10, 11, 13, and 14, and Responses Nos. 1-14, 16-18, 20-35 and the FTC's First Interrogatories at Specific Objection to

---

[28] For example, the Stipulation promises to never reinstitute the Guarantee offer *at all*, whereas the most the FTC could obtain after trial is an injunction requiring that the terms of any Guarantee be disclosed in a different manner.

[29] *See, e.g.*, *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374 (1965) (not permitting discovery into (or injunctive relief related to) subsidiaries' products merely by virtue of suing parent or holding company); *Kraft, Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992) (same).

[30] The Stipulation is on behalf of both MGI (which the FTC alleges owns, operates, and controls Match.com) and Match Group, LLC (the subsidiary that actually owns, operates, and controls Match.com), so there is no doubt that the Stipulation prevents the challenged practices from being reinstituted on Match.com.

Instructions and Definitions Nos. 2, 5, 10, 11, 13, and 14, and Responses Nos. 2, 4, 7-9. J. *See* J. App. at 136, 137, 139, 140–57, 158–61, 162–84; J. App. at 006, 007, 009, 010, 011–13, 023– 27.

## B.   ARGUMENTS

### 1.   FTC's Position: The requested documents are relevant, critically important, and within MGI's possession, custody, or control. Accordingly, they must be produced.[31]

MGI has objected to responding to document requests and interrogatories concerning a few of MGI's dozens of dating sites: Tinder, OKCupid, and Plenty of Fish.[32] These requests are relevant to whether MGI continues, on its other dating sites, to engage in some of the alleged illegal conduct. Such ongoing conduct is in turn relevant to both whether MGI's alleged conduct is likely to recur and the need for broad injunctive relief. Moreover, these requests were sent after the FTC discovered public-facing evidence that MGI may be continuing some of the alleged illegal conduct on its other dating websites.[33]

---

[31] The FTC objects to authority cited in this section provided after the face-to-face meeting and not until the day of the filing deadline.  The FTC did not have an opportunity to learn how these cases were relevant to MGI's argument until they were included in a revised joint submission, which was provided 15 minutes before the filing deadline: *Cayago Americas, Inc. v. Heinen*, No. 21-CV-61035, 2022 WL 304519 (S.D. Fla. Jan. 24, 2022); *United States v. Robinson*, 917 F.3d 856 (5th Cir. 2019); *Veterans Bros. No. 126, L.L.C. v. 7-Eleven, Inc.*, No. 16-2034, 2017 WL 345858 (E.D. La. Jan. 24, 2017); *In re ECM BioFilms, Inc.*, No. 9358, 2015 FTC LEXIS 22 (Jan. 28, 2015); *Ronald A. Katz Tech. Licensing, L.P. v. Verizon Commc'ns, Inc.*, No. CIV.A. 01-5627, 2002 WL 31356302, (E.D. Pa. Oct. 16, 2002).

[32] *See, e.g.*, J. App. at 006, 007, 009, 010, 025, 026, 136, 137, 139–41, 143, 144, 146, 149158, 160, 161, 163–66, 168–70, 173, and 180; *see also* J. App. at 198.

[33] *See, e.g.*, Tinder's Terms of Use, https://policies.tinder.com/terms/us/en ("If you initiate a chargeback or otherwise reverse a payment made with your Payment Method, Tinder may terminate your account immediately in its sole discretion.); OkCupid's Terms and Conditions, https://help.okcupid.com/hc/en-us/articles/6640690915469-Terms-Conditions ("If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, OkCupid may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a OkCupid subscription."); and Plenty of Fish Terms of Use Agreement, https://www.pof.com/terms (same). These policies provide that customer may lose

Contrary to MGI's assertions, there is no requirement that these websites be mentioned in the Amended Complaint for the Commission to engage in discovery about them. Rather, the FTC need only establish that the request is relevant to any party's claim or defense and that MGI has the ability to produce these documents.[34] In making this determination, courts look to "the nature of the relationship between a corporate party and its affiliate to determine whether the information sought from a corporate party's affiliate is in the party's custody and control."[35]

The requested discovery is relevant for two reasons. First, it may establish MGI's ongoing violations. MGI continues to claim that "MGI does not own or operate any dating site," but the FTC alleges otherwise,[36] and, as discussed above, is an issue on which the FTC is entitled to

---

[34] *See United My Funds, LLC v. Perera*, 4:19-cv-00373, 2020 U.S. Dist. LEXIS 42711, *24 (E.D. Tex. Mar. 12, 2020) (citations and quotations omitted) ("Typically, what must be shown to establish control over documents in the possession of a non-party is that there is a relationship, either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession."); Fed. R. Civ. P. 26(b)(1).

account access by seeking a chargeback, and they do not provide for a means of having account access reinstated should the customer have its chargeback reversed.

