**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                              Plaintiff,<br><br>      vs.<br><br>MATCH GROUP, INC., a corporation, and<br>MATCH GROUP, LLC, formerly known as<br>MATCH.COM, LLC, a limited liability<br>company,<br><br>                              Defendants. | Case No. 3:19-cv-02281-K |

**JOINT APPENDIX IN SUPPORT OF JOINT SUBMISSION ON PLAINTIFF FTC'S
MOTION TO COMPEL DISCOVERY RESPONSES AND PRODUCTION OF
<u>DOCUMENTS FROM DEFENDANT MATCH GROUP, INC.</u>**

Plaintiff Federal Trade Commission ("FTC") and Defendant Match Group, Inc. ("MGI")

submit this Joint Appendix in support of the Joint Submission on the FTC's Motion to Compel

Discovery Responses and Production of Documents from MGI.

| Ex. | Description | App. Page(s) |
|---|---|---|
| 1. | Defendant Match Group Inc.'s First Amended Responses and Objections to Plaintiff Federal Trade Commission's First Set of Interrogatories | APP 001-028 |
| 2. | Verification of Match Group, Inc.'s First Amended Responses to Plaintiff Federal Trade Commission's First Set of Interrogatories | APP 029-031 |
| 3. | Defendant Match Group Inc.'s First Amended Responses and Objections to Plaintiff Federal Trade Commission's First Requests for Admissions | APP 032-130 |
| 4. | Defendant Match Group Inc.'s First Amended Responses and Objections to Plaintiff Federal Trade Commission's First Requests for Production | APP 131-190 |
| 5. | Letter from Angela Zambrano, Sidley Austin, to Hasan Aijaz, Federal Trade Commission (September 1, 2022) | APP 191-199 |
| 6. | Plaintiff Federal Trade Commission's First Set of Requests for Production of Documents to Defendant Match Group, Inc. | APP 200-216 |

| Ex. | Description | App. Page(s) |
|---|---|---|
| 7. | Match Group, Inc. and Match Group, LLC's Notice of Verified Stipulation Regarding Permanently Discontinued Practices on Match.com | APP 217-224 |
| 8. | Letter from Linda A. Goldstein, Baker & Hostetler LLP, to Zachary A. Keller, Federal Trade Commission (August 6, 2019) | APP 225-227 |
| 9. | Letter from Chad Hummel, Sidley Austin LLP, to Reid Tepfer, Federal Trade Commission (May 20, 2022) | APP 228-229 |
| 10. | Plaintiff's First Amended Responses to Defendant Match Group, Inc.'s First Set of Interrogatories | APP 230-250 |

Dated:  September 21, 2022

/s/ Angela C. Zambrano
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and Match Group, LLC*

Respectfully submitted,

/s/ Reid Tepfer
M. Hasan Aijaz
Reid Tepfer
Erica Rollins Hilliard
Sarah Zuckerman (admitted *pro hac vice*)
John R. O'Gorman (admitted *pro hac vice*)
Virginia Bar No. 80073 (Aijaz)
Texas Bar No. 24079444 (Tepfer)
Mississippi Bar No. 104244 (Hilliard)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9386 (Aijaz)
T: (214) 979-9395 (Tepfer)
T: (214) 979-9379 (Hilliard)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
F: (214) 953-3079
maijaz@ftc.gov;
rtepfer@ftc.gov;
ehilliard@ftc.gov
szuckerman@ftc.gov;
jogorman@ftc.gov

*Attorneys for the FTC*

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

FEDERAL TRADE COMMISSION,

                    Plaintiff,

    vs.

MATCH GROUP, INC., a corporation,

                    Defendant.

Case No. 3:19-cv-02281-K

### DEFENDANT MATCH GROUP, INC'S FIRST AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Rules") Defendant Match Group, Inc. ("Match"), by and through its undersigned counsel, amends its objections and responses to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") First Set of Interrogatories (each an "Interrogatory" and, collectively, the "Interrogatories") as follows:

## I.    GENERAL OBJECTIONS

1.    <u>Irrelevant</u>. Match objects to each and every Interrogatory to the extent that it purports to seek information that is irrelevant to Plaintiff's claims and is not reasonably calculated to lead to the discovery of admissible evidence. In particular, Match objects to each and every Interrogatory to the extent that it seeks information relevant only to the claims that were dismissed in the Court's March 24, 2022 Order on Match's Motion to Dismiss (the "Dismissed Claims").[1] For the avoidance of doubt, Match will not withhold information merely because it is related to

---

[1] ECF No. 86 (dismissing Counts I & II of FTC's Original Complaint, filed on September 25, 2019, at ECF No. 1, due to Match's affirmative defense of CDA § 230 immunity). The FTC amended its Original Complaint on July 19, 2022, ECF No. 116. All references herein to the Complaint refer to the operative Complaint.

the Dismissed Claims, if such information is otherwise responsive to the Interrogatories related to non-dismissed claims. Match further objects to each and every Interrogatory to the extent that it seeks documents or information from an entity or dating site not named in the present litigation in any operative pleading, including but not limited to OKCupid, Plenty of Fish, and Tinder. These responses are being provided solely by Match Group, Inc. based on information within its possession, custody and control.

2.    <u>Undue Burden</u>. Match objects to each and every Interrogatory to the extent that it seeks to impose obligations beyond what is required under the Rules or Local Rules or is unduly burdensome. Accordingly, Match objects to each and every Interrogatory where the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

3.    <u>Overbroad</u>. Match objects to each and every Interrogatory to the extent that it seeks information that is beyond the scope of Plaintiff's claims, including, but not limited to, documents and information related to Plaintiff's Dismissed Claims, and documents and information related to entities or dating sites that are not yet party to, or otherwise related to, this litigation, such as OKCupid, Plenty of Fish, and Tinder. Match further objects to each and every Interrogatory to the extent that it seeks documents and information that are not within Match's possession, custody, or control, including by seeking documents and information from and related to entities that are not named as parties to this litigation.

4.    <u>Privilege</u>. Match objects to each and every Interrogatory to the extent it seeks documents or information that is subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all

communications with, or work product of, any outside attorney) (collectively, "Privileged Information"). Any inadvertent disclosure of Privileged Information by Match shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

5. <u>Vagueness and Ambiguity</u>. Match objects to each and every Interrogatory to the extent that such Interrogatory is so vague, ambiguous, or confusing as not to be susceptible to a reasoned interpretation or response. In the absence of clear instructions or definitions associated with terms that are too vague, ambiguous, or confusing, Match will give the terms used in the Interrogatory a reasonable interpretation.

6. <u>Accessibility</u>. Match objects to each and every Interrogatory to the extent that it seeks information that is not reasonably accessible in the ordinary course of business.

7. <u>Cumulative Interrogatories and Availability of Information Elsewhere</u>. Match objects to each and every Interrogatory that is cumulative, duplicative of, or to which documents or information already are in the possession, custody, or control of Plaintiff, or have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive. In particular, Match objects to each and every Interrogatory insofar as it seeks documents or information already obtained by Plaintiff during the FTC's prior investigation in connection with the Civil Investigative Demand served on Match in 2017 (the "2017 CID"). For the avoidance of doubt, Match will comply with the ESI Order, which provides, "The parties need not re-produce in discovery documents that were already produced to the FTC in response to the FTC's CID. Instead, the parties will refer to the bates number of the relevant documents." ECF No. 132 at 4.

8. <u>Lack of Possession, Custody, or Control</u>. Match objects to each Interrogatory to the extent it does not appear to be addressed to Match and seeks information that is necessarily outside Match's knowledge.

9. <u>Legal Conclusions</u>. Match objects to each and every Interrogatory to the extent that it requires Match to draw legal conclusions.

10. <u>Reservation of Right to Supplement</u>. Given the stage of the litigation, Match has not completed its investigation of the facts or law relating to this action, and discovery in this matter is ongoing. Accordingly, consistent with the Rules, these responses and objections are made without prejudice to, and are not a waiver of, Match's right to amend, correct, or supplement these responses, and are subject to Match's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist. Match provides these responses in good faith after reasonable inquiry and based on information that it knows or can readily obtain.

11. <u>No Waiver</u>. By responding to these Interrogatories, Match does not concede the relevancy of an Interrogatory, nor the relevancy or admissibility of any information provided in response thereto. The fact that information is provided in response to a particular Interrogatory does not mean that it is probative of any particular issue in this case. Match expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, privilege, confidentiality, hearsay, or admissibility as evidence for any other purpose. Moreover, the right to object on any ground to the use of the responses or information provided, in any aspect of this or any other court action, arbitration, or judicial or administrative proceeding or investigation, is reserved.

## II.      SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.      Match specifically objects to the Interrogatories' Instructions and Definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules and the Local Rules. In responding to these Interrogatories, Match will follow the requirements set forth in the Rules and the Local Rules.

2.      Match specifically objects to the definitions of "Match," the "Company," and "You" because they are vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines these term as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." This definition necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Match objects to Plaintiff's definitions of "Match," the "Company," and "You" as defined to "include any descriptor used by Match in its business practice," again encompassing other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. In responding to these Interrogatories, Match will construe the terms "Match," the "Company," and "You" to refer only to Match Group, Inc.

3.      Match specifically objects to the definitions of "and" and "or" and because they are ambiguous and confusing. Match will interpret these terms to have their plain, ordinary, and common sense meaning. Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor

proportional to the needs of the case and exceedingly burdensome. In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

4.      Match specifically objects to the definition of "any" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common sense meaning. Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

5.      Match specifically objects to the definitions of "Customer" and "Customers" as overbroad, unduly burdensome, and oppressive, insofar as they purport to cover individual(s) "who have maintained an account on *any website* owned or operated by the Company, including OKCupid, Plenty of Fish, and Tinder," which Match does not actually own or operate, and which encompasses websites and entities that are not party to, or otherwise related to, the present litigation. Match further objects that the definitions of "Customer" and "Customers" are thus not tailored to the allegations in the complaint, not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence. In responding to these Interrogatories, Match will construe the terms "Customer" and "Customers" to refer only to Customer(s) of Match.com.

6.      Match objects to the definition of "Document" as overly broad and unduly burdensome. Match further objects to this definition to the extent it refers to items outside of Match's possession, custody, or control, particularly through its use of the phrases "regardless of origin or location" and "however and by whomever prepared, produced, disseminated, or made."

Match further objects to this definition to the extent it refers to items in Plaintiff's possession, custody, or control, or to items that have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive. Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those required by the Rules. In responding to these Interrogatories, Match will interpret the word "Document" to have its plain, ordinary, and common sense meaning and will comply with the Rules.

7.      Match specifically objects to the definition of "each" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common sense meaning. Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

8.      Match specifically objects to the definitions of "Identity" and "the identity of" because they are ambiguous and confusing. Match will interpret these terms to have their plain, ordinary, and common sense meaning. Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

9.      Match specifically objects to the definition of "Match Group, LLC" as vague, ambiguous, confusing, and overbroad.

10.      Match objects to the definition of "OKCupid," because it is overbroad, ambiguous, and confusing. Match further objects to the definition of "OKCupid" as irrelevant, since OKCupid is not referenced in the operative Complaint, and thus any Interrogatory relying on the definition of "OKCupid" is not proportional to the needs of the case and is unduly burdensome.

11.      Match objects to the definition of "Plenty of Fish," because it is overbroad, ambiguous, and confusing. Match further objects to the definition of "Plenty of Fish" as irrelevant, since Plenty of Fish is not even referenced in the Complaint, and thus any Interrogatory relying on the definition of "Plenty of Fish" is not proportional to the needs of the case and is unduly burdensome.

12.      Match specifically objects to the definitions of "referring to" and "relating to" and because they are ambiguous and confusing. Match will interpret these terms to have their plain, ordinary, and common sense meaning. Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Interrogatories, Match will comply with the Rules and the Local Rules.

13.      Match specifically objects to the definition of "Subscriber" as overbroad, unduly burdensome, and oppressive, insofar as it purports to cover a "Subscriber" to "any website owned or operated by" Match, which would necessarily encompass websites and entities that are not party to, or otherwise related to, the present litigation. Match further objects that the definition of

"Subscriber" is thus not tailored to the allegations in the complaint and not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence. In responding to these Interrogatories, Match will construe the term "Subscriber" to refer only to Subscribers to Match.com.

14.     Match objects to the definition of "Tinder," because it is overbroad, ambiguous, and confusing. Match further objects to the definition of "Tinder" as irrelevant, since Tinder is not even referenced in the Complaint, and thus any Interrogatory relying on the definition of "Tinder" is not proportional to the needs of the case and is unduly burdensome.

15.     The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Interrogatories.

## III.     SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

**INTERROGATORY NO. 1:** Identify, including by job title, place of employment, and dates of service, all persons that Match consulted with while preparing its response to the 2017 CID, Plaintiff's First Set of Interrogatories, Plaintiff's First Requests for Production, Plaintiff's First Request for Admission, or any other submission or presentation the Company sent to the FTC. For each such person, state the 2017 CID request, discovery request, interrogatory, or other submission or presentation for which the person answered or otherwise assisted in answering.

**RESPONSE:** Match objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. Match.com has permanently discontinued the "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and

IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects to this Interrogatory because, by asking for the identity of all persons that Match "consulted with" in responding to the FTC's CID or discovery requests, it seeks documents or information that is subject to the attorney-client privilege and work-product doctrine. The FTC is not entitled to know the identity of every individual with whom Match's attorneys consulted.

**INTERROGATORY NO. 2:** Describe any criteria Match uses or has used to determine whether to grant a Customer's request for a refund relating to PTR Ads, fraud or alleged fraud, Match Guarantees, consumer's belief that they had already canceled their subscription, or his or her claimed lack of knowledge about recurring charges.

**RESPONSE:** Match objects to this Interrogatory because "PTR Ads" is vague and undefined, and to the extent this Interrogatory seeks Privileged Information. Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." Match.com has permanently discontinued the "Match Guarantee" and related practices, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint,

to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects to this Interrogatory as irrelevant, overly broad, unduly burdensome, and disproportionate to the needs of the case, in that it seeks information that is beyond the scope of Plaintiff's Complaint, because Count I and II relating to PTR Ads and fraud or alleged fraud were dismissed with prejudice by the Court on March 24, 2022. *See* ECF No. 86 ("The Court [] grants Defendant Match Group, Inc.'s Motion to Dismiss Counts I and II because Match is entitled to immunity under 47 U.S.C. § 230 of the Communications Decency Act, thus those claims are barred and dismissed with prejudice."). Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.

Subject to and without waiving the foregoing objections, Match responds as follows: Match Group, Inc. does not use any criteria to determine whether to grant a Match.com Customer's request for a refund relating to a consumer's belief that they had already canceled their subscription, or his or her claimed lack of knowledge about recurring charges because Match

Group, Inc. does not own or operate Match.com. Match expressly reserves the right to supplement

or amend this response, as discovery and document production is ongoing.

**INTERROGATORY NO. 3:** Identify and describe in complete detail the full basis for each affirmative defense You have asserted in Your Answer, including but not limited to every fact and document that supports, contradicts, refutes, or rebuts that particular affirmative defense, and every witness who may have information or testimony relevant to that particular defense.

**RESPONSE:** Match objects to this Interrogatory because "relevant" is vague and undefined and

to the extent this Interrogatory seeks Privileged Information. Match further objects to this

Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or

defenses and is not proportional to the needs of the case. Match further objects to this Interrogatory

insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or

maintained a Chargeback policy. Match.com has permanently discontinued the "Match

Guarantee" and related practices, as well as all practices related to "Chargebacks," and Match has

repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation

in a form acceptable to the Court that Match could never and would never, and Match.com would

never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this

discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or

is likely to, recur. Thus, the question of whether any injunctive relief should be issued that

addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also

dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue

in this Interrogatory. For these reasons, discovery into the questions of what occurred or whether

the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are

impermissibly burdensome and calculated to harass.

Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant,

not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as

including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities or dating sites that are not relevant to the claims or allegations in the Complaint. Match also objects to this Interrogatory as premature and to the extent it seeks to require Match to marshal all of its evidence before trial. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules. Match also objects to this Interrogatory to the extent it seeks to require Match to provide information that is not in its possession, custody, or control, or that is already in Plaintiff's possession, custody, or control.

Subject to and without waiving the foregoing objections, Match responds as follows:

First Affirmative Defense (Failure to State a Claim): Match asserts FTC's Complaint fails to state a claim, including because the Complaint names the wrong entity. Since March 2017, when the FTC served Match Group, Inc. with the Civil Investigative Demand ("CID"), Match has repeatedly informed the FTC that Match Group, Inc. is in fact a separate holding company, and Match Group, LLC (formerly named Match.com, LLC) actually owns and operates Match.com. For example, Match stated in its May 15, 2017 Interrogatory Responses to the FTC's CID that Match.com, LLC is the general operating company that operates Match.com. Delaware Secretary of State records show that Match.com, LLC filed a certificate of amendment on September 12, 2017, changing its name from Match.com, LLC to Match Group, LLC. Match continued to raise these concerns in a December 16, 2018 White Paper and in negotiating a potential Consent Order with the FTC. Additionally, shortly after the Complaint was served, counsel for Match emailed the FTC to again inform it that Match Group, Inc. was incorrectly named as a defendant in the

lawsuit and should be voluntarily dismissed. *See* Dkt. 21 at 35. Counsel for the FTC acknowledged the email but declined to voluntarily dismiss the Complaint against Match Group, Inc. *See id.* at 37.

The Complaint fails to state a claim for the additional reason that the Guarantee and Chargeback policy at issue in the Complaint were discontinued prior to the FTC filing suit, and there are no plans to resume those practices, as the FTC is aware from multiple communications. Thus, both Match Group, Inc. and Match.com are not violating, nor are they about to violate, the FTC Act.

<u>Second Affirmative Defense (Compliance with Applicable Law):</u> The Complaint's Count V fails as Match did not violate Section 4 of ROSCA, 15 U.S.C. § 8403. As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint. Rather, at all times with respect to Count V, Match.com complied with all applicable laws and acted reasonably and in good faith. As a preliminary matter, even assuming that the online cancelation flow at issue in Count V is not simple (although it is), the plain language of ROSCA requires only "simple mechanisms" for cancelation, and ROSCA does not provide that every cancelation method must be simple. Count V fails because Match.com offers several other cancelation methods in full compliance with ROSCA, including simple methods to cancel by phone, fax, email, internet chat, or standard mail, and the FTC challenges only the online cancelation method. Thus, even if the FTC were correct (which it is not) that the online cancelation flow is not simple, the existence of other unchallenged methods of cancelation defeats the FTC's claim.

Count V also fails because the Match.com online cancelation flow is not complicated or in any material way different from numerous other online subscription cancelation mechanisms. It is

essentially industry standard. Consumers in fact readily canceled using the Match.com online cancelation flow, as reflected by data proving that subscribers have no difficulty canceling via the online cancelation flow, which can be completed in less than one minute. Based on data reviewed during the FTC's pre-suit investigation, on average, 89% of Match.com subscribers who initiated an online cancelation request successfully canceled their subscription within the same day.

Third Affirmative Defense (Good Faith Belief and Conduct): As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint. Match.com's subscription cancelation flow was designed and implemented to be simple and readily accessible to users.

Fourth Affirmative Defense (Requested Relief Contrary to Public Policy): As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint. The FTC's requested relief with respect to Count V is contrary to the public interest because Match.com's online cancelation flow is intended to benefit consumers by protecting their privacy (by requiring them to insert their passwords prior to accessing private account information, such as billing), offering them discounted rates, and allowing Match.com to understand how to better serve them.

Fifth Affirmative Defense (Alleged Failure to Clearly and Conspicuously Disclose Not Material): As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint. Any alleged failure by Match.com to clearly and conspicuously disclose some requirements of the guarantee practice was not material because most consumers who did not qualify for the guarantee failed to satisfy the requirements that were unquestionably adequately disclosed (i.e., the requirements in the numbered and bullet-pointed list in the Program Rules). So even had other requirements been *more*

clearly and conspicuously disclosed (or waived), most users would not have been eligible for a guarantee regardless.

Sixth Affirmative Defense (Mootness): As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint. As to Count III, Match asserts the FTC's claim for injunctive relief is moot under applicable law. The FTC admits in its Complaint that this guarantee practice at issue in Count III ceased in mid-2019 (but it was actually permanently discontinued in April 2019). Match asserts Count IV is also moot, because, as the FTC admits in its Complaint, Match.com's chargeback practice ceased in mid-2019 (but it was actually permanently discontinued in March 2019). Count IV's claim for injunctive relief is therefore also moot. There is nothing to enjoin because the challenged practices have been discontinued.

Seventh Affirmative Defense (Overbroad Injunction): As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint. The FTC's requested injunction with respect to Count III and the "guarantee" practice is overbroad and not specifically tailored to the violations alleged in the Complaint. The FTC's requested injunction with respect to Count IV and the chargeback policy is overbroad and not specifically tailored to the violations alleged in the Complaint. Finally, the FTC's requested injunction is overbroad and not specifically tailored to the violations alleged in the Complaint. In particular, the FTC's requested injunction is overbroad not only because the Complaint fails to allege all necessary facts, but also because the FTC attempts to apply such injunction to Match Group, Inc., which does not own or operate Match.com, and to brands other than Match.com that are not implicated by the Complaint.

