## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>Defendants. | Case No. 3:19-cv-02281-K |

## PLAINTIFF FEDERAL TRADE COMMISSION'S APPENDIX IN SUPPORT OF PLAINTIFF FEDERAL TRADE COMMISSION'S MOTION TO EXTEND DEADLINES

Plaintiff Federal Trade Commission ("FTC") submits this Appendix in support of the FTC's Motion to Extend Deadlines.

| Ex. | Description | App. Page(s) |
|---|---|---|
| 1. | Email from Chad Hummel, Sidley Austin, to Reid Tepfer, FTC, regarding stipulation (Sept. 15, 2022) | APP 001-004 |
| 2. | Email from M. Hasan Aijaz, FTC, to Tayler Bragg, Sidley Austin, granting extension to Match Group, Inc. (July 1, 2022) | APP 005-010 |
| 3. | FTC Delinquency Letter from M. Hasan Aijaz, FTC, to Angela Zambrano and Chad Hummel, Sidley Austin. (Aug. 10, 2022) | APP 011-013 |
| 4. | Defendant Match Group Inc.'s First Amended Responses and Objections to Plaintiff Federal Trade Commission's First Set of Requests for Production of Documents (Sept. 14, 2022) | APP 014-073 |
| 5. | Email from Tayler Bragg, Sidley Austin, to FTC regarding Match Group, LLC's Responses and Objections to the FTC's First Set of Requests for Production (Sept. 19, 2022) | APP 074-075 |
| 6. | Defendant Match Group LLC's Responses and Objections to Plaintiff Federal Trade Commission's First Set of Requests for Production of Documents (Sept. 19, 2022) | APP 076-131 |

Dated:  September 22, 2022

Respectfully submitted,

*/s/  Reid Tepfer*

M. Hasan Aijaz
Reid Tepfer
Erica Rollins Hilliard
Sarah Zuckerman (admitted *pro hac vice*)
John R. O'Gorman (admitted *pro hac vice*)
Virginia Bar No. 80073 (Aijaz)
Texas Bar No. 24079444 (Tepfer)
Mississippi Bar No. 104244 (Hilliard)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9386 (Aijaz)
T: (214) 979-9395 (Tepfer)
T: (214) 979-9379 (Hilliard)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
F: (214) 953-3079
maijaz@ftc.gov;
rtepfer@ftc.gov;
ehilliard@ftc.gov
szuckerman@ftc.gov;
jogorman@ftc.gov

*Attorneys for the FTC*

# EXHIBIT 1

| | |
|---|---|
| **From:** | Hummel, Chad S. |
| **To:** | Tepfer, Reid A.; Zambrano, Angela |
| **Cc:** | Priest, Chelsea A.; Bragg, Tayler G.; Aijaz, Hasan; Hilliard, Erica; Moon, Jason C; O'Gorman, John; Zuckerman, Sarah |
| **Subject:** | RE: FTC v. Match: Stipulation |
| **Date:** | Thursday, September 15, 2022 10:57:43 AM |

Reid:

To be clear, this was not a settlement offer. You have no evidentiary basis whatsoever to claim that the conduct charged in Counts III and IV is continuing. It is not continuing, and the FTC has not identified any evidence to the contrary – notwithstanding your claim below to the contrary. Indeed, the charged conduct was permanently discontinued on the dates the FTC has identified in its Complaint. The FTC has Rule 11 obligations with which we expect your office to comply. If it does not, Match will avail itself of any and all available remedies.

**CHAD S. HUMMEL**

**SIDLEY AUSTIN LLP**
+1 310 595 9505
chummel@sidley.com

---

> **From:** Tepfer, Reid A. <rtepfer@ftc.gov>
> **Sent:** Thursday, September 15, 2022 8:50 AM
> **To:** Hummel, Chad S. <chummel@sidley.com>; Zambrano, Angela <angela.zambrano@sidley.com>
> **Cc:** Priest, Chelsea A. <cpriest@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
> **Subject:** RE: FTC v. Match: Stipulation
>
> Chad,
>
> We will not be withdrawing our discovery requests concerning Counts III and IV.
>
> To the extent you are seeking to resolve the case as to Counts III and IV, we would be happy to narrow the issues. The stipulation you have drafted is not an appropriate vehicle to do so, however. This stipulation does little more than deny facts that we believe to be true based on evidence. For example, as to Count IV, Match.com's public terms and conditions suggests that, far from being "permanently discontinued," the illegal conduct may actually be ongoing even now. Moreover, although the document describes itself as a "binding and sincere commitment," it is not an enforceable injunction.

███████████████████████████████
██████████

Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

---

**From:** Hummel, Chad S. <chummel@sidley.com>
**Sent:** Wednesday, September 14, 2022 3:38 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>; Zambrano, Angela <angela.zambrano@sidley.com>
**Cc:** Priest, Chelsea A. <cpriest@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz,
Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C
<jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah
<szuckerman@ftc.gov>
**Subject:** FTC v. Match: Stipulation

Counsel:
Attached is a stipulation which will have a sworn attestation from defendants confirming
that the conduct at issue in Counts III and IV of the Amended Complaint has been
permanently discontinued. The confirmation provided by this stipulation precisely tracks
what the FTC has sought by way of injunctive relief in this case on those counts and is more
than what it could achieve at trial.   The Stipulation further confirms that there is no
reasonable argument that any further litigation on these issues should proceed.  Our client
will file the stipulation in connection with its opposition to the FTC's pending motion to
compel.  In light of this, we expect that the FTC will drop its arguments in that Motion
relating to Counts III and IV.
**CHAD S. HUMMEL**


**SIDLEY AUSTIN LLP**
+1 310 595 9505
chummel@sidley.com

*********************************************************************
***************************
This e-mail is sent by a law firm and may contain information that is privileged or
confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and
notify us
immediately.

*********************************************************************

*******************************

# EXHIBIT 2

| From: | Aijaz, Hasan |
|---|---|
| To: | Bragg, Tayler G.; Wilshire, Matthew; Zuckerman, Sarah; O'Gorman, John; Tepfer, Reid A. |
| Cc: | Zambrano, Angela; Hummel, Chad S.; Priest, Chelsea A. |
| Subject: | RE: Extension Request - FTC v. Match Group, Inc., No. 3:19-cv-02281-K (N.D. Tex.) |
| Date: | Friday, July 1, 2022 7:52:00 PM |
| Attachments: | image001.png |

Hi Tayler,

While your proposal is not what I describe, we can agree to it if all extensions of time are mutual.

-Hasan

**From:** Bragg, Tayler G. <tbragg@sidley.com>
**Sent:** Friday, July 1, 2022 6:19 PM
**To:** Aijaz, Hasan <maijaz@ftc.gov>; Wilshire, Matthew <mwilshire@ftc.gov>; Zuckerman, Sarah
<szuckerman@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Tepfer, Reid A. <rtepfer@ftc.gov>
**Cc:** Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S. <chummel@sidley.com>;
Priest, Chelsea A. <cpriest@sidley.com>
**Subject:** RE: Extension Request - FTC v. Match Group, Inc., No. 3:19-cv-02281-K (N.D. Tex.)

Hasan,

It sounds like we have an agreement.  We'll each give each other 14-day extensions to respond to
the discovery requests, and Match will agree to a production deadline by the end of July for the
documents we agree to produce in our responses.

Would you please confirm your agreement?

Thanks,
Tayler

**TAYLER G. BRAGG**
Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3423
tbragg@sidley.com

**From:** Aijaz, Hasan <maijaz@ftc.gov>
**Sent:** Friday, July 1, 2022 4:43 PM
**To:** Bragg, Tayler G. <tbragg@sidley.com>; Wilshire, Matthew <mwilshire@ftc.gov>;
Zuckerman, Sarah <szuckerman@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Tepfer,
Reid A. <rtepfer@ftc.gov>
**Cc:** Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S.
<chummel@sidley.com>; Priest, Chelsea A. <cpriest@sidley.com>
**Subject:** RE: Extension Request - FTC v. Match Group, Inc., No. 3:19-cv-02281-K (N.D. Tex.)

App 006

Tayler,

Match's first request was for a 14-day extension to respond to "the FTC's Requests for Production, Requests for Admissions, and Interrogatories." The FTC is willing to agree that request, to include substantial completion of Match's production of documents, assuming a mutual extension to the FTC's response to Match's first set of discovery. Match then asked for an indefinite period to complete its document production. The FTC cannot agree to such an indeterminate request without the parties jointly moving the court to amend the scheduling order to extend the discovery period to accommodate for Match's extended production time.

Thanks,
Hasan

**From:** Bragg, Tayler G. <tbragg@sidley.com>
**Sent:** Friday, July 1, 2022 3:55 PM
**To:** Aijaz, Hasan <maijaz@ftc.gov>; Wilshire, Matthew <mwilshire@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Tepfer, Reid A. <rtepfer@ftc.gov>
**Cc:** Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S. <chummel@sidley.com>; Priest, Chelsea A. <cpriest@sidley.com>
**Subject:** RE: Extension Request - FTC v. Match Group, Inc., No. 3:19-cv-02281-K (N.D. Tex.)

Hasan,

The number I tried was 214-979-9386.  I got your voicemail when I called.

We will agree to serve our objections and responses on July 19 and give the FTC a mutual 14-day extension to our discovery requests, but we need until at least the end of July to substantially complete our production.

Would you agree to that?

Thanks,
Tayler

**TAYLER G. BRAGG**
Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3423
tbragg@sidley.com

**From:** Aijaz, Hasan <maijaz@ftc.gov>
**Sent:** Friday, July 1, 2022 3:03 PM

**To:** Bragg, Tayler G. <tbragg@sidley.com>; Wilshire, Matthew <mwilshire@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Tepfer, Reid A. <rtepfer@ftc.gov>
**Cc:** Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S. <chummel@sidley.com>; Priest, Chelsea A. <cpriest@sidley.com>
**Subject:** RE: Extension Request - FTC v. Match Group, Inc., No. 3:19-cv-02281-K (N.D. Tex.)

Hi Tayler,

Can you confirm the number that you tried? I received a silent call and want to know if there is a technical issue on my end. We would agree to a mutual 14 day extension to the deadline for the parties' first set of discovery requests, only if Match agrees to complete its responses and production by July 19th. In addition, please be aware that we're unlikely to be able to agree to future last-minute extension requests absent unforeseen issues that arise near the deadline.

Respectfully,
Hasan

**From:** Bragg, Tayler G. <tbragg@sidley.com>
**Sent:** Friday, July 1, 2022 12:23 PM
**To:** Aijaz, Hasan <maijaz@ftc.gov>; Wilshire, Matthew <mwilshire@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Tepfer, Reid A. <rtepfer@ftc.gov>
**Cc:** Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S. <chummel@sidley.com>; Priest, Chelsea A. <cpriest@sidley.com>
**Subject:** RE: Extension Request - FTC v. Match Group, Inc., No. 3:19-cv-02281-K (N.D. Tex.)

Counsel,

We tried to call but couldn't reach you. Would you please let us know by COB today (July 1) if you will agree to a 14-day extension, as noted below?

Thank you,
Tayler

**TAYLER G. BRAGG**
Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3423
tbragg@sidley.com

**From:** Bragg, Tayler G.

**Sent:** Thursday, June 30, 2022 5:46 PM
**To:** 'Aijaz, Hasan' <maijaz@ftc.gov>; Wilshire, Matthew
<mwilshire@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>; O'Gorman,
John <jogorman@ftc.gov>; Tepfer, Reid A. <rtepfer@ftc.gov>
**Cc:** Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S.
<chummel@sidley.com>; Priest, Chelsea A. <cpriest@sidley.com>
**Subject:** Extension Request - FTC v. Match Group, Inc., No. 3:19-cv-02281-K
(N.D. Tex.)

Counsel,

Would you be agreeable to a 14-day extension of Match Group, Inc.'s
response deadline for the FTC's Requests for Production, Requests for
Admissions, and Interrogatories, such that the new deadline would be July
19?

Without an extension, the response deadline falls on July 5, the day after a
holiday.  Angela and Chad have been tied up with obligations in other cases
(including a trial), and summer vacations make the July 5 deadline difficult,
so we'd appreciate the courtesy.

Please let us know if you agree.

