# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

FEDERAL TRADE COMMISSION,

                      Plaintiff,

    vs.

MATCH GROUP, INC., a corporation, and
MATCH GROUP, LLC, formerly known as
MATCH.COM, LLC, a limited liability
company,

                      Defendants.

Case No. 3:19-cv-02281-K

## DEFENDANTS MATCH GROUP, INC. AND MATCH GROUP, LLC'S
## MOTION FOR A PROTECTIVE ORDER AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

III.    LEGAL STANDARD ........................................................................................ 6

IV.     ARGUMENT AND AUTHORITIES ............................................................... 7

    A.   Discovery Related to Hinge and Humor Rainbow Is Not, and Could Never Be, Relevant to the FTC's Claims and Allegations Related to Match.com. ............................ 8

    B.   The Subpoenas Are Facially Overbroad and Improper. ........................... 11

    C.   The FTC's Subpoenas Violate the Court's ESI Order. .............................. 13

V.      CONCLUSION ................................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Plambeck*,
  No. 3-08-CV-0388-M, 2008 WL 5411435 (N.D. Tex. Dec. 29, 2008) ...................................9

*Atomanczyk v. Tex. Dep't of Crim. Just.*,
  No. CV H-17-0719, 2018 WL 560228 (S.D. Tex. Jan. 24, 2018) ...........................................7

*Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*,
  561 F.3d 377 (5th Cir. 2009) ............................................................................................2, 7

*Cayago Americas, Inc. v. Heinen*,
  No. 21-CV-61035, 2022 WL 304519 (S.D. Fla. Jan. 24, 2022) ...........................................11

*Ennis v. Alder Prot. Holdings, LLC*,
  No. 2:19-CV-512 CW, 2022 WL 4290099 (D. Utah Sept. 16, 2022) ...................................10

*Fraserside IP LLC v. Gamma Ent.*,
  286 F.R.D. 416 (N.D. Iowa 2012) .......................................................................................8

*Gondola v. USMD PPM, LLC*,
  223 F. Supp. 3d 575 (N.D. Tex. 2016) ................................................................................7

*Humphries v. Progressive Corp.*,
  No. 3:20-cv-548-X, 2022 WL 1018404 (N.D. Tex. Apr. 5, 2022)...........................................6

*McComas v. Market*,
  No. 16-217-WOB-CJS, 2020 WL 12698021 (E.D. Ky. Nov. 30, 2020)...............................11

*In re O'Hare*,
  No. MISC. H-11-0539, 2012 WL 1377891 (S.D. Tex. Apr. 19, 2012)..................................11

*Ronald A. Katz Tech. Licensing, L.P. v. Verizon Commc'ns, Inc.*,
  No. CIV.A. 01-5627, 2002 WL 31356302 (E.D. Pa. Oct. 16, 2002).....................................11

*Starrett v. Lockeed Martin Corp.*,
  No. 3:17-CV-00988-D-BT, 2018 WL 10345320 (N.D. Tex. Mar. 9, 2018) ..........................12

*In re Terra Int'l*,
  134 F.3d 302 (5th Cir. 1998) ..............................................................................................6

*U.S. Risk, LLC v. Hagger*,
  No. 3:20-CV-00538-N, 2022 WL 209746 (N.D. Tex. Jan. 24, 2022)......................................9

*United States v. Robinson*,
   917 F.3d 856 (5th Cir. 2019) ................................................................................11

*Veterans Bros. No. 126, L.L.C. v. 7-Eleven, Inc.*,
   No. 16-2034, 2017 WL 345858 (E.D. La. Jan. 24, 2017)........................................11

*Wiwa v. Royal Dutch Petroleum Co.*,
   392 F.3d 812 (5th Cir. 2004) ................................................................................11

**Rules**

Fed. R. Civ. P. 26 ............................................................................................1, 2, 6, 7

Pursuant to Rule 26 of the Federal Rules of Civil Procedure (the "Rules"), Defendants Match Group, Inc. ("MGI") and Match Group, LLC ("MGL," and collectively, "Defendants"), hereby respectfully and timely move for a protective order preventing enforcement of two subpoenas that Plaintiff Federal Trade Commission (the "FTC") served on non-parties Hinge, Inc. ("Hinge") and Humor Rainbow, Inc. ("Humor Rainbow").

