**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br>Defendants. | Case No. 3:19-cv-02281-K |

**JOINT SUBMISSION ON DEFENDANTS MATCH GROUP, INC. AND
MATCH GROUP LLC'S MOTION FOR A PROTECTIVE ORDER**

Pursuant to the Court's October 4, 2022, Order, Defendants Match Group, Inc. ("MGI") and Match Group, LLC ("MGL," and collectively, the "Defendants") and Plaintiff Federal Trade Commission (the "FTC," and together with MGI and MGL, the "Parties") file this Joint Submission on MGI and MGL's Motion for a Protective Order preventing the enforcement of two subpoenas that the FTC served on Hinge, Inc. ("Hinge") and Humor Rainbow, Inc. ("Humor Rainbow"). On October 7, 2022, the Parties held a face-to-face conference which lasted from approximately 3:30 CT to 4:10 CT. Chad Hummel and Chelsea Priest attended on behalf of MGI and MGL, and Reid Tepfer, Hasan Aijaz, and Jack O'Gorman attended on behalf of the FTC. Following the conference, the Parties remain unable to resolve the disputes set forth below.

1

I.      **Disputed Issue #1: Discovery Related to Dating Sites Other Than Match.com**

A.  **RELEVANT DISCOVERY REQUESTS**

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| **REQUEST FOR PRODUCTION NO. 4:** Documents sufficient to show all relationships that have existed between the Company and any other corporate entity, including Match Group, LLC, Match Group, Inc., its subsidiaries, entities with an ownership interest the Company, and any other entity that has operated Hinge. | **REQUEST FOR PRODUCTION NO. 4:** Documents sufficient to show all relationships that have existed between the Company and any other corporate entity, including Match Group, LLC, Match Group, Inc., its subsidiaries, entities with an ownership interest the Company, and any other entity that has operated OKCupid. |
| **REQUEST FOR PRODUCTION NO. 7:** Documents sufficient to show all transfers of money between the Company and Match Group, Inc., Match Group, LLC, or any corporate subsidiary or owner of any entity that has ever operated Hinge. | **REQUEST FOR PRODUCTION NO. 7:** Documents sufficient to show all transfers of money between the Company and Match Group, Inc., Match Group, LLC, or any corporate subsidiary or owner of any entity that has ever operated OKCupid. |
| **REQUEST FOR PRODUCTION NO. 8:** All Documents that tend to show that Match Group LLC operates or has operated Hinge. | **REQUEST FOR PRODUCTION NO. 8:** All Documents that tend to show that Match Group LLC operates or has operated OKCupid. |
| **REQUEST FOR PRODUCTION NO. 11:** All Documents that tend to show that Match Group Inc. does not or has not operated Hinge, the Company, or Hinge, Inc. | **REQUEST FOR PRODUCTION NO. 11:** All Documents that tend to show that Match Group Inc. does not or has not operated OKCupid, the Company, or Humor Rainbow, Inc. |
| **REQUEST FOR PRODUCTION NO 14:** Documents sufficient to show quarterly and annual revenue from: a. Subscriptions to Hinge; b. Subscriptions to Hinge that included or were subject to a Guarantee; and c. Payments from accounts on Hinge that had been automatically renewed. | **REQUEST FOR PRODUCTION NO. 14:** Documents sufficient to show quarterly and annual revenue from: a. Subscriptions to OKCupid; b. Subscriptions to OKCupid that included or were subject to a Guarantee; and |

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| | c. Payments from accounts on OKCupid that had been automatically renewed. |
| **REQUEST FOR PRODUCTION NO. 15:** Each unique version of all Ads related to any Guarantee. | **REQUEST FOR PRODUCTION NO. 15:** Each unique version of all Ads related to any Guarantee. |
| **REQUEST FOR PRODUCTION NO. 16:** Each unique version of all Ads related to cancellation of a Hinge subscription, including Ads related to the ease or availability of cancellation. | **REQUEST FOR PRODUCTION NO. 16:** Each unique version of all Ads related to cancellation of a OKCupid subscription, including Ads related to the ease or availability of cancellation. |
| **REQUEST FOR PRODUCTION NO. 17:** Documents sufficient to show each unique disclosure of policies concerning terminating subscriptions in response to a Customer Chargeback. | **REQUEST FOR PRODUCTION NO. 17:** Documents sufficient to show each unique disclosure of policies concerning terminating subscriptions in response to a Customer Chargeback. |
| **REQUEST FOR PRODUCTION NO. 18:** Representative copies of all visual content shown to Customers during the process of purchasing or signing up for a paid subscription. | **REQUEST FOR PRODUCTION NO. 18:** Representative copies of all visual content shown to Customers during the process of purchasing or signing up for a paid subscription. |
| **REQUEST FOR PRODUCTION NO. 19:** Representative copies of all visual content that Hinge or the Company has shown to Customers concerning any Guarantee, including concerning: <br> a. Advertisements relating to Subscriptions subject to any Guarantee; <br> b. Customer "progress" with regard to the any Guarantee; and <br> c. Redeeming a Guarantee or receiving a Guarantee Extension. | **REQUEST FOR PRODUCTION NO. 19:** Representative copies of all visual content that OKCupid or the Company has shown to Customers concerning any Guarantee, including concerning: <br> a. Advertisements relating to Subscriptions subject to any Guarantee; <br> b. Customer "progress" with regard to the any Guarantee; and <br> c. Redeeming a Guarantee or receiving a Guarantee Extension. |

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| **REQUEST FOR PRODUCTION NO. 20:** Representative copies of all visual content, including website pages and mobile application screens, that Customers have had to view to cancel their subscriptions. | **REQUEST FOR PRODUCTION NO. 20:** Representative copies of all visual content, including website pages and mobile application screens, that Customers have had to view to cancel their subscriptions. |
| **REQUEST FOR PRODUCTION NO. 21**: Representative copies  of all visual content, including website pages and mobile application screens, that the Company has shown to Customers concerning the available means of cancelling their subscriptions. | **REQUEST FOR PRODUCTION NO. 21:** Representative copies of all visual content, including website pages and mobile application screens, that the Company has shown to Customers concerning the available means of cancelling their subscriptions. |
| **REQUEST FOR PRODUCTION NO. 22:** All documents related to any change or contemplated change to any means of subscription cancellation available to Customers. | **REQUEST FOR PRODUCTION NO. 22:** All documents related to any change or contemplated change to any means of subscription cancellation available to Customers. |
| **REQUEST FOR PRODUCTION NO. 23:** All documents related to account takeovers. | **REQUEST FOR PRODUCTION NO. 23:** All documents related to account takeovers. |
| **REQUEST FOR PRODUCTION NO. 24:** All documents related to software flaws that prevented Customers from: <br> a.  logging into their accounts; <br> b.  using their accounts; <br> c.  resetting their password; or <br> d.  canceling their accounts. | **REQUEST FOR PRODUCTION NO. 24:** All documents related to software flaws that prevented Customers from: <br> a.  logging into their accounts; <br> b.  using their accounts; <br> c.  resetting their password; or <br> d.  canceling their accounts. |
| **REQUEST FOR PRODUCTION NO. 25:** All communications relating to: <br> a.  Guarantees; <br> b.  Cancellation of paid subscriptions by Customers; <br> c.  Customer Chargebacks; and <br> d.  Denial of Customers' access to accounts in response to chargebacks. | **REQUEST FOR PRODUCTION NO. 25:** All communications relating to: <br> a.  Guarantees; <br> b.  Cancellation of paid subscriptions by Customers; <br> c.  Customer Chargebacks; <br> d.  Denial of Customers' access to accounts in response to chargebacks; and |

