**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>             Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>             Defendants. | Case No. 3:19-cv-02281-K |

**JOINT APPENDIX IN SUPPORT OF JOINT SUBMISSION ON DEFENDANTS
MATCH GROUP, INC. AND MATCH GROUP, LLC'S MOTION FOR A
PROTECTIVE ORDER**

Defendants Match Group, Inc. ("MGI") and Match Group, LLC ("MGL") and Plaintiff

Federal Trade Commission ("FTC") submit this Joint Appendix in support of the Joint Submission

on MGI and MGL's Motion for a Protective Order.

| Ex. | Description | App. Page(s) |
|:---:|---|:---:|
| 1 | Plaintiff Federal Trade Commission's Subpoena to Hinge, Inc. | APP 001-016 |
| 2 | Plaintiff Federal Trade Commission's Subpoena to Humor Rainbow, Inc. | APP 017-032 |
| 3 | Defendant Match Group, Inc.'s First Requests for Production of Documents and Things to Plaintiff Federal Trade Commission | APP 033-041 |
| 4 | Federal Trade Commission's Opposition to Respondent's Motion for Limited Discovery and To Supplement the Record | APP 042-051 |
| 5 | Email Exchange Between FTC and Counsel for MGI and MGL, October 7, 2022 | APP 052-054 |

Dated:  October 11, 2022          Respectfully submitted,

*/s/ Angela C. Zambrano*           */s/ Reid Tepfer*

Angela C. Zambrano                M. Hasan Aijaz
State Bar No. 24003157           Reid Tepfer
angela.zambrano@sidley.com     Erica Rollins Hilliard

Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and
Match Group, LLC*

Sarah Zuckerman (admitted *pro hac vice*)
John R. O'Gorman (admitted *pro hac vice*)
Virginia Bar No. 80073 (Aijaz)
Texas Bar No. 24079444 (Tepfer)
Mississippi Bar No. 104244 (Hilliard)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9386 (Aijaz)
T: (214) 979-9395 (Tepfer)
T: (214) 979-9379 (Hilliard)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
F: (214) 953-3079
maijaz@ftc.gov;
rtepfer@ftc.gov;
ehilliard@ftc.gov
szuckerman@ftc.gov;
jogorman@ftc.gov

*Attorneys for the FTC*

**CT Corporation**
**Service of Process Notification**
09/16/2022
CT Log Number 542319701

## Service of Process Transmittal Summary

**TO:**  Laurie Braddock
Match
8750 N CENTRAL EXPY
DALLAS, TX 75231-6436

**RE:**  **Process Served in Delaware**

**FOR:**  Hinge, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | FEDERAL TRADE COMMISSION vs. MATCH GROUP, INC. |
| **CASE #:** | 319CV02281K |
| **NATURE OF ACTION:** | Subpoena - Business records |
| **PROCESS SERVED ON:** | The Corporation Trust Company, Wilmington, DE |
| **DATE/METHOD OF SERVICE:** | By Process Server on 09/16/2022 at 12:33 |
| **JURISDICTION SERVED:** | Delaware |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air |
| | Image SOP |
| | Email Notification,  Laurie Braddock  laurie.braddock@match.com |
| | Email Notification,  Norma Rivera  norma.rivera@match.com |
| | Email Notification,  Jeanette Teckman  jeanette.teckman@match.com |
| | Email Notification,  Nathan Lyons  nathan.lyons@match.com |
| **REGISTERED AGENT CONTACT:** | The Corporation Trust Company |
| | 1209 Orange Street |
| | Wilmington, DE 19801 |
| | 866-401-8252 |
| | EastTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

APP 001



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Fri, Sep 16, 2022
**Server Name:**                             Blue Marble

| Entity Served | HINGE, INC. |
|---|---|
| Case Number | 3:19-cv-02281-K |
| Jurisdiction | DE |

| Inserts | | |
|---|---|---|
| | | |



**APP 002**

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

| | |
|---|---|
| FEDERAL TRADE COMMISSION | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   3:19-cv-02281-K |
| MATCH GROUP, INC., et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Hinge, Inc.
c/o The Corporation Trust Co., Corporation Trust Center, 1209 Orange St., Wilmington, DC 19801

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit "A," attached

| Place: Federal Trade Commission | Date and Time: |
|---|---|
| 1999 Bryan Street, Suite 2150 Dallas, TX 75201 | 10/01/2022 5:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____09/15/2022_____

CLERK OF COURT

OR

_____                              /s/ Reid Tepfer
*Signature of Clerk or Deputy Clerk*                           *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  _____Plaintiff_____
Federal Trade Commission _____ , who issues or requests this subpoena, are:

Reid Tepfer, Federal Trade Commission, 1999 Bryan Street, Suite 2150, Dallas TX 75201, rtepfer@ftc.gov, (214) 979-9395

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**APP 003**

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:19-cv-02281-K

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____                _____
                                                *Server's signature*

                                       _____
                                                *Printed name and title*

                                       _____
                                                *Server's address*

Additional information regarding attempted service, etc.:

**APP 004**

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**
**Subpoena to Hinge, Inc.**
**In Case No. 3:19-cv-02281-K (N.D. Tex.)**

## INSTRUCTIONS

**1.    Definitions and Instructions:** Please review carefully the Definitions and Instructions that provided herein, which provide important information regarding compliance with this Subpoena.

**2.    Scope of Search:** This Subpoena covers documents and information in your possession or under your actual or constructive custody or control including, but not limited to, documents and information in the possession, custody, or control of your attorneys, accountants, directors, officers, employees, and other agents and consultants, whether or not such documents and information were received from or disseminated to any person or entity.

**3.    Document Identification:** Documents that may be responsive to more than one specification of this Subpoena need not be submitted more than once; however, your response should indicate, for each document submitted, each specification to which the document is responsive. If any documents responsive to this Subpoena have been previously supplied to the Commission, you may comply with this Subpoena by identifying the document(s) previously provided and the date of submission. Documents should be produced in the order in which they appear in your files or as electronically stored and without being manipulated or otherwise rearranged; if documents are removed from their original folders, binders, covers, containers, or electronic source in order to be produced, then the documents shall be identified in a manner so as to clearly specify the folder, binder, cover, container, or electronic media or file paths from which such documents came. In addition, number by page (or file, for those documents produced in native electronic format) all documents in your submission, preferably with a unique Bates identifier, and indicate the total number of documents in your submission.

**4.    Production of Copies:** Unless otherwise stated, legible photocopies (or electronically rendered images or digital copies of native electronic files) may be submitted in lieu of original documents, provided that the originals are retained in their state at the time of receipt of this Subpoena. Further, copies of originals may be submitted in lieu of originals only if they are true, correct, and complete copies of the original documents; provided, however, that submission of a copy shall constitute a waiver of any claim as to the authenticity of the copy should it be necessary to introduce such copy into evidence in any Commission proceeding or court of law; and provided further that you shall retain the original documents and produce them to Commission staff upon request. Copies of marketing materials and advertisements shall be produced

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HINGE, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

APP 006

in color, and copies of other materials shall be produced in color if necessary to interpret them or render them intelligible.

5.      **Electronically Stored Information**:  For specifications requesting production of Documents, see the attached FTC Bureau of Consumer Protection Production Requirements ("Production Requirements"), which detail all requirements for the production of electronically stored information to the FTC.  You must discuss issues relating to the production of electronically stored information with FTC staff **prior to** production.

6.      **Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI")**:  For specifications requesting production of Documents or answers to written interrogatories, if any responsive materials contain Sensitive PII or SHI, please contact FTC counsel before producing those materials to discuss whether there are steps You can take to minimize the amount of Sensitive PII or SHI You produce, and how to securely transmit such information to the FTC.

Sensitive PII includes an individual's Social Security number; an individual's biometric data; and an individual's name, address, or phone number in combination with one or more of the following:  date of birth, driver's license or state identification number (or foreign country equivalent), military identification number, passport number, financial account number, credit card number, or debit card number.  Biometric data includes biometric identifiers, such as fingerprints or retina scans, but does not include photographs (with the exception of photographs and corresponding analyses used or maintained in connection with facial recognition software) or voice recordings and signatures (with the exception of those stored in a database and used to verify a person's identity).  SHI includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HINGE, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

## DEFINITIONS

The following definitions apply to this Subpoena:

D-1.    **"Hinge"** means the dating platform marketed using the brand name "Hinge," available at Hinge.co, on the Apple App Store, or Google Play app store. The term shall include any descriptor used by Hinge in its business practices.

D-2.    **"Company"** or **"You"** means the entity responsible for Hinge's operation and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing.

D-3.    **"Chargeback"** means a transaction that is returned as a financial liability to an acquirer by a card issuer, usually because of a disputed transaction. The acquirer may then return or "charge back" the transaction to the merchant.

D-4.    **"Customer"** or **"Customers"** means any individual or individuals who have maintained an account on Hinge, regardless of whether such individual or individuals paid for those accounts or not.

D-5.    **"Document"** means the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, taped, recorded, filmed, punched, computer-stored, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including any advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book, or label. "Document" shall also include Electronically Stored Information

D-6.    **"Identify"** or **"the Identity of"** requires identification of (a) natural persons by name, title, present business affiliation, present business address, telephone number, and email address or, if a present business affiliation or present business address is not known, the last known business and home addresses; and (b) businesses or other organizations by name, address, and the identities of Your contact persons at the business or organization.

