**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. 3:19-cv-02281-K |
| MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company, Defendants. | |

**APPENDIX IN SUPPORT OF DEFENDANTS MATCH GROUP, INC. AND
MATCH GROUP, LLC'S MOTION FOR A PROTECTIVE ORDER**

Defendants Match Group, Inc. and Match Group, LLC, by and through their counsel, submit this Appendix in support of the Motion for a Protective Order.

| Ex. | Description | App. Page(s) |
|:---:|:---|:---:|
| 1 | Notice of Depositions | APP 001-004 |
| 2 | Plaintiff Federal Trade Commission's Notice of Rule 30(b)(6) Deposition of Defendant Match Group, Inc. | APP 005-052 |
| 3 | Email from C. Priest to R. Tepfer re Notice of 30(b)(6) Deposition of Match Group, Inc. | APP 053-068 |
| 4 | Plaintiff Federal Trade Commission's Amended Notice of Rule 30(b)(6) Deposition of Defendant Match Group, LLC | APP 069-116 |
| 5 | Plaintiff Federal Trade Commission's Amended Notice of Depositions | APP 117-120 |
| 6 | Plaintiff Federal Trade Commission's Second Amended Notice of Rule 30(b)(6) Deposition of Defendant Match Group, LLC | APP 121-168 |

Dated: October 28, 2022                    Respectfully submitted,

                                           */s/ Angela C. Zambrano*
                                           Angela C. Zambrano
                                           State Bar No. 24003157
                                           angela.zambrano@sidley.com
                                           Chelsea A. Priest
                                           State Bar No. 24102375
                                           cpriest@sidley.com
                                           Tayler G. Bragg
                                           State Bar No. 24109943
                                           tbragg@sidley.com
                                           SIDLEY AUSTIN LLP
                                           2021 McKinney Ave, Suite 2000
                                           Dallas, TX 75201
                                           Telephone: 214.981.3300
                                           Fax: 214.981.3400

                                           Chad S. Hummel (admitted *pro hac vice*)
                                           chummel@sidley.com
                                           SIDLEY AUSTIN LLP
                                           1999 Avenue of the Stars, 17th Floor
                                           Los Angeles, CA 90067
                                           Telephone: 310.595.9500
                                           Fax: 310.595.9501

                                           *Attorneys for Match Group, Inc. and Match*
                                           *Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

On October 28, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas.  I hereby certify that I have served the document on all counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Angela C. Zambrano*
Angela C. Zambrano

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:19-cv-02281-K |
| Plaintiff, | |
| v. | **NOTICE OF DEPOSITIONS** |
| MATCH GROUP, INC., a corporation, and | |
| MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company, | |
| Defendants. | |

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiff Federal Trade Commission will take the following deposition at the time and place indicated, before an officer authorized to administer oaths, and by video and/or stenographic means:

| | |
|---|---|
| **Witness:** | **Adrian Ong** |
| **Date:** | **November 17, 2022** |
| **Time:** | **10:00 am CT** |
| **Location:** | **Federal Trade Commission – Southwest Region Office** |
| | **1999 Bryan Street, Suite 2150** |
| | **Dallas, Texas 75201** |

| | |
|---|---|
| **Witness:** | **Michele Watson** |
| **Date:** | **November 22, 2022** |
| **Time:** | **10:00 am CT** |
| **Location:** | **Federal Trade Commission – Southwest Region Office** |
| | **1999 Bryan Street, Suite 2150** |
| | **Dallas, Texas 75201** |

| | |
|---|---|
| **Witness:** | **Mandy Ginsburg** |
| **Date:** | **November 29, 2022** |
| **Time:** | **10:00 am CT** |
| **Location:** | **Federal Trade Commission – Southwest Region Office** |
| | **1999 Bryan Street, Suite 2150** |

**NOTICE OF DEPOSITIONS**

APP 001

**Dallas, Texas 75201**

| | |
|---|---|
| **Witness:** | **Amarnath Thombre** |
| **Date:** | **December 1, 2022** |
| **Time:** | **10:00 am CT** |
| **Location:** | **Federal Trade Commission – Southwest Region Office** |
| | **1999 Bryan Street, Suite 2150** |
| | **Dallas, Texas 75201** |

| | |
|---|---|
| **Witness:** | **Melissa Clinchy** |
| **Date:** | **December 6, 2022** |
| **Time:** | **10:00 am CT** |
| **Location:** | **Federal Trade Commission – Southwest Region Office** |
| | **1999 Bryan Street, Suite 2150** |
| | **Dallas, Texas 75201** |

| | |
|---|---|
| **Witness:** | **Greg Blatt** |
| **Date:** | **December 8, 2022** |
| **Time:** | **10:00 am CT** |
| **Location:** | **Federal Trade Commission – Southwest Region Office** |
| | **1999 Bryan Street, Suite 2150** |
| | **Dallas, Texas 75201** |

The depositions will continue from day to day until completed.  You are invited to attend and cross-examine or otherwise participate.

Respectfully submitted,

Dated: October 21, 2022

*/s/ Reid Tepfer*
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted *pro hac vice*)
JOHN R. O'GORMAN (admitted *pro hac vice*)
ERICA R. HILLIARD
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)

NOTICE OF DEPOSITIONS
2

T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T. (214) 979-9379 (Hilliard)
F: (214) 953-3079
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov
ehilliard@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**NOTICE OF DEPOSITIONS**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2022, I served the document on counsel by a manner authorized by Federal Rules of Civil Procedure.

*/s/ REID TEPFER*
REID TEPFER

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:19-cv-02281-K |
| Plaintiff, | |
| v. | **PLAINTIFF FEDERAL TRADE COMMISSION'S NOTICE OF RULE 30(b)(6) DEPOSITION OF DEFENDANT MATCH GROUP, INC.** |
| MATCH GROUP, INC., a corporation, and | |
| MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company, | |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 30(b)(6), on December 5, 2022, starting at 10:00 a.m. each day, at 1999 Bryan Street, Suite 2150, Dallas, Texas 75201, the Federal Trade Commission ("FTC") will take the deposition of Defendant Match Group, Inc. ("MGI") as represented by the person(s) most knowledgeable with respect to the topics identified below and designated to testify on MGI's behalf. The deposition will be taken upon oral examination before an official authorized by law to administer oaths. Testimony by the witness(es) will be recorded by video and/or stenographic means. Pursuant to Federal Rule of Civil Procedure 34, MGI should provide documents responsive to the Request for Documents included in this notice by December 5, 2022, at 10:00 a.m., at 1999 Bryan Street, Suite 2150, Dallas, Texas 75201.

**NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6)**

## INSTRUCTIONS

1. Unless otherwise stated, the relevant time period for all topics of examination below is 2013 to the present.

2. The FTC requests that counsel for Match Group, Inc. promptly contact FTC counsel after the receipt of this notice to meet and confer concerning the topics for examination listed below pursuant to FED. R. CIV. P. 30(b)(6).

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1. "**Advertisement**" or "**Advertising**" or "**Ad**" means any written or verbal statement, illustration, or depiction that promotes the sale of a good or service or is designed to increase consumer interest in a brand, good, or service. Advertising media include, but are not limited to, packaging and labeling, promotional materials, print, television, radio, and internet, social media, and other digital content.

2. "**Chargeback**" means a transaction that is returned as a financial liability to an acquirer by a card issuer, usually because of a disputed transaction. The acquirer may then return or "charge back" the transaction to the merchant.

3. "**Guarantee Extension**" means any free or additional subscriptions, services, or access to Match.com provided to a Customer under the terms of any Guarantee. "Guarantee Extension" shall further include the meaning as used on the Match.com website.

4. "**Guarantee Program Progress Page**" means any webpage on Match.com where Customers who have purchased a Match.com subscription subject to any Match Guarantee may check their progress towards satisfying the terms or conditions of any such Match Guarantee. "Guarantee Program Progress Page" shall further include the meaning as used on the Match.com website.

APP 006

5.  "**Identify**" or "**the identity of**" shall be construed to require identification of (a) natural persons by name, address, telephone number, and email address; and (b) businesses or other organizations by name, address, telephone number, email address, and identities of natural persons who are officers, directors or managers of the business or organization, and contact persons, where applicable.

6.  "**Match Group, Inc.**" or "**MGI**" means Match Group, Inc, a Delaware corporation and party to this litigation**.**

7.  "**Match Group, LLC**" or "**MGLLC**" shall mean Match Group, LLC and includes operations under assumed names, prior names, and predecessor entities, including Match.com, LLC.

8.  "**Match Guarantee**" means any offer on Match.com to provide free subscriptions to Match.com for Customers who fulfill certain criteria during their subscription period.

9.  "**Online Cancellation Flow**" means the process on Match.com for Match.com customers to cancel their membership or trial membership and includes each step of the cancellation process, from the Match.com homepage (as viewed on either a desktop computer or mobile device) until the cancellation request is effectuated on Match.com's system and the customer received a cancellation confirmation email, and further includes all permutations of the cancellation process that were dependent on the customer's input.

10. "**Terms of Use**" means the agreement entitled "Terms of Use" displayed to users of Match.com, including any version or revision of the agreement displayed from January 1, 2013 to the present.

## MATTERS FOR EXAMINATION

Unless otherwise stated, the relevant time period for all topics of examination below is 2013 to the present.

1.  Match Group, Inc.'s relationship with Match Group, LLC including

    a.  Any contractual rights, obligations, or other memorialized agreements relating to Match.com;

    b.  The payment of funds (and the reasons for such payments) between Match Group, Inc. and Match Group, LLC;

    c.  Any shared employees or executives between Match Group, Inc.'s and Match Group, LLC or employees or executives employed by both Match Group, Inc. and Match Group, LLC;

   d.   Any regular reports made by MGLLC employees to MGI employees;

   e.   The frequency and nature of meetings or written or oral communications between MGLLC and MGI employees or executives.

2.   The identify of Match Group, Inc. executives and their roles and responsibilities relating to Match.com.

3.   Match Group, Inc.'s role in the operation or control of Match.com or any other dating website Match Group, Inc. owns or operates, either directly or indirectly.

4.   The nature of Match Group, Inc.'s ownership interest in Match.com.

5.   Match Group, Inc.'s role in the creation, review, monitoring, or enforcement of policies and procedures relating to the operation of Match.com including concerning the following topics:

   a.   The Match Guarantee;

   b.   Customer refund requests;

   c.   Customer Chargeback requests;

   d.   Customer subscription cancellation, and

   e.   Match.com user agreements, Terms of Use, or privacy policy.

6.   Match Group, Inc.'s role in reviewing, approving, or drafting the following content relating to Match.com, including the consideration of changes to such content and why such changes were implemented or not:

   a.   Advertisements;

   b.   Customer service communications; and

   c.   User-facing website content.

7.   Any studies, testing, surveys, data analysis, or research regarding consumer understanding of or reaction to representations regarding

   a.   The Match Guarantee;

   b.   Match.com's subscription cancellation mechanisms;

   c.   Match.com's autorenewal or refund policies; and

   d.   Match.com's policies relating to customer Chargebacks.

8.   Policies and procedures relating to customer Chargeback requests related to Match.com, including the consideration of changes to such policies and procedures and why such changes were implemented or not.

9.   Match.com's refund policies and procedures, including the consideration of changes to such policies and procedures and why such changes were implemented or not.

APP 008

10.   Customer inquiries, complaints, or refund requests, including:

    a.   Policies and procedures for responding to inquiries, complaints, or refund requests, including the time periods during which such policies were in effect;

    b.   The volume and subject of any such customer inquiries, complaints, or refund requests; and

    c.   Policies and procedures for compiling, storing, analyzing customer inquiries, complaints, or refund requests.

11.   Any strategies or goals related to increasing Match.com subscriptions or reducing subscription cancellations, refunds or refunds requests, or Chargebacks.

12.   Consideration, understanding, or awareness of the possibility or likelihood of

    a.   Consumers misunderstanding or being misled by representations concerning the Match Guarantee or Match.com's cancellation procedures; or

    b.   Consumers believing that their subscriptions had been cancelled when in fact it had not been cancelled.

13.   Identification and authentication of all 10-K (annual reports), 10-Q (quarterly reports), and 8-K (current reports) MGI filed with the SEC.

14.   MGI's responses to the FTC's First Request for Production to Match Group, Inc. and the FTC's March 14, 2017 Civil Investigative Demand to Match Group, Inc., including its efforts to search for and produce responsive documents.

15.   MGI's budget control, hiring and compensation, management goals, and performance evaluations, including maintenance of organizational rules and policies.

16.   MGI's policies and procedures for reviewing and approving systems of legal compliance or internal policy compliance.

17.   MGI's policies, procedures, and practices for data collection and document retention.

18.   The Match Guarantee policy, including:

    a.   Each step Match.com customers have been required to take to redeem or qualify for the Guarantee Extension;

    b.   Any variation of the Guarantee policy and the dates during which each was in effect;

    c.   The reason for implementing any variation of the Guarantee policy;

    d.   Any criteria Defendant has used to determine whether to grant a customer's request to redeem the Guarantee, grant a Guarantee Extension, or grant a customer refund request relating to the Guarantee; and

    e.   Any other limitation on a customer's ability to redeem the Guarantee.

19.	The Guarantee Program Progress Page, including:

a.	Any requirement that customers use the tracker within a limited time frame to receive a Guarantee Extension;

b.	Any variation of the Guarantee Program Progress Page and the dates during which each was in effect;

c.	The reason for implementing any changes to or variations of the Guarantee Program Progress Page;

d.	The implementation and/or discontinuation of email notifications related to a customer's Guarantee progress; and

e.	Any alternative methods for customers to redeem the Match Guarantee or request a Guarantee Extension and how customers were made aware of any such alternative methods.

20.	Advertisements referencing the Match Guarantee, including:

a.	The forms of advertising used;

b.	The timing of any advertising campaign; and

c.	The representations made in each campaign.

21.	All methods by which customers were provided information on how to redeem the Match Guarantee or request a Guarantee Extension and the nature of the information.

22.	The suspension or discontinuation of the Match Guarantee, including:

a.	The reasons for suspending or discontinuing the program;

b.	The timing of any suspension or discontinuation; and

c.	How the policy has been applied to existing customers after suspension or discontinuation.

23.	Data by year relating to the Match Guarantee and Guarantee Extensions, including:

a.	The number of customers who purchased subscriptions potentially eligible for Guarantee Extensions;

b.	The number of customers who satisfied the criteria to receive a Guarantee Extension;

c.	The number of customers who attempted to redeem the Match Guarantee and receive a Guarantee Extension;

d.	The number of customers who received a Guarantee Extension; and

e.	The number of customers who received a Guarantee Extension only after contacting Match.com's customer service.

24.	Match.com's policies and procedures relating to customer Chargeback requests, including regarding:

a. The circumstances in which the operators of Match.com will dispute a customer Chargeback;

b. The circumstances in which the operators of Match.com will deny customer account access due to a Chargeback request;

c. The circumstances in which the operators of Match.com will remove or reinstate the account of a customer who requests a Chargeback;

d. The effective dates of any of policy concerning customer Chargebacks and the reason for any changes to or suspensions of the policy.

25.    Data by year relating to Match.com's customer Chargeback requests, including:

a. The number of customers who had their account suspended or terminated because they requested a Chargeback and had their request subsequently denied or overturned by their financial institution;

b. The number of customers who had (i) had account access suspended or terminated because they requested a Chargeback and (ii) had access to their account reinstated after contacting customer service.

26.    All variations of the complete Online Cancellation Flow for Match.com that have been in effect at any time between September 25, 2014 and the present and

a. The time period during which the particular variation of the Online Cancellation Flow was in effect;

b. The reason for the changes from previous variations; and

c. The justification or reason for each step or required consumer action in each such variation of the Online Cancellation Flow.

27.    Changes considered or made to the Online Cancellation Flow between September 25, 2014, and the present including changes made in response to customer complaints or feedback, or allegations that the cancellation flow was cumbersome, complex, confusing, difficult to use, defective, or ineffective, including, but not limited to, Plaintiff's allegations that Defendant's cancellation processes violated the Restore Online Shoppers Confidence Act, 15 U.S.C. § 8403(3).

28.    For each cancellation method provided by Match.com:

a. The nature and requirements of the cancellation method;

b. All methods by which Match.com provided information to customers on how to access or use the cancellation method and the nature of the information;

c. On a monthly basis from September 2014 until the present, the number of customers who successfully cancelled via the particular cancellation method;

d. On a monthly basis September 2014 until the present, the percentage of customers who successfully used the cancellation method as compared to the

total number of consumers who successfully canceled by any method during that same period.

29. If MGI contends that a majority or a certain percentage of customers who initiated the Online Cancellation Flow process were successful in cancelling their subscriptions within a certain time period;

    a.  All facts and analysis that support this contention, including:

        i.  The nature and characteristics of any data that support the contention;

        ii.  The time periods analyzed;

        iii.  The facts that Defendants contend tend to show that the customer initiated the Online Cancellation Flow process; and

        iv.  The facts that Defendants contend tend to show that the customer was successful in cancelling their subscription;

    b.  The identify of all individuals who participated in the analysis and the nature of their participation; and

    c.  Whether the data supporting the contention was produced to the FTC, and the date, format, and Bates-number range of the production.

30. Any problems or customer complaints relating to the design or functionality of Match.com's password input process or "reset password" process within the Online Cancellation Flow between September 25, 2014 and the present, including:

    a.  The nature of the problem or complaint;

    b.  Attempts to address the problem or complaint;

    c.  The time period for which the problem may have impacted customers; and

    d.  The number of consumers who complained about or were impacted by each particular issue.

31. Defendant's collection and maintenance of data concerning consumer interactions with the Online Cancellation Flow after September 25, 2014, including:

    a.  Whether such data is routinely collected and maintained by MGI, and if so, for what purpose;

    b.  Whether such data is currently in the possession, custody, or control of MGI;

    c.  The format of such data and the information captured by the data;

    d.  The time period covered by such data currently in the possession, custody, or control of MGI;

    e.  If any such data since September 25, 2014, is not currently in the possession, custody, or control of MGI, the reason the data is incomplete and, if the data

was formerly in MGI's possession, custody, or control but is no longer, the date upon which the data became no longer available and the circumstances;

f.   The repository in which such data is or was stored;

g.   The person(s) responsible for maintaining such data;

h.   If all or part of such data was produced to the FTC, the date, format, and Bates-number range of the production; and

i.   The substance of any such data.

32.   The data and conclusions concerning Match.com's cancellation flow customer dropout rate referenced by the individuals in the emails attached as Exhibits 1, 2, and 3, and the presentation attached as Exhibit 4, including:

a.   The location and nature of the data;

b.   The methodology for collecting this data;

c.   The specific steps in the cancellation flow to which the data is associated;

d.   Whether that data is in MGI's possession, custody, or control; and

e.   Whether that data has been produced to the FTC.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.   Documents any person designated to testify on Match Group, Inc.'s behalf in this deposition reviewed in preparation for the deposition. To the extent that Match Group, Inc. previously produced such documents to the FTC, Match Group, Inc. may refer to them by Bates number in lieu of re-production.

Dated:  October 21, 2022                    Respectfully submitted,

                                        */s/ Reid Tepfer*
                                        REID TEPFER
                                        M. HASAN AIJAZ
                                        SARAH ZUCKERMAN (admitted *pro hac vice*)
                                        JOHN R. O'GORMAN (admitted *pro hac vice*)
                                        ERICA R. HILLIARD
                                        Texas Bar No. 24079444 (Tepfer)
                                        Virginia Bar No. 80073 (Aijaz)
                                        New York Bar No. 5603832 (Zuckerman)
                                        Texas Bar No. 24121292 (O'Gorman)
                                        Mississippi Bar No. 104244 (Hilliard)

Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T. (214) 979-9379 (Hilliard)
F: (214) 953-3079
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov
ehilliard@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 21, 2022, I served the foregoing document on the

following counsel of record via e-mail.

**Attorneys for Match Group, Inc. and Match Group, LLC:**
Angela C. Zambrano
angela.zambrano@sidley.com
Chelsea A. Priest
cpriest@sidley.com
Tayler G. Bragg
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067

*/s/ REID TEPFER*
REID TEPFER

APP 015

| | |
|---|---|
| **From:** | abanish mishra |
| **To:** | Melissa Clinchy |
| **CC:** | Fazal Sorathia |
| **Sent:** | 5/3/2017 2:37:55 PM |
| **Subject:** | RE: Data request on resign flow |

Melissa,

I ran a query against all the new pagecodes you provided but I see data only for pagecode 819 and 820 in database. Others don't have data in production (`select top 10 * from Page.dbo.PageLive where PageCode in (7047990 ,1223790,1223791)`)

Here is the data I gathered for last 90 days for PageCode 819 and 820

| PageCode | Path | Count |
|---|---|---|
| 819 | /resign/resignsurvey2.aspx/ | 1303526 |
| 820 | /resign/resignsurvey2.aspx | 637621 |

```
SELECT PCD.PageCode,Path,Count(Distinct(S.SID)) from Page.dbo.Page P
LEFT JOIN Match_4.dbo.PageCodesDynamic PCD on P.PageCode=PCD.PageCode
INNER JOIN [Session].dbo.UserSessions S on S.SID=P.SID
WHERE PCD.PageCode in (7047990 ,1223790,1223791,819,820)
GROUP BY PCD.PageCode,Path
```

Thanks,
Abanish

**From:** Melissa Clinchy
**Sent:** Wednesday, May 3, 2017 10:46 AM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi guys!

I worked with Poossen – and it looks like the Page IDs of the cancellation flow page may have changed. Are you able to re-run this report with these page codes?

Password : `7047990`
Resign Survey: `1223790`
Resign Survey 2: `819 & 820`
Confirmation Page: `1223791`

Thank you!

**From:** Fazal Sorathia
**Sent:** Thursday, March 30, 2017 10:14 AM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Okay. Abanish will provide you the data by next week.

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 5:00 PM

Exh. 1

**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

That should be good. If it's possible to pull Q1 data that'd be great – otherwise, Q4 would work as well.

Thank you!

**From:** Fazal Sorathia
**Sent:** Wednesday, March 29, 2017 4:52 PM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

If it's once a year request then we can send you the numbers. We will get you something by next week? Is it ok?

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 4:33 PM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

For now – it's an adhoc request – but we've needed it about once a year (once someone wants to look at it).

I don't have access to MARP – but if I could get access and pull it myself, that'd be great.

Thanks!

**From:** Fazal Sorathia
**Sent:** Wednesday, March 29, 2017 4:00 PM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Melissa – I am not aware of any existing report.
Do you need this data going forward for long time or it's an adhoc request?
Do you have access to MARP? We can probably give you sql which you can run whenever you need.

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 3:16 PM
**To:** Abanish Mishra <Abanish.Mishra@match.com>; Fazal Sorathia <Fazal.Sorathia@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

Were you ever able to look into this?

Thanks!

**From:** Abanish Mishra
**Sent:** Monday, March 27, 2017 9:11 AM

Exh. 1

**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Melissa Clinchy <melissa.clinchy@match.com>
**Subject:** RE: Data request on resign flow

Fazal ,

Can you remember any care related report based on resign flow? If it doesn't exist can you please prioritize this request ?

Thanks,
Abanish

**From:** Melissa Clinchy
**Sent:** Friday, March 24, 2017 5:10 PM
**To:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** FW: Data request on resign flow

Hi Abanish!

Way back in 2014 we got some data around where members fall out of the resign flow. I was wondering if you could help in pulling that data again, or if you can point me in the right direction?

We basically want to say when members drop out of the resignation flow who don't fully complete resignation on site, but start the process.

