IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>Defendants. | Case No. 3:19-cv-02281-K |

**DEFENDANT MATCH GROUP, INC.'S OBJECTION TO
MAGISTRATE JUDGE'S ORDER (DKT. 164)**

# TABLE OF CONTENTS

                                                                                                           **Page**

PRELIMINARY STATEMENT ....................................................................................................... 1

BACKGROUND ............................................................................................................................. 3

STANDARD OF REVIEW .............................................................................................................. 8

ARGUMENTS AND AUTHORITIES ............................................................................................. 9

      I.      The FTC's Discovery Requests Relating to Permanently Discontinued
              Practices Do Not Seek Relevant Information. ............................................................. 9

      II.     The Requested Discovery Regarding Discontinued Practices is Not
              Proportional to the Needs of This Action. .................................................................. 12

CONCLUSION AND REQUESTED RELIEF .............................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barrow v. Greenville Indep. Sch. Dist.*,
 202 F.R.D. 480 (N.D. Tex. 2001) ..................................................................................8

*Crosby v. La. Health Serv. & Indem. Co.*,
 647 F.3d 258 (5th Cir. 2011) .......................................................................................13

*Dittmar v. Kroger Tex., L.P.*,
 No. 3:14-cv-3501-G-BN, 2015 WL 11019135 (N.D. Tex. June 9, 2015) ..................14

*Leonard v. Martin*,
 38 F.4th 481 (5th Cir. 2022) .........................................................................................9

*Marable v. Dep't of Commerce*,
 No. 3:18-cv-3291-N-BN, 2019 WL 4689000 (N.D. Tex. Sept. 26, 2019) .................13

*Samsung Elecs. Am., Inc. v. Chung*,
 321 F.R.D. 250 (N.D. Tex. 2017) .................................................................................9

*Scottsdale Ins. v. Am. Re-Ins. Co.*,
 No. 8:06CV16, 2007 WL 405870 (D. Neb. Feb. 2, 2007) ..........................................14

*United States ex rel. Simms v. Austin Radiological Assoc.*,
 292 F.R.D. 378 (W.D. Tex. 2013) ................................................................................9

*Smith v. Smith*,
 154 F.R.D. 661 (N.D. Tex. 1994) ..............................................................................8, 9

*United States v. Cornerstone Wealth Corp.*,
 549 F. Supp. 2d 811 (N.D. Tex. 2008) .......................................................................12

**Statutes**

28 U.S.C. § 636 ....................................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 5 .................................................................................................................17

Fed. R. Civ. P. 26 ..............................................................................................2, 9, 12, 13

Fed. R. Civ. P. 26 ......................................................................................................9, 10, 13

Fed. R. Civ. P. 72 ............................................................................................................1, 8

Pursuant to Federal Rule of Civil Procedure 72(a), 28 U.S.C. § 636, and Local Rule 72-1, Defendant Match Group, Inc. ("MGI")—the holding company that owns Defendant Match Group, LLC ("MGL"), which, in turn, operates the Match.com dating platform—files this Objection to Magistrate Judge Irma Carrillo Ramirez's Order dated November 1, 2022 (the "Order") (Dkt. 164) granting in part Plaintiff Federal Trade Commission's (the "FTC") Motion to Compel Production of Documents and Interrogatory Responses (the "Motion") (Dkt. 140) as to Requests for Production 2, 6, 14, 15, 17, 19, 25-26, 28, 31, 34, and 36, and Interrogatories 1-2 and 4-7.

## PRELIMINARY STATEMENT

Magistrate Judge Ramirez's Order that is the subject of this Objection was clearly erroneous and contrary to law. It will result in the Defendants having to respond needlessly to extraordinarily broad "merits" discovery on two discontinued practices (the "Guarantee Practice" and the "Chargeback Practice") that the FTC judicially admitted in its Amended Complaint were stopped over three years ago,[1] which Defendants have repeatedly confirmed have been permanently discontinued, and which Defendants stipulated under oath would never be reinstated.[2] Despite Defendants producing over 200,000 documents before this case began and another 25,000+ documents in this litigation, the FTC still cannot explain any rational basis for its naked assertion in the Amended Complaint that the discontinued conduct will or is about to occur in the future.[3] The discovery at issue here will not change that, because the FTC does not seek discovery about any present—or even recent—behavior; the FTC seeks discovery about historical conduct, about which they have already received extensive information. As such, there is no viable

---

[1] The FTC admits in its Amended Complaint that the conduct challenged in Counts III and IV ceased in mid-2019. *See* Dkt. 116 (Am. Compl.) ¶¶ 3, 39, 62.
[2] Dkt. 146 (MGI and MGL's Notice of Verified Stipulation Regarding Permanently Discontinued Practices on Match.com).
[3] App. 001-003 (FTC 30(b)(6) Dep.) at 75:15-76:11.

