```
 1
                        IN THE UNITED STATES DISTRICT COURT
                        FOR THE NORTHERN DISTRICT OF TEXAS
 2                                 DALLAS DIVISION

 3   FEDERAL TRADE COMMISSION,    )    Case No. 3:19-cv-02281-K
                                  )
          Plaintiff,              )    Dallas, Texas
 4                                )    November 8, 2022
     v.                           )    9:00 a.m.
 5                                )
     MATCH GROUP, INC., et al.,   )    MOTION TO COMPEL
 6                                )    [#133]
          Defendants.             )
 7   _____)

 8                       TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE IRMA CARRILLO RAMIREZ,
 9                  UNITED STATES MAGISTRATE JUDGE.

10   APPEARANCES:

11   For the Plaintiff:         Reid Abram Tepfer
                                M. Hasan Aijaz
12                              FEDERAL TRADE COMMISSION
                                1999 Bryan Street, Suite 2150
13                              Dallas, TX  75201
                                (214) 979-9395
14
     For the Defendants:        Chad S. Hummel
15                              SIDLEY AUSTIN, LLP
                                1999 Avenue of the Stars,
16                                17th Floor
                                Los Angeles, CA  90067
17                              (310) 595-9505

18   For the Defendants:        Angela C. Zambrano
                                Taylor Bragg
19                              Chelsea Priest
                                SIDLEY AUSTIN, LLP
20                              2021 McKinney Avenue, Suite 2000
                                Dallas, TX  75201
21                              (214) 981-3405

22   For the Defendants:        Samuel Kitchens
                                MATCH GROUP, INC.
23

24

25
```

```
1    Recorded by:              Marie Gonzales
                               UNITED STATES DISTRICT COURT
2                              1100 Commerce Street, Room 1452
                               Dallas, TX  75242-1003
3                              (214) 753-2167

4    Transcribed by:           Kathy Rehling
                               311 Paradise Cove
5                              Shady Shores, TX  76208
                               (972) 786-3063
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25            Proceedings recorded by electronic sound recording;
                 transcript produced by transcription service.
```

1          <u>DALLAS, TEXAS - NOVEMBER 8, 2022 - 9:08 A.M.</u>

2          THE CLERK:  All rise.

3          THE COURT:  Please be seated.  All right.  We are

4    here in the matter of Federal Trade Commission versus Match

5    Group, Inc., et al.  This is Civil Action 3:19-cv-2281-K.  And

6    before the Court this morning is Defendant Match Group, Inc.'s

7    motion to compel discovery responses and production of

8    documents from Plaintiff Federal Trade Commission.  And I have

9    the joint submission filed by the parties on September 13th.

10         If counsel would please make their appearances for the

11   record.

12         MR. TEPFER:  Good morning, Your Honor.  Reid Tepfer

13   and Hasan Aijaz for the FTC.

14         THE COURT:  All right.

15         MR. HUMMEL:  Good morning, Your Honor.  My name is

16   Chad Hummel, H-U-M-M-E-L, Sidley Austin.  I'm here with my

17   colleagues Angela Zambrano, Chelsea Priest, Taylor Bragg, and

18   in-house at the Defendants, Match, Sam Kitchens is also

19   present.

20         THE COURT:  All right.  All right.  As we did last

21   week, I'm going to ask the parties to please remain seated for

22   purposes of the hearing.  I've got questions for both sides.

23   Please move the microphones close to you.  While I appreciate

24   that you stand, as how we do in federal court, we're still

25   trying to maintain social distancing, and the further away you

1    get from the microphone, the harder it is to hear and

2    understand.  So please stay close to your mics.

3        All right.  So I've got questions for both sides.  And

4    who'll be arguing on behalf of the Plaintiff?

5             MR. TEPFER:  I will, Your Honor.

6             THE COURT:  All right.  Any dispute, as we discussed

7    last week, with the party having -- with the party resisting

8    discovery having the burden?

9             MR. TEPFER:  No, Your Honor.

10            THE COURT:  All right.  Did I miss any affidavits or

11   evidence in support of the objections?

12            MR. TEPFER:  No, Your Honor.

13            THE COURT:  All right.  So it's just the -- just the

14   argument in the joint submission?

15            MR. TEPFER:  Yes, Your Honor.

16            THE COURT:  All right.  Let's -- we're going to work

17   through the joint submission.

18       All right.  With regard to Issue No. 1, Interrogatory No.

19   2, let's start with the first part.  Mr. Hummel, in reading

20   the response, while I agree that there are certainly some

21   things here that, under the case law in this district, are not

22   appropriate, and in particular the "subject to and without

23   waiving the foregoing objections" language, which was

24   specifically addressed by Judge Horan in the *Heller v. City of*

25   *Dallas* case, if I go on to the rest of the answer, it looks

1   like the Plaintiff has identified what it contends is not

2   simple about the process.  So tell me why this response is not

3   sufficient.

4           MR. HUMMEL:  I will, Your Honor.  And thank you.  Let

5   me answer your question first.  The response is not close to

6   sufficient.  As Your Honor knows, the allegation in the case

7   is that the Match.com online cancellation flow is not simple.

8   The interrogatory asked them, Describe -- Identify and

9   describe all features of the online cancellation flow that you

10  contend are not simple.  In response, on the merits, they say

11  the following.  It's -- and by the way, they don't say that

12  this is what they contend.  They say this is what purportedly

13  identified documents show.  We asked for their contentions,

14  which is perfectly permissible under the Federal Rules.  They

15  don't even respond to that.  But what they give is a number of

16  categories.  That it's hard to find.  Your Honor, what is hard

17  to find?  They don't even tell us.

18      Number two, there are too many clicks.  What does too many

19  mean?

20      Number three, it is difficult to understand.  What part of

21  the flow is difficult to understand?  There is no response.

22      It leaves consumers with the mistaken belief that they

23  have canceled.  What is that based on?

24      Number four, that there are -- that there is a save offer,

25  which is when you're almost done with the cancellation, they

1  say, hey, will you take a 50 percent discount?  Perfectly

2  permissible under FTC rules, but they say that creates --

3  somehow that's not simple.

4      We ask a survey:  Why did you cancel?  Again, perfectly

5  permissible, so long as it doesn't take unreasonable time to

6  complete.

7      And three, we ask an NPS survey, which is a Net Promoter

8  Score:  How would you rank Match.com on a scale of 1 to 10 in

9  terms of would you recommend it?

10      We require a password.  What's not simple about that?

11      And that it's misleading.  Well, what is misleading?

12      So, Your Honor, the answers actually beg more questions.

13  They do not identify what in particular about this flow is not

14  simple.  You can't find it in this response.

15      Not only that, Your Honor, they -- the key issues -- by

16  the way, the statute only says, ROSCA only says that a

17  cancellation mechanism must be simple.  That's it.  There is

18  no judicial gloss on this statute.  There is no -- there is

19  some limited FTC guidance on it.  But we asked specifically,

20  and they are required to meet the interrogatory as drafted,

21  what specifically is the problem?  And they won't tell us.

22  They say, here are a bunch of documents where internal Match

23  executives purportedly say it's not simple.  By the way, the

24  documents don't say that.  Not even close.  What they offer is

25  ways to improve the web -- the web flow.

1      So, Your Honor, that's in answer to your question.  But

2   the -- another significant problem is they object that this is

3   overbroad.  That should be overruled.  This is the heart of

4   the case that's remaining, Your Honor.

5      That it's vague.  If it's vague, then the statute is

6   vague, and we've got a real constitutional problem, which we

7   may anyway.

8      That it's unduly burdensome.  It's unduly burdensome for

9   the FTC to tell us what their case is?  I don't think so.

10     And that it's premature.  Hardly.  This investigation has

11  been going on four, five years, and they can't tell us within

12  a month or two of the close of fact discovery what is not

13  simple about our flow?

14     So, in short, Your Honor, the answer begs the questions.

15  Number two, they list documents that don't answer the

16  question.  And number three, they have objections that should

17  be summarily overruled.

18     And I'll make one other point, Your Honor.  They say, they

19  actually write this:  No part of this response should be

20  interpreted or construed as a limit on the materials or

21  arguments the FTC will present at trial.  Well, that

22  contravenes the very purpose of asking an interrogatory.  So

23  they know, they know that they haven't answered.  They know

24  they haven't answered.  Otherwise, they wouldn't have inserted

25  that objection, which is not an appropriate objection in any

1    event.

2         So I hope I've answered your question.  But let me just

3    focus on two things.  The issue ought to be, can people

4    cancel?  Is it an effective cancellation flow?  They don't

5    address that.  They don't address that.

6         Number two, how long does it take people to do it?  That

7    gets to RFAs, which are Requests for Admissions, which you've

8    seen.  This can be done in less than 30 seconds.  It is not a

9    complicated flow.  We need them to tell us specifically, your

10   flow takes nine clicks and that's too many.  They won't say

11   that.  You should ask, Your Honor, respectfully, why won't

12   they say it?  Why won't they answer this question?  This is

13   the heart of the case.

14        And this -- and I want to end with a practical note.  If

15   you were trying this case, if you were trying it from the

16   defense side, you wouldn't know what to meet based on this

17   interrogatory response.  If they contend that five is too many

18   clicks, okay, we'll deal with that.  We can have experts

19   address that question.  If they contend that it's hard to find

20   because people can't locate the Settings tab or because people

21   can't find the Manage Subscription part of the flow, that's

22   another thing.  But they don't tell us anything.

23        So, with respect, those categories, when you say it looks

24   like they've answered, they've answered, but with the word

25   that I like to use, it's pablum.  It's useless from a defense

1    perspective.  It doesn't tell us anything.

2         So, (a) objections overruled; (b) they need to meet the

3    response and they need to tell us something substantive.

4         Unless you have further questions, Your Honor, I tried to

5    answer your question.

6              THE COURT:  All right.  I don't see that the

7    Plaintiff is arguing any objections.  It looks like the FTC's

8    position is that it has adequately answered, not it's not

9    standing on its objections.  Is that correct?

10             MR. TEPFER:  No, Your Honor, we -- we've -- that's --

11   that is correct.  We believe that our response was sufficient.

12   You know, we identified the features that we're challenging.

13   The fact that Defendants are able to think of follow-up

14   questions doesn't mean that our response was inadequate.

15        And, you know, this is not mentioned in the briefing

16   because this just happened in the past couple of weeks, but

17   the Defendants had a 30(b)(6) witness -- or, deposition on

18   this exact issue, and defense counsel is quoting additional

19   evidence that we've given on our position.

20        So it's certainly not the case that we've been trying to,

21   you know, mislead or hide what we're challenging with our

22   response.

23             THE COURT:  Okay.  So, my -- I appreciate that, but

24   my question was simply on whether I'm ruling on your

25   objections, you're standing on your objections, or this is

1    simply a -- the issue is simply sufficiency of the answer.

2            MR. TEPFER:  We believe our objections are valid, but

3    our -- the focus on our response is the sufficiency of the

4    answer.

5            THE COURT:  All right.  So that's what I'm going to

6    rule on, is sufficiency of the answer.

7        All right.  Mr. Hummel, the question is, essentially, and

8    I'm paraphrasing here, but tell me why it's, you know, what --

9    it says, Identify and describe all features that make the

10   online cancellation flow not simple, as the term is used in

11   the statute.

12       And while I see that it could be a little confusing to say

13   your own documents identified the problems, it can also be

14   interpreted as saying that it's adopting that.  It's too hard

15   to find.  It takes too many clicks.  It's difficult to

16   understand.

17       If the interrogatory asked to identify and describe the

18   features that make it not simple, they've done that.  Have

19   they done that in the detail that you want?  Have they told

20   you the why?  The question is, before me, have they answered

21   what's been asked, and the response does.

