**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>              Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>              Defendants. | Case No. 3:19-cv-02281-K |

**PLAINTIFF FEDERAL TRADE COMMISSION'S APPENDIX IN SUPPORT OF PLAINTIFF FEDERAL TRADE COMMISSION'S REPONSE TO DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S ORDER**

Plaintiff Federal Trade Commission ("FTC") submits this Appendix in support of the FTC's Response to Defendants' Objection to the Magistrate Judge's Order.

| Ex. | Description | App. Page(s) |
|---|---|---|
| 1. | Excerpt of Transcript for 30(b)(6) Deposition of FTC (Oct. 24, 2022) | APP 001-011 |
| 2. | Email from Chad Hummel, Sidley Austin, to FTC counsel (Sept. 15, 2022) | APP 012-015 |
| 3. | FTC's Draft Stipulated Order for Settlement, as proposed to Defendants. (May 4, 2022) | APP 016-031 |

Dated: December 6, 2022              Respectfully submitted,

                                            */s/  Reid Tepfer*
                                            M. Hasan Aijaz
                                            Reid Tepfer
                                            Erica Rollins Hilliard
                                            Sarah Zuckerman (admitted *pro hac vice*)
                                          John R. O'Gorman (admitted *pro hac vice*)
                                          Virginia Bar No. 80073 (Aijaz)
                                          Texas Bar No. 24079444 (Tepfer)

Mississippi Bar No. 104244 (Hilliard)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9386 (Aijaz)
T: (214) 979-9395 (Tepfer)
T: (214) 979-9379 (Hilliard)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
F: (214) 953-3079
maijaz@ftc.gov;
rtepfer@ftc.gov;
ehilliard@ftc.gov
szuckerman@ftc.gov;
jogorman@ftc.gov

*Attorneys for the FTC*

# EXHIBIT 1

```
 1                    UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF TEXAS

 2                         DALLAS DIVISION

 3

 4    FEDERAL TRADE COMMISSION,        :  Civil Action

 5            Plaintiff,               :  Case No. 3:19-cv-02281-K

 6        vs.                          :

 7    MATCH GROUP, INC., a corporation, :

      MATCH GROUP, LLC, formerly

 8    MATCH.COM, LLC, a Limited        :

      Liability Company,

 9                                     :

              Defendant.

10    _____/

11

12            Deposition of BIKRAM BANDY, taken on behalf of

13    Defendant, by Chad Hummel, of Sidley Austin, LLP, at 1501 K

14    Street, NW, Washington, D.C., commencing at 10:09 a.m., on

15    October 24, 2022, before Linda C. Marshall, RPR.

16

17    APPEARANCES:

18    FOR THE PLAINTIFF:    M. HASAN AIJAZ, Esquire

                            Federal Trade Commission

19

20

      FOR THE DEFENDANT:    CHAD HUMMEL, Esquire

21                          Sidley Austin, LLP

22

23

24

25

                                                  Page 1
```

**APP 002**

1      as implemented is described?

2      A     I don't think I've reviewed that.

3      Q     Okay.  Would you agree that if Match does notify the

4      consumer regarding the chargeback that there is no basis to

5      claim that Match is about to violate with respect to the

6      chargeback issue?

7                  MR. AIJAZ:  Objection, calls for speculation.

8                  THE WITNESS:  No.

9      BY MR. HUMMEL:

10     Q     Why?

11     A     Because -- several reasons.  Whether, given, whether the

12     conduct can be enjoyed depends on whether there's a likelihood

13     of recurrence.  There are lots of factors here to indicate that

14     just because the conduct is stopped that there is still a

15     likelihood of recurrence.

16     Q     Okay.  I'll take the bait.  Describe those factors, please.

17     A     Likelihood of recurrence?  Well, they're set forth in the

18     Fifth Circuit in the FCC versus Black case.  There is -- what

19     are the FCC Black factors?  There is --

20     Q     I'm not asking for what the legal test is.

21     A     Okay.

22     Q     What I'm asking is, what is the evidence on which the FTC

23     relies that indicates that Match Group, LLC with respect to

24     Match.com is about to reinstitute the guarantee or prior

25     chargeback policy?

