# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>MATCH GROUP, INC., a corporation, and<br><br>MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>    Defendants. | Case No. 3:19-cv-02281-K<br><br>**Plaintiff Federal Trade Commission's Motion to Compel Production of Documents, Responses to Interrogatories, and Requests for Admission from Defendant Match Group, LLC and Responses to Interrogatories from Defendant Match Group, Inc.** |

**FTC's Motion to Compel**

## Table of Contents

I.    Introduction ................................................................................................................1
II.   Relevant Background ................................................................................................2
III.  Legal Standard ..........................................................................................................3
IV.   Argument ..................................................................................................................4
     A.  MGI may not withhold basic corporate information central to the FTC's case.
     B.  MGLLC's Blanket Refusal to Participate Further in Discovery Is Improper.
          1. The FTC's requests are relevant and proportional to the needs of this case.
          2. MGLLC's boilerplate objections about relevancy, proportionality, and burden should be overruled, as MGLLC has failed to attempt to make a detailed showing to support their objections.
          3. MGLLC's refusal to respond based on its so-called "stipulation" is improper and contrary to this Court's prior order.
          4. MGLLC's improper vagueness objections concern everyday words and do not excuse MGLLC from responding.
          5. MGLLC failed to cite documents by Bates number in contravention of the ESI Order.
V.    Conclusion .............................................................................................................14

**FTC's Motion to Compel**

## Table of Authorities

**Cases**

*Booth v. City of Dallas*, 312 F.R.D. 429 (N.D. Tex. 2015). .......................................................... 7
*Heller v. City of Dallas,* 303 F.R.D. 466 (N.D. Tex. 2014)........................................................... 17
*Hutcheson v. Dallas Cty.*, No. 3:17-cv-2021, 2019 U.S. Dist. LEXIS 74151 (N.D. Tex. May 2, 2019)............................................................................................................................................ 6
*Krawcyzk v. City of Dallas*, 2004 WL 614842 (N.D. Tex. Feb. 27, 2004).................................. 11
*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990). ................ 7
*Pub. Citizen v. Am. Elec. Power Co.*, 5:05-cv-39, 2006 U.S. Dist. LEXIS 116214 (E.D. Tex. Dec. 27, 2006) ........................................................................................................................ 8, 9
*Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250 (N.D. Tex. 2017)................................ 7
*SEC v. Brady*, 238 F.R.D. 429 (N.D. Tex. 2006) ........................................................................ 14
*SEC v. Sargent*, 229 F.3d 68 (1st Cir. 2000) ............................................................................... 15
*SEC v. Softpoint, Inc.*, 958 F. Supp. 846 (S.D.N.Y. 1997) .......................................................... 15
*United States v. Best Foods*, 524 U.S. 51, 55 (1998).................................................................. 8, 9
*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004). ............................................ 7

**Rules**

Fed. R. Civ. P. 26............................................................................................................................ 14
Fed. R. Civ. P. 26(b)(1). .................................................................................................................. 6
Fed. R. Civ. P. 37(a)(3). .................................................................................................................. 7
Fed. R. Civ. P. 37(a)(4). .................................................................................................................. 7

I. **Introduction**

The Federal Trade Commission ("FTC") seeks relief from this Court to address Match Group, Inc. ("MGI") and Match Group LLC's ("MGLLC") refusal to respond adequately to discovery or, in numerous instances, to even respond substantively at all.

The FTC seeks an order to compel responses to two categories of discovery regarding central issues in this case. First, the FTC seeks to compel responses to two interrogatories about "Match Group North America" ("MGNA") and related entities. MGI's representative at its deposition vaguely alluded to MGNA's existence and suggested it played a coordinating role between MGI and its subsidiaries, including MGLLC. However, when the FTC served interrogatories seeking basic information about MGNA and its role in the operation of Match.com, MGI provided incomplete and evasive responses that merely obfuscate.

