**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                              Plaintiff,<br><br>     vs.<br><br>MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>                              Defendants. | Case No. 3:19-cv-02281-K |

## APPENDIX IN SUPPORT OF PLAINTIFF FEDERAL TRADE COMMISSION'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS, RESPONSES TO INTERROGATORIES, AND REQUESTS FOR ADMISSION FROM DEFENDANT MATCH GROUP, LLC AND RESPONSES TO INTERROGATORIES FROM DEFENDANT MATCH GROUP, INC.

Plaintiff Federal Trade Commission ("FTC") submits this Appendix in support of the FTC's Motion to Compel Production of Documents, Responses to Interrogatories, and Requests for Admission from Defendant Match Group, LLC and Responses to Interrogatories from Defendant Match Group, Inc.

| Ex. | Description | App. Page(s) |
|---|---|---|
| 1. | Defendant Match Group, Inc.'s Responses and Objections to Plaintiff Federal Trade Commission's Second Set of Interrogatories | APP 001-009 |
| 2. | Defendant Match Group, LLC's Responses and Objections to Plaintiff Federal Trade Commission's Fourth Set of Requests for Production of Documents | APP 010-034 |
| 3. | Defendant Match Group LLC's Responses and Objections to Plaintiff Federal Trade Commission's Third Set of Requests for Admission | APP 035-086 |
| 4. | Defendant Match Group LLC's Responses and Objections to Plaintiff Federal Trade Commission's Fourth Set of Interrogatories | APP 087-096 |

| Ex. | Description | App. Page(s) |
|---|---|---|
| 5. | Defendant Match Group LLC's Responses and Objections to Plaintiff Federal Trade Commission's Fifth Set of Interrogatories | APP 097-110 |
| 6. | Letter from Reid Tepfer, FTC, to Angela Zambrano, et al., Sidley Austin (May 23, 2023) | APP 111-120 |
| 7. | Letter from Reid Tepfer, FTC, to Angela Zambrano, et al., Sidley Austin (July 11, 2023) | APP 121-128 |
| 8. | Email from Reid Tepfer, FTC, to Chelsea Priest, et al., Sidley Austin (July 21, 2023) | APP 129-132 |
| 9. | Excerpt of Transcript for 30(b)(6) Deposition of Match Group, Inc. (Mar. 3, 2023) | APP 133-140 |

Dated:  July 28, 2023

Respectfully submitted,

/s/  Reid Tepfer
M. Hasan Aijaz
Reid Tepfer
Erica Rollins Hilliard
Sarah Zuckerman (admitted *pro hac vice*)
John R. O'Gorman (admitted *pro hac vice*)
Virginia Bar No. 80073 (Aijaz)
Texas Bar No. 24079444 (Tepfer)
Mississippi Bar No. 104244 (Hilliard)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9386 (Aijaz)
T: (214) 979-9395 (Tepfer)
T: (214) 979-9379 (Hilliard)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
F: (214) 953-3079
maijaz@ftc.gov;
rtepfer@ftc.gov;
ehilliard@ftc.gov
szuckerman@ftc.gov;
jogorman@ftc.gov

*Attorneys for the FTC*

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

FEDERAL TRADE COMMISSION,

                  Plaintiff,

    vs.

MATCH GROUP, INC., a corporation, and
MATCH GROUP, LLC, formerly known as
MATCH.COM, LLC, a limited liability
company,

                  Defendants.

Case No. 3:19-cv-02281-K

**DEFENDANT MATCH GROUP, INC'S RESPONSES AND OBJECTIONS TO**
**PLAINTIFF FEDERAL TRADE COMMISSION'S**
**SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules") and Rule 34.1 of the Local Civil and Criminal Rules of the United States District Court for the Northern District of Texas (the "Local Rules"), Defendant Match Group, Inc. ("MGI"), by and through their undersigned counsel, object and respond to Plaintiff Federal Trade Commission ("Plaintiff" or "FTC") Second Set of Interrogatories (each an "Interrogatory" and, collectively, the "Interrogatories") as follows:

**I.     GENERAL OBJECTIONS**

1.     <u>Privilege</u>. MGI objects to each and every Interrogatory to the extent it seeks documents or information that is subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all communications with, or work product of, any outside attorney) (collectively, "Privileged Information"). Any inadvertent disclosure of Privileged Information by MGI shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

MATCH GROUP, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFF'S SECOND OF INTERROGATORIES         1
APP 002                               EXH. 1

2.      <u>Reservation of Right to Supplement</u>. Given the stage of the litigation, MGI has not completed its investigation of the facts or law relating to this action, and discovery in this matter is ongoing. Accordingly, consistent with the Rules, these responses and objections are made without prejudice to, and are not a waiver of, MGI's right to amend, correct, or supplement these responses, and are subject to MGI's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist. MGI provides these responses in good faith after reasonable inquiry and based on information that it knows or can readily obtain.

3.      <u>No Waiver</u>. By responding to these Interrogatories, MGI does not concede the relevancy of an Interrogatory, nor the relevancy or admissibility of any information provided in response thereto. The fact that information is provided in response to a particular Interrogatory does not mean that it is probative of any particular issue in this case. MGI expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, privilege, confidentiality, hearsay, or admissibility as evidence for any other purpose. Moreover, the right to object on any ground to the use of the responses or information provided, in any aspect of this or any other court action, arbitration, or judicial or administrative proceeding or investigation, is reserved.

## II.      SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

4.      MGI specifically objects to the Interrogatories' Instructions and Definitions to the extent they purport to impose obligations on MGI that exceed those imposed by the Rules and the Local Rules. In responding to these Interrogatories, MGI will follow the requirements set forth in the Rules and the Local Rules.

5.      MGI specifically objects to the definitions of "Match," the "Company," and "You" as vague, ambiguous, confusing, and overbroad because the definition includes "assumed names,

prior names, and predecessor entities, including Match.com, Inc.," and MGI is not sure what the FTC means by "assumed names, prior names, or predecessor entities" (other than Match.com, Inc.). MGI further objects to this definition to the extent it encompasses any website other than Match.com, which is the only dating site at issue in the Amended Complaint.

6.      MGI specifically objects to the definitions of "and" and "or" and because they are ambiguous and confusing. MGI will interpret these terms to have their plain, ordinary, and common sense meaning. MGI further objects to these definitions to the extent they purport to impose obligations on MGI that exceed those imposed by the Rules. MGI objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case and exceedingly burdensome. In responding to these Interrogatories, MGI will comply with the Rules and the Local Rules.

7.      MGI specifically objects to the definition of "any" as ambiguous and confusing. MGI will interpret this term to have its plain, ordinary, and common sense meaning. MGI further objects to this definition to the extent it purports to impose obligations on MGI that exceed those imposed by the Rules. MGI objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Interrogatories, MGI will comply with the Rules and the Local Rules.

8.      MGI specifically objects to the definition of "each" as ambiguous and confusing. MGI will interpret this term to have its plain, ordinary, and common sense meaning. MGI further objects to this definition to the extent it purports to impose obligations on MGI that exceed those imposed by the Rules. MGI objects to the definition of this term as overly broad, unduly

burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Interrogatories, MGI will comply with the Rules and the Local Rules.

9.      MGI specifically objects to the definition of "Match Group, LLC" as vague, ambiguous, confusing, and overbroad.

10.     The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Interrogatories.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

**INTERROGATORY NO. 10:** Describe Match Group North America, its legal status, its business purpose, the individuals responsible for its management, its relationship to Match Group, Inc., Match Group, LLC, and Match.com, and any contracts or agreements that authorize Match Group North America to operate or control, or participate in the operation or control of, Match.com.

**RESPONSE:**

MGI objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case, as "Match Group North America" is not relevant to the Plaintiff's Amended Complaint. MGI further objects to this Interrogatory as "Match Group North America," "legal status," "management," "operate," "control," and "participate in the operation or control" are vague and undefined. MGI further objects to this Interrogatory as it suggests that "Match Group North America" refers to a legal entity. Additionally, MGI objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts.

Subject to and without waiving the foregoing objections, MGI responds that Match Group North America is not and does not refer to a business entity. "Match Group North America" refers to a reporting structure that provides a liaison between various brands (including Match.com) and MGI. The individuals holding a title reflecting involvement in the Match Group North America reporting structure are identified in organizational charts produced at MATCHFTC741252–MATCHFTC742593.

**INTERROGATORY NO. 11:** Describe Match's authority, role, or involvement in the creation or management of:

      a.  Match Group United States;
      b.  Match Group Americas; and
      c.  Match Group North America.

**RESPONSE:**

MGI objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case, as "Match Group United States," "Match Group Americas," and "Match Group North America" are not relevant to the Plaintiff's Amended Complaint. MGI further objects to this Interrogatory as "authority," "role," "involvement," "creation, "management," "Match Group United States," "Match Group Americas," and "Match Group North America" are vague and undefined. MGI further objects to this Interrogatory as it suggest "Match Group North America" refers to an entity. Additionally, MGI objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts.

Subject to and without waiving the foregoing objections, MGI created a reporting structure that includes "Match Group United States," "Match Group Americas," and "Match Group North America."

Match Group, Inc.'s Responses and Objections to
Plaintiff's Second of Interrogatories
5
APP 006                                                                    EXH. 1

**INTERROGATORY NO. 12:** Identify all former and current employees of Match Group United States, Match Group Americas, and Match Group North America, including their dates of employment and whether any other Match companies or subsidiaries simultaneously employ or employed them, whose responsibilities include or relate to the following areas regarding Match.com:

  a.  Advertising or marketing;
  b.  Customer Service;
  c.  Corporate governance or operations;
  d.  General management;
  e.  Research and development;
  f.  Legal compliance;
  g.  Accounting or finance;
  h.  Cancellation of subscriptions;
  i.  Match Guarantee; and
  j.  Policies and practices related to chargebacks.

**RESPONSE:**

MGI objects to this Interrogatory because "Match Group United States," "Match Group Americas," "Match Group North Americas," "corporate governance or operations," and "general management" are vague and undefined, and also to the extent Plaintiff seeks Privileged Information, particularly in light of Plaintiff's request for documents related to "legal compliance." MGI further objects to this Interrogatory on the grounds that it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case, as "Match Group United States" "Match Group Americas," "Match Group North Americas" are not relevant to Plaintiff's claims in the Amended Complaint. Additionally, MGI objects to this Interrogatory as it includes more than one single discrete question, and incorporates definitions that further imbed a series of subpart questions, ultimately violating the Rules that limit each party to 25 single questions, including subparts.

Subject to and without waiving the foregoing objections, MGI responds "Match Group United States," "Match Group Americas," and "Match Group North Americas" are not legal entities and therefore do not have former or current employees.

Dated: April 21, 2023                     */s/ Angela C. Zambrano*
                                          Angela C. Zambrano
                                          State Bar No. 24003157
                                          angela.zambrano@sidley.com
                                          Chelsea A. Priest
                                          State Bar No. 24102375
                                          cpriest@sidley.com
                                          Tayler G. Bragg
                                          State Bar No. 24109943
                                          tbragg@sidley.com
                                          SIDLEY AUSTIN LLP
                                          2021 McKinney Avenue, Suite 2000
                                          Dallas, TX 75201
                                          Telephone: 214-981-3300
                                          Fax: 214-981-3400

                                          Chad S. Hummel (admitted *pro hac vice*)
                                          chummel@sidley.com
                                          SIDLEY AUSTIN LLP
                                          1999 Avenue of the Stars, 17th Floor
                                          Los Angeles, CA 90067
                                          Telephone: 310-595-9500
                                          Fax: 310-595-9501

                                          Benjamin M. Mundel (admitted *pro hac vice*)
                                          bmundel@sidley.com
                                          SIDLEY AUSTIN LLP
                                          1501 K Street, N.W.
                                          Washington, DC 20005
                                          Telephone: 202-736-8000
                                          Fax: 202-736-8711

                                          *Attorneys for Match Group, Inc. and*
                                          *Match Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and forgoing document

was served on all counsel of record via e-mail as outlined below on April 21, 2023.

Reid Abram Tepfer
rtepfer@ftc.gov
M Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov

*/s/ Angela C. Zambrano*
Angela C. Zambrano

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br>                  Plaintiff, <br><br>    vs. <br><br> MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company, <br><br>                  Defendants. | Case No. 3:19-cv-02281-K |

**DEFENDANT MATCH GROUP, LLC'S RESPONSES AND OBJECTIONS TO
PLAINTIFF FEDERAL TRADE COMMISSION'S FOURTH SET OF REQUESTS FOR
<u>PRODUCTION OF DOCUMENTS</u>**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules"), Defendant Match Group, LLC ("MGL"), by and through its undersigned counsel, serves its responses and objections to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") Fourth Set of Requests for Production of Documents (each a "Request" and, collectively, the "Requests"):

## I.        GENERAL OBJECTIONS

1.      <u>Privilege</u>. MGL objects to each and every Request to the extent it seeks documents that are or information that is subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all communications with, or work product of, any outside attorney) (collectively, "Privileged Information"). MGL will comply with the Rules regarding Privileged Information. Any inadvertent disclosure of Privileged Information by MGL shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

2.      <u>Reservation of Right to Supplement</u>. Given the stage of the litigation, MGL has not completed its investigation of the facts or law relating to this action, and discovery in this matter is ongoing. Accordingly, consistent with the Rules, these responses and objections are made without prejudice to, and are not a waiver of, MGL's right to amend, correct, or supplement these responses, and are subject to MGL's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist. MGL provides these responses in good faith after a reasonable inquiry and based on information that it knows or can readily obtain.

3.      <u>No Waiver</u>. By responding to these Requests, MGL does not concede the relevancy of a Request nor the relevancy or admissibility of any information provided in response thereto. The fact that information is provided in response to a particular Request does not mean that it is probative of any particular issue in this case. MGL expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, privilege, confidentiality, hearsay, or admissibility as evidence for any other purpose. Moreover, the right to object on any ground to the use of the responses or information provided, in any aspect of this or any other court action, arbitration, or judicial or administrative proceeding or investigation, is reserved.

## II.      SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

4.      MGL specifically objects to the Instructions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules or the Local Civil Rules of the Northern District of Texas (the "Local Rules"). In responding to these Requests, MGL will follow the requirements set forth in the Rules and the Local Rules.

5.      MGL specifically objects to the definitions of "Match Group LLC," the "Company," and "You" as vague, ambiguous, confusing, and overbroad because the definition includes "assumed names, prior names, and predecessor entities, including Match.com, LLC," and MGL is not sure what the FTC means by "assumed names, prior names, or predecessor entities" (other than Match.com, LLC). MGL further objects to this definition to the extent it encompasses any website other than Match.com, which is the only dating site at issue in the Amended Complaint. Additionally, MGL objects because the correct name of the entity named as a defendant in this litigation is Match Group, LLC, not Match Group LLC. Throughout, MGL will interpret "Match Group, LLC" to mean MGL.

6.      MGL objects to the definition of "Document" as overly broad, unduly burdensome, and to the extent it refers to items outside of MGL's possession, custody, or control, particularly through its use of the phrases "regardless of origin or location" and "however and by whomever prepared, produced, disseminated, or made." MGL further objects to this definition to the extent it refers to items in Plaintiff's possession, custody, or control, or to items that have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive. MGL further objects to this definition to the extent it purports to impose obligations on MGL that exceed those required by the Rules. In responding to these Requests, MGL will interpret the word "Document" to have its plain, ordinary, and common sense meaning and will comply with the Rules.

7.      MGL specifically objects to the definitions of "Identify" and "the identity of" because they are ambiguous and confusing, as they specify different meanings in different contexts, and MGL does not know what the FTC means by "identification of . . . identities of natural Persons" or who is considered to be a "contact Persons." MGL will interpret these terms

to have their plain, ordinary, and common-sense meaning. MGL further objects to these definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. In responding to these Requests, MGL will comply with the Rules.

8.      MGL specifically objects to the definitions of "and" and "or" because they are ambiguous and confusing, as they instruct the terms be "construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any specification in this Request all information that otherwise might be construed to be outside the scope of the specification," and MGL is not sure what the FTC means by "bring within the scope of any specification in this Request all information that otherwise might be construed to be outside the scope of the specification." MGL will interpret these terms to have their plain, ordinary, and common-sense meaning. MGL further objects to these definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. In responding to these Requests, MGL will comply with the Rules.

9.      MGL specifically objects to the definitions of "referring to" and "relating to" because they are ambiguous and confusing, as they include "discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recording, transcribing, recommending, concerning, or pertaining to, *in whole or in part*," and MGL does not know what the FTC means by "in whole or in part."  MGL will interpret these terms to have their plain, ordinary, and common-sense meaning. MGL further objects to these definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. In responding to these Requests, MGL will comply with the Rules.

10.     The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Requests.

### III.     SPECIFIC OBJECTIONS AND RESPONSES TO THE REQUESTS

**REQUEST NO. 1:**[1] Documents sufficient to show the complete flow of web content accessible to users by clicking on the "subscription status" link, wherever the link was located on Match.com's online desktop, mobile, or application flow. Responsive Documents must show all variants in place during the relevant time period, and all content accessible by subsequent clicks within the flow.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "complete flow," "web content accessible to users," "mobile," "application flow," "all variants in place," "relevant time period," "content accessible" and "subsequent clicks within the flow" are vague, confusing, and undefined. MGL interprets this Request to seek screenshots of the Match.com website that users would see after clicking on the link labeled "Subscription Status". Further, MGL objects to this Request as irrelevant, overly broad, and unduly burdensome because any "mobile" or "application" flows are not at issue in this case as the allegations related to cancellation in the Amended Complaint are limited to Match.com's online desktop cancellation flow. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions. Defendants have already produced documents showing its subscription flow.

---

[1] Although the FTC numbered these Requests to begin with No. 1, MGL has previously responded to 77 requests for production

**MATCH GROUP, LLC'S RESPONSES AND OBJECTIONS TO**
**PLAINTIFF'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS**                                    5

**REQUEST NO. 2:** Documents sufficient to show, on a monthly basis, the number of users who accessed the "subscription status" link on Match.com's online desktop, mobile, or application flow during the time period in which it was an option on the main "settings" page, and, separately, the number of users who accessed each specific page within the "subscription status" flow when it was accessible as a link on the main "settings" page.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "mobile," "application flow," "main 'settings' page," "each specific page," and "'subscription status' flow" are vague and undefined. MGL interprets "main 'settings' page" to mean the page currently accessible at https://www.match.com/user/settings. MGL also objects to this Request as overbroad, irrelevant, not proportional to the needs of the case, and part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation because there is no claim or defense related to "the number of users who accessed each specific page within the 'subscription status' flow," and probing such details is unduly burdensome to MGL. Further, MGL objects to this Request as irrelevant, overly broad, and unduly burdensome because any "mobile" or "application" flows are not at issue in this case as the allegations related to cancellation in the Amended Complaint are limited to Match.com's desktop online cancellation flow. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions.

