# EXHIBIT 47

**App. 453**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:19-cv-02281-K |
| Plaintiff, | **PLAINTIFF'S INITIAL DISCLOSURES** |
| v. | |
| MATCH GROUP, INC., | |
| Defendant. | |

Plaintiff, the Federal Trade Commission ("FTC"), pursuant to Federal Rule of Civil Procedure 26(a)(1), and without waiving any privileges, makes the following initial disclosures:

**1.      The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment:**

a.   Defendant and its current and former principals, officers, directors, managers, employees, agents, and representatives, each of whom Defendant can more readily identify than Plaintiff, and each of whose addresses and telephone numbers Defendant likely has, including, but not limited to, the following:

| Name | Address | Telephone Number | Subject matter (non-exhaustive list) |
|---|---|---|---|
| Dushyant Saraph | Unknown | Unknown | Match.com website features/design; Match.com user interface and experience |

INITIAL DISCLOSURES

1

**App. 454**

| | | | |
|---|---|---|---|
| Marc Atwood | Unknown | Unknown | Match.com website features/design; Match.com user interface and experience; practices described in Counts III-V |
| Ossa Fisher | Unknown | Unknown | Marketing practices; consumer complaints; refunds; policies and procedures |
| Tom Cox | Unknown | Unknown | Ownership and control of Match.com; product analytics; policies and procedures |
| Kate Feller | Unknown | Unknown | Ownership and control of Match.com; customer complaints; policies and procedures; refunds; practices described in Counts III-V |
| Sharmistha Dubey | Unknown | Unknown | Ownership and control of Match.com; Match's policies and procedures; Match revenues; Match Guarantee; autorenewal practices; chargeback practices; resignation flow; practices described in Counts III-V |
| Sireesha Malireddy | Unknown | Unknown | Match.com website features/design; Match.com user |

PLAINTIFF'S INITIAL DISCLOSURES

2

**App. 455**

| | | | |
|---|---|---|---|
| | | | interface and experience |
| Sushil Sharma | Unknown | Unknown | Ownership and control of Match.com; Match.com user interface and experience; resignation flow; Match Guarantee |
| Jeff Dawson | Unknown | Unknown | Ownership and control of Match.com; policies and procedures; customer complaints; refunds |
| Sydney Lam | Unknown | Unknown | Ownership and control of Match.com; Match.com user interface and experience; product design; product pricing; policies and procedures; autorenewal practices; membership resignation flow; consumer complaints; chargeback practices; refunds; practices described in Counts III-V |
| Brett Richards | Unknown | Unknown | Product/website design; user interface; user experience; consumer complaints; Match Guarantee; website analytics; practices |

PLAINTIFF'S INITIAL DISCLOSURES

**App. 456**

| | | | |
|---|---|---|---|
| | | | described in Counts III-V |
| Poossenjeet Bhattacharya | Unknown | Unknown | Product design; user interface; user experience; consumer complaints; resignation flow; website analytics |
| Pushkar Deshmukh | Unknown | Unknown | Consumer complaints; product design; user interface |
| Adrian Ong | Unknown | Unknown | Ownership and control of Match.com; policies and procedures; customer complaints; customer service; payments and risk analysis; product marketing; chargeback practices; refunds; practices described in Counts III-V |
| Chris Haltiner | Unknown | Unknown | User interface; product design |
| Jim Talbott | Unknown | Unknown | Ownership and control of Match.com; Match Guarantee; fraud on Match.com platform; product design; user interface; autorenewal practices; membership resignation flow; practices described in Counts III-V. |

PLAINTIFF'S INITIAL DISCLOSURES

**App. 457**

| | | | |
|---|---|---|---|
| Florian Hottier | Unknown | Unknown | Ownership and control of Match.com; Match Guarantee; policies and procedures; Match.com software design; product analytics; resignation flow; user interface; user experience; autorenewal process; practices described in Counts III-V |
| Jiten Vakharia | Unknown | Unknown | Ownership and control of Match.com; policies and procedures; Match.com software design; product analytics; user interface; user experience; resignation flow; autorenewal practices; practices described in Counts III-V |
| Casey Daniell | Unknown | Unknown | Configuration management and platform design; practices described in Counts III-V |
| Nazair Khan | | | Autorenewal practices; resignation flow; user interface and design; product design |
| Beth Wilson | Unknown | Unknown | Match Guarantee; customer service and complaints; Match Guarantee; |

