# EXHIBIT 49

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:19-cv-02281-K |
| Plaintiff, | **PLAINTIFF'S SECOND AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSIONS** |
| v. | |
| MATCH GROUP, INC., | |
| Defendant. | |

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, and subject to the general and specific objections set forth below, Plaintiff, the Federal Trade Commission ("FTC") responds to Defendant Match Group Inc. ("Match" or "MGI")'s First Set of Requests for Admissions.

## I.    GENERAL OBJECTIONS

1.  **Lack of Waiver; Right to Modify.** The following responses are made without waiving any objections raised by the FTC in this proceeding or any objections the FTC may have with respect to the subsequent use of these answers. The FTC specifically reserves the right, at any time, upon proper showing, to revise, correct or clarify the following responses.

2.  **Right to Supplement.** The FTC reserves the right to supplement and will supplement these responses as required under Fed. R. Civ. P. 26(e) if additional responsive information becomes available.

3.  **Attorney Client Privilege, Deliberative Process Privilege, and Attorney Work Product Doctrine.** Plaintiff generally objects to Match's Requests to Plaintiff insofar as

**App. 481**

these seek, directly or indirectly, information subject to the attorney client privilege,

deliberative process privilege or work product doctrine.

4. **Scope of Discovery.** Plaintiff objects to Match's Requests to the extent that the

instructions and definitions attempt to impose upon the Plaintiff obligations greater than

those required by the Federal Rules of Civil Procedure.

## II.    OBJECTIONS AND RESPONSES

**REQUEST FOR ADMISSION NO. 1:**
Admit that the Match.com Guarantee challenged in Your Complaint ceased by at least mid-2019.

**ANSWER**
Plaintiff denies to the extent that the request is asking whether the conduct is permanently ceased. Plaintiff admits that Match.com suspended its offering of the Match.com Guarantee at that time, has not offered it during the pendency of this litigation, and has represented that its cessation is permanent. Plaintiff contends that the evidence strongly suggests that Defendants' representation that the conduct has permanently ceased is not credible, however. Defendants continued to offer their deceptive Guarantee long after it was the subject of a federal investigation despite customer complaints. Defendants suspended offering the Guarantee only on the eve of the filing of this lawsuit as clear litigation posturing and have never acknowledged that this practice was deceptive or illegal. The FTC further notes that we have yet to receive discovery on this issue from MGI, although MGI has been compelled to produce it.

**REQUEST FOR ADMISSION NO. 2:**
Admit that the Match.com Guarantee challenged in Your Complaint was permanently discontinued in April 2019, as articulated in Exhibit A.

**ANSWER**
Plaintiff denies. The evidence strongly suggests that Defendants' representation that the conduct has "permanently ceased" is not credible. Defendants continued to offer their deceptive Guarantee for years after it was the subject of a federal investigation despite customer complaints. Defendants suspended offering the Guarantee only on the eve of the filing of this lawsuit as clear litigation posturing and have never acknowledged that this practice was deceptive or illegal. The FTC further notes that we have yet to receive discovery on this issue from MGI, although MGI has been compelled to produce it.

**REQUEST FOR ADMISSION NO. 3:**
Admit that the Match.com Guarantee challenged in Your Complaint has not been offered since April 2019.

**ANSWER**

**App. 482**

Plaintiff admits but notes that Defendants continued to offer their deceptive Guarantee for years after it was the subject of a federal investigation despite countless customer complaints. Defendants suspended offering the Guarantee only on the eve of the filing of this lawsuit as clear litigation posturing and have never acknowledged this practice was deceptive or illegal. The FTC further notes that we have yet to receive discovery on this issue from MGI, although MGI has been compelled to produce it.

**REQUEST FOR ADMISSION NO. 4:**
Admit that the Match.com chargeback policy challenged in Your Complaint ceased by at least mid-2019.

**ANSWER**
Plaintiff denies to the extent that the request is asking whether the conduct is permanently ceased. Plaintiff admits that Match.com modified its chargeback policy at that time and that Defendants have represented that it has permanently ceased this practice. Plaintiff contends that the evidence strongly suggests that Defendants' representation that it has permanently ceased this practice is not credible, however. Defendants continued to engage in this conduct long after it was the subject of a federal investigation despite customer complaints. Defendants suspended this practice only on the eve of the filing of this lawsuit as clear litigation posturing and have never acknowledged this practice was unfair or illegal. Plaintiff further notes it does not have sufficient evidence concerning what Defendants' chargeback policy was between March 2019 and the date when Match Group, LLC provided its interrogatory responses identifying Match.com's current policy, as contradictory evidence exists concerning this issue. The FTC further notes that we have yet to receive discovery on this issue from MGI, although MGI has been compelled to produce it.

**REQUEST FOR ADMISSION NO. 5:**
Admit that the Match.com chargeback policy challenged in Your Complaint was permanently discontinued in March 2019, as articulated in Exhibit A.

**ANSWER**
Plaintiff denies. The evidence strongly suggests that Defendants' representation that the conduct has "permanently ceased" is not credible. Defendants continued this unfair practice long after it was the subject of a federal investigation despite customer complaints. Defendants suspended this practice only on the eve of the filing of this lawsuit as clear litigation posturing and have never acknowledged this practice was unfair or illegal. Plaintiff further notes it does not have sufficient evidence concerning what Defendants' chargeback policy was between March 2019 and the date when Match Group, LLC provided its interrogatory responses identifying Match.com's current policy, as contradictory evidence exists concerning this issue.

**REQUEST FOR ADMISSION NO. 6:**
Admit that the Match.com chargeback policy challenged in Your Complaint has not been in effect since March 2019.

**ANSWER**

**App. 483**

Plaintiff admits that the precise policy challenged in the FTC's Amended complaint was suspended in around March 2019. Plaintiff further notes it does not have sufficient evidence concerning what Defendants' chargeback policy was between March 2019 and the date when Match Group, LLC provided its interrogatory responses identifying Match.com's current policy, as contradictory evidence exists concerning this issue.

**REQUEST FOR ADMISSION NO. 7:**
Admit that, as of the deadline for your response to this Request, Your investigation has failed to reveal any evidence of plans by Match.com to reinstate the Match.com Guarantee.

**ANSWER**
To the extent "plans" is meant to refer to explicit statements concerning specific future actions that MGI intends to take concerning the Match.com Guarantee as outlined in internal or nonpublic documents, Plaintiff admits that it does not currently have evidence of "plans" to reinstate the Match.com Guarantee. In fact, Plaintiff could not have such evidence, as Defendants improperly withheld production of nearly all evidence relating to the Match.com Guarantee, and are now only doing so after being compelled by the Court to produce it.

To the extent this request concerns whether Plaintiff has evidence establishing likelihood of recurrence regarding Defendants' illegal practices, which is the standard for issuing an injunction in this matter, Plaintiff denies. *See* Dkt. 86 (citing to standards related to likelihood of recurrence and reasonable expectation of continued violations absent restraint). Plaintiff has evidence, as described in the FTC's Response to Defendant's Interrogatory No. 1, that Match's conduct is likely to recur because it knowingly deceived its consumers for years through the means described in the complaint, profited off that deception, and only claimed to have suspended its unlawful practices on the eve of litigation after having been under investigation for this same practice for approximately two years.

