IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>     Plaintiff,<br><br> vs.<br><br>MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>     Defendants. | Case No. 3:19-cv-02281-K<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANTS MATCH GROUP, INC. AND MATCH GROUP, LLC'S
REPLY IN SUPPORT OF RULE 702 MOTION
TO EXCLUDE DR. JENNIFER KING'S TESTIMONY**

# TABLE OF CONTENTS

Page

A. Dr. King's Lack of an Empirical Basis for Her Conclusions Is Fatal ........................... 1

    1. Experts in the field require that heuristic analysis be paired with empirical testing ........................................................................................................ 1

    2. The cases that the FTC cites do not justify Dr. King's lack of empirical analysis ........................................................................................................ 2

B. Dr. King's Incomplete Heuristic Analysis Is Inconsistent with Usability Literature ........................................................................................................ 4

C. Dr. King Failed to Consider Relevant Factors ............................................................. 5

D. Dr. King's "Competitor" Comparison Is Nothing of the Sort ....................................... 6

E. Dr. King's "Not Easy or Simple" Conclusion Is Inadmissible *Ipse Dixit* ..................... 7

F. Dr. King's Complaint Analysis Is Inadmissible ........................................................... 8

CONCLUSION ................................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alzuraqi v. Grp. 1 Automotive, Inc.*,
921 F. Supp. 2d 648 (N.D. Tex. 2013 ................................................................................10

*Am. Dairy Queen Corp. v. W.B. Mason Co.*,
543 F. Supp. 3d 695 (D. Minn. 2021) ..................................................................................3

*Bennett v. PRC Public Sector, Inc.*,
931 F. Supp. 484 (S.D. Tex. 1996) ......................................................................................3

*CEATS, Inc. v. TicketNetwork, Inc.*,
2:15-CV-01470-JRG-RSP, 2018 WL 453732 (E.D. Tex. Jan. 17, 2018)..............................8

*Christophersen v. Allied-Signal Corp.*,
939 F.2d 1106 (5th Cir. 1991), *abrogated on other grounds by Daubert v.
Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ................................................................9

*Henderson v. McMoran Oil & Gas, LLC*,
No. 09-5626, 2011 WL 13377430 (E.D. La. Mar. 2, 2011) ............................................7, 8

*Lackey v. Robert Bosch Tool Corp.*,
No. 16-29-ART, 2017 WL 129891 (E.D. Ky. Jan. 12, 2017).............................................1

*Lang v. Progressive Exp. Ins. Co.*,
No. 11-C-0188, 2012 WL 1409936 (E.D. Wis. Apr. 20, 2012) ..........................................2

*Moore v. Ashland Chem. Inc.*,
151 F.3d 269 (5th Cir. 1998) ...............................................................................................5

*Nebraska Plasstics v. Holland Colors Americas*,
408 F.3d 410 (8th Cir. 2005) ...............................................................................................6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
638 F. Supp. 3d 227 (E.D.N.Y 2022) ..................................................................................3

*Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*,
No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ............................9

*In re Zoloft (Sertraline Hydrochloride) Products Liab. Litig.*,
858 F.3d 787 (3d Cir. 2017)................................................................................................4

The FTC's Response to Defendants' Motion to Exclude Dr. King's opinions admits that she did none of the scientific analyses necessary to support a reliable conclusion that Match.com's cancellation flow is not "simple." Instead, the FTC asserts that her opinions are admissible because she purportedly has a "wealth of experience" in human-computer interaction and "dark patterns." "But just because a witness is qualified to opine on a subject does not mean that her testimony will be reliable."[1] That is where the fatal flaw lies in Dr. King's opinion—rather than following an accepted methodology or engaging in unbiased and replicable studies, her opinion relies solely on her personal views as a purported "dark patterns" researcher who regularly testifies on the FTC's behalf. No amount of alleged expertise can substitute for objective, reliable empirical study. The Court should grant Defendants' Motion and exclude Dr. King's opinions.

A. **Dr. King's Lack of an Empirical Basis for Her Conclusions Is Fatal**

The FTC claims that empirical testing was unnecessary. Resp. at 4. Not so.

