# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>Plaintiff, | Case No. 3:19-cv-02281-K |
| vs. | ORAL ARGUMENT REQUESTED |
| MATCH GROUP, INC., a corporation, and<br>MATCH GROUP, LLC, formerly known as<br>MATCH.COM, LLC, a limited liability<br>company, | |
| Defendants. | |

**DEFENDANTS MATCH GROUP, INC. AND MATCH GROUP, LLC'S OBJECTION TO PLAINTIFF'S EVIDENCE AND MOTION TO STRIKE**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. STANDARD OF REVIEW .......................................................................................... 1

III. OBJECTIONS............................................................................................................... 2

    A. Defendants object to the following exhibits as inadmissible hearsay............................ 2

        1. Customer complaints to Match.com and related characterizations are hearsay. ....... 2

    B. Defendants object to the following exhibits as not supporting the proposition asserted, and therefore irrelevant. ................................................................................................ 4

    C. Defendants object to the following exhibits as inadmissible evidence of prior lawsuit and/or settlement. ...................................................................................................... 10

    D. Defendants object to the following exhibits as not properly before the Court and improperly cumulative. ............................................................................................... 11

    E. Defendants object to the FTC's use of evidence already objected to in Defendants' Motion to Strike FTC Evidence in support of its Motion for Summary Judgment...... 12

IV. CONCLUSION............................................................................................................ 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alzuraqi v. Grp. 1 Auto., Inc.*,
 921 F. Supp. 2d 648 (N.D. Tex. 2013) ...................................................................................3

*Bellard v. Gautreaux*,
 675 F.3d 454 (5th Cir. 2012) ..................................................................................................1

*Buffin v. Bowles*,
 No. CIV.3:99-CV-1386-H, 2000 WL 575216 (N.D. Tex. May 11, 2000) .............................1

*Smith ex rel. Estate of Smith v. United States*,
 391 F.3d 621 (5th Cir. 2004) ................................................................................................11

*Hendricks v. Ford Motor Co.*,
 No. 4:12CV71, 2012 WL 4478308 (E.D. Tex. Sept. 27, 2012) .........................................2, 3

*Hodgson v. Wis. Cent. Ltd.*,
 No. 19-cv-15-jdp, 2020 WL 3251187 (W.D. Wis. June 16, 2020) ......................................10

*Johnson v. C.R. Bard Inc.*,
 No. 19-cv-760-wmc, 2021 WL 2070448 (W.D. Wis. May 24, 2021)..................................10

*Kennon v. Slipstreamer, Inc.*,
 794 F.2d 1067 (5th Cir. 1986) ..............................................................................................10

*Lusk v. Dallas Cnty. Sheriff's Dep't*,
 No. CIV.A. 3:00-CV-0662L, 2002 WL 31757706 (N.D. Tex. Nov. 29, 2002) .....................1

*Malacara v. Garber*,
 353 F.3d 393 (5th Cir. 2003) ................................................................................................11

*Mary Kay, Inc. v. Weber*,
 601 F. Supp. 2d 839 (N.D. Tex. 2009) ...................................................................................3

*Miller v. Polais Labs., LLC*,
 No. 111CV01004TWPDML, 2016 WL 1639087 (S.D. Ind. Apr. 26, 2016) .......................11

*Morrison v. Dallas Cnty. Cmty. Coll. Dist.*,
 No. CIV.A. 3:05CV1821-L, 2007 WL 2140581 (N.D. Tex. July 26, 2007),
 *aff'd sub nom. Morrison v. Dallas Cnty. Cmty. Coll.*, 273 F. App'x 407 (5th
 Cir. 2008) .............................................................................................................................12

*Nissan Motor Co. v. Armstrong*,
    145 S.W.3d 131 (Tex. 2004)..................................................................................................4

*Ricketts v. CBS Corps.*,
    439 F. Supp. 3d 1199 (C.D. Cal. 2020), *aff'd sub nom. Ricketts v. Berlanti
    Productions*, No. 20-55912, 2022 WL 1046252 (9th Cir. Apr. 7, 2022) .................................11

*Rock v. Huffco Gas & Oil Co.*,
    922 F.2d 272 (5th Cir. 1991) ..................................................................................................2

