UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　Plaintiff,<br><br>　v.<br><br>MATCH GROUP, INC., a corporation, MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>　　Defendants. | Case No. 3:19-cv-02281-K |

**PLAINTIFF FEDERAL TRADE COMMISSION'S RESPONSE TO DEFENDANTS' OBJECTION TO PLAINTIFF'S EVIDENCE AND MOTION TO STRIKE**

**TABLE OF CONTENTS**

Introduction ........................................................................................................................... 1

I.  The Court should disallow the Second Motion to Strike in its entirety because it is a tactical maneuver to avoid page limitations. ................................................................... 2

II.  Defendants' objections to customer complaints and characterizations of those complaints are unfounded because this evidence is not hearsay. .................................................... 4

III.  The Court should overrule Defendants' objection to a complaint by the California Autorenewal Task Force because it is relevant for notice and not inadmissible under Federal Rules of Evidence 408, 403, or 404. ................................................................... 9

IV.  The Court should overrule Defendants' "relevance" objections as facially invalid. ......... 12

Conclusion ........................................................................................................................... 13

## TABLE OF AUTHORITIES

**U.S. Supreme Court Cases**

*New Jersey v. T.L.O*, 469 U.S. 325 (1985) ................................................................................ 12

**U.S. Appellate Cases**

*Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272 (5th Cir. 1991) ................................................ 6
*Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512 (5th Cir. 2012) .. 3
*EEOC v. Manville Sales Corp.*, 27 F.3d 1089 (5th Cir. 1994) ..................................................... 12
*Gulf State Utils. Co. v. Ecodyne Corp.*, 635 F. 2d 517 (5th Cir. 1981). ....................................... 11
*Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067 (5th Cir. 1986) ...................................................... 10
*Polite v. Dougherty Cnty Sch. Sys.*, 314 F. App'x 180 (11th Cir. 2008) ......................................... 2
*United States v. Chavis*, 772 F.2d 100 (5th Cir. 1985) .................................................................. 7
*United States v. Madera*, 574 F.2d 1320 (5th Cir. 1978) ............................................................ 12

**U.S. District Cases**

*Agfa-Gevaert N.V. v. A.B. Dick Co.*, 1986 WL 13533 (N.D. Ill. Nov. 24, 1986) ........................... 7
*Atrium Companies, Inc. v. ESR Assocs., Inc.*, No. CIV.A. H-11-1288, 2012 WL 5355754 (S.D. Tex. Oct. 29, 2012) ................................................................................................................... 6
*C&E Services, Inc. v. Ashland, Inc.*, 539 F. Supp. 2d 316 (D.D.C. 2008) .................................. 12
*Cutting Underwater Techs. USA, Inc. v. Con-Dive, LLC*, 2011 U.S. Dist. LEXIS 29325, 2011 WL 1103679 (E.D. La. March 22, 2011) ................................................................................... 3
*Engineered Arresting Sys. Corp. v. Atech, Inc.*, 356 F. Supp. 3d 1323 (N.D. Ala. 2018) .............. 3
*Fannie Mae v. Rincon Del Sol LLC*, No. CIVIL-H-10-1178, 2011 WL 13248858 (S.D. Tex. Dec. 16, 2011) .................................................................................................................................. 10
*Francois v. Gen. Health Sys.*, 459 F. Supp.3d 710 (M.D. La. 2020) ........................................... 12
*Hendricks v. Ford Motor Co.*, No. 4:12CV71, 2012 WL 4478308 (E.D. Tex. Sept. 27, 2012) ..... 7
*Herbst v. CSX Transp., Inc.*, 2019 U.S. Dist. LEXIS 18452 (N.D. Ind. February 4, 2019) ........... 3
*Hodgson v. Wisc. Cent. Ltd., No. 19-cv-15-jdp*, 2020 WL 325117 (W.D. Wisc. June 16, 2020) 11
*Johnson v. C.R. Bard, Inc. No. 19-v-760, 2021 WL 2070448* .................................................... 11
*Luv N' Care v. Laurain*, No. 3:16-00777, 2021 WL 3440623 (W.D. La. August 5, 2021) ......... 12
*Miller v. Polaris Laboratories*, LLC, No. 1:11-cv-01004 ,2016 WL 1639087 (S.D. Ind. April 26, 2016 ) ....................................................................................................................................... 11
*Mobile Shelter Sys. USA v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241 (M.D. Fla. 2012), *aff'd in part*, 505 F. App'x 928 (11th Cir. 2013). ............................................................................ 3, 4
*Montana v. Talen Montana,* LLC, 574 F. Supp. 3d 795 (D. Mont. 2021) ................................... 12
*Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2012 WL 85447 (E.D. La. Jan. 11, 2012) .................................................................. 6, 7
*Ricketts v. CBS Corps.*, 439 F. Supp. 3d 1199 (C.D. Cal. 2020) ................................................ 11
*Stubblefield v. Suzuki Motor Corp.*, No. 3:15-CV-18-HTW-LRA, 2018 WL 4762767 (S.D. Miss. Sept. 30, 2018) .......................................................................................................................... 7
*Taylor v. City of Gadsden*, 958 F. Supp. 2d 1287 (N.D. Ala. 2013), *aff'd*, 767 F.3d 1124 (11th Cir. 2014) .................................................................................................................................. 3

