UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MATCH GROUP, INC., a corporation,<br>MATCH GROUP, LLC, formerly known as<br>MATCH.COM, LLC, a limited liability<br>company,<br><br>Defendants. | Case No. 3:19-cv-02281-K |

**PLAINTIFF FEDERAL TRADE COMMISSION'S RESPONSE TO DEFENDANTS'
OBJECTION TO PLAINTIFF'S EVIDENCE AND MOTION TO STRIKE**

Plaintiff Federal Trade Commission ("Plaintiff") respectfully submits its response to Defendants Match Group, Inc. and Match Group, LLC's Objection To Plaintiff's Evidence and Motion to Strike (Doc. 259) ("Third Motion to Strike").

## Introduction

Defendants use their Third Motion to Strike to challenge their own employees' analysis and characterization of customer complaints about the cancellation flow, arguing that these statements are inadmissible hearsay. In addition, in continuation of a tactic used in their first and second motions to strike summary judgment evidence (Docs. 243 and 252), Defendants advance summary judgment arguments as to the weight of evidence under the thin disguise of "relevancy" objections. In doing so, they have effectively granted themselves an improper sur-reply to advance their interpretation of summary judgment evidence without seeking leave of court.

The Court should overrule Defendants' hearsay objections because they lack merit. Further, the Court should hold that Defendants have not stated proper relevancy objections and decline to consider their arguments as to the weight of summary judgment evidence.

**I.      Defendants' objections to customer complaints and characterizations of those complaints are unfounded because this evidence is not hearsay.**

Section III.A of the Third Motion to Strike details Defendants' hearsay objections to Exhibits 313 and 314 from Plaintiff's reply appendix (Doc. 246-2, Reply APP 4915-52 and 4954-56). These documents consist of Defendants' own employees' characterization and analysis of customer complaints. Nevertheless, Defendants object on the grounds that they are inadmissible hearsay. These are the same arguments advanced in Defendants' two previous motions to strike, and they are likewise unfounded here.

Defendants' repeated briefing posits that Plaintiff does not understand double hearsay (*i.e.*, hearsay statements contained in company records, requiring a hearsay exception at two different levels)[1] or that Plaintiff is arguing that customers' complaints are admissible as a business record under Federal Rule of Evidence 803(6).[2] Neither is true, and these arguments are red herrings.

Although in some circumstances the substance of a customer complaint does not become admissible for the truth of the matter asserted simply because it is included in a business record or recited by a company representative, the content of user complaints in Defendants' employees' statements is not inadmissible hearsay. As discussed in Plaintiff's prior briefing in opposition to Defendants' first and second Motions to Strike, Defendants' employees relied on

---

[1] *See, e.g.*, Defendants Match Group, Inc. and Match Group, LLC's Reply In Support Of Their Objection to Plaintiff's Evidence Attach as Exhibits To FTC's Opposition and Motion to Strike (Doc. 260), at 4.
[2] *See* Doc. 259, at 4.

these user complaints to propose changes to the cancellation flow, and they are therefore admissible as "adoptive admissions" under Federal Rule of Evidence 801(d)(2)(B). Further, to the extent Defendants' employees' characterizations of underlying user complaints add independent analysis to the substance of the complaints rather than directly restating them, these characterizations are directly admissible under Federal Rule of Evidence 801(d)(2)(D). Finally, even if not admissible for the truth of the matter asserted, the underlying user complaints are admissible to show that Defendants had knowledge of potential problems with the cancellation of flow. As shown below, the newly challenged documents fit within these categories of admissible evidence.

### A.     Exhibit 313, REPLY APP 4938 and 4935.

Exhibit 313 reflects Defendants' employees' analysis of "User Sentiment" for 2019 and 2020, referencing results of surveys Defendants provided to users.[3] As part of this analysis, the authors note "Key Takeaways," including "need easy way to stop autorenewal."[4] The author also notes that this "Key Takeaway" "didn't change" from the "last time" the exercise was conducted.[5]

By characterizing underlying complaints about the cancellation flow as a "Key Takeaway" and proposing action in the form of an "easy way to turn off Auto Renew," the author of this exhibit is adopting the underlying complaint content and proposing to rectify the cancellation flow's complexity. The underlying content is therefore admissible under Federal Rule of Evidence 801(d)(2)(B). A statement offered against an opposing party that the opposing

---

[3] *See generally* Doc. 246-2, Reply APP 4915-52.
[4] Reply App. 4938.
[5] Reply App. 4935.

party "manifested that it adopted or believed to be true" is not hearsay.[6] A party may "adopt a written statement if the party uses the statement or takes action in compliance with the statement."[7] Likewise, a document can be considered a corporate admission where there is some indication that senior management has seriously considered it and acted on the views stated in it.[8]

Further, even if the underlying complaint content was not independently admissible, the author's analysis of it would be. By characterizing this issue as a "Key Takeaway" that is unchanged from "last time," the author is characterizing the importance, prevalence, and persistence of complaints about the cancellation flow. It is the veracity and reliability of the author's analysis that would be at issue, not those of the customers who answered the survey.[9] The author's characterizations and statements are therefore party statements under Federal Rule of Evidence 801(d)(2)(D), not hearsay.

