THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation, and MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>Defendants. | Case No. 3:19-cv-02281-K<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANTS MATCH GROUP, INC. AND MATCH GROUP, LLC'S REPLY IN SUPPORT OF THEIR OBJECTIONS TO PLAINTIFF'S EVIDENCE AND MOTION TO STRIKE**

Defendants Match Group, Inc. and Match Group, LLC respectfully submit this Reply in Support of Their Objections to Plaintiff's Evidence and Motion to Strike (the "Reply"), Dkt. 259 (the "Objections and Motion to Strike"),[1] which responds to Plaintiff's Response to Defendants' Objections and Motion to Strike, Dkt. 264 (the "Response").

## I. INTRODUCTION

The FTC's Response is yet again unsupported by law or fact. First, the FTC relies on textbook inadmissible hearsay—out-of-court statements by customers and employee characterizations of those out-of-court statements. The FTC argues that the employee characterizations are admissible as party or adoptive admissions. But that argument is fatally flawed under Fifth Circuit law for multiple, independent reasons. This is because the FTC wholly ignores the existence of hearsay within hearsay and that the employees were merely documenting

---

[1] Defendants filed the Objections and Motion to Strike in response to evidence that the FTC attached to its Reply in Support of Its Motion for Summary Judgment, Dkt. 246-1 (the "MSJ Reply"). Capitalized terms not defined in this Reply have the meanings given to them in the Objections and Motion to Strike.

the customers' complaints and not clearly adopting the content as their own. The FTC also attempts to circumvent the rule against hearsay by arguing that the customer complaints are offered to prove notice. But that flies in the face of the FTC's MSJ Reply, which explicitly relies on the out-of-court statements for the truth of the matter asserted—to suggest that events described in the customer complaints actually occurred—not to prove notice of the complaints. Thus, the Court should strike Exhibits 313 and 314 from the summary judgment record.

Second, the FTC relies on evidence that does not support the proposition asserted and is therefore irrelevant. The FTC claims that these are not proper evidentiary objections and refuses to address Defendants' admissibility arguments. But the law is clear that evidence is relevant, and thus admissible, only if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action," Fed. R. Evid. 401, and "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). Critically, "the burden is on the proponent"—here, the FTC—to show admissibility. Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment. By refusing to show how the exhibits are relevant and admissible, the FTC has failed to carry its burden. Thus, the Court should strike Exhibits 311, 315–16, and 318 from the summary judgment record.[2]

---

[2] In response to Defendants' previous Objections and Motions to Strike, Dkt. 243, 252, the FTC made a procedural objection that evidentiary objections to summary judgment evidence may not be raised through objections and a motion to strike, Dkt. 253, 256. Defendants have explained why that argument lacks merit, Dkt. 255, 260; *see* Objs. and Mot. to Strike at 2. The FTC appears to have finally dropped that argument in its latest Response. *See generally* Resp. After all, if the FTC's procedural objection were correct (and it is not), then a party could not object to new evidence attached to a reply brief. That cannot be, and is not, the law. *See, e.g.*, Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

## II.     ARGUMENT AND AUTHORITIES

### A.     The Court should strike the FTC's exhibits as inadmissible hearsay.

The FTC addresses Defendants' hearsay objections by ignoring the Federal Rules of Evidence (the "Rules") and Fifth Circuit law and instead arguing that (1) employee characterizations of customer complaints containing hearsay are Defendants' own statements and not hearsay under Rule 801(d)(2)(D); (2) employee characterizations of customer complaints containing hearsay are "adoptive admissions" and not hearsay under Rule 801(d)(2)(B); and (3) the out-of-court statements show that Defendants have notice of the complaints within. *See* Resp. at 2–3. All three arguments fail.

