**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br>Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation, and<br>MATCH GROUP, LLC, formerly known as<br>MATCH.COM, LLC, a limited liability<br>company,<br><br>Defendants. | Case No. 3:19-cv-02281-K |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTUAL BACKGROUND ............................................................................... 4

LEGAL STANDARD ............................................................................................................... 10

ARGUMENT ............................................................................................................................. 12

   **A.**  **Defendants Complied with Their Discovery Obligations, and the Timing of the Production Was Substantially Justified.**............................................................................................ 12

   **B.**  **The FTC Was Not Prejudiced by the Timing of the Production.**................................. 15

     *1. The FTC had the opportunity to use the documents from the October 25 Production in their Summary Judgment Reply Briefing.*................................................................................. 15

     *2. The FTC has obtained more than enough discovery and was not deprived of the opportunity to seek discovery based on the October 25 production.*................................................... 17

   **C.**  **The Sanctions Requested by the FTC Are Inappropriate.** ........................................ 18

CONCLUSION ......................................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Badalamenti v. Dunham's Inc.*,
   896 F.2d 1359 (Fed. Cir. 1990)......................................................................................10, 11

*Better Bags, Inc. v. Ill. Tool Works, Inc.*,
   939 F. Supp. 2d 737 (S.D. Tex. 2013) .....................................................................................16

*Celanese Corp. v. Clariant Corp.*,
   No. 3:14-CV-4165-M, 2016 WL 4039162 (N.D. Tex. July 28, 2016)...................................18

*Century Indem. Co. v. Aero-Motive Co.*,
   254 F. Supp. 2d 670 (W.D. Mich. 2003) .................................................................................14

*Chen-Oster v. Goldman, Sachs & Co.*,
   285 F.R.D. 294 (S.D.N.Y. 2012) ............................................................................................10

*Dorsey v. Acad. Moving & Storage, Inc.*,
   423 F.2d 858, 860 (5th Cir. 1970)) .........................................................................................10

*Elhannon LLC v. F.A. Bartlett Tree Expert Co.*,
   No. 2:14-CV-262, 2017 WL 1382024 (D. Vt. Apr. 18, 2017) ................................................14

*Hanan v. Crete Carrier Corp.*,
   No. 3:19-CV-0149-B, 2020 WL 1692952 (N.D. Tex. Apr. 7, 2020) ......................................11

*Innovation Scis., LLC v. Amazon.com Inc.*,
   No. 4:18-cv-474, 2020 WL 4431875 (E.D. Tex. July 31, 2020)............................................14

*Marlin Oilfield Divers, Inc. v. Allied Shipyard Inc.*,
   No. 20-2431, 2022 WL 1460117 (E.D. La. Mar. 9, 2022) .........................................10, 11, 12

*Maxell, Ltd. v. Apple Inc.*,
   No. 5:19CV36-RWS, 2020 WL 10456912 (E.D. Tex. Aug. 25, 2020)...................................14

*McElvy v. Sw. Corr. LLC*,
   No. 3:19-CV-1264-N, 2023 WL 7184040 (N.D. Tex. Nov. 1, 2023) ..............................11, 18

*Merriweather v. Marion Cnty. Sheriff*,
   No. 1:02-CV-01881-SEB-VS, 2004 WL 1234119 (S.D. Ind. May 13, 2004) ........................14

*Newell v. Mnuchin*,
   No. CV 17-2695 (RC), 2020 WL 136648 (D.D.C. Jan. 13, 2020) .............................10, 14, 16

*Nguyen v. La. State Board of Cosmetology,*
   No. 14-80-BAJ-RLB, 2016 WL 67731 (M.D. La. Jan. 5, 2016).......................................10, 13

*Orchestrate HR, Inc. v. Trombetta,*
   178 F. Supp. 3d 476 (N.D. Tex. 2016) ..............................................................................1, 10

*Pierce v. Underwood,*
   487 U.S. 552 (1988)...............................................................................................................11

*Texas A&M Research. Found. v. Magna Transp., Inc.,*
   338 F.3d 394 (5th Cir. 2003) .................................................................................................11

*United States v. Garza,*
   448 F.3d 294, 300 (5th Cir. 2006) .........................................................................................11

*Vestas-Am. Wind Tech., Inc. v. Salazar,*
   No. 6:19-CV-00076-H, 2021 WL 4896142 (N.D. Tex. Mar. 27, 2021).................................11

## Other Authorities

Fed. R. Civ. P. 16(f) ..........................................................................................................10, 12, 13

Fed. R. Civ. P. 26(e) ...............................................................................................................13, 14

Fed. R. Civ. P. 26(e)(1)(A) ...........................................................................................................13

Fed. R. Civ. P. 26(g)(1)(A) ...........................................................................................................10

Fed. R. Civ. P. 37 ..........................................................................................................10, 11, 12

Fed. R. Civ. P. 37(c)(1) .................................................................................................................11

Fed. R. Civ. P. 37(d) ........................................................................................................10, 11, 13

## PRELIMINARY STATEMENT

The Federal Trade Commission's ("FTC") Motion for Sanctions should be denied.

