## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation, and<br>MATCH GROUP, LLC, formerly known as<br>MATCH.COM, LLC, a limited liability<br>company,<br><br>Defendants. | Case No. 3:19-cv-02281-K |

## DEFENDANT MATCH GROUP, INC. AND MATCH GROUP, LLC'S
## APPENDIX IN SUPPORT OF RESPONSE TO MOTION FOR SANCTIONS

Pursuant to Local Civil Rule 7.1(i), Defendants Match Group, Inc. and Match Group, LLC respectfully submit this Appendix in Support of their Response to Plaintiff Federal Trade Commission's ("FTC") Motion for Discovery Sanctions.

| Ex. | Description | App. |
|---|---|---|
| 1. | Declaration of Samuel Kitchens | App. 001–006 |
| 2. | Plaintiff's Third Amended Initial Disclosures (dated June 9, 2023) | App. 007–035 |
| 3. | Email from Counsel for Defendants to Counsel for the FTC, "RE: FTC v. Match Group, Inc., et al." (dated October 13, 2023) | App. 036–039 |
| 4. | Email from Counsel for Defendants to Counsel for the FTC, "RE: FTC v. Match - Discussions re Late Discovery." (dated December 27, 2023) | App. 040–045 |

[signature page to follow]

Dated: January 24, 2024

*/s/ Angela C. Zambrano*

Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Chelsea A. Priest
State Bar No. 24102375
cpriest@sidley.com
Tayler G. Bragg
State Bar No. 24109943
tbragg@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: 214-981-3300
Fax: 214-981-3400

Chad S. Hummel (admitted *pro hac vice*)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310-595-9500
Fax: 310-595-9501

Benjamin M. Mundel (admitted *pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711

*Attorneys for Match Group, Inc. and
Match Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2024, I caused true and correct copies of the foregoing to be served on all counsel of record in accordance with Federal Rules of Civil Procedure and this Court's CM/ECF filing system.

Reid Abram Tepfer
rtepfer@ftc.gov
M. Hasan Aijaz
maijaz@ftc.gov
Matthew James Wilshire
mwilshire@ftc.gov
Sarah Zuckerman
szuckerman@ftc.gov
John R. O'Gorman
jogorman@ftc.gov
Erica Rollins Hilliard
ehilliard@ftc.gov
Jason C. Moon
jmoon@ftc.gov
Nicole Conte
nconte@ftc.gov

/s/ Angela C. Zambrano
Angela C. Zambrano

# EXHIBIT 1

DocuSign Envelope ID: D6B548DC-24C4-48E4-A9F3-651D46D1F29E

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>Plaintiff,<br><br>vs.<br><br>MATCH GROUP, INC., a corporation, and<br>MATCH GROUP, LLC, formerly known as<br>MATCH.COM, LLC, a limited liability<br>company,<br><br>Defendants. | Case No. 3:19-cv-02281-K |

**<u>DECLARATION OF SAMUEL KITCHENS IN SUPPORT OF DEFENDANTS'
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS</u>**

I, Samuel Kitchens, declare as follows:

1.       I serve as in-house counsel for Match Group, Inc. ("MGI") and Match Group, LLC ("MGL" and collectively, the "Defendants"), and my title is Director & Senior Counsel of Litigation.

2.       I am over the age of 18 and competent to make this Declaration. The statements contained in this Declaration are based on my personal knowledge, as well as on the information made available to me in my official capacity as Director & Senior Counsel of Litigation for Defendants. If called and sworn as a witness, I would and could testify competently to the matters set forth herein.

3.       This Declaration is being made in support of Defendants' Response to the Plaintiff Federal Trade Commission's ("FTC") Motion for Discovery Sanctions.

4.       From September 2018 to December 2021, Match.com used Quest Archive, a third-party service that advertised itself as interoperable with Microsoft email systems, to automatically archive emails from Microsoft Office 365's cloud-based email system, which Match.com was

DocuSign Envelope ID: D6B548DC-24C4-48E4-A9F3-651D46D1F29E

using at the time for its email system. Quest Archive obtained emails from email accounts on the Microsoft Office 365 server and added those emails to a local archive system, so if those emails needed to be collected and reviewed (such as for litigation purposes), all emails would be archived in and could be collected from a single source. Copies of the emails would also remain on the Microsoft Office 365 server so that they would be viewable by the sender and recipient.

5.      Quest Archive advertised itself as interoperable with Microsoft email systems and is a well-established business, so we had confidence in the interoperability of the systems.

6.      In December 2021, Match.com transitioned from Microsoft Office 365 to Gmail and Gmail's archiving system Google Vault. The emails transitioned to Google Vault did not depend upon the Quest Archive backups; rather, all emails contained in the employees' Microsoft Office 365 mailboxes at the time of transition were migrated to Google Vault. No automatic deletion settings were established for the Microsoft Office 365 mailboxes.

7.      When responding to the FTC's Requests for Production in this case for documents from the pre-December 2021 time period, Defendants collected emails from the Quest Archive, which they believed contained an archive of all documents from that time period. We have collected documents from Quest Archive in other matters without issue in the past.

8.      During the week of July 17, 2023, while reviewing documents for a different matter, I discovered that the volume of emails collected for a particular custodian during an approximately four-week period from April-May 2019 seemed unusually low. Quest Archive had captured some emails from that time period, but the volume was lower than would normally be expected.

9.      In light of this discovery, I immediately directed a privileged investigation into whether Defendants' document collections in this matter had been impacted. In doing so, we

DocuSign Envelope ID: D6B548DC-24C4-48E4-A9F3-651D46D1F29E

collected emails from the April-May 2019 time period at issue from Google Vault (where the Microsoft Office 365 mailboxes had been migrated in December 2021). We discovered that Quest Archive had not captured some responsive emails. We reviewed the previously undiscovered emails and produced them on July 28, 2023.

10.     Our investigation led to the conclusion that Quest Archive had not archived all of the emails as expected due to an unknown technical error involving a connectivity issue between Microsoft Office 365 and Quest Archive. Specifically, the connection between Quest Archive and Microsoft Office 365 was interrupted from April 25, 2019 to May 24, 2019, and, as a result, many emails sent or received during that period were not being transmitted to Quest Archive to be copied and saved. We were unable to determine the precise cause or extent of the connectivity issue, including whether the issue was caused by Microsoft Office 365 or Quest Archive, because data logs from that time period no longer existed.

11.     Due to the connectivity issue between Microsoft Office 365 and Quest Archive, when we initially collected documents from the Quest Archive for review and production in this case, the collection did not capture all of the responsive emails that we had intended to search for. Prior to the discovery of the vendor's technical error, we had no reason to believe that our document collection from Quest Achieve was incomplete.

