UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>MATCH GROUP, INC., a corporation, MATCH GROUP, LLC, formerly known as MATCH.COM, LLC, a limited liability company,<br><br>    Defendants. | Case No. 3:19-cv-02281-K<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR DISCOVERY SANCTIONS** |

Plaintiff Federal Trade Commission ("FTC") files this supplemental brief in support of its Motion for Discovery Sanctions against Defendants Match Group, Inc. and Match Group, LLC ("Defendants" or "Match") pursuant to the Court's Order.[1] As discussed below, nothing has mitigated the prejudice Match caused by producing critical documents nearly a year-and-a-half late and after the Commission had filed its motion for summary judgment, and new relevant authority supports the FTC's request for relief.

I.    **No intervening facts have mitigated the prejudice Match caused.**

Court intervention remains necessary to address the prejudice caused by Match's untimely production. Match made this untimely production well after the close of discovery and after the FTC had filed its motion for summary judgment and its opposition to Defendants' motion for summary judgment.[2]

---

[1] *See* Doc. 292.

[2] *See* Doc. 246-2 at 77 and 88 (Reply APP 4982 and 4993); *see also* Doc. 269 at 6 (noting that the technological problem responsible for the late production was first discovered "[d]uring the week of July 17, 2023"); Doc. 178 (Amended Scheduling Order); Doc. 217 (Order modifying MSJ Opposition and Reply deadlines).

1

Defendants blame this untimely production on a "technological glitch" that they had known about but failed to adequately address.³ Prior to the close of discovery, Defendants had represented to the FTC that they had fixed their technological issues that had led to previous late productions, but they had not.⁴ After making this representation, Defendants stated they learned—on some undisclosed date—that they had failed to produce additional responsive documents, including documents responsive to requests served nearly a year-and-a-half earlier.⁵ On October 11, 2023, Match disclosed to the FTC that it had failed to produce these documents.⁶ Then, on October 25, 2023—after discovery had closed and both the summary judgment and opposition filing deadlines had passed—Defendants made their *third* untimely production due to the same lingering technological issue, this time with critical documents undermining their central defenses.

Defendants' late-produced documents are central to this case. Defendants have argued at MSJ that their employees "did *not* design the [cancellation] flow to be difficult, as 'that would be a very dumb business decision.'"⁷ Yet the late-produced documents show employees making that exact decision: "we spent mid-may [sic] through July making it harder to cancel with small changes."⁸ Defendants further produced documents showing that executives at the highest

---

³ *See id.* at 85 and 88 (Reply APP 4991 and 4993).

⁴ *See* Doc. 246-2 at 86 (Reply APP 4991) (stating, on August 7, 2023, "[w]e understand that this is the last supplemental production based on this technical glitch").

⁵ *See, e.g.*, Doc. 141 at 124-25 (requesting, in June 2022, "All documents related to any change or contemplated change to any means of subscription cancellation available to Customers to Customers' efforts to cancel their subscriptions to Match.com," "All Documents, including internal and third-party studies or audits, relating to Customers' efforts to cancel their subscriptions to Match.com," and "All Documents relating to the policies and practices of the Company, Match.com . . . regarding . . . account cancellation").

⁶ *See* Doc. 246-2 at 88-89 (Reply APP 4993-94).

⁷ *See* Doc. 238 at 34.

⁸ *See* Doc. 246-2 at 5 (Reply APP 4910).

level—including the CEO of Match.com—were updated about these illegal efforts.[9] In their Objection, Defendants try to minimize these documents with various transparent excuses and explanations.[10] Ironically, these efforts merely underscore the prejudice the FTC faces. The FTC must leave untested until trial all of Defendants' claims about these new documents, which Defendants present for the first time in their Objection.

The prejudice here is glaring. The FTC did not have the benefit of important documents for the entire discovery period. With discovery closed, the FTC has been unable to mitigate this prejudice itself with additional discovery. In any case, additional discovery would unfairly impose significant costs on the FTC and potentially further postpone the resolution of a case that has been pending since 2019. As it stands, the FTC will be forced to ask questions about some of the most important documents in this case for the first time at trial.

