IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, § | | |
| Plaintiff, § | | |
| § | | |
| V. § | | No. 3:19-CV-2281-K |
| § | | |
| MATCH GROUP, INC., § | | |
| Defendant. § | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Federal Trade Commission's ("FTC") Motion for Sanctions Regarding Discovery (Dkt. No. 263 ("Mot.")), which U.S. District Judge Ed Kinkeade referred to the undersigned magistrate judge for hearing, if necessary, and determination (Dkt. No. 295). Defendant Match Group, Inc. has responded (Dkt. No. 268 ("Resp.")), and the FTC filed a reply (Dkt. No. 271 ("Reply")). On the Court's invitation, the parties filed supplemental briefs, (Dkt. Nos. 293, 294), and the Court conducted a hearing on December 19, 2024. (*See* Dkt. No. 297.)

For reasons explained below, the Court concludes that the FTC's motion should be **GRANTED** but imposes sanctions different from those requested.

**I. BACKGROUND**

Plaintiff FTC filed this action against Match Group alleging, among other things, that Match Group's online dating service, Match.com, employed unfair practices to induce subscriptions and constructed confusing or cumbersome processes to hinder cancelations. (*See* Dkt. No. 1.) The discovery period ended on July 28,

2023. (*See* Dkt. No. 178 ¶ 8.) Both parties filed motions for summary judgment that are pending before Judge Kinkeade. (*See* Dkt. Nos. 198, 203.)

Three months after the discovery period closed, Match Group provided additional materials to the FTC consisting of emails that had not been previously disclosed. Match Group acknowledges that the discovery was responsive to the FTC's requests and states that its failure to produce the material during the discovery period was the result of a technological glitch that it discovered in the final days of the discovery period.

Match Group has explained in defending against the FTC's motion that, between September 2018 and December 2021, the company used Microsoft Office 365 for operations and preserved files using a third-party archiving vendor that advertised its interoperability with the Microsoft platform. (Resp. at 4.) Match Group used this archival system to collect documents for this litigation and other matters. When there were only a couple of weeks remaining in the discovery period, a Match Group employee discovered while working on a different matter that a collection of documents from the archival system returned an unexpectedly low volume. (Dkt. No. 269 ("Def. App.") at 2.) Match Group initiated an investigation into the apparent anomaly to assess whether its responses in this action might have been impacted and learned that the archival system had left pockets of custodians and time periods uncaptured. Match Group then accessed a different backup system to identify any responsive documents that had been missed by the archival system.

(*Id.* at 3-4.) Doing so, it found and produced 37 additional documents to the FTC on August 7, 2023, and 450 additional documents on October 25, 2023.

Of these two post-discovery-period productions, Match Group's larger and more belated one occurred after the FTC had filed its motion for summary judgment. As a result, Match Group did not oppose the FTC's request for extension of its page limits on the reply brief and agreed that the FTC could use the late-produced documents in an appendix to the reply (*see* Dkt. No. 245), which typically is not allowed by court rules. *See Pem-Air Turbine Engine Servs. LLC v. Gupta*, No. 3:21-CV-180-L-BN, 2024 WL 1317798, at *16 (N.D. Tex. Mar. 27, 2024) ("[T]he Local Civil Rules on summary judgment do not permit a party to submit additional evidence with a reply brief as of right.").

The FTC now moves for sanctions against Match Group based on the late productions. According to the FTC, some of the documents contained in those productions are "central" to its claims and powerfully demonstrate that Match Group employed tactics making it more difficult for subscribers to cancel their membership. (*See* Mot. at 6; Dkt. No. 293 at 2.) The FTC contends that sanctions are particularly justified because Match Group previously blamed a technological glitch for a delayed production and assured the FTC that it had addressed the issue. As for an appropriate sanction, the FTC proposes that the Court prohibit Match Group from using the late-produced documents at trial, either affirmatively or in response to the FTC's use of them.