[35] *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, 4:09–cv–3778, 2011 WL 3418396, at *2 (S.D. Tex. 2011). "Among the factors used by courts to determine whether one corporation may be deemed under control of another corporation are: (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement of the nonparty corporation in the transaction, and (e) involvement of the non-party corporation in the litigation." *Id. See also Diamond Consortium, Inc. v. Manookian*, 4:19-cv-00373, 2017 WL 3301527, at *9 (E.D. Tex. Aug. 3, 2017) (citing *Steele Software Sys. Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006) (citations omitted) ("Courts have ordered corporate parties to produce documents in the possession of corporate relatives—such as parent, sibling, or subsidiary corporations") ; *Bank of New York v. Meridien Biao Bank Tanz.*, 171 F.R.D. 135, 146 (S.D.N.Y. Mar. 21, 1997) ("Under Rule 34 . . . 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.").

[36] *See* Doc. 112 at ¶11 (alleging that MGI controls approximately 25 percent of the online dating market and operates approximately 45 online dating sites).

discovery.[37] MGI should not have the power to unilaterally stake a claim on a contested legal issue and evade all attempts to uncover the facts needed to evaluate the veracity of its assertions. The FTC's case is against Defendants, not just "match.com."

Second, the FTC's request for documents related to MGI's other dating websites is relevant to the issue of whether MGI should be placed under injunctive relief because there is a reasonable expectation of continued violations absent restraint. As this Court described in rejecting one of MGI's motion to dismiss arguments, courts in this circuit use a number of factors to determine the likely of recurrence, one of which is the likelihood that the defendant's occupation presents opportunities for future violations.[38] It would be clearly relevant for the Court that Defendants have the ability to engage in these same practices on the dozens of other dating websites they operates. Moreover, the FTC has discovered publicly available evidence that MGI's dating platforms that are the subject of this discovery dispute may be engaging in the same or similar conduct that the FTC challenged on Match.com. Receiving discovery on these issues would precisely enable a determination of "(1) the deliberateness and seriousness of the violation, (2) the degree of transferability of the violation to other products, and (3) any history of prior violations."[39]

The cases MGI relies upon do not support its position that these documents may be withheld. For example, the *Fraserside* case actually supports the FTC's position that the Court

---

[37] The FTC further notes that MGI has taken a contradictory stance on this before, informing both federal regulators and the federal judiciary that it operated dating sites including Match.com. *See infra*, n.32 (quoting MGI's public SEC filings); Doc. 110 at 5 (discussing MGI's representations to a federal court in *Epic Games, Inc., vs. Apple Inc.*, Nos. 21-16506 & 21-16695 (9th Cir.) (Nov. 29, 2021)).

[38] *See* Doc. 86 at 11-12.

[39] *See Kraft, Inc. v. FTC*, 970 F.2d 311, 326 (7th Cir. 1992) (describing factors used to assess appropriateness of "fencing-in" relief) (citations omitted); *see also FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 394 (1965) (affirming order that covered "any product" based on defendant's misrepresentation regarding one product line).

should require MGI to produce documents related to its other dating platforms. In *Fraserside*, the court permitted the plaintiff to engage in discovery on a disputed issue based on facts that it proffered, which if proven, would affect the court's resolution of that disputed issue.[40] Here, the FTC has pointed to publicly available facts that go straight to the heart of whether an injunction is appropriate, and if so, the scope of that injunction. This is a disputed issue and therefore the Court should compel MGI to produce. Similarly, in *Deloitte* the Tenth Circuit vacated and remanded a magistrate judge's decision that limited discovery, noting that the magistrate judge was vested with the discretion to weigh the utility of even expansive discovery requests that related to the defendant's practices in *other* cases. *Deloitte* discussed limits on discovery where additional evidence would not effect the resolution of the matter because, for example a financial interest was obvious or a denial of a claim was "so one-sided that the result would not change" even if discovery showed a conflict of interest.[41] Here, the FTC is entitled to seek discovery on matters that will have a bearing on the outcome of this matter.[42]

For the sake of completeness, the FTC notes these documents are properly requested from MGI because it is the parent company of the entities that own and control these platforms.[43] Indeed,

---

[40] *See Fraserside IP LLC v. Gamma Ent.*, 286 F.R.D. 416, 417 (N.D. Iowa 2012).