Eighth Affirmative Defense (Mitigation): As a preliminary matter, Match Group, Inc. does not own or operate Match.com and thus could not have engaged in the practices at issue in the Complaint. With respect to Count V, the FTC has not offered any reliable methodology for quantifying alleged consumer harm, and any restitution amount would be subject to mitigation to the extent that consumers received refunds or utilized the services on the renewed subscription.

Ninth Affirmative Defense (Reservation of Other Affirmative Defenses): Match lacks sufficient information regarding the facts and evidence alleged and is therefore unable to ascertain at this time any additional affirmative defenses which Match may have. Therefore, Match expressly reserves the right to amend its Answer to assert such other affirmative defenses as may become apparent subsequent to the filing of its Answer, whether in discovery, at trial, or otherwise.

Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

**AMENDED RESPONSE:** For the avoidance of doubt, the Match Guarantee and Chargeback practices challenged in the Complaint were permanently discontinued in April 2019 and March 2019, respectively, and Match.com will not reinstitute those practices.

**INTERROGATORY NO. 4:** Identify any tests, reports, A/B testing, Customer surveys, usability tests, focus groups, or other user experience studies, whether formal or informal, You have conducted related to:

    a.     Match Guarantees;

    b.     Chargebacks; and

    c.     means of subscription renewal or cancellation.

Your response to this Interrogatory should include descriptions of the types of usability studies, beta studies, and surveys that the response covers. In addition, please provide Your response in machine-readable format, for example, in a .csv or spreadsheet file format.

**RESPONSE:** Match objects to this Interrogatory because "tests," "reports," "A/B testing," "surveys," "usability tests," "focus groups," "user experience studies," "formal," and "informal"

are vague and undefined, and to the extent this Interrogatory seeks Privileged Information. Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a Chargeback policy. Match.com has permanently discontinued the "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities or dating sites that are not relevant to the claims or allegations in the Complaint. Additionally, Match objects to

this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.

Subject to and without waiving the foregoing objections, Match responds with respect to subpart (c) as follows: pursuant to Federal Rule of Civil Procedure 33(d), Match directs the FTC to any documents that will be produced in response to the FTC's RFP No. 26. Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

**INTERROGATORY NO. 5:**

On a monthly basis, state:

- a.     the number of Match.com subscriptions subject to the Guarantee sold;
- b.     the number of Guarantee Extensions that Match provided Customers;
- c.     the number of Customer inquiries regarding the automatic renewal of subscriptions subject to the Match Guarantee;
- d.     the number of refund requests Customers submitted to Match relating to Match Guarantees and the dollar amount of these requested refunds; and
- e.     the number of refunds Match granted relating to Match Guarantees and the amount of money refunded relating to Match Guarantees.

**RESPONSE:** Match objects to this Interrogatory because "subscriptions" and "inquires" are vague and undefined and to the extent this Interrogatory seeks Privileged Information. Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a Chargeback policy. Match.com has permanently discontinued the "Match Guarantee" and related practices, and Match has repeatedly told the FTC this orally

and in writing.  Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery solely relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." Plaintiff's definition of "Match" necessarily and inappropriately includes other entities or dating sites that are not relevant to the claims or allegations in the Complaint. Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.

**INTERROGATORY NO. 6:** State all limitations on Customers' rights to redeem a Match Guarantee or receive a Guarantee Extension and all actions consumers had to complete to redeem a Match Guarantee or receive a Guarantee Extension. For each such limitation or action Identify:

a.  the date such limitation was implemented and/or eliminated;

b.  all advertisements, notices, disclosures, or other notifications where Match disclosed the need to complete that action; and

c.  The number of consumers whose request for a Guarantee Extension were denied due to that limitation or for failing to complete that particular action.

**RESPONSE:** Match objects to this Interrogatory because "rights to redeem," "that limitation," and "that particular action" are vague and undefined and to the extent this Interrogatory seeks Privileged Information. Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." Match.com has permanently discontinued the "Match Guarantee" and related practices, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery solely relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Interrogatory. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules.

**INTERROGATORY NO. 7:** Describe all of Match's policies relating to Customer Chargebacks, including regarding:

    a.    the circumstances in which Match will dispute a Customer Chargeback;

    b.    denying Customer account access due to a Chargeback request;

    c.    deleting or reinstating accounts of consumers who unsuccessfully attempt a Chargeback and when such deletions or reinstatements are effective; and

    d.    the effective dates of the policies.

**RESPONSE:** Match objects to the extent this Interrogatory seeks Privileged Information. Match further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Interrogatory insofar as it suggests that Match Group, Inc. ever had any policy relating to a Chargeback—or offered any kind of "Match Guarantee" or maintained a Chargeback policy. Match.com has permanently discontinued "Chargebacks" and related practices, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery solely relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the

conduct at issue in this Interrogatory. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules. Match also objects to this Interrogatory to the extent it seeks to require Match to provide information that is not in its possession, custody, or control, or that is already in Plaintiff's possession, custody, or control.

**INTERROGATORY NO. 8:** On a monthly basis, state:

    a.    the number of Customer communications Match received regarding account cancellation or cancellation processes;

    b.    the number of refund requests made by Customers who claimed they believed they already canceled their subscriptions or who attempted to cancel;

    c.    the dollar value of the refund requests made by Customers who claimed they believed they already canceled their subscriptions or who attempted to cancel;

    d.    the number of refunds Match provided to Customers who claimed they believed they already canceled their subscriptions or who attempted to cancel;

    e.    the dollar value of the refunds provided to Customers who claimed they believed they already canceled their subscriptions or who attempted to cancel;

    f.    the amount charged to Customers who had requested a refund on the basis that they believed they had cancelled and had this request denied by Match; and

    g.    the amount charged to Customers who had requested a refund on the basis that they were unaware of Match's recurring charge and had this request denied by Match.

**RESPONSE:** Match objects to this Interrogatory because "communications," "account cancellation or cancellation processes," "attempted," "believed," and "claimed," are vague and undefined and to the extent this Interrogatory seeks Privileged Information. Match further objects

that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." Plaintiff's definition of "Match" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "Match," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules. Match also objects to this Interrogatory to the extent it seeks to require Match to provide information that is not in its possession, custody, or control, or that is already in Plaintiff's possession, custody, or control. By responding to this Interrogatory, Match does not concede the relevancy of this Interrogatory nor the relevancy or admissibility of any information provided in response thereto. The fact that information is provided in response to this Interrogatory does not mean that it is probative of any particular issue in this case.

Subject to and without waiving the foregoing objections, Match responds as follows: Match Group, Inc. has not received any Customer communications or refund requests because Match Group, Inc. does not own or operate Match.com (or any other dating site).

Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

**INTERROGATORY NO. 9:** Describe each method through which consumers could cancel their subscriptions. For each such method, describe in detail:

a.   how Match informed or disclosed to consumers the availability of each method;

b.   each step that consumers would have to take in order to successfully cancel;

c.   each representation that Match would make to consumers at each step in the cancellation process; and

d.   by month, how many Customers attempted to cancel via that particular method;

e.   by month, how many Customers successfully canceled via that particular method.

**RESPONSE:** Match objects to this Interrogatory because "attempted" is vague and undefined and to the extent this Interrogatory seeks Privileged Information. Match further objects that this Interrogatory is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing." Plaintiff's definition of "Match" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "Match," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Additionally, Match objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts. Match also objects to this Interrogatory as premature and to the extent it seeks to require Match to marshal all

of its evidence before trial. Match further objects to this Interrogatory to the extent it purports to impose a burden beyond what is required by the Rules and Local Rules. Match also objects to this Interrogatory to the extent it seeks to require Match to provide information that is not in its possession, custody, or control, or that is already in Plaintiff's possession, custody, or control. By responding to this Interrogatory, Match does not concede the relevancy of this Interrogatory nor the relevancy or admissibility of any information provided in response thereto. The fact that information is provided in response to this Interrogatory does not mean that it is probative of any particular issue in this case.

Subject to and without waiving the foregoing objections, Match responds as follows: Match Group, Inc. does not inform, disclose to, or make representations to Match.com subscribers, because Match Group, Inc. does not own or operate Match.com (or any other dating site). Therefore, Match Group, Inc. does not have the cancelation data requested by this Interrogatory.

Match expressly reserves the right to supplement or amend this response, as discovery and document production is ongoing.

Dated: September 14, 2022

/s/ Angela C. Zambrano
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com

SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and
Match Group, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and forgoing document

was served on all counsel of record via e-mail as outlined below on September 14, 2022.

Reid Abram Tepfer
rtepfer@ftc.gov
M Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov

*/s/  Angela C. Zambrano*
Angela C. Zambrano

# EXHIBIT 2

DocuSign Envelope ID: 8C4CAC53-0690-4A66-89E4-213AFAAAF10E

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. 3:19-cv-02281-K |
| MATCH GROUP, INC., a corporation, | |
| Defendant. | |

## AMARNATH THOMBRE'S VERIFICATION OF MATCH GROUP, INC.'S FIRST AMENDED RESPONSES TO PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF INTERROGATORIES

I, Amarnath Thombre, state that I am an employee of Match Group, LLC and a CEO-appointed officer of Match Group, Inc ("MGI"). I serve as the Chief Executive Officer of Match Group Americas and provide this verification of MGI's First Amended Responses to Plaintiff Federal Trade Commission's First Set of Interrogatories (the "Responses"). I further state that the Responses have been prepared by counsel for MGI in consultation with me and others with knowledge of the matters involved; that the facts are based upon the business records of MGI, with which I have general familiarity; and that, to the best of my knowledge and belief, all of the facts stated therein are true and correct in all material respects with the understanding that MGI is continuing to research its Responses and reserves the right to supplement its Responses as authorized by the Federal Rules of Civil Procedure and any other applicable law.

I verify under penalty of perjury that the foregoing is true and correct in all material respects.

DocuSign Envelope ID: 8C4CAC53-0690-4A66-89E4-213AFAAAF10E

Dated: Sep 15, 2022 _____

Respectfully submitted,

_____
Amarnath Thombre

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

FEDERAL TRADE COMMISSION,

          Plaintiff,

   vs.

MATCH GROUP, INC., a corporation,

          Defendant.

Case No. 3**:**19-cv-02281-K

**DEFENDANT MATCH GROUP, INC.'S FIRST AMENDED RESPONSES AND**
**OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION**

      Pursuant to Rule 26 and 36 of the Federal Rules of Civil Procedure (the "Rules"),

Defendant Match Group, Inc. ("Match" or "Defendant"), by and through its counsel, Sidley Austin

LLP, hereby amends its responses and objections to Plaintiff Federal Trade Commission's (the

"FTC") First Set of Requests for Admission (the "Requests" or "RFAs").

## I.      PRELIMINARY STATEMENT

      These First Amended Responses and Objections to the FTC's First Set of Requests for

Admissions are provided solely for the purpose of this action.

      The Responses and Objections herein are made on the basis of information and writings

presently available to, identified, and/or located by Match upon reasonable investigation. Match

has not completed its investigation of the facts or law relating to this action, and Discovery in this

matter is ongoing. These Responses and Objections are made without prejudice to, and are not a

waiver of, Match's right to amend, correct or supplement these Responses and Objections, and are

subject to Match's right to produce evidence of any subsequently discovered facts, or additional

facts, information or documents that may exist whose relevance, significance or applicability has

not yet been determined by Match. Match provides these Responses and Objections in good faith after reasonable inquiry and based on information that it knows or can readily obtain. In providing these Responses and Objections, Match reserves all objections as to competency, relevancy, materiality, authenticity, and admissibility of any information or documents. This preliminary statement is hereby incorporated by reference into each Response and Objection below.

## II.      GENERAL OBJECTIONS

The following General Objections apply to each RFA as though fully set forth therein.

1.      Match objects to each RFA to the extent that it seeks information other than that which is in Match's possession, custody, or control. Match further objects to each RFA to the extent that it demands Match respond as to the knowledge of persons and/or entities other than Match. In response to each RFA, Match will only respond for Match and not for any other person and/or entity. Specifically, Match will not produce any information regarding any brand or entity, other than as it relates to Match.com; and Match will not produce any information regarding Match Group, LLC, because that entity has been named as a party to this action, ECF No. 116, so any of its information is more properly collected through it.

2.      Match objects to each and every Request that is cumulative, duplicative of, or to which documents or information already are in the possession, custody, or control of Plaintiff, or have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive. In particular, Match objects to each and every Request insofar as it seeks documents or information already obtained by Plaintiff during the FTC's prior investigation in connection with the Civil Investigative Demand served on Match in 2017 (the "2017 CID"). In connection with the 2017 CID, Match produced over 225,000 documents that spanned a date range of 2013 to 2018 and provided numerous interrogatory

responses to the FTC. Such prior productions and the massive volume of documents produced therein should be sufficient to provide the FTC with the information it requires. For the avoidance of doubt, Match will comply with the ESI Order, which provides, "The parties need not re-produce in discovery documents that were already produced to the FTC in response to the FTC's CID. Instead, the parties will refer to the bates number of the relevant documents." ECF No. 132 at 4. Thus, although MGI will not re-produce documents or information to the FTC, MGI will refer to the appropriate bates number where necessary.

3.      Match objects to each RFA to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Rule(s) and the applicable Local Rules and Orders of the Court.

4.      Match objects to each RFA to the extent that it seeks information protected by the attorney-client privilege, the work-product doctrine, the right to privacy, trade secret protection, or other privileges recognized in law or equity. Match also objects to each RFA to the extent it calls for, or can be interpreted as calling for, legal conclusions, or to the extent it assumes disputed issues or is phrased in such a way as to be argumentative, lacking foundation, prejudicial, or improper. All Responses are subject to this objection, without prejudice or waiver thereof, and are made with the understanding that any protected, non-discoverable information will be excluded from these answers and any document production. Inadvertent production of any privileged information shall not constitute the waiver of any privilege.

5.      Match objects to each RFA to the extent it seeks information not relevant to the issues in this lawsuit, is not reasonably calculated to lead to the discovery of admissible evidence, or relate only to Counts I or II of the FTC's Complaint which were previously dismissed by the Court with prejudice against Match. For the avoidance of doubt, Match will not withhold

information merely because it relates to Counts I and II, if such information is otherwise responsive to the Requests with respect to the surviving claims.

6.      Match objects to each RFA to the extent it seeks information that is duplicative of, or readily ascertained from, information provided in response to another RFA.

7.      Moreover, Match does not waive its right to amend its Responses.

### III.    SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Match specifically objects to the Instructions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules and the Local Rules. In responding to these Requests, Match will follow the requirements set forth in the Rules and the Local Rules.

2.      Match specifically objects to the definitions of "Match," the "Company," and "You" because they are vague, ambiguous, and confusing, in that Plaintiff defines these term as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing," potentially including attorneys and other entities that are not relevant to this matter, such as Match's subsidiaries. Furthermore, Match objects to Plaintiff's definitions of "Match," the "Company," and "You" as defined to "include any descriptor used by Match in its business practice," again potentially encompassing other entities that are not relevant to this matter.

3.      Match specifically objects to the definitions of "Customer" and "Customers" as overbroad, unduly burdensome, and oppressive, insofar as they purport to cover individual(s) "who have maintained an account on *any website* owned or operated by" Match, including "OKCupid, Plenty of Fish, and Tinder," which encompasses websites and entities that are not party to, or otherwise related to, the present litigation. Match further objects that the definitions are misleading

because they incorrectly assume that Match has owned or operated any website. Match further objects that the definitions of "Customer" and "Customers" are thus not tailored to the allegations in the Complaint, not proportional to the needs of the case, and exceedingly burdensome.

4.     Match specifically objects to the definitions of "Identity" and "the identity of" because they are ambiguous and confusing. Match will interpret these terms to have their plain, ordinary, and common sense meaning. Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, Match will comply with the Rules and the Local Rules.

5.     Match specifically objects to the definitions of "Refer or Relate to" and "Concerning" because they are overbroad and confusing. Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, Match will comply with the Rules and the Local Rules and will interpret these terms to have their plain, ordinary, and common sense meaning.

IV.    SPECIFIC RESPONSES & OBJECTIONS TO REQUESTS FOR ADMISSION

**REQUEST NO. 1:** Match is a Delaware corporation.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control.

**REQUEST NO. 2:** Match maintains a principal place of business at 8750 North Central Expressway, Suite 1400, Dallas, Texas 75231.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control.

**REQUEST NO. 3:** Match transacts business in the Northern District of Texas and throughout the United States.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to the extent that this Request calls for a legal conclusion.

**REQUEST NO. 4:** Match has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to the extent that this Request calls for a legal conclusion.

**REQUEST NO. 5:** Match participated in the operation of Match.com between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague because it is unclear what the FTC means by "participated in the operation." Match will interpret "participated in the operation" as "operated."

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 6:** Executive officers employed by Match have also served as employees of Match.com since 2013.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match also objects to this Request as confusing because Match.com is a brand, not an entity; thus, the meaning of an "employee[] of Match.com" cannot be easily understood.

**REQUEST NO 7:** Match employees have directed Match.com's operations.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague because it is unclear what the FTC means by "directed Match.com's operations."

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 8:** Match wholly owned Match.com Events LLC between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control.

**REQUEST NO. 9:** Match had authority to control Match.com Events LLC between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to the extent that this Request calls for a legal conclusion.

**REQUEST NO. 10:** Match participated in the operation of Match.com Events LLC between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague because it is unclear what the FTC means by "participated in the operation."

**REQUEST NO. 11:** Match was the sole possessor of voting equity in Match.com Events LLC between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control.

**REQUEST NO. 12:** Match.com Events LLC's officers between 2013 and 2018 consisted of at least two persons who were Match executives or managers.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control.

**REQUEST NO. 13:** Match.com Events LLC's officers between 2013 and 2018 consisted of at least five persons who were employed by Match.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the

Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control.

**REQUEST NO. 14:** Match wholly owned Match ProfilePro, LLC between 2013 and 2018**.**

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control.

**REQUEST NO. 15:** Match had authority to control Match ProfilePro, LLC between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that

the requested information is already in Plaintiff's possession, custody, or control. Match further objects to the extent that this Request calls for a legal conclusion.

**REQUEST NO. 16:** Match participated in the operations of Match ProfilePro, LLC between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague because it is unclear what the FTC means by "participated in the operations."

**REQUEST NO. 17:** Match was the sole possessor of voting equity in Match ProfilePro, LLC between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control.

**REQUEST NO. 18:** Match ProfilePro, LLC's officers between 2013 and 2018 consisted of at least two persons who were Match executives or managers.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control.

**REQUEST NO. 19:** Match ProfilePro LLC's officers between 2013 and 2018 consisted of at least five persons who were employed by Match.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control.

**REQUEST NO. 20:** Match has wholly owned Match.com, LLC since 2013.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the

Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC" changed its name to Match Group, LLC on September 12, 2017.

**REQUEST NO. 21:** Match has had authority to control Match.com, LLC since 2013**.**

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC" changed its name to Match Group, LLC on September 12, 2017. Match further objects to this Request because it calls for a legal conclusion in that it seeks an admission about "authority to control."

**REQUEST NO. 22:** Match has participated in the operations of Match.com, LLC since 2013.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the

Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC" changed its name to Match Group, LLC on September 12, 2017. Match further objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "participated in the operation." Match will interpret "participated in the operation" as "operated."

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 23:** Match has been the sole possessor of voting equity in Match.com, LLC since 2013.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC" changed its name to Match Group, LLC on September 12, 2017.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 24:** At least two persons who were Match executives or managers were officers of Match.com, LLC between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC" changed its name to Match Group, LLC on September 12, 2017.

Subject to and without waiving the foregoing objections, Admitted.

**REQUEST NO. 25:** At least five persons who were employed by Match were officers of Match.com, LLC between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further

objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC" changed its name to Match Group, LLC on September 12, 2017.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 26:** Match currently has the authority to control Match Group, LLC.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC" changed its name to Match Group, LLC on September 12, 2017. Match further objects to this Request because it calls for a legal conclusion in that it seeks an admission about "authority to control."

**REQUEST NO. 27:** Match had authority to control Match Group, LLC between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation,

and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC" changed its name to Match Group, LLC on September 12, 2017. Match further objects to this Request because it calls for a legal conclusion in that it seeks an admission about "authority to control."

**REQUEST NO. 28:** Match wholly owned Match Group, LLC between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC" changed its name to Match Group, LLC on September 12, 2017.

Subject to and without waiving the foregoing objections, Admitted.

**REQUEST NO. 29:** Match Group, LLC did not have authority to control Match.com between 2013 and 2018.

**RESPONSE:**

Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate information is not relevant to any of Plaintiff's claims,

live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested information is already in Plaintiff's possession, custody, or control. Match further objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC" changed its name to Match Group, LLC on September 12, 2017. Match further objects to this Request because it calls for a legal conclusion in that it seeks an admission about "authority to control."