Thank you,
Tayler

**TAYLER G. BRAGG**
Managing Associate

**SIDLEY AUSTIN LLP**
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201
+1 214 981 3423
tbragg@sidley.com
www.sidley.com
**SIDLEY**

*****************************************************************
*************************************
This e-mail is sent by a law firm and may contain information that is privileged
or confidential.
If you are not the intended recipient, please delete the e-mail and any
attachments and notify us

immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT 3

United States of America
**FEDERAL TRADE COMMISSION**
Southwest Region

Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201

August 10, 2022

**By E-Mail**

Angela C. Zambrano
Sidley Austin LLP
2021 McKinney Ave, Suite 2000
Dallas, Texas 75201

Chad S. Hummel
Sidley Austin LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067

Re: *FTC v. Match Group, Inc. and Match Group, LLC*, Case No. 3:19-cv-02281-K (N.D. Tex)

Dear Ms. Zambrano and Mr. Hummel:

Enclosed please find the Federal Trade Commission ("FTC")'s suggested edits to Defendant Match Group Inc. ("MGI" or "Defendant")'s Stipulated Order Regarding Discovery of Electronically Stored Information ("ESI Order") in the above-captioned case. The FTC's proposed revisions are consistent with the agreements made by the parties during our telephonic meeting held on August 3, 2022. As described in further detail below, the FTC expects that MGI will avoid further unjustified delay in complying with its discovery obligations.

On July 1, 2022, the FTC agreed to MGI's requested discovery extension in which MGI agreed to produce responsive documents by July 31, 2022. After fully utilizing its extension, MGI issued its responses on July 19, 2022, in which it expressly contemplated that it would produce documents before the Court issued a protective order.[1] Contrary to its commitment to produce, and even though MGI obtained an agreed-upon extension only by agreeing to produce documents by July 31, 2022, it has ignored its obligations and failed to produce a single document to date.

---

[1] *See e.g.,* Match's Objections and Responses to Plaintiff's First Request for Production of Documents, Objection #2 (objecting with relation to documents containing confidential, trade secret, and proprietary information, but noting that "responses to these Requests that are provided before a protective order is entered will be deemed subject to any protective order entered at a later date").

1

In fact, MGI waited until after its production deadline to schedule the August 3rd meeting to discuss the FTC's revisions to MGI's proposed protective order. MGI did not intend to negotiate on the call and instead simply used the call as an information gathering exercise. During this meeting, MGI's counsel admitted that it was not prepared to comply with its obligations because it was still collecting responsive documents. To focus on the merits of the case and avoid further unjustified delay, the FTC offered to give any documents MGI produced the protections of MGI's original proposed protective order until such time as the Court entered a protective order. MGI's counsel agreed to take the proposal to MGI.

One week later, MGI has yet to respond to the FTC's offer to give produced documents every protection MGI requested in its original protective order. MGI has also failed to respond to the FTC's redline to MGI's proposed order or produce any documents, even those that do not contain confidential, trade secret or proprietary information.

In its continued efforts to avoid unjustified delay caused by MGI's failure to produce or negotiate, the FTC will further forgo its proposed ESI Order and adopt MGI's ESI Order with the proposed revisions in the attached, which reflect our discussion during our August 3rd meeting.  The FTC will also abide by the protections outlined in MGI's proposed protective order until such time that the parties can agree upon a stipulated protective order to be ordered by the Court.

As the FTC's proposal resolves any outstanding concerns and objections while providing all the protections proposed by MGI, the FTC expects that MGI will produce documents within 48 hours of the receipt of this letter.

Sincerely,

*/s/ M. Hasan Aijaz*
Reid Tepfer
M. Hasan Aijaz
Sarah Zuckerman
John R. O'Gorman
Erica Rollins Hilliard
Federal Trade Commission
Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. 3:19-cv-02281-K |
| MATCH GROUP, INC., a corporation, | |
| Defendant. | |

**DEFENDANT MATCH GROUP, INC.'S FIRST AMENDED RESPONSES AND**
**OBJECTIONS TO PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF**
**REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules"), Defendant Match Group, Inc. ("Match"), by and through its undersigned counsel, amends its objections and responses to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") First Request for Production of Documents (each a "Request" and, collectively, the "Requests") as follows:

**I.      GENERAL OBJECTIONS**

1.      <u>Irrelevant</u>. Match objects to each and every Request to the extent that it purports to seek information that is irrelevant to Plaintiff's claims or Match's defenses and is not proportional to the needs of the case. In particular, Match objects to each and every Request to the extent that it seeks information only about the FTC's claims that were dismissed with prejudice in the Court's March 24, 2022 Order on Match's Motion to Dismiss (the "Dismissed Claims").[1] For the

---

[1] ECF No. 86 (dismissing Counts I & II of FTC's Original Complaint, filed on September 25, 2019, at ECF No. 1, due to Match's affirmative defense of CDA § 230 immunity). The FTC amended its Original Complaint on July 19, 2022, ECF No. 116. All references herein to the Complaint refer to the operative Complaint.

avoidance of doubt, Match will not withhold a document merely because it is related to the Dismissed Claims, if such document is otherwise responsive to the Requests related to non-dismissed claims. Match further objects to each and every Request to the extent that it seeks documents or information from an entity not named in the operative Complaint, including, but not limited to, a website or dating app not relevant to the live Complaint, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

      2.    <u>Undue Burden</u>. Match objects to each and every Request to the extent that it seeks to impose obligations beyond what is required under the Rules or is unduly burdensome. Accordingly, Match objects to each and every Request where the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

      3.    <u>Overbroad</u>. Match objects to each and every Request to the extent that it seeks information that is beyond the scope of Plaintiff's claims in the Complaint, including, but not limited to, documents and information related to Plaintiff's Dismissed Claims, and documents and information related to entities and/or dating sites that are not party to, or otherwise related to, this litigation, such as OKCupid, Plenty of Fish, and Tinder. Match further objects to each and every Request to the extent that it seeks documents and information that are not within Match's possession, custody, or control, including by seeking documents and information from and related to entities that are not named as parties to this litigation.

      4.    <u>Privilege</u>. Match objects to each and every Request to the extent it seeks documents that are or information that is subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all

communications with, or work product of, any outside attorney) (collectively, "Privileged Information"). Any inadvertent disclosure of Privileged Information by Match shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

5.  <u>Vagueness and Ambiguity</u>. Match objects to each and every Request to the extent that such Request is so vague, ambiguous, or confusing as not to be susceptible to a reasoned interpretation or response. In the absence of clear instructions or definitions associated with terms that are too vague, ambiguous, or confusing, Match will give the terms used in the Request a reasonable interpretation.

6.  <u>Accessibility</u>. Match objects to each and every Request to the extent that it seeks information that is not reasonably accessible in the ordinary course of business.

7.  <u>Cumulative Requests and Availability of Information Elsewhere</u>. Match objects to each and every Request that is cumulative, duplicative of, or to which documents or information already are in the possession, custody, or control of Plaintiff, or have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive. In particular, Match objects to each and every Request insofar as it seeks documents or information already obtained by Plaintiff during the FTC's prior investigation in connection with the Civil Investigative Demand served on Match in 2017 (the "2017 CID"). In connection with the 2017 CID, Match produced over 225,000 documents that spanned a date range of 2013 to 2018. Such prior productions and the massive volume of documents produced therein should be sufficient to provide the FTC with the information it requires. For the avoidance of doubt, Match will comply with the ESI Order, which provides, "The parties need not re-produce in discovery documents that were already produced to the FTC in response to the FTC's CID. Instead, the parties will refer to the bates number of the relevant documents." ECF No. 132 at 4.

Attached hereto and incorporated herein is Exhibit A, which includes each CID Document Request and the corresponding reference(s) to location(s) of bates numbers responsive to each CID Document Request. The responses herein identify which of these Requests correspond to which CID Document Request. All documents referenced in Exhibit A were previously served or produced in the CID and shall be treated as Confidential Information, pursuant to the Protective Order.

8.      <u>Lack of Possession, Custody, or Control</u>. Match objects to each Request to the extent it does not appear to be addressed to Match and seeks documents that are necessarily outside Match's possession, custody, or control.

9.      <u>Legal Conclusions</u>. Match objects to each and every Request to the extent that it requires Match to draw legal conclusions.

10.     <u>Reservation of Right to Supplement</u>. Given the stage of the litigation, Match has not completed its investigation of the facts or law relating to this action, and discovery in this matter is ongoing. Accordingly, consistent with the Rules, these responses and objections are made without prejudice to, and are not a waiver of, Match's right to amend, correct, or supplement these responses, and are subject to Match's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist. Match provides these responses in good faith after a reasonable inquiry and based on information that it knows or can readily obtain.

11.     <u>No Waiver</u>. By responding to these Requests, Match does not concede the relevancy of a Request nor the relevancy or admissibility of any information provided in response thereto. The fact that information is provided in response to a particular Request does not mean that it is probative of any particular issue in this case. Match expressly reserves its right to assert

any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, privilege, confidentiality, hearsay, or admissibility as evidence for any other purpose. Moreover, the right to object on any ground to the use of the responses or information provided, in any aspect of this or any other court action, arbitration, or judicial or administrative proceeding or investigation, is reserved.

## II.    SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.     Match specifically objects to the Requests' Instructions and Definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. In responding to these Requests, Match will follow the requirements set forth in the Rules.

2.     Match specifically objects to the definitions of "Match," the "Company," and "You" because they are vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines these terms as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." This definition necessarily and inappropriately includes attorneys and other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Match objects to Plaintiff's definitions of "Match," the "Company," and "You" as defined to "include any descriptor used by Match in its business practice," again encompassing other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. In responding to these Requests, Match will construe the terms "Match," the "Company," and "You" to refer only to Match Group, Inc.

3.      Match specifically objects to the definitions of "and" and "or" and because they are ambiguous and confusing. Match will interpret these terms to have their plain, ordinary, and common sense meaning. Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case. In responding to these Requests, Match will comply with the Rules.

4.      Match specifically objects to the definition of "any" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common sense meaning. Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, Match will comply with the Rules.

5.      Match specifically objects to the definitions of "Customer" and "Customers" as overbroad, unduly burdensome, and oppressive, insofar as they purport to cover individual(s) "who have maintained an account on *any website* owned or operated by" Match, including "OKCupid, Plenty of Fish, and Tinder," which encompasses websites and entities that are not party to, or otherwise related to, the present litigation. Match further objects that the definitions of "Customer" and "Customers" are thus not tailored to the allegations in the complaint, not proportional to the needs of the case, and exceedingly burdensome. In responding to these Requests, Match will

construe the terms definitions of "Customer" and "Customers" to refer only to Customer(s) of Match.com.

6.      Match objects to the definition of "Document" as overly broad and unduly burdensome. Match further objects to this definition to the extent it refers to items outside of Match's possession, custody, or control, particularly through its use of the phrases "regardless of origin or location" and "however and by whomever prepared, produced, disseminated, or made." Match further objects to this definition to the extent it refers to items in Plaintiff's possession, custody, or control, or to items that have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive. Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those required by the Rules. In responding to these Requests, Match will interpret the word "Document" to have its plain, ordinary, and common sense meaning and will comply with the Rules.

7.      Match specifically objects to the definition of "each" as ambiguous and confusing. Match will interpret this term to have its plain, ordinary, and common sense meaning. Match further objects to this definition to the extent it purports to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, Match will comply with the Rules.

8.      Match specifically objects to the definitions of "Identity" and "the identity of" and because they are ambiguous and confusing. Match will interpret these terms to have their plain, ordinary, and common sense meaning. Match further objects to these definitions to the extent they

purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, Match will comply with the Rules.

9.      Match specifically objects to the definition of "Match Group, LLC" as vague, ambiguous, confusing, and overbroad.

10.     Match objects to the definition of "OKCupid" because it is overbroad, ambiguous, and confusing. Match further objects to the definition of "OKCupid" as irrelevant, since OKCupid is not referenced in the Complaint, and thus any Request relying on the definition of "OKCupid" is not proportional to the needs of the case and is unduly burdensome.

11.     Match objects to the definition of "Plenty of Fish" because it is overbroad, ambiguous, and confusing. Match further objects to the definition of "Plenty of Fish" as irrelevant, since Plenty of Fish is not referenced in the Complaint, and thus any Request relying on the definition of "Plenty of Fish" is not proportional to the needs of the case and is unduly burdensome.

12.     Match specifically objects to the definitions of "referring to" and "relating to" because they are ambiguous and confusing. Match will interpret these terms to have their plain, ordinary, and common sense meaning. Match further objects to these definitions to the extent they purport to impose obligations on Match that exceed those imposed by the Rules. Match objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, Match will comply with the Rules.

13.    Match specifically objects to the definition of "Subscriber" as overbroad, unduly burdensome, and oppressive, insofar as it purports to cover a "Subscriber" to "any website owned or operated by" Match, which would necessarily encompass websites and entities that are not party to, or otherwise related to, the present litigation. Match further objects that the definition of "Subscriber" is thus not tailored to the allegations in the Complaint and not proportional to the needs of the case. In responding to these Requests, Match will construe the term "Subscriber" to refer only to Subscribers to Match.com.

14.    Match objects to the definition of "Tinder" because it is overbroad, ambiguous, and confusing. Match further objects to the definition of "Tinder" as irrelevant, since Tinder is not referenced in the Complaint, and thus any Request relying on the definition of "Tinder" is not proportional to the needs of the case and is unduly burdensome.