## I.   INTRODUCTION

This Motion seeks a protective order preventing the FTC from obtaining burdensome and entirely irrelevant discovery from third-party subsidiaries of MGI (Hinge and Humor Rainbow) that are nowhere named or even mentioned in the operative Amended Complaint, whose practices have not been challenged by the FTC in this case (or anywhere), and have nothing to do with the limited allegations that remain against Match.com. The FTC does not allege in its Amended Complaint that any misconduct has occurred on the dating sites that Hinge and Humor Rainbow actually operate (Hinge and OkCupid, respectively), so those dating sites are not at issue in the Amended Complaint. Nor could they be—motions requesting leave to join parties or to amend pleadings were due by May 13, 2022, Dkt. 100.

As detailed below, the only live issue remaining in this lawsuit is whether Match.com's online cancellation mechanism complies with the Restore Online Shoppers' Confidence Act's (ROSCA) requirement that the mechanism be "simple." Neither Hinge nor Humor Rainbow control or have ever had any influence whatsoever over the methods that consumers use to cancel Match.com subscriptions. Equally important, Match.com permanently discontinued the practices challenged by the FTC in Counts III and IV (the guarantee and chargeback policies), and committed in a sworn stipulation filed in this Court never to resume them, Dkt. 146. Because neither Hinge nor Humor Rainbow ever had anything to do with those Match.com practices, the

1

decision to discontinue them, or whether the practices would ever resume, no discovery from those entities is needed or could be relevant to those Counts.

The FTC served nearly identical discovery requests relating to third parties on MGI, and MGI objected to those requests as irrelevant, overly broad, and unduly burdensome. Those objections are currently pending before the Court in the parties' joint submission regarding the FTC's Motion to Compel discovery from MGI. *See* Dkt. 147. Rather than awaiting the Court's decision on those objections, however, on September 16, 2022, the FTC served on Hinge and Humor Rainbow subpoenas seeking the same documents at issue in the pending joint submission—an obvious attempt to end-run MGI's objections. Despite meeting and conferring face to face for over an hour with MGI's counsel regarding the scope of its claims and the implications for these types of discovery requests, the FTC continues to insist on ignoring the narrowness of its own Amended Complaint. In fact, during that meeting, the FTC could not point to a single allegation in the Amended Complaint related to a dating site other than Match.com. Nevertheless, the FTC pursued these subpoenas to third parties.

Of course, the discovery sought by the subpoenas is not any more permissible when requested from a third party than when requested from MGI. As the Rules make clear, *all* discovery must be relevant to the allegations in the complaint and proportional to the needs of the case to be discoverable, regardless of the source. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009) ("The role of discovery, however, is to find support for properly pleaded claims, not to find the claims themselves."). Accordingly, the Court should grant the Motion and halt the FTC's improper fishing expedition.

## II.   <u>BACKGROUND</u>

On July 19, 2022, the FTC filed its First Amended Complaint for Permanent Injunction, Monetary Relief, Civil Penalties, and Other Relief (the "Amended Complaint") against MGI and MGL.[1] The allegations in the Amended Complaint are limited solely to Match.com. There is not a single allegation in the Amended Complaint that any misconduct occurred on any dating site other than Match.com. The FTC could not point to any evidence otherwise at the September 19 meet and confer between the FTC and MGI's counsel, and the following excerpts from the Amended Complaint reflect this undeniable reality:

<u>SUMMARY OF THE CASE</u>

2.      Defendants operate Match.com, an online dating service. Consumers using Match.com create profiles and communicate using either free, limited services ("nonsubscribers") or a broader range of paid services ("subscribers").