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| | e. The marketing or advertising of Incognito Mode, OKCupid Premium, or Profile Boosts on OKCupid. |
| **REQUEST FOR PRODUCTION NO. 26:** All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Guarantees; Chargeback policies; Ads relating to subscription renewal or cancellation or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups. | **REQUEST FOR PRODUCTION NO. 26:** All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Guarantees; Chargeback policies; Ads relating to subscription renewal or cancellation or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups. |
| **REQUEST FOR PRODUCTION NO. 27:** All Documents, including internal and third-party studies or audits, relating to Customers' efforts to cancel their subscriptions to Hinge. | **REQUEST FOR PRODUCTION NO. 27:** All Documents, including internal and third-party studies or audits, relating to Customers' efforts to cancel their subscriptions to OKCupid. |
| **REQUEST FOR PRODUCTION NO. 28:** All Documents that show how many Customers attempt to cancel their Hinge subscription and are successful or unsuccessful in doing so. | **REQUEST FOR PRODUCTION NO. 28:** All Documents that show how many Customers attempt to cancel their OKCupid subscription and are successful or unsuccessful in doing so. |
| **REQUEST FOR PRODUCTION NO. 29:** All Documents that show what percentage of Customers attempt to cancel their Hinge subscription are unsuccessful in doing so. | **REQUEST FOR PRODUCTION NO. 29:** All Documents that show what percentage of Customers attempt to cancel their OKCupid subscription are unsuccessful in doing so. |
| **REQUEST FOR PRODUCTION NO. 30:** All Documents relating to the policies and practices of the Company regarding the following: a. any Guarantees; b. account cancellation; | **REQUEST FOR PRODUCTION NO. 30:** All Documents relating to the policies and practices of the Company regarding the following: a. any Guarantees; b. account cancellation; |

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| c. Availability of customer support services;<br>d. availability of refunds;<br>e. Customer Chargebacks;<br>f. Customer access to accounts; and<br>g. compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act. | c. Availability of customer support services;<br>d. availability of refunds;<br>e. Customer Chargebacks;<br>f. Customer access to accounts; and<br>g. compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act. |
| **REQUEST FOR PRODUCTION NO. 31:** All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act. | **REQUEST FOR PRODUCTION NO. 31:** All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act. |
| **REQUEST FOR PRODUCTION NO. 32:** All Documents relating to Customer complaints. | **REQUEST FOR PRODUCTION NO. 32:** All Documents relating to Customer complaints. |
| **REQUEST FOR PRODUCTION NO. 33:** All communications with Customers relating to any Guarantee or the Company's chargeback or cancellation policies or practices. | **REQUEST FOR PRODUCTION 33:** All communications with Customers relating to any Guarantee or the Company's chargeback or cancellation policies or practices. |
| **REQUEST FOR PRODUCTION NO. 34:** All documents relating to any lawsuit alleging that the operators of Hinge have engaged in fraud or violated any federal, state, or foreign consumer protection laws. | **REQUEST FOR PRODUCTION NO. 34:** All documents relating to any lawsuit alleging that the operators of OKCupid have engaged in fraud or violated any federal, state, or foreign consumer protection laws. |
| **REQUEST FOR PRODUCTION NO. 35:** All versions of customer service telephone scripts, chat scripts or prepared responses customer support manuals, employee manuals, and other training materials. | **REQUEST FOR PRODUCTION NO. 35:** All versions of customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training materials. |

### B.  ARGUMENTS

> **1.  Defendants' Position: Discovery Related to Hinge, Humor Rainbow, and Other Dating Sites Is Not, and Could Never Be, Relevant to the FTC's Claims and Allegations Related to Match.com.**

The subpoenas served on Hinge and Humor Rainbow demand information regarding dating sites (Hinge and OkCupid) that are nowhere named or even mentioned in the operative Amended Complaint,[1] whose practices have not been challenged by the FTC in this case (or anywhere), and have nothing to do with the limited allegations that remain against Match.com. Such documents are not permissibly subject to discovery in this case because those dating platforms are irrelevant to the instant litigation against MGI and MGL, which relates solely to Match.com, and the materials sought would not likely lead to the discovery of admissible evidence. Good cause exists to prohibit this discovery.

FTC counsel admitted during the in-person meet and confer that the allegations in the Amended Complaint say nothing about Hinge or OkCupid, as those allegations are limited entirely to Match.com. Neither could the FTC describe any of the practices of these third party websites or how those practices relate to the allegations relating to Match.com. *See* Dkt. 116, Am. Compl. ¶¶ 2, 3, 54, 75, 78, 86. The FTC is not entitled to discovery regarding dating websites that are not at issue in the Amended Complaint.[2] *See, e.g.*, *Fraserside IP LLC v. Gamma Ent.,* 286 F.R.D. 416, 421-22 (N.D. Iowa 2012) (holding plaintiff could seek discovery of websites not relevant to the allegations in the Amended Complaint *only* for jurisdictional purposes, but not for liability purposes, and only to the extent that those websites were *owned* by the named defendants). For

---

[1] *See* First Amended Complaint for Permanent Injunction, Monetary Relief, Civil Penalties, and Other Relief (the "Amended Complaint"), Dkt. 116.

[2] Not only does the FTC not allege in the Amended Complaint that any MGI-affiliated entities engage in conduct similar to that at issue in the Amended Complaint, but despite repeated requests orally and in writing, the FTC has *never* explained to MGI what the alleged similar bad conduct is. The FTC is engaged only in a fishing expedition to attempt to find such conduct.

example, Request 23, seeks "[a]ll Documents related to account takeovers," even though account takeovers (on any dating site) are not mentioned in the Amended Complaint. And Request 32 seeks "[a]ll Documents relating to Customer complaints," even though complaints about Hinge or OkCupid are necessarily irrelevant to Match.com, and regardless of whether such complaints have anything to do with the type of misconduct alleged in the Amended Complaint. Hinge and Humor Rainbow do not operate, own, or control Match.com, nor do their operations of the Hinge and OkCupid dating platforms, respectively, have anything to do with Match.com.[3] The FTC cites no case to support the proposition that the FTC can burden a non-party with discovery into (or injunctive relief related to) the non-party's products, merely because the non-party's indirect parent company is a party to the lawsuit.[4] This discovery is an improper fishing expedition. *See Allstate Ins. Co. v. Plambeck*, No. 3-08-CV-0388-M, 2008 WL 5411435, at *1 (N.D. Tex. Dec. 29, 2008) (holding broad requests that go beyond individuals involved in conduct alleged in Amended Complaint "in hopes of finding other evidence that may or may not be admissible at trial would amount to nothing more than a fishing expedition"); *U.S. Risk, LLC v. Hagger*, No. 3:20-CV-00538-N, 2022 WL 209746, at *5 (N.D. Tex. Jan. 24, 2022) (explaining fishing expedition exists when information sought is not directly and logically tied to an attempt to find evidence affecting merits of case).

---

[3] In a court filing in a separate case between the FTC and MGI, the FTC admitted that OkCupid is owned and operated by Humor Rainbow, *not* MGI or MGL. J. App. at 045 ("OkCupid is an online dating platform owned and operated by Humor Rainbow, Inc.—a subsidiary of Match [Group, Inc.]").