D-7.    **"Advertisement"** or **"Advertising"** or **"Ad"** means any written or verbal statement, illustration, or depiction that promotes the sale of a good or service or is designed to increase consumer interest in a brand, good, or service. Advertising media includes, but is not limited to: packaging and labeling; promotional materials; print; television; radio; and Internet, social media, and other digital content.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HINGE, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

D-8.   **"Match Group, Inc."** means Match Group, Inc, a Delaware corporation and party to this litigation.

D-9.   **"Match Group, LLC"** means Match Group, LLC and includes operations under assumed names, prior names, and predecessor entities, including Match.com, LLC.

D-10.  **Subscriber"** means any user who has had either a paid account or a "free trial" account on any website owned or operated by Hinge, Inc.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HINGE, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

## DEMAND FOR PRODUCTION

1. The Company's certificate of incorporation, bylaws, rules, regulations, procedures, and any amendments to them.

2. All minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board.

3. All materially different versions of the Company's organizational charts and personnel directories.

4. Documents sufficient to show all relationships that have existed between the Company and any other corporate entity, including Match Group, LLC, Match Group, Inc., its subsidiaries, entities with an ownership interest the Company, and any other entity that has operated Hinge.

5. Documents sufficient to show all corporate officers of the Company.

6. Documents sufficient to identify all current and former employees of the Company whose responsibilities include or relate to:
   a. advertising or marketing;
   b. customer service;
   c. corporate governance or operations;
   d. general management;
   e. research and development;
   f. legal compliance;
   g. accounting or finance;
   h. cancellation of subscriptions;
   i. any Guarantee; and
   j. policies and practices related to chargebacks.

7. Documents sufficient to show all transfers of money between the Company and Match Group, Inc., Match Group, LLC, or any corporate subsidiary or owner of any entity that has ever operated Hinge.

8. All Documents that tend to show that Match Group LLC operates or has operated Hinge.

9. All Documents that tend to show that Match Group LLC operates or has operated the Company.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HINGE, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

10. All Documents that tend to show that Match Group LLC operates or has operated Hinge, Inc.

11. All Documents that tend to show that Match Group Inc. does not or has not operated Hinge, the Company, or Hinge, Inc.

12. Documents sufficient to show the Company's quarterly and annual gross and net revenue, including profit and loss statements and accounting documents.

13. Documents showing the Company's projections of its gross and net revenue, including Documents provided to prospective investors.

14. Documents sufficient to show quarterly and annual revenue from:
    a. Subscriptions to Hinge;
    b. Subscriptions to Hinge that included or were subject to a Guarantee; and
    c. Payments from accounts on Hinge that had been automatically renewed.

15. Each unique version of all Ads related to any Guarantee.

16. Each unique version of all Ads related to cancellation of a Hinge subscription, including Ads related to the ease or availability of cancellation.

17. Documents sufficient to show each unique disclosure of policies concerning terminating subscriptions in response to a Customer Chargeback.

18. Representative copies of all visual content shown to Customers during the process of purchasing or signing up for a paid subscription.

19. Representative copies of all visual content that Hinge or the Company has shown to Customers concerning any Guarantee, including concerning:
    a. Advertisements relating to Subscriptions subject to any Guarantee;
    b. Customer "progress" with regard to the any Guarantee; and
    c. Redeeming a Guarantee or receiving a Guarantee Extension.

20. Representative copies of all visual content, including website pages and mobile application screens, that Customers have had to view to cancel their subscriptions.

21. Representative copies of all visual content, including website pages and mobile application screens, that the Company has shown to Customers concerning the available means of cancelling their subscriptions.

22. All documents related to any change or contemplated change to any means of subscription cancellation available to Customers.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HINGE, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

23. All documents related to account takeovers.

24. All documents related to software flaws that prevented Customers from:
    a. logging into their accounts;
    b. using their accounts;
    c. resetting their password; or
    d. canceling their accounts.

25. All communications relating to:
    a. Guarantees;
    b. Cancellation of paid subscriptions by Customers;
    c. Customer Chargebacks; and
    d. Denial of Customers' access to accounts in response to chargebacks.

26. All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Guarantees; Chargeback policies; Ads relating to subscription renewal or cancellation or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups.

27. All Documents, including internal and third-party studies or audits, relating to Customers' efforts to cancel their subscriptions to Hinge.

28. All Documents that show how many Customers attempt to cancel their Hinge subscription and are successful or unsuccessful in doing so.

29. All Documents that show what percentage of Customers attempt to cancel their Hinge subscription are unsuccessful in doing so.

30. All Documents relating to the policies and practices of the Company regarding the following:
    a. any Guarantees;
    b. account cancellation;
    c. Availability of customer support services;
    d. availability of refunds;
    e. Customer Chargebacks;
    f. Customer access to accounts; and
    g. compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HINGE, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

7

31. All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

32. All Documents relating to Customer complaints.

33. All communications with Customers relating to any Guarantee or the Company's chargeback or cancellation policies or practices.

34. All documents relating to any lawsuit alleging that the operators of Hinge have engaged in fraud or violated any federal, state, or foreign consumer protection laws.

35. All versions of customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training materials.

36. All Documents referring to or relating to:
    a.  The Federal Trade Commission;
    b.  The FTC Act;
    c.  The Restore Online Shoppers' Confidence Act;
    d.  Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP";
    e.  The Department of Justice; and
    f.  The lawfulness or unlawfulness of any practices related to any Guarantee.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HINGE, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

**Federal Trade Commission - Bureau of Consumer Protection**
<u>**Production Requirements**</u>
Revised July 2020

In producing information to the FTC, comply with the following requirements, unless the FTC agrees otherwise. If you have questions about these requirements, please contact FTC counsel before production.

<u>**Production Format**</u>

1. **General Format**: Provide load-ready electronic productions with:

   a. A delimited data load file (.DAT) containing a line for every document, unique id number for every document (DocID), metadata fields, and native file links where applicable; and

   b. A document level text file, named for the DocID, containing the text of each produced document.

   Do not produce corresponding image renderings (e.g., TIFF or JPEG) for files in native format unless the FTC requests them. If the FTC requests corresponding image renderings, provide an Opticon image load file (.OPT) containing a line for every image file.

2. **Electronically Stored Information (ESI)**: Documents stored in electronic format in the ordinary course of business must be produced in the following format:

   a. For ESI other than the categories below, submit in native format with all metadata and either document level extracted text or Optical Character Recognition (OCR). Do not produce corresponding image renderings (e.g., TIFF or JPEG) for files in native format unless the FTC requests them. If the FTC requests corresponding image renderings, they should be converted to Group IV, 300 DPI, single-page TIFF (or color JPEG images when necessary to interpret the contents or render them intelligible.)

   b. For Microsoft Excel, Access, or PowerPoint files, submit in native format with extracted text and metadata. Data compilations in Excel spreadsheets or delimited text formats must contain all underlying data, formulas, and algorithms without redaction.

   c. For other spreadsheet, database, presentation, or multimedia formats; instant messages; or proprietary applications, discuss the production format with FTC counsel.

3. **Hard Copy Documents**: Documents stored in hard copy in the ordinary course of business must be scanned and submitted as either one multi-page pdf per document or as 300 DPI single page TIFFs (or color JPEGs when necessary to interpret the contents or render them intelligible), with corresponding document-level OCR text and logical document determination in an accompanying load file.

4. **Document Identification**: Provide a unique DocID for each hard copy or electronic document, consisting of a prefix and a consistent number of numerals using leading zeros. Do not use a space to separate the prefix from numbers.

APP 014

5. **Attachments**: Preserve the parent/child relationship by producing attachments as separate documents, numbering them consecutively to the parent email, and including a reference to all attachments.

6. **Metadata Production**: For each document submitted electronically, include the standard metadata fields listed below in a standard delimited data load file. The first line of the data load file shall include the field names. <u>Submit date and time data in separate fields</u>. Use these standard Concordance delimiters in delimited data load files:

| Description | Symbol | ASCII Character |
|---|---|---|
| Field Separator | ¶ | 20 |
| Quote Character | þ | 254 |
| Multi Entry delimiter | ® | 174 |
| <Return> Value in data | ~ | 126 |

7. **De-duplication**: Do not use de-duplication or email threading software without FTC approval.

8. **Password-Protected Files**: Remove passwords prior to production. If password removal is not possible, provide the original and production filenames and the passwords, under separate cover.

## Producing Data to the FTC

1. Prior to production, scan all data and media for viruses and confirm they are virus-free.

2. For productions smaller than 50 GB, submit data electronically using the FTC's secure file transfer protocol. Contact FTC counsel for instructions. **The FTC cannot accept files via Dropbox, Google Drive, OneDrive, or other third-party file transfer sites**.

3. If you submit data using physical media:

   a. Use only CDs, DVDs, flash drives, or hard drives. Format the media for use with Windows 7;

   b. Use data encryption to protect any Sensitive Personally Identifiable Information or Sensitive Health Information (as defined in the instructions), and provide passwords in advance of delivery, under separate cover; and

   c. Use a courier service (e.g., Federal Express, UPS) because heightened security measures delay postal delivery.

4. Provide a transmittal letter with each production that includes:

   a. Production volume name (e.g., Volume 1) and date of production;

   b. Numeric DocID range of all documents in the production, and any gaps in the DocID range; and

   c. List of custodians and the DocID range for each custodian.