Here's the email from Jim Talbot in 2014 (The entire thread is below):

Here's the output for the last resign flow page users saw in sessions where I'm not logging a resignation. It's for a week's worth of data. I'm not exactly sure what the pagecodes mean since I just pulled them as the pages successful every resigning user saw in his/her resignation session. However, you should be able to walk through the flow and match them up.

| Pagecode | Path | Sessions | % of Sessions |
|---|---|---|---|
| 189 | /resign/resign.aspx | 54,247 | 80.02% |
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% |
| 194 | /resign/resignconf.aspx | 4,805 | 7.09% |
| 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| 820 | /resign/resignsurvey2.aspx | 86 | 0.13% |



**Melissa Clinchy** | Supervisor, Technical Resolutions
Customer Support
Desk: 972.638.8687 | Mobile: 469.212.4102

**From:** Kris Auderer
**Sent:** Tuesday, May 17, 2016 12:14 PM

Exh. 1

MATCHFTC_0039018

**To:** Melissa Clinchy <melissa.clinchy@match.com>
Case 3:19-cv-02281-K   Document 161   Filed 10/28/22   Page 22 of 171   PageID 2829
**Subject:** RE: Quick question on reporting user resignations

Since this was 2014, can you see if you can get updated data by 2:30pm today?  I know it's a longshot.  Not sure if Jiten or Matt could help or maybe Jim Talbott or Taylor?



**Kris Auderer** |  Director, Customer Care Operations & Projects
Match & People Media
**desk** 214.576.9518  |  **mobile** 469.442.5002

**From:** Melissa Clinchy
**Sent:** Tuesday, May 17, 2016 12:07 PM
**To:** Kris Auderer <Kris.Auderer@match.com>
**Subject:** FW: Quick question on reporting user resignations



**Melissa Clinchy** | Supervisor, Technical Resolutions
Customer Support
Desk: 972.638.8687 | Mobile: 469.212.4102

**From:** Melissa Clinchy
**Sent:** Friday, August 21, 2015 12:00 PM
**To:** Kris Auderer <Kris.Auderer@match.com>
**Subject:** FW: Quick question on reporting user resignations

Here you go!

**From:** Melissa Schaaf
**Sent:** Wednesday, September 24, 2014 4:15 PM
**To:** Kris Auderer
**Subject:** FW: Quick question on reporting user resignations

FYI



**Melissa Schaaf** | Supervisor, Technical Resolutions
Customer Support
Office: 972.638.8687 | Mobile: 469.212.4102

---

**From:** Melissa Schaaf
**Sent:** Tuesday, February 18, 2014 3:17 PM
**To:** Kris Auderer
**Subject:** RE: Quick question on reporting user resignations

Exh. 1

MATCHFTC00019
APP 019

| | | | |
|---|---|---|---|
| 189 | /resign/resign.aspx | 54,247 | 80.02% **Password Page** |
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% **3 for 1 offer** |
| 194 | /resign/resignconf.aspx | 4,805 | 7.09% **Confirmation Page** |
| 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% **Survey** |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% **Tell us more** |
| 820 | /resign/resignsurvey2.aspx | 86 | 0.13% **Tell us more** |

**189**



**190**



FOIA Confidential

Exh. 1

MATCHFTC-03P-0021



817

Exh. 1

MATCHFTC-00193022



**819/820**

Exh. 1

MATCHFTC0619023



**From:** Summer Hogsed
**Sent:** Thursday, January 09, 2014 3:33 PM
**To:** Rose P
**Cc:** Kris Auderer; Melissa Schaaf
**Subject:** RE: Quick question on reporting user resignations

Done.

**Summer Hogsed** | Manager, Product
8300 Douglas Avenue, Ste 800
Dallas, TX 75225
t 972.892.9570 f 972.892.9578
www.match.com


**From:** Rose P
**Sent:** Thursday, January 09, 2014 3:30 PM
**To:** Summer Hogsed
**Cc:** Kris Auderer; Melissa Schaaf
**Subject:** RE: Quick question on reporting user resignations

Hi Summer –

Based on our analysis below we liked to close this WI please! Thank you!

| 88117 | 1.15 | CSA | CSA: Display date and time when a member accessed the cancellation page |
|-------|------|-----|-----------------------------------------------------------------------------|

Exh. 1

MATCHFTC0069024

Thanks,

**Rose Phommachanh** | Supervisor, Technical Resolutions | Customer Care
Email: rose.p@match.com | Phone: 972.638.8686



**From:** Kris Auderer
**Sent:** Thursday, January 09, 2014 3:27 PM
**To:** Melissa Schaaf; Rose P
**Subject:** RE: Quick question on reporting user resignations

Oh, if there's a WI for this will you get it closed please?  Thanks.

**Kris Auderer** |  Director, Customer Care Operations
Match.com US
**o** 214.576.9518  |  **c** 469.442.5002



---

**From:** Melissa Schaaf
**Sent:** Thursday, January 09, 2014 3:25 PM
**To:** Kris Auderer; Rose P
**Subject:** RE: Quick question on reporting user resignations

Hi Kris,

I looked over this with Rose and here's what we think:

|     | Path | Sessions | % of Sessions |
|-----|------|----------|---------------|
| 189 | /resign/resign.aspx | 54,247 | 80.02% |
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% |
| 194 | /resign/resignconf.aspx | 4,805 | 7.09% |
| 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| 820 | /resign/resignsurvey2.aspx | 86 | 0.13% |

Matching up Taylor's screenshots and the what Jim provided,  80% of members (highlighted above) drop out before they even have to enter their password.  So the member saw the page where they would have to enter their password and then backed out.

Since most members drop out before even entering their password, would it be helpful to agents? I wouldn't even count  that page as the beginning the cancellation process.

We may just be opening a can of worms for the member to fight back – "well, you see that I TRIED to cancel, can you refund me?".

Exh. 1

Also – agents will be able to see whether or not a cancellation email was sent fairly soon in CSA, which I feel like would be more helpful.

Unless we're going to change refund rules based on when they drop out, I think we should table it.

Thanks!

---

**From:** Kris Auderer
**Sent:** Thursday, January 02, 2014 10:23 AM
**To:** Melissa Schaaf; Rose P
**Subject:** FW: Quick question on reporting user resignations

Can you guys look at this as a side project?  Let me know what you think we should do/show in CSA (if anything)…is this valuable?  Thanks.

**Kris Auderer** |  Director, Customer Care Operations
Match.com US
**o** 214.576.9518  |  **c** 469.442.5002

    

---

**From:** Kris Auderer
**Sent:** Friday, December 20, 2013 1:51 PM
**To:** Kris Auderer
**Subject:** FW: Quick question on reporting user resignations


**Kris Auderer** |  Director, Customer Care Operations
Match.com US
**o** 214.576.9518  |  **c** 469.442.5002

    

---

**From:** Bret Williams
**Sent:** Monday, October 28, 2013 12:26 PM
**To:** Michele Watson; Kris Auderer
**Cc:** Taylor Claiborne
**Subject:** FW: Quick question on reporting user resignations

Taylor did a great job getting you the resign flow.   Included is a flow for a sub and a non sub with URLs and pagecodes.   Adding Taylor to respond with any questions you all may have.

---

**From:** Taylor Claiborne
**Sent:** Monday, October 28, 2013 12:23 PM
**To:** Bret Williams
**Subject:** RE: Quick question on reporting user resignations


Bret:

I attached the screenshots with page codes and URLs and Screenshots in it.  I did the Member resignation flow (non sub) and subscriber flow with membership resignation.  If you query my active pages, the only page code I don't have a screenshot for is the highlighted one, although the history suggests I hit it.  Not sure how to translate that.

Exh. 1

Pagecode   Path

189   /resign/resign.aspx
190   /resign/resignsave.aspx
194   /resign/resignconf.aspx
817   /resign/resignsurvey.aspx
819   /resign/resignsurvey2.aspx/
820   /resign/resignsurvey2.aspx

Thanks,

## J. Taylor Claiborne
**Manager, QA**
Work: 214.576.9409
Cell: 214.906.6775
*The most exciting phrase to hear in science, the one that heralds new discoveries, is not 'Eureka!' but 'That's funny...' --Isaac Asimov*

---

**From:** Bret Williams
**Sent:** Monday, October 28, 2013 8:24 AM
**To:** Taylor Claiborne
**Subject:** FW: Quick question on reporting user resignations

---

**From:** Bret Williams
**Sent:** Friday, October 25, 2013 3:58 PM
**To:** Michele Watson
**Cc:** Kris Auderer
**Subject:** RE: Quick question on reporting user resignations

Sure.  This should be easy to do.   Give me a day or so pls.

---

**From:** Michele Watson
**Sent:** Friday, October 25, 2013 3:51 PM
**To:** Bret Williams
**Cc:** Kris Auderer
**Subject:** FW: Quick question on reporting user resignations

Bret –

Can you direct us to which screens in the resignation flow match with the pagecodes that Jim references?

We're trying to determine the level of interest we have in showing the member's resignation attempt (how far they go in the resignation process) to the frontline agents in the CSA.  We get a lot of complaints from members who tell us they cancelled on site and it didn't work – so thought this might be a way to give the agents more information to explain the member didn't complete the resignation flow.

**Michele Watson**
SVP Global Customer Care
Match.com, PeopleMedia.com, Chemistry.com, Match International, Kiss.com

Email:  michele.watson@match.com
Phone:  214.576.3271
Mobile:  972.983.6971

   

Exh. 1

**From:** Jim Talbott
**Sent:** Friday, October 25, 2013 3:12 PM
**To:** Kris Auderer
**Cc:** Michele Watson; Melissa Schaaf; Rose P
**Subject:** RE: Quick question on reporting user resignations

Here's the output for the last resign flow page users saw in sessions where I'm not logging a resignation. It's for a week's worth of data. I'm not exactly sure what the pagecodes mean since I just pulled them as the pages successful every resigning user saw in his/her resignation session. However, you should be able to walk through the flow and match them up.

| Pagecode | Path | Sessions | % of Sessions |
|---|---|---|---|
| 189 | /resign/resign.aspx | 54,247 | 80.02% |
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% |
| 194 | /resign/resignconf.aspx | 4,805 | 7.09% |
| 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| 820 | /resign/resignsurvey2.aspx | 86 | 0.13% |

---

**From:** Kris Auderer
**Sent:** Thursday, October 24, 2013 4:08 PM
**To:** Jim Talbott
**Cc:** Michele Watson; Melissa Schaaf; Rose P
**Subject:** Quick question on reporting user resignations

Hi Jim,

Long time, no see J

I wanted to touch base with you on an open work item we have (88117) to track where members fall out of the resignation flow and display it in CSA. I was wondering if we have any data on how often members "fall out" of the resignation flow at each specific point (during survey, retention offer, etc.) to see how we want to prioritize our work item. Is this data you can get easily? I'm out tomorrow but Rose Phommachanh can answer any questions or provide additional details if needed. Thanks!

**Kris Auderer**
Director, Care Operations
Match.com North America

Email:   kris.auderer@match.com
Phone:   214.576.9518
Mobile:  469.442.5002

   

Exh. 1

MATCHFTC APP 028

| From: | bret williams <bret.williams@match.com> |
|---|---|
| Sent: | Friday, October 25, 2013 3:58 PM |
| To: | Michele Watson |
| Cc: | Kris Auderer |
| Subject: | RE: Quick question on reporting user resignations |

Sure.  This should be easy to do.   Give me a day or so pls.

---

**From:** Michele Watson
**Sent:** Friday, October 25, 2013 3:51 PM
**To:** Bret Williams
**Cc:** Kris Auderer
**Subject:** FW: Quick question on reporting user resignations

Bret –

Can you direct us to which screens in the resignation flow match with the pagecodes that Jim references?

We're trying to determine the level of interest we have in showing the member's resignation attempt (how far they go in the resignation process) to the frontline agents in the CSA.  We get a lot of complaints from members who tell us they cancelled on site and it didn't work – so thought this might be a way to give the agents more information to explain the member didn't complete the resignation flow.

**Michele Watson**
SVP Global Customer Care
Match.com, PeopleMedia.com, Chemistry.com, Match International, Kiss.com

Email:   michele.watson@match.com
Phone:   214.576.3271
Mobile:   972.983.6971

    

**From:** Jim Talbott
**Sent:** Friday, October 25, 2013 3:12 PM
**To:** Kris Auderer
**Cc:** Michele Watson; Melissa Schaaf; Rose P
**Subject:** RE: Quick question on reporting user resignations

Here's the output for the last resign flow page users saw in sessions where I'm not logging a resignation. It's for a week's worth of data. I'm not exactly sure what the pagecodes mean since I just pulled them as the pages successful every resigning user saw in his/her resignation session. However, you should be able to walk through the flow and match them up.

| Pagecode | Path | Sessions | % of Sessions |
|---|---|---|---|
| 189 | /resign/resign.aspx | 54,247 | 80.02% |
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% |

1

Exh. 2

| 194 | /resign/resignconf.aspx    | 4,805 | 7.09% |
| 817 | /resign/resignsurvey.aspx  | 3,092 | 4.56% |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| 820 | /resign/resignsurvey2.aspx  |    86 | 0.13% |

---

**From:** Kris Auderer
**Sent:** Thursday, October 24, 2013 4:08 PM
**To:** Jim Talbott
**Cc:** Michele Watson; Melissa Schaaf; Rose P
**Subject:** Quick question on reporting user resignations

Hi Jim,

Long time, no see ☺

I wanted to touch base with you on an open work item we have (88117) to track where members fall out of the resignation flow and display it in CSA. I was wondering if we have any data on how often members "fall out" of the resignation flow at each specific point (during survey, retention offer, etc.) to see how we want to prioritize our work item. Is this data you can get easily? I'm out tomorrow but Rose Phommachanh can answer any questions or provide additional details if needed. Thanks!

**Kris Auderer**
Director, Care Operations
Match.com North America

Email:   kris.auderer@match.com
Phone:  214.576.9518
Mobile:  469.442.5002

   

2

Exh. 2

MATCHFTC_AdsP2030

| | | |
|---|---|---|
| **From**: | Giridhar Tandri [Giridhar.Tandri@match.com] | |
| **Sent**: | 3/19/2018 10:40:52 AM | |
| **To**: | bret williams [bret.williams@match.com] | |
| **Subject**: | RE: Data Request: Resign Flow drop-out | |

It makes sense to involve the CoreWeb developers on this.

Feel free to punt it to Coreweb wherever it makes sense.

**From:** Bret Williams
**Sent:** Friday, March 16, 2018 9:36 AM
**To:** Giridhar Tandri <Giridhar.Tandri@match.com>
**Subject:** FW: Data Request: Resign Flow drop-out

I want to preclude a "foodfight" about who "owns" which feature.   Since CoreWeb has a dozen developers on it, and resignation isn't a Billing function, and Atanas has much better things to do, surely someone on the CoreWeb team can answer questions about page codes.   If not, we have bigger problems about competency than I thought.   If we are going to keep Match8 around for another 5 years we should hire some people to maintain it.   Just my opinion.

**From:** Bret Williams
**Sent:** Friday, March 16, 2018 8:53 AM
**To:** Dinh Thi Bui <DinhThi.Bui@match.com>; Krystal Roloff <Krystal.Roloff@peoplemedia.com>; Shamika Naik <Shamika.Naik@match.com>; Brett Richards <Brett.Richards@match.com>; Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data Request: Resign Flow drop-out

No I do not.   I suggest someone from QA take a user in production, step through the resignation process, and examine the session data that is created.   Alternatively you could get one of the CoreWeb team devs  to look at the code and document the flows.

**From:** Dinh Thi Bui
**Sent:** Thursday, March 15, 2018 10:19 PM
**To:** Krystal Roloff <Krystal.Roloff@peoplemedia.com>; Shamika Naik <Shamika.Naik@match.com>; Brett Richards <Brett.Richards@match.com>; Abanish Mishra <Abanish.Mishra@match.com>; Bret Williams <Bret.Williams@match.com>
**Subject:** FW: Data Request: Resign Flow drop-out

Hey Abanish,

This is what I found when I run a query on all page code that have "**resign**" in it since the last 2 days. Most of them match with the ones describe on the thread below.
My concern is on the ones I highlighted in yellow that I can't find in the original list of page codes (from the first email of this thread)
@Bret, are you aware of any page code we might have added last year on the resign flow

| pagecode | | path | Users | |
|---|---|---|---|---|
| | 189 | /resign/resign.aspx | | 45447 |
| | 819 | /resign/resignsurvey2.aspx/ | | 31501 |
| | 194 | /resign/resignconf.aspx | | 31373 |

Exh. 3

| 817 | /resign/resignsurvey.aspx | 18795 |
|---|---|---|
| 820 | /resign/resignsurvey2.aspx | 15804 |
| 187 | /resign/reactmemb.aspx | 10371 |
| 190 | /resign/resignsave.aspx | 7861 |
| 188 | /resign/reactconf.aspx | 6074 |
| 2655624 | /resign/saveoffer/interrupt | 6035 |
| 1334779 | /resign/saveoffer/optout | 1053 |
| 1334782 | /resign/saveoffer/ | 435 |
| 1334791 | /resign/saveoffer | 182 |

Below is the code used:

```
select pg.pagecode,path,count(distinct pg.UserID) session
from page.dbo.pagelive pg
inner join match_4.dbo.pagecodesdynamic code (nolock)  on pg.pagecode = code.pagecode
where path like '%resign%' and pg.pagedt>= '2018-03-13'
group by pg.pagecode,path
```

**From:** Shamika Naik
**Sent:** Thursday, March 15, 2018 11:28 AM
**To:** Krystal Roloff <Krystal.Roloff@peoplemedia.com>; Brett Richards <Brett.Richards@match.com>; Dinh Thi Bui <DinhThi.Bui@match.com>
**Subject:** RE: Data Request: Resign Flow drop-out

+Dinh Thi owns the resignation flow.

**From:** Krystal Roloff
**Sent:** Thursday, March 15, 2018 9:33 AM
**To:** Brett Richards <Brett.Richards@match.com>; Shamika Naik <Shamika.Naik@match.com>
**Subject:** FW: Data Request: Resign Flow drop-out

Hi guys —

Can either of you answer Abanish's question below on the page codes?

**From:** Abanish Mishra
**Sent:** Thursday, March 15, 2018 9:14 AM
**To:** Krystal Roloff <Krystal.Roloff@peoplemedia.com>; Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Kristin Higgins <Kristin.Higgins@match.com>
**Subject:** RE: Data Request: Resign Flow drop-out

Krystal,

Last time when I worked with Melissa she provided me the following page codes for cancellation flow(attaching the most recent thread ) . When I ran analysis with these page codes for last 90 days this is how the aggregated data looks like this . Please notice that I see data only for 819 and 820 in prod (similar to last time). Can you please check if the highlighted page codes are still valid?

Exh. 3

Password : 7047990
Resign Survey: 1223790
Resign Survey 2 : 819 & 820
Confirmation Page : 1223791

| PageCode | Path | Count |
|---|---|---|
| 819 | /resign/resignsurvey2.aspx/ | 1142151 |
| 820 | /resign/resignsurvey2.aspx | 567311 |

Once you confirm that the page codes are correct I will send you more granular data with SessionID in it.

Thanks,
Abanish

**From:** Krystal Roloff
**Sent:** Thursday, March 15, 2018 7:55 AM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>; Abanish Mishra <Abanish.Mishra@match.com>
**Cc:** Kristin Higgins <Kristin.Higgins@match.com>
**Subject:** Data Request: Resign Flow drop-out

Hi guys,

Adrian has a meeting with Hesam coming up, and he'd like to get some fresh numbers on the resignation flow and where members are dropping out for the Happiness Project. We'd love to be able to correlate the data to refund requests and chargebacks as part of our analysis.

Would it be possible to send me the data you provided Melissa below for the month of November? Additionally, would it be possible to provide the IDs associated with the sessions? I know that will be a massive amount of data, but we'd need the member ID in order to associate it with refund requests and chargebacks.

Let me know if this is doable. Old trail of emails is below for reference.



**Krystal Roloff** | Director, Community Operations
**o** 214.576.9489 | **c** 817.913.5379

**From:** Adrian Ong
**Sent:** Wednesday, March 14, 2018 11:06 AM
**To:** Krystal Roloff <Krystal.Roloff@peoplemedia.com>
**Subject:** FW: Resign Flow drop-out

**From:** Adrian Ong
**Sent:** Monday, March 5, 2018 5:23 PM
**To:** Hesam Hosseini <Hesam.Hosseini@match.com>
**Subject:** FW: Resign Flow drop-out

Exh. 3

MATCHFTC0082883

This is what I was talking about earlier … the below shows the breakdown of pages where resignconf.aspx is the confirmation page for the resignation / renewal cancel flow, and as you can see, not everyone makes it to the end …

**From:** Melissa Clinchy
**Sent:** Wednesday, April 5, 2017 6:33 PM
**To:** Adrian Ong <Adrian.Ong@match.com>
**Subject:** Resign Flow drop-out

Hi Adrian,

Here's the data on the resign flow and where members drop out. I've included screenshots of each page.

These numbers are pretty different than what we pulled originally back in 2014. However – Abanish ran it for the past 90 days and the 2014 numbers were 7 days.

Let me know if you have any questions or want to discuss.

| PageCode | Path | Description | Sessions | % of Session |
|----------|------|-------------|----------|--------------|
| 817 | /resign/resignsurvey.aspx | Survey | 762659 | 12% |
| 194 | /resign/resignconf.aspx | Confirmation Page | 1354576 | 21% |
| 819 | /resign/resignsurvey2.aspx/ | Tell Us More | 1352883 | 20% |
| 820 | /resign/resignsurvey2.aspx | Tell Us More | 642131 | 10% |
| 190 | /resign/resignsave.aspx | 3 for 1 Offer | 363404 | 6% |
| 189 | /resign/resign.aspx | Password Page | 2130411 | 32% |

189

Exh. 3



190



194

CONFIDENTIAL – FTC v. MATCH, Case No. 3:19-cv-02281-K

MATCHFTC0082086



817

Exh. 3

819/820

CONFIDENTIAL – FTC v. MATCH, Case No. 3:19-cv-02281-K                    MATCHFTC-0062038



**From:** Abanish Mishra
**Sent:** Wednesday, April 5, 2017 11:10 AM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>; Melissa Clinchy <melissa.clinchy@match.com>
**Subject:** RE: Data request on resign flow


This data is for last 90 days

```
SELECT PCD.PageCode,Path,Count(Distinct(S.SID)) from Page.dbo.Page P
LEFT JOIN Match_4.dbo.PageCodesDynamic PCD on P.PageCode=PCD.PageCode
INNER JOIN [Session].dbo.UserSessions S on S.SID=P.SID
WHERE PCD.PageCode in (189,190,194,817,819,820)
GROUP BY PCD.PageCode,Path
```


**From:** Fazal Sorathia
**Sent:** Thursday, March 30, 2017 10:14 AM
**To:** Melissa Clinchy <melissa.clinchy@match.com>

Exh. 3

Cc: Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Okay. Abanish will provide you the data by next week.

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 5:00 PM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

That should be good. If it's possible to pull Q1 data that'd be great – otherwise, Q4 would work as well.

Thank you!

**From:** Fazal Sorathia
**Sent:** Wednesday, March 29, 2017 4:52 PM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

If it's once a year request then we can send you the numbers. We will get you something by next week? Is it ok?

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 4:33 PM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

For now – it's an adhoc request – but we've needed it about once a year (once someone wants to look at it).