Page 1

contention that Defendants are "about to violate" the FTC Act as required to obtain injunctive relief, which is the only remedy available to the FTC on these two Counts after this Court's Order on MGI's Motion to Dismiss. *See* Dkt. 86 (Mem. Opinion and Order) at 13. As Defendants stand ready, willing, and able to consent to the entry of an injunction permanently prohibiting the conduct, which as alleged in Counts III and IV permanently ceased over three years ago and Defendants have repeatedly confirmed they have no intention of ever resuming, there is no need whatsoever for the discovery that was ordered.

Nevertheless, the FTC asserts that it needs this extensive discovery, spanning 10 years at Match.com, to attempt to obtain so-called "fencing in" injunctive relief that would apply to other dating platforms under the MGI holding company umbrella, even though other platforms are not accused of any misconduct in the Amended Complaint. As explained below, the FTC admitted at the hearing on this discovery motion that it did not have a credible basis to allege (even upon information and belief) that any other company or platform under the MGI holding company umbrella engaged in the same or similar conduct. Of course, the discovery relating to only Match.com has no relevance at all to what is being done on other dating platforms that are separately owned and operated, so the FTC's purported justification is completely unavailing.

With the FTC's admissions and Defendants' sworn stipulation, the discovery as ordered by the Magistrate Judge is not close to being proportional to the needs of the case as required by Rule 26. Moreover, production of the additional discovery has already delayed the resolution of the case. Unless the Court reverses the Order, the FTC will continue to demand additional discovery (including depositions) about discontinued conduct, unreasonably delaying the resolution of this matter. This Objection should be sustained on the following specific grounds:

**First**, the FTC's discovery requests do not seek relevant information, because the requested discovery bears only on admittedly ceased conduct that Defendants have already repeatedly confirmed are permanently discontinued and even agreed under oath never to reinstate. Thus, there is no disputed issue left for the Court to decide related to this conduct. No further discovery is needed for the FTC to prevail on Counts III and IV.

**Second**, the FTC's discovery requests are not proportional to the needs of this case. Because that discovery seeks information about permanently discontinued conduct that will have no bearing on the outcome of the case, there is no benefit to it. On the other hand, requiring Defendants to undertake any burden to provide such discovery clearly outweighs the (lack of) benefit. If there were a procedural vehicle now for MGI to be enjoined from engaging in the conduct alleged in Counts III and IV, Defendants would readily take it, ending the need for any discovery on these claims. But the FTC refuses—instead, seeking to coerce an alternative outcome by forcing Defendants to incur significant legal fees to respond to irrelevant discovery.

## BACKGROUND

The FTC initiated this litigation after a multi-year investigation in which MGI produced over 200,000 documents to the FTC. After this investigation, but prior to the time the FTC filed the Original Complaint, Defendants repeatedly told the FTC that certain of the practices that the FTC had complained about during its investigation had been discontinued and would *never* be reinstated. *E.g.*, App. at 004-005 (August 6, 2019 Letter from Linda A. Goldstein, Baker & Hostetler LLP, to Zachary A. Keller, FTC). Therefore, when the Original Complaint was filed, the FTC had to acknowledge—and did acknowledge—that such conduct had ceased, although it still sought monetary and injunctive relief related to that conduct. Dkt. 1 (Compl.) ¶ 90. However, this Court subsequently dismissed with prejudice the FTC's claims for monetary relief on Counts III and IV, as described below. Dkt. 86 (Mem. Opinion and Order) at 13, 15, 35. Thus, when discovery

began, the FTC was limited to seeking only injunctive relief on the discontinued conduct described in Counts III and IV. *Id.*; *see also* Dkt. 116 (Am. Compl.).