22           MR. HUMMEL:  It doesn't, Your Honor, with respect.

23   What it does is it identifies what is found in our documents.

24   It doesn't tell us what the FTC is contending.

25       And too many clicks?  Your Honor, with respect, that's

1 meaningless.  What does that mean in the context of a statute

2 that only requires simple?  What does too many mean?  Is it

3 one, two, five, nine?  That's not a follow-up question.

4   And, Your Honor, I will point out that the interrogatory

5 also asks a description of what changes you contend would be

6 necessary to make the online cancellation flow simple.  They

7 are seeking injunctive relief in this case.

8     THE COURT:  Okay.

9     MR. HUMMEL:  What would their injunction say?

10    THE COURT:  All right.

11    MR. HUMMEL:  And that -- and that gets to the heart

12 of it, Your Honor.  And this is beyond the scope of a motion

13 to compel that we're asking you to rule on.  But, Your Honor,

14 --

15    THE COURT:  So let's not go there.

16    MR. HUMMEL:  Well, --

17    THE COURT:  I'm focusing on the motion.

18    MR. HUMMEL:  But it is, it is relevant to the

19 question.  How is a business supposed to know, from the FTC,

20 the Federal Trade Commission, this is the Federal Government,

21 telling businesses, your flow isn't simple enough because it

22 has too many clicks.  Well, is that -- as I've said before, is

23 that five?  Is it seven?  Is it nine?

24   It's hard to find.  What about it is hard to find?  That

25 is simply not a sufficient answer that allows the defense fair

1   notice of what to do at trial.

2        And with that, I'll submit, Your Honor.

3            THE COURT:  All right.  With regard to the issue on

4   the sufficiency of the answer as to whether they have -- the

5   Plaintiff has sufficiently identified the flaws -- I think

6   that's how you all described it, flaws, the features that make

7   it not simple -- I'm over -- I am denying the motion to

8   compel.  It's not the answer you want, but they have answered

9   the question asked.

10       Now, with regard to the second part on how to fix it, I

11  don't see any objection.  You tell me that you're going to

12  answer it as a separate -- a separate interrogatory, but the

13  answer to that interrogatory is here.  I don't have any

14  objections to that part.

15           MR. TEPFER:  Well, Your Honor, I believe that we did,

16  in the submission, note that that's -- you know, what is

17  necessary to fix a cancellation mechanism isn't even a

18  response -- well, for one, it doesn't go to the claims or

19  defenses.  That's -- it's not relevant to this case.

20       But even just practically speaking, that's really an

21  impossibility to answer.  There's a million ways that a flow

22  can -- a cancellation flow can be simple or not simple, and it

23  -- you know, it's -- we're not able to even answer that if we

24  wanted to.

25       As far as the injunctive relief, we can -- we can and have

1    provided Defendants the injunctive relief we're seeking.  But

2    in terms of like website design, that's far outside the scope

3    of discovery and not something that we could realistically

4    answer even if we wanted to.

5              THE COURT:  Sure.  I understand the position and

6    argument you made.  What I'm looking for is what objections

7    were actually asserted and what I'm ruling on.  If there's no

8    answer here, how are the objections that you're making today

9    timely?

10             MR. TEPFER:  In the -- sorry, Your Honor.  I believe

11   that this -- I can find this in the response, but it's --

12             THE COURT:  Not the response.  I'm looking at the

13   joint submission.

14             MR. TEPFER:  On Page 7, --

15             THE COURT:  Okay.

16             MR. TEPFER:  -- let's see.

17             THE COURT:  Page 7?  Your argument starts at Page 6.

18   But where is the part of the -- where is the answer to

19   Interrogatory No. 8?  Where did you respond to the actual

20   question?

21             MR. TEPFER:  I'm sorry, Your Honor.  One moment.

22   We'll --

23             THE COURT:  Uh-huh.

24             MR. TEPFER:  -- find this real quick here.

25             THE COURT:  That was my issue, too.

1          (Pause.)

2              MR. TEPFER:  Your Honor, I believe it's in the

3    appendix on APP 69.

4              THE COURT:  Well, I'm -- where do you cite me to APP

5    69 in your part of the argument?

6              MR. TEPFER:  And I apologize, Your Honor.  I --

7              THE COURT:  I'm willing to rule on the issues you all

8    present, but if you look at the wording of my order on the

9    face-to-face and what should be in the joint submission, this

10   is where I'm going through and this is what I'm going from,

11   this is where I'm looking at what's left after the face-to-

12   face.

13             MR. TEPFER:  The -- so, our objection is described on

14   Page 7 of the joint submission.  Our actual response is in the

15   APP.

16        One issue that I would note, and this is addressed in

17   Footnote 1, you know, we -- there were some last-minute edits

18   made to this document.  So to the extent there were, you know,

19   revisions or deletions, you know, we -- we apologize for that,

20   but that was, you know, an issue of receiving an updated draft

21   at the -- at the last minute.

22        But, you know, I want to assure the Court we did address

23   this both in -- on Page 7 of the submission and our

24   interrogatory response does raise the issue of, you know, our

25   inability to answer that.  We'll find that in the response

1  itself.

2           THE COURT:  Okay.  Footnote 1 says:  "Online

3  cancellation flow" means the Match.com automated online

4  cancellation process.  So that doesn't tell me what you said

5  it does.

6       If I look at Page 3, no, Page 2, --

7           MR. TEPFER:  Sorry.  You're --

8           THE COURT:  -- that has your entire response to

9  Interrogatory No. 2, the third paragraph talks about the

10 issue.  It says you're going to answer it as request to

11 Interrogatory No. 8, but you never tell me -- you don't give

12 me No. 8.  You don't make any objections there.

13          MR. TEPFER:  Your Honor, --

14          THE COURT:  I'm not sure why -- what authority you

15 have to just separately create your own interrogatory.  So

16 what am I ruling on here?

17          MR. TEPFER:  Well, --

18          THE COURT:  Tell me, if I'm looking at your answer to

19 No. 2, --

20          MR. TEPFER:  Yes, Your Honor.

21          THE COURT:  -- where are the objections.

22          MR. TEPFER:  The -- so, Your Honor, I was mistaken in

23 the footnote cite.  That's Footnote 4 I was referencing.  The

24 answer, we answered on APP 70.  It's with the separate

25 interrogatory responses, where we state that it's not feasible

1   for the FTC to provide a description of every possible online

2   cancellation flow.  So it is included in the response, and

3   it's described on Page 6 to 7.

4        And, yeah, and it's -- the -- Interrogatory 8 is

5   referenced in our first paragraph of that response.

6            THE COURT:  Right.  It's referenced, but you never

7   tell me where it is.

8            MR. TEPFER:  I apologize, Your Honor.

9            THE COURT:  You don't give it to me.  So how do I

10  know, from reading this, that that's what I'm supposed to be

11  looking at?

12           MR. TEPFER:  I apologize, Your Honor.  It's -- the

13  same -- we include the same arguments in Page 6 and 7 of the

14  submission, but I apologize for not referencing the APP in

15  there.

16           THE COURT:  Isn't this the flip side of the issue the

17  other side had last week, wanting to argue what "all" meant

18  when it wasn't in the joint submission?  I mean, the same rule

19  is going to apply to both sides.

20           MR. TEPFER:  Well, Your Honor, I do believe the

21  argument is all in there.  I mean, that's a substantial

22  portion of our response on this issue.  You know, there isn't

23  -- and we -- we cite the interrogatory.  All that's really

24  missing here is the APP number.

25       But, you know, the FTC -- we state on Page 7 that the FTC

1   is not obligated to provide advice concerning how to fix its

2   cancellation flow.

3          THE COURT:  Okay.

4          MR. TEPFER:  And then, you know, we also state that

5   there's unlimited hypothetical simple cancellation mechanisms.

6      So perhaps I'm misunderstanding.  I mean, the issue

7   appears simply to be the APP cite was missing, but certainly,

8   you know, the answer and the arguments are all there.

9          THE COURT:  What's the authority for creating your

10  own separate interrogatory?

11         MR. TEPFER:  Your Honor, I -- I don't offhand know

12  what basis we have for that.  You know, so I can certainly

13  understand the Court ruling that this should have been

14  included in the original response.  But I think that the

15  issues that we raised in that response -- and we did provide a

16  full response concerning this issue -- I think those issues

17  are valid.

18      (Pause.)

19         THE COURT:  All right.  So you can't give any

20  authority for creating your own interrogatory.  You didn't

21  include the response to Interrogatory No. 8 that you contend

22  is responsive to this part of Interrogatory No. 4.  Tell me

23  how you haven't waived this part.

24         MR. TEPFER:  Well, Your Honor, we do specifically

25  reference Interrogatory No. 8, and we provide in the appendix

1   Interrogatory No. 8.  The only -- the only thing that appears

2   to be missing is the APP cite, and I don't believe that the

3   FTC should be held to have waived a very, you know, important

4   right simply on the basis of having missed or having omitted

5   the APP cite.  The same arguments are made in both the

6   interrogatory response and the -- and our joint submission.

7   So it's all there.

8        You know, I certainly understand the Court, you know,

9   believing that we should not have created a separate

10  interrogatory.  We simply wanted to give notice to the fact

11  that we believe these are separate interrogatories and should

12  be counted as two interrogatories.

13       THE COURT:  Okay.  This isn't about my belief.  I'm

14  looking for legal bases here.

15       MR. TEPFER:  Yes, Your Honor.

16       THE COURT:  So, you can't give me a legal basis for

17  treating it this way.  My order for the joint submission

18  specifically says, list and brief whatever issues are -- I'm

19  ruling on.  You don't really separately point me to any

20  objections.  It's there.  282-page appendix.  So I'm supposed

21  to go looking for this, I suppose.

22       MR. TEPFER:  No.  I'm sorry.

23       THE COURT:  I mean, do --

24       MR. TEPFER:  I certainly -- I certainly understand.

25  That was an oversight on our part to not have the APP.  But we

1    very -- very much briefed this issue in the -- in the joint

2    submission.

3              THE COURT:  But do you see how it looks like you

4    briefed an objection that wasn't raised in the answer to

5    Interrogatory No. 2?  Because if it wasn't timely asserted,

6    it's waived, right?

7              MR. TEPFER:  I'm sorry.  Would you -- would you mind

8    repeating that, Your Honor?

9              THE COURT:  Isn't -- doesn't the case law

10   specifically -- well, the Rules actually say that any

11   objection not timely asserted is waived.  There's a Fifth

12   Circuit case, *In re Grant*, I believe, that says that as well.

13       So if I'm looking at this, I see no objections to No. 2,

14   and briefing on an objection that's not been asserted.  Do you

15   see how it looks like there's no objection to this part of No.

16   2?

17             MR. TEPFER:  I can understand that, Your Honor, but I

18   believe that -- I believe that it's clear from both the

19   briefing and our response that, you know, we asserted this,

20   this objection.

21             THE COURT:  Well, if I'm looking at your response,

22   and it's on 6 and 7, right, Page 6 and 7 of the appendix?  I

23   mean, I'm sorry, of the joint submission?

24             MR. TEPFER:  Yes, Your Honor.

25             THE COURT:  Okay.  Sentence No. 3 says, The FTC is

1    not obligated to provide an explanation.  It's already

2    explained its position in response to similarly-worded

3    Interrogatory No. 8.

4        Where here on 6 and 7 do you tell me that you've objected

5    to it on the basis of relevance, which is what your answer

6    says on Page 72 of the appendix, not Page 70, --

7              MR. TEPFER:  Uh, --

8              THE COURT:  Um, --

9              MR. TEPFER:  I believe that's -- the two paragraphs

10   on Page 7 are addressing that issue by stating that the FTC is

11   not obligated to provide advice and noting -- and the second

12   paragraph notes the impossibility of even responding.

13             THE COURT:  I understand.  It's a very -- it's a good

14   argument.  But rules are rules.  Tell me where -- and the

15   order is the order.  Tell me where you've specifically advised

16   the Court that you've objected to this on the basis of

17   relevance.  Because the only language I see, not obligated to,

18   which I'm having trouble converting into a legal basis or an

19   objection.