Page 82

1    A     I view the term as likely to recur, okay?  Because that is

2    what the law in Fifth Circuit is, okay?  What is the evidence

3    that there's a likelihood of recurrence over that conduct?

4    Well, it went on for years -- wait, first of all, are we talking

5    about chargeback or guarantee?

6    Q     Either one.

7    A     Okay.  Well, let's start with the guarantee.  The guarantee

8    went on for years.  Match knew of significant problems.  Match

9    employees knew that there were significant problems with the

10   guarantee.  They knew that, like, two percent of people who were

11   eligible for the guarantee were able to redeem it.  They

12   received complaints about it.  Yet, they continued with the

13   guarantee.

14        Then the FTC investigation begins where the FTC is noting

15   that there are problems with the guarantee.  And yet they

16   continued to offer the guarantee and it was only on the eve of

17   litigation imminent that Match stopped.  So, it doesn't make it

18   seem like it was a voluntary cessation of the conduct, but that

19   they were doing it for litigation purposes and because they were

20   under FTC investigation.  When the litigation is over and the

21   FTC investigation is done, there is more reason to think that

22   Match could, in fact, reinstate that policy.

23        Moreover, the verified stipulation is egregiously narrow in

24   that it says, we promise we won't do the guarantee, as stated in

25   Count Three.  But they could change any small detail about the

1      guarantee and that's not the guarantee that is in Count Three of

2      the complaint.  It could be a five-month guarantee or you may

3      only have to show contacts with four people.  Any of those

4      details makes it different from the guarantee in Count Three and

5      therefore would be outside the scope of the verified stipulation

6      and all the promises that Match has made that it's not going to

7      reinstate that.

8      Q    Can I interrupt you for one second?

9      A    I'm done.

10     Q    You were talking about the guarantee.  What would the

11     injunction say, relating to the guarantee, that the FTC wants

12     with respect to Match.com?  Don't do a guarantee?

13     A    No, it's in that proposed order.

14     Q    So, Match could still do a guarantee but disclose better

15     without having to learn more about it first?

16     A    It would have to be not deceptive.

17     Q    Right.  And the only evidence of deception or the

18     allegation of deception is inadequate disclosure, not deception,

19     right?  The allegation in the complaint is inadequate disclosure

20     based on a hyperlink.

21             MR. AIJAZ:  Objection.

22             THE WITNESS:  No, it's deception.

23     BY MR. HUMMEL:

24     Q    Okay.  We can differ on that.  Regardless, if the FTC were

25     to say to the court, we want an injunction that prohibits Match

                                                          Page 84

1    from offering that guarantee, the guarantee that's alleged in

2    the complaint, what more could you get in court?  What more

3    would you ask for?

4    A    We would want an injunction that, among other things, would

5    say that if you're going to make a guarantee that you cannot

6    make material misrepresentations or omissions as to the terms of

7    how that guarantee works.

8    Q    All right.  And if Match were to say, fine, what else would

9    you want?

10          MR. AIJAZ:  Objection, calls for speculation.

11          THE WITNESS:  What we're seeking is in that order.

12   So, you can look at the order and that's what -- that's the

13   FTC's view on what would be sufficient injunctive relief to deal

14   with the guarantee.

15   BY MR. HUMMEL:

16   Q    So -- and again, you say to that, and it's in the order?

17   A    Our position on what injunctive relief would be appropriate

18   to deal with that is set forth in the proposed order that was

19   presented at mediation.

20   Q    So, a filed sworn statement in court that Match will never

21   reinstitute the guarantee as alleged in the complaint is not

22   sufficient?