Second, Defendant MGLLC has—once again—wholesale refused to respond substantively to numerous valid discovery requests.[1] The FTC served targeted discovery requests concerning key issues, including Match.com's "subscription status" link, which is relevant to the online cancellation flow at issue in Count V, Match.com's "Frequently Asked Questions" pages concerning the Match Guarantee in Count III, and advertisements concerning the Match Guarantee.[2] Defendants attempt to excuse their refusal to respond by lodging boilerplate objections and arguing that, in their view, the FTC has had enough discovery. Even more audaciously, Defendants have reasserted that their purported "verified stipulation" excuses them from discovery—even though this Court has already expressly overruled a nearly identical

---

[1] *See* Exh. 2 at Responses 1-16; Exh. 3 at Responses 165-166, 172-196, 206-208, 212-224, 229, and 232; Exh. 4 at Response 22 (g) through (j); Exh. 5 at Responses 23, 25, and 26.

[2] *See id.*

1

**FTC's Motion to Compel**

objection.³ In short, Defendants have once again unilaterally decided that they need not participate in discovery, a decision for the Court alone. Accordingly, the FTC respectfully moves for an order again compelling Defendants to drop their meritless boilerplate objections and respond in compliance with the Federal Rules.

## II. Relevant Background

The FTC served MGI with its Second Set of Interrogatories on March 22, 2023, to which Defendant MGI responded on April 21, 2023.⁴ As discussed below, MGI's responses were evasive and incomplete. The FTC made several unsuccessful attempts to resolve to address this issue without Court involvement, including through multiple letters narrowing the FTC's requests and explaining these requests' clear relevance.⁵ Defendants, however, refused to correct these deficient responses.

Separately, the FTC served Defendant MGLLC with its Fourth Requests for Production, Fourth Set of Interrogatories, and Third Set of RFAs on June 8. On June 21, The FTC served its Fifth Set of Interrogatories on Defendant MGLLC.⁶ MGLLC served objections to these requests

---

³ Defendants previously withheld all or nearly all evidence relating to Counts III and IV of the FTC's Amended Complaint. Defendants had claimed that their one-party "stipulation" rendered those counts moot and therefore excused them from discovery. *See* 149 at 2-15. Unsurprisingly, the Court rejected this frivolous argument. *See* Doc. 164 at 1 (compelling production); Doc. 184 (overruling Defendants' objection to the Magistrate Judge's order). Undeterred by the Magistrate and the Court's rulings, Defendants now present this same argument again, this time dressed up as a proportionality objection. However Defendants wish to characterize this argument, the basic principle from the Court's prior ruling remains unchanged: Defendants one-party "stipulation" does not excuse them from participating in discovery.

⁴ *See* Exh. 2.

⁵ *See* Exh. 6 (May 23, 2023 deficiency letter to counsel), Exh. 7 (July 11 deficiency letter to counsel), and Exh. 8 (July 21 meet-and-confer email to counsel).

⁶ The FTC notes that it misnumbered the set of interrogatories and the interrogatories themselves in Exh. 5. To avoid confusion, the FTC in this Motion references this set of requests and the related interrogatories by the corrected numbers used in Defendant's responses. Additionally, the

on July 10 and July 21, respectively. In these responses, Defendants refused to respond, claiming, in essence, that the FTC had already received sufficient discovery on these topics in MGLLC's opinion. The FTC also made several attempts to convince MGLLC to reconsider its refusal and respond substantively, including addressing these issues in the several of the communications referenced above. Despite this, Defendants have continued to refuse to respond substantively.