MGL responds it has already produced data showing the number of sessions that viewed the password verification page and the subscription status page on a monthly basis, at MATCHFTC846945.

**REQUEST NO. 3:** All Documents mentioning, discussing, or in any way related to the removal or proposed removal of the "subscription status" link from the main "settings" page.

**RESPONSE:**

MGL objects to "All Documents mentioning, discussing, or in any way related to" as irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case as the Request is not narrowly tailored and instead appears to reflect a fishing expedition for documents unrelated to the claims and defenses in this case. Additionally, MGL objects to this Request as overbroad, irrelevant, not proportional to the needs of the case, and part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation because there is no claim or defense related to "the removal or proposed removal of the 'subscription status' link from the main 'settings' page," and probing such details is unduly burdensome to MGL. MGL also objects to this Request because "removal," "proposal removal," and "main 'settings' page" are vague and undefined. MGL interprets "main 'settings' page" to mean the page currently accessible at https://www.match.com/user/settings. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents, responded to 129 Request for Production, and the FTC has taken nine depositions. There is no basis for this harassing discovery just because the facts have shown that the FTC's allegations are false.

**REQUEST NO. 4:** All videos that reference any guarantee that have been uploaded to or available on the YouTube page affiliated with Match.com, including those available at any time since 2013 at https://www.youtube.com/@matchcom/videos.

**RESPONSE:**

MGL objects to this Request as "uploaded" and "affiliated with" are vague and undefined. MGL interprets "affiliated with" to mean the Match.com YouTube page found at https://www.youtube.com/@matchcom/videos. MGL also objects to this Request as overbroad,

irrelevant, not proportional to the needs of the case, and part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation because it seeks discovery regarding "any guarantee" when the only "guarantee" at issue in the Amended Complaint is Match.com's 6-month Guarantee, and it seeks all videos "available at any time since 2013," which includes advertising campaigns not active during the relevant time period. MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the videos requested in this Request are irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. MGL further objects to the extent that this Request lacks a reasonable temporal scope. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents, responded to 129 Request for Production, and the FTC has taken nine depositions. Defendants have already produced all advertising that was active during the relevant time period regarding the Guarantee.

**REQUEST NO. 5:** Documents sufficient to show all versions of the FAQ page titled "Match Guarantee for In-App Purchases" that were ever viewable by consumers on Match.com between 2013 to the present, including any web captures of this page.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "web captures" and "viewable" are

vague and undefined. MGL interprets "web captures" to mean screen shots or images of the relevant pages. MGL also objects, however, that the inclusion of "any web captures of this page" in this Request contradicts the remaining part of the Request, which is for documents "sufficient to show." MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The FTC does not challenge anything related to the app or a Guarantee FAQ page in its Amended Complaint, so this Request is a mere fishing expedition. Additionally, the Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the documents requested in this Request are irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions. Defendants have already produced FAQ documents.

**REQUEST NO. 6:** Documents sufficient to show all versions of the FAQ page titled "Guarantee – How it works" that were ever viewable by consumers on Match.com between 2013 to the present, including any web captures of this page

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "viewable" and "web captures" are vague and undefined. MGL interprets "web captures" to mean screen shots or images of the relevant pages. MGL also objects, however, that the inclusion of "any web captures of this page"

in this Request contradicts the remaining part of the Request, which is for documents "sufficient to show." MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The FTC does not challenge any Guarantee FAQ page in its Amended Complaint, so this Request is a mere fishing expedition. Additionally, the Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the documents requested in this Request are irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions. Defendants have already produced FAQ documents related to the Guarantee.

**REQUEST NO. 7:** Documents sufficient to show all versions of the FAQ page titled "Guarantee - Redeeming your free time" that were ever viewable by consumers on Match.com between 2013 to the present, including any web captures of this page.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "viewable" and "web captures" are vague and undefined. MGL interprets "web captures" to mean screen shots or images of the relevant pages. MGL also objects, however, that the inclusion of "any web captures of this page" in this Request contradicts the remaining part of the Request, which is for documents "sufficient to show." MGL further objects to this Request because it seeks discovery that is not relevant to

either party's claims or defenses and is not proportional to the needs of the case. The FTC does not challenge any Guarantee FAQ page in its Amended Complaint, so this Request is a mere fishing expedition. Additionally, the Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the documents requested in this Request are irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions. Defendants have already produced FAQ documents.

**REQUEST NO. 8:** Documents sufficient to show all versions of the FAQ page titled "Guarantee – Tracking your progress" that were ever viewable by consumers on Match.com between 2013 to the present, including any web captures of this page.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "viewable" and "web captures" are vague and undefined. MGL interprets "web captures" to mean screen shots or images of the relevant pages. MGL also objects, however, that the inclusion of "any web captures of this page" in this Request contradicts the remaining part of the Request, which is for documents "sufficient to show." MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The FTC does not challenge any Guarantee FAQ page in its Amended Complaint, so this Request is a mere

fishing expedition. Additionally, the Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the documents requested in this Request are irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions. Defendants have already produced FAQ documents.

**REQUEST NO. 9:** Documents sufficient to show all versions of the FAQ page titled "Guarantee – Why there are requirements" that were ever viewable by consumers on Match.com between 2013 to the present, including any web captures of this page.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "viewable" and "web captures" are vague and undefined. MGL interprets "web captures" to mean screen shots or images of the relevant pages. MGL also objects, however, that the inclusion of "any web captures of this page" in this Request contradicts the remaining part of the Request, which is for documents "sufficient to show." MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The FTC does not challenge any Guarantee FAQ page in its Amended Complaint, so this Request is a mere fishing expedition. Additionally, the Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13,

15, 35, so the documents requested in this Request are irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions. Defendants have already produced FAQ documents.

**REQUEST NO. 10:** Documents sufficient to show all versions of the FAQ page titled "Private Mode - Current Subscription with Guarantee" that were ever viewable by consumers on Match.com between 2013 to the present, including any web captures of this page.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "viewable" and "web captures" are vague and undefined. MGL interprets "web captures" to mean screen shots or images of the relevant pages. MGL also objects, however, that the inclusion of "any web captures of this page" in this Request contradicts the remaining part of the Request, which is for documents "sufficient to show." MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The FTC does not challenge any Guarantee FAQ page, or anything related to "Private Mode" in its Amended Complaint, so this Request is a mere fishing expedition. Additionally, the Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the documents requested in this Request are irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief

related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions. Defendants have already produced FAQ documents.

**REQUEST NO. 11:** Documents sufficient to show all versions of every webpage or other consumer facing screen that contained a hyperlink to the FAQ page titled "Match Guarantee for In-App Purchases" that were ever viewable by consumers on Match.com between 2013 to the present, including any web captures of this page or screen.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "viewable," "web captures," and "consumer facing screen" are vague and undefined. MGL interprets "web captures" and "consumer facing screen" to mean screen shots or images of the relevant pages. MGL also objects, however, that the inclusion of "any web captures of this page or screen" in this Request contradicts the remaining part of the Request, which is for documents "sufficient to show." MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The FTC does not challenge any hyperlink to a FAQ page in its Amended Complaint, and "*all* versions of *every* webpage *or other* consumer facing screen that contained a hyperlink . . . *ever* viewable by consumers" are not relevant, not proportional to the needs of the case, and a fishing expedition. Additionally, the Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the documents requested in this Request are

irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions.

MGL responds that a webpage containing the hyperlink to the FAQ page titled "Match Guarantee for In-App Purchases" has already been produced at MATCHFTC000308.

**REQUEST NO. 12:** Documents sufficient to show all versions of every webpage or other consumer facing screen that contained a hyperlink to the FAQ page titled "Guarantee - How it works" that were ever viewable by consumers on Match.com between 2013 to the present, including any web captures of this page or screen.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "viewable," "web captures," and "consumer facing screen" are vague and undefined. MGL interprets "web captures" and "consumer facing screen" to mean screen shots or images of the relevant pages. MGL also objects, however, that the inclusion of "any web captures of this page or screen" in this Request contradicts the remaining part of the Request, which is for documents "sufficient to show." MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The FTC does not challenge any hyperlink to a FAQ page in its Amended Complaint, and "*all* versions of *every* webpage *or other* consumer facing screen that contained a hyperlink . . . *ever* viewable by consumers" are not relevant, not proportional to the needs of the case, and a fishing expedition. Additionally, the Court dismissed

with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the documents requested in this Request are irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions.

MGL responds that a webpage containing the hyperlink to the FAQ page titled "Guarantee - How it works" has already been produced at MATCHFTC000308.

**REQUEST NO. 13:** Documents sufficient to show all versions of every webpage or other consumer facing screen that contained a hyperlink to the FAQ page titled "Guarantee – Redeeming your free time" that were ever viewable by consumers on Match.com between 2013 to the present, including any web captures of this page or screen.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "viewable," "web captures," and "consumer facing screen" are vague and undefined. MGL interprets "web captures" and "consumer facing screen" to mean screen shots or images of the relevant pages. MGL also objects, however, that the inclusion of "any web captures of this page or screen" in this Request contradicts the remaining part of the Request, which is for documents "sufficient to show." MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The FTC does not challenge any hyperlink to a FAQ page in its Amended Complaint, and "*all* versions of *every* webpage *or other* consumer

facing screen that contained a hyperlink . . . *ever* viewable by consumers" are not relevant, not proportional to the needs of the case, and a fishing expedition. Additionally, the Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the documents requested in this Request are irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions.

MGL responds that a webpage containing the hyperlink to the FAQ page titled "Guarantee - Redeeming your free time" has already been produced at MATCHFTC000308.

**REQUEST NO. 14:** Documents sufficient to show all versions of every webpage or other consumer facing screen that contained a hyperlink to the FAQ page titled "Guarantee - Tracking your progress" that were ever viewable by consumers on Match.com between 2013 to the present, including any web captures of this page or screen.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "viewable," "web captures," and "consumer facing screen" are vague and undefined. MGL interprets "web captures" and "consumer facing screen" to mean screen shots or images of the relevant pages. MGL also objects, however, that the inclusion of "any web captures of this page or screen" in this Request contradicts the remaining part of the Request, which is for documents "sufficient to show." MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or

defenses and is not proportional to the needs of the case. The FTC does not challenge any hyperlink to a FAQ page in its Amended Complaint, and "*all* versions of *every* webpage *or other* consumer facing screen that contained a hyperlink . . . *ever* viewable by consumers" are not relevant, not proportional to the needs of the case, and a fishing expedition. Additionally, the Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the documents requested in this Request are irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions.

MGL responds that a webpage containing the hyperlink to the FAQ page titled "Guarantee - Tracking your progress" has already been produced at MATCHFTC000308.

**REQUEST NO. 15:** Documents sufficient to show all versions of every webpage or other consumer facing screen that contained a hyperlink to the FAQ page titled "Guarantee - Why there are requirements" that were ever viewable by consumers on Match.com between 2013 to the present, including any web captures of this page or screen.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "viewable," "web captures," and "consumer facing screen" are vague and undefined. MGL interprets "web captures" and "consumer facing screen" to mean screen shots or images of the relevant pages. MGL also objects, however, that the inclusion of "any web captures of this page or screen" in this Request contradicts

the remaining part of the Request, which is for documents "sufficient to show." MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The FTC does not challenge any hyperlink to a FAQ page in its Amended Complaint, and "*all* versions of *every* webpage *or other* consumer facing screen that contained a hyperlink . . . *ever* viewable by consumers" are not relevant, not proportional to the needs of the case, and a fishing expedition. Additionally, the Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the documents requested in this Request are irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions.

MGL responds that a webpage containing the hyperlink to the FAQ page titled "Guarantee - Why there are requirements" has already been produced at MATCHFTC000308.

**REQUEST NO. 16:** Documents sufficient to show all versions of every webpage or other consumer facing screen that contained a hyperlink to the FAQ page titled "Private Mode – Current Subscription with Guarantee" that were ever viewable by consumers on Match.com between 2013 to the present, including any web captures of this page or screen.

**RESPONSE:**

MGL objects to the Request to the extent it seeks to require MGL create documents that do not already exist. MGL also objects to this Request because "viewable," "web captures," and "consumer facing screen" are vague and undefined. MGL interprets "web captures" and

"consumer facing screen" to mean screen shots or images of the relevant pages. MGL also objects, however, that the inclusion of "any web captures of this page or screen" in this Request contradicts the remaining part of the Request, which is for documents "sufficient to show." MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The FTC does not challenge any hyperlink to a FAQ page or "Private Mode" in its Amended Complaint, and "*all* versions of *every* webpage *or other* consumer facing screen that contained a hyperlink . . . *ever* viewable by consumers" are not relevant, not proportional to the needs of the case, and a fishing expedition. Additionally, the Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the documents requested in this Request are irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions.

MGL responds that a webpage containing the hyperlink to the FAQ page titled "Private Mode – Current Subscription with Guarantee" has already been produced at MATCHFTC000308.

**REQUEST NO. 17:** Documents sufficient to show all versions of Match.com's Terms of Use between 2013 and the present.

**RESPONSE:**

MGL objects to this Request because the requested documents are already in Plaintiff's possession, custody, or control. MGL also objects that the Match.com Terms of Use are equally

available to the FTC, as they are publicly available online. MGL further objects that this Request is duplicative of multiple document requests, including the first Request for Production No. 11 to MGL. Continuing to serve duplicative discovery requests is needlessly burdensome on MGL. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions.

MGL responds that it has already produced Match.com's Terms of Use at MATCHFTC004064,     MATCHFTC000117,     MATCHFTC000151,     MATCHFTC000190, MATCHFTC000205,     MATCHFTC004155,     MATCHFTC774614,     MATCHFTC774622, MATCHFTC774640, MATCHFTC774652, and MATCHFTC774600.

**REQUEST NO. 18:** Documents sufficient to show unique versions of every Advertisement or promotion since 2013 in which Match.com has offered a good or service on a "guarantee," "free," "trial," "sample," "bonus," "gift," "no obligation," or "discounted" basis.

**RESPONSE:**

MGL objects to this Request as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case because it purports to seek information far beyond the scope of Plaintiff's claims in the Amended Complaint, as advertisements or promotion related to a "good or service" offered on a "free," "trial," "sample," "bonus," "gift," "no obligation," or "discounted" basis are not relevant to any of Plaintiff's claims. As the FTC recently verified to MGL in response to Interrogatory No. 9, "[t]he offer relevant to Count III of the FTC's Amended Complaint is the 'Match Guarantee,'" and it "is the only relevant discount, guarantee, or special offer in this case." MGL further objects to this Request because "promotion," "good," "service," "guarantee," "free," "trial," "sample," "bonus," "gift," "no obligation," and "discounted" are vague and undefined.

Moreover, the Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the documents requested in this Request are even more irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III regarding the Match.com Guarantee, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, produced more than 278,000 documents and responded to 129 Requests for Production, and the FTC has taken nine depositions.

MGL responds that advertisements relating to the Match.com Guarantee have already been produced in response to Request for Production Nos. 15 and 26 to MGL and Request for Production Nos. 15 and 19 to MGI.

[signature page to follow]

Dated: July 10, 2023                    */s/ Angela C. Zambrano*

                                      Angela C. Zambrano
                                      State Bar No. 24003157
                                      angela.zambrano@sidley.com
                                      Chelsea A. Priest
                                      State Bar No. 24102375
                                      cpriest@sidley.com
                                      Tayler G. Bragg
                                      State Bar No. 24109943
                                      tbragg@sidley.com
                                      SIDLEY AUSTIN LLP
                                      2021 McKinney Avenue, Suite 2000
                                      Dallas, TX 75201
                                      Telephone: 214-981-3300
                                      Fax: 214-981-3400

                                      Chad S. Hummel (admitted *pro hac vice*)
                                      chummel@sidley.com
                                      SIDLEY AUSTIN LLP
                                      1999 Avenue of the Stars, 17th Floor
                                      Los Angeles, CA 90067
                                      Telephone: 310-595-9500
                                      Fax: 310-595-9501

                                      Benjamin M. Mundel (admitted *pro hac vice*)
                                      bmundel@sidley.com
                                      SIDLEY AUSTIN LLP
                                      1501 K Street, N.W.
                                      Washington, DC 20005
                                      Telephone: 202-736-8000
                                      Fax: 202-736-8711

                                      *Attorneys for Match Group, Inc. and*
                                      *Match Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and forgoing document

was served on all counsel of record via e-mail as outlined below on July 10, 2023.

Reid Abram Tepfer
rtepfer@ftc.gov
M. Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov

*/s/ Angela C. Zambrano*
Angela C. Zambrano

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. 3:19-cv-02281-K |
| MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company, | |
| Defendants. | |

**DEFENDANT MATCH GROUP, LLC'S RESPONSES AND OBJECTIONS TO
PLAINTIFF'S THIRD SET OF REQUESTS FOR ADMISSION**

Pursuant to Rule 26 and 36 of the Federal Rules of Civil Procedure (the "Rules"), Defendant Match Group, LLC ("MGL") by and through its counsel, submits its responses and objections to Plaintiff Federal Trade Commission's (the "FTC") Third Set of Requests for Admission (the "Requests" or "RFAs").

**I.      PRELIMINARY STATEMENT**

1.      These Responses and Objections to the FTC's Third Set of Requests for Admissions are provided solely for the purpose of this action.

2.      The Responses and Objections herein are made on the basis of information and writings presently available to, identified, and/or located by MGL upon reasonable investigation. MGL has not completed its investigation of the facts or law relating to this action, and Discovery in this matter is ongoing. These Responses and Objections are made without prejudice to, and are not a waiver of, MGL's right to amend, correct or supplement these Responses and Objections, and are subject to MGL's right to produce evidence of any subsequently discovered facts, or

additional facts, information or documents that may exist whose relevance, significance or applicability has not yet been determined by MGL. MGL provides these Responses and Objections in good faith after reasonable inquiry and based on information that it knows or can readily obtain. In providing these Responses and Objections, MGL reserves all objections as to competency, relevancy, materiality, authenticity, and admissibility of any information or documents. This preliminary statement is hereby incorporated by reference into each Response and Objection below.

## II.    GENERAL OBJECTIONS

The following General Objections apply to each RFA as though fully set forth therein.

3.    MGL objects to each RFA to the extent that it seeks information protected by the attorney-client privilege, the work-product doctrine, the right to privacy, trade secret protection, or other privileges recognized in law or equity. MGL also objects to each RFA to the extent it calls for, or can be interpreted as calling for, legal conclusions, or to the extent it assumes disputed issues or is phrased in such a way as to be argumentative, lacking foundation, prejudicial, or improper. All Responses are subject to this objection, without prejudice or waiver thereof, and are made with the understanding that any protected, non-discoverable information will be excluded from these answers and any document production. Inadvertent production of any privileged information shall not constitute the waiver of any privilege.