PLAINTIFF'S INITIAL DISCLOSURES

**App. 458**

| | | | |
|---|---|---|---|
| | | | policies and procedures; data analytics; Match's chargeback dispute practices; practices described in Counts III-V |
| Todd Carrico | | | application engineering; user interface and design; product analytics; practices described in Counts III-V |
| Pradeep Shetty | Unknown | Unknown | Policies and procedures; chargeback practices; consumer complaints; practices described in Counts III-V |
| Deen Ibrahim | Unknown | Unknown | Match.com website features/design; quality assurance; Match.com user interface and experience; practices described in Counts III-V. |
| Michele Watson | Unknown | Unknown | Ownership and control of Match.com; Match Guarantee; customer service; Match's chargeback dispute practices; consumer complaints; policies and procedures; practices described in Counts III-V |
| LaShonda Pero | Unknown | Unknown | Consumer complaints; policies and procedures; customer care; |

PLAINTIFF'S INITIAL DISCLOSURES

**App. 459**

| | | | |
|---|---|---|---|
| | | | employee training; Match guarantee; autorenewal practices; practices described in Counts III-V |
| Anastasia Burman | Unknown | Unknown | Match Guarantee; policies and procedures; customer care; consumer complaints; policies and procedures. |
| Kris Auderer | Unknown | Unknown | Ownership and control of Match.com; Match Guarantee; customer service; customer complaints; Match's chargeback dispute practices; autorenewal practices; resignation flow; policies and procedures; practices described in Counts III-V |
| Nikki Elliott | Unknown | Unknown | Product design; analytics; user interface |
| Angela Freeborn | Unknown | Unknown | Ownership and control of Match.com; sales and marketing |
| Melissa Clinchy | Unknown | Unknown | Ownership and control of Match.com; consumer complaints; policies and procedures; Match Guarantee; autorenewal practices; |

PLAINTIFF'S INITIAL DISCLOSURES

**App. 460**

| | | | |
|---|---|---|---|
| | | | resignation flow; practices described in Counts III-V |
| Richard Leopold | Unknown | Unknown | User interface and design; product design |
| Bryan Jewell | Unknown | Unknown | Ownership and control of Match.com; policies and procedures; customer complaints; refunds; practices described in Counts III-V |
| Margaret Ochoa | Unknown | Unknown | Advertising and marketing; Match Guarantee |
| Giridar Tandriv | Unknown | Unknown | Match.com subscription figures; consumer complaints; practices described in Counts III-V |
| Jeff Rosenzweig | Unknown | Unknown | Ownership and control of Match.com; Match Guarantee; customer relationship management software; customer service; product features; website design; advertising and marketing; policies and procedures; Match Guarantee; practices described in Counts III-V |
| Shamika Naik | Unknown | Unknown | Platform communications |

PLAINTIFF'S INITIAL DISCLOSURES

8

**App. 461**

| | | | |
|---|---|---|---|
| Laurie Braddock | Unknown | Unknown | Ownership and control of Match.com; role of Match Group Inc. in operating Match.com; Match Guarantee; policies and procedures; consumer chargebacks; autorenewal policies; consumer refunds; consumer complaints; practices described in Counts III-V |
| Rachel Walzl | Unknown | Unknown | Resignation flow; user interface and design |
| Alexis Ferraro | Unknown | Unknown | Advertising and marketing; Match Guarantee |
| Krystal Roloff | Unknown | Unknown | Customer support; consumer complaints; Match Guarantee; chargeback practices; autorenewal practices; practices described in Counts III-V |
| Sam Yagan | Unknown | Unknown | Ownership and control of Match.com; Match Guarantee; autorenewal practices |
| Brittany Perez | Unknown | Unknown | Consumer complaints; policies and procedures |
| Shamika Naik | Unknown | Unknown | Product analytics |