The FTC further notes that we have yet to receive discovery on this issue from MGI, although MGI has been compelled to produce it.

**REQUEST FOR ADMISSION NO. 8:**
Admit that, as of the deadline for your response to this Request, Your investigation has failed to reveal any evidence of plans by Match.com to reinstate the Match.com chargeback policy challenged in Your Complaint.

**ANSWER**
To the extent "plans" is meant to refer to explicit statements concerning specific future actions MGI intends to take concerning its chargeback policy as outlined in internal or nonpublic documents, Plaintiff admits that it does not currently have evidence of "plans" to reinstate this policy.

To the extent this request concerns whether Plaintiff has evidence establishing likelihood of recurrence regarding Defendants' illegal practices, which is the standard for issuing an injunction in this matter, Plaintiff denies. *See* Dkt. 86 (citing to standards related to likelihood of recurrence and reasonable expectation of continued violations absent restraint). Plaintiff has evidence, as

**App. 484**

described in the FTC's Response to Defendant's Interrogatory No. 1, that Match's conduct is likely to recur because it knowingly deceived its consumers for years through the means described in the complaint, profited off that deception, and only claimed to have suspended its unlawful practices on the eve of litigation after having been under investigation for this same practice for approximately two years.

The FTC further notes that we have yet to receive discovery on this issue from MGI, although MGI has been compelled to produce it.

**REQUEST FOR ADMISSION NO. 9:**
Admit that You were informed by letter dated August 6, 2019, that Match.com would not reinstate the Match.com Guarantee challenged in Your Complaint.

**ANSWER**
Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies that Match made a commitment in a letter sent on August 6, 2019, that it would not reinstitute the challenged Guarantee. Plaintiff admits that after Match received a draft complaint, knew of the impending enforcement action, and just one month before this action was filed, Match's counsel sent a letter to Zachary A. Keller, then counsel for the FTC, stating that Match had "no plans or intentions ever to reinstitute" various practices, but Match did not make a commitment to never reinstitute those practices—the letter only described its "plans or intentions" at the time of the letter and failed to include any commitments about future actions. Moreover, the claims in the letter are not credible as they were offered on the eve of litigation and appeared to be in support of a legal strategy to evade liability for deceiving consumers.

**REQUEST FOR ADMISSION NO. 10:**
Admit that You were informed by letter dated May 20, 2022, that Match.com would not reinstate the Match.com Guarantee challenged in Your Complaint.

**ANSWER**
Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies that Match made a commitment in a letter sent on May 20, 2022, that it would not reinstitute the challenged Guarantee. Plaintiff admits that Match's counsel sent a letter to Reid Tepfer stating that Match had no "plans or intentions" to reinstitute various practices, but Match did not make a commitment to never reinstitute those practices—the letter only described its "plans and intentions" at the time of the letter and failed to include any commitments about future actions. Moreover, the claims in the letter are not credible as they were offered during litigation and appeared to be in support of a legal strategy to avoid liability for deceiving consumers.

**App. 485**

**REQUEST FOR ADMISSION NO. 11:**

Admit that You were informed by letter dated August 6, 2019, that Match.com would not reinstate the Match.com chargeback policy at issue in Your Complaint.

**ANSWER**

Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies that Match made a commitment in a letter sent on August 6, 2019, that it would not reinstitute the challenged Guarantee. Plaintiff admits that after Match received a draft complaint, knew of the impending enforcement action, and just one month before this action was filed, Match's counsel sent a letter to Zachary A. Keller, then counsel for the FTC, stating that Match had "no plans or intentions ever to reinstitute" various practices, but Match did not make a commitment to never reinstitute those practices—the letter only described its "plans or intentions" at the time of the letter and failed to include any commitments about future actions. Moreover, the claims in the letter are not credible as they were offered on the eve of litigation and appeared to be in support of a legal strategy to evade liability for deceiving consumers.

**REQUEST FOR ADMISSION NO. 12:**

Admit that You were informed by letter dated May 20, 2022, that Match.com would not reinstate the Match.com chargeback policy at issue in Your Complaint.

**ANSWER**

Plaintiff objects to this Request as it is not relevant to any claim or defense in this matter. The Court has already ruled on Match's motion to dismiss and sided with Plaintiff in its argument that the complaint contained allegations sufficient to allege the likelihood of recurrence.

Subject to and without waiving the foregoing objections, Plaintiff denies that Match made a commitment in a letter sent on May 20, 2022, that it would not reinstitute the challenged Guarantee. Plaintiff admits that Match's counsel sent a letter to Reid Tepfer stating that Match had no "plans or intentions" to reinstitute various practices, but Match did not make a commitment to never reinstitute those practices—the letter only described its "plans and intentions" at the time of the letter and failed to include any commitments about future actions. Moreover, the claims in the letter are not credible as they were offered during litigation and appeared to be in support of a legal strategy to avoid liability for deceiving consumers.

**REQUEST FOR ADMISSION NO. 13:**

Admit that users are able to cancel their Match.com subscription via online chat.

**ANSWER**

Plaintiff admits that Match.com has a chat feature that Match.com subscribers have used to cancel and that Defendants have represented that their policy and practice is to accept cancellations via this method.

**App. 486**

**REQUEST FOR ADMISSION NO. 14:**
Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via online chat.

**ANSWER**
Plaintiff does not have adequate information to admit or deny whether Defendants accepted cancellations via online chat for the entire relevant period for Count V, which covers from September 2014 to the present. Plaintiff admits that Match.com has had a chat feature that Match.com subscribers have used to cancel for the majority of this period, however, and that Defendants have represented that their policy and practice has been to accept cancellations via this method for the entire relevant time period.

**REQUEST FOR ADMISSION NO. 15:**
Admit that canceling a Match.com subscription via online chat is simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple."  Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 16:**
Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via online chat has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 17:**
Admit that users are able to cancel their Match.com subscription via telephone.

**ANSWER**
 Plaintiff admits that Defendants maintains a customer service number that Match.com subscribers have used to cancel their Match.com account and that their policy and practice is to accept cancellations via this method.

**REQUEST FOR ADMISSION NO. 18:**
Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via telephone.

**ANSWER**
Plaintiff does not have adequate information to admit or deny whether Defendants accepted cancellations via this method for the entire relevant period for Count V, which covers from September 2014 to the present. Plaintiff admits that Match.com has had a telephone number that

**App. 487**

Match.com subscribers have used to cancel for the majority of this period, however, and that Defendants have represented that their policy and practice has been to accept cancellations via this method for the entire relevant time period.

**REQUEST FOR ADMISSION NO. 19:**

Admit that canceling a Match.com subscription via telephone is simple.

**ANSWER**

Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 20:**

Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via telephone has been simple.

**ANSWER**

Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 21:**

Admit that users are able to cancel their Match.com subscription via mail.