1. **Experts in the field require that heuristic analysis be paired with empirical testing**

What Dr. King admits is the "authoritative" literature in the field *requires* that heuristic analyses be used *only in conjunction with* usability testing. The FTC—without any support from Dr. King's belated declaration—attempts to distinguish these sources, but even if the FTC were right about those articles (and it is not),[2] the evidence is overwhelming that heuristic analysis cannot be used alone. Even the articles attached to the FTC's response warn that "both user testing and heuristic analysis are still needed." Resp. App. at 2.[3]

---

[1] *Lackey v. Robert Bosch Tool Corp.*, No. 16-29-ART, 2017 WL 129891, at *5 (E.D. Ky. Jan. 12, 2017).
[2] One of the sources that the FTC claims is not authoritative was published by the Nielsen Norman Group, which Dr. King testified has "authoritative expertise in the field of usability." Mot. App. 421 (10:24-11:1), 428 (39:11-13). Dr. King cited articles published by the Nielsen Norman Group, including an article written by one of the *same authors* that she claimed to be unfamiliar with. *See* Mot. App. at 54 n.78; Mot. App. at 167 n.28 (citing article by Kate Moran).
[3] Resp. App. at 18 ("This is a great illustration of why heuristic evaluations are not a replacement for user research."); Resp. App. at 27 ("Be sure you pair heuristic evaluations with other, helpful testing." [This language is not visible in

1

Heuristic analysis cannot be used alone precisely because it is prone to errors—and thus unreliable—when used on its own. "Many studies reported that [heuristic analysis] tended to find too many false positives (false alarms) and minor problems." App. at 499, 502 (explaining that heuristic analysis "yields a significant false alarm rate"). And those false alarms are influenced by the person conducting the evaluation, because "[t]he method is biased by the current mindset of the evaluators." App. at 517. Numerous authorities, including those cited in the FTC's own appendix, recognize these pitfalls.[4] Dr. King—a dark patterns researcher who regularly works on behalf of the FTC—did nothing to avoid these pitfalls. If anything, Dr. King is particularly likely to identify "false alarms" given her role, which appears to be exactly what happened according to Dr. King's "brainstorming" notes, as discussed in more detail below, *infra* Part E. Thus, heuristic analysis alone is particularly inappropriate in this matter, as the FTC's own authorities instruct.

### 2. The cases that the FTC cites do not justify Dr. King's lack of empirical analysis

The cases that the FTC cites do not involve situations where *experts in the field* agreed that empirical analysis is necessary to ensure reliability. Additionally, those cases acknowledge that "testing is a factor to be considered under a *Daubert* analysis." *Lang v. Progressive Exp. Ins. Co.*, No. 11-C-0188, 2012 WL 1409936, at *4 (E.D. Wis. Apr. 20, 2012). The issue in those cases was whether the experts needed to *repeat* empirical analysis already done by someone else.[5]

---

the FTC's appendix, so the article is also at App. 495]); Resp. App. at 40 ("[E]ven though heuristic analyses are definitely a solid way to identify usability problems regarding digital products, they should not be relied upon as the only source of data."); App. at 516 ("We would in general recommend that one does not rely exclusively on heuristic evaluation during the usability engineering process"); App. at 531 ("Heuristic Evaluation . . . can't replace User Testing, which can provide more insightful data from actual users that can have an impact on user experience.").

[4] App. at 508 ("[H]euristic evaluation picks up minor usability problems that are often not even *seen* in actual user testing. One could wonder to what extent such 'problems' should really be accepted as constituting usability problems."). The FTC included only an excerpt of this article in its Appendix, at Resp. App. 1. The full article is at App. 503-10. *See also* Resp. App. at 35 ("At times, a heuristic analysis may set off false alarms: Issues that would not necessarily have a negative effect on the overall UX if left alone are sometimes flagged to be fixed."); Resp. App. at 40 ("Studies show limitations to expert review because of psychological reasons such as cognitive bias").