*Williams v. City of Burlington, Iowa*,
    516 F. Supp. 3d 851 (S.D. Iowa 2021), *aff'd*, 27 F.4th 1346 (8th Cir. 2022) ..........................11

*Williams v. Remington Arms Company, Inc.*,
    No. 3:05-CV-1383-D, 2008 WL 222496 (N.D. Tex. Jan. 28, 2008).........................................3

**Other Authorities**

Fed. R. Civ. P. 56(c) ......................................................................................................................1

Fed. R. Civ. P. 401 ........................................................................................................................5

Fed. R. Evid. 408 ........................................................................................................................10

Fed. R. Evid. 801 ..........................................................................................................................2

Fed. R. of Evid. 803 ..................................................................................................................2, 3

Fed. R. Evid. 804 ..........................................................................................................................2

Fed. R. Evid 807 .......................................................................................................................2, 4

Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure (the "Rules"), Defendants Match Group, Inc. ("MGI") and Match Group, LLC ("MGL") respectfully file these objections to Plaintiff's evidence attached as exhibits to the FTC's Opposition to Defendants' Motion for Summary Judgment (the "Response") and move to strike as specified below.

## I.  INTRODUCTION

The FTC has submitted approximately 200 pages of Exhibits in support of its Response, and cited to many of the 4,694 pages of "Exhibits" it originally submitted with its own Motion for Summary Judgment. Many of the Exhibits submitted by the FTC in support of its Response are inadmissible for a number of reasons. They are not relevant to the FTC's assertions, are rife with inadmissible hearsay, and at least one exhibit submitted in support of the Response is not referenced in any way in the briefing, requiring Defendants and the Court to speculate regarding the argument or claim the Exhibit supports. Because the FTC's Exhibits do not constitute admissible evidence, much less competent evidence to defeat summary judgment, Defendants object and move to strike these Exhibits from the summary judgment record.

## II.  STANDARD OF REVIEW

"To defeat summary judgment, the nonmovant must produce competent summary judgment evidence." *Lusk v. Dallas Cnty. Sheriff's Dep't*, No. CIV.A. 3:00-CV-0662L, 2002 WL 31757706, at *5 (N.D. Tex. Nov. 29, 2002); *Buffin v. Bowles*, No. CIV.3:99-CV-1386-H, 2000 WL 575216, at *2 (N.D. Tex. May 11, 2000) ("Evidence must be admissible to be considered at summary judgment stage."); *see Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (finding inadmissible hearsay cannot support summary judgment motion). Under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c).

III.     OBJECTIONS

A.     **Defendants object to the following exhibits as inadmissible hearsay.**

A statement is hearsay if it is one that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is admissible only if the proponent of the evidence shows that it falls within one of the hearsay exceptions enumerated in Federal Rules of Evidence 803, 804, and 807. *See* Fed. R. Evid 803, 804, 807. While a statement must be offered to prove the truth of the matter asserted to come within the hearsay prohibition, a party ***cannot*** circumvent such rule "by arguing that the hearsay is offered not to show the truth of the matters asserted but rather to show the opposing party's knowledge of the truth of the matters asserted." *Hendricks v. Ford Motor Co.*, No. 4:12CV71, 2012 WL 4478308, at *1 (E.D. Tex. Sept. 27, 2012).

1.     **Customer complaints to Match.com and related characterizations are hearsay.**

As numerous courts have held, there can be "no question" that customer complaints, when offered to establish the truth of the matter complained about, are hearsay. *Hendricks*, 2012 WL 4478308, at *1 ("Customer complaints in a company's files are out-of-court statements. If they are offered to prove the truth of the matter asserted—that the incidents complained of in the report occurred as reported—they are hearsay and are inadmissible.").

In the FTC's Response, it cites customer complaints as alleged proof that Defendants violated Counts III, IV, and V. This is for the truth of the matter asserted, and precisely what the hearsay rule prohibits. The FTC likewise cites many exhibits containing characterizations of those customer complaints, which are likewise hearsay. *See Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 281 (5th Cir. 1991) (finding that statements contained in a report made by defendant's agent

were not party admissions when the statements were documenting plaintiff's account of the events with no indication that the defendants adopted the version of the facts as recorded).