*TDY Indus., LLC v. BTA Oil Producers, LLC*, 2019 U.S. Dist. LEXIS 239065 (D. N.M. June 5, 2019) .................................................................................................................................. 4
*Weiss v. Allstate Ins., Inc.*, 512 F. Supp. 2d 463 (E.D. La. 2007) ..................................................... 6
*Williams v.City of Burlington, Iowa*, 516 F. Supp. 3d 851 (S.D. Iowa Jan 29, 2021) .................. 10

**State Supreme Court Cases**

*Nissan v. Armstrong*, 145 S.W.3d 131 (Tex. 2004) ....................................................................... 7

**Rules**

FED. R. CIV. P. 12(f) ........................................................................................................................ 2
FED. R. CIV. P. 56(c)(2) ................................................................................................................... 2
FED. R. EVID. 408 .......................................................................................................................... 10
FED. R. EVID. 401 .......................................................................................................................... 12
FED. R. EVID. 404(b) ..................................................................................................................... 11
FED. R. EVID. 408(b) ..................................................................................................................... 10
FED. R. EVID. 801(d)(2)(B) ............................................................................................................. 6
FED. R. CIV. P. 56 ............................................................................................................................ 2

Plaintiff Federal Trade Commission ("Plaintiff") respectfully submits its response to Defendants Match Group, Inc. and Match Group, LLC's Objection To Plaintiff's Evidence and Motion to Strike (Doc.252) ("Second Motion to Strike").

## Introduction

Defendants use their Second Motion to Strike to challenge summary judgment evidence Plaintiff presented in connection with its Opposition To Defendants' Motion For Summary Judgment And Brief In Support (Doc. 231-1). The Second Motion to Strike, like Defendants' motion to strike Plaintiff's affirmative summary judgment exhibits ("First Motion to Strike"),[1] attempts to evade summary judgment briefing page limitations and briefing schedule to state new objections and summary judgment argument that were not included in their reply.[2] Most egregiously, the Second Motion to Strike introduces new summary judgment arguments as to the weight of the evidence, thinly disguised as relevancy objections.

The Court should repudiate this tactic, disallow the Second Motion to Strike in its entirety, and decline to consider the evidentiary objections contained in it. Plaintiff should not be required to respond to these new objections at all. In any event, the objections are meritless. Defendant's hearsay objections (section III.A) fail for the same reasons that their hearsay objections in their first motion fail. Similarly, the evidence of a previous lawsuit (section III.C) is clearly relevant and not inadmissible under the Federal Rules of Evidence. With regard to purported relevance objections (section III.B), if the Court considers them, Plaintiff requests that

---

[1] Defendants Match Group, Inc. and Match Group, LLC's Objection To Plaintiff's Evidence and Motion to Strike. Doc.243.
[2] Defendant Match Group, Inc. and Match Group, LLC's Reply in Support of Their Motion for Summary Judgment.  Doc. 249. ("Reply")

the Court conduct a facial review of the objections, find that they are not proper relevance objections, and decline to consider them for any purpose.[3]

## I. The Court should disallow the Second Motion to Strike in its entirety because it is a tactical maneuver to avoid page limitations.

As Plaintiff argued in its opposition to the First Motion to Strike, a separate motion to strike is not an appropriate method to challenge summary judgment evidence, particularly when parties use it to evade page limitations.[4] Those arguments apply even more strongly here because Defendants use the Second Motion to Strike to present new argument as to the weight of summary judgment evidence that was not stated in their reply, disguised as relevancy objections.