Finally, this "Key Takeaway" is admissible to show that Defendants had notice of concerns that their cancellation flow was difficult. It is well settled that consumer complaints can

---

[6] FED. R. EVID. 801(d)(2)(B).

[7] *Weiss v. Allstate Ins., Inc.*, 512 F. Supp. 2d 463, 470 (E.D. La. 2007) (quotation marks and citation omitted) (finding that report prepared at Allstate's request and relied on in remitting payment was an adoptive admission because Allstate acted in accordance with its contents.); *see also Atrium Companies, Inc. v. ESR Assocs., Inc.*, No. CIV.A. H-11-1288, 2012 WL 5355754, at *6 (S.D. Tex. Oct. 29, 2012) ("[E]ven an email that has been forwarded may be admitted 'if it is clear that the forwarder adopted the content or believed in the truth of the content.'") (citing *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2012 WL 85447, at *4 (E.D. La. Jan. 11, 2012)).

[8] *See Agfa-Gevaert N.V. v. A.B. Dick Co.*, 1986 WL 13533 (N.D. Ill. Nov. 24, 1986) (allowing minutes from a meeting of top management discussing complaints about machine as an adoptive admission).

[9] This analysis regarding the complaint pattern distinguishes this evidence from instances in which a party's employees are simply reiterating the contents of a third-party statement, which courts have characterized as double-hearsay and required exceptions at both levels. *Cf. Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272, 280 (5th Cir. 1991) (plaintiff's statements about the accident at issue required separate hearsay exception even though they were included in company accident reports); *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2012 WL 85447, at *4 (E.D. La. Jan. 11, 2012) (using an example of where a party's employee forwards an email originating outside the company and stating that both the "outer hearsay" and the "inner hearsay" would require a hearsay exception).

be offered to show that a party had notice of a potential issue.[10] Defendants' reliance on *Hendricks v. Ford Motor Company*, therefore, is misplaced. The *Hendricks* court's statement that the plaintiff could not offer the statements to show "Defendant's knowledge of the truth of the matters asserted"[11] was just another way of saying that the Plaintiff could not sneak in an argument that the complaints themselves proved the dangerous defect by cloaking it as "notice." *Nissan Motor Company v. Armstrong*, relied on by *Hendricks*, makes this distinction clear. In *Armstrong*, the court acknowledged a correct use of a "notice" argument, stating that "number of complaints may require a company to investigate and may presage liability if those complaints are substantiated and the manufacturer does nothing."[12] Here, the statements about "need easy way to turn off Auto Renew," even if they were not generally admissible as direct statements or adoptive admissions, would be admissible to show that Defendants were aware of concerns that the cancellation flow was difficult.

B.      **Exhibit 313, REPLY APP 4927.**

Exhibit 313 also includes a page entitled "User Complaints Product," in which the author calls out specific types of complaints about the product, including "Password reset does not work."[13] The author's decision to include this particular type of complaint on this list is a comment on the prevalence and importance of this type of complaint. As such, this represents the author's analysis, not simply a transmittal of the underlying complaint. The author's analysis is

---

[10] *See United States v. Chavis*, 772 F.2d 100, 105 (5th Cir. 1985) (finding that BBB complaints were not hearsay in that they showed that defendants were notified of complaints); *see also Stubblefield v. Suzuki Motor Corp.*, No. 3:15-CV-18-HTW-LRA, 2018 WL 4762767, at *4-5 (S.D. Miss. Sept. 30, 2018) (denying motion in limine to exclude previous reports of motorcycle incidents because they could be relevant to notice of a product defect).

[11] *Hendricks v. Ford Motor Co.*, No. 4:12CV71, 2012 WL 4478308, *1 (E.D. Tex. Sept. 27, 2012).

[12] *Nissan Motor Co. v. Armstrong*, 145 S.W. 3d 131, 140 (Tex. 2004).

[13] Reply APP 4927.

directly admissible as a party statement under Rule 801(d)(2)(D). Alternatively, it is admissible for the purposes of showing that Defendants were on notice about concerns about the "reset password" flow, which would have impacted the cancellation flow since it was behind a password wall.

### C.     Exhibit 314

Exhibit 314 (Reply APP 4954-4956) is an email exchange that starts with employee Brett Richards asking other employees for "a list of ten or so care concerns you think could be feasibly addressed in the product" in connection with "roadmap 2020."[14] The employees respond by specifically identifying "cancel flow complaints," including "difficult cancel flow" as an example, and appear to state that there have been 2,840 such complaints.[15] They go on to include "cancel flow confusion" as one of the "highest volume feedback items."