The FTC's first argument wholly ignores the existence of hearsay within hearsay. While the employee statement, on its own, ***may*** be a statement by a party opponent, that does not render the underlying out-of-court statement admissible. *See In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2012 WL 85447, at *4 (E.D. La. Jan. 11, 2012) ("Although the 'outer hearsay' of the email at issue may be admissible . . . , the 'inner hearsay' of information provided by an outsider to the business preparing the record must likewise fall under a hearsay exception."). The FTC claims that this argument is a "red herring[]," Resp. at 2, but fails to explain why the FTC is excused from the rule against double hearsay or why Exhibits 313 and 314 do not contain double hearsay. Nor could it. Hearsay within hearsay is significant because the veracity of the underlying complaint is the issue, just as the complaints in *Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272, 279–80 (5th Cir. 1991). Thus, the FTC must prove an exception applies to both statements—so while statements by employees may sometimes be party admissions, that exception does not apply to the underlying customer complaint. *See, e.g.*, *United States v. Dotson*, 821 F.2d 1034, 1035 (5th Cir. 1987) ("[T]he mere fact that one level of a multiple-level statement qualifies as 'non-hearsay' does not excuse the other levels from rule 805's

3

mandate that each level satisfy an exception to the hearsay rule for the statement to be admissible."); *S. Stone Co. v. Singer*, 665 F.2d 698, 703 (5th Cir. 1982) (explaining that, even if one level of double-hearsay statement was not hearsay under Rule 801(d)(2), second level of hearsay was not excepted from hearsay rule, and document was inadmissible).

Exhibits 313 and 314 contain inadmissible hearsay. *See* Pl. App. Ex. 313 at App. 4915–52; Pl. App. Ex. 314 at App. 4954–56. Specifically, Exhibit 313 is a slide deck that "[c]ompared comments from June/July of 2019 against [the] same months in 2020 to account for seasonality" so that Match.com could look at "[w]hat [] people [were] complaining about now that [Match.com offered a] free" service. Pl. App. Ex. 313 at 4916. In arguing that Exhibit 313 is admissible, the FTC ignores the law and contorts the actual text of Exhibit 313 to further its narrative.

For example, the FTC claims that "[b]y characterizing [an] issue as a 'Key Takeaway' that is unchanged from 'last time,' the author is characterizing the importance, prevalence, and persistence of complaints about the cancellation flow," and that "[i]t is the veracity and reliability of the author's analysis that would be at issue, not those of the customers who answered the survey." Resp. at 4. But the FTC is wrong on the law—even if an employee characterized a customer complaint as a "Key Takeaway," the FTC has not shown that the underlying customer complaint(s) fall within an exception to the hearsay rule. *See* Resp. at 4–5. The FTC seems to suggest that, merely because the slide deck may contain some statements that are not hearsay, that somehow renders the entire exhibit, which is comprised almost entirely of customer complaints, admissible. Not so. Any portions of the exhibit containing characterizations of customer complaints, as well as the complaints themselves, are hearsay within hearsay and not within an exception. *See Dotson*, 821 F.2d at 1035; *Singer*, 665 F.2d at 703. In claiming that the "veracity and reliability" of the "customers who answered the survey" is *not* at issue, the FTC wholly ignores

that customers who complain have many reasons to complain other than to accurately report their experience. *See, e.g.*, *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 139–40 (Tex. 2004) ("Complaint letters in a manufacturer's files may be true, but they also may be accusatory and selfserving; they are rarely under oath and never subject to cross-examination. . . . [C]onsumer complaints in a company's files are generally hearsay within hearsay.").

In addition to being wrong on the law, the FTC misleadingly describes Exhibit 313. The FTC claims that "[t]he author's decision to include this particular type of complaint [that 'Password reset does not work'] on [a] list is a comment on the prevalence and importance of this type of complaint," Resp. at 5, but the text of Exhibit 313 states the contrary—the customer comments were "randomly selected." Pl. App. Ex. 313 at App. 4917. And even if they were not, the FTC has not shown that the underlying customer complaint is admissible. The portions of the slide deck containing hearsay are exactly what the FTC relies on in its brief, *see* MSJ Reply at 5 n.9, 7 n.15, 15 n.81. The Court should strike Exhibit 313.