The document production at issue in the Motion did not result from any intentional misconduct by Defendants but rather from a third-party vendor's inadvertent error, wholly unrelated to this litigation, in migrating emails from one repository to another. When Defendants became aware of a potential issue relating to their document collection in this litigation, based on issues discovered in another unrelated matter, they immediately investigated and determined that some responsive emails had not been collected or produced in this case. The responsive materials were thereafter collected and produced without delay. Far from engaging in sanctionable conduct, Defendants at all times acted in good faith and complied with the rules of discovery. The FTC cannot and does not point to any facts suggesting that Defendants knowingly—or even negligently—collected and produced documents late in this case. The FTC comes nowhere close to showing Defendants acted with "willful disobedience or gross indifference." *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 500 (N.D. Tex. 2016), *objections overruled sub nom. Orchestratehr, Inc. v. Trombetta*, No. 3:13-CV-2110-KS-BH, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016).

Indeed, the evidence submitted herewith proves the opposite. The affidavit of Samuel Kitchens, Defendants' in-house counsel, demonstrates:

- Match.com used Microsoft Office 365's cloud-based email system as its email program and Quest Archive, an archiving tool advertised as interoperable with Microsoft Office, from September 2018 through December 2021. App. 001-002 (Decl. ¶ 4-5).

1

- There was an unknown connectivity error between Microsoft and Quest Archive during certain small timeframes. App. 003 (Decl. ¶ 10).

- During these time periods, some emails were not archived in Quest. *Id*.

- Unbeknownst to Defendants, when Defendants collected documents from the Quest Archive system—where Defendants believed all emails were stored—the collection did not capture all of the emails that existed. App. 003 (Decl. ¶ 11).

- In July 2023, shortly before the discovery deadline, while reviewing documents for a different matter, Defendants discovered a gap in the document collection from Quest Archive. App. 002 (Decl.  ¶ 2).

- Upon learning of the issue in the other matter, Defendants immediately investigated its scope to determine whether discovery in this case was impacted, even going so far as to re-collect documents for the entirety of September 2018-December 2021 (when both Microsoft Office and Quest Archive were in use) from an alternate source to compare that collection with the Quest Archive collection. App. 002, 004 (Decl. ¶¶ 9, 15).

- This effort took some time, but on October 3, 2023, Defendants discovered that there were additional gaps in the Quest Archive collection. App. 004-005 (Decl. ¶¶ 16-17). Defendants quickly reviewed the documents, notified the FTC that they had located additional responsive documents, and then produced them shortly thereafter. App. 005-006 (Decl. ¶ 18).

As the evidence shows, contrary to the FTC's claims, Defendants never "withheld" any documents or even acted negligently in any way. Defendants acted diligently and proactively to

ensure that all responsive materials were produced, despite a technical error outside of their control that was brought to their attention in another unrelated matter.

Further, the FTC does not even attempt to argue material prejudice. The only claim of prejudice the FTC makes is that it could not put a "finer point" on its opening summary judgment brief. But the FTC was able to, and in fact did, cite the newly discovered documents in its summary judgment reply briefing. Defendants also offered to extend the responsive briefing deadlines to provide the FTC with whatever time it needed to review the documents before filing responses, but the FTC declined. Further, Defendants told the FTC they would be open to discussing supplementing briefing after the production. The FTC never followed up.

Nor could the FTC claim it was deprived of the opportunity to seek additional discovery on these documents. To this day, the FTC has not sought any new discovery related to the documents. The FTC did not request additional depositions or written discovery. Instead, the FTC ignored the issue for months before eventually informing Defendants they planned to move for sanctions unless Defendants agreed that the FTC could have unlimited use of the documents without Defendants being able to explain them. This shows that the FTC's Motion is about gaining a tactical advantage through sanctions, not actually about discovery. In any event, the FTC has already taken more discovery than it is entitled to under the Federal Rules—spanning 11 depositions, 25 interrogatories from each Defendant (not counting discrete subparts), 412 requests for admission from MGI, 397 requests for admission from MGL, and production of nearly 300,000 documents—so it is hard to see what more discovery the FTC could have taken, much less how not getting that additional discovery is prejudicial.

In any event, Defendants have already offered a more than sufficient remedy. Defendants offered to stipulate that they will not introduce any of the 450 documents produced on October

25—the production that is the subject of the FTC's sanctions request—at trial (or at any other stage in the litigation). Defendants' only request is that, if the FTC introduces such documents, Defendants should be permitted to address or explain the documents. That way the record will be clear and the Court can decide the truth. The FTC rejected that approach and wishes to be able to introduce the documents but not allow Defendants to explain or address them. The Court should deny the FTC's Motion.