12.     The connectivity issue was not the result of any act or failure by the Defendants and had nothing to do with this particular case or an intentional impact on Defendants' discovery obligations in this case. To the contrary, it was an issue that affected Match.com's archiving processes generally. When it was discovered in July 2023, we moved quickly to remedy the situation by collecting the documents from Google Vault, reviewing them, and producing them swiftly.

DECLARATION OF SAMUEL KITCHENS                                                                PAGE 3

DocuSign Envelope ID: D6B548DC-24C4-48E4-A9F3-651D46D1F29E

13.     After the July 28, 2023 production, we continued to investigate the connectivity issue by analyzing the Quest Archive emails to determine whether other potential gaps existed in the collection (possibly demonstrating another outage). The investigation revealed periods in February 2020 and October 2021 that were possibly affected by the vendor's technical error. Because of the large overall volume of Defendants' collection and the fact that some (but not all) emails during the affected time periods were captured by Quest Archive (and therefore included in Defendants' previous collection from Quest Archive), these gaps were not obvious and were only identified upon closer inspection. No other time periods from the Quest Archive collection appeared to have an unusually low volume of emails, and so the issue appeared to have been limited to certain week-or-month long outages.

14.     We again immediately collected documents from the affected time periods (this time February 2020 and October 2021) from the alternative source (Google Vault), reviewed them, and supplemented our production on August 7, 2023.

15.     Although our review of the volume of the email collection did not suggest any additional gaps, we investigated the issue further to ensure that the connectivity issue had not impacted other time periods. In order to ensure that there were no other unproduced responsive documents, we ran a comparison of all Google Vault emails for a group of employees for the entire three-year period during which Match.com used Microsoft Office 365's cloud services in conjunction with Quest Archive and compared that Google Vault collection to the collection from Quest Archive over the same timeframe.

16.     This effort was complex and burdensome, because it can be difficult to de-duplicate emails that come from different collection systems, such as Quest Archive versus Google Vault, due to slight differences in metadata between the two. Thus, running a basic

DocuSign Envelope ID: D6B548DC-24C4-48E4-A9F3-651D46D1F29E

exact-match de-duplication process would not accurately determine how many truly unique emails existed between the two archives. One issue in particular that was discovered was that an email might have time and date metadata that was only slightly different between the two archive systems, despite a manual review showing they were the exact same document, and so extra effort was needed to account for that slight metadata issue. These sorts of small technical distinctions created time-consuming difficulties in the de-duplication process necessary for determining whether there were additional emails that were actually impacted by the vendor's technical error. Defendants incurred substantial time and expense to compare email collections over a three-year period, but nevertheless undertook that expense to ensure full and complete compliance with our discovery obligations.

17.     The re-collection revealed the connectivity issue was not solely impacting week or month-long periods as initially suspected, but also impacted short periods that could not be identified from reviewing the volume of documents collected from Quest Archive. Sometimes the connectivity issue affected only a single day or a handful of emails in a day.

18.     Upon verifying, with the assistance of counsel, that the gaps in the prior collection had been identified, we collected the full Google Vault exports for the custodians in this matter for September 2018-December 2021 and isolated the documents that were not present in the prior Quest Archive collections. That process was complete on October 3. With the assistance of outside counsel, we then began review of the newly identified documents to determine whether there were any documents responsive to the FTC's discovery requests. Outside counsel informed the FTC on October 11, 2023 that responsive documents had been found and that we anticipated a forthcoming production. After completing review of the documents, Defendants thereafter

DocuSign Envelope ID: D6B548DC-24C4-48E4-A9F3-651D46D1F29E

supplemented their production on October 25, 2023 with 450 documents that had not previously been produced.

19.     Defendants' October 25 production also contained data regarding subscribers that accepted a save offer during the cancelation flow. Separate from our investigation into the technical error impacting Match.com's emails, Match.com's data analyst realized that some of the save offer transactions were recorded in a separate table of which he was previously unaware, so data previously provided to the FTC during discovery undercounted the number of save offer takers. Defendants produced the additional data to ensure the FTC had a full and accurate record.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 24, 2024.                Signature: _____ *Samuel Kitchens* _____
                                                          FBFDD585538B49E...

DECLARATION OF SAMUEL KITCHENS                                          PAGE 6

**APP 006**

# EXHIBIT  2

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>      Plaintiff,<br><br>  v.<br><br>MATCH GROUP, INC., a corporation, and<br><br>MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>                  Defendants. | Case No. 3:19-cv-02281-K<br><br>**PLAINTIFF'S THIRD AMENDED INITIAL DISCLOSURES** |

Plaintiff, the Federal Trade Commission ("FTC"), pursuant to Federal Rule of Civil Procedure 26(a)(1), and without waiving any privileges, makes the following third amended initial disclosures:

**1.      The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment:**

    a.  Defendants and their current and former principals, officers, directors, managers, employees, agents, and representatives, each of whom Defendants can more readily identify than Plaintiff, and each of whose addresses and telephone numbers Defendants likely have, including, but not limited to, the following:

| Name | Address | Telephone Number | Subject matter (non-exhaustive list) |
|---|---|---|---|
| Dushyant Saraph | Unknown | Unknown | Match.com website features/design; Match.com user interface and experience |
| Marc Atwood | Unknown | Unknown | Match.com website features/design; Match.com user interface and experience; practices described in Counts III-V |
| Ossa Fisher | Unknown | Unknown | Marketing practices; consumer complaints; refunds; policies and procedures |
| Tom Cox | Unknown | Unknown | Ownership and control of Match.com; product analytics; policies and procedures |
| Kate Feller | Unknown | Unknown | Ownership and control of Match.com; customer complaints; policies and procedures; refunds; practices described in Counts III-V |
| Sharmistha Dubey | Unknown | Unknown | Ownership and control of Match.com; Match's policies and procedures; Match revenues; Match Guarantee; autorenewal practices; chargeback |

2

| | | | |
|---|---|---|---|
| | | | practices; resignation flow; practices described in Counts III-V |
| Sireesha Malireddy | Unknown | Unknown | Match.com website features/design; Match.com user interface and experience |
| Sushil Sharma | Unknown | Unknown | Ownership and control of Match.com; Match.com user interface and experience; resignation flow; Match Guarantee |
| Jeff Dawson | Unknown | Unknown | Ownership and control of Match.com; policies and procedures; customer complaints; refunds |
| Sydney Lam | Unknown | Unknown | Ownership and control of Match.com; Match.com user interface and experience; product design; product pricing; policies and procedures; autorenewal practices; membership resignation flow; consumer complaints; chargeback practices; refunds; practices described in Counts III-V |
| Brett Richards | Unknown | Unknown | Product/website design; user |