Unrelated to their technological glitch, Match has made an untimely production of new clickthrough data concerning consumers' efforts to cancel their Match.com subscription. Defendants provide little explanation for this late production. Match failed to identify when or how they discovered this new data, which they produced on the same day as their other late-disclosed evidence.[11] Although the data was updated in a manner that potentially limits Match's monetary liability, Match claims to have produced the data merely "to ensure that the FTC had an accurate record."[12]

---

[9] *See id.* at 7 (Reply APP 4912).

[10] *See* Doc. 268 at 19-20 (claiming the documents did not constitute evidence of a "plan" from Match employees to make cancellation not simple but were merely "speculation" from an employee "not on the team responsible for making decisions about the site").

[11] *See* Doc. 246-2 at 77 (Reply App 4982).

[12] *See* Doc. 268 at 7-8 n.1.

## II. New authority bolsters the FTC's request for sanctions.

In the intervening months, federal courts in this circuit and across the country have issued orders confirming that discovery sanctions are merited to address conduct like Defendants'. As discussed below, these rulings show Defendants are wrong on the law: the Court can and should address the prejudice Defendants caused with their unconscionably late production of critical documents.

In their Opposition, Defendants incorrectly contend the FTC must show that Defendants' late disclosure resulted from "willful disobedience or gross indifference."[13] Defendants are wrong about both the standard and the party who must satisfy it. In *Taft v. Target Corp.*, the court considered a motion to exclude late disclosed evidence under Rule 37(c)(1).[14] The court observed that "once the party seeking enforcement under Rule 37 shows that the opposing party failed to timely disclose, 'Rule 37(c)(1) implicitly places the burden on the party facing sanctions to prove harmlessness or substantial justification.'"[15] Accordingly, it is Defendants who bear a burden, and they must show their error was harmless or substantially justified.

Defendants have not satisfied their burden. Defendants' late production was unquestionably harmful. And Defendants failed to justify this late production, their third resulting from a known technological issue. Indeed, Defendants barely even attempt to satisfy their burden as to their late-disclosed clickthrough data.[16] On that issue, Match provides only the conclusory statement that their data analyst discovered—again on some unspecified date—that they had failed to produce this data. How and when was this discovered? And why not before?

---

[13] *See id.* at 14.

[14] No. 4:21-cv-02946, 2024 U.S. Dist. LEXIS 51095 (S.D. Tex. Mar. 22, 2024).

[15] *See id.*; *see also La Unión del Pueblo Entero v. Abbott*, 5:21-CV-0844, 2024 U.S. Dist. LEXIS 179340, *33 (W.D. Tex., Apr. 29, 2024).

[16] *See* Doc. 269 at 10, ¶19.

Defendants leave the Court to guess. Recent authority confirms such conclusory statements do not amount to substantial justification.[17]

Recent decisions also further confirm that the FTC has requested the least severe sanctions appropriate for addressing this prejudice. The Court has broad discretion in fashioning an appropriate remedy specific to the facts of this case.[18] A continuance or additional discovery would be an inadequate remedy given this case's procedural history. In *Taft*, the Court held that "continuance won't cure this prejudice in meaningful respect," noting that "[t]his case has been pending for nearly two and a half years" and this evidence was disclosed "five months *after* the close of discovery" with "Motion practice [] concluded." The Court held that exclusion was appropriate because "[c]ontinuance at this stage would intolerably increase costs on both parties." Similarly, the *Putnam* court concluded that reopening fact discovery would be an inappropriate remedy to address late disclosure given that the case was "already almost four years old."[19]

---

[17] *See Putnam v. Caramelcrisp LLC*, No. 20 C 2074, 2024 U.S. Dist. LEXIS 9213, **8-10 (N.D. Ill., Jan. 18, 2024) ("The defendant's explanation of what it did is cursory to the point of being insouciant. . . . Moreover, 'when' is the question[.] . . . When *did* the defendant find the documents? . . . And, why didn't the defendant find these documents a year ago when it was supposedly conducting reasonable searches for them? . . . [T]he defendant's tale is cursory, leaves out all the details, and leaves out the entire timeline. When documents are produced more than year late - not a few weeks or even a few months - a sketchy, purely self-serving explanation does not suffice! The later the documents are produced, the better the explanation should be. Combining that along with the other factors, exclusion is appropriate in this case.").