## II. LEGAL STANDARDS

The FTC moves for sanctions under Fed. R. Civ. P. 37(d)(1)(A)(ii), Fed. R. Civ. P. 37(c)(1), and Fed. R. Civ. P. 16(f)(1)(C).  (Mot. at 3.)  Rule 37(d)(1)(A)(i) permits sanctions when a party properly served with a request for production under Rule 34 fails to serve its answers.

Rule 37(c)(1) authorizes sanctions where a party "fails to provide information" as required by Rule 26(a) or (e), "unless the failure was substantially justified or is harmless."  *See Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 205 (5th Cir. 2016) ("[A] party is subject to sanctions under Rule 37(c)(1) if the party fails to provide information or identify a witness as required by Rule 26(a) or (e), . . . unless the failure was substantially justified or is harmless.").

"When a party moves for sanctions because the opposing party has failed to timely disclose or supplement its disclosures [or responses or answers], courts turn to Rule 37 to determine if sanctions are warranted."  *Pem-Air Turbine Engine Servs. LLC v. Gupta*, No. 3:21-CV-180-L-BN, 2024 WL 758561, at *2 (N.D. Tex. Feb. 22, 2024) (quoting *Fuller v. CIG Fin., LLC*, No. 3:22-CV-1289-D, 2023 WL 8482889, at *3 (N.D. Tex. Dec. 7, 2023)).  "The most basic sanction" is exclusion of the information, "[b]ut a court can impose other sanctions."  *Fuller*, 2023 WL 8482889, at 3.  "The disclosing (or late disclosing) party bears the burden of proving the failure to timely disclose was substantially justified or harmless."  *Pem-Air Turbine Engine*

*Services LLC*, 2024 WL 758561, at *3 (quoting *Lopez v. Fun Eats & Drinks, LLC*, No. 3:18-CV-1091-X, 2021 WL 3502361, at *4 (N.D. Tex. July 16, 2021)).

"Substantial justification for the failure to make a required disclosure has been regarded as justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure [obligation]." *Olivarez*, 844 F.3d at 205 (quoting *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 n.23 (3d Cir. 2009)); *see also Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015) (describing substantial justification as "not justified to a high degree, but . . . justified to a degree that could satisfy a reasonable person"). A "decision to refrain from disclosing the information must have had a 'reasonable basis both in law and fact.'" *Olivarez*, 844 F.3d at 205 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Courts evaluate whether a violation of Rule 26 is harmless by holistically examining four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Fuller*, 2023 WL 8482889, at *3 (quoting *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2013 WL 81578, at *2 (N.D. Tex. Jan. 8, 2013)); *see also Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

Fed. R. Civ. P. 16(f)(1)(C) authorizes sanctions if a party or attorney "fails to obey a scheduling or other pretrial order." "The Court has broad discretion in

formulating sanctions for a violation of its scheduling or pretrial orders." *Westbrook v. Dallas Cnty., Texas*, No. 3:16-CV-1802-B, 2017 WL 2504994, at *4 (N.D. Tex. June 9, 2017) (citing *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996)). Sanctions under this Rule 16(f)(1), when imposed, should involve remedies tailored to the violation. *See id.*

Sanctions under Rule 16(f)(1) do not require proof that the party acted willfully, intentionally, or in bad faith. *Id.* at *5. "The fact that a pretrial order was violated is sufficient to allow some sanction, as Rule 16(f)'s text itself makes this clear." *Id.* In addition to or instead of any discretionary sanction, Rule 16(f)(2) states that a court "must" order the party to pay reasonable expenses incurred because of the noncompliance with the rule, "unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

### III.  ANALYSIS

**A.    Rule 37(d)(1)(A)(ii) does not apply to the circumstances present here.**

The FTC argues that sanctions are appropriate under Fed. R. Civ. P. 37(d)(1)(A)(ii). (*See* Mot. at 3.)  That provision permits a court to order sanctions when a party "properly served with . . . a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). That provision does not concern a tardy production such as the one at issue; it is instead used to address a complete failure to provide any response to discovery at all. *See TBC-JP-LR, JV v. Allied Prop. & Cas. Ins. Co.*, No. 4:17-CV-131-Y, 2018 WL