[41] *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1164 (10th Cir. 2010). The FTC does not know why MGI cites the *Deloitte* case as a Fifth Circuit opinion.

[42] *Torch* helps MGI even less, as that case relates to whether a plaintiff could amend a complaint for the second time after a suit was dismissed. *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009).

[43] *See, e.g.,* Match Group, Inc.'s February 24, 2022 Form 10-K, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/891103/000089110322000020/mtch-20211231.htm ("Match Group, Inc., through its portfolio companies, is a leading provider of digital technologies designed to help people make meaningful connections. Our global portfolio of brands includes Tinder®, Match®, Hinge®, Meetic®, OkCupid®, Pairs™, PlentyOfFish®, OurTime®, Azar®, Hakuna™ Live, and more[.]"); "Match Group Reports Second Quarter 2022 Results," https://ir.mtch.com/news-and-events/press-releases/press-release-details/2022/Match-Group-Reports-Second-Quarter-2022-Results/default.aspx (representing same).

as MGI has acknowledged, in response to the FTC's 2017 CID, MGI produced thousands of documents that were ostensibly in the possession, custody, or control of Match Group LLC's predecessor, Match.com LLC. Moreover, MGI does not appear to even contest that it *could* produce these documents—it simply believes it should not have to.

> **2.      MGI's Position: Discovery Regarding Dating Sites Other than Match.com Is Irrelevant and an Improper Fishing Expedition.**

The discovery the FTC seeks into dating sites other than Match.com is not relevant—and amounts to a mere fishing expedition—because the allegations in the FTC's Amended Complaint are limited to Match.com. During the September 19 meeting, the FTC could not explain to MGI what allegations in the Amended Complaint allege misconduct on any non-Match.com dating sites. The following excerpts from the FTC's Amended Complaint reflect this stark reality:

---

### SUMMARY OF THE CASE

2.      Defendants operate Match.com, an online dating service. Consumers using Match.com create profiles and communicate using either free, limited services ("nonsubscribers") or a broader range of paid services ("subscribers").

---

3.      Since at least 2013, Defendants have maintained the following five deceptive or unfair practices to induce consumers to subscribe to Match.com and to keep them subscribed.

---

Dkt. 116, Am. Compl. ¶¶ 2-3.

> *Defendants' Billing and Cancellation Practices for Match.com Subscriptions*
>
> 54.    Consumers who purchase a subscription package must complete an online enrollment process at Match.com and provide their credit card or other payment information to pay for the initial subscription package. Defendants' subscription packages include a "negative option renewal" feature, meaning that Defendants will automatically charge consumers for a new term at the end of each subscription period, unless the consumer has affirmatively canceled the subscription.

Dkt. 116, Am. Compl. ¶ 54.[44]

> **Count III**
> **Deceptive "Guarantee" Program**
>
> 75.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of its online dating service, Defendants have represented, directly or indirectly, expressly or by implication, that consumers would receive a free six-month subscription if they purchased a six-month Match.com subscription and did not "meet someone special" during that initial six-month period on Match.com.

Dkt. 116, Am. Compl. ¶ 75.[45]

---

[44] The remaining Count V-related allegations are also limited to Match.com. *See* Dkt. 116, Am. Compl. ¶¶ 55-60.

[45] The remaining Count III allegations are also limited to Match.com. *See* Dkt. 116, Am. Compl. ¶¶ 76-77.

<div style="border:1px solid">

### Count IV
### Unfair Denial of Access to Consumers' Accounts

78. In numerous instances, Defendants have barred consumers who have disputed charges through their financial institutions from using paid-for Match.com subscription services.

</div>

Dkt. 116, Am Compl. ¶ 78.[46]

<div style="border:1px solid">

### Count V
### Failure to Provide a Simple Mechanism for Consumers to Stop Recurring Charges

86. In numerous instances, in connection with charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as described in Paragraphs 54-60 above, Defendants have failed to provide simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account.