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 30:** Match did not identify Match Group, LLC as having a role in the operations of Match.com in its response to the 2017 CID.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Match further objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC"—which was

identified as having a role in the operation of Match.com in Match's response to the 2017 CID—changed its name to Match Group, LLC on September 12, 2017.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 31:** Match Group, LLC was not identified in any response to the 2017 CID**.**

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Match further objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC"—which was identified as having a role in the operation of Match.com in Match's response to the 2017 CID—changed its name to Match Group, LLC on September 12, 2017.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 32:** Match did not identify Match Group, LLC in its response to Interrogatory number 1 of the 2017, which requested that the CID recipient "Identify Each subsidiary of Match Group, Inc. that contributes to Match.com's business operations[.]"

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including

"Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Match further objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC"—which was identified as having a role in the operation of Match.com in Match's response to the 2017 CID— changed its name to Match Group, LLC on September 12, 2017.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 33:** Match.com, LLC did not respond to the 2017 CID.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, and irrelevant because it is unclear what Plaintiff means by "respond."

Subject to and without waiving the foregoing objections, Admitted.

**REQUEST NO. 34:** Match was the custodian of all records produced pursuant to the 2017 CID.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees,

agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 35:** Persons employed by Match were the custodians of all records produced pursuant to the 2017 CID.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 36:** The following individuals have been employees of Match:

a. Sydney Lam

b. Brett Richards

c. Poosenjeet Bhattacharya

d. Adrian Ong

e. Pradeep Shetty

f. Michelle Watson

g. Shonda Pero

h. Kris Auderer

i. Melissa Clinchy

j. Krystal Roloff

k. Curt Anderson

l. Marshall Dye

m. Laurie Braddock

n. Brittany Perez

o. Girdar Tandriv

p. Alexis Ferraro

q. Margaret Ochoa

r. Jeff Rosenzweig

s. Beth Wilson

t. Sam Yagan

u. Florian Hottier

v. Sushil Sharma

w. Jim Talbott

x. Jiten Vakharia

y. Bryan Jewell

z. Matthew Bartoe

aa. Ian Purves

bb. Sharmistha Dubey

cc. David Penton

dd. Amarnath Thombre

ee. Andrew Hemmings

ff. Matt Knight

gg. Tony Bowari

hh. Jeff McLure

ii. Jennifer Hinkie

jj. Mandy Ginsberg

kk. Ivan Yong

ll. Bret Williams

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice,"

encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Admitted only with respect to Sharmistha Dubey, who, while being a Match Group, LLC employee, also had an engagement agreement with Match Group, Inc. from August 8, 2018 to May 2, 2022, and Mandy Ginsberg who, while being a Match Group, LLC employee, also had an engagement agreement with Match Group, Inc. from December 5, 2017 to January 28, 2020, and Denied with respect to all other individuals listed in the Request.

**REQUEST NO. 37:** The following individuals have performed work for Match**:**

    a. Sydney Lam

    b. Brett Richards

    c. Poosenjeet Bhattacharya

    d. Adrian Ong

    e. Pradeep Shetty

    f. Michelle Watson

    g. Shonda Pero

    h. Kris Auderer

    i. Melissa Clinchy

    j. Krystal Roloff

    k. Curt Anderson

    l. Marshall Dye

    m. Laurie Braddock

    n. Brittany Perez

o. Girdar Tandriv

p. Alexis Ferraro

q. Margaret Ochoa

r. Jeff Rosenzweig

s. Beth Wilson

t. Sam Yagan

u. Florian Hottier

v. Sushil Sharma

w. Jim Talbott

x. Jiten Vakharia

y. Bryan Jewell

z. Matthew Bartoe

aa. Ian Purves

bb. Sharmistha Dubey

cc. David Penton

dd. Amarnath Thombre

ee. Andrew Hemmings

ff. Matt Knight

gg. Tony Bowari

hh. Jeff McLure

ii. Jennifer Hinkie

jj. Mandy Ginsberg

kk. Ivan Yong

ll. Bret Williams

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Additionally, Match objects to this Request as irrelevant and overbroad to the extent that it asks whether these individuals performed work on issues unrelated to the allegations at issue in the FTC's Complaint. Match will limit its Response to only work performed related to the FTC's allegations. Match further objects to this Request as vague and ambiguous because it is unclear what the FTC means by "performed work." Match will interpret "performed work" to mean that the individual was an employee or officer of Match Group, Inc., or provided services to all Match Group entities.

Subject to and without waiving the foregoing objections, Admitted only with respect to Curt Anderson, Marshall Dye, Laurie Braddock, Brittany Perez, Sam Yagan, Sharmistha Dubey, Amarnath Thombre, and Mandy Ginsberg, and Denied with respect to all other individuals listed in the Request.

**REQUEST NO. 38:** None of the following individuals were employed by Match Group, LLC between 2013 and 2018**:**

     a. Sydney Lam

     b. Brett Richards

     c. Poosenjeet Bhattacharya

     d. Adrian Ong

     e. Pradeep Shetty

     f. Michelle Watson

     g. Shonda Pero

     h. Kris Auderer

     i. Melissa Clinchy

     j. Krystal Roloff

     k. Curt Anderson

     l. Marshall Dye

     m. Laurie Braddock

     n. Brittany Perez

     o. Girdar Tandriv

     p. Alexis Ferraro

     q. Margaret Ochoa

     r. Jeff Rosenzweig

     s. Beth Wilson

     t. Sam Yagan

     u. Florian Hottier

     v. Sushil Sharma

w. Jim Talbott

x. Jiten Vakharia

y. Bryan Jewell

z. Matthew Bartoe

aa. Ian Purves

bb. Sharmistha Dubey

cc. David Penton

dd. Amarnath Thombre

ee. Andrew Hemmings

ff. Matt Knight

gg. Tony Bowari

hh. Jeff McLure

ii. Jennifer Hinkie

jj. Mandy Ginsberg

kk. Ivan Yong

ll. Bret Williams

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are

not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 39:** None of the following individuals were paid a salary by Match Group, LLC between 2013 and 2018**:**

a. Sydney Lam

b. Brett Richards

c. Poosenjeet Bhattacharya

d. Adrian Ong

e. Pradeep Shetty

f. Michelle Watson

g. Shonda Pero

h. Kris Auderer

i. Melissa Clinchy

j. Krystal Roloff

k. Curt Anderson

l. Marshall Dye

m. Laurie Braddock

n. Brittany Perez

o. Girdar Tandriv

p. Alexis Ferraro

q. Margaret Ochoa

r. Jeff Rosenzweig

s. Beth Wilson

t. Sam Yagan

u. Florian Hottier

v. Sushil Sharma

w. Jim Talbott

x. Jiten Vakharia

y. Bryan Jewell

z. Matthew Bartoe

aa. Ian Purves

bb. Sharmistha Dubey

cc. David Penton

dd. Amarnath Thombre

ee. Andrew Hemmings

ff. Matt Knight

gg. Tony Bowari

hh. Jeff McLure

ii. Jennifer Hinkie

jj. Mandy Ginsberg

kk. Ivan Yong

ll. Bret Williams

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 40:** Customers can maintain either a free account or a paid account on Match.com.

**RESPONSE:**

Match objects to this Request as confusing and requesting a misleading answer because a Match.com account is separate and distinct from a subscription. Having a subscription does not affect whether a customer has an account, but merely changes what a customer has access to as part of the customer's account.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 41:** Subscribers have full access to email communications sent to them by other Subscribers.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at

issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass. Match further objects to this Request because "full access" is vague and ambiguous; the term is not defined, and Match does not and cannot know what the FTC means by "full access."

**REQUEST NO. 42:** Nonsubscribers cannot view email messages sent to them on Match.com without purchasing a subscription to Match.com.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim

by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 43:** Match permits Nonsubscribers to maintain free accounts on the platform.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 44:** Some Match employees have referred internally to Nonsubscribers as "Regs."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that

Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 45:** Some Match employees have referred internally to Subscribers on the platform as "Subs."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 46:** Match employees and management have referred to Nonsubscribers, Subscribers, and Free Trial Users who used Match.com in a month collectively as "MAU" or "Monthly Active Users."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 47:** Consumers could purchase Match.com subscriptions in 1-, 3-, 6-, or 12-month packages.

**RESPONSE:**

Admitted.

**REQUEST NO. 48:** Match.com's membership packages automatically renewed for time periods equivalent to the original subscription length.

**RESPONSE:**

Denied.

**REQUEST NO. 49:** Between 2013 and 2018, Match.com's one-month subscription's list price was $35 for the initial term.

**RESPONSE:**

Match objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "list price." Match will interpret "list price" to mean the sole price at which the subscription was offered prior to any discounts or special offers throughout the specified time period.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 50:** Between 2013 and 2018, Match.com's three-month subscription's list price was $71.97 for the initial term.

**RESPONSE:**

Match objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "list price." Match will interpret "list price" to mean the sole price at which the subscription was offered prior to any discounts or special offers throughout the specified time period.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 51:** Between 2013 and 2018, Match.com's six-month subscription's list price was $119.94 for the initial term.

**RESPONSE:**

Match objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "list price." Match will interpret "list price" to mean the sole price at which the subscription was offered prior to any discounts or special offers throughout the specified time period.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 52:** Between 2013 and 2018, Match.com's twelve-month subscription's list price was $215.88 for the initial term.

**RESPONSE:**

Match objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "list price." Match will interpret "list price" to mean the sole price at which the subscription was offered prior to any discounts or special offers throughout the specified time period.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 53:** Match marketed a "Match Guarantee" that applied to Subscribers who purchased a six-month subscription to Match.com.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 54:** Customers who purchased a six-month subscription to Match.com were eligible for six additional months of Match.com service for free following their initial six months of paid service pursuant to the Match Guarantee if the Customer satisfied certain requirements.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 55:** Match marketed a "Match Guarantee" that guaranteed Subscribers six months of Match.com service for free following their initial six months of paid service if the Customer did not "meet someone special" during that first six months.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation

in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 56:** Match.com's terms and conditions used the term "Guarantee Extension" to refer to the free six months of Match.com service that Subscribers received if they qualified for the "Match Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 57:** Match.com previously marketed its "Match Guarantee" as the "I Met Someone Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 58:** Match.com previously marketed its "Match Guarantee" as the "Match.com Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has

identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 59:** Several Match employees have used the acronym "6MG" to refer to Match's "Match Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 60:** Under the terms and conditions of the "Match Guarantee," Subscribers had to satisfy several requirements during their six months of paid service to be eligible for a Guarantee Extension.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 61:** The terms and conditions of the "Match Guarantee" required Subscribers who had purchased a six-month subscription, among other requirements, to create a truthful public profile with a primary photo to qualify for the "Match Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct

challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 62:** Match required that Subscribers who had purchased a six-month subscription, among other requirements, submit his or her profile photo on Match.com for approval within the first seven days of their subscription to qualify for the "Match Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 63:** The terms and conditions of the "Match Guarantee" required that Subscribers who had purchased a six-month subscription, among other requirements, keep their profile picture visible throughout the six-month subscription to qualify for the "Match Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 64:** Match required that Subscribers who had purchased a six-month subscription, among other requirements, keep their profile picture visible throughout the six-month subscription to qualify for the "Match Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation

in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 65:** The terms and conditions of the "Match Guarantee" required that Subscribers who had purchased a six-month subscription, among other requirements, initiate or respond to communications with at least five unique Match.com members each month to qualify for the "Match Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 66:** To be a "Qualifying Email" towards the Match Guarantee requirement of emailing five unique Match.com members each month, Match required that the email be to a paid Subscriber, as opposed to a free user of Match.com.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 67:** Subscribers who had purchased a six-month subscription were required, among other requirements, to comply with the guarantee-program rules to qualify for the "Match Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that

Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 68:** Match required that Subscribers who had purchased a six-month subscription, among other requirements, comply with Match.com's terms of use to qualify for the "Match Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue

in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 69:** Under the terms of the "Match Guarantee," Subscribers who qualified for a Guarantee Extension had to "accept" the Guarantee Extension in order to receive the additional six months of free service on Match.com.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 70:** Match required that Subscribers who qualified for a Guarantee Extension "accept" the Guarantee Extension to receive the additional six months of free service on Match.com.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of

"Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 71:** Under the terms of the "Match Guarantee," Subscribers who qualified for a Guarantee Extension had to "accept" the Guarantee Extension during the last seven days of their six-month subscription.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons,

discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 72:** Match required that Subscribers who qualified for a Guarantee Extension had to "accept" the Guarantee Extension during the last seven days of their six-month subscription.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 73:** Under the terms of the "Match Guarantee," Subscribers who qualified for a Guarantee Extension had to "accept" the Guarantee Extension by affirming on the Guarantee Program Progress Page that the Customer had not "met someone special" during their Guarantee Program Subscription to receive the additional six months of free service on Match.com.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at

issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 74:** Match required that Subscribers who qualified for a Guarantee Extension had to "accept" the Guarantee Extension by affirming on the Guarantee Program Progress Page that the Customer had not "met someone special" during their Guarantee Program Subscription to receive the additional six months of free service on Match.com.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also

dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 75:** If a Subscribers [sic] who qualified for a Guarantee Extension failed to "accept" the Guarantee Extension during the last seven days of their six-month subscription, the Subscriber would be able to receive a Guarantee Extension only by contacting Match's customer care support team.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 76:** If a Subscriber who qualified for a Guarantee Extension failed to "accept" the Guarantee Extension during the last seven days of their six-month subscription, the Subscriber would have thirty days to receive a Guarantee Extension by contacting Match's customer care support team.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 77:** If a Subscriber who otherwise qualified for a Guarantee Extension waited more than 30 days past the end of their initial six-month Match.com membership to contact Match customer care requesting to receive a Guarantee Extension, the Subscriber would be ineligible to receive a Guarantee Extension under Match's terms and conditions.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has

repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 78:** Match.com advertised subscriptions to Match.com of varying durations using the term "bundle plans."

**RESPONSE:**

> Admitted.

**REQUEST NO. 79:** Match.com advertised "bundle plans" of durations of 12 months, 6 months, and 3 months.

**RESPONSE:**

> Admitted.

**REQUEST NO. 80:** Match.com had a rectangular icon describing Match.com's subscription plans that included the words "match GUARANTEE" in the description of the six-month bundle plan.

**RESPONSE:**

> Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct

challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 81:** When consumers hovered their cursor over the words "match GUARANTEE" included in the description of six-month bundle plan on Match.com, a text box would appear stating**:** "The Match.com guarantee[.] If you haven't found someone special within 6 months, we'll give you an extra 6 months FREE. Learn more[.]"

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 82:** When consumers hovered their cursor over the words "match GUARANTEE" in the description of the six-month bundle plan on Match.com, a text box appeared that included a hyperlink with the words "Learn more[.]"

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 83:** The "Learn more" hyperlink relating to the "Match Guarantee" redirected users to a "Program Rules" webpage on Match.com concerning the "Match Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has

identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 84:** The "Learn more" hyperlink in the text box that appeared when consumers hovered their cursor over the "match GUARANTEE" language included in the description of the six-month bundle plan on Match.com redirected individuals who clicked on that link to a page with additional terms and conditions relating to Match's "Guarantee."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 85:** The "Learn More" hyperlink on the Match.com subscription page redirected consumers to a "Program Rules" webpage when clicked on.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 86:** The "Program Rules" page on Match.com concerning the Match Guarantee stated that, to qualify for the Match Guarantee, consumers had to sign up for a six-month subscription, create a truthful public profile with a primary photo, keep their profile picture visible, initiate or respond to communications with at least five unique Match.com members each month, and comply with the guarantee program rules.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct

challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 87:** The Match Guarantee's "Program Rules" webpage on Match.com provided six bolded, individually numbered eligibility requirements for the Match Guarantee.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 88:** The "Program Rules" page concerning the Match Guarantee included a requirement that users maintain a public profile photo that has been approved by Match.com to qualify for a Guarantee Extension.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 89:** The "Program Rules" page concerning the Match Guarantee included a requirement that users contact five unique Match.com subscribers each month to qualify for a Guarantee Extension.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct

challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 90:** The "Program Rules" webpage concerning the Match Guarantee contained unnumbered paragraphs after the numbered list of rules.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 91:** The unnumbered paragraphs in the "Program Rules" webpage concerning the Match Guarantee contained at least one additional requirement related to consumers' ability to qualify for a Guarantee Extension.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 92:** After the numbered list of requirements, the "Program Rules" page referenced a "progress page" where Subscribers could track their compliance with the requirements to qualify for a Guarantee Extension.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has

identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 93**. Within the unnumbered paragraphs on the "Program Rules" webpage was a requirement that Subscribers seeking to receive a Guarantee Extension "accept" the free six months during the final week of the initial six-month term.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 94:** Match's policy for Subscribers whose accounts had been hacked was that such Subscribers became ineligible for the Guarantee Extension unless the Subscriber contacted Match customer care and requested that the Match Guarantee be re-enabled.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass. Match further objects to this Request as vague and ambiguous in that it does not define "hacked."

**REQUEST NO. 95:** In 2013, Match's policy for Subscribers whose accounts had been hacked or otherwise taken over was that such Subscriber became ineligible for the Guarantee unless the Subscriber contacted Match's customer services and requested that the Guarantee be re-enabled.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of

"Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass. Match further objects to this Request as vague and ambiguous in that it does not define "hacked" or "otherwise taken over."

**REQUEST NO. 96:** Between 2013 and 2016, the operators of Match.com sold 2,488,234 Match.com subscriptions that were potentially eligible for a Guarantee Extension.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim

by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 97:** Between 2013 and 2016, 988,737 of the Match.com subscriptions that were potentially eligible for a Guarantee Extension were automatically renewed for an additional subscription term at the end of the subscription's initial six-month period.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass. Match further objects to this Request as vague and ambiguous in that it does not define "potentially eligible" or "automatically renewed."

**REQUEST NO. 98:** Between 2013 and 2016, 179,785 of the Match.com subscriptions that were potentially eligible for the Guarantee Extension automatically renewed for an additional subscription term at the end of the subscription's second six-month period.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass. Match further objects to this Request as vague and ambiguous in that it does not define "potentially eligible" or "automatically renewed."

**REQUEST NO. 99:** Between 2013 and 2016, the operators of Match.com granted 32,438 Guarantee Extensions to Subscribers pursuant to the Match Guarantee.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct

challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 100:** Hundreds of Subscribers contacted Match concerning the Match Guarantee.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 101:** Thousands of Subscribers contacted Match concerning the Match Guarantee.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 102:** Hundreds of Subscribers contacted Match stating that they were eligible for a Guarantee Extension but had been denied a Guarantee Extension.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would

never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 103:** Thousands of Subscribers contacted Match stating they were eligible for a Guarantee Extension but had been denied a Guarantee Extension.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue

in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 104:** Match was contacted by hundreds of Subscribers who stated they were unaware of at least one of the requirements of the Match Guarantee.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 105:** Match was contacted by thousands of Subscribers who stated they were unaware of some or all of the requirements of the Match Guarantee.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has

repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 106:** Match ceased offering the Match Guarantee over 12 months after receiving the 2017 CID.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue

in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 107:** Between 59 and 61 percent of Customer Chargebacks relating to Match.com occurred within one month of a disputed charge from that Customer.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 108:** Between 81 and 83 percent of Customer Chargebacks relating to Match.com occurred within two months of a disputed charge from that Customer.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that

Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 109:** Match contested most Chargeback disputes instituted by Match.com Customers.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 110:** Match's policy was to dispute all Chargebacks instituted by Customers that were unrelated to fraud.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 111:** Match.com's Terms of Use stated that if Match "successfully disputes the reversal, and the reversed funds are returned, you are not entitled to a refund or to have your account or subscription reinstated."

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct

challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass. Match also objects that "Terms of Use" is confusing, vague, undefined, and calling for a misleading answer, since the Match.com Terms of Use changed over time, and the FTC does not reference any specific Terms of Use.

**REQUEST NO. 112:** Match typically terminated a Subscriber's account when that Subscriber instituted a Chargeback relating to his or her account.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the

alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass. Match further objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "typically" or "terminated."

**REQUEST NO. 113:** It was Match's policy to terminate a Subscriber's account if the Subscriber instituted a Chargeback relating to his or her account.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 114:** Match typically did not reinstate the accounts of Subscribers who disputed a charge relating to their account if the users lost their dispute.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further

objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 115:** It was Match's policy not to reinstate the accounts of Subscribers who disputed a charge relating to such account after the users lost their dispute.