15.    The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Requests.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO THE REQUESTS

**REQUEST NO. 1:** The Company's certificate of incorporation, bylaws, rules, regulations, procedures, and any amendments to them.

**RESPONSE:** Match objects to this Request because "rules," "regulations," and "procedures" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of

"the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate formation documents are not relevant to any of Plaintiff's claims, live or dismissed. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 2:** All minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board.

**RESPONSE:** Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence

that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects to this Request because "attachments" and "materials" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities or dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, by requesting "*[a]ll* minutes" and "materials" regardless of subject matter.

Subject to and without waiving the foregoing specific and general objections, Match will conduct a reasonable search for minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board that reference or are reasonably related

to Match.com's cancelation flow. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 3:** All materially different versions of the Company's organizational charts and personnel directories.

**RESPONSE:** Match objects to this Request because "organizational charts" and "personnel directories" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's "organizational charts" and "personnel directories" are not relevant to Plaintiff's claims in the Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession,

custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 4. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 3 in connection with the 2017 CID, in response to CID Document Request No. 2. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 4:** Documents sufficient to show all relationships that have existed between Match Group, Inc. and any other corporate entity, including Match Group, Inc.'s subsidiaries, entities with an ownership interest the Company, and any other entity You claim has operated match.com.

**RESPONSE:** Match objects to this Request because "relationships" is vague and undefined, and also to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as "all relationships that have existed between Match Group, Inc. and any other corporate entity" are not relevant to Plaintiff's claims in the Complaint. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 3. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it will conduct a reasonable search for documents sufficient to show any relationships that have existed between Match Group, Inc. and the entity or entities that operate Match.com, including Match Group, LLC. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 5:** Documents sufficient to show all corporate officers of:

    a.  Match Group, Inc.;

    b.  Any corporate subsidiary of Match Group, Inc.;

    c.  Any corporation that has had an ownership interest in Match Group, Inc.;

    d.  Any other entity You claim has operated match.com;

    e.  Any other entity You contend has operated Tinder;

    f.  Any other entity You contend has operated OKCupid;

    g.  Any other entity You contend has operated Plenty of Fish.

**RESPONSE:** Match objects to this Request as vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as

including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Match further objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 3, 4, 6, and 7. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 5 in connection with the 2017 CID, in response to CID Document Request No. 2.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 6:** Documents sufficient to identify all current and former employees of Match Group, Inc. whose responsibilities include or relate to:

    a.   advertising or marketing;

b.   customer service;

c.   corporate governance or operations;

d.   general management;

e.   research and development;

f.   legal compliance;

g.   accounting or finance;

h.   cancellation of subscriptions;

i.    the Match Guarantee; and

j.   policies and practices related to chargebacks.

**RESPONSE:** Match objects to this Request because "corporate governance or operations" and "general management" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information, particularly in light of Plaintiff's request for documents related to "legal compliance." Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at

issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 6 in connection with the 2017 CID, in response to CID Document Request No. 1.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 7:** Documents sufficient to identify all current and former Match executives.

**RESPONSE:** Match objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Match" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "Match" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "Match," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, by seeking documents regarding "all current and former Match executives" regardless of their relevance to the claims in the Complaint. Match further objects to

the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Match further objects to this Request to the extent that it is duplicative of other Requests, including Request Nos. 3, 5, and 6. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 7 in connection with the 2017 CID, in response to CID Document Request No. 2.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 8:** Documents sufficient to show all transfers of money between Match Group, Inc., and any corporate subsidiary or owner or any other entity You claim has operated match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request because "transfers of money" is vague and undefined. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's

claims in the Complaint, as Plaintiff seeks documents and information about entities and dating

sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and

Tinder). Match further objects to this Request because it is overbroad and unduly burdensome by

seeking documents and information about financial transactions that are irrelevant to Plaintiff's

claims, even if limited only to Match Group, Inc. and Match.com. Moreover, Match objects that

this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters

beyond the scope of the present litigation, and that this Request is an abuse of the discovery

process. Match further objects to the extent that the requested documents already are in Plaintiff's

possession, custody, or control, or to the extent that the requested documents are not in Match's

possession, custody, or control.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the

additional burden of searching for more documents.

**REQUEST NO. 9:** All Documents You contend tend to show that Match Group, Inc., is not liable
for the violations alleged in the Complaint filed in this case, including documents supporting the
claim that another entity has operated match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional

to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match

Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures,

operations under assumed names, and affiliates, and all directors, officers, employees, agents,

consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of

"You" necessarily and inappropriately includes other entities that are not relevant to the claims or

allegations in the Complaint. Furthermore, Plaintiff's definition of "You," which is defined to

"include any descriptor used by Match in its business practice," encompasses other entities and

dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Match further objects to this Request as overbroad, unduly burdensome, and oppressive, because it is not proportionate to the needs to the case and because it requires Match to marshal all of its evidence before trial. Match further objects to this Request to the extent it is duplicative of other Requests, potentially including each and every other Request. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 9 in connection with the 2017 CID, in response to each and every CID Document Request and Interrogatory.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 10:** All Documents You contend tend to show that Match Group LLC operates or has operated Match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional

to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 4 and 11.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 10 in connection with the 2017 CID, in response to CID Interrogatory No. 1.Notwithstanding its prior production, Match will conduct a reasonable search for documents sufficient to show the operation of Match.com.

Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 11:** All Documents You contend tend to show that Match Group Inc. does not or has not operated Match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request because the phrase "does not or has not operated" requires Match to prove a negative, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "You," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the

requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 4 and 10.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 11 in connection with the 2017 CID, in response to CID Interrogatory No. 1. Notwithstanding its prior production, Match will conduct a reasonable search for documents sufficient to show the operation of Match.com. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 12:** Documents sufficient to show the Company's quarterly and annual gross and net revenue, including profit and loss statements and accounting documents for Match.com, OKCupid, Plenty of Fish, and Tinder.

**RESPONSE:** Match objects to this Request because "accounting documents" is vague, undefined, and overbroad, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Match further objects to this Request insofar as it seeks information that Plaintiff can obtain elsewhere and/or is publicly available.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 13:** Documents showing the Company's projections of its gross and net revenue, including Documents provided to prospective investors.

**RESPONSE:** Match objects to this Request because "projections" and "prospective investors" are vague and undefined, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as "the Company's projections of its gross and net revenue, including Documents provided to prospective investors," are not relevant to Plaintiff's claims in the Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.

**<u>AMENDED RESPONSE</u>:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**<u>REQUEST NO. 14</u>:** Documents sufficient to show quarterly and annual revenue from:

    a.  Subscriptions to Match.com;

    b.  Subscriptions to OKCupid;

    c.  Subscriptions to Plenty of Fish;

    d.  Subscriptions to Tinder;

    e.  Subscriptions to Match.com that included or was subject to a Match Guarantee;

    f.  Payments from accounts on Match.com that had been automatically renewed; and

    g.  Payments from Subscribers who had clicked on the "retention offer" or "Cancel Subscription" hyperlinks described in Paragraph 55 of the Complaint filed in this case.

**<u>RESPONSE</u>:** Match objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced information responsive to Request No. 14 in connection with the 2017 CID, in response to CID Interrogatory No. 3.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 15:** Each unique version of all Ads related to a Match Guarantee.

**RESPONSE:** Match objects to this Request as vague and undefined because it is unclear what the FTC means by "unique." Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The

FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.  Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 15 in connection with the 2017 CID, in response to CID Request No. 3(b)(i).

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 16:** Each unique version of all Ads related to cancellation of a Match.com, OKCupid, Plenty of Fish, or Tinder subscription, including Ads related to the ease or availability of cancellation.

**RESPONSE:** Match objects to this Request as vague and undefined because it is unclear what the FTC means by "unique."  Match also objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the

requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 15. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 16 in connection with the 2017 CID, in response to CID Request No. 3(c)(i). Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 17:** Documents sufficient to show each unique disclosure You contend disclosed policies concerning terminating subscriptions in response to a Customer Chargeback.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any

claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass. Finally, Match responds that it has already produced documents responsive to Request No. 17 in connection with the 2017 CID, in response to CID Request No. 9(e).

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 18:** Representative copies of all visual content shown to Customers during the process of purchasing or signing up for a paid subscription.

**RESPONSE:** Match objects to this Request because "[r]epresentative copies of all visual content" is vague, confusing, and overbroad. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by

including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 19. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 18 in connection with the 2017 CID, in response to CID Request Nos. 3(a)(i), 3(a)(iii), 3(b)(i), 3(b)(iii), 3(c)(i), and 3(c)(iii). Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 19:** Representative copies of all visual content that Match has shown to Customers concerning the Match Guarantee, including concerning:

    a.  Advertisements relating to Subscriptions subject to the Match Guarantee;

    b.  Customer "progress" with regard to the Match Guarantee; and

    c.  Redeeming a Match Guarantee or receiving a Guarantee Extension.

**RESPONSE:** Match objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing, because "progress" is vague and undefined. Match specifically objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or

defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee." The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass. Finally, subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 19 in connection with the 2017 CID, in response to CID Request Nos. 3(b)(i), 3(b)(iii), and 9(b).

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the additional burden of searching for more documents.

**REQUEST NO. 20:** Representative copies of all visual content that Customers have had to view to cancel their subscriptions.

**RESPONSE:** Match objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website

owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 19. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 20 in connection with the 2017 CID, in response to CID Request No. 9(d). Notwithstanding its prior production, Match

will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 21:** Representative copies of all visual content that the Company has shown to Customers concerning the available means of cancelling their subscriptions.

**RESPONSE:** Match objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested

documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 20. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 21 in connection with the 2017 CID, in response to CID Request No. 9(d). Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 22:** All documents related to any change or contemplated change to any means of subscription cancellation available to Customers.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that

are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Additionally, Match objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as any "change" that may have been contemplated but never implemented is not relevant to the allegations in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 17. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 22 in connection with the 2017 CID, in response to CID Request Nos. 8(e) and 9(d). Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 23:** All documents related to account takeovers.

**RESPONSE:** Match objects to this Request because "account takeovers" is vague and undefined, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, because by failing to specify any limiting principle on "account takeovers," this Request necessarily captures documents and information that fall outside the scope of what is relevant to that allegations in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 24:** All documents related to software flaws that prevented Customers from:

  a. logging into their accounts;

  b. using their accounts; or

  c. canceling their accounts.

**RESPONSE:** Match objects to this Request because "software flaws" is vague, undefined, and overbroad, and to the extent Plaintiff seeks Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match objects to this Request because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as not every "software flaw" related to account functionality is relevant to the allegations in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition

by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Additionally, Match objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 19, 20, 21, 22, 23, and 25.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 25:** All communications relating to:

   a.  Match Guarantees;

   b.  Cancellation of paid subscriptions by Customers;

   c.  Customer Chargebacks;

   d.  Denial of Customers' access to accounts in response to chargebacks;

   e.  The marketing or advertising of Tinder Gold or Tinder Boost; and

   f.  The marketing or advertising of Incognito Mode, OKCupid Premium, or Profile Boosts on OKCupid.

**RESPONSE:** Match objects to this Request because "[a]ll communications" is overbroad and unduly burdensome, and to the extent Plaintiff seeks Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the

alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as neither "[t]he marketing or advertising of Tinder Gold or Tinder Boost" nor "[t]he marketing or advertising of Incognito Mode, OkCupid Premium, or Profile Boosts on OkCupid" are relevant to Plaintiff's claims in the Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 17, 19, 20, 21, 22, 23, 24, 27, 28 and 31.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 26:** All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Match Guarantees; chargeback policies; Ads relating to subscription renewal or cancellation; or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups.

**RESPONSE:** Match specifically objects to this Request because "tests," "A/B testing," "click-through data," "surveys," "usability tests," and "focus groups" are vague and undefined. Match further objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this

Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company," and "Match" or "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because by seeking information under such a broad category as "how consumers or Customers view, read, react to, understand, or have been influenced," this Request is not tailored to the allegations in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 26 in connection with the 2017 CID, in response to CID Request Nos. 3(a)(iv), 3(b)(iv), 3(c)(iv), and 4. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to subscription renewal and cancelation for Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 27:** All Documents, including internal and third-party studies or audits, relating to Customers' efforts to cancel their subscriptions to Match.com, Tinder, or OKCupid.

**RESPONSE:** Match objects to this Request because "efforts" is vague and undefined, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company," and "the Company" as including

"Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint. Furthermore, Plaintiff's definition of "the Company," which is defined to "include any descriptor used by Match in its business practice," encompasses other entities and dating sites that are not relevant to this matter, including, but not limited to, OKCupid, Plenty of Fish, and Tinder. Plaintiff's definition of "Customer" necessarily and inappropriately includes other entities that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on . . . OKCupid, Plenty of Fish, and Tinder."