3.      Since at least 2013, Defendants have maintained the following five deceptive or unfair practices to induce consumers to subscribe to Match.com and to keep them subscribed.

Dkt. 116, Am. Compl. ¶¶ 2-3.

---

[1] All motions requesting leave to join parties or to amend pleadings were due by May 13, 2022. Dkt. 100.

> **Defendants' Billing and Cancellation Practices for Match.com Subscriptions**
>
> 54.    Consumers who purchase a subscription package must complete an online enrollment process at Match.com and provide their credit card or other payment information to pay for the initial subscription package. Defendants' subscription packages include a "negative option renewal" feature, meaning that Defendants will automatically charge consumers for a new term at the end of each subscription period, unless the consumer has affirmatively canceled the subscription.

Dkt. 116, Am. Compl. ¶ 54.[2]

> **Count III**
> **Deceptive "Guarantee" Program**
>
> 75.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of its online dating service, Defendants have represented, directly or indirectly, expressly or by implication, that consumers would receive a free six-month subscription if they purchased a six-month Match.com subscription and did not "meet someone special" during that initial six-month period on Match.com.

Dkt. 116, Am. Compl. ¶ 75.[3]

> **Count IV**
> **Unfair Denial of Access to Consumers' Accounts**
>
> 78.    In numerous instances, Defendants have barred consumers who have disputed charges through their financial institutions from using paid-for Match.com subscription services.

Dkt. 116, Am Compl. ¶ 78.[4]

---

[2] The remaining Count V-related allegations are also limited to Match.com. *See* Dkt. 116, Am. Compl. ¶¶ 55-60.

[3] The remaining Count III-related allegations are also limited to Match.com. *See* Dkt. 116, Am. Compl. ¶¶ 76-77.

[4] The remaining Count IV-related allegations are also limited to Match.com. *See* Dkt. 116, Am. Compl. ¶¶ 79-80.

**Count V**
**Failure to Provide a Simple Mechanism for Consumers to Stop Recurring Charges**

86.     In numerous instances, in connection with charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as described in Paragraphs 54-60 above, Defendants have failed to provide simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account.

Dkt. 116, Am. Compl. ¶ 86.[5]

Additionally, the Court's Order on MGI's Motion to Dismiss materially narrowed the scope of the case by dismissing Counts I and II with prejudice and limiting the FTC to only injunctive relief on Counts III and IV. Dkts. 86, 129. Because Match.com permanently discontinued the guarantee and chargeback policies at issue in Counts III and IV in April 2019 and March 2019, respectively, and has offered the FTC repeated assurances that those practices will never be reinstated—including a verified stipulation filed with the Court, Dkt. 146—the appropriate scope of permissible discovery is extremely narrow. All that is left is Count V, regarding whether Match.com's online cancellation flow is "simple" under ROSCA.

But the FTC simply does not accept the reality of the scope of its remaining case and continues to insist on seeking burdensome and harassing discovery from both MGI and MGL (while avoiding its own discovery obligations), which resulted in MGI and the FTC filing Motions to Compel and subsequent joint submissions. Dkts. 133, 140, 144, 147. One of the disputed issues in the FTC's Motion to Compel is whether the FTC may seek discovery into dating sites other than Match.com. Dkt. 147 at 20-26. Instead of waiting for the Court to decide the issue, the FTC

---

[5] The remaining Count V allegation is also limited to Match.com. *See* Dkt. 116, Am. Compl. ¶ 87.

attempted to circumvent MGI's objections by serving subpoenas on Hinge and Humor Rainbow, demanding the production of the same documents the FTC initially sought from MGI. The subpoenas are nearly identical to many of the requests for production served on MGI.[6] *Compare* app. at 009-014 (FTC requests to MGI), *with* app. At 026-029 (FTC requests to Hinge) *and* app. at 042-045 (FTC request to Humor Rainbow).[7] This is an improper attempted second bite at the apple, with the only purpose to further harass.