[4] *See, e.g.*, *FTC v. Colgate-Palmolive Co.,* 380 U.S. 374 (1965) (not permitting discovery into (or injunctive relief related to) subsidiaries' products merely by virtue of suing parent or holding company); *Kraft, Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992) (same); *United States v. Conerstone Wealth Corp., Inc.*, 549 F. Supp. 811, 816-17 (N.D. Tex. 2008)(finding the likelihood the *defendant* may commit opportunities for future violations may be a consideration for granting *injunctive relief*, not that a non-party is permitted to be burdened with irrelevant discovery due to its subsidiary relationship with the defendant)

The FTC has previously relied on a string of hypotheticals to justify discovery into non-Match.com dating sites, claiming that (1) *if* MGI operates Match.com (it does not), (2) *if* MGI instructed Match.com to engage in the conduct challenged in the Amended Complaint (it did not), (3) *if* MGI also operates other dating sites that are owned and operated by other MGI subsidiaries (it does not, the FTC admitted at the meet and confer that it had no direct evidence to support that speculation, and the FTC admitted in another proceeding that OkCupid "is owned and operated by Humor Rainbow, Inc.," not MGI, J. App. at 045),[5] (4) *if* those other dating sites engage in conduct similar to that challenged in the Amended Complaint (even though the FTC made no such allegations in its Amended Complaint, and the FTC admitted at the meet and confer that it has *no* evidence that Hinge or OkCupid ever offered a "Guarantee"), *and* (5) *if* MGI instructed those other dating sites to engage in that conduct (it did not), *then* the FTC would be entitled to injunctive relief applicable to other dating sites owned and operated by subsidiaries of MGI. None of these theories are adequately alleged in the Amended Complaint (and most of them are not alleged *at all*).[6] In short, the FTC's claim that it needs discovery from Hinge and Humor Rainbow to determine whether Defendants' alleged violations are likely to recur absent restraint misses the

---

[5] The FTC pointed only to "SEC filings," but the SEC's definition of "control" is for reporting purposes is far different than the definition of "control" for purposes of determining whether MGI actually operates any dating site (it does not). Moreover, even the SEC filings that the FTC cites make clear that the dating sites are operated by MGI's "portfolio companies." *See infra* n.8. The FTC also claims that because it alleges that MGI operates Match.com (it does not), it is a "fair inference" that it also operates other dating sites, even though the FTC has no evidence to support either of those propositions.

[6] *See Cayago Americas, Inc. v. Heinen*, No. 21-CV-61035, 2022 WL 304519, at *2 (S.D. Fla. Jan. 24, 2022) (citing Fed. R. Civ P. 26(b)(1)) ("The Court finds that the requested discover is not relevant because Plaintiffs have not alleged an alter ego or veil-piercing theory of liability."); *Veterans Bros. No. 126, L.L.C. v. 7-Eleven, Inc.*, No. 16-2034, 2017 WL 345858, at *1, *7 (E.D. La. Jan. 24, 2017) ("[Third-party plaintiff] has not alleged fraud or shown that piercing the corporate veil is warranted, and therefore further discovery on the matter is not warranted either."); *Ronald A. Katz Tech. Licensing, L.P. v. Verizon Commc'ns, Inc.*, No. CIV.A. 01-5627, 2002 WL 31356302, at *2 (E.D. Pa. Oct. 16, 2002) ("[Plaintiff] has failed to make sufficient allegations to warrant discovery into an alter-ego/piercing the corporate veil claim. The Plaintiff has never alleged that piercing the corporate veils of [Defendant's] subsidiaries is necessary to prevent fraud, injustice, illegality, or criminal conduct. They merely alleged 'that [Defendant] is a well-coordinated, centrally controlled entity.'").

point because the FTC has no basis to claim that conduct on Hinge or OkCupid is in any way directed by or related to Defendants.

Given the lack of any basis for seeking discovery into these other dating sites, the subpoenas are an obvious attempt by the FTC to misuse discovery to investigate a case they did not bring. This Court should decline the FTC's "invitation to join [its] 'improper fishing expedition in support of a hypothetical claim.'" *In re Robinson*, 917 F.3d 856, 869 (5th Cir. 2019).[7]

### 2. FTC's Position: The FTC's Subpoenas Seek Relevant Evidence Concerning Central Issues in this Litigation. The Evidence Therefore Should Be Produced.

The FTC has sought documents from Defendant Match Group, Inc.'s (MGI) subsidiaries or "portfolio companies"[8] that are directly relevant to several central issues this case. Specifically, these documents are relevant to (1) the need for injunctive relief in this case, particularly the likelihood that the alleged conduct will recur which, as the Court has noted, is the governing standard for injunctive relief; and (2) the proper scope of that injunctive relief.

The FTC has requested the same information and documents from Defendant MGI itself because MGI appears to admit in public filings that it controls these entities. Nevertheless, MGI has refused to respond on the grounds that the FTC failed to establish that MGI has custody or control of the documents belonging to entities MGI purportedly controls and on other grounds

---

[7] Although this joint submission presents some (but not all) of the same issues pending in the joint submission on the FTC's motion to compel, Dkt. 147, Defendants' motion for protective order was necessary because the FTC's requests to Hinge and Humor Rainbow are even broader than those to MGI at issue in the FTC's motion to compel. Furthermore, when Defendants attempted to offer a compromise that would have resulted in the FTC receiving all of the discovery that the Court holds that the FTC is entitled to, the FTC refused to withdraw its subpoenas and also insisted that any document production be done within 5 days of the Court's order, which is unreasonable given the scope of the FTC's discovery requests.

[8] Hinge, Inc. operates the dating platform Hinge and Humor Rainbow, Inc. operates the dating platform OKCupid. Both are owned by MGI. *See* Match Group, Inc.'s February 24, 2022 Form 10-K, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/891103/000089110322000020/mtch- 20211231.htm ("Match Group, Inc., through its portfolio companies, is a leading provider of digital technologies designed to help people make meaningful connections. Our global portfolio of brands includes Tinder®, Match®, Hinge®, Meetic®, OkCupid®, Pairs™, PlentyOfFish®, OurTime®, Azar®, Hakuna™ Live, and more[.]"); "Match Group Reports Second Quarter 2022 Results," https://ir.mtch.com/news-and-events/press-releases/press-release-details/2022/Match- Group-Reports-Second-Quarter-2022-Results/default.aspx (representing same).

that are substantially similar to the objections it makes here. The requests to MGI are the subject

of the FTC's Motion to Compel, which is currently set for hearing on November 1, 2022.[9] In

good faith, and despite MGI's self-contradictory public statements about whether it controls the

platforms at issue, the FTC also has sought these documents through the subpoenas at issue here.

The requested evidence is relevant for the same reasons noted in the FTC's Motion to Compel.

      First, these requests are relevant to the issue of injunctive relief because they seek

evidence regarding whether Hinge and Humor Rainbow, MGI's subsidiaries, are engaging in

conduct similar to that alleged in the Amended Complaint. Thus, they are reasonably calculated

to obtain evidence showing that MGI's violations will likely recur absent restraint. Defendants

contends injunctive relief is unnecessary because it claims their illegal conduct has permanently

ceased.[10] However, publicly available evidence shows that MGI's dating sites—including those

operating under Hinge and Humor Rainbow[11]—are likely engaging in illegal conduct similar to

that alleged in the Amended Complaint.[12] Moreover, as this Court noted in denying in relevant

---

[9] Because these issues will be decided at the upcoming hearing, the Defendants' decision to file this motion has wasted the parties' and this Court's resources for no reason. Indeed, during the meet and confer for this Motion, the FTC offered to allow production to be held in abeyance pending the resolution of the FTC's Motion to Compel, given that the Motion addresses some of the same issues presented here. However, Defendants refused to accept that offer and filed the pending motion instead because the FTC would not withdrawal the subpoenas entirely. The FTC cannot agree to withdraw the subpoena entirely because there is no assurance that Defendants would produce the necessary documents even if the Court agrees with the FTC that the information it sought from MGI is relevant, as MGI has not conceded that these documents are within their possession, custody, or control. Doc. 147 at 25 n.51.