**Standard Metadata Fields**

| DAT FILE FIELDS | DEFINITIONS | POPULATE FIELD FOR: |
|---|---|---|
| DocID | Unique ID number for each document | All Documents |
| FamilyID | Unique ID for all documents in a family including parent and all child documents | All Documents |
| ParentID | Document ID of the parent document. This field will only be populated on child items | All Documents |
| File Path | Path to produced native file | All Documents |
| TextPath | Path to document level text or OCR file | All Documents |
| Custodian | Name of the record owner/holder | All Documents |
| AllCustodians | Names of all custodians that had copy of this record (populate if data was deduplicated or email threading was used) | All Documents |
| Source | Source of documents: CID, Subpoena, Third Party Data, etc. | All Documents |
| Filename | Original file name | All Documents |
| File Size | Size of documents | All Documents |
| File Extensions | Extension of file type | All Documents |
| MD5 Hash | Unique identifier for electronic data used in de-duplication | All Documents |
| PRODUCTION_VOLUME | Production Volume | All Documents |
| HASREDACTIONS | Redacted document | All Documents |
| Exception Reason | Reason for exception encountered during processing (e.g., empty file, source file, password-protected file, virus) | All Documents |
| PRODBEG | Beginning production bates number | Documents with Produced Images |
| PRODEND | Ending production bates number | Documents with Produced Images |
| PRODBEG_ATTACH | Beginning production family bates number | Documents with Produced Images |
| PRODEND_ATTACH | Ending production family bates number | Documents with Produced Images |
| Page Count | The number of pages the document contains | Documents with Produced Images |
| From | Names retrieved from the FROM field in a message | Emails |
| To | Names retrieved from the TO field in a message; the recipient(s) | Emails |
| CC | Names retrieved from the CC field in a message; the copied recipient(s) | Emails |
| BCC | Names retrieved from the BCC field in a message; the blind copied recipient(s) | Emails |
| EmailSubject | Email subject line | Emails |
| Date Sent | The date an email message was sent | Emails |
| Time Sent | The time an email message was sent | Emails |
| Date Received | The date an email message was received | Emails |
| Time Received | The time an email message was received | Emails |
| Author | File Author | Loose Native Files and Email Attachments |
| Title | File Title | Loose Native Files and Email Attachments |
| Subject | File Subject | Loose Native Files and Email Attachments |
| Date Created | Date a document was created by the file system | Loose Native Files and Email Attachments |
| Time Created | Time a document was created by the file system | Loose Native Files and Email Attachments |
| Date Modified | Last date a document was modified and recorded by the file system | Loose Native Files and Email Attachments |
| Time Modified | Last time a document was modified and recorded by the file system | Loose Native Files and Email Attachments |
| Date Printed | Last date a document was printed and recorded by the file system | Loose Native Files and Email Attachments |
| Time Printed | Last time a document was printed and recorded by the file system | Loose Native Files and Email Attachments |

**APP 016**

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
09/16/2022
CT Log Number 542318391

## Service of Process Transmittal Summary

**TO:**  Laurie Braddock
Match
8750 N CENTRAL EXPY
DALLAS, TX 75231-6436

**RE:**  **Process Served in New York**

**FOR:**  Humor Rainbow, Inc.  (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | FEDERAL TRADE COMMISSION vs. MATCH GROUP, INC., |
| **CASE #:** | 319CV02281K |
| **NATURE OF ACTION:** | Subpoena - Business records |
| **PROCESS SERVED ON:** | C T Corporation System, New York, NY |
| **DATE/METHOD OF SERVICE:** | By Process Server on 09/16/2022 at 10:22 |
| **JURISDICTION SERVED:** | New York |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air |
| | Image SOP |
| | Email Notification,  Laurie Braddock  laurie.braddock@match.com |
| | Email Notification,  Norma Rivera  norma.rivera@match.com |
| | Email Notification,  Jeanette Teckman  jeanette.teckman@match.com |
| | Email Notification,  Nathan Lyons  nathan.lyons@match.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 28 Liberty Street |
| | New York, NY 10005 |
| | 866-401-8252 |
| | EastTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

**APP 017**



# PROCESS SERVER DELIVERY DETAILS

**Date:**                             Fri, Sep 16, 2022
**Server Name:**                  Brett bgolub

| Entity Served | HUMOR RAINBOW, INC. |
|---|---|
| Case Number | 319CV02281K |
| Jurisdiction | NY |

| Inserts | | |
|---|---|---|
| | | |



AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:19-cv-02281-K |
| MATCH GROUP, INC., et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                          Humor Rainbow, Inc.
c/o C T Corporation System, 28 Liberty St., New York, NY 10005
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit "A," attached

| Place: Federal Trade Commission<br>1999 Bryan Street, Suite 2150<br>Dallas, TX 75201 | Date and Time:<br>10/01/2022 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      09/15/2022

                    *CLERK OF COURT*
                                                    OR
                                                              /s/ Reid Tepfer
     _____          _____
        *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Plaintiff
Federal Trade Commission                                          , who issues or requests this subpoena, are:

Reid Tepfer, Federal Trade Commission, 1999 Bryan Street, Suite 2150, Dallas TX 75201, rtepfer@ftc.gov, (214) 979-9395

### Notice to the person who issues or requests this subpoena

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:19-cv-02281-K

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____                         _____
                                                                    *Server's signature*

                                                                    _____
                                                                    *Printed name and title*

                                                                    _____
                                                                    *Server's address*

Additional information regarding attempted service, etc.:

**APP 020**

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**
**Subpoena to Humor Rainbow, Inc.**
**In Case No. 3:19-cv-02281-K (N.D. Tex.)**

**INSTRUCTIONS**

    **1.**    **Definitions and Instructions:**  Please review carefully the Definitions and Instructions that provided herein, which provide important information regarding compliance with this Subpoena.

    **2.**    **Scope of Search:**  This Subpoena covers documents and information in your possession or under your actual or constructive custody or control including, but not limited to, documents and information in the possession, custody, or control of your attorneys, accountants, directors, officers, employees, and other agents and consultants, whether or not such documents and information were received from or disseminated to any person or entity.

    **3.**    **Document Identification:**  Documents that may be responsive to more than one specification of this Subpoena need not be submitted more than once; however, your response should indicate, for each document submitted, each specification to which the document is responsive.  If any documents responsive to this Subpoena have been previously supplied to the Commission, you may comply with this Subpoena by identifying the document(s) previously provided and the date of submission.  Documents should be produced in the order in which they appear in your files or as electronically stored and without being manipulated or otherwise rearranged; if documents are removed from their original folders, binders, covers, containers, or electronic source in order to be produced, then the documents shall be identified in a manner so as to clearly specify the folder, binder, cover, container, or electronic media or file paths from which such documents came.  In addition, number by page (or file, for those documents produced in native electronic format) all documents in your submission, preferably with a unique Bates identifier, and indicate the total number of documents in your submission.

    **4.**    **Production of Copies:**  Unless otherwise stated, legible photocopies (or electronically rendered images or digital copies of native electronic files) may be submitted in lieu of original documents, provided that the originals are retained in their state at the time of receipt of this Subpoena.  Further, copies of originals may be submitted in lieu of originals only if they are true, correct, and complete copies of the original documents; provided, however, that submission of a copy shall constitute a waiver of any claim as to the authenticity of the copy should it be necessary to introduce such copy into evidence in any Commission proceeding or court of law; and provided further that you shall retain the original documents and produce them to Commission staff upon request.  Copies of marketing materials and advertisements shall be produced

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND
INFORMATION TO HUMOR RAINBOW, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

APP 022

in color, and copies of other materials shall be produced in color if necessary to interpret them or render them intelligible.

5.      **Electronically Stored Information**: For specifications requesting production of Documents, see the attached FTC Bureau of Consumer Protection Production Requirements ("Production Requirements"), which detail all requirements for the production of electronically stored information to the FTC. You must discuss issues relating to the production of electronically stored information with FTC staff **prior to** production.

6.      **Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI")**: For specifications requesting production of Documents or answers to written interrogatories, if any responsive materials contain Sensitive PII or SHI, please contact FTC counsel before producing those materials to discuss whether there are steps You can take to minimize the amount of Sensitive PII or SHI You produce, and how to securely transmit such information to the FTC.

Sensitive PII includes an individual's Social Security number; an individual's biometric data; and an individual's name, address, or phone number in combination with one or more of the following: date of birth, driver's license or state identification number (or foreign country equivalent), military identification number, passport number, financial account number, credit card number, or debit card number. Biometric data includes biometric identifiers, such as fingerprints or retina scans, but does not include photographs (with the exception of photographs and corresponding analyses used or maintained in connection with facial recognition software) or voice recordings and signatures (with the exception of those stored in a database and used to verify a person's identity). SHI includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HUMOR RAINBOW, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

APP 023

## DEFINITIONS

The following definitions apply to this Subpoena:

D-1. **"OKCupid"** means the dating platform marketed using the brand name "OKCupid," available at OKCupid.com, on the Apple App Store, or Google Play app store. The term shall include any descriptor used by OKCupid in its business practices.

D-2. **"Company"** or **"You"** means the entity responsible for OKCupid's operation and all directors, officers, employees, agents, consultants and other persons working for or on behalf of the foregoing.