I don't have access to MARP – but if I could get access and pull it myself, that'd be great.

Thanks!

**From:** Fazal Sorathia
**Sent:** Wednesday, March 29, 2017 4:00 PM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Melissa – I am not aware of any existing report.
Do you need this data going forward for long time or it's an adhoc request?
Do you have access to MARP? We can probably give you sql which you can run whenever you need.

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 3:16 PM

Exh. 3

MATCHFTC0682040

**To:** Abanish Mishra <Abanish.Mishra@match.com>; Fazal Sorathia <Fazal.Sorathia@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

Were you ever able to look into this?

Thanks!

---

**From:** Abanish Mishra
**Sent:** Monday, March 27, 2017 9:11 AM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Melissa Clinchy <melissa.clinchy@match.com>
**Subject:** RE: Data request on resign flow

Fazal ,

Can you remember any care related report based on resign flow? If it doesn't exist can you please prioritize this request ?

Thanks,
Abanish

---

**From:** Melissa Clinchy
**Sent:** Friday, March 24, 2017 5:10 PM
**To:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** FW: Data request on resign flow

Hi Abanish!

Way back in 2014 we got some data around where members fall out of the resign flow. I was wondering if you could help in pulling that data again, or if you can point me in the right direction?

We basically want to say when members drop out of the resignation flow who don't fully complete resignation on site, but start the process.

Here's the email from Jim Talbot in 2014 (The entire thread is below):

Here's the output for the last resign flow page users saw in sessions where I'm not logging a resignation. It's for a week's worth of data. I'm not exactly sure what the pagecodes mean since I just pulled them as the pages successful every resigning user saw in his/her resignation session. However, you should be able to walk through the flow and match them up.

| Pagecode | | Path | Sessions | % of Sessions |
|---|---|---|---|---|
| | 189 | /resign/resign.aspx | 54,247 | 80.02% |
| | 190 | /resign/resignsave.aspx | 4,294 | 6.33% |
| | 194 | /resign/resignconf.aspx | 4,805 | 7.09% |
| | 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% |
| | 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| | 820 | /resign/resignsurvey2.aspx | 86 | 0.13% |

Exh. 3

**Melissa Clinchy** | Supervisor, Technical Resolutions
Customer Support
Desk: 972.638.8687 | Mobile: 469.212.4102

Exh. 3

# Resignation Crisis and Intervention Points

Dallas, July 20th 2017



Exh. 4

APP 043

# Executive summary

■ **Resignations** are concentrated at the **beginning** of a subscription and right **before and after renewals**.

■ **37-56%** of users who enter the resign flow end up **abandon**ing before completing their resignation. The high end of abandonment is early in the subscription. The **low end of abandonment rate is late** in the subscription/after 1 or more renewals. **Older** users are **more likely to abandon** than younger.

■ The **save offer has little appeal** to users who resign **early in their subscription**. The **highest take rates** are for users who resign **right around their first renewal**.

■ **Email contact** in/out/mutual has **little variance** between users who **resign vs. those who don't prior to first renewal**.

■ **Post first renewal**, **users** of comparable activity **who didn't resign** have about **twice the email contact** in/out/mutuals of **users who resign after their first renewal**.

■ Users who **have long periods of inactivity** prior to their login are **very likely to resign**.

■ Overall **resub rates** are also higher later for users who resign **later in their subscription** but **before their first renewal** with **lower** resub rates after the **first renewal**.

■ There is a lot of **variance** in **resub rate** by **resignation reason** cross referenced with demographics, but consistently users who say they **don't have time but will have time in a few weeks** have the **highest resub rates**.



Exh. 4          2

APP 044

# Package is the biggest determinant of time to resign. Age, first sub vs. resub have similar arcs, just more frontloaded for younger and resub



Share of Resignations by Days from Sub by Package (excluding iPay)

Legend: — 1 Month  — 3 Month  — 6 Month



# Highest abandonment rate is on day of subscription. Drop in abandonment corresponds with a large increase in resign flow traffic. Net result is flat/ambiguous.



Resign Flow Successfully Resigned Rate by Time from Subscription Start

Match US regs, fraud adjusted lifetime



# Offer Take Rate is highest just before renewal. Lowest just after subscription date.



1 and 3 month Resigners Share Taking Offer Days Since Sub



# Getting more mutuals in doesn't correlate with lower resign rates prior to first renewal



Average Mutual Convos Had to Date for Users Who Resigned Next Day vs. Didn't by Logged In vs. Didn't Log In



Match US brand regs, fraud adjusted lifetime

# Post first renewal, there is large variance in number of mutuals for resigners vs. non-resigners



Average Mutual Email Convos Engaged In for 1 Month Users Who Resigned vs. Those Who Didn't Post First Renewal by Distance between Prior and Current Login

Legend: BadResign - First 30, BadResign - Post First 30, NotResigned - First 30, NotResigned - Post First 30



Exh. 4    7

# Users who have been inactive for longer are much more likely to resign when they log in



Share of Logging In Users Resigning by Inactive Period Prior to Login



# Users who resign just before renewal have the highest resub rate, but it's much more pronounced in resubs





**APP 051**

# Resub rate by resign reason show a lot of variance, but it's not consistent across package and demographics

| Resign Reason | Sum of Resub Rate | Sum of Subs with Resigns | Question |
|---|---|---|---|
| Other | 26% | 42,176 | |
| On Match.com | 24% | 18,845 | |
| I just can't spend money on dating right now | 21% | 16,007 | |
| On our own, offline | 18% | 12,518 | |
| By attracting more members who are my type | 22% | 8,908 | |
| At least 6 months from now | 21% | 6,284 | |
| On another dating website | 20% | 5,064 | |
| 0.2 | 28% | 4,651 | What was your expected response rate? |
| 2 to 5 | 24% | 4,310 | I didn't receive enough replies to emails I sent out. How many did you email? |
| I could afford a Match subscription at a lower price | 38% | 4,137 | |
| I can't afford a subscription right now | 29% | 3,703 | |
| Very few profiles piqued my interest | 28% | 3,644 | |
| 6 to 10 | 25% | 3,538 | I didn't receive enough replies to emails I sent out. How many did you email? |
| 0.5 | 28% | 3,121 | What was your expected response rate? |
| It's just me; I'm looking for perfection | 24% | 3,028 | |
| At least 1 | 25% | 2,985 | I didn't receive enough replies to emails I sent out. How many did you email? |
| By making it easier to find who I'm looking for | 21% | 2,582 | |
| In a few months | 32% | 2,577 | |
| I had too much going on and did not have time to date | 27% | 2,196 | |
| People misrepresented themselves on their profiles | 28% | 1,717 | |
| Not many people of interest initiated contact with me | 29% | 1,693 | |
| People's profiles were accurate, just no chemistry | 25% | 1,534 | |
| 11 to 20 | 23% | 1,452 | I didn't receive enough replies to emails I sent out. How many did you email? |
| 21 or more | 23% | 1,419 | I didn't receive enough replies to emails I sent out. How many did you email? |
| One | 27% | 1,360 | |
| I clicked with a few people, it just didn't materialize | 31% | 1,110 | |
| I didn't receive enough replies to emails I sent out | 30% | 1,078 | |
| I didn't click with the matches I met in person | 33% | 683 | |
| 0.8 | 25% | 657 | What was your expected response rate? |
| In a few weeks | 43% | 449 | |
| 1 | 26% | 218 | What was your expected response rate? |
| Grand Total | 25% | 163644 | |



Exh. 4    10

APP 052

**From:** Priest, Chelsea A.
**Sent:** Wednesday, October 26, 2022 9:37 PM
**To:** Tepfer, Reid A.; Zambrano, Angela
**Cc:** Hummel, Chad S.; Bragg, Tayler G.; Aijaz, Hasan; Hilliard, Erica; Moon, Jason C; O'Gorman, John; Zuckerman, Sarah
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

Reid,

As we discussed on the call, we have rearranged schedules—including counsel's schedules—to try to accommodate the FTC's demands. We can offer the following proposal, provided that we have agreement on the entire package.

First, after talking to multiple people, we have found someone who can make himself available on November 22—just two days before Thanksgiving—to testify to many of the topics in the MGL 30(b)(6) notice on which MGL will produce a witness. The deponent is located in New York, so the deposition would need to take place there or remotely via Zoom. The date we are offering is only a single day after the November 21 date that the FTC noticed for MGL's 30(b)(6) deposition, and it has required rearranging multiple schedules during a holiday week, so this is a significant concession on our part. We will identify the topics on which that designee will testify no later than 2 weeks prior to the deposition (i.e., by November 8).

Second, as we have explained on multiple occasions, including on our call, Adrian Ong is not available on November 17. We have provided you many details about his unavailability in November. The earliest we can offer him is December 12 or 13. He may also cover some of the 30(b)(6) topics if there are any that the November 22 deponent does not cover, which is another reason that the November 21 date that the FTC noticed for MGL's 30(b)(6) deposition is not workable.

Third, as we previously noted, Michele Watson will be in Mexico for much of the rest of the year. Nevertheless, we offered her deposition on December 13 or 15. At your request, we asked whether she is available for a deposition the week of December 5. Unfortunately, she indicated that she has now decided that she is not willing to take time out of her long-planned international vacation to be deposed. She will be back in the United States near the end of December. We are working on securing availability for the week or so after she returns.

Finally, regarding deposition locations, certain witnesses (the Nov. 22 30(b)(6) designee and Blatt) are not located in Dallas. Those depositions will need to be taken where the deponent is located or remotely. You indicated that you were fine with that but weren't sure which option you preferred and would need to check with your team. We ask that you please let us know if you will take those depositions in person or remotely by no later than next Friday, November 4, so that we can make any necessary travel arrangements and build in travel time. As we have discussed, we intend to present all of the witnesses at our offices.

Because this proposal has already required significant schedule rearrangement and impositions on witnesses and counsel, this proposal is contingent on the FTC's agreement to the entirety of the proposal. We have already made significant concessions. If we can reach agreement on dates and locations for all of the depositions, we are willing to accept service of subpoenas reflecting the agreed dates and locations. However, we will not accept service of subpoenas for deposition dates or locations that are not agreed.

I have sent a calendar invite for a call tomorrow at noon, as discussed, so we can continue our discussions if necessary. Please let us know if we can reach agreement to avoid motion practice.

Best,
Chelsea

**CHELSEA A. PRIEST**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3476
cpriest@sidley.com

---

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Wednesday, October 26, 2022 11:07 AM
**To:** Priest, Chelsea A. <cpriest@sidley.com>; Zambrano, Angela <angela.zambrano@sidley.com>
**Cc:** Hummel, Chad S. <chummel@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

---

**EXTERNAL EMAIL - Use caution with links and attachments.**

---

Chelsea,

We are happy to discuss by phone today at 2pm. Please circulate a dial-in at your convenience.

Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

---

**From:** Priest, Chelsea A. <cpriest@sidley.com>
**Sent:** Wednesday, October 26, 2022 10:07 AM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>; Zambrano, Angela <angela.zambrano@sidley.com>
**Cc:** Hummel, Chad S. <chummel@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

Reid,

We are attempting to engage in a dialogue, and we have been discussing these issues in good faith. That is precisely why we offered a face-to-face meet and confer in our offices in a final attempt to resolve these issues before seeking relief from the Court. The Court has repeatedly asked us to meet and confer in person, and we think that the Court will have expected us to have done that here before we file any motion, if one is necessary. That said, if you're refusing to take us up on our offer and will discuss only on a call, we are willing to schedule a call. We think a conversation of some sort would be helpful to both sides. However, to be clear, our offer for you to attend in person stands. **Please confirm that today at 2 pm works for you.** If so, we will circulate a dial in.

Best,
Chelsea

**APP 054**

**CHELSEA A. PRIEST**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3476
cpriest@sidley.com

---

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Wednesday, October 26, 2022 8:30 AM
**To:** Zambrano, Angela <angela.zambrano@sidley.com>; Priest, Chelsea A. <cpriest@sidley.com>
**Cc:** Hummel, Chad S. <chummel@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

Angela,

Because your clients are refusing to reconsider their unreasonable position on basic scheduling issues, I don't see how a face-to-face meeting would be productive at this time. This refusal suggests that the meeting is not a genuine effort to resolve our dispute but mere posturing to be included in a motion you've already decided to file. Such a meeting would not be a good use of our resources or yours.

I remain willing to engage in a dialogue to resolve this issue, however, and I hope you will take me up on this offer. Scheduling depositions is a basic task that should not require an in-person meeting or Court intervention. It requires an exchange of dates, not a discussion of complex legal authorities. As such, I believe we should be able to easily resolve this issue on a call or by email should your clients decide to negotiate in good faith and make themselves reasonably available. As you know, we have sought for weeks to schedule these depositions, and we remain largely flexible on dates. Our position is only that we cannot agree to have all or virtually all of the depositions take place in a two-week window in December, especially when we have so much time between now and then.

I believe the Court will agree that our position is imminently reasonable and supported by the law. You have not presented any legal authority that would justify your clients' refusal to cooperate on scheduling these depositions, and I'm aware of none. I am confident the Court will see this as yet another legally frivolous attempt to improperly delay discovery.

Lastly, I want to reiterate that if your clients are truly unavailable for most of the rest of the year, then Defendants should reconsider their position on extending the discovery deadlines. I can think of no legitimate reason for Defendants' refusal to negotiate on this issue, and you have never enunciated one.

Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

---

**From:** Zambrano, Angela <angela.zambrano@sidley.com>
**Sent:** Tuesday, October 25, 2022 6:50 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>; Priest, Chelsea A. <cpriest@sidley.com>

**Cc:** Hummel, Chad S. <chummel@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

No, Reid.  We do not have an agreement to your ultimatums.  However, we will speak to our client and come prepared to meet and confer further.  I think the Court will expect us to have had these face to face discussion so if you choose not to take us up on it, we will note that in our motion for protection.  Thanks -Angela

**ANGELA C. ZAMBRANO**

**SIDLEY AUSTIN LLP**
+1 214 981 3405
angela.zambrano@sidley.com

---

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Tuesday, October 25, 2022 6:42 PM
**To:** Zambrano, Angela <angela.zambrano@sidley.com>; Priest, Chelsea A. <cpriest@sidley.com>
**Cc:** Hummel, Chad S. <chummel@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** Re: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

Hi Angela,

I just wanted to confirm: do we have agreement on those three issues I identified below? As I mentioned, I would like to meet but want to ensure this is a productive meeting before confirming. Please let me know your position and we can get this scheduled asap.

Thanks,
Reid

Reid Tepfer
Attorney
Federal Trade Commission
(202) 677-9483

---

**From:** Zambrano, Angela <angela.zambrano@sidley.com>
**Sent:** Tuesday, October 25, 2022 6:32 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>; Priest, Chelsea A. <cpriest@sidley.com>
**Cc:** Hummel, Chad S. <chummel@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

We will be prepared to discuss all these issues.  Let's set the meeting before calendars fill up.  12-1 is already taken, but 1-3 still good.

Angela C. Zambrano
(214) 981-3405

---

**From:** Tepfer, Reid A. <<u>rtepfer@ftc.gov</u>>
**Date:** Tuesday, Oct 25, 2022, 6:18 PM
**To:** Priest, Chelsea A. <<u>cpriest@sidley.com</u>>
**Cc:** Hummel, Chad S. <<u>chummel@sidley.com</u>>, Zambrano, Angela <<u>angela.zambrano@sidley.com</u>>, Bragg, Tayler G. <<u>tbragg@sidley.com</u>>, Aijaz, Hasan <<u>maijaz@ftc.gov</u>>, Hilliard, Erica <<u>ehilliard@ftc.gov</u>>, Moon, Jason C <<u>jmoon@ftc.gov</u>>, O'Gorman, John <<u>jogorman@ftc.gov</u>>, Zuckerman, Sarah <<u>szuckerman@ftc.gov</u>>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

Chelsea,

Thank you for the offer to meet tomorrow. I'm of course happy to meet if it would help resolve this dispute. I want to ensure that this meeting will actually be productive before committing, though. To that end, I wanted to ask if you can represent the following:

- You will have proposed deposition dates in November available for multiple of your clients for which we do not have an agreed date. My understanding is that this includes only three of your clients or their employees: Adrian Ong, the MGLLC 30(b)(6), and Michele Watson. Please let me know if I am mistaken.
- You will have at least one proposed deposition date for all of your clients, including a date for the MGLLC 30(b)(6) deposition. As you are aware, you have yet to propose an alternative date for this deposition despite my noticing it on October 7.
- You will agree to accept service of the subpoenas for your clients.

Please let me know your position as soon as possible so I can plan accordingly.

Additionally, if nearly all of your clients claim to be unavailable for a deposition in November, I wanted to ask you to reconsider your position on extending the discovery deadline. Doing so will allow us to accommodate your clients, as we cannot agree to conduct all or nearly all of these deposition during two weeks in December shortly before the discovery cutoff.

Lastly, concerning the deposition of your clients located outside of the Northern District, I believe we will be able to reach an agreement to take those depositions wherever they are located, assuming we reach an agreement on mutually agreeable dates. As for your representation that it is customary in N.D. Tex. for depositions to be taken at their counsel's office, I wanted to ask if you can direct me to a resource or authority indicating this, as I am unfamiliar with the practice. Again, I believe we will be able to reach an agreement on this issue assuming we can work out mutually agreeable dates.

Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

APP 057

**From:** Priest, Chelsea A. <cpriest@sidley.com>
**Sent:** Tuesday, October 25, 2022 3:55 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>; Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S. <chummel@sidley.com>
**Cc:** Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

Reid,

The dates for Ong, Watson, and the MGL 30(b)(6) deposition are unworkable, as we have previously indicated to you. Nevertheless, before we file our motion we would like to invite you to our offices for a face-to-face meet and confer in a last attempt to resolve our dispute before we have to resort to motion practice. Please let us know if you are available tomorrow between 12-3.

Separately from the date issue for those three depositions, we also need to discuss locations for all of the depositions. The FTC's notices indicate that they plan to take all of these depositions in the FTC's Dallas office. However, as we indicated to you previously, Greg Blatt is in Miami, so he needs to be deposed there or remotely.  Michele Watson also is not located in Dallas—she lives in Austin and will be traveling to various places (including internationally) throughout the next few months, so we will likely need to do her deposition remotely. And even for the deponents located in Dallas, we intend to present the deponents that we represent in our offices, as is customary in the Northern District of Texas (not at the FTC's offices).

Best,
Chelsea

**CHELSEA A. PRIEST**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3476
cpriest@sidley.com

---

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Monday, October 24, 2022 6:58 AM
**To:** Zambrano, Angela <angela.zambrano@sidley.com>; Priest, Chelsea A. <cpriest@sidley.com>; Hummel, Chad S. <chummel@sidley.com>
**Cc:** Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

Counsel,

We decline to cancel these depositions. As I have made clear throughout this process, we are willing to work with your clients to find mutually agreeable dates. We've made significant efforts to do so thus far. Despite your clients' extremely limited availability, we used their requested dates for most of the depositions. And we remain willing to negotiate different dates if your clients have legitimate conflicts. However, we cannot

allow your clients to continue to drag their feet on providing dates or improperly claim unavailability for the entire month of November. As such, we need to keep these on calendar until different dates are agreed upon, and if no agreement is reached, we will need to proceed on these dates.

Please also let me know if you will agree to accept service of the subpoenas for your third-party clients.

Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

---

**From:** Zambrano, Angela <angela.zambrano@sidley.com>
**Sent:** Friday, October 21, 2022 7:08 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>; Priest, Chelsea A. <cpriest@sidley.com>; Hummel, Chad S. <chummel@sidley.com>
**Cc:** Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

Reid –
Noticing depositions for dates and locations that witnesses are not available is not productive and unnecessarily drives up the cost of litigation for our client.  I would have thought that the detailed explanations our witnesses' personal circumstances and business obligations provided below would have been sufficient for you to understand that you cannot unilaterally require witnesses to show up when and where you want them to appear.  The "emergency" that the FTC has created by wasting time seeking irrelevant documents and information and your repeated requests for more time to continue to harass Match in discovery (which have been rejected by the Court without so much as a response from us) does not justify witnesses flying to Dallas while on Thanksgiving vacation, leaving small children unattended, or interrupting previously scheduled business obligations.  Cut it out.  The FTC has until 5:00 on Monday to withdraw these subpoenas.  I am hoping that some rest and relaxation this weekend will give your team a fresh perspective.  I have taken a special interest in this particular issue so you should direct your response on Monday to me.   Thanks -Angela
**ANGELA C. ZAMBRANO**

**SIDLEY AUSTIN LLP**
+1 214 981 3405
angela.zambrano@sidley.com

---

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Friday, October 21, 2022 12:40 PM
**To:** Priest, Chelsea A. <cpriest@sidley.com>; Hummel, Chad S. <chummel@sidley.com>
**Cc:** Bragg, Tayler G. <tbragg@sidley.com>; Zambrano, Angela <angela.zambrano@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica

<[ehilliard@ftc.gov](mailto:ehilliard@ftc.gov)>; Moon, Jason C <[jmoon@ftc.gov](mailto:jmoon@ftc.gov)>; O'Gorman, John
<[jogorman@ftc.gov](mailto:jogorman@ftc.gov)>; Zuckerman, Sarah <[szuckerman@ftc.gov](mailto:szuckerman@ftc.gov)>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of
Match Group, Inc.

Chelsea,

Thank you for this information. Please see the attached notices of depositions.
We've done our very best to accommodate your clients' scheduling preferences,
setting most depositions on the dates your clients requested. As previously
noted, though, we cannot do all or virtually all of the depositions in December,
so a few are set for November. Please let me know if you'd like to discuss
further.

Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

---

**From:** Priest, Chelsea A. <[cpriest@sidley.com](mailto:cpriest@sidley.com)>
**Sent:** Friday, October 21, 2022 8:35 AM
**To:** Tepfer, Reid A. <[rtepfer@ftc.gov](mailto:rtepfer@ftc.gov)>; Hummel, Chad S.
<[chummel@sidley.com](mailto:chummel@sidley.com)>
**Cc:** Bragg, Tayler G. <[tbragg@sidley.com](mailto:tbragg@sidley.com)>; Zambrano, Angela
<[angela.zambrano@sidley.com](mailto:angela.zambrano@sidley.com)>; Aijaz, Hasan <[maijaz@ftc.gov](mailto:maijaz@ftc.gov)>; Hilliard, Erica
<[ehilliard@ftc.gov](mailto:ehilliard@ftc.gov)>; Moon, Jason C <[jmoon@ftc.gov](mailto:jmoon@ftc.gov)>; O'Gorman, John
<[jogorman@ftc.gov](mailto:jogorman@ftc.gov)>; Zuckerman, Sarah <[szuckerman@ftc.gov](mailto:szuckerman@ftc.gov)>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of
Match Group, Inc.

Reid,

We worked very hard to rearrange schedules to find dates that work for the
witnesses, counsel, and our client. Your demands that we provide at least 3
dates for each of 9 deponents, all in November, is unreasonable. Neither we,
nor our client, nor the witnesses can reserve the entire month of November
(which is effectively what the FTC demands). Moreover, although the FTC claims
in its email that it "would impose serious burdens" to conduct all depositions in
December (which, to be clear, is not what we are proposing), the FTC is
demanding that we conduct all depositions in November, even sooner.
Furthermore, when we were able to rearrange schedules to offer a November
date as the FTC requested (for Ginsberg), the FTC complained about that too. As
for third-party depositions, the FTC has only a single deponent left to identify, as
I mentioned in my email below. If you have a particular date or dates in mind for
that deposition, please let us know that specific date or dates and we will check
schedules on our side and get back to you.