Specifically, in Count III of the Amended Complaint, the FTC alleges that Defendants violated Section 5 of the FTC Act by failing to adequately disclose material terms and conditions of a Six-Month Guarantee that a subscriber would "find someone special."[4] *See* Dkt. 116 (Am. Compl.) ¶¶ 39-53. MGL ceased offering any guarantee at all in mid-2019, has not reinstituted any guarantee, and has no plans whatsoever to resume offering it. App. 006 (May 20, 2022 Letter from Chad Hummel, Sidley Austin LLP to Reid Tepfer, FTC); Dkt. 146 (MGI and MGL's Notice of Verified Stipulation Regarding Permanently Discontinued Practices on Match.com).

In Count IV, the FTC alleges that Defendants unfairly cancelled subscriber accounts when a subscriber disputed credit card charges from Match.com.[5] *See* Dkt. 116 (Am. Compl.) ¶¶ 61-64. MGL changed the Match.com chargeback policy and practice in mid-2019 so that subscriber accounts were merely suspended during the pendency of a dispute, and subscribers can be reinstated if MGL prevails in the dispute. MGL has no plans whatsoever to revert to the challenged Chargeback Practice. App. 006 (May 20, 2022 Letter from Chad Hummel, Sidley Austin LLP to Reid Tepfer, FTC); Dkt. 146 (MGI and MGL's Notice of Verified Stipulation Regarding Permanently Discontinued Practices on Match.com) at 1-3.

Despite MGL's permanent discontinuance of these challenged practices, the FTC served discovery requests seeking nearly 10 years' worth of discovery relating to the merits of the discontinued practices. App. at 007-022 (Pl. FTC's First Req. for Produc. of Docs.); 022-035 (Pl. FTC's First Set of Interrog. to Def. MGI). Among other things, the FTC sought:

---

[4] In fact, MGI never offered any Match Guarantee, because MGL—not MGI—owns and operates Match.com.
[5] Again, the FTC's allegations ignore that MGL—not MGI—owns and operates Match.com.

- "Each unique version of **all Ads** related to a Match Guarantee." App. at 017 (RFP 15) (emphasis added).

- "Representative copies of **all visual content** that Match has shown to customers concerning the Match Guarantee . . . ." App. at 018 (RFP 19) (emphasis added).

- "**All communications** relating to (a) Match Guarantees; (b) Cancellation of paid subscriptions by Customers; (c) Customer Chargebacks; [and] (d) Denial of Customers' access to accounts in response to chargebacks . . . ." App. at 018 (RFP 25) (emphasis added).

- "**All communications** with Customers relating to the Match Guarantee or the Company's chargeback or cancellation policies or practices." App. at 020 (RFP 31) (emphasis added).

- Identification, on a monthly basis, of "the number of Match.com subscriptions subject to the Guarantee sold," "the number of Guarantee Extensions that Match provided to Customers," "the number of Customer inquiries regarding the automatic renewal of subscriptions subject to the Match Guarantee," "the number of refund requests Customers submitted to Match relating to Match Guarantees and the dollar amount of these requested refunds," and "the number of refunds Match granted relating to Match Guarantees and the amount of money refunded relating to Match Guarantees." App. at 031 (Interrog. No. 5).

- A description of "all of Match's policies relating to Customer Chargebacks." App. at 032 (Interrog. No. 7).

Collectively, the requests at issue here—Requests for Production 2, 6, 14, 15, 17, 19, 25-26, 28, 31, 34, and 36 and Interrogatories 1-2 and 4-7—seek all communications, documents, and information relating to the discontinued practices, with respect to every customer,[6] from January 1, 2013 to the "completion of this action." *See, e.g.*, App. at 008 (Pl. FTC's First Req. for Produc. of Docs.); 024 (Pl. FTC's First Set of Interrog. to Def. MGI) .

---

[6] The requests also sought this information as to several other dating platforms. *See* App. at 007-022 (Pl. FTC's First Req. for Produc. of Docs.); 023-035 (Pl. FTC's First Set of Interrog. to Def. MGI). However, Magistrate Judge Ramirez correctly ruled that discovery into other dating platforms is not relevant to this action, as the FTC admitted that it had no basis to allege that the purported misconduct at issue in the Amended Complaint was occurring on any other dating platform. Dkt. 164 (Order) at 2.