20             MR. TEPFER:  Well, Your Honor, I suppose that it is

21   true that we did not use the word relevance, but I believe

22   that the description of our objection makes clear the basis

23   of, you know, of our objection, that it's the relevance, that

24   it's outside of the claims and defenses.

25       But I, you know, I certainly appreciate the Court's

1  position that it is not -- that specific word is not used.

2  But I believe our objection is clear and was understood by the

3  Defendants.

4          THE COURT:  I don't believe it's my position.  I am

5  looking for the word relevance.  I'm having trouble saying "We

6  don't have to give them this answer" is the same as "The

7  information requested is not relevant."

8      Now, I'm not trying to give you a hard time.  I'm not

9  trying to make this difficult.  I'm trying to rule on the

10  validly-asserted objections, and I'm having a hard time

11  deciphering what they are.

12     And if it makes both sides feel any better, I'm going to

13  go back and make changes to my face-to-face order, because it

14  needs to be clarified.

15         MR. TEPFER:  Your Honor, on Page 70, we do -- of our

16  actual response -- I understand it's not that we created the

17  separate -- you know, and I understand we should have

18  addressed that in the same interrogatory.  But, you know, we

19  describe -- we describe the issues.  We, you know, cite to

20  Interrogatory 8 in our response.  And Interrogatory 8 begins

21  by stating that the interrogatory seeks irrelevant

22  information.

23     You know, I certainly appreciate that it creates a burden

24  for the Court to not -- you know, to cite the interrogatory

25  without including the APP, and, you know, I will -- I believe

1    we need to be more careful about that going forward.  But in

2    terms of did we make clear that the objection was relevancy,

3    in the response itself, you know, we state that they seek

4    irrelevant information.

5              THE COURT:  Okay.  Page 70 of what?

6              MR. TEPFER:  Of the joint appendix, which has our --

7    the response at issue, Interrogatory No. 8, which is cited on,

8    I believe, Page 6 of the joint submission.

9         (Pause.)

10         THE COURT:  All right.  (Pause.)  Document 136 is my order

11    for the face-to-face.  And on Pages 2 and 3, under Joint

12    Submission, it says, The joint submission must include only an

13    item-by-item listing of each specific issue, discovery

14    request, deposition topic, and/or corresponding objections

15    that was alleged in the motion and that remains in dispute

16    after the face-to-face conference.

17         And I call those disputed requests.

18         Disputes that have been resolved during the parties' face-

19    to-face conference should not be included in the joint

20    submission.  Only those issues or discovery requests or

21    objections that are listed in the joint submission will be

22    considered.

23         Where in your joint submission do you list relevance as an

24    objection remaining for me to rule on?

25              MR. TEPFER:  Well, Your Honor, respectfully, I would

1    suggest that the, you know, joint appendix should be

2    considered, given that it's incorporated by reference to

3    Interrogatory No. 8.  I would -- and that it's, you know, I

4    believe on Page 7 very clearly described, although the word

5    relevance is not used.

6              THE COURT:  Okay.

7              MR. TEPFER:  For example, we state, you know, MGI's

8    liability, quote, does not turn on the FTC's opinion about,

9    you know, how hypothetically Match should allow subscribers to

10   cancel.  It's, you know, the description of relevance.

11             THE COURT:  I'm not sure that's the description of

12   relevance that I'm familiar with under the case law.

13             MR. TEPFER:  And Your Honor, I apologize if, you

14   know, we misunderstood the order.  I thought we had, you know,

15   by, you know, it states issues or objections.  I thought those

16   were different ways of, you know, that we could, I guess, you

17   know, outline the various issues.  But it was not my

18   interpretation of the order that, you know, the specific

19   objection, that, you know, for example, relevance had to be

20   stated that precisely.  I thought we gave both fair notice to

21   the Defendants of our objection with our description and in

22   the response.

23             THE COURT:  I got it.  You think my order is bad.

24   I'm going to go back and fix it.  I said that.

25        But in terms of identifying the objection that I'm ruling

1    on -- I understand your position.  And I've got a question for

2    the other side.  But I could not tell from your joint

3    submission that relevance was an issue that you were

4    specifically wanting me to address or an objection that you

5    were specifically wanting me to address.  It just said, we

6    don't have to.

7         All right.  I heard a lot, Mr. Hummel, last week I heard a

8    lot about how the extended discovery the FTC was seeking was

9    not warranted because these practices were not being used any

10   more, that you'd filed an affidavit that the specific

11   processes at issue were no longer in use.  So if they're no

12   longer in use, and how to fix it is not necessarily an issue

13   or claim or defense, how is it relevant?

14            MR. HUMMEL:  Respectfully, Your Honor, there are

15   three issues.  The first one is the online cancellation flow.

16   That is a live issue in the case.  That is Count Five.  That

17   cancellation flow is still in use.  Okay?  The FTC is seeking

18   injunctive relief on that flow.

19        The two practices, Counts Three and Four in the complaint,

20   that have been discontinued since mid-2019, according to the

21   FTC's own complaint, are the guarantee and the chargeback

22   policy.  Those have nothing to do with the cancellation flow.

23        Interrogatory No. 2, which we're dealing with, and this

24   alleged Subpart 8, is a live issue in the case.  It's,

25   candidly, one of three live issues in the case that remain.

1    And we're going to talk about all those today.

2        So, with respect to the guarantee -- with respect to the

3    cancellation flow, what Your Honor, I take it, did with

4    respect to the first part of Interrogatory No. 2 was overrule

5    the objections and say that the response was sufficient.  I

6    take it that's what Your Honor did.

7            THE COURT:  No.  I specifically said, I believe --

8    I'll have to look at the transcript, but I believe I

9    specifically said I wasn't ruling on the objections because

10   the Plaintiff's position was that they were standing on the

11   sufficiency of the answer, so I didn't need to look at the

12   objections, that I was determining whether the answer was

13   sufficient.

14           MR. HUMMEL:  As long as those --

15           THE COURT:  Is that not what I said?

16           MR. HUMMEL:  I believe that's what you said, Your

17   Honor.  But, but, we can't go to trial with an interrogatory

18   that has those objections in it.  If they're withdrawing them,

19   that's fine.  If that's what is being -- is being decided here

20   today, that's fine.  What we can't do is go to trial and have

21   them say, well, we objected on burdensomeness and we're not

22   going to be bound by this answer, these answers, at trial.

23   If it's very clear on the record that they're not standing on

24   those objections anymore, we accept Your Honor's order,

25   although I disagree with it.  But it's very clear that we want

1    those objections overruled or withdrawn.  That's one.

2         Part two.  Part two, which is clearly a central issue in

3    the case, is the injunctive relief the FTC would seek with

4    respect to the Count Five cancellation flow issue.  And they

5    have never told us in a sworn response what the injunctive

6    relief is they're seeking.  In other words, what are the

7    problems and how do you fix it?

8         It is simply not adequate for any Defendant or a company

9    trying to run its business to say the flow is hard to find.

10   We need the specific injunctive relief.

11        And Your Honor, if you look at Appendix 70, which they

12   referenced for you, which is their answer to what they self-

13   created as Interrogatory No. 8, without authority, they do say

14   that they have, if you look -- tell me, Your Honor, if you can

15   have that in front of you.

16             THE COURT:  I have it.

17             MR. HUMMEL:  All right.  If you look at the second

18   paragraph:  Furthermore, the changes to the online

19   cancellation flow that the FTC would find acceptable in a

20   settlement -- that's not what we asked.  They're seeking

21   injunctive relief.  Then they go on to say:  Last, the FTC has

22   already described, repeatedly and in detail, specific problems

23   with online cancellation flow.  And then they reference the

24   answer to Interrogatory No. 2.

25        Now, we all can sit in this courtroom, but nobody could

1   say, sitting in this courtroom, that they have answered what

2   are the problems with the flow specifically -- wait, I'm

3   trying to find the words -- repeatedly and in detail.  So this

4   reference back to their response to the first part of No. 2,

5   that's inadequate.

6        Your Honor, we're asking the FTC -- we're asking the Court

7   to order the FTC to tell us the injunctive relief they're

8   seeking with respect to the cancellation flow.  It's centrally

9   relevant.  It's not irrelevant.  It's not hypothetical.  It's

10  real world.  In fact, it's the exact opposite of hypothetical.

11  So it is clearly relevant, and they have to tell us.

12       And, by the way, they do say, waiving the relevance

13  objection, in my view, they do say, The FTC contends that an

14  adequately disclosed one-click cancellation process would be

15  simple.  If that's their position, we can try the case.  But

16  it's surrounded by verbiage that makes it -- that is improper

17  objections that should be overruled, including relevance, and

18  they should be ordered to answer.

19            THE COURT:  All right.  I understand what you're

20  saying you need and want in order to try your case.  I am

21  looking at the language of your interrogatory.  You are

22  demanding today a level of specificity that is not requested

23  in your interrogatory.  I'm looking at what you have asked.

24  You've asked them to identify the features that they contend

25  make it not simple, and how to fix it.  The issue, we're

1    looking at flaws and fixes, both parts of Interrogatory No. 2.
2    I've already ruled on the first part.  If you've asked them to
3    identify what makes it not simple, I believe the answer does.
4    Does it go into the detail that you've asked for today?  No.
5    But your question doesn't ask for that level of detail.  It
6    asked for an identification of the flaws.  So I'm done with
7    that part of it.
8        I do note and I asked at the beginning of this hearing
9    whether Plaintiff acknowledged that it had the burden to meet
10   its objections.  It does not dispute that.  The case law in
11   this district supports it, as well as the Fifth Circuit's
12   opinion in *McLeod*.  So this is simply, in my mind, simply an
13   issue of has the question been answered, has the Plaintiff
14   supported the objections that I'm ruling on today?  And the
15   answer to that on the second part is no.
16          MR. TEPFER:  Your Honor, would you -- as for the
17   second part, do you mean the -- the fixes --
18          THE COURT:  The fixes.
19          MR. TEPFER:  -- issue?
20          THE COURT:  Yes.  The fixes issue.  I can't find
21   you've met your burden here.  I can't even tell what your
22   objection is, and you're citing back to a response that you
23   didn't give, even looking at your response.
24       Now, you went ahead and answered No. 2, despite the
25   objections.  You told me you're not arguing your objections.

1          MR. TEPFER:  Well, --

2          THE COURT:  So I don't see a reason not to overrule

3     the objections, since we're looking solely at the sufficiency

4     of the answer.

5          MR. TEPFER:  Your Honor, just to -- if I can clarify

6     just a couple of issues.  The -- you know, we -- our position

7     is that our answer was adequate, but that we, you know, but

8     not that our -- we necessarily withdrew our objections.  Just

9     that we believe our answer was -- that we adequately

10    responded, despite the objections.

11         THE COURT:  Okay.  I'm going to stop you right there,

12    because we've been going for some time and we're still on the

13    first one.

14         MR. TEPFER:  Yes, Your Honor.

15         THE COURT:  All right.  You have the burden to meet

16    your objections.  You haven't presented any argument on your

17    objections.  Your argument is limited to the sufficiency of

18    the answer.

19       Because you've not even argued your objections on the

20    flaws, I can't find that you've met your burden.  You've not

21    even presented any argument on them.  You've stood on the

22    sufficiency of your response.  Therefore, I don't see a reason

23    not to overrule the objections.

24         MR. TEPFER:  Your Honor, if I could respectfully

25    disagree.  I believe most of our response is about the

1    irrelevance of -- of the --

2              THE COURT:  Of the flaws?

3              MR. TEPFER:  Yes, Your Honor.  The -- you know, after

4    -- I believe all of Page 7 concerns the fix -- I apologize,

5    Your Honor.  The fix.  You know, Defendants --

6              THE COURT:  I'm talking about the flaws.

7              MR. TEPFER:  Oh.  Sorry.

8              THE COURT:  All right.  Let's -- all right.

9    Interrogatory No. 2 is about the flaws and the fix.  You've

10   broken it up that way in the joint submission.  With regard to

11   the objections to the flaws, --

12             MR. TEPFER:  Yes, Your Honor.

13             THE COURT:  -- you told me earlier you were standing

14   on the sufficiency of your answer.  There's no argument at all

15   presented on any objections to the part of the question about

16   flaws.  Is that correct?