23   A    No.

24   Q    Okay.  I think it took a little time, but you won't take

25   yes for an answer.

```
 1          Okay.  Now, let's talk about the chargeback policy.  If

 2     Match doesn't cancel a subscriber's account during the pendency

 3     of a chargeback dispute and merely makes the -- merely disables

 4     the user's account log-in, what's wrong with that?

 5     A    I don't, I don't understand what you're saying.  I don't

 6     understand your explanation of what the chargeback policy is.

 7     Okay, you're saying that they don't -- disable the log-in?  I

 8     don't understand.

 9     Q    You don't terminate the account.  We disable the log-in

10     during the pendency of the dispute.

11     A    So, what does that mean?

12     Q    What's wrong with that?

13     A    I don't understand how it works.

14     Q    Well, what I'm trying to understand is what you're trying

15     to enjoin.  In other words, what is Match supposed to do, in the

16     FTC's view, when a consumer initiates a chargeback dispute?

17     They're saying, I shouldn't pay for this, I don't want it,

18     right?  It's a mistake on my credit card.  Give me the money

19     back.  What is Match supposed to do?

20          MR. AIJAZ:  Objection, outside the scope of the notice

21     and assumes facts not in evidence.  There's no foundation for

22     this.

23          MR. HUMMEL:  That's fine.  Do you want him not to

24     answer or to answer?

25          MR. AIJAZ:  Go ahead and answer.
```

Veritext Legal Solutions
800-336-4000

**APP 007**

1                THE WITNESS:  I'm not following what you're saying is

2       the policy, so it's hard for me to answer the question.  So,

3       what do you mean by disable the log-in?  So --

4       BY MR. HUMMEL:

5       Q    I'm asking a different question.  A consumer initiates a

6       chargeback dispute with the credit card company.  Do you

7       understand how that works?

8       A    Yes.

9       Q    Okay.  What is Match supposed to do, in the FTC's view,

10      that doesn't run afoul of the FTC Act?

11               MR. AIJAZ:  Objection, outside the scope of the

12      notice.

13               THE WITNESS:  It is outside the scope of the notice,

14      but I'll try to answer as best I can.  I did not delve deeply

15      into Counts Three and Four because they were only

16      tangentially -- I only did it with -- in terms of scope of topic

17      three.  So, I'm going a little bit outside my preparation here.

18      But to answer your question or attempt to answer your question,

19      if a consumer issued the chargeback, I think that the proposed

20      order said it's fine to disable log-in because they've initiated

21      the chargeback.

22          But if they -- if Match prevails in the chargeback, that

23      means they keep the money, that they should -- the consumer

24      should be able to get access to their account for whatever

25      period of time is remaining on the subscription because they

```
 1      paid for it.  They -- Match has the money for that, so they

 2      should get what they paid for.  And that needs to be

 3      communicated to consumers so that they're not -- they know that

 4      they can go back and use it because they lost their chargeback.

 5              MR. HUMMEL:  All right.  Let's look at tab nine,

 6      Taylor.  It'll be Exhibit 4.

 7          (Deposition Exhibit No. 4, marked for identification.)

 8              MR. HUMMEL:  Exhibit 4.

 9              MR. AIJAZ:  Thank you.

10              MR. HUMMEL:  Yeah.

11   BY MR. HUMMEL:

12   Q    Exhibit 4 are the FTC's responses to defendant's first set

13      of interrogatories and they were served by the FTC on August

14      8th, 2022.  Two and a half months ago, all right?  In these

15      interrogatory responses and these were signed, by the way, by

16      counsel for the FTC on August 8th, 2022.  If you could look,

17      please, at the interrogatory number three, page six and seven.

18   A    Okay.

19   Q    So, interrogatory number three says, identify and describe

20      the harm to consumers that you contend resulted from the alleged

21      lack of a simple online cancelation method, including how the

22      damages caused by that harm were calculated, the number of users

23      that you believe were unable to cancel their subscription as a

24      result of the alleged lack of simple cancelation method and the

25      amount of harm damages, period.  Do you see that?
```

Page 88

1    A    You didn't read it exactly correctly, but, yeah, I see it.

2    Q    Now, if you look then at the response on page seven

3    starting with the subject to and without waiving the foregoing

4    objections, the FTC responded that consumers were harmed by,

5    among other things, being billed for unwanted recurring

6    subscriptions, cost imposed on consumers by time spent

7    rectifying failed cancelation attempts and by failing to receive

8    refunds when being billed after they thought they had been

9    canceled.  Do you see that?

10   A    Yeah, again, you didn't read it correctly, but I see the

11   sentence.

12   Q    The following sentence reads, the number of consumers

13   harmed by Match's ROSCA violation is approximately 64,000.  Can

14   you tell me how that 64,000 was derived?

15         MR. AIJAZ:  Objection, outside the scope and not

16   relevant.