Given Defendants' deficient responses, the FTC has moved to compel concerning the requests as summarized in the chart below:

| Issue(s) | Discovery Requests |
|---|---|
| Incomplete and evasive responses | Exh. 1 at Responses 10 and 11. |
| Refusal to respond substantively | Exh. 2 at Responses 1-16; Exh. 3 at Responses 165-166, 172-196, 206-208, 212-224, 229, and 232; Exh. 4 at Response 22 (g) through (j); Exh. 5 at Responses 23, 25, and 26. |

### III.    Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery broadly, stating that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"[7] The Federal Rules "define[] what is relevant very broadly."[8] "Information within this scope of discovery need not be admissible in evidence to be discoverable."[9] "To be relevant under Rule 26(b)(1), a document or information need not, by

---

FTC notes that, due to this numbering issue, it inadvertently served two interrogatories beyond the federal rules' 25-interrogatory limit. After counsel brought this error to the FTC's attention, the FTC withdrew two interrogatories, resolving the issue. *See* Exh. 8 at 2.

[7] FED. R. CIV. P. 26(b)(1).

[8] *Hutcheson v. Dallas Cty.*, No. 3:17-cv-2021, 2019 U.S. Dist. LEXIS 74151, *9 (N.D. Tex. May 2, 2019) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470-71 (N.D. Tex. 2005)).

[9] FED. R. CIV. P. 26(b)(1); *accord Booth v. City of Dallas*, 312 F.R.D. 427, 429 (N.D. Tex. 2015).

itself, prove or disprove a claim or defense or have strong probative force or value."[10] The party resisting discovery has the burden to justify its objections.[11] That party must do so with specificity, showing for each discovery request how it is not relevant or why it is otherwise objectionable.[12]

A party seeking discovery can move to compel disclosure when the opposing party fails to answer an interrogatory, fails to produce requested documents or make them available for inspection, or fails to comply with a disclosure required by the Federal Rules.[13] Additionally, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."[14]

In the context of Requests for Admission, unless the Court finds a party's objections justified, it must order that the party respond to the requests for admissions.[15] On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.[16]

IV. **Argument**

    A. **MGI may not withhold basic corporate information central to the FTC's case.**

---

[10] *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017).

[11] *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

[12] *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

[13] FED. R. CIV. P. 37(a)(3).

[14] FED. R. CIV. P. 37(a)(4).

[15] *Id.*

[16] *Id.*

Defendant MGI inadequately responded to interrogatories concerning its relationship with MGNA, "Match Group United States," ("MGUS") and "Match Group America" ("MGA"), despite the requests' clear relevance to the issues in this litigation and Defendants' own defenses.[17] The Court should overrule Defendants' improper objections and compel MGI to amend its intentionally evasive response with full and complete answers. This basic corporate information is unquestionably highly relevant. The FTC seeks to establish that Defendant MGI played a direct role in the operation or oversight of Match.com, which it apparently did in part through MGNA or related entities.[18]

Interrogatory 10 requests information concerning MGNA's legal status, business purpose, the individuals responsible for its management, as well as information concerning "its relationship to Match Group, Inc., Match Group, LLC, and Match.com, and any contracts or agreements that authorize Match Group North America to operate or control, or participate in the operation or control of, Match.com."[19] Interrogatory 11 requests that MGI describe its "authority, role, or involvement in the creation or management of" MGUS, MGA, and MGNA.[20]

MGI responded to Interrogatories 10 and 11 with a laundry list of boilerplate objections, claiming that everyday words were vague and undefined and that the FTC's request was

---

[17] *See* Exh. 1 and Responses 10 and 11.

[18] *See United States v. Best Foods*, 524 U.S. 51, 55 (1998) (holding that a parent company may be "directly liable in its own right as an operator of the facility" even though the facility is owned by its subsidiary where the "corporate parent [] actively participated in, and exercised control over, the operations of the facility itself"). The Supreme Court found "ample evidence to 'raise an issue' that a parent corporation was an 'operator' where an agent of the parent 'played a conspicuous part in dealing with the toxic risks emanating from the operation of the plant' by actively participating, exerting control, and issuing directives regarding responses to regulator inquiries." *See Pub. Citizen v. Am. Elec. Power Co.*, 5:05-cv-39, 2006 U.S. Dist. LEXIS 116214 (E.D. Tex. Dec. 27, 2006) (citing *Best Foods*, 524 U.S. at 72).

[19] *See id.* at Response 10.