## III.    SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

4.    MGL specifically objects to the Instructions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules and the Local Rules. In responding to these Requests, MGL will follow the requirements set forth in the Rules and the Local Rules.

5.      MGL specifically objects to the definition of "You" and "Your" to the extent it requires MGL to answer on behalf of Match Group, Inc. Additionally, MGL objects because the correct names of the entities named as a defendants in this litigation are Match Group, LLC and Match Group, Inc., not Match Group LLC and Match Group Inc. Throughout, MGL will interpret "You" and "Your" to mean MGL.

6.      MGL specifically objects to the definition of "Match Group LLC" as vague, ambiguous, confusing, and overbroad because the definition includes "operations under assumed names, prior names, and predecessor entities, including Match.com, LLC," and MGL is not sure what the FTC means by " operations under assumed names, prior names, or predecessor entities" (other than Match.com, LLC). MGL further objects to this definition to the extent it encompasses any website other than Match.com, which is the only dating site at issue in the Amended Complaint. Additionally, MGL objects because the correct name of the entity named as a defendant in this litigation is Match Group, LLC, not Match Group LLC. Throughout, MGL will interpret "Match Group, LLC" to mean MGL.

7.      MGL specifically objects to the definitions of "and" and "or" and because they are ambiguous and confusing, as they instruct the terms be "construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any specification in this Request all information that otherwise might be construed to be outside the scope of the specification," and MGL is not sure what the FTC means by "bring within the scope of any specification in this Request all information that otherwise might be construed to be outside the scope of the specification." MGL will interpret these terms to have their plain, ordinary, and common-sense meaning. MGL further objects to these definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. MGL objects to the definition of these terms as

overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case. In responding to these Requests, MGL will comply with the Rules.

8.       MGL specifically objects to the definition of "any" as ambiguous and confusing as it only provides the term "shall be to include 'all,' and 'all' shall be construed to include the word 'any'" but does not define "any" or "all." MGL will interpret this term to have its plain, ordinary, and common-sense meaning. MGL further objects to this definition to the extent it purports to impose obligations on MGL that exceed those imposed by the Rules. MGL objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding to these Requests, MGL will comply with the Rules.

9.       MGL specifically objects to the definition of "Match Group Inc." because the correct name of the entity named as a defendant in this litigation is Match Group, Inc., not Match Group Inc. Throughout, MGL will interpret "Match Group, Inc." to mean MGI, the named defendant in this action.

## IV.    SPECIFIC RESPONSES & OBJECTIONS TO REQUESTS FOR ADMISSION

**REQUEST NO. 164:** During some periods of time between 2014 and 2019, Match.com users could access a "subscription status" link from the main "settings" page.

**RESPONSE:**

MGL objects to this Request because "some periods of time," "subscription status," and "main 'settings' page" are vague and undefined. MGL interprets "main 'settings' page" to mean the page currently accessible at https://www.match.com/user/settings. MGL interprets "some periods of time" to mean at least one day. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants

Match Group, LLC's responses and Objections
to Plaintiff's Third Set of Requests for Admission                                           4
APP 039                                                                          EXH. 3

have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents and interrogatory responses showing Match.com's subscription flow and cancelation flow between 2014 and 2019, including the main "settings" page.

Based on these objections, MGL will not respond.

**REQUEST NO. 165:** During some periods of time between 2014 and 2019, Match.com users could access a "subscription status" link from the main "settings" page on Match.com and perform the functions accessible through the link without re-entering a password.

**RESPONSE:**

MGL objects to this Request because "some periods of time," "subscription status," "main 'settings' page," "perform," "the functions," and "re-entering" are vague and undefined. MGL interprets "main 'settings' page" to mean the page currently accessible at https://www.match.com/user/settings. MGL further objects to this Request as vague and confusing as it is unclear whether the FTC is asking whether a "Match.com user could access a 'subscription status' link from the main 'settings' page on Match.com *and* perform the functions accessible through the link without re-entering a password" at the same time or during different periods of time. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents and interrogatory responses showing Match.com's subscription flow and cancelation flow between 2014 and 2019, including the main "settings" page.

Based on these objections, MGL will not respond.

**REQUEST NO. 166:** The "subscription status" link was removed from the main "settings" page on Match.com in 2019.

**RESPONSE:**

MGL objects to this Request because "subscription status," "removed," and "main 'settings' page" are vague and undefined. MGL interprets "main 'settings' page" to mean the page currently accessible at https://www.match.com/user/settings. MGL interprets "removed" to mean no longer accessible through any link available on the "main 'settings' page." Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents and interrogatory responses showing Match.com's subscription flow and cancelation flow in 2019, including the main "settings" page.

Based on these objections, MGL will not respond.

**REQUEST NO. 167:** Match Group, Inc. does not have data that could show how many users clicked on the "subscription status" link within the "manage subscription," "manage/cancel subscription," or "change/cancel membership" flow on Match.com.

**RESPONSE:**

MGL objects to this Request because "clicked," "subscription status," "manage subscription," "manage/cancel subscription," and "'change/cancel membership' flow" are vague and undefined. MGL objects to this Request as it improperly demands that MGL respond as to the knowledge of persons and/or entities other than MGL, namely MGI. MGL also objects to this Request as impermissibly compound under Rule 36(a)(2). Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000

documents, and the FTC has taken nine depositions. Defendants have already produced the data requested.

Based on these objections, MGL will not respond.

**REQUEST NO. 168:** Match Group, LLC. [sic] does not have data that could show how many users clicked on the "subscription status" link within the "manage subscription," "manage/cancel subscription," or "change/cancel membership" flow on Match.com.

**RESPONSE:**

MGL objects to this Request because "clicked," "subscription status," "manage subscription," "manage/cancel subscription," and "'change/cancel membership' flow" are vague and undefined. MGL further objects to this Request as impermissibly compound under Rule 36(a)(2). Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced the data requested.

Based on these objections, MGL will not respond.

**REQUEST NO. 169:** Match Group, Inc. does not have data that could show how many users clicked on the "subscription status" link that was accessible from the main "settings" page on Match.com.

**RESPONSE:**

MGL objects to this Request because "clicked," "subscription status" and "main 'settings' page" are vague and undefined. MGL interprets "main 'settings' page" to mean the page currently accessible at https://www.match.com/user/settings. MGL further objects to this Request as it improperly demands that MGL respond as to the knowledge of persons and/or entities other than MGL, namely MGI. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined,

already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions.

Based on these objections, MGL will not respond.

**REQUEST NO. 170:** Match Group, LLC. [sic] does not have data that could show how many users clicked on the "subscription status" link that was accessible from the main "settings" page on Match.com.

**RESPONSE:**

MGL objects to this Request because "clicked," "subscription status" and "main 'settings' page" are vague and undefined. MGL interprets "main 'settings' page" to mean the page currently accessible at https://www.match.com/user/settings. MGL further objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions.

Based on these objections, MGL will not respond.

**REQUEST NO. 171:** Match Group, Inc. had received the Civil Investigative Demand marked as Exhibit. [sic] A to these Requests by May of 2017.

**RESPONSE:**

MGL objects to this Request as it improperly demands that MGL respond as to the knowledge of persons and/or entities other than MGL, namely MGI. MGL further objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. The FTC is already aware of when MGI received the Civil Investigative Demand.

Based on these objections, MGL will not respond.

**REQUEST NO. 172:** Match Group, LLC was aware by May of 2017 that Match Group, Inc. had received the Civil Investigative Demand marked as Exhibit A to these Requests.

**RESPONSE:**

MGL objects to this Request as vague and ambiguous, and calling for a misleading answer, because "Match.com, LLC" changed its name to Match Group, LLC on September 12, 2017. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions.

Based on these objections, MGL will not respond.

**REQUEST NO. 173:** Match Group, Inc. had received the draft complaint marked as Exhibit B to these Requests by October of 2018.

**RESPONSE:**

MGL objects to this Request as it improperly demands that MGL respond as to the knowledge of persons and/or entities other than MGL, namely MGI. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. The FTC is already aware of when MGI received the draft complaint.

Based on these objections, MGL will not respond.

**REQUEST NO. 174:** Match Group, LLC. [sic] was aware by October of 2018 that Match Group, Inc. had received the draft complaint marked as Exhibit B to these Requests.

**RESPONSE:**

MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions.

Based on these objections, MGL will not respond.

**REQUEST NO. 175:** Between 2013 and 2019, 99 percent of sessions that visited the page on Match.com that displayed a rate card concerning Match.com subscriptions with the "Learn More" hyperlink identified in the FTC's Amended Complaint did not click on the "Learn More" hyperlink.

**RESPONSE:**

MGL objects to this Request because "sessions" and "rate card" are vague and undefined. MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. MGL further objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have,

Match Group, LLC's responses and Objections
to Plaintiff's Third Set of Requests for Admission                    10
APP 045                                                          EXH. 3

combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions.

Based on these objections, MGL will not respond.

**REQUEST NO. 176:** Between 2013 and 2019, 95 percent of sessions that visited the page on Match.com that displayed a rate card concerning Match.com subscriptions with the "Learn More" hyperlink identified in the FTC's Amended Complaint did not click on the "Learn More" hyperlink.

**RESPONSE:**

MGL objects to this Request because "sessions" and "rate card" are vague and undefined. MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. MGL further objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions.

Based on these objections, MGL will not respond.

**REQUEST NO. 177:** Between 2013 and 2019, 90 percent of sessions that visited the page on Match.com that displayed a rate card concerning Match.com subscriptions with the "Learn More" hyperlink identified in the FTC's Amended Complaint did not click on the "Learn More" hyperlink.

**RESPONSE:**

MGL objects to this Request because "sessions" and "rate card" are vague and undefined.

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims

or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice

the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem.

Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional

to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III,

and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com,

Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct

challenged in Count III. MGL further objects to the Request as vague as to time because it is

unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based

on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive,

overly burdensome, and not proportional to the needs of the case given the Defendants have,

combined, already responded to 342 RFAs and produced more than 278,000 documents, and the

FTC has taken nine depositions.

Based on these objections, MGL will not respond.

**REQUEST NO. 178:** Most consumers who visited the page on Match.com that displayed a rate card concerning Match.com subscriptions with the "Learn More" hyperlink identified in the FTC's Amended Complaint did not click on the "Learn More" hyperlink.

**RESPONSE:**

MGL objects to this Request because "consumers," "rate card," and "most" are vague and

undefined. MGL interprets "consumers" to mean Match.com users and "most" to mean more than

fifty percent. MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions.

Based on these objections, MGL will not respond.

**REQUEST NO. 179:** Between 2013 and March 2019, approximately 50,000 Match.com subscribers lost their chargeback dispute concerning a charge from Match.com and had time remaining on their Match.com subscription.

**RESPONSE:**

MGL objects to this Request because "approximately" and "time remaining" are vague and undefined. MGL interprets "approximately" to mean between 49,950 and 50,050 and "time remaining on their Match.com subscription" to mean the time left on the subscription that was the subject of the chargeback. MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding

Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and

Match.com will never again engage in the conduct challenged in Count IV. MGL further objects

to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based

on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL

objects that this Request is harassing, abusive, overly burdensome, and not proportional to the

needs of the case given the Defendants have, combined, already responded to 342 RFAs and

produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have

already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 180:** Between 2013 and March 2019, more than 50,000 Match.com subscribers
lost a chargeback dispute concerning a charge from Match.com and had time remaining on their
Match.com subscription.

**RESPONSE:**

MGL objects to this Request because "time remaining" is vague and undefined. MGL

interprets "time remaining on their Match.com subscription" to mean the time left on the

subscription that was the subject of the chargeback. MGL objects to this Request because it seeks

discovery that is not relevant to either party's claims or defenses and is not proportional to the

needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related

to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so

the data requested in this Request is irrelevant and not proportional to the needs of the case. The

FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a

Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which

provides that MGL and Match.com will never again engage in the conduct challenged in Count

IV. MGL further objects to the Request as vague as to time because it is unclear if the FTC is

asking MGL to admit based on every day between 2013 and 2019 or based on one day between

2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 181:** Between 2013 and March 2019, more than 40,000 Match.com subscribers lost their chargeback dispute concerning a charge from Match.com and had time remaining on their Match.com subscription.

**RESPONSE:**

MGL objects to this Request because "time remaining" is vague and undefined. MGL interprets "time remaining on their Match.com subscription" to mean the time left on the subscription that was the subject of the chargeback. MGL also objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL further objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already

responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 182:** Between 2013 and March 2019, more than 40,000 Match.com subscribers lost their chargeback dispute concerning a charge from Match.com.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL further objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

Match Group, LLC's responses and Objections
to Plaintiff's Third Set of Requests for Admission                                16
APP 051                                                                    EXH. 3

**REQUEST NO. 183:** Between 2013 and March 2019, more than 30,000 Match.com subscribers lost their chargeback dispute concerning a charge from Match.com and had time remaining on their Match.com subscription.

**RESPONSE:**

MGL objects to this Request because "time remaining" is vague and undefined. MGL interprets "time remaining on their Match.com subscription" to mean the time left on the subscription that was the subject of the chargeback. MGL also objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL further objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 184:** Between 2013 and March 2019, more than 30,000 Match.com subscribers lost their chargeback dispute concerning a charge from Match.com.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL further objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 185:** Between 2013 and March 2019, the average amount of time left on the subscriptions of Match.com subscribers who sought a chargeback, lost that dispute, and did not receive a refund or reinstatement from Match was approximately 3 months.

**RESPONSE:**

MGL objects to this Request because "average amount of time left," "Match," and "approximately" are vague and undefined. MGL interprets "average amount of time left on the subscriptions of Match.com subscribers" to mean the time left on the subscription that was the

subject of the chargeback, "approximately" to mean within 10 days in this context, and "Match" to mean MGL. MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL further objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 186:** Between 2013 and March 2019, the average amount of time left on the subscriptions of Match.com subscribers who sought a chargeback, lost that dispute, and did not receive a refund or reinstatement from Match was more than 3 months.

**RESPONSE:**

MGL objects to this Request because "average amount of time left" and "Match" are vague and undefined. MGL interprets "average amount of time left on the subscriptions of Match.com subscribers" to mean the time left on the subscription that was the subject of the chargeback and "Match" to mean MGL. MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The

Match Group, LLC's responses and Objections
to Plaintiff's Third Set of Requests for Admission                                    19
APP 054                                                                          EXH. 3

Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL further objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 187:** Between 2013 and March 2019, the average amount of time left on the subscriptions of Match.com subscribers who sought a chargeback, lost that dispute, and did not receive a refund or reinstatement from Match was more than 2 months.

**RESPONSE:**

MGL objects to this Request because "average amount of time left" and "Match" are vague and undefined. MGL interprets "average amount of time left on the subscriptions of Match.com subscribers" to mean the time left on the subscription that was the subject of the chargeback and "Match" to mean MGL. MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to

seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL further objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 188:** Between 2013 and 2019, more than 50 percent of users who sought a chargeback concerning a charge from Match.com did so within one month of the start of the subscription associated with that charge.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL also objects to this Request because "users" is vague and undefined. MGL further objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive,

overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 189:** Between 2013 and 2019, more than 40 percent of users who sought a chargeback concerning a charge from Match.com did so within one month of the start of the subscription associated with the disputed charge.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000

Match Group, LLC's responses and Objections
to Plaintiff's Third Set of Requests for Admission                22
APP 057                                                          EXH. 3

documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 190:** Between 2013 and 2019, more than 70 percent of users who sought a chargeback concerning a charge from Match.com did so within two months of the start of the Match.com subscription associated with the disputed charge.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 191:** Between 2013 and 2019, more than 60 percent of users who sought a chargeback concerning a charge from Match.com did so within two months of the start of the Match.com subscription associated with the disputed charge.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day between 2013 and 2019 or based on one day between 2013 and 2019. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 192:** Less than 10 percent of Match.com subscribers who lost a chargeback dispute with Match.com contacted Match.com customer care after losing their dispute.

**RESPONSE:**

MGL objects to this Request as "contacted" is vague and undefined. MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for

monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL also objects to this Request as vague and confusing because it does not specify a relevant time period. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 193:** Less than 5 percent of Match.com subscribers who lost a chargeback dispute with Match.com contacted Match.com customer care after losing their dispute.

**RESPONSE:**

MGL objects to this Request as "contacted" is vague and undefined. MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL also objects to this Request as vague and confusing because it does not specify a relevant time period. Lastly, MGL objects that this Request is harassing, abusive,

overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 194:** Less than 4 percent of Match.com subscribers who lost a chargeback dispute with Match.com contacted Match.com customer care after losing their dispute.

**RESPONSE:**

MGL objects to this Request as "contacted" is vague and undefined. MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL also objects to this Request as vague and confusing because it does not specify a relevant time period. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 195:** Less than 3 percent of Match.com subscribers who lost a chargeback dispute with Match.com contacted Match.com customer care after losing their dispute.

**RESPONSE:**

MGL objects to this Request as "contacted" is vague and undefined. MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. MGL also objects to this Request as vague and confusing because it does not specify a relevant time period. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 196:** Less than 5 percent of Match.com subscribers who lost a chargeback dispute with Match.com contacted Match.com customer care after losing their dispute to request that their Match.com account be reactivated.

**RESPONSE:**

MGL objects to this Request as "contacted" is vague and undefined. MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback practice at issue in Count IV, Dkt. 86 (Mem. Op. and

Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. Lastly, MGL objects to this Request as duplicative of Request No. 193. MGL also objects to this Request as vague and confusing because it does not specify a relevant time period. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding chargebacks.

Based on these objections, MGL will not respond.

**REQUEST NO. 197:** Match Group[,] LLC does not own the dating platform with the brand name OKCupid [sic].

**RESPONSE:**

MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case as it seeks information regarding dating sites other than Match.com, namely OkCupid, and information not relevant to the claims in the Amended Complaint. The Court has already ruled that information regarding dating platforms other than Match.com is irrelevant. Dkt. 164 (Order) at 2. Moreover, this Request is not narrowly tailored to any of the claims related to the Match.com online cancellation flow, Match.com chargeback policy, or the Match.com Guarantee brought in the FTC's Amended Complaint. In accordance with the Order, MGL will not respond to this Request. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to

342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents reflecting corporate structure and ownership.

Based on these objections, MGL will not respond.

**REQUEST NO. 198:** Match Group[,] LLC does not own the dating platform with the brand name PlentyOfFish.

**RESPONSE:**

MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case as it seeks information regarding dating sites other than Match.com, namely PlentyOfFish, and information not relevant to the claims in the Amended Complaint. The Court has already ruled that information regarding dating platforms other than Match.com is irrelevant. Dkt. 164 (Order) at 2. Moreover, this Request is not narrowly tailored to any of the claims related to the Match.com online cancellation flow, Match.com chargeback policy, or the Match.com Guarantee brought in the FTC's Amended Complaint. In accordance with the Order, MGL will not respond to this Request. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents reflecting corporate structure and ownership.