PLAINTIFF'S INITIAL DISCLOSURES

**App. 462**

| | | | |
|---|---|---|---|
| Girdar Tandriv | Unknown | Unknown | Product analytics; user interface and design |
| Matthew Bartoe | Unknown | Unknown | Platform design; user interface and design; practices described in Counts III-V |
| Ian Purves | Unknown | Unknown | Product analytics; user interface and design; payments and risk; practices described in Counts III-V |
| Amarnath Thombre | Unknown | Unknown | Ownership and control of Match.com; policies and procedures; Match Guarantee; autorenewal practices; consumer complaints; practices described in Counts III-V |
| Andrew Hemmings | Unknown | Unknown | practices described in Counts III-V |
| Matt Knight | Unknown | Unknown | Consumer complaints; application engineering; user interface and design; practices described in Counts III-V |
| Tony Bowari | Unknown | Unknown | Platform design; practices described in Counts III-V |
| Jeff McLure | Unknown | Unknown | Application engineering; practices described in Counts III-V |
| Jennifer Hinkie | Unknown | Unknown | Data analytics; user interface |

PLAINTIFF'S INITIAL DISCLOSURES

**App. 463**

| | | | |
|---|---|---|---|
| Mandy Ginsberg | Unknown | Unknown | Ownership and control of Match.com; resignation flow; Match Guarantee; consumer complaints; policies and procedures; chargeback practices; autorenewal practices; practices described in Counts III-V |
| Ivan Yong | Unknown | Unknown | Product design; user interface and design |
| Brett Williams | Unknown | Unknown | Match.com website features/design; application engineering; Match.com user interface and experience; consumer complaints; practices described in Counts III-V |
| Charles German | Unknown | Unknown | Ownership and control of Match.com; revenue from practices described in Counts III-V |
| Steven Bailey | Unknown | Unknown | Ownership and control of Match.com; revenue from practices described in Counts III-V; payments between Match Group Inc. subsidiaries; practices described in Counts III-V. |

PLAINTIFF'S INITIAL DISCLOSURES

**App. 464**

| Shonda Pero | Unknown | Unknown | Match Guarantee; customer service; policies and procedures; practices described in Counts III-V. |
|---|---|---|---|
| Atin Kulkarni | Unknown | Unknown | Match Guarantee; customer complaints; product analytics |
| Gary Snyder | Unknown | Unknown | Risk analysis; consumer complaints |
| Nikhil Nilakantan | Unknown | Unknown | Product design |
| Dinh Thi Bui | Unknown | Unknown | Resignation flow; autorenewal practices; product design; consumer complaints; user interface |
| Ramanand Reddi | Unknown | Unknown | Product design; user interface; product analytics; user interface and experience |
| Jeremy Ruggaber | Unknown | Unknown | Product design; user interface; consumer complaints; practices described in Counts III-V |
| Atin Kulkarni | Unknown | Unknown | Consumer complaints; Match Guarantee; policies and procedures |
| Rose Phommachanh | Unknown | Unknown | Consumer complaints; Match Guarantee; policies and procedures |
| Garland Frye | Unknown | Unknown | Software engineering; Match web/mobile apps; |

PLAINTIFF'S INITIAL DISCLOSURES

**App. 465**

| | | | |
|---|---|---|---|
| | | | platform design; user interface |
| Christopher Conner | Unknown | Unknown | Software engineering; web/mobile apps; platform design; user interface |
| Greg Blatt | Unknown | Unknown | Ownership and control of Match.com; resignation flow; Match Guarantee; consumer complaints; policies and procedures; chargeback practices; autorenewal practices; practices described in Counts III-V |
| Leslie Sucur | Unknown | Unknown | Software engineering; web/mobile apps; platform design; user interface |
| Anna Schneider | Unknown | Unknown | Software engineering; web/mobile apps; user interface |
| Alicia Knight | Unknown | Unknown | Marketing and advertising; user interface and design |
| Anthony Fratiani | Unknown | Unknown | User interface and design |
| Cameron Bates | Unknown | Unknown | marketing analytics |
| Jessica Conant | Unknown | Unknown | Autorenewal practices; product development; marketing; practices described in Count III |
| Judy Li | Unknown | Unknown | Ownership and control of Match.com; |