**ANSWER**

Plaintiff admits that a few consumers have cancelled their Match.com subscription by mailing a letter to Defendants and that Defendants have represented that their policy and practice is to accept cancellations via this method.

**REQUEST FOR ADMISSION NO. 22:**

Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via mail.

**ANSWER**

Plaintiff does not have adequate information to admit or deny whether Defendants accepted cancellations via this method for the entire relevant period for Count V, which covers from September 2014 to the present. Plaintiff admits that Match.com has had a mailing address that Match.com subscribers have used to cancel during this period, however, and that Defendants have represented that their policy and practice has been to accept cancellations via this method for the entire relevant time period.

**REQUEST FOR ADMISSION NO. 23:**

Admit that canceling a Match.com subscription via mail is simple.

**ANSWER**

Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 24:**

**App. 488**

Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via mail has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 25:**
Admit that users are able to cancel their Match.com subscription via fax.

**ANSWER**
Plaintiff admits that Defendants maintain a fax number that a few users have cancelled their subscription by fax.

**REQUEST FOR ADMISSION NO. 26:**
Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via fax.

**ANSWER**
Plaintiff does not have adequate information to admit or deny whether Defendants accepted cancellations via this method for the entire relevant period for Count V, which covers from September 2014 to the present. However, Plaintiff admits that Match.com has maintained a fax number for the majority of this period, that some subset of users have been permitted to cancel via fax, that an extremely limited number of Match.com subscribers have in fact cancelled by fax, and that Defendants have represented that their policy and practice has been to accept cancellations via this method for the entire relevant time period.

**REQUEST FOR ADMISSION NO. 27:**
Admit that canceling a Match.com subscription via fax is simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 28:**
Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via fax has been simple.

**ANSWER**
Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 29:**
Admit that users are able to cancel their Match.com subscription via e-mail.

**App. 489**

**ANSWER**

Plaintiff admits that Match.com has an email feature that few Match.com subscribers have used to cancel and that Defendants have represented that their policy and practice is to accept cancellations via this method.

**REQUEST FOR ADMISSION NO. 30:**

Admit that, at all times relevant to Count V in Your Complaint, users were able to cancel their Match.com subscription via e-mail.

**ANSWER**

Plaintiff does not have adequate information to admit or deny whether Defendants accepted cancellations via this method for the entire relevant period for Count V, which covers from September 2014 to the present. However, Plaintiff admits that Match.com has maintained an email address for customers for the majority of this time period, that a limited number of users have cancelled via this method, and that Defendants have represented that their policy and practice has been to accept cancellations via this method for the entire relevant time period.

**REQUEST FOR ADMISSION NO. 31:**

Admit that canceling a Match.com subscription via e-mail is simple.

**ANSWER**

Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 32:**

Admit that, at all times relevant to Count V in Your Complaint, canceling a Match.com subscription via e-mail has been simple.

**ANSWER**

Plaintiff objects to this Request as it calls for a legal conclusion as to whether a cancelation method is "simple." Subject to the foregoing objection, Plaintiff denies.

**REQUEST FOR ADMISSION NO. 33:**

Admit that a cancelation method can be simple even if it includes a save offer (meaning an offer to continue a subscription at a discount).

**ANSWER**

Plaintiff admits that it is theoretically possible for a simple cancellation mechanism to include a save offer. However, it is likewise possible that a save offer could render a cancellation mechanism not simple under ROSCA and Section 5 of the FTC Act by, for example, causing confusion or unreasonable delay. The FTC contends that whether a cancellation mechanism is simple or not is a fact-intensive inquiry and depends on the totality of the circumstances.

**App. 490**

To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies. Match.com's online cancellation mechanism does not merely include a save offer.

**REQUEST FOR ADMISSION NO. 34**
Admit that a cancelation method can be simple if it includes a save offer (meaning an offer to continue a subscription at a discount) but the subscriber is not required to answer the question.

**ANSWER**
Plaintiff admits that it is theoretically possible for a simple cancellation mechanism to include a save offer. However, it is likewise possible that a save offer could render a cancellation mechanism not simple under Section 5 and ROSCA by, for example, causing confusion or unreasonable delay. Whether a cancellation mechanism is simple or not is a fact-intensive inquiry and depends on the totality of the circumstances.

To the extent this Request is intended to refer to Match.com's online cancelation mechanism, Plaintiff denies. Match.com's online cancellation mechanism does not merely include a save offer, and the consumer is required to either accept or decline the offer.

**REQUEST FOR ADMISSION NO. 35:**
Admit that a cancelation method can be simple even if it asks a subscriber why they are canceling.

**ANSWER**
Plaintiff denies that it is possible for a simple cancellation mechanism to include a question concerning why a customer is cancelling their subscription.  This same information could be solicited without imposing undue delay by merely asking after cancellation is effective.

**REQUEST FOR ADMISSION NO. 36:**
Admit that a cancelation method can be simple if it asks a subscriber why they are canceling but the subscriber is not required to answer the question.

**ANSWER**
Plaintiff denies that it is possible for a simple cancellation mechanism to include a question concerning why a customer is cancelling their subscription.  This same information could be solicited without imposing undue delay by merely asking after cancellation is effective.

**REQUEST FOR ADMISSION NO. 37:**
Admit that a cancelation method can be simple even if it asks a subscriber whether they would recommend the service.

**ANSWER**
Plaintiff denies that it is possible for a simple cancellation mechanism to include a single question concerning whether a customer would recommend that service, as this imposes undue delay. This same information could be solicited without imposing undue delay by merely asking after cancellation is effective.

**App. 491**

**REQUEST FOR ADMISSION NO. 38:**
Admit that a cancelation method can be simple if it asks a subscriber whether they would
recommend the service but the subscriber is not required to answer the question.

**ANSWER**

Plaintiff denies that it is possible for a simple cancellation mechanism to include a question
concerning why a customer is cancelling their subscription. This same information could be
solicited without imposing undue delay by merely asking after cancellation is effective.

**REQUEST FOR ADMISSION NO. 39:**
Admit that You never explained what could be done to improve the Online Cancelation Flow at
issue in Your Complaint.

**ANSWER**

Plaintiff objects to the Request as irrelevant because the Plaintiff has no obligation to provide the
legal advice implied in the Request.

Subject to and without waiving the foregoing objections, Plaintiff denies. The FTC's complaint
and discovery responses detail specific failures of Match's cancelation flow, all of which could
be modified or removed to improve the cancelation flow. *See* Complaint at ¶¶ 54-57.

**REQUEST FOR ADMISSION NO. 40:**
Admit that the Online Cancelation Flow can be completed within 30 seconds.

**ANSWER**

The FTC admits that videos produced by Defendants show that it is physically possible for an
individual to complete the version of Online Cancelation Flow contained in that video within the
timeframe specified above, provided they are already familiar with the Online Cancelation Flow
and its location on the Match.com website. The FTC admits the same concerning Match.com's
current Online Cancellation Flow based on the FTC's review of the current version of
Match.com's Online Cancellation Flow.