[5] *Lang*, 2012 WL 1409936, at *4 (If "the opinion is based on principles that are set forth in authoritative works that have been subjected to empirical testing, the expert may apply those principles *without repeating* the empirical testing

Here, by contrast, no empirical analysis supports Dr. King's conclusions. The FTC argues that "[t]he principles underlying Dr. King's analysis" are "derived from extensive empirical research," Resp. at 4, but her *application* of those principles is unsupported. For example, while Nielsen's empirical research may demonstrate that a more "visible" "system status" (one of Nielsen's heuristics) is more "usable," Dr. King cites no empirical analysis—*whether her own or anyone else's*—to support her claim that Match.com's cancelation flow does not have a visible system status. *See* Mot. App. at 36-37 (citing no sources). Dr. King also cited no empirical analysis to support her conclusion that a "different stylesheet" makes a flow "inconsistent," or that users may be "confused" by the word "resign." Mot. App. at 37-38. In each instance, Dr. King makes a leap from empirically supported heuristics to the specific cancelation flow features in this case, without a shred of empirical evidence from herself or others to support her opinion.

That makes this case similar to *Bennett v. PRC Public Sector, Inc.*, where the court acknowledged that there was plenty of literature to show that "typists who work long hours with flexed or deviated wrists are more susceptible to injury," but faulted the plaintiff's expert for failing to "do any testing of his theory on PRC's workstations to determine its applicability." 931 F. Supp. 484, 497 (S.D. Tex. 1996). Like the expert in that case, Dr. King did only a superficial review, here based on a handful of screenshots and videos provided by the FTC, and did no testing to support her theory about how those heuristics apply to Match.com's cancelation flow.

*Commerce Planet* does not excuse Dr. King's failure to rely on any empirical testing. First, in that case, Dr. King relied on empirical analysis examining the precise issue in dispute (whether users scroll to read disclosures "below the fold" on a webpage). *See* Resp. App. at 9 (noting that

---

on which they are based." (emphasis added)); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 638 F. Supp. 3d 227, 262 (E.D.N.Y 2022) (relying on empirical analyses done by others); *Am. Dairy Queen Corp. v. W.B. Mason Co.*, 543 F. Supp. 3d 695, 728 (D. Minn. 2021) (same).

3

Dr. King "cited a couple of books"). Here, there is no such empirical analysis. Second, the *Daubert* dispute in that case was primarily about whether Dr. King was qualified as an expert and the accuracy of her understanding that the disclosures were, in fact, below the fold—not any lack of empirical analysis. *See* App. at 468-83. The brief did not cite any of the cases or authorities cited here, so the court's decision in that case does not immunize Dr. King from challenge in this case.

### B. Dr. King's Incomplete Heuristic Analysis Is Inconsistent with Usability Literature

The FTC next tries to defend Dr. King's partial heuristic analysis by claiming that usability professionals need not use any particular set of heuristics. Resp. at 5-6. But once an expert chooses a set of heuristics (like Nielsen's 10 Usability Heuristics, "probably the most commonly used set," Resp. App. at 37), the expert must explain why he or she excluded some heuristics within that set. *In re Zoloft (Sertraline Hydrochloride) Products Liab. Litig.*, 858 F.3d 787, 797 (3d Cir. 2017) ("[U]se of standard techniques bolster[s] the inference of reliability, [while] nonstandard techniques need to be well-explained."). Here, Dr. King said at her deposition that she excluded seven of the ten heuristics because she did not "find them relevant," as she did not think the "cancellation flow potentially violated" them (i.e., they were not consistent with her liability opinion). Mot. App. 441. The fact that they would not support her predetermined conclusion is not a good reason to find factors irrelevant, exposing the flaws and unreliability of Dr. King's opinions.

The FTC's response offers a new reason for Dr. King's failure to consider these factors, asserting that the seven other heuristics "were not applicable" to the flow, and Defendants have not shown otherwise. Resp. at 7. Tellingly, Dr. King did not offer this reason in her report, at her deposition, or in her belated declaration. In any event, Dr. King chose to depart from Nielsen's 10

4

heuristics, and it is the FTC's burden to prove that Dr. King's analysis is reliable and admissible.[6] So the FTC, not Defendants, must justify Dr. King's omission. It cannot, because the heuristics that Dr. King ignored are plainly relevant. For example, the heuristic stating that a system "should speak the users' language, with words, phrases, and concepts familiar to the user," is clearly relevant, and Defendants' expert spent pages addressing it. Mot. App. at 109-11. Yet Dr. King ignored it, without any excuse other than it did not support her predetermined conclusion. Put simply, Dr. King cannot attempt to cloak herself in Nielsen's empirical analysis, then ignore seven of Nielsen's ten factors without any explanation. It would be the equivalent of this Court resolving a dispute that typically involves application of a ten-factor test using only three of those factors, chosen based on which factors favor one party. The Court would never do that, and it should not permit Dr. King to do so either.