Nor are any of the complaints admissible under any of the exceptions to the hearsay rule. Customer complaints are not business records. *See* Fed. R. 803(6). Even assuming the FTC could establish that the documents it seeks to introduce were made "at or near the time" of the complained-of activity and can overcome the indicia of untrustworthiness, *id.*, complaints submitted by customers, whether orally or in writing, categorically are not business records because all persons involved in the process must be acting in the regular course of business. *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 850 (N.D. Tex. 2009) ("It is the authors of these e-mails who must have been acting in the course of a regularly conducted business activity when they made their complaints."); *Williams v. Remington Arms Company, Inc.*, No. 3:05-CV-1383-D, 2008 WL 222496 at *9-10 (N.D. Tex. Jan. 28, 2008) (holding that customer complaints are hearsay and do not qualify as records of regularly conducted activity under Rule 803(6) because the complaints are not made by persons acting in the course of a regularly conducted business activity). Therefore, courts have consistently held that even "when the business record contains information from an outsider, the business records exception does not by itself permit the admission of the business record; rather, the outsider's statement must fall within another hearsay exception." *Hendricks*, 2012 WL 4478308, at *1 (citing *Wilson v. Zapata Off–Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991)); *Alzuraqi v. Grp. 1 Auto., Inc.*, 921 F. Supp. 2d 648, 671 (N.D. Tex. 2013) ("However, if the source of the information is an outsider, as in the facts before us, Rule 803(6) does not, by itself, permit the admission of the business record.").

Moreover, as courts have recognized and as common sense shows, customers who complain have many reasons to complain other than to accurately report their experience. A

customer might complain, for example, in hopes of getting a refund. *See Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 139 (Tex. 2004) ("Complaint letters in a manufacturer's files may be true, but they also may be accusatory and selfserving; they are rarely under oath and never subject to cross-examination."). And even where customers accurately report what they believe occurred—for example, that they believe they were wrongfully charged—that does not make it so; rather, to determine the truth of the matter would require examining the specifics of what a customer was told and the circumstances of the customer's account. Thus, it is impossible for the FTC to make the high showing of reliability necessary to admit these complaints under Rule 807.

The following exhibits contain inadmissible hearsay complaints:

| FTC's Resp. App. Ex. No. | Document Identification | App. Page | Location in Brief |
|---|---|---|---|
| 288 | MATCHFTC580076: Email, "Member Complaints - Not being able to find our phone number on site," Feb. 21, 2013 | 4700 | Resp. at 11 n.53 |
| 289 | MATCHFTC833378: Email, "Weekly Customer Suggestions Reported by Care," May 12, 2013 | 4706 | Resp. at 11 n.53 |
| 292 | MATCHFTC343868: Email, "FW: Sub Flow for member," June 4, 2013 | 4729 | Resp. at 23 n.112 |
| 293 | MATCHFTC354052: Email, "RE: Sub flow," Sept. 24, 2013 | 4732 | Resp. at 23 n.112 |
| 304 | Deposition of Michele Watson (Excerpt) | 4827 | Resp. at 12 n.55 |

**B.    Defendants object to the following exhibits as not supporting the proposition asserted, and therefore irrelevant.**

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

4

Fed. R. Civ. P. 401. Here, the FTC has cited documents that do not support the fact for which the evidence is asserted and for this reason these exhibits should be struck:

| FTC's Evidence[1] | FTC's Representation | Why the Evidence Does Not Support the Representation |
|---|---|---|
| Pl. Resp. App. 288 at App. 4701 | "Moreover, Match.com customers had difficulty finding Match.com's inadequately disclosed customer care number, which Defendants knew. Rather than correct this issue (as some employees had proposed), Match.com prevented customers from speaking with customer service agents by reducing the hours of their call center and by minimizing the presence of the customer care." Resp. at 11 n. 53. | The FTC cites a 2013 email from a Match.com employee to support the proposition that Match.com knew customers had difficulty finding the customer care number. The FTC then uses that same fact to allege that, rather than "correct th[e] issue," Match.com "minimized the presence of the customer care," citing to a 2015 email regarding the location of the customer care number. The FTC misleadingly attempts to establish a cause/effect relationship between emails that are two years apart and misinterprets the emails. |
| Pl. Resp. App. Ex. 290 at App. 4720 | "Match.com prevented customers from speaking with customer service agents by reducing the hours of their call center and by minimizing the presence of the customer care phone number of their website." Resp. at 11-12. "[E]mail from Michael Morris to Kris Auderer recounting a conversation with Adrian Ong concerning the "'remove the Call Us Option' project," which was | First, the evidence does not support or relate to the FTC's contention that Match.com "prevented customers from speaking with customer service agents by reducing the hours of their call center . . . ." The cited email only concerns the "Contact Us" language on Match.com, and has no mention of customer service hours. Moreover, nothing in the exhibit shows that Match.com "prevented customers from speaking with |

---

[1] Defendants cite the FTC's Appendix in support of its Opposition to Defendants' Motion for Summary Judgment as "Pl. Resp. App." Defendants cite the FTC's Appendix in support of its Motion for Summary Judgment as "Pl. App." Defendants have not filed a separate appendix in support of their Objections and Motion to Strike, but rather cite to Defendants' Appendix in Support of their Reply in Support of Defendants' Motion for Summary Judgment as "Defs. App."

| | | |
|---|---|---|
| | a concerted effort to reduce the presence of Match.com's customer care number on the website." Resp. at 12 n.55. | customer service agents." Instead, the email indicates Match.com *added* text to "the top 20-40 FAQ . . . that would provide a link to the Contact Us FAQ . . . [to] provide an alternate way for the phone number to be accessed by paid members . . . ." Resp. App. Ex. 290 at App. 4720. Finally, the email cited does not contain any evidence of what changes were actually made to Match.com. Instead, the email only references proposed changes and pages that would be shown to a "test group." |
| Pl. Resp. App. Ex. 291 at App. 4726-28 | "Match.com prevented customers from speaking with customer service agents by reducing the hours of their call center and by minimizing the presence of the customer care phone number of their website." Resp. at 11-12; "Evidence suggests these efforts resulted in less cancellations by phone." Resp. at 12 n.55. | The evidence cited does not support the FTC's contention that "minimizing the presence of the customer care phone number" resulted in a decrease in cancelations by phone. Indeed, the evidence does not link the changes in frequency of cancelation by phone to any of Defendants' alleged conduct. The FTC does not even point the Court to a specific date range in Exhibit 291, and instead broadly cites Match.com's cancelation data from 2013 to 2021. While the data displays a relatively small drop in phone cancelations from 2015-2016, the largest drop does not occur until 2017, *two years* after the alleged conduct occurred. The drop in phone cancelations could be attributed to any number of outside factors (such as the trend toward self-service and/or chat customer service rather than speaking to a live |

6

| | | person) and is not evidence that any change on the Match.com website or reduction of hours resulted in fewer cancelations by phone. |
|---|---|---|
| Resp. App. Ex. 292 at App. 4731; Resp. App. Ex. 293 at App. 4733; Resp. App. Ex. 294 at App. 4751-58; Resp. App. Ex. 295 at App. 4774; Resp. App. Ex. 296 at App. 4782; Resp. App. Ex. 297 at App. 4784; Resp. App. Ex. 298 at App. 4787 | "Moreover, while Match.com's signup flow is not as burdensome as Defendants contend, Match.com also had "one-click sub[scription] flow[s]," through which some consumers could sign up for a Match.com subscription." Resp. at 23 n. 112. | The evidence does not support the FTC's conclusory statement that Match.com had a subscription flow that only required one click. The cited documents only vaguely reference a one click subscription without going into any detail about what that term refers to or how and when it is used. Rather, the documents cited show that the supposed "one-click" subscription method was only available to customers who had already subscribed and since canceled. Those customers had at one point gone through the full subscription flow, and were given an option to sign up again (resubscription). |
| Resp. App. Ex. 299 at App. 4789 | "Moreover, substantial evidence shows that these first steps are significant impediments that cause many customers to drop out from the flow." Resp. at 8. "Defendants' cancellation click-through data reflecting who entered the flow but did not successfully resign at each step." Resp. at 8 n.34. | The evidence cited does not support the FTC's allegation that the first steps "cause" many customers to drop out of the flow. There is no evidence of causation cited. |
| Pl. Resp. App. Ex. 301 at App. 4811:18-4814:2 | "Match.com prevented customers from speaking with customer service agents by reducing the hours of their call center and by minimizing the presence of the customer care phone number of their website." | This testimony does not support the proposition that the relocation of the Contact Us link resulted in less phone cancelations. The testimony shows that the deponent expected clearer FAQs to decrease the need for |