The proper method to challenge summary judgment evidence is through a Federal Rule of Evidence 56(c)(2) objection, not a separate motion to strike. In 2010, Rule 56 was amended to explain that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[5] The Advisory Committee Notes explain that this amendment eliminates the need to file a motion to strike.[6] Further, the Court's authority to strike is limited to pleadings, not evidence.[7]

The Fifth Circuit, in *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Company*, acknowledged that a motion to strike summary judgment evidence is unnecessary, but

---

[3] With respect to Defendants' objection to Exhibit 308 (Opp. APP. 4882) in section III.D, Plaintiff will withdraw it from the summary judgment record. With respect to section III.E, in which Defendants refer to the Court to its previous objections to the same exhibits in the First Motion to Strike, Plaintiff refers the Court to its responses to those objections. *See generally* Plaintiff Federal Trade Commission's Response to Defendants' Objection To Plaintiff's Evidence and Motion to Strike. Doc. 253.
[4] *See id.* at section I.
[5] FED. R. CIV. P. 56(C)(2).
[6] *See* FED. R. CIV. P. 56, Advisory Committee Notes to the 2010 amendment ("There is no need to file a separate motion to strike.").
[7] *See* FED. R. CIV. P. 12(F) (court may strike objectional parts of a "pleading"); *Polite v. Dougherty Cnty Sch. Sys.*, 314 F. App'x 180, 184 n.7 (11th Cir. 2008) (per curiam) ("[M]otions to strike are only appropriately addressed towards matters contained in the pleadings; here, the affidavit was submitted as part of the motion for summary judgment, which is not a pleading.").

2

remedied any procedural defect by considering the motion to strike as a Rule 56(c)(2) objection under the facts of the specific case, stating:

> Under the now applicable Rule 56(c)(2), however, it is no longer necessary for a party to file such a motion; instead, the party may simply object to the material…In light of this change, TBS's Motion to Strike will be treated as an objection.[8]

Although other courts have followed this approach,[9] not all have extended the courtesy of considering an improperly filed motion to strike as a proper objection. In addition to routinely noting that motions to strike are improper at this stage, courts also warn that parties should not use separate motions as a tactic to expand summary judgment briefing. In *Mobile Shelter Systems USA v. Grate Pallet Solutions, LLC*, the court found multiple grounds to deny the party's motion to strike summary judgment exhibits, including that 1) the movant had not properly conferred with opposing counsel; 2) the motion to strike was not directed at a pleading; and 3) the party had waived the objections pursuant to Federal Rule of Civil Procedure 56(e), which permits the court to treat as undisputed facts not addressed in a response[11] The court went on to note another ground for denial:

> [T]he Court construes a motion to strike such as that brought by Plaintiff in this case as a procedural device by which a party may try to exceed the page limits imposed by the Local Rules and the orders of the Court. Indeed, Plaintiff's opposition to Defendants' Motion for Summary Judgment attempts to incorporate by reference the arguments made in Plaintiff's motion to strike. Such incorporation by reference

---

[8] *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) *adopting Cutting Underwater Techs. USA, Inc. v. Con-Dive, LLC*, 2011 U.S. Dist. LEXIS 29325, *10, 2011 WL 1103679 (E.D. L.A., March 22, 2011).

[9] *See, e.g. Taylor v. City of Gadsden*, 958 F. Supp. 2d 1287, 1291 (N.D. Ala. 2013), *aff'd*, 767 F.3d 1124 (11th Cir. 2014) (noting that motion to strike affidavit was improper because affidavit was not a pleading under Rule 12(f), but treating motion as an objection included in opposition to summary judgment); *Engineered Arresting Sys. Corp. v. Atech, Inc.*, 356 F. Supp. 3d 1323, 1327-28 (N.D. Ala. 2018) (noting that objections should have been included in summary judgment briefing, but treating motion to strike as Rule 56(c)(2) objection). One such example involves a motion to strike filed by Defendants' counsel's firm. *See Herbst v. CSX Transp., Inc.*, 2019 U.S. Dist. LEXIS 18452, *12 (N.D. Ind. February 4, 2019) (denying defendant's motion to strike but agreeing to consider the "arguments…in its summary judgment analysis to the extent that they are pertinent").

[11] *Mobile Shelter Sys. USA v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1252-53 (M.D. Fla. 2012), *aff'd in part*, 505 F. App'x 928 (11th Cir. 2013).