By specifically including cancellation flow complaints in their response to a call for action items, these employees are ratifying the complaints and proposing action.[16] The underlying complaint content is therefore admissible as an "adoptive admission" under Rule of Evidence 801(d)(2)(B). Further, their quantification of these complaints and characterization of the complaints as one of the "highest volume feedback items" is independently admissible under Rule 801(d)(2)(D).

Finally, even if the underlying user complaints are not admissible for the truth of the matter asserted, they are admissible for notice. These documents show that Defendants had ample notice of potential concerns about the cancellation flow.

---

[14] Reply APP. 4956. The "roadmap" is a yearly plan for potential changes to the website. *See* Doc. 199-3, APP 496; Doc. 199-6, APP 1678-79.

[15] Reply APP 4954.

[16] *See* cases cited in n.7, *infra*.

For the reasons stated above, the Court should overrule Defendants' hearsay objections.

## II. The Court should overrule Defendants' "relevance" objections as facially invalid.

Section III.B of the Third Motion to Strike states purported "relevance" objections. As with similar objections in the two previous motions to strike, Defendants' objections are simply summary judgment arguments as to the proper weight of the evidence, thinly disguised as relevancy objections. Defendants are seeking to have the last word on Plaintiff's evidence without having to obtain leave from the Court to file a sur-reply. The Court should reject this tactic, hold that the objections are facially invalid, and decline to consider the underlying arguments.

Federal Rule of Evidence 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.[17] The Fifth Circuit has characterized the standard for relevancy as "liberal."[18] While the FTC argues that the summary judgment evidence it has presented entitles it to judgment as a matter of law, for the purposes of a relevancy analysis evidence does not have to be conclusive to be admissible.[19] Accordingly, when courts review evidence for relevance (such as in a motion *in limine*), they do not resolve factual disputes or weigh evidence.[20]

---

[17] Fed. R. Evid. 401.

[18] *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1093-94 (5th Cir. 1994) (holding in age discrimination case that passage of time since age-related remarks went to weight, not relevance).

[19] *New Jersey v. T.L.O*, 469 U.S. 325, 345 (1985) ("[I]t is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue . . [.]"); *United States v. Madera*, 574 F.2d 1320, 1322 (5th Cir. 1978); *Francois v. Gen. Health Sys.*, 459 F. Supp.3d 710, 719 (M.D. La. 2020).

[20] *Montana v. Talen Montana,* LLC, 574 F. Supp. 3d 795, 811 (D. Mont. 2021) (courts should not use motions in limine to resolve factual disputes or weigh evidence); *C&E Services, Inc. v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008) (same); *Luv N' Care v. Laurain*, No. 3:16-00777, 2021 WL 3440623,

Defendants make no effort to show that the specific exhibits do not tend to make a fact more or less probable, or that the fact is of no consequence in determining the action. Instead, they advance their own interpretations of the exhibits, present purported counter-evidence, and even include outside-the-record factual allegations and speculation in an attempt to rebut the evidence.[21] Their arguments are indistinguishable from summary judgment argument as to the weight to be given evidence.

The summary judgment exhibits Defendants reference in Section III.B are relevant to various issues in the case; Plaintiff refers the Court to its summary judgment reply as the best explanation for this relevance. Defendants' arguments go to the weight of the evidence, not admissibility. Essentially, they invite the Court to adjudicate the merits of Plaintiff's summary judgment motion in the context of a threshold relevancy analysis. The Court should decline and overrule the objections in Section III.B as facially invalid under Rule 401. If the Court disagrees and finds that the objections merit a response, Plaintiff respectfully requests an opportunity to respond with additional briefing.

## Conclusion

For the reasons described herein, the Court should overrule the objections described in the Third Motion to Strike.

---

at *1 (W.D. La. August 5, 2021) (same). While the Motion to Strike is not a motion *in limine*, the principle is the same—courts should not use a threshold inquiry into relevance to assess the strength of evidence.

[21] For example, Defendants state without supporting evidence that Jon Caine, the employee who sent the email reflected in Exhibit 311, "was not on the Match.com team that makes decisions" and "did not know why changes were made." *See* Doc 259, at 6. Even if these unsupported allegations were true, they would not impact the relevance of Match's own software engineering personnel acknowledging that the changes Match made to the cancellation flow made it harder to cancel.

January 2, 2024

*/s/ Jason C. Moon*
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted *pro hac vice*)
JOHN R. O'GORMAN (admitted *pro hac vice*)
ERICA R. HILLIARD
JASON C. MOON
NICOLE G. H. CONTE (admitted *pro hac vice*)
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Texas Bar No. 24001188 (Moon)
Virginia Bar No. 91552 (Conte)
Federal Trade Commission
1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
T: (214) 979-9378 (Moon)
T: (202) 285-0062 (Conte)
F: (214) 953-3079
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov;
ehilliard@ftc.gov;
jmoon@ftc.gov;
nconte@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

On January 2, 2024, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jason C. Moon*
Jason C. Moon