Additionally, Exhibit 314 is a textbook example of inadmissible hearsay, as it is an email that contains a list of customer complaints, many copied and pasted. The FTC claims that the "quantification of these complaints and characterization of the complaints . . . is independently admissible," Resp. at 6, but the FTC (again) fails to explain how the customer complaints themselves fall within an exception to the hearsay rule. The FTC relies on the portions of the email containing hearsay, *see* MSJ Reply at 5 nn.10–12, 15 nn.82–83. For these reasons, the Court should strike Exhibit 314.

Second, the FTC has not established that the employee emails characterizing customer complaints are "adoptive admissions." That an employee writes down or characterizes a customer complaint does not mean that the employee "adopted" such statement. Fed. R. Evid. 801(d)(2)(B).

Rather, in most cases, the employee is simply "documenting" a customer's account. *See Rock*, 922 F.2d at 281. The FTC ignores that and misconstrues the documents at issue. For instance, as to Exhibit 313, the FTC claims that "[b]y characterizing underlying complaints about the cancellation flow as a 'Key Takeaway' and proposing action in the form of an 'easy way to turn off Auto Renew,' the author of this exhibit is adopting the underlying complaint content and proposing to rectify the cancellation flow's complexity," Resp. at 3. That is a gross misrepresentation. The author is not "proposing action in the form of an 'easy way to turn off Auto Renew,'" Resp. at 3, but is merely "documenting" an out-of-court statement by a consumer. The other text on the quoted slides makes this clear: the bullets immediately above and below "easy way to turn off Auto renew," are "Lot of scammers and Fake profiles" and "No dates or interests/likes. Haven't found anyone." Pl. App. Ex. 313 at App. 4935; *see* Pl. App. Ex. 313 at 4938 (similar, bullet immediately above is "Getting spammed by survey requests and also lots of spam emails"). The FTC cannot seriously contend that the author of the slide deck is "proposing action in the form of" sending customers "Lot of scammers and Fake profiles" or ensuring they have "No dates or interests/likes," Pl. App. Ex. 313 at App. 4935, which would be antithetical to Match.com's business.

The FTC also claims with regard to Exhibit 314 that "[b]y specifically including cancellation flow complaints in their response to a call for action items, these employees are ratifying the complaints and proposing action," Resp. at 6. The FTC once again puts words in employees' mouths. Contrary to the FTC's claim, after an employee asked for "a list of ten or so care concerns that you think *could* be feasibly addressed in the product" (not for complaints that the employee believed to be true or that even *should* be addressed), the employee responded only, "We are providing more than 10, since there are several in the top that you guys are already addressing," and included about 2 pages of complaints, mostly copied and pasted. Pl. App. Ex.

6

314 at App. 4954–56 (emphasis added). A few months later, another employee responded that "[t]hese are still the top member complaints/requests." *Id.* at App. 4954. The text of Exhibit 314 makes clear that these employees were not "manifest[ing] that [they] adopted or believed to be true" the complaints, Fed. R. Evid. 801(d)(2)(B), but instead were merely "documenting" them. *See Rock*, 922 F.2d at 281.

Moreover, customer service by its nature involves attempting to remedy the customer's issue regardless of whether the company actually believes what the customer is saying—rendering such actions as an "adoption" of any third-party complaint would be inconsistent with public policy considerations. The very nature of customer service likewise makes it almost impossible to "clearly demonstrate" that any of the declarants actually believed the customer's recitation of events, as opposed to merely doing their job. *See In re Oil Spill*, 2012 WL 85447, at *4.[3] Thus, the Could should strike Exhibits 313 and 314.