## RELEVANT FACTUAL BACKGROUND

Defendants have provided volumes of comprehensive discovery in this matter. Since the FTC sent its Civil Investigative Demand ("CID") to MGI in 2017, Defendants collectively have produced nearly 300,000 documents, served hundreds of pages of responses to written questions, responded to 50 interrogatories (more, including subparts), sat through 11 depositions, and responded to 809 requests for admission. Defendants have spent millions of dollars on discovery alone. Out of that mountain of discovery, the FTC takes issue with Defendants' production of fewer than 500 documents after the close of discovery.

The dispute in this discovery motion arises out of a technical archiving issue. Between approximately September 2018 and December 2021, Match.com used Microsoft Office 365 (a cloud-based email system) to send and receive email. App. 001-002 (Decl. ¶ 4). To archive and preserve emails, Match.com used Quest Archive, a third-party archiving vendor that advertised itself as interoperable with Microsoft and has a long history in the industry. App. 002 (Decl. ¶ 5). Quest Archive automatically obtained and archived emails from email accounts on the Microsoft Office 365 server, so those emails could be collected, reviewed, and saved directly from Quest Archive. App. 001-002 (Decl. ¶ 4). Meanwhile, the same emails would also be stored on Microsoft's server so that they would be viewable by the sender and receiver within Microsoft's email application. *Id.*

In December 2021, Match.com transitioned from Microsoft Office 365 and Quest Archive, to Gmail and Google Vault (Gmail's archiving system). App. 002 (Decl. ¶ 6). At that time, all emails contained in employees' Microsoft Office 365 mailboxes were migrated to Google Vault. *Id*. Match.com also retained the Quest Archive for the pre-December 2021 period.

When Defendants needed to collect emails from December 2021 and earlier for this litigation, they retrieved those emails from Quest Archive, as is typical for litigation matters. App. 002 (Decl. ¶ 7). Unbeknownst to Defendants, however, the connection between Quest Archive and Microsoft Office 365 was interrupted during certain time periods, and as a result, a small set of emails sent or received during those connectivity interruptions were never transmitted to Quest Archive, so they were never copied and saved to Quest Archive and therefore not captured in Defendants' original document collection. App. 003 (Decl. ¶¶ 10-11)

Defendants identified this issue in an unrelated matter during the week of July 17, 2023, shortly before discovery in this litigation closed, when they realized that the volume of documents collected from a particular custodian during an approximately 4-week period in April-May 2019 was unusually low. App. 002 (Decl. ¶ 8). Defendants immediately investigated if this issue from the other matter affected document collection in this case and concluded that it had. App. 002-003 (Decl. ¶ 9). To address that issue, Defendants collected emails for that time period from Google Vault (where Microsoft Office 365 mailboxes had been migrated in December 2021), reviewed them, and supplemented their production on July 28, 2023, at the close of discovery. *Id*. In the production cover letter, Defendants explained to the FTC that "due to a technical glitch, some emails sent or received during a short period of time in 2019 were not captured in the system where they were expected to reside," *i.e.*, Quest Archive, but that Defendants had obtained those

documents from an alternative source. Dkt. 246-2 at App. 4990. The FTC did not respond or otherwise follow-up with Defendants regarding this letter.

Although discovery had closed, Defendants did not stop there. They continued to review the volume of their email collection from other time periods to identify any other possible gaps in the Quest Archive collection. App. 004 (Decl. ¶ 13). From a comprehensive, time consuming, and technical review, Defendants identified two other multi-week periods that were potentially affected by a communications interruption (February 2020 and October 2021). *Id*. Because of the large overall volume of Defendants' collection and that some (but not all) emails during the affected time periods were captured by Quest Archive (and therefore included in Defendants' previous collection), these gaps were not obvious and were only identified upon closer inspection. *Id*. Defendants again collected emails from the affected time periods from an alternative source (Google Vault) reviewed them, and supplemented their production with 37 newly discovered documents on August 7, 2023, shortly after discovery closed. App. 004 (Decl. ¶ 14). The volume of collected emails *did not* appear to be unusually low for any other time periods, App. 004 (Decl. ¶ 15), so Defendants told the FTC that they believed the issue had been resolved and there would not be additional productions. Dkt. 246-2 at App. 4991. Again, the FTC did not respond to this letter or have any questions about the technical issue referred to in the production cover letter.

After further discussion and analysis of documents collected in other matters, to be absolutely sure that the connectivity interruption had not impacted other time periods, Defendants collected emails from Google Vault for the *entire three-year period* during which Match.com had used Microsoft Office 365 in conjunction with Quest Archive. App. 004 (Decl. ¶ 15). Defendants then compared the new, Google Vault collection to the old, Quest Archive collection. *Id*. The FTC never requested that Defendants take such measures—Defendants did so on their own accord.

Given the volume of documents to be collected and compared, and technical issues that made comparing and de-duplicating documents collected from two different systems challenging, that process took some time. App. 004-005 (Decl. ¶ 16).