| | | | |
|---|---|---|---|
| | | | interface; user experience; consumer complaints; Match Guarantee; website analytics; practices described in Counts III-V |
| Poossenjeet Bhattacharya | Unknown | Unknown | Product design; user interface; user experience; consumer complaints; resignation flow; website analytics |
| Pushkar Deshmukh | Unknown | Unknown | Consumer complaints; product design; user interface |
| Adrian Ong | Unknown | Unknown | Ownership and control of Match.com; policies and procedures; customer complaints; customer service; payments and risk analysis; product marketing; chargeback practices; refunds; practices described in Counts III-V |
| Chris Haltiner | Unknown | Unknown | User interface; product design |
| Jim Talbott | Unknown | Unknown | Ownership and control of Match.com; Match Guarantee; fraud on Match.com platform; product design; user interface; autorenewal |

| | | | |
|---|---|---|---|
| | | | practices; membership resignation flow; practices described in Counts III-V. |
| Florian Hottier | Unknown | Unknown | Ownership and control of Match.com; Match Guarantee; policies and procedures; Match.com software design; product analytics; resignation flow; user interface; user experience; autorenewal process; practices described in Counts III-V |
| Jiten Vakharia | Unknown | Unknown | Ownership and control of Match.com; policies and procedures; Match.com software design; product analytics; user interface; user experience; resignation flow; autorenewal practices; practices described in Counts III-V |
| Casey Daniell | Unknown | Unknown | Configuration management and platform design; practices described in Counts III-V |
| Nazair Khan | | | Autorenewal practices; resignation flow; user interface and |

| | | | |
|---|---|---|---|
| | | | design; product design |
| Beth Wilson | Unknown | Unknown | Match Guarantee; customer service and complaints; Match Guarantee; policies and procedures; data analytics; Match's chargeback dispute practices; practices described in Counts III-V |
| Todd Carrico | | | application engineering; user interface and design; product analytics; practices described in Counts III-V |
| Pradeep Shetty | Unknown | Unknown | Policies and procedures; chargeback practices; consumer complaints; practices described in Counts III-V |
| Deen Ibrahim | Unknown | Unknown | Match.com website features/design; quality assurance; Match.com user interface and experience; practices described in Counts III-V. |
| Michele Watson | Unknown | Unknown | Ownership and control of Match.com; Match Guarantee; customer service; Match's chargeback dispute practices; consumer complaints; policies and procedures; |

6

|  |  |  |  |
|---|---|---|---|
|  |  |  | practices described in Counts III-V |
| LaShonda Pero | Unknown | Unknown | Consumer complaints; policies and procedures; customer care; employee training; Match guarantee; autorenewal practices; practices described in Counts III-V |
| Anastasia Burman | Unknown | Unknown | Match Guarantee; policies and procedures; customer care; consumer complaints; policies and procedures. |
| Kris Auderer | Unknown | Unknown | Ownership and control of Match.com; Match Guarantee; customer service; customer complaints; Match's chargeback dispute practices; autorenewal practices; resignation flow; policies and procedures; practices described in Counts III-V |
| Nikki Elliott | Unknown | Unknown | Product design; analytics; user interface |
| Angela Freeborn | Unknown | Unknown | Ownership and control of Match.com; sales and marketing |
| Melissa Clinchy | Unknown | Unknown | Ownership and control of Match.com; |

7

|  |  |  | consumer complaints; policies and procedures; Match Guarantee; autorenewal practices; resignation flow; practices described in Counts III-V |
|---|---|---|---|
| Richard Leopold | Unknown | Unknown | User interface and design; product design |
| Bryan Jewell | Unknown | Unknown | Ownership and control of Match.com; policies and procedures; customer complaints; refunds; practices described in Counts III-V |
| Margaret Ochoa | Unknown | Unknown | Advertising and marketing; Match Guarantee |
| Giridar Tandriv | Unknown | Unknown | Match.com subscription figures; consumer complaints; practices described in Counts III-V |
| Jeff Rosenzweig | Unknown | Unknown | Ownership and control of Match.com; Match Guarantee; customer relationship management software; customer service; product features; website design; advertising and marketing; policies and procedures; Match |

8

| | | | |
|---|---|---|---|
| | | | Guarantee; practices described in Counts III-V |
| Shamika Naik | Unknown | Unknown | Platform communications |
| Laurie Braddock | Unknown | Unknown | Ownership and control of Match.com; role of Match Group Inc. in operating Match.com; Match Guarantee; policies and procedures; consumer chargebacks; autorenewal policies; consumer refunds; consumer complaints; practices described in Counts III-V |
| Rachel Walzl | Unknown | Unknown | Resignation flow; user interface and design |
| Alexis Ferraro | Unknown | Unknown | Advertising and marketing; Match Guarantee |
| Krystal Roloff | Unknown | Unknown | Customer support; consumer complaints; Match Guarantee; chargeback practices; autorenewal practices; practices described in Counts III-V |
| Sam Yagan | Unknown | Unknown | Ownership and control of Match.com; Match Guarantee; autorenewal practices |

9

| Brittany Perez | Unknown | Unknown | Consumer complaints; policies and procedures |
|---|---|---|---|
| Shamika Naik | Unknown | Unknown | Product analytics |
| Girdar Tandriv | Unknown | Unknown | Product analytics; user interface and design |
| Matthew Bartoe | Unknown | Unknown | Platform design; user interface and design; practices described in Counts III-V |
| Ian Purves | Unknown | Unknown | Product analytics; user interface and design; payments and risk; practices described in Counts III-V |
| Amarnath Thombre | Unknown | Unknown | Ownership and control of Match.com; policies and procedures; Match Guarantee; autorenewal practices; consumer complaints; practices described in Counts III-V |
| Andrew Hemmings | Unknown | Unknown | practices described in Counts III-V |
| Matt Knight | Unknown | Unknown | Consumer complaints; application engineering; user interface and design; practices described in Counts III-V |
| Tony Bowari | Unknown | Unknown | Platform design; practices described in Counts III-V |
| Jeff McLure | Unknown | Unknown | Application engineering; |

10

| | | | |
|---|---|---|---|
| | | | practices described in Counts III-V |
| Jennifer Hinkie | Unknown | Unknown | Data analytics; user interface |
| Mandy Ginsberg | Unknown | Unknown | Ownership and control of Match.com; resignation flow; Match Guarantee; consumer complaints; policies and procedures; chargeback practices; autorenewal practices; practices described in Counts III-V |
| Ivan Yong | Unknown | Unknown | Product design; user interface and design |
| Brett Williams | Unknown | Unknown | Match.com website features/design; application engineering; Match.com user interface and experience; consumer complaints; practices described in Counts III-V |
| Charles German | Unknown | Unknown | Ownership and control of Match.com; revenue from practices described in Counts III-V |
| Steven Bailey | Unknown | Unknown | Ownership and control of Match.com; revenue from practices described in Counts III-V; payments between |

| | | | |
|---|---|---|---|
| | | | Match Group Inc. subsidiaries; practices described in Counts III-V. |
| Shonda Pero | Unknown | Unknown | Match Guarantee; customer service; policies and procedures; practices described in Counts III-V. |
| Atin Kulkarni | Unknown | Unknown | Match Guarantee; customer complaints; product analytics |
| Gary Snyder | Unknown | Unknown | Risk analysis; consumer complaints |
| Nikhil Nilakantan | Unknown | Unknown | Product design |
| Dinh Thi Bui | Unknown | Unknown | Resignation flow; autorenewal practices; product design; consumer complaints; user interface |
| Ramanand Reddi | Unknown | Unknown | Product design; user interface; product analytics; user interface and experience |
| Jeremy Ruggaber | Unknown | Unknown | Product design; user interface; consumer complaints; practices described in Counts III-V |
| Atin Kulkarni | Unknown | Unknown | Consumer complaints; Match Guarantee; policies and procedures |
| Rose Phommachanh | Unknown | Unknown | Consumer complaints; Match |