[18] *See O'Connor v. Allied Trust Ins. Co.*, No. 23-cv-218, 2024 U.S. Dist. LEXIS 51116, *2 (W.D. La. Mar., Mar. 22, 2024) ("A district court has broad discretion in all discovery matters, including fashioning the appropriate remedy for a Rule 26(e) violation under Rule 37(c). Discovery sanctions under Rule 37 are flexible and, within reason, may be applied in as many or varied forms as the Court desires by exercising broad discretion in light of the facts of each case.") (cleaned up).

[19] *See Putnam*, 2024 U.S. Dist. LEXIS 9213, at *7 ("Most importantly, however - and in keeping with the defendant being unapologetic - the defendant simply assumes that discovery would be reopened because it didn't locate and produce documents it calls relevant [] a year earlier. That's a bold and faulty assumption. . . . Late disclosure is not harmless simply because there is time to reopen discovery before trial. And, additional discovery - and perhaps, additional discovery disputes - long after the deadline does not 'curtail undue delay and expense in the administration of justice.'") (citations omitted).

Here, this case has been pending since 2019. The FTC has engaged in years of discovery, conducting numerous depositions, all without the benefit of central evidence. Even more importantly, this case seeks to enjoin ongoing consumer harm. Therefore, postponing trial further would not just inconvenience the FTC, it would result in additional consumer injury. The Court can and should award relief that addresses Defendants' negligence without imposing substantial costs on the FTC or further postponing trial, which could potentially increase harm to consumers. Defendants' late-produced documents speak for themselves. The Court should therefore preclude Defendants from benefitting from their late production by presenting testimony on these documents for the first time at trial.

### III.  Conclusion

As discussed above, recent authority confirms that the Court has the authority to address Defendants' egregiously late production of important evidence. Because nothing has mitigated this prejudice since the filing of its Motion, the FTC respectfully requests that the Court grant its request for narrowly tailored relief needed to address Defendants' conduct.

Respectfully submitted,

Dated: October 25, 2024

/s/ Reid Tepfer
REID TEPFER
M. HASAN AIJAZ
SARAH ZUCKERMAN (admitted *pro hac vice*)
JOHN R. O'GORMAN (admitted *pro hac vice*)
ERICA R. HILLIARD
JASON MOON
NICOLE G. H. CONTE (admitted *pro hac vice*)
Texas Bar No. 24079444 (Tepfer)
Virginia Bar No. 80073 (Aijaz)
New York Bar No. 5603832 (Zuckerman)
Texas Bar No. 24121292 (O'Gorman)
Mississippi Bar No. 104244 (Hilliard)
Texas Bar No. 24001188 (Moon)
Virginia Bar No. 91552 (Conte)
Federal Trade Commission

        1999 Bryan St. Ste. 2150
Dallas, Texas 75201
T: (214) 979-9395 (Tepfer)
T: (214) 979-9386 (Aijaz)
T: (214) 979-9376 (Zuckerman)
T: (214) 979-9382 (O'Gorman)
T: (214) 979-9379 (Hilliard)
T: (214) 979-9378 (Moon)
T: (202) 285-0062 (Conte)
F: (214) 953-3079
Email: rtepfer@ftc.gov;
maijaz@ftc.gov;
szuckerman@ftc.gov;
jogorman@ftc.gov;
ehilliard@ftc.gov;
jmoon@ftc.gov;
nconte@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

On October 25, 2024, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ REID TEPFER*
REID TEPFER

7