10563033, at *7 (N.D. Tex. Sept. 10, 2018) ("Rule 37(d)(1)(A)(ii) permits sanctions if a party wholly fails to serve answers or objections to interrogatories."); *Nguyen v. Louisiana State Bd. of Cosmetology*, No. CV 14-80-BAJ-RLB, 2016 WL 67731, at *6 (M.D. La. Jan. 5, 2016) ("Rule 37(d) only applies where a party completely fails to serve any response." (citing Fed. R. Civ. P. 37(d) advisory committee's note to 1970 amendment)). Because the FTC's motion seeks sanctions for a late production rather than a complete failure to respond to discovery requests, Rule 37(d)(1)(A)(ii) does not apply here.

**B.    Exclusion under Rule 37(c)(1) is not available because Match Group establishes substantial justification for its failure to timely disclose the documents.**

Match Group seeks to avoid sanctions under Rule 37(c)(1) first by arguing that the timing of its production was "substantially justified." (*See* Resp. at 12-15.) In doing so, Match Group does not suggest that it made a decision to withhold the documents and that its decision was substantially justified. Indeed, its position consistently has been that its failure to timely disclose the document was a software oversight and not the result of a decision at all. (*See* Resp. at 12 (disputing that it "withheld anything").) In this way, Match Group suggests that it is its reliance on the archival system that is substantially justified rather than a considered decision not to produce the documents. (*See* Resp. at 12-15.)

Match Group's argument requires the Court to first consider whether substantial justification can be established in this way. At least in the Fifth Circuit,

substantial justification for a discovery failure typically is tied to a decision not to provide discovery. *See Olivarez*, 844 F.3d at 205 (referencing the "attorney's *decision* to refrain from disclosing" (emphasis added)); *see also, e.g.*, *Turner v. Home Depot, Inc.*, No. 6:18-CV-509-JCB-KNM, 2019 WL 13253386, at *3–4 (E.D. Tex. Aug. 1, 2019) (assessing whether party was substantially justified in its decision not to present a witness at deposition).

The text of Rule 37(c)(1) does not expressly require that a *decision* to withhold production be substantially justified. Rather, the rule simply states that the failure to produce must be substantially justified. And courts elsewhere have found substantial justification where a failure to produce resulted from circumstances not involving a deliberate decision to withhold information. *See, e.g.*, *Merriweather v. Marion Cnty. Sheriff*, No. 1:02-CV-01881-SEB-VS, 2004 WL 1234119, at *3 (S.D. Ind. May 13, 2004) (finding substantial justification for a sheriff's delayed production based on hindrances "outside of his control," such as outmoded computer technology, changing discovery policy set by a new sheriff, and a lack of personnel to "sort through the voluminous incident reports").

Even though Match Group did not make a considered decision not to produce the documents during the discovery period, the Court concludes that Rule 37(c)(1) allows the company to avoid exclusion by showing that its failure to produce was substantially justified. Here, Match Group asserts that it reasonably relied on the archival system to collect documents for production, and the Court agrees. Match

-8-

Group represents that it produced more than 300,000 documents in this case during the discovery period, (Resp. at 4), and it relied on an archival system marketed as interoperable with the company's Microsoft system. It apparently used that system, as intended, to collect documents for this case and other matters without any perceived problems prior to July 2023. There has not been evidence presented indicating that Match Group was unreasonable in relying on the archival system that was designed to create a complete warehouse of the company's electronic documents.

The FTC argues that Match Group's position is not substantially justified because the company encountered prior production delays, blamed them on technical issues, and assured the FTC that the problems had been resolved. Thus, it contends, "these issues were well known and poorly addressed." (*See* Reply at 4.) At the hearing, however, Match Group explained how those prior delays were caused by a wholly different issue experienced by a third-party discovery processor and were unrelated to the archival system's failure to capture limited pockets of data. The prior technical issues to which the FTC refers, therefore, did not give Match Group reason to question the reliability of the archival system.