</div>

Dkt. 116, Am. Compl. ¶ 86.[47]

 The Federal Rules of Civil Procedure make clear that discovery must be *relevant* to the allegations in the complaint (and proportional to the needs of the case) to be discoverable. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case[.]"); *see also Murphy v. Deloitte & Touche Grp. Ins. Plan,* 619 F.3d 1151, 1163 (10th Cir. 2010) ("Rule 26(b) [does] not permit unlimited discovery."); *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009) ("The role of discovery, however, is to find support for properly

---

[46] The remaining Count IV allegations are also limited to Match.com. *See* Dkt. 116, Am. Compl. ¶¶ 79-80.

[47] The remaining Count V allegation is also limited to Match.com. *See* Dkt. 116, Am. Compl. ¶ 87.

pleaded claims, not to find the claims themselves."). The FTC relies on cases in which, unlike here, the relevancy of the information sought was not in dispute.[48]

Contrary to the FTC's claim, it is not entitled to discovery regarding dating websites not at issue in the Amended Complaint.[49] *See, e.g.*, *Fraserside IP LLC v. Gamma Ent.*, 286 F.R.D. 416, 421-22 (N.D. Iowa 2012) (holding plaintiff could seek discovery of websites not relevant to the allegations in the complaint *only* for jurisdictional purposes, but not for liability purposes, and only to the extent that those websites were *owned* by the named defendants). Discovery into any other dating sites would amount to an improper fishing expedition. *See Allstate Ins. Co. v. Plambeck*, No. 3-08-CV-0388-M, 2008 WL 5411435, at *1 (N.D. Tex. Dec. 29, 2008) (holding broad requests that go beyond individuals involved in conduct alleged in complaint "in hopes of finding other evidence that may or may not be admissible at trial would amount to nothing more than a fishing expedition"); *U.S. Risk, LLC v. Hagger*, No. 3:20-CV-00538-N, 2022 WL 209746, at *5 (N.D. Tex. Jan. 24, 2022) (explaining fishing expedition exists when information sought is not directly and logically tied to an attempt to find evidence affecting merits of case).

Furthermore, purported conduct on other websites (which the FTC failed to include in its Amended Complaint) cannot be a basis for demanding discovery from MGI, because MGI is not engaging in any of the complained-of acts on *any* site, as MGI does not own or operate any dating site; it is a holding company. Just as Match.com is owned and operated by MGL, other dating sites

---

[48] *See United My Funds, LLC v. Perera*, 4:19-cv-00373, 2020 WL 1225042, *8 (E.D. Tex. Mar. 12, 2020) (discussing whether documents were in custody or control of party, not whether information sought was relevant); *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc*., No. 4:09-cv-3778, 2011 WL 3418396, at *2 (S.D. Tex. 2011) (same); *Diamond Consortium, Inc. v. Manookian*, No. 4:19-cv-00373, 2017 WL 3301527, at *9 (E.D. Tex. Aug. 3, 2017) (same).

[49] Not only does the FTC not allege in the Amended Complaint that any MGI-affiliated entities engage in conduct similar to that at issue in the Amended Complaint, but despite repeated requests orally and in writing, the FTC has *never* explained to MGI what the alleged similar bad conduct is. The FTC is engaged only in a fishing expedition to attempt to find such conduct.

are owned and operated by separate entities as well. If the FTC wanted to include allegations related to other websites and the entities that own and operate them, it needed to do so by the May 13, 2022 pleading amendment deadline. *See* Scheduling Order, Dkt. 100 ¶ 5. It failed to do so. Additionally, although the FTC claims that this discovery "may establish MGI's ongoing violations" on other websites, the FTC did not limit its discovery requests to *MGI's* conduct related to other dating sites; it asked about *any* conduct on those sites, regardless of whether it was directed by MGI. *See, e.g.*, RFP No. 24 (demanding "All documents related to software flaws that prevented Customers from: a. logging into their accounts; b. using their accounts; or c. canceling their accounts," with "Customers" defined to include any individual with an account on Match.com, OKCupid, Plenty of Fish, and Tender).