**RESPONSE:**

Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also

dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 116:** It was Match's policy that Subscribers had violated Match.com's terms of use if they disputed a charge by requesting a Chargeback and subsequently lost that dispute.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 117:** Match typically did not reinstate the accounts of a Subscriber who disputed a charge relating to his or her account after that user lost the dispute absent a request from that consumer.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further

objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 118:** Less than 1% of Subscribers who lost their Chargeback disputes were subsequently provided access to their Match.com account by Match.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also

dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 119:** As of September 2013, Match was disputing approximately 70% of Chargebacks that Match deemed unrelated to fraud.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 120:** It was Match's policy that the accounts of Subscribers who had requested a Chargeback with their financial institution would remain "blocked" while that Chargeback dispute was under review by their financial institution.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further

objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass. Match also objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "blocked."

**REQUEST NO. 121:** Regardless of whether a Subscriber who instituted a Chargeback dispute won or lost that dispute, that user would not have access to their Match.com account while their Chargeback request was under review by their financial institution.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the

question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 122:** Most Subscribers who initiated a Chargeback dispute against Match.com had had their refund request to Match.com denied before seeking a Chargeback.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 123:** As of April 13, 2017, most Subscribers who initiated a Chargeback dispute against Match.com had had their refund request to Match.com denied before seeking a Chargeback.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 124:** Match classified the majority of Chargebacks as not being related to fraud.

**RESPONSE:**

Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. maintained a "Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never,

engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery

relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to,

recur. Thus, the question of whether any injunctive relief should be issued that addresses this

alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with

prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request.

For these reasons, discovery into the questions of what occurred or whether the alleged conduct

violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 125:** As of May 3, 2016, Match had determined that approximately half of Match's Chargebacks were related to autorenewal.

**RESPONSE:**

Match further objects to this Request on the grounds that it seeks discovery that is not

relevant to either party's claims or defenses and is not proportional to the needs of the case. Match

further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a

"Chargeback" policy. The conduct at issue in this Request has been discontinued, and Match has

repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation

in a form acceptable to the Court that Match could never and would never, and Match.com would

never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this

discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or

is likely to, recur. Thus, the question of whether any injunctive relief should be issued that

addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also

dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue

in this Request. For these reasons, discovery into the questions of what occurred or whether the

alleged conduct violated the FTC Act is impermissibly burdensome and calculated to harass.

**REQUEST NO. 126:** Before Subscribers were charged for a recurring subscription renewal, Match did not send an email to Subscribers stating that they were about to be charged for that specific renewal.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.  In addition, Match objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy.

Subject to and without waiving the foregoing objections, Admitted.

**REQUEST NO. 127:** Management-level employees at Match, including a Product Director in 2013 and the head of Customer Service in 2016, reviewed the design of the cancellation flow for Subscribers at Match.com.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's

definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Match further objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "design of the cancellation flow." Match also objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "management-level."

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 128:** To cancel their subscription, Subscribers had to select "Change/Cancel Membership" on the "Account Settings" menu on the "Account" page of Match.com.

**RESPONSE:**

Denied.

**REQUEST NO. 129:** Before Subscribers were able to cancel their Match.com subscription, Subscribers were required to enter their account password.

**RESPONSE:**

Denied.

**REQUEST NO. 130:** Match found that most Subscribers who entered the cancellation flow dropped out at the step that required that the Subscriber enter his or her Match.com password.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's

definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Match further objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "entered the cancellation flow" and "dropped out."

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 131:** Match found that 63 percent of consumer complaints to Match in April 2013 concerning those Customers' attempts to cancel their Match.com service were categorized by Match employees as "billed after cancel."

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 132:** As of May 2017, online cancellation issues were the most common reason that people complained to the Better Business Bureau concerning Match.com.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, and overbroad because "people" is not defined, and in its ordinary sense includes individuals that are not relevant to the claims or allegations in the Complaint. Match further objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "online cancellation issues."

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 133:** Online cancellation issues were the most common reason that people complained to the Better Business Bureau concerning Match.com.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, and overbroad because "people" is not defined and in its ordinary sense includes individuals that are not relevant to the claims or allegations in the Complaint. Match further objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "online cancellation issues."

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 134:** Match internally tracked where Subscribers "fall out" of the resignation flow when they attempt to cancel their Match.com subscription.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are

not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 135:** Match's records reflect that most Subscribers who enter the resignation flow do not make it past the requirement to enter their password.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Match further objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "enter the resignation flow."

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 136:** As of October 25, 2013, Match's records reflected that more than 80% of Subscribers who enter the resignation flow dropped out of the process on the page requiring that the Subscriber enter his or her account password.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Match further objects to this Request as vague and ambiguous because it is unclear what Plaintiff means by "enter the resignation flow."

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 137:** An internal Match report in 2013 found that 27.7% of cancellation reasons were "thought I already canceled."

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are

not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 138:** Between January 2013 and May 2018, 108,837 consumers complained to Match for having been charged after believing themselves to have already cancelled.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 139:** Between January 2013 and May 2018, 41,164 consumers were refused refunds by Match after complaining of having been charged after believing themselves to have already cancelled.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including

"Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 140:** In May 2017, Match employees discussed a possible issue with the Match.com website wherein some Subscribers who attempted to cancel their subscription would see a webpage confirming the cancellation and receive an email confirming the cancellation despite their subscription not being cancelled.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 141:** In 2013, Match reduced the hours of availability for its customer service phone line from seven days a week to five.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 142:** In 2013, Match reduced the hours of availability for its customer service phone line from seven days a week to five in part to reduce the number of subscription cancellations it processed.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of

Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

**REQUEST NO. 143:** In 2013, when Match reduced the hours of availability for its customer service phone line from seven days a week to five it refunded less money to consumers.

**RESPONSE:**

Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of Match necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of Match, which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Subject to and without waiving the foregoing objections, Denied.

Dated**:** September 14, 2022

*/s/ Angela C. Zambrano*
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com

SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and
Match Group, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and forgoing document

was served on all counsel of record via e-mail as outlined below on September 14, 2022.

Reid Abram Tepfer
rtepfer@ftc.gov
M Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov

/s/  *Angela C. Zambrano*
Angela C. Zambrano

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. 3:19-cv-02281-K |
| MATCH GROUP, INC., a corporation, | |
| Defendant. | |

**DEFENDANT MATCH GROUP, INC.'S FIRST AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules"), Defendant Match Group, Inc. ("Match"), by and through its undersigned counsel, amends its objections and responses to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") First Request for Production of Documents (each a "Request" and, collectively, the "Requests") as follows:

**I.      GENERAL OBJECTIONS**

1.      <u>Irrelevant</u>. Match objects to each and every Request to the extent that it purports to seek information that is irrelevant to Plaintiff's claims or Match's defenses and is not proportional to the needs of the case. In particular, Match objects to each and every Request to the extent that it seeks information only about the FTC's claims that were dismissed with prejudice in the Court's March 24, 2022 Order on Match's Motion to Dismiss (the "Dismissed Claims").[1] For the

---

[1] ECF No. 86 (dismissing Counts I & II of FTC's Original Complaint, filed on September 25, 2019, at ECF No. 1, due to Match's affirmative defense of CDA § 230 immunity). The FTC amended its Original Complaint on July 19, 2022, ECF No. 116. All references herein to the Complaint refer to the operative Complaint.

avoidance of doubt, Match will not withhold a document merely because it is related to the Dismissed Claims, if such document is otherwise responsive to the Requests related to non-dismissed claims. Match further objects to each and every Request to the extent that it seeks documents or information from an entity not named in the operative Complaint, including, but not limited to, a website or dating app not relevant to the live Complaint, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

2.    <u>Undue Burden</u>. Match objects to each and every Request to the extent that it seeks to impose obligations beyond what is required under the Rules or is unduly burdensome. Accordingly, Match objects to each and every Request where the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

3.    <u>Overbroad</u>. Match objects to each and every Request to the extent that it seeks information that is beyond the scope of Plaintiff's claims in the Complaint, including, but not limited to, documents and information related to Plaintiff's Dismissed Claims, and documents and information related to entities and/or dating sites that are not party to, or otherwise related to, this litigation, such as OKCupid, Plenty of Fish, and Tinder. Match further objects to each and every Request to the extent that it seeks documents and information that are not within Match's possession, custody, or control, including by seeking documents and information from and related to entities that are not named as parties to this litigation.

4.    <u>Privilege</u>. Match objects to each and every Request to the extent it seeks documents that are or information that is subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all

communications with, or work product of, any outside attorney) (collectively, "Privileged Information"). Any inadvertent disclosure of Privileged Information by Match shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

5.    <u>Vagueness and Ambiguity</u>. Match objects to each and every Request to the extent that such Request is so vague, ambiguous, or confusing as not to be susceptible to a reasoned interpretation or response. In the absence of clear instructions or definitions associated with terms that are too vague, ambiguous, or confusing, Match will give the terms used in the Request a reasonable interpretation.

6.    <u>Accessibility</u>. Match objects to each and every Request to the extent that it seeks information that is not reasonably accessible in the ordinary course of business.

7.    <u>Cumulative Requests and Availability of Information Elsewhere</u>. Match objects to each and every Request that is cumulative, duplicative of, or to which documents or information already are in the possession, custody, or control of Plaintiff, or have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive. In particular, Match objects to each and every Request insofar as it seeks documents or information already obtained by Plaintiff during the FTC's prior investigation in connection with the Civil Investigative Demand served on Match in 2017 (the "2017 CID"). In connection with the 2017 CID, Match produced over 225,000 documents that spanned a date range of 2013 to 2018. Such prior productions and the massive volume of documents produced therein should be sufficient to provide the FTC with the information it requires. For the avoidance of doubt, Match will comply with the ESI Order, which provides, "The parties need not re-produce in discovery documents that were already produced to the FTC in response to the FTC's CID. Instead, the parties will refer to the bates number of the relevant documents." ECF No. 132 at 4.

Attached hereto and incorporated herein is Exhibit A, which includes each CID Document Request and the corresponding reference(s) to location(s) of bates numbers responsive to each CID Document Request. The responses herein identify which of these Requests correspond to which CID Document Request. All documents referenced in Exhibit A were previously served or produced in the CID and shall be treated as Confidential Information, pursuant to the Protective Order.

8.    <u>Lack of Possession, Custody, or Control</u>. Match objects to each Request to the extent it does not appear to be addressed to Match and seeks documents that are necessarily outside Match's possession, custody, or control.

9.    <u>Legal Conclusions</u>. Match objects to each and every Request to the extent that it requires Match to draw legal conclusions.

10.   <u>Reservation of Right to Supplement</u>. Given the stage of the litigation, Match has not completed its investigation of the facts or law relating to this action, and discovery in this matter is ongoing. Accordingly, consistent with the Rules, these responses and objections are made without prejudice to, and are not a waiver of, Match's right to amend, correct, or supplement these responses, and are subject to Match's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist. Match provides these responses in good faith after a reasonable inquiry and based on information that it knows or can readily obtain.

11.   <u>No Waiver</u>. By responding to these Requests, Match does not concede the relevancy of a Request nor the relevancy or admissibility of any information provided in response thereto. The fact that information is provided in response to a particular Request does not mean that it is probative of any particular issue in this case. Match expressly reserves its right to assert

any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, privilege, confidentiality, hearsay, or admissibility as evidence for any other purpose. Moreover, the right to object on any ground to the use of the responses or information provided, in any aspect of this or any other court action, arbitration, or judicial or administrative proceeding or investigation, is reserved.

## II.   SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.      Match specifically objects to the Requests' Instructions and Definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. In responding to these Requests, Match will follow the requirements set forth in the Rules.

2.      Match specifically objects to the definitions of "Match," the "Company," and "You" because they are vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines these terms as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." This definition necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Match objects to Plaintiff's definitions of "Match," the "Company," and "You" as defined to "include any descriptor used by Match in its business practice," again encompassing other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. In responding to these Requests, Match will construe the terms "Match," the "Company," and "You" to refer only to Match Group, Inc.

3.      Match specifically objects to the definitions of "and" and "or" and because they are ambiguous and confusing. Match will interpret these terms to have their plain, ordinary, and common sense meaning. Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case. In responding to these Requests, Match will comply with the Rules.

4.      Match specifically objects to the definition of "any" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common sense meaning. Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, Match will comply with the Rules.

5.      Match specifically objects to the definitions of "Customer" and "Customers" as overbroad, unduly burdensome, and oppressive, insofar as they purport to cover individual(s) "who have maintained an account on *any website* owned or operated by" Match, including "OKCupid, Plenty of Fish, and Tinder," which encompasses websites and entities that are not party to, or otherwise related to, the present litigation. Match further objects that the definitions of "Customer" and "Customers" are thus not tailored to the allegations in the complaint, not proportional to the needs of the case, and exceedingly burdensome. In responding to these Requests, Match will

construe the terms definitions of "Customer" and "Customers" to refer only to Customer(s) of Match.com.

6.      Match objects to the definition of "Document" as overly broad and unduly burdensome. Match further objects to this definition to the extent it refers to items outside of Match's possession, custody, or control, particularly through its use of the phrases "regardless of origin or location" and "however and by whomever prepared, produced, disseminated, or made." Match further objects to this definition to the extent it refers to items in Plaintiff's possession, custody, or control, or to items that have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive. Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those required by the Rules. In responding to these Requests, Match will interpret the word "Document" to have its plain, ordinary, and common sense meaning and will comply with the Rules.

7.      Match specifically objects to the definition of "each" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common sense meaning. Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, Match will comply with the Rules.

8.      Match specifically objects to the definitions of "Identity" and "the identity of" and because they are ambiguous and confusing. Match will interpret these terms to have their plain, ordinary, and common sense meaning. Match further objects to these definitions to the extent they

purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, Match will comply with the Rules.

9.      Match specifically objects to the definition of "Match Group, LLC" as vague, ambiguous, confusing, and overbroad.

10.      Match objects to the definition of "OKCupid" because it is overbroad, ambiguous, and confusing. Match further objects to the definition of "OKCupid" as irrelevant, since OKCupid is not referenced in the Complaint, and thus any Request relying on the definition of "OKCupid" is not proportional to the needs of the case and is unduly burdensome.

11.      Match objects to the definition of "Plenty of Fish" because it is overbroad, ambiguous, and confusing. Match further objects to the definition of "Plenty of Fish" as irrelevant, since Plenty of Fish is not referenced in the Complaint, and thus any Request relying on the definition of "Plenty of Fish" is not proportional to the needs of the case and is unduly burdensome.

12.      Match specifically objects to the definitions of "referring to" and "relating to" because they are ambiguous and confusing. Match will interpret these terms to have their plain, ordinary, and common sense meaning. Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, Match will comply with the Rules.

13.     Match specifically objects to the definition of "Subscriber" as overbroad, unduly burdensome, and oppressive, insofar as it purports to cover a "Subscriber" to "any website owned or operated by" Match, which would necessarily encompass websites and entities that are not party to, or otherwise related to, the present litigation. Match further objects that the definition of "Subscriber" is thus not tailored to the allegations in the Complaint and not proportional to the needs of the case. In responding to these Requests, Match will construe the term "Subscriber" to refer only to Subscribers to Match.com.

14.     Match objects to the definition of "Tinder" because it is overbroad, ambiguous, and confusing. Match further objects to the definition of "Tinder" as irrelevant, since Tinder is not referenced in the Complaint, and thus any Request relying on the definition of "Tinder" is not proportional to the needs of the case and is unduly burdensome.

15.     The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Requests.

## III.     SPECIFIC OBJECTIONS AND RESPONSES TO THE REQUESTS

**REQUEST NO. 1:** The Company's certificate of incorporation, bylaws, rules, regulations, procedures, and any amendments to them.

**RESPONSE:** Match objects to this Request because "rules," "regulations," and "procedures" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of

"the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate formation documents are not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 2:** All minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board.

**RESPONSE:** Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence

that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects to this Request because "attachments" and "materials" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities or dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, by requesting "*[a]ll* minutes" and "materials" regardless of subject matter.

Subject to and without waiving the foregoing specific and general objections, Match will conduct a reasonable search for minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board that reference or are reasonably related

to Match.com's cancelation flow. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 3:** All materially different versions of the Company's organizational charts and personnel directories.

**RESPONSE:** Match objects to this Request because "organizational charts" and "personnel directories" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's "organizational charts" and "personnel directories" are not relevant to Plaintiff's claims in the Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession,

custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 4. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 3 in connection with the 2017 CID, in response to CID Document Request No. 2. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 4:** Documents sufficient to show all relationships that have existed between Match Group, Inc. and any other corporate entity, including Match Group, Inc.'s subsidiaries, entities with an ownership interest the Company, and any other entity You claim has operated match.com.

**RESPONSE:** Match objects to this Request because "relationships" is vague and undefined, and also to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as "all relationships that have existed between Match Group, Inc. and any other corporate entity" are not relevant to Plaintiff's claims in the Complaint. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 3. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it will conduct a reasonable search for documents sufficient to show any relationships that have existed between Match Group, Inc. and the entity or entities that operate Match.com, including Match Group, LLC. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 5:** Documents sufficient to show all corporate officers of:

    a.  Match Group, Inc.;

    b.  Any corporate subsidiary of Match Group, Inc.;

    c.  Any corporation that has had an ownership interest in Match Group, Inc.;

    d.  Any other entity You claim has operated match.com;

    e.  Any other entity You contend has operated Tinder;

    f.  Any other entity You contend has operated OKCupid;

    g.  Any other entity You contend has operated Plenty of Fish.

**RESPONSE:** Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as

including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Match further objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 3, 4, 6, and 7. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 5 in connection with the 2017 CID, in response to CID Document Request No. 2.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 6:** Documents sufficient to identify all current and former employees of Match Group, Inc. whose responsibilities include or relate to:

    a.   advertising or marketing;

    b.  customer service;

    c.  corporate governance or operations;

    d.  general management;

    e.  research and development;

    f.  legal compliance;

    g.  accounting or finance;

    h.  cancellation of subscriptions;

    i.   the Match Guarantee; and

    j.  policies and practices related to chargebacks.

**RESPONSE:** Match objects to this Request because "corporate governance or operations" and "general management" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information, particularly in light of Plaintiff's request for documents related to "legal compliance." Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at

issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 6 in connection with the 2017 CID, in response to CID Document Request No. 1.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 7:** Documents sufficient to identify all current and former Match executives.

**RESPONSE:** Match objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "Match" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "Match," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, by seeking documents regarding "all current and former Match executives" regardless of their relevance to the claims in the Complaint. Match further objects to

the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Match further objects to this Request to the extent that it is duplicative of other Requests, including Request Nos. 3, 5, and 6. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 7 in connection with the 2017 CID, in response to CID Document Request No. 2.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 8:** Documents sufficient to show all transfers of money between Match Group, Inc., and any corporate subsidiary or owner or any other entity You claim has operated match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request because "transfers of money" is vague and undefined. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's

claims in the Complaint, as Plaintiff seeks documents and information about entities and dating

sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and

Tinder). Match further objects to this Request because it is overbroad and unduly burdensome by

seeking documents and information about financial transactions that are irrelevant to Plaintiff's

claims, even if limited only to Match Group, Inc. and Match.com. Moreover, Match objects that

this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters

beyond the scope of the present litigation, and that this Request is an abuse of the discovery

process. Match further objects to the extent that the requested documents already are in Plaintiff's

possession, custody, or control, or to the extent that the requested documents are not in Match's

possession, custody, or control.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the

additional burden of searching for more documents.

**REQUEST NO. 9:** All Documents You contend tend to show that Match Group, Inc., is not liable
for the violations alleged in the Complaint filed in this case, including documents supporting the
claim that another entity has operated match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional

to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match

Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures,

operations under assumed names, and affiliates, and all directors, officers, employees, agents,

consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of

"You" necessarily and inappropriately includes other entities that are not relevant to the claims or

allegations in the Complaint. Furthermore, Plaintiff's definition of "You," which is defined to

"include any descriptor used by Match in its business practice," encompasses other entities and

dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Match further objects to this Request as overbroad, unduly burdensome, and oppressive, because it is not proportionate to the needs to the case and because it requires Match to marshal all of its evidence before trial. Match further objects to this Request to the extent it is duplicative of other Requests, potentially including each and every other Request. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 9 in connection with the 2017 CID, in response to each and every CID Document Request and Interrogatory.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 10:** All Documents You contend tend to show that Match Group LLC operates or has operated Match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional

to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 4 and 11.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 10 in connection with the 2017 CID, in response to CID Interrogatory No. 1.Notwithstanding its prior production, Match will conduct a reasonable search for documents sufficient to show the operation of Match.com.

Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 11:** All Documents You contend tend to show that Match Group Inc. does not or has not operated Match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request because the phrase "does not or has not operated" requires Match to prove a negative, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the

requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 4 and 10.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 11 in connection with the 2017 CID, in response to CID Interrogatory No. 1. Notwithstanding its prior production, Match will conduct a reasonable search for documents sufficient to show the operation of Match.com. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 12:** Documents sufficient to show the Company's quarterly and annual gross and net revenue, including profit and loss statements and accounting documents for Match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request because "accounting documents" is vague, undefined, and overbroad, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Match further objects to this Request insofar as it seeks information that Plaintiff can obtain elsewhere and/or is publicly available.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 13:** Documents showing the Company's projections of its gross and net revenue, including Documents provided to prospective investors.