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 19, 20, 21, 22, 24, 25, 26, and 28. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 28:** All Documents relating to the policies and practices of the Company, Match.com, Tinder, or OKCupid regarding the following:

  a. Match Guarantees;

  b. account cancellation;

  c. Availability of customer support services;

  d. availability of refunds;

  e. Customer Chargebacks;

  f. Customer access to accounts; and

  g. compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

**RESPONSE:** Match objects to this Request because "availability" is vague and undefined. Match further objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint,

to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 19, 20, 21, 22, 24, 25, 26, and 27.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 28 in connection with the 2017 CID, in response to CID Request No. 8. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to subparts (b)-(d) and (g) for Match.com and ROSCA compliance only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 29:** All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged Information, and because the Request overall appears calculated to specifically seek Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because not every document related to every prior investigation of Match's compliance with consumer protection laws is relevant to the allegations in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 27, 28, 32, and 34. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that will conduct a reasonable search for reasonably available responsive documents with respect to Match.com's compliance with ROSCA only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 30:** All Documents relating to Customer complaints.

**RESPONSE:** Match objects to this Request because "complaints" is vague and undefined, and to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, since by seeking "all Documents" related to the inherently broad category of "Customer complaints," this Request necessarily captures a whole host of documents, communications, and other information that are not relevant to the claims in Plaintiff's Complaint. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is

an abuse of the discovery process. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 30 in connection with the 2017 CID, in response to CID Request No. 10. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents relating to Customer complaints regarding the Match.com online cancelation flow, as alleged in the Complaint. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 31:** All communications with Customers relating to the Match Guarantee or the Company's chargeback or cancellation policies or practices.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Match further objects to this Request insofar as it suggests that Match Group, Inc. ever offered any kind of "Match Guarantee" or maintained a "Chargeback" policy. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at

issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company," and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 25, 28, and 30. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 31 in connection with the 2017 CID, in response to CID Request No. 10. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents with respect to Match.com's cancelation policies or practices only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 32:** All documents relating to any lawsuit alleging that the operators of Match.com, Tinder, Plenty of Fish, or OKCupid have engaged in fraud or violated any federal, state, or foreign consumer protection laws.

**RESPONSE:** Match objects to this Request because "the operators of" is vague and undefined, and to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged Information. Match further objects to this Request as irrelevant, overbroad, oppressive, and inappropriate to the extent Plaintiff seeks discovery about "fraud" or consumer protection violations of any kind, as the Court dismissed with prejudice Plaintiff's claims related to alleged fraud (Counts I & II) in its Memorandum Opinion & Order on Match's Motion to Dismiss. ECF No. 86.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (OKCupid, Plenty of Fish, and Tinder). Match further objects to this Request as irrelevant, overbroad, and unduly burdensome, to the extent that its use of the undefined term "the operators of" assumes that Match Group, Inc. is "the operator[] of" Match.com, Tinder, Plenty of Fish, or OKCupid. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Match likewise objects to this Request to the extent the requested documents are publicly available. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request No. 34.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 33:** All versions of customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training materials.

**RESPONSE:** Match objects to this Request because "prepared responses," "customer support manuals," and "employee manuals" are vague and undefined, and to the extent Plaintiff seeks Privileged Information. To the extent Plaintiff meant "Customer," as opposed to "customer," Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff defines "Customer" as "any individual or individuals who have maintained an account on any website owned or operated by the Company" and "the Company" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "the Company" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because by failing to specify any subject matter limitation on any of the materials referenced therein, this Request necessarily captures documents and information that fall outside the scope of what is relevant to Plaintiff's claims. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Finally, Match objects to this Request to the extent it is duplicative of other Requests,

including Request Nos. 25, 28, and 30. Any response to this Request that is provided before a protective order is entered will be deemed subject to any protective order entered at a later date.

Subject to and without waiving the foregoing specific and general objections, Match responds that it has already produced documents responsive to Request No. 33 in connection with the 2017 CID, in response to CID Request No. 8. Notwithstanding its prior production, Match will conduct a reasonable search for reasonably available responsive documents that address or relate to Match.com account cancelation only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 34:** All Documents referring to or relating to:

    a.  The Federal Trade Commission;

    b.  The FTC Act;

    c.  The Restore Online Shoppers' Confidence Act;

    d.  Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP";

    e.  The Department of Justice; and

    f.  The lawfulness or unlawfulness of any practices related to Match Guarantees, Customer chargebacks, or the cancellation of subscriptions.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the terms "referring to" and "relating to" as used in this Request necessarily capture Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the

conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as this Request necessarily encompasses entities not party to, or otherwise related to, the present litigation. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 29 and 32.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 35:** All Documents that support, contradict, refute, or rebut any affirmative defense You have asserted in Your Answer.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Match further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional

to the needs of the case, and overly burdensome in that Plaintiff defines "You" as including "Match Group, Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing." Plaintiff's definition of "You" necessarily and inappropriately includes other entities and dating sites that are not relevant to the claims or allegations in the Complaint.

Additionally, Match objects to this Request as oppressive, overbroad, and not proportional to the needs of the case because it requires Match to marshal all of its evidence before trial. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

**REQUEST NO. 36:** All Documents You referred to in the course of responding to any Request for Admission, Request for Production, or Interrogatory served by the Federal Trade Commission in this case.

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the terms "referring to" and "relating to" as used in this Request necessarily capture Privileged Information. Match further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the

needs of the case. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and Match has repeatedly told the FTC this orally and in writing. Match is prepared to enter a binding stipulation in a form acceptable to the Court that Match could never and would never, and Match.com would never, engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The Court has also dismissed with prejudice any claim by the FTC for monetary relief based on the conduct at issue in this Request. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, Match objects to this Request as oppressive, overbroad, and not proportional to the needs of the case, because it purports to require Match to re-produce each and every document it has previously produced to the FTC. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

Subject to and without waiving the foregoing specific and general objections, Match will conduct a reasonable search for reasonably available responsive documents with respect to

Match.com account cancelation only. Match will produce non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 37:** All Documents considered or relied upon by any witness you disclose under Fed. R. Civ. P. 26(a)(2).

**RESPONSE:** Match objects to this Request to the extent Plaintiff seeks Privileged Information. Additionally, Match objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because it does not specify any subject matter limitations. Moreover, Match objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Match further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control, or to the extent that the requested documents are not in Match's possession, custody, or control. Match objects to this Request as oppressive, overbroad, and not proportional to the needs of the case because it requires Match to marshal all of its evidence before trial. Match further objects to this Request to the extent it seeks to require production or disclosure of expert-related documents prior to the time specified in the Court's scheduling order. Finally, Match objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

**AMENDED RESPONSE:** Based on the foregoing objections, Match will not undertake the burden of searching for documents.

Dated: September 14, 2022

*/s/ Angela C. Zambrano*
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375

cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and
Match Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and forgoing document was served on all counsel of record via e-mail as outlined below on September 14, 2022.

Reid Abram Tepfer
rtepfer@ftc.gov
M Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov

*/s/  Angela C. Zambrano*
Angela C. Zambrano

## EXHIBIT A: CID PRODUCTIONS KEY

*FTC v. Match Group, Inc. et al.*, Case No. 3:19-cv-02281-K (N.D. Tex.)

| CID | Bates Location |
|---|---|
| CID RFP 2 | • 20170515 Hogan First Production Cover Letter **(Ex. 1 at 32)** |
| CID RFP 3 | • 20170515 Hogan First Production Cover Letter **(Ex. 1 at 32)** – *RFP 3(a)(iii), 3(b)(iii), and 3(c)(iii)*<br>• 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 3)**<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 4 | • 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 4)**<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 6 | • 20170613 Letter from L. Goldstein to Z. Keller at FTC with Document and Interrogatory Responses **(Ex. 2 at 3)**<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 7 | • 20170515 Hogan First Production Cover Letter **(Ex. 1 at 33)** |
| CID RFP 8 | • 20170515 Hogan First Production Cover Letter **(Ex. 1 at 33)**<br>• 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 5)** |

1

| CID | Bates Location |
|-----|----------------|
| | • 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 9 | • 20170613 Letter from L. Goldstein to Z. Keller at FTC with Document and Interrogatory Responses **(Ex. 2 at 4–5)**<br>• 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 5)**<br>• 20171020 Match Letter re ESI Production in Response to CID **(Ex. 5 at 1)**<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 10 | • 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)**<br>• 20180604 Match Letter re Customer Complaint Samples for DR 10 **(Ex. 11 at 1)** |
| CID RFP 11 | • 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 6)**<br>• 20171018 Match Letter re Suppl Resp to DR 11 **(Ex. 4 at 1)**<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |

# EXHIBIT 5

| | |
|---|---|
| **From:** | Bragg, Tayler G. |
| **To:** | Tepfer, Reid A.; Aijaz, Hasan; Wilshire, Matthew; Zuckerman, Sarah; O"Gorman, John; Hilliard, Erica |
| | Zambrano, Angela; Hummel, Chad S.; Priest, Chelsea A. |
| **Cc:** | |
| **Subject:** | Service - FTC v. Match Group, Inc. et al., No. 3:19-cv-02281-K (N.D. Tex.) |
| **Date:** | Monday, September 19, 2022 10:02:46 PM |
| **Attachments:** | image001.png |
| | 2022-09-19 Match Group, LLC"s Responses and Objections to FTC First Set of Requests for Production of |
| | Documents.pdf |
| | Exhibit A.zip |

Counsel,

Attached are Match Group, LLC's Responses and Objections to the FTC's First Set of Requests for Production. Also attached is a zip of the documents referenced in Exhibit A to the Responses and Objections. All documents referenced in Exhibit A were previously served or produced in the CID and shall be treated as **Confidential Information**, pursuant to the Protective Order. MGL intends to substantially complete its production of documents no later than October 19, 2022.

Best,
Tayler

**TAYLER G. BRAGG**
Managing Associate

**SIDLEY AUSTIN LLP**
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201
+1 214 981 3423
tbragg@sidley.com
www.sidley.com

**SIDLEY**

*************************************************************************************
************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

*************************************************************************************
************************

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. 3:19-cv-02281-K |
| MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company, | |
| Defendants. | |

**DEFENDANT MATCH GROUP, LLC'S RESPONSES AND OBJECTIONS TO
PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF REQUESTS FOR
<u>PRODUCTION OF DOCUMENTS</u>**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules"), Defendant Match Group, LLC ("MGL"), by and through its undersigned counsel, objects and responds to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") First Request for Production of Documents (each a "Request" and, collectively, the "Requests") as follows:

## I.   GENERAL OBJECTIONS

1.   <u>Irrelevant</u>. MGL objects to each and every Request to the extent that it purports to seek information that is irrelevant to Plaintiff's claims or MGL's defenses and is not proportional to the needs of the case. In particular, MGL objects to each and every Request to the extent that it seeks information only about the FTC's claims that were dismissed with prejudice in the Court's August 24, 2022 Order on MGL's Motion to Dismiss (the "Dismissed Claims").[1] For the avoidance of doubt, MGL will not withhold a document merely because it is related to the

---

[1] Dkt. 129 (dismissing Counts I & II of FTC's Amended Complaint, filed on July 19, 2022 25, at Dkt. 116, due to MGL's affirmative defense of CDA § 230 immunity).

Case 3:19-cv-02281-K   Document 151   Filed 09/22/22   Page 80 of 133   PageID 2574

Dismissed Claims, if such document is otherwise responsive to the Requests related to non-dismissed claims. MGL further objects to each and every Request to the extent that it seeks documents or information from an entity not named in the operative Complaint, including, but not limited to, a website or dating app not relevant to the live Complaint, including, but not limited to, Tinder.

2.    <u>Undue Burden</u>. MGL objects to each and every Request to the extent that it seeks to impose obligations beyond what is required under the Rules or is unduly burdensome. Accordingly, MGL objects to each and every Request where the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

3.    <u>Overbroad</u>. MGL objects to each and every Request to the extent that it seeks information that is beyond the scope of Plaintiff's claims in the Complaint, including, but not limited to, documents and information related to Plaintiff's Dismissed Claims, and documents and information related to entities and/or dating sites that are not party to, or otherwise related to, this litigation, such as Tinder. MGL further objects to each and every Request to the extent that it seeks documents and information that are not within MGL's possession, custody, or control, including by seeking documents and information from and related to entities that are not named as parties to this litigation.

4.    <u>Privilege</u>. MGL objects to each and every Request to the extent it seeks documents that are or information that is subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all communications with, or work product of, any outside attorney or non-testifying expert)

(collectively, "Privileged Information"). Any inadvertent disclosure of Privileged Information by MGL shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

5.    <u>Vagueness and Ambiguity</u>. MGL objects to each and every Request to the extent that such Request is so vague, ambiguous, or confusing as not to be susceptible to a reasoned interpretation or response. In the absence of clear instructions or definitions associated with terms that are too vague, ambiguous, or confusing, MGL will give the terms used in the Request a reasonable interpretation.