### III.  LEGAL STANDARD

Discovery is limited to "nonprivileged matter *relevant* to any party's claim or defense and *proportional* to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphases added). If a party seeks discovery outside of those bounds, another "party may seek a protective order on the basis of lack of relevance or proportionality as to third-party discovery." *Humphries v. Progressive Corp.*, No. 3:20-cv-548-X, 2022 WL 1018404, *2 (N.D. Tex. Apr. 5, 2022).

District courts have broad discretion to issue protective orders, for good cause, to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A protective order may forbid the discovery or limit the scope of discovery to certain matters. *See* Fed. R. Civ. P. 26(c)(1)(A)-(D). The moving party bears the burden of showing good cause that a protective order is necessary. *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). Good cause is shown where "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less

---

[6] The subpoenas also request documents wholly irrelevant to the practices even at issue in the Amended Complaint. For example, the subpoenas demand Hinge and Humor Rainbow's financial information, corporate formation documents, information regarding current and former employees, "[a]ll documents relating to Customer complaints" without any subject matter limitation, and any "[a]ll Documents referring to or relating to" "the Federal Trade Commission" or "The Department of Justice." App. at 029, 045. Such requests can only be classified as an impermissible fishing expedition.

[7] The subpoenas are identical to one another, except the Hinge subpoena seeks documents about the Hinge dating platform, and the Humor Rainbow subpoena seeks documents about the OkCupid dating platform.

burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 579-80 (N.D. Tex. 2016).

As noted above, Rule 26(b)(1) limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, Rule 26(b)(1) is not "a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Atomanczyk v. Tex. Dep't of Crim. Just.*, No. CV H-17-0719, 2018 WL 560228, at *3 (S.D. Tex. Jan. 24, 2018). "The role of discovery . . . is to find support for properly pleaded claims, not to find the claims themselves." *Torch Liquidating Tr. ex rel. Bridge Assocs. LLC v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009). Courts must limit the scope of discovery to that which is relevant and proportional to the needs of a case. Thus, even where potentially relevant, "a court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Gondola*, 223 F. Supp. 3d at 580; Fed. R. Civ. P. 26(b)(1).

## IV.   ARGUMENT AND AUTHORITIES

The Court should grant this Motion for Protective Order to prohibit the FTC from obtaining the discovery it seeks in the subpoenas, for many of the same reasons explained in the pending joint submission on the FTC's Motion to Compel discovery from MGI. *See* Dkt. 147.

**A.      Discovery Related to Hinge and Humor Rainbow Is Not, and Could Never Be, Relevant to the FTC's Claims and Allegations Related to Match.com.**

The subpoenas served on Hinge and Humor Rainbow demand information regarding dating sites irrelevant to the FTC's Amended Complaint. Specifically, the FTC seeks documents about the Hinge and OkCupid dating platforms. But such documents are inherently undiscoverable because those dating platforms are irrelevant to the instant litigation against MGI and MGL related to Match.com. Moreover, even if the subpoenas were directed to entities that held any relevant information—they are not—the requests contained therein do not relate to cancellation, the sole remaining issue in this litigation. Because the discovery sought is in no way related to the FTC's claims, and because the FTC cannot demonstrate otherwise, the subpoenas seek irrelevant information, and good cause exists to prohibit this discovery.