[10] See Doc. 122 at ¶95 (affirmative defense of mootness).

[11] Contrary to Defendants' claims, the FTC did not admit that it lacks evidence that MGI plays a role in operating dating websites technically owned by its portfolio companies. In fact, the FTC identified in response to interrogatory requests specific documents by Bates numbers showing Defendants' employees actively directing day-to-day operations of websites other than Match.com.

[12] See Doc. 116 at ¶78 (alleging that Defendants violated the FTC Act by "barr[ing] consumers who have disputed charges through their financial institutions from using paid-for Match.com subscription services"); OkCupid's Terms and Conditions, https://help.okcupid.com/hc/en-us/articles/6640690915469-Terms-Conditions ("If you initiate a chargeback or otherwise reverse a payment made with your External Service Account, OkCupid may terminate your account immediately in its sole discretion, on the basis that you have determined that you do not want a OkCupid subscription."); Hinge's Terms of Use, https://hinge.co/terms (providing the same chargeback policy). These policies provide that customer will lose account access by seeking a chargeback, and they do not state that the account access will be reinstated should the customer have its chargeback reversed.

part MGI's motion to dismiss, in considering whether conduct is likely to recur, courts consider, among other things, whether the defendant will remain in a position to reengage in violations.[13] Unlawful conduct on sites that MGI operates or controls shows that the MGI could easily engage in this same illegal conduct on those sites and is likely to restart the conduct on Match.com.

Second, the FTC's requests relate directly to the scope of the injunctive relief the Court should award. In determining the scope of an injunction against future FTC Act violations, courts assess "(1) the deliberateness and seriousness of the violation, (2) the degree of transferability of the violation to other products, and (3) any history of prior violations."[14] The United States Supreme Court has confirmed that the scope of injunctive relief may extend to cover "any product" owned by a defendant when the defendant misrepresents as to one product line.[15] The documents and information sought by the FTC's subpoenas would be relevant to MGI's willingness to engage in violative conduct, ability to transfer the violations to other websites, and history of violations by seeking documents and information related to MGI's control over these websites and to whether the websites engage in illegal conduct like that alleged in the Amended Complaint, as outward-facing evidence already suggests. Thus, whether MGI is or has engaged in these challenged practices through other dating websites it ultimately owns is directly relevant to whether an injunction should issue and, if so, the proper scope of that injunction.[16]

---

[13] *See* Doc. 86 at 11-12 (citing *United States v. Cornerstone Wealth Corp., Inc.*, 549 F. Supp. 2d 811, 816-17 (N.D. Tex. 2008)).

[14] *See Kraft, Inc. v. FTC*, 970 F.2d 311, 326 (7th Cir. 1992) (describing factors used to assess appropriateness of "fencing-in" relief) (citations omitted). *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 394 (1965) (affirming order that covered "any product" based on defendant's misrepresentation regarding one product line). Contrary to Defendants assertions, these cases do not stand for the proposition that discovery is disallowed concerning other products even technically if owned by subsidiaries. In fact, these cases stand for the FTC's ability to receive injunctive relief beyond the conduct specifically described in the complaint.

While Defendants argue their other dating sites are categorically irrelevant to this lawsuit, their argument depends on the false premise that the FTC sued a single website, Match.com, and not two Defendants that operate dozens of dating sites. The Amended Complaint, in fact, alleges that MGI and MGL have engaged in unlawful conduct, including a deceptive guarantee offer, unfair chargeback practices, and an illegal cancellation mechanism. Evidence showing that they continue to do so on other dating websites they control is obviously relevant to whether an injunction is necessary to restrain the Defendants from future unlawful conduct. Moreover, MGI's contention that the FTC can only seek injunctions prohibiting a practice conducted through a specific channel is inconsistent with the fact that courts routinely award the broader injunctions in FTC cases, as well as common sense.[17]

The cases Defendants cite are not to the contrary. *Fraserside LP LLC v. Gamma Entm't*,[18] an out-of-circuit case whose facts bear no similarity to this dispute,[19] in fact contradicts Defendants' position. In *Fraserside*, the defendants "contend[ed] that because their 'PornerBros.com' website is the only website at issue in this lawsuit, it is the only website about which Fraserside may obtain information."[20] The Court held this position was "incorrect."[21] The Court concluded that "[w]hile their PornerBros website may be the only website at issue for purposes of determining liability," other websites were subject to discovery because they were

---

[17] *See e.g.*, *id* and *Kraft, Inc. v. FTC*, 970 F.2d at 326.

[18] 286 F.R.D. 416 (N.D. Iowa 2012).

[19] For instance, discovery in *Fraserside* was limited to the defendants' other websites "*only* for jurisdictional purposes" because the defendants in that matter had filed a motion to dismiss for lack of personal jurisdiction. Before ruling, the *Fraserside* court allowed jurisdictional discovery, including of the defendants' other websites. *See* 286 F.R.D. at 417.

[20] *See id.* at 420.

[21] *Id.*

relevant for the jurisdictional issue before the court.  Likewise, Defendants' other websites are relevant to establishing the need for and scope of injunctive relief.

Defendants also cite a collection of cases concerning alter-ego liability, which are inapposite here, and none of which involve the FTC or another government agency. As Defendants know, the FTC does not seek to hold Defendants liable for the actions of their subsidiaries on an alter-ego theory; it seeks to hold Defendants liable for their roles in the alleged illegal practices on Match.com and requests injunctive relief that will prevent them from doing so again on any website. None of Defendants' cases contradict the Supreme Court authority that makes clear these facts are fairly considered by the Court and therefore subject to discovery.[22]

## II. Disputed Issue #2: Discovery Related to Humor Rainbow and Hinge's Information Unrelated to the FTC's Claims

### A. RELEVANT DISCOVERY REQUESTS

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| **REQUEST FOR PRODUCTION NO. 1:** The Company's certificate of incorporation, bylaws, rules, regulations, procedures, and any amendments to them. | **REQUEST FOR PRODUCTION NO. 1:** The Company's certificate of incorporation, bylaws, rules, regulations, procedures, and any amendments to them. |
| **REQUEST FOR PRODUCTION NO. 2:** All minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board. | **REQUEST FOR PRODUCTION NO. 2:** All minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board. |
| **REQUEST FOR PRODUCTION NO. 3:** All materially different versions of the Company's organizational charts and personnel directories. | **REQUEST FOR PRODUCTION NO. 3:** All materially different versions of the Company's organizational charts and personnel directories. |

---

[22] *See Kraft,* 970 F.2d at 326; *Colgate-Palmolive Co.*, 380 U.S. at 394.