D-3. **"Chargeback"** means a transaction that is returned as a financial liability to an acquirer by a card issuer, usually because of a disputed transaction. The acquirer may then return or "charge back" the transaction to the merchant.

D-4. **"Customer"** or **"Customers"** means any individual or individuals who have maintained an account on OKCupid, regardless of whether such individual or individuals paid for those accounts or not.

D-5. **"Document"** means the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, taped, recorded, filmed, punched, computer-stored, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including any advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book, or label. "Document" shall also include Electronically Stored Information

D-6. **"Identify"** or **"the Identity of"** requires identification of (a) natural persons by name, title, present business affiliation, present business address, telephone number, and email address or, if a present business affiliation or present business address is not known, the last known business and home addresses; and (b) businesses or other organizations by name, address, and the identities of Your contact persons at the business or organization.

D-7. **"Advertisement"** or **"Advertising"** or **"Ad"** means any written or verbal statement, illustration, or depiction that promotes the sale of a good or service or is designed to increase consumer interest in a brand, good, or service. Advertising media includes, but is not limited to: packaging and labeling; promotional materials; print; television; radio; and Internet, social media, and other digital content.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HUMOR RAINBOW, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

APP 024

D-8.   "**Match Group, Inc.**" means Match Group, Inc, a Delaware corporation and party to this litigation.

D-9.   "**Match Group, LLC**" means Match Group, LLC and includes operations under assumed names, prior names, and predecessor entities, including Match.com, LLC.

D-10.  **Subscriber**" means any user who has had either a paid account or a "free trial" account on any website owned or operated by Humor Rainbow, Inc.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HUMOR RAINBOW, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

APP 025

## DEMAND FOR PRODUCTION

1. The Company's certificate of incorporation, bylaws, rules, regulations, procedures, and any amendments to them.

2. All minutes (including attachments) of meetings of the Company's Board of Directors and all materials submitted to the Board.

3. All materially different versions of the Company's organizational charts and personnel directories.

4. Documents sufficient to show all relationships that have existed between the Company and any other corporate entity, including Match Group, LLC, Match Group, Inc., its subsidiaries, entities with an ownership interest the Company, and any other entity that has operated OKCupid.

5. Documents sufficient to show all corporate officers of the Company.

6. Documents sufficient to identify all current and former employees of the Company whose responsibilities include or relate to:
   a. advertising or marketing;
   b. customer service;
   c. corporate governance or operations;
   d. general management;
   e. research and development;
   f. legal compliance;
   g. accounting or finance;
   h. cancellation of subscriptions;
   i. any Guarantee; and
   j. policies and practices related to chargebacks.

7. Documents sufficient to show all transfers of money between the Company and Match Group, Inc., Match Group, LLC, or any corporate subsidiary or owner of any entity that has ever operated OKCupid.

8. All Documents that tend to show that Match Group LLC operates or has operated OKCupid.

9. All Documents that tend to show that Match Group LLC operates or has operated the Company.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HUMOR RAINBOW, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

APP 026

10. All Documents that tend to show that Match Group LLC operates or has operated the Humor Rainbow, Inc.

11. All Documents that tend to show that Match Group Inc. does not or has not operated OKCupid, the Company, or Humor Rainbow, Inc.

12. Documents sufficient to show the Company's quarterly and annual gross and net revenue, including profit and loss statements and accounting documents.

13. Documents showing the Company's projections of its gross and net revenue, including Documents provided to prospective investors.

14. Documents sufficient to show quarterly and annual revenue from:
    a. Subscriptions to OKCupid;
    b. Subscriptions to OKCupid that included or were subject to a Guarantee; and
    c. Payments from accounts on OKCupid that had been automatically renewed.

15. Each unique version of all Ads related to any Guarantee.

16. Each unique version of all Ads related to cancellation of a OKCupid subscription, including Ads related to the ease or availability of cancellation.

17. Documents sufficient to show each unique disclosure of policies concerning terminating subscriptions in response to a Customer Chargeback.

18. Representative copies of all visual content shown to Customers during the process of purchasing or signing up for a paid subscription.

19. Representative copies of all visual content that OKCupid or the Company has shown to Customers concerning any Guarantee, including concerning:
    a. Advertisements relating to Subscriptions subject to any Guarantee;
    b. Customer "progress" with regard to the any Guarantee; and
    c. Redeeming a Guarantee or receiving a Guarantee Extension.

20. Representative copies of all visual content, including website pages and mobile application screens, that Customers have had to view to cancel their subscriptions.

21. Representative copies of all visual content, including website pages and mobile application screens, that the Company has shown to Customers concerning the available means of cancelling their subscriptions.

22. All documents related to any change or contemplated change to any means of subscription cancellation available to Customers.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HUMOR RAINBOW, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

23. All documents related to account takeovers.

24. All documents related to software flaws that prevented Customers from:
    a. logging into their accounts;
    b. using their accounts;
    c. resetting their password; or
    d. canceling their accounts.

25. All communications relating to:
    a. Guarantees;
    b. Cancellation of paid subscriptions by Customers;
    c. Customer Chargebacks;
    d. Denial of Customers' access to accounts in response to chargebacks; and
    e. The marketing or advertising of Incognito Mode, OKCupid Premium, or Profile Boosts on OKCupid.

26. All Documents related to how consumers or Customers view, read, react to, understand, or have been influenced by Ads relating to Guarantees; Chargeback policies; Ads relating to subscription renewal or cancellation or the means of subscription renewal or cancellation, including documents relating to copy tests, A/B testing, click-through data, consumer or Customer surveys, usability tests, and focus groups.

27. All Documents, including internal and third-party studies or audits, relating to Customers' efforts to cancel their subscriptions to OKCupid.

28. All Documents that show how many Customers attempt to cancel their OKCupid subscription and are successful or unsuccessful in doing so.

29. All Documents that show what percentage of Customers attempt to cancel their OKCupid subscription are unsuccessful in doing so.

30. All Documents relating to the policies and practices of the Company regarding the following:
    a. any Guarantees;
    b. account cancellation;
    c. Availability of customer support services;
    d. availability of refunds;
    e. Customer Chargebacks;
    f. Customer access to accounts; and
    g. compliance with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HUMOR RAINBOW, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

7

31. All Documents relating to any internal or external review concerning compliance by the Company with consumer protection laws, including the FTC Act and the Restore Online Shoppers' Confidence Act.

32. All Documents relating to Customer complaints.

33. All communications with Customers relating to any Guarantee or the Company's chargeback or cancellation policies or practices.

34. All documents relating to any lawsuit alleging that the operators of OKCupid have engaged in fraud or violated any federal, state, or foreign consumer protection laws.

35. All versions of customer service telephone scripts, chat scripts or prepared responses, customer support manuals, employee manuals, and other training materials.

36. All Documents referring to or relating to:
    a.  The Federal Trade Commission;
    b.  The FTC Act;
    c.  The Restore Online Shoppers' Confidence Act;
    d.  Unfair, deceptive, or abusive acts or practices or "UDAAP" or "UDAP";
    e.  The Department of Justice; and
    f.  The lawfulness or unlawfulness of any practices related to any Guarantee.

EXHIBIT A TO PLAINTIFF FTC'S SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION TO HUMOR RAINBOW, INC.

FTC v. Match Group, Inc., Case No. 3:19-cv-02281-K

APP 029

**Federal Trade Commission - Bureau of Consumer Protection**
**Production Requirements**
Revised July 2020

In producing information to the FTC, comply with the following requirements, unless the FTC agrees otherwise. If you have questions about these requirements, please contact FTC counsel before production.

## Production Format

1. **General Format**: Provide load-ready electronic productions with:

   a. A delimited data load file (.DAT) containing a line for every document, unique id number for every document (DocID), metadata fields, and native file links where applicable; and

   b. A document level text file, named for the DocID, containing the text of each produced document.

      Do not produce corresponding image renderings (e.g., TIFF or JPEG) for files in native format unless the FTC requests them. If the FTC requests corresponding image renderings, provide an Opticon image load file (.OPT) containing a line for every image file.

2. **Electronically Stored Information (ESI)**: Documents stored in electronic format in the ordinary course of business must be produced in the following format:

   a. For ESI other than the categories below, submit in native format with all metadata and either document level extracted text or Optical Character Recognition (OCR). Do not produce corresponding image renderings (e.g., TIFF or JPEG) for files in native format unless the FTC requests them. If the FTC requests corresponding image renderings, they should be converted to Group IV, 300 DPI, single-page TIFF (or color JPEG images when necessary to interpret the contents or render them intelligible.)

   b. For Microsoft Excel, Access, or PowerPoint files, submit in native format with extracted text and metadata. Data compilations in Excel spreadsheets or delimited text formats must contain all underlying data, formulas, and algorithms without redaction.

   c. For other spreadsheet, database, presentation, or multimedia formats; instant messages; or proprietary applications, discuss the production format with FTC counsel.

3. **Hard Copy Documents**: Documents stored in hard copy in the ordinary course of business must be scanned and submitted as either one multi-page pdf per document or as 300 DPI single page TIFFs (or color JPEGs when necessary to interpret the contents or render them intelligible), with corresponding document-level OCR text and logical document determination in an accompanying load file.

4. **Document Identification**: Provide a unique DocID for each hard copy or electronic document, consisting of a prefix and a consistent number of numerals using leading zeros. Do not use a space to separate the prefix from numbers.