As for our clients' schedules, the fact is that the FTC is demanding depositions of
multiple high-level executives and former executives with very busy schedules
(particularly near the end of the year and the holidays), so it should not surprise

you that their availability is limited. Several deponents also have personal travel plans or other familial obligations in November so cannot be available to set aside an entire day for deposition. We will not ask someone to cancel their family vacations or not spend time with their children over holiday breaks just so the FTC can demand a deposition in November rather than December. Details about each deponents' availability are below:

1.  Mandy Ginsberg is a former CEO who sits on multiple boards of directors with board meetings in November. Her availability is very limited, but we were able to secure time with her on **November 4,** as we previously indicated. That date may overlap with the expert disclosure deadline, but that is true for both sides, and at least 5 attorneys have appeared on behalf of the FTC (along with other FTC attorneys working in the background). Not to mention that the FTC has had months to prepare its expert reports. That said, we can offer **November 29** as an alternative.

2.  Amarnath Thombre is a CEO with a busy schedule. As we previously indicated, he is available on **December 1**. Although you complain that we did not provide a deposition date for him in the week that the FTC requested, the FTC (unreasonably) demanded that we schedule Thombre's deposition for the week of Thanksgiving. We were unable to do so because of travel and holiday schedules, but we provided a deposition date for him during *the following week*.

3.  MGI's 30(b)(6) representative can be deposed on **December 5**, as we previously indicated. Your email misrepresents our previous conversations. We have not "claimed that MGI's 30(b)(6) designee requires two months to prepare for a deposition." As we explained to you at our in-person meet and confer and in subsequent email correspondence, the issue is not that we need months to prepare a designee; the issue is that MGI is a holding company so the corporate representative options are limited and tend to be high-level executives with busy schedules, including board meetings. Please do not continue to misrepresent the record. Additionally, the FTC is obviously available on this date, as after we offered it for the MGI 30(b)(6) deposition, you issued a 30(b)(6) notice to MGL for that date (which we previously explained is not workable since we need to use that date fo the MGI 30(b)(6)).

4.  Melissa Clinchy is a former employee who is now a stay-at-home parent to multiple young children. She is their primary caregiver, and her spouse travels a lot for work. Her spouse has upcoming work travel in November, so a deposition in November will cause unworkable childcare problems. She is also the room parent for her kids' classes, so she has child-related obligations around the holidays. The family is also traveling out of town for Thanksgiving. A deposition of her *at all* is a significant imposition, but she was able to make time in December. We previously offered **December 7**. In an effort to compromise where we can, we have been able to move a few things around and can offer **December 6** and **December 8** as alternatives for her deposition.

5.  Adrian Ong is Senior Vice President, Operations. Given his position, he has multiple end-of-year planning meetings in the upcoming weeks, and he has prescheduled PTO around Thanksgiving. **December 12** is the earliest date we can offer. We can offer **December 13** as an alternative.

6.  Greg Blatt is another former CEO with a busy schedule and board of director commitments. He has no availability in November. We can offer **December 8, 13, or 15** for his deposition. He is currently located in Miami, so we assume that you will want to take that deposition remotely. If we are incorrect and you want to take the deposition in person in Miami, please let us know and we will need to re-check dates to accommodate travel schedules.

7.  Michele Watson is a former employee who is now retired and spends most of her time traveling. She has a number of trips that she has already booked. In fact, she is going to be in Mexico for most of the rest of the year, so her deposition will need to be remote. We are working on logistics, but we believe we could offer **December 8, 13, or 15** for her deposition.

8.  We are continuing to work on dates for the MGL 30(b)(6) deposition, but given the number and range of topics covered, it is taking some time to identify appropriate deponents and coordinate schedules. We expect to get back to you by next week.

We are currently holding all of the dates identified above, so please let us know as soon as possible—and no later than the end of today—which dates you intend to use with which witnesses so we can release other dates. Notably, your email does not claim that all 5 attorneys representing the FTC have a conflict on all of the dates we previously offered (which seems highly unlikely in any event), so we expect you will be able to make these dates work.

Best,
Chelsea
**CHELSEA A. PRIEST**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3476
cpriest@sidley.com

---

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Wednesday, October 19, 2022 1:42 PM
**To:** Priest, Chelsea A. <cpriest@sidley.com>; Hummel, Chad S. <chummel@sidley.com>
**Cc:** Bragg, Tayler G. <tbragg@sidley.com>; Zambrano, Angela <angela.zambrano@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

Chelsea,

Your proposal of these dates does not represent a good-faith effort to schedule these depositions at mutually agreeable times. We asked that you provide by COB on 10/18 three dates in November for the depositions of both Ginsberg and Watson. You provided a single date in November for Ginsberg—on our expert disclosure deadline—and failed to provide any dates for Watson. You also provided a single date for Clinchy, Thombre, and Ong, none of which were

APP 062

during the week (or month) that we requested. You have claimed that MGI's 30(b)(6) designee requires two months to prepare for a deposition, and you still have not provided us dates for MGLLC's 30(b)(6) deposition, despite our having notified you of our intent to depose MGLLC on October 7. Moreover, you took over three weeks to state plainly that you do not represent Auderer. Further, we requested on September 30 that you provided your availability for third-party depositions in November. You never provided this.

I want to be clear that, as long as MGI and MGLLC continue to oppose any extension of the discovery deadlines, we will not agree to delay all or nearly all of our depositions into December. Doing so would provide only a few weeks to conduct both fact and expert depositions, which is an unreasonable time frame and would impose serious burdens on all parties.

I therefore request that you provide multiple dates for all of your clients no later than noon CT on Friday. These dates should include availability in November. We will be issuing our deposition notice that afternoon and want to provide your clients the opportunity to provide input. However, we cannot allow these depositions to be further delayed.

As for the 30(b)(6) designee's identity, I am willing to disclose who we intend at this time to name as designee if Defendants can agree to disclose their 30(b)(6) designees with the same amount of advanced notice. I do not agree that the federal rules or caselaw require such advanced disclosure, but we are happy to do so if an agreement can be reached.

Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

**From:** Priest, Chelsea A. <cpriest@sidley.com>
**Sent:** Tuesday, October 18, 2022 6:25 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>; Hummel, Chad S. <chummel@sidley.com>
**Cc:** Bragg, Tayler G. <tbragg@sidley.com>; Zambrano, Angela <angela.zambrano@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

Reid,
Updates on deposition availability are in the chart below. We also wanted to note that the FTC is limited by the Federal Rules to 10 depositions, and it has already asked for 9 deponents, before experts have even been identified. To be clear, we intend to strictly abide by the 10-deposition limit under the Federal Rules, so the FTC has only a single deposition (including for use on experts) left.

| Deponent | Availability |
| --- | --- |

| Mandy Ginsberg | November 4 |
| Melissa Clinchy | December 7 |
| Adrian Ong | December 12 |

We will get back to you on dates for Blatt, Watson, and the MGL 30(b)(6) representative(s). We do not represent Kris Auderer so we can't provide dates for her. Please check with us before scheduling a particular date to confirm our availability.

Additionally, we are still waiting for you to provide the name of your 30(b)(6) representative for the deposition set for next Monday. Please provide it.

Best,
Chelsea
**CHELSEA A. PRIEST**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3476
cpriest@sidley.com

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Wednesday, October 12, 2022 7:16 PM
**To:** Priest, Chelsea A. <cpriest@sidley.com>; Hummel, Chad S. <chummel@sidley.com>
**Cc:** Bragg, Tayler G. <tbragg@sidley.com>; Zambrano, Angela <angela.zambrano@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

Chelsea,

I also wanted to ask that you please provide the availability for Mandy Ginsberg, Kris Auderer, and Michele Watson for a deposition in November. I ask that you please provide at least three proposed dates for each individual to allow us to determine a mutually agreeable date. I ask that you please provide us these dates by COB on 10/18.

Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

**From:** Priest, Chelsea A. <cpriest@sidley.com>
**Sent:** Wednesday, October 12, 2022 6:33 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>; Hummel, Chad S. <chummel@sidley.com>

12

**APP 064**

**Cc:** Bragg, Tayler G. <tbragg@sidley.com>; Zambrano, Angela
<angela.zambrano@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica
<ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John
<jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of
Match Group, Inc.

Reid,

There's no flexibility on the MGI 30(b)(6) front. Given that MGI is a holding
company, corporate representative options are limited and those individuals
tend to have busy schedules. December 5 is the earliest date we can make work
for the MGI 30(b)(6) deposition. And because we need to keep the December 5
date for the MGI 30(b)(6) deposition, the MGL 30(b)(6) deposition cannot take
place on that date. We are working on identifying an acceptable date or dates
for the MGL representative(s) and will provide those to you as soon as possible.
In the meantime, we reiterate our request that you withdraw the MGL 30(b)(6)
notice for December 5.

Regarding other deposition dates, we cannot schedule Thombre's deposition for
the week of Thanksgiving, but he is available for a deposition on December 1. I
won't have availability for Clinchy and Ong depositions until early next week but
will circle back to you then. We will also get back to you about Blatt.

Best,
Chelsea

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Tuesday, October 11, 2022 11:52 AM
**To:** Priest, Chelsea A. <cpriest@sidley.com>; Hummel, Chad S.
<chummel@sidley.com>
**Cc:** Bragg, Tayler G. <tbragg@sidley.com>; Zambrano, Angela
<angela.zambrano@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica
<ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John
<jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of
Match Group, Inc.

Chelsea,

Thank you for your email. As mentioned, I have concerns about the late date for
MGI. We want to be as flexible as possible, but it is important to us that the
deposition of MGI occur sooner than December. I wanted to ask if you could
consult again with MGI's proposed designee concerning his or her availability. If
he or she is truly unavailable for the next two months, I wanted to request MGI
consider whether another designee with more availability could handle the
deposition. I hope this is possible given the limited topics you have represented
MGI will be able to discuss. As for the MGLLC 30(b)(6) deposition, I would like to
keep this on calendar until we have another date set, particularly given that it is
not clear that MGLLC has a conflict for this date. However, please let us know if
there are other dates that would work for MGLLC.

**APP 065**

I also wanted to follow up concerning the availability of Melissa Clinchy, Adrian Ong, and Amarnath Thombre. We requested Melissa Clinchy's availability for the week of Oct. 24, Adrian Ong's for the week of Nov. 7, and Amarnath Thombre's for the week of Nov. 21 (excluding Thanksgiving). I request that these witnesses' availability be provided no later than the end of the day tomorrow.

In addition to the above witnesses, I also wanted to request the availability of Greg Blatt for a deposition the week of December 12. I request that you please let us know his availability by next Tuesday.


Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

---

**From:** Priest, Chelsea A. <cpriest@sidley.com>
**Sent:** Friday, October 7, 2022 9:57 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>; Hummel, Chad S. <chummel@sidley.com>
**Cc:** Bragg, Tayler G. <tbragg@sidley.com>; Zambrano, Angela <angela.zambrano@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match Group, Inc.

Reid,

As we discussed in person today, December 5 is the first date that we can make work for the MGI 30(b)(6) deposition, due to scheduling conflicts. Thus, we need to keep the December 5 date for the MGI 30(b)(6) deposition. We are willing to try to find earlier dates for the MGL 30(b)(6) deposition, as that deponent (or deponents) may have different availability. Because we just received the MGL 30(b)(6) notice today, we haven't yet been able to check schedules. Please confirm that you are withdrawing the MGL 30(b)(6) notice for December 5 so that we can find a mutually agreeable date for that deposition and we can use the December 5 date for the MGI 30(b)(6) deposition.

As I also mentioned today, we need a few more days to track down availability for the other depositions the FTC has requested. We will get back to you as soon as we can.

Best,
Chelsea

---

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Friday, October 7, 2022 12:52 PM
**To:** Priest, Chelsea A. <cpriest@sidley.com>; Hummel, Chad S.

14

<chummel@sidley.com>
**Cc:** Bragg, Tayler G. <tbragg@sidley.com>; Zambrano, Angela
<angela.zambrano@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica
<ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John
<jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of
Match Group, Inc.

Chelsea,

Thank you for your email. The proposed date for the MGI deposition is too late
for us. However, December 5 would work for us for deposing MGLLC as you
suggested. Accordingly, I have attached for service a notice for a 30(b)(6)
deposition of Match Group LLC on December 5.

I ask that you please provide earlier dates for a 30(b)(6) deposition of MGI.
Given that you have represented MGI will have limited relevant information, it
seems unlikely that MGI would need two months to prepare.

Regarding your request for the identity of the FTC's 30(b)(6) deponent, I will get
back to you on this request soon.

Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

**From:** Priest, Chelsea A. <cpriest@sidley.com>
**Sent:** Thursday, October 6, 2022 9:13 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>; Hummel, Chad S.
<chummel@sidley.com>
**Cc:** Bragg, Tayler G. <tbragg@sidley.com>; Zambrano, Angela
<angela.zambrano@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica
<ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John
<jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of
Match Group, Inc.

Reid,
The dates that the FTC proposed for a 30(b)(6) deposition of MGI don't work for our
side, but we could make December 5 work for the MGI deposition. After you serve the
official notice, we will provide objections and responses so that the parties can meet
and confer in compliance with the Rules regarding any disputes. However, we will note
now that many of the topics are directed to information in MGL's—not MGI's—
knowledge. MGI therefore will not present a representative on those topics, but we
encourage the FTC to schedule a 30(b)(6) deposition of MGL. Please let us know if you're
interested in discussing a workable date for an MGL deposition and provide the topics
you would like to cover.
Additionally, on the topic of 30(b)(6) depositions, will the FTC please provide the
identity of its deponent?
Best,

15

Chelsea
**CHELSEA A. PRIEST**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+214 981 3476
cpriest@sidley.com

---

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Thursday, September 29, 2022 2:57 PM
**To:** Hummel, Chad S. <chummel@sidley.com>
**Cc:** Priest, Chelsea A. <cpriest@sidley.com>; Bragg, Tayler G.
<tbragg@sidley.com>; Zambrano, Angela <angela.zambrano@sidley.com>;
Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason
C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah
<szuckerman@ftc.gov>
**Subject:** FTC v. Match Group, Inc., et al. - Notice of 30(b)(6) Deposition of Match
Group, Inc.

Chad,

I have attached a Notice of Deposition of Match Group, Inc. and four exhibits
referenced in the notice's attachment. The date for the deposition is blank so
that we can confer with you regarding a mutually agreeable date on November
7 or 8 or during the week of November 14.  If we do not hear from you
regarding Match Group, Inc.'s availability for the deposition by October 6, we
will insert a date and serve the Notice with that date. Please let me know if you
have any questions.

Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

*********************************************************
*********************************************
This e-mail is sent by a law firm and may contain information that
is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and
any attachments and notify us
immediately.

*********************************************************
*********************************************

**APP 068**

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>MATCH GROUP, INC., a corporation, and<br><br>MATCH GROUP, LLC, formerly known as<br>MATCH.COM, LLC, a limited liability company,<br><br>    Defendants. | Case No. 3:19-cv-02281-K<br><br>**PLAINTIFF FEDERAL TRADE<br>COMMISSION'S AMENDED<br>NOTICE OF RULE 30(b)(6)<br>DEPOSITION OF DEFENDANT<br>MATCH GROUP, LLC** |

Pursuant to Federal Rule of Civil Procedure 30(b)(6), on November 21, 2022, starting at

10:00 a.m. each day, at 1999 Bryan Street, Suite 2150, Dallas, Texas 75201, the Federal Trade

Commission ("FTC") will take the deposition of Defendant Match Group, LLC ("MGLLC") as

represented by the person(s) most knowledgeable with respect to the topics identified below and

designated to testify on MGLLC's behalf.  The deposition will be taken upon oral examination

before an official authorized by law to administer oaths.  Testimony by the witness(es) will be

recorded by video and/or stenographic means.  Pursuant to Federal Rule of Civil Procedure 34,

MGLLC should provide documents responsive to the Request for Documents included in this

notice by November 21, 2022, at 10:00 a.m., at 1999 Bryan Street, Suite 2150, Dallas, Texas

75201.

**NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6)**

## INSTRUCTIONS

1. Unless otherwise stated, the relevant time period for all topics of examination below is 2013 to the present.

2. The FTC requests that counsel for Match Group, LLC promptly contact FTC counsel after the receipt of this notice to meet and confer concerning the topics for examination listed below pursuant to FED. R. CIV. P. 30(b)(6).

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1. "**Advertisement**" or "**Advertising**" or "**Ad**" means any written or verbal statement, illustration, or depiction that promotes the sale of a good or service or is designed to increase consumer interest in a brand, good, or service. Advertising media include, but are not limited to, packaging and labeling, promotional materials, print, television, radio, and internet, social media, and other digital content.

2. "**Chargeback**" means a transaction that is returned as a financial liability to an acquirer by a card issuer, usually because of a disputed transaction. The acquirer may then return or "charge back" the transaction to the merchant.

3. "**Guarantee Extension**" means any free or additional subscriptions, services, or access to Match.com provided to a Customer under the terms of any Guarantee. "Guarantee Extension" shall further include the meaning as used on the Match.com website.

4. "**Guarantee Program Progress Page**" means any webpage on Match.com where Customers who have purchased a Match.com subscription subject to any Match Guarantee may check their progress towards satisfying the terms or conditions of any

2

such Match Guarantee. "Guarantee Program Progress Page" shall further include the meaning as used on the Match.com website.

5.   "**Identify**" or "**the identity of**" shall be construed to require identification of (a) natural persons by name, address, telephone number, and email address; and (b) businesses or other organizations by name, address, telephone number, email address, and identities of natural persons who are officers, directors or managers of the business or organization, and contact persons, where applicable.

6.   "**Match Group, Inc.**" or "**MGI**" means Match Group, Inc, a Delaware corporation and party to this litigation**.**

7.   "**Match Group, LLC**" or "**MGLLC**" shall mean Match Group, LLC and includes operations under assumed names, prior names, and predecessor entities, including Match.com, LLC.

8.   "**Match Guarantee**" means any offer on Match.com to provide free subscriptions to Match.com for Customers who fulfill certain criteria during their subscription period.

9.   "**Online Cancellation Flow**" means the process on Match.com for Match.com customers to cancel their membership or trial membership and includes each step of the cancellation process, from the Match.com homepage (as viewed on either a desktop computer or mobile device) until the cancellation request is effectuated on Match.com's system and the customer received a cancellation confirmation email, and further includes all permutations of the cancellation process that were dependent on the customer's input.

10.  "**Terms of Use**" means the agreement entitled "Terms of Use" displayed to users of Match.com, including any version or revision of the agreement displayed from January 1, 2013 to the present.

## <u>MATTERS FOR EXAMINATION</u>

Unless otherwise stated, the relevant time period for all topics of examination below is 2013 to the present.

1.   Match Group, Inc.'s relationship with Match Group, LLC including

a.   Any contractual rights, obligations, or other memorialized agreements relating to Match.com;

b.   The payment of funds (and the reasons for such payments) between Match Group, Inc. and Match Group, LLC;

3

    c.  Any shared employees or executives between Match Group, Inc.'s and Match Group, LLC or employees or executives employed by both Match Group, Inc. and Match Group, LLC;

    d.  Any regular reports made by MGLLC employees to MGI employees;

    e.  The frequency and nature of meetings or written or oral communications between MGLLC and MGI employees or executives.

2.    The identify of Match Group, Inc. executives with any roles or responsibilities relating to Match.com.

3.    Match Group, Inc.'s role in the operation or control of Match.com or any other dating website Match Group, Inc. owns or operates, either directly or indirectly.

4.    The nature of Match Group, Inc.'s ownership interest in Match.com.

5.    Match Group, Inc.'s role in the creation, review, monitoring, or enforcement of policies and procedures relating to the operation of Match.com including concerning the following topics:

    a.  The Match Guarantee;

    b.  Customer refund requests;

    c.  Customer Chargeback requests;

    d.  Customer subscription cancellation, and

    e.  Match.com user agreements, Terms of Use, or privacy policy.

6.    Match Group, Inc.'s role in reviewing, approving, or drafting the following content relating to Match.com, including the consideration of changes to such content and why such changes were implemented or not:

    a.  Advertisements;

    b.  Customer service communications; and

    c.  User-facing website content.

7.    Any studies, testing, surveys, data analysis, or research regarding consumer understanding of or reaction to representations regarding:

    a.  The Match Guarantee;

    b.  Match.com's subscription cancellation mechanisms;

    c.  Match.com's autorenewal or refund policies; and

    d.  Match.com's policies relating to customer Chargebacks.

8.    Policies and procedures relating to customer Chargeback requests related to Match.com, including the consideration of changes to such policies and procedures and why such changes were implemented or not.

9.    Match.com's refund policies and procedures, including the consideration of changes to such policies and procedures and why such changes were implemented or not.

10.   Customer inquiries, complaints, or refund requests, including:

    a.  Policies and procedures for responding to inquiries, complaints, or refund requests, including the time periods during which such policies were in effect;

    b.  The volume and subject of any such customer inquiries, complaints, or refund requests; and

    c.  Policies and procedures for compiling, storing, analyzing customer inquiries, complaints, or refund requests.

11.   Any strategies or goals related to increasing Match.com subscriptions or reducing subscription cancellations, refunds or refunds requests, or Chargebacks.

12.   Consideration, understanding, or awareness of the possibility or likelihood of

    a.  Consumers misunderstanding or being misled by representations concerning the Match Guarantee or Match.com's cancellation procedures; or

    b.  Consumers believing that their subscriptions had been cancelled when in fact it had not been cancelled.

13.   Identification and authentication of all 10-K (annual reports), 10-Q (quarterly reports), and 8-K (current reports) MGI or MGLLC filed with the SEC.

14.   MGLLC's responses to the FTC's discovery requests in this case, including the FTC's First Request for Production to Match Group, LLC, the FTC's First Set of Interrogatories, and the First Set of Requests for Admission, including its efforts to search for and produce responsive documents, and MGLLC's role in responding the FTC's March 14, 2017 Civil Investigative Demand to Match Group, Inc.

15.   MGLLC's budget control, hiring and compensation, management goals, and performance evaluations, including maintenance of organizational rules and policies.

16.   MGLLC's policies and procedures for reviewing and approving systems of legal compliance or internal policy compliance.

17.   MGLLC's policies, procedures, and practices for data collection and document retention.

18.   The Match Guarantee policy, including:

    a.  Each step Match.com customers have been required to take to redeem or qualify for the Guarantee Extension;

    b.  Any variation of the Guarantee policy and the dates during which each was in effect;

APP 073

    c.   The reason for implementing any variation of the Guarantee policy;

    d.   Any criteria Defendant has used to determine whether to grant a customer's request to redeem the Guarantee, grant a Guarantee Extension, or grant a customer refund request relating to the Guarantee; and

    e.   Any other limitation on a customer's ability to redeem the Guarantee.

19.    The Guarantee Program Progress Page, including:

    a.   Any requirement that customers use the tracker within a limited time frame to receive a Guarantee Extension;

    b.   Any variation of the Guarantee Program Progress Page and the dates during which each was in effect;

    c.   The reason for implementing any changes to or variations of the Guarantee Program Progress Page;

    d.   The implementation and/or discontinuation of email notifications related to a customer's Guarantee progress; and

    e.   Any alternative methods for customers to redeem the Match Guarantee or request a Guarantee Extension and how customers were made aware of any such alternative methods.

20.    Advertisements referencing the Match Guarantee, including:

    a.   The forms of advertising used;

    b.   The timing of any advertising campaign; and

    c.   The representations made in each campaign.