MGI objected to discovery requests seeking information about permanently discontinued practices, as such discovery is not relevant to any live issue in the case and is disproportionate to the needs of the case. App. at 036-094 (Def. MGI's Resp. and Obj. to Pl. FTC's First Set of Req. for Produc. of Docs.); App. at 095-121 (Def. MGI's Resp. and Obj. to Pl. FTC's First Set of Interrog.). As noted above, even before the FTC served its discovery requests, Defendants had repeatedly told the FTC that the practices had been discontinued and would never be reinstated, such that there was no need to conduct discovery into the legality of those practices. *See, e.g.*, App. 004-005 (Aug. 6, 2019 Letter from Linda A. Goldstein, Baker & Hostetler LLP, to Zachary A. Keller, FTC); App. 006 (May 20, 2022 Letter from Chad Hummel, Sidley Austin LLP, to Reid Tepfer, FTC).

For the avoidance of doubt, Defendants filed a sworn stipulation with this Court, committing to never engage in the conduct at issue. Dkt. 146. In that stipulation, Defendants "confirm[ed] the ***permanent*** discontinuation of the Match.com guarantee at issue in Count III of the Amended Complaint . . . and the ***permanent*** discontinuation of the Match.com chargeback policy at issue in Count IV of the Amended Complaint." Dkt. 146 at 1. Defendants stipulated that Match.com "permanently discontinued the Match.com Guarantee in April 2019," verified that Match.com "does not currently offer the Match.com Guarantee," and "commit[ted] to never reinstate the Match.com Guarantee." *Id.* at 2. Similarly, Defendants stipulated that Match.com "discontinued the Chargeback Policy in March 2019," verified that Match.com "does not currently maintain the Chargeback Policy," and "commit[ted] to never reinstate the Chargeback Policy." *Id.* at 3. Defendants intended the stipulation to "serve as a binding and sincere commitment by the Match Defendants to never again engage in the Permanently Discontinued Practices." *Id.*

Defendants' Chief Business Affairs and Legal Officer and Secretary signed the verification under penalty of perjury. *Id.* at 7.

Nevertheless, the FTC moved to compel discovery responses about the discontinued practices, including every single communication about, and each unique version related to, the practices. Dkt. 140 (Pl. FTC's Mot. to Compel Produc. of Docs. and Interrog. Resp. from Def. MGI). This Court referred the FTC's motion to Magistrate Judge Ramirez. Dkt. 142 (Electr. Order Referring Mot.). The FTC claimed to need the requested discovery into discontinued practices to support the entry of an injunction prohibiting MGI, as well as multiple other dating platforms, from reinstating the discontinued practices. *See* Dkt. 147 at 6 (J. Submission of Pl. FTC's Mot. to Compel Produc. of Docs. and Interrog. Resp. from Def. MGI). In response, MGI pointed out that the practices *already* had been permanently discontinued, as demonstrated by sworn discovery responses and the Verified Stipulation, such that the FTC already had the effective equivalent of an injunction. *Id.* at 8-9. MGI also offered to produce documents sufficient to show the permanent discontinuance (and now has done so).[7] Additionally, MGL served sworn interrogatory responses describing its current policies,[8] leaving no question that the practices at issue in Counts III and IV have ceased and that there is no need to litigate their merits. MGI further noted that, according to the FTC's own allegations, this action does not concern any platform other than Match.com, *id.* at 20-22, and that seeking nearly 10 years' worth of merits discovery into Match.com practices has no bearing on the conduct of other platforms outside the litigation, or whether any such conduct by those platforms should be enjoined.

---

[7] *E.g.*, App. at 124 (MATCHFTC774521); 125 (MATCHFTC774522); 126-127 (MATCHFTC774668).
[8] App. at 128-165 (MGL Interrog. Resp.).

Page 7

Magistrate Judge Ramirez held a hearing on the FTC's Motion on November 1, 2022, at which she overruled MGI's objection that discovery into discontinued practices was not warranted. The same day, Magistrate Judge Ramirez entered a written order memorializing her ruling. MGI now objects to that Order. Dkt. 164 (Order). As described in more detail below, the Order is premised on a misunderstanding that the discovery was germane to "fencing in" relief (it is not) and a misapplication of the relevant discovery standard given there is admittedly nothing in dispute relating to Match's current conduct.