17             MR. TEPFER:  Yes, Your Honor.  I misunderstood.  I'm

18   sorry.

19             THE COURT:  All right.  So is there any reason not to

20   overrule those objections as to the flaws?

21             MR. TEPFER:  No, Your Honor.  I apologize.  I was

22   misunderstanding.

23             THE COURT:  Yes.  All right.  So the objections as to

24   that portion of the interrogatory are overruled.  I'm finding

25   that the answer to the interrogatory, as asked, as part of the

1   flaws, is sufficient.  So I'm denying the motion to compel.

2   I'm overruling the objections to that portion, but I'm denying

3   the motion to compel.  They've answered it.

4        Now, with regard to the fix part, I don't see where you

5   have argued relevance in the joint submission, even if I look

6   at the part of the appendix that you've cited me to for the

7   first time today.  If the other side -- I understand.  How you

8   fix it is not necessarily relevant to a claim or defense.  But

9   the other side has pointed out the fact that it does go to the

10  scope of any injunctive relief.  And given the answer on Page

11  -- and I'm calling it Page 72; I use the blue numbers at the

12  top so that I can look at the page as opposed to having to

13  come down to the bottom of the page -- I agree that there is

14  some relevance to it.  So I am -- I am going to grant the

15  motion to compel as to the fixes part, for the fix part of

16  Interrogatory No. 2.  What you called Interrogatory No. 8,

17  which I still don't understand, well, there's not been any

18  legal basis provided for doing it this way, but I am -- I'm

19  ordering a response from the FTC.

20       All right.  Let's move on to No. 2.  As I understand it

21  from the joint submission, going to Page 19, the objections

22  I'm ruling on are relevance, vagueness, and ambiguity.  Is

23  that correct?

24            MR. HUMMEL:  Your Honor, what specific discovery

25  request are we talking about?

1          THE COURT:  Requests for Admissions 40 through 43.

2          MR. HUMMEL:  Okay.  Thank you, Your Honor.

3          THE COURT:  I'm sorry.  It's the second part of Issue

4   No. 1.

5          MR. HUMMEL:  Yeah, it's Page 7.

6          THE COURT:  Page 7.  And the FTC's position starts on

7   Page 12.  Line No. 2:  Relevance, vagueness, and ambiguity.

8   Those are the objections I'm ruling on; is that correct?

9          MR. TEPFER:  Yes, Your Honor.

10         THE COURT:  Okay.  Any others?

11         MR. TEPFER:  No, Your Honor.

12         THE COURT:  Okay.  As I understand it, these requests

13  for admissions are dealing with the online cancellation flow,

14  which was --

15         MR. TEPFER:  Your Honor, one correction, if I could

16  just note.  It's also -- the FTC does not have adequate

17  information to admit or deny.  So that was another basis.  I

18  just wanted to be clear.

19         THE COURT:  Okay.  But that's not a legal objection,

20  correct?

21         MR. TEPFER:  No, Your Honor.

22         THE COURT:  Okay.  Now, these requests are limited to

23  the online cancellation flow.  Everybody knows what that is,

24  right, that that deals with a specific issue in this case?

25         MR. TEPFER:  Yes, Your Honor, with one clarification,

1  that there are -- there were multiple versions of the online

2  cancellation flow over time, and the RFAs did not specify a

3  particular version of the online cancellation flow.  So we

4  under -- we understand what they're referencing, but not, for

5  example, a time period or a specific version of the online

6  cancellation flow.

7          THE COURT:  Tell me where that is in your objections

8  listed on Pages 7 to 8.  Because I don't remember anything

9  about you can't tell which version they're talking about.

10         (Counsel confer.)

11         THE COURT:  And as I read the cases you've cited,

12  *Abbott*, *Morley*, and *Buchanan*, this talked about hypotheticals

13  unrelated to the facts in the case.  Here, they're talking

14  about the specific cancellation flow at issue in the case.  So

15  why aren't those cases distinguishable?

16         MR. TEPFER:  Well, Your Honor, the reason that we

17  believed that this was hypothetical is it appears -- well,

18  it's unclear to us whether they're referencing real users or,

19  you know, a hypothetical user.  So that's, that's the basis

20  that we believed that they're asking for, you know, what --

21  how long would it take a potential hypothetical user to

22  cancel.

23         THE COURT:  Okay.  But, unlike in those cases, there

24  is an actual connection to the facts of this case because

25  they're talking about the specific process at issue in this

1   case, correct?

2            MR. TEPFER:  Yes, Your Honor.

3            THE COURT:  Okay.  So, in my mind, that disposes of

4   the relevance objection.  How would it not?

5            MR. TEPFER:  Your Honor, I certainly understand that

6   position.  My, you know, my thought was that because it

7   doesn't even appear that they're referencing actual users,

8   merely that somebody who may or may not be a Match.com user is

9   able to do that, that's -- that was the basis of our position.

10           THE COURT:  Okay.

11           MR. TEPFER:  And, you know, the fastest time that an

12  individual could do it versus the average time, you know, that

13  seemed to be a different issue.

14           THE COURT:  And you all are jumping ahead to the

15  ultimate --

16           MR. TEPFER:  I apologize.

17           THE COURT:  -- issues in the case.  No, no, I'm

18  talking about -- I understand your arguments.  I understand

19  your arguments.  We're here in the context of discovery.  Got

20  a request for admission.  You've got a duty to admit, deny, or

21  explain why you can't admit or deny.  Right?

22           MR. TEPFER:  Yes, Your Honor.

23           THE COURT:  Okay.  That's what I'm looking at.  How

24  it will be used at summary judgment or at trial, not at issue.

25  I'm looking at your question.  Did you answer it as the rules

1    require?  That's all I'm doing here.

2              MR. TEPFER:  Yes, Your Honor.

3              THE COURT:  All right.  So, because it relates to --

4    can we agree that, because it relates to one of the processes

5    at issue in this case, it is relevant?

6              MR. TEPFER:  Yes, Your Honor.

7              THE COURT:  All right.  Now, I understand your

8    objections about vagueness and what kind of person, but don't

9    you have to be a Match.com user in order to cancel your policy

10   or your membership?

11             MR. TEPFER:  Yes, Your Honor, but the -- the evidence

12   that had been presented to us on this issue, and which, you

13   know, which is referenced by the Defendants, I believe, in

14   their section, is a video of one of their employees clicking

15   through the cancellation mechanism.  So that, you know, that

16   to us didn't constitute any evidence to come to that

17   conclusion.

18        And in fact, you know, we understand we have a due

19   diligence burden to, you know, to answer these

20   interrogatories, but we simply don't have -- the Defendants

21   have never pointed us to evidence concerning actual users that

22   would obligate us to admit any of this.  It seems that it's an

23   open question.

24        And Defendants have suggested, you know, that we have a

25   due diligence obligation to, you know, conduct an extensive

1    survey concerning an aspect of the cancellation mechanism that

2    we're not actually challenging, as, you know, our response to

3    Interrogatory 2 made clear.

4         THE COURT:  All right.  Again, you're making the

5    arguments for the jury here to me.  Did you answer the -- I

6    understand you're going to --

7         MR. TEPFER:  Your Honor, --

8         THE COURT:  Why you think you shouldn't have to

9    answer it.  But if I'm ruling on vagueness and ambiguity now,

10   it's the only two objections I've got left here, --

11        MR. TEPFER:  To address the vagueness issue, you

12   know, it's not clear, are they talking about, you know, are

13   these consumers who have read the -- read the prompts?  Are

14   they, you know, where does the cancellation flow begin?  You

15   know, that's an issue that has been, you know, of some

16   dispute.  So, you know, I do believe, as written, they are

17   vague.  But I apologize for jumping ahead to the admit or deny

18   issue.

19        THE COURT:  Okay.  Well, and that's part of the

20   problem here.  You've got a lot of objections here that you're

21   telling me you can't -- well, don't you have a duty if you are

22   able to admit part of it or to answer part of it and deny the

23   rest and explain why you can't admit or deny?  And we're going

24   to get to that with some of the later ones.  How does your

25   answer tell me specifically -- actually, I can't tell what the

1   answer is.

2           MR. TEPFER:  Well, Your Honor, I don't believe there

3   -- I certainly agree that, you know, parties have an

4   obligation to admit or -- to admit any part that can be

5   admitted, but the issue is that there isn't any aspect of this

6   that we can admit or deny because we simply don't know how

7   long it takes consumers to cancel.  We've not tested this.

8   Defendants haven't pointed us to evidence concerning how long

9   it takes consumers to cancel.  So it -- you know, we don't

10  know how long it takes consumers to even find the flow.  So

11  that, you know, that's just, to us, that's an open question.

12  If Defendants have evidence of this, you know, they can of

13  course present that or cite it to us to get us --

14          THE COURT:  It's your case.  You brought this case.

15          MR. TEPFER:  Yes, Your Honor.  We're not --

16          THE COURT:  The issue in this case is whether this

17  process is simple.

18          MR. TEPFER:  But not -- not how long it takes to

19  cancel.  That's not an issue that we're challenging.

20          THE COURT:  True.  But didn't you concede somewhere,

21  and I'll go and find it, that -- let's see.  Is how long it

22  takes maybe a way to look at whether this is simple or not?

23          MR. TEPFER:  Certainly there's, you know, as I

24  mentioned, there's thousands of factors that can be relevant.

25  So this is certainly one.

1      But it wouldn't be a -- I feel that it wouldn't be a

2  reasonable reading of the due diligence requirement for us to,

3  you know, have to conduct surveys based on each of those

4  various factors just because Defendants ask an RFA about it.

5  We certainly will check, you know, any records or evidence we

6  have on the issue, but for us to determine this would -- you

7  know, that's a very difficult process to determine.

8           THE COURT:  Okay.  I'm not asking you to conduct

9  surveys.  I'm asking whether it's possible to answer this

10  question.  I understand you will argue later on that how long

11  it takes -- they're going to argue that the fact that it takes

12  this amount of time is evidence of its simplicity.  You're

13  going to argue that that's not the only factor to be

14  considered.  Got it.

15           MR. TEPFER:  Yes, Your Honor.

16           THE COURT:  Got it.

17           MR. TEPFER:  And how -- but my question is, how would

18  we -- how would we determine this if not from testing actual

19  users?

20           THE COURT:  Well, I'm not going to tell you how to

21  answer this.

22           MR. TEPFER:  Yes, Your Honor.

23           THE COURT:  That's not my role here.

24           MR. TEPFER:  Yes, Your Honor.

25           THE COURT:  But you've told me today they provided

 1  you evidence, some evidence of this.  The purpose of requests

 2  for admissions is to narrow the evidence, to narrow the

 3  issues.

 4          MR. TEPFER:  Your Honor, they presented us what they

 5  purport to be evidence of this but which we contend is not

 6  evidence, and it's certainly not, even if it were evidence,

 7  it's certainly not evidence sufficient for us to admit or deny

 8  it.

 9          THE COURT:  All right.  Then how do you explain --

10  tell me how your answer explains that.  You say, "based on

11  these ambiguities."

12          MR. TEPFER:  Your Honor, we state on Page 13 in the

13  last paragraph that the FTC has no data concerning this at

14  this time, and to the extent any such data currently exists it

15  would be in MGI's possession.  So that's -- I believe that's

16  what we intended to get at, that, you know, we don't have data

17  that would help us determine how long it takes a real

18  Match.com user to do this.

19          THE COURT:  All right.  I'm overruling your relevance

20  objection.  I've already -- I've already done that.  In fact,

21  I think you even essentially conceded that at the bottom of

22  Page 12, so I'm not sure why it was listed as one for me to

23  rule on, but there it is.