17         THE WITNESS:  Yeah, so, first thing is that this

18   interrogatory response is the first original.  It has been

19   subsequently amended, so this is not our current response to

20   this interrogatory.

21   BY MR. HUMMEL:

22   Q    Okay.  What's the second thing?

23   A    I think that's it.

24   Q    There was only one?

25   A    Yeah.

Page 89

1                    CERTIFICATE OF COURT REPORTER

2          I, Linda C. Marshall, certify that the foregoing is a

3     correct transcript from the record of proceedings in the

4     above-entitled matter.

5

6

7

8                    Linda C. Marshall, RPR

                     Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page  122

# EXHIBIT 2

| | |
|---|---|
| **From:** | Hummel, Chad S. |
| **To:** | Tepfer, Reid A.; Zambrano, Angela |
| **Cc:** | Priest, Chelsea A.; Bragg, Tayler G.; Aijaz, Hasan; Hilliard, Erica; Moon, Jason C; O'Gorman, John; Zuckerman, Sarah |
| **Subject:** | RE: FTC v. Match: Stipulation |
| **Date:** | Thursday, September 15, 2022 10:57:43 AM |

Reid:

To be clear, this was not a settlement offer.  You have no evidentiary basis whatsoever to claim that the conduct charged in Counts III and IV is continuing.  It is not continuing, and the FTC has not identified any evidence to the contrary – notwithstanding your claim below to the contrary.  Indeed, the charged conduct was permanently discontinued on the dates the FTC has identified in its Complaint.  The FTC has Rule 11 obligations with which we expect your office to comply.  If it does not, Match will avail itself of any and all available remedies.

**CHAD S. HUMMEL**

**SIDLEY AUSTIN LLP**
+1 310 595 9505
chummel@sidley.com

---

> **From:** Tepfer, Reid A. <rtepfer@ftc.gov>
> **Sent:** Thursday, September 15, 2022 8:50 AM
> **To:** Hummel, Chad S. <chummel@sidley.com>; Zambrano, Angela <angela.zambrano@sidley.com>
> **Cc:** Priest, Chelsea A. <cpriest@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
> **Subject:** RE: FTC v. Match: Stipulation
>
> Chad,
>
> We will not be withdrawing our discovery requests concerning Counts III and IV.
>
> To the extent you are seeking to resolve the case as to Counts III and IV, we would be happy to narrow the issues. The stipulation you have drafted is not an appropriate vehicle to do so, however. This stipulation does little more than deny facts that we believe to be true based on evidence. For example, as to Count IV, Match.com's public terms and conditions suggests that, far from being "permanently discontinued," the illegal conduct may actually be ongoing even now. Moreover, although the document describes itself as a "binding and sincere commitment," it is not an enforceable injunction.
>
> However, we would be willing to recommend an order resolving counts III and IV. The order would need to have the injunctive relief relating to Counts III and IV as provided in the proposed stipulated order we previously provided you. This would allow us to limit the case to Count V and resolve our discovery dispute on this issue.

**APP 013**

Please let me know if you are amenable to the above proposed resolution and we can discuss further.

Thanks,
Reid

Reid Tepfer
Federal Trade Commission
(202) 677-9483

---

**From:** Hummel, Chad S. <chummel@sidley.com>
**Sent:** Wednesday, September 14, 2022 3:38 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>; Zambrano, Angela <angela.zambrano@sidley.com>
**Cc:** Priest, Chelsea A. <cpriest@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** FTC v. Match: Stipulation

Counsel:
Attached is a stipulation which will have a sworn attestation from defendants confirming that the conduct at issue in Counts III and IV of the Amended Complaint has been permanently discontinued. The confirmation provided by this stipulation precisely tracks what the FTC has sought by way of injunctive relief in this case on those counts and is more than what it could achieve at trial.   The Stipulation further confirms that there is no reasonable argument that any further litigation on these issues should proceed.  Our client will file the stipulation in connection with its opposition to the FTC's pending motion to compel.  In light of this, we expect that the FTC will drop its arguments in that Motion relating to Counts III and IV.
**CHAD S. HUMMEL**

**SIDLEY AUSTIN LLP**
+1 310 595 9505
chummel@sidley.com

*******************************************************************
***************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

*******************************************************************

******************************

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

FEDERAL TRADE COMMISSION,

      Plaintiff,

      v.