[20] *See id.* at Response 11.

irrelevant and not proportional to the needs of the case.[21] Moreover, MGI's substantive responses are non-answers that obscure what these entities are or what their relationship is to MGI and Match.com. For example, MGI's response to Interrogatory 10 describes MGNA as a "reporting structure that provides a liaison between various brands (including Match.com) and MGI."[22] This response fails to explain what exactly a "reporting structure" is, what is entailed in providing a "liaison between . . . brands," and what the business purpose is of such a "reporting structure." MGI's testimony at its 30(b)(6) added no clarity and in fact renders it more critical that the FTC receive complete responses to these interrogatories. For example, MGI's 30(b)(6) witness described MGNA as an "aggregation of a few operating companies"[23] at one point and, later, as a single oversight role,[24] in apparent contradiction of her testimony that other people simultaneously held titles at this "reporting structure."[25]

MGI's response to Interrogatory No. 11 is likewise deficient. In response, MGI merely states that "MGI created a reporting structure that includes "Match Group United States," "Match Group Americas," and "Match Group North America."[26] This one-sentence response fails to describe MGI's "authority, role, or involvement in the . . . management of" these entities or reporting structures as requested.[27]

---

[21] *See id.* at Responses 10 and 11.

[22] *See* Exh. 1 at Response 10.

[23] *See* Exh. 9 at 11:9-11:13.

[24] *See id.* at 65:8-65:16.

[25] *See id.* at 205:25-206:6.

[26] Exh. 1 at 11.

[27] *See id.*

MGI is obligated to adequately explain what these entities or "reporting structures" are and their relationship to Match.com and Defendants. MGI has not, and cannot, meet its burden to show that these requests are irrelevant or disproportionate to the needs of the case because they squarely relate to the issues in this litigation. And Defendants responses plainly fail to adequately respond to the questions posed. As such, the Court should overrule MGI's objections and order it to amend its answers to respond properly and completely.

B. **MGLLC's Blanket Refusal to Participate Further in Discovery Is Improper.**

Defendant MGLLC has issued a near-total refusal to participate further in discovery, relying primarily on boilerplate and unsupported objections that the requests are irrelevant and not proportional. Worse, MGLLC has refused to provide any substantive response to nearly every request served in recent months. But as described below, the requests at issue are relevant and proportional to the needs of the case. Moreover, Defendants boilerplate objections do not excuse Defendants from responding, nor does Defendants' purported "stipulation," which claims Defendants will no longer violate the law. Therefore, the Court should overrule MGLLC's objections and order it to respond.

1. *The FTC's requests are relevant and proportional to the needs of this case.*
    i. <u>Interrogatories to MGLLC</u>

The Interrogatories at issue are directly related to the conduct alleged in the FTC's Amended Complaint.[28] For example, Interrogatory No. 22 from the FTC's Fourth Set of

---

[28] The FTC notes that, contrary to MGLLC's assertion, each of the subparts contained these Interrogatories are factually related to the primary question and thus, do not count as discrete subparts. *See Krawcyzk v. City of Dallas*, 2004 WL 614842, at *2 (N.D. Tex. Feb. 27, 2004) ("Courts have held that interrogatory subparts are to be counted as discrete subparts if they are not 'logically or factually subsumed within and necessarily related to the primary question.") (citing *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 686 (D. Nev. 1997)).

7

**FTC's Motion to Compel**

Interrogatories requests information about customers who initiated chargebacks for a Match.com charge, lost the dispute, and did not have their account automatically reinstated.[29] This information is highly relevant to Count IV of the FTC's Amended Complaint, which concerns Match.com's unfair chargeback policy. Specifically, MGLLC has asserted that its practice was to award such credit to consumers who requested that their accounts be reinstated after losing a chargeback dispute, something that the FTC believes is inaccurate and would be further contradicted by the requested information.