Based on these objections, MGL will not respond.

**REQUEST NO. 199:** Match Group[,] LLC does not own any People Media dating platforms.

**RESPONSE:**

MGL objects to this Request because "People Media dating platforms" is vague and undefined. MGL also objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case as it seeks information regarding dating sites other than Match.com, namely People Media and information not relevant to the claims in the Amended Complaint. The Court

Match Group, LLC's responses and Objections
to Plaintiff's Third Set of Requests for Admission                29
APP 064                                                    EXH. 3

has already ruled that information regarding dating platforms other than Match.com is irrelevant. Dkt. 164 (Order) at 2. Moreover, this Request is not narrowly tailored to any of the claims related to the Match.com online cancellation flow, Match.com chargeback policy, or the Match.com Guarantee brought in the FTC's Amended Complaint. In accordance with the Order, MGL will not respond to this Request. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents reflecting corporate structure and ownership.

Based on these objections, MGL will not respond.

**REQUEST NO. 200:** Match Group[,] LLC has authority to operate the dating platform with the brand name OKCupid [sic].

**RESPONSE:**

MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case as it seeks information regarding dating sites other than Match.com, namely OkCupid and information not relevant to the claims in the Amended Complaint. The Court has already ruled that information regarding dating platforms other than Match.com is irrelevant. Dkt. 164 (Order) at 2. Moreover, this Request is not narrowly tailored to any of the claims related to the Match.com online cancellation flow, Match.com chargeback policy, or the Match.com Guarantee brought in the FTC's Amended Complaint. Additionally, MGL objects to this Request as vague due to its use of the word "authority," and to the extent that the Request calls for a legal conclusion. In accordance with the Order, MGL will not respond to this Request. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than

278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents reflecting corporate structure and ownership.

Based on these objections, MGL will not respond.

**REQUEST NO. 201:** Match Group[,] LLC has authority to operate the dating platform with the brand name PlentyOfFish.

**RESPONSE:**

MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case as it seeks information regarding dating sites other than Match.com, namely PlentyOfFish and information not relevant to the claims in the Amended Complaint. The Court has already ruled that information regarding dating platforms other than Match.com is irrelevant. Dkt. 164 (Order) at 2. Moreover, this Request is not narrowly tailored to any of the claims related to the Match.com online cancellation flow, Match.com chargeback policy, or the Match.com Guarantee brought in the FTC's Amended Complaint. Additionally, MGL objects to this Request as vague due to its use of the word "authority," and to the extent that the Request calls for a legal conclusion. In accordance with the Order, MGL will not respond to this Request. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents reflecting corporate structure and ownership.

Based on these objections, MGL will not respond.

**REQUEST NO. 202:** Match Group[,] LLC has authority to operate the People Media dating sites.

**RESPONSE:**

MGL objects to this Request because "People Media dating sites" is vague and undefined. MGL also objects to this Request as irrelevant, overbroad, and not proportional to the needs of the

case as it seeks information regarding dating sites other than Match.com, namely People Media and information not relevant to the claims in the Amended Complaint. The Court has already ruled that information regarding dating platforms other than Match.com is irrelevant. Dkt. 164 (Order) at 2. Moreover, this Request is not narrowly tailored to any of the claims related to the Match.com online cancellation flow, Match.com chargeback policy, or the Match.com Guarantee brought in the FTC's Amended Complaint. Additionally, MGL objects to this Request as vague due to its use of the word "authority," and to the extent that the Request calls for a legal conclusion. In accordance with the Order, MGL will not respond to this Request. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents reflecting corporate structure and ownership.

Based on these objections, MGL will not respond.

**REQUEST NO. 203:** Match Group[,] LLC does not have authority to operate the dating site with the brand name OKCupid [sic].

**RESPONSE:**

MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case as it seeks information regarding dating sites other than Match.com, namely OkCupid and information not relevant to the claims in the Amended Complaint. The Court has already ruled that information regarding dating platforms other than Match.com is irrelevant. Dkt. 164 (Order) at 2. Moreover, this Request is not narrowly tailored to any of the claims related to the Match.com online cancellation flow, Match.com chargeback policy, or the Match.com Guarantee brought in the FTC's Amended Complaint. Additionally, MGL objects to this Request as vague due to its use of the word "authority," and to the extent that the Request calls for a legal conclusion. In

accordance with the Order, MGL will not respond to this Request. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents reflecting corporate structure and ownership.

Based on these objections, MGL will not respond.

**REQUEST NO. 204:** Match Group[,] LLC does not have authority to operate the dating site with the brand name PlentyOfFish.

**RESPONSE:**

MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case as it seeks information regarding dating sites other than Match.com, namely PlentyOfFish and information not relevant to the claims in the Amended Complaint. The Court has already ruled that information regarding dating platforms other than Match.com is irrelevant. Dkt. 164 (Order) at 2. Moreover, this Request is not narrowly tailored to any of the claims related to the Match.com online cancellation flow, Match.com chargeback policy, or the Match.com Guarantee brought in the FTC's Amended Complaint. Additionally, MGL objects to this Request as vague due to its use of the word "authority," and to the extent that the Request calls for a legal conclusion. In accordance with the Order, MGL will not respond to this Request. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents reflecting corporate structure and ownership.

Based on these objections, MGL will not respond.

**REQUEST NO. 205:** Match Group[,] LLC does not have authority to operate the People Media dating sites.

**RESPONSE:**

MGL objects to this Request because "People Media dating sites" is vague and undefined. MGL also objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case as it seeks information regarding dating sites other than Match.com, namely People Media and information not relevant to the claims in the Amended Complaint. The Court has already ruled that information regarding dating platforms other than Match.com is irrelevant. Dkt. 164 (Order) at 2. Moreover, this Request is not narrowly tailored to any of the claims related to the Match.com online cancellation flow, Match.com chargeback policy, or the Match.com Guarantee brought in the FTC's Amended Complaint. Additionally, MGL objects to this Request as vague due to its use of the word "authority," and to the extent that the Request calls for a legal conclusion. In accordance with the Order, MGL will not respond to this Request. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents reflecting corporate structure and ownership.

Based on these objections, MGL will not respond.

**REQUEST NO. 206:** Match.com had not decided to permanently cease offering the Match Guarantee before Match Group, Inc. received the FTC's 2017 CID.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses, as Match.com permanently ceased the Match.com Guarantee in April 2019, which was over 4 years ago, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will

Match Group, LLC's responses and Objections
to Plaintiff's Third Set of Requests for Admission                34
APP 069                                                    EXH. 3

never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents and interrogatory and RFA responses regarding the discontinuation of the Guarantee.

Based on these objections, MGL will not respond.

**REQUEST NO. 207:** Match Group, LLC had not decided to permanently cease offering the Match Guarantee before Match Group, Inc. received the FTC's 2017 CID.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses, as MGL permanently ceased the Match.com Guarantee in April 2019, which was over 4 years ago, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. MGL objects to this Request as duplicative of Request for Admission No. 84 to MGL. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents and interrogatory and RFA responses regarding the discontinuation of the Guarantee.

Based on these objections, MGL will not respond.

**REQUEST NO. 208:** Match Group, LLC had not decided to permanently cease engaging in the chargeback practice at issue in Count IV of the FTC's complaint before Match Group, Inc. received the FTC's 2017 CID.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses, as MGL permanently ceased the chargeback practice at issue in Count IV in March 2019, which was over 4 years ago, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced documents and interrogatory and RFA responses regarding the discontinuation of the chargeback practice.

Based on these objections, MGL will not respond.

**REQUEST NO. 209:** During the time period that Match.com offered subscriptions that included the Match Guarantee, less than half of subscribers who met the requirements of the Guarantee accepted the Guarantee Extension through the Guarantee Progress Page on Match.com.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the

Match Group, LLC's responses and Objections
to Plaintiff's Third Set of Requests for Admission                                   36
APP 071                                                                          EXH. 3

conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding the Guarantee.

Based on these objections, MGL will not respond.

**REQUEST NO. 210:** During the time period that Match offered the Match Guarantee, less than 10 percent of users who purchased a six month subscription that included the Match Guarantee satisfied the Match Guarantee's requirements and became eligible to accept a Guarantee Extension.

**RESPONSE:**

MGL objects to this Request as "Match" is vague and undefined. MGL interprets "Match" to mean MGL. MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding the Guarantee.

Based on these objections, MGL will not respond.

**REQUEST NO. 211:** Hesam Hosseini stated in an October 8, 2019 letter to the Better Business Bureau that "84% of members who started the process of disabling a recurring charge online completed it within twenty-four hours, with a further 4% completing it at a later time."

**RESPONSE:**

MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. The FTC is already in possession of the letter produced at F01-MG-0028537.

Based on these objections, MGL will not respond.

**REQUEST NO. 212:** The language in box C312 of the spreadsheet identified with the Bates number MATCHFTC427066 is the same language that was available on Match.com on the FAQ page titled "Guarantee - How it works" in January 2017.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced FAQ documents.

Based on these objections, MGL will not respond.

**REQUEST NO. 213:** The language in box C313 of the spreadsheet identified with the Bates number MATCHFTC427066 is the same language that was available on Match.com on the FAQ page titled "Guarantee - Redeeming your free time" in January 2017.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced FAQ documents.

Based on these objections, MGL will not respond.

**REQUEST NO. 214:** The language in box C3223 of the spreadsheet identified with the Bates number MATCHFTC427066 is the same language that was available on Match.com on the FAQ page titled "Match Guarantee for In-App Purchases" in January 2017.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices

on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced FAQ documents.

Based on these objections, MGL will not respond.

**REQUEST NO. 215:** The language in box C315 of the spreadsheet identified with the Bates number MATCHFTC427066 is the same language that was available on Match.com on the FAQ page titled "Guarantee - Tracking your progress" in January 2017.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced FAQ documents.

Based on these objections, MGL will not respond.

**REQUEST NO. 216:** The language in box C316 of the spreadsheet identified with the Bates number MATCHFTC427066 is the same language that was available on Match.com on the FAQ page titled "Guarantee - Why there are requirements" in January 2017.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced FAQ documents.

Based on these objections, MGL will not respond.

**REQUEST NO. 217:** The language in box C253 of the spreadsheet identified with the Bates number MATCHFTC427066 is the same language that was available on Match.com on the FAQ page titled "Private Mode - Current Subscription with Guarantee" in January 2017.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices

on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced FAQ documents.

Based on these objections, MGL will not respond.

**REQUEST NO. 218:** Between 2014 and 2023, less than 100 customers have cancelled a Match.com subscription by fax.

**RESPONSE:**

MGL objects to this Request because "customers" is vague and undefined. MGL will interpret "customers" to mean Match.com subscribers. MGL further objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding methods of cancellation.

Based on these objections, MGL will not respond.

**REQUEST NO. 219:** Between 2014 and 2023, less than 50 customers have cancelled a Match.com subscription by fax.

**RESPONSE:**

MGL objects to this Request because "customers" is vague and undefined. MGL will interpret "customers" to mean Match.com subscribers. MGL further objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000

documents, and the FTC has taken nine depositions. Defendants have already produced data regarding methods of cancelation.

Based on these objections, MGL will not respond.

**REQUEST NO. 220:** Between 2014 and 2023, less than 20 customers have cancelled a Match.com subscription by fax.

**RESPONSE:**

MGL objects to this Request because "customers" is vague and undefined. MGL will interpret "customers" to mean Match.com subscribers. MGL further objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding methods of cancelation.

Based on these objections, MGL will not respond.

**REQUEST NO. 221:** Between 2014 and 2023, less than 10 customers have cancelled a Match.com subscription by fax.

**RESPONSE:**

MGL objects to this Request because "customers" is vague and undefined. MGL will interpret "customers" to mean Match.com subscribers. MGL further objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000

documents, and the FTC has taken nine depositions. Defendants have already produced data regarding methods of cancelation.

Based on these objections, MGL will not respond.

**REQUEST NO. 222:** Between 2014 and 2023, less than 5 customers have cancelled a Match.com subscription by fax.

**RESPONSE:**

MGL objects to this Request because "customers" is vague and undefined. MGL will interpret "customers" to mean Match.com subscribers. MGL further objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding methods of cancelation.

Based on these objections, MGL will not respond.

**REQUEST NO. 223:** Between 2014 and 2023, less than 1,000 customers have cancelled a Match.com subscription by mail.

**RESPONSE:**

MGL objects to this Request because "customers" is vague and undefined. MGL will interpret "customers" to mean Match.com subscribers. MGL further objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding methods of cancelation.

Based on these objections, MGL will not respond.

**REQUEST NO. 224:** Between 2014 and 2023, less than 500 customers have cancelled a Match.com subscription by mail.

**RESPONSE:**

MGL objects to this Request because "customers" is vague and undefined. MGL will interpret "customers" to mean Match.com subscribers. MGL further objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced data regarding methods of cancelation.

Based on these objections, MGL will not respond.

**REQUEST NO. 225:** Other than in its Terms of Use, Match.com has never disclosed to consumers on its website that they can cancel a subscription by fax.

**RESPONSE:**

MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced discovery regarding disclosures of Match.com's cancellation methods.

Based on these objections, MGL will not respond.

**REQUEST NO. 226:** Other than in its Terms of Use, Match.com has never disclosed to consumers on its website that they can cancel a subscription by mail.

**RESPONSE:**

MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced discovery regarding disclosures of Match.com's cancellation methods.

Match Group, LLC's responses and Objections
to Plaintiff's Third Set of Requests for Admission          45
APP 080                                          EXH. 3

Based on these objections, MGL will not respond.

**REQUEST NO. 227:** Other than in its Terms of Use, Match.com does not currently disclose to consumers on its website that they can cancel a subscription by fax.

**RESPONSE:**

MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced discovery regarding disclosures of Match.com's cancellation methods.

Based on these objections, MGL will not respond.

**REQUEST NO. 228:** Other than in its Terms of Use, Match.com does not currently disclose to consumers on its website that they can cancel a subscription by mail.

**RESPONSE:**

MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced discovery regarding disclosures of Match.com's cancellation methods.

Based on these objections, MGL will not respond.

**REQUEST NO. 229:** MATCHFTC603394 accurately describes a change to Match.com's refund policy that occurred in 2016.

**RESPONSE:**

MGL objects to this Request as irrelevant, overbroad, and not proportional to the needs of the case as Match.com's refund policy is not relevant to the FTC's claims in the Amended Complaint. MGL objects to this Request because "a change" is vague and undefined. MGL further

objects this Request as vague and confusing because MATCHFTC603394 describes multiple changes, not just "a change." Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced discovery regarding Match.com's refund policies.

Based on these objections, MGL will not respond.

**REQUEST NO. 230:** After receiving the FTC's Civil Investigative Demand, Match.com deleted videos from its YouTube.com page that advertised the Match.com Guarantee.

**RESPONSE:**

MGL objects to this Request as vague and confusing to the extent it suggests "Match.com" is a person or entity capable of deleting things. MGL interprets "Match.com" to mean MGL. MGL further objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions.

Based on these objections, MGL will not respond.

**REQUEST NO. 231:** Match Group[,] LLC did not retain a copy of every video deleted from Match.com's YouTube.com page after receiving the FTC's Civil Investigative Demand.

**RESPONSE:**

MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Lastly, MGL objects to this Requests as irrelevant, overboard, and not proportional to the needs of the case as it is not limited to videos relevant to the parties claims and defenses. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions.

Based on these objections, MGL will not respond.

**REQUEST NO. 232:** In 2017, Match.com's policy was that customers were not entitled to exceptions to Match.com's requirements for qualifying for a Guarantee Extension.

**RESPONSE:**

MGL objects to this Request as "entitled to" and "exceptions" are vague and undefined. MGL objects to this Request because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Request is irrelevant and not proportional

to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. MGL further objects to the Request as vague as to time because it is unclear if the FTC is asking MGL to admit based on every day 2017 or based on one day within 2017. Lastly, MGL objects that this Request is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have, combined, already responded to 342 RFAs and produced more than 278,000 documents, and the FTC has taken nine depositions. Defendants have already produced Match.com's policies regarding the Guarantee.

Based on these objections, MGL will not respond.

[signature page to follow]

Dated: July 10, 2023

*/s/ Angela C. Zambrano*

Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: 214-981-3300
Fax: 214-981-3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310-595-9500
Fax: 310-595-9501

Benjamin M. Mundel (admitted *pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711

*Attorneys for Match Group, Inc. and*
*Match Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and forgoing document

was served on all counsel of record via e-mail as outlined below on July 10, 2023.

Reid Abram Tepfer
rtepfer@ftc.gov
M Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov

*/s/ Angela C. Zambrano*
Angela C. Zambrano

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

FEDERAL TRADE COMMISSION,
Plaintiff,

vs.

MATCH GROUP, INC., a corporation, and
MATCH GROUP, LLC, formerly known as
MATCH.COM, LLC, a limited liability
company,

Defendants.

Case No. 3:19-cv-02281-K

## DEFENDANT MATCH GROUP, LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FOURTH[1] SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Rules"), Defendant Match Group, LLC ("MGL"), by and through its undersigned counsel, submits its responses and objections to Plaintiff Federal Trade Commission ("Plaintiff" or "FTC") Fourth Set of Interrogatories, which contains one interrogatory (the "Interrogatory"):

### I.      GENERAL OBJECTIONS

1.      <u>Privilege</u>. MGL objects to the Interrogatory to the extent it seeks documents or information that is subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all communications with, or work product of, any outside attorney) (collectively, "Privileged

---

[1] The FTC incorrectly labeled the interrogatory served on June 8, 2023, as No. 19 in the third set. In fact, the FTC served its first set (numbered 1-16) on MGL on August 29, 2022; second set (numbered 17-19) on MGL on December 15, 2022; and third set (numbered 20-21) on MGL on March 22, 2023. To avoid confusion, MGL has renamed the interrogatory served on June 8, 2023 as No. 22 in the fourth set. MGL does not admit that this Interrogatory No. 22 is in fact the 22nd interrogatory served on MGL, when counting discrete subparts, as required by Rule 33. Additionally, MGL does not waive any arguments that the FTC has exceeded the number of interrogatories that it is permitted to serve on MGL.

Information"). Any inadvertent disclosure of Privileged Information by MGL shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

2.    <u>Reservation of Right to Supplement</u>. Given the stage of the litigation, MGL has not completed its investigation of the facts or law relating to this action, and discovery in this matter is ongoing. Accordingly, consistent with the Rules, these responses and objections are made without prejudice to, and are not a waiver of, MGL's right to amend, correct, or supplement these responses, and are subject to MGL's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist. MGL provides these responses in good faith after reasonable inquiry and based on information that it knows or can readily obtain.