PLAINTIFF'S INITIAL DISCLOSURES

13

**App. 466**

| | | | |
|---|---|---|---|
| | | | Platform fraud; data analytics; platform troubleshooting |
| Stephanie Davis | Unknown | Unknown | Defect reporting; sales and reporting; fraud on platform |
| Francisco Bonilla | Unknown | Unknown | a/b testing; autorenewal practices; chargeback practices; cancellation flow; |
| Dan Badrian | Unknown | Unknown | a/b testing; data mining; user behavior |
| Jessica Johnson | Unknown | Unknown | a/b testing; marketing and advertising; fraud on platform |
| Thiago Costa | Unknown | Unknown | Fraud on platform; autorenewal practices; product development; marketing; practices described in Count III |
| John Rowan | Unknown | Unknown | Password reset issues; marketing emails |
| David Penton | Unknown | Unknown | Account access; account security |
| Vincent Galeraud | Unknown | Unknown | Ownership and control of Match.com; customer service; customer complaints; refunds; policies and procedures |
| Leah Mikulenka | Unknown | Unknown | Chargeback policies; consumer complaints; refunds; policies and procedures; |

PLAINTIFF'S INITIAL DISCLOSURES

14

**App. 467**

| | | | Practices described in Count IV |
|---|---|---|---|

b. Current and former principals, officers, directors, managers, employees, agents, and representatives of any third party that have implemented, executed, evaluated, tested, or created any advertising, marketing, or disclosures relating to Defendant's online dating service Match.com or other Match Group Inc. dating platforms, each of whom Defendant can more readily identify than plaintiff, and each of whose addresses and telephone numbers Defendant likely has, are likely to have information relating to the practices at issue in the complaint;

c. Current and former principals, officers, directors, managers, employees, agents, and representatives of any third party that have evaluated, analyzed, responded to consumer communications or complaints on Defendant's behalf relating to Defendant's online dating service Match.com or other Match Group Inc. dating platforms, each of whom Defendant can more readily identify than plaintiff, and each of whose addresses and telephone numbers Defendant likely has, are likely to have information relating to the practices at issue in the complaint;

d. Current and former principals, officers, directors, managers, employees, agents, and representatives of any third party that have implemented, executed, evaluated, tested, or created any billing practices, refund policies or procedures, chargeback policies or procedures, subscription model, or cancellation process relating to Defendant's online dating service Match.com or other Match Group Inc. dating platforms, each of whom Defendant can more readily identify than plaintiff, and each of whose addresses and

PLAINTIFF'S INITIAL DISCLOSURES

**App. 468**

telephone numbers Defendant likely has, are likely to have information relating to the practices at issue in the complaint;

e.  Consumers who subscribed to Match.com and were affected by the practices at issue, including those whose complaints were collected in the FTC's Consumer Sentinel database and whose information will be provided upon entry of an appropriate protective order in this matter protecting their personally identifiable information.

f.  FTC investigators and employees, including investigator Brent McPeek, located at 1999 Bryan St., Ste. 2150, Dallas, Texas 75201, and who can be reached through FTC counsel.

The FTC identifies these individuals based on its investigation of this matter so far. The FTC reserves its right to supplement these disclosures should it learn of other individuals likely to have discoverable information on which it may rely to support its claims.

**2.      A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment:**

The FTC may use documents and information it obtains from Defendant in discovery in this case as well as the following documents currently in its possession, custody, or control to support its claims, all of which are located at 1999 Bryan St. Ste. 2150, Dallas, Texas 75201 or stored electronically on the FTC's server:

a.  Consumer complaints about Defendant;

b.  Consumer communications with Defendant;

c.  Documents related to consumer communications with Defendant;

PLAINTIFF'S INITIAL DISCLOSURES

16

**App. 469**

d.  Defendant's internal correspondence;

e.  Defendant's internal analyses and policies regarding complaints, inquiries, compliance, advertising, and marketing;

f.  Defendant's presentations about complaints, inquiries, compliance, advertising, and marketing;

g.  Defendant's training materials and scripts about complaints, inquiries, compliance, and customer service;

h.  Data and documents relating to the practices at issue in the complaint;

i.  Screenshots, current and historical, of (i) Defendant's website, www.match.com, (ii) websites on which Defendant has advertised, and (iii) websites of other online platforms;

j.  Documents that Defendant has filed with the Securities and Exchange Commission; and

k.  Other documents and information Defendant produced to Plaintiff in response to Plaintiff's March 2017 Civil Investigative Demand to Defendant and other documents or information Defendant submitted to the Commission in connection with Plaintiff's investigation.