The FTC denies, however, that such an experience is representative of the typical Match.com
customer experience. Most consumers would need to read the account settings menu and the
prompts in the Online Cancellation Flow to successfully navigate the flow. Consumers would
also need to recall and successfully input their password. As discussed in the FTC's Third
Amended Response to Interrogatory No. 2, these prompts contain confusing language, including
language that suggests that consumers have successfully cancelled when in fact they have not.
As a result, while it is physically possible for an individual to complete the Online Cancellation
Flow within the time period specified above, many fail to successfully complete it within this
time or at all. The FTC further denies that the fact that it is physically possible for an individual
to complete the Online Cancellation Flow within that timeframe renders the Online Cancellation
Flow simple, given the myriad problems with the Online Cancellation Flow, as discussed in the
FTC's Third Amended Response to Interrogatory No. 2.

**App. 492**

**REQUEST FOR ADMISSION NO. 41:**
Admit that the Online Cancelation Flow can be completed within 60 seconds.

**ANSWER**
The FTC admits that videos produced by Defendants show that it is physically possible for an individual to complete the version of Online Cancelation Flow contained in that video within the timeframe specified above, provided they are already familiar with the Online Cancelation Flow and its location on the Match.com website. The FTC admits the same concerning Match.com's current Online Cancellation Flow based on the FTC's review of the current version of Match.com's Online Cancellation Flow.

The FTC denies, however, that such an experience is representative of the typical Match.com customer experience. Most consumers would need to read the account settings menu and the prompts in the Online Cancellation Flow. Consumers would also need to recall and successfully input their password.  As discussed in the FTC's Third Amended Response to Interrogatory No. 2, these prompts contain confusing language, including language that suggests that consumers have successfully cancelled when in fact they have not. As a result, while it is physically possible for an individual to complete the Online Cancellation Flow within the time period specified above, many fail to successfully complete it within this time or at all. The FTC further denies that the fact that it is physically possible for an individual to complete the Online Cancellation Flow within that timeframe renders the Online Cancellation Flow simple, given the myriad problems with the Online Cancellation Flow, as discussed in the FTC's Third Amended Response to Interrogatory No. 2.

**REQUEST FOR ADMISSION NO. 42:**
Admit that the Online Cancelation Flow can be completed within 90 seconds.

**ANSWER**
The FTC admits that videos produced by Defendants show that it is physically possible for an individual to complete the version of Online Cancelation Flow contained in that video within the timeframe specified above, provided they are already familiar with the Online Cancelation Flow and its location on the Match.com website. The FTC admits the same concerning Match.com's current Online Cancellation Flow based on the FTC's review of the current version of Match.com's Online Cancellation Flow.

The FTC denies, however, that such an experience is representative of the typical Match.com customer experience. Most consumers would need to read the account settings menu and the prompts in the Online Cancellation Flow. Consumers would also need to recall and successfully input their password.  As discussed in the FTC's Third Amended Response to Interrogatory No. 2, these prompts contain confusing language, including language that suggests that consumers have successfully cancelled when in fact they have not. As a result, while it is physically possible for an individual to complete the Online Cancellation Flow within the time period specified above, many fail to successfully complete it within this time or at all. The FTC further denies that the fact that it is physically possible for an individual to complete the Online Cancellation Flow within that timeframe renders the Online Cancellation Flow simple, given the myriad

**App. 493**

problems with the Online Cancellation Flow, as discussed in the FTC's Third Amended Response to Interrogatory No. 2.

**REQUEST FOR ADMISSION NO. 43:**
Admit that the Online Cancelation Flow can be completed within 120 seconds.

**ANSWER**
The FTC admits that videos produced by Defendants show that it is possible for an individual to complete the version of Online Cancelation Flow contained in that video within the timeframe specified above, provided they are already familiar with the Online Cancelation Flow and its location on the Match.com website. The FTC admits the same concerning Match.com's current Online Cancelation Flow based on the FTC's review of the current version of Match.com's Online Cancelation Flow.

The FTC denies, however, that such an experience is representative of the typical Match.com customer experience. Most consumers would need to read the account settings menu and the prompts in the Online Cancelation Flow. Consumers would also need to recall and successfully input their password. As discussed in the FTC's Third Amended Response to Interrogatory No. 2, these prompts contain confusing language, including language that suggests that consumers have successfully cancelled when in fact they have not. As a result, while it is physically possible for an individual to complete the Online Cancelation Flow within the time period specified above, many fail to successfully complete it within this time or at all. The FTC further denies that the fact that it is physically possible for an individual to complete the Online Cancelation Flow within that timeframe renders the Online Cancelation Flow simple, given the myriad problems with the Online Cancelation Flow, as discussed in the FTC's Third Amended Response to Interrogatory No. 2.

**REQUEST FOR ADMISSION NO. 44:**
Admit that You did not review the Online Cancelation Flow in any form other than the screenshots of the Online Cancelation Flow included in Your Complaint before You sued Match Group, Inc.

**ANSWER**
Plaintiff objects to this Request as it seeks privileged information, the form of the Online Cancelation Flow is vague, ambiguous, unintelligible, and because it is duplicative. Plaintiff also objects because the requested information is not relevant to any claim or defense in this matter and is not reasonably calculated to lead to discoverable evidence.

**REQUEST FOR ADMISSION NO. 45:**
Admit that You reviewed only the screenshots included in the Complaint of the Online Cancelation Flow, as opposed to any other form of the Online Cancelation Flow, before You sued Match Group, Inc.

**ANSWER**
Plaintiff objects to this Request as it seeks privileged information, form of the Online Cancelation Flow is vague, ambiguous, unintelligible, and because it is duplicative.

**App. 494**

Plaintiff also objects because the requested information is not relevant to any claim or defense in this matter and is not reasonably calculated to lead to discoverable evidence.

**REQUEST FOR ADMISSION NO. 46:**
Admit that, on average, 86% of Match.com's free trial members successfully canceled their subscription before being billed.

**ANSWER**
Plaintiff objects to this Request because the information sought is already in Match's possession, custody, or control, and Plaintiff's only access to that data comes from Match's summary representations. Moreover, Plaintiff objects to Match's request because free trial users were frequently fraudulent users that used Match's platform to monetize fraud.

Subject to and without waiving the foregoing objections, Plaintiff is unable to admit or deny this statement, as Plaintiff is not in possession of the data this request refers. Plaintiff admits that Match has represented that 86% of its free trial members successfully canceled their subscription before being billed. However, Plaintiff is unable to independently verify the truth or falsity of this claim.

**REQUEST FOR ADMISSION NO. 47:**
Admit that, on average, a large percentage of Match.com's free trial members successfully canceled their subscription before being billed.

**ANSWER**
Plaintiff objects to this Request as "a large percentage" is vague and ambiguous. Plaintiff also objects to the Request because the information sought is already in Match's possession, custody, or control. Subject to these objections, the FTC can neither admit nor deny because it does not have sufficient information to know the success rate of free trial users attempting to cancel their subscription.