### C. Dr. King Failed to Consider Relevant Factors

Aside from ignoring relevant heuristics, Dr. King also ignored other factors that the FTC itself has identified as relevant to whether a cancelation mechanism is "simple," such as the time it takes to cancel or the effectiveness rate of the cancelation flow. The FTC argues that she had no need to do so, because she used "industry-wide accepted methodology" (i.e., Dr. King's partial heuristic analysis) instead. Resp. at 8. This proves the fundamental flaw in Dr. King's opinion. If the "industry-wide accepted methodology" she used is so different from the meaning of "simple" under ROSCA that she could ignore the factors the FTC testified were relevant, then she needed to do far more to connect her heuristic analysis to her conclusion that the flow is not "simple" or "easy." But if the "industry-wide accepted methodology" is instructive as to what is "simple" or

---

[6] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) ("[T]he party seeking to . . . admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. This requires some objective, independent validation of the expert's methodology.").

5

"easy," then that analysis must include obviously relevant factors, like time to cancel and effectiveness rate. Dr. King did none of this. Like the expert in *Nebraska Plastics v. Holland Colors Americas*, Dr. King "failed to take into account a plethora of specific facts." 408 F.3d 410, 417 (8th Cir. 2005). Her opinion should be excluded for that reason.

### D. Dr. King's "Competitor" Comparison Is Nothing of the Sort

The FTC's defense of Dr. King's inapposite "competitor" comparison is entirely devoid of any authority, legal or otherwise. Dr. King herself has repeatedly emphasized that "context matters" to usability, particularly the contextual difference between a desktop computer and a mobile-device-based app. *See, e.g.*, Mot. App. at 22, 428, 456-57. The documents in the FTC's appendix confirm this point. *See, e.g.*, Resp. App. at 18 (using an example of a design feature that violates a heuristic if used on a website, but is acceptable if used in a mobile design). Yet when she compared Match.com's desktop subscription cancelation flow to Match.com "competitors," she chose as comparators app-based (i.e., mobile device-based) account deletion flows.

The FTC's only justification for this apples-to-oranges comparison is that Dr. King "conducted her analysis using the most likely interface that users would use to interact with the service." Resp. at 10. Dr. King did not support the FTC's newfound excuse in her (belated) declaration. Moreover, that is precisely the problem: Dr. King compared services that are likely to be used on different interfaces (desktop versus mobile device), then complained that the interfaces use different features. This makes no sense. It is an apples-to-oranges comparison, like comparing brief formatting in this Court to brief formatting in the U.S. Supreme Court. Different rules apply, so such comparisons are inadmissible, Mot. at 14-16, and the FTC does not argue otherwise.

The "competitor" flows that Dr. King analyzed are doubly inapposite because she reviewed only free account deletion flows, not a single paid subscription flow. The FTC argues this makes no difference, because a "decision to include extra steps . . . driven by the desire to make a profit

6

is not a valid defense." Resp. at 10. But this again reflects the FTC's misunderstanding of the law and its own guidance. ROSCA requires only that a cancelation method be "simple," not the simplest. And the FTC's own guidance says save offers (i.e., discounts)—which make sense in the context of a paid subscription, but not a free account—are permissible. 86 Fed. Reg. 60826 & n.48.

### E. Dr. King's "Not Easy or Simple" Conclusion Is Inadmissible *Ipse Dixit*

Even apart from the deficiencies described above, Dr. King's conclusion that Match.com's cancelation flow "was neither simple to use nor easy for users to locate" is pure *ipse dixit*. The FTC argues that Dr. King's opinion cannot be *ipse dixit* because she allegedly "based her analysis on a thorough review of the facts of case [sic], her expertise and experience, her education, and generally accepted principles in the field." Resp. at 11. First, that is doubtful. Dr. King's notes (which the FTC reluctantly produced after Dr. King was deposed and only after Defendants filed their *Daubert* motion) show that, rather than doing an independent, objective analysis, Dr. King backed into a conclusion that she had already reached (or was told to reach). The notes do not show Dr. King comparing Match.com's cancelation flow against *any* of Nielsen's heuristics. *See* App. at 447-62. Instead, they show Dr. King "brainstorming" ways to "prove" that Match.com's cancelation flow is not simple. *See id.* For example, rather than asking *if* dark patterns are at play, Dr. King began with the presumption that Match.com's cancelation flow uses dark patterns, and asked "**Which** dark patterns are at play here?" App. at 448 (emphasis added); *see also id.* at 454 ("Could we use 'ease of use' to help prove that the survey didn't read as optional?").