7

| | | |
|---|---|---|
| | Resp. at 11-12; "Evidence suggests these efforts resulted in less cancellations by phone." Resp. at 12 n.55. | customers to require customer care assistance with their membership because the customer could instead "help themselves." Pl. Resp. App. Ex. 301 at App. 4812:10-4813:2. Such testimony does not weigh on whether any conduct resulted in a drop of cancelations by phone, or that Match.com "minimized the presence of the customer care phone number of their website." |
| Pl. Resp. App. 302 at App. 4820:1-4821:3 | "Match.com prevented customers from speaking with customer service agents by reducing the hours of their call center and by minimizing the presence of the customer care phone number of their website." Resp. at 11-12. "[E]xecutive with customer care responsibilities believed changes to FAQs would hopefully help customers find their own answers and reduce agent costs." Resp. at 12 n. 55. | Deponent testified he was ***not involved*** in changes to FAQ other than moving the management "in house" and having control over updates. Resp. App. Ex. 302 at App. 4821:5-8. The FTC misleadingly labels this testimony about the FAQ's as from an "executive with customer care responsibilities" despite his testimony that he was not involved in the discussions regarding the changes at issue. |
| Pl. Resp. App. 303 at App. 4825.3:9-12 | "Defendants took this approach despite their own expert acknowledging that the number of attempts it takes to cancel 'can be' relevant to assessing the simplicity of a cancellation flow." Resp. at 8 n. 30. | The FTC mischaracterizes Mr. Ward's testimony. Ward testified that "it can be" relevant to a *usability* study, but that ultimately, "it's really rare that you would either have that data and know what it meant because you can't observe and ask." Defs. App. Ex. 75 at App. 1247:12-21, App. 1248 4-6. |
| Pl. Resp. App. Ex. 304 at App. 4829:18-4830:9; Pl. Resp. App. Ex. 304 at App. 4830:19-4831:7 | "Match.com prevented customers from speaking with customer service agents by reducing the hours of | That Match.com wanted to encourage members to read the FAQs does not support the FTC's allegation that |

8

| | | |
|---|---|---|
| | their call center and by minimizing the presence of the customer care phone number of their website." Resp. at 11-12. "Match moved customer service phone number to a location within a Frequently Asked Question, to encourage customers to read the question and engage in self-help." Resp. at 12 n.55. | Match.com "minimized the presence of the customer care number" or "prevented customers from speaking with customer service agents." Nor does Ms. Watson's testimony support that fact. Rather, when asked whether the "nature of [the] suggestions or feedback from customers [was] that the phone number was harder to find," Ms. Watson testified "I don't know." Resp. App. Ex. 304 at App. 4830:14-18. |
| Pl. Resp. App. Ex. 305 at App. 4842:15-4844:3 | "Defendants' expert likewise pointed to zero evidence supporting the argument that these individuals may have been attempting to 'trigger a save offer,' as Defendants assert." Resp. at 9 n.40. | The testimony cited does not support the FTC's assertion. Rather, Mr. Langenfeld, when asked whether there was evidence that a user intended to activate a save offer, reiterated that "the actions of people indicate that there were a variety of reasons not related to cancel flow." Resp. App. Ex. 305 at 4842:25-4843:14. |
| Pl. Resp. App. Ex. 306 at App. 4859 | "Defendants' own public statements and even their discovery responses, in which they claimed a success rate of 84% and then 89%, respectively, further undermine the figure they now present to the Court." Resp. at 9; Resp. at 21 n. 104 | The cited evidence does not support the allegation that either, (1) 84% is the correct percentage at issue here, or (2) that Defendants' letter undermines the figure it presents to the Court. As the document itself states, 84% of subscribers who started the cancelation process "completed it within twenty-four hours." Unlike the figures that Defendants relied upon in their motion, the 84% figure does not take into account (1) subscribers that canceled more than 24 hours after entering the flow, or (2) subscribers that took save offers. There is |

9

| | | |
|---|---|---|
| | | nothing inconsistent about the figures Defendants presented. |
| Pl. Resp. App. Ex. 309 at 4888-89 | "Defendants received notice from FTC actions in cases targeting similar behavior, from the Better Business Bureau ('BBB'), media coverage of their cancellation practices, their own employees' criticism, and thousands of consumer complaints." Resp. at 2 n. 4. | The cited document refers only to UK-based subscribers using the UK version of the site, both of which are beyond the scope of this litigation, and seems to primarily concern cancelations by phone (which the FTC is not asserting was not simple) or forgetting to cancel. The evidence does not support the assertion that Defendants received media coverage regarding U.S.-based subscribers or the online cancelation flow on the U.S. site. |
| Pl. Resp. App. Ex. 310 at App. 4903 | "As with chat and email, Defendants did not inform customers they could cancel by phone, instead pointing them to the online flow." Resp. at 11 n.52. | The cited slide deck is from 2014, and does not support the FTC's broad allegation that "Defendants did not inform customers they could cancel by phone." Rather, it suggests the opposite as the deck indicates the customer care number did appear on the website. |

**C.    Defendants object to the following exhibits as inadmissible evidence of prior lawsuit and/or settlement.**

It is well established that evidence of a prior lawsuit and/or settlement cannot be used as evidence of liability. *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1069 (5th Cir. 1986) ("Fed. R. Evid. 408 provides that evidence of a settlement is not admissible "to prove liability for or invalidity of the claim or its amount."); *Johnson v. C.R. Bard Inc.*, No. 19-cv-760-wmc, 2021 WL 2070448, at *4 (W.D. Wis. May 24, 2021) ("As a general matter, evidence regarding the existence of other lawsuits or claims against a party is not admissible."); *Hodgson v. Wis. Cent. Ltd.*, No. 19-cv-15-jdp, 2020 WL 3251187, at *5 (W.D. Wis. June 16, 2020) ("The court agrees as a general

matter that other claims against a party aren't admissible."); *Miller v. Polais Labs., LLC*, No. 111CV01004TWPDML, 2016 WL 1639087, at *2 (S.D. Ind. Apr. 26, 2016) (excluding evidence of other lawsuits or claims against the defendants because "such evidence would be unfairly prejudicial, irrelevant, and cause undue delay"); *Ricketts v. CBS Corps.*, 439 F. Supp. 3d 1199, 1226 (C.D. Cal. 2020), *aff'd sub nom. Ricketts v. Berlanti Productions*, No. 20-55912, 2022 WL 1046252 (9th Cir. Apr. 7, 2022) ("Neither lawsuits nor settlements are evidence of guilt of a predicate crime."); *Williams v. City of Burlington, Iowa*, 516 F. Supp. 3d 851, 871 (S.D. Iowa 2021), *aff'd*, 27 F.4th 1346 (8th Cir. 2022) (excluding evidence of a prior lawsuit reasoning "the [c]ourt [did] not wish to weaken public policy favoring settlements, especially when no liability was admitted in the settlement"). Here, the FTC submitted evidence of a previous lawsuit filed against Match.com which was settled. Resp. at 6. Such evidence is improper, inadmissible, irrelevant, and should be struck from the record.

| FTC's Resp. App. Ex. No. | Document Identification | App. Page | Location in Brief |
|---|---|---|---|
| 307 | Complaint, California v. Match Group, Inc., No. 20CV02496 (Santa Cruz Co., Cal., Nov. 30, 2020)). | 4861 | Resp. at 6, 6 n.24 |

    **D.**    **Defendants object to the following exhibits as not properly before the Court and improperly cumulative.**

Defendants object to all evidence submitted in the FTC's Appendix that is not referenced in Plaintiff's Response because this evidence is not properly before the Court. *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (holding where a party includes evidence in an appendix but "fails even to refer to it, . . . that evidence is not properly before the district court."). The FTC attached unnecessarily cumulative evidence, some of which it did not bother to cite in its substantive

briefing. "Court frowns on this type of mass submission, as it unnecessarily burdens the record and consumes scarce judicial resources." *Morrison v. Dallas Cnty. Cmty. Coll. Dist.*, No. CIV.A. 3:05CV1821-L, 2007 WL 2140581, at *1 (N.D. Tex. July 26, 2007), *aff'd sub nom. Morrison v. Dallas Cnty. Cmty. Coll.*, 273 F. App'x 407 (5th Cir. 2008). The Court should therefore strike the evidence not properly put before it.

| FTC's Resp. App. Ex. No. | Document Identification | App. Page | Location in Brief |
|---|---|---|---|
| 308 | MGI's Notice of Rule 30(b)(6) Deposition of FTC | 4882 | Not cited in brief |

### E. Defendants object to the FTC's use of evidence already objected to in Defendants' Motion to Strike FTC Evidence in support of its Motion for Summary Judgment.

The FTC submitted 4,694 pages of "Exhibits" in support of its Motion for Summary Judgment, and it relies on many of the same inadmissible documents in its Response. Defendants object to the following evidence for the same reasons set forth in Defendants' Objections and Motion to Strike Evidence Submitted in support of the FTC's Motion for Summary Judgment.

| FTC's App. Ex. No. | Document Identification | App. Page | Location in Brief | Objection(s) |
|---|---|---|---|---|
| 4 | MATCHFTC766621 | APP-0013 | 6 n.16; 6 n.17 | Does not support proposition asserted |
| 6 | MATCHFTC330643 | APP-0019 | 5 n.12; 14 n.73; 27 n.132 | Hearsay; does not support proposition asserted |
| 8 | MATCHFTC369268 | APP-0028 | 27 n.133 | Does not support proposition asserted |
| 9 | MATCHFTC417535 | APP-0031 | 27 n.133 | Does not support proposition asserted |
| 10 | MATCHFTC529047 | APP-0033 | 27 n.133 | Does not support proposition asserted |
| 11 | MATCHFTC545351 | APP-0035 | 27 n.133 | Does not support proposition asserted |
| 33 | MATCHFTC568737 | APP-0261 | 36 n.184 | Hearsay; does not assert proposition asserted |

| 62 | MATCHFTC731717 | APP-0506 | 14 n.74 | Hearsay |
|---|---|---|---|---|
| 75 | MATCHFTC313570 | APP-0642 | 17 n.93 | Hearsay |
| 78 | MATCHFTC359317 | APP-0709 | 17 n.93 | Hearsay |
| 79 | MATCHFTC365179 | APP-0714 | 17 n.93 | Hearsay |
| 87 | MATCHFTC816248 | APP-0903 | 6 n.19 | Hearsay; does not support proposition asserted |
| 88 | MATCHFTC825323 | APP-0905 | 14 n.72 | Hearsay |
| 102 | MATCHFTC064246 | APP-1077 | 17 n.93 | Hearsay |
| 118 | MATCHFTC491446 | APP-1330 | 21 n.105 | Does not support proposition asserted |
| 120 | MATCHFTC774671 | APP-1348 | 22 n.108; 24 n.116 | Does not support proposition asserted |
| 124 | MATCHFTC751887 | APP-1362 | 9 n.36; 9 n.40 | Does not support proposition asserted |
| 126 | MATCHFTC672329 | APP-1397 | 8 n.32 | Does not support proposition asserted |
| 130 | MATCHFTC669602 | APP-1407 | 5 n.12; 14 n.73 | Hearsay |
| 131 | MATCHFTC782023 | APP-1410 | 5 n.12; 14 n.73 | Hearsay |
| 136 | MATCHFTC746902 | APP-1460 | 8 n.34; 21 n.105; 22 n.108 | Does not support proposition asserted |
| 137 | MATCHFTC766286 | APP-1468 | 8 n.31; 8 n.34; 22 n.108 | Does not support proposition asserted |
| 138 | MATCHFTC782259 | APP-1481 | 8 n.34 | Hearsay, does not support proposition asserted |
| 145 | MATCHFTC746901 | APP-1612 | 8 n.34 | Does not support proposition asserted |
| 149 | MATCHFTC816592 | APP-1636 | 10 n.42; 10 n.44; 12 n.56; 23 n.114; 32 n.161 | Does not support proposition asserted |
| 157 | MATCHFTC679046 | APP-1680 | 5 n.14 | Does not support proposition asserted |
| 161 | MATCHFTC782110 | APP-1696 | 3 n.6 | Does not support proposition asserted |
| 175 | MATCHFTC703988 | APP-1795 | 8 n.32 | Does not support proposition asserted |
| 178 | MATCHFTC846848 | APP-1838 | 10 n.42 | Does not support proposition asserted |
| 253 | Deposition of MGL 30(b)(6) Witness Dushyant Saraph, Second Session | APP-3503 | 8 n.34; 10 n.41; 10 n.46; 11 n.47; 12 n.56; 32 n.160 | Does not support proposition asserted |
| 254 | Deposition of MGI 30(b)(6) Witness Shar Dubey (Excerpt) | APP-3865 | 16 n.88 | Does not support proposition asserted |

13

| 256 | Deposition of Greg Blatt (Excerpt) | APP-4242 | 16 n.88 | Does not support proposition asserted |
| 260 | Deposition of Michele Watson (Excerpt) | APP-4298 | 17 n.92 | Does not support proposition asserted |
| 264 | Declaration of David Beasley, BBB | APP-4530 | 5 n.12; 14 n.73 | Hearsay |
| 267 | MATCHFTC825327 | APP-4689 | 14 n.72 | Hearsay |

### IV.   CONCLUSION

For these reasons, the Court should strike the above exhibits from the summary judgment record as inadmissible evidence.

| | |
|---|---|
| Dated: November 6, 2023 | */s/ Angela C. Zambrano* |
| | Angela C. Zambrano |
| | State Bar No. 24003157 |
| | angela.zambrano@sidley.com |
| | Chelsea A. Priest |
| | State Bar No. 24102375 |
| | cpriest@sidley.com |
| | Tayler G. Bragg |
| | State Bar No. 24109943 |
| | tbragg@sidley.com |
| | SIDLEY AUSTIN LLP |
| | 2021 McKinney Avenue, Suite 2000 |
| | Dallas, TX 75201 |
| | Telephone: 214-981-3300 |
| | Fax: 214-981-3400 |
| | |
| | Chad S. Hummel (admitted *pro hac vice*) |
| | chummel@sidley.com |
| | SIDLEY AUSTIN LLP |
| | 1999 Avenue of the Stars, 17th Floor |
| | Los Angeles, CA 90067 |
| | Telephone: 310-595-9500 |
| | Fax: 310-595-9501 |
| | |
| | Benjamin M. Mundel (admitted *pro hac vice*) |
| | bmundel@sidley.com |
| | SIDLEY AUSTIN LLP |
| | 1501 K Street, N.W. |
| | Washington, DC 20005 |
| | Telephone: 202-736-8000 |
| | Fax: 202-736-8711 |
| | |
| | *Attorneys for Match Group, Inc. and Match Group, LLC* |

**CERTIFICATE OF CONFERENCE**

On November 3, 2023, counsel for Defendants, Annabeth L. Reeb, sent an email to counsel for the FTC, John R. O'Gorman, Reid A. Tepfer, Jason C. Moon, M. Hasan Aijaz, Sarah Zuckerman, Erica R. Hilliard, and Nicole Conte regarding whether the FTC opposes the relief requested in this Motion. Reid A. Tepfer responded on November 6, 2023 and requested additional information. Counsel for Defendants provided the additional information the same day, and indicated Defendants would assume the FTC opposed the Motion if it did not respond.

*/s/ Angela C. Zambrano*
Angela C. Zambrano

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2023, I caused true and correct copies of the foregoing to be served on all counsel of record in accordance with Federal Rules of Civil Procedure and this Court's CM/ECF filing system.

Reid Abram Tepfer
rtepfer@ftc.gov
M. Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov
Jason C. Moon
jmoon@ftc.gov

*/s/ Angela C. Zambrano*
Angela C. Zambrano

16