3

is improper, and it foists upon the Court the burden of sifting through irrelevant materials to find the materials referenced while permitting the movant to circumvent this Court's page limit requirement.[12]

The Court went on to hold that the "the Plaintiff's motion is due to be denied for this reason alone."[13]

The Court should not extend Defendants the courtesy of considering objections or arguments that they did not even bother to discuss in their reply. Plaintiff agreed not to oppose Defendants' motion to extend the page limitation for Defendants' Reply from 25 to 38 pages,[14] and Defendants filed a 38-page Reply.[15] The Second Motion to Strike adds an additional 14 pages,[16] and positions Defendants for another 10 pages for a reply to this response. Essentially, Defendants have granted themselves a unilateral page extension of their reply. Further, it is clear that the main purpose of the Second Motion to Strike is not to make evidentiary objections, but to present summary judgment argument as to the proper weight of the evidence. The Court should disallow the Second Motion to Strike in its entirety.

## II. Defendants' objections to customer complaints and characterizations of those complaints are unfounded because this evidence is not hearsay.

Section III.A of the Second Motion to Strike details Defendants' hearsay objections to exhibits reflecting "customer complaints to Match.com and related characterizations."[17] Defendants previously presented the exact same arguments in the First Motion to Strike as to

---

[12] *Id*. at 1253.
[13] *Id. See also TDY Indus., LLC v. BTA Oil Producers, LLC*, 2019 U.S. Dist. LEXIS 239065, *3 (D. N.M. June 5, 2019) (construing motion to strike as an objection as an extension of the summary judgment opposition, but warning that "the Court is wary of Defendant's attempt to evade the page limitations and get further briefing on why it believes the Court should not consider Plaintiff's evidence" and noting that the defendant should have included the objections in its response brief).
[14] Doc. 248.
[15] Doc. 249.
[16] Doc. 252.
[17] *Id*. at 7.

4

exhibits filed in support of Plaintiff's motion for summary judgment.[18] Rather than rebutting these arguments in its response to the First Motion to Strike (Doc.253), Plaintiff included its responsive arguments as to hearsay in its reply.[19] The same responsive arguments apply here, but Plaintiff will restate them in response to the specific objections in the Second Motion to Strike.

The FTC's exhibits reflecting customer and third-party concerns do not constitute hearsay under Federal Rule of Evidence 801. First, Defendants' employees' communications, including their classification and characterization of third-party communications, are Defendants' own statements, and therefore are not hearsay. Second, Defendants' analysis of, and reliance on, consumer complaints about the difficulty of finding Match's phone number render such complaints "adopted admissions" under Federal Rule of Evidence 801(d)(2)(B) and thus are admissible for all purposes. Finally, the exhibits at issue in the Second Motion to Strike show that Defendants had notice of the possibility that consumers were not able to find a phone number to cancel their subscriptions, which relates to Defendants' contention that the availability of phone cancellation excuses the difficulty of their online cancellation flow. Knowledge of potential difficulty with cancellation whether online or by phone is relevant and highly probative regarding several issues, including: 1) MGI's liability, in that it had authority to control MGLLC as well as knowledge of potential problems; 2) MGI and MGLLC's liability for civil penalties; and 3) the need for injunctive relief. This relevance does not depend on the "truth of the matter asserted."

Exhibit 288 (Opp. App 4700), for example, reflects former Match executive Michele Watson's compilation and characterization of customer complaints where customers claimed

---

[18] *Id*. at section IIIA.
[19] *See* Plaintiff Federal Trade Commission's Reply In Support Of The Federal Trade Commission's Motion For Summary Judgment. Doc 246-1, at section IIIF.

5

they were having a difficult time finding the customer care phone number. It is clear from her characterization that she does not dispute the contents of the complaints, and she concurs based on her own analysis that the location of the number is not "intuitive" and recommends changes.[20]

Ms. Watson's characterization of the complaints ("bunch of complaints" from "members who are having a hard time finding our phone number"), her characterization of the difficulty of finding the number, and her recommended changes are all her direct statements.[21] Even to the extent she is describing third-party complaints, she is adding her own analysis. It is the veracity or reliability of her conclusions, not the truth of the underlying consumer complaints, that is at issue.[22] Her characterizations and statements are therefore party statements under Federal Rule of Evidence 801(d)(2)(D), not hearsay.