Third, the FTC cannot circumvent the rule against hearsay by arguing that third-party statements are offered to prove "notice." *Hendricks v. Ford Motor Co.*, No. 4:12-CV-71, 2012 WL 4478308, at *1 (E.D. Tex. Sept. 27, 2012). The limited precedent the FTC cites is distinguishable. Unlike in *United States v. Chavis*, 772 F.2d 100, 105 (5th Cir. 1985),[4] the FTC in its MSJ Reply repeatedly cites evidence containing hearsay to prove the truth of the matter asserted, ***not*** to prove notice. For example, the FTC cites Exhibit 313, specifically "[u]ser [c]omplaints" that "[p]assword reset does not work," to support its contention that "Match.com had a flawed password reset

---

[3] To be clear, the FTC's admissibility argument here under Rule 801(d)(2)(B) also suffers from the same fatal flaw as its admissibility argument under Rule 801(d)(2)(D)—the FTC ignores the existence of hearsay within hearsay. *See, e.g., Singer*, 665 F.2d at 703 (explaining that, even if one level of double-hearsay statement was not hearsay under Rule 801(d)(2), second level of hearsay was not excepted from hearsay rule, and document was inadmissible). Thus, even if an employee statement, on its own, were an adoptive admission (although the FTC cannot show that any are), that still would not render the underlying out-of-court statement admissible.

[4] The court in *Chavis* expressly limited the admissibility of the complaints to show that defendants knew of the complaints, and not for any other purpose. *Chavis*, 772 F.2d at 105. The FTC cites hearsay evidence for purposes far beyond that limited purpose, such as suggesting events described in customer complaints actually occurred.

mechanism." MSJ Reply at 7 n.15 (citing Pl. App. Ex. 313 at App. 4927). The FTC also cites both Exhibits 313 and 314, specifically customer complaints that Match.com "need[s] easy way to stop autorenewal" and "[c]ancel flow complaints" that "thought sub already cancelled, difficult cancel flow, expected different result due to cancelling," to support its contention that "Match.com's cancellation flow was not simple." MSJ Reply at 15 & nn.81–83 (citing Pl. App. Ex. 313 at App. 4935, 4938; Pl. App. Ex. 314 at App. 4954). Thus, the FTC cites the complaints to suggest that the events described in them actually occurred. The FTC cannot save its use of hearsay by adding in an allegation of notice; a party *cannot* circumvent the hearsay rule "by arguing that the hearsay is offered not to show the truth of the matters asserted but rather to show the opposing party's knowledge of the truth of the matters asserted." *Hendricks*, 2012 WL 4478308, at *1. In the FTC's own words, a party cannot "sneak in an argument that the complaints themselves prove[] [a fact] by cloaking it as 'notice.'" Resp. at 5. That is precisely what the FTC attempts to do, and the Court should strike Exhibits 313 and 314.

## B. The Court should strike the FTC's exhibits as not supporting the proposition asserted.

Evidence is relevant only if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Throughout its MSJ Reply, the FTC misrepresents the nature of its exhibits and cites evidence for facts that the evidence does not actually support. Below are examples of these misrepresentations, which are detailed in the Objections and Motion to Strike:

- The FTC represents, *inter alia*, that Exhibits 311 and 315 stand for the proposition that "Defendants engaged in an intentional and concerted effort to make cancelling difficult for their customers," as shown by a chart that allegedly "identif[ied] five different ways that Match.com had made it 'harder to cancel' shortly before, and with full knowledge of, the FTC's lawsuit." MSJ Reply at 4–5 & nn.6–7 (citing Pl. App. Ex. 311 at App. 4910; Pl. App. Ex. 315 at App. 4958). But the chart shows cancelation rates within three days of subscription, not overall cancelation rates. *See* Objs. and Mot. to Strike at 7. And in many instances, the chart shows that the cancelation rate *increased* after a change that the FTC

claims made it "harder to cancel," and where there was a decrease in cancelation rate, it began prior to the alleged change. *See id.* at 7–8. Ultimately, the cancelation rate in 2019 was **higher** than the cancelation rate in 2018 (prior to the alleged changes). *Id.* at 8.