That comparison revealed that the connectivity issue had affected some additional time periods. App. 005 (Decl. ¶ 17). Whereas sometimes the connectivity issue impacted a longer period (such as those Defendants previously identified), other times the connectivity issue impacted only very short periods that could not be identified by examining the volume of documents collected from Quest Archive. *Id*. For example, if Quest Archive returned only a few emails for a particular custodian on a particular day, it was impossible to tell from that information alone whether the lower volume was due to a connectivity issue that prevented emails from being copied from Microsoft Office 365 to Quest Archive, or because the custodian sent and received fewer emails that day because he or she was on vacation, was out sick, or had a lighter workload that day. Thus, this type of gap in a collection was difficult to identify.

After Defendants discovered that the connectivity issue was more widespread than previously understood, Defendants collected the full Google Vault exports for the custodians in this matter for the September 2018-December 2021 period and isolated the documents that had not been previously collected from Quest Archive, which was again technically challenging. That process was complete on October 3. App. 004-005 (Decl. ¶ 18). Having identified the gap, Defendants again reviewed the documents and supplemented their production on October 25, 2023, with 450 documents (many of which are near-dupes or otherwise similar to previously produced documents).[1] *Id*.

---

[1] The October 25, 2023 production also contained additional data about subscribers that accepted a save offer during the cancelation flow, which was discovered completely separately from the Quest Archive matter. After discovery closed, Match.com's data analyst realized that some of those save offer transactions were recorded in a separate table of which he was previously unaware, so the data provided to the FTC during discovery (and on which the FTC based

Because Defendants recognized that discovery was closed and the parties were in the midst of summary judgment briefing, Defendants informed the FTC of the forthcoming production on October 11, 2023, as soon as Defendants knew there were responsive documents to produce (but before it could produce them). App. 004-005 (Decl. ¶ 18). The parties had filed their opening motions for summary judgment, but responses were not yet due. Dkt. 178 at 2. Defendants offered to stay or extend briefing deadlines to ensure the FTC would have an opportunity to review the forthcoming documents and incorporate them into briefing as appropriate. App. 037. The FTC rejected Defendants' offer. App. 036. Defendants then told the FTC they would "expect to hear from [the FTC] regarding whether [the FTC] need[s] to supplement any of [its] briefings." App. 036. The FTC never followed up. In the production cover letter, Defendants also offered to answer questions or discuss, App. 4982-83, but the FTC never reached out. Notably, the FTC did not seek any updates about Defendants' investigation into the cause of the technical issue or remedial efforts; nor did the FTC request additional discovery from Defendants at any time.

Defendants reviewed and produced the newly discovered documents promptly and did so prior to summary judgment replies being filed. App. 004-005 (Decl. ¶ 18). The FTC had ample time to review and incorporate these documents; indeed, the FTC's Summary Judgment Reply discusses and attaches as exhibits several of the documents from the October 25 production, *see* Dkt. 246-1 at 4-5, 11, 15, 47—demonstrating that the FTC was able to review and incorporate the documents. The FTC did not request additional briefing time from Defendants or the right to file a sur-reply to Defendants' Summary Judgment Motion. The FTC never asked for any further discovery on this issue.

---

its monetary relief requests) undercounted the number of save offer takers. App. 006 (Decl. ¶ 19). Defendants produced the additional data to ensure that the FTC had an accurate record. *Id*.

For several weeks after the October 25 production, the FTC said nothing about the production. It was not until December 14 that the FTC raised for the first time that it would seek discovery sanctions. But instead of seeking additional discovery to resolve any alleged prejudice (or even identifying any purported prejudice), the FTC wanted to bar Defendants from using the documents produced on October 25, even if the FTC did. On December 18, 2023, the parties conferred about the FTC's request. Although Defendants denied that any sanctions were proper, Defendants offered to stipulate that Defendants would not introduce or rely on any documents produced on October 25 or testimony about those documents. App. 040. Defendants would only reserve the right to respond if the FTC relied on the documents. *Id*. The FTC refused to agree, arguing that Defendants should be prohibited from even *responding* to the FTC's use of the documents. *Id*. After the parties reached an impasse, on December 27, the FTC filed the Motion seeking sanctions related to the documents produced on October 25.

Although the FTC's Motion seeks sanctions related only to the October 25 production, *see* Mot. at 8 ("[T]he Court should prohibit Defendants from using any documents or data contained in their October 25 production[.]"), the FTC claims there were three "late productions." Mot. at 2. However, the connectivity issue between Microsoft and Quest Archive caused only two productions after the discovery deadline: one production of 37 documents on August 7, and one production of 450 documents on October 25. App. 004, 005-006 (Decl. ¶¶ 14, 18). The "third" "late production" that the FTC cites was made in April 2023, months before the July 2023 discovery deadline, and has nothing to do with the issues at hand. Dkt. 246-2 at App. 4985.[2]

---

[2] The technical issue that caused the October 25 production resulted in three productions, but only two of which were after the discovery period closed. The first production of documents affected by this technical issue was made on July 28, 2023, at the close of discovery.