APP 018

| | | | |
|---|---|---|---|
| | | | Guarantee; policies and procedures |
| Garland Frye | Unknown | Unknown | Software engineering; Match web/mobile apps; platform design; user interface |
| Christopher Conner | Unknown | Unknown | Software engineering; web/mobile apps; platform design; user interface |
| Greg Blatt | Unknown | Unknown | Ownership and control of Match.com; resignation flow; Match Guarantee; consumer complaints; policies and procedures; chargeback practices; autorenewal practices; practices described in Counts III-V |
| Leslie Sucur | Unknown | Unknown | Software engineering; web/mobile apps; platform design; user interface |
| Anna Schneider | Unknown | Unknown | Software engineering; web/mobile apps; user interface |
| Alicia Knight | Unknown | Unknown | Marketing and advertising; user interface and design |
| Anthony Fratiani | Unknown | Unknown | User interface and design |
| Cameron Bates | Unknown | Unknown | marketing analytics |
| Jessica Conant | Unknown | Unknown | Autorenewal practices; product development; marketing; |

| | | | |
|---|---|---|---|
| | | | practices described in Count III |
| Judy Li | Unknown | Unknown | Ownership and control of Match.com; Platform fraud; data analytics; platform troubleshooting |
| Stephanie Davis | Unknown | Unknown | Defect reporting; sales and reporting; fraud on platform |
| Francisco Bonilla | Unknown | Unknown | a/b testing; autorenewal practices; chargeback practices; cancellation flow; |
| Dan Badrian | Unknown | Unknown | a/b testing; data mining; user behavior |
| Jessica Johnson | Unknown | Unknown | a/b testing; marketing and advertising; fraud on platform |
| Thiago Costa | Unknown | Unknown | Fraud on platform; autorenewal practices; product development; marketing; practices described in Count III |
| John Rowan | Unknown | Unknown | Password reset issues; marketing emails |
| David Penton | Unknown | Unknown | Account access; account security |
| Vincent Galeraud | Unknown | Unknown | Ownership and control of Match.com; customer service; customer complaints; refunds; policies and procedures |

14

| | | | |
|---|---|---|---|
| Leah Mikulenka | Unknown | Unknown | Chargeback policies; consumer complaints; refunds; policies and procedures; Practices described in Count IV |
| Kendall Arrington | Unknown | Unknown | Projects related to product design; user interface and experience; product data analytics; password flow defects; practices described in Count V. |
| Mark Hattarki | Unknown | Unknown | Projects related to online flow design; user interface and experience; product data analytics; practices described in Count V. |
| Etender Naini | Unknown | Unknown | Projects related to online flow design; user interface and experience; product data analytics; practices described in Count V. |
| Rajitha Koppisetty | Unknown | Unknown | Projects related to online flow design; user interface and experience; product data analytics; practices described in Count V. |
| Craig Bengtson | Unknown | Unknown | Projects related to online flow design; user interface and experience; product data analytics; practices described in Count V. |

15

| | | | |
|---|---|---|---|
| Jay Guerrieri | Unknown | Unknown | Projects related to online flow design; user interface and experience; product data analytics; practices described in Count V. |
| Jon Caine | Unknown | Unknown | Projects related to online flow design; user interface and experience; product data analytics; practices described in Count V. |
| Prabhav Gupta | Unknown | Unknown | Projects related to online flow design; user interface and experience; product data analytics; password flow defects; practices described in Count V. |
| David Penton | Unknown | Unknown | Projects related to online flow design; user interface and experience; product data analytics; password flow defects; practices described in Count V. |
| Suman Reddy | Unknown | Unknown | Projects related to online flow design; user interface and experience; product data analytics; password flow defects; practices described in Count V. |
| Abanish Mishra | Unknown | Unknown | Projects related to online flow design; user interface and experience; product |

16

| | | | |
|---|---|---|---|
| | | | data analytics; practices described in Count V. |
| Anu Gandhi | Unknown | Unknown | Projects related to online flow design; user interface and experience; product data analytics; practices described in Count V. |
| Christi Luu | Unknown | Unknown | Projects related to online flow design; user interface and experience; product data analytics; practices described in Count V. |
| Aman Katiyar | Unknown | Unknown | Projects related to online flow design; user interface and experience; product data analytics; practices described in Count V. |
| Gary Swidler | Unknown | Unknown | Ownership and control of Match.com; resignation flow; Match Guarantee; consumer complaints; policies and procedures; chargeback practices; autorenewal practices; practices described in Counts III-V |
| Jared Sine | Unknown | Unknown | Ownership and control of Match.com; resignation flow; Match Guarantee; consumer |

17

| | | | complaints; policies and procedures; chargeback practices; autorenewal practices; practices described in Counts III-V |
|---|---|---|---|
| Navin Ramachandran | Unknown | Unknown | Ownership and control of Match.com; resignation flow; Match Guarantee; consumer complaints; policies and procedures; chargeback practices; autorenewal practices; practices described in Counts III-V |
| Phil Eigenmann | Unknown | Unknown | Chargeback policies; consumer complaints, policies and procedures, practices described in Count IV. |
| Susan Tam | Unknown | Unknown | Guarantee policies; consumer complaints; policies and procedures; practices described in Count III. |
| Pamela Schulman | Unknown | Unknown | Guarantee policies; policies and procedures; practices described in Count |
| Curt Anderson | Unknown | Unknown | Chargeback policies; consumer complaints; policies and procedures; practices described in Count IV |

18

| Gene Thornton | Unknown | Unknown | Guarantee policies; chargeback policies; consumer complaints; practices described in Count IV. |
|---|---|---|---|
| McKay Hinckley | Unknown | Unknown | Guarantee policies; chargeback policies, consumer complaints; policies and procedures; practices described in Counts III and V. |
| Sydney Yensull | Unknown | Unknown | Guarantee policies, cancellation policies; consumer complaints; policies and procedures; practices described in Counts III and V. |
| Hesam Hosseini | Unknown | Unknown | Ownership and control of Match.com; resignation flow; Match Guarantee; consumer complaints; policies and procedures; chargeback practices; autorenewal practices; practices described in Counts III-V. |
| Michael Dunn | Unknown | Unknown | Ownership and control of Match.com; policies and procedures; chargeback practices; autorenewal practices; practices described in Counts III-V. |