In concluding that Match Group's reliance on the archival system was substantially justified, the Court emphasizes the company's reasonableness and diligence in fulfilling its discovery obligations in connection and remediation of the problem once it was detected. This is not a case in which Match Group

unreasonably relied on a system to perform a function for which it was not intended or was ill-suited, nor was Match Group derelict in ensuring that its obligations were fulfilled. *Cf. Sun River Energy, Inc.*, 800 F.3d at 1228–29 (rejecting counsel's argument that he was substantially justified in failing to produce discovery where counsel assumed someone else had assessed discovery and "practical[ly] abdicate[d]" his duty to oversee and inquire about the adequacy of discovery). As noted above, it relied on a software package that was advertised as interoperable with the company's operating system and used that software without any apparent problems. Upon first detecting a issue with the system (while working on a different matter), Match Group promptly assessed its impact on this case and acted to retrieve any missing documents from an alternative source. Based on these particular circumstances, the Court concludes that Match Group has shown that its reliance on what was reasonably believed to be a comprehensive archival system—and thus its failure to timely produce the documents—was "justified to a degree that could satisfy a reasonable person." *See id.* at 1227 (quoting *Pierce*, 487 U.S. at 565).

Having found that Match Group's failure was substantially justified by its reasonable reliance on the archival system, the Court concludes that Match Group is not subject to sanctions under Rule 37(c)(1), and the Court need not address under that rule whether the failure to timely produce was also harmless. *See Olivarez*, 844 F.3d at 203 (noting a party's exposure to sanctions for failure to provide information "unless the failure is substantially justified *or* harmless" (emphasis added)).

## C.     Sanctions are appropriate under Rule 16(f)(1).

The Court next turns to whether sanctions are appropriate under Rule 16(f)(1). Match Group acknowledges that it failed to produce documents until after its deadline to do so. That is sufficient to find a violation. *See Westbrook*, 2017 WL 2504994, at *5. To exercise its discretion whether to impose sanctions, the Court consults the four harmlessness factors engaged in connection with sanction under Rule 37(c)(1). *See Matthews v. Weeks Marine, Inc.*, No. CV 15-1658, 2016 WL 1545645, at *2 (E.D. La. Apr. 15, 2016).

The first factor concerns the importance of the evidence. *Fuller*, 2023 WL 8482889, at *3. The FTC characterizes the documents produced late as "key evidence" that was "central" to its case (Mot. at 5), and it points to specific documents filed with its summary judgment reply that it believes show that Match Group knew it needed to make its cancelation procedures easier but did the opposite, (Mot. at 6 (citing Dkt. No. 246-2 at 5, 33)). The Court has reviewed these documents and concludes that some of them are particularly relevant to the FTC's claim that Match Group constructed hurdles to subscribers' efforts to cancel. The Court also considers, though, that the late production involved fewer than 500 documents in a production that encompassed more than 300,000. The FTC received substantial evidence during discovery that it believes strongly proves its claims, as demonstrated by its confidence in its pending motion for summary judgment. While the late documents are probative and generally might be helpful to the FTC's efforts

to prove its claims, they do not significantly advance the agency's case further than it already appears to be.

The second factor considers prejudice to the FTC. *See Fuller*, 2023 WL 8482889, at *3. The agency argues that it has been prejudiced in two ways. First, it contends that it was prejudiced at the summary judgment stage when it was unable to use the documents in its opening brief. Instead, the agency contends, the new evidence was relegated to the reply, preventing it from making the best possible use of the documents. The Court does not perceive significant prejudice in this respect. The FTC was allowed to use the documents in support an overlong reply brief, and it has not explained how the summary judgment argument it presented would have been materially improved had it been able to use the late-produced documents in its opening brief. Additionally, the FTC has not persuasively explained how the presence of a genuine issue of material fact is more or less likely to be found because the evidence was used in reply instead of in the opening brief.

Second, the FTC argues that it has been prejudiced in its trial preparation. According to the agency, had Match Group timely produced the documents during the discovery period, it would have asked certain deponents different or additional questions or might have selected other witnesses to depose.[1] Because it received the documents after the discovery deadline, it will have to question witnesses on these

---

[1] At the hearing, the FTC identified particular deponents whom it would have questioned differently or additional individuals it might have deposed had it received the documents during the discovery period.

documents for the first time at trial without knowing what the witnesses' answers might be. The Court accepts that Match Group's failure to timely produce the documents has impacted the FTC's trial preparation in this way.