At the September 19 meeting, the FTC relied on a string of hypotheticals to justify this discovery, claiming that (1) *if* MGI controls Match.com (it does not), (2) *if* MGI instructed Match.com to engaged in the conduct challenged in the Amended Complaint (it did not), (3) *if* MGI also controls other dating sites that are owned and operated by other MGI subsidiaries (it does not), (4) *if* those other dating sites engage in conduct similar to that challenged in the Amended Complaint (even though the FTC made no such allegations in its Amended Complaint), *and* (5) *if* MGI instructed those other dating sites to engage in that conduct (it did not), *then* the FTC would be entitled to fencing-in relief applicable to other dating sites owned and operated by subsidiaries of MGI. None of these theories is adequately alleged in the Amended Complaint (and most of them are not alleged *at all*).[50] This Court should decline the FTC's "invitation to join [its]

---

[50] *See Cayago Americas, Inc. v. Heinen*, No. 21-CV-61035, 2022 WL 304519, at *2 (S.D. Fla. Jan. 24, 2022) (citing Fed. R. Civ P. 26(b)(1)) ("The Court finds that the requested discovery is not relevant because Plaintiffs have not alleged an alter ego or veil piercing theory of liability."); *Veterans Bros. No. 126, L.L.C. v. 7-Eleven, Inc.*, No. 16-2034, 2017 WL 345858, at *1, *7 (E.D.

'improper fishing expedition in support of a hypothetical claim.'" *United States v. Robinson*, 917 F.3d 856, 869 (5th Cir. 2019).

Because the requested discovery about other dating sites is not relevant, it is unnecessary—and would be disproportionate to the needs of the case—to engage in the possession, custody, and control analysis that would be required to determine whether MGI could produce the requested documents from other entities or websites. "Assessing whether a party has 'control' of information sought in discovery involves a fact-specific inquiry in which the requesting party bears the burden of proof." *Superior Woodwork & Trim LLC v. Professional Machinery Grp. Inc.*, No. 2:19-CV-01348, 2021 WL 4888957, at *4 (W.D. La. Oct. 19, 2021). As the FTC acknowledges, that analysis requires assessment of multiple factors, such as "(a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement of the nonparty corporation in the transaction, and (e) involvement of the non-party corporation in the litigation." *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, 2011 WL 3418396, at *2 (S.D. Tex. 2011).[51] There is no need to engage in this fact-intensive analysis—and demanding that MGI do so would be unduly burdensome and disproportionate to the needs of the

---

La. Jan. 24, 2017) ("[Third-party plaintiff] has not alleged fraud or shown that piercing the corporate veil is warranted, and therefore further discovery on the matter is not warranted either."); *Ronald A. Katz Tech. Licensing, L.P. v. Verizon Commc'ns, Inc.*, No. CIV.A. 01-5627, 2002 WL 31356302, at *2 (E.D. Pa. Oct. 16, 2002) ("[Plaintiff] has failed to make sufficient allegations to warrant discovery into an alter-ego/piercing the corporate veil claim. The Plaintiff has never alleged that piercing the corporate veils of [Defendant's] subsidiaries is necessary to prevent fraud, injustice, illegality, or criminal conduct. They merely alleged 'that [Defendant] is a well-coordinated, centrally controlled entity.'").

[51] The fact that MGI and MGL have previously attempted to cooperate with the FTC and streamline discovery by *allowing* MGI to produce documents from MGL when the FTC began an investigation of and then sued the wrong entity (MGI) is not proof that MGI can demand production of documents from other subsidiaries, as the FTC claims. MGI's previous attempts to work with the FTC should not be used against it.

case—given that the requested documents are irrelevant (for the reasons explained above) *regardless* of which entity possesses them for purposes of production obligations. The FTC failed to carry its burden, and that reason alone is sufficient to deny the FTC's Motion to Compel on this point.

<div align="center">[signature page to follow]</div>

Dated: September 21, 2022

Respectfully submitted,

/s/ DRAFT

Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and Match Group, LLC*

/s/ Reid Tepfer

M. Hasan Aijaz
Reid Tepfer
Erica Rollins Hilliard
Sarah Zuckerman (admitted *pro hac vice*)
John R. O'Gorman (admitted *pro hac vice*)
Virginia Bar No. 80073 (Aijaz)
Texas Bar No. 24079444 (Tepfer)
Mississippi Bar No. 104244 (Hilliard)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9386 (Aijaz)
T: (214) 979-9395 (Tepfer)
T: (214) 979-9379 (Hilliard)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
F: (214) 953-3079
maijaz@ftc.gov;
rtepfer@ftc.gov;
ehilliard@ftc.gov
szuckerman@ftc.gov;
jogorman@ftc.gov

*Attorneys for the FTC*

27