**RESPONSE:** Match objects to this Request because "projections" and "prospective investors" are vague and undefined, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as "the Company's projections of its gross and net revenue, including Documents provided to prospective investors," are not relevant to Plaintiff's claims in the Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 14:** Documents sufficient to show quarterly and annual revenue from:

    a.  Subscriptions to Match.com;

    b.  Subscriptions to OKCupid;

    c.  Subscriptions to Plenty of Fish;

    d.  Subscriptions to Tinder;

    e.  Subscriptions to Match.com that included or was subject to a Match Guarantee;

    f.  Payments from accounts on Match.com that had been automatically renewed; and

    g.  Payments from Subscribers who had clicked on the "retention offer" or "Cancel Subscription" hyperlinks described in Paragraph 55 of the Complaint filed in this case.

**RESPONSE:** Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced information responsive to Request No. 14 in connection with the 2017 CID, in response to CID Interrogatory No. 3.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 15:** Each unique version of all Ads related to a Match Guarantee.

**RESPONSE:** Match objects to this Request as vague and undefined because it is unclear what the FTC means by "unique." Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The

FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.  Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 15 in connection with the 2017 CID, in response to CID Request No. 3(b)(i).

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 16:** Each unique version of all Ads related to cancellation of a Match.com, OKCupid, Plenty of Fish, or Tinder subscription, including Ads related to the ease or availability of cancellation.

**RESPONSE:** Match objects to this Request as vague and undefined because it is unclear what the FTC means by "unique."  Match also objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the

requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 15. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 16 in connection with the 2017 CID, in response to CID Request No. 3(c)(i). Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 17:** Documents sufficient to show each unique disclosure You contend disclosed policies concerning terminating subscriptions in response to a Customer Chargeback.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any

claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass. Finally, Match responds that it has already produced documents responsive to Request No. 17 in connection with the 2017 CID, in response to CID Request No. 9(e).

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 18:** Representative copies of all visual content shown to Customers during the process of purchasing or signing up for a paid subscription.

**RESPONSE:** Match objects to this Request because "[r]epresentative copies of all visual content" is vague, confusing, and overbroad. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by

including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 19. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 18 in connection with the 2017 CID, in response to CID Request Nos. 3(a)(i), 3(a)(iii), 3(b)(i), 3(b)(iii), 3(c)(i), and 3(c)(iii). Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 19:** Representative copies of all visual content that Match has shown to Customers concerning the Match Guarantee, including concerning:

    a.  Advertisements relating to Subscriptions subject to the Match Guarantee;

    b.  Customer "progress" with regard to the Match Guarantee; and

    c.  Redeeming a Match Guarantee or receiving a Guarantee Extension.

**RESPONSE:** Match objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing, because "progress" is vague and undefined. Match specifically objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or

defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 19 in connection with the 2017 CID, in response to CID Request Nos. 3(b)(i), 3(b)(iii), and 9(b).

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 20:** Representative copies of all visual content that Customers have had to view to cancel their subscriptions.

**RESPONSE:** Match objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website

owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 19. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 20 in connection with the 2017 CID, in response to CID Request No. 9(d). Notwithstanding its prior production, Match

will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 21:** Representative copies of all visual content that the Company has shown to Customers concerning the available means of cancelling their subscriptions.

**RESPONSE:** Match objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested

documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 20. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 21 in connection with the 2017 CID, in response to CID Request No. 9(d). Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 22:** All documents related to any change or contemplated change to any means of subscription cancellation available to Customers.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that

are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Additionally, Match objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as any "change" that may have been contemplated but never implemented is not relevant to the allegations in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 17. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 22 in connection with the 2017 CID, in response to CID Request Nos. 8(e) and 9(d). Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 23:** All documents related to account takeovers.

**RESPONSE:** Match objects to this Request because "account takeovers" is vague and undefined, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, because by failing to specify any limiting principle on "account takeovers," this Request necessarily captures documents and information that fall outside the scope of what is relevant to that allegations in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 24:** All documents related to software flaws that prevented Customers from:

    a. logging into their accounts;

    b. using their accounts; or

    c. canceling their accounts.

**RESPONSE:** Match objects to this Request because "software flaws" is vague, undefined, and overbroad, and to the extent Plaintiff seeks Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match objects to this Request because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as not every "software flaw" related to account functionality is relevant to the allegations in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition

by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Additionally, Match objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 19, 20, 21, 22, 23, and 25.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 25:** All communications relating to:

    a.   Match Guarantees;

    b.   Cancellation of paid subscriptions by Customers;

    c.   Customer Chargebacks;

    d.   Denial of Customers' access to accounts in response to chargebacks;

    e.   The marketing or advertising of Tinder Gold or Tinder Boost; and

    f.   The marketing or advertising of Incognito Mode, OKCupid Premium, or Profile Boosts on OKCupid.

**RESPONSE:** Match objects to this Request because "[a]ll communications" is overbroad and unduly burdensome, and to the extent Plaintiff seeks Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the

alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as neither "[t]he marketing or advertising of Tinder Gold or Tinder Boost" nor "[t]he marketing or advertising of Incognito Mode, OkCupid Premium, or Profile Boosts on OkCupid" are relevant to Plaintiff's claims in the Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 17, 19, 20, 21, 22, 23, 24, 27, 28 and 31.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 26:** All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Match Guarantees; chargeback policies; Ads relating to subscription renewal or cancellation; or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups.

**RESPONSE:** Match specifically objects to this Request because "tests," "A/B testing," "click-through data," "surveys," "usability tests," and "focus groups" are vague and undefined. Match further objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this

Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company," and "Match" or "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because by seeking information under such a broad category as "how consumers or Customers view, read, react to, understand, or have been influenced," this Request is not tailored to the allegations in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 26 in connection with the 2017 CID, in response to CID Request Nos. 3(a)(iv), 3(b)(iv), 3(c)(iv), and 4. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to subscription renewal and cancelation for Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 27:** All Documents, including internal and third-party studies or audits, relating to Customers' efforts to cancel their subscriptions to Match.com, Tinder, or OKCupid.

**RESPONSE:** Match objects to this Request because "efforts" is vague and undefined, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company," and "the Company" as including

"Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 19, 20, 21, 22, 24, 25, 26, and 28. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 28:** All Documents relating to the policies and practices of the Company, Match.com, Tinder, or OKCupid regarding the following:

    a.  Match Guarantees;

    b.  account cancellation;

    c.  Availability of customer support services;

    d.  availability of refunds;

    e.  Customer Chargebacks;

    f.  Customer access to accounts; and

    g.  compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

**RESPONSE:** Match objects to this Request because "availability" is vague and undefined. Match further objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint,

to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 19, 20, 21, 22, 24, 25, 26, and 27.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 28 in connection with the 2017 CID, in response to CID Request No. 8. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to subparts (b)-(d) and (g) for Match.com and ROSCA compliance only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 29:** All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged Information, and because the Request overall appears calculated to specifically seek Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because not every document related to every prior investigation of Match's compliance with consumer protection laws is relevant to the allegations in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 27, 28, 32, and 34. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that will conduct a reasonable search for reasonably available responsive documents with respect to Match.com's compliance with ROSCA only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 30:** All Documents relating to Customer complaints.

**RESPONSE:** Match objects to this Request because "complaints" is vague and undefined, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, since by seeking "all Documents" related to the inherently broad category of "Customer complaints," this Request necessarily captures a whole host of documents, communications, and other information that are not relevant to the claims in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is

an abuse of the discovery process. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 30 in connection with the 2017 CID, in response to CID Request No. 10. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents relating to Customer complaints regarding the Match.com online cancelation flow, as alleged in the Complaint. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 31:** All communications with Customers relating to the Match Guarantee or the Company's chargeback or cancellation policies or practices.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at

issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company," and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 25, 28, and 30. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 31 in connection with the 2017 CID, in response to CID Request No. 10. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com's cancelation policies or practices only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 32:** All documents relating to any lawsuit alleging that the operators of Match.com, Tinder, Plenty of Fish, or OKCupid have engaged in fraud or violated any federal, state, or foreign consumer protection laws.

**RESPONSE:** Match objects to this Request because "the operators of" is vague and undefined, and to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged Information. Match further objects to this Request as irrelevant, overbroad, oppressive, and inappropriate to the extent Plaintiff seeks discovery about "fraud" or consumer protection violations of any kind, as the Court dismissed with prejudice Plaintiff's claims related to alleged fraud (Counts I & II) in its Memorandum Opinion & Order on Match's Motion to Dismiss. ECF No. 86.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Match further objects to this Request as irrelevant, overbroad, and unduly burdensome, to the extent that its use of the undefined term "the operators of" assumes that Match Group, Inc. is "the operator[] of" Match.com, Tinder, Plenty of Fish, or OKCupid. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Match likewise objects to this Request to the extent the requested documents are publicly available. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 34.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 33:** All versions of customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training materials.

**RESPONSE:** Match objects to this Request because "prepared responses," "customer support manuals," and "employee manuals" are vague and undefined, and to the extent Plaintiff seeks Privileged Information. To the extent Plaintiff meant "Customer," as opposed to "customer," Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because by failing to specify any subject matter limitation on any of the materials referenced therein, this Request necessarily captures documents and information that fall outside the scope of what is relevant to Plaintiff's claims. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Finally, Match objects to this Request to the extent it is duplicative of other Requests,

including Request Nos. 25, 28, and 30. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 33 in connection with the 2017 CID, in response to CID Request No. 8. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents that address or relate to Match.com account cancelation only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 34:** All Documents referring to or relating to:

    a.  The Federal Trade Commission;

    b.  The FTC Act;

    c.  The Restore Online Shoppers' Confidence Act;

    d.  Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP";

    e.  The Department of Justice; and

    f.  The lawfulness or unlawfulness of any practices related to Match Guarantees, Customer chargebacks, or the cancellation of subscriptions.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the terms "referring to" and "relating to" as used in this Request necessarily capture Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the

conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as this Request necessarily encompasses entities not party to, or otherwise related to, the present litigation. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 29 and 32.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 35:** All Documents that support, contradict, refute, or rebut any affirmative defense You have asserted in Your Answer.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional

to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as oppressive, overbroad, and not proportional to the needs of the case because it requires Match to marshal all of its evidence before trial. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 36:** All Documents You referred to in the course of responding to any Request for Admission, Request for Production, or Interrogatory served by the Federal Trade Commission in this case.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the terms "referring to" and "relating to" as used in this Request necessarily capture Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the

needs of the case. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as oppressive, overbroad, and not proportional to the needs of the case, because it purports to require Match to re-produce each and every document it has previously produced to the FTC. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

Subject to and without waiving the foregoing specific and general objections, Match will conduct a reasonable search for reasonably available responsive documents with respect to

Match.com account cancelation only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 37:** All Documents considered or relied upon by any witness you disclose under Fed. R. Civ. P. 26(a)(2).

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because it does not specify any subject matter limitations. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Match objects to this Request as oppressive, overbroad, and not proportional to the needs of the case because it requires Match to marshal all of its evidence before trial. Match further objects to this Request to the extent it seeks to require production or disclosure of expert-related documents prior to the time specified in the Court's scheduling order. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

Dated: September 14, 2022

*/s/ Angela C. Zambrano*
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375

cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and
Match Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and forgoing document

was served on all counsel of record via e-mail as outlined below on September 14, 2022.

Reid Abram Tepfer
rtepfer@ftc.gov
M Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov

*/s/  Angela C. Zambrano*
Angela C. Zambrano

**EXHIBIT A: CID PRODUCTIONS KEY**

*FTC v. Match Group, Inc. et al.*, Case No. 3:19-cv-02281-K (N.D. Tex.)

| CID | Bates Location |
|---|---|
| CID RFP 2 | • 20170515 Hogan First Production Cover Letter **(Ex. 1 at 32)** |
| CID RFP 3 | • 20170515 Hogan First Production Cover Letter **(Ex. 1 at 32)** – *RFP 3(a)(iii), 3(b)(iii), and 3(c)(iii)*<br>• 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 3)**<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 4 | • 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 4)**<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 6 | • 20170613 Letter from L. Goldstein to Z. Keller at FTC with Document and Interrogatory Responses **(Ex. 2 at 3)**<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 7 | • 20170515 Hogan First Production Cover Letter **(Ex. 1 at 33)** |
| CID RFP 8 | • 20170515 Hogan First Production Cover Letter **(Ex. 1 at 33)**<br>• 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 5)** |

**APP 189**

| CID | Bates Location |
|---|---|
| | • 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)** |
| | • 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)** |
| | • 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)** |
| | • 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)** |
| | • 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 9 | • 20170613 Letter from L. Goldstein to Z. Keller at FTC with Document and Interrogatory Responses **(Ex. 2 at 4–5)** |
| | • 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 5)** |
| | • 20171020 Match Letter re ESI Production in Response to CID **(Ex. 5 at 1)** |
| | • 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)** |
| | • 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)** |
| | • 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)** |
| | • 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)** |
| | • 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 10 | • 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)** |
| | • 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)** |
| | • 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)** |
| | • 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| | • 20180604 Match Letter re Customer Complaint Samples for DR 10 **(Ex. 11 at 1)** |
| CID RFP 11 | • 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 6)** |
| | • 20171018 Match Letter re Suppl Resp to DR 11 **(Ex. 4 at 1)** |
| | • 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)** |
| | • 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)** |
| | • 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)** |
| | • 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |

**APP 190**

# EXHIBIT 5



SIDLEY AUSTIN LLP
2021 MCKINNEY AVENUE
SUITE 2000
DALLAS, TX 75201
+1 214 981 3300
+1 214 981 3400 FAX

+1 214 981 3405
ANGELA.ZAMBRANO@SIDLEY.COM

AMERICA  •  ASIA PACIFIC  •  EUROPE

September 1, 2022

**Via Email**

M. Hasan Aijaz
Federal Trade Commission
1999 Bryan St Ste 2150
Dallas, TX 75201

Re:     *FTC v. Match Group, Inc. et al.*, Case No. 3:19-cv-02281-K (N.D. Tex.)

Counsel:

I write on behalf of Match Group, Inc. ("MGI") to memorialize our understanding of the discussions on our August 29, 2022 call (the "August 29 Call") with the FTC about the FTC's August 19, 2022 letter to MGI (the "August 19 Letter"). As we communicated during the August 29 Call, we think it would be beneficial to confer further on an individual discovery request basis, rather than on an objection basis.

### A.     MGI's Objection about Information Relevant to Dismissed Claims

The FTC complained in the August 19 Letter and on the August 29 Call about MGI's general objection to discovery requests to the extent that the requests seek information relevant to Counts I and II, which the Court dismissed with prejudice in its March 24, 2022 Opinion and Order, Dkt. 86. The FTC asserted that such objection is overbroad and improper because the FTC's requests are limited to discoverable information relevant to its remaining counts.

At the outset, MGI explained that the FTC's claim that its requests are limited to discoverable information relevant to its remaining counts is simply not true. As an example, after making that representation in its August 19 Letter, the FTC complains in a subsequent section of the August 19 Letter about MGI's objection to the term "PTR Ads" as vague and undefined. As the FTC knows, anything PTR-related is unquestionably related to Counts I and II, which the Court dismissed with prejudice. That example alone demonstrates how the FTC's discovery requests are not limited to its remaining counts.

On the August 29 Call, MGI explained its position that any documents relevant *only* to Counts I and II, which have been dismissed with prejudice, are wholly improper. MGI also represented to the FTC that it is not withholding documents merely because they are related to Counts I and II, if such documents are otherwise responsive to the requests for which MGI agreed

Sidley Austin (TX) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

to produce documents.  Although MGI does not believe that doing so is necessary in light of our conversation and this letter, MGI will amend its responses to make this position clear.

### B.    MGI's Objection about Documents or Information Already Produced to the FTC During the CID

The FTC then discussed its concern in the August 19 Letter and on the August 29 Call about MGI's general objection to requests insofar as they seek documents or information already obtained during the CID.  MGI repeatedly explained that the parties' ESI Order—filed on August 15, 2022 (well after MGI served its discovery responses on July 19, 2022) and issued by the Court mere hours before the August 29 Call—provides, "The parties need not re-produce in discovery documents that were already produced to the FTC in response to the FTC's CID.  Instead, the parties will refer to the bates number of the relevant documents."  Dkt. 132 at 4.  MGI assured the FTC that it fully intends to comply with the ESI Order, as agreed by the parties and ordered by the Court, which MGI believes moots the FTC's concern.  Following MGI's attempted reassurance to the FTC, the FTC curtly responded, "Nope, let's move on."  Despite the FTC's apparent disinterest in resolving this issue, MGI will amend its responses to make this position clear now that the parties agreed to an ESI Order, which has been entered by the Court.

### C.    MGI's Objection to the Production of Confidential, Trade Secret, and Proprietary Information Without a Protective Order

The FTC asserted in the August 19 Letter that MGI's objection to discovery requests "to the extent that [such request] seeks confidential, trade secret, and proprietary information" is improper because MGI has not attempted to satisfy its burden to establish that the information sought is a trade secret or other confidential information.

However, the FTC's complaint in the August 19 Letter is misleading.  MGI actually objected to the extent a request sought such information, without the protection of an enforceable protective order.  MGI made clear that it would "not produce any documents or provide any information in response" until it could "ensure the protection of its confidential information and trade secrets."  As the FTC is aware, MGI served its discovery responses before the parties had agreed to a Protective Order.  MGI made its first production of non-confidential documents on August 12, 2022, while the parties were negotiating the terms of a Protective Order.  Then, after the parties reached agreement and filed the Protective Order with the Court on August 15, 2022, Dkt. 127, MGI made its second production of confidential documents on August 18, 2022.  The Court then entered the Protective Order on August 29, 2022, Dkt. 131.  To confirm, MGI is not withholding documents or information on the basis that they are confidential, trade secret, or proprietary, as there is now a Protective Order.  MGI will amend its responses to make that clear now that a Protective Order has been entered.

**APP 193**

# SIDLEY

Page 3

On the August 29 Call, the FTC did not actually address the general objection to confidentiality that it included in the August 19 Letter. Rather, the FTC veered from the August 19 Letter to complain that MGI had allegedly over-designated documents in its production by "mass designating" documents as confidential.[1] MGI explained that the parties had agreed on a different process in the Protective Order to meet and confer on documents that a party believes is improperly designated, and that the FTC needs to follow that process. Additionally, and for the avoidance of doubt, MGI explained that it would not withdraw its general objection in the August 19 Letter.

### D. MGI's Objections to Certain Terms as Vague and Undefined

The FTC complained in the August 19 Letter and on the August 29 Call that MGI objected to certain terms as vague and undefined, including "Match Group, LLC," "Relevant," "PTR Ads," and "subscriptions." In response, MGI emphasized that, while MGI objected to certain words or phrases as vague and undefined to make clear that MGI was uncertain as to the scope of the FTC's request, in each instance, MGI used its best understanding of each vague and undefined term in answering the discovery request. In no instance did MGI refuse to respond to a discovery request on this basis alone, which is consistent with how parties are supposed to approach discovery requests that use vague or ambiguous words. *See, e.g.*, *Squires v. Toyota Motor Corp.*, No. 4:18-cv-00138, 2021 WL 1930721, at *5 (E.D. Tex. May 13, 2021) (explaining party obligated to respond to requests using ordinary definitions of phrases).

- As to "Match Group, LLC," MGI explained that it does not understand why the FTC finds MGI's objection to the definition of Match Group, LLC so problematic. That term is used in only one discovery request (Request for Production No. 10), and MGI agreed to "conduct a reasonable search for documents sufficient to show the operation of Match.com" as to that Request for Production. Moreover, MGI explained that the FTC's definition *is* confusing because it includes "assumed names, prior names, and predecessor entities, including Match.com, LLC," and MGI is not sure what the FTC means by "assumed names, prior names, or predecessor entities" (other than Match.com, LLC). MGI asked the FTC to sharpen those terms, and the FTC flatly refused.

- As to "Relevant," MGI explained that it does not understand why the FTC is so troubled by MGI's objection to the word "relevant" as vague and undefined in Interrogatory No. 3, when MGI still provided (subject to its objections) a substantive response almost five pages long to that Interrogatory. Nevertheless, MGI explained that the term "relevant" may mean something different to MGI and the FTC because it is a subjective word. MGI also explained that it is not intentionally withholding responsive information based on its

---

[1] To be clear, MGI did not "mass designate" documents. As the FTC is aware, MGI has also produced non-confidential documents.

# SIDLEY

Page 4

vagueness objection.  Rather, it used its best understanding of "relevant" in providing its detailed narrative response.

- As to "PTR Ads," the FTC did not address MGI's objection to this term as vague and undefined on the August 29 Call.  As with the other definition-related objections the FTC raised, it is MGI's position that the FTC is wasting the parties' time and energy complaining about this objection.  The FTC defined "Ad" but not "PTR" or "PTR Ad."  But in any event, discovery into any PTR-related issues would relate only to Counts I or II, which the Court has dismissed with prejudice.  MGI simply is not going to engage in discovery on Counts I and II that have been dismissed with prejudice.

- As to "Subscriptions," the FTC did not address MGI's objection to this term as vague and undefined on the August 29 Call.  But MGI stands on its objection that "subscription" is vague and undefined—there are various types and lengths of subscriptions, and the FTC did not specify.  But even if the term were not vague and undefined, MGI would still stand on its other objections to that Interrogatory (No. 5) about the Guarantee and Chargeback policies, including  that MGI never offered any kind of "Match Guarantee" or maintained a Chargeback policy and that Match.com has permanently ceased such practices in any event.

Additionally, MGI noted on the August 29 Call that, although MGI objected to certain terms within the FTC's discovery requests as vague, the FTC objected to *entire* discovery requests served by MGI as vague, without any explanation as to why such requests are vague.  *See, e.g.*, Pl.'s Resp. to Def.'s First Set of Interr. at 9 ("**The FTC also objects to this Interrogatory** [No. 6] **as it is** overbroad, **vague**, unduly burdensome, and not proportional to the needs of the case.").  The FTC would not engage in any such comparative discussion, and responded that it was "not going into that" and to "move on."  The FTC also refused to respond when MGI asked whether the FTC thought a different standard applied to the FTC.  Such inappropriate behavior is consistent with the FTC's behavior throughout this litigation and discovery,[2] in which the FTC acts as if it subject to a different standard than MGI, although we are both civil litigants in federal district court.

---

[2] As another example of the FTC's pattern of inappropriate behavior and apparent belief that it is subject to a different set of discovery rules than MGI, the FTC entirely refused to answer various discovery requests that it claimed were vague and ambiguous, which is unquestionably improper.  *See, e.g.*, *Squires*, 2021 WL 1930721, at *5 (explaining party obligated to respond to requests using ordinary definitions of phrases); Pl.'s Resp. to Def.'s First Set of Requ. for Adms. at 16-17 (objecting that terms were vague and ambiguous and refusing to answer RFAs 47-49).  This is in stark contrast to MGI, which used its best understanding of each vague and undefined term in answering the discovery requests and which did not refuse to respond to a discovery request on that basis alone.  *See supra*.

**SIDLEY**

Page 5

    **E.**    **MGI's Search for Responsive Information Limited to MGI or Match.com**

    The FTC asserted in the August 19 Letter and on the August 29 Call that MGI improperly limited its search for responsive information to that concerning MGI or Match.com.  When MGI asked the FTC to explain how discovery into any other dating platform would be relevant when there is not a single allegation in the live Complaint about a dating platform other than Match.com, the FTC vaguely referred to its discovery responses that referenced other dating platforms and refused to point to any specific documents or interrogatory responses.  MGI notes that the FTC's position on the call is inconsistent with its August 19 Letter, which stated that the FTC needs discovery "to determine *whether* MGI is engaging in these same law violations on the other platforms."  Ltr. at 4 (emphasis added).  But discovery does not warrant a fishing expedition into all of MGI's operations that have no involvement with the allegations in the FTC's live Complaint (which solely relate to Match.com).  Furthermore, as MGI has made it abundantly clear to the FTC, MGI is not engaging in any of the complained of acts on any site.  It is a holding company.  Just as Match.com is owned and operated by MGL, other dating sites are owned and operated by separate entities as well.

    Discovery into any other dating platform is simply not relevant when the FTC has challenged only Match.com practices.  Moreover, any motions requesting leave to join parties or to amend pleadings were due May 13, 2022.  *See* Scheduling Order, Dkt. 100 ¶ 5.

    On the August 29 Call, the FTC claimed that these other platforms are a "central issue" in the case *because* MGI argues that they are not relevant.  That argument flips discovery on its head; the FTC must show some basis for its allegations before going on a fishing expedition.  Thus, MGI confirmed that it stands on its objections to limit its search for responsive information to that concerning MGI or Match.com.[3]

    **F.**    **MGI's Privilege Objections**

    The FTC complained in the August 19 Letter that MGI objected to certain discovery requests "*to the extent* that [a request] seeks information protected by the attorney-client privilege, the work-product doctrine, the right to privacy, trade secret protection, or other privileges recognized in law or equity."  The FTC demanded that such objections be withdrawn and suggested that, should MGI fail to meet its burden to establish that these privileges apply, MGI risks waiving these privileges.

---

[3] Because documents about other companies or dating platforms are not relevant, MGI has not engaged in any specific analysis of which (if any) responsive documents would be outside of MGI's possession, custody, or control.  However, the fact that the FTC is requesting documents related to dating platforms that MGI does not control suggests that responsive documents that might exist may be outside of MGI's possession, custody, or control.  Thus, MGI stands by its objection.

# SIDLEY

Page 6

The FTC did not discuss this topic on the August 29 Call.  However, to be clear, the FTC's complaint that MGI will not produce privileged documents or information, to the extent they exist, is nonsensical.  The 2-page opinion that the FTC cites also does not stand for such proposition or even relate to the alleged deficiency.  In *Stone Connection, Inc. v. Simpson*, No. 4:07-CV-431, 2008 WL 1927033, at *1 (E.D. Tex. Apr. 28, 2008), the parties disputed whether the plaintiff had met its burden for the court to issue a protective order regarding trade secrets and/or confidential and proprietary information.  Further reflecting the absurdity of this purported deficiency, the FTC's own Responses to MGI's First Requests for Production similarly object to the "RFPs insofar as these seek, directly indirectly, information subject to the attorney client privilege, deliberate process privilege or work production doctrine."  Pl.'s Resp. to Def.'s First Requ. for Prod. at 2.

MGI will not withdraw its privilege objections, nor is it somehow waiving privilege by refusing to withdraw its privilege objections.  The FTC's assertions to the contrary are nothing short of absurd, and MGI assumes that is why the FTC failed to address this topic on the August 29 Call.

### G.      MGI's Objections Regarding Permanently Discontinued Practices and Its Willingness to Enter into a Binding Stipulation

The FTC complained in the August 19 Letter and on the August 29 Call about MGI's objection to discovery requests on the basis that the conduct at issue in Counts III and IV of the Complaint has permanently ceased and that these issues are moot because of MGI's readiness to enter into a binding stipulation.  As MGI has repeatedly indicated to the Court in briefing, to the FTC in multiple letters, and to the FTC via discovery responses including sworn interrogatories, "[MGI] could never and would never, and Match.com would never, engage in the conduct challenged in . . . the Complaint, to which this discovery relates."  *See* Dkt. 134 at 74-75 (Letter), 77 (Letter), 108-09 (Verification).

At the outset, MGI explained that it would *welcome* discovery from the FTC about whether the conduct had ceased.  In fact, had the FTC served an interrogatory asking MGI to, for example, describe any plans to reinstate the Guarantee or Chargeback practices, MGI would have answered them—under oath—by explaining to the FTC (yet again) that those practices have been *permanently* discontinued, and that neither MGI, nor Match Group, LLC, nor Match.com will engage in those practices in the future on Match.com.[4]  In other words, the FTC would have received exactly the "evidence" of permanent discontinuance that it claims does not exist.  But the FTC failed to ask that question (or any other discovery request narrowly tailored to the discontinuance question), which would have resolved this issue once and for all.  Rather, the FTC's discovery requests were admittedly much broader.  The FTC claimed that these broad discovery requests were justified because no binding or enforceable stipulation currently exists, and MGI's

---

[4] To be clear, as MGI has told the FTC multiple times, MGI is incapable of engaging in the challenged practices because it does not control Match.com (or any other dating site).

# SIDLEY

Page 7

claims of discontinuance are unsupported "assertions," not evidence.  However, as MGI explained above and on the call, MGI *welcomes* discovery into whether the discontinued practices are currently being used or if there are any plans to reinstate them (there are not).  But those are not the discovery requests that the FTC served.  Instead, the FTC demands mountains of unnecessary and burdensome discovery going back almost **ten years** (to January 1, 2013), just so it can *attempt* to prove (though it cannot) that it is entitled to an injunction that MGI **is already offering**.  This is the very definition of overly broad and unduly burdensome.  As MGI said on the call, the FTC just won't take "yes" for an answer.

### H.    MGI's Objections on Vagueness, Ambiguity, Confusion, Relevancy, Proportionality, Undue Burden, and Fishing Expedition

The FTC generally alleged in the August 19 Letter and on the August 29 Call that MGI had asserted throughout its discovery responses invalid boilerplate objections on vagueness, ambiguity, confusion, relevancy, proportionality, undue burden, or fishing expedition.  As MGI explained on the August 29 Call, it is not withholding documents based on these objections unless MGI's response to a specific request explicitly says so by limiting the agreement to produce in some way.  For example, in response to the FTC's Request for Production No. 11, which seeks, "All Documents You contend tend to show that Match Group[,] Inc. does not or has not operated Match.com, OKCupid, Plenty of Fish, and Tinder," MGI objected and then responded that it would "conduct a reasonable search for documents sufficient to show the operation of Match.com."  Def. MGI's Resp. and Obj. to Pl. FTC's First Set of Requ. for Prod. of Docs. at 21-22.

However, it was difficult to understand the FTC's position given that it did not want to discuss the objections on a request-by-request basis.  If the FTC believes that MGI improperly objected and withheld documents or information on any such basis, MGI respectfully requests that the FTC explain such deficiencies specifically, in relation to a particular discovery request.  As is, MGI is unable to respond to the FTC's unidentified, unsubstantiated, and unsupported complaints.

### I.    MGI's Production of Documents

The FTC complained in the August 19 Letter about MGI's purported failure to timely produce documents, despite MGI's production of over 23,000 documents in this litigation alone, after producing hundreds of thousands of documents during the CID.  The FTC did not discuss this topic during the August 29 Call, and MGI has explained on multiple previous occasions why the FTC's assertions are inaccurate.  MGI assumes that the FTC no longer has any concerns about this topic and repeats its prior request that the FTC stop misrepresenting the record on this issue.

\* \* \*

As you are aware, we did not discuss any particular discovery request on the August 29 Call.  As we communicated to you during and after the August 29 Call, we think it would be

**APP 198**

# SIDLEY

Page 8

beneficial to confer further on an individual discovery request basis, rather than on an objection basis. We look forward to your prompt response.

Sincerely,

*/s/  Angela C. Zambrano*
Angela C. Zambrano
Partner

cc:     Chad S. Hummel
  Chelsea A. Priest
  Tayler G. Bragg

# EXHIBIT 6

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:19-cv-02281-K |
| Plaintiff, | |
| v. | **PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |
| MATCH GROUP, INC., a corporation, | |
| Defendant. | |

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff the Federal Trade Commission ("FTC"), by its undersigned attorneys, submits to Defendant Match Group, Inc. ("Match") the following First Request for Production of Documents (the "Request").

## INSTRUCTIONS

A.      These instructions and definitions should be construed to require Request responses based upon your actual or constructive knowledge, information available to you, as well as that of your attorneys, accountants, consultants, employees, independent contractors representatives, agents, and other acting on your behalf. This Request must be responded to by the party to whom they are directed within thirty (30) days of the date of service, as defined by Rule 6 of the Federal Rules of Civil Procedure. For any specific document or range of documents You reference in response to this Request that has been or will be produced to the FTC, identify such document(s) by the associated Bates number or other identifying information in Your response. In construing this Request, the present tense includes the past and future tenses, the singular includes the plural, and the plural includes the singular.

B.      This Request covers Documents and information in Your possession or under Your actual or constructive custody or control, including Documents and information in the possession, custody, or control of Your attorneys, accountants, directors, officers, employees, service providers, and other agents and consultants, whether or not such Documents or information were received from or disseminated to any person or entity

C.      If, in responding to this Request, You encounter any ambiguities, Your response shall set forth the matter deemed ambiguous and the construction used in responding.

D.      This Request is continuing in nature, up to and during trial. If, after You serve Your response, You become aware of additional or corrective information or material responsive to this Request, You must supplement Your Request response and promptly produce the responsive material or information to Plaintiff in accordance with Federal Rule of Civil Procedure 26(e).

E.      The relevant time period for this Request shall be from January 1, 2013, to the completion of this action, unless otherwise specified. If the response to any Request is different for different periods within the applicable time period, provide a complete response for each time period and designate the specific time period for which the response is applicable.

F.      If you are withholding a document or information, provide the basis for withholding, including:

1.      If you are withholding the document or information under claim of privilege or the work product doctrine, provide the information set forth in Fed. R. Civ. P. 26(b)(5), including the type of document, the general subject matter of the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and where not apparent, the relationship

PLAINTIFF FTC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K
2

**APP 202**

of the author, addressee, custodian, and any other recipient to each other, in a

manner that, without revealing the information claimed to be protected, will

enable the FTC to assess the applicability of the privilege or protection

claimed by you;

2. If you are withholding the document or information for any reason other than

a claim of privilege or the work product doctrine, provide the reason for

withholding the document.

G. If a responsive document or information contains non-privileged material as well

as material you contend is privileged, you must disclose the non-privileged material to the fullest

extent possible without disclosing the privileged material. You must clearly indicate the portions

of the document or information to which privilege is claimed. If you redact or alter a document,

identify the reason for the redaction or alteration. Any redactions must be clearly visible on the

redacted document.

H. Personally Identifiable Information ("PII") or Sensitive Health Information

**("SHI"):** If You believe that Your response would require You to disclose PII or SHI, please

contact Plaintiff's counsel Reid Tepfer before providing Your response to discuss whether there

are steps You can take to minimize the amount of PII or SHI You include in Your response, and

how to securely transmit such information to the FTC. Plaintiff's counsel may instruct You to

encrypt any electronic copies of such material with encryption software such as PKZip and

provide the encryption key in a separate communication.

PII includes an individual's Social Security number, an individual's name, address, or

phone number in combination with one or more of the following: date of birth, Social Security

number, driver's license number or state identification number (or a foreign country equivalent), passport number, financial account number, credit card number, or debit card number.

SHI includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

I.      In producing documents consisting of electronically stored data in machine-readable form in response to any Request, provide such data in a machine-readable form that does not require specialized or proprietary hardware or software.

J.      Unless otherwise requested, in lieu of producing original hard-copy documents, you may produce photocopies, provided that you shall retain the original documents and produce them to the FTC upon request. Further, copies of original documents may be submitted in lieu of originals only if they are true, correct, and complete copies of the original documents, and their submission constitutes a waiver of any claim as to the authenticity of the copy should it be necessary to introduce such copy into evidence in any legal proceeding. Provide color copies of any document originally produced in color or containing type, writing, or other marks in any color other than black.

K.      If any document requested herein was formerly in your possession, custody, or control and has been lost, destroyed, or otherwise disposed of, you shall submit in lieu of any such document a written statement describing in detail:  (a) the nature of the document and its contents; (b) the identity of the person(s) who prepared or authored the document and, if applicable, the identity of the person(s) to whom the document was sent or shown; (c) the date on which the document was prepared or transmitted; and (d) the date the document was lost or

PLAINTIFF FTC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

destroyed and, if destroyed, the events of and reason(s) for such destruction and the identity, employer(s), current address, and position(s) of the person(s) requesting and/or performing the destruction.

L.      If any document requested herein was previously produced to the FTC, identify it by bates number.

M.      Each response shall be organized and labeled to correspondent to the numbered Request to which it is responsive.

N.      If You cannot answer all or part of any Request in full after exercising due diligence to secure the full information to do so, state and answer to the extent possible, specifying Your inability to answer the remainder, stating the information or knowledge You have concerning the unanswered portion, and detailing what You did in attempting to secure the unknown information.

O.      The Commission often makes its files available to other civil and criminal federal, state, local, or foreign law enforcement agencies. The FTC may make information supplied by you available to such agencies where appropriate pursuant to the FTC Act and 16 C.F.R. §§ 4.11(c) and (j). Information you provide may be shared with other federal, state, or foreign civil or criminal agencies.

**DEFINITIONS**

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this Request, the following terms are to be interpreted in accordance with these definitions:

A. "**Match**" or the "**Company**" or "**You**" means Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing. The term shall include any descriptor used by Match in its business practices.

B. **2017 CID**" means the Civil Investigative Demand the FTC issued to Match Group, Inc. in March 2017

C. "**Advertisement**" or "**Advertising**" or "**Ad**" means any written or verbal statement, illustration, or depiction that promotes the sale of a good or service or is designed to increase consumer interest in a brand, good, or service. Advertising media include, but are not limited to, packaging and labeling; promotional materials; print; television; radio; and internet, social media, email, and other digital content.

D. "**and**," as well as "**or**," shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any specification in this Request all information that otherwise might be construed to be outside the scope of the specification.

E. "**any**" shall be construed to include "all," and "**all**" shall be construed to include the word "any."

F. "**Chargeback**" means a transaction that is returned as a financial liability to an acquirer by a card issuer, usually because of a disputed transaction. The acquirer may then return or "charge back" the transaction to the merchant.

G. "**Customer**" or "**Customers**" means any individual or individuals who have maintained an account on any website owned or operated by the Company, including

PLAINTIFF FTC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

**APP 206**

Match.com, OKCupid, Plenty of Fish, and Tinder, regardless of whether such individual or individuals paid for those accounts or not.

H.     "**Document**" means the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, taped, recorded, filmed, punched, computer-stored, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including any advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book, or label. "Document" shall also include Electronically Stored Information.

I.     "**each**" shall be construed to include "every," and "**every**" shall be construed to include "each."

J.     "**Guarantee Extension**" means any free or additional subscriptions, services, or access to Match.com provided to a Customer under the terms of any guarantee.

K.     "**Identify**" or "**the identity of**" shall be construed, (a) when used in connection with identification of a natural Person, to require identification of the person's name, contact phone number(s), email address, and zip code, (b) when used in connection with businesses or other organization, to require identification of name, address, telephone number, email address, and identities of natural Persons who are officers, directors or managers of the business or organization, and contact Persons, where applicable; and (c) with respect to any document produced in connection with the 2017 CID or in response to discovery requests in this lawsuit, to require that You state the Bates number and production date associated with such document.

PLAINTIFF FTC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

**APP 207**

L.      "**Match Group, LLC**" means Match Group, LLC and includes operations under assumed names, prior names, and predecessor entities, including Match.com, LLC.

M.      "**Match Guarantee**" means any Company offer to provide free subscription services to Match.com for Customers who fulfill certain criteria during their subscription period.

N.      "**Match.com**" means the dating platform available at www.match.com.

O.      "**OKCupid**" means the dating platform marketed using the brand name "OKCupid" available at www.okcupid.com and on the Apple App Store or Google Play App Store.

P.      "**Person**" or "**Persons**" shall mean all natural persons, corporations, partnerships, or other business associations and all other legal entities, including all members, officers, predecessors, assigns, divisions, affiliates and subsidiaries.

Q.      "**Plenty of Fish**" means the dating platform marketed using the brand name "Plenty of Fish" available at www.pof.com or on the Apple App Store or Google Play app store.

R.      "**referring to**" or "**related to**" means discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recording, transcribing, recommending, concerning, or pertaining to, in whole or in part.

S.      "**Subscriber**" means any user who has had either a paid account or a "free trial" account on any website owned or operated by the Company.

T.      "**Tinder**" means the dating platform marketed using the brand name "Tinder" available at www.tinder.com or on the Apple App Store or Google Play app store.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1. The Company's certificate of incorporation, bylaws, rules, regulations, procedures, and any amendments to them.

2. All minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board.

3. All materially different versions of the Company's organizational charts and personnel directories.

4. Documents sufficient to show all relationships that have existed between Match Group, Inc. and any other corporate entity, including Match Group, Inc.'s subsidiaries, entities with an ownership interest the Company, and any other entity You claim has operated match.com.

5. Documents sufficient to show all corporate officers of:

   a. Match Group, Inc.;

   b. Any corporate subsidiary of Match Group, Inc.;

   c. Any corporation that has had an ownership interest in Match Group, Inc.;

   d. Any other entity You claim has operated match.com;

   e. Any other entity You contend has operated Tinder;

   f. Any other entity You contend has operated OKCupid;

   g. Any other entity You contend has operated Plenty of Fish.

6. Documents sufficient to identify all current and former employees of Match Group, Inc. whose responsibilities include or relate to:

   a. advertising or marketing;

   b. customer service;

    c.   corporate governance or operations;

    d.   general management;

    e.   research and development;

    f.   legal compliance;

    g.   accounting or finance;

    h.   cancellation of subscriptions;

    i.   the Match Guarantee; and

    j.   policies and practices related to chargebacks.

7. Documents sufficient to identify all current and former Match executives.

8. Documents sufficient to show all transfers of money between Match Group, Inc., and any corporate subsidiary or owner or any other entity You claim has operated match.com, OKCupid, Plenty of Fish, and Tinder.

9. All Documents You contend tend to show that Match Group, Inc., is not liable for the violations alleged in the Complaint filed in this case, including documents supporting the claim that another entity has operated match.com, OKCupid, Plenty of Fish, and Tinder.

10. All Documents You contend tend to show that Match Group LLC operates or has operated Match.com, OKCupid, Plenty of Fish, and Tinder.

11. All Documents You contend tend to show that Match Group Inc. does not or has not operated Match.com, OKCupid, Plenty of Fish, and Tinder.

12. Documents sufficient to show the Company's quarterly and annual gross and net revenue, including profit and loss statements and accounting documents for Match.com, OKCupid, Plenty of Fish, and Tinder.

PLAINTIFF FTC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

**APP 210**

13. Documents showing the Company's projections of its gross and net revenue, including Documents provided to prospective investors.

14. Documents sufficient to show quarterly and annual revenue from:

    a.  Subscriptions to Match.com;

    b.  Subscriptions to OKCupid;

    c.  Subscriptions to Plenty of Fish;

    d.  Subscriptions to Tinder;

    e.  Subscriptions to Match.com that included or was subject to a Match Guarantee;

    f.  Payments from accounts on Match.com that had been automatically renewed; and

    g.  Payments from Subscribers who had clicked on the "retention offer" or "Cancel Subscription" hyperlinks described in Paragraph 55 of the Complaint filed in this case.

15. Each unique version of all Ads related to a Match Guarantee.

16. Each unique version of all Ads related to cancellation of a Match.com, OkCupid, Plenty of Fish, or Tinder subscription, including Ads related to the ease or availability of cancellation.

17. Documents sufficient to show each unique disclosure You contend disclosed policies concerning terminating subscriptions in response to a Customer Chargeback.

18. Representative copies of all visual content shown to Customers during the process of purchasing or signing up for a paid subscription.

PLAINTIFF FTC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

19. Representative copies of all visual content that Match has shown to Customers concerning the Match Guarantee, including concerning:

    a.  Advertisements relating to Subscriptions subject to the Match Guarantee;

    b.  Customer "progress" with regard to the Match Guarantee; and

    c.  Redeeming a Match Guarantee or receiving a Guarantee Extension.

20. Representative copies of all visual content that Customers have had to view to cancel their subscriptions.

21. Representative copies of all visual content that the Company has shown to Customers concerning the available means of cancelling their subscriptions.

22. All documents related to any change or contemplated change to any means of subscription cancellation available to Customers.

23. All documents related to account takeovers.

24. All documents related to software flaws that prevented Customers from:

    a.  logging into their accounts;

    b.  using their accounts; or

    c.  canceling their accounts.

25. All communications relating to:

    a.  Match Guarantees;

    b.  Cancellation of paid subscriptions by Customers;

    c.  Customer Chargebacks;

    d.  Denial of Customers' access to accounts in response to chargebacks;

    e.  The marketing or advertising of Tinder Gold or Tinder Boost; and

     f.   The marketing or advertising of Incognito Mode, OKCupid Premium, or Profile Boosts on OKCupid.

26. All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Match Guarantees; chargeback policies; Ads relating to subscription renewal or cancellation; or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups.

27. All Documents, including internal and third-party studies or audits, relating to Customers' efforts to cancel their subscriptions to Match.com, Tinder, or OKCupid.

28. All Documents relating to the policies and practices of the Company, Match.com, Tinder, or OKCupid regarding the following:

    a.   Match Guarantees;

    b.   account cancellation;

    c.   Availability of customer support services;

    d.   availability of refunds;

    e.   Customer Chargebacks;

    f.   Customer access to accounts; and

    g.   compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

29. All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

PLAINTIFF FTC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

**APP 213**

30. All Documents relating to Customer complaints.

31. All communications with Customers relating to the Match Guarantee or the Company's chargeback or cancellation policies or practices.

32. All documents relating to any lawsuit alleging that the operators of Match.com, Tinder, Plenty of Fish, or OKCupid have engaged in fraud or violated any federal, state, or foreign consumer protection laws.

33. All versions of customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training materials.

34. All Documents referring to or relating to:

    a.   The Federal Trade Commission;

    b.   The FTC Act;

    c.   The Restore Online Shoppers' Confidence Act;

    d.   Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP";

    e.   The Department of Justice; and

    f.   The lawfulness or unlawfulness of any practices related to Match Guarantees, Customer chargebacks, or the cancellation of subscriptions.

35. All Documents that support, contradict, refute, or rebut any affirmative defense You have asserted in Your Answer.

36. All Documents You referred to in the course of responding to any Request for Admission, Request for Production, or Interrogatory served by the Federal Trade Commission in this case.

37. All Documents considered or relied upon by any witness you disclose under Fed. R. Civ. P. 26(a)(2).

Dated: June 3, 2022

/s/ M. Hasan Aijaz
REID A. TEPFER
M. HASAN AIJAZ
MATTHEW WILSHIRE
SARAH ZUCKERMAN
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
California Bar No. 224328 (Wilshire)
New York Bar No. 5603832 (Zuckerman)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9362 (Wilshire)
T: (214) 979-9376 (Zuckerman)
Email: rtepfer@ftc.gov; maijaz@ftc.gov;
mwilshire@ftc.gov; szuckerman@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

I, M. Hasan Aijaz, certify that on June 3, 2022, I caused the foregoing Plaintiff's First

Request for Production of Documents to be served on counsel of record by email.


By: /s/ M. Hasan Aijaz

# EXHIBIT 7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. 3:19-cv-02281-K |
| MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company, | |
| Defendants. | |

## MATCH GROUP, INC. AND MATCH GROUP, LLC'S NOTICE OF VERIFIED STIPULATION REGARDING PERMANENTLY DISCONTINUED PRACTICES ON MATCH.COM

PLEASE TAKE NOTICE that Defendants Match Group, Inc. and Match Group, LLC (the "Match Defendants"), by and through their undersigned counsel, hereby file the attached verified Stipulation Regarding Permanently Discontinued Practices on Match.com.

Dated: September 20, 2022

Respectfully submitted,

/s/ Angela C. Zambrano
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and Match Group, LLC*

## CERTIFICATE OF SERVICE

On September 20, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/  Angela C. Zambrano*
Angela C. Zambrano

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | Case No. 3:19-cv-02281-K |
| vs. | |
| MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company, | |
| Defendants. | |

## MATCH GROUP, INC. AND MATCH GROUP, LLC'S STIPULATION REGARDING PERMANENTLY DISCONTINUED PRACTICES ON MATCH.COM

Defendants Match Group, Inc. ("MGI") and Match Group, LLC ("MGL," and together with MGI, the "Match Defendants") file this Stipulation Regarding Permanently Discontinued Practices on Match.com (the "Stipulation").

This Stipulation addresses the Permanently Discontinued Practices (defined below) at issue in Plaintiff Federal Trade Commission's ("FTC")'s First Amended Complaint for Permanent Injunction, Monetary Relief, Civil Penalties, and Other Relief, Dkt. 116 (the "Amended Complaint"). More specifically, this Stipulation confirms the *permanent* discontinuation of the Match.com guarantee at issue in Count III of the Amended Complaint (the "Match.com Guarantee") and the *permanent* discontinuation of the Match.com chargeback policy at issue in Count IV of the Amended Complaint in which the FTC alleges that, "when [the Match Defendants] prevailed in a billing dispute, [the Match Defendants] often failed to provide consumers access to their Match.com accounts or to the subscription services that the consumers paid for" and instead

"terminated the consumers' accounts and deleted their profiles"[1] (the "Chargeback Policy," and together with the Match.com Guarantee, the "Permanently Discontinued Practices").

With this Stipulation, the Match Defendants confirm, through their authorized signatory's verification, attached hereto and incorporated herein as Exhibit A, that, with respect to the alleged conduct described in Counts III and IV of the Amended Complaint, which the FTC has contended violated the FTC Act, that the Match Defendants are not "violating, or about to violate" the FTC Act.

Accordingly, the Match Defendants hereby stipulate and agree as follows:

1. MGI could never, and would never, engage in any conduct related to the Permanently Discontinued Practices, as MGI does not own or operate Match.com or any other dating site. Despite this, MGI agrees to never direct MGL to engage in any conduct related to the Permanently Discontinued Practices as may be within its rights as the indirect owner of MGL.

2. MGL, as the owner and operator of Match.com, has control over Match.com and, prior to their ceasing, had control over the Permanently Discontinued Practices.

3. Match.com, by and through its owner and operator, MGL, permanently discontinued the Match.com Guarantee in April 2019.

4. Match.com, by and through its owner and operator, MGL, does not currently offer the Match.com Guarantee.

5. Match.com, by and through its owner and operator, MGL, commits to never reinstate the Match.com Guarantee.

---

[1] Am. Compl. ¶ 62.

6. Match.com, by and through its owner and operator, MGL, discontinued the Chargeback Policy in March 2019.

7. Match.com, by and through its owner and operator, MGL, does not currently maintain the Chargeback Policy. For the avoidance of doubt, if MGL prevails in a chargeback billing dispute with a consumer (the "Consumer"), MGL does not fail to provide the Consumer access to the Consumer's Match.com account or to the subscription service(s) that the Consumer paid for, nor does it terminate the Consumer's account or delete the Consumer's profile because of the chargeback billing dispute in which MGL prevailed.

8. Match.com, by and through its owner and operator, MGL, commits to never reinstate the Chargeback Policy. For the avoidance of doubt, if MGL prevails in a chargeback billing dispute with the Consumer, MGL commits that it will not fail to provide the Consumer access to the Consumer's Match.com account or to the subscription service(s) that the Consumer paid for, nor will it terminate the Consumer's account or delete the Consumer's profile because of the chargeback billing dispute in which MGL prevailed.

This Stipulation shall serve as a binding and sincere commitment by the Match Defendants to never again engage in the Permanently Discontinued Practices.

# EXHIBIT A

DocuSign Envelope ID: 15083F0C-D04C-41D7-B777-9D6CBCA2AF20

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

FEDERAL TRADE COMMISSION,

               Plaintiff,

   vs.

MATCH GROUP, INC., a corporation, and
MATCH GROUP, LLC, formerly known as
MATCH.COM, LLC, a limited liability
company,

               Defendants.

Case No. 3:19-cv-02281-K

---

## VERIFICATION OF JARED SINE IN SUPPORT OF MATCH GROUP, INC. AND MATCH GROUP, LLC'S STIPULATION REGARDING PERMANENTLY DISCONTINUED PRACTICES ON MATCH.COM

I, Jared Sine, serve as Chief Business Affairs and Legal Officer; Secretary for Match Group, Inc. ("MGI") and Chief Business Affairs and Legal Officer; Secretary for Match Group, LLC ("MGL"). I have reviewed MGI and MGL's Stipulation Regarding Permanently Discontinued Practices on Match.com (the "Stipulation"). I verify under penalty of perjury that the facts and statements contained within the Stipulation are true and correct, and that the Stipulation is intended by MGI and MGL to represent a binding commitment.

Dated: Sep 20, 2022

Signed: _____

**APP 224**

# EXHIBIT 8

# BakerHostetler

Baker & Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Linda A. Goldstein
direct dial: 212.589.4206
lgoldstein@bakerlaw.com

August 6, 2019

**VIA E-MAIL (ZKELLER@FTC.GOV)**

Zachary A. Keller, Esq.
Federal Trade Commission
Southwest Region
1999 Bryan Street, Suite 2150
Dallas, TX 75201

*Re:    FTC / Match*

Dear Zach:

Match and the FTC have repeatedly discussed the FTC's concerns about certain of Match's practices. In addition, you have provided Match with a draft Complaint that details the FTC's legal theories as to why the FTC believes Match's practices are unlawful. While we have denied any wrongdoing related to the FTC's proposed claims and will continue to do so until the investigation either closes or the claims are dismissed, as you know, our business has changed over the time period of this investigation. This letter is to leave absolutely no doubt regarding Match's current and future practices.

In short, Match does <u>not</u> engage in any of the following practices in the FTC's draft Complaint, nor does it have any plans or intentions to do so in the future:

- Send notifications ("PTRs") associated with communications from any subscriber account then under fraud review to any non-subscriber as alleged in Count I;

- Allow communications from any subscriber account then under fraud review to reach any non-subscriber (or, for that matter, recent subscribers, which Match has never done) as alleged in Count II;

- Offer a "guarantee" program that allows consumers who meet certain terms and conditions to extend their subscriptions without cost as alleged in Count III,

Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver
Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC

**APP 226**

Zachary A. Keller, Esq.
August 6, 2019
Page 2

> without clearly and conspicuously disclosing the full terms and conditions of the guarantee program;

- Bar consumers who have unsuccessfully disputed charges through their financial institutions, including preventing them from using paid Match.com subscription services as alleged in Count IV.

Moreover, Match has no plans or intentions ever to reinstitute any of these practices.

If the FTC chooses to pursue legal action against Match, it cannot plead any facts in good faith inconsistent with the foregoing, including but not limited to alleging that Match is violating, or is about to violate, the FTC Act with respect to any of the discontinued practices described above.

Sincerely,

Linda A. Goldstein

**APP 227**

# EXHIBIT 9



SIDLEY AUSTIN LLP
1999 AVENUE OF THE STARS
17TH FLOOR
LOS ANGELES, CA 90067
+1 310 595 9500
+1 310 595 9501 FAX

+1 310 595 9505
CHUMMEL@SIDLEY.COM

AMERICA ● ASIA PACIFIC ● EUROPE

May 20, 2022

Reid Tepfer
Federal Trade Commission
1999 Bryan St Ste 2150
Dallas, TX 75201
rtepfer@ftc.gov

Re:    *FTC v. Match Group, Inc.*, No. 3:19-cv-02281-K (N.D. Tex.)

Dear Reid:

Match Group, Inc. ("Match") and the FTC have repeatedly discussed the FTC's allegations about certain practices on Match.com that the FTC claims violate the FTC Act. Although Match has denied any wrongdoing related to the FTC's allegations and continues to do so, as you are aware, these practices were discontinued by March and April 2019, prior to the FTC filing its Complaint against Match. Additionally, in an August 6, 2019, letter to the FTC, Match left absolutely no doubt regarding any intent to resume these practices, writing that there were "no plans or intentions ever to reinstitute any of these practices" on Match.com. It has now been over three years since these practices were discontinued, and the same remains true today. There are no plans or intentions to either:

- Offer a "guarantee" program that allows consumers who meet certain terms and conditions to extend their subscriptions without cost, as alleged in Count III, or

- Bar consumers who have unsuccessfully disputed charges through their financial institutions, including preventing them from using paid Match.com subscription services, as alleged in Count IV.

Given that these practices were discontinued many years ago, and there are no plans or intentions to reinstitute those practices, there is no evidence that Match Group, Inc. (or Match Group, LLC) is violating or is about the violate the FTC Act with respect to any of the permanently discontinued practices described above. As a result, Match requests that the FTC dismiss its FTC Act claims to avoid the unnecessary expenditure of the parties' and the Court's time and resources litigating about permanently discontinued practices.

Sincerely,

*/s/ Chad S. Hummel*

Chad S. Hummel

cc:  Counsel of Record

Sidley Austin (CA) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# EXHIBIT 10

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.

MATCH GROUP, INC.,

     Defendant.

Case No. 3:19-cv-02281-K

**PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and subject to the general and specific objections set forth below, Plaintiff, the Federal Trade Commission ("FTC") responds to Defendant Match Group Inc. ("Match" or "MGI")'s First Set of Interrogatories.

## I.    GENERAL OBJECTIONS

1. **Compound Interrogatories.** Plaintiff objects to interrogatories that contain discrete requests and therefore constitute compound interrogatories. Including subparts, no more than twenty-five interrogatories may be given without a leave of court. Fed. R. Civ. P. 33(a). "'[W]here the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within it.'" *FTC v. Think All Pub LLC*, No. 4:07-CV-011, 2008 WL 687455, *1 (E.D. Tex. 2008).

2. **Blockbuster Interrogatories.** Plaintiff objects to Match's impermissible "blockbuster interrogatories" seeking *all* facts without regard for materiality, proportionality, time, and expense. A party cannot "indiscriminately hurl[] interrogatories at every conceivable detail and fact which may relate to a case." *Nieman v. Hale*, No. 3:12-CV-2433-L-BN,

**APP 231**

2013 WL 6814789, at *11 (N.D. Tex. Dec. 26, 2013) (quoting *Grynberg v. Total S.A., Inc.*, No. 3–cv–1280, 2006 WL 1186836, at *5–*7 (D. Colo. May 3, 2006)). Blockbuster interrogatories "ask not merely for material or principal facts. They seek 'each and every fact' supporting the allegations of plaintiff, no matter how insignificant or minor." *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997).

3. **Lack of Waiver; Right to Modify.** The following responses are made without waiving any objections raised by the FTC in this proceeding or any objections the FTC may have with respect to the subsequent use of these answers. The FTC specifically reserves: (a) the right to challenge authenticity or admissibility of documents referred to in the interrogatory responses; (b) the right to object on any and all proper grounds, at any time to other discovery procedures involving or relating to the subject matter of interrogatories answered herein; and (c) the right, at any time, upon proper showing, to revise, correct or clarify the following responses.

4. **Right to Supplement.** The FTC reserves the right to supplement and will supplement these responses as required under Fed. R. Civ. P. 26(e) if additional responsive information becomes available.

5. **Attorney Client Privilege, Deliberative Process Privilege, and Attorney Work Product Doctrine.** Plaintiff generally objects to Match's requests to Plaintiff insofar as these seek, directly or indirectly, information subject to the attorney client privilege, deliberative process privilege or work product doctrine.

6. **Scope of Discovery.** Plaintiff objects to Match's Interrogatories to the extent that the instructions and definitions attempt to impose upon the Plaintiff obligations greater than those required by the Federal Rules of Civil Procedure.

**APP 232**

## II.    OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1:** Identify and Describe the basis for Your belief that Match Group, Inc. "is about to violate" the FTC Act, Including a statement of all facts and evidence that You believe give rise to a fair inference of a reasonable expectation of continued violations absent restraint.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory as it is overbroad, vague, unduly burdensome, and not proportional to the needs of the case. Additionally, the FTC objects to this request to the extent that it seeks information that is more readily available to Match. Moreover, this Interrogatory is vague as it conflates the pleading standard the FTC must meet to bring in an action in federal court—"is violating or is about to violate"—with the standard courts use to determine whether the FTC can obtain a permanent injunction. The Court has already ruled in the FTC's favor on the precise question of whether the FTC met the pleading standard in this action, whether MGI "is violating, or is about to violate." Dkt. 86. The FTC is therefore construing this interrogatory to refer to the basis for the FTC's belief that a permanent injunction is appropriate in this case because there is a reasonable expectation of continued violations by Match of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Section 4 of ROSCA, 15 U.S.C. § 8403, absent restraint. The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. In fact, the FTC has requested that Defendant MGI produce documents on this topic and others in discovery, but to date Defendant has refused to produce them, hampering Plaintiff's ability to answer this Interrogatory. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

3

**APP 233**

Subject to and without waiving the foregoing objections, the FTC responds that it has already disclosed to Match the basis for Plaintiff's belief that a reasonable expectation exists that Match would violate the law absent restraint, allegations this Court found sufficient to reject Match's contrary motion to dismiss arguments. *See* Dkts 1, 20, 27, and 86. First, there is no evidence that Match's cancellation practices, which the FTC alleges violates ROSCA, have changed since the beginning of the FTC's investigation of Match and thus Match has been, is currently, and will continue, to violate the law unless placed under order. Second, to the extent Match has discontinued other practices, even if Match were not currently violating the law, which it is, past conduct can indicate "that there is a reasonable likelihood of further violations." *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978).

Specifically, in deciding whether to issue an injunction courts in the Fifth Circuit look at a number of factors, including: the egregiousness of the defendant's actions; the isolated or recurrent nature of the infraction; the degree of scienter involved; the sincerity of the defendant's assurances against future violations; the defendant's recognition of the wrongful nature of his conduct; and whether the defendant's occupation presents opportunities for future violations. *See* Dkt. 27 at 6 (citations omitted). Each of these factors support the issuance of an injunction here. Match engaged in egregious, recurring conduct with the scienter of knowing it was earning money at its customer's expense, as described in paragraphs ¶¶ 3, 23, 29-37, 50, 57-59, 64 of the complaint.

Match has yet to offer sincere assurances against future violations; it only suspended its activities while under federal investigation for its unlawful conduct and has not admitted that any of its practices were deficient in any manner. Moreover, Match has not taken any action to bind itself against engaging in the challenged practices in the future. Match's ability to engage in this

**APP 234**

conduct on this platform and the dozens of other platforms it owns and controls, would allow it to easily resume and expand any of the practices challenged in the complaint. *See* Compl. ¶¶ 10-15, 64; *see also* Dkt. 27 at 6-7.

Match knew that its problems were longstanding, affected all five counts described in the complaint, and failed to correct its wrongdoing. Match employees noted long-standing problems with the guarantee, including that the tracker was flawed, that it had a poor redemption flow, and that even eligible consumers missed redeeming the guarantee. *See* MATCHFTC344243, MATCHFTC415890, MATCHFTC452091, MATCHFTC467915, MATCHFTC469164, MATCHFTC521299, MATCHFTC568737, MATCHFTC644115, MATCHFTC647443 (internal correspondence describing problems with the guarantee). The numbers perfectly illustrate the egregiousness of Match's practices, of more than 2.5 million subscriptions sold that were subject to the guarantee, not even 2 percent of subscribers redeemed the guarantee whereas close to half were billed for at least one additional subscription period. *See* Match's May 30, 2017, letter to the FTC. Because Match only stopped this practice when under federal investigation without admitting wrongdoing, despite knowing the long-standing and widespread harm caused by its practices, Match is likely to engage in the same or similar wrongdoing, including the institution of a similar guarantee, unless under order. Likewise, Match egregiously kept its consumers' money while removing paid-for services of those consumers who initiated a chargeback that Match successfully challenged. *See* Match's MATCHFTC429717, MATCHFTC313570, MATCHFTC312357. Match's chargeback behavior is "likely to recur," in part, because it has never stopped—Match appears to continue to engage in similar practices across its other dating websites, including PlentyOfFish, Tinder, and OkCupid. *See* F01-MG-0028770- F01-MG-0028773 (terms of use of MGI's dating platforms).

**APP 235**

Last, Match's ROSCA practices are as egregious as the rest. Match's own records characterize the online cancelation process as confusing, misleading, in need of repair, hard to find, and tedious. *See* MATCHFTC669602, MATCHFTC669157, MATCHFTC667211, MATCHFTC646192, MATCHFTC604834, MATCHFTC604757, MATCHFTC601548, MATCHFTC601397, MATCHFTC579050, MATCHFTC568900, MATCHFTC467915, MATCHFTC545351, MATCHFTC543666, MATCHFTC543542, MATCHFTC529047, MATCHFTC528098, MATCHFTC519412, MATCHFTC499728, MATCHFTC495267, MATCHFTC494559, MATCHFTC491446, MATCHFTC485296, MATCHFTC485041, MATCHFTC477153, MATCHFTC473469, MATCHFTC464887, MATCHFTC571491, MATCHFTC429717, MATCHFTC417536, MATCHFTC417535, MATCHFTC406132, MATCHFTC405364, MATCHFTC371904, MATCHFTC369268, MATCHFTC336923, MATCHFTC320168, MATCHFTC313402, MATCHFTC312903, MATCHFTC306318 (internal correspondence and documents identifying problems with cancellation flow ). Match designed and refused to fix a misleading cancelation process that, for at least ten years, allowed consumers to think they had canceled their subscriptions when, in fact, they had just been duped by the cancelation process.  The evidence cited above shows that is Match currently violating the law, has done so knowingly, and will continue to do so absent restraint. The FTC also refers Match to the FTC's responses to Interrogatories 2 through 7.

Match's longstanding practice of knowingly engaging in egregious business practices, coupled with its failure to even acknowledge its wrongdoing, support an injunction in this matter.

Finally, Plaintiff notes that some of the illegal conduct that MGI has represented has ceased may in fact be ongoing on Match.com or MGI's other dating sites. Specifically, Match.com's current chargeback policies may still violate the law as alleged in Count IV. Its

publicly available terms and conditions currently state: "If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, Match may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a Match subscription. In the event that your chargeback or other payment reversal is overturned, please contact Customer Care." See Match.com's Terms of Use Agreement (Sept. 1, 2022), https://www.match.com/registration/membagr.aspx. In other words, consumers do not have their account access reinstated automatically—they must contact customer care, something a customer would not know without combing through Match.com's lengthy terms of use document. Even then, these terms do not make clear what, if anything, customer care would do to resolve the issue. Moreover, MGI's other dating sites provide include similar terms buried in their terms of use documents, although these sites are silent as to whether consumers even have the option to get their account reinstated through customer service. *See, e.g.*, Tinder's Terms of Use, https://policies.tinder.com/terms/us/en ("If you initiate a chargeback or otherwise reverse a payment made with your Payment Method, Tinder may terminate your account immediately in its sole discretion."); OkCupid's Terms and Conditions, https://help.okcupid.com/hc/en-us/articles/6640690915469-Terms-Conditions ("If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, OkCupid may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a OkCupid subscription."); Plenty of Fish Terms of Use Agreement, https://www.pof.com/terms (same); Hinge Terms of Use Agreement ("If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, Hinge may terminate your account immediately in its sole discretion"). In sum, any changes appear to not have remedied MGI's law violations, and MGI's other dating sites likewise may have illegal chargeback policies. At a bare

7

minimum, these policies, which are central to Count IV, and the ambiguity concerning how MGI's dating sites are implementing them provide the FTC a good-faith basis to seek further information in discovery.

MGI has repeatedly relied on its representations that it has ceased and does not plan on resuming the conduct challenged in Counts III and IV, but such claims are not credible. First, despite knowing for years that these practices caused consumer harm, MGI only represented that it stopped engaging in those practices while under federal investigation and in the face of impending litigation, and it has repeated its claims to delay producing relevant documents and information in discovery. These claims also have no binding effect and do not prevent MGI from engaging in conduct that it has never acknowledged was wrong. Moreover, and as described above specifically with respect to MGI's chargeback practices, publicly available evidence calls into question whether MGI has ceased its practice at Match.com, let alone other websites.

**INTERROGATORY NO. 2:** Identify and Describe all features of Match.com's Online Cancelation Flow that You contend make the Online Cancelation Flow not "simple," as that term is used in ROSCA, 15 U.S.C. § 8403, Including a description of what changes You contend would be necessary to make the Online Cancelation Flow simple.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above.  The FTC also objects to this Interrogatory as it is overbroad, vague, unduly burdensome, and premature.

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

The FTC also objects to the Interrogatory as ambiguous to the extent it implies that each feature of a cancelation mechanism needs to not be "simple" to violate ROSCA.  The FTC objects to the request as the word "feature" is vague and undefined. The FTC also objects to the Interrogatory to the extent that it seeks a description of changes needed to make the cancelation flow simple – this part of the Interrogatory is both a discrete request separate from the first part of the Interrogatory and is instead an impermissible attempt to join two interrogatories into one. To avoid any confusion, the FTC will answer this discrete request as Interrogatory No. 8.

Subject to and without waiving the foregoing objections, Match's own executives have described its cancelation method as confusing, burdensome, cumbersome, hard to find, tedious, convoluted and that they knew consumers were getting billed after they had thought they canceled their subscriptions. *See* Compl. ¶ 53-59; *see also* MATCHFTC312903, MATCHFTC313402, MATCHFTC320168, MATCHFTC336923, MATCHFTC369268, MATCHFTC371904, MATCHFTC405364, MATCHFTC406132, MATCHFTC417535, MATCHFTC417536, MATCHFTC429717, MATCHFTC464887, MATCHFTC467915, MATCHFTC473469, MATCHFTC477153, MATCHFTC485041, MATCHFTC485296, MATCHFTC491446, MATCHFTC494559, MATCHFTC495267, MATCHFTC499728, MATCHFTC519412, MATCHFTC528098, MATCHFTC529047, MATCHFTC543542, MATCHFTC543666, MATCHFTC545351, MATCHFTC568900, MATCHFTC571491, MATCHFTC579050, MATCHFTC601397, MATCHFTC601548, MATCHFTC604757, MATCHFTC604834, MATCHFTC646192, MATCHFTC667211, MATCHFTC669157, MATCHFTC669602, MATCHFTC728586 (internal correspondence demonstrating knowledge of problems with cancellation flow and of consumer complaints related to the flawed process). Match's own internal documents identified the problems with its cancelation process, including

**APP 239**

that the cancellation flow was hard to find on the Match.com website, took too many clicks to complete, was difficult to understand, left consumers mistakenly believing that they had completed the cancellation process by presenting seemingly optional questions that were not in fact optional, had a password wall that blocked members from cancelling, and had been that way for at least 10 years. *Id.* Match's cancelation flow also had misleading text in the middle of the cancelation flow that states "Before you go" above a survey – misleading consumers into thinking the cancelation is complete and the survey is optional, when in fact consumers needed to continue past the survey to actually cancel. MATCHFTC604757. Match has had a flawed password reset mechanism that also prevented consumers from simply canceling their account if they had forgotten their password. MATCHFTC465940, MATCHFTC752185. Consumers have complained consistently about Match's misleading cancelation process to the company, and it was aware of and agreed that the process was misleading, but it decided not to fix the cancelation process, instead keeping it as a profit center. MATCHFTC312903, MATCHFTC313402, MATCHFTC320168, MATCHFTC336923, MATCHFTC369268, MATCHFTC519412. To the extent Match produces responsive documents and answers in discovery, the FTC may supplement this answer.

**INTERROGATORY NO. 3:** Identify and Describe the harm to consumers that You contend resulted from the alleged lack of a simple online cancelation method, Including how the damages caused by that harm were calculated, the number of users that You believe were unable to cancel their subscription as a result of the alleged lack of a simple cancelation method, and the amount of harm/damages per user.

**ANSWER:**

The FTC objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's

scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

As you acknowledged in our August 24 conference on MGI's Motion to Compel, the FTC is not currently in a position to provide specific calculations because, among other things, it lacks the updated data regarding Count V requested in its June 3, 2022 First Set of Requests for Production of Documents.

Match's failure to provide simple cancelation mechanisms caused consumers to be unable to cancel their subscription or led them to incorrectly believe they had cancelled their subscription when they in fact had not. This harmed consumers by causing unwanted and unauthorized charges. Match's failure to provide simple mechanisms also caused damages to consumers who had to contact Match to cancel their subscription or seek a refund because their cancellation attempt was unsuccessful. The harm related to such contact and seeking a refund is the value of these consumers' lost time.

The number of users who were unable to cancel their subscription as a result of Match's failure to provide simple cancelation mechanisms will be determined by, among other things, documents and records in Match's possession that the FTC has requested through discovery, including website usage records, billing records, and complaint data.[1] Similarly, the amount of harm and damages per user will be calculated using, among other things, data and records in

---

[1] The FTC's contention is that all consumers who were unable to cancel their subscription were harmed, not merely consumers who complained to Match.

**APP 241**

Match's possession that the FTC has requested in its discovery, including website usage records, billing records, and complaint data.[2]

The relevant time period for this calculation begins with the earliest period permitted by the statute up to and including the present day. 15 U.S.C § 57b.

**INTERROGATORY NO. 4:** State whether You contend that the Match.com methods of cancelation other than the Online Cancelation Flow (Including online chat, telephone, mail, and fax) are not simple, and explain why You contend each method is simple or not simple, Including a description of all facts supporting Your contentions.

**ANSWER:**

The FTC alleges in Count V that "Defendants have failed to provide simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account." This contention is not limited to any particular method of cancelation, but to the service as a whole. To the extent that this Interrogatory requests further information, FTC objects on the grounds that it is overbroad, vague, unduly burdensome, and not proportional to the needs of the case. The FTC also objects to the Request to the extent it implies that every method of cancelation must not be simple in order for a company to violate ROSCA. The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

---

[2] The estimates of the number of consumers harmed and per consumer harm in the FTC's initial response to this interrogatory was based on incomplete data and was intended to estimate for mediation or settlement purposes the amount of harm at issue.

**APP 242**

Notwithstanding the foregoing, the FTC responds that Match failed to adequately inform users about these alternative cancellation methods, which made them hard to find or utilize and not simple. This is evidenced by the lack of prominent advertising or disclosure of these alternative cancellation methods on Match.com's website and  by how few subscribers used these methods. For example, of all online cancelations in 2017 and 2018, less than two-tenths of one percent used Match's chat feature. *See* MGI White Paper, January 11, 2019 and attachments; MATCHFTC485152. Moreover, the availability of Match's chat and voice cancellation are highly dependent on the availability and wait times to contact a customer service representative, which Match controls. When Match reduced the hours of operation for voice and chat customer service it increased the difficulty of canceling using those methods and tracked a dramatic reduction in cancellations. MATCHFTC568900. The FTC has specifically requested information concerning how rarely these alternative cancellation methods have been used and to date Defendants have yet to produce them.

To the extent Match produces responsive documents and answers in discovery or the FTC uncovers additional relevant facts, the FTC may supplement this answer.

**INTERROGATORY NO. 5:** Identify and Describe the features that You contend make a cancelation method simple (or not), Including (but not limited to) all factors You consider in that analysis and the weight that You give each of those factors.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The Interrogatory is also irrelevant because it asks about cancelation methods that are not at issue in this case and is therefore not reasonably calculated to lead to the discovery of relevant evidence. The FTC also objects to this Interrogatory because it is duplicative of Interrogatories 2 and 4.

**APP 243**

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Notwithstanding the foregoing, the FTC refers to its November 4, 2021 Enforcement Policy Statement Regarding Negative Option Marketing. *See* 86 Fed. Reg. 60822. In addition, the FTC refers to its answers for Interrogatories 1, 2 and 4, and documents the FTC produced with document identifiers, F01-MG-0028678 through F01-MG-0028696, which are complaints alleging that the respective defendants failed to have simple cancellation mechanisms. To the extent Defendant seeks to understand why its own cancellation mechanism is not simple, the FTC refers to Interrogatory Response 2 and the documents cited therein. The FTC reserves the right to amend or supplement this answer, in particular once Defendant produces any requested discovery it is currently withholding.

**INTERROGATORY NO. 6:** Identify and Describe in what way(s) You contend that Match.com's Online Cancelation Flow is not as simple as subscribing to Match.com via the Match.com website, Including by comparing the two processes.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory as it is overbroad, vague, unduly burdensome, and not proportional to the needs of the case.

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this

**APP 244**

response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Subject to and without waiving the foregoing objections, the FTC responds that Match's internal documents characterize its cancelation as burdensome, cumbersome, hard to find, tedious, convoluted and that they knew consumers were getting billed after they had thought they canceled their subscriptions. *See* MATCHFTC669602, MATCHFTC669157, MATCHFTC667211, MATCHFTC646192, MATCHFTC604834, MATCHFTC604757, MATCHFTC601548, MATCHFTC601397, MATCHFTC579050, MATCHFTC568900, MATCHFTC467915, MATCHFTC545351, MATCHFTC543666, MATCHFTC543542, MATCHFTC529047, MATCHFTC528098, MATCHFTC519412, MATCHFTC499728, MATCHFTC495267, MATCHFTC494559, MATCHFTC491446, MATCHFTC485296, MATCHFTC485041, MATCHFTC477153, MATCHFTC473469, MATCHFTC464887, MATCHFTC571491, MATCHFTC429717, MATCHFTC417536, MATCHFTC417535, MATCHFTC406132, MATCHFTC405364, MATCHFTC371904, MATCHFTC369268, MATCHFTC336923, MATCHFTC320168, MATCHFTC313402, MATCHFTC312903, MATCHFTC306318 (internal correspondence showing knowledge of consumer complaints and issues with cancellation process).. There is not similar evidence that Match's sign-up process is burdensome, cumbersome, hard to find, tedious or that consumers believed they had signed up for a subscription service when they had not. Match's own internal documents flagged the problems with its cancelation process, including that it was hard to find and was difficult to understand, but there is no similar evidence that consumers had difficulty understanding, finding, or completing the sign-up process. *See e.g.*, MATCHFTC473469, MATCHFTC491446, MATCHFTC669157, MATCHFTC669602 (internal correspondence document issues with

**APP 245**

cancellation process). Moreover, Match presents an offer to consumers that would abandon the cancelation process if selected, but it does not present an offer to consumers to abandon the subscription process. Match's signup process has no misleading text that suggests the signup process is complete, whereas Match's cancelation process has misleading text in the middle of the cancelation flow that states "Before you go" above a survey – misleading consumers into thinking the cancelation is complete and the survey is optional, when in fact the survey is not optional and must be completed for the cancellation to be effective.

**INTERROGATORY NO. 7:** Identify and Describe the basis for Your allegation that Match Group, Inc. owns, operates, and controls Match.com, as stated in Your Complaint, Including a statement of all facts and evidence that You believe support this allegation. If You have no basis or evidence, You should so state.

**ANSWER:**

The FTC objects to this Interrogatory because it is a Blockbuster Interrogatory, as discussed in General Objection 2, above. The FTC also objects to this Interrogatory to the extent it seeks information that is in Match's possession and readily available to Match.

The FTC further objects to this Interrogatory on the grounds that it is premature as it asks for information that will be obtained during discovery from documents that are in Match's possession and is therefore inconsistent with the Court's scheduling order. No part of this response should be interpreted or construed as a limit on the materials or arguments the FTC will present at trial.

Notwithstanding the foregoing, Match's responses to the FTC's CID described various policies of Match, which Match defined as Match Group Inc., in operating Match.com. For example, Match stated that: Match.com was the primary top-level URL contributing to Match's business operations; Match maintained several URLs that directed users to Match.com; and Match had policies and practices relating to Test profiles and free trials. Match has also stated in

**APP 246**

a filing with the Ninth Circuit that it operates match.com, and email records show Match's senior executives and CEO directing day-to-day activities and business practices and receiving reports about those activities and practices. *See Epic Games, Inc. v. Apple, Inc.*, Nos. 21-16506 & 21-16695, Doc. 8-1 (9th Cir. Nov. 29, 2021) ("**Match Group, Inc. ('Match')** is a Dallas, Texas-based online dating service which operates dating web sites in over 50 countries. Originally founded in 1993, **Match operates www.match.com** and mobile apps.") (emphasis added);  *see also* MATCHFTC_Sample0000985, MATCHFTC_Sample0001021, MATCHFTC311263, MATCHFTC312700, MATCHFTC313402, MATCHFTC320168, MATCHFTC327460, MATCHFTC327972, MATCHFTC363737, MATCHFTC369127, MATCHFTC369348, MATCHFTC374137, MATCHFTC3800042, MATCHFTC380007, MATCHFTC403971, MATCHFTC404348, MATCHFTC404416, MATCHFTC405364, MATCHFTC405557, MATCHFTC406132, MATCHFTC408480, MATCHFTC409673, MATCHFTC415715, MATCHFTC426352, MATCHFTC427699, MATCHFTC428352, MATCHFTC429944, MATCHFTC431584, MATCHFTC439155, MATCHFTC445763, MATCHFTC465940, MATCHFTC474080, MATCHFTC485374, MATCHFTC485530, MATCHFTC497411, MATCHFTC519878, MATCHFTC519918, MATCHFTC521397, MATCHFTC525771, MATCHFTC543726, MATCHFTC549410, MATCHFTC559522, MATCHFTC560758, MATCHFTC581504, MATCHFTC593415, MATCHFTC600883, MATCHFTC601662, MATCHFTC604735, MATCHFTC605578, MATCHFTC610845, MATCHFTC624330, MATCHFTC624809, MATCHFTC634792 (email records of MGI executives involved in and directing business operations).

**INTERROGATORY NO. 8:** Provide a description of what changes You contend would be necessary to make the Online Cancelation Flow simple.

**ANSWER:**

The FTC responds that this interrogatory seeks irrelevant information as the FTC does not need to show what a simple mechanism would look like to establish that Match's flow was not simple. Moreover, because there are any number of Online Cancelation Flows that MGI could offer that would be simple, it is simply not feasible for the FTC to provide a description of every possible Online Cancelation Flow MGI could offer that is simple. The FTC contends that an adequately disclosed one-click cancellation process would be simple. The FTC has also provided guidance that cancellation mechanism for negative option plans should be "at least as easy to use as the method the consumer used to initiate the negative option feature." *See* 86 Fed. Reg. 60822.

Furthermore, the changes to the Online Cancelation Flow that the FTC would find acceptable in a settlement is subject to the attorney client privilege and deliberative process privilege and the work product doctrine and is not the proper subject of an interrogatory. Last, the FTC has already described, repeatedly and in detail, specific problems with Online Cancelation Flow, problems that MGI has been aware of and could remedy. *See* Answers to Nos. 1, 2, 5, and 7.The FTC may supplement this answer to the extent it obtains additional responsive documents from Match or Match Group, LLC.

Date: September 7, 2022                              */s/ M. HASAN AIJAZ*
                                                     REID TEPFER
                                                     M. HASAN AIJAZ
                                                     SARAH ZUCKERMAN (admitted pro hac vice)
                                                     JOHN R. O'GORMAN (admitted pro hac vice)
                                                     ERICA ROLLINS HILLIARD
                                                     Texas Bar No. 24079444 (Tepfer)
                                                     Virginia Bar No. 80073 (Aijaz)
                                                     New York Bar No. 5603832 (Zuckerman)
                                                     Texas Bar No. 2421292 (O'Gorman)
                                                     Mississippi Bar No. 104244 (Hilliard)
                                                     Federal Trade Commission
                                                     1999 Bryan Street, Suite 2150

**APP 248**

Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov;
ehilliard@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**APP 249**

## CERTIFICATE OF SERVICE

I, M. HASAN AIJAZ, certify that, on September 7, 2022, I served the foregoing Plaintiff's Responses to Defendant's First set of Interrogatories by email on the following counsel of record at the email address listed below:

Angela C. Zambrano
angela.zambrano@sidley.com
Chad Hummel
chummel@sidley.com
Sidley Austin LLP

*Attorneys for Defendant Match Group, Inc.*

By: /s/ M. HASAN AIJAZ

**APP 250**