6.    <u>Accessibility</u>. MGL objects to each and every Request to the extent that it seeks information that is not reasonably accessible in the ordinary course of business.

7.    <u>Cumulative Requests and Availability of Information Elsewhere</u>. MGL objects to each and every Request that is cumulative, duplicative of, or to which documents or information already are in the possession, custody, or control of Plaintiff, or have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive. In particular, MGL objects to each and every Request insofar as it seeks to require MGL to re-produce to the FTC documents or information already obtained by Plaintiff during the FTC's prior investigation in connection with the Civil Investigative Demand served in 2017 (the "2017 CID"), and documents or information produced by Match Group, Inc. ("MGI") during the course of this litigation. In connection with the 2017 CID, MGI produced over 225,000 documents that spanned a date range of 2013 to 2018. Further, MGI produced over 23,000 documents in response to the FTC's First Set of Requests for Production to MGI. Such prior productions and the massive volume of documents produced therein should be sufficient to provide the FTC with the information it requires. For the avoidance of doubt, however, MGL will comply with the Order Regarding Discovery of Electronically Stored Information (the "ESI Order"), which

provides, "The parties need not re-produce in discovery documents that were already produced to the FTC in response to the FTC's CID. Instead, the parties will refer to the bates number of the relevant documents." Dkt. 132 at 4. Exhibit A, attached hereto and incorporated herein, includes the bates numbers of the responsive documents to each Request.

8.    Lack of Possession, Custody, or Control. MGL objects to each Request to the extent it does not appear to be addressed to MGL and seeks documents that are necessarily outside MGL's possession, custody, or control.

9.    Legal Conclusions. MGL objects to each and every Request to the extent that it requires MGL to draw legal conclusions.

10.    Reservation of Right to Supplement. Given the stage of the litigation, MGL has not completed its investigation of the facts or law relating to this action, and discovery in this matter is ongoing. Accordingly, consistent with the Rules, these responses and objections are made without prejudice to, and are not a waiver of, MGL's right to amend, correct, or supplement these responses, and are subject to MGL's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist. MGL provides these responses in good faith after a reasonable inquiry and based on information that it knows or can readily obtain.

11.    No Waiver. By responding to these Requests, MGL does not concede the relevancy of a Request nor the relevancy or admissibility of any information provided in response thereto. The fact that information is provided in response to a particular Request does not mean that it is probative of any particular issue in this case. MGL expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not

limited to, competency, relevancy, materiality, privilege, confidentiality, hearsay, or admissibility as evidence for any other purpose. Moreover, the right to object on any ground to the use of the responses or information provided, in any aspect of this or any other court action, arbitration, or judicial or administrative proceeding or investigation, is reserved.

## II.    SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.    MGL specifically objects to the Requests' Instructions and Definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. In responding to these Requests, MGL will follow the requirements set forth in the Rules.

2.    MGL specifically objects to the definitions of "Match Group[,] LLC," "Company," and "You" as vague, ambiguous, confusing, and overbroad because the definition includes "assumed names, prior names, and predecessor entities, including Match.com, LLC," and MGL is not sure what the FTC means by "assumed names, prior names, or predecessor entities" (other than Match.com, LLC). MGL further objects to this definition to the extent it encompasses any website other than Match.com, which is the only dating site at issue in the Complaint. Additionally, MGL objects because the correct name of the entity named as a defendant in this litigation is Match Group, LLC, not Match Group LLC.

3.    MGL specifically objects to the definition of "Match Group[,] Inc." because the correct name of the entity named as a defendant in this litigation is Match Group, Inc., not Match Group Inc.

4.    MGL specifically objects to the definitions of "and" and "or" and because they are ambiguous and confusing. MGL will interpret these terms to have their plain, ordinary, and common sense meaning. MGL further objects to these definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. MGL objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to

require information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case. In responding to these Requests, MGL will comply with the Rules.

5.      MGL specifically objects to the definition of "any" as ambiguous and confusing. MGL will interpret this term to have its plain, ordinary, and common sense meaning. MGL further objects to this definition to the extent it purports to impose obligations on MGL that exceed those imposed by the Rules. MGL objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, MGL will comply with the Rules.

6.      MGL specifically objects to the definitions of "Customer" and "Customers" as overbroad, unduly burdensome, and oppressive, insofar as they purport to cover individual(s) "who have maintained an account on *any website* owned or operated by" MGL, including "Tinder," which encompasses websites or entities that are not party to, or otherwise related to, the present litigation. MGL further objects that the definitions of "Customer" and "Customers" are thus not tailored to the allegations in the Complaint, not proportional to the needs of the case, and exceedingly burdensome. In responding to these Requests, MGL will construe the terms "Customer" and "Customers" to refer only to Customer(s) of Match.com.

7.      MGL objects to the definition of "Document" as overly broad and unduly burdensome. MGL further objects to this definition to the extent it refers to items outside of MGL's possession, custody, or control, particularly through its use of the phrases "regardless of origin or location" and "however and by whomever prepared, produced, disseminated, or made." MGL further objects to this definition to the extent it refers to items in Plaintiff's possession, custody, or control, or to items that have been or could be obtained from another source that is equally

available to Plaintiff or is more convenient, less burdensome, or less expensive. MGL further objects to this definition to the extent it purports to impose obligations on MGL that exceed those required by the Rules. In responding to these Requests, MGL will interpret the word "Document" to have its plain, ordinary, and common sense meaning and will comply with the Rules.

8.      MGL specifically objects to the definition of "each" as ambiguous and confusing. MGL will interpret this term to have its plain, ordinary, and common sense meaning. MGL further objects to this definition to the extent it purports to impose obligations on MGL that exceed those imposed by the Rules. MGL objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, MGL will comply with the Rules.

9.      MGL specifically objects to the definitions of "Identify" and "the identity of" because they are ambiguous and confusing. MGL will interpret these terms to have their plain, ordinary, and common sense meaning. MGL further objects to these definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. MGL objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, MGL will comply with the Rules.

10.     MGL specifically objects to the definitions of "referring to" and "related to" because they are ambiguous and confusing. MGL will interpret these terms to have their plain, ordinary, and common sense meaning. MGL further objects to these definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. MGL objects to

the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, MGL will comply with the Rules.

11.     MGL specifically objects to the definition of "Subscriber" as overbroad, unduly burdensome, and oppressive, insofar as it purports to cover a "Subscriber" to any website other than Match.com. MGL further objects that the definition of "Subscriber" is thus not tailored to the allegations in the Complaint and not proportional to the needs of the case. In responding to these Requests, MGL will construe the term "Subscriber" to refer only to Subscribers to Match.com.

12.     MGL objects to the definition of "Tinder" because it is overbroad, ambiguous, and confusing. MGL further objects to the definition of "Tinder" as irrelevant, since Tinder is not named or referenced in the Complaint, and thus any Request relying on the definition of "Tinder" is not proportional to the needs of the case and is unduly burdensome.

13.     The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Requests.

## III.     SPECIFIC OBJECTIONS AND RESPONSES TO THE REQUESTS

**REQUEST NO. 1:** The Company's certificate of incorporation, bylaws, rules, regulations, procedures, and any amendments to them.

**RESPONSE:** MGL objects to this Request because "rules," "regulations," and "procedures" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information. MGL further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome to the extent the Request seeks documents regarding any dating

site other than Match.com, which is the only dating website at issue in the Complaint, and discovery into any other site would amount to a fishing expedition.

Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's corporate formation documents are not relevant to any of Plaintiff's claims. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to this Request at MATCHFTC672166 – MATCHFTC672167. Based on the foregoing objections, MGL will not undertake the additional burden of searching for more documents.

**REQUEST NO. 2:** All minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board.

**RESPONSE:** MGL objects to this Request because it is misleading and assumes facts that are not true. MGL does not have a board of directors, which MGL already explained to the FTC when it provided such information in its Amended Answer and Affirmative Defenses to the Complaint, Dkt. 139 ¶ 9 ("Match Group, LLC further admits that . . . it has no board of directors"). Accordingly, even assuming such a Request seeks relevant information (which it does not), MGL does not have possession, custody or control of documents responsive to this Request.

**REQUEST NO. 3:** All materially different versions of the Company's organizational charts and personnel directories.

**RESPONSE:** MGL objects to this Request because "organizational charts" and "personnel directories" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information.

MGL'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS      9

Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as the Company's "organizational charts" and "personnel directories" are not relevant to Plaintiff's claims in the Complaint. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request No. 4.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 3 in connection with the 2017 CID in response to CID Document Request No. 2 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request for Production No. 3, with respect to Match.com only. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for responsive documents not already produced (or to be produced) by MGI, with respect to Match.com only. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 4:** Documents sufficient to show all relationships that have existed between Match Group[,] LLC and any other corporate entity, including Match Group, Inc. and its subsidiaries, entities with an ownership interest the Company, and any other entity that has operated match.com.

**RESPONSE:** MGL objects to this Request because "relationships" is vague and undefined, and also to the extent Plaintiff seeks Privileged Information. Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as "all relationships that have

existed between Match Group[,] LLC and any other corporate entity" are not relevant to Plaintiff's claims in the Complaint. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request No. 3.

Finally, subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 4 in connection with the FTC's First Set of Requests for Production to MGI. Thus, MGL will not produce any more documents in response to this Request, as the FTC already possesses documents sufficient to show the relationships that exist between MGL and MGI.

**REQUEST NO. 5:** Documents sufficient to show all corporate officers of:

    a.  Match Group[,] LLC;

    b.  Any Corporate subsidiary of Match Group[,] LLC;

    c.  Any other entity You contend has operated Match.com;

    d.  Any other entity You contend has operated Tinder.

**RESPONSE:** MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (such as Tinder). MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. MGL further objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 3, 4, 6, and 7. Finally, subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 5 in connection with the 2017 CID, in response to CID Document Request No. 2. *See* Ex. A. Based

on the foregoing objections, MGL will not undertake the additional burden of searching for more documents.

**REQUEST NO. 6:** Documents sufficient to identify all current and former employees of Match Group[,] LLC whose responsibilities include or relate to:

    a.  advertising or marketing;

    b.  customer service;

    c.  corporate governance or operations;

    d.  general management;

    e.  research and development;

    f.  legal compliance;

    g.  accounting or finance;

    h.  cancellation of subscriptions;

    i.  the Match Guarantee; and

    j.  policies and practices related to chargebacks.

**RESPONSE:** MGL objects to this Request because "corporate governance or operations" and "general management" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information, particularly in light of Plaintiff's request for documents related to "legal compliance." MGL further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. Further, the "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and MGL has repeatedly told the FTC this orally and in writing. MGL is prepared to enter a binding stipulation in a form acceptable to the Court that MGL and Match.com will never again engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged

conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass. Based on the foregoing objections, MGL will not undertake the burden of searching for documents.

**REQUEST NO. 7:** Documents sufficient to identify all current and former Match Group[,] LLC executives.

**RESPONSE:** MGL objects to this Request because "executives" is vague and undefined. Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, by seeking documents regarding "all current and former Match Group[,] LLC executives" regardless of their relevance to the claims in the Complaint. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. MGL further objects to this Request to the extent that it is duplicative of other Requests, including Request Nos. 3, 5, and 6. Finally, subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 7 in connection with the 2017 CID, in response to CID Document Request No. 2. *See* Ex. A. Based on the foregoing objections, MGL will not undertake the additional burden of searching for more documents.

**REQUEST NO. 8:** Documents sufficient to show all transfers of money between Match Group[,] LLC, and any corporate subsidiary or owner or any other entity You claim has operated Match.com and Tinder.

**RESPONSE:** MGL objects to this Request because "transfers of money" is vague and undefined. MGL further objects to this request as vague and confusing in that it is unclear whether "owner"

is meant to refer to the "owner" of MGL or "owner" of Match.com. Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about entities and dating sites that are not party to, or otherwise related to, this litigation (such as Tinder). MGL further objects to this Request because it is overbroad and unduly burdensome by seeking documents and information about financial transactions that are irrelevant to Plaintiff's claims, even if limited only to MGL and Match.com. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession. Based on the foregoing objections, MGL will not undertake the burden of searching for documents.

**REQUEST NO. 9:** All Documents You contend tend to show that Match Group, Inc., is not liable for the violations alleged in the Complaint filed in this case, including documents supporting the claim that another entity has operated Match.com, and Tinder.

**RESPONSE:** MGL objects to this Request to the extent Plaintiff seeks Privileged Information. Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about dating sites that are not party to, or otherwise related to, this litigation (such as Tinder). Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. MGL further objects to this Request as overbroad, unduly burdensome, and oppressive, because it is not proportionate to the needs to the case and because

it requires MGL to marshal all of its evidence before trial. MGL further objects to this Request to the extent it is duplicative of other Requests, potentially including each and every other Request. Finally, subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 9 in connection with the 2017 CID, in response to each and every CID Document Request and Interrogatory. Based on the foregoing objections, MGL will not undertake the additional burden of searching for more documents.

**REQUEST NO. 10:** All Documents You contend tend to show that Match Group[,] LLC operates or has operated Match.com and Tinder.

**RESPONSE:** MGL objects to this Request to the extent Plaintiff seeks Privileged Information. Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about dating sites that are not party to, or otherwise related to, this litigation (such as Tinder). Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 4 and 11.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 10 in connection with the FTC's First Set of Requests for Production to MGI, in response to Request No. 10, for documents sufficient to show the operation of Match.com. Based on the foregoing objections, MGL will not undertake the additional burden of searching for more documents.

**REQUEST NO. 11:** All Documents You contend tend to show that Match Group[,] Inc. does not or has not operated Match.com and Tinder.

**RESPONSE:** MGL objects to this Request because the phrase "does not or has not operated" requires MGL to prove a negative, and to the extent Plaintiff seeks Privileged Information. Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about dating sites that are not party to, or otherwise related to, this litigation (such as Tinder). Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 4 and 10.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 11 in connection with the FTC's First Set of Requests for Production to MGI, in response to Request No. 11, for documents sufficient to show the operation of Match.com. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for reasonably available responsive documents, not already produced (or to be produced) by MGI, sufficient to show the operation of Match.com. MGL will produce any non-privileged responsive documents identified through such search, if any are located.

**REQUEST NO. 12:** Documents sufficient to show the Company's quarterly and annual gross and net revenue, including profit and loss statements and accounting documents for Match.com and Tinder.

**RESPONSE:** MGL objects to this Request because "accounting documents" is vague, undefined, and overbroad, and to the extent Plaintiff seeks Privileged Information. Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about dating sites that are not party to, or otherwise related to, this litigation (such as Tinder). MGL further objects to this Request insofar as it seeks information that Plaintiff can obtain elsewhere and/or is publicly available. Based on the foregoing objections, MGL will not undertake the burden of searching for documents.

**REQUEST NO. 13:** Documents showing the Company's projections of its gross and net revenue, including Documents provided to prospective investors.

**RESPONSE:** MGL objects to this Request because "projections" and "prospective investors" are vague and undefined, and to the extent Plaintiff seeks Privileged Information. MGL further objects to this Request as vague and confusing as it assumes MGL has provided documents "to prospective investors." MGL does not have investors or solicit investors as it is wholly owned by MGI. Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as "the Company's projections of its gross and net revenue, including Documents provided to prospective investors," are not relevant to Plaintiff's claims in the Complaint. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Based on the foregoing objections, MGL will not undertake the burden of searching for documents.

**REQUEST NO. 14:** Documents sufficient to show quarterly and annual revenue from:

    a.  Subscriptions to Match.com;

    b.  Subscriptions to Tinder;

    c.  Subscriptions to Match.com that included or was subject to a Match Guarantee;

    d.  Payments from accounts on Match.com that had been automatically renewed; and

    e.  Payments from Subscribers who had clicked on the "retention offer" or "Cancel Subscription" hyperlinks described in Paragraph 56 of the First Amended Complaint filed in this case.

**RESPONSE:** MGL objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match Guarantee" and related practices have been permanently discontinued, and MGL has repeatedly told the FTC this orally and in writing. MGL is prepared to enter a binding stipulation in a form acceptable to the Court that MGL and Match.com will never again engage in the conduct challenged in Count III in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. The FTC also cannot seek monetary relief on the conduct at issue in Count III. *See* Mem. Op. and Order, Dkt. 86 at 13 ("[T]he FTC has no authority to seek, and this Court is not empowered to award, any equitable monetary relief."). For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass.

In addition, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about dating sites that are not party to, or otherwise related to, this litigation (such as Tinder). Moreover, MGL objects that this

Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced information responsive to Request No. 14 in connection with the 2017 CID, in response to CID Interrogatory No. 3. Based on the foregoing objections, MGL will not undertake the additional burden of searching for more documents.

**REQUEST NO. 15:** Each unique version of all Ads related to a Match Guarantee.

**RESPONSE:** MGL objects to this Request as vague and undefined because it is unclear what the FTC means by "unique." MGL further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match Guarantee" and related practices have been permanently discontinued, and MGL has repeatedly told the FTC this orally and in writing. MGL is prepared to enter a binding stipulation in a form acceptable to the Court that MGL and Match.com will never again engage in the conduct challenged in Count III in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass. Finally, subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 15 in connection with the 2017 CID, in

response to CID Request No. 3. *See* Ex. A. Based on the foregoing objections, MGL will not undertake the additional burden of searching for more documents.

**REQUEST NO. 16:** Each unique version of all Ads related to cancellation of a Match.com or Tinder subscription, including Ads related to the ease or availability of cancellation.

**RESPONSE:** MGL objects to this Request as vague and undefined because it is unclear what the FTC means by "unique" and "Ads related to cancellation." MGL also objects to this Request to the extent Plaintiff seeks Privileged Information. MGL further objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about dating sites that are not party to, or otherwise related to, this litigation (such as Tinder). Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request No. 15.

Subject to and without waiving the foregoing specific and general objections, MGL responds that after a reasonable and diligent search for responsive documents, it did not locate any Ads about cancelation of a Match.com subscription.

**REQUEST NO. 17:** Documents sufficient to show each unique disclosure You contend disclosed policies concerning terminating subscriptions in response to a Customer Chargeback[.]

**RESPONSE:** MGL objects to this Request as vague and undefined because it is unclear what the FTC means by "unique disclosure." MGL also objects to this Request to the extent Plaintiff seeks Privileged Information. MGL further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. All practices related to "Chargebacks" have been permanently discontinued, and MGL has

repeatedly told the FTC this orally and in writing. MGL is prepared to enter a binding stipulation

in a form acceptable to the Court that MGL and Match.com will never again engage in the conduct

challenged in Count IV in the Complaint, to which this discovery relates. The FTC has identified

no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of

whether any injunctive relief should be issued that addresses this alleged conduct is moot and does

not ever need to be litigated. For these reasons, discovery into the questions of what occurred or

whether the alleged conduct related to "Chargebacks" violated the FTC Act are impermissibly

burdensome and calculated to harass. Finally, MGL responds that MGI has already produced

documents responsive to Request No. 17 in connection with the 2017 CID, in response to CID

Request No. 9. *See* Ex. A. Based on the foregoing objections, MGL will not undertake the

additional burden of searching for more documents.

**REQUEST NO. 18:** Documents sufficient to show each unique disclosure or Ad that disclosed
the Company's policy of permitting cancellation of a subscription by phone.

**RESPONSE:** MGL objects to this Request as vague and undefined because it is unclear what the

FTC means by "unique disclosure." MGL also objects to this Request to the extent Plaintiff seeks

Privileged Information. MGL further objects to this Request as irrelevant, overbroad, and not

proportional to the needs of the case to the extent it seeks information beyond the scope of

Plaintiff's claims in the Complaint, to the extent Plaintiff seeks documents and information about

dating sites that are not party to, or otherwise related to, this litigation. MGL further objects to the

extent that the requested documents already are in Plaintiff's possession, custody, or control.

Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including

Request No. 28.

Subject to and without waiving the foregoing specific and general objections, MGL

responds that MGI has already produced documents responsive to Request No. 18 in connection

with the 2017 CID, in response to CID Request No. 9 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 21, with respect to Match.com only. After a reasonable search with respect to Match.com only, MGL did not identify any additional documents responsive to this Request that have not already been produced to Plaintiff.

**REQUEST NO. 19:** Documents sufficient to show each unique disclosure or Ad that disclosed the Company's policy of permitting cancellation of a subscription by fax.

**RESPONSE:** MGL objects to this Request as vague and undefined because it is unclear what the FTC means by "unique disclosure." MGL also objects to this Request to the extent Plaintiff seeks Privileged Information. MGL further objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case to the extent it seeks information beyond the scope of Plaintiff's claims in the Complaint, to the extent Plaintiff seeks documents and information about dating sites that are not party to, or otherwise related to, this litigation. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request No. 28.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 19 in connection with the 2017 CID, in response to CID Request No. 9 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 21, with respect to Match.com only. After a reasonable search with respect to Match.com only, MGL did not identify any additional documents responsive to this Request that have not already been produced to Plaintiff.

**REQUEST NO. 20:** Documents sufficient to show each unique disclosure or Ad that disclosed the Company's policy of permitting cancellation of a subscription by email.

**RESPONSE:** MGL objects to this Request as vague and undefined because it is unclear what the FTC means by "unique disclosure." MGL also objects to this Request to the extent Plaintiff seeks Privileged Information. MGL further objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case to the extent it seeks information beyond the scope of Plaintiff's claims in the Complaint, to the extent Plaintiff seeks documents and information about dating sites that are not party to, or otherwise related to, this litigation. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request No. 28.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 20 in connection with the 2017 CID, in response to CID Request No. 9 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 21, with respect to Match.com only. After a reasonable search with respect to Match.com only, MGL did not identify any additional documents responsive to this Request that have not already been produced to Plaintiff.

**REQUEST NO. 21:** Documents sufficient to show each unique disclosure or Ad that disclosed the Company's policy of permitting cancellation of a subscription by online chat.

**RESPONSE:** MGL objects to this Request as vague and undefined because it is unclear what the FTC means by "unique disclosure." MGL also objects to this Request to the extent Plaintiff seeks Privileged Information. MGL further objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case to the extent it seeks information beyond the scope of Plaintiff's claims in the Complaint, to the extent Plaintiff seeks documents and information about

dating sites that are not party to, or otherwise related to, this litigation. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request No. 28.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 21 in connection with the 2017 CID, in response to CID Request No. 9 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 21, with respect to Match.com only. After a reasonable search with respect to Match.com only, MGL did not identify any additional documents responsive to this Request that have not already been produced to Plaintiff.

**REQUEST NO. 22:** All Documents you contend tend to show that Match.com or Tinder employs or has employed a simple cancellation mechanism.

**RESPONSE:** MGL objects to this Request as vague and undefined because it is unclear what the FTC means by "simple," but MGL will give "simple" its plain and ordinary meaning. MGL further objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about dating sites that are not party to, or otherwise related to, this litigation (such as Tinder). Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 18–21, 24, 27–29, 35–41, and 47.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 22 in connection with the 2017 CID, in response to CID Request No. 8 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request Nos. 20–21 (with respect to Match.com only). Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for reasonably available responsive documents, not already produced (or to be produced) by MGI, with respect to Match.com only. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 23:** All documents relating to the percentage or number of Match.com's free trial members that cancelled before being billed.

**RESPONSE:** MGL objects to this Request as vague and undefined because it is unclear what the FTC means by "free trial members." MGL likewise objects to this Request to the extent Plaintiff seeks Privileged Information. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request No. 34. MGL also objects to this Request as overly broad and unduly burdensome to the extent that it requests "All Documents relating to" the topic.

Subject to and without waiving the foregoing objections, MGL responds that MGI has already produced information responsive to Request No. 23 in connection with the 2017 CID, in response to CID Interrogatory No. 7; and the FTC's First Requests for Production to MGI, in response to Request No. 27. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for responsive documents that are sufficient to show the percentage or number of Match.com's free trial members that cancelled before being billed, and will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 24:** All Documents relating to the percentage or number of Match.com's users who successfully cancelled their membership within 24 hours of initiating Match.com's online cancellation flow.

**RESPONSE:** MGL objects to this Request to the extent Plaintiff seeks Privileged Information. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request No. 34. MGL also objects to this Request as overly broad and unduly burdensome to the extent that it requests "All Documents relating to" the topic.

Subject to and without waiving the foregoing objections, MGL responds that MGI has already produced documents responsive to Request No. 23 in connection with the FTC's First Requests for Production to MGI, in response to Request No. 27, with respect to Match.com only. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for responsive documents, not already produced (or to be produced) by MGI, that are sufficient to show the percentage or number of Match.com's users who successfully cancelled their membership within 24 hours of initiating Match.com's online cancellation flow, and will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 25:** Representative copies of all visual content shown to Customers during the process of purchasing or signing up for a paid subscription.

**RESPONSE:** MGL objects to this Request because "[r]epresentative copies of all visual content" is vague, confusing, and overbroad. MGL further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff's definition of "Customer" necessarily and inappropriately includes other dating sites that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on any website owned or operated" by MGL, including "Tinder." MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly

probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request No. 26.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 25 in connection with the 2017 CID, in response to CID Request No. 3 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 18, with respect to Match.com only. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for responsive documents not already produced (or to be produced) by MGI, with respect to Match.com only.

**REQUEST NO. 26:** Representative copies of all visual content that Match Group[,] LLC has shown to Customers concerning the Match Guarantee, including concerning:

    a.  Advertisements relating to Subscriptions subject to the Match Guarantee;

    b.  Customer "progress" with regard to the Match Guarantee; and

    c.  Redeeming a Match Guarantee or receiving a Guarantee Extension.

**RESPONSE:** MGL objects to this Request because "[r]epresentative copies of all visual content" is vague and confusing, and because "progress" is vague and undefined. MGL specifically objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match Guarantee" and related practices have been permanently discontinued, and MGL has repeatedly told the FTC this orally and in writing. MGL is prepared to enter a binding stipulation in a form acceptable to the Court that MGL and Match.com will never again engage in the conduct challenged in Count III in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should

be issued that addresses this alleged conduct is moot and does not ever need to be litigated. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" violated the FTC Act are impermissibly burdensome and calculated to harass. Finally, subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 26 in connection with the 2017 CID, in response to CID Request Nos. 3 and 9. *See* Ex. A. Based on the foregoing objections, MGL will not undertake the additional burden of searching for more documents.

**REQUEST NO. 27:** Screen captures or images of each website page that Customers have viewed when cancelling their Match.com subscriptions, produced in graphics display resolution no lower than that viewed by the Customer.

**RESPONSE:** MGL further objects to this Request because "graphics display resolution no lower than that viewed by the Customer" is vague and confusing. MGL objects to this Request to the extent "produced in graphics display resolution no lower than that viewed by the Customer" imposes obligations on MGL that exceed those imposed by the Rules or the ESI Order. MGL further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff's definition of "Customer" necessarily and inappropriately includes other dating sites that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on any website owned or operated" by MGL, including "Tinder." MGL also objects that this Request is duplicative of Request No. 22.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 27 in connection with the 2017 CID, in response to CID Request No. 9 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request Nos. 20 (with respect to Match.com only) and 28 (for Match.com and ROSCA compliance only). Notwithstanding MGI's prior productions,

MGL will conduct a reasonable search for responsive documents not already produced (or to be produced) by MGI. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 28:** Representative copies of all visual content that the Company has shown to Customers concerning the available means of cancelling their subscriptions.

**RESPONSE:** MGL objects to this Request because "[r]epresentative copies of all visual content" and "concerning" are vague and confusing. MGL further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff's definition of "Customer" necessarily and inappropriately includes other dating sites that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on any website owned or operated" by MGL, including "Tinder." MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 18–22, and 27.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 28 in connection with the 2017 CID, in response to CID Request No. 9 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 21, with respect to Match.com only. After a reasonable search with respect to Match.com only, MGL did not identify any documents responsive to this Request that have not already been produced to Plaintiff.

**REQUEST NO. 29:** All documents related to any change or contemplated change to any means of subscription cancellation available to Customers.

**RESPONSE:** MGL objects to this Request to the extent Plaintiff seeks Privileged Information. MGL further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff's definition of "Customer" necessarily and inappropriately includes other dating sites that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on any website owned or operated" by MGL, including "Tinder."

Additionally, MGL objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as any "change" that may have been contemplated but never implemented is not relevant to the allegations in Plaintiff's Complaint. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 29 in connection with the 2017 CID, in response to CID Request Nos. 8 and 9 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 22, with respect to Match.com only. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for responsive documents not already produced (or to be produced) by MGI, with respect to Match.com only. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 30:** All documents related to account takeovers.

**RESPONSE:** MGL objects to this Request because "account takeovers" is vague and undefined, and to the extent Plaintiff seeks Privileged Information. MGL further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, because by failing to specify any limiting principle on "account takeovers," this Request necessarily captures documents and information that fall outside the scope of what is relevant to the allegations in Plaintiff's Complaint. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Based on the foregoing objections, MGL will not undertake the burden of searching for documents.

**REQUEST NO. 31:** All documents related to software flaws that prevented Customers from:

    a.  logging into their accounts;

    b.  using their accounts;

    c.  canceling their accounts; or

    d.  resetting their password[.]

**RESPONSE:** MGL objects to this Request because "software flaws" is vague, undefined, and overbroad, and to the extent Plaintiff seeks Privileged Information. MGL further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. MGL objects to this Request because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as not every "software flaw" related to account functionality is relevant to the allegations in Plaintiff's Complaint. Moreover, MGL objects that this Request is part of an attempted fishing expedition by

Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.

MGL further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff's definition of "Customer" necessarily and inappropriately includes other dating sites that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on any website owned or operated" by MGL, including "Tinder."

Additionally, MGL objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request No. 29. Based on the foregoing objections, MGL will not undertake the burden of searching for documents.

**REQUEST NO. 32:** All communications relating to:

    a.  Match Guarantees;

    b.  Cancellation of paid subscriptions by Customers;

    c.  Customer Chargebacks;

    d.  Denial of Customers' access to accounts in response to chargebacks;

    e.  The marketing or advertising of Tinder Gold or Tinder Boost; and

    f.  The marketing or advertising of Incognito Mode.

**RESPONSE:** MGL objects to this Request because "[a]ll communications" is overbroad and unduly burdensome, and to the extent Plaintiff seeks Privileged Information. MGL further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. MGL further objects because the "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and MGL has repeatedly told the FTC this orally and in writing.

MGL is prepared to enter a binding stipulation in a form acceptable to the Court that MGL and Match.com will never again engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as neither "[t]he marketing or advertising of Tinder Gold or Tinder Boost" nor "[t]he marketing or advertising of Incognito Mode" are relevant to Plaintiff's claims in the Complaint. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 18–29, 33–42, 45, and 51. Based on the foregoing objections, MGL will not undertake the additional burden of searching for more documents.

**REQUEST NO. 33:** All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Match Guarantees; chargeback policies; Ads relating to subscription renewal or cancellation; or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups.

**RESPONSE:** MGL specifically objects to this Request because "tests," "A/B testing," "click-through data," "surveys," "usability tests," and "focus groups" are vague and undefined. MGL further objects to this Request to the extent Plaintiff seeks Privileged Information. MGL further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. MGL further objects to this Request because the "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and MGL has repeatedly told the FTC this orally and in writing. MGL is prepared to enter a binding stipulation in a form acceptable to the Court that MGL and Match.com will never again engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

MGL further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff's definition of "Customer" necessarily and inappropriately includes other dating sites that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on any website owned or operated" by MGL, including "Tinder."

Additionally, MGL objects to this Request as irrelevant, overbroad, not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because by seeking information under such a broad category as "how consumers or Customers view, read, react to, understand, or have been influenced," this Request is not tailored to the allegations in Plaintiff's Complaint. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request as duplicative of Request No. 51.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 33 in connection with the 2017 CID, in response to CID Request Nos. 3 and 4 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 26, with respect to subscription renewal and cancelation for Match.com only. After a reasonable search with respect to subscription renewal and cancelation for Match.com only, MGL did not identify any documents responsive to this Request that have not already been produced to Plaintiff.

**REQUEST NO. 34:** All Documents, including internal and third-party studies or audits, relating to Customers' efforts to cancel their subscriptions to Match.com or Tinder.

**RESPONSE:** MGL objects to this Request because "efforts" is vague and undefined, and to the extent Plaintiff seeks Privileged Information. MGL further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff's definition of "Customer" necessarily and inappropriately includes other dating sites that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on any website owned or operated" by MGL, including "Tinder."

Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about dating sites that are not party to, or otherwise related to, this litigation (such as Tinder). Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 18–29, 33–42, 45, and 51.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 34 in connection with the FTC's First Set of Requests for Production to MGI, in response to Request No. 27, with respect to Match.com only. After a reasonable search with respect to Match.com only, MGL did not identify any documents responsive to this Request that have not already been produced to Plaintiff.

**REQUEST NO. 35:** All Documents that show how many, and what percentage of, Customers that attempt to cancel their Match.com subscription through Matsch.com's [sic] online cancellation flow and are successful or unsuccessful in doing so.

**RESPONSE:** MGL objects to the term "Matsch.com's" and will interpret it as Match.com. MGL further objects to this Request because "attempt to cancel," "successful," and "unsuccessful" are vague and undefined. It is unclear at what point a consumer could be characterized as having "attempted to cancel," and it is also unclear what constitutes a "successful or unsuccessful" attempt to cancel, especially because some consumers accept save offers or simply change their minds before completing the cancelation flow. MGL further objects to this Request to the extent Plaintiff

seeks Privileged Information. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 23–24, 34, and 36–40. MGL also objects to this Request as overly broad and unduly burdensome insofar as it requests "All Documents."

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 35 in connection with the FTC's First Set of Requests for Production to MGI, in response to Request No. 27, with respect to Match.com only. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for reasonably available responsive documents, not already produced (or to be produced) by MGI, that are sufficient to show how many, and what percentage of, Match.com subscribers attempt to cancel their Match.com subscription through the online cancelation flow and are successful or unsuccessful in doing so. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 36:** Documents sufficient to show the number of Match.com users that cancelled by fax.

**RESPONSE:** MGL objects to the extent Plaintiff seeks Privileged Information. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 23–24 and 34–35.

Subject to and without waiving the foregoing specific and general objections, MGL will conduct a reasonable search for reasonably available responsive documents not already produced (or to be produced) by MGI. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 37:** Documents sufficient to show the number of Match.com users that cancelled by phone.

**RESPONSE:** MGL objects to the extent Plaintiff seeks Privileged Information. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 23–24 and 34–35.

Subject to and without waiving the foregoing specific and general objections, MGL will conduct a reasonable search for reasonably available responsive documents not already produced (or to be produced) by MGI. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 38:** Documents sufficient to show the number of Match.com users that cancelled by mail.

**RESPONSE:** MGL objects to the extent Plaintiff seeks Privileged Information. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 23–24 and 34–35.

Subject to and without waiving the foregoing specific and general objections, MGL will conduct a reasonable search for reasonably available responsive documents not already produced (or to be produced) by MGI. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 39:** Documents sufficient to show the number of Match.com users that cancelled by online chat.

**RESPONSE:** MGL objects to the extent Plaintiff seeks Privileged Information. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 23–24 and 34–35.

Subject to and without waiving the foregoing specific and general objections, MGL will conduct a reasonable search for reasonably available responsive documents not already produced (or to be produced) by MGI. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 40:** Documents sufficient to show the number of Match.com users that cancelled by any method other than online cancellation flow, telephone, fax, online chat, or mail.

**RESPONSE:** MGL objects to the extent Plaintiff seeks Privileged Information. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 23–24 and 34–35.

Subject to and without waiving the foregoing specific and general objections, MGL will conduct a reasonable search for reasonably available responsive documents not already produced (or to be produced) by MGI. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 41:** All Documents discussing, analyzing, or tracking Customers dropping out from or not completing Match.com's cancellation flow.

**RESPONSE:** MGL objects that "dropping out from" and "not completing" are vague, undefined, and not capable of being ascertained. MGL also objects to the extent Plaintiff seeks Privileged Information. MGL further objects to the extent that the requested documents already are in

Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request No. 34.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 41 in connection with the FTC's First Set of Requests for Production to MGI, in response to Request No. 27, with respect to Match.com only. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for reasonably available responsive documents not already produced (or to be produced) by MGI. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 42:** All Documents relating to the policies and practices of the Company, Match.com, or Tinder, regarding the following:

    a. Match Guarantees;

    b. account cancellation;

    c. Availability of customer support services;

    d. availability of refunds;

    e. Customer Chargebacks;

    f. Customer access to accounts; and

    g. compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

**RESPONSE:** MGL objects to this Request because "availability" is vague and undefined. MGL further objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged Information. MGL further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. MGL further objects to this Request because the "Match Guarantee" and related practices, as well as all practices

related to "Chargebacks," have been permanently discontinued, and MGL has repeatedly told the FTC this orally and in writing. MGL is prepared to enter a binding stipulation in a form acceptable to the Court that MGL and Match.com will never again engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 27–30 and 32–34.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 42 in connection with the 2017 CID, in response to CID Request No. 8 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 28, for Match.com and ROSCA compliance only. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for responsive documents sufficient to show cessation of the Guarantee (Count III) and Chargeback (Count IV) practices, not already produced (or to be produced) by MGI; for the avoidance of doubt, the aforementioned reasonable search will be with respect to Match.com only. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 43:** All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

**RESPONSE:** MGL objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged

Information, and because the Request overall appears calculated to specifically seek Privileged Information.

Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because not every document related to every prior investigation of MGL's compliance with consumer protection laws is relevant to the allegations in Plaintiff's Complaint. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 34, 42, 46, and 48.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 43 in connection with the 2017 CID, in response to CID Request No. 8 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 29, with respect to Match.com's compliance with ROSCA only. After a reasonable search with respect to Match.com's compliance with ROSCA only, MGL did not identify any documents responsive to this Request that have not already been produced to Plaintiff.

**REQUEST NO. 44:** All Documents relating to Customer complaints.

**RESPONSE:** MGL objects to this Request because "complaints" is vague and undefined, and to the extent Plaintiff seeks Privileged Information. MGL further objects that this Request is overbroad, vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff's definition of "Customer" necessarily and inappropriately includes other dating sites that are not relevant to the claims or allegations in the Complaint by

including "individuals who have maintained an account on any website owned or operated" by MGL, including "Tinder."

Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, since by seeking "all Documents" related to the inherently broad category of "Customer complaints," this Request necessarily captures a whole host of documents, communications, and other information that are not relevant to the claims in Plaintiff's Complaint. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 44 in connection with the 2017 CID, in response to CID Request No. 10 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 30, relating to Customer complaints regarding the Match.com online cancelation flow, as alleged in the Complaint. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for reasonably available responsive documents not already produced (or to be produced) by MGI, with respect to Match.com only. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 45:** All communications with Customers relating to the Match Guarantee or the Company's chargeback or cancellation policies or practices.

**RESPONSE:** MGL objects to this Request to the extent Plaintiff seeks Privileged Information. MGL further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match

Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and MGL has repeatedly told the FTC this orally and in writing. MGL is prepared to enter a binding stipulation in a form acceptable to the Court that MGL and Match.com will never again engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

MGL further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff's definition of "Customer" necessarily and inappropriately includes other dating sites that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on any website owned or operated" by MGL, including "Tinder." Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 33, 42, and 44.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 45 in connection with the 2017 CID, in response to CID Request No. 10 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 31, with respect to Match.com's cancelation policies or practices only. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for responsive documents sufficient to show cessation of the Guarantee (Count III) and Chargeback (Count IV) practices, not already produced (or to be

produced) by MGI; for the avoidance of doubt, the aforementioned reasonable search will be with respect to Match.com only. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 46:** All documents relating to any lawsuit alleging that Company or the operators of Match.com or Tinder have engaged in fraud or violated any federal, state, or foreign consumer protection laws.

**RESPONSE:** MGL objects to this Request because "the operators of" is vague and undefined, and to the extent Plaintiff seeks Privileged Information, specifically because the term "relating to" as used in this Request necessarily captures Privileged Information. MGL further objects to this Request as irrelevant, overbroad, oppressive, and inappropriate to the extent Plaintiff seeks discovery about "fraud" or consumer protection violations of any kind, as the Court dismissed with prejudice Plaintiff's claims related to alleged fraud (Counts I and II). Dkt. 129.

Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as Plaintiff seeks documents and information about dating sites that are not party to, or otherwise related to, this litigation (such as Tinder). Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. MGL likewise objects to this Request to the extent the requested documents are publicly available. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request No. 48. Based on the foregoing objections, MGL will not undertake the burden of searching for documents.

**REQUEST NO. 47:** All versions of customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training materials.

**RESPONSE:** MGL objects to this Request because "prepared responses," "customer support manuals," and "employee manuals" are vague and undefined, and to the extent Plaintiff seeks Privileged Information. To the extent Plaintiff meant the defined term "Customer," as opposed to "customer," MGL further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff's definition of "Customer" necessarily and inappropriately includes other dating sites that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on any website owned or operated" by MGL, including "Tinder." Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because by failing to specify any subject matter limitation on any of the materials referenced therein, this Request necessarily captures documents and information that fall outside the scope of what is relevant to Plaintiff's claims. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 32, 42, and 44.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 47 in connection with the 2017 CID, in response to CID Request No. 8 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 33 (that address or relate to Match.com account cancelation only). Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for reasonably available responsive documents not already produced

(or to be produced) by MGI, which address or relate to Match.com account cancelation, or are sufficient to show cessation of the Guarantee (Count III) and Chargeback (Count IV) practices; for the avoidance of doubt, the aforementioned reasonable search will be with respect to Match.com only. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 48:** All Documents referring to or relating to:

    a.  The Federal Trade Commission;

    b.  The FTC Act;

    c.  The Restore Online Shoppers' Confidence Act;

    d.  Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP";

    e.  The Department of Justice; and

    f.  The lawfulness or unlawfulness of any practices related to Match Guarantees, Customer chargebacks, or the cancellation of subscriptions.

**RESPONSE:** MGL objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the terms "referring to" and "relating to" as used in this Request necessarily capture Privileged Information. MGL further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and MGL has repeatedly told the FTC this orally and in writing. MGL is prepared to enter a binding stipulation in a form acceptable to the Court that MGL and Match.com will never again engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. For these reasons, discovery into the questions of what occurred or whether

the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, as this Request necessarily encompasses entities not party to, or otherwise related to, the present litigation. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 43 and 46. MGL is prepared to conduct a focused and reasonable search for responsive, non-privileged documents that relate to issues that remain in the case, and that might encompass some documents responsive to this Request. However, absent narrowing by the FTC, MGL is unable to conduct such a search.

**REQUEST NO. 49:** All Documents that support, contradict, refute, or rebut any affirmative defense You have asserted in Your Answer.

**RESPONSE:** MGL objects to this Request to the extent Plaintiff seeks Privileged Information. MGL further objects to this Request as oppressive, overbroad, and not proportional to the needs of the case because it requires MGL to marshal all of its evidence before trial. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

**REQUEST NO. 50:** All Documents You referred to in the course of responding to any discovery request served by the Federal Trade Commission in this case.

**RESPONSE:** MGL objects to this Request to the extent Plaintiff seeks Privileged Information, specifically because the terms "referring to" and "relating to" as used in this Request necessarily capture Privileged Information. MGL further objects to this Request on the grounds that it is not proportional to the needs of the case. The "Match Guarantee" and related practices, as well as all practices related to "Chargebacks," have been permanently discontinued, and MGL has repeatedly told the FTC this orally and in writing. MGL is prepared to enter a binding stipulation in a form acceptable to the Court that MGL and Match.com will never again engage in the conduct challenged in Counts III and IV in the Complaint, to which this discovery relates. The FTC has identified no evidence that the challenged conduct is about to, or is likely to, recur. Thus, the question of whether any injunctive relief should be issued that addresses this alleged conduct is moot and does not ever need to be litigated. For these reasons, discovery into the questions of what occurred or whether the alleged conduct related to the "Match Guarantee" or "Chargebacks" violated the FTC Act are impermissibly burdensome and calculated to harass.

Additionally, MGL objects to this Request as oppressive, overbroad, and not proportional to the needs of the case, because it purports to require MGL to re-produce each and every document it has previously produced to the FTC, which is inconsistent with the ESI Order agreed to by the parties and ordered by the Court. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 50 in connection with the FTC's First Set of Requests for Production to MGI, in response to Request No. 36, with respect to Match.com account cancelation only. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for responsive documents, with respect to Match.com account cancelation only, not already produced (or to be produced) by MGI. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 51:** All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads or disclosures relating to subscription renewal or cancellation or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups.

**RESPONSE:** MGL specifically objects to this Request because "disclosures," "tests," "A/B testing," "click-through data," "surveys," "usability tests," and "focus groups" are vague and undefined. MGL further objects to this Request to the extent Plaintiff seeks Privileged Information. MGL further objects to this Request on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case.

MGL further objects that this Request is vague, ambiguous, confusing, irrelevant, not proportional to the needs of the case, and overly burdensome in that Plaintiff's definition of "Customer" necessarily and inappropriately includes other dating sites that are not relevant to the claims or allegations in the Complaint by including "individuals who have maintained an account on any website owned or operated" by MGL, including "Tinder."

Additionally, MGL objects to this Request as irrelevant, overbroad, not proportional to the needs of the case, and overly burdensome because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because by seeking information under such a broad category

as "how consumers or Customers view, read, react to, understand, or have been influenced," this Request is not tailored to the allegations in Plaintiff's Complaint. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's possession, custody, or control. Finally, MGL objects to this Request as duplicative of Request No. 33.

Subject to and without waiving the foregoing specific and general objections, MGL responds that MGI has already produced documents responsive to Request No. 33 in connection with the 2017 CID, in response to CID Request Nos. 3 and 4 (*see* Ex. A); and the FTC's First Set of Requests for Production to MGI, in response to Request No. 26, with respect to subscription renewal and cancelation for Match.com only. Notwithstanding MGI's prior productions, MGL will conduct a reasonable search for reasonably available responsive documents not already produced (or to be produced) by MGI. MGL will produce any non-privileged responsive documents identified through such search.

**REQUEST NO. 52:** All Documents considered or relied upon by any witness you disclose under Fed. R. Civ. P. 26(a)(2).

**RESPONSE:** MGL objects to this Request to the extent Plaintiff seeks Privileged Information. Additionally, MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case because it purports to seek information beyond the scope of Plaintiff's claims in the Complaint, because it does not specify any subject matter limitations. Moreover, MGL objects that this Request is part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation, and that this Request is an abuse of the discovery process. MGL further objects to the extent that the requested documents already are in Plaintiff's

possession, custody, or control. MGL objects to this Request as oppressive, overbroad, and not proportional to the needs of the case because it requires MGL to marshal all of its evidence before trial. MGL further objects to this Request to the extent it seeks to require production or disclosure of expert-related documents prior to the time specified in the Court's scheduling order. Finally, MGL objects to this Request to the extent it is duplicative of other Requests, including potentially each and every other Request.

Subject to and without waiving the foregoing, MGL will comply with Rule 26(a)(2).

Dated: September 19, 2022

Respectfully submitted,

*/s/  Angela C. Zambrano*
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and Match Group, LLC*

**MGL'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**   52

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was served on counsel of record via email on September 19, 2022.

/s/ Angela C. Zambrano
Angela C. Zambrano

**EXHIBIT A: CID PRODUCTIONS KEY**

*FTC v. Match Group, Inc. et al.*, Case No. 3:19-cv-02281-K (N.D. Tex.)

| CID | Bates Location |
|---|---|
| CID RFP 2 | • 20170515 Hogan First Production Cover Letter **(Ex. 1 at 32)** |
| CID RFP 3 | • 20170515 Hogan First Production Cover Letter **(Ex. 1 at 32)** – *RFP 3(a)(iii), 3(b)(iii), and 3(c)(iii)*<br>• 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 3)**<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 4 | • 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 4)**<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 6 | • 20170613 Letter from L. Goldstein to Z. Keller at FTC with Document and Interrogatory Responses **(Ex. 2 at 3)**<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests **(Ex. 6)**<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests **(Ex. 7)**<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests **(Ex. 8)**<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests **(Ex. 9)**<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests **(Ex. 10)** |
| CID RFP 7 | • 20170515 Hogan First Production Cover Letter **(Ex. 1 at 33)** |
| CID RFP 8 | • 20170515 Hogan First Production Cover Letter **(Ex. 1 at 33)**<br>• 20170713 Match Fourth Production in Response to the CID **(Ex. 3 at 5)** |

1

| CID | Bates Location |
|---|---|
| | • 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests (**Ex. 6**)<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests (**Ex. 7**)<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests (**Ex. 8**)<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests (**Ex. 9**)<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests (**Ex. 10**) |
| CID RFP 9 | • 20170613 Letter from L. Goldstein to Z. Keller at FTC with Document and Interrogatory Responses (**Ex. 2 at 4–5**)<br>• 20170713 Match Fourth Production in Response to the CID (**Ex. 3 at 5**)<br>• 20171020 Match Letter re ESI Production in Response to CID (**Ex. 5 at 1**)<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests (**Ex. 6**)<br>• 20171113 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC005_Document_Requests (**Ex. 7**)<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests (**Ex. 8**)<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests (**Ex. 9**)<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests (**Ex. 10**) |
| CID RFP 10 | • 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests (**Ex. 6**)<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests (**Ex. 8**)<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests (**Ex. 9**)<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests (**Ex. 10**)<br>• 20180604 Match Letter re Customer Complaint Samples for DR 10 (**Ex. 11 at 1**) |
| CID RFP 11 | • 20170713 Match Fourth Production in Response to the CID (**Ex. 3 at 6**)<br>• 20171018 Match Letter re Suppl Resp to DR 11 (**Ex. 4 at 1**)<br>• 20171030 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC004_Document_Requests (**Ex. 6**)<br>• 20171127 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC006_Document_Requests (**Ex. 8**)<br>• 20171211 Match Letter re ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC007_Document_Requests (**Ex. 9**)<br>• 20180111 Match Letter re Final ESI Production in Response to CID and corresponding sortable spreadsheet MatchFTC008_Document_Requests (**Ex. 10**) |