First, the subpoenas contain irrelevant and overbroad requests by seeking documents entirely unrelated to Match.com. The FTC's allegations in the Amended Complaint are limited to Match.com, so the FTC is not entitled to discovery regarding dating websites not at issue in the Amended Complaint, including, but not limited to, the Hinge and OkCupid dating platforms.[8] *See, e.g.*, *Fraserside IP LLC v. Gamma Ent.,* 286 F.R.D. 416, 421-22 (N.D. Iowa 2012) (holding plaintiff could seek discovery of websites not relevant to the allegations in the Amended Complaint *only* for jurisdictional purposes, but not for liability purposes, and only to the extent that those websites were *owned* by the named defendants). Hinge and Humor Rainbow do not operate, own, or control Match.com, nor do their operations of the Hinge and OkCupid dating platforms, respectively, have anything to do with Match.com. This discovery—as well as discovery into any

---

[8] Not only does the FTC not allege in the Amended Complaint that any MGI-affiliated entities engage in conduct similar to that at issue in the Amended Complaint, but despite repeated requests orally and in writing, the FTC has *never* explained to MGI what the alleged similar bad conduct is. The FTC is engaged only in a fishing expedition to attempt to find such conduct.

other dating sites—amounts to an improper fishing expedition. *See Allstate Ins. Co. v. Plambeck*, No. 3-08-CV-0388-M, 2008 WL 5411435, at *1 (N.D. Tex. Dec. 29, 2008) (holding broad requests that go beyond individuals involved in conduct alleged in Amended Complaint "in hopes of finding other evidence that may or may not be admissible at trial would amount to nothing more than a fishing expedition"); *U.S. Risk, LLC v. Hagger*, No. 3:20-CV-00538-N, 2022 WL 209746, at *5 (N.D. Tex. Jan. 24, 2022) (explaining fishing expedition exists when information sought is not directly and logically tied to an attempt to find evidence affecting merits of case).

Second, the subpoenas seek irrelevant discovery and are overbroad because the FTC did not limit the subpoenas only to topics related to MGI, MGL, Match.com, or even the types of alleged misconduct at issue in the Amended Complaint. *See* App. at 026-029, 042-045. Rather, the subpoenas inquire about *any* conduct on sites operated by Hinge or Humor Rainbow, regardless of whether such conduct was directed by—or at all related to—MGI, MGL, Match.com, or the types of alleged misconduct described in the Amended Complaint. For example, most of the requests do not mention MGI, MGL, or Match.com at all. Even worse, several of the requests have nothing to do with the types of alleged misconduct described in the Amended Complaint. Requests 1 through 5 seek Humor Rainbow and Hinge's corporate formation and operational documents, even though Humor Rainbow and Hinge are not named in the Amended Complaint. Requests 12 through 14 ask for the financial information of each company, even though it is unclear how a third party's financial information could be relevant or proportional to the needs of the case. Request 23, seeks "[a]ll Documents related to account takeovers," even though account takeovers (on any dating site) are not mentioned in the Amended Complaint. And Request 32 seeks "[a]ll Documents relating to Customer complaints," even though complaints about Hinge or OkCupid are necessarily irrelevant to Match.com, and regardless of whether such complaints have anything

to do with the type of misconduct alleged in the Amended Complaint. It is difficult, if not impossible, to imagine how this information could be relevant to the parties' claims or defenses.

Third, the subpoenas are improper because the FTC continues to seek discovery related to the guarantee and chargeback issues, even though such policies were permanently discontinued in 2019 and will never be reinstated. While seeking discovery about Match.com's policies regarding these items is improper and unnecessary for the reasons explained in the pending joint submission, Dkt. 147 at 5-11, seeking discovery about *other dating sites'* policies is even further beyond the pale. For example, Requests 15, 17, 19, 25a, 25c, 25d, 30a, 30e, and portions of other Requests demand documents about "Guarantee"[9] and "Chargeback" policies. App. at 027-028, 043-044. None of these requests is relevant to the only remaining live question—cancellation methods on Match.com—because the requests have nothing to do with Match.com, a site owned or operated by either Defendant, *or* cancellation.[10]

The FTC has previously relied on a string of hypotheticals to justify discovery into non-Match.com dating sites, claiming that (1) *if* MGI controls Match.com (it does not), (2) *if* MGI instructed Match.com to engaged in the conduct challenged in the Amended Complaint (it did not), (3) *if* MGI also controls other dating sites that are owned and operated by other MGI subsidiaries (it does not), (4) *if* those other dating sites engage in conduct similar to that challenged in the Amended Complaint (even though the FTC made no such allegations in its Amended Complaint), *and* (5) *if* MGI instructed those other dating sites to engage in that conduct (it did not), *then* the FTC would be entitled to injunctive relief applicable to other dating sites owned and operated by

---

[9] It is unclear what "Guarantee" the FTC is asking about, since it has never identified any alleged Guarantee offered by Hinge or Humor Rainbow on the Hinge or OkCupid platforms.

[10] Courts in other jurisdictions have recognized that "a lawsuit does not give a party a 'free pass to fish through all of [another party's] financial records merely to see if anything interesting turns up," whether that fishing occurs through discovery to parties or non-parties. *Ennis v. Alder Prot. Holdings, LLC*, No. 2:19-CV-512 CW, 2022 WL 4290099, at 4 (D. Utah Sept. 16, 2022) (citation omitted). By the same token, the FTC cannot probe the financial, corporate formation, or other documents of entities owned by MGI simply by virtue of its lawsuit against MGI.

subsidiaries of MGI. None of these theories is adequately alleged in the Amended Complaint (and most of them are not alleged *at all*).[11] This Court should decline the FTC's "invitation to join [its] 'improper fishing expedition in support of a hypothetical claim.'" *United States v. Robinson*, 917 F.3d 856, 869 (5th Cir. 2019). Accordingly, good cause exists to grant the Defendants' Motion.

### B. The Subpoenas Are Facially Overbroad and Improper.

Even if the subpoenas sought remotely relevant information (and they do not), the FTC's discovery requests to Hinge and Humor Rainbow are facially overbroad because they are not limited temporally to an appropriate period and seek "all documents" about a variety of topics entirely untethered to this litigation. This provides an independent reason to grant Defendants' Motion.

Courts routinely find that requests to nonparties unlimited in time are impermissibly burdensome. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (finding a discovery request to a non-party was overbroad because it failed to provide a time frame); *In re O'Hare*, No. MISC. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012) (finding a non-party subpoena facially overbroad as "[t]he period covered by the requests [was] unlimited"); *McComas v. Market,* No. 16-217-WOB-CJS, 2020 WL 12698021, at *13 (E.D. Ky. Nov. 30, 2020) (holding subpoena was "overbroad and not tailored to a particular purpose" as it sought

---

[11] *See Cayago Americas, Inc. v. Heinen*, No. 21-CV-61035, 2022 WL 304519, at *2 (S.D. Fla. Jan. 24, 2022) (citing Fed. R. Civ P. 26(b)(1)) ("The Court finds that the requested discovery is not relevant because Plaintiffs have not alleged an alter ego or veil-piercing theory of liability."); *Veterans Bros. No. 126, L.L.C. v. 7-Eleven, Inc.*, No. 16-2034, 2017 WL 345858, at *1, *7 (E.D. La. Jan. 24, 2017) ("[Third-party plaintiff] has not alleged fraud or shown that piercing the corporate veil is warranted, and therefore further discovery on the matter is not warranted either."); *Ronald A. Katz Tech. Licensing, L.P. v. Verizon Commc'ns, Inc.*, No. CIV.A. 01-5627, 2002 WL 31356302, at *2 (E.D. Pa. Oct. 16, 2002) ("[Plaintiff] has failed to make sufficient allegations to warrant discovery into an alter-ego/piercing the corporate veil claim. The Plaintiff has never alleged that piercing the corporate veils of [Defendant's] subsidiaries is necessary to prevent fraud, injustice, illegality, or criminal conduct. They merely alleged 'that [Defendant] is a well-coordinated, centrally controlled entity.'").

information "without limit to time frame"). Here, the subpoenas are devoid of any time limitation whatsoever and are thus overbroad and improper on their face.

In addition, many of the subpoenas' requests are overbroad insofar as they purport to seek "*all documents*" on a variety of topics, such as all documents related to "Customer complaints" and "customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training manuals," with no limitation as to subject matter. App. at 029, 045. Perhaps more egregious are the subpoenas' requests for all documents relating to "any lawsuit alleging" that the operators of OkCupid or Hinge "engaged in fraud or violated *any federal, state, or foreign consumer protection laws*," and all documents related to the FTC, the FTC Act, ROSCA, or the Department of Justice, among other things. App. at 029, 045 (emphasis added). Even though this case is limited to the live issue of whether Match.com's offers simple cancellation mechanisms,[12] the subpoenas request everything under the sun from Humor Rainbow and Hinge—non-parties that are not operated by either Defendant and not otherwise related to the Match.com practices challenged in the Amended Complaint. The requests are so preposterously overbroad that they can only be intended to harass. *See, e.g.*, *Starrett v. Lockeed Martin Corp.*, No. 3:17-CV-00988-D-BT, 2018 WL 10345320, at *1 (N.D. Tex. Mar. 9, 2018) (finding that "discovery requests are overly broad and harassing" where they sought "identification of 'all staff or employees,' and 'any and all records of employment'"). The subpoenas' impermissible and harassing overbreadth further demonstrates that the Court should grant the Motion.

---

[12] The FTC can seek only injunctive relief for Counts III and IV, and the FTC admits that those practices ceased in "mid-2019." Am. Compl. ¶ 3.

C.       **The FTC's Subpoenas Violate the Court's ESI Order.**

In addition to their fatal substantive deficiencies, the FTC's subpoenas are also deficient because they conflict with the ESI Order agreed to by the parties and entered by the Court, Dkt. 132. The parties agreed on the contents of the ESI Order after weeks of negotiation, but the FTC ignored that agreement—which was subsequently reflected in a Court Order—when it subpoenaed Hinge and Humor Rainbow. The FTC failed to attach the ESI Order (or the Court's Protective Order) to the subpoenas, but instead attached purported "Production Requirements" that are inconsistent with the agreed ESI Order. App. at 30, 46. For example, the Production Requirements demand production of native files of all types, including emails, and forbids de-duplication of documents and the use of threading software, whereas the ESI Order does not require the production of native email files and permits de-duplication and threading (which minimizes review time). *Compare* App. at 30, 46, *with* Dkt. 132 at 3. The FTC's attempt to circumvent the Court's ESI Order further reflects its refusal to abide by the rules of discovery and justifies a protective order.

## V.       <u>CONCLUSION</u>

For these reasons, Defendants respectfully request that the Court grant the Motion and prohibit the FTC from taking discovery from non-parties Hinge and Humor Rainbow. Defendants further request any additional relief to which they may be entitled.

Dated: September 30, 2022                              Respectfully submitted,

                                                       */s/ Angela C. Zambrano*
                                                       Angela C. Zambrano
                                                       State Bar No. 24003157
                                                       angela.zambrano@sidley.com
                                                       Chelsea A. Priest
                                                       State Bar No. 24102375
                                                       cpriest@sidley.com
                                                       Tayler G. Bragg
                                                       State Bar No. 24109943

tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and Match Group, LLC*

## CERTIFICATE OF CONFERENCE

On September 26, 2022, counsel for MGI and MGL informed the FTC via email that they believed the subpoenas were improper for the same reasons described in MGI's portion of the pending joint submission, Dkt. 147, and asked the FTC to withdraw the subpoenas. On September 27, 2022, the FTC responded via email and refused to withdraw the subpoenas. On September 28, 2022, counsel for MGI and MGL informed the FTC via email that they would be moving for a protective order. The FTC confirmed that it was opposed. *See* App. at 049-052.

/s/ Angela C. Zambrano
Angela C. Zambrano

## CERTIFICATE OF SERVICE

On September 30, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Angela C. Zambrano
Angela C. Zambrano

14