14

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| **REQUEST FOR PRODUCTION NO. 4:** Documents sufficient to show all relationships that have existed between the Company and any other corporate entity, including Match Group, LLC, Match Group, Inc., its subsidiaries, entities with an ownership interest the Company, and any other entity that has operated Hinge. | **REQUEST FOR PRODUCTION NO. 4:** Documents sufficient to show all relationships that have existed between the Company and any other corporate entity, including Match Group, LLC, Match Group, Inc., its subsidiaries, entities with an ownership interest the Company, and any other entity that has operated OKCupid. |
| **REQUEST FOR PRODUCTION NO. 5:** Documents sufficient to show all corporate officers of the Company. | **REQUEST FOR PRODUCTION NO. 5:** Documents sufficient to show all corporate officers of the Company. |
| **REQUEST FOR PRODUCTION NO. 6:** Documents sufficient to identify all current and former employees of the Company whose responsibilities include or relate to:<br>  a. advertising or marketing;<br>  b. customer service;<br>  c. corporate governance or operations;<br>  d. general management;<br>  e. research and development; legal compliance;<br>  f. accounting or finance;<br>  g. cancellation of subscriptions;<br>  h. any Guarantee; and<br>  i. policies and practices related to chargebacks. | **REQUEST FOR PRODUCTION NO. 6:** Documents sufficient to identify all current and former employees of the Company whose responsibilities include or relate to:<br>  a. advertising or marketing;<br>  b. customer service;<br>  c. corporate governance or operations;<br>  d. general management;<br>  e. research and development; legal compliance;<br>  f. accounting or finance;<br>  g. cancellation of subscriptions;<br>  h. any Guarantee; and<br>  i. policies and practices related to chargebacks. |
| **REQUEST FOR PRODUCTION NO. 7:** Documents sufficient to show all transfers of money between the Company and Match Group, Inc., Match Group, LLC, or any corporate subsidiary or owner of any entity that has ever operated Hinge. | **REQUEST FOR PRODUCTION NO. 7:** Documents sufficient to show all transfers of money between the Company and Match Group, Inc., Match Group, LLC, or any corporate subsidiary or owner of any entity that has ever operated OKCupid. |
| **REQUEST FOR PRODUCTION NO. 8:** All Documents that tend to show that Match Group LLC operates or has operated Hinge. | **REQUEST FOR PRODUCTION NO. 8:** All Documents that tend to show that Match |

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| | Group LLC operates or has operated OKCupid. |
| **REQUEST FOR PRODUCTION NO. 9:** All Documents that tend to show that Match Group LLC operates or has operated the Company. | **REQUEST FOR PRODUCTION NO. 9:** All Documents that tend to show that Match Group LLC operates or has operated the Company. |
| **REQUEST FOR PRODUCTION NO. 10:** All Documents that tend to show that Match Group LLC operates or has operated the Hinge, Inc. | **REQUEST FOR PRODUCTION NO. 10:** All Documents that tend to show that Match Group LLC operates or has operated the Humor Rainbow, Inc. |
| **REQUEST FOR PRODUCTION NO. 12:** Documents sufficient to show the Company's quarterly and annual gross and net revenue, including profit and loss statements and accounting documents. | **REQUEST FOR PRODUCTION NO. 12:** Documents sufficient to show the Company's quarterly and annual gross and net revenue, including profit and loss statements and accounting documents. |
| **REQUEST FOR PRODUCTION NO. 13:** Documents showing the Company's projections of its gross and net revenue, including Documents provided to prospective investors. | **REQUEST FOR PRODUCTION NO. 13:** Documents showing the Company's projections of its gross and net revenue, including Documents provided to prospective investors. |
| **REQUEST FOR PRODUCTION NO. 31:** All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act. | **REQUEST FOR PRODUCTION NO. 31:** All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act. |
| **REQUEST FOR PRODUCTION NO. 35:** All versions of customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training materials. | **REQUEST FOR PRODUCTION NO. 35:** All versions of customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training materials. |

16

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| **REQUEST FOR PRODUCTION NO. 36:** All Documents referring to or relating to: <br> a. The Federal Trade Commission; <br> b. The FTC Act; <br> c. The Restore Online Shoppers' Confidence Act; <br> d. Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP"; <br> e. The Department of Justice; and <br> f. The lawfulness or unlawfulness of any practices related to any Guarantee. | **REQUEST FOR PRODUCTION NO. 36:** All Documents referring to or relating to: <br> a. The Federal Trade Commission; <br> b. The FTC Act; <br> c. The Restore Online Shoppers' Confidence Act; <br> d. Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP"; <br> e. The Department of Justice; and <br> f. The lawfulness or unlawfulness of any practices related to any Guarantee. |

## B. ARGUMENTS

### 1. Defendants' Position: Humor Rainbow and Hinge's Information Unrelated to the Conduct at Issue Is Irrelevant to the Parties and Issues In The Lawsuit.

Even if other dating sites were relevant (they are not), the only live issue remaining in this lawsuit is whether Match.com's online cancellation mechanism complies with the Restore Online Shoppers' Confidence Act's (ROSCA) requirement that the mechanism be "simple." The subpoenas seek irrelevant discovery and are overbroad because the FTC did not limit the subpoenas only to topics related to MGI, MGL, Match.com, or even the types of alleged misconduct at issue in the Amended Complaint (like cancellation mechanisms). *See* J. App. at 010-013, 026-029. Rather, the subpoenas inquire about *any* conduct on sites operated by Hinge or Humor Rainbow, regardless of whether such conduct was directed by—or at all related to—MGI, MGL, Match.com, or cancellation mechanisms.

For example, most of the requests do not mention MGI, MGL, or Match.com at all. Even worse, several of the requests have nothing to do with the types of alleged misconduct described in the Amended Complaint. Requests 1 through 5 seek Humor Rainbow and Hinge's corporate formation and operational documents, even though the FTC admits that Humor Rainbow and

Hinge are not named in the Amended Complaint. Requests 12 through 14 ask for the financial information of each company, even though it is difficult, if not impossible, to imagine how this information could be relevant to the parties' claims or defenses.[23]

"[A] lawsuit does not give a party a 'free pass to fish through all of [another party's] financial records merely to see if anything interesting turns up," whether that fishing occurs through discovery to parties or non-parties. *Ennis v. Alder Prot. Holdings,* LLC, No. 2:19-CV-512 CW, 2022 WL 4290099, at 4 (D. Utah Sept. 16, 2022) (citation omitted). Thus, the FTC cannot probe the financial, corporate formation, or other documents of entities owned by MGI simply by virtue of its lawsuit against MGI.

In its response, the FTC implicitly admitted that its existing requests are overbroad, as it purported to be willing to limit them in some way. However, the FTC refused at the meet and confer to describe what limitations it would make and said that it would be willing to do so only if Defendants withdrew their entire motion for a protective order (including the relevance objections discussed above), and the third parties also withdrew their relevance objection (which they have asserted separately). *See* J. App. at 052. Such an ultimatum can hardly be classified as a good faith offer to resolve this discovery dispute.

In addition, the FTC argues, "Defendants' requested remedy—quashing the subpoenas— is disfavored." However, the Defendants filed a motion for protective order, not a motion to quash. Further, even if the FTC narrowed the substance of the subpoenas, they would still be overbroad

---

[23] The FTC cites to *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, to support its request for Hinge and Humor Rainbow's financial information. However, in that case, "one of [the defendant's] primary defenses was that only his corporation, Commonwealth Airlines, was liable for the debt," so "production requests relating to defendant's relationship with Commonwealth Airlines were also relevant." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 (5th Cir. 1990). In contrast, Defendants are not arguing that Hinge or Humor Rainbow are liable for or in any way involved with the alleged misconduct at issue in the Amended Complaint. To the contrary, as the FTC admits, neither Hinge, Humor Rainbow, nor the dating sites Hinge and Humor Rainbow operate are accused of any wrongdoing. Thus, their finances and relationship to the Defendants are not relevant to the FTC's claims or Defendants' defenses.

by seeking discovery from Humor Rainbow and Hinge, which are entirely irrelevant because they and their dating sites have nothing to do with Match.com.[24]

### 2. FTC's Position: The FTC Subpoenas Are Narrowly Tailored. Even If They Were Overbroad, The Proper Remedy Is to Modify, Not Quash, The Subpoenas.

The subpoenas seek relevant information and have been narrowly tailored to address live issues before the Court. Regardless, Defendants' requested remedy—quashing the subpoenas—is disfavored.[25] The Court should reject Defendants' request.

First, the FTC's subpoenas narrowly seek highly probative evidence, as discussed in the preceding section. For example, the subpoenas request documents concerning any guarantees these dating sites offer and the websites' chargeback practices, which relate to Counts III (Defendants' deceptive guarantee) and IV (Defendants' unfair chargeback policy). The subpoenas further seek documents concerning financial and accounting information for MGI's subsidiaries, which are relevant to the issue of MGI's relationship with these companies and role in operating their dating sites. The Fifth Circuit has held "documents such as tax returns and cancelled checks would be relevant to show. . . how closely their financial affairs were intertwined."[26] Moreover, "[r]elevancy is to be 'construed broadly to encompass any matter that

---

[24] The cases cited by the FTC do not support its contention that the court should limit the scope of the subpoenas because the subpoenas here are facially overboard and there is no way to limit them to an appropriate scope. *See Williams v. City of Dallas,* 178 F.R.D. 103, 110 (N.D. Tex. 1998) (modifying subpoena where it was possible to make it "considerably narrower and more focused in its temporal and substantive scope," such that it sought "relevant materials"); *Wiwa v. Royal Dutch Petroleum co.,* 392 F.3d 812, 820 (5th Cir. 2004) (modifying subpoena rather than quashing because, unlike here, the subpoena "clearly requests information and documents that are relevant to Kiobel's complaint") What is more, *Tiberi v. Cigna Ins. Co*, expressly notes that "[t]hough modification of an overbroad subpoena might be preferable to quashing, courts are not required to use that lesser remedy first." *Tiberi v. Cigna Ins. Co,* 40 F.3d 110, 112 (5th Cir. 1994) (affirming the trial court's decision to "quash the overbroad subpoena with an expressed willingness to entertain thereafter a more narrowly-drawn subpoena").

[25] *See Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998) (citing *Tiberi v. Cigna Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994)) ("Modification of a subpoena is preferable, however, to quashing it."). While Defendants claim that it is not seeking to quash the subpoenas, the remedy that they have requested—that the recipients not be required to produce any documents—is effectively indistinguishable.

[26] *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484-85 (5th Cir. 1990).

bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."[27]

Likewise, the FTC is entitled to discovery on the issue of whether the illegal conduct is likely to recur and the scope of appropriate injunctive relief—both of which are central to MGI's defense and the relief sought by the FTC.[28] As noted in Section I.B.2. above, Defendants' conduct on their other websites is directly relevant to both of these issues.

Second, even if the Court concludes some of the FTC's requests are overbroad, the appropriate remedy is to modify the subpoena, not to quash it.[29] Defendants failed to discuss their concerns with the FTC's specificity prior to filing their motion, preventing the parties from narrowing the scope without court involvement. As Defendants view it, because they contend some requests are irrelevant or overbroad, the subpoenas should be quashed in their entirety. But this position is contrary to the law in the Fifth Circuit, which provides that "even if some of the . . . requests for production were irrelevant, [the party opposing production] must have a valid objection to each one in order to escape the production requirement."[30]

In support of their position that the subpoena should be quashed, Defendants identify concerns, most of which could have been remedied had Defendants bothered to properly meet and confer. While the FTC contends its requests are reasonable, the FTC would have been willing—and remains willing—to further narrow its requests.[31]

---

[27] *See Ennis v. Alder Prot. Holdings, LLC*, No. 2:19-cv-512, 2022 U.S. Dist. LEXIS 169131, *8-9 (D. Utah Sept. 16, 2022) (internal quotation marks omitted).

[28] Doc. 122 at ¶95 ("Mootness"); *id.* at 96 ("Overbroad Injunction").

[29] *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 821 (5th Cir. 2004).

[30] *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

[31] Specifically, the FTC would be willing to limit the subpoena time period to 2013 to the present. The FTC would further be willing to withdraw Requests No. 12, 13, 14, 23, and 24. The FTC would be willing to narrow its request for customer service scripts to those concerning the matters at issue in this case.

Instead of attempting to negotiate a narrower subpoena, Defendants rushed to the Court without legal support for their position. In fact, the case Defendants rely on in their overbreadth argument, *Wiwa*, explicitly rejects their position.[32] In that case, the Fifth Circuit found the relevant subpoenas to be overbroad but made the common-sense ruling that the appropriate remedy was not to quash the subpoenas, but instead to order production with appropriate limitations to the document requests. As the *Wiwa* Court stated, "[g]enerally, modification of a subpoena is preferable to quashing it outright."[33]

## III.     Disputed Issue #3: Discovery Related to Chargeback and Guarantee Practices

### A.  RELEVANT DISCOVERY REQUESTS

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| **REQUEST FOR PRODUCTION NO. 6:** Documents sufficient to identify all current and former employees of the Company whose responsibilities include or relate to: <br> a. advertising or marketing; <br> b. customer service; <br> c. corporate governance or operations; <br> d. general management; <br> e. research and development; legal compliance; <br> f. accounting or finance; <br> g. cancellation of subscriptions; <br> h. any Guarantee; and <br> i. policies and practices related to chargebacks. | **REQUEST FOR PRODUCTION NO. 6:** Documents sufficient to identify all current and former employees of the Company whose responsibilities include or relate to: <br> a. advertising or marketing; <br> b. customer service; <br> c. corporate governance or operations; <br> d. general management; <br> e. research and development; legal compliance; <br> f. accounting or finance; <br> g. cancellation of subscriptions; <br> h. any Guarantee; and <br> i. policies and practices related to chargebacks. |
| **REQUEST FOR PRODUCTION NO. 14:** Documents sufficient to show quarterly and annual revenue from: <br> a. Subscriptions to Hinge; | **REQUEST FOR PRODUCTION NO. 14:** Documents sufficient to show quarterly and annual revenue from: <br> a. Subscriptions to OKCupid; |

---

[32] *Wiwa*, 392 F.3d at 821.

[33] *Id.* at 818.

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| b.   Subscriptions to Hinge that included or were subject to a Guarantee; and<br>c.   Payments from accounts on Hinge that had been automatically renewed. | b.   Subscriptions to OKCupid that included or were subject to a Guarantee; and<br>c.   Payments from accounts on OKCupid that had been automatically renewed. |
| **REQUEST FOR PRODUCTION NO. 15:** Each unique version of all Ads related to any Guarantee. | **REQUEST FOR PRODUCTION NO. 15:** Each unique version of all Ads related to any Guarantee. |
| **REQUEST FOR PRODUCTION NO. 17:** Documents sufficient to show each unique disclosure of policies concerning terminating subscriptions in response to a Customer Chargeback. | **REQUEST FOR PRODUCTION NO. 17:** Documents sufficient to show each unique disclosure of policies concerning terminating subscriptions in response to a Customer Chargeback. |
| **REQUEST FOR PRODUCTION NO. 19:** Representative copies of all visual content that Hinge or the Company has shown to Customers concerning any Guarantee, including concerning:<br>a.   Advertisements relating to Subscriptions subject to any Guarantee;<br>b.   Customer "progress" with regard to the any Guarantee; and<br>c.   Redeeming a Guarantee or receiving a Guarantee Extension. | **REQUEST FOR PRODUCTION NO. 19:** Representative copies of all visual content that OKCupid or the Company has shown to Customers concerning any Guarantee, including concerning:<br>a.   Advertisements relating to Subscriptions subject to any Guarantee;<br>b.   Customer "progress" with regard to the any Guarantee; and<br>c.   Redeeming a Guarantee or receiving a Guarantee Extension. |
| **REQUEST FOR PRODUCTION NO. 25:** All communications relating to:<br>a.   Guarantees;<br>b.   Cancellation of paid subscriptions by Customers;<br>c.   Customer Chargebacks; and<br>d.   Denial of Customers' access to accounts in response to chargebacks. | **REQUEST FOR PRODUCTION NO. 25:** All communications relating to:<br>a.   Guarantees;<br>b.   Cancellation of paid subscriptions by Customers;<br>c.   Customer Chargebacks;<br>d.   Denial of Customers' access to accounts in response to chargebacks; and |

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| | e.  The marketing or advertising of Incognito Mode, OKCupid Premium, or Profile Boosts on OKCupid. |
| **REQUEST FOR PRODUCTION NO. 26:** All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Guarantees; Chargeback policies; Ads relating to subscription renewal or cancellation or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups. | **REQUEST FOR PRODUCTION NO. 26:** All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Guarantees; Chargeback policies; Ads relating to subscription renewal or cancellation or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups. |
| **REQUEST FOR PRODUCTION NO. 30:** All Documents relating to the policies and practices of the Company regarding the following: a.  any Guarantees; b.  account cancellation; c.  Availability of customer support services; d.  availability of refunds; e.  Customer Chargebacks; f.  Customer access to accounts; and g.  compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act. | **REQUEST FOR PRODUCTION NO. 30:** All Documents relating to the policies and practices of the Company regarding the following: a.  any Guarantees; b.  account cancellation; c.  Availability of customer support services; d.  availability of refunds; e.  Customer Chargebacks; f.  Customer access to accounts; and g.  compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act. |
| **REQUEST FOR PRODUCTION NO. 31:** All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act. | **REQUEST FOR PRODUCTION NO. 31:** All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act. |
| **REQUEST FOR PRODUCTION NO. 33:** All communications with Customers relating to any Guarantee or the Company's | **REQUEST FOR PRODUCTION NO. 33:** All communications with Customers relating to any Guarantee or the Company's |

| Discovery Requests to Hinge, Inc. | Discovery Requests to Humor Rainbow, Inc. |
|---|---|
| chargeback or cancellation policies or practices. | chargeback or cancellation policies or practices. |
| **REQUEST FOR PRODUCTION NO. 34:** All documents relating to any lawsuit alleging that the operators of Hinge have engaged in fraud or violated any federal, state, or foreign consumer protection laws. | **REQUEST FOR PRODUCTION NO. 34:** All documents relating to any lawsuit alleging that the operators of OKCupid have engaged in fraud or violated any federal, state, or foreign consumer protection laws. |
| **REQUEST FOR PRODUCTION NO. 36:** All Documents referring to or relating to: <br> a. The Federal Trade Commission; <br> b. The FTC Act; <br> c. The Restore Online Shoppers' Confidence Act; <br> d. Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP"; <br> e. The Department of Justice; and <br> f. The lawfulness or unlawfulness of any practices related to any Guarantee. | **REQUEST FOR PRODUCTION NO. 36:** All Documents referring to or relating to: <br> a. The Federal Trade Commission; <br> b. The FTC Act; <br> c. The Restore Online Shoppers' Confidence Act; <br> d. Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP"; <br> e. The Department of Justice; and <br> f. The lawfulness or unlawfulness of any practices related to any Guarantee. |

## B. ARGUMENTS

### 1. Defendants' Position: Humor Rainbow and Hinge Do Not Have Relevant Information Regarding the Chargeback and Guarantee Practices At Issue in the Amended Complaint

The subpoenas are also improper because the FTC continues to seek discovery related to the guarantee and chargeback issues, even though such policies were permanently discontinued in 2019 and will never be reinstated. *See* Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146. Despite MGL and MGI's repeated commitments regarding permanent cessation of the guarantee and chargeback policies, the FTC has continued to harass the Defendants—and now third parties—with overly burdensome discovery requests regarding such

discontinued practices.[34] While seeking discovery about Match.com's policies regarding these items is improper and unnecessary for the reasons explained in the pending joint submission, Dkt. 147 at 5-11, seeking discovery about *other dating sites'* policies is even further beyond the scope of permissible discovery. For example, Requests 15, 17, 19, 25a, 25c, 25d, 30a, 30e, and portions of other Requests demand documents about "Guarantee"[35] and "Chargeback" policies. J. App. at 011-012, 027-028. None of these requests are relevant to the only remaining live question— cancellation methods on Match.com—because the requests have nothing to do with Match.com, a site owned or operated by either Defendant, *or* cancellation.[36] In addition, because neither Hinge nor Humor Rainbow ever had anything to do with those Match.com chargeback, guarantee, or cancellation practices, the decision to discontinue them, or whether the practices would ever resume, no discovery from those entities is needed or could be relevant to those Counts.

Further, the FTC admits that it has no evidence that Hinge or OkCupid ever offered any type of "Guarantee." Instead, the FTC merely wants to go on a fishing expedition to find out *whether* either dating site ever offered a Guarantee, with no explanation as to how that is relevant to Match.com's (permanently discontinued) Guarantee. The FTC also has no evidence that Hinge or OkCupid ever implemented the challenged "Chargeback" policy at issue in the Amended Complaint, other than pointing to similar (standard) language in the terms of use and purported consumer complaints about other websites (which the FTC has refused to produce). When asked

---

[34] Defendants even agreed to produce documents sufficient to show that the conduct at issue in Counts III and IV has permanently ceased as a factual matter, and MGL answered interrogatories under oath describing its current chargeback policy. *See* Dkt. 147 at 4.

[35] It is unclear what "Guarantee" the FTC is asking about, since it has never identified any alleged Guarantee offered on the Hinge or OkCupid platforms.

[36] The case cited by the FTC is inapposite because it is fact-intensive and did not involve sworn stipulations effectively equivalent to the injunction that the opposing party could receive if successful at trial. *See FTC v. Neora LLC*, 552 F. Supp. 3d 628, 638 (N.D. Tex. 2021) (involving defendant who alleged practice was discontinued but not a claim in which party provided stipulation).

for any such evidence in formal discovery, *see* J. App. at 038, and at the meet and confer, the FTC refused to identify or provide any. Even if Hinge or OkCupid ever implemented such policies, these dating sites are separately owned and operated and would have no relevance to Match.com. Thus, such requests are wholly improper as the role of discovery "is to find support for properly pleaded claims, not to find the claims themselves." *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009). In sum, the FTC has no basis to seek such irrelevant and burdensome discovery. *See* Fed. R. Civ. P. 11; Fed. R. Civ. P. 26(g).

### 2. FTC's Position: Defendants Cannot Unilaterally Foreclose Discovery on a Contested Issue

The subpoenas seek discovery into whether Defendants have or are continuing to engage in illegal conduct on their other platforms similar to the conduct alleged in Counts III and IV. As explained above, this discovery is obviously relevant to whether those practices are likely to recur and the scope of an injunction needed to restrain Defendants from future violations on their dating websites.

Defendants argue that discovery need not be permitted on these issues because they have, according to them, stopped the violations on Match.com. But the FTC is entitled to discovery concerning live counts and Defendants' defenses—not merely the limited issues Defendants claim should be litigated. Although Defendants contend that the only live issue is whether Match.com offers simple cancellation mechanisms, this Court's order on their motion to dismiss clearly held that Counts III and IV remain viable and subject to discovery. In doing so, the Court held, "simply because the Complaint contains allegations of past violations does not mean that the FTC has not sufficiently alleged that similar violations are likely to reoccur."[37]

---

[37] Doc. 86 (quoting *FTC v. Neora LLC*, 552 F. Supp. 3d 628, *7 (N.D. Tex. 2021) (Lynn, CJ.)).

Ignoring this Court's order, MGI has unilaterally declared these issues "moot" and refused to honor its discovery obligations.[38] Contrary to MGI's position, this Court will need to evaluate what role MGI had with respect to the illegal practices at issue. The subpoenas to Humor Rainbow, Inc. and Hinge, Inc. seek information answering precisely these questions. They are therefore proper discovery, and the Court should deny Defendants' Motion.

## IV.   Disputed Issue #4: Discovery Requests Without a Temporal Scope

### A.  RELEVANT DISCOVERY REQUESTS

This dispute pertains to all discovery requests contained in the subpoenas to Humor Rainbow and Hinge, Request Nos. 1-36.

### 1.   Defendants' Position: Every Request for Production to Humor Rainbow and Hinge Improperly Fails To Include A Temporal Scope

Even if the subpoenas sought remotely relevant information (and they do not), the FTC's discovery requests to Hinge and Humor Rainbow are facially overbroad because they are not limited temporally to an appropriate period. Courts routinely find that requests to nonparties unlimited in time are impermissibly burdensome. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (finding a discovery request to a non-party was overbroad because it failed to provide a time frame); *In re O'Hare*, No. MISC. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012) (finding a non-party subpoena facially overbroad as "[t]he period covered by the requests [was] unlimited"); *McComas v. Market,* No. 16-217-WOB-CJS, 2020 WL 12698021, at *13 (E.D. Ky. Nov. 30, 2020) (holding subpoena was "overbroad and not tailored to

---

[38] In support of this position, Defendants filed a so-called "Verified Stipulation" in which it expresses a supposed "sincere commitment" to never engage in the illegal conduct alleged in Counts III and IV again. Defendants are the only party to this stipulation, which merely denies the FTC's allegations. It is, of course, no stipulation at all. *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "stipulation" as a "voluntary agreement between opposing parties concerning some relevant point"). It should therefore be given no more weight than Defendants' Answers denying the FTC's allegations, and it certainly does not justify Defendants' efforts to thwart discovery or this Court's rulings.

a particular purpose" as it sought information "without limit to time frame"). Here, the subpoenas are devoid of any time limitation whatsoever and are thus overbroad and improper on their face.

In their response, the FTC belatedly offered to limit the subpoena time period to 2013 to the present, but at the meet and confer, the FTC stated that it would be willing to do so only if Defendants withdrew the entirety of their motion for protective order. *See* J. App. at 052. But Defendants are not willing to waive their other well-founded arguments just so the FTC will even attempt to comply with the Federal Rules. Moreover, the FTC's proposed time period of 2013 to the present—covering nearly 10 years—is still unreasonable. The FTC sued MGI in September 2019, and the statute of limitations for civil penalties is 5 years, *see* 28 U.S.C. § 2462, so anything prior to September 2014 is wholly irrelevant.

> **2.     FTC's Position: The FTC Informed Defendants and the Subpoena Recipients That It Is Willing to Limit the Time Frame to Resolve this Dispute.**

As noted above in II.B.2, the FTC is willing to limit the subpoena's time period to 2013 to the present to resolve this dispute. The FTC has communicated its willingness to negotiate the scope of these requests to both Defendants and the recipients. Defendants did not meet and confer on this issue nor provide the FTC the ability to resolve this concern before filing their Motion. Regardless, Defendants' concern is insufficient to merit quashing this subpoena. Rather, the appropriate remedy for an overbroad request is to modify the requests at issue, not quash the subpoena in its entirety.[39]

## V.     Disputed issue #5: Requests Seeking "All" Documents

### A.   RELEVANT DISCOVERY REQUESTS

This dispute pertains to Request Nos. 2, 3, 8-11, and 22-36 contained in the subpoenas to Humor Rainbow and Hinge.

---

[39] *See Wiwa*, 392 F.3d 818.

### B. ARGUMENTS

1. **Defendants' Position: The Subpoenas Are Facially Overbroad and Improper As They Seek "All" Documents Regardless of Subject Matter.**

Many of the subpoenas' requests are overbroad insofar as they purport to seek "all documents" on a variety of topics, such as all documents related to "Customer complaints" and "customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training manuals," with no limitation as to subject matter. J. App. at 010-013, 026-029. Perhaps more egregious are the subpoenas' requests for all documents relating to "any lawsuit alleging" that the operators of OkCupid or Hinge "engaged in fraud or violated any federal, state, or foreign consumer protection laws," and all documents related to the FTC, the FTC Act, ROSCA, or the Department of Justice, among other things. J. App. at 013, 029. (emphasis added). Even though this case is limited to the live issue of whether Match.com offers a "simple" cancellation mechanism, the subpoenas request everything under the sun from Humor Rainbow and Hinge—non-parties that are not operated by either Defendant and not otherwise related to the Match.com practices challenged in the Amended Complaint. The requests are so preposterously overbroad that they can only be intended to harass. *See, e.g., Starrett v. Lockeed Martin Corp.*, No. 3:17-CV-00988-D-BT, 2018 WL 10345320, at *1 (N.D. Tex. Mar. 9, 2018) (finding that "discovery requests are overly broad and harassing" where they sought "identification of 'all staff or employees,' and 'any and all records of employment'"). The subpoenas' impermissible and harassing overbreadth further demonstrates that the Court should grant the Motion.

Again, the FTC's purported willingness to narrow the scope of its requests is a façade given that the FTC offered to do so only if Defendants withdrew their entire Motion for Protective Order.

2. **FTC's Position: The FTC's Requests Seek Relevant Information.**

The FTC has sought information to prove both the need for an injunction and the proper scope of that injunction. To establish this, the FTC has sought information concerning Defendants' conduct on their other websites, particularly concerning issues similar to the conduct alleged in Counts III-V. In mischaracterizing the FTC subpoena requests, Defendants once again forward their baseless argument that the only remaining count in this case is Count V, concerning Match.com's illegal cancellation process. As discussed in the preceding sections, the Court denied MGI's request to dismiss Counts III and IV. Although the Defendants contend these issues need not be litigated, the Court has already expressly disagreed.

Further, while the FTC contends its requests were appropriate in scope, the FTC advised Defendants that to resolve this dispute, it would be willing to withdraw Requests No. 12, 13, 14, 23, and 24 and to limit its request for customer service scripts to those concerning three live counts in this case. The FTC would likewise be willing to limit its requests for complaints and lawsuits to conduct similar to that in the Amended Complaint.[40]

[signature page to follow]

---

[40] The FTC notes that the single case Defendants reference fails to support their request to quash the FTC's subpoenas in their entirety. Specifically, Defendants cite *Starrett v. Lockheed Martin Corp.*, No. 3:17-cv-00988, 2018 WL 10345320, at *1 (N.D. Tex. Mar. 9, 2018), a case concerning a pro se lawsuit filed against Lockheed Martin and the United States Army, among others, where the plaintiff alleged a conspiracy between the defendants to remotely control his brain and body. Plaintiff sought "alleged classified national security information" and identification of "all staff or employees" of the United States Department of Defense, a defendant in that action. *See id.* Starrett's facts are, of course, drastically different from this case and do not support Defendants' request to quash the FTC's subpoenas in their entirety.

Dated:  October 11, 2022

/s/  Angela C. Zambrano
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and*
*Match Group, LLC*

Respectfully submitted,

/s/  Reid Tepfer
M. Hasan Aijaz
Reid Tepfer
Erica Rollins Hilliard
Sarah Zuckerman (admitted *pro hac vice*)
John R. O'Gorman (admitted *pro hac vice*)
Virginia Bar No. 80073 (Aijaz)
Texas Bar No. 24079444 (Tepfer)
Mississippi Bar No. 104244 (Hilliard)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9386 (Aijaz)
T: (214) 979-9395 (Tepfer)
T: (214) 979-9379 (Hilliard)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
F: (214) 953-3079
maijaz@ftc.gov;
rtepfer@ftc.gov;
ehilliard@ftc.gov
szuckerman@ftc.gov;
jogorman@ftc.gov

*Attorneys for the FTC*