-A1-

5. **Attachments**: Preserve the parent/child relationship by producing attachments as separate documents, numbering them consecutively to the parent email, and including a reference to all attachments.

6. **Metadata Production**: For each document submitted electronically, include the standard metadata fields listed below in a standard delimited data load file. The first line of the data load file shall include the field names. <u>Submit date and time data in separate fields</u>. Use these standard Concordance delimiters in delimited data load files:

| Description | Symbol | ASCII Character |
|---|---|---|
| Field Separator | ¶ | 20 |
| Quote Character | þ | 254 |
| Multi Entry delimiter | ® | 174 |
| <Return> Value in data | ~ | 126 |

7. **De-duplication**: Do not use de-duplication or email threading software without FTC approval.

8. **Password-Protected Files**: Remove passwords prior to production. If password removal is not possible, provide the original and production filenames and the passwords, under separate cover.

## <u>Producing Data to the FTC</u>

1. Prior to production, scan all data and media for viruses and confirm they are virus-free.

2. For productions smaller than 50 GB, submit data electronically using the FTC's secure file transfer protocol. Contact FTC counsel for instructions. **The FTC cannot accept files via Dropbox, Google Drive, OneDrive, or other third-party file transfer sites**.

3. If you submit data using physical media:

   a. Use only CDs, DVDs, flash drives, or hard drives. Format the media for use with Windows 7;

   b. Use data encryption to protect any Sensitive Personally Identifiable Information or Sensitive Health Information (as defined in the instructions), and provide passwords in advance of delivery, under separate cover; and

   c. Use a courier service (e.g., Federal Express, UPS) because heightened security measures delay postal delivery.

4. Provide a transmittal letter with each production that includes:

   a. Production volume name (e.g., Volume 1) and date of production;

   b. Numeric DocID range of all documents in the production, and any gaps in the DocID range; and

   c. List of custodians and the DocID range for each custodian.

-A2-

**APP 031**

Standard Metadata Fields

| DAT FILE FIELDS | DEFINITIONS | POPULATE FIELD FOR: |
|---|---|---|
| DocID | Unique ID number for each document | All Documents |
| FamilyID | Unique ID for all documents in a family including parent and all child documents | All Documents |
| ParentID | Document ID of the parent document. This field will only be populated on child document | All Documents |
| File Path | Path to produced native file | All Documents |
| TextPath | Path to document level text or OCR file | All Documents |
| Custodian | Name of the record owner/holder | All Documents |
| AllCustodians | Names of all custodians that had copy of this record (populate if data was deduplicated or email threading was used) | All Documents |
| Source | Source of documents: CID, Subpoena, Third Party Data, etc. | All Documents |
| Filename | Original file name | All Documents |
| File Size | Size of documents | All Documents |
| File Extensions | Extension of file type | All Documents |
| MD5 Hash | Unique identifier for electronic data used in de-duplication | All Documents |
| PRODUCTION_VOLUME | Production Volume | All Documents |
| HASREDACTIONS | Redacted document | All Documents |
| Exception Reason | Reason for exception encountered during processing (e.g., empty file, source file, password-protected file, virus) | All Documents |
| PRODBEG | Beginning production bates number | Documents with Produced Images |
| PRODEND | Ending production bates number | Documents with Produced Images |
| PRODBEG_ATTACH | Beginning production family bates number | Documents with Produced Images |
| PRODEND_ATTACH | Ending production family bates number | Documents with Produced Images |
| Page Count | The number of pages the document contains | Documents with Produced Images |
| From | Names retrieved from the FROM field in a message | Emails |
| To | Names retrieved from the TO field in a message; the recipient(s) | Emails |
| CC | Names retrieved from the CC field in a message; the copied recipient(s) | Emails |
| BCC | Names retrieved from the BCC field in a message; the blind copied recipient(s) | Emails |
| EmailSubject | Email subject line | Emails |
| Date Sent | The date an email message was sent | Emails |
| Time Sent | The time an email message was sent | Emails |
| Date Received | The date an email message was received | Emails |
| Time Received | The time an email message was received | Emails |
| Author | File Author | Loose Native Files and Email Attachments |
| Title | File Title | Loose Native Files and Email Attachments |
| Subject | File Subject | Loose Native Files and Email Attachments |
| Date Created | Date a document was created by the file system | Loose Native Files and Email Attachments |
| Time Created | Time a document was created by the file system | Loose Native Files and Email Attachments |
| Date Modified | Last date a document was modified and recorded by the file system | Loose Native Files and Email Attachments |
| Time Modified | Last time a document was modified and recorded by the file system | Loose Native Files and Email Attachments |
| Date Printed | Last date a document was printed and recorded by the file system | Loose Native Files and Email Attachments |
| Time Printed | Last time a document was printed and recorded by the file system | Loose Native Files and Email Attachments |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                 Plaintiff,<br><br>   vs.<br><br>MATCH GROUP, INC., a corporation,<br><br>                 Defendant. | Case No. 3:19-cv-02281-K |

**DEFENDANT MATCH GROUP, INC'S FIRST REQUESTS FOR PRODUCTION**
**OF DOCUMENTS AND THINGS TO PLAINTIFF FEDERAL TRADE COMMISSION**

Pursuant to Rule 26 and 34 of the Federal Rules of Civil Procedure, Defendant Match Group, Inc. ("Match"), by and through undersigned counsel, hereby requests that Plaintiff Federal Trade Commission respond and produce for inspection and copying the documents specified herein (the "Requests," and each, a "Request"), at the offices of Sidley Austin LLP, 2021 McKinney Ave., Suite 2000, Dallas, Texas 75201, Attention Angela C. Zambrano, within thirty (30) days of service of these Requests.

## I.   DEFINITIONS

Unless indicated otherwise, the following definitions and rules of construction are incorporated into each of the following Requests. All terms used herein shall be construed in an ordinary, common sense manner, and not in a hyper-technical, strained, overly-literal, or otherwise restrictive manner. Each Request shall be construed to make the Request inclusive rather than exclusive. This Includes the following: The use of the singular form of any word includes the plural and vice versa. The use of any tense of any verb includes all other tenses of the verb so used. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as

1

APP 033

necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.  The term "among" shall be construed to mean between or among.  The term "any" shall mean any, all, each, and every.  Masculine, feminine, or neutral pronouns shall be construed to include other genders.

1.      "Action" means the above-captioned litigation.

2.      "Complaint" means the Complaint for Permanent Injunction, Civil Penalties, and Other Relief filed in this Action on September 25, 2019 (Dkt. 1), and any amendments thereto.

3.      "FTC," "You," and "Your" mean the Federal Trade Commission, the named plaintiff in the Complaint.

4.      "Communication(s)" means any transmission or transfer of information of any kind, at any time or place, and under any circumstances, whether oral, written, or electronic utterance, notation, or statement of any nature whatsoever, Including: correspondence; personal conversations; witness statements; telephone calls; voice messages; letters; notes; summaries; photographs; videos; electronic or magnetic media; dialogues; discussions; interviews; consultations; telegrams; emails; text messages; messages sent over social media (Including LinkedIn, Facebook, Snapchat, WhatsApp, and Instagram); applications; facsimile transmissions; memoranda; agreements; audio recordings; and other materials or memorials of Communication, as well as the transfer of any Document from one Person to another.

5.      "Document(s)" shall have the broadest possible meaning and Includes: all writings of any nature whatsoever, whether printed, microfilmed, electronically stored, or electronically recorded in sound or pictures, within the possession, custody, or control of You or any of Your agents or representatives, Including attorneys, advisors, and accountants, or any other Person acting or purporting to act for You or on Your behalf or in concert with You, Including information

2

stored on a computer or a computer-accessible medium (such as floppy disk, blackberry device, cell phone, smartphone, USB stick, hard disk, PDA, Palm Pilot, iPad or similar tablet device, or CD Rom storage), computer tapes and cards, cloud service account (such as Box.com, Dropbox.com, or Apple iCloud); emails, tape recordings, affidavits, Contracts, Agreements, Communications, correspondence, telegrams, memoranda, records, reports, books, notebooks, summaries or records of telephone conversations, text messages, instant messages, voicemails, personal conversations or interviews, diaries, calendars, forecasts, statistical statements, work papers, drafts, copies, graphs, charts, slides, demonstrative or visual aids, accounts, analytical records, minutes, appraisals, records, expense accounts, receipts, reports or summaries of negotiations, brochures, lists, journals, advertisements, any marginal comments or notes appearing on any Document, and all other written, printed, typed, or otherwise recorded material, Including photographic matter or sound productions, however produced or reproduced.  "Document" also Includes, without limitation, all originals; all copies which are different in any way from the originals (whether by interlineation, receipt stamp, notation, highlighting, indication of copies sent or received or otherwise); and all drafts (whether printed, filed, recorded, or reproduced by hand).

6.      "Include(s)" or "Including" shall be construed to mean including, not limited to.

7.      "Object," "Objection," or "Objecting" shall mean any disapproval, disagreement, dislike, or opposition Communicated by You to any Person who is affiliated with Defendant.

8.      "Person" or "Entity" means and refers to any natural person, corporation, firm, association, partnership, joint venture, sole proprietorship, governmental body, or any other organization, business, or legal entity, whether or not engaged for profit and all predecessors or successors in interest.

3

9.      "Relate to" or "Relating to" mean concerning; relating to; regarding; reflecting; referring to; having a relationship to; pertaining to; identifying; containing; pertinent to; comprising; setting forth; showing; disclosing; describing; explaining; summarizing; evidencing; memorializing; or constituting; directly or indirectly, in whole or in part, or to be otherwise factually, legally, or logically connected to the subject matter of the particular request.

10.     "Match.com" means the online dating service that You put at issue in Your Complaint.

11.     "FTC Act" means the statute on which Counts III and IV of Your Complaint purport to allege a violation.

12.     "ROSCA" means the Restore Online Shoppers' Confidence Act, which is the statute on which Count V of Your Complaint purports to allege a violation.

13.     "Initial Disclosures" means Plaintiff's Initial Disclosures that the FTC served on Match Group, Inc. on April 15, 2022.

14.     "Interrogatories" means Match Group, Inc.'s First Set of Interrogatories to Plaintiff Federal Trade Commission, which were served on the FTC contemporaneously with these Requests for Production, and any subsequent sets of Interrogatories that Defendant may serve in this Action.

## II.      INSTRUCTIONS

1.      The definitions, instructions, and rules of construction set forth in Rule 34 of the Rules are incorporated herein by reference.

2.      Each Request contained herein calls for the production for inspection and photocopying of all Communications, tangible things, and/or Documents in Your possession, custody, or control.  Each Request also Includes Documents in the possession, custody, and control of Your current or former agents.

4

3.      Each of the Requests shall be construed independently and no other Request shall be referred to or relied upon for the purpose of limiting its scope.

4.      If any Communication, tangible thing, and/or Document cannot be produced in full, produce the Communication, tangible thing, and/or Document to the extent possible, specifying the reason for the inability to produce the remainder.

5.      If You Object to part of a Request and refuse to answer or produce Documents pursuant to that part, You should state the Objection with specificity and answer the remaining portion of that request and produce Documents responsive to the remainder of that Request.

6.      If a privilege or protection is asserted as a basis for withholding discovery, set forth the nature of the claimed privilege and the nature of the information with respect to which it is claimed.  You are required to provide a privilege log which identifies each Document withheld; the date of the Document; the names of the author(s) and recipient(s) of each Document (Including cc-ed and bcc-ed recipients); the type of privilege or protection claimed; the type of Document; and a brief description of the Document Including the subject matter thereof.

7.      All other Communications, tangible things, and/or Documents requested herein are to be produced as they are kept in the usual course of business or organized and labeled to correspond to the numbered paragraphs and/or categories of particular requests.  If there are no Communications, tangible things, and/or Documents responsive to a particular numbered paragraph and/or category, so state in writing.

8.      These Requests are continuing in nature.  You or any of Your representatives, Including counsel, are under an affirmative duty to supplement or correct Your responses to these Requests and production of Documents, tangible things, and/or Communications if You learn that in some material respect the information provided is incomplete or incorrect.

APP 037

9. Unless otherwise stated herein, the date range for the Requests shall begin at January 1, 2013.

### III.    REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Documents Relating to any and all investigations by the FTC of Match or Match.com, Including but not limited to all Documents that tend to support or undermine the FTC's contention that (1) Match has violated, is violating, or is about to violate Section 5 of the FTC Act or ROSCA or (2) the FTC's contention that there is a fair inference that Match would continue to violate the law absent restraint.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents You believe give rise to a fair inference of a reasonable expectation of continued FTC Act violations absent restraint.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents which the FTC contends supports an argument that any of the discontinued practices at issue in the Complaint are likely to be reinstituted by Match or on Match.com.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents—Including regulations, opinions, notices, or guidance—in which the FTC has described what does or does not constitute a "simple" cancelation method under ROSCA.

**REQUEST FOR PRODUCTION NO. 5:**

All surveys, copy tests, research, analyses, studies, or other tests conducted by or done for the FTC regarding cancelation methods.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents regarding evaluations the FTC has performed of subscription service cancelation processes.

APP 038

**REQUEST FOR PRODUCTION NO. 7:**

All Documents Related to the calculation of monetary damages sought by the FTC, Including Documents Related to the nature and extent of any alleged injury to consumers.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents Related to any other instance in which the FTC has sought monetary damages for violation of ROSCA, Including Documents indicating how the FTC calculated monetary damages.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents Related to the calculation of civil penalties sought by the FTC.

**REQUEST FOR PRODUCTION NO. 10:**

Documents sufficient to identify other lawsuits in which You have been involved that relate to a cancelation method being not "simple," as that term is used in ROSCA, 15 U.S.C. § 8403.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents cited to, referenced in, or relied upon in preparing Your responses to the Interrogatories.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents provided to the FTC by any third party that Relate to Count V of Your Complaint, Including Documents provided by Match.com users and former users.

**REQUEST FOR PRODUCTION NO. 13:**

Any Communications or Documents Related to Communication with any third party that Relate to Count V of Your Complaint, Including Communication with Match.com users and former users.

7

**REQUEST FOR PRODUCTION NO. 14:**

All screenshots, which Relate to Count V of Your Complaint, of Match.com, websites on which Match.com advertised, and/or the "websites of other online platforms" referenced in Your Initial Disclosures.

**REQUEST FOR PRODUCTION NO. 15:**

Any videos, which Relate to Count V of Your Complaint, of Match.com or websites on which Match.com advertised.

**REQUEST FOR PRODUCTION NO. 16:**

All surveys, copy tests, research, analyses, studies, or other tests conducted by or done for the FTC Related to any investigation of Count V of Your Complaint.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents Relating to any complaints or other negative statements regarding Count V of Your Complaint.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents cited to, referenced in, or relied upon in preparing Count V of Your Complaint.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents You may use at trial that Relate to Count V of Your Complaint.

[signature to follow]

8

Dated:  June 24, 2022

Respectfully submitted,

*/s/  Angela C. Zambrano*
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
David Sillers
State Bar No. 24072341
dsillers@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above and foregoing document

was served on all counsel of record via e-mail as outlined below on June 24, 2022.

Reid Abram Tepfer
rtepfer@ftc.gov
M Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov

*/s/  Angela C. Zambrano*
Angela C. Zambrano

9

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| Petitioner, | Case No. 22-mc-00054-RJL |
| *v.* | |
| **MATCH GROUP, INC.,** | |
| Respondent. | |

**FEDERAL TRADE COMMISSION'S OPPOSITION TO RESPONDENT'S**
**MOTION FOR LIMITED DISCOVERY AND TO SUPPLEMENT THE RECORD**

The Federal Trade Commission ("Petitioner," "FTC" or "Commission") opposes the motion filed by Match Group, Inc. ("Respondent" or "Match") to pursue discovery and to supplement the record. Dkt. 20-01. The FTC properly filed the Petition to Enforce the Match Civil Investigative Demand (Dkt. 1) ("CID Enforcement Petition") to seek the Court's assistance in enforcing the March 2020 civil investigative demand ("CID") and obtaining evidence relevant to its investigation in accordance with the FTC Act, 15 U.S.C. §57b-1(e). In an effort to avoid compliance, Match baselessly alleges the FTC filed the CID Enforcement Petition in bad faith or for improper purposes. Because Match's allegations fail to satisfy the heavy burden necessary to justify a request for discovery in a summary enforcement proceeding, the motion should be denied.

## I.   **LEGAL STANDARD**

Discovery in summary subpoena enforcement proceedings is improper absent "extraordinary circumstances." *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1091 (D.C.

Cir. 1992); *Securities and Exchange Comm'n v. McGoff*, 647 F.2d 185, 193 (D.C. Cir. 1981).  As

the D.C. Circuit has warned, "district courts must be cautious in granting such discovery rights,

lest they transform subpoena enforcement proceedings into exhaustive inquisitions into the

practices of the regulatory agencies."  *Resolution Trust Corp. v. Frates*, 61 F.3d 962, 964 (D.C.

Cir. 1995) (quoting *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1388 (D.C. Cir. 1980) (*en*

*banc*)).  Accordingly, discovery may be permitted "only where the respondent is able to

distinguish himself from the class of the ordinary (respondent), by citing special circumstances . .

. that raise doubts about the agency's good faith."  *Dresser Indus.,* 628 F.2d at 1388 (internal

citation omitted); *see also Fed. Election Comm'n v. Comm. to Elect Lyndon La Rouche*, 613 F.2d

849, 862 (D.C. Cir. 1979) ("the burden of showing an improper purpose is on the

subpoenaed party").[1]

## II.    ARGUMENT

Match's spurious allegations of bad faith and improper purpose do not come close to

establishing the "exceptional circumstances" necessary to take this case out of the general rule

against discovery in a summary subpoena enforcement proceeding.  As the FTC has already

discussed in earlier filings addressing Match's insinuations of bad faith (*see*, *e.g.*, Dkt. 5, FTC

---

[1] In accordance with the general rule against discovery in summary enforcement proceedings,
courts have consistently rejected requests from recalcitrant respondents for discovery.  *See, e.g.*,
*Resolution Trust Corp.*, 61 F.3d at 965-66 (affirming district court's enforcement of subpoena
and denial of evidentiary hearing to explore allegations of agency bad faith); *Invention
Submission Corp.*, 965 F.2d at 1091-92 (affirming district court's enforcement of CIDs and
denial of respondent's discovery motion); *United States v. Aero Mayflower Transit Co., Inc.*, 831
F.2d 1142, 1145–47 (D.C. Cir. 1987) (affirming summary enforcement subpoenas and denial of
respondent's request for discovery); *FTC v. Carter*, 636 F.2d 781, 789 (D.C. Cir. 1980) (same);
*Dresser Indus., Inc.,* 628 F.2d at 1388 (same); *Commodity Futures Trading Comm'n v. Harker*,
615 F. Supp. at 424 (D.D.C. 1985) (denying respondent's motions to quash subpoenas and for
discovery).

APP 043

Opp. to Match Emergency Mot. at 2, 4-6; Dkt. 16, FTC Opp. to Match Mot. to Seal at 2-3;

Dkt. 19, FTC Reply ISO Petition to Enforce Match CID at 17-20), the FTC's actions in filing the

CID Enforcement Petition are authorized by its governing statute and consistent with the

agency's normal-course procedures for such cases.  Nothing distinguishes Match from the

ordinary recalcitrant CID recipient—except that Match has insistently demanded special

treatment to which it is not entitled.  The FTC's refusal to grant such special treatment engenders

no improper purpose.  But even if this case presented circumstances that might somehow be

deemed "exceptional," Match's document requests fall well outside the scope of the limited

discovery that courts have deemed appropriate in these cases.  For the reasons explained below,

the motion should therefore be denied.

### A.  <u>Match's baseless assertions of impropriety do not demonstrate extraordinary circumstances warranting discovery.</u>

Over the course of two years, Match has maintained expansive assertions of privilege and

work product protection to withhold essentially all internal communications responsive to the

CID.  *See* Ex. 1, Choi Decl. at ¶¶ 5, 12, 18-19, 21-23, 25, 28-30.  Before initiating this action,

Commission staff repeatedly raised concerns about Match's withholdings, but Match did not

moderate its position with respect to a single document.  *Id.* at ¶¶ 7-11, 18-25.  With reason to

doubt the propriety of Match's broad withholdings, Commission staff conducted several

investigational hearings in an attempt to gather underlying non-privileged facts and evaluate the

validity of Match's privilege and work-product claims.  *Id.* at ¶ 13.  When these efforts proved

more or less fruitless, the FTC sought the Court's assistance in resolving this impasse that has

impeded the Commission's investigation of OkCupid's provision of OkCupid user data to a

third-party facial recognition technology company, Clarifai, Inc., and Match's and OkCupid's

3

public statements disavowing the data-sharing and OkCupid's connection to Clarifai.[2]  *Id.* at ¶¶ 28-30.

Relying on speculation and warped interpretations of the facts, Match contends that the FTC's real motivation for initiating the CID enforcement action, and for declining Match's demand for a pseudonymous proceeding and blanket sealing of all case filings, was to harass Match and pressure it to waive valid privilege claims.  Motion at 3.  But there is nothing improper, and nothing extraordinary, in the agency's taking a skeptical view of the merits of a CID recipient's attorney-client privilege or work-product protection claims—particularly when they result in withholdings that are as sweeping as Match's.  Nor is it unusual for the Commission to seek judicial review of disputed privilege withholdings to aid an FTC investigation.  *See, e.g.*, *FTC v. Nexway, Inc.*, No. 1:21-mc-00145 (D.D.C.); *FTC v. Indivior*, No. 3:14-mc-00005 (E.D. Va.).

Match's contention (*see* Motion at 4) that the FTC insufficiently conferred with Match's counsel on the privilege issues before enforcing the CID, thereby demonstrating bad faith, is refuted by the correspondence.  In reality, Commission staff made multiple efforts over an extended period to address its concerns regarding Match's privilege claims, but Match's counsel avoided meaningful engagement on the privilege issues.  *See* Ex. 1, Choi Decl. at ¶¶ 5-13, 15-25.  Match's suggestion that any further meet and confers would have obviated the need for the CID enforcement action ignores the history and nature of the parties' dispute.  *See id.* at ¶¶ 3-30.

Equally specious is Match's claim that the FTC's motives for seeking enforcement are suspect because the FTC rejected Match's courthouse-steps offer of third-party mediation in lieu

---

[2] OkCupid is an online dating platform owned and operated by Humor Rainbow, Inc.—a subsidiary of Match.

of court enforcement.  *See id.* at ¶¶ 23-24.  Court enforcement is the path the FTC Act provides

for resolution of CID compliance disputes.  *See* 15 U.S.C. § 57b-1(e).  The FTC's rejection of

Match's preferred approach in favor of this statutorily-authorized mechanism will not support an

inference of bad faith.  *See Commodity Futures Trading Comm'n v. Harker*, 615 F. Supp. 420,

424 (D.D.C. 1985) (rejecting discovery in a summary subpoena enforcement proceeding, finding

no evidence of bad faith because an agency "cannot be faulted for refusing to agree to" refrain

from taking steps its statute authorizes).

  Nor is there merit to Match's charges (*see* Motion at 2-4) that the FTC demonstrated an

improper purpose for filing this CID enforcement action by refusing to agree to pseudonymous

litigation and sealing of the entire record of this case.  *See* Ex. 1, Choi Decl. at ¶¶ 22-24.  In the

filing of the CID Enforcement Petition and thereafter, the FTC followed its usual practices for

CID enforcement actions, consistent with its statutory requirements and agency rules related to

confidentiality, as well as court procedures for initiating these types of cases.  *See id.* at ¶¶ 22-24;

26; *see also* Dkt. 19, FTC Reply Memo. ISO of Petition to Enforce Match CID at 17-20.  The

FTC likewise was faithful to governing jurisprudence applying a "strong presumption in favor of

public access to judicial proceedings," *EEOC v. National Children's Center, Inc*., 98 F.3d 1406,

1409 (D.C. Cir. 1996), and limiting pseudonymous litigation to "unusual" circumstances, *Qualls

v. Rumsfeld*, 228 F.R.D 8, 10 (D.D.C. 2005), which are not present here.  *See Dresser Indus.,

Inc.,* 628 F.2d at 1374 (rejecting request for discovery, finding no bad faith was suggested by

SEC's actions that "were unobjectionable under [the Court's] jurisprudence").

  The Court should also reject Match's invitation (*see* Motion 1-2) to read menace into the

FTC's statement that "access to filings in this case is important so that the public (and future CID

recipients) are aware the Commission will pursue judicial enforcement of CIDs when companies

APP 046

have resisted producing responsive information, including through overbroad assertions of privilege." *See* Dkt. 16, FTC Opp. to Match's Mot. to Seal at 5.  Keeping the public apprised of the FTC's enforcement actions so that others can make informed decisions is good government, not evidence of sinister motives.  *See Resolution Trust Corp.*, 61 F.3d at 965 (refusing to impute improper motive to an agency statement that, even if it could be read as respondent suggested, was "ambiguous").

Commission staff's efforts to conduct investigational hearings in an effort to obtain relevant, non-privileged information and better understand the contours of Match's privilege claims, after Match refused to turn over all responsive internal communications, are similarly benign.  *See* Ex. 1, Choi Decl. at ¶ 13.  That investigative step is "a sign of thorough investigation, not harassment."  *Harker*, 615 F. Supp. at 424.  Match's bid for discovery on this ground (*see* Motion at 4, 7) is meritless.

Finally, Match's suggestion that the FTC's decision to commence this CID enforcement action was spurred by developments in an unrelated FTC case against Match in the Southern District of Texas (*see* Motion at 4, 6) is wholly speculative and unfounded.  *See* Ex. 1, Choi Decl. at ¶ 31.  Such "diffuse speculations concerning possible misuse of administrative authority do not establish the 'exceptional circumstances' necessary to take this case out of the general rule" against discovery in a summary CID enforcement proceeding.  *McGoff*, 647 F.2d at 194; *see Harker*, 615 F. Supp. at 425 (finding that respondents' "attempt[] to find agency bad faith from a series of innocuous circumstances" did not support discovery).

Indeed, even in cases involving more troublesome allegations of improper purpose such as those in *McGoff* or *Harker*, courts have rejected requests for discovery to examine agency purpose.  The respondent in *McGoff* was a prominent critic of the Carter administration who

6

controlled newspaper companies, but the D.C. Circuit nevertheless found respondent's

allegations of political motivation insufficient to justify discovery into the SEC's motives for

investigating and issuing subpoenas.  647 F.2d at 193-94.  The district court in *Harker* rejected

the respondent's request for discovery despite allegations that the agency had improperly leaked

information and sent agents to corporate offices in an effort to collect documents.  *Harker*, 615

F. Supp. at 424-425; *see also United States v. American Target Advertising, Inc.,* 257 F.3d 348,

354-355 (4th Cir. 2001) (finding allegations USPS investigation was initiated at the behest of a

prominent Senator highly critical of non-profit organizations run by respondent insufficient to

demonstrate extraordinary circumstances justifying discovery). The same result is warranted

here.

Match cites two cases in which a court granted discovery into agency purpose in a

summary subpoena enforcement proceeding.  But the circumstances here are radically different

from those in *FTC v. Bisaro*, 10-mc-289-CKK, 2010 WL 3260042 (D.D.C.  July 13, 2010) and

*United States v. Fensterwald*, 553 F.2d 231 (D.C. Cir. 1977).  In *Fensterwald*, the IRS selected a

lawyer for a "special" audit *after* that individual led an investigation of alleged illegal activities

at the agency, and after he had represented politically prominent individuals in cases which may

have led to "extraordinary interest" in the taxpayer from some in the Executive Branch.  In

*Bisaro*, respondent alleged the FTC pressured the respondent's company to enter into a business

deal with a third party and later issued CIDs and a subpoena after the company refused to

comply with that suggestion.[3]  2010 WL 3260042, at *4-5.  In contrast, Match here essentially

---

[3] Even though the court permitted respondent to take discovery in the form of two
interrogatories, the court found the information obtained did not bear out respondent's
allegations of bad faith.  *FTC v. Bisaro*, No. 10-289, 2010 WL 4910268, at *4, 7 (D.D.C. Aug.
17, 2010).  The court ultimately granted the FTC's petition to enforce the CID.  *Id.* at *8; *FTC v.
Bisaro*, 757 F.Supp.2d 1 (D.D.C. 2010).

APP 048

argues that ordinary-course litigation decisions made by Commission staff long after the investigation was commenced show that improper purposes motivated the agency's decision to file the CID Enforcement Petition.[4]   None of the allegations advanced by Match in its Motion are remotely sufficient to establish "extraordinary circumstances" that would create concern about potential abuse of the court's process.

### B.  __Match's proposed document requests are inappropriate.__

Match's document requests also fall well outside the scope of the limited discovery that has been previously authorized by courts in cases involving exceptional circumstances.  *See Dresser Indus. Inc.*, 628 F.2d at 1388 ("[D]istrict courts must limit discovery to the minimum necessary in the interests of justice by requiring specific interrogatories or affidavits rather than full-dress discovery and trial.") (internal quotes and citations omitted).  Here again, neither *Fensterwald* nor *Bisaro* supports the requested discovery.  In *Fensterwald*, the IRS maintained that names for the special audit had been selected "entirely by chance as a result of computer selection."  553 F.2d at 232.  Establishing that fact, the court said, "should be easy for the IRS," concluding that the district court should have authorized limited discovery in the form of interrogatories or an affidavit from a knowledgeable agency official.  553 F.2d at 233.  In *Bisaro*, a key point of dispute was whether the FTC had shared confidential information obtained from respondent with its competitor, and the court permitted limited interrogatories requiring identification of any such communications with third parties (but rejected respondent's request to depose an agency official).  2010 WL 3260042, at *4, 6; *see FTC v. Bisaro*, No.1:10-mc-00289

---

[4] In a transparent attempt to liken this case to *Bisaro*, Match asserts that the FTC might possibly seek to use this CID enforcement action to gain leverage in a collateral proceeding, but never specifies what collateral proceeding it means nor explains how this leverage might somehow be exercised.  *See* Motion at 2-3.  This is yet more rank speculation that will not serve to establish the "extraordinary circumstances" necessary to justify discovery.

APP 049

(D.D.C.), ECF 16-1 (First Set of Interrogatories).  Match's proposed document requests go far beyond such limited discovery into readily-ascertainable facts.  Thus, Match's Motion should be denied for this reason as well.

## III.   CONCLUSION

Match fabricates bad faith and improper purposes where none exist to distract from the relevant issues in this case, and further delay the FTC's investigation and evaluation of whether Match has violated the FTC Act.  The issue underlying the FTC's CID Enforcement Petition is simple—namely, whether Match has improperly withheld documents based on overly broad assertions of work-product protection and attorney-client privilege.  The number of documents underlying the privilege dispute is minimal, and Match has complicated this CID enforcement action unnecessarily.  Because Match has not met its burden of demonstrating that exceptional circumstances justify a departure from the general rule against granting discovery in summary enforcement proceedings, the FTC requests that the Court deny Respondent's Motion in its entirety.

Dated: August 3, 2022

Respectfully submitted,

ANISHA S. DASGUPTA
General Counsel

MICHELE ARINGTON
Assistant General Counsel for Litigation

*s/ Sarah Choi*
SARAH CHOI (D.C. Bar No. 977025)
ELIZABETH AVERILL (D.C. Bar No. 491216)

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Mail Stop CC-8232
Washington, D.C. 20580

9

APP 050

Tel: 202-326-3157 (Arington); 202-326-2212
(Choi); 202-326-2993 (Averill)

*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of August, 2022, I filed the foregoing with the Clerk

of the Court via the CM/ECF system, which will automatically send an electronic mail

notification of such filing to the CM/ECF registered participants as identified on the Notice of

Electronic Filing.

*s/ Sarah Choi*
Attorney for Petitioner

APP 051

| | |
|---|---|
| **From:** | Hummel, Chad S. |
| **Sent:** | Friday, October 7, 2022 9:21 PM |
| **To:** | Aijaz, Hasan; Tepfer, Reid A.; Yost, Seth; Zuckerman, Sarah; O'Gorman, John; Hilliard, Erica; Zambrano, Angela; Priest, Chelsea A.; Bragg, Tayler G. |
| **Cc:** | Hoffman, Rob |
| **Subject:** | RE: Hinge, Inc. and Humor Rainbow, Inc. Objections and Responses to Plaintiff Federal Trade Commission's Subpoena to Produce Documents, Information, or Objects |

Counsel:

Obviously, there is a pending motion for protective order based on all the grounds discussed today that seeks to prevent this abusive discovery by the FTC. In the same discussion, you refused to disclose to us how the FTC would consider narrowing its requests. This is another attempted end run and is inappropriate.

 For everyone's benefit, during the meet and confer today, the FTC conceded that it has not asserted any wrong doing against these third parties in the complaint, had no basis to assert that either third party has guarantee or charge back policies of the type described in the complaint (and refused to provide so much as a single scrap of paper showing that it has a good faith basis for these subpoenas or this discovery), and did not describe how any of the requested discovery would be probative of the question of whether Match Group LLC is likely to resume the permanently discontinued practices described in counts 3 and 4.

For these reasons, Defendants object to this effort.

Please call me with any questions.

Sent with BlackBerry Work
(www.blackberry.com)

---

**From:** Aijaz, Hasan <maijaz@ftc.gov>
**Date:** Friday, Oct 07, 2022, 6:11 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>, Yost, Seth <Seth.Yost@us.dlapiper.com>, Zuckerman, Sarah <szuckerman@ftc.gov>, O'Gorman, John <jogorman@ftc.gov>, Hilliard, Erica <ehilliard@ftc.gov>, Zambrano, Angela <angela.zambrano@sidley.com>, Priest, Chelsea A. <cpriest@sidley.com>, Bragg, Tayler G. <tbragg@sidley.com>, Hummel, Chad S. <chummel@sidley.com>
**Cc:** Hoffman, Rob <Rob.Hoffman@us.dlapiper.com>
**Subject:** RE: Hinge, Inc. and Humor Rainbow, Inc. Objections and Responses to Plaintiff Federal Trade Commission's Subpoena to Produce Documents, Information, or Objects

**EXTERNAL EMAIL - Use caution with links and attachments.**

Seth,

We are confirming receipt of your objections. We understand your position that some of these requests are overly broad. Although we believe the requests are appropriate, would your clients be willing to withdraw their relevance objection and produce in response to narrower requests? If so, please identify specific requests and propose the limitations to them under which your clients would produce.

APP 052

Thank you,
Hasan

---

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Tuesday, October 4, 2022 2:10 PM
**To:** Yost, Seth <Seth.Yost@us.dlapiper.com>; Aijaz, Hasan <maijaz@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; angela.zambrano@sidley.com; cpriest@sidley.com; tbragg@sidley.com; chummel@sidley.com
**Cc:** Hoffman, Rob <Rob.Hoffman@us.dlapiper.com>
**Subject:** RE: Hinge, Inc. and Humor Rainbow, Inc. Objections and Responses to Plaintiff Federal Trade Commission's Subpoena to Produce Documents, Information, or Objects

Seth,

In connection with the FTC's subpoenas to Hinge, Inc. and Humor Rainbow, Inc. in FTC v. Match Group, Inc., et al. please find attached the protective order from that case. Further, please find attached the order regarding ESI discovery from that case. Out of an abundance of caution, we request that any production made conform to the production guidelines outlined in the ESI order, as opposed to the FTC's production guidelines included with the subpoena. Please let me know if you have any questions.

Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

---

**From:** Yost, Seth <Seth.Yost@us.dlapiper.com>
**Sent:** Friday, September 30, 2022 5:15 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>; Aijaz, Hasan <maijaz@ftc.gov>; Wilshire, Matthew <mwilshire@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; angela.zambrano@sidley.com; cpriest@sidley.com; tbragg@sidley.com; chummel@sidley.com
**Cc:** Hoffman, Rob <Rob.Hoffman@us.dlapiper.com>
**Subject:** Hinge, Inc. and Humor Rainbow, Inc. Objections and Responses to Plaintiff Federal Trade Commission's Subpoena to Produce Documents, Information, or Objects

Good afternoon counsel,

Please find attached the objections and responses from Hinge, Inc. and Humor Rainbow, Inc. to Plaintiff Federal Trade Commission's Subpoena to Produce Documents, Information, or Objects.

Thank you,

**Seth Yost** (he, him, his)
Associate

---

T   +1 214 743 4531          **DLA Piper LLP (US)**
F   +1 972 813 6251          1900 North Pearl Street
M  +1 214 693 0009          Suite 2200
seth.yost@us.dlapiper.com          Dallas, TX  75201-4629

 dlapiper.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

**APP 054**