21.    All methods by which customers were provided information on how to redeem the Match Guarantee or request a Guarantee Extension and the nature of the information.

22.    The suspension or discontinuation of the Match Guarantee, including:

    a.   The reasons for suspending or discontinuing the program;

    b.   The timing of any suspension or discontinuation; and

    c.   How the policy has been applied to existing customers after suspension or discontinuation.

23.    Data by year relating to the Match Guarantee and Guarantee Extensions, including:

    a.   The number of customers who purchased subscriptions potentially eligible for Guarantee Extensions;

    b.   The number of customers who satisfied the criteria to receive a Guarantee Extension;

    c.   The number of customers who attempted to redeem the Match Guarantee and receive a Guarantee Extension;

    d.   The number of customers who received a Guarantee Extension; and

    e.   The number of customers who received a Guarantee Extension only after contacting Match.com's customer service.

24.    Match.com's policies and procedures relating to customer Chargeback requests, including regarding:

    a.   The circumstances in which the operators of Match.com will dispute a customer Chargeback;

    b.   The circumstances in which the operators of Match.com will deny customer account access due to a Chargeback request;

    c.   The circumstances in which the operators of Match.com will remove or reinstate the account of a customer who requests a Chargeback;

    d.   The effective dates of any of policy concerning customer Chargebacks and the reason for any changes to or suspensions of the policy.

25.    Data by year relating to Match.com's customer Chargeback requests, including:

    a.   The number of customers who had their account suspended or terminated because they requested a Chargeback and had their request subsequently denied or overturned by their financial institution;

    b.   The number of customers who had (i) had account access suspended or terminated because they requested a Chargeback and (ii) had access to their account reinstated after contacting customer service.

26.    All variations of the complete Online Cancellation Flow for Match.com that have been in effect at any time between September 25, 2014 and the present and

    a.   The time period during which the particular variation of the Online Cancellation Flow was in effect;

    b.   The reason for the changes from previous variations; and

    c.   The justification or reason for each step or required consumer action in each such variation of the Online Cancellation Flow.

27.    Changes considered or made to the Online Cancellation Flow between September 25, 2014, and the present including changes made in response to customer complaints or feedback, or allegations that the cancellation flow was cumbersome, complex, confusing, difficult to use, defective, or ineffective, including, but not limited to, Plaintiff's allegations that Defendant's cancellation processes violated the Restore Online Shoppers Confidence Act, 15 U.S.C. § 8403(3).

28.    For each cancellation method provided by Match.com:

    a.   The nature and requirements of the cancellation method;

    b.   All methods by which Match.com provided information to customers on how to access or use the cancellation method and the nature of the information;

    c.   On a monthly basis from September 2014 until the present, the number of customers who successfully cancelled via the particular cancellation method;

    d.   On a monthly basis September 2014 until the present, the percentage of customers who successfully used the cancellation method as compared to the total number of consumers who successfully canceled by any method during that same period.

29.    If MGLLC contends that a majority or a certain percentage of customers who initiated the Online Cancellation Flow process were successful in cancelling their subscriptions within a certain time period;

    a.   All facts and analysis that support this contention, including:

        i.   The nature and characteristics of any data that support the contention;

        ii.   The time periods analyzed;

        iii.   The facts that Defendants contend tend to show that the customer initiated the Online Cancellation Flow process; and

        iv.   The facts that Defendants contend tend to show that the customer was successful in cancelling their subscription;

    b.   The identify of all individuals who participated in the analysis and the nature of their participation; and

    c.   Whether the data supporting the contention was produced to the FTC, and the date, format, and Bates-number range of the production.

30.    Any problems or customer complaints relating to the design or functionality of Match.com's password input process or "reset password" process within the Online Cancellation Flow between September 25, 2014 and the present, including:

    a.   The nature of the problem or complaint;

    b.   Attempts to address the problem or complaint;

    c.   The time period for which the problem may have impacted customers; and

    d.   The number of consumers who complained about or were impacted by each particular issue.

31.    Defendants' collection and maintenance of data concerning consumer interactions with the Online Cancellation Flow after September 25, 2014, including:

    a.   Whether such data is routinely collected and maintained by MGLLC, and if so, for what purpose;

    b.   Whether such data is currently in the possession, custody, or control of MGLLC;

    c.   The format of such data and the information captured by the data;

    d.  The time period covered by such data currently in the possession, custody, or control of MGLLC;

    e.  If any such data since September 25, 2014, is not currently in the possession, custody, or control of MGLLC, the reason the data is incomplete and, if the data was formerly in MGLLC's possession, custody, or control but is no longer, the date upon which the data became no longer available and the circumstances;

    f.  The repository in which such data is or was stored;

    g.  The person(s) responsible for maintaining such data;

    h.  If all or part of such data was produced to the FTC, the date, format, and Bates-number range of the production; and

    i.  The substance of any such data.

32.  The data and conclusions concerning Match.com's cancellation flow customer dropout rate referenced by the individuals in the emails attached as Exhibits 1, 2, and 3, and the presentation attached as Exhibit 4, including:

    a.  The location and nature of the data;

    b.  The methodology for collecting this data;

    c.  The specific steps in the cancellation flow to which the data is associated;

    d.  Whether that data is in MGLLC's possession, custody, or control; and

    e.  Whether that data has been produced to the FTC.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.    Documents any person designated to testify on Match Group, LLC's behalf in this deposition reviewed in preparation for the deposition. To the extent that Defendants previously produced such documents to the FTC, Match Group, LLC may refer to them by Bates number in lieu of re-production.

Dated:  October 21, 2022            Respectfully submitted,

                                  */s/ Reid Tepfer*
                                  REID TEPFER
                                  M. HASAN AIJAZ
                                  SARAH ZUCKERMAN (admitted *pro hac vice*)
                                  JOHN R. O'GORMAN (admitted *pro hac vice*)
                                  ERICA R. HILLIARD

Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T. (214) 979-9379 (Hilliard)
F: (214) 953-3079
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov
ehilliard@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 21, 2022, I served the foregoing document on the

following counsel of record via e-mail.

**Attorneys for Match Group, Inc. and Match Group, LLC:**
Angela C. Zambrano
angela.zambrano@sidley.com
Chelsea A. Priest
cpriest@sidley.com
Tayler G. Bragg
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067

*/s/ REID TEPFER*
REID TEPFER

| | |
|---|---|
| **From:** | abanish mishra |
| **To:** | Melissa Clinchy |
| **CC:** | Fazal Sorathia |
| **Sent:** | 5/3/2017 2:37:55 PM |
| **Subject:** | RE: Data request on resign flow |

Melissa,

I ran a query against all the new pagecodes you provided but I see data only for pagecode 819 and 820 in database. Others don't have data in production (`select top 10 * from  Page.dbo.PageLive where PageCode in (7047990 ,1223790,1223791))`

Here is the data I gathered for last 90 days for PageCode 819 and 820

| PageCode | Path | Count |
|---|---|---|
| 819 | /resign/resignsurvey2.aspx/ | 1303526 |
| 820 | /resign/resignsurvey2.aspx | 637621 |

```
SELECT PCD.PageCode,Path,Count(Distinct(S.SID)) from Page.dbo.Page P
LEFT JOIN Match_4.dbo.PageCodesDynamic PCD on P.PageCode=PCD.PageCode
INNER JOIN [Session].dbo.UserSessions S on S.SID=P.SID
WHERE PCD.PageCode in (7047990 ,1223790,1223791,819,820)
GROUP BY PCD.PageCode,Path
```

Thanks,
Abanish

**From:** Melissa Clinchy
**Sent:** Wednesday, May 3, 2017 10:46 AM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi guys!

I worked with Poossen – and it looks like the Page IDs of the cancellation flow page may have changed. Are you able to re-run this report with these page codes?

Password : 7047990
Resign Survey: 1223790
Resign Survey 2: 819 & 820
Confirmation Page: 1223791

Thank you!

**From:** Fazal Sorathia
**Sent:** Thursday, March 30, 2017 10:14 AM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Okay. Abanish will provide you the data by next week.

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 5:00 PM

Exh. 1

**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

That should be good. If it's possible to pull Q1 data that'd be great – otherwise, Q4 would work as well.

Thank you!

**From:** Fazal Sorathia
**Sent:** Wednesday, March 29, 2017 4:52 PM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

If it's once a year request then we can send you the numbers. We will get you something by next week? Is it ok?

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 4:33 PM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

For now – it's an adhoc request – but we've needed it about once a year (once someone wants to look at it).

I don't have access to MARP – but if I could get access and pull it myself, that'd be great.

Thanks!

**From:** Fazal Sorathia
**Sent:** Wednesday, March 29, 2017 4:00 PM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Melissa – I am not aware of any existing report.
Do you need this data going forward for long time or it's an adhoc request?
Do you have access to MARP? We can probably give you sql which you can run whenever you need.

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 3:16 PM
**To:** Abanish Mishra <Abanish.Mishra@match.com>; Fazal Sorathia <Fazal.Sorathia@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

Were you ever able to look into this?

Thanks!

**From:** Abanish Mishra
**Sent:** Monday, March 27, 2017 9:11 AM

Exh. 1

MATCHFTC APP 081

**Subject:** RE: Data request on resign flow

Fazal ,

Can you remember any care related report based on resign flow? If it doesn't exist can you please prioritize this request ?

Thanks,
Abanish


**From:** Melissa Clinchy
**Sent:** Friday, March 24, 2017 5:10 PM
**To:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** FW: Data request on resign flow

Hi Abanish!

Way back in 2014 we got some data around where members fall out of the resign flow. I was wondering if you could help in pulling that data again, or if you can point me in the right direction?

We basically want to say when members drop out of the resignation flow who don't fully complete resignation on site, but start the process.

Here's the email from Jim Talbot in 2014 (The entire thread is below):

Here's the output for the last resign flow page users saw in sessions where I'm not logging a resignation. It's for a week's worth of data. I'm not exactly sure what the pagecodes mean since I just pulled them as the pages successful every resigning user saw in his/her resignation session. However, you should be able to walk through the flow and match them up.

| Pagecode | Path | Sessions | % of Sessions |
|---|---|---|---|
| 189 | /resign/resign.aspx | 54,247 | 80.02% |
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% |
| 194 | /resign/resignconf.aspx | 4,805 | 7.09% |
| 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| 820 | /resign/resignsurvey2.aspx | 86 | 0.13% |



**Melissa Clinchy** | Supervisor, Technical Resolutions
Customer Support
Desk: 972.638.8687 | Mobile: 469.212.4102


**From:** Kris Auderer
**Sent:** Tuesday, May 17, 2016 12:14 PM

Exh. 1

**To:** Melissa Clinchy <melissa.clinchy@match.com>

**Subject:** RE: Quick question on reporting user resignations

Since this was 2014, can you see if you can get updated data by 2:30pm today? I know it's a longshot. Not sure if Jiten or Matt could help or maybe Jim Talbott or Taylor?



**Kris Auderer** |  Director, Customer Care Operations & Projects
Match & People Media
**desk** 214.576.9518  |  **mobile** 469.442.5002

**From:** Melissa Clinchy
**Sent:** Tuesday, May 17, 2016 12:07 PM
**To:** Kris Auderer <Kris.Auderer@match.com>
**Subject:** FW: Quick question on reporting user resignations



**Melissa Clinchy** | Supervisor, Technical Resolutions
Customer Support
Desk: 972.638.8687 | Mobile: 469.212.4102

**From:** Melissa Clinchy
**Sent:** Friday, August 21, 2015 12:00 PM
**To:** Kris Auderer <Kris.Auderer@match.com>
**Subject:** FW: Quick question on reporting user resignations

Here you go!

**From:** Melissa Schaaf
**Sent:** Wednesday, September 24, 2014 4:15 PM
**To:** Kris Auderer
**Subject:** FW: Quick question on reporting user resignations

FYI



**Melissa Schaaf** | Supervisor, Technical Resolutions
Customer Support
Office: 972.638.8687 | Mobile: 469.212.4102

---

**From:** Melissa Schaaf
**Sent:** Tuesday, February 18, 2014 3:17 PM
**To:** Kris Auderer
**Subject:** RE: Quick question on reporting user resignations

Exh. 1



| | | | |
|---|---|---|---|
| 189 | /resign/resign.aspx | 54,247 | 80.02% **Password Page** |
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% **3 for 1 offer** |
| 194 | /resign/resignconf.aspx | 4,805 | 7.09% **Confirmation Page** |
| 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% **Survey** |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% **Tell us more** |
| 820 | /resign/resignsurvey2.aspx | 86 | 0.13% **Tell us more** |

**189**



**190**



194

FOIA Confidential



817

FOIA Confidential



**819/820**

Exh. 1



**From:** Summer Hogsed
**Sent:** Thursday, January 09, 2014 3:33 PM
**To:** Rose P
**Cc:** Kris Auderer; Melissa Schaaf
**Subject:** RE: Quick question on reporting user resignations

Done.

**Summer Hogsed**  |  Manager, Product
8300 Douglas Avenue, Ste 800
Dallas, TX 75225
t  972.892.9570 f 972.892.9578
www.match.com


**From:** Rose P
**Sent:** Thursday, January 09, 2014 3:30 PM
**To:** Summer Hogsed
**Cc:** Kris Auderer; Melissa Schaaf
**Subject:** RE: Quick question on reporting user resignations

Hi Summer –

Based on our analysis below we liked to close this WI please! Thank you!

| 88117 | 1.15 | CSA | CSA: Display date and time when a member accessed the cancellation page |
|---|---|---|---|

Exh. 1

Thanks,

**Rose Phommachanh** | Supervisor, Technical Resolutions | Customer Care
Email: rose.p@match.com | Phone: 972.638.8686



**From:** Kris Auderer
**Sent:** Thursday, January 09, 2014 3:27 PM
**To:** Melissa Schaaf; Rose P
**Subject:** RE: Quick question on reporting user resignations

Oh, if there's a WI for this will you get it closed please?  Thanks.

**Kris Auderer** |  Director, Customer Care Operations
Match.com US
**o** 214.576.9518  |  **c** 469.442.5002

   

---

**From:** Melissa Schaaf
**Sent:** Thursday, January 09, 2014 3:25 PM
**To:** Kris Auderer; Rose P
**Subject:** RE: Quick question on reporting user resignations

Hi Kris,

I looked over this with Rose and here's what we think:

|     | Path                        | Sessions | % of Sessions |
|-----|-----------------------------|----------|---------------|
| 189 | /resign/resign.aspx         | 54,247   | 80.02%        |
| 190 | /resign/resignsave.aspx     | 4,294    | 6.33%         |
| 194 | /resign/resignconf.aspx     | 4,805    | 7.09%         |
| 817 | /resign/resignsurvey.aspx   | 3,092    | 4.56%         |
| 819 | /resign/resignsurvey2.aspx/ | 1,268    | 1.87%         |
| 820 | /resign/resignsurvey2.aspx  | 86       | 0.13%         |

Matching up Taylor's screenshots and the what Jim provided,  80% of members (highlighted above) drop out before they even have to enter their password.  So the member saw the page where they would have to enter their password and then backed out.

Since most members drop out before even entering their password, would it be helpful to agents? I wouldn't even count  that page as the beginning the cancellation process.

We may just be opening a can of worms for the member to fight back – "well, you see that I TRIED to cancel, can you refund me?".

Exh. 1

MATCHFTC-APP-0089

Also – agents will be able to see whether or not a cancellation email was sent fairly soon in CSA, which I feel like would be more helpful.

Unless we're going to change refund rules based on when they drop out, I think we should table it.

Thanks!

---

**From:** Kris Auderer
**Sent:** Thursday, January 02, 2014 10:23 AM
**To:** Melissa Schaaf; Rose P
**Subject:** FW: Quick question on reporting user resignations

Can you guys look at this as a side project?  Let me know what you think we should do/show in CSA (if anything)…is this valuable?  Thanks.

**Kris Auderer** |   Director, Customer Care Operations
Match.com US
**o** 214.576.9518  |  **c** 469.442.5002

     

---

**From:** Kris Auderer
**Sent:** Friday, December 20, 2013 1:51 PM
**To:** Kris Auderer
**Subject:** FW: Quick question on reporting user resignations


**Kris Auderer** |   Director, Customer Care Operations
Match.com US
**o** 214.576.9518  |  **c** 469.442.5002

    

---

**From:** Bret Williams
**Sent:** Monday, October 28, 2013 12:26 PM
**To:** Michele Watson; Kris Auderer
**Cc:** Taylor Claiborne
**Subject:** FW: Quick question on reporting user resignations

Taylor did a great job getting you the resign flow.   Included is a flow for a sub and a non sub with URLs and pagecodes.   Adding Taylor to respond with any questions you all may have.

---

**From:** Taylor Claiborne
**Sent:** Monday, October 28, 2013 12:23 PM
**To:** Bret Williams
**Subject:** RE: Quick question on reporting user resignations


Bret:

I attached the screenshots with page codes and URLs and Screenshots in it.  I did the Member resignation flow (non sub) and subscriber flow with membership resignation.  If you query my active pages, the only page code I don't have a screenshot for is the highlighted one, although the history suggests I hit it.  Not sure how to translate that.

Exh. 1

MATCHFTC APP 3090

Pagecode    Path

| 189 | /resign/resign.aspx |
| 190 | /resign/resignsave.aspx |
| 194 | /resign/resignconf.aspx |
| 817 | /resign/resignsurvey.aspx |
| 819 | /resign/resignsurvey2.aspx/ |
| 820 | /resign/resignsurvey2.aspx |

Thanks,

## J. Taylor Claiborne
**Manager, QA**
Work: 214.576.9409
Cell: 214.906.6775
*The most exciting phrase to hear in science, the one that heralds new discoveries, is not 'Eureka!' but 'That's funny...' --Isaac Asimov*

---

**From:** Bret Williams
**Sent:** Monday, October 28, 2013 8:24 AM
**To:** Taylor Claiborne
**Subject:** FW: Quick question on reporting user resignations


---

**From:** Bret Williams
**Sent:** Friday, October 25, 2013 3:58 PM
**To:** Michele Watson
**Cc:** Kris Auderer
**Subject:** RE: Quick question on reporting user resignations

Sure.  This should be easy to do.   Give me a day or so pls.

---

**From:** Michele Watson
**Sent:** Friday, October 25, 2013 3:51 PM
**To:** Bret Williams
**Cc:** Kris Auderer
**Subject:** FW: Quick question on reporting user resignations

Bret –

Can you direct us to which screens in the resignation flow match with the pagecodes that Jim references?

We're trying to determine the level of interest we have in showing the member's resignation attempt (how far they go in the resignation process) to the frontline agents in the CSA.  We get a lot of complaints from members who tell us they cancelled on site and it didn't work – so thought this might be a way to give the agents more information to explain the member didn't complete the resignation flow.

**Michele Watson**
SVP Global Customer Care
Match.com, PeopleMedia.com, Chemistry.com, Match International, Kiss.com

Email:   michele.watson@match.com
Phone:   214.576.3271
Mobile:  972.983.6971

      

Exh. 1

MATCHFTC APP 091

**From:** Jim Talbott
**Sent:** Friday, October 25, 2013 3:12 PM
**To:** Kris Auderer
**Cc:** Michele Watson; Melissa Schaaf; Rose P
**Subject:** RE: Quick question on reporting user resignations

Here's the output for the last resign flow page users saw in sessions where I'm not logging a resignation. It's for a week's worth of data. I'm not exactly sure what the pagecodes mean since I just pulled them as the pages successful every resigning user saw in his/her resignation session. However, you should be able to walk through the flow and match them up.

| Pagecode | Path | Sessions | % of Sessions |
|---|---|---|---|
| 189 | /resign/resign.aspx | 54,247 | 80.02% |
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% |
| 194 | /resign/resignconf.aspx | 4,805 | 7.09% |
| 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| 820 | /resign/resignsurvey2.aspx | 86 | 0.13% |

---

**From:** Kris Auderer
**Sent:** Thursday, October 24, 2013 4:08 PM
**To:** Jim Talbott
**Cc:** Michele Watson; Melissa Schaaf; Rose P
**Subject:** Quick question on reporting user resignations

Hi Jim,

Long time, no see J

I wanted to touch base with you on an open work item we have (88117) to track where members fall out of the resignation flow and display it in CSA. I was wondering if we have any data on how often members "fall out" of the resignation flow at each specific point (during survey, retention offer, etc.) to see how we want to prioritize our work item. Is this data you can get easily? I'm out tomorrow but Rose Phommachanh can answer any questions or provide additional details if needed. Thanks!

**Kris Auderer**
Director, Care Operations
Match.com North America

Email:  kris.auderer@match.com
Phone:  214.576.9518
Mobile:  469.442.5002

   

Exh. 1

MATCHFTC-00009092

| From: | bret williams <bret.williams@match.com> |
|---|---|
| Sent: | Friday, October 25, 2013 3:58 PM |
| To: | Michele Watson |
| Cc: | Kris Auderer |
| Subject: | RE: Quick question on reporting user resignations |

Sure.  This should be easy to do.   Give me a day or so pls.

---

**From:** Michele Watson
**Sent:** Friday, October 25, 2013 3:51 PM
**To:** Bret Williams
**Cc:** Kris Auderer
**Subject:** FW: Quick question on reporting user resignations

Bret –

Can you direct us to which screens in the resignation flow match with the pagecodes that Jim references?

We're trying to determine the level of interest we have in showing the member's resignation attempt (how far they go in the resignation process) to the frontline agents in the CSA.  We get a lot of complaints from members who tell us they cancelled on site and it didn't work – so thought this might be a way to give the agents more information to explain the member didn't complete the resignation flow.

**Michele Watson**
SVP Global Customer Care
Match.com, PeopleMedia.com, Chemistry.com, Match International, Kiss.com

Email:   michele.watson@match.com
Phone:   214.576.3271
Mobile:   972.983.6971

     

**From:** Jim Talbott
**Sent:** Friday, October 25, 2013 3:12 PM
**To:** Kris Auderer
**Cc:** Michele Watson; Melissa Schaaf; Rose P
**Subject:** RE: Quick question on reporting user resignations

Here's the output for the last resign flow page users saw in sessions where I'm not logging a resignation. It's for a week's worth of data. I'm not exactly sure what the pagecodes mean since I just pulled them as the pages successful every resigning user saw in his/her resignation session. However, you should be able to walk through the flow and match them up.

| Pagecode | Path | Sessions | % of Sessions |
|---|---|---|---|
| 189 | /resign/resign.aspx | 54,247 | 80.02% |
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% |

1

Exh. 2

| 194 | /resign/resignconf.aspx | 4,805 | 7.09% |
| 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| 820 | /resign/resignsurvey2.aspx | 86 | 0.13% |

**From:** Kris Auderer
**Sent:** Thursday, October 24, 2013 4:08 PM
**To:** Jim Talbott
**Cc:** Michele Watson; Melissa Schaaf; Rose P
**Subject:** Quick question on reporting user resignations

Hi Jim,

Long time, no see ☺

I wanted to touch base with you on an open work item we have (88117) to track where members fall out of the resignation flow and display it in CSA. I was wondering if we have any data on how often members "fall out" of the resignation flow at each specific point (during survey, retention offer, etc.) to see how we want to prioritize our work item. Is this data you can get easily? I'm out tomorrow but Rose Phommachanh can answer any questions or provide additional details if needed. Thanks!

**Kris Auderer**
Director, Care Operations
Match.com North America

Email:   kris.auderer@match.com
Phone:  214.576.9518
Mobile:  469.442.5002

   

2

Exh. 2

MATCHFTC0002094

| | |
|---|---|
| **From**: | Giridhar Tandri [Giridhar.Tandri@match.com] |
| **Sent**: | 3/19/2018 10:40:52 AM |
| **To**: | bret williams [bret.williams@match.com] |
| **Subject**: | RE: Data Request: Resign Flow drop-out |

It makes sense to involve the CoreWeb developers on this.

Feel free to punt it to Coreweb wherever it makes sense.

**From:** Bret Williams
**Sent:** Friday, March 16, 2018 9:36 AM
**To:** Giridhar Tandri <Giridhar.Tandri@match.com>
**Subject:** FW: Data Request: Resign Flow drop-out

I want to preclude a "foodfight" about who "owns" which feature.   Since CoreWeb has a dozen developers on it, and resignation isn't a Billing function, and Atanas has much better things to do, surely someone on the CoreWeb team can answer questions about page codes.   If not, we have bigger problems about competency than I thought.   If we are going to keep Match8 around for another 5 years we should hire some people to maintain it.   Just my opinion.

**From:** Bret Williams
**Sent:** Friday, March 16, 2018 8:53 AM
**To:** Dinh Thi Bui <DinhThi.Bui@match.com>; Krystal Roloff <Krystal.Roloff@peoplemedia.com>; Shamika Naik <Shamika.Naik@match.com>; Brett Richards <Brett.Richards@match.com>; Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data Request: Resign Flow drop-out

No I do not.   I suggest someone from QA take a user in production, step through the resignation process, and examine the session data that is created.   Alternatively you could get one of the CoreWeb team devs  to look at the code and document the flows.

**From:** Dinh Thi Bui
**Sent:** Thursday, March 15, 2018 10:19 PM
**To:** Krystal Roloff <Krystal.Roloff@peoplemedia.com>; Shamika Naik <Shamika.Naik@match.com>; Brett Richards <Brett.Richards@match.com>; Abanish Mishra <Abanish.Mishra@match.com>; Bret Williams <Bret.Williams@match.com>
**Subject:** FW: Data Request: Resign Flow drop-out

Hey Abanish,

This is what I found when I run a query on all page code that have "**resign**" in it since the last 2 days. Most of them match with the ones describe on the thread below.
My concern is on the ones I highlighted in yellow that I can't find in the original list of page codes (from the first email of this thread)
@Bret, are you aware of any page code we might have added last year on the resign flow

| pagecode | | path | Users |
|---|---|---|---|
| | 189 | /resign/resign.aspx | 45447 |
| | 819 | /resign/resignsurvey2.aspx/ | 31501 |
| | 194 | /resign/resignconf.aspx | 31373 |

Exh. 3

| 817 | /resign/resignsurvey.aspx | 18795 |
|---|---|---|
| 820 | /resign/resignsurvey2.aspx | 15804 |
| 187 | /resign/reactmemb.aspx | 10371 |
| 190 | /resign/resignsave.aspx | 7861 |
| 188 | /resign/reactconf.aspx | 6074 |
| 2655624 | /resign/saveoffer/interrupt | 6035 |
| 1334779 | /resign/saveoffer/optout | 1053 |
| 1334782 | /resign/saveoffer/ | 435 |
| 1334791 | /resign/saveoffer | 182 |

Below is the code used:

```
select pg.pagecode,path,count(distinct pg.UserID) session
from page.dbo.pagelive pg
inner join match_4.dbo.pagecodesdynamic code (nolock)  on pg.pagecode = code.pagecode
where path like '%resign%' and pg.pagedt>= '2018-03-13'
group by pg.pagecode,path
```

**From:** Shamika Naik
**Sent:** Thursday, March 15, 2018 11:28 AM
**To:** Krystal Roloff <Krystal.Roloff@peoplemedia.com>; Brett Richards <Brett.Richards@match.com>; Dinh Thi Bui <DinhThi.Bui@match.com>
**Subject:** RE: Data Request: Resign Flow drop-out

+Dinh Thi owns the resignation flow.

**From:** Krystal Roloff
**Sent:** Thursday, March 15, 2018 9:33 AM
**To:** Brett Richards <Brett.Richards@match.com>; Shamika Naik <Shamika.Naik@match.com>
**Subject:** FW: Data Request: Resign Flow drop-out

Hi guys —

Can either of you answer Abanish's question below on the page codes?

**From:** Abanish Mishra
**Sent:** Thursday, March 15, 2018 9:14 AM
**To:** Krystal Roloff <Krystal.Roloff@peoplemedia.com>; Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Kristin Higgins <Kristin.Higgins@match.com>
**Subject:** RE: Data Request: Resign Flow drop-out

Krystal,

Last time when I worked with Melissa she provided me the following page codes for cancellation flow(attaching the most recent thread ) . When I ran analysis with these page codes for last 90 days this is how the aggregated data looks like this . Please notice that I see data only for 819 and 820 in prod (similar to last time). Can you please check if the highlighted page codes are still valid?

Exh. 3

MATCHFTC-04662896

Password: 7047990
Resign Survey: 1223790
Resign Survey 2: 819 & 820
Confirmation Page: 1223791

| PageCode | Path | Count |
|---|---|---|
| 819 | /resign/resignsurvey2.aspx/ | 1142151 |
| 820 | /resign/resignsurvey2.aspx | 567311 |

Once you confirm that the page codes are correct I will send you more granular data with SessionID in it.

Thanks,
Abanish

**From:** Krystal Roloff
**Sent:** Thursday, March 15, 2018 7:55 AM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>; Abanish Mishra <Abanish.Mishra@match.com>
**Cc:** Kristin Higgins <Kristin.Higgins@match.com>
**Subject:** Data Request: Resign Flow drop-out

Hi guys,

Adrian has a meeting with Hesam coming up, and he'd like to get some fresh numbers on the resignation flow and where members are dropping out for the Happiness Project. We'd love to be able to correlate the data to refund requests and chargebacks as part of our analysis.

Would it be possible to send me the data you provided Melissa below for the month of November? Additionally, would it be possible to provide the IDs associated with the sessions? I know that will be a massive amount of data, but we'd need the member ID in order to associate it with refund requests and chargebacks.

Let me know if this is doable. Old trail of emails is below for reference.



**Krystal Roloff** | Director, Community Operations
**o** 214.576.9489 | **c** 817.913.5379

**From:** Adrian Ong
**Sent:** Wednesday, March 14, 2018 11:06 AM
**To:** Krystal Roloff <Krystal.Roloff@peoplemedia.com>
**Subject:** FW: Resign Flow drop-out

**From:** Adrian Ong
**Sent:** Monday, March 5, 2018 5:23 PM
**To:** Hesam Hosseini <Hesam.Hosseini@match.com>
**Subject:** FW: Resign Flow drop-out

Exh. 3

MATCHFTC_0002897

This is what I was talking about earlier … the below shows the breakdown of pages where resignconf.aspx is the confirmation page for the resignation / renewal cancel flow, and as you can see, not everyone makes it to the end …

**From:** Melissa Clinchy
**Sent:** Wednesday, April 5, 2017 6:33 PM
**To:** Adrian Ong <Adrian.Ong@match.com>
**Subject:** Resign Flow drop-out

Hi Adrian,

Here's the data on the resign flow and where members drop out. I've included screenshots of each page.

These numbers are pretty different than what we pulled originally back in 2014. However – Abanish ran it for the past 90 days and the 2014 numbers were 7 days.

Let me know if you have any questions or want to discuss.

| PageCode | Path | Description | Sessions | % of Session |
|---|---|---|---|---|
| 817 | /resign/resignsurvey.aspx | Survey | 762659 | 12% |
| 194 | /resign/resignconf.aspx | Confirmation Page | 1354576 | 21% |
| 819 | /resign/resignsurvey2.aspx/ | Tell Us More | 1352883 | 20% |
| 820 | /resign/resignsurvey2.aspx | Tell Us More | 642131 | 10% |
| 190 | /resign/resignsave.aspx | 3 for 1 Offer | 363404 | 6% |
| 189 | /resign/resign.aspx | Password Page | 2130411 | 32% |

189

Exh. 3



190



194

Exh. 3

match.com

SUBSCRIBE | Home | Search ▼ | Matches ▼ | Connections ▼ | Messages ▼ | Events ▼ | Profile

No one can find you until you finish your profile. Complete

**Account Settings:** | Auto Sign In | Blocking | **Change/Cancel Membership** | Email Preferences | IM | Linked Accounts | Location | Match.com by Mail
matchMobile | matchPhone | Member Spotlight | Sign Up Information | Subscription Status

# Your membership has been cancelled.

Your confirmation number is DLL3102231618322013102012163782D.

Now that you are no longer a Match.com member, here are a few things you need to know:

- Your profile and photos are no longer visible to others.
- You will no longer receive the Match.com email publications that you requested.
- You will receive an email confirming your cancellation.
- You may use your current registration information to sign in any time within one year.
- You may return and "unhide" your profile any time within one year.
- You do not have to do anything further to complete your membership cancellation.

Our millions of members are going to miss seeing your smiling face. Good luck in love and thank you.

**Reactivate now**

About Match.com | Online Dating Safety Tips | Help/FAQs | ✔ Match.com Guarantee | Advertise on Match.com
Terms of Use** | Dating Articles & Advice | Profile Assistance | 📱 Mobile | Become an Affiliate
Your Privacy | How Online Dating Works | Site Map | 🎁 Gift Subscriptions | Promotions & Sponsorships
Media Room | Success Stories | Match International | | Business Development

match.com » It's Game Night! | PICK GAME TONIGHT | ⚙ Game

817

CONFIDENTIAL – FTC v. MATCH, Case No. 3:19-cv-02281-K     MATCHFTC0082101



819/820

CONFIDENTIAL – FTC v. MATCH, Case No. 3:19-cv-02281-K



**From:** Abanish Mishra
**Sent:** Wednesday, April 5, 2017 11:10 AM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>; Melissa Clinchy <melissa.clinchy@match.com>
**Subject:** RE: Data request on resign flow

This data is for last 90 days

```
SELECT PCD.PageCode,Path,Count(Distinct(S.SID)) from Page.dbo.Page P
LEFT JOIN Match_4.dbo.PageCodesDynamic PCD on P.PageCode=PCD.PageCode
INNER JOIN [Session].dbo.UserSessions S on S.SID=P.SID
WHERE PCD.PageCode in (189,190,194,817,819,820)
GROUP BY PCD.PageCode,Path
```

**From:** Fazal Sorathia
**Sent:** Thursday, March 30, 2017 10:14 AM
**To:** Melissa Clinchy <melissa.clinchy@match.com>

Exh. 3

MATCHFTC-006103

Cc: Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Okay. Abanish will provide you the data by next week.

---

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 5:00 PM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

That should be good. If it's possible to pull Q1 data that'd be great – otherwise, Q4 would work as well.

Thank you!

---

**From:** Fazal Sorathia
**Sent:** Wednesday, March 29, 2017 4:52 PM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

If it's once a year request then we can send you the numbers. We will get you something by next week? Is it ok?

---

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 4:33 PM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

For now – it's an adhoc request – but we've needed it about once a year (once someone wants to look at it).

I don't have access to MARP – but if I could get access and pull it myself, that'd be great.

Thanks!

---

**From:** Fazal Sorathia
**Sent:** Wednesday, March 29, 2017 4:00 PM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Melissa – I am not aware of any existing report.
Do you need this data going forward for long time or it's an adhoc request?
Do you have access to MARP? We can probably give you sql which you can run whenever you need.

---

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 3:16 PM

Exh. 3

**To:** Abanish Mishra <Abanish.Mishra@match.com>; Fazal Sorathia <Fazal.Sorathia@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

Were you ever able to look into this?

Thanks!

---

**From:** Abanish Mishra
**Sent:** Monday, March 27, 2017 9:11 AM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Melissa Clinchy <melissa.clinchy@match.com>
**Subject:** RE: Data request on resign flow

Fazal ,

Can you remember any care related report based on resign flow? If it doesn't exist can you please prioritize this request ?

Thanks,
Abanish

---

**From:** Melissa Clinchy
**Sent:** Friday, March 24, 2017 5:10 PM
**To:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** FW: Data request on resign flow

Hi Abanish!

Way back in 2014 we got some data around where members fall out of the resign flow. I was wondering if you could help in pulling that data again, or if you can point me in the right direction?

We basically want to say when members drop out of the resignation flow who don't fully complete resignation on site, but start the process.

Here's the email from Jim Talbot in 2014 (The entire thread is below):

Here's the output for the last resign flow page users saw in sessions where I'm not logging a resignation. It's for a week's worth of data. I'm not exactly sure what the pagecodes mean since I just pulled them as the pages successful every resigning user saw in his/her resignation session. However, you should be able to walk through the flow and match them up.

| Pagecode | | Path | Sessions | % of Sessions |
|---|---|---|---|---|
| | 189 | /resign/resign.aspx | 54,247 | 80.02% |
| | 190 | /resign/resignsave.aspx | 4,294 | 6.33% |
| | 194 | /resign/resignconf.aspx | 4,805 | 7.09% |
| | 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% |
| | 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| | 820 | /resign/resignsurvey2.aspx | 86 | 0.13% |

Exh. 3

**Melissa Clinchy** | Supervisor, Technical Resolutions
Customer Support
Desk: 972.638.8687 | Mobile: 469.212.4102

CONFIDENTIAL – FTC v. MATCH, Case No. 3:19-cv-02281-K

MATCHFTC0082106

# Resignation Crisis and Intervention Points

Dallas, July 20th 2017



# Executive summary

- **Resignations** are concentrated at the **beginning** of a subscription and right **before and after renewals**.

- **37-56%** of users who enter the resign flow end up **abandon**ing before completing their resignation. The high end of abandonment is early in the subscription. The **low end of abandonment rate is late** in the subscription/after 1 or more renewals. **Older** users are **more likely to abandon** than younger.

- The **save offer has little appeal** to users who resign **early in their subscription**. The **highest take rates** are for users who resign **right around their first renewal**.

- **Email contact** in/out/mutual has **little variance** between users who **resign vs. those who don't prior to first renewal**.

- **Post first renewal**, **users** of comparable activity **who didn't resign** have about **twice the email contact** in/out/mutuals of **users who resign after their first renewal**.

- Users who **have long periods of inactivity** prior to their login are **very likely to resign**.

- Overall **resub rates** are also higher later for users who resign **later in their subscription** but **before their first renewal** with **lower** resub rates after the **first renewal**.

- There is a lot of **variance** in **resub rate** by **resignation reason** cross referenced with demographics, but consistently users who say they **don't have time but will have time in a few weeks** have the **highest resub rates**.



Exh. 4        **2**

**APP 108**

# Package is the biggest determinant of time to resign. Age, first sub vs. resub have similar arcs, just more frontloaded for younger and resub



Share of Resignations by Days from Sub by Package (excluding iPay)

1 Month   3 Month   6 Month



Exh. 4

**3**

**APP 109**

# Highest abandonment rate is on day of subscription. Drop in abandonment corresponds with a large increase in resign flow traffic. Net result is flat/ambiguous.





Match US regs, fraud adjusted lifetime

# Offer Take Rate is highest just before renewal. Lowest just after subscription date.



1 and 3 month Resigners Share Taking Offer Days Since Sub



# Getting more mutuals in doesn't correlate with lower resign rates prior to first renewal



Average Mutual Convos Had to Date for Users Who Resigned Next Day vs. Didn't by Logged In vs. Didn't Log In

Match US brand regs, fraud adjusted lifetime



Exh. 4

6

**APP 112**

# Post first renewal, there is large variance in number of mutuals for resigners vs. non-resigners



Average Mutual Email Convos Engaged In for 1 Month Users Who Resigned vs. Those Who Didn't Post First Renewal by Distance between Prior and Current Login



# Users who have been inactive for longer are much more likely to resign when they log in





# Users who resign just before renewal have the highest resub rate, but it's much more pronounced in resubs





# Resub rate by resign reason show a lot of variance, but it's not consistent across package and demographics

| Resign Reason | Sum of Resub Rate | Sum of Subs with Resigns | Question |
|---|---|---|---|
| Other | 26% | 42,176 | |
| On Match.com | 24% | 18,845 | |
| I just can't spend money on dating right now | 21% | 16,007 | |
| On our own, offline | 18% | 12,518 | |
| By attracting more members who are my type | 22% | 8,908 | |
| At least 6 months from now | 21% | 6,284 | |
| On another dating website | 20% | 5,064 | |
| 0.2 | 28% | 4,651 | What was your expected response rate? |
| 2 to 5 | 24% | 4,310 | I didn't receive enough replies to emails I sent out. How many did you email? |
| I could afford a Match subscription at a lower price | 38% | 4,137 | |
| I can't afford a subscription right now | 29% | 3,703 | |
| Very few profiles piqued my interest | 28% | 3,644 | |
| 6 to 10 | 25% | 3,538 | I didn't receive enough replies to emails I sent out. How many did you email? |
| 0.5 | 28% | 3,121 | What was your expected response rate? |
| It's just me; I'm looking for perfection | 24% | 3,028 | |
| At least 1 | 25% | 2,985 | I didn't receive enough replies to emails I sent out. How many did you email? |
| By making it easier to find who I'm looking for | 21% | 2,582 | |
| In a few months | 32% | 2,577 | |
| I had too much going on and did not have time to date | 27% | 2,196 | |
| People misrepresented themselves on their profiles | 28% | 1,717 | |
| Not many people of interest initiated contact with me | 29% | 1,693 | |
| People's profiles were accurate, just no chemistry | 25% | 1,534 | |
| 11 to 20 | 23% | 1,452 | I didn't receive enough replies to emails I sent out. How many did you email? |
| 21 or more | 23% | 1,419 | I didn't receive enough replies to emails I sent out. How many did you email? |
| One | 27% | 1,360 | |
| I clicked with a few people, it just didn't materialize | 31% | 1,110 | |
| I didn't receive enough replies to emails I sent out | 30% | 1,078 | |
| I didn't click with the matches I met in person | 33% | 683 | |
| 0.8 | 25% | 657 | What was your expected response rate? |
| In a few weeks | 43% | 449 | |
| 1 | 26% | 218 | What was your expected response rate? |
| Grand Total | 25% | 163644 | |



Exh. 4      10

**APP 116**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>MATCH GROUP, INC., a corporation, and<br><br>MATCH GROUP, LLC, formerly known as<br>MATCH.COM, LLC, a limited liability company,<br><br>    Defendants. | Case No. 3:19-cv-02281-K<br><br><br>**PLAINTIFF FEDERAL TRADE**<br>**COMMISSION'S AMENDED**<br>**NOTICE OF DEPOSITIONS** |

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

Plaintiff Federal Trade Commission will take the following deposition at the time and place

indicated, before an officer authorized to administer oaths, and by video and/or stenographic

means:

> **Witness:**      **Adrian Ong**
> **Date:**          **November 17, 2022**
> **Time:**          **10:00 am CT**
> **Location:**      **Federal Trade Commission – Southwest Region Office**
>                    **1999 Bryan Street, Suite 2150**
>                    **Dallas, Texas 75201**
>
> **Witness:**      **Michele Watson**
> **Date:**          **November 22, 2022**
> **Time:**          **10:00 am CT**
> **Location:**      **U.S. Attorney's Office for the Western District of Texas**
>                    **903 San Jacinto Boulevard, Suite 334**
>                    **Austin, Texas 78701**
>
> **Witness:**      **Mandy Ginsberg**
> **Date:**          **November 29, 2022**
> **Time:**          **10:00 am CT**
> **Location:**      **Sidley Austin LLP**
>                    **2021 McKinney Avenue, Suite 2000**

**AMENDED NOTICE OF DEPOSITIONS**

1

Dallas, TX 75201

| | |
|---|---|
| **Witness:** | **Amarnath Thombre** |
| **Date:** | **December 1, 2022** |
| **Time:** | **10:00 am CT** |
| **Location:** | **Federal Trade Commission – Southwest Region Office** |
| | **1999 Bryan Street, Suite 2150** |
| | **Dallas, Texas 75201** |

| | |
|---|---|
| **Witness:** | **Melissa Clinchy** |
| **Date:** | **December 6, 2022** |
| **Time:** | **10:00 am CT** |
| **Location:** | **Sidley Austin LLP** |
| | **2021 McKinney Avenue, Suite 2000** |
| | **Dallas, TX 75201** |

| | |
|---|---|
| **Witness:** | **Greg Blatt** |
| **Date:** | **December 8, 2022** |
| **Time:** | **10:00 am CT** |
| **Location:** | **Sidley Austin LLP** |
| | **1001 Brickell Bay Drive, Suite 900** |
| | **Miami, Florida 33131** |

The depositions will continue from day to day until completed.  You are invited to attend and cross-examine or otherwise participate.

Respectfully submitted,

Dated: October 28, 2022

*/s/ Reid Tepfer*
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted *pro hac vice*)
JOHN R. O'GORMAN (admitted *pro hac vice*)
ERICA R. HILLIARD
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)

**AMENDED NOTICE OF DEPOSITIONS**
2

T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T. (214) 979-9379 (Hilliard)
F: (214) 953-3079
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov
ehilliard@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**AMENDED NOTICE OF DEPOSITIONS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2022, I served the document on counsel by a manner authorized by Federal Rules of Civil Procedure.

*/s/ REID TEPFER*
REID TEPFER

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>   v.<br><br>MATCH GROUP, INC., a corporation, and<br><br>MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>  Defendants. | Case No. 3:19-cv-02281-K<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S SECOND AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION OF DEFENDANT MATCH GROUP, LLC** |

Pursuant to Federal Rule of Civil Procedure 30(b)(6), on November 22, 2022, starting at 10:00 a.m. each day, at 1999 Bryan Street, Suite 2150, Dallas, Texas 75201, the Federal Trade Commission ("FTC") will take the deposition of Defendant Match Group, LLC ("MGLLC") as represented by the person(s) most knowledgeable with respect to the topics identified below and designated to testify on MGLLC's behalf. The deposition will be taken upon oral examination before an official authorized by law to administer oaths. Testimony by the witness(es) will be recorded by video and/or stenographic means. Pursuant to Federal Rule of Civil Procedure 34, MGLLC should provide documents responsive to the Request for Documents included in this notice by November 21, 2022, at 10:00 a.m., at 1999 Bryan Street, Suite 2150, Dallas, Texas 75201.

**SECOND AMENDED NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6)**

## INSTRUCTIONS

1. Unless otherwise stated, the relevant time period for all topics of examination below is 2013 to the present.

2. The FTC requests that counsel for Match Group, LLC promptly contact FTC counsel after the receipt of this notice to meet and confer concerning the topics for examination listed below pursuant to FED. R. CIV. P. 30(b)(6).

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1. "**Advertisement**" or "**Advertising**" or "**Ad**" means any written or verbal statement, illustration, or depiction that promotes the sale of a good or service or is designed to increase consumer interest in a brand, good, or service. Advertising media include, but are not limited to, packaging and labeling, promotional materials, print, television, radio, and internet, social media, and other digital content.

2. "**Chargeback**" means a transaction that is returned as a financial liability to an acquirer by a card issuer, usually because of a disputed transaction. The acquirer may then return or "charge back" the transaction to the merchant.

3. "**Guarantee Extension**" means any free or additional subscriptions, services, or access to Match.com provided to a Customer under the terms of any Guarantee. "Guarantee Extension" shall further include the meaning as used on the Match.com website.

4. "**Guarantee Program Progress Page**" means any webpage on Match.com where Customers who have purchased a Match.com subscription subject to any Match Guarantee may check their progress towards satisfying the terms or conditions of any

2

such Match Guarantee. "Guarantee Program Progress Page" shall further include the meaning as used on the Match.com website.

5.  "**Identify**" or "**the identity of**" shall be construed to require identification of (a) natural persons by name, address, telephone number, and email address; and (b) businesses or other organizations by name, address, telephone number, email address, and identities of natural persons who are officers, directors or managers of the business or organization, and contact persons, where applicable.

6.  "**Match Group, Inc.**" or "**MGI**" means Match Group, Inc, a Delaware corporation and party to this litigation**.**

7.  "**Match Group, LLC**" or "**MGLLC**" shall mean Match Group, LLC and includes operations under assumed names, prior names, and predecessor entities, including Match.com, LLC.

8.  "**Match Guarantee**" means any offer on Match.com to provide free subscriptions to Match.com for Customers who fulfill certain criteria during their subscription period.

9.  "**Online Cancellation Flow**" means the process on Match.com for Match.com customers to cancel their membership or trial membership and includes each step of the cancellation process, from the Match.com homepage (as viewed on either a desktop computer or mobile device) until the cancellation request is effectuated on Match.com's system and the customer received a cancellation confirmation email, and further includes all permutations of the cancellation process that were dependent on the customer's input.

10. "**Terms of Use**" means the agreement entitled "Terms of Use" displayed to users of Match.com, including any version or revision of the agreement displayed from January 1, 2013 to the present.

### <u>MATTERS FOR EXAMINATION</u>

Unless otherwise stated, the relevant time period for all topics of examination below is 2013 to the present.

1.  Match Group, Inc.'s relationship with Match Group, LLC including

    a.  Any contractual rights, obligations, or other memorialized agreements relating to Match.com;

    b.  The payment of funds (and the reasons for such payments) between Match Group, Inc. and Match Group, LLC;

      c.  Any shared employees or executives between Match Group, Inc.'s and Match Group, LLC or employees or executives employed by both Match Group, Inc. and Match Group, LLC;

      d.  Any regular reports made by MGLLC employees to MGI employees;

      e.  The frequency and nature of meetings or written or oral communications between MGLLC and MGI employees or executives.

2.     The identify of Match Group, Inc. executives with any roles or responsibilities relating to Match.com.

3.     Match Group, Inc.'s role in the operation or control of Match.com or any other dating website Match Group, Inc. owns or operates, either directly or indirectly.

4.     The nature of Match Group, Inc.'s ownership interest in Match.com.

5.     Match Group, Inc.'s role in the creation, review, monitoring, or enforcement of policies and procedures relating to the operation of Match.com including concerning the following topics:

      a.  The Match Guarantee;

      b.  Customer refund requests;

      c.  Customer Chargeback requests;

      d.  Customer subscription cancellation, and

      e.  Match.com user agreements, Terms of Use, or privacy policy.

6.     Match Group, Inc.'s role in reviewing, approving, or drafting the following content relating to Match.com, including the consideration of changes to such content and why such changes were implemented or not:

      a.  Advertisements;

      b.  Customer service communications; and

      c.  User-facing website content.

7.     Any studies, testing, surveys, data analysis, or research regarding consumer understanding of or reaction to representations regarding:

      a.  The Match Guarantee;

      b.  Match.com's subscription cancellation mechanisms;

      c.  Match.com's autorenewal or refund policies; and

      d.  Match.com's policies relating to customer Chargebacks.

8.     Policies and procedures relating to customer Chargeback requests related to Match.com, including the consideration of changes to such policies and procedures and why such changes were implemented or not.

9.    Match.com's refund policies and procedures, including the consideration of changes to such policies and procedures and why such changes were implemented or not.

10.   Customer inquiries, complaints, or refund requests, including:

   a.  Policies and procedures for responding to inquiries, complaints, or refund requests, including the time periods during which such policies were in effect;

   b.  The volume and subject of any such customer inquiries, complaints, or refund requests; and

   c.  Policies and procedures for compiling, storing, analyzing customer inquiries, complaints, or refund requests.

11.   Any strategies or goals related to increasing Match.com subscriptions or reducing subscription cancellations, refunds or refunds requests, or Chargebacks.

12.   Consideration, understanding, or awareness of the possibility or likelihood of

   a.  Consumers misunderstanding or being misled by representations concerning the Match Guarantee or Match.com's cancellation procedures; or

   b.  Consumers believing that their subscriptions had been cancelled when in fact it had not been cancelled.

13.   Identification and authentication of all 10-K (annual reports), 10-Q (quarterly reports), and 8-K (current reports) MGI or MGLLC filed with the SEC.

14.   MGLLC's responses to the FTC's discovery requests in this case, including the FTC's First Request for Production to Match Group, LLC, the FTC's First Set of Interrogatories, and the First Set of Requests for Admission, including its efforts to search for and produce responsive documents, and MGLLC's role in responding the FTC's March 14, 2017 Civil Investigative Demand to Match Group, Inc.

15.   MGLLC's budget control, hiring and compensation, management goals, and performance evaluations, including maintenance of organizational rules and policies.

16.   MGLLC's policies and procedures for reviewing and approving systems of legal compliance or internal policy compliance.

17.   MGLLC's policies, procedures, and practices for data collection and document retention.

18.   The Match Guarantee policy, including:

   a.  Each step Match.com customers have been required to take to redeem or qualify for the Guarantee Extension;

   b.  Any variation of the Guarantee policy and the dates during which each was in effect;

    c.   The reason for implementing any variation of the Guarantee policy;

    d.   Any criteria Defendant has used to determine whether to grant a customer's request to redeem the Guarantee, grant a Guarantee Extension, or grant a customer refund request relating to the Guarantee; and

    e.   Any other limitation on a customer's ability to redeem the Guarantee.

19.    The Guarantee Program Progress Page, including:

    a.   Any requirement that customers use the tracker within a limited time frame to receive a Guarantee Extension;

    b.   Any variation of the Guarantee Program Progress Page and the dates during which each was in effect;

    c.   The reason for implementing any changes to or variations of the Guarantee Program Progress Page;

    d.   The implementation and/or discontinuation of email notifications related to a customer's Guarantee progress; and

    e.   Any alternative methods for customers to redeem the Match Guarantee or request a Guarantee Extension and how customers were made aware of any such alternative methods.

20.    Advertisements referencing the Match Guarantee, including:

    a.   The forms of advertising used;

    b.   The timing of any advertising campaign; and

    c.   The representations made in each campaign.

21.    All methods by which customers were provided information on how to redeem the Match Guarantee or request a Guarantee Extension and the nature of the information.

22.    The suspension or discontinuation of the Match Guarantee, including:

    a.   The reasons for suspending or discontinuing the program;

    b.   The timing of any suspension or discontinuation; and

    c.   How the policy has been applied to existing customers after suspension or discontinuation.

23.    Data by year relating to the Match Guarantee and Guarantee Extensions, including:

    a.   The number of customers who purchased subscriptions potentially eligible for Guarantee Extensions;

    b.   The number of customers who satisfied the criteria to receive a Guarantee Extension;

    c.   The number of customers who attempted to redeem the Match Guarantee and receive a Guarantee Extension;

    d.  The number of customers who received a Guarantee Extension; and

    e.  The number of customers who received a Guarantee Extension only after contacting Match.com's customer service.

24.    Match.com's policies and procedures relating to customer Chargeback requests, including regarding:

    a.  The circumstances in which the operators of Match.com will dispute a customer Chargeback;

    b.  The circumstances in which the operators of Match.com will deny customer account access due to a Chargeback request;

    c.  The circumstances in which the operators of Match.com will remove or reinstate the account of a customer who requests a Chargeback;

    d.  The effective dates of any of policy concerning customer Chargebacks and the reason for any changes to or suspensions of the policy.

25.    Data by year relating to Match.com's customer Chargeback requests, including:

    a.  The number of customers who had their account suspended or terminated because they requested a Chargeback and had their request subsequently denied or overturned by their financial institution;

    b.  The number of customers who had (i) had account access suspended or terminated because they requested a Chargeback and (ii) had access to their account reinstated after contacting customer service.

26.    All variations of the complete Online Cancellation Flow for Match.com that have been in effect at any time between September 25, 2014 and the present and

    a.  The time period during which the particular variation of the Online Cancellation Flow was in effect;

    b.  The reason for the changes from previous variations; and

    c.  The justification or reason for each step or required consumer action in each such variation of the Online Cancellation Flow.

27.    Changes considered or made to the Online Cancellation Flow between September 25, 2014, and the present including changes made in response to customer complaints or feedback, or allegations that the cancellation flow was cumbersome, complex, confusing, difficult to use, defective, or ineffective, including, but not limited to, Plaintiff's allegations that Defendant's cancellation processes violated the Restore Online Shoppers Confidence Act, 15 U.S.C. § 8403(3).

28.    For each cancellation method provided by Match.com:

    a.  The nature and requirements of the cancellation method;

    b.  All methods by which Match.com provided information to customers on how to access or use the cancellation method and the nature of the information;

    c. On a monthly basis from September 2014 until the present, the number of customers who successfully cancelled via the particular cancellation method;

    d. On a monthly basis September 2014 until the present, the percentage of customers who successfully used the cancellation method as compared to the total number of consumers who successfully canceled by any method during that same period.

29. If MGLLC contends that a majority or a certain percentage of customers who initiated the Online Cancellation Flow process were successful in cancelling their subscriptions within a certain time period;

    a. All facts and analysis that support this contention, including:

        i. The nature and characteristics of any data that support the contention;

        ii. The time periods analyzed;

        iii. The facts that Defendants contend tend to show that the customer initiated the Online Cancellation Flow process; and

        iv. The facts that Defendants contend tend to show that the customer was successful in cancelling their subscription;

    b. The identify of all individuals who participated in the analysis and the nature of their participation; and

    c. Whether the data supporting the contention was produced to the FTC, and the date, format, and Bates-number range of the production.

30. Any problems or customer complaints relating to the design or functionality of Match.com's password input process or "reset password" process within the Online Cancellation Flow between September 25, 2014 and the present, including:

    a. The nature of the problem or complaint;

    b. Attempts to address the problem or complaint;

    c. The time period for which the problem may have impacted customers; and

    d. The number of consumers who complained about or were impacted by each particular issue.

31. Defendants' collection and maintenance of data concerning consumer interactions with the Online Cancellation Flow after September 25, 2014, including:

    a. Whether such data is routinely collected and maintained by MGLLC, and if so, for what purpose;

    b. Whether such data is currently in the possession, custody, or control of MGLLC;

    c. The format of such data and the information captured by the data;

d.  The time period covered by such data currently in the possession, custody, or control of MGLLC;

e.  If any such data since September 25, 2014, is not currently in the possession, custody, or control of MGLLC, the reason the data is incomplete and, if the data was formerly in MGLLC's possession, custody, or control but is no longer, the date upon which the data became no longer available and the circumstances;

f.  The repository in which such data is or was stored;

g.  The person(s) responsible for maintaining such data;

h.  If all or part of such data was produced to the FTC, the date, format, and Bates-number range of the production; and

i.  The substance of any such data.

32.  The data and conclusions concerning Match.com's cancellation flow customer dropout rate referenced by the individuals in the emails attached as Exhibits 1, 2, and 3, and the presentation attached as Exhibit 4, including:

a.  The location and nature of the data;

b.  The methodology for collecting this data;

c.  The specific steps in the cancellation flow to which the data is associated;

d.  Whether that data is in MGLLC's possession, custody, or control; and

e.  Whether that data has been produced to the FTC.


## REQUEST FOR PRODUCTION OF DOCUMENTS

1.  Documents any person designated to testify on Match Group, LLC's behalf in this deposition reviewed in preparation for the deposition. To the extent that Defendants previously produced such documents to the FTC, Match Group, LLC may refer to them by Bates number in lieu of re-production.


Dated:  October 28, 2022                Respectfully submitted,

                                        */s/ Reid Tepfer*
                                        REID TEPFER
                                        M. HASAN AIJAZ
                                        SARAH ZUCKERMAN (admitted *pro hac vice*)
                                        JOHN R. O'GORMAN (admitted *pro hac vice*)
                                        ERICA R. HILLIARD

Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T. (214) 979-9379 (Hilliard)
F: (214) 953-3079
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov
ehilliard@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2022, I served the foregoing document on the following counsel of record via e-mail.

**Attorneys for Match Group, Inc. and Match Group, LLC:**
Angela C. Zambrano
angela.zambrano@sidley.com
Chelsea A. Priest
cpriest@sidley.com
Tayler G. Bragg
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067

*/s/ REID TEPFER*
REID TEPFER

| From: | abanish mishra |
|-------|----------------|
| To: | Melissa Clinchy |
| CC: | Fazal Sorathia |
| Sent: | 5/3/2017 2:37:55 PM |
| Subject: | RE: Data request on resign flow |

Melissa,

I ran a  query against all the new pagecodes you provided but I see data only for pagecode 819 and 820 in database. Others don't have data in production (select top 10 * from  Page.dbo.PageLive where PageCode in (7047990 ,1223790,1223791))

Here is the data I gathered for last 90 days for PageCode 819 and 820

| PageCode | Path | Count |
|----------|------|-------|
| 819 | /resign/resignsurvey2.aspx/ | 1303526 |
| 820 | /resign/resignsurvey2.aspx | 637621 |

```
SELECT PCD.PageCode,Path,Count(Distinct(S.SID)) from Page.dbo.Page P
LEFT JOIN Match_4.dbo.PageCodesDynamic PCD on P.PageCode=PCD.PageCode
INNER JOIN [Session].dbo.UserSessions S on S.SID=P.SID
WHERE PCD.PageCode in (7047990 ,1223790,1223791,819,820)
GROUP BY PCD.PageCode,Path
```

Thanks,
Abanish

**From:** Melissa Clinchy
**Sent:** Wednesday, May 3, 2017 10:46 AM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi guys!

I worked with Poossen – and it looks like the Page IDs of the cancellation flow page may have changed. Are you able to re-run this report with these page codes?

Password : 7047990
Resign Survey: 1223790
Resign Survey 2: 819 & 820
Confirmation Page: 1223791

Thank you!

**From:** Fazal Sorathia
**Sent:** Thursday, March 30, 2017 10:14 AM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Okay. Abanish will provide you the data by next week.

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 5:00 PM

Exh. 1

**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

That should be good. If it's possible to pull Q1 data that'd be great — otherwise, Q4 would work as well.

Thank you!

**From:** Fazal Sorathia
**Sent:** Wednesday, March 29, 2017 4:52 PM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

If it's once a year request then we can send you the numbers. We will get you something by next week? Is it ok?

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 4:33 PM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

For now — it's an adhoc request — but we've needed it about once a year (once someone wants to look at it).

I don't have access to MARP — but if I could get access and pull it myself, that'd be great.

Thanks!

**From:** Fazal Sorathia
**Sent:** Wednesday, March 29, 2017 4:00 PM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Melissa — I am not aware of any existing report.
Do you need this data going forward for long time or it's an adhoc request?
Do you have access to MARP? We can probably give you sql which you can run whenever you need.

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 3:16 PM
**To:** Abanish Mishra <Abanish.Mishra@match.com>; Fazal Sorathia <Fazal.Sorathia@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

Were you ever able to look into this?

Thanks!

**From:** Abanish Mishra
**Sent:** Monday, March 27, 2017 9:11 AM

Exh. 1

**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Melissa Clinchy <melissa.clinchy@match.com>
**Subject:** RE: Data request on resign flow

Fazal ,

Can you remember any care related report based on resign flow? If it doesn't exist can you please prioritize this request ?

Thanks,
Abanish

**From:** Melissa Clinchy
**Sent:** Friday, March 24, 2017 5:10 PM
**To:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** FW: Data request on resign flow

Hi Abanish!

Way back in 2014 we got some data around where members fall out of the resign flow. I was wondering if you could help in pulling that data again, or if you can point me in the right direction?

We basically want to say when members drop out of the resignation flow who don't fully complete resignation on site, but start the process.

Here's the email from Jim Talbot in 2014 (The entire thread is below):

Here's the output for the last resign flow page users saw in sessions where I'm not logging a resignation. It's for a week's worth of data. I'm not exactly sure what the pagecodes mean since I just pulled them as the pages successful every resigning user saw in his/her resignation session. However, you should be able to walk through the flow and match them up.

| Pagecode | Path | Sessions | % of Sessions |
|---|---|---|---|
| 189 | /resign/resign.aspx | 54,247 | 80.02% |
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% |
| 194 | /resign/resignconf.aspx | 4,805 | 7.09% |
| 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| 820 | /resign/resignsurvey2.aspx | 86 | 0.13% |



**Melissa Clinchy** | Supervisor, Technical Resolutions
Customer Support
Desk: 972.638.8687 | Mobile: 469.212.4102

**From:** Kris Auderer
**Sent:** Tuesday, May 17, 2016 12:14 PM

Exh. 1

**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Subject:** RE: Quick question on reporting user resignations

Since this was 2014, can you see if you can get updated data by 2:30pm today? I know it's a longshot. Not sure if Jiten or Matt could help or maybe Jim Talbott or Taylor?



**Kris Auderer** | Director, Customer Care Operations & Projects
Match & People Media
**desk** 214.576.9518 | **mobile** 469.442.5002

**From:** Melissa Clinchy
**Sent:** Tuesday, May 17, 2016 12:07 PM
**To:** Kris Auderer <Kris.Auderer@match.com>
**Subject:** FW: Quick question on reporting user resignations



**Melissa Clinchy** | Supervisor, Technical Resolutions
Customer Support
Desk: 972.638.8687 | Mobile: 469.212.4102

**From:** Melissa Clinchy
**Sent:** Friday, August 21, 2015 12:00 PM
**To:** Kris Auderer <Kris.Auderer@match.com>
**Subject:** FW: Quick question on reporting user resignations

Here you go!

**From:** Melissa Schaaf
**Sent:** Wednesday, September 24, 2014 4:15 PM
**To:** Kris Auderer
**Subject:** FW: Quick question on reporting user resignations

FYI



**Melissa Schaaf** | Supervisor, Technical Resolutions
Customer Support
Office: 972.638.8687 | Mobile: 469.212.4102

**From:** Melissa Schaaf
**Sent:** Tuesday, February 18, 2014 3:17 PM
**To:** Kris Auderer
**Subject:** RE: Quick question on reporting user resignations

Exh. 1

| 189 | /resign/resign.aspx | 54,247 | 80.02% | **Password Page** |
|---|---|---|---|---|
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% | **3 for 1 offer** |
| 194 | /resign/resignconf.aspx | 4,805 | 7.09% | **Confirmation Page** |
| 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% | **Survey** |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% | **Tell us more** |
| 820 | /resign/resignsurvey2.aspx | 86 | 0.13% | **Tell us more** |

**189**



**190**

Exh. 1



**194**

FOIA Confidential



817



**819/820**



**From:** Summer Hogsed
**Sent:** Thursday, January 09, 2014 3:33 PM
**To:** Rose P
**Cc:** Kris Auderer; Melissa Schaaf
**Subject:** RE: Quick question on reporting user resignations

Done.

**Summer Hogsed** | Manager, Product
8300 Douglas Avenue, Ste 800
Dallas, TX 75225
t 972.892.9570 f 972.892.9578
www.match.com


**From:** Rose P
**Sent:** Thursday, January 09, 2014 3:30 PM
**To:** Summer Hogsed
**Cc:** Kris Auderer; Melissa Schaaf
**Subject:** RE: Quick question on reporting user resignations

Hi Summer –

Based on our analysis below we liked to close this WI please! Thank you!

| 88117 | 1.15 | CSA | CSA: Display date and time when a member accessed the cancellation page |
|-------|------|-----|----------------------------------------------------------------------------|

Exh. 1

MATCHFTC APP 0140

Thanks,

**Rose Phommachanh** | Supervisor, Technical Resolutions | Customer Care
Email: rose.p@match.com | Phone: 972.638.8686

   

**From:** Kris Auderer
**Sent:** Thursday, January 09, 2014 3:27 PM
**To:** Melissa Schaaf; Rose P
**Subject:** RE: Quick question on reporting user resignations

Oh, if there's a WI for this will you get it closed please?  Thanks.

**Kris Auderer** |  Director, Customer Care Operations
Match.com US
**o** 214.576.9518  |  **c** 469.442.5002

   

**From:** Melissa Schaaf
**Sent:** Thursday, January 09, 2014 3:25 PM
**To:** Kris Auderer; Rose P
**Subject:** RE: Quick question on reporting user resignations

Hi Kris,

I looked over this with Rose and here's what we think:

|     | Path                      | Sessions | % of Sessions |
|-----|---------------------------|----------|---------------|
| 189 | /resign/resign.aspx       | 54,247   | 80.02%        |
| 190 | /resign/resignsave.aspx   | 4,294    | 6.33%         |
| 194 | /resign/resignconf.aspx   | 4,805    | 7.09%         |
| 817 | /resign/resignsurvey.aspx | 3,092    | 4.56%         |
| 819 | /resign/resignsurvey2.aspx/| 1,268   | 1.87%         |
| 820 | /resign/resignsurvey2.aspx | 86      | 0.13%         |

Matching up Taylor's screenshots and the what Jim provided,  80% of members (highlighted above) drop out before they even have to enter their password.  So the member saw the page where they would have to enter their password and then backed out.

Since most members drop out before even entering their password, would it be helpful to agents? I wouldn't even count  that page as the beginning the cancellation process.

We may just be opening a can of worms for the member to fight back – "well, you see that I TRIED to cancel, can you refund me?".

Exh. 1

Also – agents will be able to see whether or not a cancellation email was sent fairly soon in CSA, which I feel like would be more helpful.

Unless we're going to change refund rules based on when they drop out, I think we should table it.

Thanks!

---

**From:** Kris Auderer
**Sent:** Thursday, January 02, 2014 10:23 AM
**To:** Melissa Schaaf; Rose P
**Subject:** FW: Quick question on reporting user resignations

Can you guys look at this as a side project?  Let me know what you think we should do/show in CSA (if anything)…is this valuable?  Thanks.

**Kris Auderer** |  Director, Customer Care Operations
Match.com US
**o** 214.576.9518  |  **c** 469.442.5002

    

---

**From:** Kris Auderer
**Sent:** Friday, December 20, 2013 1:51 PM
**To:** Kris Auderer
**Subject:** FW: Quick question on reporting user resignations


**Kris Auderer** |  Director, Customer Care Operations
Match.com US
**o** 214.576.9518  |  **c** 469.442.5002

   

---

**From:** Bret Williams
**Sent:** Monday, October 28, 2013 12:26 PM
**To:** Michele Watson; Kris Auderer
**Cc:** Taylor Claiborne
**Subject:** FW: Quick question on reporting user resignations

Taylor did a great job getting you the resign flow.   Included is a flow for a sub and a non sub with URLs and pagecodes.   Adding Taylor to respond with any questions you all may have.

---

**From:** Taylor Claiborne
**Sent:** Monday, October 28, 2013 12:23 PM
**To:** Bret Williams
**Subject:** RE: Quick question on reporting user resignations


Bret:

I attached the screenshots with page codes and URLs and Screenshots in it.  I did the Member resignation flow (non sub) and subscriber flow with membership resignation.  If you query my active pages, the only page code I don't have a screenshot for is the highlighted one, although the history suggests I hit it.  Not sure how to translate that.

Exh. 1

MATCHFTC APP 0142

189    /resign/resign.aspx
190    /resign/resignsave.aspx
194    /resign/resignconf.aspx
817    /resign/resignsurvey.aspx
819    /resign/resignsurvey2.aspx/
820    /resign/resignsurvey2.aspx

Thanks,

## J. Taylor Claiborne
**Manager, QA**
Work: 214.576.9409
Cell: 214.906.6775
*The most exciting phrase to hear in science, the one that heralds new discoveries, is not 'Eureka!' but 'That's funny...' --Isaac Asimov*

---

**From:** Bret Williams
**Sent:** Monday, October 28, 2013 8:24 AM
**To:** Taylor Claiborne
**Subject:** FW: Quick question on reporting user resignations

---

**From:** Bret Williams
**Sent:** Friday, October 25, 2013 3:58 PM
**To:** Michele Watson
**Cc:** Kris Auderer
**Subject:** RE: Quick question on reporting user resignations

Sure.  This should be easy to do.   Give me a day or so pls.

---

**From:** Michele Watson
**Sent:** Friday, October 25, 2013 3:51 PM
**To:** Bret Williams
**Cc:** Kris Auderer
**Subject:** FW: Quick question on reporting user resignations

Bret –

Can you direct us to which screens in the resignation flow match with the pagecodes that Jim references?

We're trying to determine the level of interest we have in showing the member's resignation attempt (how far they go in the resignation process) to the frontline agents in the CSA.  We get a lot of complaints from members who tell us they cancelled on site and it didn't work – so thought this might be a way to give the agents more information to explain the member didn't complete the resignation flow.

**Michele Watson**
SVP Global Customer Care
Match.com, PeopleMedia.com, Chemistry.com, Match International, Kiss.com

Email:   michele.watson@match.com
Phone:   214.576.3271
Mobile:  972.983.6971

   

Exh. 1

**From:** Jim Talbott
**Sent:** Friday, October 25, 2013 3:12 PM
**To:** Kris Auderer
**Cc:** Michele Watson; Melissa Schaaf; Rose P
**Subject:** RE: Quick question on reporting user resignations

Here's the output for the last resign flow page users saw in sessions where I'm not logging a resignation. It's for a week's worth of data. I'm not exactly sure what the pagecodes mean since I just pulled them as the pages successful every resigning user saw in his/her resignation session. However, you should be able to walk through the flow and match them up.

| Pagecode | Path | Sessions | % of Sessions |
|---|---|---|---|
| 189 | /resign/resign.aspx | 54,247 | 80.02% |
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% |
| 194 | /resign/resignconf.aspx | 4,805 | 7.09% |
| 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| 820 | /resign/resignsurvey2.aspx | 86 | 0.13% |

---

**From:** Kris Auderer
**Sent:** Thursday, October 24, 2013 4:08 PM
**To:** Jim Talbott
**Cc:** Michele Watson; Melissa Schaaf; Rose P
**Subject:** Quick question on reporting user resignations

Hi Jim,

Long time, no see J

I wanted to touch base with you on an open work item we have (88117) to track where members fall out of the resignation flow and display it in CSA. I was wondering if we have any data on how often members "fall out" of the resignation flow at each specific point (during survey, retention offer, etc.) to see how we want to prioritize our work item. Is this data you can get easily? I'm out tomorrow but Rose Phommachanh can answer any questions or provide additional details if needed. Thanks!

**Kris Auderer**
Director, Care Operations
Match.com North America

Email:   kris.auderer@match.com
Phone:   214.576.9518
Mobile:  469.442.5002

   

Exh. 1

| | |
|---|---|
| **From:** | bret williams <bret.williams@match.com> |
| **Sent:** | Friday, October 25, 2013 3:58 PM |
| **To:** | Michele Watson |
| **Cc:** | Kris Auderer |
| **Subject:** | RE: Quick question on reporting user resignations |

Sure.  This should be easy to do.   Give me a day or so pls.

---

**From:** Michele Watson
**Sent:** Friday, October 25, 2013 3:51 PM
**To:** Bret Williams
**Cc:** Kris Auderer
**Subject:** FW: Quick question on reporting user resignations

Bret –

Can you direct us to which screens in the resignation flow match with the pagecodes that Jim references?

We're trying to determine the level of interest we have in showing the member's resignation attempt (how far they go in the resignation process) to the frontline agents in the CSA.  We get a lot of complaints from members who tell us they cancelled on site and it didn't work – so thought this might be a way to give the agents more information to explain the member didn't complete the resignation flow.

**Michele Watson**
SVP Global Customer Care
Match.com, PeopleMedia.com, Chemistry.com, Match International, Kiss.com

Email:    michele.watson@match.com
Phone:   214.576.3271
Mobile:   972.983.6971

   

**From:** Jim Talbott
**Sent:** Friday, October 25, 2013 3:12 PM
**To:** Kris Auderer
**Cc:** Michele Watson; Melissa Schaaf; Rose P
**Subject:** RE: Quick question on reporting user resignations

Here's the output for the last resign flow page users saw in sessions where I'm not logging a resignation. It's for a week's worth of data. I'm not exactly sure what the pagecodes mean since I just pulled them as the pages successful every resigning user saw in his/her resignation session. However, you should be able to walk through the flow and match them up.

| Pagecode | Path | Sessions | % of Sessions |
|---|---|---|---|
| 189 | /resign/resign.aspx | 54,247 | 80.02% |
| 190 | /resign/resignsave.aspx | 4,294 | 6.33% |

1

Exh. 2

| 194 | /resign/resignconf.aspx | 4,805 | 7.09% |
| 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% |
| 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| 820 | /resign/resignsurvey2.aspx | 86 | 0.13% |

---

**From:** Kris Auderer
**Sent:** Thursday, October 24, 2013 4:08 PM
**To:** Jim Talbott
**Cc:** Michele Watson; Melissa Schaaf; Rose P
**Subject:** Quick question on reporting user resignations

Hi Jim,

Long time, no see ☺

I wanted to touch base with you on an open work item we have (88117) to track where members fall out of the resignation flow and display it in CSA. I was wondering if we have any data on how often members "fall out" of the resignation flow at each specific point (during survey, retention offer, etc.) to see how we want to prioritize our work item. Is this data you can get easily? I'm out tomorrow but Rose Phommachanh can answer any questions or provide additional details if needed. Thanks!

**Kris Auderer**
Director, Care Operations
Match.com North America

Email:   kris.auderer@match.com
Phone:   214.576.9518
Mobile:  469.442.5002

   

2

Exh. 2

MATCHFTC00P2146

| From: | Giridhar Tandri [Giridhar.Tandri@match.com] |
|---|---|
| Sent: | 3/19/2018 10:40:52 AM |
| To: | bret williams [bret.williams@match.com] |
| Subject: | RE: Data Request: Resign Flow drop-out |

It makes sense to involve the CoreWeb developers on this.

Feel free to punt it to Coreweb wherever it makes sense.

**From:** Bret Williams
**Sent:** Friday, March 16, 2018 9:36 AM
**To:** Giridhar Tandri <Giridhar.Tandri@match.com>
**Subject:** FW: Data Request: Resign Flow drop-out

I want to preclude a "foodfight" about who "owns" which feature.   Since CoreWeb has a dozen developers on it, and resignation isn't a Billing function, and Atanas has much better things to do, surely someone on the CoreWeb team can answer questions about page codes.   If not, we have bigger problems about competency than I thought.   If we are going to keep Match8 around for another 5 years we should hire some people to maintain it.   Just my opinion.

**From:** Bret Williams
**Sent:** Friday, March 16, 2018 8:53 AM
**To:** Dinh Thi Bui <DinhThi.Bui@match.com>; Krystal Roloff <Krystal.Roloff@peoplemedia.com>; Shamika Naik <Shamika.Naik@match.com>; Brett Richards <Brett.Richards@match.com>; Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data Request: Resign Flow drop-out

No I do not.   I suggest someone from QA take a user in production, step through the resignation process, and examine the session data that is created.   Alternatively you could get one of the CoreWeb team devs  to look at the code and document the flows.

**From:** Dinh Thi Bui
**Sent:** Thursday, March 15, 2018 10:19 PM
**To:** Krystal Roloff <Krystal.Roloff@peoplemedia.com>; Shamika Naik <Shamika.Naik@match.com>; Brett Richards <Brett.Richards@match.com>; Abanish Mishra <Abanish.Mishra@match.com>; Bret Williams <Bret.Williams@match.com>
**Subject:** FW: Data Request: Resign Flow drop-out

Hey Abanish,

This is what I found when I run a query on all page code that have "**resign**" in it since the last 2 days. Most of them match with the ones describe on the thread below.
My concern is on the ones I highlighted in yellow that I can't find in the original list of page codes (from the first email of this thread)
@Bret, are you aware of any page code we might have added last year on the resign flow

| pagecode | | path | Users |
|---|---|---|---|
| | 189 | /resign/resign.aspx | 45447 |
| | 819 | /resign/resignsurvey2.aspx/ | 31501 |
| | 194 | /resign/resignconf.aspx | 31373 |

Exh. 3

| 817 | /resign/resignsurvey.aspx | 18795 |
| 820 | /resign/resignsurvey2.aspx | 15804 |
| 187 | /resign/reactmemb.aspx | 10371 |
| 190 | /resign/resignsave.aspx | 7861 |
| 188 | /resign/reactconf.aspx | 6074 |
| 2655624 | /resign/saveoffer/interrupt | 6035 |
| 1334779 | /resign/saveoffer/optout | 1053 |
| 1334782 | /resign/saveoffer/ | 435 |
| 1334791 | /resign/saveoffer | 182 |

Below is the code used:

```
select pg.pagecode,path,count(distinct pg.UserID) session
from page.dbo.pagelive pg
inner join match_4.dbo.pagecodesdynamic code (nolock)  on pg.pagecode = code.pagecode
where path like '%resign%' and pg.pagedt>= '2018-03-13'
group by pg.pagecode,path
```

**From:** Shamika Naik
**Sent:** Thursday, March 15, 2018 11:28 AM
**To:** Krystal Roloff <Krystal.Roloff@peoplemedia.com>; Brett Richards <Brett.Richards@match.com>; Dinh Thi Bui <DinhThi.Bui@match.com>
**Subject:** RE: Data Request: Resign Flow drop-out

+Dinh Thi owns the resignation flow.

**From:** Krystal Roloff
**Sent:** Thursday, March 15, 2018 9:33 AM
**To:** Brett Richards <Brett.Richards@match.com>; Shamika Naik <Shamika.Naik@match.com>
**Subject:** FW: Data Request: Resign Flow drop-out

Hi guys —

Can either of you answer Abanish's question below on the page codes?

**From:** Abanish Mishra
**Sent:** Thursday, March 15, 2018 9:14 AM
**To:** Krystal Roloff <Krystal.Roloff@peoplemedia.com>; Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Kristin Higgins <Kristin.Higgins@match.com>
**Subject:** RE: Data Request: Resign Flow drop-out

Krystal,

Last time when I worked with Melissa she provided me the following page codes for cancellation flow(attaching the most recent thread ) . When I ran analysis with these page codes for last 90 days this is how the aggregated data looks like this . Please notice that I see data only for 819 and 820 in prod (similar to last time). Can you please check if the highlighted page codes are still valid?

Exh. 3

Password: 7047990
Resign Survey: 1223790
Resign Survey 2: 819 & 820
Confirmation Page: 1223791

| PageCode | Path | Count |
|---|---|---|
| 819 | /resign/resignsurvey2.aspx/ | 1142151 |
| 820 | /resign/resignsurvey2.aspx | 567311 |

Once you confirm that the page codes are correct I will send you more granular data with SessionID in it.

Thanks,
Abanish

**From:** Krystal Roloff
**Sent:** Thursday, March 15, 2018 7:55 AM
**To:** Fazal Sorathia <<u>Fazal.Sorathia@match.com</u>>; Abanish Mishra <<u>Abanish.Mishra@match.com</u>>
**Cc:** Kristin Higgins <<u>Kristin.Higgins@match.com</u>>
**Subject:** Data Request: Resign Flow drop-out

Hi guys,

Adrian has a meeting with Hesam coming up, and he'd like to get some fresh numbers on the resignation flow and where members are dropping out for the Happiness Project. We'd love to be able to correlate the data to refund requests and chargebacks as part of our analysis.

Would it be possible to send me the data you provided Melissa below for the month of November? Additionally, would it be possible to provide the IDs associated with the sessions? I know that will be a massive amount of data, but we'd need the member ID in order to associate it with refund requests and chargebacks.

Let me know if this is doable. Old trail of emails is below for reference.



**Krystal Roloff** |  Director, Community Operations
**o** 214.576.9489  |  **c** 817.913.5379

**From:** Adrian Ong
**Sent:** Wednesday, March 14, 2018 11:06 AM
**To:** Krystal Roloff <<u>Krystal.Roloff@peoplemedia.com</u>>
**Subject:** FW: Resign Flow drop-out

**From:** Adrian Ong
**Sent:** Monday, March 5, 2018 5:23 PM
**To:** Hesam Hosseini <<u>Hesam.Hosseini@match.com</u>>
**Subject:** FW: Resign Flow drop-out

Exh. 3

MATCHFTC0062149

This is what I was talking about earlier ... the below shows the breakdown of pages where resignconf.aspx is the confirmation page for the resignation / renewal cancel flow, and as you can see, not everyone makes it to the end ...

**From:** Melissa Clinchy
**Sent:** Wednesday, April 5, 2017 6:33 PM
**To:** Adrian Ong <Adrian.Ong@match.com>
**Subject:** Resign Flow drop-out

Hi Adrian,

Here's the data on the resign flow and where members drop out. I've included screenshots of each page.

These numbers are pretty different than what we pulled originally back in 2014. However – Abanish ran it for the past 90 days and the 2014 numbers were 7 days.

Let me know if you have any questions or want to discuss.

| PageCode | Path | Description | Sessions | % of Session |
|---|---|---|---|---|
| 817 | /resign/resignsurvey.aspx | Survey | 762659 | 12% |
| 194 | /resign/resignconf.aspx | Confirmation Page | 1354576 | 21% |
| 819 | /resign/resignsurvey2.aspx/ | Tell Us More | 1352883 | 20% |
| 820 | /resign/resignsurvey2.aspx | Tell Us More | 642131 | 10% |
| 190 | /resign/resignsave.aspx | 3 for 1 Offer | 363404 | 6% |
| 189 | /resign/resign.aspx | Password Page | 2130411 | 32% |

**189**

Exh. 3



190



**194**

CONFIDENTIAL – FTC v. MATCH, Case No. 3:19-cv-02281-K

817

CONFIDENTIAL – FTC v. MATCH, Case No. 3:19-cv-02281-K

MATCHFTC0062153



819/820

**From:** Abanish Mishra
**Sent:** Wednesday, April 5, 2017 11:10 AM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>; Melissa Clinchy <melissa.clinchy@match.com>
**Subject:** RE: Data request on resign flow


This data is for last 90 days

```
SELECT PCD.PageCode,Path,Count(Distinct(S.SID)) from Page.dbo.Page P
LEFT JOIN Match_4.dbo.PageCodesDynamic PCD on P.PageCode=PCD.PageCode
INNER JOIN [Session].dbo.UserSessions S on S.SID=P.SID
WHERE PCD.PageCode in (189,190,194,817,819,820)
GROUP BY PCD.PageCode,Path
```


**From:** Fazal Sorathia
**Sent:** Thursday, March 30, 2017 10:14 AM
**To:** Melissa Clinchy <melissa.clinchy@match.com>

Exh. 3

MATCHFTC-006-2155
APP.155

**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Okay. Abanish will provide you the data by next week.

---

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 5:00 PM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

That should be good. If it's possible to pull Q1 data that'd be great – otherwise, Q4 would work as well.

Thank you!

---

**From:** Fazal Sorathia
**Sent:** Wednesday, March 29, 2017 4:52 PM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

If it's once a year request then we can send you the numbers. We will get you something by next week? Is it ok?

---

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 4:33 PM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

For now – it's an adhoc request – but we've needed it about once a year (once someone wants to look at it).

I don't have access to MARP – but if I could get access and pull it myself, that'd be great.

Thanks!

---

**From:** Fazal Sorathia
**Sent:** Wednesday, March 29, 2017 4:00 PM
**To:** Melissa Clinchy <melissa.clinchy@match.com>
**Cc:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** RE: Data request on resign flow

Melissa – I am not aware of any existing report.
Do you need this data going forward for long time or it's an adhoc request?
Do you have access to MARP? We can probably give you sql which you can run whenever you need.

---

**From:** Melissa Clinchy
**Sent:** Wednesday, March 29, 2017 3:16 PM

Exh. 3

**To:** Abanish Mishra <Abanish.Mishra@match.com>; Fazal Sorathia <Fazal.Sorathia@match.com>
**Subject:** RE: Data request on resign flow

Hi Fazal,

Were you ever able to look into this?

Thanks!

---

**From:** Abanish Mishra
**Sent:** Monday, March 27, 2017 9:11 AM
**To:** Fazal Sorathia <Fazal.Sorathia@match.com>
**Cc:** Melissa Clinchy <melissa.clinchy@match.com>
**Subject:** RE: Data request on resign flow

Fazal ,

Can you remember any care related report based on resign flow? If it doesn't exist can you please prioritize this request ?

Thanks,
Abanish

---

**From:** Melissa Clinchy
**Sent:** Friday, March 24, 2017 5:10 PM
**To:** Abanish Mishra <Abanish.Mishra@match.com>
**Subject:** FW: Data request on resign flow

Hi Abanish!

Way back in 2014 we got some data around where members fall out of the resign flow. I was wondering if you could help in pulling that data again, or if you can point me in the right direction?

We basically want to say when members drop out of the resignation flow who don't fully complete resignation on site, but start the process.

Here's the email from Jim Talbot in 2014 (The entire thread is below):

Here's the output for the last resign flow page users saw in sessions where I'm not logging a resignation. It's for a week's worth of data. I'm not exactly sure what the pagecodes mean since I just pulled them as the pages successful every resigning user saw in his/her resignation session. However, you should be able to walk through the flow and match them up.

| Pagecode | | Path | Sessions | % of Sessions |
|---|---|---|---|---|
| | 189 | /resign/resign.aspx | 54,247 | 80.02% |
| | 190 | /resign/resignsave.aspx | 4,294 | 6.33% |
| | 194 | /resign/resignconf.aspx | 4,805 | 7.09% |
| | 817 | /resign/resignsurvey.aspx | 3,092 | 4.56% |
| | 819 | /resign/resignsurvey2.aspx/ | 1,268 | 1.87% |
| | 820 | /resign/resignsurvey2.aspx | 86 | 0.13% |

Exh. 3

**Melissa Clinchy** | Supervisor, Technical Resolutions
Customer Support
Desk: 972.638.8687 | Mobile: 469.212.4102

CONFIDENTIAL – FTC v. MATCH, Case No. 3:19-cv-02281-K

MATCHFTC002158
APP.158

# Resignation Crisis and Intervention Points

Dallas, July 20th 2017



Exh. 4

**APP 159**

# Executive summary

- **Resignations** are concentrated at the **beginning** of a subscription and right **before and after renewals**.

- **37-56%** of users who enter the resign flow end up **abandon**ing before completing their resignation. The high end of abandonment is early in the subscription. The **low end of abandonment rate is late** in the subscription/after 1 or more renewals. **Older** users are **more likely to abandon** than younger.

- The **save offer has little appeal** to users who resign **early in their subscription**. The **highest take rates** are for users who resign **right around their first renewal**.

- **Email contact** in/out/mutual has **little variance** between users who **resign vs. those who don't prior to first renewal**.

- **Post first renewal**, **users** of comparable activity **who didn't resign** have about **twice the email contact** in/out/mutuals of **users who resign after their first renewal**.

- Users who **have long periods of inactivity** prior to their login are **very likely to resign**.

- Overall **resub rates** are also higher later for users who resign **later in their subscription** but **before their first renewal** with **lower** resub rates after the **first renewal**.

- There is a lot of **variance** in **resub rate** by **resignation reason** cross referenced with demographics, but consistently users who say they **don't have time but will have time in a few weeks** have the **highest resub rates**.



Exh. 4          2

APP 160

# Package is the biggest determinant of time to resign. Age, first sub vs. resub have similar arcs, just more frontloaded for younger and resub



Share of Resignations by Days from Sub by Package (excluding iPay)

— 1 Month  — 3 Month  — 6 Month



# Highest abandonment rate is on day of subscription. Drop in abandonment corresponds with a large increase in resign flow traffic. Net result is flat/ambiguous.



Match US regs, fraud adjusted lifetime



Exh. 4

4

APP 162

# Offer Take Rate is highest just before renewal, lowest just after subscription date.



1 and 3 month Resigners Share Taking Offer Days Since Sub



# Getting more mutuals in doesn't correlate with lower resign rates prior to first renewal



Average Mutual Convos Had to Date for Users Who Resigned Next Day vs. Didn't by Logged In vs. Didn't Log In

Match US brand regs, fraud adjusted lifetime



Exh. 4    6

APP 164

# Post first renewal, there is large variance in number of mutuals for resigners vs. non-resigners



Average Mutual Email Convos Engaged In for 1 Month Users Who Resigned vs. Those Who Didn't Post First Renewal by Distance between Prior and Current Login



Exh. 4

7

**APP 165**

# Users who have been inactive for longer are much more likely to resign when they log in



Share of Logging In Users Resigning by Inactive Period Prior to Login



# Users who resign just before renewal have the highest resub rate, but it's much more pronounced in resubs





# Resub rate by resign reason show a lot of variance, but it's not consistent across package and demographics

| Resign Reason | Sum of Resub Rate | Sum of Subs with Resigns | Question |
|---|---|---|---|
| Other | 26% | 42,176 | |
| On Match.com | 24% | 18,845 | |
| I just can't spend money on dating right now | 21% | 16,007 | |
| On our own, offline | 18% | 12,518 | |
| By attracting more members who are my type | 22% | 8,908 | |
| At least 6 months from now | 21% | 6,284 | |
| On another dating website | 20% | 5,064 | |
| 0.2 | 28% | 4,651 | What was your expected response rate? |
| 2 to 5 | 24% | 4,310 | I didn't receive enough replies to emails I sent out. How many did you email? |
| I could afford a Match subscription at a lower price | 38% | 4,137 | |
| I can't afford a subscription right now | 29% | 3,703 | |
| Very few profiles piqued my interest | 28% | 3,644 | |
| 6 to 10 | 25% | 3,538 | I didn't receive enough replies to emails I sent out. How many did you email? |
| 0.5 | 28% | 3,121 | What was your expected response rate? |
| It's just me; I'm looking for perfection | 24% | 3,028 | |
| At least 1 | 25% | 2,985 | I didn't receive enough replies to emails I sent out. How many did you email? |
| By making it easier to find who I'm looking for | 21% | 2,582 | |
| In a few months | 32% | 2,577 | |
| I had too much going on and did not have time to date | 27% | 2,196 | |
| People misrepresented themselves on their profiles | 28% | 1,717 | |
| Not many people of interest initiated contact with me | 29% | 1,693 | |
| People's profiles were accurate, just no chemistry | 25% | 1,534 | |
| 11 to 20 | 23% | 1,452 | I didn't receive enough replies to emails I sent out. How many did you email? |
| 21 or more | 23% | 1,419 | I didn't receive enough replies to emails I sent out. How many did you email? |
| One | 27% | 1,360 | |
| I clicked with a few people, it just didn't materialize | 31% | 1,110 | |
| I didn't receive enough replies to emails I sent out | 30% | 1,078 | |
| I didn't click with the matches I met in person | 33% | 683 | |
| 0.8 | 25% | 657 | What was your expected response rate? |
| In a few weeks | 43% | 449 | |
| 1 | 26% | 218 | What was your expected response rate? |
| Grand Total | 25% | 163644 | |