## STANDARD OF REVIEW

A party may object to a Magistrate Judge's ruling on a non-dispositive pretrial matter referred for decision by the district court within 14 days of service of the order. Fed. R. Civ. P. 72(a). The district court must "modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or is contrary to law." *Id.* The "clearly erroneous" standard applies to factual determinations where "the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 481 (N.D. Tex. 2001) (internal citation omitted). The "contrary to law" standard applies to legal conclusions, which the district court subjects to *de novo* review. *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994). Finally, "[t]he 'abuse of discretion standard applies to that vast area of ... choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous.'" *Id.* (quoting *In re REPH Acquisition Co.*, 134 B.R. 194, 202-03 (N.D. Tex. 1991)). "The term 'abuse of discretion' does not imply intentional wrong, or bad faith, or misconduct, nor any reflection on the judge." *Id.* Rather, it exists "when there is definite and firm conviction that the court below committed clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* (quoting *Conkling v. Turner*, 18 F.3d 1285, 1293 (5th Cir. 1994)).

**ARGUMENTS AND AUTHORITIES**

Information must be relevant *and* proportional to the needs of the case to constitute discoverable material. *See Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017) ("Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements."). The FTC's discovery requests—seeking essentially any and all information, from nearly the past 10 years, regarding permanently discontinued practices—do not meet this standard.

**I.      The FTC's Discovery Requests Relating to Permanently Discontinued Practices Do Not Seek Relevant Information.**

Rule 26 permits discovery regarding relevant, nonprivileged matters. *See* Fed. R. Civ. P. 26(b)(1). Information is relevant "if it bears on" an issue related to the claim or defense of any party. *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022) (internal citations omitted). "The scope of discovery and the relevance of certain information is naturally dependent on the specific facts and claims in each case." *United States ex rel. Simms v. Austin Radiological Assoc.*, 292 F.R.D. 378, 385 (W.D. Tex. 2013). And when, as framed by the facts and issues of a particular case, "the proposed discovery is outside the scope permitted by Rule 26(b)(1)," the Court must limit discovery. Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(iii).

Here, the FTC's discovery requests do not bear on any disputed issue in or arising out of Counts III and IV. Following this Court's ruling on MGI's Motion to Dismiss, the only relief the FTC may seek is an injunction that (1) prohibits the Guarantee Practice without adequate disclosure of the terms and conditions, and (2) terminates the Chargeback Practice as alleged. *See* Dkt. 86 (Mem. Opinion and Order) at 13. However, the FTC already has precisely that relief, so any discovery to support a request for that same relief inherently seeks irrelevant information. Both the Guarantee and Chargeback Practices were permanently discontinued in 2019, as the FTC

admitted in its Amended Complaint. Dkt. 116 (Am. Compl.) ¶ 3 (judicially admitting Guarantee Practice ceased in mid-2019); *id.* (same as to Chargeback Practice). And MGI has repeatedly represented to the FTC and this Court that the practices have not just ceased but are permanently discontinued. Dkt. 20 (MGI's Mot. to Dismiss); App. at 063-064 (Verification of MGI's First Am. Resp. to FTC's First Set of Interrog.); App. 122-123 (MGI's First Am. Resp. and Obj. to FTC's First Set of Interrog.); App. 004-005 (Aug. 6, 2019 Letter from Linda A. Goldstein, Baker & Hostetler LLP, to Zachary A. Keller, FTC); App. 006 (May 20, 2022 Letter from Chad Hummel, Sidley Austin LLP, to Reid Tepfer, FTC). MGI even filed an additional sworn stipulation committing that the practices will never be reinstated. Dkt. 146 (MGI and MGL's Notice of Verified Stipulation Regarding Permanently Discontinued Practices on Match.com).[9]

Thus, by discontinuing the challenged practices and committing to never reinstate them—including in a sworn stipulation to the Court—MGI has provided the maximum relief available for Counts III and IV. To the extent the FTC or the Court is concerned that the stipulation is not enforceable as a Court order, MGI does not object to this Court entering a permanent injunction containing the same terms as the Verified Stipulation. Thus, because the requested discovery does not bear on live matters at issue in Counts III and IV, the FTC's requests are not relevant.

Magistrate Judge Ramirez nevertheless believed that discovery into discontinued practices was warranted because "the FTC is seeking injunctive relief broader than what's being offered here," so "there's still a live issue." App. at 183 (Hr'g Tr. 18:16-18). But the relief that Magistrate Judge Ramirez referred to as still being "live" is also not in the case. Prior to the hearing, the FTC had argued that it was entitled to an injunction that would also bind other dating platforms under

---

[9] In fact, the Verified Stipulation offers the FTC more relief than it could obtain at trial, as the stipulation forswears offering the Guarantee at all.

Page 10

the MGI holding company umbrella. *See* Dkt. 147 at 13 (J. Submission of Pl. FTC's Mot. to Compel Produc. of Docs. and Interrog. Resp. from Def. MGI) ("MGI's stipulation, even if enforceable is much narrower in scope than the relief the FTC is entitled to under the law. For example, the FTC seeks to prevent Defendants from engaging in this type of misconduct regardless of the platform."). However, later in the very same hearing, the FTC admitted that it had no "adequate basis to include" in its Amended Complaint allegations about wrongdoing on other dating platforms, none of which are owned and operated by MGI or MGL. App. at 194 (Hr'g Tr. 29:14-19). Magistrate Judge Ramirez therefore sustained MGI's objections to discovery into other dating platforms as irrelevant. Dkt. 164 (Order) at 2. Without a good-faith basis to even allege wrongdoing on other dating platforms in the Amended Complaint, there certainly is no "live issue" about whether other dating platforms should be included in an injunction. Thus, what Magistrate Judge Ramirez initially thought to be a "live issue" was not, based on the FTC's admissions later in the hearing, further demonstrating the lack of any live issue to which discovery into discontinued practices would relate.

What is more, even if the FTC is entitled to "fencing in" relief that enjoins conduct on *other platforms* (it is not), extensive discovery into *Match.com* practices has zero bearing on that question. For example, 10 years' worth of "all Ads related to a Match Guarantee," RFP No. 15 (App. at 017), "All communications relating to Match Guarantees," RFP No. 25 (App. at 018), and "All communications with Customers relating to the Match Guarantee or the Company's chargeback . . . policies or practices," RFP No. 31 (App. at 020), are not relevant to whether *other sites* should be enjoined.

For the same reason, the FTC's reliance on the *Cornerstone Wealth* factors to justify the requested discovery is entirely misplaced. In its Order on MGI's Motion to Dismiss, this Court

relied on *Cornerstone Wealth*'s "non-exclusive factors the court should consider in whether to issue a §13(b) permanent injunction based on past violations of the law," Dkt. 86 (Mem. Opinion and Order) at 11. But the FTC has not tailored its discovery requests to the *Cornerstone Wealth* factors. Those factors are intended to ascertain whether there is a "fair inference of a reasonable expectation of continued violations absent restraint."[10] Dkt. 86 (Mem. Opinion and Order) at 11 (quotation marks and citation omitted). None of the FTC's discovery requests are relevant to that question or targeted to those factors, nor acknowledge that Defendants have already exercised "restraint" by discontinuing the practices. For example, *none* of the FTC's discovery requests asks specifically about any future plans to reinstate the challenged practices (there are none). Instead, the FTC demanded that MGI produce every ad, communication, policy, or procedure related to the discontinued practices over the last 10 years. What happened 10 years ago—particularly given Defendants' commitment to permanently discontinue and never reinstate those practices under oath—is not relevant to potential resumption.

## II.     The Requested Discovery Regarding Discontinued Practices is Not Proportional to the Needs of This Action.

Magistrate Judge Ramirez also erred by finding that the FTC's discovery requests are proportional to the needs of the action. Rule 26 requires that proportionality be measured by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Crosby v. La. Health Serv. & Indem.*

---

[10] The factors are "the[ ] egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations." *United States v. Cornerstone Wealth Corp.*, 549 F. Supp. 2d 811, 816 (N.D. Tex. 2008).

*Co.*, 647 F.3d 258, 264 (5th Cir. 2011); *Marable v. Dep't of Commerce*, No. 3:18-cv-3291-N-BN, 2019 WL 4689000, at *4 (N.D. Tex. Sept. 26, 2019) (explaining Rule 26's mandatory "proportionality calculation"). Discovery that is not proportional in light of these factors must be limited by the Court. Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C)(iii).

In ruling that MGI failed to meet its burden to show that the FTC's requests were not proportional, Magistrate Judge Ramirez did not engage in the proportionality analysis mandated by Rule 26. A proper analysis of those factors demonstrates the FTC's discovery requests are not proportional. First, the issues at stake in Counts III and IV are not important to the case, but are actually *unimportant*, as they involve practices that were permanently discontinued almost four years ago, and which will never be reinstated. Second, there is no amount in controversy for purposes of Count III and IV, since monetary relief is not available. Third, the parties now have equal access to documents showing the permanent discontinuance of the practices at issue, as Defendants have not only produced sworn discovery responses and documents demonstrating the discontinuance in this action, but also produced thousands of pages of documents and responses during the FTC's pre-suit investigation.[11] Additionally, the practices at issue are public-facing, meaning that the FTC can confirm the discontinuance simply by visiting Match.com and observing that the Guarantee, for example, is no longer offered. Fourth, neither of the parties' resources are substantially greater than the other. Fifth, discovery is not important to *resolve* the issues, as there are no issues to *resolve* given the permanent discontinuance, as discussed above.

Finally, the burden of the requested discovery is substantial on its face. The FTC's requests for "all" of a variety of documents and communications over the last 10 years undoubtedly impose

---

[11] App. at 124 (MATCHFTC774521); 125 (MATCHFTC774522); 126-127 (MATCHFTC774668); App. at 128-65 (MGL Interrog. Resp.).

a serious burden. As a point of reference, when the FTC requested what it calls "limited" discovery with "many voluntary accommodations" during its pre-suit investigation, Dkt. 147 at 5 (J. Submission of Pl. FTC's Mot. to Compel Produc. of Docs. and Interrog. Resp. from Def. MGI), MGI produced over 200,000 documents, incurring substantial expense. There can be no serious question that the FTC's expansive litigation requests will impose significant additional burden. Moreover, any "benefit" of the discovery would be nonexistent, given that the FTC already has the relief that it could seek. *See supra* Part I. The FTC simply cannot obtain relief broader than its Amended Complaint, and what is pleaded in its Amended Complaint has been resolved.

Magistrate Judge Ramirez suggested that she could not give weight to MGI's burden arguments in the absence of affidavits or other evidence of burden. App. at 218 (Hr'g Tr. 53:7-10). However, "[a] party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support" of its objections. *Scottsdale Ins. v. Am. Re-Ins. Co.*, No. 8:06CV16, 2007 WL 405870, at *4 (D. Neb. Feb. 2, 2007) (citations omitted); *see also Dittmar v. Kroger Tex., L.P.*, No. 3:14-cv-3501-G-BN, 2015 WL 11019135, at *2 (N.D. Tex. June 9, 2015) (requiring support for objection "where no interrogatory [was] facially overbroad"). Where (as here) a party seeks *facially* overbroad or unduly burdensome discovery, the burden is self-evident. Applied here, *any burden* is simply too much when the facts, as pleaded, are no longer in dispute. In these circumstances, and because the FTC's requests are facially overbroad by seeking "any and all" documents, communications, and other information "relating to" the discontinued practices over a 10-year period, the burden is apparent and should have been given weight even in the absence of an affidavit.[12]

---

[12] Magistrate Judge Ramirez also refused to permit MGI to submit a supplemental affidavit, suggesting that her order describing the joint submission process was clear. However, at a later

Based on the fulsome proportionality analysis described above, the FTC's requests for discovery into permanently discontinued practices are improper. Thus, MGI's objections to the Order allowing such discovery should be sustained.

## CONCLUSION AND REQUESTED RELIEF

The Order erroneously overruled MGI's objection to responding to discovery requests that relate to long-discontinued practices. MGI's objections to the Order should be sustained so that this case can stay on track to resolve the remaining issues in dispute.

Dated: November 15, 2022

Respectfully submitted,

/s/ *Angela C. Zambrano*
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
Telephone: 214.981.3300
Fax: 214.981.3400

Chad S. Hummel *(admitted pro hac vice)*
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Fax: 310.595.9501

*Attorneys for Match Group, Inc. and Match Group, LLC*

---

hearing, Magistrate Judge Ramirez acknowledged that both sides seemed confused by the order. In any event, MGI has proffered evidence on the burden here.

y

## CERTIFICATE OF CONFERENCE

The parties have conferred on multiple occasions, by phone, via email, and in person, regarding the issues presented in this Objection, as indicated in the certificate of conference in the FTC's Motion to Compel and in the parties' Joint Submission on that motion. Most recently, on November 15, 2022, Chelsea Priest, counsel for MGI emailed counsel for the FTC regarding this Objection. Pursuant to previous conferences and prior correspondence between the parties from August 19, 24, 25, and 29, 2022 and September 19, 2022, Reid Tepfer, Counsel for the FTC stated that it is opposed to this Objection.

*/s/ Angela C. Zambrano*
Angela C. Zambrano

## CERTIFICATE OF SERVICE

On November 15, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Angela C. Zambrano*
Angela C. Zambrano