24      The way that you have phrased your -- argued your

25  vagueness objection, I understand it, but I don't necessarily

1   think that that means that you can't answer this interrogatory

2   some way, whether it's to admit or deny or say that you can't

3   for specific reasons.  The way you've answered it does not

4   make clear why you cannot admit or deny.

5       So I'm granting the motion to compel as to these

6   interrogatories.

7             MR. HUMMEL:  Requests for admissions, Your Honor?

8             THE COURT:  I'm sorry.  Requests for admissions.  RFA

9   40 through 43.  They are connected to the facts.  I understand

10  that there are some issues that you pointed out, but that's

11  not reflected in the response.  So I'm ordering a new

12  response.

13            MR. TEPFER:  Yes, Your Honor.  And just I want to be

14  sure that we comply with the Court's ruling.  In terms of

15  responding on the admit or deny issue, is it sufficient that

16  we, you know, note with more specificity the types of data

17  that we contend would be necessary for us to make that sort of

18  admission?

19            THE COURT:  I can't tell you how to answer it.

20            MR. TEPFER:  Yes, Your Honor.

21            THE COURT:  I can't tell you the sufficiency of an

22  answer I don't have in front of me without a motion to compel.

23  I'm just telling you, this is not a sufficient answer.

24            MR. TEPFER:  Yes, Your Honor.

25            THE COURT:  All right.  So it's granted.

1       Now we're moving on to Issue No. 2.  Requests for

2  Admission, the first part, Requests for Admissions 33 to 38,

3  talks about (a) cancellation method.  And now I'm looking at

4  Page 19.  What is the specific issue or specific objection?

5            MR. HUMMEL:  Your Honor, for the record, we're

6  talking about RFA Numbers 33 through 38, which are listed on

7  Pages 13 through 16?

8            THE COURT:  I believe I -- I just said that.

9            MR. HUMMEL:  Okay.

10            THE COURT:  I believe I just said that, --

11            MR. HUMMEL:  Okay.

12            THE COURT:  -- and that I am looking at the FTC's

13  response on Page 19.

14            MR. HUMMEL:  Thank you, Your Honor.

15       (Pause.)

16            THE COURT:  Which I've got -- I think I've got

17  vagueness here.  Line 3.

18            MR. TEPFER:  Yes, Your Honor.  We also contend that

19  they're irrelevant and I believe, you know, that is made

20  clear.  And, again, I apologize for the -- for not stating

21  this more plainly.  But midway through the first paragraph, we

22  state that these requests are explicitly not connected to the

23  facts of this case, and thus we contend they're irrelevant.

24       We also contend they improperly call for a legal

25  conclusion.  And I believe -- sorry.  I just want to make sure

1   that we included this.  We do mention that it's a -- we have a

2   quote concerning it being an improper hypothetical.

3         THE COURT:  Okay.  Tell me where improper

4   hypothetical is in the actual objection and response.

5         MR. TEPFER:  Your Honor, looking at -- if I could

6   cite to RFA 34 on Page 14.

7         THE COURT:  I'm looking at it.  Uh-huh.

8         MR. TEPFER:  It states, you know, vague and

9   ambiguous, and the hypothetical as a whole is vague.

10         THE COURT:  Okay.

11         MR. TEPFER:  The request does not describe the

12   entirety of the hypothetical cancellation method, how the

13   offer is presented, et cetera.

14         THE COURT:  Okay.  And it talks about the specificity

15   of the question.  How am I to understand that that means the

16   same thing that you've argued on Page 19, that it's not

17   connected to the facts of this case?

18      I agree, if it's not dealing with the specific issues in

19   this case, it might be overbroad, but that's not an objection

20   that you made.

21         MR. TEPFER:  Your Honor, I believe, because it's not

22   connected to the facts of this case, that makes it an improper

23   hypothetical.

24         THE COURT:  Is there a cancellation mechanism at

25   issue in this case?

1          MR. TEPFER:  Yes, Your Honor, although the Defendants

2     make explicit that this question does not concern that

3     cancellation mechanism.

4          THE COURT:  Didn't you answer with extent to that

5     cancellation mechanism?  I believe the last sentence says, To

6     the extent this request is intended to refer to Match.com's

7     online cancellation mechanism, Plaintiff denies.

8          MR. TEPFER:  Yes, Your Honor.  My interpretation of

9     it was that that was not what was being referred to, but if I

10    was, you know, if we were misreading it, we wanted to make

11    sure we admitted to the -- or denied to the extent that we're

12    able to do so, as is our obligation.

13         THE COURT:  All right.  You know -- well, I'm not so

14    sure that these requests are the most effective way to limit

15    or narrow the issues.  I can see an argument being made for

16    these are gotcha requests, and we're spending a lot of time on

17    them.  But I have a denial here with regard to the specific

18    policy at issue in the lawsuit, so why is that not sufficient

19    an answer?

20         MR. HUMMEL:  Because it's not what the RFA asks.

21    This is -- look, let's just speak plainly, if I might, Your

22    Honor?

23         THE COURT:  Please.

24         MR. HUMMEL:  So, they say, in response to

25    Interrogatory No. 2, where we ask them specifically what's

1    wrong with our site, what's wrong with our cancellation flow,

2    and they say by presenting surveys, by having a cancellation

3    flow that has a misleading survey or a save offer, and that it

4    therefore -- and the only reason under FTC guidance, Your

5    Honor, that that would be a problem is if it caused undue

6    delay.

7         So we're asking, in a perfectly-permissible non-

8    hypothetical, tied-to-the-facts-of-this-case RFA, admit in 33

9    that a cancellation method can be simple if it includes a save

10   offer.  The answer to that has to be admit.  It's not a --

11   it's not a gotcha question.  It eliminates an issue for trial,

12   where they will say you have a save offer, therefore it's not

13   simple.  But thousands of online cancellation flows in this

14   country have save offers that the FTC hasn't challenged and

15   that are simple.

16        This is a straightforward request, it is directly tied to

17   what's at issue in this case, and they're required to admit it

18   or deny it in good faith.

19        Now, they do have a denial, but they have a denial only

20   with respect to our flow, which they contend is not simple,

21   but that's not what the RFA asks.

22             THE COURT:  We spent an awful lot of time last week

23   talking about why discovery served by the FTC was not relevant

24   because it wasn't limited to the specific policies at issue in

25   this case.

1          MR. HUMMEL:  Nope.  Different -- respectfully, Your

2     Honor, different issues.  The -- those two issues, and I'll

3     argue that again, and I know you don't want me to, those

4     issues, those two questions, whether there's a guarantee or

5     not that had adequate disclosures or whether there's a

6     chargeback policy that they contend was somehow unfair under

7     the FTC Act, they're eliminated.  We don't do it anymore.  We

8     haven't done it since mid-2019.

9          This is a live issue in the case that will be tried, which

10    is:  Is our cancellation flow simple?  And this asks, in the

11    real world, if a cancellation flow has a save offer, does

12    that, from the FTC's perspective, render it not simple?

13    That's the question.  And it is directly relevant, easily

14    responded to, and they haven't in their denial met the

15    question.

16         So we have to distinguish between a cancellation flow,

17    which is still a live issue, and the guarantee and the

18    chargeback policy.  Those issues, from our perspective, are

19    off the table.  The fact that we have to engage in merits

20    discovery on issues that are not going to be tried is,

21    candidly, beyond me.  But this one is live.  They are

22    contending and arguing that our cancellation flow violates

23    ROSCA, the Restore Online Shoppers' Act -- Confidence Act.

24    And they say it's not simple.

25         Your Honor ruled that they gave us an answer, albeit

1    vague, that responds, but these are real issues in the case

2    and the FTC needs to take a position in this case on whether a

3    save offer, a survey, and a Net Promoter Score question render

4    it not simple as a matter of law.  And RFAs are allowed to do

5    that under the Federal Rules.

6          So, with that, I'll submit, Your Honor.

7          (Pause.)

8          MR. TEPFER:  Your Honor, would I be able to respond

9    to those issues?

10          THE COURT:  You may respond.

11          MR. TEPFER:  First, I'd like to note, you know, as

12   the Court has, that these are really gotcha RFAs.  They're,

13   you know, vaguely described.  This is a totality of the

14   circumstances test where you have to actually usually look at

15   these various features to make any sort of conclusion.

16          Of course, and as Defendants note in their own section on

17   this issue, there is not case law addressing whether, you

18   know, these features are, as a matter of law, and which is

19   what they're asking us to conclude, to provide the legal

20   conclusion that various features are, as a matter of law, not

21   simple.  There's not case law on that.

22          You know, the statute doesn't state that because it wanted

23   -- Congress presumably wanted to provide leeway to courts, you

24   know, without a prescriptive standard.  And courts have not

25   interpreted that.  And so whether these are, as a matter of

1    law, simple or not simple is an open question.

2        But more importantly, you know, these gotcha RFAs are

3    exceedingly vague.  And so all we can really respond to is the

4    cancellation mechanism in this case, the one that's actually

5    at issue, as opposed to these vague hypotheticals.

6        THE COURT:  Let me ask you this.  And I see the

7    argument for some vagueness in the question.  But if I read

8    this as admit that a cancellation method can be simple even if

9    it includes a save offer.  And cancellation methods -- well,

10   does a save offer in and of itself, and I'm not asking for a

11   legal conclusion, I'm just saying, does the fact that a

12   cancellation method has a save offer in it automatically mean

13   that it's not simple?

14       MR. TEPFER:  And to that, you know, on the issue of

15   whether these features, any of them, are necessarily -- render

16   something not simple, I don't believe that that -- the courts

17   have addressed that legal conclusion.  So the FT -- what's at

18   issue is, you know, under the law, are those features

19   necessarily -- do they necessarily render something not

20   simple, and there is just not case law that states either way

21   on that.

22       THE COURT:  Well, I'm not talking about case law.

23   I'm talking about Mr. Hummel pointed out that there are

24   cancellation methods used, other cancellation methods used

25   that also include a save offer.

1          MR. TEPFER:  Yes, Your Honor.

2          THE COURT:  I'm not talking about a legal conclusion.

3  I think I already said that.

4          MR. TEPFER:  Yes, Your Honor.

5          THE COURT:  Again.  I'm just saying, does the fact

6  that a cancellation method includes a save offer automatically

7  make it not simple?  Are there ways to have save offers that

8  are simple?  I'm talking on a factual basis here.

9          MR. TEPFER:  Well, Your Honor, because this is a

10 totality of the circumstances test, I believe that's a

11 difficult answer for us to make.  I don't -- you know, the FTC

12 has provided guidance on, you know, when it will seek to

13 enforce, but I, you know, I don't believe that the Court --

14 that the FTC has, you know, issued anything saying that

15 particular features are necessarily out of bounds, and I don't

16 think that's what ROSCA, you know, I don't believe that's

17 really how the statute is written, that --

18         THE COURT:  Let me ask it this way.  I'm not trying

19 to trick you here.

20         MR. TEPFER:  Yes, Your Honor.

21         THE COURT:  I'm not trying to get you to admit

22 something.  I'm asking a question.  Can a cancellation process

23 have a save offer and still be simple?

24         MR. TEPFER:  Your Honor, I do believe it's

25 theoretically possible.  Of course, you would have to look at

1    the save offer.  But --

2           THE COURT:  Okay.  Okay.  So is that a -- is that --

3    is there a save offer in the cancellation process at issue

4    here?

5           MR. TEPFER:  Yes, Your Honor.

6           THE COURT:  Okay.  So this is -- there is a

7    cancellation method with a save offer at issue in this

8    lawsuit?

9           MR. TEPFER:  Yes, Your Honor, although -- sorry.  I

10   would just note that, as Defendants made clear in their -- I

11   believe that's in this -- in their position, that their save

12   offer is specifically not at issue.  Or that, rather, their

13   cancellation flow is not what they're referring to with --

14   with these.

15          THE COURT:  Okay.  Didn't you give me an answer just

16   a few minutes ago, though?  I mean, if we're looking -- in

17   theory, anything's possible, right?

18          MR. TEPFER:  Yes, Your Honor.

19          THE COURT:  Okay.  And what you're telling me today

20   is that you have to look at the specifics of a particular

21   process.

22          MR. TEPFER:  That's -- that's my understanding of how

23   the Court should approach whether something is simple.

24          THE COURT:  Okay.  So how can -- how -- why could

25   this not be construed as a theoretical question, or these

1    series of requests for admissions, that have some connection

2    to the facts in this case?

3         MR. TEPFER:  Well, Your Honor, we agree that it is a

4    theoretical question.  That's why we objected as it being an

5    improper hypothetical.  But I believe Defendants have made

6    clear that this is not about, you know, the facts of this

7    case.  And what, you know, essentially what they're asking for

8    is policy guidance, trying to get a more, you know,

9    prescriptive ROSCA standard than what Congress, you know,

10   intentionally wrote, I guess to require that we, you know,

11   state as a -- as a matter of law, save offers are not

12   necessarily an issue, or, you know, seven clicks is okay but

13   not eight.  And that's simply not how the statute is written.

14        THE COURT:  Okay.  Can you not answer this to make

15   clear what you've just said?

16        MR. TEPFER:  Your Honor, we -- we could certainly --

17   you know, I believe we would be able to add additional detail

18   about our need to, you know, review a particular save offer.

19   And, you know, I believe it's -- I don't have the response in

20   front of me, but I think we do --

21        THE COURT:  Page 14.  Joint submission.

22        MR. TEPFER:  We do talk about, you know, the need,

23   that we don't look at particular -- or, our understanding of

24   the law is that you don't look at particular features in

25   isolation.

1      You know, I believe that we do provide some detail for the

2   basis of our, you know, denial.  So I -- I believe, you know,

3   they're asking us to make admissions that go beyond the

4   statute and create a more prescriptive standard than what --

5   than what Congress wrote.

6          THE COURT:  So, to admit or deny or say you can't

7   admit or deny --

8          MR. TEPFER:  Oh, well, Your --

9          THE COURT:  -- forces you to create a policy?

10          MR. TEPFER:  No.  No, Your Honor.  I suppose I

11   misunderstood you.  We could, you know, we could note that,

12   you know, talking generally -- I misunderstood.  We could

13   certainly note that, as to Defendants' specific cancellation

14   mechanism, we deny, but we can't --

15          THE COURT:  It did.

16          MR. TEPFER:  Yeah.  And -- but -- but also note that

17   we cannot admit or deny the more general statement on the

18   basis that it's a totality of the circumstances test and that,

19   you know, that this is inherently a visual, you know,

20   analysis.  That's, you know, all information that we can add.

21   That's information that we provided to Defendants in, you

22   know, our 30(b)(6).

23      But, you know, on -- our position was that the response

24   was adequate, but -- but that's certainly, you know,

25   additional information.

1          THE COURT:  Your response is limited to a specific

2     policy that is not the issue in this request for admission,

3     correct?

4          MR. TEPFER:  I'm --

5          THE COURT:  I'm sorry.  Let me rephrase that.  That's

6     -- okay.  Your answer is limited to Match.com's online

7     cancellation mechanism, but the question is beyond that?

8          MR. TEPFER:  Yes, Your Honor.  On the basis that, you

9     know, we -- we were standing on our objections for the

10    vagueness and the -- the fact that they are improper

11    hypotheticals, and then attempted to admit or deny to the

12    extent possible, which was concerning the Match.com

13    cancellation mechanism.

14         THE COURT:  I'm going to sustain your vagueness

15    objection because it's not limited to a specific -- you've

16    sufficiently identified that there are issues in terms of why

17    you can't specifically answer it as phrased.  But in our

18    discussion, it seems like there are certainly portions that

19    you can admit or deny, and that's part of it.  You're making a

20    whole bunch of objections, some denial.  I honestly had

21    trouble with some of the answers in trying to figure out what

22    part was answered, what part was denied, and what part wasn't

23    and why.

24       So I am going to grant the motion as to this set of

25    requests for admission.  I'm sustaining your vagueness

1   objection.  But I'm still going to require you to answer

2   around that vagueness objection.

3       In other words, the Rules require you, if you make an

4   objection, you can answer the rest of it.  You can explain

5   your answer in terms of why you can or can't -- why you can or

6   cannot admit.  But this answer is truly confusing.

7           MR. TEPFER:  Yes, Your Honor.

8           THE COURT:  I understand what you're trying to say.

9   I'm overruling the relevance.  I understand it goes beyond the

10  specific methods that are at issue in this lawsuit.  But it is

11  about the methods that are at issue in this -- or, the type of

12  method.

13      We did have that discussion last week about whether

14  similar policies in other websites, so I see it as the same

15  kind of issue generally, but I think that there is -- these

16  can be answered in some manner.  There's a limitation here

17  that's not in the question.  I'm looking at whether you

18  answered the question.

19      So, I'm going to -- I'm going to grant the motion as to

20  these but sustain the vagueness.

21          MR. TEPFER:  Um, --

22          THE COURT:  And overrule the relevance.

23          MR. TEPFER:  And Your Honor, would you be able to

24  clarify the limitation that you referenced, just so I

25  understand?

1          THE COURT:  I agree that, as asked, the question is

2     vague.  I don't see this as a hypothetical.  So I'm not seeing

3     that there is a hypothetical presented here.  It's more of a

4     rhetorical question, as we discussed:  Is it theoretically

5     possible to have this type of save offer and still have -- and

6     a process to still be simple?  You told me theoretically

7     that's possible.  But you also told me that it is a fact-

8     specific determination.

9          MR. TEPFER:  Yes, Your Honor.

10          THE COURT:  You've basically answered the question

11     orally today that you didn't answer on paper.

12          MR. TEPFER:  Well, Your Honor, I believe that we

13     answered the question, you know, that Defendants posed.  I

14     felt like there was more clarification today than -- but --

15     but I certainly, yeah, I certainly understand.

16          THE COURT:  Okay.  All right.  RFPs 5 through 6.  All

17     right.  And the objections here are relevance.  That's at Page

18     23.  And the deliberative process privilege.  Is that correct?

19          MR. TEPFER:  Yes, Your Honor.

20          THE COURT:  All right.  This one does look very much

21     like what we talked about last week, evaluations of another

22     subscription service's cancellation mechanisms.  And so I am

23     sustaining the relevance objections.

24          MR. HUMMEL:  May I be heard, Your Honor?

25          THE COURT:  If you'll give me just a minute.

1    (Pause.)  All right.  Mr. Hummel?

2           MR. HUMMEL:  So, let me clarify a couple things, Your

3    Honor.  One is you've heard the FTC say this morning that

4    whether or not a cancellation flow is simple is a "totality of

5    the circumstances test."  Right?

6           THE COURT:  Uh-huh.

7           MR. HUMMEL:  That's nowhere articulated in the case

8    law, in the statute, or in FTC guidance.  So that's made up

9    this morning.

10      Number two, the only test regarding save offers, surveys,

11   et cetera, and this is going back a little bit to the other

12   one but I'll bring it together, the only test the FTC has ever

13   articulated is whether the save offer, survey, et cetera,

14   causes unreasonable delay in cancellation.  Okay?

15      So what we're looking for, Your Honor, is what does the

16   FTC look at?  What is the Court supposed to look at in

17   determining whether a cancellation flow is simple?  Is it

18   difficulty in finding it?  Is it how many clicks it takes?  Is

19   it do consumers understand it when they see it?  Is it is

20   there a save offer?  Is there a password wall that they have

21   to look at?  Et cetera.  Here, --

22          THE COURT:  Mr. Hummel, not to interrupt you, but

23   we're talking about two requests for production here.

24          MR. HUMMEL:  I understand.  I'm getting there.  If --

25   if the FT --

1          THE COURT:  Get there a little faster.

2          MR. HUMMEL:  I'm sorry.  I'm trying to be clear in my

3    arguments.

4      If the FTC has looked at cancellation flows and sued on

5    them -- and we're aware of two times they've done this -- what

6    do they look at?  What are the documents?

7      And, Your Honor, a subset of this request would be let's

8    assume you grant their relevance objection on other websites.

9    What is their analysis of why this particular cancellation

10   flow at issue in Count Five of this case, what empirical

11   evidence do they have and what have they looked at that

12   determines whether this flow is simple or not?

13     And that -- and if it's privileged, log it.  If it is work

14   product, log it.  If it is deliberative process privilege, log

15   it.  But we need to know what empirical evidence they have.

16   How long does it take people to complete?  How many clicks, in

17   fact, do they contend we have?  What are the documents that

18   prove their case as to this one?  Put aside the other ones.

19   I'm not going to argue that for you.  But -- I could, but I

20   have limited time.  But you need to order what they looked at

21   to make an allegation under Rule 11 in this case that our flow

22   is not simple.  And with all due respect, Your Honor, 'Rog Two

23   doesn't do it for us, so let's see what they in fact looked

24   at.

25         I'll submit.

1           THE COURT:  All right.  Thank you.  You used the

2  words "this case" several times during that argument.  Your

3  discovery request is not limited to the type of cancellation

4  method used in this case.  It says cancellation methods,

5  period.  It is the universe of cancellation methods.  That's

6  overbroad, which makes at least part of the request

7  irrelevant.

8           MR. HUMMEL:  I'd respectfully disagree, but if you're

9  going -- but you certainly have the power today to order them

10  to produce anything that relates to the Match.com cancellation

11  flow --

12           THE COURT:  All right.

13           MR. HUMMEL:  -- that's subsumed within these

14  requests.

15           THE COURT:  Sure.  And their answer says, The FTC has

16  conducted a reasonable search of documents possibly relevant

17  to cancellation methods on the Defendants' dating platforms

18  and has not identified any responsive documents.

19           MR. HUMMEL:  Subject --

20           THE COURT:  So their answer has limited it to the

21  cancellation methods in your -- in your platform, in the

22  Defendants' platforms.

23           MR. HUMMEL:  Fair.  Subject to privilege and subject

24  to other objections, which should be overruled.  Or if they

25  have privileged material, let's log it and make a -- and

1    decide whether it's in fact privileged or not.

2              THE COURT:  Okay.

3              MR. HUMMEL:  This is in a vacuum.

4              THE COURT:  It's not a vacuum.  Page 24, the last

5    sentence right before Roman Paragraph III:  Defendant is not

6    withholding any documents.

7              MR. HUMMEL:  So then why make the privilege

8    objection?  I don't understand.  They've made a privilege -- a

9    very specific privilege objection, and if they're saying

10   they're not standing on privilege, then we're going to some

11   there's nothing, that they have no empirical evidence.  And

12   that's fine.  That helps me at trial.

13             THE COURT:  It does not help me resolve the discovery

14   issues that I need to resolve.  Again, part of the face-to-

15   face is what am I ruling on.  Are we fighting over documents

16   that don't exist?

17             MR. TEPFER:  Well, Your Honor, just to clarify, we

18   state that we have conducted, in that last sentence, a search

19   of relevant documents concerning Defendants' dating platforms.

20   So to the extent we're talking about, you know, Defendants'

21   dating platforms, we're not withholding on the basis of

22   privilege concerning Defendants' dating platforms.

23             THE COURT:  I --

24             MR. TEPFER:  The privilege objection concerns the,

25   you know, the other platforms, which are also irrelevant, but

1   also, we believe, you know, concern -- would, you know, be

2   within the deliberative process privilege.

3          THE COURT:  All right.  Have you provided -- I mean,

4   going back to -- well, let me ask it this way.  I've got a lot

5   of objections here.  What it looks like, according to your

6   answer, is that you have looked for documents relevant to the

7   cancellation methods on the Defendants' platforms and you

8   don't have any.

9          MR. TEPFER:  Yes, Your Honor.

10          THE COURT:  And your answer says you're not

11   withholding any documents at all.

12          MR. TEPFER:  To the extent, you know, --

13          THE COURT:  Your portion of the joint submission, in

14   other words.

15          MR. TEPFER:  To the extent the, you know, the term

16   analysis refers to attorney discussions, you know, our -- like

17   the case teams analysis, that would be responsive.  But that

18   is privileged.  And we did provide a privilege log to

19   Defendants concerning, you know, our internal analysis.  But

20   to the extent we're talking about studies that -- which is

21   what I -- my understanding of what this RFP is to get at,

22   those documents don't exist.

23          THE COURT:  Okay.  You just told me today something

24   that's not in your answer and that's inconsistent with what I

25   think you said on Page 24.  Are you withholding any documents

1  relating to cancellation methods on the Defendants' dating

2  platforms on the basis of privilege?  Because your answer or

3  your portion of the joint submission says you are not

4  withholding any documents.

5            MR. TEPFER:  Your Honor, looking at --

6            THE COURT:  Yes or no?  Are you withholding any

7  documents relating to cancellation methods on the Defendants'

8  dating platforms?

9            MR. TEPFER:  And just to be clear, --

10            THE COURT:  Yes or no?

11            MR. TEPFER:  I don't believe so, Your Honor.  I --

12  the privilege log I reference, I don't -- I'm looking at this

13  closely, you know, at RFP 5 and 6, and I don't believe our

14  internal emails would be responsive.

15     I just wanted to clarify, you know, to the -- that we have

16  provided a privilege log, but I apologize for, you know,

17  muddying the waters.  I don't believe those are necessarily

18  responsive to these RFPs, as it's not analysis conducted or

19  done for the FTC regarding it.

20            THE COURT:  You're only required to answer the

21  question asked or to provide the categories of documents

22  requested.  So, again, to be clear for the record, crystal

23  clear, --

24            MR. TEPFER:  Yes, Your Honor.

25            THE COURT:  -- is the Plaintiff withholding any

1  documents on the basis of privilege that are possibly relevant

2  to the cancellation methods on the Defendants' dating

3  platforms?

4          MR. TEPFER:  No, Your Honor.

5          THE COURT:  Okay.  How is that not sufficient?  I

6  agree that that language should have been in the answer,

7  because the Rules do require the parties to state whether or

8  not they are withholding documents on the basis of privilege.

9  But with regard to the cancellation policy -- cancellation

10  methods at issue in this lawsuit, you're telling me you're not

11  withholding any documents relating -- on the basis of

12  privilege or any other objection?

13         MR. TEPFER:  Not -- not documents that are responsive

14  to these requests.

15         THE COURT:  Okay.  And that's the universe, is the

16  specific requests?

17         MR. TEPFER:  Yes, Your Honor.

18         THE COURT:  I'm going to deny the motion to compel,

19  but I'm going to require you to amend your answer to make

20  clear that you are not withholding.

21         MR. TEPFER:  Yes, Your Honor.

22         THE COURT:  All right.  Issue No. 3.  And I'm going

23  to kind of take these together.  Why is it that the FTC was

24  able to provide an answer and now it can't provide an answer?

25         MR. TEPFER:  Well, Your Honor, that -- that answer

1    that we provided was based off of the data that we had

2    received, I believe, in 2017.  And since that time, you know,

3    five years of -- have elapsed.  And we amended, you know,

4    after -- on the basis that that number is simply not accurate.

5    The requests -- Defendants request that we identify and

6    describe the harm that we contend occurred, and that's not the

7    harm that we are contending occurred anymore.

8         We -- our -- you know, and at this point, we're still, you

9    know, months later, awaiting the evidence that we need to be

10   able to make those precise calculations, the harm that we

11   contend occurred, and which, you know, may end up the --

12   negotiations are ongoing, but that may end up the subject of a

13   motion to compel.  But until we get that data, all we can

14   really do is describe as best we can the methodologies that we

15   will likely use.

16        Of course, those methodologies will -- you know, are also

17   contingent upon what type of data Defendants produce.  So

18   there's -- there's a limitation in terms of what we can answer

19   until we get that data.

20        But the reason we amended is to make it more accurate, not

21   to, you know, hide our calculations or anything like that.

22   That's simply just not what we contend the harm is anymore.

23   And so that -- that explains the revision.

24             THE COURT:  Is it the answer based on the best

25   information that you have?

1          MR. TEPFER:  Yes.  That's -- you know, all we can do

2     is describe how -- the things that we intend to consider once

3     we get it, so that's the best we -- I believe we can do.

4          THE COURT:  No, that's not what I'm asking.

5          MR. TEPFER:  I'm sorry.

6          THE COURT:  Rule 26(a), as part of your initial

7     disclosures, requires the Plaintiff to provide a calculation

8     of damages.  I understand that, as the Plaintiff obtains

9     discovery, that calculation may change.  But the Defendant is

10    still required -- is still entitled to a calculation.  You

11    made a calculation, then you took it back and have no

12    calculation.  This is part of what was required to be produced

13    initially.

14       So I understand that you want to have the best

15    calculation, but they're entitled to something, because it may

16    or may not change based on discovery that you have.

17       So I am granting the motion to compel as to the  discovery

18    requests in Section 3.  They're entitled to your calculation,

19    the best calculation that you can give them based on what you

20    have now.  You have a duty to supplement as you get more

21    discovery, but they're entitled to a calculation.  So I'm

22    granting the motion as to Section 3.

23       All right.  Section 4.  Or Issue 4.  I see these requests

24    for admissions in the same light as the ones that we talked

25    about earlier.  I understand your objection and limitation on

1    use of the words "are" and "were."  But you've still got this

2    language in here, "subject to and without waiving the

3    foregoing objections."

4        I don't think that you have answered -- I don't think that

5    you have answered.  There's not an admission, a denial, or a

6    statement of why you can't admit or deny.  So I'm granting the

7    motion as to Category No. 4.

8            MR. TEPFER:  Well, Your Honor, if I could just

9    clarify our position.  I think that we do state that, you

10   know, what Defendants are asking here is completely different

11   than what they describe in their joint submission.  They're

12   asking whether, you know, these mechanisms exist, is the way

13   they describe it.  But what the answers are actually

14   requesting is whether users are able to.

15       And we simply -- you know, at the time, these were valid

16   responses because we didn't have data concerning how many

17   users actually cancel via these various mechanisms, which, you

18   know, and that's a valid issue, given that, you know, for many

19   of these mechanisms, consumers have no idea that they even

20   exist.

21       So, without getting the data concerning are you -- are

22   consumers actually canceling via this mechanism, there's no

23   way for us to know whether they're able to.  You know, for

24   example, whether they can cancel via a fax number that's

25   buried in a terms of use document that doesn't even describe

1   that it's for cancellation.  You know, without knowing whether

2   consumers are doing that, there's -- you know, we would

3   contend it seems likely that they can't cancel via that

4   mechanism, but we didn't have, you know, data going either

5   way.  And so that's, you know, that's why we believe that was

6   a proper response, because this isn't, as Defendants contend,

7   about the existence of cancellation mechanisms.  It's about

8   whether users understand and are actually doing that.

9            THE COURT:  I understand.  There are bits and pieces

10  in here.  Your answer states that the Defendant has

11  represented that it offers these cancellation methods.

12           MR. TEPFER:  And that's, you know, simply our efforts

13  to admit what we can, that they state that these exist.  You

14  know, but given the ambiguity of the "are able to" language --

15  and that's, you know, not us being difficult; that's a central

16  issue in this case, is whether users actually have any idea of

17  this -- you know, because of that ambiguity in the language,

18  we are unable to admit.

19      If these were, you know, plainly worded RFAs asking, you

20  know, is there, you know, a fax number on the website, well,

21  that's, you know, that's a different question that may be more

22  easily responded to.  But --

23           THE COURT:  They are plainly worded.  They are

24  plainly worded.

25           MR. TEPFER:  Well, Your Honor, I believe the

1    Defendants telegraph exactly how they intend to misuse this in

2    their own joint submission, where they said -- they refer to

3    the existence, but really what they're asking is, are

4    consumers able to?  And the answer, I believe, is -- is not.

5        Plus, add to many of these reference "at all relevant

6    times."

7        And, of course, you know, the fact that Defendants state

8    that, you know, there's a fax number now doesn't mean for the

9    entire, you know, seven or eight-year period it has existed.

10   We, you know, we don't have information to know either way on

11   that.

12           THE COURT:  I'm granting the motion as to these

13   requests.

14       Yes, you have partially admitted.  You've got a lot of

15   objections in here.  Some of these, you're not arguing them

16   here, but some of them are clearly improper.  Information is

17   in Match's possession, custody, or control.  You've gone into

18   cutting of customer service hours.  You've gone into -- you've

19   gone into a lot here.

20       I get it.  They're trying to get you to admit that their

21   system works.  You adequately describe in here why you can't

22   admit or deny.  But if I look at the substance of your

23   answers, it's hard to tell that.  So I think they're entitled

24   to better answers that clarify what you admit, what you deny,

25   and what you can't admit or deny and why.

1          MR. TEPFER:  And so it's -- our response needs to be

2     more plainly worded as to what we are admitting or denying?

3     Is that the ruling?

4          THE COURT:  The ruling is that these are awfully

5     confusing answers.

6          MR. TEPFER:  Yes, Your Honor.  I apologize.

7          THE COURT:  Your point is well taken about the "are"

8     and "were," but you've got some admission in here and a whole

9     bunch of objections that make it very hard to determine what

10    specifically you're admitting and what you're denying and the

11    whys.

12         MR. TEPFER:  Yes, Your Honor.

13         THE COURT:  So I'm ordering new responses on these.

14       All right.  Section 5.  Or Issue No. 5.  I've got

15    inconsistent answers within the same -- statements within the

16    same answer.  For example, on Page 42, you can't independently

17    assess the truth or falsity, but you deny.  Is it a denial or

18    is it a can't-admit-or-deny?  Because it sounds like you've

19    got both in here.

20         MR. TEPFER:  Well, Your Honor, I apologize for the

21    ambiguity of that.  These are intended to be denials.  The --

22    you know, I will note that these were difficult for us to

23    respond to because they concern, you know, evidence that was

24    at that time being withheld by MGI and was the basis of last

25    week's motion to compel.  So that is --

1          THE COURT:  Telling me why they've been bad, why you

2    think they've been bad, is not helping me --

3          MR. TEPFER:  Yes, Your Honor.

4          THE COURT:  -- get your answer to the question I've

5    asked.

6          MR. TEPFER:  Yes, Your Honor.  But just to be clear,

7    these, you know, we -- we denied that the practice has been

8    ceased, as we understand the word ceased to mean a permanent

9    discontinuation, as opposed to a suspension.  And so, on that

10   -- based on that understanding, we believe -- we believe it's

11   appropriate to deny.

12         THE COURT:  I'm not telling you whether to deny or

13   admit or neither.  I'm saying I can't tell from reading your

14   answer to these interrogatories, I mean, to these requests for

15   admissions which one you did, because you used both phrases.

16   You say you can't independently assess the truth or falsity

17   and you deny.  So I can't tell which one of those three

18   categories this is.  You say it at the very end, but it's

19   subject to the objections above where you say you can't

20   independently assess.  You spend a lot of time talking about

21   how you can't independently verify information, --

22         MR. TEPFER:  Well, --

23         THE COURT:  -- which makes it sound like you're not

24   admitting or denying.  But then you're saying that you're

25   denying.

1          MR. TEPFER:  Your Honor, we -- we simply, you know,

2  we -- I believe we clarified that we're denying.  We are

3  simply, you know, as -- simply intending to note the issue

4  with assessing Defendants' representations because evidence

5  was being withheld.

6      But, you know, I believe we are very clear, you know, in

7  -- in our denial.  It, you know, probably could have been more

8  artfully phrased in pointing out the issue.  But I, you know,

9  I believe the response is unambiguous and that we were

10 denying.

11         THE COURT:  It's not unambiguous, --

12         MR. TEPFER:  Yes, Your Honor.

13         THE COURT:  -- is what I'm saying.  It's not a simple

14 denial.  There is a whole lot of explaining why you can't

15 verify, which makes it sound like you're saying that you can't

16 admit or deny.  You cap off with a denial, but all -- it's not

17 a simple denial.  That's what I'm saying.  It's not clear,

18 unambiguous, or simple at all.  From the reader's perspective.

19         MR. TEPFER:  Yes, Your Honor.

20         THE COURT:  So I'm granting as to Section -- or,

21 Issue No. 5.

22     All right.  7 and 8, it looks like I'm not ruling on any

23 objections, I'm looking at whether the responses were

24 sufficient.

25         MR. TEPFER:  On -- Your Honor, I believe on --

1          THE COURT:  I'm sorry.  Sections -- Disputes 6 and 7.

2     It's Interrogatory 1 and Interrogatory 7.  The FTC's bases for

3     believing that violations were occurring or about to occur and

4     that MGI owns, operates, or controls Match.com.

5          MR. TEPFER:  Your Honor -- (sotto voce) did we

6     already address this?

7          MR. AIJAZ:  No.

8          MR. TEPFER:  Your Honor, I believe we may have

9     skipped an issue.  On, Your Honor, RFA 7 and 8, I apologize if

10    I misunderstood, but I wasn't sure if we got a ruling on -- on

11    Page 53.

12         THE COURT:  I -- you did get a ruling.

13         MR. TEPFER:  Okay.  I apologize.

14         THE COURT:  To the extent that I didn't make it

15    clear, I said Section 5, or Section 5, Issue No. 5.  It has

16    two subsets.  But --

17         MR. TEPFER:  I understand now.

18         THE COURT:  Yeah.  And my order will make it clear.

19    I'm granting -- I am granting the motion as to Disputed Issues

20    3, 4, and 5, all of the requests that are encompassed within

21    those disputes.

22       All right.  So, Number -- Issues No. 6 and 7.  Am I ruling

23    on the sufficiency of the answer or am I determining specific

24    objections?

25         MR. TEPFER:  Your Honor, I believe this is just on

1   the basis of the sufficiency of our response.

2           THE COURT:  Okay.

3           MR. TEPFER:  The only -- you know, I'm not sure that

4   this is a major issue.  We simply note in our response that

5   the Defendants appear to confuse the legal standard, but that

6   is not -- our response is, I believe, sufficient regardless,

7   and we stand on that.

8           THE COURT:  And my understanding of their argument is

9   that they're saying the exact same thing about you, your

10  answer.

11      Your citation to Judge Horan's observation that the

12  pleading standard is not the same as discovery obligations,

13  and we do spend time in here talking about the pleading

14  standard and what was found in the motion to dismiss, which is

15  merely a finding regarding the sufficiency of the allegations.

16      But if I look at this, Mr. Hummel, the answers do go well

17  beyond that.  They're not resting on that.  There are

18  identification of specific documents.  There is an answer --

19  let's see.  Let me pull up the other one.  If I'm looking at

20  the answer to Interrogatory No. 1, you get past the objections

21  and the citation to the finding in the motion to dismiss, at

22  the top of Page 58 they contend there's no evidence that the

23  cancellation practices have changed.  They're contending that

24  past conduct can indicate that there's a reasonable likelihood

25  of further violations.  They're talking about the lack of

1   "sincere assurances against future violations."  It's

2   contending that Match knew its problems were longstanding.

3   It's citing documents.  It's citing why it believes this

4   illustrates "the egregiousness of Match's practices" at the

5   top of Page 59.

6        It looks like they've answered the question.  Tell me why

7   this answer isn't sufficient.

8              MR. HUMMEL:  The answer is sufficient, Your Honor,

9   for us to -- I think it meets the interrogatory response.  I

10  will submit it's more argument than facts and evidence, which

11  is what this is looking for.

12       We understand their position.  So here's what this

13  interrogatory is after, though.  They can't make these

14  objections and then provide this answer.  So the (a) the

15  objection should be overruled.  Again, I come back to this

16  part:  No part of this response should be interpreted or

17  construed as a limit on the materials or argument the FTC will

18  present at trial.

19       That doesn't fly.  Under the Federal Rules or any

20  appropriate objection, that should be stricken.

21       Now, what this is after, though, Your Honor, is, again,

22  we're talking about the guarantee and the chargeback, not the

23  cancellation flow.  And the answer with respect to the

24  cancellation flow, in part, that's not disputed we're still

25  doing that.  The guarantee and the chargeback, by their own

1    complaint, ceased in mid-2019.  All right?  By -- and that is

2    Docket No. 116, Count Three, Paragraph 39; Count Four,

3    Paragraph 62.  They have judicially admitted these have

4    ceased.  All right?

5        So then our question is, what evidence do you have that

6    they're about to violate -- that Match is about to violate the

7    law?  If they have a witness that has come forward and said,

8    ah, there's a secret plan, if they have a document that says,

9    oh, there's a plan, we're entitled to that.  But they haven't

10   given it.  And as long as Your Honor is saying this is a

11   sufficient answer, fine.  But they now can't come to trial and

12   say there's a witness, there's a document that we knew about,

13   there is some secret plan that we know about.  We've asked

14   them.  And they -- this is -- if they stand on this, it's

15   legal argument, we'll deal with it down the road.

16           THE COURT:  I think Rule 37 is pretty clear.  You

17   don't get a surprise at trial.

18           MR. HUMMEL:  Right.

19           THE COURT:  If you didn't turn it over in discovery,

20   you don't get to use it.  I --

21           MR. HUMMEL:  That's it.

22           THE COURT:  It sounds like the issue is more with the

23   correctness of their answer or the -- you disagree with the

24   answer.  But they've answered it.  Whether it's a good answer

25   or bad answer, that's not the issue here, is did they answer

1    it?  And if this is their -- and it looks like a fairly

2    extensive answer.

3              MR. HUMMEL:  Oh, it's -- if that's their answer,

4    we've got it.

5              THE COURT:  Okay.

6              MR. HUMMEL:  Rule 37 is very clear and there will be

7    -- they should anticipate on the record a motion *in limine* on

8    anything else.

9              THE COURT:  Okay.  Of course, they do have the

10   obligation, ongoing obligation to supplement --

11             MR. HUMMEL:  Correct.

12             THE COURT:  -- based on discovery as it develops.

13   But --

14             MR. HUMMEL:  Exactly.

15             THE COURT:  -- it looks like you got an answer.  So,

16   --

17             MR. HUMMEL:  Right.  And for summary judgment

18   purposes, too.  Of course.  That's the issue.

19             THE COURT:  This is -- this is the answer.  They're

20   saying it's sufficient.  I'm looking at, did they answer the

21   question?  They answered the question.

22             MR. HUMMEL:  Thank you, Your Honor.

23             THE COURT:  So I'm denying the motion to compel.  I

24   am overruling the objections, since there's no -- since you're

25   standing on the sufficiency of the answer, you've answered

1    subject to those objections, but --

2              MR. TEPFER:  Well, --

3              THE COURT:  -- there's no argument here on any

4    objections, so I'm overruling them, like I did with the first

5    one.

6              MR. TEPFER:  The only thing I'd like to note is that

7    the Defendant argues today about the objections, but that's

8    not -- it was not an issue raised in their section.

9         And I just want to note, you know, I certainly understand

10   about, you know, we can't -- we're not able to surprise

11   Defendants.  But, you know, some of -- we cited the evidence

12   that we have to the absolute best of our ability.  Some of

13   this evidence is still in Defendants' possession and going to

14   be turned over, and we have a, you know, duty to supplement.

15   But that's, you know, that may be forthcoming once we receive

16   that production.

17             THE COURT:  Okay.  But remember the discussion we had

18   at the beginning about who's got the burden on objections.  If

19   you're not telling me I need to rule on these objections and

20   sustain your objections, and it looks like you went ahead and

21   answered despite any objections, --

22             MR. TEPFER:  Yes, Your Honor.

23             THE COURT:  -- so I'm over -- there's nothing here

24   for me to make any finding on any objection in the FTC's

25   favor.  So I'm overruling the objections.  You've answered.

1    We're looking at the sufficiency of the answer.

2              MR. TEPFER:  Yes, Your Honor.

3              THE COURT:  All right.  All right.  So, I've granted

4    in part and denied in part.  My order will be specific as to

5    the specific requests.

6         But with regard to Issue 1, interrogatory has two parts.

7    I've denied as to the first part, on the flaws.  I've granted

8    as to the second part, on the fixes.

9         On Requests for Admissions 40 through 43, I've granted.

10        Disputed Issue 2, Requests for Admissions 33 through 38,

11   I've granted.

12        Requests for Production 5 through 6, I've denied.

13        Disputed Issues 3, 4, and 5, I've granted.

14        And then Disputed Issues 6 and 7, I have denied.

15        Did I miss anything?

16             MR. TEPFER:  I don't believe so, Your Honor.

17             THE COURT:  Mr. Hummel?

18             MR. HUMMEL:  I'm sorry.

19             THE COURT:  Did I miss any issues?

20             MR. HUMMEL:  No, Your Honor.  Just on the last one, I

21   take it your ruling on the last section applied to both

22   interrogatory responses.

23             THE COURT:  I'm sorry.

24             MR. HUMMEL:  Overruling objections and -- and

25   standing on the answer.

1           THE COURT:  That's -- I am -- I overrule the

2    objections but I'm denying the motion to compel.

3           MR. HUMMEL:  Understood.

4           THE COURT:  All right.

5           MR. HUMMEL:  Thank you, Your Honor.

6           THE COURT:  So, for future discovery requests, I need

7    to know specifically what objections I'm ruling on and the

8    parties' objections.  The whole joint submission process is

9    not to give you homework or make you go away.  It is for you

10   to at least agree on what the issue is that I need to resolve,

11   what objections I'm ruling on, what your specific arguments

12   are, so that we can get through this more quickly.  That's

13   all.

14          MR. HUMMEL:  Understood, Your Honor.

15          THE COURT:  It's just an organization of the issues

16   so we can cover them faster and I can understand what they

17   are.  And sometimes during the process parties understand how

18   really there's not a dispute if there aren't documents that

19   are being withheld, so that's not an issue that we have to

20   cover.  That's all.

21          MR. TEPFER:  Thank you, Your Honor.

22          MR. HUMMEL:  Understood.

23          THE COURT:  All right.

24          MR. HUMMEL:  Thank you.

25          THE COURT:  Good luck to both sides.  We are

1  adjourned.

2           MR. HUMMEL:  Thank you, your honor.

3           MS. ZAMBRANO:  Thank you, Your Honor.

4           THE CLERK:  All rise.

5       (Proceedings concluded at 11:09 a.m.)

6                          --oOo--

7

8

9

10

11

12

13

14

15

16

17

18

19

20                      CERTIFICATE

21      I certify that the foregoing is a correct transcript from
   the electronic sound recording of the proceedings in the
22  above-entitled matter.

23  **/s/ Kathy Rehling**                    **11/16/2022**

24  _____     _____
   Kathy Rehling, CETD-444                    Date
25  Certified Electronic Court Transcriber

79

INDEX

PROCEEDINGS                                                          3

WITNESSES

-none-

EXHIBITS

-none-

RULINGS

Match Group, Inc.'s Motion to Compel Discovery Responses
and Production of Documents from Federal Trade Commission
(#133) - 12/28/30/39/52/54/61/63/64/66/69/70/74/76

END OF PROCEEDINGS                                                   78

INDEX                                                                79