MATCH GROUP, INC., a corporation,

      Defendant.

**Case No. 3:19-cv-02281-K**

**STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY RELIEF, CIVIL PENALTIES, AND OTHER RELIEF**

Plaintiff, the Federal Trade Commission ("FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§  53(b), 57b and Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404. The Commission and Defendant stipulate to the entry of this Stipulated Order for Permanent Injunction, Monetary Relief, Civil Penalties, and Other Relief ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS ORDERED** as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendant participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and Section 4 of ROSCA, 15 U.S.C. § 8403, in connection with Defendant's marketing and sale of online dating services.

**APP 017**

3.      Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.      Defendant waives any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5.      Defendant waives all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.  "**Billing Information**" means any data that enables any person to access a customer's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

B.  "**Charge**," "**Charged**," or "**Charging**" means any attempt to collect money or other consideration from a consumer, including but not limited to causing Billing Information to be submitted for payment, including against the consumer's credit card, debit card, bank account, telephone bill, or other account.

C.  "**Clear(ly) and Conspicuous(ly)**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.  In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible

2

means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5. The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

D. **"Defendant"** means Match Group, Inc. and its successors and assigns.

E.  "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take an affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer or agreement.

F.   "**Person**" or "**Persons**" means any natural person, organization, or other entity, including, but not limited to, a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

## <u>ORDER</u>

## I. PROHIBITION AGAINST MISREPRESENTATIONS

**IT IS ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, in connection with the advertising, marketing, promoting, offering for sale, or selling of any online dating services:

A.   Any material restrictions, limitations, or conditions to purchase, receive, or use the online dating services, or to receive any discount, "guarantee," or special offer;

B.   Any cost to the consumer to purchase, receive, use, or return the initial good or service;

C.   That the consumer will not be Charged for any good or service;

4

D.      That a good or service is offered on a "guarantee," "free," "trial," "sample," "bonus," "gift," "no obligation," "discounted" basis, or words of similar import, denoting or implying the absence of an obligation on the part of the recipient of the offer to affirmatively act in order to avoid Charges, including where a Charge will be assessed pursuant to the offer unless the consumer takes affirmative steps to prevent or stop such a Charge;

E.      That the consumer can obtain a good or service for a processing, service, shipping, handling, or administrative fee with no further obligation;

F.      The purpose(s) for which the consumer's Billing Information will be used;

G.      The date by which the consumer will incur any obligation or be Charged unless the consumer takes an affirmative action on a Negative Option Feature;

H.      That a transaction has been authorized by the consumer;

I.      Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the good or service;

J.      Any other material fact; and

K.      In connection with promoting or offering for sale any good or service with a Negative Option Feature, any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the good or service. Compliance with this Section is separate from, and in addition to, the disclosures required in Sections II and III, *infra*.

## II. REQUIRED DISCLOSURES

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who

5

**APP 021**

receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any online dating services, are permanently restrained and enjoined from:

A.    Failing to Clearly and Conspicuously disclose that consumers registering for a six-month "guarantee" must, to the extent applicable, (a) secure and maintain a public profile with a primary photo approved by Defendant within the first seven days of purchase, (b) message five unique subscribers per month, and (c) use Defendant's progress page to redeem the free six months during the final week of the initial six-month subscription period;

B.    Failing to Clearly and Conspicuously disclose any material restrictions, limitations, or conditions to purchase, receive, or use the online dating services, or to receive any discount, "guarantee," or special offer; and

C.    In connection with promoting or offering for sale any. good or service with a Negative Option Feature obtaining Billing Information from a consumer, without first disclosing Clearly and Conspicuously, the simple cancellation mechanism to stop all recurring Charges, as required by Section III.

**III. SIMPLE MECHANISM TO CANCEL NEGATIVE OPTION FEATURE**

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from:

6

**APP 022**

A.  failing to provide a simple mechanism for the consumer to: (1) avoid being Charged, or Charged an increased amount, for a good or service and (2) immediately stop any recurring Charge.  Such mechanism must:

    a.  be easy to find;

    b.  be easy to use to stop such Charge;

    c.  not require the consumer to take any action that is objectively unnecessary to cancel

including using a Dark Pattern.  A "Dark Pattern" refers to a user interface that has the effect of impeding consumers' expression of preference, manipulating consumers into taking certain action or otherwise subverting consumers' choice;

B.  If any consumers entered into the agreement to purchase a good or service including a Negative Option Feature over the Internet or a mobile phone application, failing to provide the mechanism through the same website, email address or other application.

C.  If any consumers entered into the agreement to purchase a good or service including a Negative Option Feature through an oral offer or acceptance, failing to provide such mechanisms through the use of a telephone number and a postal address.

## IV. PROHIBITED BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any online dating service, are permanently restrained and enjoined from:

7

**APP 023**

A. Retaliating, threatening to take, or taking any adverse action against any consumer who files, or threatens to file, a billing dispute with their financial institutions or with any law enforcement or consumer protection agency by denying such consumers access to and use of paid-for goods or services; *provided, however*, that nothing herein shall be deemed to preclude Defendant from suspending a consumer's service during the pendency of a billing dispute or from suspending or terminating a consumer's service if a refund has been issued.

B. Violating the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-05, a copy of which is attached.

## V. JUDGMENT FOR MONETARY RELIEF

**IT IS FURTHER ORDERED** that:

A. Judgment in the amount of XX Million Dollars ($XX,000,000) is entered in favor of the Commission against Defendant, as monetary relief.

B. Defendant is ordered to pay to the Commission XX Million Dollars ($XX,000,000), which, as Defendant stipulates, its undersigned counsel holds in escrow for no purpose other than payment to the Commission. Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

## VI. JUDGMENT FOR CIVIL PENALTY

A. Judgment in the amount of XX Million Dollars ($XX,000,000) is entered in favor of the Commission against Defendant, as a civil penalty.

B.  Defendant is ordered to pay to the Commission XX Million Dollars ($XX,000,000), which, as Defendant stipulates, its undersigned counsel holds in escrow for no

APP 024

purpose other than payment to the Commission. Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

## VII. ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A. Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B. The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D. Defendant acknowledges that its Taxpayer Identification Numbers (Employer Identification Number), which Defendant must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E. All money received by the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is

wholly or partially impracticable or money remains after such redress is completed, the Commission may apply any remaining money for such related relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint. Any money not used for relief is to be deposited to the U.S. Treasury as an additional civil penalty.  Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VIII. CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Defendant must provide it, in the form prescribed by the Commission, within 14 days.

## IX. ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendant obtain acknowledgments of receipt of this Order:

A. Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 10 years after entry of this Order, Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter

10

**APP 026**

of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## X. COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant make timely submissions to the Commission:

A. One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury. Defendant must:

   1. Identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant;

   2. Identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

   3. Describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales;

   4. Describe in detail whether and how Defendant is in compliance with each Section of this Order; and

11

5.  Provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.  For 10 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following, Defendant must report any change in:

1.  Any designated point of contact; or

2.  The structure of Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.  Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within 14 days of its filing.

D.  Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.  Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600

**APP 028**

Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Match Group, Inc.

## XI. RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendant must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant, in connection with advertising, marketing, or promoting any online dating services, must create and retain the following records:

A.  accounting records showing the revenues from all goods or services sold;

B.  personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.  records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.  all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.  a copy of each unique advertisement or other marketing material featuring a negative option plan.

## XII. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendant's compliance with this Order:

A.  Within 14 days of receipt of a written request from a representative of the Commission, Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for

13

depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.   For matters concerning this Order, the Commission is authorized to communicate directly with Defendant. Defendant must permit representatives of the Commission to interview any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.   The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XIII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED**, this _____ day of _____, 20__.

_____

**[Remainder of Page Intentionally Left Blank]**

14

**APP 030**

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**


_____          Date: _____
REID TEPFER
M. HASAN AIJAZ
MATTHEW WILSHIRE
SARAH ZUCKERMAN (admitted *pro hac vice*)
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
California Bar No. 224328 (Wilshire)
New York Bar No. 5603832 (Zuckerman)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201

**FOR DEFENDANT:**

_____          Date: _____
[NAME]
as an officer of MATCH GROUP, INC.


_____          Date: _____
Chad S. Hummel
As counsel for MATCH GROUP, INC.

15

**APP 031**