Interrogatory 25 from the FTC's Fifth Set of Interrogatories requests that MGLLC identify the number of consumer complaints it received concerning issues directly tied to the FTC's counts.[30] These complaints are relevant for establishing notice to the Company of the violations, which would weigh in favor of assessing substantial civil penalties for those violations, and for detailing the harm from the consumers' experience with these business practices.

Interrogatory 26 requests that MGLLC provide information concerning the various versions of its online cancellation flow, changes made to that flow, and any testing done concerning these changes.[31] This information relates to Count V, which concerns whether Match.com's online cancellation flow was "simple" as required by the Restore Online Shoppers Confidence Act.[32]

---

[29] *See* Exh. 4 at Response 22. The FTC seeks to compel responses only to subparts (g) through (j) of this Interrogatory.

[30] *See* Exh. 5 at Response 25 (asking about the Match Guarantee, chargebacks, and cancellation).

[31] *See id.* at Response 26. As discussed above, this interrogatory is numbered #26 in MGLLC's response because the FTC has withdrawn earlier sequenced interrogatories to avoid exceeding the 25-interrogatory limit.

[32] 15 U.S.C. § 8403(3).

8

**FTC's Motion to Compel**

##### ii.     RFPs to MGLLC

The FTC's requests for production were narrowly tailored to specific areas relevant to the claims in this case. Requests No. 1 through 3 are directly related to Match.com's cancellation process.[33] These requests concern Match.com's "subscription status" link and the decision to remove this link as a top-line option on Match.com's account settings page. These requests are directly relevant to Defendants' defense to Count V. Specifically, MGLLC contends that the password reauthorization page was appropriate, in part, because it protected sensitive information available on the subscription status link. Accordingly, the FTC should be allowed to see what information is available on that page.

RFP No. 4 requests YouTube advertisements related to the Match Guarantee.[34] MGLLC has acknowledged that it advertised the Match Guarantee; however, it has yet to identify which advertisements were made available to consumers. What the Defendants represented to consumers concerning the Guarantee is doubtlessly relevant to establishing liability as to Count III.

Requests for Production No. 5-16 request versions of various "Frequently Asked Questions" ("FAQ") pages related to the Guarantee from the relevant time periods.[35] Count III concerns whether Defendants adequately disclosed the limitations on the Match Guarantee. As such, these web captures would be relevant to determining what information Defendants disclosed to consumers concerning the Guarantee.

##### iii.     RFAs to MGLLC

---

[33] *See* Exh. 2 at Responses 1-3.

[34] *See id.* at Response 4.

[35] *See id.* at 5-16.

Lastly, the FTC served RFAs that target specific issues in this case.[36] These requests pertain to the subscription status link, which is part of Match.com's online cancellation flow and related to Count V.[37] They further include concern the notice that Defendants had of the FTC's investigation and allegations before this lawsuit, which is relevant for justifying civil penalties.[38] These requests also concern whether consumers actually visited Match.com's purported disclosures of the terms and conditions related to the Guarantee,[39] what representations Defendants made to consumers about the Guarantee,[40] and Match.com's refund policy.[41] Other requests seek the amount of harm caused by Defendants unfair chargeback policy.[42] There are also requests that will establish that exceedingly few consumers used Match.com's alternative cancellation mechanisms, which Defendants have suggested excuse their intentionally difficult online cancellation process at issue in Count V.[43] Lastly, there are requests seeking information that will further establish that Defendants illegal conduct is likely to recur because Defendants had no intention of suspending their practices until the FTC initiated its investigation.[44] As discussed further below, Defendants refused to respond to *any* of these requests.

> **2. MGLLC's boilerplate objections about relevancy, proportionality, and burden should be overruled, as MGLLC has failed to attempt to make a detailed showing to support their objections.**

---

[36] Exh. 3 at Responses 165-166, 172-196, 206-208, 212-224, 229, and 232.

[37] *See id.* at Responses 165-166.

[38] *See id.* at Responses 172-174.

[39] *See id.* at Responses 175-178.

[40] *See id.* at Responses 212-217.

[41] *See id.* at Responses 229 and 232.

[42] *See id.* at Responses 179-196.

[43] *See id.* at Responses 218-224.

[44] *See id.* at Responses at 206-208.

Defendant MGLLC objected and refused to respond to numerous discovery requests based on boilerplate objections concerning relevancy, proportionality, and burden.[45] In making such an objection, Defendant MGLLC bears the burden of making a "specific, detailed showing" of how a particular request stating that the requests is overbroad or burdensome.[46] "A mere statement by a party that a request is 'overly broad and unduly burdensome' is insufficient.[47] Likewise, a party may not refuse discovery "simply by making a boilerplate objection that it is not proportional."[48] The proportionality calculation in Rule 26(b)(1) is not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional."[49]

MGLLC's generic boilerplate objections fail to explain how Plaintiff's requests are burdensome or improper. Nor do Defendants contend that they cannot readily or easily obtain the information requested. Instead, MGLLC complains of the amount of discovery that has been conducted in this case.[50] However, the discovery in this case has not been excessive or unusual.[51]

---

[45] Exh. 2 at Responses 1-16.

[46] *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (citing *Alexander v. FBI*, 192 F.R.D. 50, 53 (D.D.C. 2000)).

[47] *Id.* (citing *St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511-12 (N.D. Ia. 2000)).

[48] FED. R. CIV. P. 26 advisory committee's note to 2015 amendment.

[49] FED. R. CIV. P. 26, advisory committee's note to 2015 amendment.

[50] *See, e.g.*, Exh. 3 at Responses 165-166, 172-196, 206-208, 212-224, 229, and 232 ("Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions.").

[51] The FTC has conducted ten depositions and, according to Defendants, has received around 53,000 documents in litigation, which includes duplicate document production. *Compare* Doc. 99 at 14 and Exh. 2 at Response 1. MGLLC's representations about the number of documents produced to the FTC include documents produced in response to the CID. However, caselaw is clear that pre-suit investigations does not limit an agency's rights in traditional discovery. *See*

More importantly, past discovery has no bearing on whether these current requests are in any way burdensome or otherwise objectionable. As established above, they are not.

In effect, MGLLC has unilaterally decided that discovery is closed, regardless of the relevance, proportionality, or burdensomeness (or lack thereof) of these requests—and regardless of the actual discovery cutoff provided by the Court's scheduling. The FTC, however, is entitled to discovery absent properly supported objections. The Court should therefore compel Defendants to respond accordingly.

### 3. *MGLLC's refusal to respond based on its so-called "stipulation" is improper and contrary to this Court's prior order.*

MGLLC objected, and refused to respond, to numerous requests based on the fact Defendants filed an unenforceable "stipulation" stating they will never again engage in the conduct at issue.[52] This objection merely recycles an argument the Court has already rejected. Previously, the Court explicitly rejected the argument that Defendants are excused from discovery on Counts III and IV because of this "stipulation."[53] While Defendants previously argued its stipulation made the FTC's requests moot, it now characterizes the objection as proportionality objection.

---

*SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("Here, even though the Commission had already conducted a pre-filing investigation and had access to the evidence from the criminal trial of Sargent and Scharn, 'there is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case.'"); *see also SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 857 (S.D.N.Y. 1997) (Sotomayor, J.) (distinguishing between "administrative inquiries" and "discovery"). Here, Defendants produced the vast majority of documents in response to a Civil Investigative Demand, not discovery requests.

[52] Exh. 2 at Responses 4-16; Exh. 3 at Responses 175-196, 206-028, 212-218, and 232; Exh. 4 at Response 22.

[53] *See* Doc. 164 at 1; Doc. 184.

However characterized, Defendants' rehashed objection amounts to the same thing: Defendants contend that their one-party "stipulation" excuses them from responding to proper discovery requests. That is wrong, as Judge Ramirez explained to Defendants in no uncertain terms: "Yes, you filed a, quote, stipulation that says the Defendants won't do this anymore, but they're entitled to have discovery on whether you will or you won't."[54] The FTC remains entitled to discovery to establish that Defendants' illegal conduct is likely to recur. MGLLC's objection should be overruled accordingly.

### 4. MGLLC's improper vagueness objections concern everyday words and do not excuse MGLLC from responding.

Finally, MGLLC objects to numerous everyday words and phrases as being "vague" or "confusing."[55] Such objections are wrong on the merits, and in any event do not justify Defendants' failure to respond. Even if a request is "allegedly vague and ambiguous, the responding party, to comply with the Federal Rules, must, if possible, explain its understanding of the allegedly vague and ambiguous terms or phrases and explicitly state that its answer is based on that understanding."[56] MGLLC has not done so here. MGLLC should therefore be compelled to respond appropriately and in compliance with the Federal Rules.

### 5. MGLLC failed to cite documents by Bates number in contravention of the ESI Order.

In the limited instances where MGLLC actually responded substantively to the RFPs, it did so not by producing any documents but instead by vaguely claiming that it has already produced responsive documents. Moreover, it did not actually identify those supposedly

---

[54] *See* Doc. 176 at 217.

[55] Exh. 1 at Responses 17, 19; Exh. 2. at Responses 1-2, 4-16; Exh. 3 at Responses 165-166, 175-181, 183, 185-187, 192-195; Exh. 4 at Response 22; Exh. 5 at Responses 23, 25-26.

[56] *Heller v. City of Dallas,* 303 F.R.D. 466, 488 (N.D. Tex. 2014).

responsive documents by Bates number or with any other specificity.[57] Instead, MGLLC has only provided a vague reference to the fact that documents on this general topic have been produced before.[58] Specifically, in response to RFPs 5-16, which concern web captures of the Match Guarantee FAQs, MGLLC responds that it has already "produced FAQ documents."[59]

MGLLC's response fails to comply with either the Federal Rules or this Court's ESI Order. The Court's ESI Order is unambiguous in its requirement "the parties will refer to the bates number of the relevant documents" if they have "already produced to the FTC in response to the FTC's CID."[60] Further, it is insufficient in that it does not make clear whether the documents at issue in the request have been produced—only that generally related documents have been—and it fails to state whether *all* such responsive documents have been produced.

Accordingly, Defendant MGLLC should be required to produce responsive documents, identify them by Bates number if they've been produced before, or state plainly that they do not exist.

V.   **Conclusion**

Defendants have refused to produce responsive documents and information on fundamental issues. Defendants' refusal to respond properly to litigation risks prejudice to the FTC's case. Moreover, MGLLC's refusal to participate in litigation based once again on its "stipulation" is contrary to this Court's prior rulings. Accordingly, the FTC respectfully requests the Court grant the FTC's Motion to compel MGI and MGLLC to withdraw their improper responses and produce the responsive and relevant information described above.

---

[57] *See* Exh. 2 at Responses 1-2, 4-10.

[58] *See id.*

[59] *See* Exh. 2 at Responses 5-16.

[60] Doc. 132 at 4.

Respectfully submitted,

Dated: July 28, 2023

*/s/ Reid Tepfer*
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted *pro hac vice*)
JOHN R. O'GORMAN (admitted *pro hac vice*)
ERICA R. HILLIARD
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T. (214) 979-9379 (Hilliard)
F: (214) 953-3079
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov
ehilliard@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## CERTIFICATE OF CONFERENCE

I certify that this motion was filed following a conference between the parties. Specifically, FTC counsel further sent defense counsel a letter addressing the topics of this motion, including on May 23, 2023, and July 11, 2023. Defense counsel responded by letter on June 2, 2023. The parties further conferred via Zoom on July 20, 2023. I further corresponded with counsel concerning these issues on July 21, 2023.

*/s/REID TEPFER*
REID TEPFER

## CERTIFICATE OF SERVICE

On July 28, 2023, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Reid Tepfer*
REID TEPFER