3.    <u>No Waiver</u>. By responding to the Interrogatory, MGL does not concede the relevancy of the Interrogatory, nor the relevancy or admissibility of any information provided in response thereto. The fact that information is provided in response to the Interrogatory does not mean that it is probative of any particular issue in this case. MGL expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, privilege, confidentiality, hearsay, or admissibility as evidence for any other purpose. Moreover, the right to object on any ground to the use of the responses or information provided, in any aspect of this or any other court action, arbitration, or judicial or administrative proceeding or investigation, is reserved.

## II.    SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

4.    MGL specifically objects to the Instructions and Definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. In responding, MGL will follow the requirements set forth in the Rules.

5.      MGL specifically objects to the definitions of "Match Group, LLC" the "Company," and "You" as vague, ambiguous, confusing, and overbroad because the definition includes "assumed names, prior names, and predecessor entities, including Match.com, LLC," and MGL is not sure what the FTC means by "assumed names, prior names, or predecessor entities" (other than Match.com, LLC). MGL further objects to this definition to the extent it encompasses any website other than Match.com, which is the only dating site at issue in the Amended Complaint. Throughout, MGL will interpret "Match Group, LLC" to mean MGL.

6.      MGL specifically objects to the definitions of "and" and "or" because they are ambiguous and confusing, as they instruct the terms be "construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any specification in this Request all information that otherwise might be construed to be outside the scope of the specification," and MGL is not sure what the FTC means by "bring within the scope of any specification in this Request all information that otherwise might be construed to be outside the scope of the specification." MGL will interpret these terms to have their plain, ordinary, and common-sense meaning. MGL further objects to these definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. In responding, MGL will comply with the Rules.

7.      MGL specifically objects to the definition of "any" as ambiguous and confusing as it only provides the term "shall be to include 'all,' and 'all' shall be construed to include the word 'any'" but does not define "any" or "all." MGL will interpret this term to have its plain, ordinary, and common-sense meaning. MGL further objects to this definition to the extent it purports to impose obligations on MGL that exceed those imposed by the Rules. In responding, MGL will comply with the Rules.

Match Group, LLC's Responses and Objections to
Plaintiff's Fourth Set of Interrogatories                                                    3
APP 090                                                                              EXH. 4

8.      MGL objects to the definition of "Document" as overly broad, unduly burdensome, and to the extent it refers to items outside of MGL's possession, custody, or control, particularly through its use of the phrases "regardless of origin or location" and "however and by whomever prepared, produced, disseminated, or made." MGL further objects to this definition to the extent it refers to items in Plaintiff's possession, custody, or control, or to items that have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive. MGL further objects to this definition to the extent it purports to impose obligations on MGL that exceed those required by the Rules. In responding, MGL will interpret the word "Document" to have its plain, ordinary, and common-sense meaning and will comply with the Rules.

9.      MGL specifically objects to the definitions of "Identify" and "the identity of" because they are ambiguous and confusing, as they specify different meanings in different contexts, and MGL does not know what the FTC means by "identification of . . . identities of natural Persons" or who is considered to be a "contact Persons." MGL will interpret these terms to have their plain, ordinary, and common-sense meaning. MGL further objects to these definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. MGL objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding, MGL will comply with the Rules.

10.     MGL specifically objects to the definition of "each" as ambiguous and confusing because it specifies it is to be "construed to include 'every,' and 'every' shall be construed to include 'each'" but does not define "every" or "each." MGL will interpret this term to have its

Match Group, LLC's Responses and Objections to
Plaintiff's Fourth Set of Interrogatories                                    4
APP 091                                                                    EXH. 4

plain, ordinary, and common-sense meaning. MGL further objects to this definition to the extent it purports to impose obligations on MGL that exceed those imposed by the Rules. MGL objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding, MGL will comply with the Rules.

11.    The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into the below specific objections to the Interrogatory.

### III.    SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

**INTERROGATORY NO. 22:** For Match.com Customers who sought a Chargeback for a Match.com charge, lost the dispute, and did not have their account automatically reinstated by Match.com after losing the dispute between 2013 and the present, state separately for each year:

a) The percentage of such Customers who contacted customer care after losing the Chargeback dispute;

b) The number of such Customers who contacted customer care after losing the Chargeback dispute;

c) The number of such Customers who did not contact customer care after losing the Chargeback dispute;

d) The percentage of such Customers whose accounts were reinstated after losing the Chargeback dispute and contacting customer care;

e) The number of such Customers whose accounts were reinstated after losing the Chargeback dispute and contacting customer care;

f) The number of such Customers whose accounts were not reinstated after losing the Chargeback dispute and contacting customer care;

g) The percentage of Customers who, after having their account reinstated, received time credited to their Match.com subscription equivalent to the amount of time that their Match.com account was suspended during the pendency of the Chargeback dispute;

h) The number of Customers who, after having their account reinstated, received time credited to their Match.com subscription equivalent to the amount of time that their Match.com account was suspended during the pendency of the Chargeback dispute;

    i)   The number of Customers who did not, after having their account reinstated, receive time credited to their Match.com subscription equivalent to the amount of time that their Match.com account was suspended during the pendency of the Chargeback dispute; and

    j)   The average amount of time remaining on such Customers' Match.com subscriptions.

**RESPONSE:**

MGL objects to this Interrogatory because "time" and "contact[ing/ed]" are vague, ambiguous, and undefined. MGL objects to this Interrogatory because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the chargeback policy at issue in Count IV, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the data requested in this Interrogatory is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count IV. Additionally, MGL objects to this Interrogatory because it includes more than one single discrete question, which violates the Rules that limit each party to 25 single questions, including subparts. As noted in MGL's objections to previous interrogatories, the FTC has repeatedly served interrogatories containing multiple discrete subparts and therefore count as multiple interrogatories. Thus, MGL has already responded to well over 25 interrogatories, when properly counted, so this Interrogatory exceeds the 25 interrogatory limit set by Rule 33(a). MGL also objects to this Interrogatory to the extent the requested information already has been provided to the FTC in response to the FTC's Third Set of Interrogatories, Interrogatory No. 21, and/or in MATCHFTC846838. Further requests for duplicative information place an unnecessary burden on MGL. Lastly, MGL objects to subpart (j) as vague and confusing because it is unclear what the FTC means by "average amount of time remaining" or to which "such Customers'

Match.com subscriptions" the FTC is referring. As a result, subpart (j) is so vague and confusing that MGL is incapable of giving it a reasonable interpretation. Lastly, MGL objects that this Interrogatory is harassing, abusive, overly burdensome, and not proportional to the needs of the case given the Defendants have produced more than 278,000 documents and the FTC has taken nine depositions.

Based on these objections, MGL will not produce any additional information.

[signature page to follow]

Dated: July 10, 2023                    /s/ Angela C. Zambrano
                                        Angela C. Zambrano
                                        State Bar No. 24003157
                                        angela.zambrano@sidley.com
                                        Chelsea A. Priest
                                        State Bar No. 24102375
                                        cpriest@sidley.com
                                        Tayler G. Bragg
                                        State Bar No. 24109943
                                        tbragg@sidley.com
                                        SIDLEY AUSTIN LLP
                                        2021 McKinney Avenue, Suite 2000
                                        Dallas, TX 75201
                                        Telephone: 214-981-3300
                                        Fax: 214-981-3400

                                        Chad S. Hummel (admitted *pro hac vice*)
                                        chummel@sidley.com
                                        SIDLEY AUSTIN LLP
                                        1999 Avenue of the Stars, 17th Floor
                                        Los Angeles, CA 90067
                                        Telephone: 310-595-9500
                                        Fax: 310-595-9501

                                        Benjamin M. Mundel (admitted *pro hac vice*)
                                        bmundel@sidley.com
                                        SIDLEY AUSTIN LLP
                                        1501 K Street, N.W.
                                        Washington, DC 20005
                                        Telephone: 202-736-8000
                                        Fax: 202-736-8711

                                        *Attorneys for Match Group, Inc. and
                                        Match Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and forgoing document was served on all counsel of record via e-mail as outlined below on July 10, 2023.

Reid Abram Tepfer
rtepfer@ftc.gov
M Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov

*/s/ Angela C. Zambrano*
Angela C. Zambrano

# EXHIBIT 5

## THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, Plaintiff, | Case No. 3:19-cv-02281-K |
| vs. | |
| MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company, | |
| Defendants. | |

### DEFENDANT MATCH GROUP, LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIFTH[1] SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Rules"), Defendant Match Group, LLC ("MGL"), by and through its undersigned counsel, submits its responses and objections to Plaintiff Federal Trade Commission ("Plaintiff" or "FTC") Fifth Set of Interrogatories, which contains one interrogatory (the "Interrogatory"):

### I.       GENERAL OBJECTIONS

1.       <u>Privilege</u>. MGL objects to the Interrogatory to the extent it seeks documents or information that is subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all communications with, or work product of, any outside attorney) (collectively, "Privileged

---

[1] The FTC incorrectly labeled the interrogatories served on June 21, 2023, as Nos. 20, 21, 22, and 23 in the fourth set. In fact, the FTC served its first set (numbered 1-16) on MGL on August 29, 2022; second set (numbered 17-19) on MGL on December 15, 2022; third set (numbered 20-21) on MGL on March 22, 2023; and fourth set (incorrectly labeled as the third set with the interrogatory incorrectly numbered 19 instead of 22) on June 8, 2023. To avoid confusion, MGL has renamed the interrogatories served on June 21, 2023, as Nos. 23-26 in the fifth set. MGL does not admit that the interrogatories are in fact the 23rd through 26th interrogatories served on MGL, when counting discrete subparts, as required by Rule 33. Additionally, MGL does not waive any arguments that the FTC has exceeded the number of interrogatories that it is permitted to serve on MGL.

EXH. 5

Information"). Any inadvertent disclosure of Privileged Information by MGL shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

2.     <u>Reservation of Right to Supplement</u>. Given the stage of the litigation, MGL has not completed its investigation of the facts or law relating to this action, and discovery in this matter is ongoing. Accordingly, consistent with the Rules, these responses and objections are made without prejudice to, and are not a waiver of, MGL's right to amend, correct, or supplement these responses, and are subject to MGL's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist. MGL provides these responses in good faith after reasonable inquiry and based on information that it knows or can readily obtain.

3.     <u>No Waiver</u>. By responding to the Interrogatory, MGL does not concede the relevancy of the Interrogatory, nor the relevancy or admissibility of any information provided in response thereto. The fact that information is provided in response to the Interrogatory does not mean that it is probative of any particular issue in this case. MGL expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, privilege, confidentiality, hearsay, or admissibility as evidence for any other purpose. Moreover, the right to object on any ground to the use of the responses or information provided, in any aspect of this or any other court action, arbitration, or judicial or administrative proceeding or investigation, is reserved.

## II.     SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

4.     MGL specifically objects to the Instructions and Definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. In responding, MGL will follow the requirements set forth in the Rules.

5.    MGL specifically objects to the definitions of "Match Group, LLC" the "Company," and "You" as vague, ambiguous, confusing, and overbroad because the definition includes "assumed names, prior names, and predecessor entities, including Match.com, LLC," and MGL is not sure what the FTC means by "assumed names, prior names, or predecessor entities" (other than Match.com, LLC). MGL further objects to this definition to the extent it encompasses any website other than Match.com, which is the only dating site at issue in the Amended Complaint. Throughout, MGL will interpret "Match Group, LLC" to mean MGL.

6.    MGL specifically objects to the definitions of "and" and "or" because they are ambiguous and confusing, as they instruct the terms be "construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any specification in this Request all information that otherwise might be construed to be outside the scope of the specification," and MGL is not sure what the FTC means by "bring within the scope of any specification in this Request all information that otherwise might be construed to be outside the scope of the specification." MGL will interpret these terms to have their plain, ordinary, and common-sense meaning. MGL further objects to these definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. In responding, MGL will comply with the Rules.

7.    MGL specifically objects to the definition of "any" as ambiguous and confusing as it only provides the term "shall be to include 'all,' and 'all' shall be construed to include the word 'any'" but does not define "any" or "all." MGL will interpret this term to have its plain, ordinary, and common-sense meaning. MGL further objects to this definition to the extent it purports to impose obligations on MGL that exceed those imposed by the Rules. In responding, MGL will comply with the Rules.

8.      MGL objects to the definition of "Document" as overly broad, unduly burdensome, and to the extent it refers to items outside of MGL's possession, custody, or control, particularly through its use of the phrases "regardless of origin or location" and "however and by whomever prepared, produced, disseminated, or made." MGL further objects to this definition to the extent it refers to items in Plaintiff's possession, custody, or control, or to items that have been or could be obtained from another source that is equally available to Plaintiff or is more convenient, less burdensome, or less expensive. MGL further objects to this definition to the extent it purports to impose obligations on MGL that exceed those required by the Rules. In responding, MGL will interpret the word "Document" to have its plain, ordinary, and common-sense meaning and will comply with the Rules.

9.      MGL specifically objects to the definitions of "Identify" and "the identity of" because they are ambiguous and confusing, as they specify different meanings in different contexts, and MGL does not know what the FTC means by "identification of . . . identities of natural Persons" or who is considered to be a "contact Persons." MGL will interpret these terms to have their plain, ordinary, and common-sense meaning. MGL further objects to these definitions to the extent they purport to impose obligations on MGL that exceed those imposed by the Rules. MGL objects to the definition of these terms as overly broad, unduly burdensome, and oppressive to the extent they purport to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding, MGL will comply with the Rules.

10.      MGL specifically objects to the definition of "each" as ambiguous and confusing because it specifies it is to be "construed to include 'every,' and 'every' shall be construed to include 'each'" but does not define "every" or "each." MGL will interpret this term to have its plain, ordinary, and common-sense meaning. MGL further objects to this definition to the extent

it purports to impose obligations on MGL that exceed those imposed by the Rules. MGL objects to the definition of this term as overly broad, unduly burdensome, and oppressive to the extent it purports to require information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. In responding, MGL will comply with the Rules.

11.     The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into the below specific objections to the Interrogatory.

### III.     SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

**INTERROGATORY NO. 23:**[2] Identify (a) every Advertisement or promotion of the Match Guarantee or the availability of the Guarantee Extension presented on any media or platform other than Match.com from 2013 to the present (including, if applicable, the Bates number associated with the Advertisement or promotion); (b) the medium through which the Advertisement or promotion was made available to consumers; (c) the time period(s) that the Advertisement or promotion aired or was otherwise made available to consumers; (d) the number of consumers who viewed or heard the Advertisement or promotion; and (e) the nature of any disclosure in the Advertisement or promotion related to the requirements associated with qualifying for a Guarantee Extension.

**RESPONSE:**

MGL objects to this Interrogatory because "promotion," "availability," "presented," "media," "platform," "medium," "aired," "made available," "viewed," "heard," and "nature of any disclosure" are vague, ambiguous, and undefined. MGL also objects to this Request as overbroad, irrelevant, not proportional to the needs of the case, and part of an attempted fishing expedition by Plaintiff to impermissibly probe matters beyond the scope of the present litigation because it seeks discovery regarding "every advertisement or promotion ... presented on any media or platform ... from 2013 to the present," which includes advertising campaigns not active during the relevant time period. MGL objects to this Interrogatory because it seeks discovery that is not relevant to

---

[2] Incorrectly numbered Interrogatory No. 20 in the Interrogatories to MGL served on June 21, 2023.

EXH. 5

either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the Guarantee at issue in Count III, Dkt. 86 (Mem. Op. and Order) at 13, 15, 35, so the information requested in this Interrogatory is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Count III, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Count III. Additionally, MGL objects to this Interrogatory because it includes more than one single discrete question, which violates the Rules that limit each party to 25 single questions, including subparts. As noted in MGL's objections to previous interrogatories, the FTC has repeatedly served interrogatories containing multiple discrete subparts and therefore count as multiple interrogatories. Thus, MGL has already responded to well over 25 interrogatories, when properly counted, so this Interrogatory exceeds the 25 interrogatory limit set by Rule 33(a). MGL also objects to this Interrogatory to the extent that the requested information has already been provided to the FTC in response to the FTC's First Set of Interrogatories to MGL, Interrogatory No 9, and that the requested documents (including advertisements mentioning the Match.com Six Month Guarantee) have already been produced in response to the FTC's First Set of Request for Production to MGL, Request for Production No. 15. Further requests for duplicative information place an unnecessary burden on MGL. Lastly, MGL objects that this Interrogatory is harassing, abusive, overly burdensome, and not proportional to the needs of the case given Defendants have produced more than 278,000 documents, and the FTC has taken ten depositions.

       Based on these objections, MGL will not provide any additional information.

**INTERROGATORY NO. 24:**[3] Identify (a) every dating site or platform that Match Group, LLC has operated or had the authority to control, in whole or in part, since 2013; (b) the time period(s) of such operation or authority to control; and (c) any Documents (by Bates number) that authorize(d) Match Group[,] LLC to operate such dating site(s) or platform(s). For any dating site or platform that MGLLC has operated or had authority to control only in part, identify the specific aspects of the dating site or platform that Match Group, LLC operated or had authority to control and the time period(s) associated with such operation or authority to control.

**RESPONSE:**

MGL objects to this Interrogatory because "dating site," "platform," "operated," "authority to control," "authorize," and "specific aspects," are vague, ambiguous, and undefined. MGL objects to this Interrogatory as irrelevant, overbroad, and not proportional to the needs of the case as it seeks information regarding dating sites other than Match.com and information not relevant to the claims in the Amended Complaint. The Court has already ruled that information regarding dating platforms other than Match.com is irrelevant. Dkt. 164 (Order) at 2. Moreover, this Interrogatory is not narrowly tailored to any of the claims related to the Match.com online cancellation flow, Match.com chargeback policy, or the Match.com Guarantee brought in the FTC's Amended Complaint. In accordance with the Order, MGL will not respond to this Interrogatory. Additionally, MGL objects to this Interrogatory because it includes more than one single discrete question, which violates the Rules that limit each party to 25 single questions, including subparts. As noted in MGL's objections to previous interrogatories, the FTC has repeatedly served interrogatories containing multiple discrete subparts and therefore count as multiple interrogatories. Thus, MGL has already responded to well over 25 interrogatories, when properly counted, so this Interrogatory exceeds the 25 interrogatory limit set by Rule 33(a). The FTC emailed on July 21, 2023, that the FTC is withdrawing this Interrogatory. MGL also objects to this Interrogatory as MGL has already produced and provided the requested documents and

---

[3] Incorrectly numbered Interrogatory No. 21 in the Interrogatories to MGL served on June 21, 2023.

EXH. 5

information regarding the only dating site at issue in the Amended Complaint, Match.com, in response to the FTC's First Set of Interrogatories to MGL, Interrogatory No 4, and in response to the FTC's First Set of Request for Production to MGL, Requests for Production No. 11. Lastly, MGL objects that this Interrogatory is harassing, abusive, overly burdensome, and not proportional to the needs of the case given Defendants have produced more than 278,000 documents, and the FTC has taken ten depositions.

Based on these objections, MGL will not provide any additional information.

**INTERROGATORY NO. 25:**[4] State, separately by month from 2013, the number of complaints that Match Group, LLC has received that reference or relate to the following topics:

a. The disclosure of requirements relating to the Match Guarantee;
b. The Guarantee Extension redemption process;
c. The denial of account access due to the customer seeking a chargeback of a charge relating to a Match.com subscription;
d. Unexpected or unauthorized charges from Match.com;
e. Match.com's cancellation processes; and
f. Match.com's online cancellation mechanism.

**RESPONSE:**

MGL objects to this Request as "from 2013" is vague and ambiguous as it is unclear whether the FTC includes 2013 or only time after 2013, and it does not specify an end date. MGL objects to this Interrogatory because "complaints," "reference," "relate to," "disclosure of requirements," "redemption process," "denial of account access," "chargeback of a charge," "relating to," "unexpected or unauthorized charges," "cancellation processes," and "online cancellation mechanism" are vague, ambiguous, and undefined. MGL objects to this Interrogatory because it seeks discovery that is not relevant to either party's claims or defenses and is not proportional to the needs of the case. The Court dismissed with prejudice the FTC's claims for monetary relief related to the policies at issue in Counts III and IV, Dkt. 86 (Mem. Op. and Order)

---

[4] Incorrectly numbered Interrogatory No. 22 in the Interrogatories to MGL served on June 21, 2023.

EXH. 5

at 13, 15, 35, so the information requested in this Interrogatory is irrelevant and not proportional to the needs of the case. The FTC is limited to seeking only injunctive relief related to Counts III and IV, and MGL has verified a Stipulation Regarding Permanently Discontinued Practices on Match.com, Dkt. 146, which provides that MGL and Match.com will never again engage in the conduct challenged in Counts III and IV. Additionally, MGL objects to this Interrogatory because it includes more than one single discrete question, which violates the Rules that limit each party to 25 single questions, including subparts. As noted in MGL's objections to previous interrogatories, the FTC has repeatedly served interrogatories containing multiple discrete subparts and therefore count as multiple interrogatories. Thus, MGL has already responded to well over 25 interrogatories, when properly counted, so this Interrogatory exceeds the 25 interrogatory limit set by Rule 33(a). MGL also objects to this Interrogatory to the extent the requested information has already been provided to the FTC in response to the 2017 CID Supplemental Written Question No. 14, and that the requested documents (including tens of thousands of customer care records) have already been produced in response to the FTC's First Set of Request for Production to MGL, Request for Production No. 44 to MGL. Further requests for duplicative information place an unnecessary burden on MGL. Lastly, MGL objects that this Interrogatory is harassing, abusive, overly burdensome, and not proportional to the needs of the case given Defendants have produced more than 278,000 documents, and the FTC has taken ten depositions.

Based on these objections, MGL will not provide any additional information.

**INTERROGATORY NO. 26:**[5] Identify every unique version of Match.com's online cancellation flow (defined for purposes of this Interrogatory as beginning on the "account" page of Match.com and continuing through every screen to the cancellation confirmation page) that was made available to consumers on Match.com between September 2014 and the present. For each such version of the online cancellation flow provide:

  a. The time period during which the particular version of the online cancellation flow was available to consumers on Match.com;
  b. Any changes made to the user interface (including the visual display of the page or verbiage used on the page) of the online cancellation flow from the preceding version of the cancellation flow (including changes made to the account settings page, password entry page, and any other page of the online cancellation flow); and
  c. Any A/B testing related to any aspect of the particular version of the online cancellation flow (and the Bates No. for documents related to this A/B testing), regardless of whether the change tested was implemented or not.

**RESPONSE:**

MGL objects to this Interrogatory because "'account' page," "made available," "user interface," "visual display of the page," "verbiage," "preceding version," "A/B testing" "related to any aspect," and "change tested" are vague, ambiguous, and undefined. The FTC has exceeded the 25-interrogatory limit set by Rule 33(a) with this Interrogatory No. 26. In addition, the FTC agreed on a July 20, 2023, telephone call with Defendants' counsel to withdraw interrogatories in excess of 25. Notwithstanding that agreement, the FTC emailed Defendants' counsel on July 21, 2023, the day when MGL's responses to the Interrogatories were due, purporting to withdraw a different Interrogatory (what MGL renumbered as Interrogatory No. 24) and demanding that MGL instead answer this Interrogatory No. 26. This is inappropriate for a number of reasons. MGL objects to this Interrogatory because it includes more than one single discrete question, which violates the Rules that limit each party to 25 single questions, including subparts. As noted in MGL's objections to previous interrogatories, the FTC has repeatedly served interrogatories containing multiple discrete subparts and therefore count as multiple interrogatories. Thus, MGL has already

---

[5] Incorrectly numbered Interrogatory No. 23 in the Interrogatories to MGL served on June 21, 2023.

EXH. 5

responded to well over 25 interrogatories, when properly counted, so this Interrogatory exceeds the 25 interrogatory limit set by Rule 33(a). MGL also objects to this Interrogatory to the extent the requested information has already been provided to the FTC in response to the FTC's First Set of Interrogatories to MGL, Interrogatory No. 7, and that the requested documents (including videos and/or screenshots of various versions of the online cancelation flow) have already been produced in response to the FTC's First Set of Request for Production to MGL, Request for Production No. 33, and the FTC's First Set of Requests for Production to MGI, Requests Nos. 20, 21, and 22. Further requests for duplicative information place an unnecessary burden on MGL. Moreover, MGL objects that this Interrogatory is harassing, abusive, overly burdensome, and not proportional to the needs of the case given Defendants have produced more than 278,000 documents, and the FTC has taken ten depositions.

Based on these objections, MGL will not provide any additional information.

[signature page to follow]

11

Dated: July 21, 2023

*/s/ Angela C. Zambrano*

Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: 214-981-3300
Fax: 214-981-3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310-595-9500
Fax: 310-595-9501

Benjamin M. Mundel (admitted *pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711

*Attorneys for Match Group, Inc. and
Match Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and forgoing document

was served on all counsel of record via e-mail as outlined below on July 21, 2023.

Reid Abram Tepfer
rtepfer@ftc.gov
M. Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov
Jason C. Moon
jmoon@ftc.gov

*/s/ Angela C. Zambrano*
Angela C. Zambrano

APP 110                                                                                    EXH. 5

# EXHIBIT 6



United States of America
**FEDERAL TRADE COMMISSION**
Southwest Region

Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201

May 23, 2023

**By E-Mail**

Angela C. Zambrano
Sidley Austin LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
angela.zambrano@sidley.com

Chad S. Hummel
Sidley Austin LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
chummel@sidley.com

Benjamin M. Mundel
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005
bmundel@sidley.com

Re: *FTC v. Match Group, Inc. and Match Group, LLC*, Case No. 3:19-cv-02281-K (N.D. Tex.)

Dear Counsel:

I am writing to address a number of serious deficiencies in Defendant Match Group, Inc. ("MGI") and Defendant Match Group, LLC's ("MGLLC") responses to the FTC's discovery request served upon Defendants on March 22, 2023.[1] Before doing so, I note that on April 24, 2023, MGLLC made a partial production of documents in response to the FTC's Third Set of Interrogatories to MGLLC. While our review of this incomplete production is ongoing, I am contacting you now concerning the many deficiencies already identified, as outlined below, to ensure a timely resolution to these issues. Should we identify additional deficiencies during our

---

[1] On March 22, 2023, the FTC served Defendant MGI with Plaintiff's Second Set of Interrogatories, Second Set of Requests for Admission, and Second Set of Requests for Production. Additionally, the FTC served Defendant MGLLC with Plaintiff's Third Set of Interrogatories, Second Set of Requests for Admission, and Third Set of Requests for Production.

review, I will bring those issues to your attention. Below, I have identified the issues requiring your immediate attention.

On April 21, 2023, MGI and MGLLC served the FTC with their respective responses and objections to the FTC's discovery requests. Specifically, MGI served the FTC with its responses and objections to the FTC's Second Set of Interrogatories, response and objections to the FTC's Second Set of Requests for Admission, and responses and objections to the FTC's Second Set of Requests for Production. Additionally, MGLLC served the FTC with its responses and objections to FTC's Second Set of Requests for Admission and its responses and objections to FTC's Third Set of Requests for Production. I also note that MGLLC served the FTC with MGI's responses and objections to the FTC's Third Set of Interrogatories served on MGLLC. Several days later, on April 25, 2023, MGLLC served the FTC with its First Amended responses and objections to the FTC's Third Set of Interrogatories.

Both Defendants have asserted invalid objections and failed to respond adequately to the FTC's discovery requests. In numerous instances, Defendants relied on improper objections and refused to respond substantively to the FTC's discovery requests in blatant violation of the Federal Rules. These actions are improper and contrary to the Federal Rules and well-settled law.

More importantly, the Court's time and resources will be wasted should Defendants force the FTC to seek to compel discovery under Rule 37. To avoid this, the FTC demands that Defendants cease its dilatory tactics and instead exercise good faith diligence in satisfying its discovery obligations immediately. Accordingly, the FTC demands that MGI and MGLLC withdraw all of their invalid objections and fully answer the FTC's discovery requests in their amended responses. Finally, the FTC demands that Defendants produce all information and documents responsive to the FTC's discovery requests by June 2, 2023.

## 1. **MGI and MGLLC's Invalid Boilerplate Objections**

Throughout all of MGI and MGLLC's discovery responses, Defendants have asserted invalid boilerplate and general objections. As you are aware, as the parties resisting discovery, MGI and MGLLC have the burden to justify their objections to the production of discovery. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). MGI and MGLLC must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

Additionally, Federal Rule of Civil Procedure 36(a)(4) provides in pertinent part, "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."  Indeed, "[b]road-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection." *SEC v. Brady*, 238 F.R.D. 429, 437(N.D. Tex. 2006). In addition, denials to requests for admission should not be made vague and evasive by the addition of qualifying language. *See XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, 2014 U.S. Dist. LEXIS 9598, 2014 WL 295053, at *4-5 (E.D. La. Jan. 27, 2014) ("These partial denials 'as written' render the responses vague and evasive. Bollinger must provide new responses that either flatly deny the portion of the request that it does not admit, or that state in detail why it

EXH. 6

cannot truthfully admit or deny the remainder, or must in good faith qualify its denials of the rest. . . . It must provide a response that complies with Rule 36(a)(4).”). “Rule 36 requires that denials be stated with specificity and ‘fairly respond to the substance of the matter[.]’” *Adams Offshore, Ltd. v. OSA Int’l, LLC*, 2011 U.S. Dist. LEXIS 113538, 2011 WL 4625371, at *11 n.11 (S.D. Tex. Sept. 30, 2011) (citing FED. R. CIV. P. 36(a)(4)). Accordingly, the FTC demands that Defendants withdraw all of their invalid boilerplate and general objections.

### A. *MGI and MGLLC's Improper Responses Made "Subject To And Without Waiving" Objections*

The manner in which both MGI and MGLLC responded to the FTC's discovery requests by asserting objections and responding "subject to and without waiving" objections is improper and contrary to well-settled law. As such, the FTC demands that MGI and MGLLC withdraw all such improper responses. MGI responded to all of FTC's Second Set of Interrogatories and almost all of the FTC's Second Set of Requests for Admission "[s]ubject to and without waiving" its general and specific objections.[2] Similarly, MGLLC responded to all of the FTC's Third Set of Interrogatories, nearly all of the FTC's Second Set of Requests for Admission, and a number of the FTC's Third Set of Requests for Production of Documents "[s]ubject to and without waiving" its general and specific objections.[3]

Courts have ruled that the practice of responding to discovery requests "subject to and without waiving" objections is "manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure." *Sprint Communications Co., L.P. v. Comcast Cable Communications, LLC*, Nos. 11-2684-JWL, 11-2685-JWL, & 11-2686-JWL, 2014 WL 545544, at *2 (D. Kan. Feb. 11, 2014). *See also Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014).

### B. *MGI and MGLLC's Improper Objections to Definitions*

Both MGI and MGLLC assert throughout their discovery responses that certain terms are vague and undefined but fail to explain how these terms are unclear under their ordinary meaning. The most striking example of this is MGI's objection to "the definition of "Match Group, LLC" as vague, ambiguous, confusing, and overbroad."[4] As another example, MGLLC objects to "the definition of Match Group, Inc." as vague, ambiguous, confusing, and overbroad. Both MGI and MGLLC fail to explain their basis for objecting to the definition of "Match Group, LLC" and "Match Group, Inc." Absent substantiation, such claims are nothing more than

---

[2] *See, e.g.*, MGI's Responses to FTC's Second Set of Interrogatories, Responses to Interrogatory Nos. 10-12; MGI's Responses to FTC's Second Set of Requests for Admission, Responses to Request Nos. 144-153 and 156-179.

[3] *See, e.g.*, MGLLC's Responses to FTC's Third Set of Interrogatories, Responses to Interrogatory Nos. 20 and 21; MGLLC's First Amended Responses to FTC's Third Set of Interrogatories, Responses to Interrogatory Nos. 20 and 21; MGLLC's Responses to FTC's Second Set of Requests for Admission, Request Nos. 128-137 and 140-163; MGLLC's Responses to FTC's Third Set of Requests for Production of Documents, Request Nos. 76 and 77.

[4] *See, e.g.*, MGI's Responses to FTC's Second Set of Interrogatories, Specific Objection No.9; MGI's Responses to FTC's Second Set of Requests for Production of Documents, Specific Objection No. 9.

EXH. 6

improper boilerplate objections and must be removed. MGI and MGLLC must respond adequately to these requests pursuant to the Federal Rules.

## 2. **MGI and MGLLC's Failure to Adequately Respond and Produce Evidence**

Throughout Defendants' discovery responses, MGI and MGLLC have failed to adequately answer, search for and produce responsive evidence on the basis that the FTC's discovery request is irrelevant, not proportional to the needs of the case, among other things. *See* Match Group, Inc.'s Second Responses and Objections to the FTC's Second Set of Interrogatories, Response to Interrogatory No. 11 (objecting that the FTC's discovery request is irrelevant and not proportional to the needs of this case and refusing to search for and produce evidence on this basis.) This type of response is improper,[5] and as such, the FTC demands that Defendants state whether any information or documents are being withheld, identify such information and documents Defendants are withholding, and the reasons for withholding such responsive information and documents.

Moreover, Defendants have improperly refused to produce information and documents within their possession, custody, or control related to conduct similar to that alleged in the complaint on other platforms they control. As you know, the Federal Rules provide that the FTC is entitled to request and receive relevant discovery relating to these entities if it is within MGI's or MGLLC's "possession, custody, or control." FED. R. CIV. P. 34(a)(1). Moreover, the requested information is unquestionably relevant. MGI has made the scope of the injunctive relief and its control of other platforms a central issue in this litigation. The FTC is accordingly entitled to seek discovery to determine whether MGI is engaging in these same law violations on the other platforms it controls.

Further, MGI plainly has custody or control of the requested information. Indeed, in the MGI 30(b)(6) deposition, Sharmistha Dubey—as the 30(b)(6) Representative—testified that "Match Group North America is an aggregation of a few operating companies that have their development teams, engineering teams, et cetera, based out of North America." Dubey also explained that "Match Group North America is the oversight role" through which she was "overseeing four different operating companies that were based in North America." Dubey also clarified that the operating companies included match.com, OkCupid, Plenty of Fish, and the Affinity products."[6] Mandy Ginsberg (former CEO of MGI) confirmed that MGI oversaw and managed several dating platforms or operating companies by testifying in her deposition that "as MGI's CEO, I was responsible for the public company and spent most of my time really running the—well, managing the CEOs who were running the different brands… the CEOs or GMs that

---

[5] *See Weems v. Hodnett*, No. 10-cv-1452, 2011 WL 3100554, at *1 (W.D. La. July 25, 2011) ("In the face of such objections, it is impossible to know whether information has been withheld and, if so, why. This is particularly true in cases like this where multiple 'general objections' are incorporated into many of the responses with no attempt to show the application of each objection to the particular request.")

[6] *See* Match Group, Inc. 30(b)(6) Dep. 11, March, 3, 2023.

EXH. 6

reported up to me were… Plenty of Fish, Match.com, OkCupid, PAIRS in Japan. There's a lot of them… Hinge… We had really dozens of brands."[7]

MGI has control over its wholly owned subsidiaries and the reporting structures it has created, and thus can reasonably access or obtain the requested relevant information. In fact, MGI has previously done exactly that: in 2017, the FTC issued MGI a Civil Investigation Demand requesting information concerning Match.com. MGI produced thousands of relevant documents and responded substantively to interrogatories concerning Match.com despite MGI's current contention that such documents are outside of its possession, custody, or control.[8] MGI has provided no explanation for why it is taking a contradictory stance in litigation that it does not have possession, custody, or control of information concerning another platform Match Group, LLC controls, Tinder, or other dating platforms it controls.

### A. MGI's Refusal to Produce Information and Documents

In all of its responses to the FTC's Second Set of Interrogatories, MGI objects to each Interrogatory claiming that the FTC's discovery requests are irrelevant and not proportional to the needs of the case.[9] Additionally, MGI objects to nearly all of the FTC's Requests for Admission by claiming that the FTC's discovery requests concerning "Match Group North America" and "Match Group Americas" are irrelevant, overbroad, and not proportional to the needs of the case.[10] However, MGI fails to specify, provide support, or engage in an analysis to support any of its claims. Accordingly, the FTC demands that these improper objections be removed in amended responses.

Defendant has a duty to comply with the Federal Rules, and as such, must explain the extent to which a discovery request is overbroad, respond to the FTC's discovery request to the extent that it is not, and explain the scope of what MGI is answering or responding to. *See McLeod*, 894 F.2d at 1485 ("A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive."); *See also Consumer Electronics,* 2008 WL 4327253, at *2 ("If there is an objection based upon an unduly broad scope, such as time frame or geographic location, discovery should be provided as to those matters within the scope which is not disputed. For example, if discovery is sought nationwide for a ten-year period, and the responding party objects on the grounds that only a

---

[7] *See* Mandy Ginsberg Dep. 17, February 23, 2023.

[8] The FTC further notes that, to the extent that MGI is now contending that it does not have possession, custody, or control of documents relating to Match.com, this representation is inconsistent with MGI's earlier representations to another federal court that it operates Match.com. *See* Brief for Match Group, Inc. as Amicus Curiae, *Epic Games, Inc., vs. Apple Inc.*, Nos.21-16506 & 21-16695 (9th Cir.) (Nov. 29, 2021) ("Match Group, Inc. ("Match") is a Dallas, Texas-based online dating service which operates dating web sites in over 50 countries. Originally founded in 1993, Match operates www.match.com and mobile apps.").

[9] *See* MGI's Responses to FTC's Second Set of Interrogatories, Responses to Interrogatory Nos. 10, 11, and 12.

[10] *See* MGI's Responses to FTC's Second Set of Requests for Admission, Responses to Request Nos. 144-153 and 156-179.

EXH. 6

five-year period limited to activities in the state of Florida is appropriate, the responding party shall provide responsive discovery falling within the five-year period as to the State of Florida.") "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490.

MGI's claims are nothing more than improper boilerplate objections and must be removed, and any information or documents withheld on the basis of such objections must be produced. Moreover, the Federal Rules of Civil Procedure 26(b) sets the scope of discovery broadly. Fed. R. Civ. P.26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.").

Further, the FTC demands that MGI fully answer the FTC's discovery requests. As you know, MGI has an obligation to fully answer each Interrogatory. "A party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld." *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014).

For one example, in its response to the FTC's Interrogatory No. 10, MGI wholly fails to describe Match Group North America, Match Group North America's corporate relationship to MGI, MGLLC, and match.com.[11] As a second example, in its response to the FTC's Interrogatory No. 12, MGI claims that "Match Group United States," "Match Group Americas," and "Match Group North Americas" are not legal entities and therefore do not have former or current employees."[12] This response directly contradicts Dubey's testimony from the MGI 30(b)(6) deposition, wherein she testified that she served as the President of Match Group North America and reported to Mandy Ginsberg.[13] Accordingly, the FTC demands that MGI provide full answers in its amended responses.

Further, in response to a number of the FTC's Second Set of Requests for Production of Documents, MGI claims that "Defendants have already produced documents" but fails to identify the documents by Bates number.[14] In the FTC's Second Set of Requests for Production of Documents, the FTC clearly instructed MGI to identify by Bates number, any document previously produced to the FTC. Accordingly, the FTC demands that MGI identify all referenced documents in its responses by Bates number and production date.

---

[11] *See* MGI's Responses to FTC's Second Set of Interrogatories, Responses to Interrogatory No. 10.

[12] *See* MGI's Responses to FTC's Second Set of Interrogatories, Responses to Interrogatory No. 12.

[13] *See* Match Group, Inc. 30(b)(6) Dep. 15, March, 3, 2023.

[14] *See* MGI's Responses to FTC's Second Set of Requests for Production of Documents, Responses to Request Nos. 38, 41, 42, 43, 44, 45, and 51.

EXH. 6

### B. *MGLLC's Refusal to Produce Information and Documents*

First, in its responses to the FTC's discovery requests, MGLLC lodges invalid objections and fails to fully respond to the FTC's discovery requests. For example, in response to the FTC's Third Set of Interrogatories, MGLLC claims that the FTC's Interrogatories are not relevant and not proportional to the needs of the case.[15] As another example, MGLLC objects to nearly all of the FTC's Requests for Admission with boilerplate objections claiming that the FTC's discovery requests are irrelevant, overbroad, and not proportional to the needs of the case.[16] Yet, MGLLC fails to specify, provide support, or engage in an analysis to support any of its claims. "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490. As such, MGLLC's claims are nothing more than improper boilerplate objections and must be removed, and any information or documents withheld on the basis of such objections must be produced. Again, the Federal Rules of Civil Procedure 26(b) sets the scope of discovery broadly. Fed. R. Civ. P.26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). Accordingly, the FTC demands that MGLLC remove these improper objections in amended responses.

Second, in its responses to the FTC's Third Request for Production of Documents, MGLLC claims that "Defendants have already produced documents" with respect to Request Nos. 61, 64, and 68, but fails to identify such documents by Bates number.[17] In the FTC's Third Set of Requests for Production of Documents, the FTC clearly instructed MGLLC to identify by Bates number, any document previously produced to the FTC. Accordingly, the FTC demands that MGLLC identify all referenced documents in its responses by Bates number and production date.

Third, MGLLC claims there are no responsive documents such as, for example, bylaws or procedures that refer or relate to Match Group United States, Match Group Americas, and Match Group North America.[18] MGLLC also claims that it did not locate any responsive documents after it conducted a "reasonable search."[19] The FTC requests that MGLLC explain the search protocol it used to determine that it did not have any documents responsive to the FTC's discovery requests.

---

[15] *See* MGLLC's First Amended Responses to the FTC's Third Set of Interrogatories, Responses to Interrogatory Nos. 20 and 21.

[16] *See* MGLLC's Responses to FTC's Second Set of Requests for Admission, Responses to Request Nos. 128-137 and 140-163.

[17] *See, e.g.,* MGLLC's Responses to FTC's Third Set of Requests for Production of Documents, Responses to Request Nos.61, 64, and 68.

[18] *See* MGLLC's Responses to FTC's Third Set of Requests for Production of Documents, Response to Request No. 62.

[19] *See* MGLLC's Responses to FTC's Third Set of Requests for Production of Documents, Response to Request No. 63.

EXH. 6

Finally, in its response to the FTC's Request for Production of Documents, MGLLC improperly narrows the scope of the FTC's discovery request by asserting that MGLLC will produce employment or engagement agreement documents that "explicitly" refer to match.com, Match Group United States, Match Group Americas, or Match Group North America.[20] The FTC demands that MGLLC fully respond to the FTC's discovery request.

### 3. MGI and MGLLC's Invalid Objections on Vagueness, Ambiguity, Confusion, Relevancy, Proportionality, Undue Burden

MGI and MGLLC assert a slew of invalid boilerplate objections throughout its discovery responses claiming that the FTC's discovery requests are vague, ambiguous, confusing,[21] irrelevant, not proportional to the needs of the case, and/or unduly burdensome.[22] However, Defendants fail to specify, provide support, or engage in an analysis to support any of their claims. Defendants, as the responding parties, have the burden to show the specific and particular way in which the FTC's discovery request is vague or ambiguous. *See McCoo*, 192 F.R.D. at 694. *See also Consumer Electronics*, 2008 WL 4327253, at *2. "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490. As such, Defendants' claims are nothing more than improper boilerplate objections and must be removed, and any information or documents withheld on the basis of such objections must be produced.

### Conclusion

MGI and MGLLC have not and cannot substantiate the invalid objections outlined above. Accordingly, the FTC demands that Defendants withdraw these meritless objections and provide full and complete responses, as required by the Federal Rules. The FTC further demands that Defendants produce any responsive documents or information currently withheld due to the above outlined improper objections. Lastly, the FTC demands that Defendants amend its responses to specify whether any documents are withheld based on any objection or privilege. In

---

[20] *See* MGLLC's Responses to FTC's Third Set of Requests for Production of Documents, Response to Request No. 73.

[21] *See*, *e.g.*, MGI's Responses to FTC's Second Set of Interrogatories, General Objection No. 5; MGI's Responses to FTC's Second Set of Requests for Admission, General Objection No. 6; MGI's Responses to FTC's Second Set of Requests for Production of Documents, General Objection No. 5; MGLLC's Responses to FTC's Third Set of Interrogatories, Specific Objection No. 5; MGLLC's Response to FTC's Second Set of Requests for Admission, Specific Objection No. 3; MGLLC's Responses to FTC's Third Set of Requests for Production of Documents, Specific Objection No. 5.

[22] *See*, *e.g.*, MGLLC's Responses to FTC's Second Set of Requests for Admission, Specific Objection No. 5; MGI's Responses to FTC's Second Set of Interrogatories, Specific Objection No. 6.

APP 119                                                                                          EXH. 6

order to avoid Court involvement on these issues, the FTC demands that Defendants cure all of the deficiencies outlined in this letter by June 2, 2023.

Sincerely,

*/s/ Reid Tepfer*
Reid Tepfer
M. Hasan Aijaz
Sarah Zuckerman
John R. O'Gorman
Erica Rollins Hilliard
Jason C. Moon
Federal Trade Commission
Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201

APP 120

EXH. 6

# EXHIBIT 7

United States of America
# FEDERAL TRADE COMMISSION
Southwest Region

Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201

July 11, 2023

**By E-Mail**

Angela C. Zambrano
Sidley Austin LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
angela.zambrano@sidley.com

Chad S. Hummel
Sidley Austin LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
chummel@sidley.com

Benjamin M. Mundel
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005
bmundel@sidley.com

Re: *FTC v. Match Group, Inc. and Match Group, LLC*, Case No. 3:19-cv-02281-K (N.D. Tex.)

Dear Counsel:

I am writing in response to Defendant Match Group, Inc. ("MGI") and Defendant Match Group, LLC's ("MGLLC") June 2nd letter regarding MGI and MGLLC's invalid objections and failure to adequately respond to the FTC's discovery requests and produce evidence. Below, we address a number of MGI and MGLLC's claims from the June 2nd letter, and then specify the FTC's discovery demands regarding those requests. In an effort to compromise, the FTC has significantly narrowed our discovery requests, and we hope that the parties will be able to resolve these issues without Court involvement. However, if Defendants continue to refuse to satisfy their discovery obligations, the FTC will seek to compel under Rule 37. Accordingly, the FTC demands that MGI and MGLLC fully answer the FTC's discovery requests in their

EXH. 7

amended responses. Further, the FTC demands that Defendants produce all information and documents responsive to the FTC's discovery requests by July 21, 2023.

Separately, I write to address, in Section 3 below, Defendants' inadequate discovery responses produced July 10 in which Defendants refused wholesale to respond substantively to the FTC's Requests for Admissions and Interrogatory. The FTC demands that these deficiencies be remedied by July 21. If you believe a conference call would resolve these issues, we request counsel's availability for a call no later than July 21.

## 1.  <u>Defendants' Failure to Adequately Respond and Produce Evidence</u>

In response to the FTC's discovery requests relating to MGNA, MGI lodged boilerplate invalid objections and provided improper and inadequate responses. Below, we have detailed the specific deficiencies and our proposals to remedy MGI's inadequate responses. In short, the FTC demands that MGI amend its responses and submit full and adequate responses to the FTC's discovery requests.

First, MGI failed to adequately answer FTC's Interrogatory No. 10, which requests a description of "Match Group North America, its legal status, its business purpose, the individuals responsible for its management, its relationship to Match Group, Inc., Match Group, LLC, and Match.com, and any contracts or agreements that authorize Match Group North America to operate or control, or participate in the operation or control of, Match.com." In its response, MGI lodged invalid objections and stated: "Subject to and without waiving the foregoing objections, MGI responds that Match Group North America is not and does not refer to a business entity. 'Match Group North America' refers to a reporting structure that provides a liaison between various brands (including Match.com) and MGI. The individuals holding a title reflecting involvement in the Match Group North America reporting structure are identified in organizational charts produced at MATCHFTC741252–MATCHFTC742593."[1]

This two-sentence response is inadequate. It fails to describe the Match Group North America ("MGNA")'s business purpose, its relationship to MGI, MGLLC, and Match.com, and any contracts or agreements that authorize MGNA to operate or control, or participate in the operation or control of, Match.com. Moreover, the terms "reporting structure" and "liaison between various brands" are intentionally vague and obfuscate MGNA's business purpose. Additionally, in response to the FTC's request for the identification of individuals responsible for the management of MGNA, MGI cited to organizational charts produced at MATCHFTC741252–MATCHFTC742593. However, the organizational charts produced at MATCHFTC741252 and MATCHFTC741290 do not contain a single reference to MGNA. The FTC accordingly demands that that this interrogatory response be amended to address these issues.

Second, MGI failed to fully answer the FTC's Interrogatory No. 11, which requests a description of MGI's authority, role or involvement in the creation or management of Match

---

[1] *See* MGI's Responses to FTC's Second Set of Interrogatories, Response to Interrogatory No. 10.

Group United Sates, Match Group Americas, and MGNA. Again, MGI lodged a slew of boilerplate objections (e.g., MGI objected that "Match Group North America" is vague and undefined), and then provided an improper one-sentence response: "Subject to and without waiving the foregoing objections, MGI created a reporting structure that includes 'Match Group United States,' 'Match Group Americas,' and 'Match Group North America.'"[2] Again, MGI's perfunctory response fails to actually answer the question posed and must be amended.

Third, MGI failed to fully answer the FTC's Interrogatory No. 12, which requests the identification of all former and current employees of Match Group United States, Match Group Americas, and MGNA, including their dates of employment and whether any other Match companies or subsidiaries simultaneously employ or employed them, whose responsibilities include or relate to the following areas regarding Match.com:

> a. Advertising or marketing;
> b. Customer Service;
> c. Corporate governance or operations;
> d. General management;
> e. Research and development;
> f. Legal compliance;
> g. Accounting or finance;
> h. Cancellation of subscriptions;
> i. Match Guarantee; and
> j. Policies and practices related to chargebacks.

In response, Defendant asserted a slew of invalid boilerplate objections and followed by an improper one-sentence response: "Subject to and without waiving the foregoing objections, MGI responds 'Match Group United States,' 'Match Group Americas,' and 'Match Group North Americas' are not legal entities and therefore do not have former or current employees."[3] This response is directly contradicted by MGI's 30(b)(6) Representative, former CEO Sharmistha Dubey, who testified that "Match Group North America is an aggregation of a few operating companies that have their development teams, engineering teams, et cetera, based out of North America." Dubey further testified that "Match Group North America is the oversight role" through which she was "overseeing four different operating companies that were based in North America." Dubey stated that these operating companies included match.com, OkCupid, Plenty of Fish, and the Affinity products.[4]

Mandy Ginsberg (former CEO of MGI) confirmed that MGI oversaw and managed several dating platforms or operating companies by testifying in her deposition that "as MGI's CEO, I was responsible for the public company and spent most of my time really running the—

---

[2] *See* MGI's Responses to FTC's Second Set of Interrogatories, Response to Interrogatory No. 11.

[3] *See* MGI's Responses to FTC's Second Set of Interrogatories, Response to Interrogatory No. 12.

[4] *See* Match Group, Inc. 30(b)(6) Dep. pg. 11, March, 3, 2023.

EXH. 7

well, managing the CEOs who were running the different brands… the CEOs or GMs that reported up to me were… Plenty of Fish, Match.com, OkCupid, PAIRS in Japan. There's a lot of them… Hinge… We had really dozens of brands."[5] Accordingly, the FTC demands that MGI either withdraw all invalid and improper objections and amend its responses or explain why the testimony of its former CEOs was incorrect.

Further, the FTC demands that Defendants produce all relevant and responsive evidence relating to Match Group United States, Match Group Americas, and Match Group North America, as requested in the FTC's discovery requests to MGI and MGLLC.[6] In your June 2nd letter, Defendants propose, for example, to produce only the final version employment or engagement agreements between MGI or MGLLC and the individuals listed in the FTC's Third Set of Requests for Production to MGLLC and Second Set of Requests for Production to MGI. The FTC insists Defendants produce all materially different versions of employment or engagement agreements. The materially different versions of such agreements are necessary as MGI and MGLLC's control and authority over Match.com, corporate structure, including the so called "reporting structure" of MGNA, et al., directly relate to this case. Defendants are in possession of all employment or engagement agreements, have not alleged any burden in producing this evidence, and as such, the FTC insists that Defendants produce all materially different versions of the employment or engagement agreements.

### 2. Defendants' Failure to Identify Documents Bates Numbers as Required by the ESI Order

Finally, the FTC demands that Defendants identify the specific Bates numbers when referring to particular documents or evidence responsive to the FTC's discovery requests. In numerous instances, in response to the FTC's discovery requests, MGI and MGLLC claim that the responsive evidence has previously been provided to the FTC, yet failed to provide the Bates number.[7]

In your June 2nd letter, Defendants claim that they "have no obligation to identify Bates numbers. The Rules allow parties to produce documents as they are held in the usual course of business or organize and label them to correspond to the categories in the requests. Fed. R. Civ. P. 34(b)." This position is in direct violation of the Court's ESI Order. The Court's ESI Order specifically requires Defendants cite to the Bates number of the document.[8]  Simply put,

---

[5] *See* Mandy Ginsberg Dep. pg. 17, February 23, 2023.

[6] *See* FTC's Second Request for Production of Documents to MGI, Request Nos. 38-51; FTC's Third Request for Production of Documents to MGLLC, Request Nos. 61-74.

[7] *See e.g.,* MGLLC's Responses and Objections to FTC's Third Request for Production of Documents, Responses to Request Nos. 61, 64, 65, 66, 67, 68, 72; MGI's Response and Objections to FTC's Second Request for Production of Documents, Responses to Request Nos. 38, 41, 42, 43, 44, 45, 50.

[8] *See* Doc. 132 at 4 ("The parties need not re-produce in discovery documents that were already produced to the FTC in response to the FTC's CID. Instead, the parties will refer to the bates number of the relevant documents.").

Defendants' refusal to provide Bates numbers is improper and the FTC demands that MGI and MGLLC amend their responses and cite to the specific Bates numbers, as required.

### 3. Defendants' Repeated Refusal to Respond Substantively to Discovery Requests

In Defendants' July 21 discovery responses, Defendants wholesale refused to respond to the FTC's Requests for Admissions and Interrogatories, objecting that the FTC has received enough discovery.[9] Defendants further appear to rely once more on their so-called "stipulation" as a means of withholding discovery[10]—an argument the Court has already explicitly rejected.[11] Moreover, in its written responses to the FTC's Request for Production, Defendants in numerous instances failed to identify documents by Bates number[12] in contravention of the Court's ESI Order.[13]

Once again, Defendants appear to contend that they may unilaterally determine if they will respond to the FTC's discovery requests. However, the Court's scheduling order provides that discovery remains open. Moreover, these requests are nonburdensome and concern central issues. Accordingly, the FTC demands that Defendants provide substantive responses by July 21. Should Defendants fail to do so, the FTC reserves its right to compel and this letter and any response thereto shall constitute a meet and confer in satisfaction of the Local Rules. The Court has rejected Defendants' past attempts to improperly refuse discovery, and Court likely do so with respect to these most recent responses to uphold the foundational principle of civil litigation

---

[9] *See* MGI's Responses and Objections to the FTC's Fourth Set of Interrogatories; MGLLC's Responses and Objections to the FTC's Third Set of Requests for Admission; MGI's Responses and Objections to the FTC's Third Set of Requests for Admission. Throughout these requests, Defendants characterize the discovery as "harassing, abusive, overly burdensome, and not proportional to the needs of the case" and state that they will not respond further based on these objections.

[10] *See, e.g.*, MGLLC's Responses and Objections to the FTC's Fourth Set of Requests for Production, Responses to Requests No. 4-16 and 18; MGLLC's Responses and Objections to the FTC's Fourth Set of Interrogatories, Response to Interrogatory No. 22; and MGLLC's Responses and Objections to the FTC's Third Set of Requests for Admission, Responses to Requests No. 175-196, 206-210, 212-217, and 230-232.

[11] *See* Doc. 184 (overruling Defendants' Objection to the Magistrates' Ruling overruling Defendants' objections on the basis that the FTC's FTC Act claims are "moot").

[12] *See, e.g.*, MGLLC's Responses and Objections to the FTC's Fourth Set of Requests for Production, Responses to Requests No. 1 and 3-10.

[13] *See* Doc. 133 at 4 ("The parties need not re-produce in discovery documents that were already produced to the FTC in response to the FTC's CID. Instead, the parties will refer to the bates number of the relevant documents.").

EXH. 7

that it is the Court and the federal rules—as opposed to the parties—that determine when discovery is permitted.

Further, as you are aware, the FTC has several outstanding discovery requests. Critically, the FTC has Requests for Admission pending that concern datasets that Defendants have failed to explain adequately both in response to interrogatories and at Match Group, LLC's 30(b)(6) deposition.[14] As I have stated before, the FTC remains willing to negotiate means of limiting Defendants burden concerning the facts at issue in the FTC's Fourth Set of Requests for Admission. But these facts must be established in admissible form, as opposed to off-the-record conversations between counsel. Moreover, as previously mentioned, we would be willing to withdraw pertinent requests if the parties can agree to a stipulation concerning the facts relating to the data at issue in these requests. The FTC would also withdraw requests pertaining to particular datasets if Defendants can confirm that they have no intention of using datasets in their defense. Defendants have yet to engage with the FTC's offer to minimize Defendants' burden and focus this case on the real issues in dispute. I hope that you will reconsider, as this approach would avoid unnecessary burden for both the parties and the Court. Should Defendants refuse to respond substantively to these requests for admission on their due date of July 17 or provide this information in another admissible format, the FTC may have no choice but to seek to compel responses to these requests as well, and this letter and any response thereto shall constitute the meet and confer required by the Local Rules.

Lastly, the FTC demands that Defendants state by July 17 whether they have no intention of responding substantively to the FTC's outstanding Interrogatories.[15] It is in the interest of judicial economy that the Court be permitted to rule on these issues simultaneously, and it would not unduly burden Defendants to merely state whether they will actually respond to these requests as required by the rules. Accordingly, the FTC requests that Defendants state whether they will substantively to the FTC's pending discovery requests by July 17.

### Conclusion

If Defendants continue to refuse to correct their deficient discovery responses as outlined above, the FTC will seek to compel under Rule 37. The FTC demands that Defendants do so no

---

[14] *See* FTC's Fourth Set of Requests for Admission to MGI and MGLLC.

[15] *See* FTC's Fourth Set of Interrogatories to Defendant MGLLC and FTC's Fifth Set of Interrogatories to Defendant MGLLC.

EXH. 7

later than the dates provided above. Otherwise, the FTC will have no choice but to seek to compel. Thank you for your attention to this matter.

Sincerely,

*/s/ Reid Tepfer*
Reid Tepfer
M. Hasan Aijaz
Sarah Zuckerman
John R. O'Gorman
Erica Rollins Hilliard
Jason C. Moon
Nicole Conte
Federal Trade Commission
Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201

7

# EXHIBIT 8

**Tepfer, Reid A.**

| | |
|---|---|
| **From:** | Tepfer, Reid A. |
| **Sent:** | Friday, July 21, 2023 9:11 AM |
| **To:** | Priest, Chelsea A. |
| **Cc:** | chummel@sidley.com; Zambrano, Angela; Bragg, Tayler G.; Benjamin  Mundel -Contact; Aijaz, Hasan; Conte, Nicole; Hilliard, Erica; Moon, Jason C; O'Gorman, John; Zuckerman, Sarah |
| **Subject:** | FTC v. Match Group, Inc., et al. - Meet and confer |

Hi Chelsea,

It was nice speaking with you and Chad. To follow up on our discussion, we are willing to further limit our current demand in attempt to resolve our discovery dispute. Accordingly, we will narrow our demand to those requests to those identified below. In addition, I have provided additional explanation where appropriate for why we believe these requests are appropriate, necessary, and targeted to live issues central to this case.

**MGI's Responses to the FTC's Second Set of Interrogatories**
The FTC is willing to limit its current demand to amended responses concerning interrogatories 10 and 11. While we understand Defendants' position that "Match Group North America" is not a legal entity and therefore does not enter contracts or have employees. While this appears at odds with some of the evidence, including MGI's 30(b)(6) testimony, we are willing focus our current demand to a proper explanation of what MGNA actually is. As discussed this morning, we believe that describing MGNA as "a reporting structure that provides a liaison between various brands (including Match.com) and MGI" with little further explanation is inadequate. It is unclear what a "reporting structure" is, what it means to provide a "liaison between . . . brands," what "various brands" are involved, and as a whole what the business purpose is of such a "reporting structure." Further, MGI's response fails to identify "its relationship to" MGI, MGLLC, or Match.com.

Concerning Interrogatory No. 11, although MGI responded admitting that it "created" these "reporting structures," it is unclear what that means given that these reporting structures are not legal entities. Further, MGI's response fails to identify MGI's "authority, role, or involvement in the . . . management" of these "reporting structures" as requested. For example, who appoints individuals to positions within MGNA (or provides them titles)? Who actually employs them, and what authority do they have?

**MGLLC's Response to the FTC's Fourth Set of Requests for Production**
Concerning these requests, the FTC is willing to limit its current demand to RFP Nos. 1-16. These requests concern three areas: Match.com's "subscription status" link, its FAQs relating to the Match.com Guarantee, and public advertising of the Guarantee.

Requests concerning Match.com's "subscription status" link and the decision to remove this link as a top-line option on Match.com's account settings page (i.e., RFPs 1-3) are directly relevant to Defendants' defense to Count V. Specifically, Defendants have contended that the password reauthorization page was appropriate, in part, because it protected sensitive information available on the subscription status link. Accordingly, the FTC should be allowed to see precisely what information is available on that page.

The requests concerning the Guarantee FAQ pages (i.e., RFP 4-16) are directly relevant to Defendants' defense to Count III. Specifically, Defendants have contended that the information available on these pages adequately disclosed or explained terms and conditions related to the Match Guarantee. As such, the FTC should be allowed to view these pages. These FAQ captures, if they exist, would have been responsive to prior requests in discovery. See, e.g., Requests No. 26, 42.a., and 49 from the FTC's First Request for Production to MGLLC. While MGLLC's 30(b)(6) deponent referenced the information available on these FAQs and their content several times, Defendants have not as far as I'm

aware produced most FAQ pages relating to the Guarantee.  See, e.g. MGLLC 30(b)(6) First Session Dep. 76:1, 101:12; 285:21, 289:2. If captures of these FAQ pages do not exist, we simply request that MGLLC state that. Given that the FTC has unambiguously requested these captures on multiple occasions, if they are not produced and Defendants subsequently seek to rely on them, the FTC reserves the right to seek to exclude.

RFP No. 4 requests YouTube advertisements related to the Match Guarantee. Despite its relevance, the FTC is willing to withdraw RFP No. 4 if MGLLC will respond substantively and completely to Interrogatory No. 20 from the FTC's Fourth Set of Interrogatories, which requests information concerning Match.com's public advertising of the Match Guarantee. As discussed yesterday, Defendants appear to acknowledge that they advertised the Match Guarantee. However, they have yet to identify on the record what advertisements were made available to consumers. What Defendants represented to consumers concerning the Guarantee is unquestionably relevant, and Defendants should provide this information, either by responding to RFP No. 4 or by responding to the FTC's outstanding interrogatory on this subject.

**MGLLC's Response to the FTC's Fourth Set of Interrogatories (served 7/10/23)**
As noted during our call, we disagree that Interrogatory 22 seeks information that is duplicative of prior requests because it seeks information concerning accounts reinstated in response to consumers' inquiries (as opposed to for any other reason). Nevertheless, to compromise, we are willing to limit our requests to subparts (g) through (j) of Interrogatory No. 22. These subparts seek information concerning the number of consumers who received credit equivalent to the amount of time their accounts were suspended during the pendency of a chargeback dispute. This informed is needed given that Defendant MGLLC has asserted that its practice was to award such credit to consumers who requested that their accounts be reinstated, something that we believe is contradicted by the documentary evidence.

**MGLLC's Responses to the FTC's Third Set of RFAs (served 7/10/23)**
The FTC is willing to limit our demand for amended responses for RFAs 165-166, 172-196, 206-208, 212-224, 229, and 232. These requests concern several central issues in this case and have not been addressed via other forms of discovery. The FTC is further willing to eliminate from our demand RFAs 212-217 if Defendants produce the corresponding web captures for these FAQ pages, as requested in the FTC's Fourth Set of Requests for Production.

**Outstanding Interrogatories (i.e., the FTC's Fourth Set of Interrogatories to MGLLC, served 6/21/23, and the FTC's Fifth Set of Interrogatories to MGLLC, served 6/26/23)**
As a preliminary matter, I want to acknowledge, as we discussed yesterday, that the FTC inadvertently served two interrogatories in excess of the Federal Rules 25-interrogatory limit. While we disagree that the FTC's discrete subparts should constitute interrogatories counting against our total, we of course had no intention of serving more than 25 and intend to withdraw interrogatories in excess of that limit. By my count, the FTC served 27 total interrogatories. Accordingly, we withdraw the sole interrogatory in the FTC's Fifth Set of Interrogatories to MGLLC, served June 26. We additionally withdraw the interrogatory numbered #21 in the FTC's Fourth Set of Interrogatories to MGLLC. P

Concerning the FTC's Fourth Set of Interrogatories to MGLLC, served June 21, you indicated this morning that MGLLC is likely to object and not respond substantively. Having withdrawn the above two interrogatories, the FTC contends it is not is in excess of the Federal Rule's 25-interrogatory limit. These outstanding interrogatories likewise concern central issues. Interrogatory No. 20 requests information concerning Defendants' public advertisements of the Guarantee. Defendants have not provided this information in any other context. Moreover, Defendant MGLLC's 30(b)(6) deponent was unable to provide this information when asked despite it being a noticed topic for the deposition. Interrogatory No. 22, which seeks complaint numbers, likewise concerns information that has not been provided in any other context. Finally, Interrogatory No. 23, which concerns unique versions of the Match.com online cancellation flow, is requesting information that MGLLC's 30(b)(6) witness was unprepared to provide despite it being a noticed topic. As such, this is information that MGLLC has not provided in any other context.

**RFAs concerning Match.com data**
We will respond separately concerning RFAs relating to Match.com's data (i.e., FTC's Fourth Set of Requests for Admission to MGI and MGLLC), as we are reviewing Wednesday night's production and the amended interrogatory

response from earlier this week, which I imagine will bear on how that matter is resolved. As mentioned on the call today, I expect that we will be willing to withdraw RFAs that are addressed by Defendants' narrative response provided in this Tuesday's Amended Response to the FTC's Second Set of Interrogatories to MGLLC. And as discussed several times before, we remain willing to stipulate concerning the meanings of various columns if that would lessen Defendants burden and would also be willing to withdraw RFAs that concern datasets if Defendants will represent that they will not be relying upon them and if they are not pertinent to the FTC's current calculations.

**Timeline**

Given that discovery is drawing to a close next week, we ask that you please let us know which, if any, of the above responses Defendants will be amending by next Tuesday, July 25. It is our hope that by significantly limiting our demands, Defendants will allow the parties and the Court to avoid unnecessarily expending resources. As before, if Defendants refuse to amend these responses and produce the documents requested above, the FTC reserves the right to seek to compel and our letters, conferences, and this email will constitute the meet and confer on that subject.


Thanks,
Reid


Reid Tepfer
Attorney
Federal Trade Commission
(202) 677-9483

APP 132                                                                                          EXH. 8

# EXHIBIT 9

```
1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF TEXAS
2                       DALLAS DIVISION
3    FEDERAL TRADE COMMISSION,    §
                                  §  Case No. 3:19-cv-02281-K
4         Plaintiff,              §
                                  §
5         v.                      §
                                  §
6    MATCH GROUP, INC., a         §
     corporation, and MATCH       §
7    GROUP, LLC, formerly known   §
     as MATCH.COM, LLC, a         §
8    limited liability company,   §
                                  §
9         Defendants.             §
10   _____

                         ORAL DEPOSITION OF
11
                         SHARMISTHA DUBEY
12      as 30(b)(6) Representative of Match Group, Inc.,
13                        March 3, 2023
     _____
14
15
16
         ORAL DEPOSITION OF SHARMISTHA DUBEY as 30(b)(6)
17   Representative of Match Group, Inc., produced as a
     witness at the instance of the Plaintiff, and duly
18   sworn, taken in the above-styled and numbered cause on
     March 3, 2023, from 9:04 a.m. to 5:26 p.m., before
19   Joseph D. Hendrick, Certified Shorthand Reporter in and
     for the State of Texas, reported by machine shorthand,
20   at the offices of Sidley Austin LLP, 2021 McKinney
     Avenue, Suite 2000, Dallas, Texas, pursuant to Notice
21   and the Federal Rules of Civil Procedure and any
     provisions stated on the record or attached hereto.
22
23
24
25   Job No. 5651555

                                               Page 1
```

1    was actually president of Match Group North America.

2    And then in 2018 I became president of Match Group

3    overall.  And in 2020, early 2020, I became CEO of

4    Match Group.

5         Q.    And is that Match Group, Inc., when you say

6    Match Group?

7         A.    Correct, yes.

8         Q.    What's Match Group North America?

9         A.    Match Group North America is just an

10   aggregated -- aggregation of a few operating companies

11   that have their development teams, engineering teams,

12   et cetera, based out of North America.  So at that time

13   it was a few -- a handful of different businesses.

14        Q.    So when you say Match Group North America,

15   you are not referring to like a particular company, you

16   are referring to a group of companies?

17        A.    It is actually -- the Match Group North

18   America is just a -- the oversight role that I had was

19   overseeing four different operating companies that were

20   based in North America.

21        Q.    What are those four operating companies?

22        A.    Match.com, OKCupid, Overture is the

23   brand -- and it's easier for me to say the brands

24   because those are the consumer brands that everybody

25   knows them by -- Plenty of Fish, and the Affinity

Page 11

EXH. 9

```
 1      BY MR. TEPFER:
 2           Q.    At this time, did MGI directly own MG LLC?
 3                 MR. MUNDEL:  Objection.  Vague as
 4      to "directly own."
 5           A.    As I said, MGI would have been the holding
 6      company under which Match Group, LLC, resided.
 7      BY MR. TEPFER:
 8           Q.    Does -- we've talked a bit about Match
 9      Group North America.  Just to clarify, that's not a
10      corporation?
11           A.    No.
12           Q.    And it's not an LLC?
13           A.    No.
14           Q.    It's a collection of companies?
15           A.    No.  It's just one role, an oversight role,
16      one person who has an oversight role.  That's it.
17           Q.    And --
18           A.    It's just a regional way that we organized.
19      It wasn't really a company.
20           Q.    How long has that position existed for?
21                 MR. MUNDEL:  Beyond the scope.
22           A.    Yeah, I mean, it -- at a -- there was not a
23      time when it was necessary but once we became bigger,
24      we got some European businesses and we acquired some
25      Asian businesses, that's when it became more and more
```

                                                    Page 65

APP 136                                              EXH. 9

```
 1          A.     What this is is a very specific

 2    Match.com-related lunch and listen.  It's mostly to

 3    educate the broader people by the Customer Care team

 4    about things that they are hearing on Match.com, and

 5    that would be a very Match.com-related thing.

 6               It would never -- it's such a level of

 7    detail, the primary people benefit out of it are

 8    product people of Match.com.  And -- like that Brett

 9    guy mentioned here is a product person.  If -- this is

10    never a type of thing that would come up to MGI.  Ever.

11    This is a very specific Match.com in-the-weed thing.

12               MR. TEPFER:  Let the record reflect I am

13    handing the witness what has been marked Exhibit 18.

14    It is a two-page document starting on MATCHFTC323548.

15               (Marked Deposition Ex. 18)

16    BY MR. TEPFER:

17          Q.     If you wouldn't mind taking a look at this

18    and letting me know if you reviewed in preparation for

19    your testimony today.

20               MR. TEPFER:  Do y'all have this?

21               MS. ZUCKERMAN:  We have a copy.

22          A.     I definitely haven't seen this before and I

23    didn't see it in preparation, this email.

24    BY MR. TEPFER:

25          Q.     What was your position in July 2016?
```

Page 205

```
 1           A.      President, Match Group North America.

 2           Q.      And did you have any dual role at Match

 3     Group, Inc., at this time?

 4           A.      No.

 5           Q.      And what was Mandy Ginsberg's role at this

 6     time?

 7           A.      She was the CEO of Match Group North

 8     America.

 9           Q.      Would you mind reading Ms. Auderer's email

10     here from Friday, July 1, 2016?  Just let me know when

11     you're done.

12           A.      I -- let me read it.

13           Q.      Sure.

14           A.      Yep.

15           Q.      So, this is a discussion of Match.com's

16     cancellation -- online cancellation flow; is that

17     correct?

18                   MR. MUNDEL:  I object.  The witness has

19     just said that -- first, she's not on this email chain,

20     but during this time period she was not at Match Group,

21     Inc., so how is this possibly part of her corporate

22     testimony?

23                   MR. TEPFER:  Well, we're getting to that.

24                   MR. MUNDEL:  So let's get to it.

25                   MR. TEPFER:  Okay.  Well, let her answer
```

Page 206

```
 1              REPORTER'S CERTIFICATION

 2      DEPOSITION OF SHARMISTHA DUBEY as 30(b)(6)

 3          Representative of Match Group, Inc.

 4                   March 3, 2023

 5          I, Joseph D. Hendrick, Notary Public and

 6      Certified Shorthand Reporter in the State of Texas,

 7      hereby certify to the following:

 8              That the Witness, SHARMISTHA DUBEY as

 9      30(b)(6) Representative of Match Group, Inc., was duly

10      sworn by the officer and that the transcript of the

11      oral deposition is a true record of the testimony given

12      by the witness;

13              I further certify that pursuant to FRCP

14      Rule 30(f)(1) the signature of the deponent:

15                  X      was requested by the deponent or

16      a party before the completion of the deposition and is

17      to be returned within 30 days from date of receipt of

18      the transcript;

19              _____ was not requested by the

20      deponent or a party before the completion of the

21      deposition;

22              I further certify that the amount of time

23      used by each party is as follows:

24      //

25      //

                                    Page 259
```

```
1              Reid Tepfer - 05:55:21
2              Sarah Zuckerman - 00:00:00
3              Benjamin M. Mundel - 00:17:35
4              Chelsea Priest - 00:00:00
5              I further certify that I am neither counsel
6     for, related to, nor employed by any of the parties or
7     attorneys in the action in which this proceeding was
8     taken;
9              Further, I am not a relative or employee of
10    any attorney of record, nor am I financially or
11    otherwise interested in the outcome of the action.
12              Subscribed and sworn to on this date:
13    March 17, 2023.
14
15
16
17
18
19
20
21
      Joseph D. Hendrick, CSR #947
22    Expiration Date: 04/30/2023
      Notary Comm. Exp. 01/13/23
23    Veritext Legal Solutions
      Firm Registration No. 571
24    300 Throckmorton Street, Ste. 1600
      Fort Worth, TX  76102
25    Telephone (800) 336-4000
```

Page 260

APP 140                                          EXH. 9