The FTC identifies these documents based on its investigation of this matter so far. The FTC reserves its right to supplement these disclosures should it learn of other documents likely to contain discoverable information on which it may rely to support its claims.

**3.      A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on**

PLAINTIFF'S INITIAL DISCLOSURES

**App. 470**

**which each computation is based, including materials bearing on the nature and extent of injuries suffered:**

Section 19(b) of the FTC Act, 15 U.S.C. § 57b(b), authorizes the Commission to seek and the Court to award relief necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from the rule violation or the unfair or deceptive act or practice. This includes the recission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation alleged in Count V. This monetary relief is in addition to injunctive relief on the remaining three counts (Counts III-V), which is authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

Based on information currently available, monetary relief in this case includes consumer injury associated with Defendant's failure to provide consumers a simple method of canceling its recurring charges, including all revenue associated with any attempted cancellation or any failure to provide a simple cancellation mechanism. This monetary relief also includes revenues generated by denying consumers refunds who sought a refund because they thought they already canceled their subscription to Match.com. Accordingly, the total estimated injury at this time for Count V is at least $8.7 million.

In addition to this monetary relief, civil penalties available in this action relate to Defendant's failure to provide a simple method of canceling its recurring charges. In calculating civil penalties relating to a rule violation, "each day of continuance of such failure shall be treated as a separate violation," and "[i]n determining the amount of such civil penalty, the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require." 15 U.S.C. § 45(m)(1)(c). Computation of the scope of monetary relief will be based principally on

PLAINTIFF'S INITIAL DISCLOSURES

**App. 471**

data associated with Defendant's responses to Plaintiff's March 2017 Civil Investigative Demand, which is maintained in paper form in the FTC's offices at 1999 Bryan St. Ste. 2150, Dallas, Texas 75201 or electronically on the FTC's server, and future discovery obtained from Defendant.

**4.     For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment:**

Plaintiff is not aware of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy a judgment.

Date: April 15, 2022

_/s/ REID TEPFER_
REID TEPFER
M. HASAN AIJAZ
MATTHEW WILSHIRE
SARAH ZUCKERMAN
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
California Bar No. 224328 (Wilshire)
New York Bar No. 5603832 (Zuckerman)
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9362 (Wilshire)
T: (214) 979-9376 (Zuckerman)
Email: rtepfer@ftc.gov; maijaz@ftc.gov;
mwilshire@ftc.gov; szuckerman@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PLAINTIFF'S INITIAL DISCLOSURES

**App. 472**

## CERTIFICATE OF SERVICE

I, REID TEPFER, certify that, on April 15, 2022, I served the foregoing Plaintiff's Initial

Disclosures by email on the following counsel of record at the email address listed below:

Chad Hummel
Sidley Austin LLP
chummel@sidley.com

*Attorney for Defendant*
*Match Group, Inc.*

By: /s/ REID TEPFER

# Exhibit 48

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:19-cv-02281-K |
| Plaintiff, | **PLAINTIFF'S FOURTH AMENDED INITIAL DISCLOSURES** |
| v. | |
| MATCH GROUP, INC., a corporation, and | |
| MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company, | |
| Defendants. | |

Plaintiff, the Federal Trade Commission ("FTC"), pursuant to Federal Rule of Civil Procedure 26(a)(1), and without waiving any privileges, makes the following third amended initial disclosures:

**1.     A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered:**

Section 19(b) of the FTC Act, 15 U.S.C. § 57b(b), authorizes the Commission to seek and the Court to award relief necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from the rule violation or the unfair or deceptive act or practice. This includes the recission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation alleged in Count V.

1

**App. 475**

This monetary relief is in addition to injunctive relief on the remaining three counts (Counts III-V), which is authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

As you acknowledged in our August 24, 2022 conference on Match Group, Inc.'s Motion to Compel, the FTC's calculations are dependent on Defendants providing accurate and reliable billing and click-through data regarding users who attempted to cancel their subscription. Moreover, the produced data is current only through December 2022, and the harm is ongoing.

The relevant time period for the consumer injury calculation begins October 2016 and continues to the present day. *See* 15 U.S.C § 57b. The FTC estimates that the total monetary harm attributable to Defendants' failure to provide simple cancellation mechanisms as of December 2022 is $51,118,804.92. The FTC calculates this amount based on the billing data produced in MATCHFTC846511 by totaling the amounts of money Defendants collected from users who exited the cancellation flow, subtracting the amounts that individuals recouped through refunds and chargebacks, and applying a deduction to account for users who clicked on the "subscription status" option, as further described below.

This data also specifies how many users exited the cancellation flow on each particular page of Match.com's online cancellation flow and then identifies the amount of revenue (calculated by autorenewal fees minus refunds and chargebacks) that Defendants later collected

**App. 476**

from those users through unauthorized renewal fees. The harm on a per-page basis is attributable as follows:

|  |  |
|---|---|
| Password Wall: | $25,228,818.20 |
| Post-Password Wall: | $15,563,082.89[1] |
| First Survey Page: | $3,887,455.88 |
| Save Offer: | $4,936,682.55 |
| Second Survey: | $1,502,765.31 |

In addition to this monetary relief, civil penalties available in this action relate to Defendants' failure to provide a simple method of canceling its recurring charges. The relevant time period for civil penalties begins September 26, 2014, and continues to the present day. *See* 28 U.S.C. § 2462. At the time of this disclosure, civil penalties may be assessed up to $50,120 per violation. 15 U.S.C. § 45(m)(1)(A); 16 C.F.R § 1.98. In calculating civil penalties relating to a continuing failure to comply with the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401-8405, "each day of continuance of such failure shall be treated as a separate violation," and "[i]n determining the amount of such civil penalty, the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require." 15 U.S.C. § 45(m)(1)(C). Defendants have violated the ROSCA, since at least September 26, 2014, continuing to the present day—a duration of 3,227 days as of July 28, 2023. Accordingly, and

---

[1] Users are presented with two hyperlinks on this page, one that continues the cancellation process and another that sends users to a "subscription status" page. The FTC reduced its calculation of monetary relief by the amount of autorenewal fees net of refunds and chargebacks attributable to users that clicked on the "subscription status" link. Specifically, the FTC took the number of users that only clicked "subscription status," divided that number by the number of users who exited the cancellation process on this page to derive a percentage, multiplied that percentage by the net cash that Match collected from users exiting the cancellation flow at this page, and then subtracted that amount from the estimate of harm.

**App. 477**

based on the factors described in 15 U.S.C. § 45(m)(1)(C), if the FTC were to seek civil penalties

on a per diem basis, it would seek up to $161,737,240 (3,227 days x $50,120 per day) in civil

penalties as of the date of this disclosure. The FTC may also seek civil penalties of up to $50,120

for each cancellation attempt. Defendants have produced data showing that users attempted to

cancel a subscription 21,917,667 times from October 2014 through March 2023.[2] The FTC

reserves the right to update this response should Defendants provide different or new data. The

FTC further reserves the right to update these amounts based, among other things, on the

continuing nature of Defendants' violation.

Date: July 27, 2023

*/s/ Jason C. Moon*
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN
JOHN R. O'GORMAN
ERICA ROLLINS HILLIARD
JASON C. MOON
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 2421292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Texas Bar No. 24001188 (Moon)
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
T: (214) 979-9378 (Moon)
Email: rtepfer@ftc.gov; maijaz@ftc.gov;
szuckerman@ftc.gov; jogorman@ftc.gov;
ehilliard@ftc.gov; jmoon@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

---

[2] This amount was calculated by taking the number of sessions that started the cancellation as shown in MATCH846948 and subtracting the number of sessions that clicked on "subscription status" only.

**App. 478**

## CERTIFICATE OF SERVICE

I, Jason C. Moon, certify that, on July 27, 2023, I served the foregoing Plaintiff's Fourth Amended Initial Disclosures by email on the following counsel of record at the email address listed below:

Angela C. Zambrano
angela.zambrano@sidley.com
Chad Hummel
chummel@sidley.com
Sidley Austin LLP

*Attorneys for Defendant Match Group, Inc.*
*and Match Group, LLC*

By: /s/ *Jason C. Moon*

**App. 479**