**REQUEST FOR ADMISSION NO. 48:**
Admit that, on average, 89% of Match.com's subscribers successfully canceled their subscription within 24 hours of initiating cancelation.

**ANSWER**
Plaintiff objects to this Request as "initiating cancelation" is vague and ambiguous. Plaintiff also objects to the Request because the information sought is already in Match's possession, custody, or control. Plaintiff admits that Match has represented that on average, 89% of Match.com's subscribers successfully canceled their subscription within 24 hours of initiating cancelation.

Subject to and without waiving the foregoing, the FTC can neither admit nor deny because it does not have sufficient information to know the success rate within 24 hours of Match.com users attempting to cancel their subscription.

**REQUEST FOR ADMISSION NO. 49:**

**App. 495**

Admit that, on average, a large percentage of Match.com's subscribers successfully canceled their subscription within 24 hours of initiating cancelation.

**ANSWER**

Plaintiff objects to this Request as "a large percentage" and "initiating cancelation" are vague and ambiguous. Plaintiff also objects to the Request because the information sought is already in Match's possession, custody, or control. Subject to and without waiving the foregoing objections, the FTC can neither admit nor deny because it does not have sufficient information to know the success rate within 24 hours of Match.com users attempting to cancel their subscription.

**REQUEST FOR ADMISSION NO. 50:**

Admit that, of the percentage of Match.com subscribers that do not successfully cancel their subscription within 24 hours of initiating cancelation, some percentage of Match.com subscribers take advantage of a save offer (meaning an offer to continue a subscription at a discount).

**ANSWER**

Plaintiff objects to this Request as "some percentage" is vague, ambiguous, and unintelligible, and "initiating cancelation" is vague and ambiguous. Plaintiff also objects to the Request because the information sought is in Match's possession, custody, or control. Plaintiff admits that Match has represented that of the percentage of Match.com subscribers that do not successfully cancel their subscription within 24 hours of initiating cancelation, some percentage of Match.com subscribers take advantage of a save offer (meaning an offer to continue a subscription at a discount).

Subject to and without waiving the foregoing, the FTC can neither admit nor deny because it does not have sufficient information to know what percentage, if any, of Match.com users who attempt to cancel accept Match.com's save offer.

Date: November 29, 2022

*/s/ Reid Tepfer*
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted pro hac vice)
JOHN R. O'GORMAN (admitted pro hac vice)
ERICA ROLLINS HILLIARD
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 2421292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)

**App. 496**

T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov;
ehilliard@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

17

## CERTIFICATE OF SERVICE

I, REID TEPFER, certify that, on November 29, 2022, I served the foregoing Plaintiff's Responses to Defendant's First set of Interrogatories by email on the following counsel of record at the email address listed below:

Angela C. Zambrano
angela.zambrano@sidley.com
Chad Hummel
chummel@sidley.com
Sidley Austin LLP

*Attorneys for Defendant*
*Match Group, Inc.*

By: /s/ REID TEPFER

# EXHIBIT 50

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>     Plaintiff,<br><br>v.<br><br>MATCH GROUP, INC., a corporation,<br>MATCH GROUP, LLC, formerly known as<br>MATCH.COM, LLC, a limited liability<br>company,<br><br>     Defendants. | Case No. 3:19-cv-02281-K<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S RESPONSES AND OBJECTIONS TO DEFENDANT MATCH GROUP, LLC'S FIRST REQUESTS FOR ADMISSION** |

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, and subject to the objections set forth below, Plaintiff, the Federal Trade Commission ("FTC") responds to Defendant Match Group, LLC's ("MGLLC") First Requests for Admission below.

**REQUEST FOR ADMISSION NO. 1:**

Admit that all of the requirements for redeeming the Match.com Guarantee were listed on the Program Rules page, as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that the requirements for redeeming the Match Guarantee were listed on the Program Rules page but denies that these requirements were adequately explained, described, or disclosed to consumers.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the Program Rules page was accessed by clicking "Learn more" under the Guarantee offer.

**RESPONSE:** The FTC objects to the phrase "under the Guarantee offer" as vague. The FTC interprets the phrase "Guarantee offer" to refer to the graphic stating "Match Guarantee"

**App. 500**

depicted on Match.com's rate cards during the time period that Match.com offered a six-month subscription subject to the Match Guarantee, as depicted in the FTC's Amended Complaint in paragraph 39, and interprets the phrase "under" to mean that it was visually underneath the "Match Guarantee" graphic regardless of any actions by the user.

Based on the above interpretation, the FTC denies that the "Learn More" hyperlink was located "under" the Match Guarantee graphic on Match.com's rate cards. Rather, the "Learn More Hyperlink" was included in a text box with the language "The Match.com Guarantee[.] If you haven't found someone special within 6 months, we'll give you an extra 6 months FREE. Learn More," which displayed only if a consumer hovered their mouse over the Match Guarantee graphic displayed on the rate card.

**REQUEST FOR ADMISSION NO. 3:**

Admit that, at the time the Match.com Guarantee was offered, there were six Numbered Requirements for redeeming the Match.com Guarantee listed on the Program Rules Page, as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that there were six Numbered Requirements provided for redeeming the Match.com Guarantee listed on the Program Rules Page, which was accessible by clicking the "Learn More" hyperlink described in Response #2. However, the FTC denies that these six Numbered Requirements fully or clearly explain the requirements to receive the Guarantee Extension or that these Numbered Requirements (or the Program Rules Page) were adequately disclosed to consumers.

**REQUEST FOR ADMISSION NO. 4:**

**App. 501**

Admit that the first Numbered Requirement is "Comply at all times with the Match.com Terms of Use. By using the Match.com website and participating in the Program, you agree to be bound by the Match.com Terms of Use," as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that the first numbered paragraph on the Program Rules page, which is excerpted in paragraph 43 of the FTC's Amended Complaint, included the following text: "Comply at all times with the Match.com Terms of Use. By using the Match.com website and participating in the Program, you agree to be bound by the Match.com Terms of Use."

**REQUEST FOR ADMISSION NO. 5:**

Admit that the first Numbered Requirement (described in Request No. 4) for redeeming the Match.com Guarantee appears on the Program Rules Page, as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that the first numbered paragraph on the Program Rules page, which is excerpted under paragraph 43 of the FTC's Amended Complaint, included the following text: "Comply at all times with the Match.com Terms of Use. By using the Match.com website and participating in the Program, you agree to be bound by the Match.com Terms of Use."

**REQUEST FOR ADMISSION NO. 6:**

Admit that the second Numbered Requirement is "Pay in full the applicable rate for a six-month subscription to the Match.com service (the 'Guarantee Program Subscription'). The Guarantee Program Subscription consists of five consecutive 30-day periods followed by a final period of 33 days, all of which are referred to as a 'Month' in these Program rules. If you are enjoying the benefits of a free trial of the Match.com service, your Guarantee Program Subscription will not begin until your free trial period ends," as excerpted under paragraph 43 of Your Complaint.

**App. 502**

**RESPONSE:** The FTC admits that the second numbered paragraph on the Program Rules page, which is excerpted in paragraph 43 of the FTC's Amended Complaint, included the following text: "Pay in full the applicable rate for a six-month subscription to the Match.com service (the 'Guarantee Program Subscription'). The Guarantee Program Subscription consists of five consecutive 30-day periods followed by a final period of 33 days, all of which are referred to as a 'Month' in these Program rules. If you are enjoying the benefits of a free trial of the Match.com service, your Guarantee Program Subscription will not begin until your free trial period ends."

**REQUEST FOR ADMISSION NO. 7:**

Admit that the second Numbered Requirement (as described in Request No. 6) for redeeming the Match.com Guarantee appears on the Program Rules Page, as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that the second numbered paragraph on the Program Rules page, which is excerpted in paragraph 43 of the FTC's Amended Complaint, included the following text: "Pay in full the applicable rate for a six-month subscription to the Match.com service (the 'Guarantee Program Subscription'). The Guarantee Program Subscription consists of five consecutive 30-day periods followed by a final period of 33 days, all of which are referred to as a 'Month' in these Program rules. If you are enjoying the benefits of a free trial of the Match.com service, your Guarantee Program Subscription will not begin until your free trial period ends."

**REQUEST FOR ADMISSION NO. 8:**

Admit that the third Numbered Requirement is "Use your Guarantee Program Subscription to create a profile with a primary photo. Your profile and primary photo must be approved by Match.com within the first seven days of your Guarantee Program Subscription in order for you to be eligible for the Guarantee Program. Details on approval of profile and primary photo

**App. 503**

available at FAQ and How It Works," as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that the third numbered paragraph on the Program Rules page, which is excerpted in paragraph 43 of the FTC's Amended Complaint, included the following text: "Use your Guarantee Program Subscription to create a profile with a primary photo. Your profile and primary photo must be approved by Match.com within the first seven days of your Guarantee Program Subscription in order for you to be eligible for the Guarantee Program. Details on approval of profile and primary photo available at FAQ and How It Works."

**REQUEST FOR ADMISSION NO. 9:**

Admit that the third Numbered Requirement (as described in Request No. 8) for redeeming the Match.com Guarantee appears on the Program Rules Page, as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that the third numbered paragraph on the Program Rules page, which is excerpted in paragraph 43 of the FTC's Amended Complaint, included the following text: "Use your Guarantee Program Subscription to create a profile with a primary photo. Your profile and primary photo must be approved by Match.com within the first seven days of your Guarantee Program Subscription in order for you to be eligible for the Guarantee Program. Details on approval of profile and primary photo available at FAQ and How It Works."

**REQUEST FOR ADMISSION NO. 10:**

Admit that the fourth Numbered Requirement is "Keep your profile with primary photo visible at all times during your Guarantee Program Subscription," as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that the fourth numbered paragraph on the Program Rules page, which is excerpted in paragraph 43 of the FTC's Amended Complaint, included the following

**App. 504**

text: "Keep your profile with primary photo visible at all times during your Guarantee Program Subscription."

**REQUEST FOR ADMISSION NO. 11:**

Admit that the fourth Numbered Requirement (as described in Request No. 10) for redeeming the Match.com Guarantee appears on the Program Rules Page, as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that the fourth numbered paragraph on the Program Rules page, which is excerpted in paragraph 43 of the FTC's Amended Complaint, included the following text: "Keep your profile with primary photo visible at all times during your Guarantee Program Subscription."

**REQUEST FOR ADMISSION NO. 12:**

Admit that the fifth Numbered Requirement is "Communicate during your Guarantee Program Subscription with other Match.com subscribers with whom you have not previously communicated during your Guarantee Program Subscription ("Unique Match.com Subscribers)," as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that the fifth numbered paragraph on the Program Rules page, which is excerpted in paragraph 43 of the FTC's Amended Complaint, included the following text: "Communicate during your Guarantee Program Subscription with other Match.com subscribers with whom you have not previously communicated during your Guarantee Program Subscription ('Unique Match.com Subscribers')."

**REQUEST FOR ADMISSION NO. 13:**

Admit that the fifth Numbered Requirement (as described in Request No. 12) for redeeming the Match.com Guarantee appears on the Program Rules Page, as excerpted under

**App. 505**

paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that the fifth numbered paragraph on the Program Rules page, which is excerpted in paragraph 43 of the FTC's Amended Complaint, included the following text: "Communicate during your Guarantee Program Subscription with other Match.com subscribers with whom you have not previously communicated during your Guarantee Program Subscription ('Unique Match.com Subscribers')."

**REQUEST FOR ADMISSION NO. 14:**

Admit that the sixth Numbered Requirement is "Send a 'Qualifying Email' to a minimum of five other Unique Match.com Subscribers each Month during your Guarantee Program Subscription. A 'Qualifying Email' may be either one you send to a Unique Match.com Subscriber who has not yet emailed you or an email response you send to a Unique Match.com Subscriber who has emailed you. A 'Qualifying Email' must be an email sent through the Match.com service and does not include any other method of communicating (such as Match.com winks, Match PhoneTM, Match.com Instant Messaging or emails sent outside of the Match.com system)," as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that the sixth numbered paragraph on the Program Rules page, which is excerpted in paragraph 43 of the FTC's Amended Complaint, included the following text: "Send a 'Qualifying Email' to a minimum of five other Unique Match.com Subscribers each Month during your Guarantee Program Subscription. A 'Qualifying Email' may be either one you send to a Unique Match.com Subscriber who has not yet emailed you or an email response you send to a Unique Match.com Subscriber who has emailed you. A 'Qualifying Email' must be an email sent through the Match.com service and does not include any other

**App. 506**

method of communicating (such as Match.com winks, MatchPhone™, Match.com Instant Messaging or emails sent outside of the Match.com system).”

**REQUEST FOR ADMISSION NO. 15:**

Admit that the sixth Numbered Requirement (as described in Request No. 14) for redeeming the Match.com Guarantee appears on the Program Rules Page, as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC admits that the sixth numbered paragraph on the Program Rules page, which is excerpted in paragraph 43 of the FTC’s Amended Complaint, included the following text: “Send a ‘Qualifying Email’ to a minimum of five other Unique Match.com Subscribers each Month during your Guarantee Program Subscription. A ‘Qualifying Email’ may be either one you send to a Unique Match.com Subscriber who has not yet emailed you or an email response you send to a Unique Match.com Subscriber who has emailed you. A ‘Qualifying Email’ must be an email sent through the Match.com service and does not include any other method of communicating (such as Match.com winks, MatchPhone™, Match.com Instant Messaging or emails sent outside of the Match.com system).”

**REQUEST FOR ADMISSION NO. 16:**

Admit that there are other requirements for redeeming the Match.com Guarantee listed on the Program Rules Page, as excerpted under paragraph 43 and alleged in paragraph 44 of Your Complaint.

**RESPONSE:** The FTC objections to the phrase “other requirements” as vague, as it is not clear which requirements are being referenced. The FTC interprets this request to be stating that there are more requirements for redeeming the Match Guarantee beyond those listed in the six

8

**App. 507**

numbered paragraphs on the Program Rules Page on Match.com. Subject to this interpretation, the FTC admits.

**REQUEST FOR ADMISSION NO. 17:**

Admit that other requirements for redeeming the Match.com Guarantee appear in a paragraph below the Numbered Requirements, as excerpted under paragraph 43 of Your Complaint.

**RESPONSE:** The FTC objections to the phrase "other requirements" as vague, as it is not clear which requirements are being referenced. The FTC interprets this request to be stating that there are more requirements for redeeming the Match Guarantee beyond those listed in the six numbered paragraphs on the Program Rules Page on Match.com including those in a paragraph beneath the six numbered paragraphs on the Program Rules Page on Match.com. Subject to this interpretation, the FTC admits.

**REQUEST FOR ADMISSION NO. 18:**

Admit that a requirement for redeeming the Match.com Guarantee is "If, during the last seven days of a Guarantee Program Subscription, you are eligible for a Guarantee Extension (and have not met that 'special someone'), you may accept the Guarantee Extension by affirming on the Guarantee Program Progress Page that you have not met someone special during your Guarantee Program Subscription," as excerpted under paragraphs 43 and 48 and alleged in paragraph 48 of Your Complaint.

**RESPONSE:** The FTC admits that the Program Rules Page on Match.com, which is excerpted in paragraphs 43 and 48 of the FTC's Amended Complaint, included the following language: "If, during the last seven days of a Guarantee Program Subscription, you are eligible for a Guarantee Extension (and have not met that 'special someone'), you may accept the Guarantee Extension

9

**App. 508**

by affirming on the Guarantee Program Progress Page that you have not met someone special during your Guarantee Program Subscription." The FTC further admits that Defendants did in fact require that consumers accept the Guarantee Extension by affirming on the Guarantee Program Progress Page that you have not met someone special during your Guarantee Program Subscription during the last seven days of a Guarantee Program Subscription.

**REQUEST FOR ADMISSION NO. 20:**

Admit that the Match.com Terms of Use excerpted in paragraph 63 of Your Complaint reference Match.com's Chargeback Policy.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 21:**

Admit that the Match.com Terms of Use excerpted in paragraph 63 of Your Complaint stated that if Match.com "successfully dispute[s] the reversal [of charges], and the reversed funds are returned, you are not entitled to a refund or to have your account or subscription reinstated."

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 22:**

Admit that disabling a customer's login during the pendency of a chargeback dispute does not constitute an unfair or deceptive practice.

**RESPONSE:** The FTC denies that disabling a customer's login during the pendency of a chargeback dispute can never constitute an unfair or deceptive practice given that determining whether a practice is unfair or deceptive is a fact-intensive inquiry.

**REQUEST FOR ADMISSION NO. 23:**

Admit that if a company reinstates a customer's account access following a chargeback dispute in which the company prevails, the company has not engaged in any unfair or deceptive

**App. 509**

practice.

**RESPONSE:** The FTC objects to this request as vague as to the phrase "reinstates a customer's account." The request does not describe the circumstances in which the customer's account access was terminated or suspended. The FTC assumes, for purposes of answering this request, that the request is describing a situation in which a customer's account access is temporarily suspended during the pendency of a chargeback dispute. Based on this interpretation, the FTC can neither admit or deny, as the request does not provide a timeframe for determining how long after the chargeback was resolved that the customer's account was reinstated or unsuspended and does not specify whether the customer was credited for back time relating to the amount of time his or her account was suspended during the pendency of the chargeback dispute.

**REQUEST FOR ADMISSION NO. 24:**

Admit that MGL's current chargeback policy, as described in MGL's response to the FTC's Interrogatory No. 12 to MGL, does not constitute an unfair or deceptive practice.

**RESPONSE:** The FTC objects to this request as vague. It is unclear whether Defendant is asking about Match Group, LLC's current chargeback policy or the policy described in MGLLC's response, which may in fact be different from MGLLC's current practices. If MGLLC referring to the description of the policy in MGLLC's response to the FTC's Interrogatory No. 12 to MGLLC, which MGLLC alleges is its current policy and practice, is an unfair or deceptive act or practice, the FTC admits that it is not alleging that it is an unfair or deceptive act or practice. If MGLLC is asking whether its current chargeback policy is an unfair or deceptive act or practice, the FTC states that it does not have sufficient information to admit or deny, as it is unclear whether the policy described in MGLLC's response to the FTC's

11

**App. 510**

Interrogatory No. 12 to MGLLC is in fact MGLLC's current policy given the existence of contradictory evidence.

**REQUEST FOR ADMISSION NO. 25:**

Admit that if MGL prevails in a billing dispute, the consumer's financial institution has determined that the consumer's dispute was wrongful.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 26:**

Admit that it is not an unfair or deceptive practice to terminate a user's account if the user violates a website's Terms of Use.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 27:**

Admit that it is not an unfair or deceptive practice for MGL to terminate a Match.com user's account if the user violates Match.com's Terms of Use.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 28:**

Admit that a company incurs costs to respond to the billing disputes described in paragraph 62 of Your Complaint.

**RESPONSE:** The FTC admits that MGLLC's 30(b)(6) designee has testified that the company incurred costs to respond to the customer billing disputes described in paragraph 62 of the FTC's Amended Complaint.

**REQUEST FOR ADMISSION NO. 29:**

Admit that at least some billing disputes (as described in paragraph 62 of Your Complaint)

**App. 511**

are submitted by consumers who did in fact authorize a Match.com charge but who wrongly claim that they did not authorize the Match.com charge.

**RESPONSE:** The FTC does not have sufficient information to admit or deny whether some billing disputes (as described in paragraph 62 of Your Complaint) are submitted by consumers who did in fact authorize a Match.com charge but who wrongly claim that they did not authorize the Match.com charge.

**REQUEST FOR ADMISSION NO. 30:**

Admit that submitting a fraudulent billing dispute to a consumer's financial institution would violate Match.com's Terms of Use.

**RESPONSE:**  The FTC objects to this request as vague as to the term period at issue. The FTC admits that internal emails and testimony from Defendants' employees suggest that it has been these employees' interpretation of Match.com's Terms of Use that it would violate these Terms of Use for a customer to submit a "fraudulent" billing dispute to their financial institution. The FTC denies that Match.com's Terms of Use explicitly states that submitting a fraudulent billing dispute to a consumer's financial institution would violate Match.com's Terms of Use.

**REQUEST FOR ADMISSION NO. 31:**

Admit that You have not alleged that Match.com failed to disclose material restrictions, limitations, or conditions to purchase, receive, or use Match.com's services, or to receive any discount, "guarantee," or special offer, other than with respect to the Match.com Guarantee described in Your Complaint.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 32:**

Other than with respect to the Match.com Guarantee described in Your Complaint, admit

13

that You have no evidence that Match.com failed to disclose material restrictions, limitations, or conditions to purchase, receive, or use Match.com's services, or to receive any discount, "guarantee," or special offer.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 33:**

Admit that You have not alleged that Match.com misrepresented the cost to the consumer to purchase, receive, use, or return the initial good or service.

**RESPONSE:** The FTC objects to "the initial good or service" as vague. The FTC interprets this phrase to mean the first subscription period in a recurring Match.com subscription. Subject to this interpretation, the FTC admits.

**REQUEST FOR ADMISSION NO. 34:**

Admit that You have no evidence that Match.com misrepresented the cost to the consumer to purchase, receive, use, or return the initial good or service.

**RESPONSE:** The FTC objects to "the initial good or service" as vague. The FTC interprets this phrase to mean the first subscription period in a recurring Match.com subscription. Subject to this interpretation, the FTC admits.

**REQUEST FOR ADMISSION NO. 35:**

Admit that You have not alleged that Match.com misrepresented that a consumer can obtain a good or service for a processing, service, shipping, handling, or administrative fee with no further obligation.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 36:**

**App. 513**

Admit that You have no evidence that Match.com misrepresented that a consumer can obtain a good or service for a processing, service, shipping, handling, or administrative fee with no further obligation.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 37:**

Admit that You have not alleged that Match.com misrepresented the purpose(s) for which the consumer's billing information would be used.

**RESPONSE:** The FTC admits that it has not expressly alleged that Match.com misrepresented the purpose(s) for which the consumer's billing information would be used, but denies that its allegations do not relate to Match.com having misrepresented the purpose(s) for which the consumer's billing information would be used given that, among other things, Match.com stated that consumers would receive a Guarantee Extension if they did not meet someone special yet charged thousands of consumers for another six-month subscription instead of providing the Guarantee Extension.

**REQUEST FOR ADMISSION NO. 38:**

Admit that You have no evidence that Match.com misrepresented the purpose(s) for which the consumer's billing information would be used.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 39:**

Admit that You have not alleged that Match.com misrepresented the date by which the consumer will incur any obligation or be charged unless the consumer takes an affirmative action.

**RESPONSE:** Deny.

15

**App. 514**

**REQUEST FOR ADMISSION NO. 40:**

Admit that You have no evidence that Match.com misrepresented the date by which the consumer will incur any obligation or be charged unless the consumer takes an affirmative action.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 41:**

Admit that You have not alleged that Match.com misrepresented that a transaction has been authorized by the consumer.

**RESPONSE:** The FTC admits that its counts do not expressly allege that Match.com misrepresented that a transaction has been authorized by a consumer. But the FTC denies that its allegations do not concern Match.com having misrepresented that a transaction is authorized by the consumer because the FTC alleged that Defendants have billed consumers after they believed they effectively canceled their Match.com subscriptions and also charged customers for another six-month subscription when they had believed they would be receiving an additional six months of service for free.

**REQUEST FOR ADMISSION NO. 42:**

Admit that You have no evidence that Match.com misrepresented that a transaction has been authorized by the consumer.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 43:**

Admit that You have not alleged that Match.com misrepresented any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for a good or service.

**RESPONSE:** Deny.

**App. 515**

**REQUEST FOR ADMISSION NO. 44:**

Admit that You have no evidence that Match.com misrepresented any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for a good or service.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 45:**

Admit that disclosing material terms and conditions of an offer via hyperlink does not violate the FTC Act.

**RESPONSE:** The FTC denies because it is possible violate the FTC Act by inadequately disclosing material terms and conditions of an offer via hyperlink, as the FTC has alleged in this case.

**REQUEST FOR ADMISSION NO. 46:**

Admit that disclosing material terms and conditions of an offer via infohover does not violate the FTC Act.

**RESPONSE:** The FTC denies because it is possible to violate the FTC Act by inadequately disclosing material terms by means that incorporate the use of an infohover, as the FTC has alleged in this case.

**REQUEST FOR ADMISSION NO. 47:**

Admit that prior to January 13, 2023, the FTC had not reviewed Match.com's password reset flow.

**RESPONSE:** The FTC objects to this request as irrelevant, as the date by which the FTC reviewed evidence is immaterial to any claim or defense in this case. The FTC further objects to this request as vague as to the meaning of "reviewed." The FTC interprets this request to be

**App. 516**

asking whether the FTC reviewed evidence concerning Match.com's password reset flow before January 13, 2023. Subject to this interpretation, the FTC denies.

**REQUEST FOR ADMISSION NO. 48:**

Admit a Match.com customer could sign up for a subscription and cancel a subscription on the same website.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 49:**

Admit a customer is not required to call customer service to cancel their Match.com subscription.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 50:**

Admit a password requirement in an online cancelation mechanism can be a legitimate security measure.

**RESPONSE:** The FTC admits that a password requirement can, in appropriate circumstances, be a legitimate security measure in an online cancellation mechanism. The FTC denies that it was a legitimate security measure in this case, however.

**REQUEST FOR ADMISSION NO. 51:**

Admit the FTC has not promulgated any implementing regulations for ROSCA.

**RESPONSE:** The FTC objects to this request as confusing in that it incorrectly suggests or presumes that Congress has authorized or required the FTC to "promulgate . . . implementing regulations for ROSCA." The FTC further objects to the phrase "implementing regulations" as vague.

**App. 517**

The FTC admits that it has not passed any rules regarding the enforcement of ROSCA and that Congress neither authorized nor required the FTC to do so.

**REQUEST FOR ADMISSION NO. 52:**

Admit ROSCA does not prescribe specific steps companies must follow to comply with the provision requiring negative option sellers to provide a simple mechanism for consumers to stop recurring charges.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 53:**

Admit ROSCA does not provide guidance on what constitutes a "simple" mechanism to stop recurring charges.

**RESPONSE:** The FTC objects to the term "guidance" as vague. The FTC further objects to this Request as irrelevant because the word "simple" is a common term that does not require further definition or "guidance" in order to be understood by persons or entities covered by the Act.  It also objects to this Request as irrelevant because the text of the statute speaks for itself. The FTC interprets this request to be asking the FTC to admit that the word "simple" as used in the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-8405, is not a defined term in the Act. Based on this interpretation, the FTC admits.

Date: July 28, 2023

*/s/ REID TEPFER*
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted pro hac vice)
JOHN R. O'GORMAN (admitted pro hac vice)
ERICA ROLLINS HILLIARD
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 2421292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Federal Trade Commission

**App. 518**

1999 Bryan Street, Suite 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov;
ehilliard@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**App. 519**

## CERTIFICATE OF SERVICE

I, Reid Tepfer, certify that, on July 28, 2023, I served the foregoing Plaintiff's Responses to Defendant Match Group, LLC's First Requests for Admission by email on the following counsel of record at the email address listed below:

Angela C. Zambrano
angela.zambrano@sidley.com
Chad Hummel
chummel@sidley.com
Sidley Austin LLP

*Attorneys for Defendant Match Group, Inc.*
*and Match Group, LLC*

By: /s/ Reid Tepfer