Second, even if Dr. King had objectively applied a reliable methodology, Dr. King does not explain how she got from alleged heuristics violations and dark patterns to her conclusion that Match.com's cancelation flow is "not simple to use or easy to find." When asked to explain how she reached that conclusion, Dr. King said only that "[i]t depends." Mot. App. at 443-44. That makes this case unlike *Henderson v. McMoran Oil & Gas, LLC*, where the expert explained "[t]he

7

thought processes that led him to [his] conclusion." No. 09-5626, 2011 WL 13377430, at *4 (E.D. La. Mar. 2, 2011). Here, Dr. King could not or would not do the same. At a minimum, the Court should exclude Dr. King's conclusion that the cancelation flow is not easy to use or find.

### F. Dr. King's Complaint Analysis Is Inadmissible

Dr. King admitted that her complaint analysis is intended to "complement" a heuristic analysis, and that she did not include the complaint analysis in her opening report because she "did not have time." Mot. App. at 174, 437. Her complaint analysis goes far beyond "rebutting" Defendants' expert. For example, the "Older Customers" section says *nothing* about Mr. Ward's usability study. *See* Mot. App. at 187-90. At best, the complaint analysis provides additional "context" for Dr. King's opening report, based on information (customer complaints) that was available at the time of the opening report. Such "rebuttal" is impermissible. *CEATS, Inc. v. TicketNetwork, Inc.*, 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018).

The FTC's untimeliness caused prejudice, cost, and delay by requiring Defendants to divert time and attention to untimely new expert opinions. And although the FTC argues that Defendants were able to "retain an additional expert to rebut" Dr. King's complaint analysis, Resp. at 14, the FTC is moving to exclude that opinion, including on the basis that "sur-rebuttals" are not allowed. Dkt. 200-2 at 1 & n.3. That motion should be denied, *see* Dkt. 222, but the fact that the FTC in one breath argues that Defendants suffered no prejudice because they were able to respond to the untimely analysis, yet in the next argues that the responsive report should be excluded, is telling.

Even setting aside the untimeliness, Dr. King's complaint analysis should be excluded as irrelevant and unreliable because it consists of nothing more than Dr. King parroting unreliable, anecdotal hearsay from a tiny fraction of Match.com subscribers that complained. First, Dr. King adds nothing to the complaints except the guise of expertise. Her "complaint analysis" consists of copying and pasting the text of (anecdotal hearsay) complaints into her report, so that she can

8

repeat those complaints to the jury. Mot. App. at 182-87. Experts may not "simply . . . summarize the evidence proffered by the party that hired" them. *Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017). The FTC's attempt to analogize to an expert who "sift[s] through [a party's] sales data and calculate[s] the losses caused by" the alleged misconduct, Resp. at 19 n.63, is inapt. Jurors do not need an expert's help to read and understand customer complaints (to the extent those complaints are admissible). The FTC made no attempt to distinguish the authorities that Defendants cited.

Second, Dr. King's complaint analysis is premised on unreliable, anecdotal hearsay. The FTC argues that experts can rely on hearsay, Resp. at 19, but the underlying data must be reliable. "District judges may reject opinions founded on critical facts that are plainly untrustworthy . . . ." *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991), *abrogated on other grounds by Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). When experts in the field rely on consumer comments, they (unlike Dr. King) acknowledge that "some reviews may be fake." App. at 521 (cited in Dr. King's declaration). That is particularly likely here, where subscribers may have a financial motive to invent alleged "problems" with cancelation to increase the likelihood of obtaining a refund. Indeed, data show that many of the subscribers that purportedly complained about the flow never experienced it.[7] Rather than recognizing and accounting for that possibility, Dr. King did nothing to confirm whether the complaints were true, nor did she consider the subscribers' motivations. App. at 465-66. Dr. King's failure to even

---

[7] The FTC claims that subscribers could not find the flow, but many of the complaints purport to be about an experience with the flow that never happened, not an inability to find the flow, such as the subscriber that claimed they attempted cancelation "several months ago," when usage data showed that they entered the cancelation flow for the first time only a day earlier. *See* Mot. App. at 283. Moreover, given the references to "the apple app subscription menu" and "I tunes [sic]" in the FTC's examples, Resp. at 16-17 n.55, these users likely subscribed through an in-app purchase, which must be canceled through Apple, not the Match.com cancelation flow. Match.com does not control Apple's (or Google's) cancelation process and it is not at issue in this case (reinforcing the irrelevance of these alleged complaints).

acknowledge these possibilities is troubling. Regardless of whether the complaints are hearsay,[8] Dr. King's failure to establish their reliability makes them an inadequate basis for her opinion.

Third, Dr. King's complaint analysis is not replicable. The FTC does not argue otherwise, but claims it does not have to be because it is "based on an analytical method accepted in the industry." Resp. at 22. The FTC fails to mention, though, that when other experts in the industry perform these types of qualitative analyses, they recognize that "a fair amount of subjectivity occurs." App. at 552 (cited in Dr. King's declaration). And they may "attempt[] to reduce this subjectivity by comparing responses between themselves as well as to the literature on complaint behaviour and recovery strategies." *Id.* Dr. King did no such thing and imposed no such controls. Thus, her complaint analysis is not consistent with industry practice.

Finally, the fact that some small portion of subscribers may have complained about Match.com's cancelation flow is not evidence that the flow is not simple under ROSCA. The law does not require that *every* customer agree that the cancelation method is simple (an impossible standard). Dr. King made no attempt to determine whether her complaint analysis is a statistically significant representation of Match.com subscribers. It is not. As Dr. King herself acknowledged in her trial testimony in *Commerce Planet*, "[i]t would probably be biased" to study only users that complained. App. at 487-88. "That wouldn't be fair to make them the entire test group." *Id.* Yet that is precisely what Dr. King did here. Dr. King's analysis of only a small portion of those who complained is irrelevant and misleading, so should be excluded.

## CONCLUSION

As explained above and in Defendants' Motion, Dr. King's opinions should be excluded.

---

[8] They are. Defendants will brief this issue in more detail at the appropriate time. For present purposes, Defendants note that courts have repeatedly rejected efforts to admit complaints as exceptions to the hearsay rule. *See, e.g.*, *Alzuraqi v. Grp. 1 Automotive, Inc.*, 921 F. Supp. 2d 648, 676 (N.D. Tex. 2013).

|  |  |
|---|---|
| Dated: October 16, 2023 | */s/ Angela C. Zambrano*<br>Angela C. Zambrano<br>State Bar No. 24003157<br>angela.zambrano@sidley.com<br>Chelsea A. Priest<br>State Bar No. 24102375<br>cpriest@sidley.com<br>Tayler G. Bragg<br>State Bar No. 24109943<br>tbragg@sidley.com<br>SIDLEY AUSTIN LLP<br>2021 McKinney Avenue, Suite 2000<br>Dallas, TX 75201<br>Telephone: 214-981-3300<br>Fax: 214-981-3400<br><br>Chad S. Hummel (admitted *pro hac vice*)<br>chummel@sidley.com<br>SIDLEY AUSTIN LLP<br>1999 Avenue of the Stars, 17th Floor<br>Los Angeles, CA 90067<br>Telephone: 310-595-9500<br>Fax: 310-595-9501<br><br>Benjamin M. Mundel (admitted *pro hac vice*)<br>bmundel@sidley.com<br>SIDLEY AUSTIN LLP<br>1501 K Street, N.W.<br>Washington, DC 20005<br>Telephone: 202-736-8000<br>Fax: 202-736-8711<br><br>*Attorneys for Match Group, Inc. and Match Group, LLC* |

11

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 16, 2023, I caused true and correct copies of the foregoing document to be served on all counsel of record in accordance with Federal Rules of Civil Procedure and this Court's CM/ECF filing system.

                                             */s/ Angela C. Zambrano*
                                             Angela C. Zambrano