Further, her transmittal and summary of the complaints constitutes an "adoptive admission," and the complaints are therefore admissible under Federal Rule of Evidence 801(d)(2)(B). A statement offered against an opposing party that the opposing party "manifested that it adopted or believed to be true" is not hearsay.[23] A party may "adopt a written statement if the party uses the statement or takes action in compliance with the statement."[24] Likewise, a

---

[20] Opp. APP 4701
[21] *Id.*
[22] Ms. Watson's analysis regarding the complaint pattern distinguishes this evidence from instances in which a party's employees are simply reiterating the contents of a third-party statement, which courts have characterized as double-hearsay and required exceptions at both levels. *Cf Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272, 280 (5th Cir. 1991) (plaintiff's statements about the accident at issue required separate hearsay exception even though they were included in company accident reports); *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2012 WL 85447, at *4 (E.D. La. Jan. 11, 2012) (using an example of where a party's employee forwards an email originating outside the company and stating that both the "outer hearsay" and the "inner hearsay" would require a hearsay exception).
[23] FED. R. EVID. 801(d)(2)(B).
[24] *Weiss v. Allstate Ins., Inc.*, 512 F. Supp. 2d 463, 470 (E.D. La. 2007) (quotation marks and citation omitted) (finding that report prepared at Allstate's request and relied on in remitting payment was an adoptive admission because Allstate acted in accordance with its contents.); *see also Atrium Companies, Inc. v. ESR Assocs., Inc.*, No. CIV.A. H-11-1288, 2012 WL 5355754, at *6 (S.D. Tex. Oct. 29, 2012)

6

document can be considered a corporate admission where there is some indication that senior management has seriously considered it and acted on the views stated in it.[25] Ms. Watson's reaction to the complaints is a classic "adoptive admission."

Further, all portions of the email are admissible to show that Defendants had notice that their alternative cancellation procedures were not easy to execute. It is well settled that consumer complaints can be offered to show that a party had notice of a potential issue.[26] To the extent the contents of the email are being offered for this purpose, Defendants' reliance on *Hendricks v. Ford Motor Company* is misplaced. The *Hendricks* court's statement that the plaintiff could not offer the statements to show "Defendant's knowledge of the truth of the matters asserted"[27] was just another way of saying that the Plaintiff could not sneak in an argument that the complaints themselves proved the dangerous defect by cloaking it as "notice." The case quoted by *Hendricks*, *Nissan Motor Company v. Armstrong*, makes this distinction clear. In *Armstrong*, the court criticized as "circular reasoning" the lower court's finding that complaints were admissible to show "Nissan's knowledge of the dangerous condition of its vehicles."[28] The court went on to note that product defects must be independently proven.[29] The court further acknowledged a correct use of a "notice" argument, stating that "number of complaints may require a company to

---

("[E]ven an email that has been forwarded may be admitted 'if it is clear that the forwarder adopted the content or believed in the truth of the content.'") (citing *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2012 WL 85447, at *4 (E.D. La. Jan. 11, 2012)).

[25] *See Agfa-Gevaert N.V. v. A.B. Dick Co.*, 1986 WL 13533 (N.D. Ill. Nov. 24, 1986) (allowing minutes from a meeting of top management discussing complaints about machine as an adoptive admission).

[26] *See United States v. Chavis*, 772 F.2d 100, 105 (5th Cir. 1985) (finding that BBB complaints were not hearsay in that they showed that defendants were notified of complaints); *see also Stubblefield v. Suzuki Motor Corp.*, No. 3:15-CV-18-HTW-LRA, 2018 WL 4762767, at *4-5 (S.D. Miss. Sept. 30, 2018) (denying motion in limine to exclude previous reports of motorcycle incidents because they could be relevant to notice of a product defect).

[27]*Hendricks v. Ford Motor Co.*, No. 4:12CV71, 2012 WL 4478308, *1 (E.D. Tex. Sept. 27, 2012).

[28] *See Nissan v. Armstrong*, 145 S.W.3d 131, 141-142 (Tex. 2004).

[29] *See id.* at 142.

investigate and may presage liability if those complaints are substantiated and the manufacturer does nothing."[30] Exhibit 288, even if it were not generally admissible as direct statements or adoptive admissions, would be admissible for the purpose of showing that Defendants were aware of concerns that consumers would have difficulty cancelling through alternative methods. Similarly, Exhibit 289 (Opp. APP 4706), a list of customer suggestions that includes suggestions that the phone number be more visible and a complaint about the customer service department's hours of operation, is relevant to show notice that alternative cancellation methods were difficult.

Exhibits 292 (Opp. APP 4729) and 283 (Opp. APP 4732) are not hearsay because the statements for which they are cited—Defendants' employees' admissions that Match had a one-click subscription procedure—are direct party statements under Rule 801(d)(2)(D). The third-party complaints that gave rise to the email exchanges are not germane to Plaintiff's argument that at some points in time Defendants had a sign-up flow that was substantially easier than the cancellation flow.

As to Exhibit 304 (Opp. App 4827), Defendants do not specify which portions of the exhibit are objectionable. Exhibit 304 consists of excerpts of former Match.com executive Michelle Watson's deposition. Plaintiff cited three excerpts for the proposition that efforts to reduce the presence of Match's customer care telephone number on the website led to reduced phone cancellations.[31] Defendants do not state which portions are hearsay. Plaintiff could infer from context that Defendants are objecting to references to customer complaints, but the only exchange in the cited excerpts that comes close to a customer "complaint" is Ms. Watson's testimony that customers would sometimes ask where the phone number went when the product

---

[30] *Id.* at 140.
[31] Doc. 231-1, at fn 55 and accompanying text (citing Opp. APP 4829:18-4830:9, 4830:19-4831:7, and 4832:13-4833:8).

8

department moved the FAQ containing it.[32] This question by consumers is not an "assertion" that can be true or false, and is therefore not being offered for the truth of the matter asserted. It is therefore not hearsay under Rule 801(a).

For the reasons stated above, the Court should overrule Defendants' hearsay objections.

### III. The Court should overrule Defendants' objection to a complaint by the California Autorenewal Task Force because it is relevant for notice and not inadmissible under Federal Rules of Evidence 408, 403, or 404.

In section IIIC of the Second Motion to Strike, Defendants object to Exhibit 307 (Opp APP 4861), which is a copy of a complaint filed by California's AutoRenewal Task Force.[33] The complaint described Match's online cancellation flow and alleges that it violated the California Business & Professions Code by failing to provide an "easy-to-use cancellation mechanism."[34]

Plaintiff cites Exhibit 307 to show as a "red flag" to show that Defendants had notice of concerns about their cancellation flow.[35] Such notice is relevant for the same reasons customer complaints are relevant, to show: (1) MGI's liability, in that it had authority to control MGLLC as well as knowledge of potential problems; (2) MGI and MGLLC's liability for civil penalties, and (3) the need for injunctive relief. Plaintiff did not state, and does not contend, that the California agency's lawsuit is proof that the Match cancellation flow is not simple.

Defendants' invocation of Federal Rule of Evidence 408, which prohibits evidence of offers to compromise under certain conditions, is a straw-man argument. Plaintiff does not cite any settlement agreements, offers, or statements made in negotiations; in fact, it was Defendants, not Plaintiff, who informed the Court that the case was settled.[36] Even if Rule 408 did apply, the

---

[32] Opp. APP 4829:23-4830-6).
[33] *See* Doc. 252, at IIIC.
[34] Opp. APP 4873-4875.
[35] Doc 231-1 at fn 24 and accompanying text.
[36] Doc. 252. at 15.

Rule explicitly acknowledges that evidence may be offered for purposes other than "to prove or disprove the validity or amount of a disputed claim."[37] The law is clear that notice of potential wrongful conduct can constitute a permissible use. As noted by the advisory committee in connection with the 2006 amendment to the Rule:

> The amendment does not affect the case law providing that Rule 408 is inapplicable when evidence of the compromise is offered to prove notice. *See, e.g., United States v. Austin*, 54 F.3d 394 (7th Cir. 1995) (no error to admit evidence of the defendant's settlement with the FTC, because it was offered to prove that the defendant was on notice that subsequent similar conduct was wrongful); *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987) (in a civil rights action alleging that an officer used excessive force, a prior settlement by the City of another brutality claim was properly admitted to prove that the City was on notice of aggressive behavior by police officers). [38]

Two of the cases cited by Defendants—*Kennon v. Slipstreamer, Inc.* and *Williams v. City of Burlington, Iowa*—clearly relied on Rule 408 or the public policy behind it to disallow using a willingness to compromise as evidence of liability and therefore do not apply here because Plaintiff is not asking the Court to attach any weight to a settlement.[39] Three more—*Johnson v. C.R. Bard Inc.*, *Miller v. Polaris Laboratories, LLC*, and *Hodgson v. Wisconsin Central Ltd*—excluded evidence of other lawsuits based on Federal Rule of Evidence 403(b) (unfair prejudice, confusion, undue delay, and other grounds) or 404(b) (excluding evidence of character and

---

[37] FED. R. EVID. 408(b)

[38] FED. R. EVID 408, Advisory Committee Note to 2006 Amendment. *See also Fannie Mae v. Rincon Del Sol LLC*, No. CIVIL-H-10-1178, 2011 WL 13248858, at *6 (S.D. Tex. Dec. 16, 2011) (evidence of settlement was admissible because it was "being offered to show notice, intent, knowledge, and the absence of mistake").

[39] *See Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1070 (5th Cir. 1986) (holding that trial court's disclosure of nominal amount paid to settling defendants violated Rule 408 and prejudiced remaining defendant); *Williams v.City of Burlington, Iowa*, 516 F. Supp. 3d 851, 871 (S.D. Iowa Jan 29, 2021) (disallowing evidence of city's previous settlement of excessive force lawsuit where to do so would "weaken public policy favoring settlements.")

"other crimes, wrongs, acts").[40] To the extent Defendants are relying on an "unfair prejudice" argument under Rule 403(b), the Fifth Circuit has observed that Rule 403's weighing of probative value against prejudice "has no logical application to bench trials," and that "excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure."[41] The Court can exclude "improper inferences" from its mind.[42] Further, Rule 404 does not apply because the California allegations derive from the same cancellation flow that is at issue here, not "other crimes, wrongs, acts."[43]

Lastly, Defendants cite *Ricketts v. CBS Corporations*, in which a district court in California held that previous copyright infringement lawsuits against Defendants and resulting settlements did not constitute evidence of "predicate acts" for purposes of proving the Racketeer Influenced and Corrupt Organizations Act (RICO) violations.[44] This case has no application to the facts of this case.  The Court should overrule all objections to the admissibility of Exhibit 307.

---

[40] *See Johnson v. C.R. Bard, Inc.*, No. 19-v-760, 2021 WL 2070448, *4 (W.D. Wis. May 24, 2021) (holding that previous lawsuits against defendant had "minimal if any probative values as to the foreseeable risk of harm . . . although the risk of unfair prejudice is great."); *Miller v. Polaris Laboratories, LLC*, No. 1:11-cv-01004, 2016 WL 1639087, *2 (S.D. Ind. April 26, 2016) (holding that retaliation claim by different employee years after plaintiff left defendant's employment was inadmissible under Rule 403 and Rule 404(b); *Hodgson v. Wisc. Cent. Ltd.*, No. 19-cv-15-jdp, 2020 WL 325117, *5 (W.D. Wisc. June 16, 2020) (citing *Miller v. Polaris* for proposition that evidence of other claims is inadmissible under Rules 403 and 404(b)).
[41] *Gulf State Utils. Co. v. Ecodyne Corp.*, 635 F. 2d 517, 519 (5th Cir. 1981).
[42] *Id.*
[43] FED. R. EVID. 404(b).
[44] *See Ricketts v. CBS Corps.*, 439 F. Supp. 3d 1199, 1223-1226 (C.D. Cal. 2020).

### IV. The Court should overrule Defendants' "relevance" objections as facially invalid.

Even if Defendants had properly asserted their Rule 401 objections in their Reply, the Court should conduct a facial review and overrule them. The objections are simply summary judgment arguments thinly disguised as relevancy objections.

Federal Rule of Evidence 401 provides that evidence is relevant if: a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.[45] The Fifth Circuit has characterized the standard for relevancy as "liberal."[46] While the FTC argues that the summary judgment evidence it has presented entitles it to judgment as a matter of law, for the purposes of a relevancy analysis evidence does not have to be conclusive to be admissible.[47] Accordingly, when courts review evidence for relevance (such as in a motion *in limine*), they do not resolve factual disputes or weigh evidence.[48]

Defendants make no effort to show that the specific exhibits do not tend to make a fact more or less probable, or that the fact is of no consequence in determining the action. Instead, they advance their own interpretations of the exhibits[49] or present purported counter-evidence.

---

[45] Fed. R. Evid. 401.
[46] *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1093-94 (5th Cir. 1994) (holding in age discrimination case that passage of time since age-related remarks went to weight, not relevance).
[47] *New Jersey v. T.L.O*, 469 U.S. 325, 345 (1985) ("[I]t is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue . . [.]"); *United States v. Madera*, 574 F.2d 1320, 1322 (5th Cir. 1978); *Francois v. Gen. Health Sys.*, 459 F. Supp.3d 710, 719 (M.D. La. 2020).
[48] *Montana v. Talen Montana,* LLC, 574 F. Supp. 3d 795, 811 (D. Mont. 2021) (courts should not use motions in limine to resolve factual disputes or weigh evidence); *C&E Services, Inc. v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008) (same); *Luv N' Care v. Laurain*, No. 3:16-00777, 2021 WL 3440623, at *1 (W.D. La. August 5, 2021) (same). While the Motion to Strike is not a motion in limine, the principle is the same—courts should not use a threshold inquiry into relevance to assess the strength of evidence.
[49] For example, Defendants object to Exhibit 309 (Opp. APP 4887), an article in *The Guardian* newspaper describing customers' problems with cancellation and autorenewal. Doc. 252, at 14. Defendants claim

Their arguments are indistinguishable from summary judgment argument as to the weight to be given evidence.

The summary judgment exhibits Defendants reference in Section III.B are relevant to various issues in the case; Plaintiff refers the Court to its summary judgment response as the best explanation for this relevance. Defendants' arguments go to the weight of the evidence, not admissibility. Essentially, they invite the Court to adjudicate Plaintiff's summary judgment response in the context of a threshold relevancy analysis. The Court should decline and overrule the objections in Section III.B as facially invalid under Rule 401. If the Court disagrees and finds that the objections merit a response, Plaintiff requests an opportunity to respond with additional briefing.

## Conclusion

For the reasons described herein, the Court should disallow Defendants' Second Motion to Strike in its entirety. Alternatively, the Court should overrule the objections described in the Second Motion to Strike.

---

that it relates only to a U.K. version of the website and "seems to primarily concern cancelations by phone." *Id.* However, the article specifically references that "there is no equally prominent cancellation button" and "members have to click through their account settings and membership management before they reach the necessary place," clearly referencing and criticizing an online cancellation flow that strongly resembles (if it is not identical to) the flow for the U.S. based website. Opp. App. 4890). It is therefore relevant as an additional third-party criticism showing that Defendants had ample notice of concerns about the flow.  Further, even if the article only concerned phone cancellation difficulties, it would still be relevant to rebut Defendants' argument that the availability of phone cancellation excuses the difficult online flow.

13

November 27, 2023                    */s/ Jason C. Moon*
                                                  REID TEPFER
                                                  M. HASAN AIJAZ
                                                  SARAH ZUCKERMAN (admitted *pro hac vice*)
                                                  JOHN R. O'GORMAN (admitted *pro hac vice*)
                                                  ERICA R. HILLIARD
                                                  JASON C. MOON
                                                  NICOLE G. H. CONTE (admitted *pro hac vice*)
                                                  Texas Bar No. 24079444 (Tepfer)
                                                  Virginia Bar No. 80073 (Aijaz)
                                                  New York Bar No. 5603832 (Zuckerman)
                                                  Texas Bar No. 24121292 (O'Gorman)
                                                  Mississippi Bar No. 104244 (Hilliard)
                                                  Texas Bar No. 24001188 (Moon)
                                                  Virginia Bar No. 91552 (Conte)
                                                  Federal Trade Commission
                                                  1999 Bryan St. Ste. 2150
                                                  Dallas, Texas 75201
                                                  T: (214) 979-9395 (Tepfer)
                                                  T: (214) 979-9386 (Aijaz)
                                                  T: (214) 979-9376 (Zuckerman)
                                                  T: (214) 979-9382 (O'Gorman)
                                                  T: (214) 979-9379 (Hilliard)
                                                  T: (214) 979-9378 (Moon)
                                                  T: (202) 285-0062 (Conte)
                                                  F: (214) 953-3079
                                                  Email: rtepfer@ftc.gov;
                                                  maijaz@ftc.gov;
                                                  szuckerman@ftc.gov;
                                                  jogorman@ftc.gov;
                                                  ehilliard@ftc.gov;
                                                  jmoon@ftc.gov;
                                                  nconte@ftc.gov
                                                  Attorneys for Plaintiff
                                                  FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

On November 27, 2023, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jason C. Moon*
Jason C. Moon