- The FTC represents that Exhibit 316 stands for the proposition that "the recipient of this chart shared the chart with Match.com's CEO and General Manager when discussing why cancellations had decreased during this time period." MSJ Reply at 5 & n.8 (citing Pl. App. Ex. 316 at App. 4960). But the recipient of the chart shared it when discussing why cancelations had *increased*. *See* Objs. and Mot. to Strike at 8. Thus, the actual evidence is contrary to the FTC's representation.

- The FTC represents that Exhibit 318 stands for the proposition that "even Defendants' own General Manager understood that its survey, save offer, and other extraneous steps were 'friction point[s]' that could be used to frustrate cancellation attempts." MSJ Reply at 16 & n.91 (citing Pl. App. Ex. 318 at App. 4972). But he actually asked the individuals conducting an analysis of cancelation rates if there was a page in the cancelation flow that they were not accounting for in their analysis, which might explain some of the results they were seeing. *See* Objs. and Mot. to Strike at 8–9.

Instead of even attempting to carry its burden to demonstrate that the evidence on which it relies is relevant and would be admissible at trial, the FTC makes a series of baseless accusations.

First, the FTC claims that "Defendants are seeking to have the last word . . . without having to obtain leave from the Court to file a sur-reply." Resp. at 7. But the FTC's accusation that Defendants attempt "to have the last word" is misleading because it suggests that Defendants already objected to the use of such evidence and filed the Objections and Motion to Strike to object again. That is not the case. Defendants' Objections and Motion to Strike are comprised of evidentiary objections regarding evidence cited for the first time[5] in the FTC's MSJ Reply. Moreover, Federal Rule of Civil Procedure 56(c)(2) makes clear that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Defendants' Objections and Motion to Strike did exactly that.

---

[5] Defendants do not argue in the Objections and Motion to Strike that it was improper for the FTC to cite the evidence at issue for the first time in its MSJ Reply. Rather, Defendants argue that the evidence at issue should be stricken because it does not stand for the proposition asserted and is thus irrelevant. Defendants simply make clear here that the FTC's claim that Defendants attempt "to have the last word" is misguided.

9

Second, the FTC represents that "Defendants make no effort to show that the specific exhibits do not tend to make a fact more or less probable." Resp. at 8. That again is demonstrably false. Defendants detailed in their Objections and Motion to Strike why each objected-to exhibit does not make the fact asserted in the FTC's MSJ Reply any more or less probable. *See* Objs. and Mot. to Strike at 5–9. To show that, Defendants included a chart with the FTC's exact representations of the evidence in the MSJ Reply, along with Defendants' explanation of why the evidence does not actually support those representations. *Id.* And because the evidence does not support the representations that the FTC made in its MSJ Reply, the FTC has not carried its burden of showing that the evidence is not relevant. The FTC is the party that "makes no effort" to engage with this argument. Resp. at 8.

Third, and relatedly, instead of meaningfully responding to Defendants' evidentiary objections, the FTC merely declares that the exhibits "are relevant to various issues in the case," and "refers the Court to its [MSJ Reply] as the best explanation for this relevance." *Id.* Thus, the FTC ignores Defendants' detailed arguments as to why the evidence does not support the FTC's representations in its MSJ Reply and circularly refers the Court back to its MSJ Reply. The FTC has failed to carry its burden to show that the exhibits are relevant and would be admissible, and Defendants' Objections and Motion to Strike should be granted.

### III.   CONCLUSION

For these reasons, the Court should strike the exhibits set forth in Defendants' Objections and Motion to Strike from the summary judgment record as inadmissible evidence.

[signature page to follow]

Dated: January 16, 2024

/s/ *Angela C. Zambrano*

Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: 214-981-3300
Fax: 214-981-3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310-595-9500
Fax: 310-595-9501

Benjamin M. Mundel (admitted *pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711

*Attorneys for Match Group, Inc. and Match Group, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2024, I caused true and correct copies of the foregoing to be served on all counsel of record in accordance with Federal Rules of Civil Procedure and this Court's CM/ECF filing system.

*/s/ Angela C. Zambrano*
Angela C. Zambrano