## LEGAL STANDARD

Rule 26(g)(1)(A) requires that an attorney responding to a discovery request verify by signature, after "reasonable inquiry," that the disclosure is, to the best of the attorney's knowledge, "complete and correct." Fed. R. Civ. P. 26(g)(1)(A). Thus, searches for responsive documents must be reasonable, not perfect. *See Chen-Oster v. Goldman, Sachs & Co.,* 285 F.R.D. 294, 306 (S.D.N.Y. 2012) ("[T]he standard for the production of ESI is not perfection.").

Discovery sanctions are an extreme remedy and are "appropriate where there is willful disobedience or gross indifference but not where failure to comply was outside the party's control."[3] *Orchestrate HR*, 178 F. Supp. 3d at 500 (citing *Dorsey v. Acad. Moving & Storage, Inc.,* 423 F.2d 858, 860 (5th Cir. 1970)); *see also Marlin Oilfield Divers, Inc. v. Allied Shipyard Inc.,* No. 20-2431, 2022 WL 1460117, at *2 (E.D. La. Mar. 9, 2022) (stating Rule 37(b) sanctions are available when the moving party has shown "willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence"); *Newell v. Mnuchin*, No. CV 17-2695 (RC), 2020 WL 136648, at *9 (D.D.C. Jan. 13, 2020) (declining to impose sanctions under Rule 16(f) for producing documents after the discovery deadline where there was no evidence the defendant "acted in bad faith and intentionally flouted the Court's scheduling order").

If a party "completely fails to serve *any response*" to written discovery, the opposing party can seek sanctions under Rule 37(d). *Nguyen v. La. State Board of Cosmetology*, No. 14-80-BAJ-

---

[3] Some courts have suggested that willfulness is not required when the movant is not requesting case-terminating sanctions, but it is clear that, at a minimum, sanctions require "willful disobedience or gross indifference"—neither of which exists here—and are not appropriate "where failure to comply was outside the party's control." *Orchestrate HR*, 178 F. Supp. 3d at 500. The FTC suggests that sanctions can be awarded for even a negligent failure under Rule 37(d). *See* Mot. at 4. However, Rule 37(d) applies only "where a party completely fails to serve *any response*" to interrogatories or requests for inspection. *Nguyen v. La. State Board of Cosmetology*, No. 14-80-BAJ-RLB, 2016 WL 67731, at *6 (M.D. La. Jan. 5, 2016) (emphasis added); *Badalamenti v. Dunham's Inc*., 896 F.2d 1359, 1362 (Fed. Cir. 1990) (stating "if the party responds to the document request, even if he responds by objecting, Rule 37(d) sanctions are not available"). Defendants responded timely to all of the FTC's discovery requests. Thus, 37(d) is not applicable.

RLB, 2016 WL 67731, at *6 (M.D. La. Jan. 5, 2016) (emphasis added); *Badalamenti v. Dunham's Inc.*, 896 F.2d 1359, 1362 (Fed. Cir. 1990) (stating "if the party responds to the document request, even if he responds by objecting, Rule 37(d) sanctions are not available"). However, Rule 37(d)(1)(B) requires that a motion for sanctions "include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response." Fed. R. Civ. P. 37(d)(1)(B).

Even where (unlike here), sanctions are appropriate, "[t]he Court 'should impose only that sanction which is the least severe way to effect compliance with the court's discovery orders.'" *McElvy v. Sw. Corr. LLC,* No. 3:19-CV-1264-N, 2023 WL 7184040, at *3 (N.D. Tex. Nov. 1, 2023) (quoting *United States v. Garza*, 448 F.3d 294, 300 (5th Cir. 2006)).

What is more, Rule 37 prohibits sanctions when the failure to produce documents was "'substantially justified or harmless.'" *Marlin Oilfield Divers, Inc.*, 2022 WL 1460117, at *2. A disclosure is substantially justified if it is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988); *Vestas-Am. Wind Tech., Inc. v. Salazar*, No. 6:19-CV-00076-H, 2021 WL 4896142, at *2 (N.D. Tex. Mar. 27, 2021) (stating a party's conduct is "substantially justified" under Rule 37 if "reasonable people could differ as to the appropriateness of the contested action" (quotation marks omitted)). In deciding whether to impose discovery sanctions, courts consider "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A&M Research. Found. v. Magna Transp., Inc.,* 338 F.3d 394, 402 (5th Cir. 2003); *Hanan v. Crete Carrier Corp*., No. 3:19-CV-0149-B, 2020 WL 1692952, at *2 (N.D. Tex. Apr. 7, 2020) (applying the same factors in determining whether sanctions were appropriate under Rule 37(c)(1) and Rule 16(f)

"[b]ecause failure to comply with Rule 16 provides for sanctions under Rule 37"); *Marlin Oilfield Divers,* 2022 WL 1460117, at *2 (holding these factors weighed against sanctioning a party where their failure to timely produce documents was the result of an "honest mistake" and the party produced the documents "as soon as it discovered them").

## ARGUMENT

### A. Defendants Complied with Their Discovery Obligations, and the Timing of the Production Was Substantially Justified.

The FTC begins by claiming that Defendants "withheld key evidence" and arguing that doing so was "at least negligent." Mot. at 5. That is simply not true. Defendants never "withheld" anything.[4] Defendants produced hundreds of thousands of documents, from 26 custodians, provided hundreds of pages of interrogatory responses and answered nearly a thousand requests for admission. The only thing that the FTC complains the Defendants did was produce fewer than 500 documents **out of nearly 300,000** after the close of fact discovery. But Defendants did so because they did not know those documents existed due to a technical error by a vendor.

Defendants at all times acted in good faith and complied with the Federal Rules. When responding to the FTC's Requests for Production, Defendants collected emails from Quest Archive, where all emails were supposed to be copied and stored. App. 002 (Decl. ¶ 7). Defendants had no reason to think that the collection from Quest Archive was incomplete. App. 003 (Decl. ¶ 11). Quest Archive advertises itself as "a complete email and messaging content archiving software solution" that captures and retains "each message."[5] And Quest Archive has a long history in the industry and advertises itself as interoperable with Microsoft (Match.com's email provider

---

[4] The connectivity issue was not the result of any act or failure by the Defendants and had nothing to do with this particular case or an intentional impact on Defendants' discovery obligations in this case. To the contrary, it was an issue that affected Match.com's archiving processes generally. App. 003 (Decl. ¶ 12). Thus, Defendants were not attempting to "withhold" certain evidence from the FTC.

[5] https://www.quest.com/products/archive-manager/

at the time), giving Defendants confidence in the use of the systems. App. 002 (Decl. ¶ 5). Given the number of custodians and length of time for which Defendants were collecting documents, the small gaps in the collection were not obvious. App. 004 (Decl. ¶ 13). Further, Defendants had no reason to suspect deficiencies in the document collection given Quest Archive saved the vast majority of data over the relevant time periods.

As soon as Defendants learned that there was even a potential issue with all documents not being in the Quest Archive, they took diligent steps to investigate and correct this problem. This is precisely what the rules require. Federal Rule of Civil Procedure 26(e) requires a party who has responded to a request for production to supplement or correct its disclosure "*in a timely manner* if the party *learns* that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Defendants complied with that obligation by addressing the issue "in a timely manner." Once Defendants became aware of the vendor issue, they worked diligently to investigate, self-report, and remedy the problem in compliance with Rule 26(e).

Because Defendants supplemented their production in compliance with Rule 26(e), sanctions are not appropriate under Rules 16(f), 37(c), or 37(d). In fact, sanctions are not available under Rule 37(d) at all, because Rule 37(d) addresses only a failure to respond entirely (not a delayed failure to respond), *see Nguyen*, 2016 WL 67731, at *6, and the FTC did not include the required certification that it had conferred with Defendants "in an effort to obtain the answer or response," Fed. R. Civ. P. 37(d)(1)(B), given Defendants responded to all discovery requests and discovered and self-reported the gap in their document productions.

Notably, the Motion does not claim or point to evidence that the delayed production was intentional, willful, or the result of bad faith (because no such evidence exists). Courts have refused

to order sanctions in similar circumstances. *See Newell*, 2020 WL 136648, *10 (declining to impose sanctions where "there [was] no evidence that [d]efendant's late production was anything more than an attempt to comply with its Rule 26(e) duty to supplement as soon as it realized the agency's 'inadvertent oversight'"); *Century Indem. Co. v. Aero-Motive Co*., 254 F. Supp. 2d 670, 695 (W.D. Mich. 2003) (declining to impose sanctions because the "late production was not the result of bad faith or dilatory conduct, but rather was the result of a good-faith oversight during a search for decades-old documents"); *Innovation Scis., LLC v. Amazon.com Inc.*, No. 4:18-cv-474, 2020 WL 4431875, at *3 (E.D. Tex. July 31, 2020) (declining to impose sanctions based on "mere speculation" that the "[d]efendants' litigation strategy includes bad-faith tactics designed to prejudice [p]laintiff's diligent trial preparation and litigation strategy"); *Maxell, Ltd. v. Apple Inc*., No. 5:19CV36-RWS, 2020 WL 10456912, at *11 (E.D. Tex. Aug. 25, 2020) ("Evidence of an untimely disclosure does not, by itself, convince the Court of a party's bad faith. There must be something more." (quoting *Innovation Scis*., 2020 WL 4431875, at *3)).

Further, the timing of the October 25 production was substantially justified given that Defendants acted reasonably in collecting documents from Quest Archive and then acted appropriately in self-reporting and then correcting the gaps when identified. Sanctions are not warranted when a delay in a document production is caused by a technical issue outside of the producing party's control. *See Elhannon LLC v. F.A. Bartlett Tree Expert Co., No*. 2:14-CV-262, 2017 WL 1382024, at *5, *10 (D. Vt. Apr. 18, 2017) (declining to impose sanctions where the defendant "could not have known of the technological limitation that led to gaps in its email production, and that it sought to remedy that oversight as quickly as possible"); *Merriweather v. Marion Cnty. Sheriff*, No. 1:02-CV-01881-SEB-VS, 2004 WL 1234119, at *3 (S.D. Ind. May 13, 2004) (holding the defendant had substantial justification for its delay in producing discovery

because "defense counsel's disclosure of the discovery material was hindered by events outside of his control," including due to the defendant's "outmoded computer technology," and there was "no suggestion that [d]efendant acted in bad faith"). This is such a circumstance. The technical issue was caused by connectivity problems between third-party vendors, which were advertised as interoperable and had been used without incident on previous occasions. App. 002 (Decl. ¶¶ 5, 7). Defendants did everything in their power to remedy a situation that was not caused by any act or failure on their part. App. 003 (Decl. ¶ 12). Accordingly, the production's timing was substantially justified and sanctions are not warranted for that reason alone.

**B. The FTC Was Not Prejudiced by the Timing of the Production.**

*1. The FTC had the opportunity to use the documents from the October 25 Production in their Summary Judgment Reply Briefing.*

The FTC also suffered no harm or prejudice by this production. The FTC claims that the timing of the production caused prejudice because the FTC was not able to put a "finer point" on its opening summary judgment motion. Mot. at 6. But the FTC could and did use those documents in its reply brief in support of its summary judgment motion. Indeed, its reply brief contains an entire section summarizing documents from the October 25 production.[6] Dkt. 246-1 at 4, 5, 11, 15, 47. Further, the Defendants offered to discuss supplemental briefing if necessary, but the FTC never made that request. App. 036.

The FTC's reply in support of summary judgment, like its Motion for Sanctions, mischaracterizes the documents contained in the October 25 production. For example, an email the FTC claims is a "widely distributed" document "explaining an extended and intentional plan

---

[6] The FTC even contradicts its own purported prejudice by arguing that its opening brief "cited sufficient evidence" "to illustrate the lack of a genuine dispute of fact as to each issue in this case," meaning that, in the FTC's view, the newly discovered documents do not change what it believes is the appropriate outcome of the Motion for Summary Judgment. Mot. at 6.

to make cancellation not simple," Mot. at 6, was not "widely distributed" (it was sent to four people), was not a "plan" (the document is a retrospective data analysis drafted by an employee who was not on the team responsible for making decisions about changes to the site, so is, at best, pure speculation), and does not show that Match.com "ma[d]e cancellation not simple" (the data showed an increase in the number of people canceling within three days of subscribing from 2018 to 2019). The other piece of evidence that the FTC mischaracterizes in its Motion is a "User Sentiment 2020" presentation that contains inadmissible hearsay complaints. *See* Mot. at 6; Dkt. 246-2 at App. 4915–52. Defendants' repetition of hearsay complaints (from customers likely incentivized to seek a refund) is neither the smoking gun nor the revelation that the FTC suggests. Indeed, Defendants produced tens of thousands of customer care records many months ago, well before the discovery deadline. The FTC was able to take full advantage of whatever value those records have.

In any event, the FTC demonstrably was able to rely on those documents without prejudice at summary judgment.[7] Additionally, the FTC never took Defendants up on their offer to discuss supplemental briefing. To the extent the FTC wanted additional time with the documents, Defendants offered that time, and the FTC refused.

Courts have held that when a party has the opportunity to use late-produced documents in its filings there is no prejudice, and no sanctions are appropriate. *See Newell,* 2020 WL 136648*,* at *9 (rejecting a plaintiff's argument it was prejudiced by late production of documents during summary judgment briefing because the plaintiff was given an extension of time to review the documents and incorporate them into its response brief); *Better Bags, Inc. v. Ill. Tool Works, Inc.,*

---

[7] Defendants filed a motion to strike some of these documents from the summary judgment record on substantive grounds, but, of course, did not move to strike on the basis that the FTC first relied on the documents in its reply. *See* Dkt. 259.

939 F. Supp. 2d 737, 753 (S.D. Tex. 2013) (declining to impose sanctions where the defendant did not argue the plaintiff's alleged discovery abuse "prejudiced its ability to present a defense to [the plaintiff's] claims"). Tellingly, the FTC does not cite a single case to support its purported prejudice argument, much less a case involving similar facts. *See* Mot. at 6-7 (prejudice sections devoid of any legal citations).

### 2. The FTC has obtained more than enough discovery and was not deprived of the opportunity to seek discovery based on the October 25 production.

The FTC also argues that the timing of the October 25 production prevented the FTC from "seek[ing] additional, more narrowly targeted discovery based on the new information it contained." Mot. at 7. To begin, nothing about the FTC's discovery demands in this case have been "narrowly targeted." The FTC served 147 requests for production, 50 interrogatories (many more, if counting discrete subparts), and 809 requests for admission, took 11 depositions, and obtained nearly 300,000 documents from Defendants. It is difficult to imagine what more discovery the FTC could have served (particularly given that it had already exceeded deposition and interrogatory limits), nor does the FTC identify any specific new discovery it would have served if given the opportunity. The FTC complains that it "could not depose Jonathan Caine," the author of one of the documents in the production, but the FTC has been aware of Mr. Caine for years (he appeared on the FTC's Third Amended Initial Disclosures, App. 022), and the FTC did not select Mr. Caine as one of its *11* deponents. There is no basis to believe that a single document would have changed that decision. And the FTC has not even sought to take his deposition now (out of time).

The truth is that the FTC is not actually interested in additional discovery about the newly discovered documents. Upon discovering that the technical issue had resulted in some responsive documents not being included in Defendants' prior productions, Defendants immediately informed

17

the FTC, promptly produced documents, and offered to pause summary judgment briefing so that Defendants could complete their production and the FTC could thoroughly review those documents and decide how to proceed. The FTC rejected that offer, insisted on proceeding with the briefing on the existing schedule, and never once requested any additional discovery. And tellingly, the FTC does not request any further discovery in its Motion.[8]

Finally, the FTC suffers no prejudice at trial either. Trial in this case is still months away. The FTC has more than enough time to incorporate those documents into its trial strategy and presentation. The FTC does not even claim it will suffer any trial prejudice, and therefore there is no basis for its requested trial sanction.

## C.  The Sanctions Requested by the FTC Are Inappropriate.

Even if sanctions were warranted (they are not), the sanctions requested by the FTC are not proper or justified. As noted above, a court "should impose only that sanction which is the least severe way to effect compliance with the court's discovery orders." *McElvy*, 2023 WL 7184040, at *3 (quoting *Garza*, 448 F.3d at 300). "Preclusion of evidence . . . [is a] drastic remed[y] generally confined to exceptional cases where a party's failure to provide requested discovery results in prejudice to the requesting party." *Celanese Corp. v. Clariant Corp.*, No. 3:14-CV-4165-M, 2016 WL 4039162, at *4 (N.D. Tex. July 28, 2016) (quoting *Better Bags, Inc.,* 939 F. Supp. 2d at 753).

The FTC asks that the Court (1) "prohibit Defendants from using any documents or data contained in their October 25 production to support their own contentions in this litigation," and (2) "issue an order prohibiting Defendants from presenting testimony intended to explain or rebut

---

[8] Page 7 of the Motion contains what appears to be a stray reference to a request that the FTC be allowed "to seek additional discovery." Mot. at 7. That requested relief appears nowhere else in the Motion or the FTC's proposed order, however, and was never discussed during the parties' meet and confers. The Court therefore should disregard that request as unsupported and not the subject of any conference between the parties.

new evidence they find unfavorable." Mot. at 8. Effectively, the FTC wants *carte blanche* to use the documents for any narrative it wishes while preventing Defendants from offering any context or explanation for the documents.

Defendants have already told the FTC that they will not introduce documents from the October 25 production or testimony about them. Defendants offered to stipulate accordingly. App. 040. Defendants are only seeking to reserve the right to address those documents *if the FTC affirmatively introduces them.* Preventing Defendants from presenting testimony or evidence to explain or rebut the FTC's spin of documents from the October 25 production introduced by the FTC would be entirely unjust and would not allow the Court to reach the truth. Indeed, the FTC has not cited a single case that would allow one-sided introduction of evidence in any situation remotely close to this one. There is no basis to impose such punitive sanctions, particularly where the timing of the production was caused by a third-party vendor's technical error and the FTC suffered no prejudice. To the extent the Court grants any relief at all (it should not), it should make clear that Defendants have the right to respond if the FTC opens the door by introducing documents from the October 25 production.

## **CONCLUSION**

For the foregoing reasons, the FTC's Motion should be denied.

19

Dated: January 24, 2024

/s/ Angela C. Zambrano

Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: 214-981-3300
Fax: 214-981-3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310-595-9500
Fax: 310-595-9501

Benjamin M. Mundel (admitted *pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711

*Attorneys for Match Group, Inc. and
Match Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2024, I caused true and correct copies of the foregoing

to be served on all counsel of record in accordance with Federal Rules of Civil Procedure and this

Court's CM/ECF filing system.

Reid Abram Tepfer
rtepfer@ftc.gov
M. Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov
Jason C. Moon
jmoon@ftc.gov
Nicole Conte
nconte@ftc.gov

*/s/ Angela C. Zambrano*
Angela C. Zambrano