19

b.  Current and former principals, officers, directors, managers, employees, agents, and representatives of any third party that have implemented, executed, evaluated, tested, or created any advertising, marketing, or disclosures relating to Defendants' online dating service Match.com or other Match Group Inc. dating platforms, each of whom Defendants can more readily identify than plaintiff, and each of whose addresses and telephone numbers Defendants likely have, are likely to have information relating to the practices at issue in the complaint;

c.  Current and former principals, officers, directors, managers, employees, agents, and representatives of any third party that have evaluated, analyzed, responded to consumer communications or complaints on Defendants' behalf relating to Defendants' online dating service Match.com or other Match Group Inc. dating platforms, each of whom Defendants can more readily identify than plaintiff, and each of whose addresses and telephone numbers Defendants likely have, are likely to have information relating to the practices at issue in the complaint;

d.  Current and former principals, officers, directors, managers, employees, agents, and representatives of any third party that have implemented, executed, evaluated, tested, or created any billing practices, refund policies or procedures, chargeback policies or procedures, subscription model, or cancellation process relating to Defendants' online dating service Match.com or other Match Group Inc. dating platforms, each of whom Defendants can more readily identify than plaintiff, and each of whose addresses and telephone numbers Defendants likely have, are likely to have information relating to the practices at issue in the complaint;

APP 026

e.   Consumers who subscribed to Match.com and were affected by the practices at issue, including those whose complaints were collected in the FTC's Consumer Sentinel database.

f.   FTC investigators, including investigator Brent McPeek, located at 1999 Bryan St., Ste. 2150, Dallas, Texas 75201, and investigators formerly employed by the FTC, including Matthew Thacker and Taelor Hardesty, who can be reached through FTC counsel.

g.   FTC Senior Data Analyst KimbleAnn C. Verdi, with knowledge of the calculations used to generate the FTC's:

1.   calculation of civil penalties;

2.   estimates of consumer harm and number of harmed users; and

3.   numerical calculations of other data and data compilations produced by Defendants related to matters in this case, including cancellation success rates.

Ms. Verdi can be reached through FTC counsel.

h.   Vice President and Chief Operating Officer of Better Business Bureau Serving North Central Texas ("BBB"), David Beasley, with knowledge of BBB record keeping related to Defendants' business practices, including consumer complaints, analysis of Defendants' business practices, and communication with Defendants about Defendants' business practices.

i.   Former FTC Assistant Regional Director, James Elliott, with knowledge of receipt, processing, and recordkeeping of documents and evidence produced in response to compulsory process and who can be reached through FTC counsel.

     j.    Nicholas Mastrocinque, FTC Consumer Sentinel Manager, with knowledge of receipt, processing, and recordkeeping of consumer complaints within the Consumer Sentinel database. Mr. Mastrocinque can be reached through FTC counsel.

The FTC identifies these individuals based on its investigation of this matter so far. The FTC reserves its right to supplement these disclosures should it learn of other individuals likely to have discoverable information on which it may rely to support its claims.

**2.    A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment:**

The FTC may use documents and information it obtains from Defendants in discovery in this case as well as the following documents currently in its possession, custody, or control to support its claims, all of which are located at 1999 Bryan St. Ste. 2150, Dallas, Texas 75201 or stored electronically on the FTC's server:

    a.    Consumer complaints about Defendants;

    b.    Consumer communications with Defendants;

    c.    Documents related to consumer communications with Defendants;

    d.    Defendants' internal correspondence;

    e.    Defendants' internal analyses and policies regarding complaints, inquiries, compliance, advertising, and marketing;

    f.    Defendants' presentations about complaints, inquiries, compliance, advertising, and marketing;

g.   Defendants' training materials and scripts about complaints, inquiries, compliance, and customer service;

h.   Data and documents relating to the practices at issue in the complaint;

i.   Screenshots, current and historical, of (i) Defendants' website, www.match.com, (ii) websites on which Defendants have advertised, and (iii) websites of other online platforms;

j.   Documents that Defendants have filed with the Securities and Exchange Commission; and

k.   Other documents and information Defendants produced to Plaintiff in response to Plaintiff's March 2017 Civil Investigative Demand to Defendant and other documents or information Defendants submitted to the Commission in connection with Plaintiff's investigation.

The FTC identifies these documents based on its investigation of this matter so far. The FTC reserves its right to supplement these disclosures should it learn of other documents likely to contain discoverable information on which it may rely to support its claims. The FTC further directs Defendants to its responses to discovery requests seeking more specific documents or information.

**3.      A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered:**

APP 029

Section 19(b) of the FTC Act, 15 U.S.C. § 57b(b), authorizes the Commission to seek and the Court to award relief necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from the rule violation or the unfair or deceptive act or practice. This includes the recission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation alleged in Count V. This monetary relief is in addition to injunctive relief on the remaining three counts (Counts III-V), which is authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

As you acknowledged in our August 24, 2022 conference on Match Group, Inc.'s Motion to Compel, the FTC's calculations are dependent on Defendants providing accurate and reliable billing and click-through data regarding users who attempted to cancel their subscription. Moreover, the produced data is current only through December 2022, and the harm is ongoing.

The relevant time period for the consumer injury calculation begins October 2016 and continues to the present day. *See* 15 U.S.C § 57b. The FTC estimates that the total monetary harm attributable to Defendants' failure to provide simple cancellation mechanisms as of December 2022 is $68,607,100.43. The FTC calculates this amount based on the billing data produced in MATCHFTC846516 by totaling the amounts of money Defendants collected from users who exited the cancellation flow and subtracting the amounts that individuals recouped through refunds and chargebacks.

This data also specifies how many users exited the cancellation flow on each particular page of Match.com's online cancellation flow and then identifies the amount of revenue (calculated by autorenewal fees minus refunds and chargebacks) that Defendants later collected

24

from those users through unauthorized renewal fees. The harm on a per-page basis is attributable as follows:[1]

|  |  |
|---|---|
| Password Wall: | $25,228,818.20 |
| Post-Password Wall: | $33,051,378.49[2] |
| First Survey Page: | $3,887,455.88 |
| Save Offer: | $4,936,682.55 |
| Second Survey: | $1,502,765.31 |

In addition to this monetary relief, civil penalties available in this action relate to Defendants' failure to provide a simple method of canceling its recurring charges. The relevant time period for civil penalties begins September 26, 2014, and continues to the present day. *See* 28 U.S.C. § 2462. At the time of this disclosure, civil penalties may be assessed up to $50,120

---

[1] Tens of thousands of individuals did not effectively cancel their membership despite having viewed the cancellation confirmation page. *See* MATCHFTC846519. The FTC has not received updated dollar values of the amount that Defendants collected from these users, and the FTC reserves the right to include these amounts in its calculation of user harm.

[2] Users are presented with two hyperlinks on this page, one that continues the cancellation process and another that sends users to a subscription status page. The FTC has requested, but Defendants have not produced, data related to users that click on the "subscription status" hyperlink. The FTC is willing, and has informed Defendants, that—if Defendants produce the necessary data—it would reduce its calculation of monetary relief by the amount of autorenewal fees net of refunds and chargebacks attributable to users that clicked on the "subscription status" link.

Similarly, if Defendants were to produce this data, the FTC would reduce its estimate of harm attributable to the net autorenewal fees attributable to the Password Wall page by the proportion of users that clicked the "subscription status" link on the Post-Password Wall page. For example, if X% of users that visited the Post-Password Wall page clicked on the hyperlink, the FTC would exclude the net autorenewal fees of those X% of users from its estimate of monetary harm and would also reduce its estimate of harm attributable to the Password Wall page by X%. The FTC reserves the right to update its calculations related to these pages if and when Defendants produce this requested data.

per violation. 15 U.S.C. § 45(m)(1)(A); 16 C.F.R § 1.98. In calculating civil penalties relating to a continuing failure to comply with the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401-8405, "each day of continuance of such failure shall be treated as a separate violation," and "[i]n determining the amount of such civil penalty, the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require." 15 U.S.C. § 45(m)(1)(C). Defendants have violated the ROSCA, since at least September 26, 2014, continuing to the present day—a duration of 3,156 days as of May 18, 2023. Accordingly, and based on the factors described in 15 U.S.C. § 45(m)(1)(C), if the FTC were to seek civil penalties on a per diem basis, it would seek up to $158,178,720 (3,156 days x $50,120 per day) in civil penalties as of the date of this disclosure. The FTC may also seek civil penalties of up to $50,120 for each cancellation attempt. Defendants have produced data showing that users attempted to cancel a subscription 24,727,528 times from October 2014 through March 2023. The FTC reserves the right to update this response if and when Defendants produce additional data.[3] The FTC reserves the right to update these amounts based, among other things, on the continuing nature of Defendants' violation.

---

[3] As described above, if and when Defendants produce the data that would show how many users diverted from the cancellation flow into the subscription status page, the FTC reserves the right to exclude those attempts from its calculation of number of attempted cancellations.

4.      **For inspection and copying as under Rule 34, any insurance agreement**
**under which an insurance business may be liable to satisfy all or part of a possible**
**judgment in the action or to indemnify or reimburse for payments made to satisfy the**
**judgment:**

Plaintiff is not aware of any insurance agreement under which an insurance business may
be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse
for payments made to satisfy a judgment.

Date: June 9, 2023

<u>/s/ Jason C. Moon</u>
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN
JOHN R. O'GORMAN
ERICA ROLLINS HILLIARD
JASON C. MOON
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 2421292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Texas Bar No. 24001188 (Moon)
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
T: (214) 979-9378 (Moon)
Email: rtepfer@ftc.gov; maijaz@ftc.gov;
szuckerman@ftc.gov; jogorman@ftc.gov;
ehilliard@ftc.gov; jmoon@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

I, Jason C. Moon, certify that, on June 9, 2023, I served the foregoing Plaintiff's Third Amended Initial Disclosures by email on the following counsel of record at the email address listed below:

Angela C. Zambrano
angela.zambrano@sidley.com
Chad Hummel
chummel@sidley.com
Sidley Austin LLP

*Attorneys for Defendant Match Group, Inc. and Match Group, LLC*

By: /s/ *Jason C. Moon*

28

# EXHIBIT 3

| | |
|---|---|
| **From:** | Priest, Chelsea A. |
| **Sent:** | Friday, October 13, 2023 5:03 PM |
| **To:** | Tepfer, Reid A. |
| **Cc:** | Hummel, Chad S.; Zambrano, Angela; Mundel, Benjamin; Bragg, Tayler G.; Aijaz, Hasan; Conte, Nicole; Hilliard, Erica; Moon, Jason C; O'Gorman, John; Zuckerman, Sarah |
| **Subject:** | RE: FTC v. Match Group, Inc., et al. |

Hi Reid,

We understand that you want to keep all briefing on schedule, and we are fine with proceeding with the existing briefing schedule.  After the FTC has a chance to review the documents, we will expect to hear from you regarding whether you need to supplement any of your briefings.

Best,
Chelsea

**CHELSEA A. PRIEST**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3476
cpriest@sidley.com

---

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Thursday, October 12, 2023 5:40 PM
**To:** Priest, Chelsea A. <cpriest@sidley.com>
**Cc:** Hummel, Chad S. <chummel@sidley.com>; Zambrano, Angela <angela.zambrano@sidley.com>; Mundel, Benjamin <bmundel@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Conte, Nicole <nconte@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al.

**EXTERNAL EMAIL - Use caution with links and attachments.**

Hi Chelsea,

Thank you for your email. Although we would be open to discussing an extension for the FTC, we can't agree to also extend Defendants' MSJ Briefing deadlines. As I stated yesterday, I do not understand why Defendants' failure to produce responsive documents justifies extending their briefing deadlines. Therefore, we cannot agree to your proposal for a mutual extension. In any case, this proposal would not remedy the fact that the FTC was unable to consider these documents before filing its Motion for Summary Judgment. As such, we intend to reserve our right to supplement our briefing or seek other appropriate relief should the late-disclosed documents merit it.

As I noted on our call, I appreciate your bringing this matter to our attention as soon as you learned of it. However, I must note that this is now the third untimely production due to this technological glitch, and we were led to understand from your prior production letter that this issue had been resolved. *See* Aug. 7, 2023 Ltr.

1

**APP 036**

From Angela Zambrano at 2 ("We understand that this is the last supplemental production based on this technical glitch."). It is my hope that this matter is finally resolved to avoid the potential for additional prejudice to the FTC.

Thanks,
Reid

Reid Tepfer
Attorney
Federal Trade Commission
(202) 677-9483

---

**From:** Priest, Chelsea A. <cpriest@sidley.com>
**Sent:** Wednesday, October 11, 2023 9:14 PM
**To:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Cc:** Hummel, Chad S. <chummel@sidley.com>; Zambrano, Angela <angela.zambrano@sidley.com>; Benjamin Mundel -Contact <bmundel@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Conte, Nicole <nconte@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** RE: FTC v. Match Group, Inc., et al.

Hi Reid,

Just to be clear, we told you that we very recently learned that there were some responsive documents that had not previously been collected due to a technological glitch (our current understanding is that the glitch is related to communication between two document platforms, not switching document platforms). We told you about the existence of responsive documents as soon as we learned about them. And as a courtesy, we offered to extend the briefing deadlines so the FTC would have the opportunity to consider these documents before submitting more briefing.

We have provided the FTC the information we currently have. We told you that we discovered these documents after doing more investigation into the technological glitch that we originally thought affected only a few discrete months, as referenced in production letters to the FTC in July and August. We also told you that we don't yet know the volume of production given that we are still reviewing the documents, but that we expected the volume to be relatively small (probably less than thousands), and that we expect to be able to produce the documents within 2 weeks, at most (but hopefully sooner).

Beyond that, we don't yet have much additional information at this point. If there are specific questions that the FTC would like us to try to prioritize, please let us know. We told you about the responsive documents as soon as we knew about them, before we have all of the answers, so that the FTC could have as much notice as possible.

If the FTC does not want an extension of the briefing schedule to consider these documents, we are fine to proceed with the schedule as is. Please let us know if you would like to discuss any further.

Best,
Chelsea

**CHELSEA A. PRIEST**
Senior Managing Associate

**APP 037**

**SIDLEY AUSTIN LLP**
+1 214 981 3476
cpriest@sidley.com

---

**From:** Tepfer, Reid A. <rtepfer@ftc.gov>
**Sent:** Wednesday, October 11, 2023 4:55 PM
**To:** Priest, Chelsea A. <cpriest@sidley.com>
**Cc:** Hummel, Chad S. <chummel@sidley.com>; Zambrano, Angela <angela.zambrano@sidley.com>; Mundel, Benjamin <bmundel@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Aijaz, Hasan <maijaz@ftc.gov>; Conte, Nicole <nconte@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; O'Gorman, John <jogorman@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>
**Subject:** FTC v. Match Group, Inc., et al.

> **WARNING:  The content of this email including any and all attachments may contain controlled information as described in 32 CFR Part 2002.**

Chelsea,

Thank you for your call this afternoon. I wanted to follow up with you as we discussed. To recap our discussion, you and Chad advised that you had just learned that Defendants had inadvertently failed to produce some amount of documents that are responsive to the FTC's discovery requests. You further advised this issue was due to a technological glitch related to switching document platforms and that it would take no more than two weeks to produce these documents. In light of this, you proposed temporarily suspending the MSJ briefing schedule to permit the FTC to review these documents before responding to the Defendants' MSJ.

We of course find the late disclosure of these responsive documents concerning. But we can't agree to recommend that the Court suspend the MSJ deadlines based on the limited information we have been provided thus far. At this time, we don't know the precise number of documents at issue, what requests they are responsive to, or the general subject matter of the documents. It is also unclear to us how this technological glitch came to light at this late date. Lastly, it is unclear why Defendants' failure to produce these documents would justify suspending the deadline for Defendants to respond to the FTC's MSJ.

We would welcome more information on the above issues to allow us to better assess your proposal. I wanted to note that I may be traveling tomorrow and will therefore have limited availability. However, I and the rest of the team will be available by email.

Thanks,
Reid

Reid Tepfer
Attorney
Federal Trade Commission
(202) 677-9483

**********************************************************************************************

This e-mail is sent by a law firm and may contain information that is privileged or confidential.

3

If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

****************************************************************************************
*********

**APP 039**

# EXHIBIT 4

| | |
|---|---|
| **From:** | O'Gorman, John <jogorman@ftc.gov> |
| **Sent:** | Wednesday, December 27, 2023 6:26 AM |
| **To:** | Priest, Chelsea A. |
| **Cc:** | Zambrano, Angela; Hummel, Chad S.; Mundel, Benjamin; Reeb, Annabeth L; Bragg, Tayler G.; Tepfer, Reid A.; Moon, Jason C; Aijaz, Hasan; Zuckerman, Sarah; Hilliard, Erica; Conte, Nicole |
| **Subject:** | RE: FTC v. Match - Discussion re Late Discovery |

**EXTERNAL EMAIL - Use caution with links and attachments.**

Chelsea,

Thank you for clarifying your position. On this point we are at an impasse. We will go ahead with our motion and note your opposition.

Best,
Jack

---

**From:** Priest, Chelsea A. <cpriest@sidley.com>
**Sent:** Tuesday, December 26, 2023 3:55 PM
**To:** O'Gorman, John <jogorman@ftc.gov>
**Cc:** Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S. <chummel@sidley.com>; Benjamin Mundel - Contact <bmundel@sidley.com>; Reeb, Annabeth L <areeb@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Tepfer, Reid A. <rtepfer@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; Aijaz, Hasan <maijaz@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Conte, Nicole <nconte@ftc.gov>
**Subject:** RE: FTC v. Match - Discussion re Late Discovery

Jack,

On our call we discussed a stipulation that would ensure that if the FTC uses a document, Defendants could respond and address that document, to ensure parity. That's what our proposed stipulation reflects. We would be willing to consider a stipulation that restricts Defendants to responding only to the FTC's use of the specific October 25 Document (i.e., if the FTC uses an October 25 Document, it opens the door only to refuting the purpose of the FTC's use of that document, not other October 25 Documents), but we can't agree that the FTC can introduce a document and Defendants cannot respond (with that witness or with another appropriate witness or another document that explains the document used). If, for example, the FTC asks one witness about an October 25 Document, Defendants need to be able to ask another witness about that same document if necessary. The FTC has not presented any basis to not agree to this commonsense stipulation.

Please let us know if you'd like to discuss.

Best,
Chelsea

**CHELSEA A. PRIEST**
Senior Managing Associate

1

**SIDLEY AUSTIN LLP**
+1 214 981 3476
cpriest@sidley.com

---

**From:** O'Gorman, John <jogorman@ftc.gov>
**Sent:** Tuesday, December 26, 2023 8:22 AM
**To:** Priest, Chelsea A. <cpriest@sidley.com>
**Cc:** Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S. <chummel@sidley.com>; Mundel, Benjamin <bmundel@sidley.com>; Reeb, Annabeth L <areeb@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Tepfer, Reid A. <rtepfer@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; Aijaz, Hasan <maijaz@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Conte, Nicole <nconte@ftc.gov>
**Subject:** RE: FTC v. Match - Discussion re Late Discovery

Chelsea,

Unfortunately, it seems that we are not aligned on our understanding regarding the second provision.

We discussed a stipulation that would permit Defendants to question the same witness where the FTC seeks testimony regarding one of the October 25 documents. I understand your draft to permit Defendants to introduce additional October 25 documents or testimony from additional witnesses if the FTC introduces any October 25 document. If my interpretation was not your intention, please let me know and provide a clarifying draft. Otherwise, your draft as it stands does not provide meaningful relief.

Best,
Jack

---

**From:** Priest, Chelsea A. <cpriest@sidley.com>
**Sent:** Friday, December 22, 2023 9:04 PM
**To:** O'Gorman, John <jogorman@ftc.gov>
**Cc:** Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S. <chummel@sidley.com>; Benjamin Mundel -Contact <bmundel@sidley.com>; Reeb, Annabeth L <areeb@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Tepfer, Reid A. <rtepfer@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; Aijaz, Hasan <maijaz@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Conte, Nicole <nconte@ftc.gov>
**Subject:** RE: FTC v. Match - Discussion re Late Discovery

Jack,

We thought the draft we sent was consistent with what we had discussed on our call earlier this week, so perhaps there is some sort of miscommunication. We're not quite sure what your concern with our draft stipulation is. It would be helpful if you could send us a draft stipulation that you would propose (perhaps redlined against the draft we sent). Then we could have a better understanding of where we disagree, if at all.

Best,
Chelsea

---

**CHELSEA A. PRIEST**
Senior Managing Associate

2

**APP 041**

**SIDLEY AUSTIN LLP**
+1 214 981 3476
cpriest@sidley.com

---

**From:** O'Gorman, John <jogorman@ftc.gov>
**Sent:** Friday, December 22, 2023 11:01 AM
**To:** Priest, Chelsea A. <cpriest@sidley.com>
**Cc:** Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S. <chummel@sidley.com>; Mundel, Benjamin <bmundel@sidley.com>; Reeb, Annabeth L <areeb@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Tepfer, Reid A. <rtepfer@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; Aijaz, Hasan <maijaz@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Conte, Nicole <nconte@ftc.gov>
**Subject:** RE: FTC v. Match - Discussion re Late Discovery

Chelsea,

Thank you for your response. Your proposal is not consistent with the relief we're seeking or our understanding from the call earlier this week. Please let us know whether you are willing to agree to what we proposed in my Tuesday email below, or if you have specific edits to that language, by 5pm Tuesday. Otherwise, we will plan to move ahead with our motion for sanctions.

Best wishes for the holiday weekend
Jack

---

**From:** Priest, Chelsea A. <cpriest@sidley.com>
**Sent:** Thursday, December 21, 2023 11:42 AM
**To:** O'Gorman, John <jogorman@ftc.gov>
**Cc:** Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S. <chummel@sidley.com>; Benjamin Mundel -Contact <bmundel@sidley.com>; Reeb, Annabeth L <areeb@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Tepfer, Reid A. <rtepfer@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; Aijaz, Hasan <maijaz@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Conte, Nicole <nconte@ftc.gov>
**Subject:** RE: FTC v. Match - Discussion re Late Discovery

Jack,

Thanks for your email.

As discussed on our call, even though we disagree that there is any basis for sanctions, we are willing to discuss a stipulation regarding use of the documents produced on October 25. Defendants will agree not to introduce or rely on the documents produced on October 25 or testimony about those documents. However, if the FTC uses any of those documents (through witness testimony or otherwise), Defendants need to have the right to respond.

We have put together the language for a stipulation for you to consider and have attached it here.

3

**APP 042**

As for logistics, if we can reach agreement on a stipulation, we don't think it needs to be filed with the Court. It is equivalent to a discovery agreement, which we typically have not filed with the Court (e.g., extensions of time to respond to discovery). Let us know if you have any edits to the proposed language.

Best,
Chelsea


**CHELSEA A. PRIEST**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3476
cpriest@sidley.com

---

**From:** O'Gorman, John <jogorman@ftc.gov>
**Sent:** Tuesday, December 19, 2023 9:18 AM
**To:** Priest, Chelsea A. <cpriest@sidley.com>
**Cc:** Zambrano, Angela <angela.zambrano@sidley.com>; Hummel, Chad S. <chummel@sidley.com>; Mundel, Benjamin <bmundel@sidley.com>; Reeb, Annabeth L <areeb@sidley.com>; Bragg, Tayler G. <tbragg@sidley.com>; Tepfer, Reid A. <rtepfer@ftc.gov>; Moon, Jason C <jmoon@ftc.gov>; Aijaz, Hasan <maijaz@ftc.gov>; Zuckerman, Sarah <szuckerman@ftc.gov>; Hilliard, Erica <ehilliard@ftc.gov>; Conte, Nicole <nconte@ftc.gov>
**Subject:** RE: FTC v. Match - Discussion re Late Discovery

Counsel,

Thank you for your time discussing our intended motion for discovery sanctions and for your willingness to consider a stipulation as an alternative means to address your late October 25, 2023 discovery production.

Based on our conversation, in lieu of our motion for sanctions, we would consider agreeing to a stipulation that would:
- Prohibit Defendants from introducing or relying on materials contained in the October 25 production in this litigation; and
- Prohibit Defendants from introducing additional witness testimony or documents in this litigation to rebut or explain materials contained in the October 25 production. However, if the FTC introduces a document from the late production through witness testimony, Defendants may question the same witness regarding that document.

If this is agreeable, we would prefer to resolve this issue through a joint stipulation. However, if filing a joint stipulation by the end of the week is not feasible, we can file our motion with a proposed order containing the same relief and Defendants can file stating that they don't oppose.

Best,
Jack

_____

**John R. O'Gorman**
Attorney, Southwest Region

4

Federal Trade Commission
1999 Bryan St., Suite 2150
Dallas, TX 75201
202-758-7704

-----Original Appointment-----
**From:** O'Gorman, John
**Sent:** Friday, December 15, 2023 4:50 PM
**To:** O'Gorman, John; Priest, Chelsea A.
**Cc:** Zambrano, Angela; Hummel, Chad S.; Benjamin Mundel -Contact; Reeb, Annabeth L; Bragg, Tayler G.; Tepfer, Reid A.; Moon, Jason C; Aijaz, Hasan; Zuckerman, Sarah; Hilliard, Erica; Conte, Nicole
**Subject:** FTC v. Match - Discussion re Late Discovery
**When:** Monday, December 18, 2023 10:00 AM-10:30 AM (UTC-06:00) Central Time (US & Canada).
**Where:** https://ftc.zoomgov.com/j/1618212051?pwd=T3ZqaFF2czdySTcvT2E2T2E2UkZkQT09


Jack O'Gorman (FTC) is inviting you to a scheduled ZoomGov meeting.

Join ZoomGov Meeting
https://ftc.zoomgov.com/j/1618212051?pwd=T3ZqaFF2czdySTcvT2E2T2E2UkZkQT09

Meeting ID: 161 821 2051
Passcode: 721867

---

One tap mobile
+16692545252,,1618212051# US (San Jose)
+16469641167,,1618212051# US (US Spanish Line)

---

Dial by your location
• +1 669 254 5252 US (San Jose)
• +1 646 964 1167 US (US Spanish Line)
• +1 646 828 7666 US (New York)
• +1 415 449 4000 US (US Spanish Line)
• +1 551 285 1373 US (New Jersey)
• +1 669 216 1590 US (San Jose)

Meeting ID: 161 821 2051

Find your local number: https://ftc.zoomgov.com/u/adYYH18JZ



*********************************************************************************
***************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.

If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**APP 045**