The third factor considers whether a continuance might cure any prejudice. *Fuller*, 2023 WL 8482889, at *3. The discovery period is closed, and trial is set to begin June 2, 2025. (*See* Dkt. No. 279.) The Court does not consider a further continuance of trial, in and of itself, to have any mitigating effect on the prejudice that the FTC could have incurred as a result of the late production.

The final factor considers Match Group's explanation for the failure to timely disclose the documents. *Fuller*, 2023 WL 8482889, at *3. As discussed above, Match Group credibly explained that its failure to collect and disclose the documents during the discovery period was the result of reasonable reliance on the archival system, and that, upon noticing a potential problem, the company took steps to assess its impact and make alternative arrangements to provide the missing discovery. By doing so, Match Group has delivered the evidence to the FTC, albeit late.

Considering these four factors holistically, the Court finds that Match Group has not shown that its late production was harmless in all respects. Its failure to produce the documents did not materially impact the merits of the FTC's summary judgment motion, but it did prevent the FTC from questioning certain witnesses about documents that are probative of the FTC's claims. Considering the degree and

the type of harm incurred as a result of Match Group's late production, the Court concludes that sanctions are appropriate.

The FTC requests a one-sided exclusion whereby it may use the late-produced documents at trial but Match Group would be precluded from explaining or otherwise responding to them.  (*See* Mot. at 8 (requesting "an order prohibiting Defendants from presenting testimony intended to explain or rebut new evidence they find unfavorable").  The Court disagrees that this is an appropriate sanction here.  Allowing the FTC to use evidence at will while curtailing Match Group's ability to respond would be harsher than complete exclusion of the evidence, and the language of Rule 37(c)(1) suggests that this lesser sanction of complete exclusion is not required.  Additionally, a one-sided exclusion would be disproportional to the modicum of prejudice caused by Match Group's late production.

The Court concludes that an appropriate sanction here is to allow the FTC to conduct additional limited discovery on the late-produced documents.  No later than **March 19, 2025**, the FTC may depose up to three individuals, each for no more than 2.5 hours.  Mindful that the purpose of these depositions is to mitigate prejudice to the FTC's trial preparations, the scope of these depositions is limited to matters directly implicated by the late-produced documents and does not broadly reach to the limits of Fed. R. Civ. P. 26(b)(1).  Match Group shall bear reasonable costs

associated with the depositions, such as court reporter and videographer fees (if the FTC has routinely used videorecording of depositions in this case).[2]

D.  **Match Group's post-discovery production of clickthrough data is beyond the scope of the FTC's motion, and any relevant dispute likely will become moot.**

In supplemental briefing, the FTC criticizes Match Group for making a post-discovery production of "clickthrough data" relating to subscribers' efforts to cancel memberships.  (Dkt. No. 293 at 3.)  The FTC acknowledges that this production is "[u]nrelated to [Match Group's] technological glitch." (*Id.*)  Match Group contends that, by providing updated clickthrough data, it is simply fulfilling its obligation to supplement discovery responses and that the FTC is attempting to exclude the same evidence that it began demanding from Match Group after filing its sanctions motion.  (Dkt. No. 294 at 3 & n.1.)  During the hearing, the parties noted that they anticipate another updated production of clickthrough data in coming weeks.

The Court does not consider Match Group's production of the clickthrough data to be a matter within the FTC's motion.  Additionally, the parties' agreement to disclose updated clickthrough data likely will render any disagreement about the April 2024 production moot.

---

[2] Having already found that Match Group's failure to produce documents during discovery was substantially justified, (*supra* § III(B)), the Court would not impose reimbursement of costs under Rule 16(f)(2) if such relief had been requested.

## IV.  CONCLUSION

For the foregoing reasons, the FTC's motion for sanctions (Dkt. No. 263) is **GRANTED**, and the FTC may, no later than March 19, 2025, conduct up to three depositions as provided for in this order.

**SO ORDERED** on January 7, 2024.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE